IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONSANTO COMPANY and <br> MONSANTO TECHNOLOGY LLC <br><br> Plaintiffs, <br><br> v. <br><br> SYNGENTA SEEDS, INC., <br> SYNGENTA BIOTECHNOLOGY, INC., <br> GOLDEN HARVEST SEEDS, INC., <br> GARWOOD SEED CO., <br> GOLDEN SEED COMPANY, L.L.C., <br> SOMMER BROS. SEED COMPANY, <br> THORP SEED CO., AND <br> JC ROBINSON SEEDS, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C. A. No. 04-305-SLR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**OPENING BRIEF IN SUPPORT OF MONSANTO'S MOTION TO STAY OR, IN
THE ALTERNATIVE, TO SCHEDULE THE ANTITRUST CLAIMS ON A
SEPARATE TRACK FROM THE PATENT LITIGATION**

OF COUNSEL:

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
HOWREY SIMON ARNOLD & WHITE LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

John F. Lynch
Susan K. Knoll
HOWREY SIMON ARNOLD & WHITE LLP
750 Bering Drive
Houston, TX 77057
(713) 787-1400
(713) 787-1440 facsimile

Dated: April 7, 2005

Richard L. Horwitz (#2246)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile

OF COUNSEL:

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

*Attorneys for Monsanto Company
and Monsanto Technology LLC*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ............................................................1

SUMMARY OF ARGUMENT .............................................................................................2

ARGUMENT .........................................................................................................................3

I.     THE ANTITRUST CLAIMS SHOULD BE STAYED PENDING
RESOLUTION OF THE PATENT CLAIMS ...........................................................3

       A.    Earlier Resolution of the Shah Patent Claims Will Directly
Impact the Nature and Breadth of the Antitrust Claims,
Warranting A Stay .........................................................................................4

       B.    Judicial Economy Will Be Served By Staying the Now-
Consolidated Antitrust Claims For a Definite Period ...................................7

       C.    A Stay Will Eliminate The Dangers of Unfair Prejudice and
Likelihood of Jury Confusion In Trying the Patent and
Antitrust Claims Together .............................................................................9

II.    IN THE ALTERNATIVE, THE ANTITRUST CLAIMS
SHOULD BE SCHEDULED ON A SEPARATE TRACK FOR
BOTH DISCOVERY AND TRIAL PURPOSES ....................................................10

CONCLUSION ...................................................................................................................12

i

# TABLE OF AUTHORITIES

## CASES

*Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615 (D. Del. 2004) ..............6

*ASM America, Inc. v. Genus, Inc.*, No. 01-2190 EDL., 2002 WL 24444
   (N.D. Cal. Jan. 9, 2002) ................................................................................6, 10

*Baxter Int'l, Inc. v. Cobe Lab., Inc.*, No. 89C 9460, 1992 WL 77665
   (N.D. Ill. Apr. 7, 1992) ..................................................................................6, 8

*Carlisle Corp. v. Hayes*, 635 F. Supp. 962 (S.D. Cal. 1986) ........................................6

*Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62
   (3d Cir. 2000) ......................................................................................................4

*Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732 (3d Cir. 1983) ................3, 7

*E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 720 F. Supp. 373
   (D. Del. 1989) .......................................................................................................3

*Elsag Bailey, Inc. v. Trojan Techs., Inc.*, No. 96-CV. 3615, 1996 U.S. Dist.
   LEXIS 14679 (E.D. Pa. Oct. 2, 1996) ..................................................................8

*Gardco Mfg. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987) ......................10

*Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948 (S.D. Cal. 1996) ...............8

*Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068 (3d Cir. 1983) ......................10

*Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141 (D. Mass. 1995) ............10

*Hunter Douglas v. Comfortex Corp.*, 44 F. Supp. 2d 152 (N.D.N.Y. 1999) .............8

*In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986) .....................................9

*Johnson & Johnson v. W.L. Gore & Associates, Inc.*, 436 F. Supp. 704
   (D. Del. 1977) ......................................................................................................6

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) ......................................................3, 7

*Lis v. Robert Packer Hospital*, 579 F.2d 819 (3d Cir. 1978) ..................................10

*Lloyd v. Hovensa, LLC*, 369 F.3d 263 (3d Cir. 2004) .............................................10

*Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129 (3d Cir. 1983) ................................10

*Pharmacia, AB v. Hybritech, Inc.*, 224 U.S.P.Q. 975 (S.D. Cal. 1984) ....................6

