# EXHIBIT A

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                             - - -

 4   MONSANTO COMPANY and            :    CIVIL ACTION
     MONSANTO TECHNOLOGY LLC,        :
 5                                   :
                Plaintiffs           :
 6                                   :
           vs.                       :
 7                                   :
     SYNGENTA SEEDS, INC. and        :
 8   SYNGENTA BIOTECHNOLOGY,         :
     INC.,                           :
 9                                   :
                Defendants           :    NO. 04-305 (SLR)
10
                               - - -
11
                                    Wilmington, Delaware
12                                  Thursday, February 17, 2005
                                    4:35 o'clock, p.m.
13
                               - - -
14
     BEFORE: HONORABLE SUE L. ROBINSON, Chief Judge
15
                               - - -
16
     APPEARANCES:
17

18        POTTER, ANDERSON & CORROON LLP
          BY:  DAVID E. MOORE, ESQ.
19

20                  -and-

21

22

23                                  Valerie J. Gunning
                                    Official Court Reporter
24

25
```

```
 1   claim that they argue broadly covers any gene that
 2   functions to provide glyphosate resistance in any plant
 3   cell even though the only work the inventors did was in
 4   the petunia and they have a petunia example.  That's going
 5   to be the issue.
 6              THE COURT:  I guess I'm confused.  It seems
 7   to me on the one hand what Mr. Spears was talking about
 8   mostly was a business dispute as opposed to a patent
 9   infringement dispute.
10              MR. FLIBBERT:  Yes, your Honor.
11              THE COURT:  Is this case both?
12              MR. FLIBBERT:  No, your Honor.
13              THE COURT:  It's a patent dispute?
14              MR. FLIBBERT:  Yes, your Honor.  That's
15   exactly right.
16              THE COURT:  And so if you are not asserting --
17   and I'm just trying to figure it out myself.  If you
18   are not asserting a license defense, then Syngenta's
19   fortune will rise and fall on whether the corn they are
20   selling -- whatever its derivation --
21              MR. FLIBBERT:  Yes.
22              THE COURT:  -- infringes the patent?
23              MR. FLIBBERT:  That's exactly right.  It
24   will turn primarily on claim construction of Claim 1
25   of the '835 patent, not on any issue dealing with Bayer
```

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.  
1992 WL 77665 (N.D.Ill.)  
(Cite as: 1992 WL 77665 (N.D.Ill.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.  
BAXTER INTERNATIONAL INC., and, Baxter Healthcare Corp., Plaintiffs,  
v.  
COBE LAB., INC., Defendant.  
No. 89 C 9460.

April 7, 1992.

MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

*1 Currently before the court is the motion of the plaintiffs, Baxter International Incorporated and Baxter Healthcare Corporation ("Baxter"), to sever and stay the discovery and trial of the counterclaim filed by the defendant Cobe Laboratories Incorporated ("Cobe") as its "Second Claim for Relief" from Baxter's alleged attempted monopolization under Section 2 of the Sherman Antitrust Act. For the reasons that follow, the court grants Baxter's motion.

I.

Baxter filed this action over two years ago on December 22, 1989, charging Cobe with the infringement of four of Baxter's patents. [FN1] The patents all concern aspects of the use of centrifuges for the processing of blood and blood components. Cobe answered Baxter's Complaint on June 28, 1990, asserting in an Answer and Counterclaim that each of the four patents was invalid, unenforceable, and had not been infringed. Additionally, Cobe sought declaratory judgment to the effect that another Baxter patent, U.S. patent No. 4,934,995, was invalid, unenforceable and had not been infringed. In May of 1991, Cobe filed a motion seeking partial summary judgment of invalidity of Baxter's patent 4,734,089 (" '089 patent"), and another motion seeking leave to add an antitrust counterclaim which it referred to as its "Second Claim for Relief." On November 22, 1991, the court denied Cobe's motion for partial summary judgment of invalidity of the '089 patent. [FN2] The court, however, granted Cobe's motion for leave to file its antitrust counterclaim.

Extensive discovery has continued on these matters since the onset of the case. Baxter in its briefs represents that "hundreds of thousands of pages of material have been produced for inspection and copying by both parties" and that "tens of thousands of copies have been made and over thirty days of deposition testimony have been taken." The parties both represented to this court some time ago that their discovery on the patent issues should be completed within a period of several months.

II.

Under Rule 42(b) of the Federal Rules of Civil Procedure, [FN3] a trial court has broad discretion in ordering separate trials. *See Ventrex Laboratories, Inc. v. AB Fortia,* 223 U.S.P.Q. 897, 898 (D.Me.1983). Various federal district courts throughout the country have almost consistently found it to be in the best interest of the economy and convenience of the court and as well as of the parties to sever antitrust and similar issues from the issues of patent validity and infringement, and to stay discovery and trial of antitrust issues until the patent issues have been determined by trial. *See Ventrex, supra; Components, Inc. v. Western Elec. Co., Inc.,* 318 F.Supp. 959, 965-68 (D.Me.1970).

Serious concerns for economy and fairness have led this court to conclude that the antitrust claim raised by Cobe should be severed from the patent issue and that independent discovery on the antitrust issues should be stayed pending the outcome of the patent case. First in the court's mind is the fact that Cobe's antitrust counterclaim raises new issues that could be rendered moot by the decisions on the patent issues. Cobe's antitrust counterclaim charges that Baxter violated Section 2 of the Sherman Act by attempting to monopolize the alleged market in what are referred to as "five-day platelet disposables". [FN4] To demonstrate a violation of Section 2 of the Sherman Act based on a fraudulently procured patent, Cobe has to prove not only that the '089 patent was obtained by an intentional fraud involving affirmative dishonesty, but also must show the presence of the essential elements of a monopolization charge, i.e. (1) that a relevant market exists; (2) that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fraudulently procured patent allowed the patentee to obtain economic dominance in the relevant market; and (3) that as a result the complaining party suffered injury. *Argus Chemical Corp. v. Fibre Glass-Evercoat Co.,* 812 F.2d 1381, 1384 (Fed.Cir.1987); *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 177 (1965); *Ekco Products, Inc. v. Dare Plastics, Inc.,* 173 U.S.Q.P. 664, 665-66 (S.D.Ohio 1972).

