IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>SYNGENTA SEEDS, INC.,<br>SYNGENTA BIOTECHNOLOGY, INC.,<br><br>        Defendants. | Civil Action No. 04-305-SLR<br>(lead case) |
| DEKALB GENETICS CORPORATION,<br><br>        Plaintff,<br><br>        v.<br><br>SYNGENTA SEEDS, INC.,<br>SYNGENTA BIOTECHNOLOGY, INC.<br>GOLDEN HARVEST SEEDS, INC.<br>GARWOOD SEED CO., GOLDEN SEED<br>COMPANY, L.L.C., SOMMER BROS.<br>SEED COMPANY, THORP SEED CO.,<br>and JC ROBINSON SEEDS, INC.<br><br>        Defendants. | Civil Action No. 05-355 SLR |

**NOTICE OF RULE 30(B)(6) DEPOSITION OF PLAINTIFFS
CONCERNING BUSINESS AND FINANCIAL TOPICS**

TO:   PLAINTIFFS AND THEIR ATTORNEYS OF RECORD.

      PLEASE TAKE NOTICE that Defendants Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. (collectively "Syngenta") will take the deposition of Plaintiffs Monsanto Company, Monsanto Technology LLC, DeKalb Genetics Corporation (collectively "Plaintiffs")

pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. The deposition will take place at the offices of Howrey, 1111 Louisiana, 25th Floor, Houston, TX 77002, and/or at another mutually agreed upon location. The deposition will commence on Friday, October 7, 2005, at 9 a.m. or at another agreed upon date and will continue thereafter day to day until completed. The subject matter of the deposition is set forth in Attachment A.

Plaintiffs are required to designate, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, one or more officers, directors, employees, or other persons who will testify on their behalf regarding the subject matter listed in Attachment A. Plaintiffs are requested to provide Syngenta's counsel, as soon as reasonably possible, a written designation of the name(s) and position(s) of the agent(s) or other person(s) who consent to testify on behalf of Plaintiffs and, for each person designated, the matters set forth in Attachment A as to which he or she will testify.

The deposition will be taken before a Notary Public or before some other officer authorized by law to administer oaths. The deposition will be recorded by audio, video, and stenographic means.

          Respectively submitted,

          John W. Shaw (No. 3362)
          YOUNG CONAWAY STARGATT &
            TAYLOR, LLP
          The Brandywine Building, 17th Floor
          1000 West Street
          Wilmington, Delaware 19801
          (302) 571-6600

OF COUNSEL:
Don O. Burley
Michael J. Flibbert
Howard W. Levine
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C.  20001
(202) 408-4000

Dated:  September 9, 2005               Attorneys for Defendants

## ATTACHMENT A

### Definitions

1. The term "Monsanto" shall mean Monsanto Company and Monsanto Technology LLC, together with all partners, directors, owners, officers, members, employees, agents, representatives, attorneys, and any other persons under the control of Monsanto Company or Monsanto Technology LLC, including all parents, divisions, subsidiaries, affiliates, and corporate predecessors of Monsanto Company or Monsanto Technology LLC (including Dekalb Genetics Corporation).

2. The term "DeKalb" shall mean DeKalb Genetics Corporation, together with all partners, directors, owners, officers, members, employees, agents, representatives, attorneys, and any other persons under the control of DeKalb Genetics Corporation, including all parents, divisions, subsidiaries, affiliates, and corporate predecessors of DeKalb Genetics Corporation (including Monsanto Company and Monsanto Technology LLC).

3. The term "Plaintiffs" and "you" and "your" shall mean Monsanto Company, Monsanto Technology LLC, and DeKalb Genetics Corporation collectively and individually, as well as corporate parents, subsidiaries, predecessors, affiliates, successors, divisions, departments, other organizational or operational units, officers, directors, employees, agents, servants, representatives, and attorneys.

4. The term "communication" shall mean any and all forms of information transmission or storage, including but not limited to written, oral, electronic, telephonic, or videographic inquiries, responses to inquiries, discussions, conversations, negotiations,

agreements, understandings, meetings, letters, notes, telegrams, advertisements, comments, and interviews, and all documents (as defined above) related to any such communication.

5. The term "person" shall mean any natural person or business, corporation, proprietorship, partnership, association, joint venture, or any other legal or governmental entity.

6. The term "thing" shall mean any tangible item other than a document.

7. The term "the '835 patent" shall mean U.S. Patent No. 4,940,835.

8. The term "the '880 patent" shall mean U.S. Patent No. 5,538,880.

9. The term "the '863 patent" shall mean U.S. Patent No. 6,013,863.

10. "GA21 glyphosate resistant maize plants or seed" shall mean glyphosate resistant plants, plant cells, seeds, plant lines, or any other corn products purported to have an herbicide resistant trait from the GA21 event, including but not limited to resistance to glyphosate herbicides.

