IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-305-SLR (Consol.) |
| | ) | |
| SYNGENTA SEEDS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER OF SYNGENTA CORPORATION, SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., ADVANTA USA, INC., GARST SEED COMPANY, AND GOLDEN HARVEST SEEDS, INC. TO MONSANTO'S COUNTERCLAIMS**

Syngenta Corporation, Syngenta Seeds, Inc., Syngenta Biotechnology, Inc. (collectively "Syngenta"), Advanta USA, Inc. ("Advanta")[1], Garst Seed Company ("Garst"), and Golden Harvest Seeds, Inc. ("Golden Harvest") (collectively "Counterdefendants"), by and through their attorneys, demand a trial by jury and hereby answer the counterclaims of Monsanto Company and Monsanto Technology LLC (collectively "Monsanto"), upon personal knowledge as to their own actions and upon information and belief as to the actions of others, as follows:

## JURISDICTION AND VENUE

1. Counterdefendants admit that Monsanto's counterclaims purport to state an action under 15 U.S.C. Section 1125(a)(1) and Delaware statutory and common law. Counterdefendants otherwise deny the allegations in paragraph 1 insofar as the allegations purport to provide any basis for imposing liability upon Counterdefendants.

---

[1] On April 1, 2005 Advanta USA, Inc. changed its name to Garst Seed Company. This answer is filed on behalf of Garst Seed Company.

1

2. Counterdefendants admit that Monsanto's counterclaims purport to constitute an action for which this Court has jurisdiction under 15 U.S.C. § 1121(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3. Counterdefendants deny the allegations contained in paragraph 3, except admit that Counterdefendants are each incorporated to do business within this District.

4. Counterdefendants admit that Monsanto's counterclaims purport to constitute an action for which this district is the proper venue under 28 U.S.C. 1391(a) and 1391(c). Counterdefendants otherwise deny the allegations in paragraph 4 insofar as the allegations purport to provide any basis for imposing liability upon Counterdefendants.

## PARTIES

**A.    Monsanto**

5. Counterdefendants admit that Monsanto Technology LLC is a Delaware corporation with its principal place of business at 800 North Lindbergh Boulevard, St. Louis, Missouri 63167. Counterdefendants further admit that Monsanto Technology LLC is a provider of biotechnology corn products, and that the use of biotechnology in corn reduces the cost of farming. Counterdefendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the last sentence in paragraph 5.

6. Counterdefendants admit that Monsanto Company is a Delaware corporation with its principal place of business at 800 North Lindbergh Boulevard, St. Louis, Missouri 63167. Counterdefendants further admit that Monsanto Company is a provider of biotechnology corn products, and that the use of biotechnology in corn reduces the cost of farming. Counterdefendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the last sentence in paragraph 6.

**B.     The Counterdefendants**

7.     Counterdefendants admit that Syngenta AG is a Swiss corporation with its principal place of business at Schwarzwaldalle 215, CH 4058 Basel, Switzerland. Counterdefendants further admit that Syngenta AG's subsidiaries are engaged in the sale of seeds, fungicides, insecticides, and herbicides and in 2004 had sales of approximately $7 billion and employed approximately 19,000 people. Counterdefendants otherwise deny the allegations contained in paragraph 7.

8.     Counterdefendants admit that Syngenta Participations AG is a Swiss corporation with its principal place of business at Schwarzwaldallee 215, c/o Syngenta International AG, CH 4058 Basel, Switzerland. Counterdefendants further admit Syngenta Participations AG holds ownership interests in corporations engaged in the area of agrarian business and related sectors. Counterdefendants further admit that Syngenta Participations AG is a wholly-owned subsidiary of Syngenta AG. Counterdefendants otherwise deny the allegations contained in paragraph 8.

9.     Counterdefendants admit that Syngenta Seeds, Inc. is a corporation duly organized under the laws of Delaware with its principal place of business at 7500 Olson Memorial Highway, Golden Valley, Minnesota 55427. Counterdefendants further admit that Syngenta Seeds, Inc. is engaged in the sale of commercial seeds and is an indirect, wholly owned subsidiary of Syngenta AG. Counterdefendants otherwise deny the allegations contained in paragraph 9.

