IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONSANTO COMPANY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No.: 04-305-SLR (Consol.) |
| ) | |
| SYNGENTA SEEDS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**SYNGENTA SEEDS, INC., SYNGENTA CORPORATION,
SYNGENTA BIOTECHNOLOGY, INC., ADVANTA USA, INC.,
GARST SEED COMPANY, GOLDEN HARVEST SEEDS, INC.'S
OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
<u>COUNTERCLAIMS NOS. 1-3</u>**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Plaintiff and certain Counterdefendants*

OF COUNSEL:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

SHEARMAN & STERLING LLP
Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004
(202) 508-8000

Dated: September 14, 2005

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................... iii

**INTRODUCTION** ..................................................................................................................... 1

**NATURE AND STAGE OF PROCEEDINGS** ........................................................................ 3

**SUMMARY OF FACTS** ........................................................................................................... 4

**STANDARD OF REVIEW** ...................................................................................................... 6

**ARGUMENT** ............................................................................................................................ 7

    I.    MONSANTO HAS FAILED TO STATE A REVERSE PASSING OFF CLAIM UNDER THE LANHAM ACT ................................................................. 7

    II.   MONSANTO HAS FAILED TO STATE A CLAIM UNDER THE LANHAM ACT FOR FALSE ADVERTISING ............................................... 10

    III.  MONSANTO HAS FAILED TO STATE A CLAIM UNDER THE DELAWARE DECEPTIVE TRADE PRACTICES ACT ................................... 13

**CONCLUSION** ...................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*ACCU Personnel, Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191 (D. Del. 1994) .................................. 14

*Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478 (D. Del. 1998) ..................................................... 13

*Bretford Mfg., Inc. v. Smith System Mfg. Co.*, 286 F. Supp. 2d 969 (N.D. Ill. 2003) ................. 9, 12

*Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 344 F. Supp. 2d 923 (D. Del. 2004) ........................................................................................................................... 6

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ............................. *passim*

*General Universal Sys., Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004) ..................................................... 8

*Toro Co. v. Textron, Inc.*, 499 F. Supp. 241 (D. Del. 1980) ............................................................. 13

*Larkin Group, Inc. v. Aquatic Design Consultants, Inc.*, 323 F. Supp. 2d 1121 (D. Kan. 2004) ........................................................................................................................................... 9

*Mays & Associates, Inc. v. Euler*, 370 F. Supp. 2d 362 (D. Md. 2005) ............................................. 8

*Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir. 1997) ................................................. 6

*Pioneer Hi-Bred Int'l v. Syngenta Seeds, Inc.*, Civil Action No. 4:02-cv-90541 (C.D. Iowa Aug. 17, 2004) ............................................................................................................ 10, 11

*Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204 (D. Conn. 2005) ................................................ 12, 13

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323 (Fed. Cir. 2002) ................... 5

*Rhone-Poulenc Agro, S.A. v, Monsanto Co. and DeKalb Genetics Corp.*, No. 1:97 CV 1138, 2000 U.S. Dist. LEXIS 21330 (M.D.N.C. Feb 8, 2000) ........................................................... 5

*Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 350 F. Supp. 2d 613 (E.D. Pa. 2004) ..................... 9

*Twentieth Century Fox Film Corp. v. Dastar Corp.*, 68 U.S.P.Q. 2d 1536 (C.D. Cal. 2003) ........................................................................................................................................ 13

*Web Printing Controls, Co. v. Oxy-Dry Corp.*, 906 F.2d 1202 (7th Cir. 1990) ................................ 7

*Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177 (C.D. Cal. 2003) ................................. 13

*Young v. Joyce*, 351 A.2d 857 (Del. 1975) ..................................................................................14

## STATUTES

5 U.S.C. § 1125(a)(1)(A) ................................................................................................................7

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1, 15

## MISCELLANEOUS

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 25.3 (4th ed. 2003) .........................................................................................................................................7

Plaintiff-Counterdefendant Syngenta Seeds, Inc. and Counterdefendants Syngenta Corporation, Syngenta Biotechnology, Inc. (collectively "Syngenta"), Advanta USA, Inc.[1], Garst Seed Company ("Garst"), and Golden Harvest Seeds, Inc. ("Golden Harvest") move under Fed. R. Civ. P. 12(b)(6) to dismiss Counts I, II and III of the Amended Answer and Counterclaims ("AAC") filed by Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") for failure to state a claim upon which relief can be granted.

