# EXHIBIT A

Case 1:04-cv-00305-SLR   Document 133-2   Filed 09/14/2005   Page 1 of 10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| PIONEER HI-BRED INTERNATIONAL, INC., | * * * | 4:02-cv-90541 |
| Plaintiff | * * | |
| v. | * * | |
| SYNGENTA SEEDS, INC., | * * | MEMORANDUM OPINION AND ORDER |
| Defendants. | * * * | |

Before the Court is Defendant Syngenta Seeds, Inc. ("Syngenta")'s Motion for Judgment on the Pleadings, which asks the Court to dismiss counts three and eight from Plaintiff Pioneer Hi-Bred International, Inc. ("Pioneer")'s First Amended Complaint pursuant to Fed.R.Civ.P. 12(c). Pioneer has resisted the motion, and the parties have brief the relevant issues for the Court. The matter is fully submitted. As explained below, Defendant's motion is granted.

I.   BACKGROUND

Pioneer is a leading provider of seed to farmers and the world's largest producer of seed corn. Syngenta is a direct competitor of Pioneer's in the development and marketing of seed corn. Pioneer generally alleges that Syngenta misappropriated Pioneer seed corn germplasm[1] and then used the misappropriated germplasm in Syngenta's corn seed breeding program. More specifically, Pioneer's

---

[1] Germplasm is the genetic information that provides a seed with its individual traits. In the seed industry, seed producers work to breed unique and desirable traits in seed varieties such as yield, germination, and resistance to pests, disease, and environmental stress. *See Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 231 F.Supp.2d 942, 946-47 (S.D. Iowa 2002) (discussing the breeding process for soybean seeds).

First Amended Complaint alleges eleven causes of action including "Count Three: Violation of the Lanham Act (Reverse Palming Off)," and "Count Eight: Unfair Competition (Iowa Common Law)."

In both counts Three and Eight, Pioneer alleges Syngenta has engaged in reverse palming off by marketing as Syngenta's own, seed corn containing or derived from Pioneer's germplasm, inbreds or varieties. Pioneer further alleges that Syngenta's reverse palming off is likely to cause confusion or to deceive consumers "as to the affiliation, connection, and association of Syngenta with Pioneer, or as to the origin, sponsorship, or approval of Syngenta's seed corn by Pioneer." (First Amended Complaint at ¶ 36 and repeated at ¶ 62). As well, Pioneer contends "[i]n commercial advertising and promotion, Syngenta's reverse palming off misrepresents the nature, characteristics, qualities, and geographic origin of the seed corn that Syngenta sells." (First Amended Complaint at ¶ 37 and repeated at ¶ 63).

Following publication of the United States Supreme Court's opinion in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), Defendant filed the present motion asking the Court to dismiss counts three and eight of Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted based on the pleadings.

## II.   STANDARD FOR RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

In evaluating a motion for judgment on the pleadings under Fed.R.Civ.P. Rule 12(c), the Eighth Circuit applies the same standard used to decide Rule 12(b)(6) motions to dismiss. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must "construe all well pleaded factual allegations of the non-moving party as true, and draw in favor of that party all reasonable inferences from these facts." *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of N. Am.*, 627 F.2d 853, 855 (8th Cir. 1980) (citing *Quality Mercury, Inc. v.*

*Ford Motor Co.*, 542 F.2d 466, 468 (8th Cir. 1976)). A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no facts that would entitle the plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court has articulated the test as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 191 (1984). A motion to dismiss should be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).

### III. ANALYSIS

#### A. Pioneer's Lanham Act Claim

Congress enacted the Lanham Act "to protect persons engaged in . . . commerce from unfair competition," by "making actionable the deceptive and misleading use of marks." 15 U.S.C. § 1127. Although the majority of the Act pertains to the registration, use, and infringement of trademarks, certain provisions extend beyond trademark protection and provide a more generalized bulwark against unfair competition. *Dastar*, 539 U.S. at 28-29. Relevant here, section 43(a) of the Lanham Act establishes a federal cause of action against a person who uses in commerce a false description or false

designation of origin in connection with any goods or services. 15 U.S.C. § 1125(a)(1).

