## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MONSANTO COMPANY, *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 04-305-SLR |
| | ) | (Consolidated) |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| SYNGENTA SEEDS, INC., *et al*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ANSWERING BRIEF IN OPPOSITION TO SYNGENTA'S
## MOTION TO DISMISS COUNTERCLAIMS NOS. 1-3

OF COUNSEL:

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated: October 3, 2005
Public Version Dated: October 11, 2005

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON, LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile

*Attorney for MONSANTO COMPANY
and MONSANTO TECHNOLOGY LLC*

## TABLE OF CONTENTS

Page(s)

NATURE AND STAGE OF PROCEEDING ............................................................1

SUMMARY OF THE ARGUMENT ........................................................................2

RELEVANT FACTS .................................................................................................2

ARGUMENT..............................................................................................................4

I.      THE SUPREME COURT'S DECISION IN *DASTAR* DOES NOT
        PRECLUDE MONSANTO'S REVERSE PASSING OFF CLAIM
        UNDER THE LANHAM ACT ........................................................................5

        A.      Monsanto's GA21 trait is not a "communicative product,"
                but a product valued for its physical qualities. ...............................7

        B.      The "goods" in this case is Monsanto's GA21 trait........................8

        C.      Monsanto's GA21 trait is not in the public domain and is
                protected by valid patents. .............................................................10

        D.      The post-*Dastar* cases cited by Syngenta are each
                distinguishable from this case. .......................................................10

II.     THE SUPREME COURT'S DECISION IN *DASTAR* DOES NOT
        PRECLUDE MONSANTO'S FALSE ADVERTISING CLAIM
        UNDER THE LANHAM ACT .......................................................................12

III.    THE SUPREME COURT'S DECISION IN *DASTAR* DOES NOT
        PRECLUDE MONSANTO'S DECEPTIVE TRADE PRACTICES
        CLAIMS .......................................................................................................13

CONCLUSION..........................................................................................................15

i

## TABLE OF AUTHORITIES

### CASES

*Acxiom Corp. v. Axiom Inc.*, 27 F. Supp. 2d 478 (D. Del 1998) ........................................ 14

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 286 F. Supp. 2d 969 (N.D. Ill. 2003) ........................................................................................................................ 11

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ................. *passim*

*DiLorenzo v. Edgar*, C. A. No. 03-841, 2004 U.S. Dist. LEXIS 4991, (D. Del. Mar. 24, 2004) ......................................................................................... 4, 10

*Enzo Life Sci., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424 (D. Del. 2003) ................. 14, 15

*General Universal Sys., Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004) .......................... 5, 10, 11

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) ......................................... 10

*Larkin Group, Inc. v. Aquatic Design Consultants, Inc.*, 323 F. Supp. 2d 1121 (D. Kan. 2004) ................................................................................................ 13

*Mays & Assoc., Inc. v. Euler*, 370 F. Supp. 2d 362 (D. Md. 2005) ................................... 11

*Nami v. Fauver*, 82 F.3d 63 (3rd Cir. 1996) ....................................................................... 14

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410 (3d Cir. 1999) .......................................................................... 10

*Tao of Sys. Integration, Inc., v. Analytical Serv. & Materials*, Inc., 299 F. Supp. 2d 565 (E.D. Va. 2004) ........................................................................ 12, 13

*Tillman v. Pepsi Bottling Group, Inc.*, C. A. No. 04-1314, 2005 U.S. Dist. LEXIS 18891 (D. Del. Aug. 30, 2005) ........................................................................ 4

*Toro Co. v. Textron, Inc.*, 499 F. Supp. 241 (D. Del. 1980) ............................................... 14

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478 (3d Cir. 1998) ........................................................................................ 5

*Web Printing Controls, Co. v. Oxy-Dry Corp.*, 906 F.2d 1202 (7th Cir. 1990) ............................................................................................................ 5

