IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*,            )
                                       )
            Plaintiffs,                )
                                       )
    v.                                 )   C.A. No.: 04-305-SLR (Consol.)
                                       )
SYNGENTA SEEDS, INC., *et al.*,        )
                                       )
            Defendants.                )


**REPLY BRIEF IN SUPPORT OF SYNGENTA SEEDS, INC., SYNGENTA
CORPORATION, SYNGENTA BIOTECHNOLOGY, INC., ADVANTA USA, INC.,
GARST SEED COMPANY, GOLDEN HARVEST SEEDS, INC.'S
<u>MOTION TO DISMISS COUNTERCLAIMS NOS. 1-3</u>**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Syngenta Seeds, Inc., Syngenta
Corporation, Syngenta Biotechnology, Inc., Advanta
USA, Inc., Garst Seed Company, and Golden Harvest
Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

SHEARMAN & STERLING LLP
Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004
(202) 508-8000

Dated: October 14, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.    *DASTAR* PRECLUDES MONSANTO'S REVERSE PASSING OFF CLAIM ................ 2

      A.    The Tangible "Good" is The Corn Seed That Syngenta Allegedly Sold to Consumers ........................................................................................................... 2

      B.    *Dastar* is Not Limited to "Communicative Products" ........................................ 5

      C.    *Dastar* Is Not Limited to Cases Involving Expired Patents or Copyrights ............ 6

      D.    Lower Court Cases Support The Application of *Dastar* to This Case .................... 7

II.    MONSANTO'S FALSE ADVERTISING CLAIM FAILS UNDER *DASTAR* ................. 9

III.    MONSANTO'S DELAWARE DECEPTIVE TRADE PRACTICES ACT CLAIM FAILS UNDER *DASTAR* ........................................................................................... 10

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*ACCU Personnel, Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191 (D. Del. 1994) ................................ 12

*A Slice of Pie Productions, LLC v. Wayans Bros. Entertainment*, No. 3:04 CV 1034 JBA, 2005 WL 2338887 (D. Conn. Sep. 21, 2005) ................................ 11

*Bob Creeden & Assocs. v. Infosoft, Inc.*, 326 F. Supp. 2d 876 (N.D. Ill. 2004) ................................ 6

*Bretford Mfg., Inc. v. Smith System Mfg. Co.*, 286 F. Supp. 2d 969 (N.D. Ill. 2003), *aff'd*, 419 F.3d 576 (7th Cir. 2005) ................................ *passim*

*Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576 (7th Cir. 2005) ................................ 5, 8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ................................ *passim*

*Pioneer Hi-Bred Int'l v. Syngenta Seeds, Inc.*, Civil Action No. 4:02-cv-90541 (C.D. Iowa Aug. 17, 2004) ................................ *passim*

*Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204 (D. Conn. 2005) ................................ 9

## STATUTES

Fed. R. Civ. P. 12(b)(6) ................................ 13

## PRELIMINARY STATEMENT

Monsanto admits in its Opposition Brief that it did not manufacture or produce the corn seed that consumers allegedly purchased from Syngenta. (*See* Monsanto's Answering Brief in Opposition to Syngenta's Motion to Dismiss ("Mon. Br.") at 8.) This admission alone is fatal to its reverse passing off claim under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003). (*See* Syngenta's Brief in Support of its Motion to Dismiss ("Syn. Br.") at 7-10.)[1]

*Dastar* held that a party is liable for reverse passing off only if the defendant falsely represents as its own a tangible "good" manufactured by the plaintiff. *Dastar*, 539 U.S. at 31. The Supreme Court defined "good" as the "tangible product sold in the marketplace." *Id.* Monsanto's counterclaims plainly and clearly allege that the product Syngenta is selling to the marketplace is <u>corn seed</u> containing Monsanto's GA21 technology. (Monsanto's Amended Answer and Counterclaims ("AAC") at ¶¶ 53-55). As pled, Monsanto's claims fail under *Dastar* because Monsanto did not produce the corn seed Syngenta is selling.

Faced with this stark realization, Monsanto has twisted and contradicted the clear allegations of its counterclaims. Despite the fact that its counterclaims repeatedly allege that Syngenta is selling corn seed containing GA21 technology, Monsanto now contradicts its pleadings and argues that the tangible product Syngenta is actually selling is GA21. Monsanto's attempt to ignore the allegations of its counterclaims and avoid the inevitable impact of *Dastar* must be rejected. Dismissal of counterclaims Nos. 1-3 is required under *Dastar*.

