# EXHIBIT A

*Zur direkten Erledigung an:*
*Zivilgericht*
*Datum:* [handwritten]
*[signature]*

**REQUEST**
**FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS**

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ÉTRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.

*Convention relative à la signification et à la notification à l'l'étranger des actes judiciaires ou extrajudiciaires en matierè civile*
*ou commerciale, signée à La Haye, le 15 Novembre 1965*

| Identify and address of the applicant | Address of receiving authority |
|---|---|
| *Identité et adresse du requérant* | *Adresse de l'autorité destinataire* |
| Richard L. Horwitz, Esquire | Syngenta Participations AG |
| David E. Moore, Esquire | c/o Appellationsgericht Basel-Stadt |
| Potter Anderson & Corroon LLP | Bäumleingasse 1 |
| 1313 N. Market Street, P.O. Box 951 | 4051 Basel |
| Wilmington, DE 19899 USA | Switzerland |
| Pursuant to the laws of Delaware and as adopted by | Appellationsgericht Basel |
| the Federal Courts, Attorneys are officers of the | E   1 4. Okt. 2005 |
| Court and, therefore, are empowered to sign this | R. A |
| Request (Fed. R. Civ. P. 4 (c)(2) | |

The undersigned applicant has the honour to transmit—in duplicate--the documents listed below and, in conformity with article 5 of the
above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
   (identity and address)
*Le requérant soussigné a l'honneur de faire parvenir--en double exemplaire--a l'autorité destinataire les documents ci-dessous énumérés,*
*en la priant conformément a l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire. savoir*
   *(identité et adresse)*_____

Syngenta Participations AG, Schwarzwaldallee 215, c/o Syngenta International AG, 4058 Basel, Switzerland

☒  (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*     *Zustellung verfügt*
      *a) selon les formes léfales (article 5, alinéa premier, lettre a)*

   (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:     Basel, 1 4. Okt. 2005
      *b) selon la forme particulière suivante (article 5. alinéa permier, lettre b)*_____
   _____     *Der Zivilgerichtspräsident* 1

   (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*.
      *c) le cas échéant, par remise simple (article 5, alinéa 2)*

The authority is requested to return or to have returned to the applicant a copy of the documents-and of the annexes*--with a certificate
as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renoyer au requérant un exemplaire de l'acte--et de ses annexes--avec l'attestation*
*figurant au verso.*

List of documents
*Enumération des pièces*

| |
|---|
| Two sets of the Answer and Counterclaims |
| Two sets of the Summary of the Documents to be Served |
| Two sets of the Certificate |
| Two sets of the Summons |
| Two sets of the Request |
| Two sets of Translation of the Answer and |
|    Counterclaims with Certification |
| Two sets of Translation of the Summons with Certification |

Done at Wilmington, Delaware, the 23 day of September 2005
*Fait à_____, le_____*

Signature and/or stamp.
*Signature et/ou cachet*

[signatures: Monica Mosley]

(Formerly OBD-116 which was formerly LAA-116,     USM-94)
both of which may still be used)     (Est. 11/22/77)

*Delete if inappropriate.
*Rayer les mentions Inutiles.

## SUMMARY OF THE DOCUMENT TO BE SERVED
### *ELEMENTS ESSENTIELS DE L'ACTE*

*Ⴍᵇ ᴬᶜ.*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convention relative à la signification et à la notification à l' l'étranger des actes judiciaires ou extrajudiciaires en matierè civile ou commerciale, signée à La Haye, le 15 Novembrè 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa 4)*

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*   Richard L. Horwitz, Esquire, David E. Moore, Esquire, Potter Anderson & Corroon LLP, 1313 N. Market Street, P.O. Box 951, Wilmington, Delaware 19899 USA 302-984-6000

**Particulars of the parties*:**
*Identité des parties:*   Monsanto Company and Monsanto Technology LLC, v. Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. et al.
    *Pursuant to the laws of Delaware and as adopted by the Federal Courts, Attorneys are officers of the Court and, therefore, are empowered to sign this Request (Fed. R. Civ. P. 4 (c)(2)

### JUDICIAL DOCUMENT**
### *ACTE JUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*   Documents necessary to pursue a lawsuit seeking injunctive relief, damages and other relief
**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas echéant, le montant du litige:*  Consolidated litigation involving patent infringement and antitrust claims, involving counterclaims for violations of the Lanham Act and The Delaware Trade Practices Acts and seeking injunctive relief, and damages relating thereto
**Date and place for entering appearance**:**
*Juridiction qui a rendu la décision:*   Appearance should be entered within twenty (20) days after service in the United States District Court, District of Delaware, United States Courthouse, 844 King Street, Wilmington, Delaware 19801 USA
**Court which has given judgment**:**
*Juridiction qui a rendu la décision:*   N/A
**Date of judgment**:**
*Date de la rendu la décision:*   N/A
**Time limits stated in the document**:**
*Indication des délias figurant dans l'acte:*   Counter-defendant must answer or otherwise move with respect to the Answer and Counterclaims within twenty (20) days after service

### EXTRAJUDICIAL DOCUMENT**
### *ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*   N/A

**Time limits stated in the document**:**
*Indication des délias figurant dans l'acte:*   N/A

*If appropriate, identity and address of the person interested in the transmission of the document.

**Delete if inappropriate.

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1)   that the document has been served*
*1   Que la demande a été exécutée*
    -the (date)
    *-la (date)* _____
    -at (place, street, number)
        *- à (localité, rue, numéro)* _____
_____

    -in one of the following methods authorized by article 5-
    *-dans une des formes suivantes prévantes prévues à l'article 5:*
        (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
            *a) selon les formes légales (article 5, alinéa premier, lettre a)*
        (b) in accordance with the following particular method*:
            *b) selon la forme particulière suivante:* _____
_____

        (c) by delivery to the addressee, who accepted it voluntarily.
            *c) par remise simple*

    The documents referred to in the request have been delivered to:
    *Les documents mentionnés dans la demande ont été remis à:*
        -(identity and description of person)
        *-(identité et qualité de la personne)* _____
_____

        -relationship to the addressee (family, business or other):
        *-(liens de parenté, de subordination ou autres, avec le destinataire de l'acte:* _____
_____

2)   that the document has not been served, by reason of the following facts*:
*2    que la demande n'a pas été exécutée, en raison des faits suivants:*
_____
_____
_____


In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.

*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais don't le détail figure au mémoire ci-joint.*


Annexes
*Annexes*
Documents returned:
*Pièces renoyées:*
_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*
_____
_____
_____

Done at _____ , the
*Fait à* _____ , *le* _____

Signature and/or stamp.
*Signature et/or cachet.*

_____

*Delete if inappropriate.
*Rayer les mentions inutiles.*

2



**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK       )
                        )     ss
COUNTY OF NEW YORK      )


## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from English into German of Answer and Counterclaims of Monsanto

Company and Monsanto Technology LLC to Sygenta Seeds, Inc.'s Second Amended Antitrust

Complaint and the Summons of Sygenta AG and Sygenta Participations AG in Case No. 04-305

SLR of the United States District Court for the District of Deleware, dated September 23, 2005.


Randon Burns, Vice President
Geotext Translations, Inc.


Sworn to and subscribed before me

this ___4th___ day of ___October___, 20__05__


BRANDON CARNEY
Notary Public, State of New York
No. 01CA6122227
Qualified in New York County
Commission Expires February 7, 20___

AO 440 (Rev.10/93) Summons in a Civil Action

# United States District Court

## District of Delaware

MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC

                        Plaintiffs,

          v.

SYNGENTA SEEDS, INC., and
SYNGENTA BIOTECHNOLOGY, INC., et al

                        Defendants

# SUMMONS IN A CIVIL ACTION

### CASE NUMBER: 04-305-SLR

TO:(Name and Address of Defendant)

**Syngenta Participations AG
c/o Appellationsgericht Basel-Stadt
Baumleingasse 1
4051 Basel
Switzerland**

 **YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Richard L. Horwitz, Esq. (#2246)
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000

a reply to the Answer and Counterclaims, which is herewith served upon you, within twenty (20) days after service of this summons upon you, exclusive of the day of service   If you fail to do so, judgment by default will be taken against you for the relief demanded in the Answer and Counterclaims.  You must also file your Reply with the Clerk of this Court within a reasonable period of time after service.

PETER T. DALLEO                                         SEP 2 3 2005

CLERK

BY DEPUTY CLERK                                         DATE

DEN HAAG

AO 440 (Stand: 10/93) Ladung in einem Zivilprozess

# United States District Court[1]

## Gerichtsbezirk Delaware

**MONSANTO COMPANY und MONSANTO TECHNOLOGY LLC,**

<table>
<tr><td>Klägerinnen,</td><td><b>LADUNG IN EINEM</b></td></tr>
<tr><td></td><td><b>ZIVILPROZESS</b></td></tr>
<tr><td>- gegen -</td><td><b>AZ.: 04-305-SLR</b></td></tr>
</table>

**SYNGENTA SEEDS, INC., und**
**SYNGENTA BIOTECHNOLOGY, INC.,**
**et al.,**

Beklagte.

AN: (Name und Anschrift der Beklagten)

**Syngenta Participations AG**
**z. Hd.: Appellationsgericht Basel-Stadt**
**Baumleingasse 1**
**4051 Basel**
**Schweiz**

**SIE WERDEN HIERMIT GELADEN** und aufgefordert, dem
PROZESSBEVOLLMÄCHTIGTEN DER KLÄGERINNEN (Name und Anschrift)
RA Richard L. Horwitz, Esq. (Nr. 2246)
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899 (USA)
+(302) 984-6000

eine Erwiderung auf die Antwort und Widerklage, die hiermit an Sie zugestellt wird,
innerhalb von 20 (zwanzig) Tagen nach Zustellung dieser Ladung an Sie,
ausschließlich des Tages der Zustellung, zuzustellen. Sollten Sie dies versäumen, wird
ein Versäumnisurteil in Höhe des in der Antwort und Widerklage geforderten
Klagebegehrens gegen Sie erlassen. Ihre Erwiderung muss ferner innerhalb eines

---

[1] etwa: Bundesbezirksgericht der Vereinigten Staaten

angemessenen Zeitraums nach deren Zustellung beim Leiter der Kanzlei dieses
Gerichts eingereicht werden.

