IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-305-SLR (Consol.) |
| | ) | |
| SYNGENTA SEEDS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SYNGENTA AG AND SYNGENTA PARTICIPATIONS AG'S
OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
MONSANTO'S COUNTERCLAIM FOR LACK OF PERSONAL JURISDICTION
AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Counterclaim Defendants Syngenta AG
and Syngenta Participations AG*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Jonathan R. DeFosse
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(212) 508-8000

Dated: November 21, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................1

NATURE AND STAGE OF PROCEEDINGS ..................................................2

STATEMENT OF FACTS.................................................................................3

    A.    The Businesses of Syngenta AG and Participations ..................................3

    B.    Syngenta AG's and Participations' Lack of Contacts with Delaware.........................4

    C.    The Businesses of Syngenta Seeds, Inc. and Its U.S. Affiliates ...............5

    D.    The U.S. Syngenta Companies Direct Their Own Day-to-Day Operations.................5

ARGUMENT .....................................................................................................7

I.     SYNGENTA AG AND PARTICIPATIONS ARE NOT SUBJECT TO PERSONAL
      JURISDICTION IN DELAWARE BASED ON THEIR OWN ACTIVITIES......................7

    A.    The Delaware Long-Arm Statute Does Not Authorize the Assertion of Personal
         Jurisdiction over Syngenta AG or Participations .........................................8

         1.    Monsanto cannot satisfy the specific jurisdiction provisions of § 3104(c)......9

         2.    Monsanto cannot satisfy the general jurisdiction provision of § 3104(c) ......11

    B.    The Assertion of Personal Jurisdiction Over Syngenta AG and Participations
         Would Violate Due Process .......................................................................12

         1.    Specific jurisdiction.........................................................................12

         2.    General jurisdiction .........................................................................14

II.    SYNGENTA AG AND PARTICIPATIONS ARE NOT SUBJECT TO PERSONAL
      JURISDICTION IN DELAWARE BASED ON THE ACTIVITIES OF THEIR U.S.
      SUBSIDIARIES...................................................................................................14

    A.    Alter Ego Theory.......................................................................................15

    B.    Agency Theory ..........................................................................................17

III.   COUNTS I-III OF MONSANTO'S COUNTERCLAIM FAIL TO STATE A CLAIM
      UPON WHICH RELIEF CAN BE GRANTED ....................................................19

IV.   MONSANTO HAS FAILED TO STATE A TORTIOUS INTERFERENCE CLAIM
      AGAINST SYNGENTA AG OR PARTICIPATIONS .........................................19

i

CONCLUSION ...........................................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Ace & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418 (D. Del. 2001) ........................... 14, 15, 17

*Applied Biosystems Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458 (D. Del. 1991) ................... *passim*

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987) ..................................................... 8

*C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556 (D. Del. 1998) ........................................ 15, 16

*Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141 (3d Cir. 1992) ................................................. 7

*Cas. Assurance Risk Ins. Brokerage Co. v. Dillion*, 976 F.2d 596 (9th Cir. 1992) ...................... 13

*Cordis Corp. v. Advanced Cardiovascular Sys.*, No. 97-635-SLR, 1999 WL 805284 (D. Del. Sept. 17, 1999) ................................................................................................................. 16

*In re Daimlerchrysler AG Securities Litig.*, 247 F. Supp. 2d 579 (D. Del. 2003) ........................ 13

*Delaware Mktg. Partners, LLC v. Creditron Fin. Services, Inc.*, No. 04-36-SLR, 2004 WL 1999973 (D. Del. Aug. 31, 2004) ........................................................................ 7, 9, 11, 17

*DeWitt v. Penn-Del Directory Corp.*, 872 F. Supp. 126 (D. Del. 1994) ........................................ 19

*ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*, 147 F. Supp. 2d 268 (D. Del. 2001) ................................................................................................................................. 7, 9, 15

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998) .................................................. 7, 13

*Kounelis v. Sherrer*, No. 04-4714, 2005 WL 2175442 (D.N.J. Sept. 6, 2005) ............................. 20

*Little Switzerland, Inc. v. Destination Retail Holdings Corp.*, No. 98-315-SLR, 1999 WL 223496 (D. Del. Mar. 31, 1999) ......................................................................... 10, 15, 16

*Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383 (10th Cir. 1980) ................................ 20

*In re Nazi Era Cases Against German Defendants Litig.*, No. 04-2848, 2005 WL 2673498 (3d Cir. Oct. 20, 2005) ................................................................................................... 8

*Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352 (D. Del. 1993) ........................... 19

*Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL 1703200 (D.N.J. July 20, 2005) ................... 20

*Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434 (3d Cir. 1987) .... 11, 14

*Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Productions, Inc.*, No. 12036, 1991 WL 129174 (Del. Ch. July 10, 1991) ................................................................. 1, 11

*Reynolds v. Int'l Amateur Athletic Fed.*, 23 F.3d 1110 (6th Cir. 1994) ......................................... 13

*Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53 (3d Cir. 1986) ....................................... 7

*Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362 (D. Del. 2005) ............................... 8

*Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86 (D. Del. 2002) ................................. 8

*United States v. Bestfoods*, 524 U.S. 51 (1998) ........................................................................... 15

*Vikoma Int'l, Ltd. v. Oil Stop, Inc.*, No. 92-573-SLR, 1993 WL 14647 (D. Del. Jan. 14, 1993) .................................................................................................................... 11, 13

*Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*, 201 F. Supp. 2d 294 (D. Del. 2002) ....... 7, 13, 18

*Walker v. West Michigan Nat'l Bank & Trust*, 324 F. Supp. 2d 529 (D. Del. 2004) ...................... 9

