THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al*, | ) | |
| | ) | |
| | ) | C.A. No. 04-305-SLR |
| Plaintiffs, | ) | C.A. No. 04-908-SLR |
| | ) | (Consolidated) |
| v. | ) | |
| | ) | |
| SYNGENTA SEEDS, INC., *et al*, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MONSANTO'S ANSWERING BRIEF IN OPPOSITION TO SYNGENTA AG
AND SYNGENTA PARTICIPATIONS AG'S
<u>MOTION TO DISMISS MONSANTO'S COUNTERCLAIMS</u>**

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
Scott Flick
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated: December 30, 2005
Public Version Dated: January 9, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON, LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Attorney for MONSANTO COMPANY AND
MONSANTO TECHNOLOGY LLC

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. IV

NATURE AND STAGE OF PROCEEDING .......................................... 1

SUMMARY OF THE ARGUMENT ..................................................... 2

RELEVANT FACTUAL BACKGROUND ............................................. 3

    A.   Syngenta AG and Participations Dominate and Control Their
          U.S. Subsidiaries Engaged in the Corn Business ............................. 3

         1.   Branded As One Global "Syngenta" Entity .......................... 4

         2.   "Syngenta" Functionally Operates As One Global
              Entity Controlled from Basel, Switzerland ......................... 4

         3.   The U.S. Subsidiaries Are Ultimately Dominated and
              Controlled by Syngenta AG's Executive Committee
              through Overlapping Board Members and Officers ............... 5

         4.   Other Key Syngenta AG Committees Reinforce
              Basel's Dominion and Control Over the U.S.
              Subsidiaries ................................................................ 6

         5.   Employees Are Regularly Transferred between
              Corporate Headquarters in Basel, Switzerland and Its
              U.S. Subsidiaries ......................................................... 7

         6.   Employees of Syngenta AG and Participations
              Frequently Travel to the United States Regarding
              "Syngenta's" Corn Business, Including the
              Commercialization of GA21 .......................................... 8

         7.   Employees of Syngenta AG and Its U.S. Subsidiaries
              Regularly Utilize an Integrated Communication System
              To Manage "Syngenta's" Corn Business, Including the
              Commercialization of GA21 .......................................... 9

    B.   Syngenta AG and Participations' Strategy to Misappropriate
          GA21 for Sale in the United States ............................................... 9

         1.   The Corn Business Team ............................................... 11

         2.   Participations' Acquisition of Certain "Rights" In
              GA21 from Bayer ........................................................ 13

|   |   | 3. | Acquisition of Garst and Golden Harvest | 13 |

|   |   | 4. | Participations' Application for Agrisure and Agrisure Advantage Trademarks in the United States | 14 |

|   |   | 5. | Sales of Agrisure Corn Seed in Delaware and Throughout the United States | 14 |

|   |   | 6. | Press Releases and Advertising Containing False and Misleading Statements Regarding the Ownership of GA21 | 14 |

|   |   | 7. | Filing the Antitrust Lawsuit in Delaware | 15 |

|   | C. | | Syngenta AG's Contract with SDI, a Delaware Corporation | 16 |

ARGUMENT .......................................................................................................... 16

I.   SYNGENTA AG AND PARTICIPATIONS' SUPPORTING DECLARATIONS ARE, AT BEST, INACCURATE AND CANNOT BE RELIED UPON ................................................................................ 16

II.  SYNGENTA AG AND PARTICIPATIONS' CONTACTS WITH DELAWARE WARRANT THE EXERCISE OF PERSONAL JURISDICTION UNDER RULE 4(K)(1) ................................................ 18

   A. Syngenta AG and Participations Are Subject to Jurisdiction Under Delaware's Long-Arm Statute ......................................... 18

      1. The Acts of Syngenta AG and Participations' Agents Are Directly Relevant To the Personal Jurisdiction Inquiry Under Delaware's Long-Arm Statute ................... 19

      2. Syngenta AG and Participations' Direct and Indirect Conduct Satisfies the Specific Jurisdiction Provisions of §3104(c) .......................................................... 20

         a. Transacts Business and/or Contracts to Supply Services Within Delaware ......................................... 21

         b. Causes Tortious Injury In The State ........................ 23

      3. Syngenta AG and Participations' Direct and Indirect Conduct Satisfies The General Jurisdiction Provision of § 3104(c) .......................................................... 24

   B. Exercising Jurisdiction Over Syngenta AG and Participations Under Delaware's Long-Arm Statute Comports With Federal Due Process Considerations ......................................... 25

|     | 1. | Counter-defendants Anticipated Being Haled Into Court By Monsanto for Their Wrongful Conduct | 25 |

1. Counter-defendants Anticipated Being Haled Into
Court By Monsanto for Their Wrongful Conduct .............................. 25

2. Due Process Requirements Are Satisfied Under Either
a Specific or General Jurisdiction Analysis ........................................ 26

3. The Remaining Due Process Consideration Weighs In
Favor of Exercising Personal Jurisdiction ......................................... 27

III. ALTERNATIVELY, SYNGENTA AG AND PARTICIPATIONS'
NATIONWIDE CONTACTS WARRANT THE EXERCISE OF
JURISDICTION UNDER RULE 4(K)(2) ........................................................ 27

A. Monsanto's Counterclaims Arise Under The Lanham Act, 15
U.S.C. § 1125 ............................................................................................... 28

B. Counter-defendants Are Not Subject To The General
Jurisdiction Of Any State ........................................................................ 29

C. Syngenta AG Has Extensive Contacts With The United States
Warranting The Exercise Of Jurisdiction .......................................... 31

IV. JURISDICTIONAL DISCOVERY IS APPROPRIATE TO RESOLVE
ANY REMAINING QUESTIONS REGARDING THE EXERCISE
OF PERSONAL JURISDICTION OVER SYNGENTA AG AND
PARTICIPATIONS ........................................................................................... 33

A. Monsanto Has Satisfied Its Threshold Burden To Sustain
Jurisdictional Discovery .......................................................................... 33

B. Monsanto Should Be Permitted Discovery to Probe The
Unsupported And Factually Questionable Declarations of
Syngenta AG and Participations .......................................................... 34

C. Jurisdictional Discovery Should Proceed Under The Federal
Rules Of Civil Procedure ....................................................................... 35

V. *DARSTAR* DOES NOT PRECLUDE MONSANTO'S
COUNTERCLAIMS ......................................................................................... 37

VI. MONSANTO'S TORTIOUS INTERFERENCE COUNTERCLAIM
STATES A CLAIM AGAINST SYNGENTA AG AND
PARTICIPATIONS ........................................................................................... 38

CONCLUSION ............................................................................................................. 40

# TABLE OF AUTHORITIES

Page No(s)

## CASES

*A.V. Imports, Inc. v. Col de Fratta,*
  171 F. Supp. 2d 369 (D.N.J. 2001) .................................................................21

*Adams v. Unione Mediterranea Di Sicurta,*
  364 F.3d 646 (5th Cir. 2004) ........................................................26, 30, 33

*Altech Industrial, Inc. v. Al Tech Specialty Steel Corp.,*
  542 F. Supp. 53 (D. Del. 1982) .....................................................................16

*In re Am. Biomaterials Corp.,*
  954 F.2d 919 (3d Cir. 1992) ..........................................................................39

*American Bio Medica Corp. v. Peninsula Drug Analysis Co.,*
  CA No. 99-218 SLR, 1999 U.S. Dist. LEXIS 12455 (D. Del. 1999) ................16

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
  772 F. Supp. 1458 (D. Del. 1991) ....................................................... passim

*Asahi Metal Industry Co. v. Superior Court of California,*
  480 U.S. 102 (1987) ................................................................................25, 27

*In re Automotive Refinishing Paint Antitrust Lit.,*
  358 F.3d 288 (3d Cir. 2004) ..........................................................................35

*BP Chemicals v. Formosa Chemical & Fibre Corp.,*
  229 F.3d 254 (3d Cir. 2000) ..........................................................................28

*Banjo Buddies, Inc. v. Renosky,*
  399 F.3d 168 (3d Cir. 2005) ..........................................................................29

*Boone v. Oy Partek AB,*
  724 A.2d 1150 (Del. Super. 1997) .......................................................19, 22, 24

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ......................................................................................25

*CMFT Inc. v. Steag Microtech, Inc.,*
  No. 95-442-Lon, 1997 U.S. Dist. LEXIS 7905 (D. Del. Jan. 9, 1997) ...............30

*Citibank v. National Bancshares, Inc.,*
  No. 13810, 1994 Del. Ch. LEXIS 208 (Dec. 12, 1994) ....................................39

*Commissariat A L'Energie Atomique v. CHI MEI Optoelectronics Corp.,*
  395 F.3d 1315 (Fed. Cir. 2005) .....................................................................34

*Cordis Corp. v. Advanced Cardiovascular System, Inc.,*
   No. 97-635-SLR, 1999 U.S. Dist. LEXIS 15527 (D. Del. Sept. 17, 1999) ..........................19

*Damian Services Corp. v. PLC Services, Inc.,*
   763 F. Supp. 369 (N.D. Ill. 1991)..............................................................................................25

*DeWitt v. Penn-Del Directory Corp.,*
   872 F. Supp. 126 (D. Del. 1994)................................................................................................38

*E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates,*
   197 F.R.D. 112 (D. Del. 2000) ..................................................................................................18

*Electro Medical Equipment Ltd. v. Hamilton Medical AG,*
   No. 99-579, 1999 U.S. Dist. LEXIS 18483 (E.D. Pa. Nov. 16, 1999) ...................22, 26

*In re Frederick's of Hollywood, Inc. Shareholders Litigation,*
   No. 15944, 1998 Del. Ch. LEXIS 111 (Jul. 9, 1998) ...........................................................38

