such information. In either event the order shall be entered as an award at the request of either PARTY and shall enable either PARTY to obtain the assistance of a court of competent jurisdiction to issue equitable orders to enforce or modify the provisions of the protective order as if the order had been issued by the court.

v.    Within forty-five (45) days after receipt of the ARBITRATION NOTICE, RESPONDENT shall send to the CLAIMANT and the ARBITRATION PANEL (if agreed upon at that time), by overnight courier service, a written statement of RESPONDENT'S position on the subject matter of the ARBITRATION.

vi.    The ARBITRATION PANEL shall convene a final hearing for the purpose of rendering its decision on or before the 120th day following the receipt of the ARBITRATION NOTICE by the RESPONDENT or the close of permitted discovery, whichever date is later. The PARTIES may make supplemental written submissions to the ARBITRATION PANEL in advance of the final hearing on a schedule set by the ARBITRATION PANEL. The hearing shall be attended by the ARBITRATION PANEL and by representatives of both CLAIMANT and RESPONDENT. One person only shall be chosen by each of the CLAIMANT and RESPONDENT to speak for it at the hearing. Each of the CLAIMANT and RESPONDENT shall have up to three (3) hours in which to make an oral presentation to the ARBITRATOR. CLAIMANT shall make its presentation first and may reserve a portion of its three (3) hours for the purpose of a rebuttal following RESPONDENT'S presentation. After the oral presentations by CLAIMANT and RESPONDENT, the PARTIES shall respond to questions from the ARBITRATION PANEL at the hearing and shall continue to make themselves available for that purpose after the ARBITRATION PANEL has retired for the purpose of deliberation. The ARBITRATION PANEL may, at its discretion, hear up to four (4) days of live testimony. The decision of the ARBITRATION PANEL shall be made in writing no later than thirty (30) days following the hearing and shall be immediately transmitted to both CLAIMANT and RESPONDENT by facsimile or other means of electronic data transmission and confirmed by overnight courier service.

vii.    If RESPONDENT fails to submit the written statement referred to in Paragraph v. hereinabove within the time period required hereby, or either CLAIMANT or RESPONDENT fails to appear at the hearing referred to in Paragraph vi, the ARBITRATION PANEL shall nevertheless proceed with the ARBITRATION on the basis of the material submitted by the CLAIMANT and the oral presentation by the PARTY attending the hearing.

viii.    The ARBITRATION PANEL shall only consider the pertinent evidence presented by the PARTIES. Only the written statement and evidence submitted to the ARBITRATION PANEL pursuant to Paragraphs i. and v. and oral presentations made or supplemental written statements (based on information obtained from permitted discovery) submitted before and at the hearing pursuant to Paragraph vi shall be considered by the ARBITRATION PANEL in making its decision. The ARBITRATION PANEL shall determine the authenticity, materiality and relevance of any such evidence proffered and the weight to be accorded thereto.

21/34

                                          SYN094356

ix.   The ARBITRATION PANEL may not permit any party to submit additional written material relating to subject matter of the arbitration other than the written submissions pursuant to paragraphs i., v., vi., and viii. hereof without the consent of both Claimant and Respondent.

x.   The ARBITRATION PANEL shall issue a detailed reasoned written decision with respect to the determination of the controversy unless the PARTIES agree otherwise on some different format for the ARBITRATION PANEL'S decision. The determination of the ARBITRATION PANEL shall be final and binding upon the PARTIES and judgment thereon may be entered in any court having jurisdiction thereof; provided however that, either PARTY shall have the right within ten (10) days to file with the ARBITRATION PANEL a motion to reconsider, and the ARBITRATION PANEL shall reconsider the issues raised by the motion with twenty-one (21) days of receipt of all papers pertaining thereto and either confirm or change its decision, which shall then be final and conclusive upon both PARTIES. The costs of such a motion for reconsideration and written opinion of the ARBITRATION PANEL shall be borne by the moving PARTY.

xi.   Save otherwise decided by the ARBITRATION PANEL, the losing PARTY in the arbitration shall bear all expenses and costs of the arbitration but not the costs incurred by the prevailing PARTY in connection with the preparation for and the presentation of its case. If the ARBITRATION PANEL's decision is such that each PARTY is successful on individual aspects in controversy, the PARTIES may request the ARBITRATION PANEL to make a partial award of these expenses of the arbitration following the ARBITRATION PANEL's decision on the merits

## ARTICLE 13.  MISCELLANEOUS

13.1   All notices in connection with this AGREEMENT shall be given by notice in writing hand delivered or sent by courier service or by facsimile transmission. All such notices shall be sent to the telecopier number or address (as the case may be) specified hereafter, or to such other number or address the parties may have last specified by notice to the other party sent as aforesaid. All such notices shall be effective upon receipt.

Notices to the SELLER :   BAYER CROPSCIENCE S.A.
Attn   Head of Technology Management BioScience
Address   16 Rue Jean-Marie Leclair
69009 Lyon, FRANCE
Telecopier nr 00.33.472.85.49.01

22/34

Notices to the PURCHASER :    SYNGENTA PARTICIPATIONS AG
    Attn        General Counsel
    Address    215, Schwarzwaldallee
               4058 Basel, SWITZERLAND
    Telecopier nr 00 41 61 323 6433

With a copy to:     SYNGENTA INTERNATIONAL AG
    Attn        Mr. Adrian Dubock
    Address    215, Schwarzwaldallee,
               4058 Basel, SWITZERLAND
    Telecopier nr 00 41 61 323 5568

13.2    The PURCHASER may not, directly or indirectly, assign or transfer this AGREEMENT or any right, obligation or interest herein in whole or in part except to AFFILIATES without the prior written consent of the SELLER, and except that the AGREEMENT and the rights, obligations and interests may be transferred to a purchaser, assignee or transferee of all or substantially all of PURCHASER's business to which this AGREEMENT pertains, whether by sale, merger, demerger, consolidation or otherwise provided the assignee or transferee expressly assumes and undertakes to perform in writing all terms, conditions and obligations of this AGREEMENT .

13.3    Any provision of this AGREEMENT which is prohibited or unenforceable in any jurisdiction, shall be ineffective to the extent of such prohibition or unenforceability without affecting, impairing or invalidating the remaining provisions hereof or the enforceability thereof.  The invalid provision shall be deemed to be replaced by a provision which achieves the original intent of the PARTIES to the fullest extent possible.

13.4    No failure or delay on the part of any of the PARTIES in exercising in whole or in part any right under this AGREEMENT shall operate as a waiver of, or impair, any such right, the further exercise thereof or the exercise of any other right. No waiver shall be effective unless given in writing

13.5    This AGREEMENT may be amended only by an instrument in writing executed by duly authorized representatives of the PARTIES

13.6    The Exhibits to this AGREEMENT, and any other document attached to this AGREEMENT and referred to herein are an integral part of this AGREEMENT. The PARTIES acknowledge that the Exhibits attached to this AGREEMENT on the EFFECTIVE DATE are in draft form and agree to finalize the Exhibits in good faith on or before the CLOSING DATE.

13.7    This AGREEMENT together with the agreements referred to in the AGREEMENT contains the entire agreement of the PARTIES relating to the subject matter hereof and supersedes all oral statements and prior writings with respect thereto.

13.8    Each PARTY shall bear its own cost and expenses including but not limited to all legal, accounting and other fees.

13.9    The PARTIES each acknowledge that they have read this AGREEMENT and understand all of their terms, and that these documents are being executed voluntarily, without duress, and with full knowledge of their legal significance. The

23/34

PARTIES each acknowledge that they have received independent legal advice from their respective attorneys with respect to the legal consequences of entering into these agreements.

13.10   The PARTIES agree that in the event of any dispute concerning the interpretation or construction of this AGREEMENT, no presumption shall exist with respect to the PARTY initially drafting this AGREEMENT. The PARTIES each agree they have had ample opportunity to influence the choice of language and terms in this AGREEMENT.