*Skinder-Strauss Assoc. v. Mass. Continuing Legal Educ., Inc.*, 870 F. Supp. 8
   (D. Mass. 1995) ................................................................................................................8

*Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380
   (Fed. Cir. 1983) ............................................................................................................3, 6

*Ventrex Laboratories, Inc v. AB Fortia*, 223 U.S.P.Q. 897 (D. Me. 1983) ......................6, 10

## INTRODUCTION

Syngenta Seeds, Inc.'s ("Syngenta") antitrust claims appropriately have been consolidated with defendants Monsanto Company and Monsanto Technology LLC's (collectively "Monsanto") Shah patent claims and the related counterclaims (collectively "Shah patent claims"). (*See* D.I. 15 at 8). The question now arises as to how the consolidated case should proceed for discovery and trial purposes, given that the resolution of the patent claims may substantially alter the nature and breadth of the antitrust claims, and that the pretrial schedule established by the Court for the narrower Shah patent claims cannot accommodate discovery on the antitrust claims. Monsanto submits that judicial economy will be promoted and likelihood of undue prejudice and jury confusion eliminated, if discovery and trial on the antitrust claims are stayed pending a resolution of the first-filed Shah patent claims. In the alternative, the antitrust claims should be scheduled on a separate and independent track from the Shah patent claims for both discovery and trial. Monsanto has been informed that, while Syngenta will oppose a stay, Syngenta is in agreement with establishing a separate schedule for the discovery and trial of its antitrust claims.

## NATURE AND STAGE OF THE PROCEEDINGS

Monsanto filed the Shah Patent Complaint on May 12, 2004 and filed its First Amended Complaint on June 9. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 04-CV-305 (SLR), D.I. 1., D.I. 9. Syngenta answered and asserted counterclaims. *See id.* D.I. 10. The Court held a scheduling conference on September 23, 2004 and set the following schedule solely for the Shah patent claims:

- March 18, 2005  Document production completed; Rule 26 disclosures supplemented
- September 30, 2005  Fact discovery closes
- October 17, 2005  Expert reports due
- November 14, 2005  Rebuttal expert reports due

- December 1, 2005          Patent claim charts due
- December 9, 2005          Overall expert discovery to be completed
- January 11, 2006          *Daubert* and summary judgment motions due
- May 11, 2006              Pretrial conference
- May 30, 2006              Trial

Syngenta's Sherman Act § 2 antitrust claims were filed on July 28, 2004 – 2½ months after the Shah patent claims. *See Syngenta Seeds, Inc.* v. *Monsanto Co.*, 04-CV-908 (SLR), D.I. 1. On September 14, 2004, Syngenta filed its Amended Complaint. *See* D.I. 8. Monsanto moved to dismiss or, in the alternative, to consolidate the action with the Shah Litigation. *See* D.I. 10. The Court granted Monsanto's motion in part on March 24, 2005, and consolidated the two related cases. *See* D.I. 15, 16 (Mem. Op. and Order). We are now merely six months away from the close of fact discovery on the Shah patent claims, with no fact discovery having occurred on the antitrust claims.

## SUMMARY OF ARGUMENT

Syngenta's antitrust claims should be stayed for the following reasons:

1. If Monsanto prevails on its Shah patent claims, Syngenta will not have a glyphosate-tolerant trait, and the scope of Syngenta's broad antitrust claims (in all three alleged markets) will be narrowed for both discovery and trial purposes.

2. A stay of the antitrust claims will promote judicial economy and the efficient use of the parties' resources. The first-filed patent claims are proceeding on a schedule under which at least one major deadline has already passed and others are quickly approaching. There is no prejudice to Syngenta in light of its prior statements that "[t]he vast majority of Monsanto's conduct at issue in the antitrust case is unrelated to the narrow questions of the Shah Patent Case and raise different factual, legal, and evidently issues." (*Id.* at 14). A stay of

2

       the antitrust case would allow the Shah patent claims to proceed on their current track without disruption and undue delay.

3. A stay, resulting in what the Federal Circuit has described as a "*now-standard practice of separating* separate trials of the patent and antitrust claims," will preclude the danger of unfair prejudice and likelihood of jury confusion if the two sets of claims were to be tried together. *See Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1386 (Fed. Cir. 1983) (affirming district court's separate trial of patent issues after consolidating patent and antitrust actions and staying antitrust claims).