*2 At the request of the parties the court has bifurcated the patent liability and damages, and has stayed proceedings concerning issues relating solely to damages until after a determination has been made of liability. Thus, as it its today, the case is proceeding through discovery and trial on the patent liability issues alone. Other than the issue of fraudulent patent procurement, none of the proposed antitrust issues are directly related to the patent liability issues of infringement and validity. A determination of patent infringement requires interpretation of the patent claims and evaluation of the accused products sold by Cobe to determine whether the accused Cobe products embody or use the claimed subject matter of the patents-in-suit, i.e., whether the claims "read on" the accused Cobe products. The patent issues, do not therefore, involve any substantial proof in common with the antitrust issues, i.e. relevant market, damage to Cobe, economic dominance of the patent in the relevant market, predatory pricing activity, Baxter's cost of manufacturing or selling price, or Baxter's subjective intent in bringing this action.

This court finds persuasive on this issue the statement made by the trial court in *Foster Wheeler v. Babcock,* 440 F.Supp. 897, 902 (S.D.N.Y.1977), where the judge there stated that the antitrust counterclaims before it "interject[ed] a host of entirely new issues, such as the scope of the relevant market, the impact of the patents ... and so on, requiring extensive additional proofs." *See also Components, Inc. v. Western Elec. Co., Inc.,* 318 F.Supp. 959, 965-68 (D.Me.1970). The only issue which is common between the patent and antitrust issues in our case here is whether the '089 patent was fraudulently procured. Cobe's antitrust counterclaim is devoted almost entirely to this as the basis for its allegation of antitrust violation. Trial of the patent issue will be dispositive of the issue of enforceability. If, after trial of the patent issues, the court concludes that the '089 patent is enforceable, then most of Cobe's antitrust counterclaim will be rendered moot. If Cobe, however, proves by clear and convincing evidence that the '089 patent is unenforceable, then that decision will be binding in any subsequent litigation, and no repetition or duplication of proof will be necessary. In a similar setting the trial judge in the *Ventrex* case stated:

[R]esolution of the issue of patent validity and enforceability of the '760 patent, which will include resolution of the issue of fraud on the Patent Office, would as a practical matter make it unnecessary to litigate the remaining antitrust issues set forth in Ventrex's complaint. It is true that resolution of the patent issue will not necessarily dispose of all of the Ventrex claims of anti-competitive conduct. It appears very probable that decision concerning the validity, [sic] enforceability of the '760 patent will resolve many of the questions presented by the antitrust complaint.

*3 *Ventrex, supra,* at 899. That reasoning is equally applicable to the situation that exists before this court.

III.
Cobe recently submitted a supplemental brief in opposition to Baxter's motion to sever and stay the discovery and trial of Cobe's antitrust counterclaim. This supplemental brief focuses on alleged new evidence that Cove claims presents an overwhelming showing of fraud committed on the patent office by Baxter in procuring the '089 patent. This court believes that this supplemental brief of Cobe is unnecessary and that the alleged evidence of fraud contained within that brief does not serve to support a denial of Baxter's motion to sever and stay the antitrust issues.

On February 21, 1992, Cobe received from Baxter's counsel a copy of a cassette tape produced by Houshang Lolachi, a former Baxter employee who was a central figure in Baxter's development of its sealless centrifuge. The tape purportedly contains a recording made by Lolachi of a telephone conversation that occurred on February 2, 1977, between Lolachi and a Donald Finn, who was the president of Aminco, the subsidiary of Baxter responsible for the development of its sealless centrifuge.

The Lolachi tape provides what Cobe characterizes as "new and dramatic evidence of Baxter's knowing and willful fraud committed upon the U.S. Patent Office in the prosecution of the main patent-in-suit, the '089." At the time of that telephone conversation Baxter had two patent applications pending which contained patent claims for a sealless centrifuge and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sealless disposable set, Ser. Nos. 657,186 and 657,187, both of which identified Lolachi as the inventor. At that same time a competing patent application was filed by the U.S. Government in the name of Yoichiro Ito, Ser. No. 661,114, which also contained patent claims on a sealless centrifuge. Cobe says in its briefs and in paragraph 39 of its Amended Counterclaim, that Baxter's designation of Lolachi as the sole inventor presented a serious problem in Baxter's prosecution, since there was this pending Ito patent. Cobe alleges that Baxter knew that Ito had made a complete drawing of a sealless centrifuge back in October, 1973, whereas Lolachi supposedly did not start working at AMINCO on Baxter's centrifuge until January of 1974. Thus, Cobe asserts Baxter, in realizing that it could not possibly establish priority over the Ito application if Lolachi were designated as the sole inventor of the Lolachi applications, decided that it needed to "fix" the problem by adding the names of some other inventors to the patent. Cobe goes on to assert that this proffered telephone conversation demonstrates Baxter's attempt at fixing the problem. In that recorded conversation, Finn reportedly telephoned Lolachi in an effort to persuade Lolachi to consent to the addition of a Herbert Cullis and a Herbert Goldsmith as co-inventors on the Lolachi patent applications. In this conversation, Lolachi is supposed to have refused to do so.

*4 Cobe strongly asserts that this telephone conversation discredits and "exposes as utterly false" the explanation that Baxter gave to the Patent Office after the alleged conversation when Baxter cancelled the patent claims for the sealless centrifuge and the sealless disposable set from the Lolachi patent application and added them to a patent application that was being filed in the name of Cullis, the application which matured into the '089 patent. Cobe contends that Baxter's representations to the patent office that the patent claims had been included in Lolachi's patent applications through "inadvertent error" were totally at odds with Baxter's attempt to persuade Lolachi to consent to the addition of Cullis and Goldsmith as co-inventors on Lolachi's patent applications.