11. The term "glyphosate resistant" shall mean genetically modified with the intent to be glyphosate resistant, regardless of the level of glyphosate resistance or tolerance observed.

12. The term "glyphosate resistant *Zea mays* plants" shall mean glyphosate resistant *Zea mays* plants, plant cells, seeds, plant lines, or any other corn products purported to have a glyphosate resistance trait.

13. The term "glyphosate resistant *Zea mays* cells" shall mean glyphosate resistant *Zea mays* cells, cell lines, callus, tissue, or other plant parts purported to have a glyphosate resistance trait.

14. The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of a request.

15. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, and the singular form shall be deemed to include the plural and vice-versa.

16. The term "relating to" shall mean constituting, referring to, reflecting, discussing, describing, showing, evidencing, supporting, or contradicting, or in any other way logically or factually connected to the matter discussed or identified.

17. The term "phasing out" shall mean any actual, projected, or planned reduction in sales, advertising expense, or licensing.

18. The term "promotion" shall mean any act, communication, advertising, or expenditure related to increasing knowledge or awareness of a product.

19. The term "stacked" shall refer to any plants, plant cells, seeds, plant lines, or any other corn products purported to have, or genetically modified with the intent to have, more than one genetically modified trait.

20. For purposes of this notice, terms not specifically defined shall be given their ordinary meaning. Should Plaintiffs be unable to understand the meaning of any term, Plaintiffs are invited to immediately seek clarification through Syngenta's counsel.

## Topics for Deposition

1. Plaintiffs' sales, marketing, and promotion of GA21 glyphosate resistant maize plants or seed (including "stacked" maize products) from 1997 to present, including:

    a. quantity or units sold on an annual basis;

    b. market penetration or amount of GA21 glyphosate resistant maize as a percentage of total maize acreage on an annual basis;

    c. plaintiffs' and their licensee's share of total sales of GA21 glyphosate resistant maize plants or seed on an annual basis;

    d. plaintiffs' and their licensee's share of total sales of herbicide resistant maize plants and seed;

    e. pricing methods, strategies, practices, and policies, including discounts, rebates, credits, or other allowances;

    f. actual and projected revenues (gross and net);

    g. costs of goods sold, including all direct and indirect cost allocations and cost allocation practices and policies;

    h. actual and projected margins and profitability (gross, operating, pretax, and net);

    i. internal analyses, advertising, press releases, and communications to customers or the market in general concerning the attributes, benefits, or advantages of GA21 glyphosate resistant maize plants or seed;

    j. internal analyses, advertising, press releases, and communications to customers or the market in general concerning any comparisons of GA21 glyphosate resistant maize plants or seed to any other herbicide resistant maize plant or seed; and

    k. all reasons, justifications, strategies, objectives, and plans for terminating, ending, or otherwise phasing out plaintiffs' sales of GA21 herbicide resistant maize plants or seed.

2. Plaintiffs' sales, marketing, and promotion of NK603 glyphosate resistant maize plants or seed (including "stacked" maize products) from 1997 to present, including:

    a. quantity or units sold on an annual basis;

b.  market penetration or amount of NK603 glyphosate resistant maize as a percentage of total maize acreage on an annual basis;

c.  plaintiffs' and their licensee's share of total sales of NK603 glyphosate resistant maize plants or seed on an annual basis;

d.  plaintiffs' and their licensee's share of total sales of herbicide resistant maize plants and seed;

e.  pricing methods, strategies, practices, and policies, including discounts, rebates, credits, or other allowances;

f.  actual and projected revenues (gross and net);

g.  costs of goods sold, including all direct and indirect cost allocations and cost allocation practices and policies;

h.  actual and projected margins and profitability (gross, operating, pretax, and net);

i.  internal analyses, advertising, press releases, and communications to customers or the market in general concerning the attributes, benefits, or advantages of NK603 glyphosate resistant maize plants or seed;

j.  internal analyses advertising, press releases, and communications to customers or the market in general concerning any comparisons of NK603 glyphosate resistant maize plants or seed to any other herbicide resistant maize plant or seed; and

k.  all reasons, justifications, strategies, objectives, and plans for launching or bringing to market plaintiffs' NK603 glyphosate resistant maize plants or seed or otherwise switching plaintiffs' customers and/or licensees from GA21 to NK603 glyphosate resistant maize plants or seeds.

3.  Plaintiffs' computations or methods of determining any price premium attributable to the GA21 trait in glyphosate resistant maize plants or seeds sold by plaintiffs, including the identification of each such price premium in each hybrid line sold by plaintiffs.

4.  Plaintiffs' computations or methods of determining any price premium attributable to the NK603 trait in glyphosate resistant maize plants or seeds sold by plaintiffs, including the identification of each such price premium in each hybrid line sold by plaintiffs.

5.  Plaintiffs' replanting fees assessed or collected in connection with the sale or licensing of GA21 glyphosate resistant maize plants or seed (including "stacked" maize products) from 1997 to present.