10.    Counterdefendants admit that Syngenta Biotechnology, Inc. is a corporation duly organized under the laws of Delaware, with its principal place of business at 3054 Cornwallis Road, Research Triangle Park, North Carolina, 27709, and is an indirect, wholly owned subsidiary of Syngenta AG. Counterdefendants further admit that Syngenta Biotechnology, Inc.

conducts research in the areas of weed, insect and disease control for crops. Counterdefendants otherwise deny the allegations contained in paragraph 10.

11. Counterdefendants admit that Syngenta Corporation is a corporation duly organized under the laws of Delaware, with its principal place of business at 2200 Concord Pike, Wilmington, Delaware 19850. Counterdefendants further admit that Syngenta Corporation is an indirect, wholly owned subsidiary of Syngenta AG. Counterdefendants otherwise deny the allegations contained in paragraph 11.

12. Counterdefendants admit that until April 1, 2005, Advanta USA, Inc. was a corporation duly organized under the laws of Delaware, doing business under the name of Garst. As of April 1, 2005, Advanta USA, Inc. changed its name to Garst Seed Company and is a corporation duly organized under the laws of Delaware doing business under the name of Garst. Counterdefendants also admit that Advanta USA, Inc., now known as Garst, has its principal place of business at 2369 330th Street, Slater, IA 50244. Counterdefendants otherwise deny the allegations contained in paragraph 12.

13. Counterdefendants admit that as of April 1, 2005 Garst Seed Company is a corporation duly organized under the laws of Delaware, with its principal place of business at 2369 330th Street, Slater, IA 50244. Counterdefendants admit that Garst is engaged in the sale of crop seeds, including genetically modified corn seeds. Counterdefendants further admit that Syngenta AG has an indirect majority ownership interest in Garst. Counterdefendants otherwise deny the allegations contained in paragraph 13.

14. Counterdefendants admit that Golden Harvest Seeds, Inc. is a corporation duly organized under the laws of Delaware with its principal place of business at 220 N. Eldorado Rd., Ste E, Bloomington, IL 61704. Counterdefendants further admit that Syngenta AG owns an

indirect majority interest in the five companies of Golden Harvest Harvest Seeds, Inc. (Garwood Seed Co., Golden Seed Company, L.L.C., J.C. Robinson Seeds, Inc., Sommer Bros. Seed Company and Thorp Seed Company) and that these five companies are engaged in the sale of crop seeds, including genetically modified corn seeds. Counterdefendants otherwise deny the allegations contained in paragraph 14.

15. Counterdefendants deny the allegations contained in paragraph 15. Statements within Syngenta AG's website speak for themselves.

16. Counterdefendants admit that Syngenta AG files a consolidated financial statement with the United States Securities and Exchange Commission. Counterdefendants otherwise deny the allegations contained in paragraph 16.

17. Counterdefendants deny the allegations contained in paragraph 17. Statements within Syngenta AG's 2004 Annual Report speak for themselves.

18. Counterdefendants admit that Michael Mack is a member of the Executive Committee of Syngenta AG and that Jeffrey Beard was also a member of Syngenta AG's Executive Committee. Counterdefendants otherwise deny the allegations contained in paragraph 18.

19. Counterdefendants deny the allegations contained in paragraph 19.

## FACTS

20. Counterdefendants admit the allegations contained in paragraph 20.

21. Counterdefendants admit the allegations contained in the first sentence of paragraph 21. Counterdefendants further admit that Monsanto sells glyphosate herbicide under the brand name Roundup®. Counterdefendants otherwise deny the allegations contained in paragraph 21.

A.  **Development of the GA21 and NK603 Events**

22.    Counterdefendants deny the allegations contained in paragraph 22.

23.    Counterdefendants admit the first and second sentences of paragraph 23. Counterdefendants otherwise deny the allegations contained in paragraph 23.

24.    Counterdefendants admit Monsanto has sold and licensed glyphosate-resistant corn traits/seed under the brand name "Roundup Ready®." Counterdefendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 24.

25.    Counterdefendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

B.  **The Roundup Ready® Corn License and Seed Services Agreement with Garst Seed Company**

26.    Without admitting its validity or enforceability, Counterdefendants admit that in March 1998 Garst Seed Company and Monsanto entered into an agreement entitled "Roundup Ready® Corn License and Seed Services Agreement" ("Garst GA21 Agreement"). Without admitting its validity or enforceability, the Garst GA21 Agreement and any subsequent modifications and amendments speak for themselves. Counterdefendants otherwise deny the allegations contained in paragraph 26.