## INTRODUCTION

Monsanto's counterclaims are a blatant attempt to repackage its existing patent claims under the guise of the Lanham Act and the Delaware Deceptive Trade Practices Act. Monsanto alleges that Syngenta violated the Lanham Act and the Delaware Deceptive Trade Practices Act: (1) by selling glyphosate-tolerant corn seeds that contain Monsanto's GA21 technology as its own corn seed product ("reverse passing off"); and (2) by stating that Syngenta owns, has acquired, or has developed the GA21 corn seed that it is currently selling ("false advertising"). The crux of both claims is that Syngenta allegedly has no rights to the GA21 corn seed it is currently selling because Monsanto owns the GA21 technology "contained in" that product. This issue – whether Syngenta has the right to commercialize GA21 – is the precise issue at the heart of the patent cases before this Court. Indeed, in the <u>patent case</u>, Monsanto recently took several Fed. R. Civ. P. 30(b)(6) depositions of Syngenta concerning these same issues – namely, the "true source" of Syngenta's GA21 and the "rights" to GA21 that Syngenta acquired.

Monsanto's attempt to assert Lanham Act and Delaware Deceptive Trade Practices Act claims based on rights to GA21 technology "contained within" Syngenta's GA21 corn seed is precluded under the Supreme Court's recent decision in *Dastar Corp. v. Twentieth Century Fox*

---

[1] On April 1, 2005 Advanta USA, Inc. changed its name to Garst Seed Company. This motion and opening brief is filed on behalf of Garst Seed Company.

*Film Corp.,* 539 U.S. 23 (2003). In *Dastar*, the Supreme Court limited reverse passing off claims to plaintiffs who actually manufactured or produced the final tangible product that the defendant is selling as its own. Where the plaintiff contributed an idea, concept, or technology and the defendant produced the final tangible good, the Court held the plaintiff could not state a claim for reverse passing off under the Lanham Act. This is precisely what Monsanto has done. Monsanto alleges that it "contributed" an inbred corn seed line containing GA21 technology that Syngenta crossed with another corn inbred line to make the GA21 hybrid corn seed that is sold to growers. Monsanto admits that it did not manufacture or produce the finished GA21 corn seed that Syngenta currently is selling. Accordingly, *Dastar* forecloses Monsanto's reverse passing off claim.

*Dastar* also forecloses Monsanto's attempt to backdoor its reverse passing off claim (as well as its patent claim) as a false advertising claim under the Lanham Act. Following *Dastar*, courts have held that *Dastar* precludes false advertising claims that "shoe-horn" reverse passing off allegations into the false advertising rubric. Again, this is exactly what Monsanto has done. Monsanto's false advertising claim is nothing more than a reiteration of its reverse passing off claim – namely, Monsanto alleges that Syngenta made false statements that it owned or developed its GA21 corn product because it did not acknowledge that Monsanto allegedly contributed the GA21 event. This claim thus fails under *Dastar* and the cases applying *Dastar*.

As the Supreme Court noted in *Dastar*, the type of claim Monsanto has asserted is more properly brought under the laws designed to protect ideas and innovation, copyright and patent laws – not the Lanham Act. To allow otherwise would interfere with the "carefully crafted bargain" embodied in copyright and patent rights. *Id.* at 33-37. Monsanto's claims under the Lanham Act and the Delaware Deceptive Trade Practices Act should be dismissed.

## NATURE AND STAGE OF PROCEEDINGS

On July 28, 2004, Syngenta Seeds, Inc. filed this antitrust case against Monsanto. The complaint sets forth three Sherman Act Section 2 (monopolization) violations based on a pervasive pattern of anticompetitive practices designed to entrench Monsanto's stranglehold over several key biotechnology corn trait and seed markets, including, among other practices: bundling commercial incentives across several products to create an impenetrable barrier for Syngenta to compete (Second Amended Complaint ("Compl.") at ¶¶ 111-13, 132); enforcing exclusive dealing contracts to prevent Syngenta from competing (*id.* at ¶¶ 97-110, 131); filing baseless patent cases (*id.* at ¶¶ 72-78); misrepresenting Syngenta's ability to commercialize glyphosate-tolerant traits to discourage seed companies from dealing with Syngenta (*id.* at ¶¶ 79-81); intimidating seed companies not to do business with Syngenta (*id.* at ¶¶ 100-09); and denying Syngenta access to foundation seeds (*id.* at ¶¶ 114, 125-36). Monsanto's anticompetitive conduct has caused and threatens to cause substantial harm in corn traits and seed markets by thwarting Syngenta's ability to compete effectively and by depriving consumers of additional choices and lower prices.