Lanham Act claims ordinarily take one of two forms: (1) false advertising; or (2) the passing or palming off of goods or services whereby a producer misrepresents his product as that of someone else. *See Dastar,* 539 U.S. at 28, n.1; *Pioneer Hi-Bred Int'l v. Holden Found. Seeds*, 35 F.3d 1226, 1241 (8th Cir. 1994) (internal citations omitted). Courts, however, have also concluded that section 43(a) includes the rarer claim of "reverse palming off." *Id.* The exact opposite of the standard palming off claim, reverse palming off occurs when a party misrepresents the goods or services of another as its own. *Id.* Whether the misrepresentation be direct or reverse though, palming off claims uniformly involve allegations that a person has falsely designated the origin of goods so as to cause confusion or mistake among consumers. Section 43(a), however, "'does not have boundless application as a remedy for unfair trade practices.'" *Dastar*, 539 U.S. at 29 (quoting *Alfred Dunhill, Ltd. V. Interstate Cigar Co.*, 499 F.2d 232, 237 (1974)).

Recently, in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), the United States Supreme Court considered the scope and limits of reverse palming off claims under the Lanham Act. In *Dastar*, the plaintiff, Twentieth Century Fox Film Corporation (Fox), produced a television series based on a book by then General Eisenhower entitled "Crusade in Europe." *Id.* at 25-26. The twenty six episode series first aired in 1949, and the original copyright expired in 1977. *Id.* at 26. Fox reacquired the television and video rights in General Eisenhower's book in 1988, and the company then restored and repackaged the series on videotape. *Id.* In 1995, the defendant Dastar purchased tapes of the original series, copied them, edited the series in a number of minor ways, and repackaged the series under a new title. *Id.* at 26-27. Dastar then manufactured and sold the

minimally reworked videos as its own product. *Id.* at 27.

Fox sued Dastar alleging *inter alia*, a reverse palming off claim under §43(a) of the Lanham Act. At issue before the Supreme Court was the scope of the term "origin" of "goods" as used in the Act. *Id.* at 31. Whereas Dastar argued that origin referred solely to the producer of goods, Fox contended that protection under §43(a) should extend to the underlying source material. The Court rejected Fox's argument, however, reasoning that such an interpretation wrongfully interposed "trademark and related protections into areas traditionally occupied by patent or copyright." *Id.* at 34 (citing *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001). Rather, the Court concluded the phrase "origin of goods," as used in the Lanham Act, "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. And, although the Court imagined a hypothetical situation giving rise to a false advertising claim under §43 (a)(1)(B), "[f]or merely saying it is the producer . . . no Lanham Act liability attaches. *Id.* at 38.

In the present case, Plaintiff concedes that the Supreme Court's ruling in *Dastar* forecloses Pioneer's reverse palming off claim under §43(a)(1)(A). Now, however, Pioneer contends that count three of its First Amended Complaint states not only a claim for reverse palming off–as repeated five times under the heading "Count Three: Violation of the Lanham Act (Reverse Palming Off)–but that the same seven paragraphs also include an alternative claim for false advertising pursuant to §43(a)(1)(B). The Court finds Plaintiff's argument to be, at best, without merit.

Pioneer's argument rests on the hypothetical offered by the Supreme Court at the end of its opinion in *Dastar*, wherein Justice Scalia theorized that if a producer who substantially copied another

-5-

work "were, in advertising or promotion, to give purchasers the impression that the video was quite different from [the original work], then [the owner of the copyright] might have a cause of action–not for reverse passing off under the 'confusion . . . as to the origin' provision of §43(a)(1)(A), but for misrepresentation under the 'misrepresents the nature, characteristics [or] qualities' provision of §43(a)(1)(B). *Dastar*, 539 U.S. at 38. As such, Plaintiff points to paragraph 37 of its First Amended Complaint wherein Pioneer alleges an almost verbatim repetition of §43(a)(1)(B). Save for this legal conclusion, however, Pioneer's complaint is entirely void of any factual allegations to support a claim of false advertising. Rather, Plaintiff's First Amended Complaint makes clear that Pioneer has charged Syngenta with reverse palming off rather than false advertising. To wit, Pioneer specifically alleges that Syngenta engaged in reverse palming off by:

(A)  marketing seed corn containing or derived from Pioneer's germplasm, inbreds, or varieties, after only slightly modifying the seed corn and then relabelling [sic] the resulting seed corn as Syngenta's own; and

(B)  marketing seed corn derived from Pioneer's germplasm, inbreds or varieties as Syngenta's own independently developed product.