## STATUTES

5 U.S.C. § 1125(a)(1)(A) ............................................................................................ 6

5 U.S.C. § 1125(a)(1)(B) ............................................................................................ 12

6 Del. C. § 2532(a)(1)-(12) ........................................................................................ 14

## NATURE AND STAGE OF PROCEEDING

Monsanto filed suit against Syngenta for infringement of the Shah patent on May 12, 2004. DEKALB Genetics Corporation ("DEKALB"), a Monsanto subsidiary, later filed an action against Syngenta for infringement of the Lundquist patent. In response, Syngenta Seeds, Inc., filed this antitrust case against Monsanto on July 28, 20049i, alleging that Monsanto has monopolized the markets for glyphosate-tolerant corn traits and European corn borer-tolerant corn traits, and has attempted to monopolize the foundation corn seed market. Both the patent cases and antitrust case are consolidated before this Court. *Monsanto Company, et al v. Syngenta Seeds, Inc., et al*, 04-305-SLR (D. I. 48).

Monsanto filed its Answer on April 7, 2005, denying the allegations of anticompetitive conduct set forth in Syngenta's Amended Antitrust Complaint. *Id.* at D. I. 52. On July 13, 2005, Monsanto moved for leave to file an amended answer with counterclaims, which the Court granted on August 13, 2005.[1] Monsanto's Amended Answer and Counterclaims asserts four claims: (1) reverse passing off under the Lanham Act (Count I); (2) violations of the Delaware Deceptive Trade Practices Act (Count II); (3) false advertising under the Lanham Act (Count III); and (4) tortious interference with a contract (Count IV).

Monsanto brings these claims against Syngenta AG, Syngenta Participations AG, Syngenta Corporation, Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Co. ("Garst"), and Golden Harvest Seed Co. ("Golden Harvest").[2]

---

[1] On August 12, 2005, Syngenta filed a motion for leave to file a Second Amended Complaint, adding a Lanham Act claim for misrepresentations and false statements. Monsanto did not oppose Syngenta's motion and the Court granted that motion on September 9, 2005.

[2] Monsanto has served its Amended Answer and Counterclaims on each counterdefendant except Syngenta AG and Syngenta Participations AG, which are foreign entities that Monsanto is in the process of serving under the Hague Convention.

On September 14, 2005, Syngenta moved to dismiss Counts I, II, and III of Monsanto's counterclaims under Federal Rule 12(b)(6). Syngenta's motion to dismiss should be denied.

### SUMMARY OF THE ARGUMENT

1.    The Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), does not preclude Monsanto's claim for reverse passing off under the Lanham Act because Monsanto's GA21 trait is a product valued for its physical qualities, constitutes the "goods" at issue in *Dastar's* "origin of goods" analysis, and is not within the public domain. Syngenta's crossing of Monsanto's inbred corn line containing GA21 with another inbred corn line to create a hybrid seed, without modifying Monsanto's GA21 trait, is for all practical purposes repackaging Monsanto's Roundup Ready® glyphosate tolerant corn products. It is this (Monsanto') glyphosate tolerant trait that Syngenta is selling and its customers are buying.

2.    Syngenta made false and misleading statements that misrepresented both Syngenta and Monsanto's commercial activities that are separate and distinct conduct actionable as false advertising under the Lanham Act that is not precluded by the Supreme Court's decision in *Dastar*.

3.    The false and deceptive conduct alleged under Delaware's Deceptive Trade Practices Act are significantly broader than the claim for passing off under the Lanham Act, and therefore are not precluded by *Dastar*.