---

[1] Monsanto repeatedly suggests in its brief that Syngenta admitted the truth of facts alleged by Monsanto in support of its counterclaims. (Mon. Br. at 5.) Nothing could be further from the truth. Counterdefendants made clear that they "accept Monsanto's allegations as true solely for the purposes of this motion." (Syn. Br. at 4, n. 2.)

# ARGUMENT

## I.  *DASTAR* PRECLUDES MONSANTO'S REVERSE PASSING OFF CLAIM

In *Dastar*, the Supreme Court held that reserve passing off claims under the Lanham Act are limited to situations where a defendant sells as its own a tangible good manufactured or produced by the plaintiff. *Dastar*, 539 U.S. 23, 31-33. Claims based on reverse passing off an idea, technology, or concept incorporated into the "good" that is sold in the marketplace are not, the Court held, protected by the Lanham Act. *Id.* at 33-37. Those claims are more properly brought under the laws designed to protect ideas and innovation – the copyright and patent laws. *Id.*

### A.  The Tangible "Good" is The Corn Seed That Syngenta Allegedly Sold to Consumers

The "good" at issue in Monsanto's counterclaim is <u>corn seed</u>. *Dastar* defines "good" for the purpose of reverse passing off analysis as "the <u>tangible product sold in the marketplace</u>" – not any technology or component incorporated into that product. *Dastar*, 539 U.S. at 31 (emphasis added). Under this simple and straightforward definition, it is clear from Monsanto's allegations that the tangible product Syngenta is selling to the marketplace is corn seed. Monsanto alleges that Garst, Golden Harvest, and Syngenta are "marketing, selling and licensing <u>corn seed</u> containing Monsanto's GA21 event." (AAC at ¶ 53-54 (emphasis added).) Monsanto alleges that it gave Garst and Golden Harvest the GA21 event that Garst, Golden Harvest, and/or Syngenta "incorporated" into, or used to "breed," the corn seed that Garst, Golden Harvest and/or Syngenta are selling. (*Id.* at ¶¶ 55-56.) Because Monsanto admits that Garst, Golden Harvest, and/or Syngenta – not Monsanto – produced the actual corn seed that is sold (*id.* at ¶¶ 26-39), its claim is barred by *Dastar*. *See Dastar*, 539 U.S. at 21-23, 31-37.

To escape the fatality of *Dastar*, Monsanto argues that corn seed is not the final product sold to consumers, but instead is just a "package" for the "true goods" – the GA21 event. (*See* Mon. Br. at 8.) Monsanto's argument is inconsistent with *Dastar*. According to Monsanto, if consumers value a certain characteristic of a product, the "good" for the purposes of the reverse passing off analysis is whatever gave that product the desirable characteristic. (Mon. Br. at 7.) In other words, if GA21 is the desirable characteristic in the corn seed, it should be considered the "good." This argument is not only inconsistent with *Dastar*'s simple and straightforward definition of "good," it already has been rejected by the Supreme Court. *See Dastar*, 539 U.S. at 31. The product actually sold to the marketplace in *Dastar* was a videotape. The desirable characteristic of the product was not the tape itself, but the contents or ideas recorded on the tape. Under Monsanto's rationale, the "good" in *Dastar* should have been the contents or ideas recorded on the tape since they were the desirable aspect of the tape. However, the Court rejected this argument, refusing to extend the Lanham Act to the contents of the tapes. Thus, the "good" under *Dastar* is the finished corn seed that is sold to seed companies and growers – not a characteristic of the seed.

Monsanto's argument is also inconsistent with its own pleadings. Monsanto repeatedly alleged in its counterclaims that Syngenta is selling <u>corn seed</u> containing GA21 to the marketplace. (*See, e.g.*, AAC at ¶ 53 ("Syngenta is improperly marketing, selling and licensing corn seed containing Monsanto's GA21 event"); ¶¶ 54-55, 57, 59.) Now, in its Opposition, Monsanto changes its position, portraying GA21 as the tangible product Syngenta is selling and the corn seed as nothing more than "packaging." (Mon. Br. at 8.) Monsanto has also changed its characterization of GA21. In its counterclaims Monsanto alleged that GA21 was a Monsanto "technology" and "intellectual property" (AAC at ¶¶ 54-59), while now it denies that GA21 is a

"technology" at all. (Mon. Br. at 8.) In fact, Monsanto goes so far as to accuse Syngenta of attempting to distort the true nature of GA21 by referring to it as "GA21 technology" (*see id.*), despite the fact that this language was taken directly from Monsanto's own pleadings. (*E.g.*, AAC at ¶ 55.) Finally, Monsanto ignores that it alleged that Syngenta "incorporated" GA21 into its corn seed lines through a "breeding process." (AAC at ¶¶ 54-59, 62.) Monsanto cannot escape its own pleadings.