PETER T. DALLEO _____                    23. SEPTEMBER 2005
Leiter der Gerichtskanzlei                Datum


/Unterschrift: unleserlich/ _____
Gez.: Stellv. Leiter der Gerichtskanzlei

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | C. A. No. 04-305-SLR (Lead Case) |
| Plaintiffs, | ) ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | **PUBLIC VERSION** |
| SYNGENTA SEEDS, INC., and SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) ) | |
| Defendants. | ) | |

## ANSWER AND COUNTERCLAIMS OF MONSANTO COMPANY AND MONSANTO TECHNOLOGY LLC TO SYNGENTA SEEDS, INC.'S SECOND AMENDED ANTITRUST COMPLAINT

OF COUNSEL

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
John Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004
(202) 783-0800

John F. Lynch
Susan K. Knoll
Steven G. Spears
HOWREY LLP
750 Bering Drive
Houston, TX  77057
Telephone (713) 787-1400

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, DC  20004
(202) 942-5000

Dated:  September 23, 2005
Public Version Dated: October 3, 2005

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Monsanto Company and Monsanto Technology LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY LLC, | ) | C. A. No. 04-305-SLR |
| | ) | (Lead Case) |
| Plaintiffs, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| SYNGENTA SEEDS, INC., and | ) | |
| SYNGENTA BIOTECHNOLOGY, INC., | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER AND COUNTERCLAIMS OF MONSANTO COMPANY AND MONSANTO TECHNOLOGY LLC TO SYNGENTA SEEDS, INC.'S SECOND AMENDED ANTITRUST COMPLAINT

Defendants Monsanto Company and Monsanto Technology LLC (collectively

"Monsanto") hereby answer plaintiff Syngenta Seeds, Inc.'s ("plaintiff" or "Syngenta")

Second Amended Complaint ("complaint") as follows:[1]

### NATURE OF THE ACTION

1.  Monsanto denies the allegations contained in paragraph 1.

2.  Monsanto denies the allegations contained in paragraph 2.

3.  Monsanto denies the allegations contained in paragraph 3.

4.  Monsanto denies the allegations contained in paragraph 4.

5.  Monsanto denies the allegations contained in paragraph 5.

6.  Monsanto denies the allegations contained in paragraph 6.

7.  Monsanto denies the allegations contained in paragraph 7.

8.  Monsanto denies the allegations contained in paragraph 8.

---

[1] Syngenta's original Complaint was filed in *Syngenta Seeds, Inc. v. Monsanto Company et al*, C.A. No. 04-CV-908 (SLR), which was consolidated with the above captioned action by the Court's March 24, 2005 Order.

9.      Monsanto denies the allegations contained in paragraph 9.

10.     Monsanto denies the allegations contained in paragraph 10.

11.     Monsanto denies the allegations contained in paragraph 11.

## JURISDICTION AND VENUE

12.     Monsanto admits that plaintiff's complaint purports to be an action for which this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337, 15 U.S.C. §§ 15, 22, and 26, and 15 U.S.C. §§ 1121, 1125.

13.     Monsanto admits that plaintiff's complaint purports to be an action for which this Court has personal jurisdiction over Monsanto. Monsanto Company and Monsanto Technology LLC admit they are entities organized and existing under the laws of the State of Delaware.

14.     Monsanto admits that plaintiff's complaint purports to be an action for which this district is the proper venue under 28 U.S.C. § 1391 and 15 U.S.C. §§15 and 26. Monsanto denies the remaining allegations contained in paragraph 14 insofar as the allegations purport to provide any basis for imposing any liability upon Monsanto.

## THE PARTIES

15.     Monsanto admits the allegations contained in paragraph 15.

16.     Monsanto admits the allegations contained in paragraph 16.

17.     Monsanto admits the allegations contained in paragraph 17.

18.     Monsanto admits the allegations contained in paragraph 18.

2

## FACTUAL BACKGROUND

### A.    Corn Seeds And Traits

19.    Monsanto admits the allegations contained in paragraph 19.

20.    Monsanto admits the allegations contained in paragraph 20.

21.    Monsanto admits the allegations contained in paragraph 21.

#### 1.    Biotechnology Crop Traits

22.    Monsanto denies the allegations contained in paragraph 22.

23.    Monsanto admits the allegations contained in paragraph 23.

24.    Monsanto admits the allegations contained in paragraph 24.

25.    Monsanto admits that there are currently two events approved for making glyphosate tolerant corn seed, referred to as NK603 and GA21®. Monsanto denies the remaining allegations contained in paragraph 25.

26.    Monsanto admits the allegations contained in paragraph 26.

27.    Monsanto admits the first two sentences of paragraph 27. Monsanto lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence of paragraph 27 and on that basis, denies the allegations in the last sentence of paragraph 27.

#### 2.    The Corn Seed Chain of Distribution

28.    Monsanto denies the allegations contained in paragraph 28.

29.    Monsanto admits the allegations contained in paragraph 29.

30.    Monsanto admits that foundation seed companies develop foundation seed lines or inbred seed lines that are sometimes licensed or sold to hybrid seed companies for use in producing hybrid seed corn. Monsanto further admits that hybrid seed corn may be produced by crossing two inbred seed lines. Monsanto denies the remaining allegations contained in paragraph 30.

31.    Monsanto admits the allegations contained in paragraph 31.

**B.    Monsanto**

     **1.    Monsanto's Acquisition of Trait and Foundation Seed Assets**

32.    Monsanto admits that Monsanto Company has acquired certain intellectual property and other assets. Monsanto denies the remaining allegations contained in paragraph 32.

33.    Monsanto admits that in 1996, Monsanto Company acquired a minority interest in DEKALB Genetics Corporation. Monsanto also admits that in 1997, Monsanto Company acquired certain intellectual property rights from DEKALB Genetics Corporation by license. Monsanto denies the remaining allegations contained in paragraph 33.

34.    Monsanto admits that since 1997, ECB-resistant corn has been sold by Monsanto and Monsanto's licensees under the trade name YieldGard®.

35.    Monsanto admits that in February 1997, Monsanto Company acquired Asgrow Seed Company. Monsanto also admits that following the acquisition of Asgrow Seed Company, research collaboration between Asgrow Seed Company and AgrEvo was terminated. Monsanto denies the remaining allegations contained in paragraph 35.

36.    Monsanto admits that in September 1997, Monsanto Company acquired Holden Foundation Seeds, Inc. Monsanto denies the remaining allegations contained in paragraph 36.

37.    Monsanto admits that in 1998, it announced that it would acquire the remaining shares of DEKALB Genetics Corporation. Monsanto denies the remaining allegations contained in paragraph 37.

38.    Monsanto denies the allegations contained in paragraph 38.

39.    Monsanto admits that in 1998, Roundup Ready® glyphosate resistant corn utilizing GA21® technology that was developed by DEKALB Genetics Corporation was commercially sold. Monsanto denies the remaining allegations contained in paragraph 39.

40.     Monsanto admits that in 1997, Rhone-Poulenc sued DEKALB Genetics Corporation and Monsanto Company. The allegations contained in the complaint in that action speak for themselves. Monsanto denies the remaining allegations contained in paragraph 40.

41.     Monsanto denies the allegations contained in paragraph 41.

42.     Monsanto denies the allegations contained in paragraph 42.

43.     Monsanto admits the allegations contained in paragraph 43.

     **2.     Monsanto's Licensing Practices**

44.     Monsanto denies the allegations contained in paragraph 44.

45.     Monsanto admits that it has derived revenues, directly or indirectly, from farmers through either grower fees or royalties collected by seed companies or retailers/dealers on behalf of Monsanto. Monsanto further admits that the royalty was $18 per unit on its Roundup Ready® corn for the crop year 2003. Monsanto denies the remaining allegations contained in paragraph 45.

46.     Paragraph 46 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 46.

47.     Paragraph 47 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 47.

48.     Monsanto admits that it has various written agreements with seed companies regarding Monsanto's NK603 glyphosate-tolerant corn trait, its ECB-resistant corn trait, its CRW-resistant corn trait and other products. The terms of those agreements speak for themselves. Monsanto denies the remaining allegations contained in paragraph 48.

49.     Monsanto denies the allegations contained in paragraph 49.

50.     Paragraph 50 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 50.

51.     Paragraph 51 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 51.

52.     Monsanto admits the second sentence of the allegations contained in paragraph 52. Monsanto denies the remaining allegations contained in paragraph 52.

### 3.     Monsanto's Strategy and Dominance

53.     Monsanto admits that in "recent years" it has focused on its trait and seed businesses, among others. Monsanto further admits that paragraph 53 selectively quotes from or paraphrases Monsanto's 2003 Annual Report, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 53.

54.     Monsanto denies the first sentence of paragraph 54. Monsanto admits that it is a supplier of biotechnology traits in the U.S., a supplier of foundation seeds and a supplier of hybrid seeds and other crop protection products. Monsanto denies the remaining allegations contained in paragraph 54.

55.     Monsanto denies the first sentence of paragraph 55. Monsanto is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 55, and on that basis, denies the allegations.

56.     Monsanto admits that Holden's is a leading foundation seed provider. Monsanto denies the remaining allegations contained in paragraph 56.

57.     Monsanto admits that DEKALB and Asgrow are wholly-owned subsidiaries of Monsanto. Monsanto further admits that Asgrow is active in selling hybrid corn Seed. Monsanto denies the remaining allegations contained in paragraph 57.

58.     Monsanto admits that it is a leading producer of glyphosate-based herbicide sold in the United States. Monsanto is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 58, and on that basis, denies the remaining allegations.

C.    **Syngenta**

59.    Monsanto admits that Syngenta sells a wide range of agricultural products, including seeds and other crop protection products.    Monsanto further admits that Syngenta sells via a license at least one biotechnology trait in the United States. Monsanto is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 59, and on that basis, denies the allegations.

60.    Monsanto admits that Syngenta markets an ECB-resistant corn trait, Bt11. Monsanto further admits that Syngenta licenses the Bt11 trait from Monsanto under a written agreement, the terms of which speak for themselves.    Monsanto denies the remaining allegations contained in paragraph 60.

61.    Monsanto admits that Syngenta sells a glyphosate-tolerant soybean seed. Monsanto further admits that the glyphosate-tolerant soybean trait is licensed from Monsanto under a written agreement, the terms of which speak for themselves. Monsanto denies the remaining allegations contained in paragraph 61.