### STATUTES

Fed. R. Civ. P. 12(b)(2) ............................................................................................................ 1, 21

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 2, 3, 4, 19, 21

Fed. R. Civ. P. 4(k)(1)(A) ............................................................................................................... 7

Fed. R. Civ. P. 8 ..................................................................................................................... 2, 19

Counterclaim defendants Syngenta AG and Syngenta Participations AG ("Participations") move under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) to dismiss the Counterclaim filed by Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Monsanto's Counterclaim alleges that "Syngenta" improperly sold and marketed certain glyphosate-tolerant corn seed (the "GA21 corn seed") in violation of the Lanham Act and state unfair competition law (Counts I through III), and tortiously interfered with a licensing agreement between Monsanto and a licensee of the GA21 trait (Count IV). The term "Syngenta" is defined broadly in the Counterclaim to include not only Syngenta Seeds, Inc. and its United States affiliates in the seeds business, but also Syngenta AG and Participations, two Swiss holding companies that lack jurisdictionally sufficient contacts with Delaware.

Syngenta AG and Participations do not conduct business in Delaware and have not sold or marketed GA21 corn seed in Delaware or anywhere else in the United States. Moreover, the May 10, 2004 contract that Monsanto cites as the basis for its tortious interference claim was neither signed nor negotiated in Delaware, and was executed by Syngenta Seeds, Inc., not Syngenta AG or Participations. Because Syngenta AG and Participations are not generally present in Delaware and have not engaged in any activity in Delaware giving rise to Monsanto's Counterclaim, they should be dismissed from this case for lack of personal jurisdiction. Syngenta Seeds, Inc. (and its U. S. affiliates named in Monsanto's Counterclaim) have not contested this Court's jurisdiction and are the appropriate parties to respond to Monsanto's Counterclaim.

Even if this Court were to find that Syngenta AG and/or Participations are subject to personal jurisdiction in Delaware, Counts I-III of Monsanto's Counterclaim would nonetheless be subject to dismissal for failure to state a claim upon which relief can be granted. In this regard,

1

Syngenta AG and Participations adopt the arguments advanced by Syngenta Seeds, Inc. and its U.S. affiliates in their motion to dismiss Counts I-III, which is currently pending before the Court.

Finally, Monsanto's claim of tortious interference with contract (Count IV) must also be dismissed for failure to state a claim against Syngenta AG and Participations, who are not parties to the May 10, 2004 agreement with Advanta USA, Inc. that allegedly caused the tortious interference with Monsanto's licensing contract. Although Monsanto's allegations adopt a single moniker ("Syngenta") to refer generically to a group including not only Syngenta Seeds, Inc. and several of its U.S. affiliates, but also Syngenta AG and Participations, such a collective pleading device does not satisfy Fed. R. Civ. P. 8 and cannot be used to escape a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim.

## NATURE AND STAGE OF PROCEEDINGS

On July 28, 2004, Syngenta Seeds, Inc. filed this antitrust case against Monsanto. The complaint alleges three Sherman Act § 2 (monopolization) violations based on a pervasive pattern of anticompetitive practices designed to entrench Monsanto's stranglehold over several corn trait and seed markets in the United States. Syngenta Seeds, Inc. filed its First Amended Complaint in the antitrust case on September 14, 2004. On April 7, 2005, Monsanto answered the Amended Complaint. On July 13, 2005, Monsanto moved for leave to file an amended Answer and Counterclaim. Syngenta Seeds, Inc. did not oppose the motion and the Court granted it on August 13, 2005.

Monsanto's Counterclaim asserts various claims under the Lanham Act and Delaware Deceptive Trade Practices Act ("DDTPA") relating to the marketing and sale of glyphosate-tolerant corn seed in the United States.[1] In addition to Syngenta Seeds, Inc., Monsanto's

---

[1] Specifically, Monsanto alleges four counts in its Counterclaim: (1) reverse passing off under the Lanham Act (Count I); (2) violations of the DDTPA based on the same allegations found in the

Counterclaim names five U.S. parties:  Syngenta Corporation, Syngenta Biotechnology, Inc.,

Advanta USA, Inc., Garst Seed Co., and Golden Harvest Seeds, Inc.[2] (together with Syngenta

Seeds, Inc. the "Syngenta U.S. Companies").  The Syngenta U.S. Companies have not contested

this Court's personal jurisdiction and have appeared to defend against Monsanto's claims.  On

September 14, 2005, Syngenta Seeds, Inc. and the other Syngenta U.S. Companies filed a motion to

dismiss Counts I – III of Monsanto's Counterclaim under Fed. R. Civ. P. 12(b)(6) for failure to state

a claim upon which relief can be granted.  On October 3, 2005, Monsanto filed its opposition to the

motion to dismiss.  The Syngenta U.S. Companies filed their reply on October 14, 2005.  The

motion is currently pending before the Court.

Monsanto also names two foreign corporations – Syngenta AG and Participations –

as Counterclaim defendants.  Monsanto caused its amended answer and Counterclaim to be served

on Syngenta AG and Participations on October 18, 2005 pursuant to the Hague Convention.  The

parties subsequently stipulated that Participations and Syngenta AG would have until November 21,

2005 to respond to the Counterclaim.

**STATEMENT OF FACTS**

**A.    The Businesses of Syngenta AG and Participations**

Syngenta AG is a holding company located in Basel, Switzerland that was formed

under the laws of Switzerland in 1999.  (Declaration of Daniel Michaelis ("Michaelis Decl.") at

¶ 3.)  Syngenta AG became a public company in November 2000, at which time its shares were

---

reverse passing off claim (Count II); (3) false advertising under the Lanham Act (Count III); and (4)
tortious interference with a contract (Count IV).