*Friedman v. Alcatel Alsthom,*
   752 A.2d 544 (Del. Ch. 1999) ...................................................................................................21

*General Electric Co. v. Deutz AG,*
   270 F.3d 144 (3d Cir. 2001) ......................................................................................................29

*Graduate Management Admission Council v. RVR Narasimha Raju,*
   241 F. Supp. 2d 589 (E.D.Va. 2003) ..............................................................................31, 32

*Grand Entertainment Group Ltd. v. Star Media Sales, Inc.,*
   988 F.2d 476 (3d Cir. 1992) ..............................................................................................27, 33

*Hansen v. Neumueller,*
   163 F.R.D. 471 (D. Del. 1995) ..................................................................................................33

*Helicopteros Nacionales de Columbia v. Hall,*
   466 U.S. 408 (1984)....................................................................................................25, 29, 31

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,*
   147 F. Supp. 2d 268 (D. Del. 2001)...................................................................................19, 20

*ISI International, Inc. v. Borden Ladner Gervais LLP,*
   256 F.3d 548 (7th Cir. 2001) ............................................................................................30, 31

*International Shoe Co. v. Washington,*
   326 U.S. 310 (1945)............................................................................................................25, 31

*Intel Corp. v. Broadcom Corp.,*
   167 F. Supp. 2d 692 (D. Del. 2001)..........................................................................................16

*Kounelis v. Sherrer,*
   No. 04-4717, 2005 WL. 2175442 (D.N.J. Sept. 6, 2005) ........................................39

*LaNuova B&D, S p A v. Bowe Co.,*
   513 A.2d 764 (Del. 1986) .........................................................................................21

*Merck & Co. v. Barr Laboratories, Inc.,*
   179 F. Supp. 2d 368 (D. Del. 2002)........................................................................18

*Miller Yacht Sales, Inc. v. Smith,*
   384 F.3d 93 (3rd Cir. 2004) .............................................................................23, 27

*Minebea Co. v. Papst,*
   13 F. Supp. 2d 35 (D.D.C. 1998) ...........................................................................29

*Mobil Oil Corp. v. Advanced Environmental Recycling Tech., Inc.,*
   833 F. Supp. 437 (D. Del. 1993)..............................................................................23

*Motorola Inc. v. PC-Telegraph, Inc.,*
   58 F. Supp. 2d 349 (D. Del. 1999)...........................................................................26

*Mountain View Pharmacy v. Abbott Laboratoriess,*
   630 F.2d 1383 (10th Cir. 1980) ...............................................................................40
*NRG Barriers, Inc. v. Jelin,*
   No. 15013, 1996 WL. 377014 (Del. Ch. July 1, 1995).............................................21

*Oran v. Stafford,*
   226 F.3d 275 (3d Cir. 2000) ...................................................................................38

*Padcom, Inc. v. NetMotion Wireless, Inc.,*
   No. 03-983-SLR, 2004 U.S. Dist. LEXIS 9658 (D. Del. May 24, 2994).................26

*In re Perrier Bottled Water Litigation,*
   754 F. Supp. 264 (D. Conn. 1990)...........................................................................32

*Phoenix Canada Oil Co. v. Texaco, Inc.,*
   842 F.2d 1466 (3d Cir. 1988) .................................................................................39

*Pietrengelo v. Nui Corp.,*
   No. 04-3223, 2005 WL 1703200 (D.N.J. Jul. 20, 2005) ........................................40

*Pinker v. Roche Holdings,*
   292 F.3d 361 (3d Cir. 2002) ...................................................................................16

*Quick Techs., Inc. v. The Sage Group PLC,*
   313 F.3d 338 (5th Cir. 2002) ..................................................................................31

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001) ...............................................................................38

*Saudi v. Acomarit Maritimes Services, S.A.*
    No. 03-1609, 2004 U.S. App. LEXIS 19443 (3d Cir. Sept. 17, 2004) ............................31

*Schrob v. Catterson*,
    948 F.2d 1402 (3d Cir. 1991) .............................................................................38

*Sears, Roebuck & Co. v. Search PLC*,
    752 F. Supp. 1223 (D. Del. 1990).........................................................................19

*Silent Drive, Inc. v. Strong Industrial*,
    326 F.3d 1194 (Fed. Cir. 2003) ...........................................................................29

*Smith v. S&S Dundalk Engineering Works*,
    139 F. Supp. 2d 610 (D.N.J. 2001).................................................................28, 29

*Societe Nationale Industrielle Aerospatiale v. United States*,
    482 U.S. 522 (1987).........................................................................................35

*Sunshine Distr., inc. v. Sports Authority Mich., Inc.*,
    157 F. Supp. 2d 779 (E.D. Mich. 2001) .........................................................28, 29

*Telcordia Technologies, Inc. v. Alcatel S.A.*,
    No. 04-874 GMS, 2005 U.S. Dist. LEXIS 10194 (D. Del. May 27, 2005)...............28, 29

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) .........................................................................2, 34

*Triple Crown America, Inc. v. Biosynth AG*,
    C.A. No. 96-7476, 1998 U.S. Dist. LEXIS 6117 (E.D. Pa. Apr. 30, 1998) ......................36

*United States v. Swiss America Bank*,
    191 F.3d 30 (1st Cir. 1999)................................................................................28

*In re Vitamin Antitrust Litig.*,
    Misc. No. 99-197 (TFH), MDL No. 1285, 2000 U.S. Dist. LEXIS 20976
    (D.D.C. Aug. 15, 2000) .....................................................................................37

*In re Vitamins Antitrust Litigation*,
    120 F. Supp. 2d 45 (D.C. Cir. 2000).........................................................35, 36, 37

*Wellness Publ'g v. Barefoot*,
    No. 03-3919, 2005 U.S. App. LEXIS 6487 (3d. Cir. Apr. 14, 2005)...............................16

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    863 F. Supp. 186 (D. Del. 1993).............................................................................19

*World-Wide Volkswagon Corp. v. Woodson*,
    444 U.S. 286 (1980)....................................................................................................25

## STATUTES

10 Del. C. § 3104(c)................................................................................................ *passim*

28 U.S.C. § 1367(a) .......................................................................................................29

Fed. R. Civ. P. 4(k)(2)........................................................................................... *passim*

Fed. R. Civ. P. 8(a)(2)...................................................................................................38

Lanham Act, 15 U.S.C. § 1125 .................................................................................28, 29

## NATURE AND STAGE OF PROCEEDING

On May 12, 2004, Monsanto filed suit against Syngenta for infringement of the Shah patent. (D.I. 1.) DEKALB Genetics Corporation ("DEKALB"), a Monsanto subsidiary, later filed an action in Illinois against Syngenta for infringement of the Lundquist patent on July 27, 2004. In response, Syngenta Seeds, Inc., filed this antitrust case against Monsanto on July 28, 2004, alleging that Monsanto has monopolized the markets for glyphosate-tolerant corn traits and European corn borer-tolerant corn traits, and has attempted to monopolize the foundation corn seed market. Monsanto filed its Answer on April 7, 2005, denying the allegations of anticompetitive conduct set forth in Syngenta's Amended Antitrust Complaint. (D.I. 52.) Both the patent cases (including the Illinois case that was transferred to this Court) and antitrust case are consolidated before this Court and set for separate trials. *Monsanto Co., et al. v. Syngenta Seeds, Inc., et al.*, 04-305-SLR. (D.I. 48.)

On August 15, 2005, the Court granted Monsanto leave to file an amended answer with counterclaims against Syngenta AG, Syngenta Participations AG, Syngenta Corporation, Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Co. ("Garst"), and Golden Harvest Seed Co. ("Golden Harvest"). The Counterclaims allege that counter-defendants misappropriated Monsanto's GA21 event and are improperly selling Monsanto's event as their own. The Counterclaims allege four different claims: (i) reverse passing off under the Lanham Act (Count I); (ii) violations of the Delaware Deceptive Trade Practices Act; (iii) false advertising under the Lanham Act; and (iv) tortious interference with a contract. (D.I. 77.)

On November 21, 2005, Syngenta AG and Syngenta Participations AG ("Participations") moved to dismiss Monsanto's counterclaims for lack of personal jurisdiction, arguing that they lack sufficient contacts with Delaware. (D.I. 169.)[1]

---

[1] On August 12, 2005, Syngenta filed a motion for leave to file a Second Amended Complaint, adding a Lanham Act claim for misrepresentations and false statements. Monsanto did not oppose Syngenta's motion and the Court granted Syngenta's motion on September 9, 2005.

Syngenta AG and Participations also moved to dismiss Counts I-IV for failure to state a claim upon which relief can be granted, adopting the arguments advanced by Syngenta Seeds, Inc., and its U.S. subsidiaries in their motion to dismiss as to Counts I-III, and arguing that neither Syngenta AG nor Participations was a party to the agreement with Advanta USA, Inc. ("Advanta") that tortiously interfered with Monsanto's licensing contract as to Count IV.

### SUMMARY OF THE ARGUMENT

1.    Syngenta AG and Participations have minimum contacts under the Delaware long-arm statute sufficient to warrant jurisdiction as a result of counter-defendants' conduct and/or the conduct of their agents regarding their misappropriation of Monsanto's GA21 event.    Documents produced by Syngenta AG and Participations' subsidiaries and the testimony of employees from the U.S. subsidiaries contradict the supporting declarations submitted by the counter-defendants regarding purported absence of minimum contacts in Delaware and the United States. In light of this evidence, these declarations (even viewed in the most favorable light for counter-defendants) are factually inaccurate and cannot be relied upon.

2.    Alternatively, Syngenta AG and Participations' contacts with the United States as a whole warrant the exercise of jurisdiction pursuant to Rule 4(k)(2) because: (i) Monsanto's claims arise under the Lanham Act; (ii) if there is any question as to jurisdiction in Delaware, Syngenta AG and Participations lack sufficient contacts with any other State to be subject to jurisdiction; and (iii) Syngenta AG and Participations have sufficient contacts with the United States as a whole to satisfy due process.