13.11   This AGREEMENT may be executed in multiple counterparts, each of which shall be considered and shall have the force and effect of an original and all of which together shall constitute one and the same document. Except to the extent not permitted by law, copies of executed counterparts of AGREEMENT transmitted by telecopy, telefax or other electronic transmission service shall be considered original executed counterparts of this Article 13.11, provided receipt of copies of such counterparts is confirmed and, provided further, that the PARTIES covenant to deliver to the other originally executed copies of such PARTY'S counterparts no later than ten (10) business days following the Effective Date.

13.12   This AGREEMENT shall enter into force on the CLOSING DATE and, shall as regards the licenses granted hereunder in Article 3.1 remain in full force and effect until the later of:

–   The expiration of the last to expire of the LICENSED PATENTS; or

–   Discontinuance by PURCHASER, its AFFILIATES, licensees and customers of the use of GA21 CORN or GLYPHOSATE TOLERANT CORN under this AGREEMENT, of which discontinuance PURCHASER agrees to inform SELLER.

13.13   Notwithstanding the foregoing, SELLER shall have the right to terminate the licenses granted in this Agreement with immediate effect by written notice to PURCHASER, if:

–   PURCHASER goes or is in threat of going into bankruptcy or insolvency; or

–   PURCHASER commits a breach of any substantial obligation under this Agreement and fails within sixty (60) days of notice of such breach to remedy the same (if capable of remedy) or to pay adequate compensation therefor.

13.14   PURCHASER may, with thirty (30) days advance written notice to SELLER, terminate the licenses granted under this AGREEMENT. In such case, the PURCHASER shall be responsible to terminate prior thereto all related sublicenses or other rights granted to its AFFILIATES or third parties.

13.15   Upon expiration or termination of this AGREEMENT or termination of the licenses in accordance with Articles 13.12, 13.13 or 13.14 for any reason:

–   The confidentiality obligations of Article 11.3 shall remain in force for a further period of five (5) years after such expiration or termination.

24/34

- Any and all sums paid by PURCHASER under this AGREEMENT are definitively acquired by SELLER and will not be refunded.

- The PURCHASER retains the ASSET.

**IN WITNESS WHEREOF**, the PARTIES have caused this AGREEMENT to be duly initialed on each page, executed and delivered in Frankfurt, Germany as of the day and year first written above, in two (2) originals, and each of the PARTIES acknowledges receipt of one (1) original.


**BAYER CROPSCIENCE S.A.**
as **SELLER**
by Mr. Gerhart Marchand
Title: General Counsel Bayer CropScience

by Mr. Vincent Turries
Title: Divestment Project Leader


**SYNGENTA PARTICIPATIONS AG**
as **PURCHASER,**
by Mr. Adrian Dubock
Title: Head M&A and Ventures

by Mrs. Marian Flattery
Title: Head of Intellectual Property
and Licensing

RESTRICTED CONFIDENTIAL

SYN094360

Exhibit 1.1.1.
to the Acquisition and License Agreement
relating to certain assets of Bayer CropScience S.A.
between
Bayer CropScience S.A.
and
Syngenta Participations AG

---

**DMMG PATENTS**

RESTRICTED CONFIDENTIAL

# Bayer CropScience



Date : 19/12/2003

## DMMG PATENTS

| Country | Filing | Publication | Grant |
|---|---|---|---|
| A.R.I.P.O. PROCEDURE | 18-JUL-1996 AP/P/98/01195 | | 30-NOV-2000 AP886 |
| AUSTRALIA | 05-MAY-2000 32558/00 | | 22-MAY-2003 757208 |
| AUSTRALIA | 04-DEC-2002 2002313983 | | |
| BRAZIL | 18-JUL-1996 PI9609792-2 | | |
| BULGARIA | 18-JUL-1996 102247 | | |
| CANADA | 18-JUL-1995 2223875 | | |
| CHINA | 18-JUL-1996 96196889-3 | 14-OCT-1998 | |
| CUBA | 18-JUL-1996 P4/98 | | |
| CZECH REPUBLIC | 18-JUL-1996 98  174 | 17-JUN-1998 | |
| EURASIAN PATENT | 18-JUL-1996 199800138 | | |
| EUROPEAN PATENT | 18-JUL-1996 96925812-8 | 29-APR-1998 0837944 | |
| EUROPEAN PATENT | 21-DEC-2001 01130564-6 | 26-JUN-2002 1217073 | |
| FRANCE | 19-JUL-1995 95  08979 | 24-JAN-1997 2736926 | 22-AUG-1997 95  08979 |
| HONG KONG | 13-APR-1999 99 1015414 | 05-NOV-1999 1016648A | |
| HUNGARY | 18-JUL-1996 P99  00463 | 28-MAY-1999 | |
| JAPAN | 18-JUL-1996 97  506365 | 07-SEP-1999 99  510043 | |
| KENYA | 18-JUL-1996 AP/P/98/01195 | | 30-NOV-2000 AP886 |
| MEXICO | 18-JUL-1996 98   0562 | | |
| NEW ZEALAND | 18-JUL-1995 313667 | | 12-MAY-2000 313667 |
| O.A.P.I. | 18-JUL-1996 98  00004 | | 30-JUN-1999 10788 |
| POLAND | 18-JUL-1996 P  324572 | | |
| ROMANIA | 18-JUL-1996 98  00084 | | |
| SINGAPORE | 18-JUL-1996 9802020-9 | | 19-SEP-2000 51579 |
| SLOVAKIA | 18-JUL-1996 98    64 | 04-NOV-1998 | |

1/2 ех

RESTRICTED CONFIDENTIAL

| Country | Filing | Publication | Grant |
|---|---|---|---|
| TURKEY | 18-JUL-1996<br>98/65 | | 21-AUG-2002<br>TR 1998 00065B |
| UKRAINE | 18-JUL-1996<br>98020770/M | | |
| UNITED STATES<br>OF AMERICA | 18-JUL-1996<br>08/945,144 | | 20-MAY-2003<br>6,566,587 |

RESTRICTED CONFIDENTIAL

SYN094363

Exhibit 1.1.2.
to the Acquisition and License Agreement
relating to certain assets of Bayer CropScience S.A.
between
Bayer CropScience S.A.
and
Syngenta Participations AG

**GA21 INFORMATION-1**

$\varepsilon R$

RESTRICTED CONFIDENTIAL

## EXHIBIT 1.1.2 : GA21-INFORMATION-1

H177 Event registration – Experimental Material Production and Supply to function (not event specific).

QC report F2 male parent Agrogene (non GM parent ATCC).

Horizontal Gene Transfer.

Known toxins and allergens.

Description of the base pair sequence of the double mutated maize 5-enol pyruvylskhikimate-3-phosphate synthase (2m EPSPS) and Description of the amino acid sequence of the double mutated maize 5-enol pyruvylskhikimate-3-phosphate synthase (2m EPSPS) (C033990 and C03991).

2mEPSPS Protein (C027848).

2mEPSPS Protein – epitope homolgy search (C032982).

Preliminary safety assessment of 2mEPSPS (C029544).

Opinion of the Scientific Committee on Food on the Safety Assessment of the genetically modified maize line GA21, with tolerance to the herbicide glyphosate dated 6 March 2002

### Argentina :

ODJ Argentine corn product in Switzerland tests positive for GMO (Argentina).

Field Trial for regulatory studies – year 1 contra-season – 2002/3 :
Permit application : 1/10/02 : submission of field trial request to CONABIA
Permit notification : CONABIA's approval letter to FT request
Government correspondence : (13)
Report : (when available)

Field Trial for regulatory studies – contra-season 2003/4 :
Permit application : 26/09/2003 : submission of field trial request to CONABIA
Government correspondence : (4)

### Brasil :

Raw data of selectivity : administrative file 01200.003127/02-67.