In the alternative, establishing a separate and more extended track for Syngenta's antitrust claims is appropriate for the reasons set forth above.

### ARGUMENT

**I.    THE ANTITRUST CLAIMS SHOULD BE STAYED PENDING RESOLUTION OF THE PATENT CLAIMS**

"[The] power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. at 248, 254–55 (1936); *see also E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 720 F. Supp. 373, 384 (D. Del. 1989) (quoting *Landis* and citing Federal Circuit precedent for proposition that "[t]his Court inherently has the device of a stay – a device 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants'..."). The factors to consider are whether a stay will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the requested stay. *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737–38 (3d Cir. 1983). Here, all relevant factors weigh heavily in favor of a stay of the antitrust claims until resolution of the first-filed patent-infringement claims.

3

### A. Earlier Resolution of the Shah Patent Claims Will Directly Impact the Nature and Breadth of the Antitrust Claims, Warranting A Stay

A stay is appropriate in cases where, as here, if Monsanto prevails on its Shah patent claims, the scope of Syngenta's antitrust case in all three alleged markets will be substantially narrowed for both discovery and trial purposes. Syngenta's antitrust claims are dependent to a large degree upon its contention that the Shah patent is neither valid nor infringed.

Count I of the Amended Antitrust Complaint, for example, alleges that Monsanto has unlawfully monopolized the alleged glyphosate-tolerant corn market. (D.I. 8 at ¶¶ 71–114, 137–44, 162–64, 172–80). Although Syngenta has alleged a laundry list of purported anticompetitive conduct engaged in by Monsanto in this alleged market, the viability of Count I is fundamentally dependent on an initial determination that Syngenta has the right to commercialize GA21® corn. Simply put, if Monsanto's Shah patent is valid and infringed, Syngenta does not have a GA21® product. Therefore, Syngenta could not lawfully be in the relevant market as a competitor and thus has no standing and antitrust injury – essential elements of its § 2 Sherman Act claim.[1] *See Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 77 (3d Cir. 2000) (stating that antitrust injury is "an essential component of antitrust standing" required to file suit under Sherman Act).

---

[1] Syngenta has admitted that it has no right to participate in the sale of GA21® via a license. In a recent hearing in the then-unconsolidated Shah Patent Litigation, this Court inquired as to whether Syngenta was asserting a license defense:

> Court: "Syngenta's fortune will rise and fall on whether the corn they are – whatever its derivation – ... infringes the patent?"
>
> Syngenta's Counsel:   "That's exactly right."

*See* Feb. 17, 2005, Hearing Transcript at 23, lines 16–23. (Ex. A hereto)

4

Even beyond the issue of antitrust injury, much of Syngenta's laundry list of alleged anticompetitive conduct in Count I is factually predicated – either explicitly or inferentially – on the charge that the Shah Patent is invalid or unenforceable against Syngenta with respect to GA21® glyphosate-tolerant corn. For example, Syngenta's allegation that Monsanto filed a "baseless" patent claim is *entirely* premised upon the validity and infringement of the Shah patent. Syngenta has also alleged in its Amended Complaint that another patent action, *DEKALB Genetics Corp. v. Syngenta Seeds, Inc.*, C.A. No. 04-C-50323 (PGR) (N.D. Ill., filed July 27, 2004), is also a "baseless" patent claim. (D.I. 8 at ¶¶75–78). Should Monsanto prevail in the DEKALB case, this issue would be resolved. Moreover, if Monsanto prevails on validity and infringement on either the Shah patent claim or in the DEKALB case, Syngenta will not have a GA21® product to commercialize. Similarly, if one or more of the patents are valid and infringed, then Monsanto was accurate and acting well within the scope of its lawful patent monopoly, to the extent it made any representations about Syngenta's inability to commercialize GA21® glyphosate-tolerant corn.

Count II of the Antitrust Complaint alleges that Monsanto has unlawfully monopolized the European corn-borer ("ECB") resistant corn market. Syngenta bases much of Count II on its alleged inability to offer "stacked" GA21®/ECB corn seed – which, by definition, incorporates the glyphosate technology at the heart of the Shah patent. (D.I. 8 at ¶¶ 115–124). If the Shah patent is valid and infringed, Syngenta has no GA21® product to stack.