The court is not convinced that the discovery of this fifteen year old tape serves to add any more credence to Cobe's opposition to Baxter's motion to stay and sever Cobe's antitrust counterclaim. Cobe has already argued at length that the '089 Cullis patent was procured by fraud in the Patent and Trademark Office and that there is an overlap of proof between that argument and the antitrust issues. To the extent that there is overlap it should be resolved in the trial of the patent liability issues. As already stated, Cobe's argument that the '089 Cullis patent was procured by fraud will be tried with the patent liability issues even though a stay of the antitrust issues is granted.

The evidentiary impact of the Lolachi tape may not be as severe as Cobe portrays it. The most that could be ascertained from the Lolachi tape is that Lolachi presumably had a discussion with a Baxter representative regarding inventorship, after evidence had been uncovered that Cullis was the inventor of the broad subject matter set forth in the Lolachi applications. This may not necessarily be proof of fraud. Rather the statement could be seen as being fully consistent with the statements made to the Patent Office some eight months later that Baxter had determined that Cullis was the inventor of the broad claims to a sealless blood processing centrifuge.

IV.

The Lolachi tape does not diminish the prejudice that Baxter would suffer if no stay of the antitrust issue were granted. If Cobe's antitrust counterclaim were not stayed, Baxter would be put in the position of having to choose between giving up a viable defense, on the one hand, and waiving the attorney-client privilege on the other hand. Either choice would result in prejudiced to Baxter. This prejudice is substantially lessened by the staying of Cobe's antitrust counterclaim.

Cobe's antitrust counterclaim is founded in part on the allegation that the present action was commenced in bad faith, with knowledge that the patents-in-suit were invalid or not infringed. For this proposition, Cobe has relied upon _Handgards Inc. v. Ethicon Inc., 601 F.2d 986, 202 U.S.P.Q. 342 (9th Cir.1979)_. Under _Handgards_, Cobe must prove, _inter alia_, that the present action was brought in bad faith. _Handgards, supra, 601 F.2d at 996, 202 U.S.P.Q. at 351_. To rebut that claim, Baxter would have to present proof that the present litigation was brought in good faith. The most direct source of evidence of Baxter's good faith would be testimony of Baxter's attorney, who has represented Baxter since the outset of this case over two years ago. Baxter would be unable to call its counsel as a witness unless it first released him from further representation of Baxter in this matter. _American Hospital Supply Corp. v. Roy Lapidus, Inc., 493 F.Supp. 1076, 1078 (D.Mass.1980)_. Thus, if Cobe's antitrust were not stayed, Baxter would be required to forego one of its relevant sources of evidence or to obtain new

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

counsel. Obtaining new counsel for this complex case would be expensive and would necessarily result in substantial delay.

*5 Even if Baxter were to rely upon the testimony of its own in-house counsel, instead of trial counsel, it would risk the waiver of attorney-client privilege regarding pre-litigation investigations.

The court, therefore, must do what it can to reduce probable prejudice to one side, without causing prejudice to the other. This can be done by staying the antitrust counterclaim proceedings until after a resolution of the patent issues.

V.

One of the considerations repeatedly relied upon by the courts in dealing with this problem is the overwhelming burden that is placed on the jury of simultaneously trying both a patent case and an antitrust case. *Components, Inc. v. Western Electric Co.*, 318 F.Supp. 959, 967, 167 U.S.P.Q. 583, 590 (D.Me.1970); *Ventrex, supra*, 223 U.S.P.Q. 897, 899 (D.Me.1983). In the instant case, even without the antitrust issues, the situation is a complex and difficult one for the trier of fact. There are five separate patents involved, each directed to a unique technical subject matter. Cobe has alleged that each of the patents is invalid and unenforceable. Accordingly, the trier of fact will be faced with evaluating the complex proofs regarding patent claim interpretation, infringement, the scope and content of the prior art, the level of ordinary skill in the art, and the objective evidence of non-obviousness for each of the five patents.

As the judge said in the *Components* case, "The consideration of all these issues at one trial would impose a heavier burden than is sensible on a single judge." *Components, supra*, 318 F.Supp. at 967, 167 U.S.P.Q. at 590. Similarly, in *Ventrex Laboratories, supra*, 223 U.S.P.Q. at 899, the court stayed the antitrust issues in part because such issues would present to a single jury too many complex and difficult issues. The court said that, "it's almost inconceivable that a jury could arrive at an intelligent verdict." Again, the rationale of the *Ventrex* is applicable to the complex scenario that exists in the case here before this court.

VI.
*Conclusion*

The antitrust counterclaim asserted by Cobe must be severed from the rest of the litigation and discovery on all antitrust issues should be stayed pending the outcome of the patent infringement claims that are presently asserted by Baxter. Without a stay of the antitrust issues, Baxter would be unfairly prejudiced because it would be forced to either abandon a "good faith" defense or rely upon the testimony of counsel to show good faith and thereby disqualify counsel and waive the attorney client privilege. By proceeding first with the patent liability issues and staying proceedings on the antitrust issues this prejudice will be avoided. Additionally, the antitrust issues may be rendered moot by the determinations to be made during the patent liability trial. Accordingly, Baxter's motion to sever and stay the antitrust issues is granted.

ENTER:

Cobe's "Second Claim for Relief" is severed from the patent liability issues, and all proceedings are hereby stayed until after the trial of the issues of patent validity, infringement, and unenforceability. Accordingly, Baxter's motion to sever and stay the antitrust issues is granted.

> FN1. Baxter alleged that Cobe infringed Baxter's U.S. Letters Patents Nos. 4,734,089, 4,526,515, 4,283,004, and 4,151,844.
>
> FN2. Cobe's motion for reconsideration or, in the alternative, for leave to proceed with an interlocutory appeal of the court's order denying the summary judgment motion is currently pending.
>
> FN3. Rule 42(b) provides in pertinent part:
> (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any ... counterclaim ... always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a Statute of the United States.