6.     Plaintiffs' replanting fees assessed or collected in connection with the sale or licensing of NK603 glyphosate resistant maize plants or seed (including "stacked" maize products) from 1997 to present.

7.     Plaintiffs' pricing methods, strategies, practices, and policies for glyphosate sold for use in combination with GA21 or NK603 glyphosate resistant maize plants or seed.

8.     Plaintiffs' actual or proposed licensing of glyphosate resistant maize traits and products or any other herbicide resistant maize traits and products (including "stacked" maize products) to seed companies, including:

    a.    identification of the license terms;

    b.    all fees, royalties, or other payments arising from or made in connection with the license;

    c.    the computation of and accounting for any fee, royalty, or other payment arising from or made in connection with the license;

    d.    all annual or other periodic letters or summaries of fees, royalties, or other payments made by or to the licensee;

    e.    the terms of any incentive agreement with the licensee, including any financial or other incentives offered and any penalties to the licensee for failure to comply with any such terms;

    f.    the computation of and accounting for any discount, rebate, or other allowance arising from or made in connection with the license or any incentive agreement; and

    g.    any financial consideration, gifts, cash payments, or payments in kind to the licensee.

9.     Plaintiffs' actual or proposed licensing of glyphosate resistant maize traits or any other herbicide resistant maize traits and products (including "stacked" maize products) to growers, including:

    a.    identification of the license terms;

    b.    all fees, royalties, or other payments arising from or made in connection with the license;

    c.    the computation of and accounting for any fee, royalty, or other payment arising from or made in connection with the license;

    d.    all annual or other periodic letters or summaries of fees, royalties, or other payments made by or to the licensee;

    e.    the terms of any incentive agreement with the licensee, including any financial or other incentives offered and any penalties to the licensee for failure to comply with any such terms;

    f.    the computation of and accounting for any discount, rebate, or other allowance arising from or made in connection with the license or any incentive agreement; and

    g.    any financial consideration, gifts, cash payments, or payments in kind to the licensee.

10.    Plaintiffs' actual or proposed licensing of glyphosate resistant maize traits or any other herbicide resistant maize traits and products to any parent, subsidiary, affiliate or other related entity.

11.    Plaintiffs' actual or proposed licensing of glyphosate resistant maize traits or any other herbicide resistant maize traits and products to any entity for research and development purposes.

12.    Plaintiffs' actual or proposed licensing of herbicide resistant maize traits and products to or from any unrelated entity or individual, including competitors of Monsanto.

13.    The Cross License and Settlement Agreement dated October 1, 1999 among Monsanto Company, DeKalb Genetics Corporation, and Syngenta Seeds, including the identification of all payments or other consideration paid or received in connection with the agreement and identification of all products and intellectual property related thereto.

14.    The May 1999 Stipulation and Agreement between DeKalb and Rhone-Poulenc Agro, S.A. (as amended), including the identification of all payment or other consideration paid or received in connection with the agreement and identification of all products and intellectual property related thereto.

15.    The Test Crossing Agreement - NK603 Roundup Ready Corn Inbreds (SYN 003193 et seq.), including the identification of all payments or other consideration paid or received in connection with the agreement and identification of all products and intellectual property related thereto.

16.    The Testing Agreement - Roundup Ready (NK603) Hybrids (SYN 003197 et seq.), including the identification of all payments or other consideration paid or received in connection with the agreement and identification of all products and intellectual property related thereto.

17.   All market analyses since January 1, 1997 by or for plaintiffs of their competitors, including Syngenta, relating to glyphosate resistant or other herbicide resistant traits, plants or seeds, including analyses of competitors, competition, market share, business plans, product plans, marketing strategies, sales forecasts, and established customers; technological capabilities; and customer perceptions of plaintiffs and their competitors, including Syngenta, as suppliers, competitors, or technology leaders.

18.   Plaintiffs' organizational structure for the marketing, sale, and licensing of glyphosate resistant and other herbicide resistant maize plants, seeds, and traits, and for the marketing, sale, licensing and distribution of herbicides used in conjunction with glyphosate resistant and other herbicide resistant maize plants, seeds and traits.

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on September 9, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz, Esquire
>Potter Anderson & Corroon LLP
>Hercules Plaza, 6th Floor
>1313 N. Market Street
>Wilmington, DE 19801

I further certify that on September 9, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

>**BY FEDERAL EXPRESS**
>
>Peter E. Moll, Esquire
>Howrey Simon Arnold & White, LLP
>1299 Pennsylvania Ave., N.W.
>Washington, D.C. 20004
>
>Susan Knoll, Esquire
>Howrey Simon Arnold & White, LLP
>750 Bering Drive
>Houston, TX 77057
>
>Kenneth A. Letzler, Esquire
>Arnold & Porter LLP
>555 12th Street, N.W.
>Washington, D.C. 20004

_____
John W. Shaw (#3362)