27.    Without admitting its validity or enforceability, the Garst GA21 Agreement speaks for itself and is best understood in its entirety. Counterdefendants otherwise deny the allegations contained in paragraph 27.

28.    Without admitting its validity or enforceability, the Garst GA21 Agreement speaks for itself and is best understood in its entirety. Counterdefendants deny all remaining allegations contained in paragraph 28.

29. Without admitting its validity or enforceability, the Garst GA21 Agreement speaks for itself and is best understood in its entirety. Counterdefendants otherwise deny the allegations contained in paragraph 29.

30. Without admitting its validity or enforceability, the Garst GA21 Agreement speaks for itself and is best understood in its entirety. Counterdefendants otherwise deny the allegations contained in paragraph 30.

31. Without admitting its validity or enforceability, the Garst GA21 Agreement speaks for itself and is best understood in its entirety. Counterdefendants otherwise deny the allegations contained in paragraph 31.

**C.   The Roundup Ready® Corn License and Seed Services Agreement with the Golden Harvest Seeds, Inc.**

32. Without admitting its validity or enforceability, Counterdefendants admit that in 1998 Golden Harvest Seeds, Inc. and Monsanto entered into an agreement entitled "Roundup Ready® Corn License and Seed Services Agreement" ("Golden Harvest GA21 Agreement"). Without admitting its validity or enforceability, the Golden Harvest GA21 Agreement and any subsequent modifications and amendments speak for themselves. Counterdefendants otherwise deny the allegations contained in paragraph 32.

33. Without admitting its validity or enforceability, the Golden Harvest GA21 Agreement speaks for itself and is best understood in its entirety.

34. Without admitting its validity or enforceability, the Golden Harvest GA21 Agreement speaks for itself and is best understood in its entirety. Counterdefendants otherwise deny the allegations contained in paragraph 34.

35.  Without admitting its validity or enforceability, the Golden Harvest GA21 Agreement speaks for itself and is best understood in its entirety.  Counterdefendants otherwise deny the allegations contained in paragraph 35.

36.  Without admitting its validity or enforceability, the Golden Harvest GA21 Agreement speaks for itself and is best understood in its entirety.  Counterdefendants otherwise deny the allegations contained in paragraph 36.

37.  Without admitting its validity or enforceability, the Golden Harvest GA21 Agreement speaks for itself and is best understood in its entirety.  Counterdefendants otherwise deny the allegations contained in paragraph 37.

38.  Without admitting its validity or enforceability, the Golden Harvest GA21 Agreement speaks for itself and is best understood in its entirety.

39.  Counterdefendants admit that on or about August 11, 2004 Monsanto sent a letter to Golden Harvest stating that Monsanto intended to terminate the Golden Harvest GA21 Agreement.  Counterdefendants otherwise deny the allegations contained in paragraph 39.

**D.   Alleged Termination of GA21 Use Rights**

40.  Without admitting their validity or enforceability, the GA21 Agreements speak for themselves; however, Counterdefendants admit that Monsanto, realizing that its licensed rights were at risk as a result of the litigation between Rhone-Poulenc Agro, S.A. ("RPA") and DeKalb Genetics Corporation ("DeKalb") and Monsanto, required customers to which it had sublicensed GA21 to switch to NK603 and sign NK603 contracts.  Counterdefendants further admit that by letter on February 28, 2000, Monsanto announced its plan to withdraw GA21 from the market when it notified its customers that no GA21 hybrid "may be produced, sold or used" after February 28, 2005 (five years from the date of the letter).  Counterdefendants further admit

that Monsanto reconfirmed the 2005 cutoff for production, sale and use of GA21 by letter dated June 19, 2001. Counterdefendants otherwise deny the allegations in paragraph 40.

41. Counterdefendants admit that in 2003 Monsanto sent a letter to seed companies purporting to extend the deadline for the sale of any remaining inventory of GA21 until June 28, 2005. Monsanto's letters speak for themselves. Counterdefendants otherwise deny the allegations in paragraph 41.