Syngenta Seeds, Inc. filed its First Amended Complaint in the antitrust case on September 14, 2004. Monsanto moved to dismiss that complaint as a compulsory counterclaim to the Shah patent case, one of two GA21-related patent cases it has filed against Syngenta, or, in the alternative, to consolidate the antitrust case and the Shah patent case. The Court denied the motion to dismiss, but consolidated the patent and antitrust cases. On April 7, 2005, Monsanto answered the Amended Complaint and moved to stay the case. The Court denied the motion to stay. On July 13, 2005, Monsanto moved for leave to file an amended answer with counterclaims. Syngenta did not oppose the motion and the Court granted it on August 13, 2005.

On August 12, 2005, Syngenta filed a motion for leave to file a Second Amended Complaint adding a count charging Monsanto with a Lanham Act violation based on its false statements regarding GA21 rights (*id.* at ¶¶ 200-06). The Court granted that motion.

Monsanto asserts four counterclaims: (1) reverse passing off under the Lanham Act (Count I); (2) violations of the Delaware Deceptive Trade Practices Act (Count II); (3) false advertising under the Lanham Act (Count III); and (4) tortious interference with a contract (Count IV). Monsanto's counterclaim also names seven new parties: Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta, Garst, Golden Harvest, Syngenta AG, and Syngenta Participations AG. Monsanto has served its amended answer and counterclaims on each counterdefendant except Syngenta AG and Syngenta Participations AG, which are foreign entities that must be served through the Hague Convention.[2]

## SUMMARY OF FACTS[3]

This case involves a dispute concerning the rights to corn seed containing the trait that permits farmers to grow corn tolerant to a leading non-selective herbicide, glyphosate. The glyphosate-tolerant trait allows growers to spray glyphosate herbicide over the entire crop to kill weeds without damaging the crop. (Compl. at ¶ 2.) In 1998, Monsanto began marketing a glyphosate-tolerant corn trait (sold under the brand name Roundup Ready) using the "GA21" event. (AAC at ¶ 26.) In or about that time, Monsanto entered GA21 license agreements with Garst and Golden Harvest, as well as many other seed companies, granting the seed companies licenses to "develop, produce, have produced, and sell" corn hybrids produced through crossing

---

[2] Because Syngenta AG and Syngenta Participations AG have not been served and are not subject to personal jurisdiction, they are not joining this motion.

[3] Counterdefendants accept Monsanto's allegations as true solely for the purposes of this motion.

a GA21 corn line from Monsanto with another inbred line from the seed company. (AAC at ¶ 26.)

Monsanto had obtained rights to GA21 via a non-exclusive sublicense from DeKalb Genetics Corporation ("DeKalb"), which, in turn, had licensed the event from Rhone-Poulenc Agro, S.A. ("RPA"). (Compl. at ¶¶ 33, 40.) DeKalb, however, had misappropriated the rights to GA21 from RPA, and as a result in 2000 was found to have no rights to GA21. *See Rhone-Poulenc Agro, S.A. v, Monsanto Co. and DeKalb Genetics Corp.*, No. 1:97 CV 1138, 2000 U.S. Dist. LEXIS 21330 (M.D.N.C. Feb 8, 2000). In 2002, the Federal Circuit determined that Monsanto – which by then owned DeKalb – also lacked rights to GA21 because of the DeKalb's misappropriation, and found that Monsanto's GA21 license was void. *See Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323 (Fed. Cir. 2002); (Compl. at ¶ 41.) RPA granted Monsanto and its licensees the non-exclusive right to make, use, sell, import and export GA21 event corn seed through the 2004 planting season in exchange for royalties. (AAC at ¶ 25.) In 2000, soon after the court decision that DeKalb had no rights to GA21, and without informing the seed companies of the ruling, Monsanto began requiring seed companies who had licensed GA21 from Monsanto to switch to NK603 (an alternative glyphosate-tolerant trait owned by Monsanto) by 2005, and to sign NK603 license agreements. (Compl. at ¶ 42.)