Pioneer has not alleged that Syngenta made any misrepresentations in commercial advertising or promotion regarding the nature, characteristics, qualities, or geographic origin of its seed corn except to claim that Syngenta is the producer of that which Pioneer claims as its own. And, as Justice Scalia noted, "[f]or merely saying it is the producer . . . no Lanham Act liability attaches." *Id.* at 38. As such, Defendant's motion for judgment on the pleadings is granted as to Count Three of Plaintiff's First Amended Complaint.

B.  **Pioneer's State Law Claim**

In resistance to Syngenta's motion, Plaintiff essentially asks the Court to conclude that the Iowa Supreme Court would extend the common law doctrine of unfair competition beyond that which the United States Supreme Court expressly rejected in *Dastar*. This the Court is unwilling to do.

The Iowa Supreme Court has explained Iowa law on unfair competition as follows:

> The doctrine of unfair competition is based on the principle of common business integrity. It goes to the question of a defendant's methods and representations in marketing his products, not to his right to manufacture or produce them.

*Basic Chemicals, Inc. v. Benson*, 251 N.W. 2d 220, 231 (Iowa 1977) (citation omitted). As in *Dastar*, the protections against unfair competition do not extend to a defendant solely for producing a product which another claims as his own. Rather, the doctrine goes to representations in marketing the product. Indeed, the Iowa Supreme Court has explained, "'the essence of unfair competition consists in palming off, either directly or indirectly, one person's goods as the goods of another.'" *Id.* (quoting 84 A.L.R. 472, 484).

Here again, Plaintiff's claims are that Syngenta produced and marketed seed corn it derived from Pioneer's products or slight variations therefrom – i.e. Syngenta misappropriated and misused Pioneer's intellectual property – not that Defendant is attempting to market Pioneer seed under the Syngenta moniker or vice versa. As such, Plaintiff's claims sound more in patent or copyright law than in the realm of unfair competition. The Court, therefore, concludes that the Iowa Supreme Court would follow the lead of the United States Supreme Court in guarding against the "'misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Dastar*, 539 U.S. at 34 (*see supra* for internal citations). Thus, under the same analysis employed for Plaintiff's

almost identical Lanham Act claim, Defendant's motion for judgment on the pleadings is granted on count eight of Plaintiff's First Amended Complaint.

C.   **Leave to Amend**

As the Court has granted Defendant's motion and dismissed counts three and eights from Pioneer's First Amended Complaint, Plaintiff asks the Court for leave to amend its complaint. Pioneer seeks such leave to clarify or recast its claims in light of *Dastar*. Pursuant to Fed.R.Civ.P. 15(a), the Court is to freely grant leave to amend when justice so requires. In the present case, justice is not served by allowing Pioneer further opportunity to amend its pleadings. Contrary to Pioneer's contention, the Court has not dismissed Plaintiff's "because of some pleading technicality." Rather, as explained above, Pioneer's reverse palming off claims under the Lanham Act and common law fly directly in the face of *Dastar*. Simply recasting or clarifying will not save the claims and granting Pioneer leave to amend would serve no purpose other than to further delay the progress in this lawsuit. Moreover, if Pioneer seeks to add allegations to bolster or state a claim for false advertising under §43(a)(1)(B), the Court is without sympathy. As *Dastar* had no effect on such claims, Pioneer has had every opportunity to state such a claim and has not done so. Plaintiff's request for leave to amend is, therefore, denied.

V.   **ORDER**

Defendant's Motion for Judgment on the Pleadings is hereby **granted**. Counts three and eight of Plaintiff's First Amended Complaint are dismissed. Plaintiff's request for leave to amend is **denied.** The telephone hearing scheduled for August 18, 2004 is cancelled.

IT IS SO ORDERED.

Dated this ___17th___ day of August, 2004.

_____
ROBERT W. PRATT
U.S. DISTRICT JUDGE