### RELEVANT FACTS

Glyphosate is a highly effective, non-selective commercial herbicide that kills unwanted weeds as well as the crop plant itself. Countercl. at ¶21. Monsanto's glyphosate herbicide is sold under the Roundup® trademark. *Id.* at ¶24. In the early 1990s, DEKALB and Rhone-Poulenc Agro, S.A. ("RPA") collaborated to genetically alter corn to make it resistant to glyphosate. *Id.* at ¶22. In late 1993, DEKALB

2

succeeded in growing genetically modified corn plants resistant to Roundup and other glyphosate-based herbicides. *Id.* The transgenic "event" that made these corn plants glyphosate tolerant was called "GA21." *Id.* Monsanto subsequently acquired DEKALB. As a result of subsequent litigation Monsanto obtained a license to RPA rights in GA21 trait. *Id.* at ¶25. Monsanto sold and licensed several inbred lines containing Monsanto's GA21 trait under the distinctive trademark Roundup Ready®. *Id.*

REDACTED

As part of Syngenta AG's aggressive plan to expand its presence rapidly in the United States, Syngenta AG acquired several U.S. seed companies that occupied positions in transgenic and conventional corn seed, including Advanta USA, Inc. (which has recently changed its trade name to "Garst"), and the Golden Harvest Companies. *Id.* at ¶44. While both Garst and the Golden Harvest Companies were licensees of the GA21

3

trait Roundup Ready® corn, Syngenta never independently obtained a GA21 license from Monsanto and had no right without such a license to develop, market, sell or license any product containing the GA21 trait. *Id.* at ¶47.

Syngenta sought to undermine Monsanto's position in the glyphosate-tolerant market at every turn. On May 12, 2004, Syngenta misrepresented in an announcement that it had acquired all the rights needed to manufacture and sell GA21 from Bayer CropScience. *Id.* at ¶52. Syngenta announced this acquisition without any reference to Monsanto's continuing intellectual property rights in the GA21 trait and misrepresented Syngenta's ability to lawfully commercialize a product containing GA21 without a license from Monsanto. *Id.*

Syngenta also misappropriated Monsanto's GA21 product.

REDACTED

With Monsanto's GA21 trait in hand, Syngenta began improperly passing off Monsanto's GA21 trait as its own. *Id.* at ¶¶52-55. Syngenta never modified, altered, or changed Monsanto's GA21 trait. *Id.* As early as May 12, 2005, Syngenta announced that it has begun to sell and license the "valuable [GA21] technology." Id. at ¶52. To do so, Syngenta simply repackaged Monsanto's inbred corn line containing Monsanto's GA21 trait as its own under the trademark "Agrisure GT Advantage." *Id.*

## ARGUMENT

In considering Syngenta's motion to dismiss for failure to state a claim, the Court must accept Monsanto's factual allegations as true and must construe the complaint in favor of Monsanto. *DiLorenzo v. Edgar*, C. A. No. 03-841, 2004 U.S. Dist. LEXIS 4991 at *4 (D. Del. Mar. 24, 2004) (Ex. A hereto). As the movant, Syngenta bears the burden of persuasion. *Tillman v. Pepsi Bottling Group, Inc.*, C. A. No. 04-1314, 2005 U.S. Dist.

4

LEXIS 18891 at *15 (D. Del. Aug. 30, 2005) (Ex. B hereto). The Court should not dismiss Monsanto's claims unless "no relief could be granted under *any* set of facts consistent with the allegations of the [counterclaims]." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3rd Cir. 1998) (emphasis added). Syngenta has not carried its burden here.

      Monsanto has pled facts more than sufficient to support its counterclaims for reverse passing off, false advertising and unfair trade practices. Syngenta tacitly admits in its motion to dismiss that Syngenta did *nothing* to alter Monsanto's GA21 trait, which Syngenta now sells as its own "Agrisure GT" product. Syngenta also does not dispute the misrepresentations that it made to the marketplace regarding the origin of the GA21 or Syngenta's right to commercialize GA21. Instead, Syngenta argues that its conduct is not actionable as reverse passing off or false advertising under the Supreme Court's holding in *Dastar* because Syngenta is selling the misappropriated GA21 in a hybrid corn seed. However, Syngenta's reliance on *Dastar* is misplaced. The facts alleged here were fundamentally different than those in *Dastar* and the actual holding in *Dastar* makes it clear that Syngenta's motion to dismiss should be denied.