Monsanto's "Intel Inside" illustration sheds little light on this case. (*See* Mon. Br. at 9.) A reverse passing off case involving the installation of a fully manufactured microprocessor raises different factual and legal issues than a case involving the creation of corn seed incorporating genetic traits. Computer makers take a completed, tangible microprocessor, and physically insert it into a computer. The process of creating genetically engineered corn seed is quite different. There are not stores of separate, tangible, pre-manufactured units called "GA21" that are physically inserted into corn seed. Rather, GA21 is contained in inbred corn seed lines made up of a combination of germplasm, genetic traits, and other agronomic characteristics. The GA21 inbred corn seed line then is crossed with another inbred corn seed line to create a hybrid corn seed.[2] (*See, e.g.*, AAC at ¶ 56 (alleging that Syngenta obtained GA21 from Monsanto that it "used to breed" its "commercialized corn-seed line").) This process is not akin to physically inserting a microprocessor into a computer. Furthermore, it is far from certain that the computer maker in Monsanto's example would be liable for reverse passing off. The final tangible product

---

[2] In its Opposition, Monsanto contends that where Syngenta is licensing GA21 traits to seed companies, the product in question is GA21, not the corn seed. (Mon. Br. at 8-9.) But Monsanto's argument is not consistent with its allegations that Syngenta is selling corn seed. Moreover, even when Syngenta enters into licenses with seed companies, it delivers inbred corn seed lines containing the GA21 event, germplasm, and other agronomic characteristics. The licensee uses that inbred corn seed line to cross with another inbred corn seed line to produce hybrid corn seed, which is planted by the farmer. So, even in the case of licensing, *Dastar* prevents Monsanto from using the Lanham Act to create an additional cause of action for the intellectual property that it claims to be contained in the inbred corn line delivered by Syngenta.

sold to consumers in that hypothetical is the completed computer (that typically would be comprised of a computer case, a motherboard, a video card, a hard drive, a microprocessor, and various other components). Misrepresenting the origin of any one of those component parts would not constitute reverse passing off post-*Dastar*. *See Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) (rejecting claim based on misrepresentation of origin of a table leg incorporated into a table sold by the defendant because the question under *Dastar* is whether the defendant misrepresented the origin of the "finished product" (the table), not "any component" part (the leg)).

Under the straightforward definition of "good" used in *Dastar* and Monsanto's own factual allegations, the "good" that Syngenta is selling to the marketplace unmistakably is corn seed. Because Monsanto did not manufacture or produce that seed, its claim is precluded by *Dastar*.

## B.    *Dastar* is Not Limited to "Communicative Products"

Monsanto argues that *Dastar* should be construed to apply only to communicative products. (Mon. Br. at 7.) However, the Court's decision did not focus on the differences between communicative products and physical products, but instead focused on the lack of difference. *See Dastar*, 539 U.S. at 33. The Court noted that "[i]t could be argued, perhaps, that the reality of purchaser concern is different for what might be called a communicative product – one that is valued not primarily for its physical qualities, such as a hammer, but for the intellectual content that it conveys, such as a book or, as here, a video." *Id.* However, the Court rejected this argument, concluding that "communicative products" should not be "accord[ed] special treatment." *Id.* In other words, the issue the *Dastar* Court addressed was not whether a more restrictive type of reverse passing off analysis should apply when communicative products are at issue – it was whether the limited scope of reverse passing off should apply to

communicative products with the same force it applies to physical products. The Court answered that question in the affirmative. *See id.*

Monsanto's argument that *Dastar* is limited to "communicative products" was unequivocally rejected in *Bretford*. 286 F. Supp. 2d at 972 ("Bretford argues that *Dastar* should be limited to 'communicative products,' such as videos, but we do not read the case that way."), *aff'd*, 419 F.3d 576 (7th Cir. 2005). The argument should be rejected by this Court as well.