62.    Monsanto denies the allegations contained in paragraph 62.

63.    Monsanto admits the allegations contained in paragraph 63.

64.    Monsanto admits that on May 12, 2004, Syngenta AG announced it had acquired certain intellectual property rights in GA21® from Bayer CropScience. Monsanto denies the remaining allegations contained in paragraph 64.

65.    Monsanto admits that on May 12, 2004, Syngenta AG issued two press releases, one relating to Advanta BV and one relating to GA21®, which speak for themselves.    To the extent paragraph 65 purports to characterize those documents, Monsanto denies the allegations contained in paragraph 65.

66.    Monsanto admits the allegations contained in paragraph 66.

7

67.    Monsanto is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67, and on that basis, denies the allegations.

68.    Monsanto admits that Syngenta has offered for sale various products containing Monsanto's GA21 trait without Monsanto's consent or a license to do so. Monsanto denies the remaining allegations contained in paragraph 68.

69.    Monsanto is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69, and on that basis, denies the allegations.

### D.    Monsanto's Alleged Unlawful Conduct And Practices To Exclude Syngenta From The Traits And Foundation Seed Market

70.    Monsanto denies the allegations contained in paragraph 70.

71.    Monsanto denies the allegations contained in paragraph 71.

72.    Monsanto admits that on May 12, 2004, it filed a lawsuit captioned *Monsanto Company et al. v. Syngenta Seeds, Inc., et al.*, C.A. No. 04-305 (D. Del.). Monsanto denies the remaining allegations contained in paragraph 72.

73.    Monsanto denies the allegations contained in paragraph 73.

74.    Monsanto denies the allegations contained in paragraph 74.

75.    Monsanto admits that it filed an action on July 27, 2004 captioned *DeKalb Genetics Corporation v. Syngenta Seeds, Inc., et al.*, CA No. 04C50323, which has been transferred to this Court. Monsanto denies the remaining allegations contained in paragraph 75.

76.    Monsanto denies the allegations contained in paragraph 76.

77.    Paragraph 77 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 77.

78.    Monsanto denies the allegations contained in paragraph 78.

79.    Monsanto denies the allegations contained in paragraph 79.

80.    Monsanto denies the allegations contained in paragraph 80.

81.    Monsanto denies the allegations contained in paragraph 81.

82.    Monsanto denies the allegations contained in paragraph 82.

83.    Paragraph 83 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 83.

84.    Paragraph 84 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 84.

85.    Paragraph 85 references a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 85.

86.    Monsanto admits the allegations contained in paragraph 86.

87.    Paragraph 87 purports to characterize a Federal Circuit decision, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 87.

88.    Monsanto admits that it entered into a settlement agreement with Aventis (now Bayer CropScience) regarding the use of GA21® corn through the 2004-planting season. The terms of that settlement agreement speak for themselves. Monsanto denies the remaining allegations contained in paragraph 88.

89.    Monsanto denies the allegations contained in paragraph 89.

90.    Monsanto denies the allegations contained in paragraph 90.

91.    Paragraph 91 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 91.

92.    Paragraph 92 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 92.

9

93.     Monsanto denies the allegations contained in paragraph 93.

94.     Paragraph 94 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 94.

95.     Monsanto denies the allegations contained in paragraph 95.

96.     Monsanto admits the allegations contained in paragraph 96.

97.     Monsanto admits that it sent a letter to seed companies on or about May 13, 2004, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 97.

98.     Monsanto denies the allegations contained in paragraph 98.

99.     Monsanto denies the allegations contained in paragraph 99.

100.    Monsanto denies the allegations contained in paragraph 100.

101.    Paragraph 101 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 101.

102.    Paragraph 102 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 102.

103.    Paragraph 103 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 103.

104.    Paragraph 104 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 104.

105.    Paragraph 105 purports to selectively quote from or paraphrase a document, which speaks for itself. Monsanto denies the remaining allegations contained in paragraph 105.

106.    Monsanto denies the allegations contained in paragraph 106.

107.    Monsanto denies the allegations contained in paragraph 107.

108.    Monsanto denies the allegations contained in paragraph 108.

109.    Monsanto denies the allegations contained in paragraph 109.

110.    Monsanto denies the allegations contained in paragraph 110.

111.    Monsanto denies the allegations contained in paragraph 111.

112.    Monsanto admits that it has or had written agreements with certain seed companies entitled the License Incentive Agreement, the terms of which speak for themselves. Monsanto denies the remaining allegations contained in paragraph 112.

113.    Monsanto denies the allegations contained in paragraph 113.

114.    Monsanto denies the allegations contained in paragraph 114.

115.    Monsanto admits that its ECB-resistant trait is called MON810 and that MON810 is licensed under the YieldGard® trademark. Monsanto also admits that certain MON810 license agreements permit MON810 to be stacked with other traits, including the glyphosate-tolerant event, NK603. Monsanto denies the remaining allegations contained in paragraph 115.

116.    Monsanto is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 116, and on that basis, denies the allegations. Monsanto admits that Syngenta markets an ECB-resistant corn trait, Bt11. Monsanto further admits that Syngenta licenses the Bt11 trait from Monsanto under a written agreement, the terms of which speak for themselves. Monsanto denies the remaining allegations contained in paragraph 116.

117.    Monsanto admits that Dow AgroSciences/Pioneer market an ECB event under the trade name Hurculex® and that certain of the technology relating to that product is licensed from Monsanto under a license agreement providing for a royalty payment. Monsanto denies the remaining allegations contained in paragraph 117.

118.    Monsanto denies the allegations contained in paragraph 118.

11

119.    Monsanto is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 119, and on that basis, denies the allegations.

120.    Monsanto admits that Syngenta has offered for sell a stacked GA21/BT11 product without Monsanto's consent or a license to do so. Monsanto denies the remaining allegations contained in paragraph 120.

121.    Monsanto denies the allegations contained in paragraph 121.

122.    Monsanto denies the allegations contained in paragraph 122.

123.    Monsanto denies the allegations contained in paragraph 123.

124.    Monsanto denies the allegations contained in paragraph 124.

125.    Monsanto is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence in paragraph 125, and on that basis, denies the allegations. Monsanto denies the remaining allegations contained in paragraph 125.

126.    Monsanto denies the allegations contained in paragraph 126.

127.    Monsanto denies the allegations contained in paragraph 127.

128.    Monsanto denies the allegations contained in paragraph 128.

129.    Monsanto denies the allegations contained in paragraph 129.

130.    Monsanto denies the allegations contained in paragraph 130.

131.    Monsanto denies the allegations contained in paragraph 131.

132.    Monsanto denies the allegations contained in paragraph 132.

133.    Monsanto admits that it explored the possible acquisition of Advanta in early 2004. Monsanto denies the allegations contained in paragraph 133.

134.    Monsanto denies the allegations contained in paragraph 134.

135.    Monsanto denies the allegations contained in paragraph 135.

136.    Monsanto denies the allegations contained in paragraph 136.

137.    Monsanto denies the allegations contained in paragraph 137.

## ALLEGED RELEVANT MARKETS AND MONSANTO'S ALLEGED MONOPOLY POWER

### A.    Glyphosate-Tolerant and Stacked Corn Traits

138.    Paragraph 138 states a legal conclusion to which no answer is required. To the extent an answer is deemed required, Monsanto denies the allegations contained in paragraph 138.

139.    Monsanto denies the allegations contained in paragraph 139.

140.    Monsanto denies the allegations contained in paragraph 140.

141.    Monsanto denies the allegations contained in paragraph 141.

142.    The first sentence of paragraph 142 states a legal conclusion as to which no answer is required.  To the extent an answer is deemed required, Monsanto denies the allegations contained in the first sentence of paragraph 142.  Monsanto denies the allegations contained in the last sentence of paragraph 142.  Monsanto admits the allegations contained in the second, third and fourth sentences of paragraph 142.

143.    Monsanto denies the allegations contained in paragraph 143.

144.    Monsanto denies the allegations contained in paragraph 144.

145.    Monsanto denies the allegations contained in paragraph 145.

### B.    European Corn Borer-Resistant and Stacked Corn Traits

146.    Paragraph 146 states a legal conclusion to which no answer is required. To the extent an answer is deemed required, Monsanto denies the allegations contained in paragraph 146.

147.    Monsanto denies the allegations contained in paragraph 147.

148.    Monsanto denies the allegations contained in paragraph 148.

149.    Monsanto denies the allegations contained in paragraph 149.

150.    Monsanto denies the allegations contained in paragraph 150.

151.    The first sentence of paragraph 151 states a legal conclusion as to which no answer is required.  To the extent an answer is deemed required, Monsanto denies the allegations contained in the first sentence of paragraph 151.  Monsanto denies the

13

allegations contained in the last sentence of paragraph 151. Monsanto admits the allegations contained in the second, third and fourth sentences of paragraph 151.

152. Monsanto denies the allegations contained in paragraph 152.

153. Monsanto denies the allegations contained in paragraph 153.

154. Monsanto denies the allegations contained in paragraph 154.

**C.     Foundation Corn Seeds**

155. Paragraph 155 states a legal conclusion to which no answer is required. To the extent an answer is deemed required, Monsanto denies the allegations contained in paragraph 155.

156. Monsanto denies the allegations contained in paragraph 156.

157. Monsanto denies the allegations contained in paragraph 157.

158. Paragraph 158 states a legal conclusion to which no answer is required. To the extent an answer is deemed required, Monsanto denies the allegations contained in paragraph 158.

159. Monsanto admits that it is a leading producer of corn foundation seeds in the United States. Monsanto denies the remaining allegations contained in paragraph 159.