[2] The Counterclaim alleges that Garwood Seed Co., Golden Seed Company, LLC, JC Robinson
Seeds, Inc., Sommer Bros. Seed Company, and Thorp Seed Co. are "affiliated companies of Golden
Harvest, Inc." and refers collectively to those entities as the "Golden Harvest Companies."
(Countcl. at ¶ 14.)

listed on the Swiss Stock Exchange, the London Stock Exchange and the Stockholm Stock Exchange. (*Id.*) Syngenta AG has no employees and its business consists primarily of owning shares in companies in the agriculture, seeds and chemicals businesses. (*Id.*) Syngenta AG does not directly own shares of any affiliated company in the United States. (*Id.*)

Participations is a Swiss company, located in Basel, Switzerland, which is a wholly-owned subsidiary of Syngenta AG. (Michaelis Decl. at ¶ 4.) Like Syngenta AG, Participations is a holding company with no employees. (*Id.*) Participations owns interests in companies located outside Switzerland that are in the agriculture, seeds and chemicals businesses. (*Id.*) Participations also owns intellectual property rights, which it licenses principally to affiliated companies. (*Id.*)

## B.    Syngenta AG's and Participations' Lack of Contacts with Delaware

Syngenta AG and Participations have no contacts with Delaware that could subject them to personal jurisdiction in this State. Neither Syngenta AG nor Participations is authorized or registered to do business in Delaware. (Michaelis Decl. at ¶ 6.) Neither company has: (i) an office; (ii) a manufacturing plant; (iii) a registered agent for service of process; (iv) a bank account; (v) a post office box; or (vi) a telephone listing in Delaware. (*Id.* at ¶ 7.) None of the directors of Syngenta AG or Participations is a resident of Delaware, nor is any member of the Syngenta AG Executive Committee a resident of Delaware. (*Id.* at ¶ 8.) Neither company has ever been controlled by persons or entities located in Delaware. (*Id.*) Syngenta AG and Participations do not own or lease any real property in Delaware. (*Id.* at ¶ 10.) Neither company has commenced any lawsuit in Delaware. (*Id.* at ¶ 11.) Syngenta AG and Participations do not manufacture or sell products and, as such, have not sold any products to customers in Delaware, including any GA21 corn seed. (*Id.* at ¶ 12.)

C.    **The Businesses of Syngenta Seeds, Inc. and Its U.S. Affiliates**

Syngenta Corporation is a Delaware corporation with its principal place of business in Wilmington. (Declaration of Edward C. Resler ("Resler Decl.") at ¶ 3.) It is a holding company that owns, either directly or indirectly, Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., and Garst Seed Company.[3] (*Id.*) Syngenta Corporation is a wholly-owned subsidiary of Participations and it is only one of more than 100 subsidiaries worldwide ultimately owned (wholly or partially) by Syngenta AG. (Michaelis Decl. at ¶ 18.)

Syngenta Seeds, Inc. was formed under the laws of Delaware and is headquartered in Golden Valley, Minnesota. (Resler Decl. at ¶ 5.) It is engaged, among other things, in the production, marketing and sale of commercial seeds, including hybrid corn seeds. (*Id.*)

The Syngenta companies operating in the United States have over 4,000 employees. (Resler Decl. at ¶ 4.) In 2004, these companies, along with Syngenta companies operating in Mexico and Canada, generated sales in excess of $2.3 billion. (Michaelis Decl. at ¶ 23.)

D.    **The U.S. Syngenta Companies Direct Their Own Day-to-Day Operations**

Syngenta AG and Participations are not authorized to and do not direct the day-to-day operations of the Syngenta U.S. Companies. (Michaelis Decl. at ¶ 19.) Rather, the Syngenta U.S. Companies are managed by their own officers and employees, who have responsibility for the day-to-day operation of the business. (Resler Decl. at ¶ 10.) For example, Syngenta Seeds, Inc. and its U.S. affiliates in the seeds business develop and implement the U.S. sales and marketing strategy for GA21 corn seed. (*Id.*) These companies make the day-to-day decisions on what, where, when, and how to sell GA21 corn seed. (*Id.*) They hire (and fire) their own sales forces, adopt their own

---

[3] The other Syngenta U.S. Companies – Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, LLC, JC Robinson Seeds, Inc., Sommer Bros. Seed Company, and Thorp Seed Co. – are majority owned directly or indirectly by GH Holding, Inc., a wholly-owned subsidiary of Participations. (Michaelis Decl. at ¶18.)

branding strategies (including with respect to the "Agrisure" brand), set their own prices, run their own promotions, and decide on their own which customers to target. (*Id.*)

The Syngenta U.S. Companies are separate and distinct from their ultimate Swiss parents. The U.S. Companies maintain office, production, research, sales and distribution facilities in the United States, separate from the operations of Syngenta AG and Participations, neither of which has any facilities in the United States. (Michaelis Decl. at ¶ 22; Resler Decl. at ¶ 11.) Syngenta Corporation and its subsidiaries also maintain their own books and records and prepare their own financial statements. (Michaelis Decl. at ¶ 24; Resler Decl. at ¶ 13.) Syngenta Corporation files its own United States tax returns. (Resler Decl. at ¶ 13.) In accordance with Swiss law and international accounting standards, Syngenta AG does prepare a consolidated financial statement for it and its subsidiaries, which includes the results of Syngenta Corporation and its subsidiaries. (Michaelis Decl. at ¶ 24.) However, Syngenta Corporation and its U.S. affiliates are responsible for preparing their own financial statements, which are then consolidated with Syngenta AG's results. (Michaelis Decl. at ¶ 24; Resler Decl. at ¶ 13.)