3.    If any question remains as to whether the Court has personal jurisdiction, leave to permit jurisdictional discovery should be granted. Such jurisdictional discovery is permissible where, as here, Monsanto has "present[ed] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

Should the Court permit Monsanto to engage in jurisdictional discovery, such discovery should proceed under the Federal Rules of Civil Procedure in light of the well recognized absence of realistic pretrial discovery available under the Hague Convention as enforced under Swiss law.

     4.     Monsanto has sufficiently pled facts to support its counterclaims for reverse passing off, false advertising and unfair trade practices, and the motion to dismiss for failure to state a claim should be denied.

     5.     Monsanto properly satisfied the notice pleading requirement of Rule 8 to state a claim for tortious interference against Syngenta AG and Participations.

**RELEVANT FACTUAL BACKGROUND**

A.     **Syngenta AG and Participations Dominate and Control Their U.S. Subsidiaries Engaged in the Corn Business**

Syngenta AG is a Swiss corporation with its principal place of business in Basel, Switzerland. (Rosenthal Dec. ¶ 3 Ex. 2). Syngenta AG is a publicly traded company that is listed on both the Swiss and New York Stock Exchanges, where a majority of its shares are traded. In this capacity, it regularly submits filings to the U.S. Securities and Exchange Commission and engages in a wide variety of activities in the United States relating to the trading of its stock. *See* http://www.sec.gov/cgi-bin/srch-edgar?text=syngenta&first=2004&last=2005. Syngenta AG wholly owns Participations, which is also a Swiss corporation with its principal place of business in Basel, Switzerland. (Rosenthal Dec. ¶ 4 Ex. 3; D.I. 171 - Michaelis Dec. ¶¶ 3–4.)[2]

---

[2] Counter-defendants Opening Brief suggests that Syngenta AG and Participations are merely holding companies. However, documents produced to date reflect that officers, employees and committees operating under the names "Syngenta AG" and "Syngenta Participations AG" engage in a wide variety of business activities directed to the direction and control of its U.S. subsidiaries engaged in the corn business. (*Id.*)

Syngenta AG owns Syngenta Corporation, a **Delaware** corporation with its principal place of business in Wilmington, **Delaware**. (Rosenthal Dec. ¶ 5 Ex. 4.) In turn, Syngenta Corporation is the parent company to all of Syngenta AG's North American businesses engaged in the distribution, marketing and sale of genetically modified corn seeds, which include counter-defendants Syngenta Seeds, Inc. (a **Delaware** corporation with its principal place of business in Golden Valley, MN), and Syngenta Biotechnology, Inc. (a **Delaware** corporation with its principal place of business in Research Triangle Park, NC). In addition, Syngenta AG owns ninety percent of counter-defendant Garst Seeds, formerly Advanta USA, (a **Delaware** corporation with its principal place of business in Slater, IA) and counter-defendant Golden Harvest (a **Delaware** corporation with its principal place of business in Pekin, IL). (*Id.* ¶ 4 Ex. 3.)

Syngenta AG and Participations dominate and control the corn business of these U.S. subsidiaries:

### 1.    Branded As One Global "Syngenta" Entity

Syngenta AG has adopted a marketing and branding strategy designed to hold out Syngenta AG and its approximately 200 affiliated companies as a single global entity operating under the banner "Syngenta" or the "Syngenta Group." (*Id.* ¶ 5 Ex. 4.) For example, Syngenta AG consistently describes itself as one integrated entity in its consolidated financial statements, annual reports, and press releases. (*Id.* ¶¶ 5-7 Exs. 4-6.) Syngenta AG's website found at "www.syngenta.com" promotes the image of a single, unified company. *See* www.syngenta.com.

### 2.    "Syngenta" Functionally Operates As One Global Entity Controlled from Basel, Switzerland

Contrary to the assertions contained in the supporting declaration of Syngenta AG and Participations, Syngenta AG and its subsidiaries are organized and operate as a single global entity that is dominated and controlled through the corporate headquarters in Basel,

Switzerland.  The following corporate governance chart published in Syngenta AG's 2004 *Annual Report* reflects the company's centrally focused organization and management:



* Regions: Europe Africa and Middle East, NAFTA, Latin America, Asia Pacific

(Rosenthal Dec. ¶ 8 Ex. 7, at 24.)  "Seeds" – which is responsible for the marketing of GA21 traits – is depicted as a mere division within Syngenta AG, alongside Crop Protection and Plant Science.  The United States is simply part of one region, NAFTA, within "Seeds."  The chart also depicts that functions such as finance, research and development and legal are centrally managed, functioning across country boarders, irrespective of the specific corporate form of the various subsidiaries.

**3.    The U.S. Subsidiaries Are Ultimately Dominated and Controlled by Syngenta AG's Executive Committee through Overlapping Board Members and Officers**

Syngenta AG's Executive Committee is based at corporate headquarters in Basel, Switzerland.  (*Id.* ¶ 9 Ex. 8.)  The Executive Committee is "responsible for the operational management of the Company."  (*Id.* Ex. 8, at 3-7.)  The Committee consists of the CEO, the Chief Operating Officers of the Crop Protection and Seed businesses, together with the Heads of Syngenta's global functions.  (*Id.* Ex. 8.)  Although Syngenta AG attempts to discount this fact in its Opening Brief, Syngenta AG effectively controls its U.S. subsidiaries through

domination by Executive Committee members that also serve as board members and key

officers of the U.S. subsidiaries. For example:

- **Michael Mack**, who is based in Basel, is a member of Syngenta AG's Executive Committee. Mack is also the Chairman and President of Syngenta Corporation (Delaware) and the Chief Operating Officer of Syngenta Seeds (MN). (*Id.* ¶¶ 9, 10 Exs. 8 & 9.)

- **Jeff Beard**, Mack's predecessor, was also a member of Syngenta AG's Executive Committee and the Chief Operating Officer of Syngenta Seeds. (*Id* ¶ 9 Ex. 8, at 3.)

- **John Atkin** is another member of Syngenta AG's Executive Committee. Atkin is also the COO of Syngenta Corporation (Delaware) and the COO of Syngenta Crop Protection, located in Greensboro, NC. (*Id.* ¶¶ 9, 13 Exs. 8 & 12.)

- **David Lawrence** is the head of Research and Technology for Syngenta AG and a member of Syngenta AG's Executive Committee. Lawrence also sits on the Board of Syngenta Biotechnology, Inc. (NC). (*Id.* ¶ 9 Ex. 8.)

- **Richard Steiblin**, the former CFO of Syngenta AG, was also a member of Syngenta AG's Executive Committee. (*Id.* ¶ 13 Ex. 12.) While CFO of Syngenta AG, Steiblin also served as a board member of Syngenta Corporation (Delaware). (*Id.*)

- **John Ramsay** is the Group Financial Controller for Syngenta AG. (*Id.* ¶ 14 Ex. 13.) Ramsay is based at Syngenta AG's corporate headquarters in Basel, Switzerland. (*Id.* ¶¶ 12, 14 Exs. 11 & 13.) Ramsey also sits on the Board of Syngenta Seeds (MN). (*Id.* ¶ 12 Ex. 11.)

- **Graham Walker**, who is based at corporate headquarters in Basel, is the Financial Controller for Plant Science at Syngenta AG. (*Id.* ¶ 15 Ex. 14.) Walker is also listed as a "principal" of Syngenta AG's subsidiary Garst (formerly Advanta). (*Id* ¶ 16 Ex. 15.)

### 4. Other Key Syngenta AG Committees Reinforce Basel's Dominion and Control Over the U.S. Subsidiaries

Syngenta AG and Participations reinforce their exercise of control over the U.S.

subsidiaries through other committees that ultimately report to the Executive Committee.



5.  **Employees Are Regularly Transferred between Corporate Headquarters in Basel, Switzerland and Its U.S. Subsidiaries**

The extent to which "Syngenta" truly operates as one global entity controlled by the Swiss parent is further evidenced by the regular shuffling of employees that occurs among Syngenta AG, Participations and their U.S. subsidiaries.



6.    **Employees of Syngenta AG and Participations
Frequently Travel to the United States Regarding
"Syngenta's" Corn Business, Including the
Commercialization of GA21**

Officers, directors and employees of Syngenta AG and Participations travel to the

United States to review the corn commercialization activities of the subsidiaries, including

those relating to GA21.





7.  **Employees of Syngenta AG and Its U.S. Subsidiaries Regularly Utilize an Integrated Communication System To Manage "Syngenta's" Corn Business, Including the Commercialization of GA21**

Frequent communications between Syngenta AG/Participations and their U.S. subsidiaries cannot be disputed. Indeed, Syngenta AG shares an integrated email system with its U.S. subsidiaries that displays the physical location of the author and recipients within the e-mail address.



B.  **Syngenta AG and Participations' Strategy to Misappropriate GA21 for Sale in the United States**







### 1.    The Corn Business Team







When Syngenta AG's management did not fly to the United States, U.S. members of Syngenta AG's Corn Business Team often flew to corporate headquarters in Basel, Switzerland in furtherance of counter defendants' efforts to commercialize corn traits.



---



### 2.    Participations' Acquisition of Certain "Rights" In GA21 from Bayer

A significant part of the overall strategy to misappropriate Monsanto's GA21 was Participations' purchase from Bayer CropScience of the purported "right" to GA21 technology.  (*See id.* ¶ 40 Ex. 39).

### 3.    Acquisition of Garst and Golden Harvest

A second prong of Syngenta AG's strategy to misappropriate Monsanto's GA21 was to acquire Monsanto's GA21 from "Seed Companies."  Garst and Golden Harvest were two such companies, which were licensees of Roundup Ready traits containing the GA21 event.