2

Raw data of efficacy : administrative file 01200.003127/02-67.

Raw data of phenotypic evaluation : administrative file 01200.003127/02-67.

Draft efficacy report.

Copy external reports.

Draft report agronomy.

Authorizations/permits to carry out Hybrid Seed Production :
Administrative file 01200.002173/01-68
Official inspections
Conclusive report after termination
Regulatory submission
Government correspondence

Authorizations/permits to carry out Efficacy Assessment of tropical 3-way hybrids :
Administrative file 01200.003127/02-67 (part)
Technical review CTNBio
Temporary authorization to the field trial
Official inspections
Conclusive report after termination
Regulatory submission (part)
Government correspondence

Copy of all administrative or other authorization complementary to CTNBio's one
required to carry out the activities

Copy of compliance date of the field trials carried out (raw data, notebooks)

Authorization for operation 001/02

State Register for Mato Grosso do Sul

**Spain :**

Field Study report by Promo-Vert S.A. (Spanish locations).

Field Study report by Promo-Vert S.A. (Spanish locations).

Field Trial report by Bayer CropScience on trials in Spain.

Spanish and English version of Report dated 3 February 2003 on Field Trials with
Glyphosate-tolerant maize Event H177 – Study 02 H MG AV P/A – 02 B 001.

RESTRICTED CONFIDENTIAL

SYN094366

3

Spanish and English Summary Notification for field trials with glyphosate tolerant maize – 3 year program (2002/2004) – No. L280/80.

Authorization dated 24 June 2003 for Bayer to carry out field trials in the community of Castilla y Léon (Benavente, Medina de Rioseco, Valladolid).

Part B dossier – H177 maize under Notification B/ES/02/01 (part).

Opinion of the Scientific Committee on Food on the safety assessment of the genetically modified maize line GA21, with tolerance to the herbicide glyphosate (27 February 2002).

Formal authorization to Bayer (24 June 2003) to carry out field trials under notification B/ES/03/38.

Formal authorization to Bayer (25 April 2002) to carry out field trials under notification B/ES/02/01 (with related letters 14 May 2002 and 6 February 2003), letter of Bayer dated 4 November 2002 re destruction.

Formal Authorization to Bayer to carry out field trials under notification B/ES/03/38 (26 May 2003).

Official request from Bayer to Authorities to carry out field trials (13 December 2001), formal Authorization to Bayer to carry out field trials under notification B/ES/02/01 (25 March 2002).

Official notification of destruction of the Aragón field trial due to hailstorm dated 19 July 2002 (with photographs).

Official request from Bayer to Authorities to carry out field trials (13 December 2001), formal Refusal to Bayer to carry out field trials under notification B/ES/02/01 (21 May 2002), and further letter from Bayer (22 May 2002) to Authorities with request to reconsider refusal

Refusal (17 January 2002, 5 April 2002, 8 April 2002, 9 April 2002) to Bayer to carry out field trials under notification B/ES/02/01

Official submission by Bayer to the Ministry (12 February 2003) of Study Reports containing results of the Molecular Characterization carried out under notification B/ES/03/38 : (part)
Report C029115
Report C029116
Report C027846
Report C027848

RESTRICTED CONFIDENTIAL

SYN094367

Exhibit 1.1.3.
to the Acquisition and License Agreement
relating to certain assets of Bayer CropScience S.A.
between
Bayer CropScience S.A.
and
Syngenta Participations AG

**GA21 INFORMATION-2**

RESTRICTED CONFIDENTIAL

SYN094368

## EXHIBIT 1.1.3. : GA21-INFORMATION-2

PCR Protocol EPSPS Trait/GA21discriminating PCR Protocol/H177 discriminating PCR Protocol developed by Bayer BioScience NV (Marc De Beuckeleer).

Development and validation of event and gene product detection methods by Robert-Jan van der Klis – Preliminary assessment.

Final report CS 02189.2002 AGPM – re 'Ensilaging of maize plant material and compositional analysis on forage and silage samples from Glyphosate-tolerant field maize event H177'.

Study report/Lab report by Bayer BioScience NV (Marc de Beuckeleer) dated 5 June 2003 re 'Demonstration of the absence vector backbone sequences in Zea mays transformation Event GA21'.

Study report by Bayer BioScience NV (Marc de Beuckeleer) dated 20 April 2001 re 'Genetic Characterization of Zea mays Event GA21 Interim report Southern Blot Analysis'.

Lab report by Bayer BioScience NV (Marc de Beuckeleer) dated 4 November 2003 re 'Molecular Characterization of Zea mays transformation Event GA21'.

Lab report by Bayer BioScience NV (Marc de Beuckeleer) dated 24 November 2003 re 'Determination of inserted transgenic sequences in Zea mays event GA21'.

Study Report by Bayer BioScience NV (Marc De Beuckeleer) dated 22 May 2003 re 'Analysis of the nature of the flanking sequences from Zea mays event GA21'.

Protein Equivalence preliminary assessment by Robert-Jan van der Klis – Preliminary assessment.

Lab report by Bayer BioScience NV (Marc de Beuckeleer) dated 4 November 2003 re 'Bioinformatic analysis of Zea mays transformation event GA21'.

Study Report by Bayer BioScience NV (Marc de Beuckeleer) dated 24 November 2003 re 'Molecular demonstration of the stability of Zea mays transformation event GA21 in different backgrounds and over different generations'.

Protocol 28-day Rat Feeding Study – Toxicology – Corinne Hérouet.

Protocol Broiler Chicken Feeding Study – Toxicology - Corinne Hérouet.

*E:\Exhibit 1 1 3 doc*

2

Protocol Pig Feeding Study – Toxicology – Corinne Hérouet.

Final Study Report COVANCE dated 26 June 2003– Compositional Analyses of Corn Forage, Silage and Grain from Event H177.
Protocol dated 28 March 2003 on Compositional Analyses of Corn Forage, Silage and Grain from Event H177 (European samples).

Final Study Report COVANCE dated 24 September 2003 – Compositional Analyses of Corn Grain from Event H177.

Protocol dated 18 June 2003 on Compositional Analyses of Corn Grain from Event H177 (Argentine samples).

Protocol dated 18 June 2003 on Compositional Analyses of Corn Grain from Event H177 (European samples).

EES trial protocol 2002 : evaluation of Level-2 Glyphosate corn event efficacy in a Hybrid Background.

Glyphosate Tolerance efficacy assessment of internal events as compared with GA21 and NK603 :
trial raw data 1
trial raw data 2
trial raw data 3
trial results 1
trial results 2
trial results 3
trial results 4
trial results 5
report


QC report and results : Quantitative Maize GMO Detection - AgroGene dated 24 March 2003.

QC Report MBAS03-041- BioScience Routine Support Lab (Erik van der Biezen) dated 11 June 2003.

Confidential Note by Euralis Génétique dated 12 May 2003- QC report on corn sample.