Count III alleges that Monsanto has attempted to monopolize the alleged foundation corn seed market. The anticompetitive conduct alleged in Count III, however, essentially incorporates the very same laundry list of conduct claimed in Counts I and II relating to GA21® corn. (*See* D.I. 8 at ¶¶ 126–27). Hence, much of Count III will stand or fall with resolution of the Shah patent claim as to whether Syngenta can make, use or sell GA21® corn.

5

Thus, the nature and scope of the antitrust claims will be dramatically altered by the resolution of the Shah patent claims. In similar situations, both this Court and numerous other federal courts have ordered the stay of the antitrust claims pending resolution of the patent claims. In *Arthrocare Corp. v. Smith & Nephew, Inc.*, this Court followed precisely the path proposed by Monsanto here in a case that also involved patent infringement and antitrust allegations of "sham" litigation. *Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 617–18 (D. Del. 2004). In *Arthrocare*, this Court divided the case into two phases: the first addressing issues of infringement and validity of the patents in suit, and the second dealing with willfulness, damages, and the antitrust counterclaims. *Id.* (later dismissing the defendant's sham patent claims after the jury in the patent phase the case upheld the validity and enforceability of the patents, *id.* at 618, n.2). Similarly, in *Johnson & Johnson v. W.L. Gore & Associates, Inc.*, 436 F. Supp. 704, 708 n.1 (D. Del. 1977) this Court ordered a stay of "[d]iscovery and trial with respect to the antitrust issues" pending resolution of the patent claims.[2]

---

[2] *See also, Underwater Devices*, 717 F.2d at 1386 (affirming District Court's consolidation of two (separately-filed, but as here, related) patent and antitrust actions, which the trial court had subsequently phased into separate trials, staying the antitrust portion of the trial pending the patent-litigation outcome); *Baxter Int'l, Inc. v. Cobe Lab., Inc.*, No. 89C 9460, 1992 WL 77665 at *2, 4 (N.D. Ill. Apr. 7, 1992) (Ex. B hereto) (staying independent discovery on antitrust counterclaim based on fraudulent patent procurement pending outcome of patent suit, given likely burden on jury and the potential for rendering moot all antitrust issues upon resolution of infringement question); *Carlisle Corp. v. Hayes*, 635 F. Supp. 962, 96–68 (S.D. Cal. 1986) (severing and staying counterclaim alleging that defendant attempted to monopolize market by seeking to enforce a patent obtained by fraud on the PTO); *Pharmacia, AB v. Hybritech, Inc.*, 224 U.S.P.Q. 975, 976 (S.D. Cal. 1984) (severing and staying antitrust and patent misuse counterclaims based on fraudulent procurement, predatory pricing, and tying); *ASM America, Inc. v. Genus, Inc.* No. 01-2190 EDL., 2002 WL 24444, *7 (N.D. Cal. Jan. 9, 2002) (Ex. C hereto) ("Resolution of the invalidity issue may dispose of some of the antitrust counterclaims altogether"); *Ventrex Laboratories, Inc v. AB Fortia*, 223 U.S.P.Q. 897, 899 (D. Me. 1983) (finding it "very probable that decision concerning the validity, enforceability of the ... patent will resolve many of the questions presented by the antitrust complaint and quite clearly those related to allegations of patent misuse").

6

### B. Judicial Economy Will Be Served By Staying the Now-Consolidated Antitrust Claims For a Definite Period

If the Shah patent is valid and infringed, the scope of the very broad antitrust claim – discovery, expert analysis and the issues to be tried – would be substantially narrowed. Indeed, certain claims such as Count I would be entirely eliminated. Staying the antitrust claims until the Shah patent claims are adjudicated, therefore, may avoid substantial expense, burden, and inconvenience. For example, a finding of validity/infringement would render moot discovery into much of Syngenta's laundry list of alleged anticompetitive conduct, including Monsanto's alleged intent in filing its "baseless" patent actions and its alleged communications with seed companies, retailers, and growers regarding Syngenta's ability to commercialize GA21. The duration of the stay sought is no more than necessary – namely until the Court renders its verdict on the Shah patent claims. The Shah patent claims are currently set for trial on May 30, 2006. Monsanto's request is for a stay of "moderate length, and not ... of indefinite duration," further weighing in favor of granting the present motion. *Cheyney State College, supra*, 703 F.2d at 738 (citing *Landis*, 299 U.S. at 257).