>
> FN4. Cobe alleges specifically that Baxter in its attempt to monopolize:
> (1) engaged in a "knowing and willful fraud and/or inequitable conduct ... upon the U.S. Patent Office, and because Baxter had actual knowledge that its '089 patent was invalid and/or unenforceable prior to commencing this suit;"
> (2) engaged in predatory pricing by selling its patented CS3000 apheresis device at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
1992 WL 77665 (N.D.Ill.)
**(Cite as: 1992 WL 77665 (N.D.Ill.))**

>below cost to commit as many customers as possible to purchasing only Baxter's five-day platelet disposables.
>(3) is wrongfully asserting three other patents which are not infringed.

1992 WL 77665 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:89CV09460 (Docket) (Dec. 22, 1989)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                                                              Page 1
2002 WL 24444 (N.D.Cal.), 2002-1 Trade Cases P 73,573
(Cite as: 2002 WL 24444 (N.D.Cal.))

C

**Motions, Pleadings and Filings**

United States District Court, N.D. California.
ASM AMERICA, INC., Plaintiff,
v.
GENUS, INC., Defendant.
GENUS, INC., Counterclaimant,
v.
ASM AMERICA, INC., and ASM International,
N.V., Counterdefendants.
No. 01-2190 EDL.

Jan. 9, 2002.

ORDER REGARDING MOTIONS TO STRIKE,
STAY, DISMISS AND AMEND

LAPORTE, Magistrate J.

*1 Before the Court is Plaintiff-Counterdefendant ASM America's ("ASM") Motion to Strike Inequitable Conduct Defenses, to Sever and Stay Antitrust Claim and Related Discovery, and to Dismiss Pursuant to Rule 12(b)(6) [15], Defendant-Counterclaimant Genus' ("Genus") Cross-Motion for Leave to Amend Its Answer and Counterclaims [20], and ASM's Motion for Leave to File Amended Complaint and to Supplement the Case Management Order [18]. The first two motions were heard on December 11, 2001; the latter motion was heard on December 18, 2001. As explained in more detail below, the Court grants in part and denies in part ASM's Motion to Strike, Sever and Stay, and to Dismiss; grants Genus' Cross-Motion for Leave to Amend; and grants ASM's Motion for Leave to File Amended Complaint and Supplement the Case Management Order.

I. Introduction

The parties in this case sell manufacturing equipment that is used to make semiconductor chips via atomic layer deposition or chemical vapor deposition. ASM America is the Arizona-based subsidiary of ASM International N.V., a Dutch company (collectively, "ASM"). Genus, Inc. ("Genus") is based in Santa Clara, California.

ASM America initially sued Genus for infringement of U.S. Patent No. 6,015,590 ("the '590 patent") and No. 5,916,365 ("the '365 patent"). Genus counterclaimed for infringement of U.S. Patent No. 5,294,568 ("the '568 patent"). ASM now seeks leave to amend the complaint to include allegations of infringement of U.S. Patent No. 4,798,165 ("the '165 patent") and to add Dr. Arthur Sherman, the inventor of the '365 patent, as a plaintiff.

The '590 and '365 patents assigned to or controlled by ASM concern methods for atomic layer deposition ("ALD"), [FN1] a process used in manufacturing semiconductor wafers. The '568 patent assigned to Genus claims a method for selective etching of native oxides deposited during the manufacturing process. The '165 patent that ASM proposes to add to this case concerns a "showerhead" device used to regulate the flow of gases into the reaction chambers used for ALD and other types of manufacturing processes. Each of the motions before the Court will be discussed in turn.

> FN1. This process is also referred to by ASMA under its trademark, Atomic Layer Chemical Vapor Deposition or Atomic Layer CVD TM. Atomic layer epitaxy ("ALE") is another generic name for this process.

II. ASM's Motion to Strike Inequitable Conduct Defenses

ASM moves to strike Genus' Fifth Affirmative Defense (paragraphs 18-19 of the Answer and Counterclaim), which asserts the defense of inequitable conduct before the Patent and Trademark Office ("PTO"). This defense is raised as to both the '365 and '590 patents.

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which permits the Court to order stricken from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike an affirmative defense are disfavored, but are proper when the defense is insufficient as a matter of law. See, e.g., *Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219, 220 (N.D.Cal.1994) (Patel, J.) (citation omitted).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 2
2002 WL 24444 (N.D.Cal.), 2002-1 Trade Cases P 73,573
**(Cite as: 2002 WL 24444 (N.D.Cal.))**

*2 The doctrine of inequitable conduct (also sometimes referred to as "fraud on the PTO") renders a patent unenforceable if the patent applicant acted inequitably before the PTO in prosecuting the patent. *See, e.g., Chiron,* 156 F.R.D. at 220 (citations omitted); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* 41 U.S.P.Q.2d 1770, 1996 WL 467273 at *5 (N.D.Cal.1996) (Jensen, J.). Inequitable conduct includes "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.,* 204 F.3d 1368, 1373 (Fed.Cir.2000), *cert. denied,* 531 U.S. 1190 (Feb. 26, 2001) (hereafter *"SEL"* ) (quoting *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995)).

Allegations of inequitable conduct involve fraud and are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See, e.g., Advanced Cardiovascular Sys.,* 1996 WL 467273 at *5; *Raychem Corp. v. PSI Telecomms., Inc.,* 1995 WL 108193 at *2 (N.D.Cal.1995) (Aguilar, J.); *Chiron,* 156 F.R.D. at 220. Materiality and intent to deceive must be specifically pleaded. *See SEL,* 204 F.3d at 1373 (discussing elements of inequitable conduct claim); *see also Xilinx, Inc. v. Altera Corp.,* 33 U.S.P.Q.2d 1149, 1994 WL 782236 at *2-3 (N.D.Cal.1994) (Whyte, J.) (discussing pleading requirements). Further, the time, place and content of any alleged misrepresentations made to the PTO as well as the identities of the parties to the misrepresentation must be specified. *Sun Microsystems, Inc. v. Dataram Corp.,* 1997 WL 50272 at *4 (N.D.Cal.1997) (Williams, J.).