42. Counterdefendants admit that in 2004 Monsanto sent a letter to seed companies stating that no production of GA21 corn is allowed in 2004 and all remaining GA21 seed stock must be destroyed. The March 17, 2004 letter speaks for itself. Counterdefendants otherwise deny the allegations contained in paragraph 42.

43. Counterdefendants' Amended Complaint speaks for itself. Counterdefendants otherwise deny the allegations contained in paragraph 43.

### E. Syngenta AG's Alleged Strategy to Expand its Presence in the United States

44. Counterdefendants admit that Syngenta AG acquired an indirect ownership interest in the Garst and Golden Harvest seed companies. Counterdefendants otherwise deny the allegations contained in paragraph 44.

45. Counterdefendants admit that on May 12, 2004 a Syngenta affiliate announced its intention to acquire Advanta BV, including Advanta's U.S. subsidiary then doing business under the name of Garst Seed Company and its U.S. corn and soybean seed businesses, and that the acquisition of Advanta was completed in September 2004. The May 12, 2004 press release speaks for itself. Counterdefendants otherwise deny the allegations contained in paragraph 45.

46. Counterdefendants admit that on June 25, 2004 a Syngenta affiliate announced an agreement to acquire Golden Harvest Seeds, Inc., a group of seed companies, and that on August 2, 2004, a Syngenta affiliate announced that the acquisition was completed. The June 25, 2004

and August 2, 2004 press releases speak for themselves. Counterdefendants otherwise deny the allegations contained in paragraph 46.

47. Without admitting their validity or enforceability, Counterdefendants admit that in 1998 Garst and Golden Harvest entered into GA21 License Agreements with Monsanto. Counterdefendants further admit that Syngenta never independently obtained a GA21 license from Monsanto to commercialize GA21 corn. Counterdefendants otherwise deny the allegations contained in paragraph 47.

48. Counterdefendants admit that Garst's and Golden Harvest's source of germplasm for certain Garst and Golden Harvest GA21 hybrids was Monsanto. Counterdefendants otherwise deny the allegations contained in paragraph 48.

**F.  Syngenta's Alleged Wrongful Sale of Glyphosate-Resistant Corn Containing GA21**

49. Counterdefendants deny the allegations contained in paragraph 49.

50. Counterdefendants admit that Garst transferred to Syngenta inbred seed lines that contained GA21. Counterdefendants otherwise deny the allegations contained in paragraph 50.

51. Counterdefendants admit on May 10, 2004 Syngenta and Advanta USA, Inc. entered into a written agreement, pursuant to which Advanta agreed to transfer to Syngenta inbred seed lines that contained GA21. Counterdefendants otherwise deny the allegations contained in paragraph 51.

52. Counterdefendants admit that on May 12, 2004 a Syngenta affiliate issued a press release. The May 12, 2004 press release speaks for itself and is best understood in its entirety. Counterdefendants otherwise deny the allegations contained in paragraph 52.

53. Counterdefendants admit that Syngenta Participations AG has a registration pending for the Agrisure Advantage trademark. Counterdefendants otherwise deny the allegations contained in paragraph 53.

54. Counterdefendants deny the allegations contained in paragraph 54.

55. Counterdefendants deny the allegations contained in paragraph 55.

56. The quoted passages, selectively chosen from Syngenta's Interrogatory Objections and Responses in the Lundquist Patent Litigation, speak for themselves and are best understood in context. Counterdefendants otherwise deny the allegations contained in paragraph 56.

57. Counterdefendants admit that Syngenta has made commercially available and sold the H-8845GT, H-7371GT, and H-8124GT corn lines beginning in 2004 and continuing to the present. Counterdefendants otherwise deny the allegations contained in paragraph 57.

58. The Interrogatory Objections and Responses, and other discovery in the Lundquist Patent Litigation, speak for themselves and are best understood in their entirety. Counterdefendants otherwise deny the allegations contained in paragraph 58.

59. Counterdefendants admit that Syngenta has made commercially available and sold the N58-L8, N63-U9, N73-F7, and N75-B1 corn lines beginning in 2004 and continuing to the present. Counterdefendants otherwise deny the allegations contained in paragraph 59.