On February 5, 2004, Syngenta's affiliate acquired rights to the GA21 glyphosate-tolerant corn trait from Bayer CropScience, the successor to RPA. (*Id.* at ¶ 64.) On May 12, 2004, Syngenta's affiliate announced this acquisition as well as its intention to acquire Garst Seeds. (AAC at ¶ 45.) On June 25, 2004 Syngenta's affiliate announced its intent to acquire Golden Harvest. (*Id.* at ¶ 46.) On May 12, 2004, the same day Syngenta's affiliate announced the acquisitions of Garst and rights to GA21, Monsanto filed a patent infringement lawsuit

against Syngenta. *See Monsanto Company et al. v. Syngenta Seeds, Inc. et al.*, C.A. No. 04-305 (D.Del. filed May 12, 2004) (the "Shah" patent case). Approximately two months later, Monsanto, through DeKalb, filed a second patent infringement lawsuit. *See DeKalb Genetics Corporation v. Syngenta Seeds, Inc. et al.*, C.A. No. 04C50323 (N.D. Ill. filed July 27, 2004) (the "Lundquist" patent case). Both lawsuits alleged that Syngenta's use of GA21 technology in corn seed violate Monsanto patents. (Compl. at ¶¶ 72-78.)

Around the time of the acquisitions, Garst and Golden Harvest transferred to Syngenta inbred corn seed lines containing GA21 technology. (AAC at ¶¶ 50, 56.) Those GA21 inbred lines then were crossed with other proprietary inbred lines to make GA21 hybrid corn seeds, which were offered for sale by Syngenta, Garst, and/or Golden Harvest for the 2005-selling season under the brand name Agrisure GT. (*Id.* at ¶¶ 53-54.) In its counterclaim, Monsanto alleges that Syngenta is selling corn seed that contains or derives from GA21 event technology that Monsanto licensed to Garst and/or Golden Harvest in 1998. (*Id.* at ¶¶ 53, 55-60, 62.)

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss should be granted where it is discernable from the pleadings that the non-movant is barred from recovery as a matter of law. *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 344 F. Supp. 2d 923, 929 (D. Del. 2004). While the court must accept the non-movant's well pled factual allegations as true, it is not required to "consider or regard as true conclusory allegations of law, unsubstantiated conclusions, or unwarranted factual inferences." *Id.*; *see also Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citing Wright & Miller).

## ARGUMENT

I. **MONSANTO HAS FAILED TO STATE A REVERSE PASSING OFF CLAIM UNDER THE LANHAM ACT**

Under section 43(a) of the Lanham Act, "reverse passing off" occurs when a producer misrepresents that goods manufactured by another party are its own. *See, e.g., Web Printing Controls, Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1203 n.1 (7th Cir. 1990); J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 25.3 (4th ed. 2003) (citing cases). To state a reverse passing off claim, a plaintiff must show that the defendant has made false or misleading statements that are "likely to cause confusion" as to "the origin" of "his or her goods." *See* 5 U.S.C. § 1125(a)(1)(A).

The Supreme Court's recent decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), precludes Monsanto's reverse passing off claim as a matter of law. In *Dastar*, the Supreme Court limited the scope of reverse passing off claims to situations where a defendant sells as its own a tangible product manufactured or produced by the plaintiff. *Id.* at 31-33. The plaintiff in *Dastar*, Twentieth Century Fox Film Corporation ("Fox"), produced a television series entitled "Crusade in Europe." *Id.* at 25-26. In 1988, Fox granted to SFM Entertainment ("SFM") and New Line Home Video ("New Line") the exclusive right to sell "Crusade in Europe" on video. In 1995, the defendant, Dastar Corporation ("Dastar"), purchased tapes of the original series, edited them by adding a new opening sequence and a final closing, and marketed them under the title "World War II Campaigns in Europe" as its own product. *Id.* at 26-27. Fox, SFM, and New Line sued Dastar, alleging, *inter alia*, that Dastar had engaged in reverse passing off under the Lanham Act by selling the "World War II Campaigns in Europe" video without crediting the "Crusade in Europe" series or acknowledging reliance on the series' content. *Id.* The Ninth Circuit affirmed the district court's grant of summary judgment for

plaintiffs, finding that Dastar had committed a "bodily appropriation" by copying almost all of the series content and selling it under a different label without credit to Fox. *Id.*