**I.    THE SUPREME COURT'S DECISION IN *DASTAR* DOES NOT PRECLUDE MONSANTO'S REVERSE PASSING OFF CLAIM UNDER THE LANHAM ACT**

      Monsanto has alleged facts sufficient to state a claim for reverse passing off, which occurs when one company sells another company's product as its own. *See, e.g., General Universal Sys., Inc. v. Lee*, 379 F.3d 131, 148 (5th Cir. 2004); *Web Printing Controls, Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1203 n.1 (7th Cir. 1990). Reverse passing off also occurs when a company "'sell[s] or offer[s] for sale another's product that has been modified slightly and then labeled with a different name.'" *General Universal Sys.*, 379 F.3d at 148 n.41 (quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990)). To state a claim for reverse passing off, Monsanto must allege that

Syngenta made false or misleading statements or descriptions of fact that are likely to cause confusion or mistake as to the origin of Syngenta's product. 5 U.S.C. § 1125(a)(1)(A). Notably, Syngenta does not challenge the sufficiency of Monsanto's allegations, but rather asserts that its strained reading of *Dastar* precludes Monsanto's claims.

In *Dastar*, the Supreme Court held that a reverse passing off claim could not be sustained against a defendant who obtained a copy of a television series whose copyrights had expired, modified the product, and then sold it as the defendant's own. In its analysis, the Court upheld the validity of Lanham Act causes of action in general, but in the case before it held that the term "origin of goods" refers to "the producer of the tangible goods that are offered for sale, and not to the author of any *idea, concept,* or *communication* embodied in those goods." *Dastar*, 539 U.S. at 37 (emphasis added). Here, by contrast, Monsanto seeks to protect its rights in a tangible product (a trait) not an idea, concept, or communication.

The facts of *Dastar* differ substantially from those alleged here. In *Dastar*, Twentieth Century Fox Film Corporation ("Fox") acquired the television rights of a copyrighted book and produced a television series. *Id.* at 25. The series lapsed into the public domain when the copyright expired and Fox failed to renew. *Id.* at 25-26. Years later, Fox reacquired the television rights and released the television series on video in new packaging. *Id.* at 26. Dastar later purchased beta cam tapes of the *original* version of the television series, which remained within the public domain. *Id.* Dastar significantly modified the series, as described by the Court:

> "Dastar's Campaigns series is slightly more than half as long as the
> original Crusade television series. Dastar substituted a new opening
> sequence, credit page, and final closing for those of the Crusade television
> series; inserted new chapter-title sequences and narrated chapter
> introductions; moved the "recap" in the Crusade television series to the
> beginning and retitled it as a "preview"; and removed references to and

6

images of the book. Dastar created new packaging for its Campaigns
series and ... a new title." *Id.* at 26-27.

The Supreme Court reversed the lower courts' judgments in favor of Fox, holding that

Dastar was the "origin" of the new video series and therefore could not be liable for

reverse passing off. *Id.* at ¶38.

> **A.    Monsanto's GA21 Trait Is Not A "Communicative
> Product," But A Product Valued For Its Physical
> Qualities**

In *Dastar*, the Supreme Court's decision turned on the meaning of the term

"origin of goods," as applied to *communicative* products. The Supreme Court held that

"origin of goods" "refers to the producer of the tangible goods that are offered for sale,

and not to the *author* of any *idea, or concept, or communication* embodied in those

goods."[3] *Id.* at 37 (emphasis added). In so doing, the Court acknowledged the difference

between communicative products and products primarily valued for their physical

qualities, citing hammers as an example. *Id.* at 33.

Syngenta points to nothing in Monsanto's counterclaims that would even suggest

that Monsanto's GA21 trait is a communicative product. To the contrary, the

counterclaim alleges that Monsanto's GA21 trait is one of only two commercially

available glyphosate-tolerant events that are available to use in seed production.

Countercl. ¶¶23-24. It is the physical qualities of this genetic event – **GA21** – that is the

very reason growers purchase the product.