### C. *Dastar* Is Not Limited to Cases Involving Expired Patents or Copyrights

*Dastar* also is not limited, as Monsanto argues, to cases involving expired copyrights or patents. (*See* Mon. Br. at 10.) The *Dastar* Court stated that "in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Dastar*, 539 U.S. at 33-34. The Lanham Act, the Court emphasized, "does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity." *Id.* The Court was concerned with any situation where a party attempts to use the Lanham Act to enforce what are essentially patent rights. This is precisely what Monsanto is attempting to do. Under *Dastar*, Monsanto's patent claims should be resolved in its pending patent suits, not through a backdoor Lanham Act claim.

Monsanto's argument also conflicts with post-*Dastar* reverse passing off cases that have applied *Dastar* to products with unexpired patents or copyrights. *See, e.g., Pioneer Hi-Bred Int'l v. Syngenta Seeds, Inc.*, Civil Action No. 4:02-cv-90541 (C.D. Iowa Aug. 17, 2004) (dismissing Lanham Act claims under *Dastar* that were based on alleged misappropriation of plaintiff's patented genetic traits); *Bob Creeden & Assocs. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 878-80 (N.D. Ill. 2004) (dismissing reverse passing off claim that was based on misappropriation of plaintiff's copyrighted software).

### D. Lower Court Cases Support The Application of *Dastar* to This Case

Monsanto's arguments not only are inconsistent with *Dastar* and Monsanto's own allegations, they find no support in the cases applying *Dastar*. Significantly, Monsanto does not cite a single case allowing a claim to go forward based on any of the grounds it advances. Indeed, Monsanto does not cite a single case refusing to follow *Dastar* for any reason. To the contrary, lower court decisions uniformly and unequivocally support the application of *Dastar* to the facts of this case.

*Pioneer Hi-Bred Int'l v. Syngenta Seeds, Inc.*, Civil Action No. 4:02-cv-90541 (C.D. Iowa Aug. 17, 2004), applied *Dastar* to defeat Lanham Act and common law claims based on facts nearly identical to those in this case. Pioneer brought – before *Dastar* was decided – a reverse passing off claim against Syngenta essentially identical to Monsanto's claims. Pioneer alleged that Syngenta "engaged in reverse palming off by marketing as Syngenta's own, <u>seed corn containing or derived from Pioneer's germplasm, inbreds or varieties</u>." *Id.* at 2 (emphasis added).[3] After *Dastar*, Pioneer recognized that its reverse passing off claim was no longer viable and conceded as much to the court. Monsanto suggests that *Pioneer* lacks precedential value because it involved the concessions of a single party and not a court ruling on the merits of Pioneer's claims under *Dastar*. (Mon. Br. at 11, n. 6.) However, even a cursory read of the court's decision dismissing Pioneer's false advertising and unfair competition claims (which were not conceded) shows that the court found that *Dastar* precludes Pioneer's reverse passing off claim. Pioneer alleged that Syngenta was selling corn seed "containing" Pioneer germplasm, similar to Monsanto's allegation that Syngenta is selling corn seed "containing" Monsanto

---

[3] Monsanto's attempt to distinguish *Pioneer* on the ground that Monsanto did not allege that Syngenta used Monsanto's GA21 to <u>develop</u> a new glyphosate-tolerant trait is misplaced. (*See* Mon. Br. at 11, n. 6.) The court stated that Pioneer alleged that Syngenta marketed as its own, "seed corn containing or derived from Pioneer's germplasm, inbreds or varieties." *Pioneer* at 7. The court did not base its decision on an allegation that Syngenta was <u>developing</u> germplasm.

GA21. Pioneer did not allege that Syngenta "is attempting to market Pioneer seed under the Syngenta moniker or vice versa," just as Monsanto does not and cannot allege that Syngenta is attempting to market Monsanto seed under the Syngenta moniker. *Id.* at 7-8. Based on these facts, the *Pioneer* court dismissed Pioneer's false advertising Lanham Act claim and unfair competition claim on the grounds that such claims "fly directly in the face of *Dastar*." *Id.* In reaching this decision, the court first had to conclude that Pioneer's reverse passing off claim was foreclosed by *Dastar*. As the facts of *Pioneer* are nearly identical to this case, the same result is warranted here. Monsanto's reverse passing off must be dismissed.