160. Monsanto denies the allegations contained in paragraph 160.

161. Monsanto denies the allegations contained in paragraph 161.

162. Monsanto denies the allegations contained in paragraph 162.

## PURPORTED EFFECTS OF DEFENDANTS' UNLAWFUL SCHEME

### 1. Effects on the Glyphosate-Tolerant Corn and Stacked Trait Markets

163. Monsanto denies the allegations contained in paragraph 163.

164. Monsanto denies the allegations contained in paragraph 164.

165. Monsanto denies the allegations contained in paragraph 165.

### 2. Effects on the ECB-Resistant and Stacked Corn Trait Markets

166. Monsanto denies the allegations contained in paragraph 166.

167. Monsanto denies the allegations contained in paragraph 167.

168. Monsanto denies the allegations contained in paragraph 168.

### 3. Effects on the Foundation Corn Seed Market

169. Monsanto denies the allegations contained in paragraph 169.

170. Monsanto denies the allegations contained in paragraph 170.

171. Monsanto denies the allegations contained in paragraph 171.

172. Monsanto denies the allegations contained in paragraph 172.

## CLAIMS FOR RELIEF

### COUNT ONE
### Glyphosate-Tolerant and Stacked Corn Trait Markets
### Sherman Act, Section 2

173. Monsanto reasserts and incorporates by reference its answers to paragraphs 1-172 above.

174. Monsanto denies the allegations contained in paragraph 174.

175. Monsanto denies the allegations contained in paragraph 175.

176. Monsanto denies the allegations contained in paragraph 176.

177. Monsanto denies the allegations contained in paragraph 177.

178. Monsanto denies the allegations contained in paragraph 178.

179. Monsanto denies the allegations contained in paragraph 179.

180.    Monsanto denies the allegations contained in paragraph 180.

181.    Monsanto denies the allegations contained in paragraph 181.

## COUNT TWO
### ECB-Resistant and Stacked Corn Trait Markets
### Sherman Act, Section 2

182.    Monsanto reasserts and incorporates by reference its answers to paragraphs 1–181 above.

183.    Monsanto denies the allegations contained in paragraph 183.

184.    Monsanto denies the allegations contained in paragraph 184.

185.    Monsanto denies the allegations contained in paragraph 185.

186.    Monsanto denies the allegations contained in paragraph 186.

187.    Monsanto denies the allegations contained in paragraph 187.

188.    Monsanto denies the allegations contained in paragraph 188.

189.    Monsanto denies the allegations contained in paragraph 189.

190.    Monsanto denies the allegations contained in paragraph 190.

## COUNT THREE
### Foundation Corn Seed Market
### Sherman Act, Section 2

191.    Monsanto reasserts and incorporates by reference its answers to paragraphs 1–190 above.

192.    Monsanto denies the allegations contained in paragraph 192.

193.    Monsanto denies the allegations contained in paragraph 193.

194.    Monsanto denies the allegations contained in paragraph 194.

195.    Monsanto denies the allegations contained in paragraph 195.

196.    Monsanto denies the allegations contained in paragraph 196.

197.    Monsanto denies the allegations contained in paragraph 197.

198.    Monsanto denies the allegations contained in paragraph 198.

199.    Monsanto denies the allegations contained in paragraph 199.

## COUNT FOUR
## <u>Lanham Act, Section 43(a)</u>

200.   Monsanto reasserts and incorporates by reference its answers to paragraphs 1–199 above.

201.   Monsanto denies the allegations contained in paragraph 201.

202.   Monsanto denies the allegations contained in paragraph 202.

203.   Monsanto denies the allegations contained in paragraph 203.

204.   Monsanto admits the allegations contained in paragraph 204.

205.   Monsanto denies the allegations contained in paragraph 205.

206.   Monsanto denies the allegations contained in paragraph 206.

### DEMAND FOR TRIAL BY JURY

207.   Monsanto admits that plaintiff purports to demand a trial by jury, but denies that plaintiff has stated any claims that are triable.

### <u>PRAYER FOR RELIEF</u>

In answer to the Prayer for Relief, Monsanto denies that plaintiff is entitled to any of the relief sought in paragraphs A–G of the Prayer for Relief and further denies that plaintiff is entitled to any relief whatsoever.

### <u>GENERAL DENIAL</u>

Monsanto denies allegations contained in the complaint not expressly admitted in this Answer.

### <u>DEFENSES</u>

The following defenses apply to all causes of action alleged in the complaint.

### <u>First Defense</u>

Plaintiff's claims are barred for failure to state a claim upon which relief can be granted.

## Second Defense

Plaintiff's claims are barred by the statute of limitations.

## Third Defense

Plaintiff's claims are barred by the doctrine of laches, waiver and/or estoppel.

## Fourth Defense

Plaintiff has failed to mitigate its damages, if any.

## Fifth Defense

Plaintiff lacks standing to assert the claims alleged in the complaint.

## Sixth Defense

Plaintiff's claims are barred, in whole or in part, because Syngenta has not suffered, and will not suffer, any injury, including but not limited to injury of the type the antitrust laws were designed to prevent, nor sustained injury to a legally protected or cognizable interest, by reason of the conduct alleged in the Amended Complaint.

## Seventh Defense

Any injuries or damages plaintiff may have suffered were caused solely and proximately by the acts or omissions of others.

## Eight Defense

Any and all of Monsanto's actions challenged by plaintiff were lawful, justified, and procompetitive, and were carried out in furtherance of Monsanto's legitimate business interests.

## Ninth Defense

Plaintiff has an adequate remedy at law and no basis exists for injunctive relief.

Monsanto reserves the right to assert any additional defenses that may be disclosed during the course of additional investigation and discovery.

## JURY DEMAND

Monsanto demands a trial by jury on the Amended Complaint.

## PRAYER

THEREFORE, having fully answered plaintiff's complaint, defendant Monsanto prays:

      (1)    For dismissal of the Amended Complaint with prejudice;

      (2)    For the award of Monsanto costs and attorneys' fees, as may be allowed by law; and

      (3)    For such other relief as the Court deems just and appropriate.

## COUNTERCLAIMS

Counterclaimants Monsanto Company and Monsanto Technology LLC (collectively "Monsanto"), by their attorneys, complain against Counterdefendants Syngenta AG, Syngenta Participations AG, Syngenta Corp., Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc. (collectively "Syngenta"), and for their causes of action allege and state as follows:

## NATURE OF THE CASE

These counterclaims are filed by Monsanto for injunctive relief and to recover damages for injuries to its business and property by virtue of the fact that Syngenta has wrongfully obtained Monsanto's GA21 trait and is marketing that trait under the Syngenta brand "Agrisure GT Advantage" ("Agrisure").

## JURISDICTION AND VENUE

1.      This action arises under 15 U.S.C. § 1125(a)(1) and Delaware statutory and common law.

2.      Jurisdiction over this action is conferred on this Court by 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and the principle of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.      Counterdefendants reside or are otherwise found in this District. The unlawful acts alleged herein were performed or had effects within this District.

4.      Venue is proper under 28 U.S.C. §§ 1391(a) and 1391(c).

### PARTIES

#### A.      The Counterclaimants

5.      Monsanto Technology LLC is a Delaware corporation with its principal place of business at 800 North Lindbergh Blvd., St. Louis, MO 63167. Monsanto Technology LLC is a leading provider of agricultural products and solutions, using innovation in plant biotechnology, genomics and breeding to improve productivity and to reduce the costs of farming.

6.      Monsanto Company is a Delaware corporation with its principal place of business at 800 North Lindbergh Blvd., St. Louis, MO 63167. It is a leading provider of agricultural products and solutions, using innovation in plant biotechnology, genomics and breeding to improve productivity and to reduce the costs of farming.

#### B.      The Counterdefendants

7.      Syngenta AG is a Swiss corporation with its principal place of business at Schwarzwaldallee 215, CH-4058 Basel, Switzerland. It is engaged in the sale of commercial seeds, fungicides, insecticides and herbicides. In 2004, its sales were approximately $7.3 billion; its employees numbered approximately 19,000 people in over 90 countries, and it is listed on the Swiss and New York stock exchanges. Syngenta AG

20

has substantial ties to the United States through its own employees, agents and representatives, as well as through its wholly and partially owned subsidiaries Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Garst Seed Company, Golden Seed Company, LLC, Garwood Seed Company, J.C. Robinson Seeds, Inc., Sommer Bros. Seed Company and Thorp Seed Company, all of which Syngenta AG has at all pertinent times dominated and controlled.

8.      Syngenta Participations AG is a Swiss corporation with its principal place of business at Schwarzwaldallee 215, c/o Syngenta International AG, 4058 Basel, Switzerland. According to its entry in the Swiss business register, Syngenta Participations AG holds and manages ownership interests in foreign corporations engaged in the area of agrarian business and related sectors. Syngenta Participations AG is a wholly-owned subsidiary of counterdefendant Syngenta AG.

9.      Syngenta Seeds, Inc. is a Delaware corporation with its principal place of business at 7500 Olson Memorial Hwy., Golden Valley, MN 55427. It is engaged in the sale of commercial seeds, fungicides, insecticides and herbicides. Syngenta Seeds, Inc. is a wholly-owned subsidiary of counterdefendant Syngenta AG.

10.     Syngenta Biotechnology, Inc. is a Delaware corporation with its principal place of business at 3054 Cornwallis Road, Research Triangle Park, NC 27709. It conducts research in the areas of weed, insect and disease control for crops at the genetic level. Syngenta Biotechnology, Inc. is a wholly-owned subsidiary of counterdefendant Syngenta AG.

11.     Syngenta Corporation is a Delaware corporation with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850. It is engaged in the sale of commercial seeds, fungicides, insecticides and herbicides. Syngenta Corporation is a wholly-owned subsidiary of counterdefendant Syngenta AG.

12.     Advanta USA, Inc. is a Delaware corporation with its principal place of business at 2369 330th Street, Slater, IA 50244. It is engaged in the sale of crop seeds,

21

including genetically modified corn seeds, which it sells under the Garst brand. Advanta USA, Inc. is wholly owned by Advanta B.V., in which Syngenta AG has a majority ownership.

13.    Garst Seed Company is a Delaware corporation with its principal place of business at 2369 330th Street, Slater, IA 50244. It is engaged in the sale of crop seeds, including genetically modified corn seeds. Garst Seed Company is wholly owned by Advanta USA, Inc., d/b/a Garst Seed Co., its ultimate parent being Syngenta AG.

14.    Golden Harvest Seeds, Inc. is a Delaware corporation with its principal place of business at 220 N. Eldorado Rd., Bloomington, IL 61704. It is engaged in the sale of crop seeds, including genetically modified corn seeds. Garwood Seed Co., Golden Seed Company, L.L.C., JC Robinson Seeds, Inc., Sommer Bros. Seed Company and Thorp Seed Co. are affiliated companies of Golden Harvest Seeds, Inc. (collectively the "Golden Harvest Companies"). Upon information and belief, Syngenta AG acquired ultimate majority ownership of each of the five affiliated companies that make up the Golden Harvest Companies.