Each of the U.S. Syngenta Companies also has its own board of directors, which is separate from the boards of Syngenta AG and Participations, as well as the Syngenta AG Executive Committee. (Michaelis Decl. at ¶ 21; Resler Decl. at ¶ 12.) There are no overlapping members on the boards of Syngenta AG and the Syngenta U.S. Companies. (Michaelis Decl. at ¶ 21.) While a few of the Participations directors and some Executive Committee members serve on the boards of certain of the U.S. Syngenta Companies, they comprise only a minority of the U.S. Syngenta Companies' boards on which they sit. (*See* Michaelis Decl., Ex B.) For example, the only overlapping member of Syngenta Seeds, Inc.'s five member board is Michael Mack, who also serves as a member of the Executive Committee. (*Id.*) The Board of Directors of Syngenta AG has

its own meetings, at times and locations separate and apart from the meetings of any Syngenta U.S.

Companies' boards. (Michaelis Decl. at ¶ 21; Resler Decl. at ¶ 12.) The Board of Directors of

Participations generally acts by written consent. (Michaelis Decl. at ¶ 21.)

## ARGUMENT

**I.    SYNGENTA AG AND PARTICIPATIONS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN DELAWARE BASED ON THEIR OWN ACTIVITIES**

In order for a federal district court to exercise personal jurisdiction over a defendant,

it must undertake a two step inquiry. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir.

1998); *Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*, 201 F. Supp. 2d 294, 298 (D. Del. 2002).

First, the court must determine whether the relevant state long-arm statute permits the exercise of

jurisdiction. *Id.*; *see* Fed. R. Civ. P. 4(k)(1)(A) (allowing exercise of jurisdiction over a party "who

could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the

district court is located"). Second, if the state long-arm statute is satisfied, the court must determine

whether the exercise of jurisdiction is consistent with the Due Process Clause of the United States

Constitution. *Id.*[4]

Once a personal jurisdictional defense is raised, the plaintiff bears the burden of

establishing with "reasonable particularity" that the exercise of jurisdiction is appropriate. *Virgin*

*Wireless*, 201 F. Supp. 2d at 298. "A plaintiff may not rely on the pleadings alone in order to

withstand a motion to dismiss for lack of personal jurisdiction." *Id.* (citing *Stranahan Gear Co.,*

*Inc. v. NL Indus., Inc.*, 800 F.2d 53, 58 (3d Cir. 1986)). Rather, a plaintiff must "come forward with

---

[4] "[T]he Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done." *Virgin Wireless*, 201 F. Supp. 2d at 298 n.4; *ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*, 147 F. Supp. 2d 268, 271 n.4 (D. Del. 2001). As a result, the Court must determine whether jurisdiction is compatible with *both* the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. *Id.*; *Delaware Mktg. Partners, LLC v. Creditron Fin. Services, Inc.*, No. 04-36-SLR, 2004 WL 1999973, at *2 (D. Del. Aug. 31, 2004).

facts sufficient to establish by a preponderance of the evidence that the court can exercise personal

jurisdiction over the defendant." *Id.* (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146

(3d Cir. 1992)).

The plaintiff's burden is particularly difficult to meet in cases involving foreign

parties. Indeed, the Supreme Court has recognized the delicate issues of sovereignty and

international comity at issue in such cases: "Great care and reserve should be exercised when

extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co.*

*v. Superior Court*, 480 U.S. 102, 115 (1987); *In re Nazi Era Cases Against German Defendants*

*Litig.*, No. 04-2848, 2005 WL 2673498, at *6 (3d Cir. Oct. 20, 2005) (same); *Tracinda Corp. v.*

*DaimlerChrysler AG*, 364 F. Supp. 2d 362, 391 (D. Del. 2005) (same). Thus, "the added dimension

of foreign policy concerns" in the context of personal jurisdiction over non-U.S. entities "requires

the Court to exercise more caution in analyzing the contacts at issue" in a case such as this one.

*Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 98 (D. Del. 2002).

### A.    The Delaware Long-Arm Statute Does Not Authorize the Assertion of Personal Jurisdiction over Syngenta AG or Participations

The Delaware long-arm statute permits the exercise of personal jurisdiction over a

non-resident who, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

> (5) Has an interest in, uses or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c).  Monsanto cannot establish jurisdiction over Syngenta AG or Participations under any of the relevant provisions of this statute.

### 1.    Monsanto cannot satisfy the specific jurisdiction provisions of § 3104(c)

Subsections (c)(1)-(3) and (5)-(6) of § 3104 are specific jurisdiction provisions, and therefore require a concrete nexus between the defendant's alleged conduct in Delaware and the claim being asserted. *See, e.g., ICT Pharm.*, 147 F. Supp. 2d at 271 n.4; *Delaware Mktg. Partners*, 2004 WL 1999973, at *3-4; *Walker v. West Michigan Nat'l Bank & Trust*, 324 F. Supp. 2d 529, 533 (D. Del. 2004); *Applied Biosystems Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466-67 (D. Del. 1991).  In this case, Monsanto's Counterclaim arises from a discrete series of events relating to the sale and marketing of GA21 corn seed.  Although the Counterclaim defines "Syngenta" broadly to lump Syngenta AG and Participations together with Syngenta Seeds, Inc. and its U.S. affiliates, neither Swiss entity has engaged in any act in Delaware that is in any way related to Monsanto's Counterclaim.