Once Syngenta AG acquired Garst and Golden Harvest, Syngenta Seeds was improperly granted access to Monsanto's proprietary GA21 material.  (*See* Countercl. ¶¶ 49-

---

6

7

55). In this regard, it appears from the documents produced to date that Syngenta AG

expressly sanctioned the sequencing of genetic material obtained from Golden Harvest.



### 4. Participations' Application for Agrisure and Agrisure Advantage Trademarks in the United States

Participations applied to the U.S. Patent and Trademark Office for, and holds the

rights to, the Agrisure Advantage trademark. (*Id.* ¶ 47 Ex. 46.) Participations also applied

for the trademark rights to Agrisure (*Id.* ¶ 48 Ex. 47.) Counter-defendants are passing off

Monsanto's GA21 product as their own under these trademarks as "Agrisure GT." *See, e.g.,*

www.agrisuretraits.com, a website hosted in the United States through the New York-based

domain name registrar Register.com. Participations originally registered and presently owns

the site, which it created in the United States on May 3, 2005. (Rosenthal Dec. ¶ 57, Ex. 55.)

### 5. Sales of Agrisure Corn Seed in Delaware and Throughout the United States

Syngenta AG's U.S. subsidiaries are selling corn containing the Agrisure traits

throughout the Untied States, including Delaware.

### 6. Press Releases and Advertising Containing False and Misleading Statements Regarding the Ownership of GA21

- 14 -



Thus, the contents and release of the false and misleading statements alleged in the counterclaim were directed by this Swiss-U.S. team that orchestrated and implemented the strategy to misappropriate Monsanto's GA21. These subsequent external communications were carefully controlled and timed to mislead seed companies, retailers and growers to believe that the glyphosate tolerant trait marketed under the Agrisure label is actually Syngenta AG's intellectual property. For example, the website for Agrisure traits falsely states that "Syngenta acquired the exclusive rights to commercialize the GA21 event." *See* www.agrisuretraits.com. Similarly, press releases (including those issued by Syngenta AG), advertising and other communications issued apparently as part of this strategy purposely pass off GA21 as that of counter-defendants and misrepresent its true source. (Countercl. ¶¶ 52–66.)

### 7.     Filing the Antitrust Lawsuit in Delaware

Upon information and belief, Syngenta AG authorized the instant antitrust action in Delaware as part of Syngenta AG and Participations' overall strategy to misappropriate GA21. The available evidence indicates that the antitrust action is being managed and monitored by Syngenta AG and Participations.



C.    **Syngenta AG's Contract with SDI, a Delaware Corporation**

Syngenta AG, through Syngenta Seeds AG, has contracted with Strategic Diagnostics, Inc., (a Delaware corporation with its principal place of business in Newark, Delaware) to "manufacture and sell analytical tests to detect two of Syngenta's genetic traits in its seed products." (*Id.* ¶ 49 Ex. 48.) This is significant because, due to labeling requirements, SDI's test are necessary to detect the presence of GA21 antibodies prior to marketing GA21 in the United States. (*Id.* ¶ 50 Ex. 49.)

**ARGUMENT**

I.    **SYNGENTA AG AND PARTICIPATIONS' SUPPORTING DECLARATIONS ARE, AT BEST, INACCURATE AND CANNOT BE RELIED UPON**

In deciding a motion to dismiss for lack of personal jurisdiction, Monsanto bears the burden to show the basis for this Court's jurisdiction over Syngenta AG and Participations. *Intel Corp. v. Broadcom Corp.* 167 F. Supp. 2d 692, 699 (D. Del. 2001). In the absence of jurisdictional discovery or an evidentiary hearing, Monsanto need only make a *prima facie* showing that this Court may exercise personal jurisdiction over the counter-defendants. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1452 (D. Del. 1991); *Am. Bio Medica Corp. v. Peninsula Drug Analysis Co.*, No. 99-218, 1999 WL 615175, at *2 (D. Del. Aug. 3, 1999). Moreover, the Court should accept as true the allegations in the counterclaims. *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.*, 542 F. Supp. 53, 55 (D. Del. 1982). And when considering a motion to dismiss on the basis of declarations, the Court must resolve all material factual disputes in favor of the non-movants. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Wellness Publ'g v. Barefoot*, No. 03-3919, 2005 U.S. App. LEXIS 6487, at *4 (3d. Cir. Apr. 14, 2005).

In this regard, the notes from the four-day meeting between Swiss and U.S. executives of Syngenta demonstrate that the declarations submitted in support of the instant motion to dismiss do not merely contain factual disputes, but they are, at best, inaccurate.

- 16 -



These declarations also stand at odds with the numerous documents cited above demonstrating that Syngenta AG and Participation do dominate and control the activities of their U.S. subsidiaries, especially as it applies to the ongoing efforts to misappropriate Monsanto's GA21 and sell that Syngenta rebranded GA21 in Delaware and other places in the United States.

Monsanto has also obtained sworn testimony in a pending contract case between Monsanto and Syngenta in Missouri State Court captioned *Monsanto Company v. Syngenta Seeds, Inc.*, No., 04CC-001948 (Mo. Cir. Ct.), that further draws into question the facts That action involves a contractual dispute over Roundup Ready soybeans.

The discovery record in this case to date indicates that Syngenta's corn business (including GA21) is operated in the very same manner as the soybean business with direction, control and sign-off coming from Syngenta AG or Participations. Under these circumstances, the supporting declaration submitted by Syngenta AG and Participations cannot be relied upon and should be stricken.

## II.    SYNGENTA AG AND PARTICIPATIONS' CONTACTS WITH DELAWARE WARRANT THE EXERCISE OF PERSONAL JURISDICTION UNDER RULE 4(K)(1)

Determining whether Syngenta AG and Participations are subject to personal jurisdiction in Delaware under Rule 4(k)(1) requires a two-step analysis: (i) the Court must determine whether the exercise of jurisdiction is authorized by the Delaware long-arm statute, 10 Del. C. § 3104(c); and (ii) the Court must determine whether exercising jurisdiction comports with federal due process considerations of the Fourteenth Amendment to the U.S. Constitution. *Merck & Co. v. Barr Labs, Inc.*, 179 F. Supp. 2d 368, 371 (D. Del. 2002); *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 119 (D. Del. 2000). Even without any jurisdictional discovery, Monsanto has satisfied both steps in this analysis.

### A.    Syngenta AG and Participations Are Subject to Jurisdiction Under Delaware's Long-Arm Statute

The relevant provisions of Delaware's long-arm statute provide that personal jurisdiction is proper over any nonresident who, in person or through an agent:

(1)    Transacts any business or performs any character of work or service in the State;

(2)    Contracts to supply service or things in this State;

(3)    Causes tortious injury in the State by an act or omission in this State; or

(4)    Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent court of conduct in the State

- 18 -

or derives substantial revenue from services, or things used or
consumed in the State[.]

10 Del. C. § 3104(c). Delaware courts construe these provisions broadly to confer

jurisdiction to the maximum extent possible. *ICT Pharms., Inc. v. Boehringer Ingelheim*

*Pharms, Inc.*, 147 F. Supp. 2d 268, 271 (D. Del. 2001) (citing *Boone v. Oy Partek Ab*, 724

A.2d 1150, 1156-57 (Del. Super. Ct. 1997)).

> ### 1. The Acts of Syngenta AG and Participations' Agents Are Directly Relevant To the Personal Jurisdiction Inquiry Under Delaware's Long-Arm Statute

Syngenta AG and Participations attempt to dismiss a significant factor in the personal

jurisdiction analysis -- when an agency relationship is found to exist, the parent corporation is

responsible for the specific jurisdictional acts of the subsidiary. *Wesley-Jessen Corp. v.*

*Pilkington Visioncare, Inc.*, 863 F. Supp. 186, 189 (D. Del. 1993) (finding Delaware

corporation acts as agent of foreign defendant where there was overlap of officers, directors

and personnel, joint advertising, shared finances and general intercorporate structure); *Cordis*

*Corp. v. Advanced Cardiovascular Sys., Inc.*, C.A. No. 97-635, 1999 U.S. Dist. LEXIS

15527, at *17 (D. Del. Sept. 17, 1999) (finding agency relationship where parent corporation

controlled and directed the marketing campaign of record); *Sears, Roebuck & Co. v. Sears*

*PLC*, 752 F. Supp. 1223, 1224 (D. Del. 1990) (finding plaintiff sufficiently alleged defendant

"directed and controlled" its subsidiaries in their use of the name "Sears"). Thus, in applying

§ 3104(c) to counter-defendants, the Court may consider the acts of its U.S. subsidiaries to

the extent these actions were directed and controlled by Syngenta AG and Participations.

*Applied Biosystems, Inc. v. Cruachem*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

In this regard, the agency theory examines the degree of control the parent

corporation exercises over its subsidiary. *Id.* at 1463 ("[W]e may consider the acts of an

agent to the extent that these actions were directed and controlled by the principal"). "An

agency relationship may exist between corporate affiliates with close business ties." *Wesley-*

*Jessen Corp.*, 863 F. Supp. at 188 (crux of the agency theory is whether the companies at issue act as "arms of the same business group in their attempt to achieve the common goal"). *Id.* at 189. Other factors relevant to this inquiry include, among others, the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. *Id.* at 188-89. Although no one factor is dispositive, the specific combination of elements can be significant. *Id.*

In stark contrast to the declarations submitted by Syngenta AG and Participations in support of their instant motion, the available evidence demonstrates that the counter-defendants direct and control of the U.S. corn business of their U.S. subsidiaries, including the activities relating to the misappropriation of Monsanto's GA21. For example, Syngenta AG, Participations and its U.S. subsidiaries hold themselves out as a single operating firm under the "Syngenta" umbrella. Officers and employees of Syngenta AG and Participations populate key committees that direct the overall management of the U.S. subsidiaries, including Syngenta AG's Executive Committee and the Corn Business Team. Moreover, the finances of Syngenta AG and its subsidiaries appear to be run centrally out of corporate headquarters in Basel, Switzerland. A single consolidated financial statement is filed by Syngenta AG on behalf of itself and its U.S. subsidiaries. Under the direction of Syngenta AG's Executive Committee and its Corn Business Team, counter-defendants used their U.S. subsidiaries to implement the strategy to misappropriate GA21.