*E:\Exhibit 1.1.3.doc*

RESTRICTED CONFIDENTIAL

Exhibit 1.1.4.
to the Acquisition and License Agreement
relating to certain assets of Bayer CropScience S.A.
between
Bayer CropScience S.A.
and
Syngenta Participations AG

## GA21 LEGAL ASSETS



RESTRICTED CONFIDENTIAL

**EXHIBIT 1.1.4**

Agreement for Scientific Evaluation of Transgenic Material between Bayer CropScience SA and Nidera Semillas SA dated February 11/March 6, 2002 as amended on September 16, 2002

Agreement for Scientific Evaluation of Transgenic Material between Bayer CropScience SA and CHS Research dated November 25, 2002 (as amended or terminated)

Agreement for Scientific Evaluation of Transgenic Material between Bayer CropScience SA and Syngenta Seeds dated October 14, 2002 and accepted Stewardship Guidelines (as amended or terminated)

Grain and Samples Production Agreement between Bayer CropScience SA and Agrar del Sur dated December 2, 2002 (terminated)

Temperate Hybrid Production Agreement between Aventis CropScience SA and Agrar del Sur dated November 3, 2001 (terminated)

Temperate Hybrid Corn Production Agreement between Bayer CropScience SA and Agrar del Sur dated December 20, 2002 (terminated)

*E:\exhibit 1.1.4.doc*

RESTRICTED CONFIDENTIAL

SYN094372

Exhibit 1.1.5.
to the Acquisition and License Agreement
relating to certain assets of Bayer CropScience S.A.
between
Bayer CropScience S.A.
and
Syngenta Participations AG

## **LICENSED RIGHTS**

**13 - 0 6 3 4 0 0 0**

## SETTLEMENT AGREEMENT

THIS AGREEMENT is made as of August 7, 2000 by and between DEKALB Genetics Corporation, a corporation organized and existing under the laws of the State of Delaware USA and having a principal place of business at 3100 Sycamore Road  DeKalb  Illinois 60115 (hereinafter referred to as " DEKALB "), and Aventis CropScience S.A., a "societe anonyme" organized and existing under the laws of France with principal offices at 14/20 Rue Pierre Baizet, 69009 Lyon (hereinafter referred to as "AVENTIS")

### SECTION 1  BACKGROUND AND PARTIES

1.01    AVENTIS is a "societe anonyme" organized and existing under the laws of France with principal offices at 14/20 Rue Pierre Baizet, 69009 Lyon

1.02    DEKALB is a Delaware corporation, having a place of business at 3100 Sycamore Road, DeKalb  Illinois 60115.

1.03    AVENTIS and DEKALB are in litigation in a case entitled Rhone-Poulenc Agro S.A. v Monsanto Company and DEKALB Genetics Corporation (No : 1:97CV1138) pending in the United States District Court for the Middle District of North Carolina, involving, inter alia, the issue of proper inventorship of claims in  United States Patents Nos. 5,990,390 and 6,025,545.

1.04    Subject to the terms and conditions of this Agreement, AVENTIS and DEKALB are mutually interested in partially resolving the pending litigation by entering into a transaction involving (1) the  grant of an immunity from suit under  United States Patent 6,025,545; and (2) the dismissal without prejudice of AVENTIS claims with respect to United States Patent 5,990,390.

### SECTION 2.  DEFINITIONS

For purposes of this Agreement, the following words and phrases shall have the following meanings:

2.01    "Affiliate" means any company or other legal entity which controls, or is controlled by  or is under common control with, a party to this Agreement.

2.02    "Agreement" shall mean this SETTLEMENT AGREEMENT

2.03    "Territory" shall mean all countries of the world

2.04    "United States Patent 6,025,545 Rights" shall mean the said United States patent and any reissue or re-examination certificate granted with respect thereto, and also includes the specific patent claims of any DeKalb foreign counterpart patent claiming priority based on

830%

RESTRICTED CONFIDENTIAL

SYN094374

United States Patent Application Serial Nos. 08/112.245 and 08/113.561 both filed August 25, 1993 which claims are substantially equivalent in scope and limitation to the claims of United States Patent 6.025 545 in that the foreign counterpart patent claims specifically contain limitations requiring the presence of an EPSPS gene operably connected to an actin promoter or to a rice actin promoter

### SECTION 3. CONVEYANCE OF RIGHTS

3.01    Grant Of Immunity From Suit:  DEKALB hereby grants to AVENTIS:

(a)    a royalty-free, non-revocable.  immunity from suit under United States Patent 6.025.545 Rights in the Territory. and

(b)    the right to extend the same immunity from suit under Section 3 01(a) in the Territory to other parties: provided that  such other parties shall not be permitted to extend further immunities

3.02    License Limitations:

(a)    Notwithstanding the grant of the immunity from suit pursuant to subsection 3 01.  no license or immunity from suit is granted by this Agreement under any other patent right (including any other patent right of an Affiliate of DEKALB) by implication or otherwise. or to make. have made. use or sell transgenic corn plant cells. corn plants or seeds comprising any other patent right or other intellectual property of DEKALB or under which DEKALB is licensed.

(b)    AVENTIS and DEKALB agree that the existence or terms of this Agreement or testimony related thereto will not be used in support of any claim or defense related to other patents in the case entitled Rhone-Poulenc Agro S.A. v. Monsanto Company and DEKALB Genetics Corporation (No.: 1:97CV1138) pending in the United States District Court for the Middle District of North Carolina

### SECTION 4. DISMISSAL OF CLAIMS

4.01    Pursuant to Fed R. Civ P 41(a)(I)(ii) DEKALB and AVENTIS. through their counsel of record  will dismiss the part of the case involving the issue of proper inventorship of the claims of United States Patent 6 025 545 with prejudice in the action Rhone-Poulenc Agro S.A. v. Monsanto Company and DEKALB Genetics Corporation (No.: 1:97CV1138) pending in the United States District Court for the Middle District of North Carolina. and AVENTIS and DEKALB will stipulate that each party shall bear its own attorneys' fees and costs. in the form attached hereto as Exhibit A.

83096-1                          2⅊⅊

RESTRICTED CONFIDENTIAL

4.02    Pursuant to Fed. R. Civ. P. 41(a)(i)(ii), DEKALB and AVENTIS, through their counsel of record, will dismiss the part of the case involving the issue of proper inventorship of the claims of United States Patent 5.990.390 without prejudice in the action Rhone-Poulenc Agro S.A. v. Monsanto Company and DEKALB Genetics Corporation (No.: 1:97CV1138) pending in the United States District Court for the Middle District of North Carolina, and AVENTIS and DEKALB will stipulate that each party shall bear its own attorneys fees and costs, in the form attached hereto as Exhibit B.

### SECTION 5  CONFIDENTIAL STATUS OF AGREEMENT

The terms of this Agreement shall be deemed to be Confidential and shall not be disclosed to any third-party; provided, however, that a party may disclose the Agreement: (i) in connection with an order of a court or other government body or as otherwise required by or in compliance with law or regulations; provided that the disclosing party provides the other party with notice and takes reasonable measures to obtain confidential treatment thereof; (ii) in confidence to attorneys, accountants, banks and financial sources and their advisors; or (iii) in confidence, in connection with an acquisition, divestiture or merger, or in the event of sub-licensing of the rights as provided in this Agreement, so long as, in each case, the entity to which disclosure is made is bound to confidentiality on terms consistent with those set forth herein.

Both parties agree, furthermore, that neither party will make public disclosures concerning other specific terms of this Agreement without obtaining the prior written consent of the other party, which consent shall not be unreasonably withheld.

### SECTION 6  REPRESENTATIONS, WARRANTIES AND INDEMNIFICATION

6.01    <u>Representations and Warranties:</u>

    (a)    DEKALB represents and warrants that:

        (i)    it is the owner of United States Patent 6,025,545;

        (ii)    it has not previously granted and will not grant to any third party during the term of this Agreement, any rights under United States Patent 6,025,545 that are in derogation of the rights granted to AVENTIS herein; and

        (iii)    it has full power, right and authority to enter into and carry out its obligations under this Agreement, and this Agreement is executed with the consent of Pharmacia Corporation.

    (b)    AVENTIS represents and warrants that it has full power, right and authority to enter into and carry out its obligations under this Agreement.