A stay of the antitrust claims will also allow the Shah patent claims to remain on their current schedule. The parties have been actively litigating the Shah patent claims over the last several months pursuant to the schedule previously entered by the Court. Document production on the Shah patent claims was to be completed by March 18th, and fact discovery will be closed at the end of September. The far more complex and extensive antitrust discovery cannot be shoehorned into this pre-existing schedule.

There is no need to derail the ongoing patent discovery and delay the earlier resolution of the narrower patent claims. Syngenta itself has argued that there will be little overlap between discovery on the patent and antitrust claims. (*See* D.I. 12 at 7–8). Different experts will be designated on these claims. Moreover, certain elements of the patent schedule, such as claim charts, are irrelevant to any antitrust claim.

7

Faced with the similar question of how consolidated patent and antitrust claims should proceed, federal courts have routinely found that judicial economy and the efficient use of the resources of the court and the parties are best promoted by a stay of the antitrust claims pending resolution of the patent claims:

> Various federal district courts throughout the country have almost consistently found it to be in the best interest of economy and convenience of the court as well as the parties to sever antitrust and similar issues of patent validity and infringement, and to stay discovery and trial of antitrust issues until the patent issues have been determined by trial.

*Baxter Int'l Inc.*, 1992 WL 77665 at *1 (N.D. Ill. Apr. 7, 1992) (internal citation omitted) (antitrust counterclaim raised new issues that could be rendered moot by resolution of patent issues); *see also Hunter Douglas v. Comfortex Corp.*, 44 F. Supp. 2d 152, 154 (N.D.N.Y. 1999) (interests of judicial economy are served by awaiting outcome of trial on patent suit before proceeding to hear related antitrust issues); *Elsag Bailey, Inc. v. Trojan Techs., Inc.*, No. 96-CV. 3615, 1996 U.S. Dist. LEXIS 14679, at *2-3 (E.D. Pa. Oct. 2, 1996) (Ex. D hereto) (granting stay of antitrust case because issue of whether the patent litigation was actionable as sham litigation would be "at least greatly aided and may be disposed of by resolution of the [patent infringement suit]," and failure to grant a stay "could surely result in [*inter alia*] a waste of judicial economy…."); *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 964 (S.D. Cal. 1996) (staying antitrust suit pending resolution of patent litigation in a different court); *Skinder-Strauss Assoc. v. Mass. Continuing Legal Educ., Inc.*, 870 F. Supp. 8, 11 (D. Mass. 1995) (stay of all proceedings relating to antitrust claims pending resolution of underlying copyright action "will avoid a waste of judicial and party resources ").

8

### C. A Stay Will Eliminate The Dangers of Unfair Prejudice and Likelihood of Jury Confusion In Trying the Patent and Antitrust Claims Together

By ordering separate trials, the Court avoids the danger of unfair prejudice and jury confusion that would arise from commingling distinct questions of patent and antitrust law, each complicated enough in their own right. A single trial of the validity and infringement of the Shah Patent with Syngenta's antitrust claims would require the jury simultaneously to hear, understand, and render verdicts on both, the *legal* "monopoly" granted to Monsanto by virtue of its patent, as well as on the alleged *illegal* "monopolization" of Monsanto in three different relevant markets. The spectre of a patent verdict tainted by unfair prejudice due to Syngenta's monopolization allegations cannot be eliminated without separate trials.

A stay, resulting in two fairer and more efficient trials, is certainly feasible and presents no prejudice to either party. In that regard, Syngenta, itself, has argued the distinct nature of the legal and factual issues to be presented to a jury on the two sets of claims:

> In the antitrust case, the parties will present evidence of, among other things, Monsanto's monopoly power in each of the relevant markets, competitors, licensing agreements, promotional incentives, and pressuring of foundation seed companies. This evidence is irrelevant to the Shah Patent Case, which will focus on issues of claim construction, validity, and infringement. Consequently, virtually all of the witnesses and documents put forth will be different, and there will be little or no duplication if the cases proceed separately.

(D.I. 12 at 10); *see also* Mem. Op., D.I. 15 5—7, n.1) ("The Antirust Litigation presents distinct factual issues from the Shah Litigation"; "[t]he legal issues presented in the Antitrust Litigation and the Shah Litigation are distinct [and will require presentation of different evidence].").