The patent regulations require each individual associated with the filing of a patent application "to disclose to the Office all information known to that individual to be material to patentability ." 37 C.F.R. § 1.56 (2001). Information disclosure statements provided to the PTO must include a legible copy of "each publication or that portion which caused it to be listed." 37 C.F.R. § 1.98(a)(2)(ii) (2001). Genus contends that ASM engaged in inequitable conduct by failing to disclose relevant prior art to the PTO in connection with both the '590 patent and the '365 patent.

*A. The '590 patent*

Genus alleges that the inventors of the '590 patent, Tuomo Suntola and Sven Lindfors, and the attorneys involved in the prosecution of the patent, Sterne, Kessler, Goldstein & Fox P.L.L.C., were aware of aspects of Tuomo Suntola's prior art work, publications, and patents in Atomic Layer Deposition, Molecular Beam Epitaxy, and Atomic Layer Epitaxy, including but not limited to the publication *Atomic Layer Epitaxy* (T. Suntola & M. Simpson eds.1990), that were material to the patentability of the claims in the '590 patent, but withheld this prior art from the U.S. Patent and Trademark Office, materially misrepresenting the state of the art, with an intent to deceive that Office. (Answer and Counterclaim at ¶ 18.)

*3 ASM attacks these allegations, particularly the failure to disclose unidentified "aspects" of Dr. Suntola's prior work, as lacking the specificity required by Rule 9(b). ASM also asks this Court to strike this defense on the innovative ground that it is "implausible." (ASM's Motion to Strike at 8:10.) ASM points out that the face of the '590 patent identifies nineteen *other* patents among the references cited (some of which Dr. Suntola holds) and lists a subsequent article by Dr. Suntola, also entitled "Atomic Layer Epitaxy," that postdates the omitted work by two years. ASM cites *Fiskars, Inc. v. Hunt Mfg. Co.,* 221 F.3d 1318, 1327 (Fed.Cir.2000), *cert. denied,* 121 S.Ct. 1603 (Apr. 16, 2001), which states, "An applicant cannot be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner."

Genus disputes the lack of specificity but requests leave to amend its Answer and Counterclaims to this patent to refer only to the failure to disclose *Atomic Layer Epitaxy* to the PTO and to delete the reference to aspects of Dr. Suntola's prior work. Genus contends that this amendment addresses ASM's concerns about specificity. [FN2]

> FN2. The parties are cautioned that cross-motions on the same schedule as the original motion are no longer proper under the Civil Local Rules of this Court. Because Genus' cross-motion does not expand the issues in the original motion at all, however, the Court will nonetheless consider it.

The Court finds that Genus adequately pleaded that the 1990 work *Atomic Layer Epitaxy* was withheld from the PTO, but did not plead the requisite level of specificity as to Dr. Suntola's unspecified other prior art work. The Court therefore grants ASM's motion to strike as to the '590 patent with leave to amend. The Court grants Genus' request to file its proposed amendment previously lodged with the Court, which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 24444 (N.D.Cal.), 2002-1 Trade Cases P 73,573
**(Cite as: 2002 WL 24444 (N.D.Cal.))**

Page 3

cures this lack of specificity.

*B. The '365 patent*

Genus alleges with respect to the '365 patent that:
> [T]he named inventor of the '365 patent, Arthur Sherman, the attorneys involved in the prosecution of the '590 [*sic*] patent including, without limitation, Robert Moll and his colleagues at Wilson Sonsini Goodrich & Rosati, and/or other persons substantively involved in the preparation or prosecution of the applications for the '365 patent, were aware of prior art that was material to the patentability of claims in the '365 patent, including without limitation, an article entitled "Atomic layer epitaxy of Si using atomic H," authored by S. Imai, T. Iizuka, O. Sugiura, and M. Matsumura, published in the journal *Thin Solid Films,* 225 (1993) 168-172, but withheld this prior art from the U.S. Patent and Trademark Office, materially misrepresenting the state of the art, with an intent to deceive that Office. (Answer and Counterclaim at ¶ 19.)

ASM contends that Genus' affirmative defense must be stricken because the referenced article (by S. Imai et al.) was contained in the *Proceedings of the Second International Atomic Layer Epitaxy Symposium*, in *Thin Solid Films,* vol. 225(1-2), (1993), which was disclosed to the PTO even though it was not specifically cited to the patent examiner as an independent article. ASM also argues that Genus fails to specify what specific aspect of the Imai article was not covered cumulatively in the other references supplied to the patent examiner, or to identify who in particular made the misrepresentation.

*4 Genus responds that ASM did not provide copies of the documents to the examiner and placed the burden on the examiner to obtain them. Genus asks the Court to equate ASM's failure to disclose readily-available and lengthy documents in English to the rather more nefarious conduct in *SEL* involving a misleading partial translation of a twenty-nine-page document in Japanese.

On a motion to strike, the Court is limited to considering the material appearing on the face of the pleadings. The Court cannot consider extrinsic evidence such as Moll's letter to the examiner (albeit cited by Genus in opposition to the motion) explaining why copies of the *Proceedings* were not provided. While this defense falls short of alleging misconduct like that in *SEL* and may well fail on summary judgment, the Court declines to foreclose it at this early pleading stage. As pled, however, it lacks specificity (e.g., "including, without limitation"). Accordingly, ASM's motion to strike Genus' inequitable conduct defense as to the '365 patent is granted with leave to amend. Genus shall amend its inequitable conduct affirmative defense to provide greater specificity about ASM's failure to comply with the requirements of applicable sections of the patent regulations and ASM's intent to mislead the PTO thereby, as discussed at the December 11, 2001 hearing.

III. Motions for Leave to Amend

The parties moved for leave to amend their pleadings under Federal Rule of Civil Procedure 15(a). Genus' opposition to ASM's motion to strike, sever, and stay contains a cross-motion for leave to amend its antitrust counterclaims, as addressed above. ASM separately moves for leave to file an amended complaint naming Arthur Sherman, the inventor of the '365 patent, as a plaintiff and adding claims of infringement of the '165 patent.