60. Counterdefendants deny the allegations contained in paragraph 60.

61. Counterdefendants deny the allegations contained in paragraph 61 and state that the Agrisure GT Advantage Reference Guide speaks for itself and is best understood in its entirety.

62. Counterdefendants deny the allegations contained in paragraph 62.

63. Counterdefendants admit that Golden Harvest Seeds, Inc. has communicated its ability to provide glyphosate tolerant corn under the Agrisure GT brand. Counterdefendants otherwise deny the allegations contained in paragraph 63.

**F.    Alleged Damage to Monsanto**

64. Counterdefendants deny the allegations contained in paragraph 64.

## COUNT I:

## ALLEGED REVERSE PASSING OFF UNDER THE LANHAM ACT

65. Counterdefendants incorporate and restate their answers to the allegations of paragraphs 1 through 64.

66. Counterdefendants are filing a motion to dismiss this claim and therefore are not required to answer the allegations contained in paragraph 66 at this time. To the extent an answer is necessary, Counterdefendants deny the allegations contained in paragraph 66.

67. Counterdefendants are filing a motion to dismiss this claim and therefore are not required to answer the allegations contained in paragraph 68 at this time. To the extent an answer is necessary, Counterdefendants deny the allegations contained in paragraph 67.

68. Counterdefendants are filing a motion to dismiss this claim and therefore are not required to answer the allegations contained in paragraph 68 at this time. To the extent an answer is necessary, Counterdefendants deny the allegations contained in paragraph 68.

## COUNT II:

## ALLEGED VIOLATIONS OF THE

## DELAWARE DECEPTIVE TRADE PRACTICES ACT

69. Counterdefendants incorporate and restate their answers to the allegations of paragraphs 1 through 69.

70. Counterdefendants are filing a motion to dismiss this claim and therefore are not required to answer the allegations contained in paragraph 70 at this time. To the extent an answer is necessary, Counterdefendants deny the allegations contained in paragraph 70.

71. Counterdefendants are filing a motion to dismiss this claim and therefore are not required to answer the allegations contained in paragraph 71 at this time. To the extent an answer is necessary, Counterdefendants deny the allegations contained in paragraph 71.

## COUNT III:

### FALSE ADVERTISING UNDER THE LANHAM ACT

72. Counterdefendants incorporate and restate their answers to the allegations contained in paragraphs 1 through 71.

73. Counterdefendants are filing a motion to dismiss this claim and therefore are not required to answer the allegations contained in paragraph 73 at this time. To the extent an answer is necessary, Counterdefendants deny the allegations contained in paragraph 73.

74. Counterdefendants are filing a motion to dismiss this claim and therefore are not required to answer the allegations contained in paragraph 74 at this time. To the extent an answer is necessary, Counterdefendants deny the allegations contained in paragraph 74.

75. Counterdefendants are filing a motion to dismiss this claim and therefore are not required to answer the allegations contained in paragraph 75 at this time. To the extent an answer is necessary, Counterdefendants deny the allegations contained in paragraph 75.

## COUNT IV:

### ALLEGED TORTIOUS INTERFERENCE WITH A CONTRACT BY SYNGENTA

76. Counterdefendants incorporate and restate their answers to the allegations contained in paragraphs 1 through 75.

77. Counterdefendants deny the allegations contained in paragraph 77.

78. Counterdefendants deny the allegations contained in paragraph 78.

79. Counterdefendants deny the allegations contained in paragraph 79.

80. Counterdefendants deny the allegations contained in paragraph 80.

## PRAYER FOR RELIEF

In answer to the Prayer for Relief, Counterdefendants deny that Monsanto is entitled to any of the relief sought in paragraphs a. – d. of the Prayer for Relief and further deny that Monsanto is entitled to any relief whatsoever.

## GENERAL DENIAL

Counterdefendants deny any and all allegations contained in the counterclaims that are not expressly admitted in this answer.

## DEFENSES

The following defenses apply to all causes of action alleged in the counterclaims. Syngenta hereby gives notices that it intends to rely upon any additional defenses that become available or apparent during discovery or otherwise, and thus reserves the right to amend its answer to assert such additional defenses.

### First Defense

Monsanto's claims are barred, in whole or in part, because any rights to GA21 forming the foundation to the GA21 agreements relied upon by Monsanto are void as explained by the Federal Circuit in *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F. 3d 1323 (Fed. Cir. 2002).