The Supreme Court reversed, holding that the term "origin of goods," as used in the Lanham Act, "refer[s] to the producer of the tangible goods that are offered for sale in the marketplace" and <u>not</u> to the source of "the intellectual property, idea, or concept" that the product contains. *Id.* at 37. The Court noted that claims based on the use or incorporation of an idea, technology or concept are more properly brought under the laws designed to protect ideas and innovation (copyright and patent laws), not the Lanham Act. *Id.* at 33-37 (noting that any other understanding of reverse passing off would interfere with the "carefully crafted bargain" embodied in copyright and patent rights). Because Dastar had manufactured the "World War II Campaigns in Europe" video, it indeed was the <u>origin</u> of the product. Thus, even though Dastar's version contained old film footage obtained from the plaintiffs, Dastar properly marketed and sold the product as its own, and Fox did not have a claim for reverse passing off under the Lanham Act.

Following *Dastar*, lower courts have consistently held that reverse passing off claims are limited to situations where the defendant literally repackages the plaintiff's tangible product and sells the product as its own. *See, e.g., General Universal Sys., Inc. v. Lee*, 379 F. 3d 131, 149 (5th Cir. 2004) (dismissing reverse passing off claim where plaintiff had "not accused [the defendant] of taking tangible copies of its software, removing its trademarks, and selling them as its own" but instead only that the defendant "copied the ideas, concepts, structures, and sequences embodied in its copyrighted work"); *Mays & Associates, Inc. v. Euler*, 370 F. Supp. 2d 362, 371 (D. Md. 2005) (dismissing reverse passing off claim that the defendant had displayed a sample design without properly crediting plaintiff's "creative work in the

development, implementation, design, and execution of" that sample); *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 350 F. Supp. 2d 613, 618 (E.D. Pa. 2004) (dismissing reverse passing off claim that defendant included plaintiff's pictures in a book "because Defendants are the physical producers" of the book); *Larkin Group, Inc. v. Aquatic Design Consultants, Inc.*, 323 F. Supp. 2d 1121, 1126 (D. Kan. 2004) (dismissing reverse passing off claim that defendant was unlawfully using plaintiff's designs and other materials to create competing aquatic design proposals); *Bretford Mfg., Inc. v. Smith System Mfg. Co.*, 286 F. Supp. 2d 969, 971-72 (N.D. Ill. 2003) (dismissing reverse passing off claim under *Dastar* where defendant had incorporated the plaintiff's table leg into a finished product – a table – and presented the table as its own).

Monsanto's reverse passing off claim is nearly identical to the claims rejected in *Dastar* and its progeny. Monsanto has not alleged, and cannot allege, that Syngenta purchased corn seed, the tangible goods at issue, produced by Monsanto and resold that seed as its own (under the Agrisure GT brand). Rather, Monsanto contends that Syngenta crossed GA21 inbred lines obtained from Monsanto (via Garst or Golden Harvest) with Syngenta inbred lines in order to create the GA21 hybrid corn seeds that Syngenta is currently selling as its own. Specifically, Monsanto alleges that Syngenta is marketing and selling its own GA21 corn seed product which "incorporate(s) Monsanto's GA21 technology"; was "created from [Monsanto] inbred seed lines"; and does not credit Monsanto as the "true source of the GA21 event." (AAC at ¶¶ 53, 55-60, 62 (emphasis added).) Monsanto does not allege that it manufactured or produced the tangible goods – GA21 hybrid corn seeds – that Syngenta is selling. Indeed, Monsanto admits that Garst, Golden Harvest, and/or Syngenta produced the hybrid. (*See* AAC at ¶¶ 26-39 (alleging that Monsanto granted Garst and Golden Harvest licenses to "develop, produce, have

produced, and sell" hybrids "produced through 'crossing with [Monsanto's] Corn Line GA-21'").)

Thus, Monsanto, like the plaintiff in *Dastar*, is <u>not</u> the "origin" of the seed as defined by *Dastar*. Indeed, when Pioneer Hi-Bred International ("Pioneer") brought – pre-*Dastar* – a reverse passing off claim against Syngenta based on allegations similar to those now made by Monsanto, Pioneer openly conceded, after *Dastar* was decided, that the Supreme Court had foreclosed its claim. *See Pioneer Hi-Bred Int'l v. Syngenta Seeds, Inc.*, Civil Action No. 4:02-cv-90541, at 2, 5 (C.D. Iowa Aug. 17, 2004) (Exhibit A hereto). Monsanto's reverse passing off claim must be dismissed because, as in *Dastar* and *Pioneer*, Syngenta produced the final product, the GA21 hybrid corn seed, that it is selling as its own. Monsanto's ideas or technology allegedly incorporated into that final GA21 corn seed are protected, if at all, by the patent laws, not the Lanham Act. Monsanto's reverse passing off claim fails under *Dastar*.