---

[3]    In its Opening Brief, Syngenta states that the Supreme Court held that the Lanham
Act did not protect the source of the "*intellectual property*, idea, or concept" (Syngenta's
Opening Br. at 8) (emphasis added), implying that the Court intended its holding to apply
more broadly to all intellectual property rights. The actual language of the decision,
however, states "[w]e conclude that the phrase refers to producer of the tangible goods
that are offered for sale, and not to the author of any *idea*, concept, or communication
embodied in those goods." *Dastar*, 539 U.S. at 38 (emphasis added). From the plain
language of the decision, it appears that the Court never intended the broader reading
offered by Syngenta.

Syngenta erroneously characterizes Monsanto's product as GA21 *technology* to portray Monsanto as the creator or author of some ephemeral "idea," straining to attempt to bring this case in line with *Dastar's* holding. Monsanto's counterclaims, however, allege that Syngenta is passing off a tangible Monsanto product – the GA21 trait – as its own. Thus, Monsanto has adequately alleged that the GA21 event is a tangible product undeniably valued for its physical quality of glyphosate-tolerance.

### B.    The "Goods" In This Case Is Monsanto's GA21 Trait

Monsanto's counterclaims allege that GA21 trait is the relevant "good" or product that Syngenta is unlawfully selling. Countercl. ¶¶54-55, 57-60. The glyphosate tolerant expression of the GA21 Event is the product that seed companies and growers are buying. It is this event that is directly associated with Monsanto being sold under the famous Roundup Ready® mark.[4] It is this GA21 event that Syngenta is falsely marketing, licensing and selling as its own.

Syngenta's crossing of Monsanto's inbred corn line – containing Monsanto's GA21 trait – with another inbred corn line to create a hybrid seed, without modifying the GA21 trait, is akin to simply repackaging Monsanto's product. Although Syngenta produced hybrid corn seed containing Monsanto's GA21 trait, the hybrid seed itself is just the final packaging for the inbred corn line containing Monsanto's GA21 trait. Syngenta readily admits that it did not alter, modify, or change Monsanto's GA21 trait in any way, but rather simply repackaged Monsanto's trait and reselling GA21 as hybrid corn or, in other instances, licensing the GA21 trait itself.

Indeed, Syngenta has recently created a new subsidiary called GreenLeaf Genetics that is engaged in the licensing of traits to seed companies, including the GA21

---

[4]    Indeed, Monsanto requires each licensee of its GA21 trait to display the Roundup Ready® on *every* bag of hybrid seed sold as well as *any* advertising or promotional material. Countercl. ¶ 29.

trait. There can be little serious debate that the licensed product in question is the GA21

trait, not hybrid corn seed. Indeed, Syngenta's own website states:

> "In addition to offering newly available genetics, GreenLeaf Genetics will also be
> offering Agrisure™ Traits. The Agrisure traits business has been established to
> develop and market Syngenta traits. Some examples of Agrisure Traits that will
> be available through GreenLeaf Genetics for 2006 are Agrisure CB™ and
> Agrisure GT™ (GA21 gene for resistance to glyphosate)."
> *See* http://www.greenleafgenetics.com/Main/MainServlet/pgLogin (emphasis
> added).

Not even Syngenta could cite the *Dastar* opinion as a bar to this alleged conduct.

Certainly this activity falls within the scope of Monsanto's counterclaims and satisfies the

notice pleading requirement of Federal Rule 8. *See* Countercl. ¶ 49.

Syngenta does not aver (nor could it on a motion to dismiss) that it altered,

modified, or changed Monsanto's GA21 trait in any way, which renders *Dastar*

inapplicable. In its motion to dismiss, Syngenta concedes that after *Dastar*, courts still

allow reverse passing off claims in situations where the defendant repackages the

plaintiff's tangible product and sells the "good" as its own. That is exactly what

Monsanto alleges Syngenta has done.