*Bretford Mfg., Inc. v. Smith System Mfg. Co.*, 286 F. Supp. 2d 969 (N.D. Ill. 2003), *aff'd*, 419 F.3d 576 (7th Cir. 2005), also supports the application of *Dastar* to this case. Like *Pioneer*, *Bretford* is a case that did not involve a "communicative product." In *Bretford*, the plaintiff alleged that the defendant had passed off a table leg manufactured by the plaintiff as its own in a table manufactured by the defendant. Monsanto attempts to distinguish *Bretford* on the ground that the court held "there was no misrepresentation, express or implied, as to the source of components of the tables," while in this case Monsanto has alleged that Syngenta made affirmative statements as to the source of GA21. (*See* Mon. Br. at 11.) However, Monsanto conveniently ignores the court's conclusion that, under the analysis of the Supreme Court in *Dastar*, "[t]he complete product is what counts, and there was no misrepresentation, or false advertising, in regard to the completed products – the tables that were sold to the District." *Bretford*, 286 F. Supp. 2d at 972 (noting additionally that "[c]omponent parts are not material").

The district court's decision in *Bretford* was affirmed by the Seventh Circuit in *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576 (7th Cir. 2005). In affirming the decision, the Seventh Circuit noted that while "no one makes a product from scratch" and there are

hundreds of sources or components "even for a simple product such as a table," *Dastar* holds that "the right question" is "whether the consumer knows who has produced the <u>finished product</u>. In the *Dastar* case that was Dastar itself, <u>even though most of the product's economic value came from elsewhere</u>; just so when Smith System includes components manufactured by others but stands behind the finished product." *Id.* at 581 (emphasis added). Thus, even where the value of the product is "elsewhere," the only product protected by the Lanham Act is the "finished product" sold in the marketplace. In *Bretford*, the "finished product" was the table, not the plaintiff's table leg. Likewise, here the "finished product" is the corn seed sold by Syngenta in the marketplace, not the GA21 contained in the seed. Under *Bretford* and *Pioneer*, Monsanto's claim based on the GA21 event contained in Syngenta corn seed is barred by *Dastar*.

## II.    MONSANTO'S FALSE ADVERTISING CLAIM FAILS UNDER *DASTAR*

Monsanto takes the position that Syngenta's motion to dismiss its Lanham Act false advertising claim should be denied because the statements at issue were made in "commercial advertising." (*See* Mon. Br. at 12-13.) Monsanto misconstrues the nature of the issue here. The problem with Monsanto's claim is not that it failed to allege statements were made by Syngenta in the course of "commercial advertising." The problem is that Monsanto's false advertising claim is nothing more than its reverse passing off claim by another name, and therefore is barred by *Dastar* and its progeny.

Where a false advertising claim is based on statements that would not qualify as false representations of the "origin of goods" under *Dastar*, that claim is in essence a failed reverse passing off claim and must be dismissed under *Dastar*. *See, e.g., Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 222 (D. Conn. 2005) (refusing to allow plaintiff "to rescue his Lanham Act claim by re-conceptualizing it as a 'false advertising' claim" because "at its core, Dr. Radolf's Lanham Act claim remains one in which he asserts that Defendants used research and data that

he originated without properly attributing the source of the research and data" and "that type of claim, however styled, is barred by the language and holding of *Dastar*"); *Pioneer* at 6 (rejecting Pioneer's false advertising claim where it had "not alleged that Syngenta made any misrepresentations in commercial advertising or promotion regarding the nature, characteristics, qualities, or geographic origin of its seed corn except to claim that Syngenta is the producer of that which Pioneer claims as its own"); *Bretford*, 286 F. Supp. 2d at 972 ("Bretford contends that Smith was guilty of 'false advertising' under the Lanham Act in that it misrepresented the origin of the leg on the sample table. But *Dastar* blocks that argument as well. There was no misrepresentation, because Smith had no duty to inform the District as to where it had obtained the components it used to assemble the sample table.").

Monsanto does not address these cases or even deny that its false advertising claim is based on the same allegations as its reverse passing off claim – namely, that Syngenta made false and misleading statements by stating that it owns, has acquired, or has developed the GA21 technology contained in its corn seed product.[4] (*See* AAC at ¶ 73.) As in *Radolf*, *Bretford*, and *Pioneer*, Monsanto's false advertising claim must be dismissed as it is identical to its flawed reverse passing off claim.