15.    Under the banner of "Syngenta Crop Protection," or simply "Syngenta," the Swiss parent corporation of Syngenta's U.S. undertakings, Syngenta AG, actively directs and controls the U.S. business operations of counterdefendants Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Garst Seed Company, Golden Seed Company, LLC, Garwood Seed Co., J.C. Robinson Seeds, Inc., Sommer Bros. Seeds Company, and Thorp Seed Company. For example, Syngenta AG lists as its "major brands" several foreign and U.S. corporations, among them Garst, Golden Harvest, and NK. (See "Syngenta Fact Sheet," available online at: http://www.syngenta.com/en/downloads/Syngenta_Factsheet_09_02.pdf).

16.    Upon information and belief, all of the counterdefendant subsidiaries report to Syngenta AG's Executive Committee as part of Syngenta's coordinated global

functions. The companies file a consolidated financial statement, which evidences Syngenta AG's direct ownership and control of its U.S. subsidiaries.

17.    Syngenta AG also exerts apparent overall control over its U.S. subsidiaries' facilities. For example, in its 2004 Annual Report, Syngenta AG named Syngenta Biotechnology, Inc.'s North Carolina facility as Syngenta AG's "primary center for biotechnology research" and stated that Syngenta AG would transfer research from its Jealotts Hill facility in the UK to the North Carolina facility.

18.    Syngenta AG routinely shares management employees between its Executive Committee and its U.S. subsidiaries. For example, Michael Mack, Chief Operating Officer of Syngenta Seeds, Inc., is also a member of the executive committee. Mr. Mack's predecessor, Jeffrey Beard, was also Chief Operating Officer of Syngenta Seeds, Inc. as well as a member of Syngenta AG's Executive Committee.

19.    Finally, in response to Monsanto's patent infringement action filed against Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., and the Golden Harvest Companies, for their commercialization of GA21 event, Syngenta AG appointed David Jones, its own Head of Business Development, as its spokesperson.

**Facts**

20.    Counterclaimant Monsanto is engaged in the development of traits and seeds that have been genetically engineered to express new traits. These traits represent agronomic qualities, such as herbicide or insect resistance.

21.    Glyphosate is a highly effective, non-selective commercial herbicide that kills unwanted weeds as well as the crop plant itself. Monsanto's glyphosate herbicide is sold under the Roundup® trademark.

**A.     Development of the GA21 and NK603 Events**

22.    DEKALB Genetics Corporation ("DEKALB") and Rhone-Poulenc Agro, S.A. ("RPA") collaborated to genetically alter corn to make it resistant to glyphosate. In

23

late 1993, DEKALB succeeded in growing transformed GA21 event corn plants resistant to Roundup herbicide and developed a glyphosate-tolerant corn line containing this event, and named the plant, "GA21 corn line."

23. Subsequently, Monsanto developed a second glyphosate-tolerant corn event designated as NK603. The NK603 and GA21 events had been the only two commercially available events in use for making glyphosate-resistant corn seed. Corn seed based on the NK603 and GA21 events cannot be produced without practicing United States patents that are owned by or assigned to Monsanto or one of its subsidiaries.

24. Monsanto has and continues to sell and license its glyphosate-resistant corn trait/seed under the distinctive trademark Roundup Ready®. Beginning in 1998, Monsanto continuously used the trademark "Roundup Ready®" in the commercialization and marketing of GA21 event corn, which continues to the present as a recognized commercial success.

25. In May of 1999, DEKALB and RPA (now Bayer CropScience) entered into an agreement whereby DEKALB would pay royalties to RPA for Monsanto's past and future sales of GA21 event corn containing the nucleic acid construct of claim 11 of U.S. Patent No. 5,510,471. Those royalties were assessed against DEKALB and guaranteed by Monsanto. That agreement was subsequently amended on three separate occasions, whereby RPA ultimately granted Monsanto and Monsanto's licensees the right to make, use, sell, import and export GA21 event corn seed containing the nucleic acid construct of claim 11 of U.S. Patent No. 5,510,471 only through the 2004 planting season, subject to the continuing royalty arrangement.

**B.    The Roundup Ready® Corn License and Seed Services Agreement with Garst Seed Company**

26.    In March 1998, Garst Seed Company and Monsanto entered into an agreement entitled "Roundup Ready® Corn License and Seed Services Agreement" (hereinafter "Garst GA21 Agreement"), which granted Garst a non-exclusive limited license to "develop, produce, have produced, and sell" Garst Brand corn hybrids produced through "crossing with Corn Line GA-21 or progeny." This agreement was subsequently modified to allow Garst to develop, produce, have produced, and sell corn hybrids under the brand names Garst, Agripro, Gutwien, PSA Genetics, and Interstate.

27.    Paragraph (b) of Section 3.02, entitled "Distribution of Licensed Corn Products," provides in part:

> Pursuant to Subsection 3.01(a) above, the Licensee may not give, sell or otherwise transfer Licensed Corn Product(s) except as commercial seed (1) to growers directly licensed by Monsanto for their sole use in producing a commercial grain crop, and/or (2) to retail dealers for retail sale to growers directly licensed by Monsanto for the growers' sole use in producing a commercial grain crop. Licensee may not sell the Licensed Corn Product(s) to a wholesale seller.

28.    Under the Garst GA21 Agreement, Garst was required to properly mark and display all packages containing licensed corn products. These strictures are found in Paragraph (a) of Section 3.03, entitled "Marking of Licensed Corn Products," which provides:

> In conjunction with the use of a Grower Agreement and subject to Subsection 3.11(b), Licensee shall conspicuously display directly on all packages containing Licensed Corn Products to be sold or transferred to permitted third-party growers or customers, the following notice, or a notice having the same meaning and effect, with the blanks appropriately filled in to the extent such notice is applicable in the respective area:
>
> These seeds are covered under United States patents (To Be Provided By Monsanto). No license and/or sublicense is conveyed to use these seeds solely by the (purchase/bailment/transfer) of such seeds. A license / sublicense under said patents must first be

25

obtained from Monsanto Company before these seeds can be used in any way.

29.    Monsanto granted Garst a non-exclusive license to use the Roundup Ready trademark. Paragraph (a) of Section 3.04, entitled "Trademark Usage," states:

> The Roundup Ready trademark (or another trademark) owned by Monsanto shall be licensed to Licensee on a non-exclusive basis pursuant to the Roundup Ready® Trademark License Agreement, which shall be executed by the parties upon execution of this Agreement. Licensee shall conspicuously display said trademark, logos and taglines (e.g., "Herbicide Tolerant Corn") in full color directly on all seed packages of Licensed Corn Products, as well as all promotional and advertising material for Licensed Corn Products in the manner set forth in Appendix F and as Monsanto may, at its sole and reasonable discretion, notify Licensee from time to time. The placement of said trademark and logos shall be specified by Monsanto. Each occurrence of said trademark shall be accompanied by the following footnote:
>
> "Roundup Ready is a trademark of Monsanto Company."

30.    The Garst GA21 Agreement specified that Monsanto did not grant Garst any license not specified in the agreement. Under the title "No Other Licenses," Section 3.05 specifies:

> (a)    No license is granted by this Agreement, under Monsanto Patent Rights (or any other patent right), Monsanto Know-How, Biological Materials or Licensed Patent Rights by implication or otherwise to make, have made, use, sell, offer to sell, or import any DNA or genes or transgenic *Zea mays* cells, *Zea mays* plants or *Zea mays* seed other than that produced by Licensee through the use of Biological Material.
>
> (b)    No license is granted by this Agreement, under the Monsanto Patent Rights (or any other patent right), Biological Materials, Monsanto Know-How, or Licensed Patent Rights, by implication or otherwise, to make, have made, use, sell, offer to sell or import Licensed Corn Products produced from direct transformation of Biological Materials or their progeny without the prior express written authorization of Monsanto.
>
> . . .
>
> (d)    Licensee shall not be entitled to (i) modify the Gene, (ii) modify or use any regulatory sequence contained in the Gene, or

26

(iii) insert or cross into any Licensed Corn Product any Non-Monsanto Herbicide Resistance Gene which exhibits any *in-planta* activity without the prior written consent of Monsanto. Without prejudice to any other remedy available under terms of this Agreement, in the event that (i) the Gene or any regulatory sequence is modified, or (ii) any other gene (non-naturally occurring in Corn) sourced from a party other than Monsanto is inserted or crossed into any Licensed Corn Product, Licensee shall defend and indemnify against, and hold Monsanto and its employees, directors, officers and agents harmless from, any loss, cost, liability or expense (including court costs and reasonable fees of attorneys and other professionals) incurred from any claim arising or alleged to arise out of any licensed corn product containing such modified gene, modified regulatory sequence or non-naturally occurring gene.

31.    Under the Garst GA21 Agreement, Garst also agreed to cooperate with Monsanto to protect its intellectual property rights in the licensed material. Paragraph (c) of the "Patent Enforcement" Section 7.02 proscribed:

Licensee shall cooperate fully in efforts to control grower-saved seed and protect intellectual property right for all products for which Licensee has obtained, or obtains a license, including, but not limited to Licensed Corn Product(s). Such cooperation shall include, without limitation, providing information regarding whether a suspected infringer is a customer of Licensee for the subject licensed product and joining Monsanto in a suit against a grower believed to have saved seed, particularly where the Licensee has additional intellectual property that it can assert against such grower to assist in the abatement of such saved seed.

## C.    The Roundup Ready® Corn License and Seed Services Agreement with the Golden Harvest Companies

32.    In May 1998, the Golden Harvest Companies entered into an agreement with Monsanto entitled "Roundup Ready® Corn License and Seed Services Agreement" (hereinafter "Golden Harvest GA21 Agreement"), which granted the Golden Harvest Companies a non-exclusive limited license to "develop, produce, have produced, and sell" Golden Harvest Brand corn hybrids produced through "crossing with Corn Line GA-21 or progeny."

27

33.    Section 3.02, entitled "Distribution of Licensed Corn Products," provides

in part:

> (a)    With respect to the sales of Licensed Corn Products
> hereunder in the Territory, Licensee shall only be permitted to
> distribute and/or sell Licensed Corn Products branded solely under
> the following trademarks or trade name exclusively owned or used
> by Licensee: Golden Harvest. Licensee shall not use any
> trademark of any Third Party in connection with sales of Licensed
> Corn Products other than trademarks associated with non-
> genetically engineered traits present in Licensed Corn Products.
>
> (b)    Pursuant to Subsection 3.01(a) above, the Licensee may not
> give, sell or otherwise transfer Licensed Corn Product(s) except as
> commercial seed (1) to growers directly licensed by Monsanto for
> their sole use in producing a commercial grain crop, and/or (2) to
> retail dealers for retail sale to growers directly licensed by
> Monsanto for the growers' sole use in producing a commercial
> grain crop. Licensee may not sell the Licensed Corn Product(s) to
> a wholesale seller.