*First*, according to Counts I and II of the Counterclaim, "Syngenta" engaged in "reverse passing off" and deceptive trade practices when it "marketed and sold [GA21 corn seed] without indicating that the true source of the GA21 event is Monsanto." (Countcl. at ¶¶ 66, 70.) Syngenta AG and Participations, however, are both holding companies that do not manufacture,

market or sell products, including GA21 corn seed, in Delaware (or anywhere else).[5] (Michaelis Decl. at ¶¶ 3, 4, 12.) Any sale or marketing of GA21 corn seed in the United States is done by Syngenta Seeds Inc. and its U.S. seed company affiliates. (*Id.* at ¶ 13; Resler Decl. at ¶ 7.)

*Second*, Monsanto alleges in Count III that "Syngenta" engaged in false advertising by making public statements as to the ownership of intellectual property pertaining to the GA21 trait. (Countcl. at ¶ 73.) In support of this claim, Monsanto cites a May 12, 2004 news release issued by "Syngenta AG."[6] (Countcl. at ¶ 52.) This news release, however, was issued in Switzerland, not Delaware (Michaelis Decl. at ¶ 15 & Ex. A), and therefore cannot satisfy subsection (c)(3)'s requirement of "an act or omission *in this State*" that "causes tortious injury in the State." *See, e.g., Little Switzerland, Inc. v. Destination Retail Holdings Corp.*, No. 98-315-SLR, 1999 WL 223496, at *6-7 (D. Del. Mar. 31, 1999) (noting that subsection (c)(3) "requires that the tortious act itself, and not merely the resulting harm, occur in Delaware.")[7]

*Third*, Monsanto alleges in Count IV that "Syngenta" tortiously interfered with Monsanto's GA21 corn license to Garst by entering a May 10, 2004 contract "with Garst's immediate parent . . . for the transfer of the GA21 event inbred corn lines that [Garst] had received from Monsanto" (Countcl. at ¶ 51, 78). Neither Syngenta AG nor Participations, however, is a party to the May 10, 2004 contract that is the alleged basis of the tortious interference claim.

---

[5] Syngenta Crop Protection AG, a Swiss subsidiary of Syngenta AG, is an operating company that sells certain agrichemical products. It does not, however, sell seeds, including GA21 corn seed, in Delaware or anywhere else. (Michaelis Decl. at ¶ 12.)

[6] As the May 12, 2004 press release makes clear on its face (Michaelis Decl., Ex. A), it was actually issued by Syngenta International AG, a legally separate and distinct corporation from Syngenta AG.

[7] As is explained in Part I.B.1., *infra*, issuance of a press release in Switzerland aimed at a worldwide audience also cannot satisfy constitutional due process requirements for the exercise of personal jurisdiction in the United States.

Rather, that contract is between Advanta USA, Inc.[8] and Syngenta Seeds, Inc.  (Resler Decl., Ex.

A.)  Furthermore, that contract has nothing to do with Delaware.  It was negotiated and signed in

Iowa and Minnesota, the locations of Garst and Syngenta Seeds, Inc., respectively.  (Resler Decl. at

¶ 8.)

The specific jurisdiction provisions of the Delaware long-arm statute thus do not

authorize the Court to exercise personal jurisdiction over Syngenta AG or Participations in this case.

Neither company has transacted business, contracted to supply goods or services, or committed a

tort in Delaware related to Monsanto's Counterclaim.

## 2.    Monsanto cannot satisfy the general jurisdiction provision of § 3104(c)

Subsection (c)(4) of the Delaware long-arm statute is a general jurisdiction

provision.  *E.g., Delaware Mktg. Partners*, 2004 WL 1999973, at *3.  Although general jurisdiction

does not require a nexus between the defendant's contacts with Delaware and the cause of action,

"[t]o assert general jurisdiction, the plaintiff 'must show significantly more than mere minimum

contacts.'"  *Vikoma Int'l, Ltd. v. Oil Stop, Inc.*, No. 92-573-SLR, 1993 WL 14647, at *2 (D. Del.

Jan. 14, 1993) (citing *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434,

437 (3d Cir. 1987)).  An assertion of such jurisdiction would be inappropriate in this case.

As is noted above, Syngenta AG and Participations are holding companies that do

not conduct business in Delaware.  (Michaelis Decl. at ¶¶ 3, 4, 12.)  They are not registered to do

business in Delaware.  (*Id*. at ¶ 6.)  They do not produce, market or sell corn seed (or any other

product) in Delaware.  (*Id*. at ¶ 12.)  They do not own property, employ personnel or engage in

other business activities in Delaware.  (*Id*. at ¶¶ 3, 4, 10.)  They do not have a bank account, a

telephone number, or an address in Delaware.  (*Id*. at ¶ 7.)  In short, they do not have "contacts with

---

[8] On April 1, 2005, Advanta USA, Inc. changed its name to Garst Seed Company ("Garst").  They
are the same entity and will thus be referred to as "Garst" throughout this brief.

this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim." *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Productions, Inc.*, No. 12036, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991).

**B.    The Assertion of Personal Jurisdiction Over Syngenta AG and Participations Would Violate Due Process**

As this Court has noted, "[t]he essential due process inquiry asks whether the defendants have had sufficient minimum contacts with the forum to satisfy 'traditional notions of fair play and substantial justice.'" *Applied Biosystems.*, 772 F. Supp. at 1470 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Even if Monsanto were able to satisfy the Delaware long-arm statute, it could not satisfy these due process requirements.

**1.    Specific jurisdiction**

As is apparent from the discussion of the Delaware long-arm statute, *supra*, Monsanto cannot establish that Syngenta AG or Participations have any contacts with Delaware that in any way give rise or are related to Monsanto's Counterclaim. Indeed, for three out of four of its claims (Counts I, II and IV), Monsanto does not make a single particularized allegation (1) that Syngenta AG or Participations took any action (in Delaware or anywhere else) giving rise to those claims; or (2) that any of the activities giving rise to the claims (regardless of the actor) took place in Delaware. As such, it would offend traditional notions of fair play and substantial justice to exercise jurisdiction based on these allegations.