### 2. Syngenta AG and Participations' Direct and Indirect Conduct Satisfies the Specific Jurisdiction Provisions of §3104(c)

Subsections (c)(1)-(3) of Delaware's long-arm statute are specific jurisdiction provisions that require a concrete nexus between the defendant's alleged conduct in Delaware and the claim being asserted. *ICT Pharms*, 147 F. Supp. 2d at 271 n.4. Either directly or

indirectly through their agents, counter-defendants' contacts within the forum satisfy the requirements of the specific jurisdiction provisions of Delaware's long-arm statue.

a.    **Transacts Business and/or Contracts to Supply Services Within Delaware**

Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient to confer personal jurisdiction on the Court. *LaNuova D&B, S p A v Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). Directly and/or indirectly, Syngenta AG and Participations have engaged in a number of transactional events related to the allegations of the Counterclaim that are sufficient to establish specific jurisdiction under §§ 3104(c)(1), (2). For example:

- Syngenta AG owns and caused to be organized under the laws of Delaware its subsidiary Syngenta Corporation, which, in turn, owns and caused to be organized under the laws of Delaware a number of different entities, including Syngenta Seeds and Syngenta Biotechnology. *Friedman v. Alcatel Alsthom*, 752 A. 2d 544, 549 (Del. Ch. 1996) (the formation and operation of a Delaware subsidiary may constitute the transaction of business for purposes of the long-arm statue). Each of these entities are involved in the misappropriation of GA21.

- Syngenta AG acquired two Delaware corporations (Garst and Golden Harvest) for the purpose of carrying out its strategy to misappropriate GA21. *See NRG Barriers, Inc. v. Jelin*, No. 15013, 1996 WL 377014, at *3 (Del. Ch. July 1, 1996) (corporate acquisitions and mergers are transactions within the meaning of § 3104(c)(1)).

- Syngenta AG, Participations and their U.S. subsidiaries have caused the misappropriated GA21 to be placed into the stream of commerce for sale throughout the United States, including in the state of Delaware. *See A.V. Imports, Inc. v. Col de Fratta, S p A.*, 171 F. Supp. 2d 369 (D.N.J. 2001)

- 21 -

(applying a stream of commerce theory to find personal jurisdiction over defendant sued for trade dress infringement, unfair trade practices, and unjust enrichment); *Electro Med. Equip. Ltd. v. Hamilton Med. AG,* No. 99-579, 1999 U.S. Dist. LEXIS 18483 (E.D. Pa. Nov. 15, 1999) (defendant subject to jurisdiction based upon the stream of commerce theory in trademark infringement, unfair competition and false destination of origin under the Lanham Act based upon the marketing and sale of a medical device in the United States through its wholly-owned subsidiary).

- Syngenta AG, Participations and their U.S. subsidiaries have also caused press releases and advertising to be issued and distributed via wire services, websites and, upon information and belief, through communications to customers throughout the United States and, presumably, Delaware that falsely represented the source and origin of the GA21. *See Am. Bio Medica Corp. v. Peninsula Drug Analysis Co, Inc.,* CA No. 99-218 SLR, 1999 U.S. Dist. LEXIS 12455 (D. Del. Aug. 3, 1999) (holding that advertising combined with other contacts gives rise to specific jurisdiction under Delaware's long-arm statute); *Boone*, 724 A.2d at 1156-57 (finding jurisdiction exists under long-arm statute where defendant targeted the country as a whole for the distribution of its product, which includes Delaware).

- ██████████████████████████████████████████████████████████████████████████████████████████████████████████

These enumerated activities give rise to Monsanto's counterclaims and constitute a proper basis for exercising jurisdiction over counter-defendants.

- 22 -

### b.     Causes Tortious Injury In The State

Section 3104(c)(3) provides for jurisdiction when a nonresident or its agent has caused tortious injury in Delaware by an act or omission that occurred in this State. *Applied Biosystems*, 772 F. Supp. at 1467.   Syngenta AG and Participations, either directly or through the U.S. subsidiaries, have engaged in a variety of tortious acts as set forth in Monsanto's Counterclaims.

As a result, Syngenta AG, Participations, and their U.S. subsidiaries are misappropriating and passing off as their own GA21 in Delaware as part of its overall strategy to penetrate the entire United States market. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 107, n.11 (3d Cir. 2004) (causes of action under the Lanham Act are business torts).

Syngenta AG, Participations, and their U.S. subsidiaries have also made false representations regarding their right to market and sell GA21 and, upon information and belief, these representations were disseminated throughout the United States, including Delaware, giving rise to Monsanto's false advertising claim. *Id.*

Moreover, the filing of the instant antitrust action in Delaware, which was part of Syngenta AG's overall strategy to enter the U.S. corn market by misappropriating Monsanto's GA21, constitutes a tortious act for purposes of 10 Del. C. § 3104(c)(3). *See Mobil Oil Corp. v. Advanced Envtl. Recycling Tech., Inc.*, 833 F. Supp. 437 (D. Del. 1993). In light of these tortious activities, Syngenta AG and Participations' direct and/or indirect contacts with Delaware are more than sufficient to subject them to jurisdiction.

3.    **Syngenta AG and Participations' Direct and Indirect Conduct Satisfies The General Jurisdiction Provision of § 3104(c)**

Section 3104(c)(4) of Delaware's long-arm statute is a general jurisdiction provision and, accordingly, the tortious acts alleged are not required to have any connection to Delaware but can occur anywhere in the United States, provided that Syngenta AG and Participations, directly or through its agents, engage in persistent course of conduct in Delaware or derive substantial revenue from things used or consumed in Delaware. *Applied Biosystems*, 772 F. Supp. at 1469. In this case, the very same tortious activities that are ongoing in Delaware are also being carried out throughout the United States marketplace. In addition, Syngenta AG, Participations and their agents are also carrying out tortious activities beyond Delaware's boarders that are relevant to the jurisdictional inquiry under Section 3104(c)(4). For example, Syngenta AG and Participations had a strategy to interfere with Monsanto's contracts with Garst and Golden Harvest's contractual relationship with Monsanto prior to their acquisition by Syngenta AG. Syngenta Seeds, acting as Syngenta AG and Participations' agent, carried out the tortious interference when it entered into its contract with Advanta. (Countercl. ¶¶ 76-80.)

As to the second prong of the inquiry under Section 3104(c)(4), there is evidence of persistent conduct from which Syngenta AG and Participations derived substantial revenue. For example, Syngenta AG and Participations own Syngenta Corporation, which is located in Delaware, and indirectly own Syngenta AG's remaining U.S. subsidiaries. Through these subsidiaries, counter-defendants are selling a wide variety of products in Delaware, including corn, soy and cotton seed products, and these products include their misappropriating Agrisure GT product. *Boone*, 724 A.2d at 1160 (it is reasonable to assume that engaging in nationwide sales of a particular product implicitly implicate business activities and sales in Delaware). These activities are "continuous and substantial" and there is every reason to believe that they provide counter-defendants substantial revenue such that the exercise of general jurisdiction is warranted.

- 24 -

B.    **Exercising Jurisdiction Over Syngenta AG and**
      **Participations Under Delaware's Long-Arm Statute**
      **Comports With Federal Due Process Considerations**

Due process requires that sufficient minimum contacts exist between the defendant

and the forum state to satisfy "'traditional notions of fair play and substantial justice.'"[8]

*Applied Biosystems*, 772 F. Supp. at 1470 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 315 (1945)). The "minimum contacts" requirement of due process is satisfied when the

plaintiff's cause of action arises from the defendants' purposeful direction of activities at

residents of Delaware, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), "such that

[the defendant] should reasonably anticipate being haled into court there," giving rise to

specific jurisdiction. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286 (1980). A

defendant need not be present within the forum for the court to find the requisite purposeful

availment under the due process analysis. *Burger King*, 471 U.S. at 472. To satisfy due

process concerns as to general jurisdiction, the defendant must only have developed

"continuous and systematic" contacts with the forum state, regardless of their relation to the

litigation. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 415 (1984). Courts

should also consider the burden imposed on the defendant by having to litigate in a foreign

forum, as well as the interests of the plaintiff and the forum state. *Asahi Metal Indus. Co. v.*

*Superior Court of Cal.*, 480 U.S. 102, 114 (1987).

1.    **Counter-defendants Anticipated Being Hauled Into**
      **Court By Monsanto for Their Wrongful Conduct**

The record demonstrates that Syngenta AG and Participations foresaw that Monsanto

would "haul" them into Court regarding their misappropriation of GA21 activities in the

United States. ████████████████████████████████████████████████

---

[8] An agency theory may be applied to the due process analysis for determining whether
jurisdiction is constitutionally permissible. *See Applied Biosystems*, 772 F. Supp. at 1471-72
(noting that the agency theory may be applied to the due process analysis); *Damian Servs.*
*Corp. v. PLC Servs., Inc.*, 763 F. Supp. 369 (N.D. Ill. 1991) (holding establishing personal
jurisdiction over defendants by means of acts of agents in the forum is consistent with due
process).

Where a defendant reasonably anticipates being sued in the forum, a motion to dismiss should be denied. *Adams v. Unione Mediterranea di Sicurta*, 364 F.3d 646, 652 (5th Cir. 2004); *Padcom, Inc. v. NetMotion Wireless, Inc.*, C.A. No. 03-983, 2004 U.S. Dist. LEXIS 9658, at *20 (D. Del. May 24, 2004) (finding exercise of jurisdiction constitutional where defendant targeted business in the state and "knew that its conduct and connections with Delaware were such that they reasonably should have anticipated being brought to this forum").