6.02    <u>No Warranties:</u>  EXCEPT FOR THE EXPRESS WARRANTIES IN SUBSECTION 6.01, DEKALB MAKES NO WARRANTIES REGARDING THE PATENT RIGHTS AS TO WHICH THE

83076-1                                    14

RESTRICTED CONFIDENTIAL

IMMUNITY HAS BEEN GRANTED (INCLUDING, WITHOUT LIMITATION, THE VALIDITY OR SCOPE
THEREOF) (INCLUDING, WITHOUT LIMITATION, THE NON-INFRINGEMENT OF PRODUCTS THAT
MAY BE WITHIN THE SCOPE OF UNITES STATES PATENT 6,025,545 RIGHTS ON THIRD PARTY
PATENT RIGHTS OR ON OTHER PATENT RIGHTS OF DEKALB OR OF AFFILIATES OF DEKALB) OR
OTHERWISE, EXPRESS OR IMPLIED, EITHER IN FACT OR BY OPERATION OF LAW

SECTION 7.  (Not Used)

SECTION 8.  TERM AND TERMINATION

8.01    **Term:**  The term of this Agreement shall be co-extensive with the life of United States
Patent 6,025,545.

SECTION 9.  GENERAL PROVISIONS

9.01    **Assignment:**

(a)    Either DEKALB or AVENTIS shall have the right to assign this Agreement (as a
whole) in connection with the reorganization, consolidation, spin-off, sale or transfer of substantially all of
the stock or assets related to that portion of its business pertaining to the subject matter of this
Agreement, either alone or in conjunction with other businesses as part of an overall reorganization of
DEKALB or AVENTIS, as the case may be.  For any such assignment to be effective, (i) the assignee
shall agree in writing to be bound by all the terms of this Agreement, and consequently, (ii) the assigning
party (DEKALB or AVENTIS, as the case may be) shall as of the date of the assignment retain no rights
whatsoever under this Agreement

(b)    In addition, each of DEKALB and AVENTIS shall have the right to delegate part of
its rights and obligations hereunder to any of its Affiliates, but shall remain at all times fully responsible for
its performance hereunder, including that of any such Affiliates.  Moreover, such delegation shall
automatically terminate on the day an Affiliate which received such delegation ceases to be an Affiliate

9.02    **Relation Of Parties:**  Nothing in this Agreement shall create, or be deemed to create, a
partnership, or the relationship of principal and agent among the parties

9.03    **Integration Of Contract:**  This Agreement constitutes the full understanding of the
parties, a complete allocation of risks between them and a complete and exclusive statement of the terms
and conditions of their agreement relating to the subject matter hereof.  All prior agreements, negotiations,

23096-1                              4:11

RESTRICTED CONFIDENTIAL

SYN094377

dealings and understandings, whether oral or written, regarding the subject matter hereof are hereby superseded and merged into this Agreement.

    9.04   <u>Waivers And Amendments</u>: This Agreement may be amended, superseded, canceled, renewed or extended, and the terms hereof may be waived, only by a written instrument signed by all the parties, or, in the case of a waiver, by the party or parties waiving compliance. Except where a specific period for action or inaction is provided herein, no delay on the part of any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof. Nor shall any waiver on the part of any party of any such right, power or privilege, nor any single or partial exercise of any such right, power or privilege, preclude any further exercise thereof or the exercise of any subsequent or other such right, power or privilege. Except as otherwise provided herein, no conditions, usage of trade, course of dealing or performance, understanding or agreement purporting to modify, vary, explain or supplement the terms or conditions of this Agreement shall be binding unless hereafter made in writing and signed by the party to be bound, or by a written amendment hereof executed by all parties, and no modification shall be effected by the acknowledgment or acceptance of any forms or other documents containing terms or conditions at variance with or in addition to those set forth in this Agreement.

    9.05   <u>Force Majeure</u>:

        (a)    Neither of the parties shall be liable for any default or delay in performance of any obligation under this Agreement caused by any of the following: Act of God, war, riot, fire, explosion, accident, flood, sabotage, compliance with governmental requests, laws, regulations, orders or actions, national defense requirements or any other event beyond the reasonable control of such party; or labor trouble, strike, lockout or injunction (provided that neither of the parties shall be required to settle a labor dispute against its own best judgment).

        (b)    The party invoking this subsection 9.05 shall give the other party notice and full particulars of such force majeure event by telephone, telegram, telex or telecopier as soon as possible after the occurrence of the cause upon which said party is relying. Telephone, telegram, telex and telecopier notices shall be confirmed in writing by the sending party within five (5) days.

        (c)    Both DEKALB and AVENTIS shall use reasonable efforts to mitigate the effects of any force majeure on their respective part.

    9.06   <u>Headings</u>: Section and subsection headings as to the contents of particular Sections and Subsections are for convenience only and are in no way to be construed as part of this Agreement or as a limitation of the scope of the particular Section or Subsection to which they refer.

83096-1                                                 S44

RESTRICTED CONFIDENTIAL

SYN094378

9.07    References To Sections, Subsections And Appendices:  Unless otherwise expressly stated, all Sections and subsections referred to herein are Sections and subsections of this Agreement, and all Appendices referred to herein are Appendices attached hereto.

9.08    Partial Invalidity:  If any provision of this Agreement is held by any competent authority to be invalid or unenforceable in whole or in part, this Agreement shall continue to be valid as to the other provisions thereof and the remainder of the affected provision

9.09    Governing Contract Law:  THIS AGREEMENT SHALL, EXCEPT AS PROVIDED IN SUBSECTION 9.10, BE GOVERNED AND CONSTRUED IN ALL RESPECTS IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE (OTHER THAN ITS RULES OF CONFLICTS OF LAW).

9.10    Governing Patent Law:  Any question arising out of this Agreement as to the validity, construction or effect of any patent shall be decided in accordance with the national patent laws in the respective country where the subject patent exists

9.11    Notices:  Any notice or other information required or authorized by this Agreement to be given by any party to the others shall be given in writing and shall be deemed sufficiently given when delivered by hand, or transmitted by express mail or overnight courier service, or transmitted by facsimile or other means of electronic data transmission, confirmed by express mail or overnight courier service, to the following addresses of the other parties or such other address(es) as is (are) notified to the parties by the one (1) or more of the other parties from time to time.

If to AVENTIS:

        Aventis CropScience S.A
        14/20 Rue Pierre Balznt
        69009 Lyon – France
        Tel. No. 33-4-72-85-28-26
        Facsimile No: 33-4-72-85-20-67
        Attention: Head of Trait Management

If to DEKALB:

        DEKALB Genetics Corporation, c/o Pharmacia Corporation
        800 North Lindbergh Boulevard
        St. Louis  Missouri  63167

        Attention:     Associate General Counsel
                     Agricultural Sector

9.13    Dispute Termination:

81096-1                                                      6I4

SYN094379

The parties agree that this Agreement is the compromise of disputed claims that are in litigation and agree that this settlement is not to be construed as an admission of any fault or liability with respect to any claim, obligation or liability released by either party.

IN WITNESS WHEREOF, this Agreement has been executed by duly authorized representatives of the parties herein.

DEKALB GENETICS CORPORATION

By: _____
       Bruce Bickner
Title: CHAIRMAN + CEO

AVENTIS CROPSCIENCE S.A.

By: _____
       Phillipe Dumont
Title: Head of Trait Management

83096-1                              744

RESTRICTED CONFIDENTIAL

SYN094380

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RHÔNE-POULENC AGRO S.A., | ) | |
| (Now known as Aventis CropScience SA) | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. NO. 1:97cv1138 |
| | ) | |
| MONSANTO COMPANY | ) | |
| (Now known as Pharmacia Corporation) | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEKALB GENETICS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DISMISSAL WITHOUT PREJUDICE

Pursuant to Fed. R. Civ. P. Rule 41(a)(1)(ii), Plaintiff and Defendants, through their respective

counsel of record, hereby stipulate to the dismissal of that part of this action relating to the issue of

proper inventorship of the claims of United States Patent 5,990,390, without prejudice; and Plaintiff and

Defendants stipulate that each party shall bear its own attorneys' fees and costs with respect to such

claim

EJV06-1                                         10

RESTRICTED CONFIDENTIAL

SYN094381

Timothy G. Barber
WOMBLE CARLYLE SANDRIDGE & RICE
3300 One First Union Center
301 South College Street
Charlotte, N.C. 28202-6025
704.331.4900 Telephone
704.331.4955 Facsimile

George Pazuniak
CONNOLLY, BOVE, LODGE & HARTZ
1220 Market Street
Wilmington, DE 19801
302.658.9141 Telephone
302.658.5614 Facsimile

Attorneys for Plaintiff
RHONE POULENC AGRO S.A.