The Federal Circuit has recognized the potential damage of trying patent and antitrust claims in one setting and noted the "***now-standard practice of separating*** for trial patent issues and those raised in an antitrust counterclaim." *In re Innotron*

9

*Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (emphasis added) (holding that it is proper judicial practice to consolidate two separate but closely related antitrust and patent cases and to *try separately* each distinct issue); *see also Ventrex Laboratories, Inc v. AB Fortia*, 223 U.S.P.Q. 897, 899 (D. Me. 1983) (noting that, without staying trial of antitrust issues pending patent litigation, it would be "almost inconceivable that a jury could arrive at an intelligent verdict," given the complexities of the case); *Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141, 1157–58 (D. Mass. 1995) (staying counterclaim based on inequitable conduct, noting that courts often separate patent from antitrust issues, for "[a]ntitrust issues are complex and, particularly with respect to damages, raise different issues and proof"); *ASM America, Inc. v. Genus, Inc.* 2002 WL 24444, *6 (N.D. Cal. Jan. 9, 2002) (phasing trial of patent and antitrust claims, noting that it will "simplify the case, avoid confusion, and reduce the burden and costs imposed on the Court, the attorneys, and the parties by deferring the burdensome and expensive discovery that would necessarily arise from litigation of the antitrust claims, and possibly avoiding it altogether").

## II.  IN THE ALTERNATIVE, THE ANTITRUST CLAIMS SHOULD BE SCHEDULED ON A SEPARATE TRACK FOR BOTH DISCOVERY AND TRIAL PURPOSES

A federal district court has broad discretion to manage the sequencing of discovery in trials that involve complex claims "as part of its wide discretion in trial management." *Gardco Mfg. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987).[3] If the Court is not inclined to grant a formal stay of the antitrust claims, for many

---

[3] *See also Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983) ("District courts have wide discretion in setting their own calendars") *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 274 (3d Cir. 2004) (stating rule that it is "well established that the scope and conduct of discovery are within the sound discretion of the trial court," citing *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983)); *Lis v. Robert Packer Hospital*, 579 F.2d 819, 824 (3d Cir. 1978) (decision to try claims separately is made on case-by-case basis and is within broad discretion of trial judge).

10

of the reasons set forth above, the antitrust claims should proceed on a separate track than the Shah patent claims, for both discovery and trial purposes. On the discovery side, separate tracking would allow both cases to proceed without disrupting the current schedule of the Shah patent claims that has been in effect since September of last year. Separate trials will avoid the danger of unfair prejudice and likelihood of jury confusion that would result if the two sets of claims were resolved in a single trial. Finally, the earlier resolution of the Shah patent claims could also substantially narrow the scope of the discovery and issues to be tried on the antitrust claims.

## CONCLUSION

For all of the foregoing reasons, Monsanto requests a stay of Syngenta's antitrust claims pending the resolution of the Shah patent claims. In the alternative, the Court should schedule the discovery and trial of the antitrust claims on a separate and more extended track than the Shah patent claims.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| | |
| Peter E. Moll | |
| John DeQ. Briggs | |
| Scott E. Flick | By: _____ |
| HOWREY SIMON ARNOLD & WHITE LLP | Richard L. Horwitz (#2246) |
| 1299 Pennsylvania Ave., N.W. | Hercules Plaza, 6th Floor |
| Washington, DC 20004 | 1313 N. Market St. |
| (202) 783-0800 | Wilmington, DE 19801 |
| (202) 383-6610 facsimile | (302) 984-6000 |
| | (302) 658-1192 facsimile |
| John F. Lynch | rhorwitz@potteranderson.com |
| Susan K. Knoll | dmoore@potteranderson.com |
| HOWREY SIMON ARNOLD & WHITE LLP | |
| 750 Bering Drive | *Attorneys for Monsanto Company* |
| Houston, TX 77057 | *and Monsanto Technology LLC* |
| (713) 787-1400 | |
| (713) 787-1440 facsimile | |
| | |
| Kenneth A. Letzler | |
| Jonathan I. Gleklen | |
| ARNOLD & PORTER LLP | |
| 555 12th Street, N.W. | |
| Washington, D.C. 20004 | |
| (202) 942-5000 | |
| (202) 942-5454 facsimile | |

Dated: April 7, 2005

677252

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on April 7, 2005, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on April 7, 2005, I have Federal Expressed the foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Thomas A. McGrath III
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069

Michael J. Flibbert, Esq.
Don O. Burley, Esq.
Howard W. Levine, Esq.
Finnegan, Henderson, Farabow,
   Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

677273