*A. Legal Standard*

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see, e.g., Bowles v. Reade,* 198 F.3d 752, 757 (9th Cir.1999) ("strong policy permitting amendment"); *Yakima Indian Nation v. Washington Dep't of Revenue,* 176 F.3d 1241, 1246 (9th Cir.1999) (same); *Beery v. Hitachi Home Elecs. (Am.), Inc.,* 157 F.R.D. 481, 483, 485 (C.D.Cal.1994) (applying "extremely liberal" policy to permit amendment of patent infringement complaint). Leave to amend should be granted "unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Yakima Indian Nation,* 176 F.3d at 1246 (citation and internal quotation marks omitted); *Bowles,* 198 F.3d at 757. Undue delay alone is insufficient to justify denying a motion to amend. *Bowles,* 198 F.3d at 757.

*B. Genus' Motion for Leave to Amend*

Genus seeks to amend its counterclaims to allege that the relevant geographic scope of the ALD market is worldwide, that the worldwide ALD market is "an area of effective competition where buyers can find alternative sources of supply," and that "no other goods and services are reasonably interchangeable with the particular and distinct semiconductor manufacturing equipment and processes" that make

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 24444 (N.D.Cal.), 2002-1 Trade Cases P 73,573
(Cite as: 2002 WL 24444 (N.D.Cal.))

Page 4

up the ALD market. (Opp. Brief at 17:13-15, 18:13-18; *see also* Answer and Counterclaim at ¶¶ 39-46 and Proposed Amended Answer and Counterclaim at ¶¶ 39-46.) Genus further seeks leave to amend its predatory pricing claim to state that "[t]here is a dangerous probability that ASMI and ASM America will recoup their investment in below-costs [*sic* ] sales of the Polygon TM tool and the Pulsar TM chamber by virtue of, without limitation, their control of over 50% of the ALD market," and to specify the alleged barriers to entry in the ALD market. (Opp. Brief at 20:17-21:2; Proposed Amended Answer and Counterclaim at ¶ 39.) Applying the liberal policy of Rule 15(a), the Court grants Genus' motion for leave to amend its Answer and Counterclaim.

*C. ASM's Motion for Leave to File Amended Complaint and Supplement Case Management Schedule*

1. *Dr. Sherman*

*5 As noted above, ASM seeks leave to amend its complaint to name Dr. Arthur Sherman, inventor of the '365 patent, as a plaintiff. Genus does not oppose the addition of Dr. Sherman as a plaintiff, provided that his inclusion does not delay the scheduling established in this case, and provided that Dr. Sherman is counted as part of the "ASM side" for purposes of discovery limits. The Court grants ASM's motion to amend its complaint to add Dr. Sherman as a party. Dr. Sherman will be considered part of the "ASM side" for purposes of the discovery limits.

2. *The '165 patent*

ASM also seeks leave to amend its complaint to add allegations that Genus infringed its '165 patent. The device that is the subject of this patent is a "showerhead" that regulates the flow of gases into the reaction chambers used for the ALD processes claimed in the '590 and '365 patents. Genus opposes the addition of the '165 patent to this case on the ground that its inclusion will cause delays at least equal to those that would be caused by Genus's antitrust counterclaims, absent the stay ordered by the Court today.

The Court is not persuaded. While the addition of a fourth patent to the three patents already at issue will complicate the case somewhat, the "showerhead" device in the '165 patent is interwoven with the existing patents and will not add an undue amount of new material to the case. Moreover, counsel for Genus has previously litigated aspects of the '165 patent within this very district in an unrelated case. Further, Genus agrees that if the '165 patent were the subject of a separate action, it would be related to this case. At this early stage of the litigation, in light of the liberal policy favoring amendment of the pleadings, the Court grants ASM's motion for leave to amend its complaint to add the '165 patent infringement claim.

The real issue is timing. ASM chose not to include this older patent in its original complaint, but now urges that discovery and claims construction occur on an accelerated basis to "catch up" with the original patents in suit. ASM does not provide any particularly persuasive reason for this new haste. At the same time, Genus cannot seriously contend that discovery will be greatly complicated because its counsel previously conducted considerable discovery on this patent and stipulated to the use of that discovery in this case. Genus correctly points out, however, that it is premature for the Court to decide now whether trial of the '165 patent should be bifurcated from that of the other patents. The Court concludes that the previously-set claims construction hearings for the other patents should proceed first, as scheduled. The tutorial on the '165 patent will follow on September 19, 2002 at 9:00 a.m., with the claims construction hearing on September 26, 2002 at 9:00 a.m.

IV. ASM's Motion to Sever and Stay Antitrust Claims and Related Discovery

Pursuant to Rule 42(b), ASM moves to sever and stay Genus' four antitrust claims and related discovery until after a determination of whether or not ASM's patents are invalid. Rule 42(b) provides that the Court may order a separate trial of claims, counterclaims, or issues "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. Proc. 42(b); *see also Ellingson Timber Co. v. Great N. Ry. Co.,* 424 F.2d 497, 499 (9th Cir.1970) ("One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues.")

*6 Genus asserts counterclaims for antitrust violations based on four theories: (1) predatory pricing; (2) attempted monopolization based on a patent accumulation theory; (3) attempted monopolization based on a *Walker Process* [FN3] theory (i.e., acquisition of fraudulently-procured patents); and (4) attempted monopolization based on

a *Handgards* theory (i.e., sham litigation as an act in restraint of competition). [FN4]

> FN3. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176-77 (1965).

> FN4. Monopolization and attempted monopolization are prohibited by the Sherman Antitrust Act. 15 U.S.C. § 2. To state a claim for monopolization under Section 2 of the Sherman Act, a plaintiff must allege that: (1) the defendant possesses monopoly power in the relevant market; (2) the defendant willfully acquired or maintained that power; (3) and the defendant's conduct caused antitrust injury. *See, e.g., Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir.1996). To state a claim for attempted monopolization, a plaintiff must allege: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) a dangerous probability of success; and (4) causal antitrust injury. *Id.* at 949-50.