### Second Defense

Monsanto's claims are barred, in whole or in part, because Syngenta acquired rights to GA21 pursuant to an Acquisition Agreement Relating to Certain Corn Assets of Bayer

CropScience S.A. and License Agreement Between Bayer CropScience S.A. as Seller and Syngenta Participations AG as Purchaser dated January 9, 2004.

### Third Defense

Monsanto's claims are barred, in whole or in part, because the GA21 agreements relied upon by Monsanto are void as a result of Monsanto's lack of rights to GA21 and/or as a result of Monsanto's antitrust conduct.

### Fourth Defense

Monsanto's claims are barred for failure to state a claim upon which relief can be granted.

### Fifth Defense

Monsanto's claims are barred, in whole or in part, because Monsanto fails to allege acts and/or conduct constituting a violation of law by Syngenta.

### Sixth Defense

Monsanto's claims are barred by the statute of limitations.

### Seventh Defense

Monsanto's claims are barred by doctrine of laches, waiver and/or estoppel.

### Eighth Defense

Monsanto has failed to mitigate its damages, if any.

### Ninth Defense

Monsanto's claims are barred, in whole or in part, because they have not suffered, and will not suffer, any injury, including but not limited to injury of the type the Lanham Act, the Delaware Deceptive Trade Practices Act and the law of tortious interference were designed to

prevent, nor sustained any injury to a legally protected or cognizable interest, by reason of the conduct alleged in the counterclaims.

### Tenth Defense

Monsanto's claims are barred, in whole or in part, on the grounds that Monsanto would be unjustly enriched if it was allowed to recover the alleged damages.

### Eleventh Defense

Monsanto's claims are barred, in whole or in part, by Monsanto's unclean hands, including, but not limited to, Monsanto's unlawful attempts to eliminate GA21 as a competitive product in the marketplace and Monsanto's attempt to perpetuate the fraudulent acquisition of GA21 by DeKalb which is described in *Rhone-Poulenc Agro, S.A. v. Monsanto Co. and DeKalb Genetics Corp.*, 2000 U.S. Dist. LEXIS 21330 (M.D.N.C. 2000).

### Twelfth Defense

Any injuries or damages Monsanto may have suffered were caused solely and proximately by the acts or omissions of others.

### Thirteenth Defense

Any and all of Syngenta's actions challenged by Monsanto were lawful, justified, and carried out in furtherance of Syngenta's legitimate business interests.

### Fourteenth Defense

Monsanto has a remedy at law and no basis exists for injunctive relief.

### PRAYER

Having fully answered Monsanto's claims, Syngenta prays:

1. For dismissal of the counterclaims with prejudice;

2. For the award of Syngenta's costs and attorney's fees, as may be allowed by law; and

3. For such other relief as the Court deems just and appropriate.

        Respectfully submitted,

        YOUNG CONAWAY STARGATT & TAYLOR, LLP

        _____
        John W. Shaw (No. 3362)
        Rolin P. Bissell (No. 4478)
        The Brandywine Building, 17th Floor
        1000 West Street
        Wilmington, Delaware 19801
        (302) 571-6600

        *Attorneys for Plaintiff*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004
(212) 508-8000

Dated: September 14, 2005

DB01:1851231.1     059155.1008

**CERTIFICATE OF SERVICE**

I, John W. Shaw, Esquire, hereby certify that on September 14, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>   Richard L. Horwitz, Esquire
>   Potter Anderson & Corroon LLP
>   Hercules Plaza, 6th Floor
>   1313 N. Market Street
>   Wilmington, DE 19801

I further certify that on September 14, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

>   **BY FEDERAL EXPRESS**
>
>   Peter E. Moll, Esquire
>   Howrey Simon Arnold & White, LLP
>   1299 Pennsylvania Ave., N.W.
>   Washington, D.C. 20004
>
>   Susan Knoll, Esquire
>   Howrey Simon Arnold & White, LLP
>   1111 Louisiana, 25th Floor
>   Houston, TX 77002-5242
>
>   Kenneth A. Letzler, Esquire
>   Arnold & Porter LLP
>   555 12th Street, N.W.
>   Washington, D.C. 20004

/s/ John W. Shaw
John W. Shaw (#3362)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com