## II. MONSANTO HAS FAILED TO STATE A CLAIM UNDER THE LANHAM ACT FOR FALSE ADVERTISING

Monsanto cannot circumvent *Dastar* merely by presenting its flawed reverse passing off and patent claims under the heading of "false advertising" under Section 43(a)(1)(B) of the Lanham Act. To do so would thwart the Supreme Court's goal of ensuring the Lanham Act does not conflict with copyright and patent laws and would disregard the holding of *Dastar*.

In *Dastar*, the Court noted that there could be situations where a party's reverse passing off claim fails but, because of additional facts, a false advertising claim under the Lanham Act may be appropriate. For example, such would have been the case in *Dastar* if "the producer of a video that substantially copied the Crusade series were, in advertising and promotion, to give purchasers the impression that the video was <u>quite different</u> from that series." *Dastar*, 539 U.S. at 38 (emphasis added). However, if the defendant "merely [stated] it is the producer of the

video" then "no Lanham Act liability attaches." *Id.* In other words, if the only false and misleading statements alleged are that the defendant represented the product as his own or stated that he made or produced the product, a false advertising claim is barred by *Dastar*. This is precisely the situation here.

Monsanto alleges that Syngenta made false and misleading statements by stating that it owns, has acquired, and has developed the GA21 corn seed Syngenta is selling. (*See* AAC at ¶ 73 (alleging that Syngenta statements that "it acquired the rights to practice GA21," that it "has full rights in the GA21 genetic event," that it developed the GA21 corn products Syngenta is selling, and that it is an "authorized licensee" are false or misleading because they do not acknowledge that those products contain Monsanto GA21 technology).) Thus, the crux of the false advertising claim is the same as Monsanto's reverse passing off claim – that Syngenta has sold GA21 hybrid corn seed without indicating that the alleged source of the GA21 technology contained within the seed is Monsanto. This is precisely the type of situation in which the Supreme Court in *Dastar* held Lanham Act liability does not attach.[4]

Federal courts have agreed that a complaint dressing up a reverse passing off claim as a false advertising claim does not survive *Dastar*. Indeed, the U.S. District Court for the Central District of Iowa recently dismissed a false advertising claim in a case virtually identical to this one. In *Pioneer Hi-Bred Int'l v. Syngenta Seeds, Inc.*, Civil Action No. 4:02-cv-90541 (C.D. Iowa Aug. 17, 2004) (Exhibit A hereto), the plaintiff, Pioneer, alleged that Syngenta engaged in reverse passing off under the Lanham Act by "marketing as Syngenta's own, seed corn containing or derived from Pioneer's germplasm, inbreds, or varieties." *Id.* at 2. Pioneer also

---

[4] Monsanto also has not alleged facts that show that Syngenta made statements that gave purchasers the impression that its corn seed product was "quite different" from products containing Monsanto's technology, as required by the Court in *Dastar*.

alleged that Syngenta made false and misleading statements concerning the corn seed that it sells. *Id.* Pioneer conceded that *Dastar* foreclosed its reverse passing off claim, and continued to pursue its false advertising claim. *Id.* at 5. With respect to the false advertising claim, the court stated that "Pioneer has not alleged that Syngenta made any misrepresentations in commercial advertising or promotion regarding the nature, characteristics, qualities, or geographic origin of its seed corn <u>except to claim that Syngenta is the producer of that which Pioneer claims it owns</u>." *Id.* at 6 (emphasis added). The court held that under *Dastar* "no Lanham Act liability attaches" for such a claim. *Id.*

Similarly, in *Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204 (D. Conn. 2005), the plaintiff brought a reverse passing off claim based on allegations that the defendants had presented the plaintiff's data and findings in a Department of Defense grant proposal as their own. After finding that the reverse passing off claim could not survive *Dastar* because defendants were the creators of the grant proposal, the court evaluated the claim under the false advertising provisions of the Lanham Act. The court concluded that the plaintiff merely "sought to rescue his Lanham Act claim by re-conceptualizing it as a 'false advertisement' claim" and could not "shoe-horn his claim into" the false advertising context. *Id.* at 221-22. Because the plaintiff claimed that the defendants used research and data that he originated without properly attributing the source of that research and data – the same facts that formed the basis of the plaintiff's reverse passing off claim – the court held the claim was barred by *Dastar*. *See also Bretford Mfg., Inc. v. Smith System Mfg. Co.*, 286 F. Supp. 2d 969, 972 (N.D. Ill. 2003) (rejecting under *Dastar* reverse passing off and false advertising claims where they were both based on an argument that defendant "misrepresented the origin" of a component part in a product produced by the defendant).