An illustration may be helpful. For example, computers using Intel

microprocessors are stamped with the familiar trade logo "Intel Inside." If a computer

manufacturer were to install an Intel microprocessor into its computer without modifying

it and claim the microprocessor as its own, the manufacturer would be guilty of reverse

passing off because such marketing would falsely imply that the manufacturer made the

microprocessor. Similarly, the GA21 trait is the very essence of Syngenta's glyphosate-

tolerant Agrisure GT seed. The counterclaims adequately allege that the "good" at issue

is Monsanto's GA21 trait. Monsanto does not allege that Syngenta in any way altered the

trait, and therefore Syngenta's conduct falls squarely within the rubric of reverse passing

off.

9

Syngenta's distortion[5] of the true "goods" at issue in this case is merely an attempt to evade liability for its admitted misappropriation of Monsanto's GA21 product. Moreover, Syngenta's argument requires this Court to credit all of the factual "allegations" in Syngenta's brief and simultaneously reject the facts alleged in Monsanto's counterclaims, an exercise that is entirely impermissible on a Rule 12(b)(6) motion to dismiss. *DiLorenzo,* 2004 U.S. Dist. LEXIS 4991, at *4.

### C.    Monsanto's GA21 Trait Is Not In The Public Domain and Is Protected By Valid Patents

Although the Court in *Dastar* noted policy conflicts among various intellectual property laws in affording Lanham Act protection to things that had been covered by copyrights and patents but are now in the public domain, there is no such issue here. Monsanto's GA21 trait is currently protected by valid patents. Thus, Monsanto is not, like the plaintiff in Dastar, asserting its reverse passing off claim to extend expired copyright or patent protection. *See Dastar,* 539 U.S. at 33-34. Monsanto's GA21 patents are still in effect.

### D.    Post-*Dastar* Cases Cited By Syngenta Are Readily Distinguishable

The cases cited by Syngenta in its motion to dismiss – almost all of which involve communicative products – further underscore the distinction between *Dastar* and this case. For instance, in *General Universal Sys.,* 379 F.3d at 131, the plaintiff brought a copyright and reverse passing off action where the defendant misappropriated the "ideas, concepts, structures, and sequences embodied in [plaintiff's] copyrighted work."

---

5    Syngenta's distortion is belied by its own application to register its Agrisure trademark, in which it describes the good and services not as seed, but as a "protein and/or enzyme trait." *See* Syngenta's PTO Trademark Application #78421475 (Ex. C hereto). This Court may take judicial notice of public records such as PTO applications in analyzing motions under Rule 12(b)(6). *Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 705 n. 5 (3rd Cir. 2004); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410, 426 (3rd Cir. 1999).

*General Universal Sys.*, 379 F.3d at 149. Similarly, in *Mays & Assoc., Inc. v. Euler*, 370 F. Supp. 2d 362 (D. Md. 2005), the plaintiff, without a valid, registered copyright, brought copyright and reverse passing off claims against the defendant for failing to attribute plaintiff's role in the "development, implementation, design, and execution" of a sample design. *Mays*, 370 F. Supp. 2d at 371. Unlike Monsanto, the plaintiffs in these cases are clearly attempting to use reverse passing off claims to bootstrap copyright claims.

Syngenta's reliance on *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 286 F. Supp. 2d 969 (N.D. Ill. 2003), is also misplaced. There, a table-maker used a table leg manufactured by plaintiff in its prototype submitted as part of a bid proposal, which was ultimately approved. In holding that the defendant table-maker did not misrepresent the origin of its product, the district court held that "there was no misrepresentation, express or implied, as to the source of the components of the tables." *Id.* at 971. In contrast, Syngenta has made affirmative statements that deceived customers into believing that the GA21 trait in Syngenta's Agrisure product is Syngenta's trait.[6]