### III.  MONSANTO'S DELAWARE DECEPTIVE TRADE PRACTICES ACT CLAIM FAILS UNDER *DASTAR*

Monsanto argues that it has numerous different claims under the Delaware Deceptive Trade Practices Act ("DDTPA"), and therefore dismissal is inappropriate even if its Lanham Act claims fail. (Mon. Br. at 13-15.) Despite Monsanto's claim that it has pled a "wide variety of conduct actionable under the [DDTPA]," (Mon. Br. at 14), it has merely attempted to affix

---

[4] Monsanto contends that its false advertising claims are "wholly distinct from Monsanto's reverse passing off counterclaim" (Mon. Br. at 13); however, it cites no allegations or explanation in support of its statement. Such conclusory argument must be rejected, especially where the facts alleged in the counterclaims show there is no difference between the facts supporting its false advertising claim and its reverse passing off claim.

different legal labels to the same limited set of facts, in a manner held by courts to be contrary to *Dastar*. Monsanto argues it has alleged that "Syngenta passed off Monsanto's goods as its own," that "Syngenta caused a likelihood of confusion . . . as to the source . . . of Syngenta's glyphosate-tolerant product with Monsanto's GA21 product," that "Syngenta falsely represented that its goods and services are of a particular quality," and that Syngenta has otherwise engaged in conduct that "creates a likelihood of confusion." (Mon. Br. at 14.) However, the gravamen of every single one of those claims is that Syngenta falsely represented that it owns, has acquired, or has developed the GA21 technology contained in its corn seed product, the same factual basis for its reverse passing off and false advertising claims. Such claims are no more appropriately brought under the DDTPA than they are under the Lanham Act.

Monsanto ignores decisions from several jurisdictions that have uniformly held that *Dastar*'s analysis is equally applicable to state unfair competition claims, whether brought under common law or statute. *See, e.g., A Slice of Pie Productions, LLC v. Wayans Bros. Entertainment*, No. 3:04 CV 1034 JBA, 2005 WL 2338887, at *14 (D. Conn. Sep. 21, 2005) (rejecting reverse passing off claim under the Connecticut Unfair Trade Practices Act because, even though the "Connecticut Supreme Court has never considered a 'reverse passing off' claim in the CUTPA context," under *Dastar* "reverse passing off claims under the Lanham Act pertain only to physical goods, not their intellectual property content" and "[t]his Court sees no basis for applying any other concept of passing off, or reverse passing off, in the context of a CUTPA claim"); *see also* Syn. Br. at 13-14 (listing cases). Indeed Monsanto does not cite a single case, from any jurisdiction, where a court ruled that a claim that failed under *Dastar* could survive under state unfair competition law. (*See* Mon. Br. at 13-15.) Since the DDTPA, like many similar state statutes, is a codification of the common law of unfair competition, *see ACCU*

*Personnel, Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191, 1212 (D. Del. 1994), the cases dismissing state unfair competition claims under *Dastar* also warrant dismissal of Monsanto's DDTPA claim.

## CONCLUSION

For the foregoing reasons, Counterdefendants respectfully request that this Court dismiss Counterclaims I, II and III for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

          Respectfully submitted,

          YOUNG CONAWAY STARGATT & TAYLOR, LLP

          */s/ John W. Shaw*

          John W. Shaw (No. 3362)
          Rolin Bissell (No. 4478)
          The Brandywine Building, 17th Floor
          1000 West Street
          Wilmington, Delaware 19801
          (302) 571-6600

          *Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004
(202) 508-8000

Dated: October 14, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on October 14, 2005, I caused a copy of the foregoing document to be served by the manner indicated on the following counsel of record:

**BY HAND DELIVERY**

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

**BY FEDERAL EXPRESS**

> Peter E. Moll, Esquire
> Howrey Simon Arnold & White, LLP
> 1299 Pennsylvania Ave., N.W.
> Washington, D.C. 20004

> Susan Knoll, Esquire
> Howrey Simon Arnold & White, LLP
> 1111 Louisiana, 25th Floor
> Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ John W. Shaw*

John W. Shaw (No. 3362)
Rolin Bissell (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

DB01:1611981.1