34.    Under the Golden Harvest GA21 Agreement, the Golden Harvest

Companies were required to properly mark and display all packages containing licensed

corn products. These strictures are found in Paragraph (a) of Section 3.03, entitled

"Marking of Licensed Corn Products," which provides:

> In conjunction with the use of a Grower Agreement and subject to
> Subsection 3.11(b), Licensee shall conspicuously display directly
> on all packages containing Licensed Corn Products to be sold or
> transferred to permitted third-party growers or customers, the
> following notice, or a notice having the same meaning and effect,
> with the blanks appropriately filled in to the extent such notice is
> applicable in the respective area:
>
> These seeds are covered under United States patents (To Be
> Provided By Monsanto). No license and/or sublicense is conveyed
> to use these seeds solely by the (purchase/bailment/transfer) of
> such seeds. A license / sublicense under said patents must first be
> obtained from Monsanto Company before these seeds can be used
> in any way.

35.    Monsanto granted the Golden Harvest Companies a non-exclusive license to use the Roundup Ready trademark. Paragraph (a) of Section 3.04, entitled "Trademark Usage," states:

> The Roundup Ready trademark (or another trademark) owned by Monsanto shall be licensed to Licensee on a non-exclusive basis pursuant to the Roundup Ready® Trademark License Agreement, which shall be executed by the parties upon execution of this Agreement. Licensee shall conspicuously display said trademark, logos and taglines (e.g., "Herbicide Tolerant Corn") in full color directly on all seed packages of Licensed Corn Products, as well as all promotional and advertising material for Licensed Corn Products in the manner set forth in Appendix F and as Monsanto may, at its sole and reasonable discretion, notify Licensee from time to time. The placement of said trademark and logos shall be specified by Monsanto. Each occurrence of said trademark shall be accompanied by the following footnote:

> "Roundup Ready is a trademark of Monsanto Company."

36.    The Golden Harvest GA21 Agreement specified that Monsanto did not grant the Golden Harvest Companies any licenses not specified in the agreement. Under the title "No Other Licenses," Section 3.05 specifies:

> (a)    No license is granted by this Agreement, under Monsanto Patent Rights (or any other patent right), Monsanto Know-How, Biological Materials or Licensed Patent Rights by implication or otherwise to make, have made, use, sell, offer to sell, or import any DNA or genes or transgenic *Zea mays* cells, *Zea mays* plants or *Zea mays* seed other than that produced by Licensee through the use of Biological Material.

> (b)    No license is granted by this Agreement, under the Monsanto Patent Rights (or any other patent right), Biological Materials, Monsanto Know-How, or Licensed Patent Rights, by implication or otherwise, to make, have made, use, sell, offer to sell or import Licensed Corn Products produced from direct transformation of Biological Materials or their progeny without the prior express written authorization of Monsanto.

> . . .

> (d)    Licensee shall not be entitled to (i) modify the Gene, (ii) modify or use any regulatory sequence contained in the Gene, or

29

(iii) insert or cross into any Licensed Corn Product any Non-Monsanto Herbicide Resistance Gene which exhibits any *in-planta* activity without the prior written consent of Monsanto. Without prejudice to any other remedy available under terms of this Agreement, in the event that (i) the Gene or any regulatory sequence is modified, or (ii) any other gene (non-naturally occurring in Corn) sourced from a party other than Monsanto is inserted or crossed into any Licensed Corn Product, Licensee shall defend and indemnify against, and hold Monsanto and its employees, directors, officers and agents harmless from, any loss, cost, liability or expense (including court costs and reasonable fees of attorneys and other professionals) incurred from any claim arising or alleged to arise out of any licensed corn product containing such modified gene, modified regulatory sequence or non-naturally occurring gene.

37.     Under the Golden Harvest GA21 Agreement, the Golden Harvest Companies also agreed to cooperate with Monsanto to protect its intellectual property rights in the licensed material. Paragraph (c) of the "Patent Enforcement" Section 7.02 proscribed:

> Licensee shall cooperate fully in efforts to control grower-saved seed and protect intellectual property right for all products for which Licensee has obtained, or obtains a license, including, but not limited to Licensed Corn Product(s). Such cooperation shall include, without limitation, providing information regarding whether a suspected infringer is a customer of Licensee for the subject licensed product and joining Monsanto in a suit against a grower believed to have saved seed, particularly where the Licensee has additional intellectual property that it can assert against such grower to assist in the abatement of such saved seed.

38.     The Golden Harvest GA21 Agreement also states that "termination of this Agreement shall not relieve the parties of any obligation accruing prior to or upon such expiration or termination." (*See id.* at § 9.05(a))

39.     On August 11, 2004, Monsanto exercised its right to terminate the Golden Harvest Companies' GA21 and NK603 Agreements, in accordance with Article 11 of the license contract.

30

### D.    Termination of GA21 Use Rights

40.    Pursuant to Paragraph 3.12 of its GA21 Agreements, if during its term Monsanto offered its licensees a license to a new corn line that was resistant to glyphosate herbicide and notified its licensees of Monsanto's intent to withdraw GA21 corn, the licensees agreed to withdraw from the market all GA21 corn within five (5) years or less. In 2001, Monsanto notified its customers that production of corn containing the GA21 event would halt as of 2003, and offered them licenses to another glyphosate-resistant trait, called the NK603 event. Concomitantly with its offer of NK603 licenses to seed companies, Monsanto exercised its right under its agreements with various seed companies, including Garst and Golden Harvest, to require cessation of commercial activity in the GA21 event corn seed five years after notice; all GA21 corn would have to be sold by February 28, 2005.

41.    In early 2003, Monsanto sent an additional letter to all Roundup Ready® licensed seed companies reminding them that 2003 was the final production year for event GA21. Monsanto also extended the deadline to sell any remaining inventory of GA21 event Roundup Ready® corn so produced until June 28, 2005.

42.    By letter to its licensees dated March 17, 2004, Monsanto yet again informed them of this cut-off, saying that "[n]o production of Roundup Ready [sic] Corn (Event GA21) is allowed in 2004 or thereafter."

43.    In its Amended Antitrust Complaint, Syngenta admits express knowledge of Monsanto's contractual relationships with others under the GA21 Agreement. For example, at   Paragraph 46, Syngenta alleges, "Monsanto's typical license with Seed Companies (the 'GA21 License') for its GA21 glyphosate-tolerant corn trait includes the following terms. … Seed Companies must withdraw all GA21 corn seeds from the market after five years, *i.e.*, 2005." (*See* Syngenta's Amended Complaint, D.I. 8 at ¶ 46)

### E.    Syngenta AG's Strategy to Expand Its Presence in the United States

44.    As part of Syngenta AG's aggressive plan to expand its presence rapidly in the United States, Syngenta AG purposely acquired several U.S. seed companies that occupied a strong position in transgenic and conventional corn seed.

45.    On May 12, 2004, Syngenta AG announced its plan to acquire Advanta, which trades under the Garst Seed Company brand. Regarding its acquisition of the Garst brand, Syngenta stated, "[t]hese acquisitions underscore our strategy to reinforce our leadership position, drive future growth and further enhance shareholder value." Syngenta AG completed its acquisition of Advanta in September 2004.

46.    Similarly, on June 25, 2004, Syngenta AG announced its intent to "complet[e] our strategy to develop critical mass in the US corn and soybean seeds market, complementing our leading position in crop protection." To that end, on August 2, 2004, Syngenta AG announced completion of its acquisition of Golden Harvest Seeds.

47.    At the time of their acquisition, both Garst and the Golden Harvest Companies were licensees of GA21 event Roundup Ready® corn. However, Syngenta never independently obtained a GA21 license from Monsanto and had no independent right to develop, market, sell or license any product containing the GA21 event.

48.    Upon information and belief, Garst and the Golden Harvest Companies' source of germplasm containing the GA21 event was Monsanto and neither Garst nor the Golden Harvest Companies have obtained any germplasm with the GA21 event from any other trait provider.

### F.    Syngenta's Wrongful Sale of Glyphosate-Resistant Corn Containing Monsanto's GA21

49.    Syngenta AG, in concert with its subsidiaries, has sought to undermine and misappropriate Monsanto's GA21 technology and wrongfully market this GA21 event technology as its own.

32

50. ████████████████████████████

████████████████████████████████████

51.     On May 10, 2004, before Syngenta's acquisition of Advanta, Syngenta and Advanta USA, Inc. entered into a written agreement, pursuant to which Advanta agreed to transfer to Syngenta inbred corn lines containing Monsanto's GA21 event licensed to Garst in 1998. In so doing, Garst, through its parent corporation, and in concert and combination with Syngenta and others, violated its obligations under the Garst GA21 Agreement.

52.     In a news release dated May 12, 2004, Syngenta AG announced it had begun to offer for sale the "valuable [GA21] technology," which Syngenta claimed "further strengthens [its] already broad product portfolio of corn hybrids, traits and crop protection products … in NK® brand hybrids and through licenses with other seed companies. … [It] enables farmers to control weeds in corn with post emergence applications of the non-selective herbicide glyphosate."

53.     Syngenta is improperly marketing, selling and licensing corn seed containing Monsanto's GA21 event, wrongfully transferred to Syngenta by Garst, under the trademark "Agrisure GT Advantage." Syngenta Participations AG has a registration pending for the Agrisure Advantage trademark.

54.     The Golden Harvest Companies also are improperly marketing, selling and licensing corn seed containing Monsanto's GA21 event under the trademark "Agrisure GT Advantage."

55.     All glyphosate-tolerant corn-seed products sold by Syngenta, Golden Harvest, and others under the Agrisure trademark improperly and unlawfully incorporate Monsanto's GA21 technology.

33



60.     Syngenta and its subsidiaries have failed to indicate the true source or origin of the GA21 event trait contained in their Agrisure GT corn. To the contrary, its sales and marketing materials have purposely misled seed companies, retailers and growers to believe that the glyphosate tolerance trait, which it sells under the Agrisure GT trademark, is a Syngenta product, when it is in truth a Monsanto trait.