With respect to its false advertising claim (Count III), Monsanto alleges that "Syngenta AG" issued a false and misleading press release concerning GA21 corn. As noted above, this alleged contact does not satisfy the Delaware long-arm statute because the press release was issued in Switzerland, not Delaware. (*See* Michaelis Decl. at ¶ 15 & Ex. A.) The press release also cannot satisfy the constitutional minimum contacts standard.

As the Third Circuit explained in *IMO Industries*, a defendant's activities outside of the relevant forum can only serve as a basis for personal jurisdiction if those activities are "expressly aimed" at the forum so as to make "the forum the focal point of the tortious activity." 155 F.3d at 265. In the context of foreign press releases, jurisdiction is only appropriate when the release is specifically targeted at the forum. *See, e.g., In re Daimlerchrysler AG Securities Litig.*, 247 F. Supp. 2d 579, 590 (D. Del. 2003) (press releases emanating from Germany aimed at a worldwide audience do not justify personal jurisdiction in the United States); *Reynolds v. Int'l Amateur Athletic Fed.*, 23 F.3d 1110, 1120 (6th Cir. 1994) (international press release did not establish jurisdiction, even though defendant "could foresee that the report would be circulated and have an effect in Ohio"); *Applied Biosystems,* 772 F. Supp. at 1467 (advertising must be "specifically directed toward Delaware residents ... and must be part of a 'sustained promotional campaign'"); *Virgin Wireless*, 201 F. Supp. 2d at 299 (single press release attributed to English company cannot justify personal jurisdiction in Delaware); *Vikoma Int'l, Ltd.*, 1993 WL 14647, at *2 ("general solicitation in 'international media' is an insufficient basis for specific jurisdiction"). Press releases issued abroad and targeted at a worldwide audience thus do not satisfy the due process requirements for personal jurisdiction. *Daimlerchrysler*, 247 F. Supp. 2d at 590.

In this case, the May 12, 2004 news release was issued by Syngenta International AG's Media Office in Switzerland. (Michaelis Decl. at ¶ 15 & Ex. A.) Far from being targeted at Delaware, it was meant for a worldwide audience. Indeed, the press release was issued in three languages – English, French, and German. (*Id.*) Under these circumstances, Delaware was not the

"focal point" of the allegedly tortious activity and there would be no basis for subjecting Syngenta

AG or Participations to jurisdiction.[9]

### 2. General jurisdiction

For an assertion of general jurisdiction to be constitutional, the defendant must have

developed "continuous and systematic" contacts with the forum state. *See, e.g., Applied*

*Biosystems*, 772 F. Supp. at 1470 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

U.S. 408, 416 (1984)).  To satisfy this standard, "the plaintiff must show significantly more than

mere minimum contacts." *Provident Nat'l Bank*, 819 F.2d at 437.

Monsanto cannot meet this weighty standard.  As noted above, neither Syngenta AG

nor Participations conducts business in Delaware, much less "continuous and systematic" business

as would be required to establish general jurisdiction. *See* Part I.A.2., *supra*.

## II. SYNGENTA AG AND PARTICIPATIONS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN DELAWARE BASED ON THE ACTIVITIES OF THEIR U.S. SUBSIDIARIES

Perhaps recognizing that Syngenta AG and Participations cannot be subjected to

jurisdiction in Delaware based on their own activities, Monsanto alleges in its Counterclaim that

"Syngenta AG actively directs and controls the U.S. business operations" of Syngenta Seeds, Inc.

and its U.S. affiliates. (Countcl. at ¶ 15.)  To the extent these vague and conclusory allegations are

---

[9] Additionally, even if the press release had been targeted specifically at Delaware, Monsanto would not be able to satisfy *IMO Industries'* second requirement for the exercise of personal jurisdiction: that "the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of" the tortious activity.  155 F.3d at 265. Although Monsanto is incorporated in Delaware, its principal place of business is in Missouri. (Countcl. at ¶¶ 5-6.)  Under such circumstances, Monsanto cannot show that it felt the brunt of the harm of the May 12, 2004 press release in Delaware. *See, e.g., Cas. Assurance Risk Ins. Brokerage Co. v. Dillion*, 976 F.2d 596, 599-600 (9th Cir. 1992) (plaintiff corporation did not suffer brunt of harm in the place of its incorporation); *cf. IMO*, 155 F.3d at 265 (test not satisfied even when "the defendant knew that the plaintiff's principal place of business was located in the forum").

meant to establish personal jurisdiction over Syngenta AG and Participations based on the activities of their indirect subsidiaries, they must fail.

The general rule in Delaware is well-established that a court may not assert personal jurisdiction over a foreign parent corporation based on the activities of its subsidiary. *See, e.g., Ace & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 422-23 (D. Del. 2001) ("the mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent."). As this Court has noted, "the court will not lightly set aside corporate formalities in order to hail a foreign corporation into this judicial district." *ICT Pharm.*, 147 F. Supp. 2d at 274. The Supreme Court has also recognized the importance of the long-standing rule in favor of corporate separateness. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotations omitted).

Courts in Delaware have recognized two narrow exceptions to this general rule: the alter ego theory and the agency theory. *Applied Biosystems*, 772 F. Supp. at 1463. As explained below, neither of these theories justifies the exercise of personal jurisdiction in this case.