### 2.  Due Process Requirements Are Satisfied Under Either a Specific or General Jurisdiction Analysis

The facts outlined above demonstrate that Syngenta AG and Participations have the requisite minimum contacts with Delaware to establish personal jurisdiction. The strategy to misappropriate GA21 was directed at the U.S. corn industry as whole, which necessarily includes Delaware. Either directly or indirectly through their U.S. subsidiaries, Syngenta AG and Participations placed the misappropriating products into the stream of commerce and knew that they would likely be sued for doing so, thereby satisfying all the necessary requirements for the exercise of jurisdiction. *See, e.g., Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 355 (D. Del. 1999) (finding due process satisfied where defendant purposefully initiated contacts with Delaware); *Electro Med. Equip.*, 1999 U.S. Dist. LEXIS 18483 (by using its wholly-owned subsidiary to place its products in the stream of commerce, defendant rendered itself amendable to suit). Thus, the exercise of either specific or general jurisdiction is constitutionally permissible.

### 3.     The Remaining Due Process Consideration Weighs
### In Favor of Exercising Personal Jurisdiction

A final factor in the constitutional inquiry is the extent of the burden imposed on the

parties in being required to litigate in the forum state. *Asahi* Metal, 480 U.S. at 114.

Syngenta AG and Participations bear the burden of presenting a compelling case that

jurisdiction is unreasonable. *See Miller Yacht Sales*, 384 F.3d at 100 (requiring defendants to

come forward with compelling evidence to show why it would be unfair or unjust to litigate

in the forum). Based on the facts demonstrated above, they cannot successfully do so.

Because employees of Syngenta AG and Participations regularly visit the United States, it

cannot be contended that litigation in the United States, and in particular Delaware, would be

inconvenient, particularly when their subsidiaries filed the instant action here as part of their

overall strategy to misappropriate Monsanto's GA21. *See, e.g*, *Grand Entm't Group Ltd. v.*

*Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1992) (finding no unreasonableness in

defending suit in Pennsylvania where Spanish defendant regularly conducts business in the

United States and actively carried on substantial activities).

### III.     ALTERNATIVELY, SYNGENTA AG AND
### PARTICIPATIONS' NATIONWIDE CONTACTS WARRANT
### THE EXERCISE OF JURISDICTION UNDER RULE 4(K)(2)

When a foreign defendant does not have sufficient minimum contacts with any single

forum to comport with due process, Rule 4(k)(2) allows an alternate basis for jurisdiction to

pursue a claim arising under federal law where the defendant has sufficient nationwide

contacts:

> If the exercise of jurisdiction is consistent with the Constitution and laws of
> the United States, serving a summons or filing a waiver of service of process
> is also effective, with respect to claims arising under federal law, to establish
> personal jurisdiction over the person of any defendant who is not subject to
> the jurisdiction of the courts of general jurisdiction of any state.

- 27 -

Rule (4)(k)(2).[9]  In this regard, Rule 4(k)(2) was enacted to fill a specific gap in federal law presented when a foreign defendant may have significant aggregate contacts with the United Sates, but has insufficient contacts with any single state to support jurisdiction under state long-arm statutes.  *See BP Chems., Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258 (3d Cir. 2000).

        To apply Rule 4(k)(2), Monsanto must establish that: (i) its claim arises under federal law; (ii) Syngenta AG and Participations lack sufficient contacts with any state to subject it to personal jurisdiction; and (3) Syngenta AG and Participations have sufficient contacts with the United Stats as a whole to satisfy due process.  *Id.* at 258-59; *Telcordia*, 2005 U.S. Dist. LEXIS 10194, at *4.  To the extent the Court finds that there is not sufficient evidence to establish that the counter-defendants are subject to personal jurisdiction in Delaware and the Court is inclined to permit jurisdictional discovery on that very issue, then Monsanto has satisfied each of the elements required to find personal jurisdiction under Rule 4(k)(2).

### A.    Monsanto's Counterclaims Arise Under The Lanham Act, 15 U.S.C. § 1125

        Monsanto's Counterclaims allege Syngenta AG, Participations and their U.S. subsidiaries "obtained corn containing Monsanto's branded GA21 product, stripped off or failed to display Monsanto's trademarks and instead placed their own trademark(s) on such product, and marketed and sold the same without indicating that the true source of the GA21

---

[9] Syngenta AG and Participations may attempt to argue that Monsanto is precluded from pleading Rule 4(k)(1) and Rule 4(k)(2) in the alternative, relying upon *United States v. Swiss Am. Bank*, 191 F.3d 30, 41 (1st Cir. 1999) (plaintiffs must certify that defendant is not subject to the jurisdiction of any state); and *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d at 72 (same).  These cases, however, do not preclude Monsanto from pleading in the alternative. To the contrary, numerous federal court decisions, including those within the Third Circuit, analyze the existence of personal jurisdiction over a foreign defendant under these alternative provisions.  *See, e.g., Telcordia Techs., Inc. v. Alcatel S.A.*, No. 04-874, 2005 U.S. Dist. LEXIS 10194 (D. Del. May 27, 2005) (considering Rule 4(k)(2) in the alternative to Rule 4(k)(1)); *Smith v. S&S Dundalk Eng'g Works, Ltd.*, 139 F. Supp. 2d 610 (D.N.J. 2001) (same); *Sunshine Distrib., Inc. v. Sports Auth. Mich., Inc.*, 157 F. Supp. 2d 779 (E.D. Mich. 2001) (applying Rule 4(k)(2) *sua sponte*, reasoning the court is entitled to apply the right body of law whether named by the parties or not).

event is Monsanto" in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  (D.I. 77 -

Countercl. ¶ 66, Count I.)  Monsanto further alleged that Syngenta AG and its U.S.

subsidiaries "have made several statements of material fact in commercial advertising about

the nature of the glyphosate-tolerant corn seed products and the glyphosate-tolerant genetic

trait they are marketing and selling" that were either expressly or impliedly false in violation

of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  (*Id.* ¶¶ 73-74, Count III.)  Because these

Counterclaims arise under federal law – the Lanham Act – the first requirement of Rule

4(k)(2) is satisfied.  *See Sunshine Distrib* , 157 F. Supp. 2d 779 (finding Rule 4(k)(2)

jurisdiction where claims arise under the Lanham Act); *Minebea Co  v  Papst*, 13 F. Supp. 2d

35, 42 n.6 (D.D.C. 1998) (allowing personal jurisdiction via aggregation under Rule 4(k)(2)

for Lanham Act claims); *see also Telcordia*, 2005 U.S. Dist. LEXIS 10194, at *14 (finding

claims of patent infringement arise under federal law and satisfy the first prong of Rule

4(k)(2) requirements).[10]

### B.    Counter-defendants Are Not Subject To The General Jurisdiction Of Any State

The second element of Rule 4(k)(2) requires that Syngenta AG and Participations not

be subject to the general jurisdiction of any State.  To satisfy this requirement, plaintiffs must

"'make an affirmative representation that the defendant is not subject to the *general*

jurisdiction of any state court.'"  *Smith*, 139 F. Supp. 2d at 622 (quoting *CFMT Inc  v  Steag*

*Microtech, Inc* , No. 95-442, 1997 U.S. Dist. LEXIS 7905, at *24 (D. Del. Jan. 9, 1997)

(emphasis added).[11]

---

[10] Moreover, if this Court has personal jurisdiction over Syngenta AG and Participations for
Counterclaims I and III, 28 U.S.C. § 1367(a) confers supplemental personal jurisdiction in
regards to the remaining state law counterclaims.  *Silent Drive, Inc  v  Strong Indus , Inc* ,
326 F.3d 1194, 1206 (Fed. Cir. 2003); *see also Banjo Buddies, Inc  v  Renosky*, 399 F.3d 168,
173 (3d Cir. 2005) (noting the Court may exercise supplemental jurisdiction over state law
claims pursuant to 28 U.S. C. § 1367).

[11] To be subject to general jurisdiction of a State, Syngenta AG and Participations must have
"continuous and systematic contacts" with the forum.  *Gen  Elec  Co  v  Deutz AG*, 270 F.3d
144, 150 (3d Cir. 2001) (citing *Helicopteros*, 466 U.S. at 414-16))  Thus, whether counter-

Although "this burden can be satisfied by demonstrating that the defendant has 'insufficient contact with any single state to support [general] jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction,'" *CMFT*, 1997 U.S. Dist. LEXIS 7905, at \*24 (citing Fed. R. Civ. P. 4(k)(2)), courts have held that it is unnecessary for plaintiffs "to traipse through the [fifty] states, asking whether each could entertain the suit." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001); *see also Adams*, 364 F.3d at 651 ("a piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary"). Indeed, "so long as a defendant does not concede to jurisdiction in another state, a court may use [Rule] 4(k)(2) to confer jurisdiction." *Adams*, 364 F.3d at 651.

In their Opening Brief, counter-defendants vigorously contend that they are not subject to specific or general jurisdiction in Delaware.[12]  Should the Court find that the record is not sufficient to establish personal jurisdiction over the defendants under Delaware's long-arm statute and the Court is not inclined to permit jurisdictional discovery on that point, then Monsanto has been unable to obtain evidence through review of the current discovery record and from publicly available sources that would demonstrate that Syngenta AG and/or Participations are subject to personal jurisdiction in any state. (*See* Rosenthal Dec. ¶¶ 51–53.)  Although there is overwhelming evidence that Syngenta AG had contacts with the United States in the aggregate, there is nothing in the record to suggest that Syngenta AG has had "continuous and systematic contacts" with any other one State to comport with due process requirements for the exercise of general jurisdiction. Accordingly, in the absence of any assertion by counter-defendants to the contrary (*i.e.*, that they are subject to personal jurisdiction in a State other than Delaware), Monsanto has satisfied this

---

defendants are subject to the specific jurisdiction in any State has no bearing as to whether Rule 4(k)(2) may be applied.