John F. Lynch
Texas State Bar No. 12728000
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
650 463 8100 Telephone
650 463 8400 Facsimile

J. Donald Cowan, Jr
North Carolina State Bar No. 0968
SMITH HELMS MULLINS & MOORE
300 North Greene Street, Suite 1400
Greensboro, NC 27420
336.378 5200 Telephone
336.379 9558 Facsimile

Attorneys for Defendants
DEKALB GENETICS CORPORATION

13096-1                                    11

RESTRICTED CONFIDENTIAL

SYN094382

## NON-EXCLUSIVE PAID-UP LICENSE AGREEMENT

THIS AGREEMENT, effective as of the first day of September 1998 by and between the CORNELL RESEARCH FOUNDATION, INC., having offices at Cornell Business & Technology Park, 20 Thornwood Drive, Suite 105, Ithaca, New York, 14850 hereinafter referred to as "FOUNDATION" and Rhône-Poulenc Agro, a French Société Anonyme, having offices at 14/20, rue Pierre Baizet - 69009 LYON France, hereinafter referred to as the "LICENSEE".

### W I T N E S S E T H   T H A T:

WHEREAS, Dr. Ray Wu and David McElroy at Cornell University possess certain plasmids which contain the rice actin gene, and in particular plasmids known as pAct1-D, pAct1-F, pAct1-G, and pAct1-R, described in part in Plant Cell 2:163-171 (1990), as well as all plasmids described in Mol. Gen. Genet. (1991) 231:157 which have not heretofore been made publicly available, hereinafter defined as "Biological Materials";

WHEREAS, a United States Patent entitled « Rice Actin Gene & Promotor » was issued by the U.S. Patent and Trademark Office on June 6, 1997 as U.S. Patent No. 5,641,876 which is directed *inter alia* to said Biological Materials, a copy of which has been appended as Exhibit A;

WHEREAS, the parties have cooperated in order for the

*98N028BI.doc - CRF D-938 - RPA Licence  -   Page 1 / 12*

RESTRICTED CONFIDENTIAL

SYN094383

FOUNDATION to benefit from Rhône-Poulenc Agro's experience in the evaluation of said genes & promotors ;

WHEREAS, the invention or inventions disclosed and claimed in Exhibit A and title to said Biological Materials are assigned to FOUNDATION and FOUNDATION is a wholly owned subsidiary corporation of Cornell University and holds the ownership interests of patents issued on inventions made by Cornell University's staff and administers licenses in a manner consistent with the patent policy of Cornell University;

WHEREAS, FOUNDATION represents and warrants that it is assignee of the above-identified patent and any patents issuing thereon as well as the owner of said Biological Materials and has the right to grant licenses under said patent and patents issuing thereon and also in said Biological Materials;

WHEREAS, LICENSEE is desirous of securing a license under the discoveries and invention embodied in said patent and patents issuing thereon, as well in said Biological Materials, to make, have made, use, have used, sell and have sold products in the United States and throughout the world.

WHEREAS, FOUNDATION is willing to grant a license in said patent and any patents issuing thereon, as well as in said Biological Materials, to LICENSEE upon the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the covenants and obligations hereinafter set forth, the parties hereto hereby agree as follows:



RESTRICTED CONFIDENTIAL

SYN094384

I

## DEFINITIONS

The following definitions will apply throughout this agreement:

1. <u>Licensed Patent</u> shall mean U.S. Patent No. 5,641,876 and all reissues thereof.

2. <u>Licensed Biological Materials</u> shall mean any gene or gene construct or plasmid and the like within the scope of the claims of Exhibit A, as filed, particular plasmids pAct1-D, pAct1-F, pAct1-G, and pAct1-R, and all plasmids described in <u>Mol. Gen. Genet.</u> (1991) 231:157, all of which are obtained by LICENSEE from FOUNDATION. All LICENSEE'S rights in such Licensed Biological Materials are governed by this Agreement.

3. <u>Licensed Products</u> shall mean any product or use claimed in a <u>Licensed Patent</u> and/or made using or incorporating therein a <u>Licensed Biological Material</u>.

4. <u>LICENSEE</u> shall mean Rhône-Poulenc Agro and any of its Affiliates.

5. <u>Affiliates</u> shall mean any entity that directly or indirectly, through one or more intermediaries, now or hereafter, controls or is controlled by or is under common control with a party hereto, except that in countries where ownership of a majority or a controlling interest by a foreign entity is not permitted by law, rules or regulations, the parent's

*98N028BI doc - CRF D-938 - RPA Licence -   Page 3 / 12*

direct or indirect voting interest may be less than a
majority of controlling interest.

6.  __Control__ (including the term « controls », « controlled
by » and « under common control with ») shall mean the
possession, direct or indirect, of the power to direct
or cause the direction of the management and policies
of a person or entity, whether through the ownership of
voting security, by contract or otherwise.

## II

__GRANT__

Subject only to the rights of and obligations to the U.S.
Government, if any, as set forth in U.S. Office of Management and
Budget Circular A-124 or 37 CFR Part 401:

The FOUNDATION, upon receipt of the first $50,000 payment
from LICENSEE as set forth in __Article IV__ below, grants to
LICENSEE a non-exclusive, paid-up, non-terminable license in
licensed Biological Materials to make, have made, use, have used,
sell and have sold Licensed Products worldwide.

The FOUNDATION, in consideration of LICENSEE's payment of
the additional consideration set forth in Article IV below,
hereby grants to LICENSEE for the term set forth below a non-
exclusive, paid-up license under __Licensed Patent__ to make, have
made, use, have used, sell and have sold Licensed Products in the
United States and throughout the world.

The rights granted to LICENSEE hereunder shall include the
right to grant to third parties ("Third-Party Grantees") the

*95\028Bl.doc - CRF D-938 - RPA Licence  -    Page 4 / 12*

SYN094386

right to make, have made, use, have used, sell and have sold
Licensed Products, provided that any such Licensed Products shall
also contain proprietary or licensed technology of LICENSEE.
LICENSEE agrees to inform such Third Party Grantees of
FOUNDATION's rights in the Licensed Products and of any
obligations they may have to FOUNDATION as a result of this
Agreement. Furthermore, such Third Party Grantees shall undertake
in writing to not transform said Licensed Products without
receiving prior written consent or license from FOUNDATION.
    )
    In addition, during the term of this Agreement, FOUNDATION
will not enforce any Licensed Patent against LICENSEE or its
Third-Party Grantees for making, having made, using, having used,
selling, or having sold Licensed Products.


                              III

TO HAVE MADE

    The right of LICENSEE to make Licensed Products includes the
right to have made by contract with third parties within a
country where LICENSEE is licensed and patent protection for
Licensed Products exists or is pending. Such contractual
arrangements with third parties shall be subject to and
conditioned upon appropriate supervision and quality assurance
and control of the third party by LICENSEE and the third party
shall be bound in writing to respect all rights of FOUNDATION and
to supply all production of Licensed Products exclusively to
LICENSEE.


*98\028BI.doc - CRF D-938 - RPA Licence  -  Page 5 / 12*

                                    SYN094387

IV

## PAYMENTS MADE IN CONSIDERATION OF THE
## EXECUTION OF THIS LICENSE AGREEMENT

In full payment of this License Agreement subject to Article II GRANT, including the right to commercialize Licensed Products which utilize Licensed Biological Material, LICENSEE shall pay FOUNDATION Fifty Thousand Dollars ($50,000.00) within thirty (30) days of signing this Agreement and additional sums of Fifty Thousand Dollars ($50,000) on each of the first, second and third anniversary dates of this Agreement. (A total of $200,000.00).