ASM argues that a stay will simplify the case, avoid confusion, and reduce the burden and costs imposed on the Court, the attorneys, and the parties by deferring the burdensome and expensive discovery that would necessarily arise from litigation of the antitrust claims, and possibly avoiding it altogether. The Court agrees that a stay would promote an efficient resolution of the patent invalidity issues and substantially narrow or eliminate the antitrust claims as a result. As Genus itself recognizes, its sham litigation and fraudulent procurement theories fail if the patents are not invalidated. Conversely, the *Kobe* patent accumulation theory fails if the pooled patents are declared invalid.

Genus nonetheless argues that a stay of the antitrust claims will irreparably harm both Genus and competition in the ALD market, and that this prejudice outweighs any benefits of severance. Its allegation of irreparable harm rings somewhat hollow, however, in light of its failure to bring its antitrust claims against ASM independently. Genus also contends that a stay would not be beneficial because the antitrust claims will require separate discovery in any event.

It is a common practice in federal court to stay antitrust counterclaims until after the trial of the invalidity issue. *See, e.g., In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed.Cir.1986) (discussing the "now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim"); *Hewlett-Packard Co. v. Genrad, Inc.*, 882 F.Supp. 1141, 1157-58 (D.Mass.1995) (staying counterclaim based on inequitable conduct; "[C]ourts often separate patent issues from antitrust counterclaim issues .... Antitrust issues are complex and, particularly with respect to damages, raise different issues and proof."); *Baxter Int'l, Inc. v. Cobe Lab., Inc.*, 1992 WL 77665 at *2, 4 (N.D.Ill.1992) (severing and staying discovery and trial of antitrust counterclaim in light of lack of common issues other than fraudulent procurement, prejudice to plaintiff in defending patent claim and *Handgards* claim simultaneously, burden on jury, and possibility that issues relating to antitrust counterclaim could be rendered moot); *Carlisle Corp. v. Hayes*, 635 F.Supp. 962, 967-68 (S.D.Cal.1986) (severing and staying counterclaim alleging that defendant attempted to monopolize market by seeking to enforce a patent obtained by fraud on the PTO); *Pharmacia, AB v. Hybritech, Inc.*, 224 U.S.P.Q. 975, 976, 1984 WL 1479 (S.D.Cal.1984) (severing and staying antitrust and patent misuse counterclaims based on fraudulent procurement, predatory pricing, and tying); *Components, Inc. v. Western Elec. Co., Inc.*, 318 F.Supp. 959, 966-67 (D.Me.1970) (severing and staying antitrust counterclaims from patent claims for convenience of parties and court and to avoid delay in resolving patent issues). The reasoning in all of these cases supports the severance and stay in this case of the discovery and trial of Genus' antitrust counterclaims until after a trial on the patents.

*7 Here, the benefits derived from a stay of the antitrust counterclaims outweigh any prejudice. Indeed, proceeding on the antitrust claims simultaneously with the patent claims may well delay resolution of the case by increasing its complexity exponentially, whereas many issues will likely be mooted by addressing the patent claims first. Resolution of the invalidity issue may dispose of some of the antitrust counterclaims altogether, and may potentially narrow the damages inquiry on any remaining claims to particular products or product lines. Given the multiple patents already at issue in this case, and the wide swath of non-overlapping discovery on the antitrust claims that will be required in addition to any discovery germane to both patent and antitrust claims, the Court concludes that a stay of the antitrust claims will promote judicial economy significantly.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Moreover, although Genus submitted a declaration regarding the window of opportunity in the emerging market for ALD manufacturing equipment, as noted above a stay at this time will not necessarily delay the ultimate determination of the antitrust claims significantly longer than no stay at all, because of the added complexity of proceeding on a variety of fronts simultaneously. Thus, Genus has failed to demonstrate prejudice resulting from a stay that would outweigh the judicial economy certain to result from a stay.

Therefore, discovery and trial of Genus' antitrust counterclaims are stayed until after trial on the patents at issue. The stay shall take effect upon the filing of Genus' Amended Answer and Counterclaims. This order staying the antitrust counterclaims is without prejudice to a motion by either party of lift the stay based on equitable harm, provided that such a motion is based on changed circumstances. The Court is mindful of Genus' concerns and will proceed expeditiously to resolve the entire matter as quickly and efficiently as possible.

V. ASM's Motion to Dismiss Antitrust Claims

As an alternative to its motion to sever and stay, ASM moves for dismissal of the antitrust counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In light of the Court's decision to allow amendment and then grant a stay, ASM's motion to dismiss is denied as moot.

VI. Conclusion

For the foregoing reasons, the Court orders as follows:
1. ASM's motion to strike Genus' inequitable conduct defense as to the '590 patent is granted with leave to amend.
2. ASM's motion to strike Genus' inequitable conduct defense as to the '365 patent is granted with leave to amend.
3. Genus' cross-motion for leave to amend its Answer and Counterclaims is granted.
4. ASM's motion to sever and stay discovery and trial of Genus' antitrust counterclaims until after the trial on the invalidity claim is granted without prejudice. The stay shall take effect upon the filing of Genus' Answer and Counterclaims.
5. ASM's alternative motion to dismiss the antitrust counterclaims is denied as moot in light of the amendments and stay.

*8 6. A second tutorial on the '568 patent shall be held starting at 1:30 p.m. on June 18, 2002, in Courtroom E of this Court, 450 Golden Gate Avenue, 15th Floor, San Francisco, California. A third tutorial on the '165 patent shall be held starting at 9:00 a.m. on September 19, 2002. The claims construction hearing for the '165 patent shall be held at 9:00 a.m. on September 26, 2002. The parties shall meet and confer on a briefing and disclosure schedule for the '165 patent based on the dates provided for the claims construction hearing and the tutorial, and shall jointly submit a proposed schedule to the Court no later than January 25, 2002.