As in *Pioneer* and *Radolf*, Monsanto's false advertising claim under Section 43(a) of the Lanham Act is nothing more than a restatement of its reverse passing off claim and thus is barred by *Dastar*.

### III. MONSANTO HAS FAILED TO STATE A CLAIM UNDER THE DELAWARE DECEPTIVE TRADE PRACTICES ACT

Monsanto's attempt to assert a false advertising claim under the Delaware Deceptive Trade Practices Act (AAC at ¶ 70) is no more meritorious. As with the Lanham Act, the Delaware Deceptive Trade Practices Act does not extend to a defendant alleged to have produced a product that incorporates technology that the plaintiff owns.

Courts have held that where a plaintiff's claim under the Lanham Act fails, its claim under the Delaware Deceptive Trade Practices Act claim also fails. In *Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478, 506-07 (D. Del. 1998), after dismissing the plaintiff's Lanham Act claim, the court held that it did not need to evaluate the plaintiff's claim under the Delaware Deceptive Trade Practices Act because the laws are "so similar." Accordingly, the court summarily dismissed the state law claim. *Id; see also Toro Co. v. Textron, Inc.*, 499 F. Supp. 241, 249 n.17 (D. Del. 1980) (same).

Other courts have followed the Supreme Court's holding in *Dastar* and dismissed corresponding state unfair competition claims. For example, on remand of the Supreme Court's decision in *Dastar*, the district court dismissed the plaintiff's remaining state unfair competition claim for reverse passing off. *Twentieth Century Fox Film Corp. v. Dastar Corp.*, 68 U.S.P.Q. 2d 1536, 1539-40 (C.D. Cal. 2003); *see also Pioneer* at 7 (dismissing state unfair competition claim based on a reverse passing off theory because the same analysis set forth in *Dastar* applies); *Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177, 1186 (C.D. Cal. 2003) (after dismissing the plaintiff's Lanham Act claim under *Dastar*, the court refused to allow the plaintiff

to amend its complaint to assert a state unfair competition claim because the claim "would fail for the same reasons his Lanham Act claim fails"). These cases involve common law unfair competition law claims, and since Delaware courts have held that the Delaware Deceptive Trade Practices Act is merely a codification of the common law of unfair competition (*see Young v. Joyce*, 351 A. 2d 857, 859 (Del. 1975); *ACCU Personnel, Inc. v. AccuStaff, Inc.*, 846 F. Supp 1191, 1214 (D. Del. 1994)), the rationale of these cases also applies here. Monsanto's Delaware Deceptive Trade Practices Act claim thus must be dismissed for the same reason that its Lanham Act claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Counterdefendants respectfully request that this Court grant their motion to dismiss Counterclaims I, II and III for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

                        Respectfully submitted,

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Plaintiff and certain Counterdefendants*

OF COUNSEL:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004
(212) 508-8000

Dated: September 14, 2005

**CERTIFICATE OF SERVICE**

I, John W. Shaw, Esquire, hereby certify that on September 14, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz, Esquire
>Potter Anderson & Corroon LLP
>Hercules Plaza, 6th Floor
>1313 N. Market Street
>Wilmington, DE 19801

I further certify that on September 14, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY FEDERAL EXPRESS**

>Peter E. Moll, Esquire
>Howrey Simon Arnold & White, LLP
>1299 Pennsylvania Ave., N.W.
>Washington, D.C. 20004
>
>Susan Knoll, Esquire
>Howrey Simon Arnold & White, LLP
>1111 Louisiana, 25th Floor
>Houston, TX 77002-5242
>
>Kenneth A. Letzler, Esquire
>Arnold & Porter LLP
>555 12th Street, N.W.
>Washington, D.C. 20004

_____
John W. Shaw (#3362)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com