_____

[6] Syngenta's reliance upon concessions allegedly made by an unrelated party in *Pioneer Hi-Bred Int'l v. Syngenta Seeds, Inc.*, No. 4:02-cv-90541 (C.D. Iowa Aug. 17, 2004) is misplaced. Not only was Monsanto not a party to that case, but the allegations in that case differ from those in Monsanto's counterclaims. For example, in its First Amended Complaint, Pioneer alleged that Syngenta "wrongfully misappropriated and used Pioneer's patented or otherwise protected germplasm, inbreds, varieties, and other information in the course of breeding, otherwise developing, marketing and/or selling Syngenta seed corn." *Pioneer Hi-Bred Int'l v. Syngenta Seeds, Inc.*, No. 4:02-cv-90541 (D. I. 35 at ¶20). Monsanto asserts that Syngenta misappropriated a specific Monsanto transgenic trait, in contrast to Pioneer's more general pleading. Moreover, Monsanto makes no assertion that Syngenta used Monsanto's GA21 to develop a new glyphosate-tolerant trait. To the contrary, Syngenta misappropriated Monsanto's GA21 product and simply repackaged it without altering, modifying, or *developing* the trait.

II.     **THE SUPREME COURT'S DECISION IN *DASTAR* DOES
        NOT PRECLUDE MONSANTO'S FALSE ADVERTISING
        CLAIM UNDER THE LANHAM ACT**

To state a claim for false advertising, Monsanto must plead facts alleging that Syngenta made false or misleading statements or descriptions of fact in commercial advertising or promotion that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 5 U.S.C. § 1125(a)(1)(B). Monsanto has done exactly that.

Monsanto's counterclaims allege that Syngenta made false and misleading statements concerning Syngenta's commercial activities, including:

- Syngenta announced that it had acquired all the necessary the rights to the GA21 trait from Bayer CropScience (Countercl. ¶73);

- Syngenta stated that it had full rights in the GA21 trait (*Id.*);

- Syngenta stated that the GA21 trait it sells was developed by Syngenta or by an entity or entities unaffiliated with Monsanto (*Id.*);

- Syngenta stated that it had a license or other valid legal authority given by Monsanto to provide corn and other seed products containing Monsanto's proprietary traits (*Id.*);

- Syngenta implied that it was an authorized licensee of products under Monsanto's trademarks, but that Monsanto required Syngenta to use other trademarks for such products (*Id.*).

Syngenta's public misrepresentations constitute false advertising prohibited by the Lanham Act. Indeed, courts have interpreted the term "commercial advertising or promotion" to mean commercial statements made by a competitor that was sufficiently disseminated to its customers with the purpose of influencing customers to buy its product. *Tao of Sys. Integration, Inc., v. Analytical Serv. & Materials*, Inc., 299 F. Supp. 2d 565, 573 (E.D. Va. 2004). "The representations need not be made in a classic advertising campaign, but may consist instead of more informal types of promotion.

12

Furthermore, …the extent of distribution necessary to constitute commercial advertising or promotion in a particular case may be an elastic factor, so that a relatively modest amount of activity may be sufficient in the context of a particular case." *Larkin Group, Inc. v. Aquatic Design Consultants, Inc.*, 323 F. Supp. 2d 1121, 1128 (D. Kan. 2004) (quoting *Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1004-05 (10th Cir. 2002)).

Nothing in the Supreme Court's *Darstar* decision precludes Monsanto from bringing a false advertising claim separate from its reverse passing off claim. Indeed, the Court in *Dastar* explicitly acknowledged that a party can assert a false advertising claim under the Lanham Act where a company advertises a product as different from the original. *Dastar Corp.*, 539 U.S. at 38. Monsanto has alleged that Syngenta has done precisely that. As a result, Monsanto's false advertising claim should be evaluated separately from its reverse passing off claim because, notwithstanding Syngenta's contentions to the contrary, Monsanto's allegations of false advertising are independently actionable under the Lanham Act and are wholly distinct from Monsanto's reverse passing off counterclaim. *See Tao of Sys. Integration, Inc.*, 299 F. Supp. 2d at 573 (analyzing plaintiffs' reverse passing off claim under *Dastar* and *then* considering the plaintiffs' false advertising claim in a *separate* analysis); *Larkin Group, Inc.*, 323 F. Supp. 2d at 1128 (same). Because all of Syngenta's public announcements meet the definition of commercial advertising or promotion under the Lanham Act, this Court should deny Syngenta's motion to dismiss Count III of Monsanto's counterclaims.