61.     Syngenta's "Agrisure GT Advantage Reference Guide" does not provide any reference to Monsanto, any of its trademarks or any other company that may have intellectual property rights in GA21 technology. It merely lists its own trademarks, including "Agrisure," as those belonging to "a Syngenta Group Company."

62.    Syngenta's affiliate, the Golden Harvest Company, and its affiliates have also improperly and unlawfully sold corn containing sold Monsanto's GA21 event under misleading, different trademarks, in a manner that intentionally misrepresents that such products are Syngenta's intellectual property.

63.    As recently as March 9, 2005, Golden Harvest, through its customer representatives, has communicated with present and potentially future customers with respect to its alleged ability to "provide *our own* glyphosate tolerant corn (Agrisure GT)" (emphasis added). In particular, Golden Harvest has stated:

   a.  "Our partnership with Syngenta will allow us to provide our own glyphosate tolerant corn (Agrisure GT) ..."

   b.  "Syngenta will continue to provide you with all the Monsanto technology products ... including Roundup Ready Soybeans, YieldGard corn borer and stacks with Roundup ready [*sic*], Yieldgard rootworm and YieldGard plus products including the triple stacks..."

Taken together, these statements further mislead consumers by falsely representing that Golden Harvest's alleged glyphosate tolerance event, sold under the Agrisure GT trademark, is different from Monsanto's GA21 glyphosate tolerance event.

### G.    Damage to Monsanto

64.    As a direct and proximate result of the counterdefendants' illegal conduct, counterclaimant Monsanto has suffered financial and irreparable injury to its business, property and customer good will, and these injuries are continuing.

## COUNT I:

## REVERSE PASSING OFF UNDER THE LANHAM ACT

65.    Counterclaimant incorporates and realleges the allegations of Paragraphs 1 through 64 of its Counterclaim as though fully set forth herein.

66.    Upon information and belief, Syngenta and its subsidiaries and/or affiliates, including the Golden Harvest Companies, have obtained corn containing

Monsanto's branded GA21 product, stripped off or failed to display Monsanto's trademarks and instead placed their own trademark(s) on such product, and marketed and sold the same without indicating that the true source of the GA21 event is Monsanto.

67.    Syngenta's passing off of Monsanto's GA21 product as its own competing "Agrisure" or "Agrisure GT" brands of products is unauthorized by Monsanto and is likely to cause confusion, to cause mistake, or to deceive the relevant public, and further constitutes a false designation of origin and/or misleading description or representation of fact, all in violation of 15 U.S.C. § 1125(a)(1)(A).

68.    By reason of the foregoing, and by so designating falsely the origin of physical goods, the counterdefendants have committed the offense of reverse passing off under the Lanham Act, thereby causing Monsanto to suffer injury, and violating, and continuing to violate, 15 U.S.C. § 1125(a)(1)(A). Monsanto has been and will be irreparably harmed and damaged; its remedies at law are inadequate.

**COUNT II:**

**VIOLATIONS OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT**

69.    Counterclaimant incorporates and realleges the allegations of Paragraphs 1 through 68 of its Counterclaim as though fully set forth herein.

70.    By the above-identified actions, counterdefendants have violated the Delaware Consumer Protection Act, 6 Del. C. § 2531 *et seq.*, which prohibits deceptive business practices. These actions were undertaken in the conduct of trade and commerce, and have injured Monsanto in its business and property. Among other actions, Syngenta has violated 6 Del. C. § 2532(a)(1) by passing off the goods of Monsanto and its subsidiaries or affiliates as those of Syngenta or its subsidiaries or affiliates, has violated 6 Del. C. §§ 2532(a)(2) and (3) by causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, certification, affiliation, connection or association of Syngenta's glyphosate-resistant goods; has violated 6 Del. C. § 2532(a)(7) by falsely representing that its goods and services are of a particular

standard, quality, grade or model; and has violated 6 Del. C. § 2532(a)(12) by engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

71.    Monsanto has been and continues to be irreparably injured and has suffered economic damages as a result of Syngenta's deceptive business practices.

## COUNT III:

## FALSE ADVERTISING UNDER THE LANHAM ACT

72.    Counterclaimant incorporates and realleges the allegations of Paragraphs 1 through 71 of its Counterclaim as though fully set forth herein.

73.    Counterdefendants have made several statements of material fact in commercial advertising about the nature of the glyphosate-tolerant corn seed products and the glyphosate-tolerant genetic trait they are marketing and selling, including but not limited to statements:

a) stating that they acquired the right to practice the GA21 genetic event from Bayer CropScience;

b) stating that they have full rights in the GA21 genetic event;

c) stating that the GA21 event corn products they are selling were developed by them or by an entity or entities unaffiliated with Monsanto;

d) stating that they still have a license or other valid legal authority given by Monsanto to provide corn and other seed products containing Monsanto proprietary technology; and

e) implying that they are still authorized licensees of products under Monsanto's trademarks, but that Monsanto is requiring them to use other trademarks for such products.

74.    These statements are either expressly or impliedly false and constitute false or misleading descriptions or misrepresentations of fact about the nature, characteristics, or qualities of said products, all in violation of 15 U.S.C. § 1125(a)(1)(B).

75.    Monsanto being irreparably harmed, its remedies at law are inadequate.

37

## COUNT IV:

## TORTIOUS INTERFERENCE WITH A CONTRACT BY SYNGENTA

76.     Counterclaimant incorporates and realleges the allegations of Paragraphs 1 through 75 of its Counterclaim as though fully set forth herein.

77.     Counterdefendant Syngenta was aware that Monsanto had a valid, binding contract with Garst Seed Company to license GA21 event corn products. That agreement prohibited Garst from giving, selling, or otherwise transferring the GA21 event inbred corn lines it received from Monsanto to a third party.

78.     Counterdefendant Syngenta intentionally interfered with Monsanto's GA21 event license agreement with Garst by contracting with Garst's immediate parent, Advanta USA, Inc., for the transfer of the GA21 event inbred corn lines that it had received from Monsanto. Syngenta thereby placed Garst in breach of its obligation to Monsanto regarding the marketing, licensing, sale, and use of the GA21 event.

79.     Counterdefendant Syngenta's conduct is without justification.

80.     Monsanto has been and continues to be irreparably injured and has suffered economic damages as a result of Syngenta's intentional interference with Monsanto's GA21 event license agreement with Garst.

## PRAYER FOR RELIEF

WHEREFORE, counterclaimant Monsanto requests all legal and equitable relief as may be recoverable for the foregoing offenses, including:

a.     damages for all injuries arising out of counterdefendants' unlawful conduct;

b.     an injunction prohibiting the counterdefendants from making, advertising, marketing, selling or making otherwise commercially available any corn seed containing any traits derived from Monsanto GA21 foundation seeds;

c.     an award of treble damages and attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

d.     and all other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b), Fed. R. Civ. P., counterclaimant requests a trial by jury.

Respectfully Submitted,

OF COUNSEL:                              POTTER ANDERSON & CORROON LLP

Peter E. Moll
John DeQ. Briggs
Scott E. Flick                          By:  /s/ David E. Moore
John Rosenthal                               Richard L. Horwitz
HOWREY LLP                                   David E. Moore
1299 Pennsylvania Ave., N.W.                 Hercules Plaza, 6th Floor
Washington, DC  20004                        1313 N. Market Street
(202) 783-0800                               P.O. Box 951
                                             Wilmington, DE  19899-0951
John F. Lynch                                Telephone (302) 984-6000
Susan K. Knoll                               rhorwitz@potteranderson.com
Steven G. Spears                             dmoore@potteranderson.com
HOWREY LLP
750 Bering Drive                        *Attorneys for Monsanto Company and*
Houston, TX  77057                      *Monsanto Technology LLC*
Telephone (713) 787-1400

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, DC  20004
(202) 942-5000

Dated:  September 23, 2005
Public Version Dated:  October 3, 2005

701796

39

# THE REMAINDER OF THIS EXHIBIT HAS BEEN REDACTED

# EXHIBIT B

 **Zivilgericht Basel-Stadt**
Bäumleingasse 5
Postfach 964, 4001 Basel
Tel. (Direktwahl): 061 - 267 63 83-84

| Aktenzeichen |
| --- |
| **RQ 2005 / 555** |

# Empfangsbescheinigung - Récépissé - Ricevuta

| | |
| --- | --- |
| **Ausstellende Behörde**<br>Autorité de laquelle émanent les actes<br>**Autorità dalla quale emenano gli atti**<br>US District Court<br>District of Delaware<br>NN<br>United States of America | Potter Anderson & Corroon LLP<br>Attn. Richard L. Horwitz, Esq.<br>Attn. David E. Moore, Esq.<br>1313 N. Market Street<br>P.O. Box 951<br>Wilmington, Delaware 19899-0951<br>United States of America<br>04-305-SLR |
| **Bezeichnung der zuzustellenden Aktenstücke**<br>Désignation des actes à notifier<br>**Atti da notificarsi** | - Answer and Counterclaims<br>- Summons<br>jeweils mit deutscher Übersetzung<br>- Summary of the documents to be served<br><br>i. S.  Monsanto Co. et al. / Sygenta Seeds Inc. et al. |
| **Name und Wohnort der Person, an welche die Zustellung erfolgen soll**<br>Nom et domicile de la personne à laquelle la notification doit être faite<br>**Nome e domicilio della persona, alla quale la notifica deve avere luogo** | Syngenta Participations AG<br>Schwarzwaldallee 215<br>4058 Basel |
| **Unterschrift des Empfängers und Datum der Zustellung**<br>Signature du destinataire et date de la notification<br>**Firma del destinatario e data della notifica** | Securitas       A. Suter<br><br>Basel, den  18. 10. 05 |

ZIVILGERICHT BASEL-STADT
Der Gerichtsweibel:

GK 10003 - 1500 - 8 01

CERTIFICATE

ATTESTATION

Die unterzeichnete Behörde beehrt sich, nach Artikel 6 des Übereinkommens zu bescheinigen,
The undersigned authority has the honour to certify. in conformity with article 6 of the Convention,
l'~ ·rité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention.