A.    **Alter Ego Theory**

Under the alter ego theory, also commonly referred to as "piercing the corporate veil," a court may attribute all the actions of a subsidiary to its parent if the court finds that the subsidiary is a mere "alter ego" of the parent. *E.g., C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559 (D. Del. 1998); *Applied Biosystems*, 772 F. Supp. at 1463. Because this theory results in a complete "merger" of the parent and subsidiary corporations, it is applied only under the most extreme circumstances. *See Applied Biosystems*, 772 F. Supp. at 1464. In addition to showing a lack of corporate formalities, "[i]n Delaware, to reach a parent corporation under the alter ego

theory, the party asserting jurisdiction must establish some fraud, injustice, or inequity *in the use of the corporate form*." *C.R. Bard*, 997 F. Supp. at 559 (emphasis added); *Ace & Co.*, 148 F. Supp. 2d at 425 (same).  Importantly, the fraud shown must be in the use of the corporate form, "distinct from the tort alleged in the complaint." *Little Switzerland*, 1999 WL 223496, at *10.

In this case, Monsanto cannot show any fraud in the use of the corporate form. Syngenta AG, Participations and their direct and indirect subsidiaries have followed the requisite corporate formalities.  The Swiss entities and their U.S. subsidiaries maintain separate books and records. (Michaelis Decl. at ¶ 24; Resler Decl. at ¶ 13.)  They have distinct boards of directors, which meet separately and at different times and locations. (Michaelis Decl. at ¶ 21; Resler Decl. at ¶ 12.)  Although a handful of directors from certain Swiss entities have seats on the boards of U.S. subsidiaries, these are only minor overlaps and do not constitute majority or controlling representation on the boards of any of the U.S. Companies named in the Counterclaim. (*See* Michaelis Decl., Ex. B.)

There is also no inequity in declining personal jurisdiction over Syngenta AG and Participations.  Syngenta Seeds, Inc. and its U.S. affiliates are not under-capitalized shell corporations that will be unable to satisfy an adverse judgment.  Rather, in 2004 alone, the Syngenta entities operating in North America generated in excess of $2.3 billion in sales. (Michaelis Decl. at ¶ 23.)  Syngenta Seeds, Inc. and its U.S. affiliates, which have not contested this Court's jurisdiction, are also the entities that are in the best position to answer Monsanto's Counterclaim.  It is those seed companies that are responsible for the production, marketing and sale of GA21 corn seed in the United States, which is the focus of the Counterclaim. (Resler Decl. at ¶ 10.)

**B.    Agency Theory**

Under the agency theory, a court may attribute specific jurisdictional acts of a subsidiary company to its parent when the subsidiary performs those acts at the parent's direction or under the parent's control. *C.R. Bard*, 997 F. Supp. at 559. Unlike the alter ego theory, establishing an agency relationship alone "is not sufficient to confer jurisdiction." *Cordis Corp. v. Advanced Cardiovascular Sys.*, No. 97-635-SLR, 1999 WL 805284, at *5 (D. Del. Sept. 17, 1999). Rather, a court must assess whether the specific acts that are attributable to the parent satisfy the requirements of the Delaware long-arm statute and the Due Process Clause. Put another way, "[i]n order for actions by an agent to meet the requirements of § 3104, the plaintiff must show that the defendants were directing or controlling [specific] activities *within Delaware*." *Delaware Mktg. Partners*, 2004 WL 1999973, at *3 (emphasis added); *accord Ace & Co.*, 148 F. Supp. 2d at 425 ("The agency theory requires not only that the *precise* conduct shown to be instigated by the parent be attributable to the parent, but also that such conduct satisfy § 3104(c)(1); i.e., that *the jurisdictional conduct take place in Delaware*.") (emphasis added).

Here, neither Syngenta AG nor Participations has directed any of its U.S. subsidiaries to take any actions in Delaware that would justify an assertion of jurisdiction under the Delaware long-arm statute. Indeed, the Counterclaim does not contain even a single allegation of a jurisdictionally relevant act taking place in Delaware (by anyone) that can be attributed to Syngenta AG or Participations.

As noted above, Monsanto's claims for reverse passing off and deceptive trade practices (Counts I & II) are based on the sale and marketing of GA21 corn seed without acknowledging Monsanto as the source of the GA21 event. (Countcl. at ¶¶ 66-67.) Syngenta AG and Participations AG do not direct or control sales or marketing in Delaware (or anywhere else). (Michaelis Decl. at ¶¶ 12, 19.) Rather, it is Syngenta Seeds, Inc. and its U.S. seed company

affiliates that develop and implement the U.S. sales and marketing strategy for GA21 corn seed. (Resler. Decl. at ¶ 10.) It is those companies (not the Swiss parents) that make the day-to-day decisions on what, where, when, and how to sell GA21 corn seed. (*Id.*) Those companies hire (and fire) their own sales forces, adopt their own branding strategies (including with respect to the "Agrisure" brand), set their own prices, run their own promotions, and decide on their own which customers to target. (*Id.*) Syngenta Seeds, Inc. and its U.S. seed company affiliates are not mere distribution arms of Syngenta AG or Participations. In fact, Syngenta entities operating in North America generate billions of dollars in sales annually and have thousands of employees, including their own officers and directors. (Michaelis Decl. at ¶ 23; Resler Decl. at ¶ 4.) If GA21 corn seed is marketed or sold by "Syngenta" in the United States, it is at the direction and under the control of Syngenta Seeds, Inc. and its U.S. seed company affiliates – not Syngenta AG or Participations. (Michaelis Decl. at ¶ 13; Resler Decl. at ¶ 7.)