[12] Despite repeated requests from Monsanto, however, Syngenta AG and Participations refuse to state whether they are subject to jurisdiction in any other State, thus, requiring the Court and Monsanto to engage in a jurisdictional shell game. (Rosenthal Dec. ¶59.)

element for the establishment of jurisdiction under Rule 4(k)(2). *See, e.g.*, *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 599 (E.D.Va. 2003) (finding no personal jurisdiction in any district on the record where "plaintiffs have no access to evidence that might provide more detail on [defendant's] possible contacts with other states"); *ISI Int'l*, 256 F.3d at 551-52 (concluding jurisdiction under Rule 4(k)(2) proper where defendant proved unwilling to agree that it is subject to personal jurisdiction in some other state).

### C.    Syngenta AG Has Extensive Contacts With The United States Warranting The Exercise Of Jurisdiction

To comport with due process concerns, Rule 4(k)(2) requires the same minimum contacts due process analysis as that conducted under state long-arm statute analysis, with the significant difference that the relevant forum is the United States as a whole rather than one individual state. *Saudi v. Acomarit Maritimes Servs., S.A.*, No. 03-1609, 2004 U.S. App. LEXIS 19443, at *16 (3d Cir. Sept. 17, 2004), *cert. denied*, 125 S. Ct. 1850 (2005); *Graduate Mgmt.*, 241 F. Supp. 2d at 597. [13]  A foreign defendant must have "certain minimum contacts with [the United States] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe*, 326 U.S. at 316 (citation omitted).  Such contacts can give rise to either specific or general jurisdiction. *Helicopteros*, 466 U.S. at 414.  Taken as a whole, the record available to date establishes the requisite minimum contacts in the United States by Syngenta AG and Participations, either directly or indirectly, as it relates to the allegations in Monsanto's Counterclaims:



---

[13] The due process required in cases governed by Rule 4(k)(2) is measured with reference to the Fifth Amendment rather than the Fourteenth Amendment. *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338 (5th Cir. 2002).



- Syngenta AG is listed on the New York Stock Exchange, where a majority of its shares are traded, and it regularly submits filings to the U.S. Securities and Exchange Commission and engages in a wide variety of other activities in the United States relating to the trade of its stock.

- Participations applied to the U.S. Patent and Trademark Office for, and holds the trademark to, the Agrisure Advantage trademark. Participations also applied for the trademark rights to Agrisure, the trademark under which counter-defendants are passing off Monsanto's GA21 as their own.

- Syngenta AG's U.S. subsidiaries are selling the Agrisure traits throughout the United States under its NK brand and through Garst and Golden Harvest.

These activities, which are "systematic and continuous," demonstrate that Syngenta AG and Participations, either directly or indirectly through their U.S. subsidiaries, regularly seek the benefits of the U.S. market in relation to their seeds and traits business, rendering the exercise of either specific or general jurisdiction constitutionally permissible. *Graduate Mgmt.*, 241 F. Supp. 2d at 598 (finding the exercise of personal jurisdiction constitutional where the record clearly indicates defendant directed his activity at the U.S. market and specifically targeted U.S. customers); *see also In re Perrier Bottled Water Litig.*, 754 F. Supp. 264, 268 (D. Conn. 1990) (finding personal jurisdiction where defendant knew it might be sued in the United States because its product was sold throughout the United Sates, had designed its product for the U.S. market, and had registered its trademarks in the United States).

Moreover, as discussed previously, Syngenta AG and Participations foresaw that Monsanto might assert claims related to their GA21 activities in the United States. *Adams*, 364 F.3d at 652 (a motion to dismiss for lack of personal jurisdiction should be denied where it is foreseeable that suit in the United States would result from defendant's business contacts). And exercising jurisdiction in this case would not be unreasonable or inconvenient, particularly given Syngenta AG and Participations' overwhelming contacts with the United States. *See, e.g.*, *Grand Entm't Group*, 988 F.2d at 483 (finding no unreasonableness in defending suit in Pennsylvania where Spanish defendant regularly conducts business in the United States and actively carried on substantial activities). Thus, the exercise of jurisdiction pursuant to Rule 4(k)(2) comports with due process.

IV.    **JURISDICTIONAL DISCOVERY IS APPROPRIATE TO RESOLVE ANY REMAINING QUESTIONS REGARDING THE EXERCISE OF PERSONAL JURISDICTION OVER SYNGENTA AG AND PARTICIPATIONS**

A.    **Monsanto Has Satisfied Its Threshold Burden To Sustain Jurisdictional Discovery**

To the extent the Court has any question regarding the exercise of personal jurisdiction over the counter-defendants, this Court should exercise its discretion to assist Monsanto by allowing the jurisdictional discovery sought before ruling on the instant motion. *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995). ("resolution of this motion [to dismiss] begins with the presumption in favor of allowing discovery to establish personal jurisdiction"). Jurisdictional discovery is appropriate because "the plaintiff may be unable to ascertain the extent of the defendant's contacts with the forum state, particularly when that defendant is a corporation, unless some discovery is permitted." *Hansen*, 163 F.R.D. at 473-74.

With documents produced in response to other requests in this action and those available from public sources, Monsanto has set forth facts with "reasonable particularly" illustrating that Syngenta AG and Participations have either directly, or indirectly through

- 33 -

their agents, orchestrated and implemented a strategy to misappropriate Monsanto's GA21

and pass off the misappropriated GA21 as their own. In doing so, counter-defendants have

engaged in a wide variety of conduct that gives rise to personal jurisdiction in Delaware

under Rule 4(k)(1) or, alternatively, the United States under Rule 4(k)(2). *See supra* Section

II and III. Since [Monsanto] presents "factual allegations that suggest 'with reasonable

particularity' the possible existence of the requisite 'contacts between [the parties] and the

forum state,' [Monsanto's request] to conduct jurisdictional discovery should be sustained."

*Toys "R" Us*, 318 F.3d at 456 (District Court erred by denying plaintiff's reasonable request

for jurisdictional discovery); *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics

Corp*, 395 F.3d 1315, 1324 (Fed. Cir. 2005) (District Court abused its discretion in denying

plaintiff's request for jurisdictional discovery).

## B.    Monsanto Should Be Permitted Discovery to Probe The Unsupported And Factually Questionable Declarations of Syngenta AG and Participations

In support of the Motion to Dismiss, Syngenta AG and Participations have filed

broad and unsupported declarations in which Syngenta AG and Participations deny having

any contacts with Delaware or that they control their U.S. subsidiaries. ▮▮▮▮▮▮ As

noted above, the discovery record to date in this case and that obtained in other ongoing

litigation between the parties demonstrated suggests that the declarations submitted by

Syngenta AG and Participations are, at best, factually incorrect. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is only fair that Monsanto be permitted discovery to probe the basis of these

declarations. (D.I. 181 (transcript of December 13, 2005 Discovery Status Conference) at 19:

"The Court: Let's start with jurisdictional discovery. If you file an affidavit in connection with the motion [to dismiss], you have to allow discovery").

### C.    Jurisdictional Discovery Should Proceed Under The Federal Rules Of Civil Procedure

Should the Court permit Monsanto to conduct jurisdictional discovery, it is anticipated that Syngenta AG and Participations will object to such discovery proceeding under the Federal Rules as opposed to the Hague Convention. In *Societe Nationale Industrielle Aerospatiale v. United States*, 482 U.S. 522 (1987), the Supreme Court rejected a rule of first-resort to the Hague Convention for discovery and held that a trial court should consider "the particular facts, sovereign interests, and likelihood that resort to the [Hague Convention's] procedures will prove effective" in determining whether to proceed under Hague or the Federal Rules. *Id.* at 544.

In so holding, the Supreme Court promulgated a three-prong test for determining whether to proceed with discovery under Hague or the Federal Rules: the court should consider "the particular facts, sovereign interests, and likelihood that resort to [Convention] procedures will prove effective." *Id.* This analysis is to be applied even to cases involving jurisdictional discovery. *In re Automotive Refinishing Paint Antitrust Litig*, 358 F.3d 288, 302 (3d Cir. 2004). While the burden rests with Syngenta AG and Participations to prove that the Convention procedures should govern in the first instance, *id.* at 305, it is apparent that application of the *Aerospatiale* test dictates that the Federal Rules should govern any jurisdictional discovery permitted here.

The first factor to be considered under the *Aerospatiale* test is the facts of the particular case and whether the discovery requests are narrowly tailored, material to the issues in question, and as unintrusive as possible under the circumstances. *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 52 (D.D.C. 2000). Monsanto's proposed discovery requests are narrowly tailored to the issue of personal jurisdiction and are thus highly relevant and not intrusive. █████████████████████ Whereas these requests are highly

relevant and crucial to the resolution of the jurisdictional questions pending before the Court, any argument that the burdens imposed by Monsanto's discovery requests necessitates the use of the Convention procedures should be rejected. *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d at 53.

Second, the Court must consider the sovereign interests at stake. *Aerospatiale*, 482 U.S. at 544. Although Switzerland may have an interest in proceeding with discovery according to the Hague Convention procedure in protecting counter-defendants as Swiss corporate entities, the United States also has an "overriding interest" in promoting the prompt and efficient resolution of litigation in its courts. *Id.* at 543; *In re Vitamins*, 120 F. Supp. 2d at 54. Monsanto has, at a minimum, alleged a *prima facie* basis for jurisdiction. *See* discussion *supra* Sections I, II. Moreover, because the conduct alleged gives rise to violations of U.S. federal law, the United States' interest in adjudicating Monsanto's claims cannot be understated. And because Syngenta AG and Participations have both purposefully availed themselves of the benefits of engaging in commerce in the United States, the Court should find that Switzerland's interest will not be unduly hampered by proceeding with jurisdictional discovery according to the Federal Rules. *Aerospatiale*, 482 U.S. at 544 n.28.