Such amounts shall include any sub-licence rights to Third-Party Grantees which directly market Licensed Products combined with LICENSEE's proprietary or licensed technology.

Notwithstanding the foregoing, in the event that Third-Party Grantees do not directly market Licensed Products combined with LICENSEE's proprietary or licensed technology, LICENSEE will agree with FOUNDATION on the level of royalties, to be collected from such Third-Party Grantees by LICENSEE, in order to maintain the competitiveness of such Licensed Products combined with LICENSEE's proprietary or licensed technology on the market.

Any payments shall be made to :

            CORNELL RESEARCH FOUNDATION
            Tompkins County Trust
            P.O. Box 460
            Ithaca, NY 14850
            Routing no. 021302648
            Account no. 01-101-007353

RESTRICTED CONFIDENTIAL

SYN094388

V

## TERM

This License Agreement shall continue as a nonexclusive license for the full term of the last to expire Licensed Patent or ten (10) years, whichever is longer, so long as LICENSEE'S covenants under the Agreement are being performed—and provided this Agreement is not earlier terminated as provided for herein.

VI

## ENFORCEMENT

If FOUNDATION and LICENSEE both agree that there is an unauthorized use of the licensed invention which should be stopped, FOUNDATION will permit LICENSEE and Third-Party Grantees to join in the litigation provided that LICENSEE pays all (or a prorata share, if there are other licensee(s) and/or Third-Party Grantees) reasonable FOUNDATION's costs and expenses, and holds FOUNDATION harmless of those costs and expenses. FOUNDATION's reasonable costs and expenses paid by LICENSEE may be credited against future royalties paid by LICENSEE and Third-Party Grantees. Any damages recovered by LICENSEE from the unauthorized user will be for the benefit of LICENSEE.

FOUNDATION represents and warrants that at the date of execution of this Agreement no actual or potential claim of infringement has been identified or notified to FOUNDATION on the Licensed Patent, the Licensed Biological Materials and/or the Licensed Products.

*98N028BI.doc - CRF D-938 - RPA Licence - Page 7 / 12*   

VII

<u>ASSIGNMENT</u>

The rights and obligations of LICENSEE are not assignable but with two exceptions:

1.   that such rights and obligations may be assigned to LICENSEE'S successor in business if such assignment is approved by FOUNDATION.  Such approval of assignment will not be unreasonably withheld; and,

2.   that LICENSEE may assign its rights to LICENSEE's Affiliates.

VIII

TERMINATION-INCLUDING RIGHT
<u>TO TERMINATE FOR INACTIVITY</u>

The FOUNDATION may terminate this License Agreement for substantial non-compliance by the LICENSEE with any of its provisions by giving notice of said non-compliance six (6) months before termination and if said non-compliance remains uncured by LICENSEE before the end of said six (6) month period.

LICENSEE may terminate this License Agreement by giving notice of its intentions to do so six (6) months before termination.



RESTRICTED CONFIDENTIAL

SYN094390

IX

ARBITRATION AND JURISDICTION

All disputes over the meaning and interpretation of this
Agreement shall be resolved by conciliation and mediation and if
mediation is unsuccessful then disputes shall be finally settled
by an Arbitrator selected by FOUNDATION and LICENSEE.  If
FOUNDATION and LICENSEE cannot agree on an Arbitrator, then
disputes shall be resolved by an Arbitration Panel comprising one
arbitrator appointed by FOUNDATION, one arbitrator appointed by
LICENSEE, and a Chairman of the Arbitration panel appointed by
the first two arbitrators.  Any such arbitration proceeding shall
be conducted in accordance with the then existing rules of the
International Chamber of Commerce (ICC); shall be held in the
state of New York; and enforcement upon the arbitration award may
be entered in any court having jurisdiction. This Agreement shall
be governed by and interpreted in accordance with the laws of the
State of New York and the United States of America.

X

Biological Materials

The delivery of Licensed Biological Materials to LICENSEE
under this Agreement is by bailment, and title to Licensed
Biological Materials does not pass to LICENSEE.

LICENSEE will not supply Licensed Biological Materials to
any third party except as provided for herein.



ER

RESTRICTED CONFIDENTIAL

XI

## OTHER

LICENSEE agrees that it will not use the indicia or names of FOUNDATION or of Cornell University or any of their personnel in advertising, promotion, or labelling of Licensed Products without prior written approval of the FOUNDATION.

FOUNDATION agrees that it will not use the name of LICENSEE or of any employee or agent, officer or member of the LICENSEE board of Directors in any advertising, promotion, labelling, or in any other manner without prior written approval of LICENSEE. FOUNDATION makes no representations other than those specified in the clauses (including, without limitation, the WHEREAS clauses) of this Agreement. FOUNDATION MAKES NO EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

FOUNDATION by this Agreement makes no representation as to the patentability and/or breadth of the inventions and/or discoveries involved in a Licensed Patent.

LICENSEE shall exercise due diligence to effect the introduction of Licensed Product(s) into the commercial market as soon as practical.

LICENSEE agrees to defend, indemnify and hold FOUNDATION harmless from and against all liability, demands, damages, expenses or losses for death, personal injury, illness or property damage (including reasonable attorney's fees) arising (a) out of use by LICENSEE or its transferees of inventions licensed or information furnished under this Agreement, or (b)

*98\028Bl doc - CRF D-938 - RPA Licence  -    Page 10/12*

SYN094392

out of any use, sale or other disposition by LICENSEE or its transferees of products made by use of such inventions or information. As used in this clause, FOUNDATION includes its Trustees, Officers, Agents and Employees, and those of Cornell University, and "LICENSEE" includes its Affiliates, subsidiaries, contractors and sub-contractors.

This Agreement shall be interpreted under the Laws of the State of New York.

Reports, notices and other communications to the FOUNDATION shall be addressed to:

> H. Walter Haeussler, President
> CORNELL RESEARCH FOUNDATION, INC.
> Cornell Business & Technology Park
> 20 Thornwood Drive, Suite 105
> Ithaca, New York 14850

and notices and other communications to LICENSEE to:

> Jean-Louis Arnault, Manager
> Biotech Licensing Department
> RHONE-POULENC AGRO S.A.
> 14/20, rue Pierre Baizet
> 69009 Lyon France

IN WITNESS WHEREOF, the parties have caused this instrument to be executed in duplicate as of the day and year first above written.

CORNELL RESEARCH                    RHONE-POULENC AGRO, S.A.
FOUNDATION, INC.

By ~~H. Walter Haeussler~~ RICHARD S. CAHOON    By    Jean-Louis ARNAULT

Title : ~~President~~ VICE PRESIDENT    Title: Manager Licensing and
                                              Alliances

Date Oct. 12, 1998    Date

*98\028B1 doc - CRF D-938 - RPA Licence - Page 11/12*

ER

RESTRICTED CONFIDENTIAL

## EXHIBIT A

This Exhibit A refers to the attached copy of the McElroy et al. United States Patent 5,641,876, of June 24, 1997

ER

RESTRICTED CONFIDENTIAL

SYN094394

Exhibit 1.1.6.
to the Acquisition and License Agreement
relating to certain assets of Bayer CropScience S A.
between
Bayer CropScience S.A.
and
Syngenta Participations AG

**LICENSED TOOLS**

RESTRICTED CONFIDENTIAL

**EXHIBIT 1.1.6**

**LICENSED TOOLS**

A. pSF122
- An E.coli strain containing plasmid pSF122, allowing overexpression of 2mEPSPS (fused to a 6xHis tag).
- map and sequence of plasmid pSF122
- protocol to overexpress and purify the fusion protein, and to remove the tag in order to recover genuine 2mEPSPS.