2002 WL 24444 (N.D.Cal.), 2002-1 Trade Cases P 73,573

**Motions, Pleadings and Filings (Back to top)**

• 3:01CV02190 (Docket) (Jun. 06, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

LEXSEE 1996 US DIST. LEXIS 14679

ELSAG BAILEY (CANADA) INC. and FISCHER & PORTER COMPANY (d/b/a Bailey-Fischer & Porter Company), Plaintiffs, v. TROJAN TECHNOLOGIES, INC., Defendant.

CIVIL ACTION NO. 96-CV-3615

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1996 U.S. Dist. LEXIS 14679; 40 U.S.P.Q.2D (BNA) 1543; 1997-1 Trade Cas. (CCH) P71,684*

October 2, 1996, Decided
October 3, 1996, Filed; October 4, 1996, ENTERED

**DISPOSITION:** [*1] Defendant's motion to stay is GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant moved to dismiss or stay proceedings in plaintiffs' action under the Sherman Act, the Lanham Act, and unfair competition law, alleging antitrust injury caused by defendant, a competitor in the field of wastewater treatment systems.

**OVERVIEW:** Plaintiffs, competitors of defendant in the field of wastewater treatment systems, filed claims against defendant based on purported antitrust injury under the Sherman Act, the Lanham Act, and unfair competition law. Defendant moved to dismiss or stay the proceedings pending resolution of a patent infringement action defendant had filed against one of the plaintiffs in a Canadian court. Because part of plaintiffs' antitrust claims involved defendant's attempt to enforce an allegedly invalid patent, the court was required to determine whether defendant's Canadian action was objectively baseless under the Noerr-Pennington sham analysis. Acknowledging that this analysis would be greatly aided by resolution of the Canadian action, and recognizing that it could not rule upon a foreign patent's validity, the court granted defendant's motion to stay proceedings.

**OUTCOME:** Motion to stay proceedings granted, where resolution of patent infringement action in Canadian court would significantly aid in the court's analysis of antitrust claims, and court lacked authority to rule on validity of foreign patent.

**COUNSEL:** For ELSAG BAILEY (CANADA) INC., FISCHER & PORTER COMPANY d/b/a BAILEY-FISCHER & PORTER COMPANY, PLAINTIFFS: ARTHUR S. GABINET, STEVEN B. FEIRSON, DECHERT, PRICE & RHOADS, PHILA, PA USA.

For TROJAN TECHNOLOGIES INC., DEFENDANT: PAUL A. LOGAN, POWELL, TRACHTMAN, LOGAN & CARRLE, KING OF PRUSSIA, PA USA. EDWARD E. VASSALLO, DAVID F. RYAN, FITZPATRICK, CELLA, HARPER AND SCINTO, NEW YORK, NY USA.

**JUDGES:** JAMES McGIRR KELLY, J.

**OPINIONBY:** JAMES McGIRR KELLY

**OPINION:**

**MEMORANDUM AND ORDER**

**J.M. KELLY, J.**

**OCTOBER 2, 1996**

Presently before the Court is the Motion to Dismiss or Stay the present action filed by Defendant Trojan Technologies, Inc. ("Trojan"). The parties are competitors in the field of wastewater treatment systems.

Case 1:04-cv-00305-SLR   Document 54-2   Filed 04/07/2005   Page 19 of 19

Page 2

1996 U.S. Dist. LEXIS 14679, *; 40 U.S.P.Q.2D (BNA) 1543;
1997-1 Trade Cas. (CCH) P71,684

Plaintiffs' Complaint asserts causes of action based upon antitrust injury under the Sherman Act, the Lanham Act and unfair competition. Trojan asserts that the Court should dismiss this action, or in the alternative, stay proceedings pending the resolution of a patent infringement action entitled Trojan Technologies Inc. v. Fischer & Porter (Canada) Limited, No. T.1826-94, filed by Trojan in the Trial Division [*2] of the Federal Court of Canada ("Canadian Action"). It is undisputed that Fischer & Porter (Canada) Limited, defendant in the Canadian Action, is now known as Elsag Bailey (Canada) Inc. ("Elsag Bailey") and that plaintiff Fischer & Porter Company is a related entity involved in the sales of wastewater treatment systems manufactured by Elsag Bailey.

Plaintiffs argue that their claims in the present action are separate and distinct from any issues involved in the Canadian Action, however, plaintiffs admit that part of the "mosaic" of their antitrust claims is that Trojan has filed a sham action in order to enforce an invalid patent. Accordingly, the Court will be required to analyze whether Trojan's filing the Canadian Action was objectively baseless under Noerr-Pennington sham analysis, as set forth in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993)*. This Court's Noerr-Pennington analysis of the Canadian Action will at least be greatly aided and may be disposed of by resolution of the Canadian Action. Further, this Court may not rule upon the validity of a foreign patent. *Stein Associates, Inc. v. Heat & Control, Inc.,* [*3] *748 F.2d 653, 658 (Fed. Cir. 1984)*. Therefore, the Court shall grant Trojan's motion to stay these proceedings. Any other result could surely result in incomplete proceedings, a waste of judicial economy and potentially inconsistent results.

While Plaintiffs argue that the Canadian Action is stalled and a stay will significantly stretch resolution of this matter, the Court is not convinced that an antitrust case involving patent issues will be ready for trial within Plaintiffs' optimistic one year time line. Further, discovery in the Canadian Action should significantly aid in the development of issues and narrowing the scope of this matter.

**ORDER**

AND NOW, this 2nd day of October, 1996, in consideration of Defendant's Motion to Dismiss or Stay, Plaintiffs' Response thereto and Defendant's Reply, it is ORDERED that Defendant's motion to stay the proceedings in this action is GRANTED. This matter shall be placed in suspense pending resolution of the matter entitled Trojan Technologies Inc. v. Fischer & Porter (Canada) Limited, No. T.1826-94, filed by Defendant in the Trial Division of the Federal Court of Canada ("Canadian Action").

Plaintiffs' attorney shall inform the [*4] Court of the status of the Canadian Action on January 2, 1997 and every 90 days thereafter while this matter is in suspense.

BY THE COURT:

JAMES McGIRR KELLY, J.