### III.    THE SUPREME COURT'S DECISION IN *DASTAR* DOES NOT PRECLUDE MONSANTO'S DECEPTIVE TRADE PRACTICES CLAIMS

Syngenta argues that Monsanto's deceptive trade practices claims must be dismissed if the reverse passing off claim is dismissed because of the two claims'

13

similarities. Syngenta ignores, however, that the breadth of the statute at issue and the claims alleged are far broader than the claim for reverse passing off.

The Deceptive Trade Practices Act is broad and should be liberally construed. *See Enzo Life Sci., Inc. v. Digene Corp.*, 295 F. Supp. 424, 428 (D. Del. 2003). Monsanto has plead a wide variety of conduct actionable under the Delaware Deceptive Trade Practices Act, including: (1) Syngenta passed off Monsanto's goods as its own; (2) Syngenta caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, certification, affiliation, connection or association of Syngenta's glyphosate-tolerant product with Monsanto's GA21 product; (3) Syngenta falsely represented that its goods and services are of a particular standard, quality, grade or model; and (4) Syngenta engaged in any conduct which similarly creates a likelihood of confusion or of misunderstanding. 6 Del. C. § 2532(a)(1)-(3), (7), (12).

Even if this Court were to find that Syngenta's actions did not amount to reverse passing off, Syngenta's conduct is still actionable under the Deceptive Trade Practices Act, including the catch-all provision, 6 Del. C. § 2532(a)(12), which allows Monsanto's claim if Syngenta engaged in any conduct which similarly creates a likelihood of confusion or of misunderstanding.

Syngenta relies principally on cases that were not summarily dismissed, as Syngenta seeks here, but were rather fully adjudicated at trial. *See Acxiom Corp. v. Axiom Inc.*, 27 F. Supp. 2d 478 (D. Del 1998) (where the Court did not reach the Delaware state law claims because it had already found that Axiom had infringed plaintiff's trademark); *Toro Co. v. Textron, Inc.*, 499 F. Supp. 241 (D. Del. 1980) (where, after full adjudication, the Court enjoined defendant from making misleading and deceptive statements even though the defendant had not infringed Toro's patent).

At issue here, however, is whether Monsanto has sufficiently pled a claim under the Deceptive Trade Practices Act, not whether Monsanto is ultimately entitled to recover damages under that claim. *Nami v. Fauver*, 82 F.3d 63, 65 (3rd Cir. 1996) ("A motion to

dismiss . . . does not address the merits of a case but rather tests the legal sufficiency of the complaint"). Monsanto's allegations that Syngenta misappropriated and passed off Monsanto's GA21 trait, which must be accepted as true for the purposes of Syngenta's motion, more than satisfies the pleading requirements of the statute. *See Enzo Life Sci.*, 295 F. Supp. 2d at 428-29 (motion to dismiss counterclaim under Deceptive Trade Practices Act denied where counterclaimant alleged company misrepresented its ownership of a patent). In sum, there can be little question that Monsanto has satisfied the notice pleading requirement to state claim under the Deceptive Trade Practices Act.

## CONCLUSION

For the foregoing reasons, Monsanto respectfully request that this Court deny Syngenta's motion to dismiss Counts I, II, and III of Monsanto's counterclaims.

Respectfully submitted,

OF COUNSEL:

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated: October 3, 2005
Public Version Dated: October 11, 2005

POTTER ANDERSON & CORROON, LLP

By: _____
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile

*Attorney for MONSANTO COMPANY
and MONSANTO TECHNOLOGY LLC*

15

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 11, 2005, the attached

document was hand delivered on the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on October 11, 2005, I have Federal Expressed the

foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Thomas A. McGrath III
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

700765