1. ~ass der Antrag erledigt worden ist *)
   that the document has been served *)
   que la demande a été exécutée *)

- am (Datum)               **18.10.2005**
   the (date)
   le (date)

- in (Ort, Straße, Nummer)     **Basel, Schwarzwaldallee 215**
   at (place, street, number)
   à (localité. rue, numéro)

- in einer der folgenden Formen nach Artikel 5:
   in one of the following methods authorised by article 5:
   dans une des formes suivantes prévues à l'article 5:

   a) in einer der gesetzlichen Formen (Artikel 5 Absatz 1 Buchstabe a) *).
      in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention *).
      selon les formes légales (article 5, alinéa premier, lettre a) *)

   b) in der folgenden besonderen Form *):
      in accordance with the following particular method *):
      selon la forme particulière suivante *):

   c) durch einfache Übergabe *).
      by delivery to the addressee, who accepted it voluntarily *)
      par remise simple *).

Die in dem Antrag erwähnten Schriftstücke sind übergeben worden an:
The documents referred to in the request have been delivered to:
les documents mentionnés dans la demande ont été remis à:

- (Name und Stellung der Person)    **Herrn Alfred Suter, Empfang**
   (identity and description of person)
   identité et qualité de la personne)

- Verwandschafts-, Arbeits- oder sonstiges Verhältnis zum Zustellungsempfänger:
   relationship to the addressee (family, business or other):
   liens de parenté, de subordination ou autres, avec le destinataire de l'acte:

Arbeitsverhältnis

2. dass der Antrag aus folgenden Gründen nicht erledigt werden konnte *):
   that the document has not been served, by reason of the following facts *):
   que la demande n'a pas été exécutée, en raison des faits suivants *):

Nach Artikel 12 Absatz 2 des Übereinkommens wird die ersuchende Stelle gebeten, die Auslagen, die in der
beiliegenden Aufstellung im Einzelnen angegeben sind, zu zahlen oder zu erstatten *).
In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement *).
Conformément à l'article 12. alinéa 2. de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint *).

Anlagen/Annexes/Annexes:     **Doppel der zuzustellenden Schriftstücke**

Zurückgesandte Schriftstücke:
Documents returned:
Pièces renvoyées:

Gegebenenfalls Erledigungsstücke:     **Empfangsbescheinigung**
In appropriate cases, documents establishing the service:
le cas échéant, les documents justificatifs de l'exécution:

Ausgefertigt in    **Basel**    am  **20.10.2005**
Done at
Fait à

Unterschrift und/oder Stempel
Signature and/or stamp.
Signature et/ou cachet.

*) Unzutreffendes streichen.
   Delete if inappropriate
   Rayer les mentions inutiles

# EXHIBIT C



**UNITED STATES POSTAL SERVICE** ®

**Return Receipt for International Mail**
(Registered, Insured, Recorded Delivery, Express Mail)



Postmark of the office returning the receipt
Timbre du bureau renvoyant l'avis

Administration
des Postes des
Etats-Unis
d'Amérique

*Par Avion*

| | |
|---|---|
| Return by the quickest route (air or surface mail), à découvert and postage free.<br><br>A renvoyer par la voie la plus rapide (aérienne ou de surface), à découvert et en franchise de port. | The sender completes and indicates the address for the return of this receipt.<br>(A remplir par l'expéditeur, qui indiquera son adresse pour le renvoi du présent avis.)<br><br>Name or Firm (Nom ou raison sociale)<br>DAVID E. MOORE, ESQUIRE<br>~~Potter, Anderson & Corroon~~<br>~~P.O. Box 951~~<br>~~1313 N. Market Street~~<br>Street and Number (Rue et no.)<br>Wilmington, De. 19899-0951<br><br>City, State, and ZIP + 4 (Localité et code postal)<br><br>UNITED STATES OF AMERICA      Etats-Unis d'Amérique |

PS Form **2865**, February 1997          *Avis de réception*          **CN07** (Old C5)

---

| Item Description (Nature de l'envoi) | Registered Article (Envoi recommandé) □ | ☑ Letter (Lettre) | Printed Matter (Imprimé) □ | Other (Autre) □ | Recorded Delivery (Envoi à livraison attestée) □ | Express Mail International □ |
|---|---|---|---|---|---|---|
| Insured Parcel (Colis avec valeur déclarée) □ | | Insured Value (Valeur déclarée) | | Article Number<br>RB 858 342 385 US | | |

Office of Mailing (Bureau de dépôt)
SYNGENTA PARTICIPATIONS AG

Date of Posting (Date de dépôt)

Addressee Name or Firm (Nom ou raison sociale du destinataire)
C/O APPELLATIONSGERICHT BASEL STADT

Street and No. (Rue et No.)
BAUMLEINGASSE 1
4051 BASEL

Place and Country (Localité et pays)
SWITZERLAND

This receipt must be signed by: (1) the addressee; or, (2) a person authorized to sign under the regulations of the country of destination; or, (3) if those regulations so provide, by the employee of the office of destination. This signed form will be returned to the sender by the first mail.
(Cet avis doit être signé par le destinataire ou par une personne ou autorisée en vertu des règlements du pays de destination, ou, si ces règlements le comportent, par l'agent du bureau de destination, et renvoyé par le premier courrier directement au expéditeur.)

Postmark of the office of destination (Timbre du bureau de destination)

The article mentioned above was duly delivered.
(L'envoi mentionné ci-dessus a été dûment livré.)

Date 14/10/05

Signature of Addressee (Signature du destinataire)

Office of Destination Employee Signature (Signature de l'agent du bureau de destination)

PS Form **2865**, February 1997 (Reverse)

**Registered No.** RB 858 342 385 US

**Date Stamp**

To Be Completed By Post Office

| | | | |
|---|---|---|---|
| Reg. Fee $ | 7.50 | | |
| Handling Charge $ | | Return Receipt $ | 1.75 |
| Postage $ | 15.65 | Restricted Delivery $ | |
| Received by | TR | | |

Domestic Insurance up to $25,000 is included in the fee. International Indemnity is limited (See Reverse).

Customer Must Declare Full Value $    ☐ With Postal Insurance    ☐ Without Postal Insurance

To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed

**FROM**
David E Moore Esquire
Potter Anderson + Corroon LLP
PO Box 951
Wilmington DE 19899

**TO**
Syngenta Participations AG
c/o Appellation ser icht Basel-Stadt
Bäumleingasse
4051 Basel
Switzerland

PS Form 3806, June 2002    **Receipt for Registered Mail**    Copy 1 - Customer (See Information on Reverse)

For delivery information, visit our website at *www.usps.com* ®

# EXHIBIT D

 **UNITED STATES POSTAL SERVICE** ®

**Return Receipt for International Mail**
*(Registered, Insured, Recorded Delivery, Express Mail)*



Postmark of
the office
returning the
receipt
*Timbre du
bureau
renvoyant
l'avis*

*Administration
des Postes des
Etats-Unis
d'Amérique*

## *Par Avion*

| | |
|---|---|
| Return by the quickest route (air or surface mail), à découvert and postage free. | The sender completes and indicates the address for the return of this receipt. *(A remplir par l'expéditeur, qui indiquera son adresse pour le renvoi du présent avis.)*<br>Name or Firm *(Nom ou raison sociale)*<br>DAVID E. MOORE, ESQUIRE |
| *A renvoyer par la voie la plus rapide (aérienne ou de surface), à découvert et en franchise de port.* | *Potter Anderson & Corroon*<br>Street and Number *(Rue et no.)*  P.O. Box 951<br>1313 N. Market Street<br>City, State, and ZIP + 4 *(Localitié et code postal)* Wilmington, De. 19899-0951<br><br>UNITED STATES OF AMERICA    Etats-Unis d'Amérique |

PS Form **2865**, February 1997    *Avis de réception*    **CN07** *(Old C5)*

---

| | | |
|---|---|---|
| *Completed by the office of origin. (A remplir par le bureau d'origine.)* | Item Description *(Nature de l'envoi )* | ☐ Registered Article *(Envoi recommandé)*  ☒ Letter *(Lettre)*  ☐ Printed Matter *(Imprimé)*  ☐ Other *(Autre)*  ☐ Recorded Delivery *(Envoi à livraison attestée)*  ☐ Express Mail Inter-national |
| | ☐ Insured Parcel *(Colis avec valeur déclarée)* | Insured Value *(Valeur déclarée)*  Article Number  RB 858 342 371 US |
| | Office of Mailing *(Bureau de dépôt)*<br>SYNGENTA PARTICIPATIONS AG | Date of Posting *(Date de dépôt)* |
| | Addressee Name or Firm *(Nom ou raison sociale du destinataire)*<br>SCHWARZWALDALLEE 215<br>c/o SYNGENTA INTERNATIONAL AG<br>Street and No. *(Rue et No.)*<br>4058 BASEL | |
| | Place and Country *(Localité et pays)*<br>SWITZERLAND | |

| | |
|---|---|
| *Completed at destination. (A compléter à destination.)* | This receipt must be signed by: (1) the addressee; or, (2) a person authorized to sign under the regulations of the country of destination; or, (3) if those regulations so provide, by the employee of the office of destination. This signed form will be returned to the sender by the first mail.<br>*(Cet avis doit être signé par le destinataire ou par une personne ou autorisée en vertu des règlements du pays de destination, ou, si ces règlements le comportent, par l'agent du bureau de destination, et renvoyé par le premier courrier directement à l'expéditeur.)* |
| | ☐ The article mentioned above was duly delivered. *(L'envoi mentionné ci-dessus a été dûment livré.)*  Date  14. JUN 05 |
| | Signature of Addressee *(Signature du destinataire)*  Office of Destination Employee Signature *(Signature de l'agent du bureau de destination)* |

PS Form **2865**, February 1997 *(Reverse)*

— Registered No.

RB 858 312 371 US

| | | Date Stamp |
|---|---|---|
| Reg Fee $ 7.50 | | |
| Handling Charge $ | Return Receipt $ 1.75 | |
| Postage $ 9.25 | Restricted $ Delivery | |
| Received by TC | | |

Domestic Insurance up to
$25,000 is included in the fee.
International Indemnity
is limited
(See Reverse).

Customer Must Declare
Full Value $

☐ With Postal Insurance
☐ Without Postal Insurance

**FROM**
David E. Moore, Esquire
Potter Anderson + Corroon LLP
PO Box 951
Wilmington DE 19899

**TO**
Syngenta Participations AG
Schwarzwaldallee 215
c/o Syngenta International AG
4058 Basel
Switzerland

PS Form **3806**,
June 2002         **Receipt for Registered Mail**       Copy 1 - Customer
                                                        (See Information on Reverse)

For delivery information, visit our website at *www.usps.com* ®