Monsanto also cannot point to any action taken in Delaware with respect to its false advertising claim (Count III) that was controlled by Syngenta AG or Participations. Although Syngenta International AG issued a press release on May 12, 2004 from its Swiss headquarters (Michaelis Decl. at ¶ 15), it was not "specifically directed toward Delaware residents," nor was it "part of a 'sustained promotional campaign'" in Delaware. *Applied Biosystems*, 772 F. Supp. at 1467; *Virgin Wireless*, 201 F. Supp. 2d at 299 (single press release attributed to English company cannot justify personal jurisdiction in Delaware). As a result, even if the Court were to assume that Syngenta AG or Participations had control over that press release, it would not be sufficient to establish jurisdiction in Delaware. *See* Part I.A.1., *supra*.

Monsanto's tortious interference claim does not fare any better under the agency theory. The crux of that claim – the contract between Syngenta Seeds, Inc. and Advanta USA, Inc.

calling for the transfer of GA21 – has no relationship to Delaware, having been negotiated and signed in Iowa and Minnesota. (*See* Resler Decl. at ¶ 8.)

Monsanto thus cannot point to a single specific jurisdictional act taken in Delaware at the direction or under the control of Syngenta AG or Participations. As a result, the court must honor the general rule "deeply ingrained in our economic and legal systems" that a foreign parent corporation cannot be subjected to jurisdiction based on the activities of its subsidiary.

## III.     COUNTS I-III OF MONSANTO'S COUNTERCLAIM FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

To the extent that this Court determines that Syngenta AG and/or Participations can be subjected to personal jurisdiction in Delaware, they adopt the arguments asserted in support of the Fed. R. Civ. P. 12(b)(6) motion to dismiss Counts I, II, and III of Monsanto's Counterclaim filed by Syngenta Seeds, Inc. and its U.S. affiliates.

## IV.     MONSANTO HAS FAILED TO STATE A TORTIOUS INTERFERENCE CLAIM AGAINST SYNGENTA AG OR PARTICIPATIONS

Monsanto alleges that "Syngenta" tortiously interfered with Monsanto's GA21 corn license to Garst by entering a May 10, 2004 contract "with Garst's immediate parent . . . for the transfer of the GA21 event inbred corn lines that [Garst] had received from Monsanto" (Countcl. at ¶ 51, 78). This allegation fails to state a claim for tortious interference against Syngenta AG and Participations because neither entity is a party to the May 10, 2004 contract that gives rise to Monsanto's claim. (*See* Resler Decl., Ex. A.)[10]

---

[10] Courts may consider the contents of a contract referenced in a complaint on a Rule 12(b)(6) motion. *Se*e, *e.g., DeWitt v. Penn-Del Directory Corp.*, 872 F. Supp. 126, 137-38 (D. Del. 1994) ("[T]he Court may consider an undisputedly authentic document relied upon by the complaint without converting the motion to a motion for summary judgment."); *Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1357 (D. Del. 1993) ("When deciding a Rule 12(b)(6) motion, the Court may consider the terms of an agreement referenced in the complaint.").

Monsanto cannot be allowed to use the liberal pleading standards of Fed. R. Civ. P. 8 to obfuscate the true nature of this claim. Although Monsanto has alleged that the May 10, 2004 agreement was entered into by "Syngenta," which Monsanto has defined to include not only Syngenta Seeds, Inc. and its U.S. affiliates, but also Syngenta AG and Participations (*see* Countcl. at p. 19), there can be no doubt that the only entities that are parties to that contract are Syngenta Seeds, Inc. and Advanta USA, Inc. (Garst). (*See* Resler Decl., Ex. A.)

Monsanto's lumping together of separate Counterclaim defendants, when the factual allegations do not support accusing them all of the same wrongdoing, is impermissible. *See, e.g.*, *Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383, 1386-87 (10th Cir. 1980) ("A blanket statement that twenty-eight defendants have conspired to fix prices on drug sales to thirteen plaintiffs does not provide adequate notice for responsive pleading."); *Kounelis v. Sherrer*, No. 04-4714, 2005 WL 2175442, at *3 (D.N.J. Sept. 6, 2005) ("In order to satisfy even the liberal notice-pleading requirements of Rule 8(a)(2), in multiple defendant actions, the complaint must 'clearly specify the claims with which each individual defendant is charged.'"); *see also Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005) ("[T]he Complaint fails to satisfy even the liberal notice pleading standard of Rule 8(a) because Plaintiff fails to differentiate between the defendants. Plaintiff's complaint instead lumps all of the defendants together and accuses every defendant of breaching all of the asserted fiduciary duties.").

Monsanto's tortious interference claim against Syngenta AG and Participations must therefore be dismissed as improperly plead and contrary to the undisputed facts of this case.

## CONCLUSION

For the foregoing reasons, Syngenta AG and Participations respectfully request that this Court dismiss Monsanto's Counterclaim against Syngenta AG and Participations for lack of

personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or, in the alternative, failure to state a claim

under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Counterclaim Defendants Syngenta AG*
*and Syngenta Participations AG*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Jonathan R. DeFosse
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(212) 508-8000

Dated: November 21, 2005

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on November 21, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza, 6th Floor
> 1313 N. Market Street
> Wilmington, DE 19801

I further certify that November 21, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

> Peter E. Moll, Esquire
> Howrey Simon Arnold & White, LLP
> 1299 Pennsylvania Ave., N.W.
> Washington, D.C. 20004

> Susan Knoll, Esquire
> Howrey Simon Arnold & White, LLP
> 750 Bering Drive
> Houston, TX 77057

> Kenneth A. Letzler, Esquire
> Arnold & Porter LLP
> 555 12th Street, N.W.
> Washington, D.C. 20004

John W. Shaw (#3362)