Third, the Court must determine whether resort to Convention procedures would likely prove effective. *Aerospatiale*, 482 U.S. at 544. The relevant inquiry under this prong is "whether proceeding with jurisdictional discovery under Hague would allow [Monsanto] to obtain the necessary testimony, documents, and written answers called for by [its] revised discovery requests in a timely and effective manner." *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d at 54. Courts that have addressed the issue, including at least one court in this Circuit, have recognized that Swiss discovery procedures are largely ineffective in obtaining discovery. *See In re Vitamins Antitrust Litig.*, Misc. No. 99-197, MDL No. 1285, 2000 U.S. Dist. LEXIS 20976, at *74 (D.D.C. Aug. 15, 2000) (holding plaintiffs' jurisdictional discovery requests would not likely survive Swiss discovery limitations); *Triple Crown Am., Inc. v. Biosynth AG*, No. 96-7476, 1998 U.S. Dist. LEXIS 6117, at *9-*12, (E.D. Pa. Apr. 29,

1998) (allowing plaintiffs to depose Swiss defendant's employees in the U.S. in merits

discovery because Swiss deposition procedures are ineffective).[14]

### V.    *DARSTAR* DOES NOT PRECLUDE MONSANTO'S COUNTERCLAIMS

Syngenta AG and Participations seek to dismiss Counts I-III of Monsanto's

Counterclaims for failure to state a claim, adopting the arguments asserted by Syngenta Seeds

and its U.S. affiliates in their Rule 12(b)(6) motion to dismiss, which was filed with the Court

on September 14, 2005. (D.I. 132).[15] For the same reasons set forth in Monsanto's

Answering Brief in Opposition, the instant motion to dismiss should be denied as Monsanto

has sufficiently plead facts to support its counterclaims for reverse passing off under the

---

[14] For instance, in *In re Vitamin Antitrust Litigation*, 2000 U.S. Dist. LEXIS 20976, the Special Master held that discovery proceed under the Federal Rules after considering expert testimony regarding the procedures available to obtain discovery in Switzerland under the Hague Convention. Indeed, even after narrowing the discovery requests at issue, the Special Master held:

> [I]t is not likely that the Letter of Request procedures would be effective in securing in Switzerland the discovery recommended for approval from [defendants]. Provided proceedings are in the language of the Canton, plaintiffs may obtain the deposition testimony they seek, but only subject to the assertion of privileges of uncertain scope and an inability to ask witnesses what documents were in their possession and control. Document production will be limited by requirements for specificity and hostility to pretrial discovery. Plaintiffs cannot expect all the requests recommended for approval would survive these limitations.

*Id.* at *73. In approving the Special Master's Report and Recommendation as to that issue, the Court held these conclusions "*accurate and that Hague would be extremely unlikely to provide efficient and effective discovery.*" 120 F. Supp. 2d at 54 (emphasis added). No changes have transpired in Swiss law or its application of the Hague Convention that would alter this conclusion.

[15] Although Syngenta AG and Participations argue that the conduct alleged in Count IV is not attributable to them, *see supra* Part V, this argument is seemingly waived as to Counts I-III because in adopting Syngenta Seeds' motion to dismiss arguments, Syngenta AG and Participations fail to provide any additional basis upon which a dismissal for failure to state a claim is warranted.

Lanham Act (Count I), unfair trade practices in violation of the Delaware Deceptive Trade Practices Act (Count II), and false advertising under the Lanham Act (Count III).[16]

### VI.    MONSANTO'S TORTIOUS INTERFERENCE COUNTERCLAIM STATES A CLAIM AGAINST SYNGENTA AG AND PARTICIPATIONS

In considering a Rule 12(b)(6) motion, the Court must construe the complaint favorably to the plaintiff and accept the complaint's well-pleaded allegations as true. *Oran v. Stafford*, 226 F.3d 275, 279 (3d Cir. 2000); *DeWitt v. Penn-Del Directory Corp.*, 872 F. Supp. 126, 128 (D. Del. 1994). A court should not grant a Rule 12(b)(6) motion for failure to state a claim unless "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the [plaintiff's] allegations.'" *DeWitt*, 872 F. Supp. at 129 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Indeed, the plaintiff must be "given the benefit of every favorable inference that can be drawn from those allegations." *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991).

Rule 8 is clear that all Monsanto was required to do was provide "a short and plain statement of [its] claim showing that [it] is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Remick v. Manfredy*, 238 F.3d 248, 263 (3d Cir. 2001) (reversing dismissal where district court imposed a pleading requirement beyond that required by Rule 8). In this regard, the requisite elements of a tortious interference claim under Delaware law are: "(1) the existence of a valid business relation or expectancy, (2) the interferer's knowledge of the relationship or expectancy, (3) intentional interference that (4) induces or causes a breach or termination of the relationship or expectancy and that (5) causes resulting damages to the party whose relationship or expectancy is disrupted." *In re Frederick's of Hollywood, Inc. Shareholders Litig.*, No. 15944, 1998 Del. Ch. LEXIS 111, at *17 (July 9, 1998). Monsanto has satisfied each of these elements in alleging in Count IV of the Counterclaim that counter-defendants

---

16 █████████████████████████████████████████████

tortiously interfered with Monsanto's 1988 Roundup Ready Corn License and Seed Agreement with Garst, which precluded Garst from transferring the GA21 event to any third party (D.I. 77 - Countercl. ¶¶ 26-31) by the entry into a May 10, 2004 contract with Garst's then parent, Advanta, pursuant to which Syngenta obtained inbred corn lines containing Monsanto's GA21 event. (*Id.* ¶ 51.)

That Syngenta AG and Participations are not parties to the contract with Garst's then parent is of no consequence. ███████████████████████████████████

███ As such, the counter-defendants can be held liable for the acts of their agents. *See, e.g., Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1474 (3d Cir. 1988) (a parent corporation may be held liable for the activities of its subsidiary if liability is appropriate under general agency principals); *In re Am. Biomaterials Corp.*, 954 F.2d 919, 924 (3d Cir. 1992) (principals are liable when their agents act with apparent authority and commit torts under general rules of agency law). Moreover, there is no requirement that Syngenta AG or Participations be actual parties to the Advanta contract in order to be liable for tortious interference, and counter-defendants do not cite to any case law suggesting otherwise. And whether Syngenta AG and/or Participations facilitated, orchestrated or actually committed the tortious acts alleged in Count IV of Monsanto's Counterclaims is an issue of fact that cannot be resolved in a motion to dismiss. *See Citibank N.A. v. Nat'l Bancshares, Inc.*, No. 13810, 1994 Del. Ch. LEXIS 208, at *5 (Dec. 12, 1994) (denying motion to dismiss tortious interference claim where defendant's argument raised a factual issue in dispute).

Similarly, the argument that dismissal is warranted because Monsanto erroneously lumped together separate counter-defendants as "Syngenta" is wholly without merit, and the cases upon which Syngenta AG principally relies fail to support this assertion. For example, in *Kounelis v. Sherrer*, No. 04-4717, 2005 WL 2175442 (D.N.J. Sept. 6, 2005), multiple defendants moved to dismiss for failure to state a claim, arguing they had no personal involvement in the incident giving rise to the dispute. The Court denied the motion,

reasoning that whether the defendants had no personal involvement in the incident is irrelevant when examining the sufficiency of the complaint itself. Indeed, having acknowledged the complaint must "'clearly specify the claims with which each individual defendant is charged,'" *id* at *3 (citation omitted), the court found that the complaint gave defendants "fair notice of what Plaintiff's claims are and the grounds upon which they rest." *Id.* at *5. Similarly, Syngenta AG has fair notice of Monsanto's counterclaim and the grounds upon which it rests. Whether Syngenta AG and Participations should be held liable for tortious interference is irrelevant to the Court's inquiry on the sufficiency of the claim. *Id.*[17]

## CONCLUSION

For the foregoing reasons, Syngenta AG's motion to dismiss for lack of personal jurisdiction should be denied. Alternatively, Monsanto should be permitted to conduct jurisdictional discovery to the extent the Court finds there is not sufficient evidence to exercise personal jurisdiction under the Federal Rules. Finally, Syngenta AG's motion to dismiss for failure to state a claim should be denied.

---

[17] The additional cases upon which Counterclaim-defendants rely are also factually distinguishable from the facts of this case. *See Pietrangelo v. Nui Corp*, No. 04-3223, 2005 WL 1703200 (D.N.J. July 20, 2005) (50-page complaint which asserted only general allegations against Defendants collectively provided inadequate notice); *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383 (10th Cir. 1980) (complaint containing tying allegations filed against twenty-eight defendants found inadequate where it merely recited relevant antitrust laws and failed to identify the tied products or the tying products).

Respectfully Submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON, LLP

Peter E. Moll
John J. Rosenthal
Scott Flick
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004
(202) 783-0800
(202) 383-6610 facsimile

By:   */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 N. Market St.
      Wilmington, DE 19801
      (302) 984-6000
      (302) 658-1192 facsimile
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Attorney for MONSANTO COMPANY AND
MONSANTO TECHNOLOGY LLC

Dated:  December 30, 2005
Public Version Dated:  January 9, 2006

714025

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 9, 2006, the attached document

was hand-delivered to the following persons and was electronically filed with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801


I hereby certify that on January 9, 2006, I have emailed the foregoing

document(s) to the following non-registered participants:

Heather Lamberg Kafele
Shearman & Sterling LLP
801 Pennsylvania Ave., NW
Suite 900
Washington, DC 20004-2634

Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069


/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

713190v2