B. Rabbit Immune serum directed against 2mEPSPS.
A limited amount will be provided for immunodetection purpose

C. OTP-DMMG PCR detection protocol
- sequences of primers
- PCR protocol to detect DNA samples containing the OTP-DMMG sequence.
This protocol is not validated for corn and therefore no guarantee is provided that this protocol will work to detect OTP-DMMG in corn.

Exhibit 1.1.7.
to the Acquisition and License Agreement
relating to certain assets of Bayer CropScience S.A.
between
Bayer CropScience S.A.
and
Syngenta Participations AG

## OTP PATENTS

## Bayer CropScience



Date : 19/12/2003

## OTP PATENTS

| Country | Filing | Publication | Grant |
|---|---|---|---|
| ARGENTINA | 05-MAR-1992<br>321880 | | |
| AUSTRALIA | 04-MAR-1992<br>92 11442 | | 10-JAN-1995<br>652610 |
| AUSTRIA | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>0508909 |
| BELGIUM | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>0508909 |
| BRAZIL | 25-FEB-1992<br>PI9200790-2 | | 26-SEP-2003<br>PI 9200790-2 |
| BRAZIL | 24-MAY-2001<br>PI9207231-3 | | |
| CANADA | 21-FEB-1992<br>2,051,636 | | 24-DEC-2002<br>2061636 |
| DENMARK | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>0508909 |
| EUROPEAN PATENT | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>0508909 |
| EUROPEAN PATENT | 11-FEB-1998<br>98102347-6 | 23-JUN-1999<br>0924299 | |
| FRANCE | 05-MAR-1991<br>91 02872 | 11-SEP-1992<br>2673643 | 21-MAY-1993<br>91 02872 |
| GERMANY | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>69226466-3 |
| GREECE | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>3028104 |
| IRELAND | 04-MAR-1992<br>92 690 | | 12-AUG-2002<br>82462 |
| IRELAND | 03-JUN-1999<br>990458 | | |
| ISRAEL | 02-MAR-1992<br>101115 | | 11-APR-1997<br>101115 |
| ITALY | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>0508909 |
| JAPAN | 04-MAR-1992<br>92 47142 | 20-APR-1993<br>93 95789 | 07-DEC-2001<br>3257816 |
| LUXEMBOURG | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>0508909 |
| MEXICO | 03-MAR-1992<br>92 915 | | |
| NETHERLANDS | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>0508909 |
| PHILIPPINES | 04-MAR-1992<br>44001 | | 16-APR-2002<br>1-1992-44001 |
| PORTUGAL | 04-MAR-1992<br>92 4200660 | 14-OCT-1992<br>0508909 | 05-AUG-1998<br>0508909 |

1/2

RESTRICTED CONFIDENTIAL

SYN094398

Exhibit 5.4
to the Acquisition and License Agreement
relating to certain assets of Bayer CropScience S.A.
between
Bayer CropScience S.A
and
Syngenta Participations AG

## DISCLOSURES VS. THE REPRESENTATIONS AND WARRANTIES OF THE SELLER

SYN094399

EXHIBIT 5.4

With regard to Article 5.4, the SELLER discloses or has disclosed to the PURCHASER the following which constitutes exceptions to Article 5.4 :

Monsanto Company and Monsanto Technology LLC v. Bayer CropScience LP, Civil Action No. 4:01CV01825CDP pending in the United States District Court for the Eastern District of Missouri – settled – see Order of Dismissal

Monsanto Company and Calgene Inc. v. Bayer CropScience S.A. and Bayer CropScience LP, Civil Action No. 00-1013 pending in the United States District Court for the District of Delaware – settled – see Stipulation and Order of Dismissal

Bayer CropScience, S.A. v. Monsanto Company and Dekalb Genetics Corporation, Civil Action No. 1:97cv1138 pending in the United States District Court for the Middle District of North Carolina (pending "GA21 Inventorship Litigation").

Bayer CropScience S.A. v. Monsanto Company et al, Role No. 98/6779 pending in the Regional Court of Paris, 3rd Division, 2nd Section ("French Litigation").


Reference is also made to EXHIBIT 1.1.4

RESTRICTED CONFIDENTIAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:01CV1825 CDP |
| | ) | |
| BAYER CROPSCIENCE, LP, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF DISMISSAL

Upon stipulation of the parties [# 110],

**IT IS HEREBY ORDERED** that this case is dismissed with prejudice as to

all of the parties' respective claims as to all crops other than corn and without

prejudice with respect to corn, except that Defendant's affirmative defense of patent

misuse is dismissed with prejudice in its entirety and for all crops. Each party shall

bear its own attorneys' fees and costs.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this __23rd__ day of October, 2003.

RESTRICTED CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, and
CALGENE LLC,

Plaintiffs,

v.

AVENTIS CROPSCIENCE SA, and
AVENTIS CROPSCIENCE USA LP,

Defendants.

C.A. NO. 00-1013-SLR

**JURY TRIAL DEMANDED**

## STIPULATION AND ORDER OF DISMISSAL

Plaintiffs, Monsanto Company and Calgene LLC, and Defendants, Aventis CropScience SA, and Aventis CropScience USA LP, by and through their undersigned counsel, hereby jointly stipulate, subject to the terms of a confidential written agreement between the parties, to the following: (a) dismissal with prejudice of Plaintiffs' claims; (b) with regard to Defendants' affirmative defense No. 19 and First Counterclaim (regarding the Comai patents), dismissal with prejudice; (c) with respect to Defendants' Second Counterclaim (regarding Shah patents), dismissal with prejudice with respect to all crops other than corn and dismissal without prejudice with respect to corn, except that the portion of Defendants' Second Counterclaim that is based on patent misuse is dismissed with prejudice in its entirety and for all crops. Each party shall bear it own attorneys' fees and cost.

Respectfully submitted,

RICHARDS LAYTON & FINGER

Robert W. Whetzel (#2288)
One Rodney Square
P.O. Box 951
Wilmington, DE 19899
Tel: (302) 651-7700

CONNOLLY BOVE LODGE & HUTZ LLP

George Pazuniak (#478)
Francis DiGiovanni (#3189)
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
Tel.: (302) 658-9141

SO ORDERED:

The Honorable Sue L. Robinson
October ___, 2003

Comai-Stip-Dismissal.doc

RESTRICTED CONFIDENTIAL

SYN094402

Exhibit 6.3.
to the Acquisition and License Agreement
relating to certain assets of Bayer CropScience S.A.
between
Bayer CropScience S.A.
and
Syngenta Participations AG

## DUE DILIGENCE CHECKLIST
## (DOCUMENTS DATAROOM)

εR

RESTRICTED CONFIDENTIAL

SYN094403



# LEGAL DUE DILIGENCE

**Check-list of information and documentation required on the legal standing of the companies and/or assets**

30363020.DOC

RESTRICTED CONFIDENTIAL

SYN094404

# TABLE OF CONTENTS

1.   CORPORATE (FOR THE COMPANIES ONLY) ........................................................3

2.   ASSETS (FOR COMPANIES AND ASSETS) .........................................................3

3.   INTELLECTUAL PROPERTY (FOR COMPANIES AND ASSETS) ...........................4

4.   AGREEMENTS AND COMMITMENTS ...............................................................6

5.   INSURANCE (COMPANIES) ..............................................................................9

6.   LABOR LAW (COMPANIES) .............................................................................9

7.   AUTHORIZATIONS (COMPANIES AND ASSETS) ...............................................10

8.   ENVIRONMENT (COMPANIES AND TO SOME EXTENT ASSETS) .......................15

9.   ANTI-TRUST AND RELATED MATTERS (COMPANIES) .....................................15

10.  LITIGATION (COMPANIES AND ASSETS) .........................................................15

11.  TAX (COMPANIES) ...........................................................................................16

\*

Exhibit 6.3.doc

RESTRICTED CONFIDENTIAL

SYN094405