# 1. CORPORATE (FOR THE COMPANIES ONLY)

## 1.1 Corporate status

## 1.2 Capital structure

## 1.3 Ownership of the shares of the Companies

## 1.4 Representation and banks

## 1.5 Group structure

(NOT APPLICABLE)

# 2. ASSETS (FOR COMPANIES AND ASSETS)

as regards research :

- General :
  - ⇒ Minutes/Actions/Presentations of meeting - 7/8/9 March 2001
  - ⇒ Q024 : H177 Event registration – Experimental Material Production and Supply to function (not event specific)
  - ⇒ R029a : QC report F2 male parent Agrogene (non GM parent ATCC)
- Argentina :
  - ⇒ Q030a : Hybryd seed Agrar production report
  - ⇒ P034a : Protocol for temperate hybrid production Agrar del Sur
  - ⇒ Q034a : Hybrid Seed Production report Agrar del Sur
- Spain :
  - ⇒ Q41 : Field Study report by Promo-Vert S.A. (Spanish locations)
  - ⇒ Q41a :Field Study report by Promo-Vert S.A. (Spanish locations)
  - ⇒ Field Trial report by Bayer CropScience on trials in Spain
  - ⇒ P041a : Field Study Plan (France and Spain)02 H MG AV P/A (France not executed)

Exhibit 6 3.doc    Page 3

RESTRICTED CONFIDENTIAL    SYN094406

⇒ P041b : Field Study Plan (France and Spain) 02 H MG AV P/A (France not executed)

⇒ P41 : Amendment to Field Study Plan with Promo-Vert 02 H MG AV P/A

⇒ P44 : Field Residue Study Plan. (France and Spain) 03 H MG AV/PA

⇒ <u>BRAZIL</u> : (see also section 7)

⇒ Q032 : lists of selfing material Brazil

⇒ Q33 : administrative file 01200.002173/01-68 – hybrid seed production 2001 Brazil field failed

⇒ S033a : inventory Hybrids Brazil – trial 2001

⇒ Q035 : 3way tropical hybrids Brazil

⇒ Q127 : raw data of selectivity : administrative file 01200.003127/02-67

⇒ Q127 : raw data of efficacy : administrative file 01200.003127/02-67

⇒ P127 : trial protocols : administrative file 01200.003127/02-67

⇒ Q127 : raw data of phenotypic evaluation : administrative file 01200.003127/02-67

⇒ Q127 : copy of internal reports

⇒ Q127a: draft efficacy report

⇒ R127 : QC lab report/Qc tools summary

⇒ S33 : seed inventory files (grouped by crop/trait)

⇒ Q137 : copy external reports

⇒ Q137a : draft report agronomy

## 3. INTELLECTUAL PROPERTY (FOR COMPANIES AND ASSETS)

⇒ Non-exhaustive information on IP rights relevant to GA21 (see also Section 10)
A. OTP Patent Rights
B. DMMG Patent Rights
C. Search for GA21 as trademark in databases related to Community, US and Canadian trademarks

⇒ Non-exhaustive information on IP rights relevant to GA21 (see also Section 10)
A. Dekalb patent application EP 721,509
Subject of an ownership claim of Bayer CropScience in the Paris court.

Exhibit 6.3.doc

Page 4

RESTRICTED CONFIDENTIAL

SYN094407

⇒ Legal opinion Burns Doane Swecker & Mathis LLP dated 5 June 2001 re 'potential use of third party commercial events as references in research'.

⇒ Legal opinion Connolly Bove Lodge & Hutz LLP dated 13 March 2002 re 'the validity of using NK603 seeds for comparison testing' (attached Monsanto Technology Stewardship Agreement)

⇒ Legal advice Connolly Bove Lodge & Hutz dated 30 April 2002 re 'interpretation of the ATCC agreement to use replicates on US soil to perform control tests'.

⇒ Legal advice Connolly Bove Lodge & Hutz dated 13 and 14 February 2001 re 'ATCC seeds'

⇒ Further email dated 1 March 2001 from Burns Doane Swecker & Mathis LLP re 'ATCC issue'

⇒ email from Connolly Bove Lodge & Hutz (G. Pazuniak) dated 20 February 2001 re 'H177 first meeting'

⇒ Legal memorandum Connolly Bove Lodge & Hutz dated 14 May 2002 re 'meeting of 7 May 2002'

⇒ some information regarding Roundup as background to the above legal opinions

⇒ email re 'Co-ownership of GlyTol patents' 23 October 2002

⇒ email re 'Co-ownership of GlyTol patents' 25 October 2002

⇒ Legal advice Connolly Bove Lodge & Hutz re 'field trials' – email 3 October 2001

⇒ Memorandum from Connolly Bove Lodge & Hutz -16 october 2000 - with advice re 'Selected Monsanto Related Patents'

⇒ Mail from Connolly Bove Lodge & Hutz - 22 September 2001 with list of patents prepared by DuPont

⇒ Official letter dated September 17, 2001 by Connolly Bove Lodge & Hutz to questions raised by Bayer on April 2, 2001 re 'ATCC'

⇒ E-mail Ernest Gutmann-Plasseraud (Franck Tetaz) - 14 November 2001 re GA21 patent situation in Brazil/Argentina

⇒ email 19 June 2001 re 'ATCC – leaf material

⇒ email from Connolly Bove Lodge & Hutz (G. Pazuniak) 19 June 2001 re 'ATCC – leaf material

⇒ email from Connolly Bove Lodge & Hutz – 16 March 2001 re 'Deregulation/Registration'

Exhibit 6.3.doc

RESTRICTED CONFIDENTIAL

SYN094408

⇒ Legal advice from Connolly Bove Lodge & Hutz re '11 questions concerning seeds' dated March 16 and 27, 2001

## 4. AGREEMENTS AND COMMITMENTS

### 4.1 Agreements

a) Material Transfer Agreements/Evaluation Agreements :

⇒ ATCC Material Transfer Agreement + shipping note

⇒ Contrat de Prestation de Services between Aventis CropScience SA and Rustica Prograin Génétique (3 February 2000) and Amendment (1 June 2001) (expired)

⇒ Agreement for Scientific Evaluation of Transgenic Material between Aventis CropScience SA and E.I. DuPont de Nemours and Company and Pioneer Hi-Bred International Inc. dated May 9, 2002, as amended on December 3, 2002 and Notification to Terminate as of February 20, 2003 and signed confirmation of destruction of material dated March 5, 2003 (terminated)

⇒ Transgenic Material Transfer Agreement between between Aventis CropScience SA and E.I. DuPont de Nemours and Company and Pioneer Hi-Bred International Inc. dated November 1, 2001, as amended on January 15, 2002 and Stewardship Agreement dated January 28, 2002 and Letter Agreement dated February 7, 2002 and Letter Agreement (extension) dated March 14, 2002 (superseded by above agreement)

⇒ Agreement for Scientific Evaluation of Biological Material between Aventis CropScience SA and Mucedola srl dated February 13, 2002 and draft termination letter

⇒ Agreement for Scientific Evaluation of Transgenic Material between Bayer CropScience SA and Nidera Semillas SA dated February 11/March 6, 2002 as amended on September 16, 2002

⇒ Agreement for Scientific Evaluation of Transgenic Material between Bayer CropScience SA and CHS Research dated November 25, 2002 (to be amended or terminated)

⇒ Agreement for Scientific Evaluation of Transgenic Material between Bayer CropScience SA and Syngenta Seeds dated October 14, 2002 and accepted Stewardship Guidelines (to be amended or terminated)

⇒ Material Transfer Agreement between Bayer CropScience LP and Strategic Diagnostics dated 11 November 2003

Exhibit 6.3.doc    Page 6

RESTRICTED CONFIDENTIAL    SYN094409

⇒ Amendment I to Service Agreement for Breeding and Product Development Activities between Aventis CropScience GmbH and Aventis Seeds Brasil Ltda. dated 27 November 2001 together with Letters Registering the Transfer of Biological Material and/or Information dated 17 October 2001 and 24 January 2002 (to be amended or terminated)

⇒ Framework Agreement between Bayer CropScience GmbH and Covance Laboratories Inc. dated 11 July 2002

b)    field trial agreements/Grain and Samples Production Agreements/Hybrid Corn Production Agreements/Service Agreements :

⇒ Contrat d'Experimentation Agricole au Champ between Aventis CropScience France SA and Promo-Vert SA dated May 14, 2002 and Letter registering the Transfer of Biological Material (material to be held in escrow until signature of Contrat) and draft termination letter

⇒ Contrat d'Experimentation Agricole au Champ between Bayer CropScience S.A. and Promo-Vert SA dated April 2, 2003 and draft termination letter

⇒ Grain and Samples Production Agreement between Bayer CropScience SA and Agrar del Sur dated December 2, 2002 (to be terminated)

⇒ Temperate Hybrid Production Agreement between Aventis CropScience SA and Agrar del Sur dated November 3, 2001 (terminated)

⇒ Temperate Hybrid Corn Production Agreement between Bayer CropScience SA and Agrar del Sur dated December 20, 2002 (to be terminated)

⇒ Service Agreement between Bayer CropScience GmbH and AGPM Services dated September 17, 2002 as amended on May 15, 2003 and draft termination letter

⇒ Service Agreement between Aventis CropScience GmbH an AgroGene S.A. dated April 16, 2002 and draft termination letter

c) Miscellaneous agreements :

⇒ Stipulation and Agreement between Dekalb Genetics and Rhone Poulenc Agro SA dated May 26, 1999, as amended on April 5, 2000 and side letter of April 5, 2000 and Second Amendment dated 24 March 2001 and Third Amendment dated April 8, 2002 and royalty reports and list of Licensees

⇒ Research Co-operation and License agreement between Bayer BioScience N.V., INRA and Agri Obtentions (signature copy)

⇒ Non-exclusive paid-up License Agreement between Rhone-Poulenc Agro SA and Cornell Research Foundation dated 12 October 1998

Exhibit 6.3.doc                                                                                  Page 7

RESTRICTED CONFIDENTIAL                                                                SYN094410

⇒ Consultancy agreement between Bayer Seeds Ltda. and Mr. Ernesto Paterniani dated 03 February 2003

⇒ Settlement Agreement between Dekalb Genetics Corporation and Aventis CropScience SA dated 7 August 2000 re immunity from suit under '545 patent and dismissal without prejudice re ' 390 patent

— Procès-Verbal dated 1 January 2000 (re name change of Rhône-Poulenc Agro S.A. to Aventis CropScience S.A.)

— Procès-Verbal dated 7 May 2002 (re name change of Aventis CropScience S.A. to Bayer CropScience S.A.)

d) Secrecy Agreements :

⇒ Confidentiality Agreement between Aventis CropScience USA LP and BASF Corporation dated 25 February 2002

⇒ Mutual non-disclosure Agreement between Bayer CropScience LP and Strategic Diagnostics dated 3 December 2003

⇒ Mutual non-disclosure agreement between Bayer CropScience LP and AgDia Inc. dated 25 April, 2003

⇒ Contrat de Secret between Bayer CropScience S.A. and L'Institut Pasteur dated 21 June 2002

⇒ Secrecy Agreement between Bayer CropScience SA and Promo-Vert SA dated September 10, 2001 as amended on February 3, 2003

⇒ Secrecy Agreement between Bayer CropScience AG and Genesis Midwest Laboratories LLC dated April 28, 2003

⇒ Secrecy Agreement between Aventis CropScience S.A. and Mucedola srl dated December 3, 2001

⇒ Secrecy Agreement between Aventis CropScience SA and Agrar del Sur dated November 3, 2001

e) Study Agreements :

⇒ Study Agreement between Bayer CropScience AG and Springborn Smithers Laboratories dated April 29, 2003 and draft termination letter

⇒ Study Agreement between Bayer CropScience AG and Genesis Midwest Laboratories LLC dated April 17, 2003 and draft termination letter

Exhibit 6.3.doc

Page 8

RESTRICTED CONFIDENTIAL

SYN094411

4.2  Breach of agreements

4.3  Intercompany agreements

## 5.  INSURANCE (COMPANIES)

5.1  Policies

5.2  Validity and enforceability

(NOT APPLICABLE)

## 6.  LABOR LAW (COMPANIES)

6.1  HR Information

6.2  Individual employment contracts

6.3  Work regulations

6.4  "Interim" workers and subcontractors

6.5  Remuneration and fringe benefits

6.6  Expatriates

6.7  Collective labor law issues

Exhibit 6.3.doc

Page 9

RESTRICTED CONFIDENTIAL                                          SYN094412

**6.8  Social security contributions and payroll taxes**

**6.9  Job security clauses**

**6.10  Reorganizations**

**6.11  Training programs**

**6.12  Consultants**

(NOT APPLICABLE)


## 7.  AUTHORIZATIONS (COMPANIES AND ASSETS)

–   <u>GENERAL</u> :

&rArr;  Q77 : Horizontal Gene Transfer
&rArr;  Q79 and Q80 : Known toxins and allergens
&rArr;  Q64a : Description of the base pair sequence of the double mutated maize 5-enol pyruvylskhikimate-3-phosphate synthase (2m EPSPS) and Description of the amino acid sequence of the double mutated maize 5-enol pyruvylskhikimate-3-phosphate synthase (2m EPSPS) (C033990 and C03991)
&rArr;  Q086a : 2mEPSPS Protein (C027848)
&rArr;  Q091a : 2mEPSPS Protein – epitope homolgy search (C032982)
&rArr;  Q095a : Preliminary safety assessment of 2mEPSPS (C029544)

&rArr;  Opinion of the Scientific Committee on Food on the Safety Assessment of the genetically modified maize line GA21, with tolerance to the herbicide glyphosate dated 6 March 2002

–   <u>ARGENTINA</u> :

&rArr;  ODJ Argentine corn product in Switzerland tests positive for GMO (Argentina)

&rArr;  GA21 Regulatory Status (Argentina)

&rArr;  Hybrid Seed Production 1 –2001 – field :

&rArr;  K30 : Permit applications : submission of field trial request to CONABIA

Exhibit 6.3.doc

Page 10

RESTRICTED CONFIDENTIAL

SYN094413

⇒ L30 : Permit notification : CONABIA's approval letter to FT request

⇒ M30 : permit compliance data : compliance sheet

⇒ O30 : government correspondence : (3)

⇒ Q30 : (see section assets/research)

⇒ Hybrid Seed Production 3 – 2002/3 – field :

⇒ K34 : Permit applciation : 21/12/02 : submission of field trial request to CONABIA

⇒ L34 : CONABIA's approval letter to FT request

⇒ O34 : Government correspondence : (6)

⇒ Hybrid Seed Production 4 – 2003/4 (back-up) – field :

⇒ K39 : Permit application : 26/09/2003 : submission of field trial request to CONABIA

⇒ O39: Government correspondence : (3)

⇒ Field Trial for regulatory studies – year 1 contra-season – 2002/3 :

⇒ K43 : Permit application : 1/10/02 : submission of field trial request to CONABIA

⇒ L43 : Permit notification : CONABIA's approval letter to FT request

⇒ O43 : Governement correspondence : (13)

⇒ Field Trial for regulatory studies – contra-season 2003/4 :

⇒ K49 : Permit application : 26/09/2003 : submission of field trial request to CONABIA

⇒ O49 : Governement correspondence : (4)

– BRAZIL :

⇒ Authorizations/permits to carry out Hybrid Seed Production :
    ⇒ K33 : administrative file 01200.002173/01-68
    ⇒ M33 : official inspections
    ⇒ N33 : conclusive report after termination
    ⇒ P33 : regulatory submission
    ⇒ O33 : government correspondence

Exhibit 6.3.doc

RESTRICTED CONFIDENTIAL

SYN094414

⇒ Authorizations/permits to carry out Efficacy Assessment of tropical 3-way hybrids :
 ⇒ K127 : administrative file 01200.003127/02-67
 ⇒ I127 : CBI agreement
 ⇒ K127 : Technical review CTNBio
 ⇒ K127 : temporary authorization to the field trial
 ⇒ K127 : official inspections
 ⇒ N127 : conclusive report after termination
 ⇒ P127 : regulatory submission
 ⇒ O127 : government correspondence

⇒ K : copy of all administrative or other authorization complementary to CTNBio's one required to carry out the activities

⇒ K : copy of compliance date of the field trials carried out (raw data, notebooks)

⇒ K : authorization for operation 001/02

⇒ State Register for Mato Grosso do Sul


– SPAIN :

⇒ Spanish and English version of Report dated 3 February 2003 on Field Trials with Glyphosate-tolerant maize Event H177 – Study 02 H MG AV P/A – 02 B 001
⇒ Spanish and English Summary Notification for field trials with glyphosate tolerant maize – 3 year program (2002/2004) – No. L280/80
⇒ Spanish and English Summary Notification for field trials with glyphosate tolerant maize – 3 year program (2002/2004) – No. L105/28
⇒ information, chart and parcel location re field trials Spain (Zaragoza, Benavente, Valladolid, Medina de Rioseco)
⇒ Authorization dated 24 June 2003 for Bayer to carry out field trials in the community of Castilla y Léon (Benavente, Medina de Rioseco, Valladolid)
⇒ Notification of Bayer to the Authorities dated 19 September 2003 that field trial in Valladolid and Benavente is being cancelled
⇒ Communication from Bayer to Authorities re sowing dates – 18 July 2003
⇒ Letter from Authorities Castilla y Léon dated 26 August 2003 re confidentiality
⇒ Letters to the Authorities Castilla y Léon dated 8 and 24 April 2003 requesting authorization for field trials with respective information (B/ES/03/38 and B/ES/02/01)
⇒ Letter to the Authorities Castilla y Léon dated 11 February 2002 re notification B/ES/02/01 with letter dated 2 January 2003 re corporate status and report 3 February 2003 attached
⇒ Field trial information sheets 2003 (Zaragoza, Benavente, Valladolid, Medina de Rioseco)
⇒ Field trial study plan No. 03 H MG AV P/B (Zaragoza, Spain – Saint Soulan, France)

Exhibit 6 3.doc

RESTRICTED CONFIDENTIAL                                                      SYN094415

⇒ Final authorization of the Community of Aragon dated 26 May 2003 (No. B/ES/03/38) and letter from Bayer to the Authorities dated 19 June 2003 that the trial was not carried out and letter from the Authorities dated 1 September 2003 re inspection.

⇒ Correspondence with Authorities of Aragon re authorization of fields trials in Zaragoza (mail 15 April 2003 – notice Authorities 11 April 2003) with respective information, letter Bayer 24 April 2003

⇒ Correspondence with the Authorities re notification B/ES/02/01 (letters Bayer 14 April 2003, 11 February 2003 and report 3 February 2003)

⇒ Letters to the Spanish Ministry 18 December 2001 requesting authorization to carry our field trials with glyphosate tolerant maize in different locations (Castilla y Léon, Aragón, Andalucía and Extremadura) (with copy of 12 draft letters 13 December 2001 !) and copy signed letters 13 December 2001 re trials in Castilla y Léon and Extremadura

⇒ Spanish and English Summary Notification for field trials with glyphosate tolerant maize – 3 year program (2002/2004) – No. L105/28

⇒ Part B dossier – H177 maize (draft) and (final) under Notification B/ES/02/01

⇒ Opinion of the Scientific Committee on Food on the safety assessment of the genetically modified maize line GA21, with tolerance to the herbicide glyphosate (27 February 2002)

⇒ Letter (fax) from the Ministry to Bayer dated 12 March 2002 with draft letter Bayer of same date

⇒ Letters from Bayer dated 25 February 2002 to Ministry with additional information re trials under notification B/ES/02/01, with additional information on Spanish trial plots and set-up (6 pages)

⇒ Letter (fax) from the Ministry to Bayer dated 12 February 2002 (re B/ES/02/01)

⇒ Field trial information sheets 2001

Communications with the Authorities

⇒ <u>Junta de Castilla y Léon</u> :
   ⇒ Formal authorization to Bayer (24 June 2003) to carry out field trials under notification B/ES/03/38
   ⇒ Formal authorization to Bayer (25 April 2002) to carry out field trials under notification B/ES/02/01 (with related letters 14 May 2002 and 6 February 2003), letter of Bayer dated 4 November 2002 re destruction
   ⇒ 2 letters from Bayer requesting confidentiality obligations dated 13 December 2001 and official resolution by the Authorities of Castilla y Léon dated 3 and 5 July 2002
   ⇒ request from the Authorities for more information (22 January 2002) and replies from Bayer (draft letters 4 and 6 March 2002) with relevant documentation (agreements 7 February 2002 Bercero and Marzales, agreement 20 October 2001 Benavente, plans trial Bercero and Marzales)
   ⇒ Field Study Plan 02 H MG AV P/A (Benavente trial)
   ⇒ Letter (fax) Authorities Castilla y Léon (14 February 2002)

⇒ <u>Comunidad de Aragón</u> :
   ⇒ Letter by fax from Bayer 9 April 2002 to CSIC requesting additional scientific documentation re the release of GM corn

*ER*

Page 13

Exhibit 6 3.doc
RESTRICTED CONFIDENTIAL                                        SYN094416

⇒ formal Authorization to Bayer to carry out field trials under notification B/ES/03/38 (26 May 2003)
⇒ Official request from Bayer to Authorities to carry out field trials (13 December 2001), formal Authorization to Bayer to carry out field trials under notification B/ES/02/01 (25 March 2002)
⇒ Official notification of destruction of the Aragón field trial due to hailstorm dated 19 July 2002 (with photographs)

⇒ <u>Junta de Andalucía</u> :
   ⇒ Official request from Bayer to Authorities to carry out field trials (13 December 2001), formal Refusal to Bayer to carry out field trials under notification B/ES/02/01 (21 May 2002), and further letter from Bayer (22 May 2002) to Authorities with request to reconsider refusal

⇒ <u>Junta de Extremadura</u> :
   ⇒ Refusal (17 January 2002, 5 April 2002, 8 April 2002, 9 April 2002) to Bayer to carry out field trials under notification B/ES/02/01
   ⇒ Contracts 13 February 2002 re field trial La Garrovilla and Guarena


– official submission by Bayer to the Ministry (12 February 2003) of Study Reports containing results of the Molecular Characterization carried out under notification B/ES/03/38 :
   – Report C029115
   – Report C029116
   – Report C027846
   – Report C027848

Exhibit 6.3.doc

Page 14

RESTRICTED CONFIDENTIAL

SYN094417

## 8. ENVIRONMENT (COMPANIES AND TO SOME EXTENT ASSETS)

### 8.1 General information

### 8.2 Site history

### 8.3 Building and zoning prescriptions

### 8.4 Operating permits / Environmental permits

### 8.5 Claims and litigation

(NOT APPLICABLE)

## 9. ANTI-TRUST AND RELATED MATTERS (COMPANIES)

(NOT APPLICABLE)

## 10. LITIGATION (COMPANIES AND ASSETS)

⇒ RPA vs. Monsanto & Dekalb
Middle District of North Carolina
Civil Action No 1 :97CV01138

A. Fraud, patent infringement

- Oct 10, 1997 : RPA complaint
- Feb 8, 2000 : Decision District Court fraud, rescission of license, infringement
- Nov 19, 2001 : Decision CAFC (1)
- Nov 19, 2001 : Decision CAFC (2))
- Mar 26, 2002 : Decision CAFC en banc on BFL
- Apr 10, 2002 : Decision CAFC en banc on fraud, infringement punitive damages
- Jun 27, 2003 : Supreme Court denial of Monsanto's petition for writ for certiorari (BFL)
- Sep 29, 2003 : Decision CAFC on remand from Supreme Court on punitive damages

Exhibit 6 3.doc

RESTRICTED CONFIDENTIAL    SYN094418

B. Co-ownership
- Sep 1, 2000 : Advisory jury verdict
- Sep 5, 2003 : Court's order re consideration sur-reply
- US Patent 6,040,497
- Information on equivalents of '497 patent
- US Patent 5,554,798
- Information on equivalents of '798 patent
- Selected non-confidential pleadings : see attached list designated as Rhone-Poulenc v. Monsanto – 5500*11 – Pleadings Inventorship (two of which are indicated as Filed Under Seal)
- Letters to the courts

⇒ A
Calgene LLC vs RPA
American Arbitration Association
No 50 T 153 00190 99

    –    Sep 2001 : arbitration award + Sisk opinion
    –    Sep 20, 2002 confirmation of award by District Court of Delaware

⇒ B
Monsanto Company and Calgene LLC vs. Aventis CropScience SA and Aventis CropScience LP
District of Delaware
Civil Action No OO-1013-SLR

    –    Sep 30, 2002 : Orders
    –    Oct 24, 2003 : Stipulation and Order of Dismissal

⇒ C
Monsanto Company and Monsanto technology LLC vs. Aventis CropScience SA and Aventis CropScience LP
Eastern District of Missouri
Civil Action No 4:01CV01825 (CDP)

- Nov 20, 2001 : complaint
- Mar 23, 2002 : Answer of Aventis CropScience USA LP
- May 2, 2002 : Memorandum and order
- Jul 2, 2003 : Claims Construction Order
- Oct 23, 2003 : Order of Dismissal

## 11. TAX (COMPANIES)

(NOT APPLICABLE)

*ER*

Exhibit 6.3.doc

RESTRICTED CONFIDENTIAL

SYN094419

RHONE POULENC v. MONSANTO

5500*11

PLEADINGS - INVENTORSHIP

| | | |
|---|---|---|
| 4/21/00 | RPA's Motion for Leave to File Its Amended Reply to Amended Counterclaims of DeKalb Genetics Corp. and Counterclaim Thereto and Proposed Order | 583 |
| 5/11/00 | DeKalb's Combined (1) Opposition to RPA's Motion To Amend and (2) Renewed Motion to Dismiss RPA's Counterclaim, or Alternatively to Stay the Trial on RPA's Counterclaim | 607 |
| 5/25/00 | Plaintiff's Reply Memorandum in Support of its Motion to Amend its Counterclaim | 612 |
| 6/6/00 | Order re: dismissal of antitrust claims and dismissal of breach of contract claims | 621 |
| 6/7/00 | DeKalb's Reply Brief in Support of its Renewed Motion to Dismiss RPA's Counterclaim, or Alternatively to Stay the Trial on RPA's Counterclaim . | 622 |
| 6/9/00 | Amended Reply to Amended Counterclaims of DeKalb Genetics Corp., and Counterclaim Thereto | 624 |
| 6/14/00 | RPA's First Supplemental Answer to DeKalb's First Set of Interrogatories re: DeKalb's and RPA's Counterclaims [1-2] | 626 |
| 6/26/00 | DeKalb's Answer to RPA's April 21, 2000 Amended Reply to Amended Counterclaims of DeKalb Genetic Corp. and Counterclaim Thereto | 631 |
| 7/3/00 | DeKalb's Motion for Partial Summary Judgment on RPA's Co-Inventorship Counterclaims | 634 |

RESTRICTED CONFIDENTIAL

SYN094420

| | | |
|---|---|---|
| 7/3/00 | Brief in Support of DeKalb's Motion for Partial Summary Judgment on RPA's Co-Inventorship Counterclaims | 638 |
| 7/10/00 | Clocked-in Order re: Consensual Stipulation | 639(a) |
| 7/17/00 | RPA's Answering Brief in Opposition to DeKalb's Motion For Summary Judgment on Co-Inventorship Claims | 645 |
| 7/24/00 | Further Consensual Stipulation and amendment of Joint Rule 26(f) Report | 655 |
| 7/24/00 | Reply Brief In Support Of DeKalb's Motion for Partial Summary Judgment on RPA's Co-Inventorship Counterclaims | 656 |
| 7/26/00 | Unsigned - RPA's Sur-Reply Brief In Opposition To DeKalb's Motion For Summary Judgment on Co-Inventorship Counterclaims | 659 |
| 8/10/00 | Dekalb's Trial Brief for RPA's Co-Inventorship Claim | 697 |
| 8/10/00 | RPA's Trial Brief for August 2000 Trail Regarding Co-inventorship of Dekalb's Patents | 698 |
| 8/14/00 | RPA's Supplemental Brief on Standing | 700 |
| 8/16/00 | Revised Stipulation and Order | 704 |
| 8/16/00 | ORDER | 705 |
| 8/29/00 | DeKalb's Motion and Brief in Support of its Motion for JMOL At The Close of RPA's Case-In-Chief | 712 |
| 8/31/00 ~~8/29/00~~ | DeKalb's Proffer of Excluded Evidence | 715 |
| 9/1/00 | . Final Jury Instructions | 716 |
| 9/1/00 | Verdict Form | 717 |
| 9/29/00 | DeKalb's Post-Trial Brief on Equitable Estoppel | 721 |
| 9/29/00 | DeKalb's Post-Trial Proposed Findings of Fact and Conclusions of Law | 722 |

SYN094421

# EXHIBIT 41

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 42

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 43

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

EXHIBIT 44

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 45

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

EXHIBIT 46

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

EXHIBIT 47

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

EXHIBIT 48

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 49

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 50

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 51

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington DC 20004-2402
T 202 783 0800
F 202 383 6610
www.howrey.com

Direct Dial 202 383 6809

December 8, 2005

Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022

Dear Steve:

Enclosed is a draft of Monsanto's proposed jurisdictional discovery requests to Syngenta AG and Syngenta Participations AG. including requests for production of documents, interrogatories. and a Rule 30(b)(6) deposition notice to each of the Syngenta entities

In addition to Rule 30(b)(6) depositions, we also propose to take the depositions of a few individuals whom we believe will have relevant information relating to the parties' jurisdictional dispute   These persons include David Jones, Ioana Tudor, Adrian Dubock, Michael Mack and John Sorenson

Please feel free to contact me if you have any questions or concerns

Sincerely,

*Tiffany Joseph-Daniels*

Tiffany Joseph-Daniels

Enclosures

cc:     John Rosenthal

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-305-SLR |
| | ) | (Consolidated) |
| SYNGENTA SEEDS, INC., | ) | |
| SYNGENTA BIOTECHNOLOGY, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF 30(B)(6) DEPOSITION OF COUNTERCLAIM-DEFENDANTS
CONCERNING PERSONAL JURISDICTION**

TO:     COUNTERCLAIM-DEFENDANTS AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that counterclaimants Monsanto Company and Monsanto

Technology LLC (collectively "Monsanto") will take the deposition of counterclaim-defendants

Syngenta AG, Syngenta Participations AG, and Syngenta Seeds, Inc. pursuant to Rule 30(b)(6) of

the Federal rules of Civil Procedure. The deposition will take place at _____. The

deposition will commence on _____ at 9:00 a.m. or at another agreed upon date and will

continue thereafter day to day until completed. The subject matter of the deposition is set forth in

Attachment A.

Counterclaim-Defendants are required to **separately and independently** designate,

pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, one or more officers, directors,

employees or other persons who will testify on its behalf regarding the subject matter listed in

Attachment A. Counterclaim-Defendants are requested to provide Monsanto's counsel, as soon

as reasonably possible, a written designation of the name(s) and position(s) of the agent(s) or

other person(s) who consent to testify on behalf of counterclaim-defendants and, for each person

designated, the matters set forth in Attachment A as to which he or she will testify.

The deposition will be taken before a qualified Notary Public or before some other officer

authorized by law to administer oaths. The deposition will be recorded by audio, video and

stenographic means.

Respectfully submitted,

_____

| | |
|---|---|
| Peter E. Moll | Richard L. Horwitz (#2246) |
| Scott E. Flick | POTTER ANDERSON & CORROON, LLP |
| John J. Rosenthal | Hercules Plaza, 6th Floor |
| HOWREY LLP | 1313 N. Market St. |
| 1299 Pennsylvania Ave., N.W. | Wilmington, DE 19801 |
| Washington, DC  20004 | (302) 984-6000 |
| (202) 783-0800 | (302) 658-1192 facsimile |
| (202) 383-6610 facsimile | |

Attorney for MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Of Counsel

Dated: December   , 2005

2

## ATTACHMENT A

### Definitions

A.     **"You**," **"your**," **"yours"** and **"Counterclaim-Defendants"** shall mean and refer to the Swiss publicly-traded companies Syngenta AG, its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf, and/or Syngenta Participations AG, its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf, and/or Syngenta Seeds, Inc., its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf, including but not limited to Syngenta Biotechnology, Inc., Golden Harvest Seeds, Inc., Garst Seed Company, Advanta B.V., Advanta Seeds, Inc., CHS Research, Inc., Novartis, AstraZeneca and GreenLeaf Genetics.

B.     **"Syngenta"** shall mean and refer to Syngenta Seeds, Inc., its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf, including, but not limited to, Syngenta AG, Syngenta Biotechnology, Inc., Golden Harvest Seeds, Inc., Garst Seed Company, Advanta B.V., Advanta Seeds, CHS Research, Inc. and GreenLeaf Genetics.

C.     **"Golden Harvest"** shall mean and refer to Golden Harvest Seeds, Inc., its predecessors, successors, subsidiaries and affiliates, and each of its present and former officers, directors, managers, employees, agents, and all other persons acting or purporting to act on its behalf, including but not limited to Golden Seed Company, Garwood Seed Company, J.C. Robinson Seeds, Inc., Sommer Bros. Seeds Company, and Thorp Seed Company.

3

D.    **"Garst"** shall mean and refer to Garst Seed Company, its predecessors, successors, subsidiaries and affiliates, and each of its present and former officers, directors, managers, employees, agents, and all other persons acting or purporting to act on its behalf, including, but not limited to, AgriPro Seeds, Inc., PSA Genetics LLC, and Fred Gutwein & Sons, Inc.

E.    **"Monsanto"** means Monsanto Company, its predecessors, successors, subsidiaries and affiliates, and each of its present and former officers, directors, managers, employees, agents, and all other persons acting or purporting to act on its behalf, including but not limited to Monsanto Technology, LLC.

F.    **"Amended Complaint"** refers to the Amended Complaint filed by Syngenta Seeds, Inc., on September 14, 2004 and docketed at Civ. No. 04-908-SLR, in the United States District Court for the District of Delaware.

G.    **"Second Amended Complaint"** refers to the Second Amended Complaint filed by Syngenta Seeds, Inc., on September 23, 2005, and docketed at Civ. No. 04-305-SLR, in the United States District Court for the District of Delaware.

H.    **"Inbred seed"** shall mean and refer to seed created by self-pollination of a homozygous or nearly homozygous parent plant or from the mating of genetically similar homozygous or nearly homozygous parent plants, such as seed created by the self-pollination of an inbred parent plant or seed created by backcrossing with a recurrent parent plant following a cross between a recurrent parent plant and a non-recurrent parent plant.

I.    **"Hybrid seed"** shall mean and refer to seed created by crossing genetically dissimilar parent plants, such as seed created by the crossing of genetically dissimilar inbred parent plants.

J.    **"Foundation corn seed"** shall mean and refer to any inbred seed or other parent seed stock used in the production of commercial hybrid seed corn.

K.    **"Transgenic technology"** shall mean and refer to technology or research related to artificially introducing genetic material into seeds, plants, cells, or genetic material and also

4

shall mean and refer to technology or research for propagating and characterizing such seeds, plants, cells, or genetic material containing such artificially introduced genetic material.

   L.  **"Person"** or **"persons"** refers to all individuals and entities, including all natural persons, corporations, partnerships, ventures or other business associations, societies, associations-in-fact, all federal, foreign, state, local or other governmental entities, and all legal entities including all members, officers, employees, agents, representatives, attorneys, successors, predecessors, assigns, divisions, affiliates and subsidiaries.

   M.  Terms not specifically defines shall be given their ordinary meaning.  Should Counterclaim-Defendants be unable to understand the meaning of any term, Counterclaim-Defendants are invited to immediately seek clarification through Counterclaimant's counsel.

**Topics for Deposition**

1.     Your organizational structure, including, but not limited to Syngenta AG's and Syngenta Participations AG's ownership interest in Syngenta.

2.     The duties and responsibilities of your upper management business units and committees.

3.     The nature and extent of the relationship between Syngenta AG, Syngenta Participations AG and Syngenta, including the extent to which Syngenta AG and/or Syngenta Participations AG has exercised control over or otherwise influenced the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, insecticides and/or herbicides used in conjunction with any transgenic or conventional seeds.

4.     Your involvement in the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides.

5.     The involvement of any officer, director, or managerial employee in the management or operations of Syngenta, including but not limited to budgetary oversight and reporting requirements.

6.     The duties, authority and/or responsibility your business units and/or committees have for the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides by Syngenta.  These business units and committees include but are not limited to Business Development Leadership Committee, Plant Science Management Team, Corn Business Team, Technical Review Committee, Plant Science Product Development Committee, Commercial Steering Team and Corn Product Pipeline Team.

6

7.    Your instructions, directions, policies or procedures to Syngenta regarding the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides.

8.    The common use of trademarks, patents or other intellectual property owned or utilized by Syngenta AG, Syngenta Participations AG, or any of its subsidiaries or affiliates, and Syngenta.

9.    The common use or presentation of a common advertising, marketing or sales image or identity by Syngenta AG, Syngenta Participations AG, or any of its subsidiaries or affiliates, and Syngenta.

10.    Licensing, marketing, sales, distribution, indemnity and confidentiality agreements between Syngenta AG, Syngenta Participations AG and Syngenta, including but not limited to the confidentiality agreements entered into with members of the Corn Business Team.

11.    The business activities of Syngenta AG and Syngenta Participations AG in the United States, including, but not limited to, any assets owned or operated in the United States.

12.    Visits of any officer, director, employee or agent of Syngenta AG or Syngenta Participations AG to the United States in connection with the development, production, purchase, sale, licensing, marketing and/or commercialization of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, insecticides and/or herbicides, including the purpose of each trip, and each location visited during each such trip.

13.    Syngenta AG and/or Syngenta Participations AG's acquisition of the GA21 event and the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of the GA21 event or any product containing the GA21 event.

14.    The transfer of persons responsible for the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds,

herbicides and/or insecticides between or among Syngenta AG, Syngenta Participations AG and Syngenta.

15.    The travel to the United States of any officer, director, employee or agent of Syngenta AG and/or Syngenta Participations AG in connection with the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides.

16.    The business activities in and/or visits to Delaware by Syngenta AG, Syngenta Participations AG, and Syngenta, and any officer, director, employee or agent, including but not limited to contracts entered into with Delaware entities and efforts to negotiate such contracts.

17.    Your efforts to market, license, sale or commercialize seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, insecticides and/or herbicides, in Delaware.

18.    The duty and responsibilities of any employee, board member or other person that serves as a contact for you in the United States or has any other responsibility in the United States for you and that resides in or has an office in Delaware or any other State in the U.S., including but not limited to the VP of Corporate Communications for Syngenta Corporation, who is listed as your contact person for all Syngenta AG press releases, the VP of Finance of Syngenta Corporation, the CFO of Syngenta Corporation, the Global Head of Ventures for Syngenta Corporation, and the Chairman of Syngenta Corporation

19.    The acquisition of Golden Harvest and Garst.

20.    The revenues generated from each customer and/or licensee in the State of Delaware for seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, transgenic technology, herbicides and/or insecticides.

21.    The documents reviewed by and/or information provided to Daniel Michaelis and Ed Resler for the preparation of their respective declarations filed in support of your motion to

dismiss for lack of personal jurisdiction, which was filed in the instant action on November 21, 2005.

 22.  Your document retention policy.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-305-SLR |
| | ) | (Consolidated) |
| SYNGENTA SEEDS, INC., | ) | |
| SYNGENTA BIOTECHNOLOGY, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MONSANTO'S FIRST SET OF INTERROGATORIES
REGARDING PERSONAL JURISDICTION**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Civil Rule 26.1, defendants Monsanto Company and Monsanto Technology LLC (collectively "Monsanto"), hereby request that counterclaim-defendants Syngenta AG and Syngenta Participations AG **each separately and independently** answer these interrogatories in accordance with the rules of the court, in writing and under oath, and to serve a copy of your answers upon counsel for Monsanto within thirty (30) days of service of these interrogatories.

**DEFINITIONS**

The following definitions apply to this request:

A.    **"You," "your,"** and **"yours"** shall mean and refer to the Swiss publicly-traded company Syngenta AG, its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf, and/or Syngenta Participations AG, its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or

other persons acting or purporting to act on its behalf, including but not limited to Syngenta

Seeds, Inc., Syngenta Biotechnology, Inc., Golden Harvest Seeds, Inc., Garst Seed Company,

Advanta B.V., Advanta Seeds, Inc., CHS Research, Inc., Novartis, AstraZeneca and GreenLeaf

Genetics.

      B.     **"Syngenta"** shall mean and refer to Syngenta Seeds, Inc., its predecessors,

successors, subsidiaries, affiliates and each of its present or former officers, directors, managers

and any employees, agents, attorneys, representatives, or other persons acting or purporting to act

on its behalf, including, but not limited to, Syngenta AG, Syngenta Biotechnology, Inc., Golden

Harvest Seeds, Inc., Garst Seed Company, Advanta B.V., Advanta Seeds, CHS Research, Inc.

and GreenLeaf Genetics.

      C.     **"Golden Harvest"** shall mean and refer to Golden Harvest Seeds, Inc., its

predecessors, successors, subsidiaries and affiliates, and each of its present and former officers,

directors, managers, employees, agents, and all other persons acting or purporting to act on its

behalf, including but not limited to Golden Seed Company, Garwood Seed Company, J.C.

Robinson Seeds, Inc., Sommer Bros. Seeds Company, and Thorp Seed Company.

      D.     **"Garst"** shall mean and refer to Garst Seed Company, its predecessors,

successors, subsidiaries and affiliates, and each of its present and former officers, directors,

managers, employees, agents, and all other persons acting or purporting to act on its behalf,

including, but not limited to, AgriPro Seeds, Inc., PSA Genetics LLC, and Fred Gutwein & Sons,

Inc.

      E.     **"Monsanto"** means Monsanto Company, its predecessors, successors,

subsidiaries and affiliates, and each of its present and former officers, directors, managers,

employees, agents, and all other persons acting or purporting to act on its behalf, including but

not limited to Monsanto Technology, LLC.

      F.     **"Amended Complaint"** refers to the Amended Complaint filed by Syngenta

Seeds, Inc., on September 14, 2004 and docketed at Civ. No. 04-908-SLR, in the United States

District Court for the District of Delaware.

G.     **"Second Amended Complaint"** refers to the Second Amended Complaint filed by Syngenta Seeds, Inc., on September 23, 2005, and docketed at Civ. No. 04-305-SLR, in the United States District Court for the District of Delaware.

H.     **"Inbred seed"** shall mean and refer to seed created by self-pollination of a homozygous or nearly homozygous parent plant or from the mating of genetically similar homozygous or nearly homozygous parent plants, such as seed created by the self-pollination of an inbred parent plant or seed created by backcrossing with a recurrent parent plant following a cross between a recurrent parent plant and a non-recurrent parent plant.

I.     **"Hybrid seed"** shall mean and refer to seed created by crossing genetically dissimilar parent plants, such as seed created by the crossing of genetically dissimilar inbred parent plants.

J.     **"Foundation corn seed"** shall mean and refer to any inbred seed or other parent seed stock used in the production of commercial hybrid seed corn.

K.     **"Transgenic technology"** shall mean and refer to technology or research related to artificially introducing genetic material into seeds, plants, cells, or genetic material and also shall mean and refer to technology or research for propagating and characterizing such seeds, plants, cells, or genetic material containing such artificially introduced genetic material.

L.     **"Document"** has the same meaning as in Fed. R. Civ. P. 34 and includes documents in the possession, custody or control of both Syngenta Seeds, Inc., including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

M.     **"Communication" or "Statement."** The term "communication" or "statement" means the written, electronic or oral transmittal of information (in the form of facts, ideas, inquiries or otherwise).

N.     **"Identify" (with respect to persons).** When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

3

Once a person has been identified in accordance with the subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

      O.     **"Identify" (with respect to documents).**  When referring to documents, "to identify" means to provide the: (i) type of documents; (ii) general subject matter; (iii) date of the document; and (iv) author(s), address(es) and recipient(s).

      P.     **"Identify" (with respect to a communication or statement).**  When referring to a communication or statement, "to identify" means to provide: (i) the person(s) making the communication; (ii) the person(s) to whom the communication was made; (iii) whether the communication is written, electronic or oral; (iv) the person(s) present during the communication; (v) the date of the communication; and (vi) the location of the communication.

      Q.     **"Concerning."**  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

      R.     **"Person"** or **"persons"** refers to all individuals and entities, including all natural persons, corporations, partnerships, ventures or other business associations, societies, associations-in-fact, all federal, foreign, state, local or other governmental entities, and all legal entities including all members, officers, employees, agents, representatives, attorneys, successors, predecessors, assigns, divisions, affiliates and subsidiaries.

      S.     **"Relating to"** or **"related to"** shall mean constituting, defining, describing, discussing, involving, concerning, containing, embodying, reflecting, identifying, stating, analyzing, mentioning, responding to, referring to, dealing with, commenting upon, prepared in connection with, used in preparation for, appended to, pertaining to, having any relationship to or in any way being factually, legally or logically connected to, in whole or in part, the stated subject matter.

      T.     **"Referring to"** means constituting, comprising, concerning, regarding, containing, setting forth, showing, disclosing, describing, explaining, summarizing, either

4

directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

## INSTRUCTIONS

If any information called for by any interrogatory is withheld on the basis of privilege or work product, state the nature of the privilege claimed and provide sufficient information concerning the basis of the claim to permit a full determination of whether the claim is valid, including separately for each such document: (i) its date; (ii) its author(s) and the business or position of its author(s); (iii) its recipient(s) and the business or position of each of its recipient(s); (iv) its subject matter; and (v) the paragraph of the request to which the information is responsive.

## RELEVANT TIME PERIOD

Unless otherwise stated in the context of a specific request, all documents and things requested is for the time period January 1, 1996, to the present.

## INTERROGATORIES

1.    Describe your organizational structure, including the nature and extent of your ownership interest in Syngenta.

2.    Identify each officer, director and/or employee that had any authority or responsibility for the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides, and for each person identified, state separately each person's (a) job title, (b) office location, (c) duties and responsibilities, (d) and dates of employment.

3.    Identify each officer, director, and/or employee who had any involvement or responsibility for the setting or changing of the prices or other terms or conditions of the sale or licensing in the United States for seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides.

5

4.       Identify each instance in which you participated in the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides by Syngenta, and for each instance identified, describe with particularity the nature of your participation, including but not limited to the oversight and control you exert over the budgets of Syngenta, the negotiation of the Bayer GA21 agreement, obtaining regulatory approvals for GA21 and GA21 stacks, the marketing of GA21 products in the U.S. market, and the acquisition of Garst and Golden Harvest.

5.       Identify each officer, director, or managerial employee that is involved in any aspect of the management, operations or budgetary oversight of Syngenta, including but not limited to membership on, or participation in, any board of directors, executive committee, management committee, regulatory committee or technical committee of Syngenta, and for each person identified, state separately the nature of that person's involvement.

6.       Describe the authority or responsibility the following business units and/or committees have for the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides by Syngenta:  Business Development Leadership Committee, Plant Science Management Team, Corn Business Team, Technical Review Committee, Plant Science Product Development Committee, Commercial Steering Team and Corn Product Pipeline Team.

7.       For each business unit and committee identified in Interrogatory No. 6, identify its members during the relevant period and identify each Syngenta business unit and/or committee for which it has oversight and/or authority, describing with particularity its reporting relationship with Syngenta and the nature and extent of the oversight and/or authority over the Syngenta business unit and/or committee, including but not limited to the reporting requirements of the Corn Business Team and Syngenta's regulatory affairs managers to you.

8.    Identify each and every trademark, patent, or other intellectual property that is commonly used by you, or any of your subsidiaries or affiliates, and Syngenta, and state the name in which each is registered.

9.    Identify each and every advertising, marketing or sales image or identity that is commonly used by you, or any of your subsidiaries or affiliates, and Syngenta.

10.    Identify all licensing, marketing, sales, distribution, indemnity or confidentiality agreements between you and Syngenta, including but not limited to the confidentiality agreements members of the Corn Business Team entered into with you.

11.    Identify each and every person that has transferred between or among you and Syngenta, and for each person identified, state separately: (a) the dates of employment with you; (b) the dates of employment with Syngenta; (c) the duties and responsibilities with you; (d) the duties and responsibilities with Syngenta; and (e) the reasons for each transfer.

12.    Identify each officer, director, or managerial employee that has visited the United States in connection with the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides, and for each such person identified state separately the date(s) of each visit, the specific location visited, and the purpose and nature of the visit.

13.    Identify each and every officer, director, or managerial employee that was involved in Syngenta, Syngenta AG and/or Syngenta Participations AG's attempts to negotiate an agreement with Monsanto for NK603, and identify with specificity the entity with which each person was employed at the time of their involvement, the dates of their involvement, and their duties and responsibilities.

14.    Identify any business or company in the United States that is involved in the development, research, testing, marketing or sale of seed, chemicals or transgenic technology for which you have any ownership interest, including but not limited to Golden Harvest, Garst,

7

Torrey Mesa Research Institute and Diversa Corporation, and describe with particularity your involvement in the operations of each company identified.

15.    Identify each and every customer and/or licensee in the State of Delaware for your seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, transgenic technology, herbicides and/or insecticides.

16.    Identify each and every officer, director, managerial employee, board member or other person that serves as a contact for you in the United States or has any other responsibility in the United States for you and that resides in or has an office in Delaware or any other State in the U.S., including but not limited to the VP of Corporate Communications for Syngenta Corporation, who is listed as your contact person for all Syngenta AG press releases, the VP of Finance of Syngenta Corporation, the CFO of Syngenta Corporation, the Global Head of Ventures for Syngenta Corporation, and the Chairman of Syngenta Corporation, and for each person identified, describe with particularity their duties and responsibilities as it relates to you and each of their office locations.

17.    Identify each acronym and/or designation that appears in company emails behind a person's name, stating with specificity the meaning of each acronym and/or designation.

18.    Identify all complaints filed in the United States in which you were named as a defendant and to which you filed an answer.

19.    Identify all motions to quash service of process or to dismiss for lack of personal jurisdiction that you have filed in any United States court.

20.    Identify all contracts to which you were or are a party that was entered into with a Delaware resident or corporation, including but not limited to your contract with Strategic Diagnostics Inc., Diversa Corporation, and the University of Delaware or faculty members of the University of Delaware.

21.    Identify all contracts to which you were or are a party that contain a Delaware state or federal forum selection clause or a Delaware choice of law provision.

8

22.    State whether you contend that you are not subject to the exercise of personal jurisdiction of any state forum in the United States. If you do not so contend, identify each state in which you have submitted to personal jurisdiction or waived any objection to personal jurisdiction, or otherwise contend that the exercise of personal jurisdiction over you is proper.

Respectfully submitted,

Peter E. Moll
Scott E. Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004
(202) 783-0800
(202) 383-6610 facsimile

Richard L. Horwitz (#2246)
POTTER ANDERSON & CORROON, LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile

Attorney for MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Of Counsel

Dated: December   , 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-305-SLR |
| | ) | (Consolidated) |
| SYNGENTA SEEDS, INC., | ) | |
| SYNGENTA BIOTECHNOLOGY, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MONSANTO'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
## AND THINGS REGARDING PERSONAL JURISDICTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.1, defendants Monsanto Company and Monsanto Technology LLC (collectively "Monsanto"), hereby request that counterclaim-defendants Syngenta AG and Syngenta Participations AG **each separately and independently** produce for inspection and copying the documents and things identified below within thirty (30) days, at the offices of Howrey LLP, 1299 Pennsylvania Avenue, N.W., Washington, D.C. 20004, or at such other place as may be mutually agreed upon.

## DEFINITIONS

The following definitions apply to this request:

A.    "**You**," "**your**," and "**yours**" shall mean and refer to the Swiss publicly-traded company Syngenta AG, its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf, and/or Syngenta Participations AG, its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or

other persons acting or purporting to act on its behalf, including but not limited to Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Golden Harvest Seeds, Inc., Garst Seed Company, Advanta B.V., Advanta Seeds, Inc., CHS Research, Inc., Novartis, AstraZeneca and GreenLeaf Genetics.

      B.      **"Syngenta"** shall mean and refer to Syngenta Seeds, Inc., its predecessors, successors, subsidiaries, affiliates and each of its present or former officers, directors, managers and any employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf, including, but not limited to, Syngenta AG, Syngenta Biotechnology, Inc., Golden Harvest Seeds, Inc., Garst Seed Company, Advanta B.V., Advanta Seeds, CHS Research, Inc. and GreenLeaf Genetics.

      C.      **"Golden Harvest"** shall mean and refer to Golden Harvest Seeds, Inc., its predecessors, successors, subsidiaries and affiliates, and each of its present and former officers, directors, managers, employees, agents, and all other persons acting or purporting to act on its behalf, including but not limited to Golden Seed Company, Garwood Seed Company, J.C. Robinson Seeds, Inc., Sommer Bros. Seeds Company, and Thorp Seed Company.

      D.      **"Garst"** shall mean and refer to Garst Seed Company, its predecessors, successors, subsidiaries and affiliates, and each of its present and former officers, directors, managers, employees, agents, and all other persons acting or purporting to act on its behalf, including, but not limited to, AgriPro Seeds, Inc., PSA Genetics LLC, and Fred Gutwein & Sons, Inc.

      E.      **"Monsanto"** means Monsanto Company, its predecessors, successors, subsidiaries and affiliates, and each of its present and former officers, directors, managers, employees, agents, and all other persons acting or purporting to act on its behalf, including but not limited to Monsanto Technology, LLC.

      F.      **"Amended Complaint"** refers to the Amended Complaint filed by Syngenta Seeds, Inc., on September 14, 2004 and docketed at Civ. No. 04-908-SLR, in the United States District Court for the District of Delaware.

G.    **"Second Amended Complaint"** refers to the Second Amended Complaint filed by Syngenta Seeds, Inc., on September 23, 2005, and docketed at Civ. No. 04-305-SLR, in the United States District Court for the District of Delaware.

H.    **"Inbred seed"** shall mean and refer to seed created by self-pollination of a homozygous or nearly homozygous parent plant or from the mating of genetically similar homozygous or nearly homozygous parent plants, such as seed created by the self-pollination of an inbred parent plant or seed created by backcrossing with a recurrent parent plant following a cross between a recurrent parent plant and a non-recurrent parent plant.

I.    **"Hybrid seed"** shall mean and refer to seed created by crossing genetically dissimilar parent plants, such as seed created by the crossing of genetically dissimilar inbred parent plants.

J.    **"Foundation corn seed"** shall mean and refer to any inbred seed or other parent seed stock used in the production of commercial hybrid seed corn.

K.    **"Transgenic technology"** shall mean and refer to technology or research related to artificially introducing genetic material into seeds, plants, cells, or genetic material and also shall mean and refer to technology or research for propagating and characterizing such seeds, plants, cells, or genetic material containing such artificially introduced genetic material.

L.    **"Document"** has the same meaning as in Fed. R. Civ. P. 34 and includes documents in the possession, custody or control of both Syngenta Seeds, Inc., including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

M.    **"Communication" or "Statement."** The term "communication" or "statement" means the written, electronic or oral transmittal of information (in the form of facts, ideas, inquiries or otherwise).

N.    **"Identify" (with respect to persons).** When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

3

Once a person has been identified in accordance with the subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

O.     **"Identify" (with respect to documents).**  When referring to documents, "to identify" means to provide the: (i) type of documents; (ii) general subject matter; (iii) date of the document; and (iv) author(s), address(es) and recipient(s).

P.     **"Identify" (with respect to a communication or statement).**  When referring to a communication or statement, "to identify" means to provide: (i) the person(s) making the communication; (ii) the person(s) to whom the communication was made; (iii) whether the communication is written, electronic or oral; (iv) the person(s) present during the communication; (v) the date of the communication; and (vi) the location of the communication.

Q.     **"Concerning."**  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

R.     **"Person"** or **"persons"** refers to all individuals and entities, including all natural persons, corporations, partnerships, ventures or other business associations, societies, associations-in-fact, all federal, foreign, state, local or other governmental entities, and all legal entities including all members, officers, employees, agents, representatives, attorneys, successors, predecessors, assigns, divisions, affiliates and subsidiaries.

S.     **"Relating to"** or **"related to"** shall mean constituting, defining, describing, discussing, involving, concerning, containing, embodying, reflecting, identifying, stating, analyzing, mentioning, responding to, referring to, dealing with, commenting upon, prepared in connection with, used in preparation for, appended to, pertaining to, having any relationship to or in any way being factually, legally or logically connected to, in whole or in part, the stated subject matter.

T.     **"Referring to"** means constituting, comprising, concerning, regarding, containing, setting forth, showing, disclosing, describing, explaining, summarizing, either

4

directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

## INSTRUCTIONS

A.     If you withhold under a claim of privilege (including attorney work-product) any information covered by this discovery request, furnish a list specifying: (a) the nature of the privilege claimed; (b) the authors of the document; (c) all persons who received copies of the document; (d) the date of the documents; and (e) the general subject matter of the documents sufficient to enable other parties to assess the applicability of the privilege.

B.     For any draft, copy or reproduction of any document responsive to any of the following requests that contains or has been revised to include any postscript, notation, change, amendment or addendum, not appearing in the document itself as originally written, typed or otherwise prepared, produce each such draft, copy or reproduction.

C.     All documents requested shall be produced in the same file or other organizational environment in which they are maintained by you, *viz*, if the document is part of a file or other grouping, it should be physically produced, together with all of the documents from said file or group in response to the request in the same order or manner of arrangement as the original.

D.     All documents that respond, in whole or in part, to any part of any request herein, should be produced in their entirety, in unredacted form, including all attachments and enclosures, as they are kept in the ordinary course of business. If any information specified in any request appears on any page of any document, all pages of the document should be produced in response to the request.   To the extent you redact any document covered by this discovery request, furnish a list specifying: (a) the document and pages redacted; (b) the nature of the material redacted; and (c) the basis of the redaction.

E.     If any document requested was at one time in existence and under your possession, control or custody, but has been lost, discarded, destroyed or otherwise removed

from your possession, custody or control, provide with respect to each document a description of the document and the date it was lost, discarded, destroyed, or removed.

F.    Documents in any language other than English should be translated into English and submitted together with the translation.

## RELEVANT TIME PERIOD

Unless otherwise stated in the context of a specific request, all documents and things requested is for the time period January 1, 1996, to the present, and shall include all documents which relate, in whole or in part, to the relevant time period, or to events or circumstances during such time period, even though dated, generated, prepared, or received prior or subsequent to that period.

## DOCUMENTS AND THINGS TO BE PRODUCED

1.    Documents sufficient to show the ownership structure and reporting relationship between and among you and your owners, shareholders, parents, subsidiaries or affiliates, including, but not limited to: (a) Syngenta International AG; (b) Syngenta Seeds, Inc.; (c) Syngenta Biotechnology, Inc.; (d) Golden Harvest; (e) Garst; (f) Advanta B.V.; (g) Advanta USA, Inc.; (h) Advanta Seeds, Inc.; (i) CHS Research, Inc.; and (j) GreenLeef Genetics.

2.    All organizational charts or any other diagrams that show reporting relationships and responsibility levels of any current or former directors, officers and employees having any duty or responsibility for the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, insecticides or herbicides for each of the following entities: (a) Syngenta AG; (b) Syngenta Participations AG; (c) Syngenta; (d) Syngenta Biotechnology, Inc.; (e) Golden Harvest; (f) Garst; (g) Advanta B.V.; (h) Advanta USA. Inc.; (i) Advanta Seeds, Inc.; (j) CHS Research, Inc.; and (k) GreenLeaf Genetics.

3. All documents that reflect the involvement of any officer, director, or managerial employee in the management or operations of Syngenta, including membership on, or participation in, any board of directors, executive committee, management committee, regulatory committee or technical committee of Syngenta.

4. All documents that reflect the authority or responsibility of your business units and/or committees over the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides, including documents that show your oversight for field testing and budgets for your United States subsidiaries.

5. Documents reflecting or relating to any communication, instruction, direction, policy or procedure from you to Syngenta regarding the development, production, purchase, sale, licensing, marketing and/or commercialization of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides in the United States.

6. Documents sufficient to show the use of trademarks, patents or other intellectual property owned or utilized by you, or any of your subsidiaries or affiliates, and Syngenta.

7. All documents that reflect the use or presentation of a common advertising, marketing or sales image or identity by you, or any of your subsidiaries or affiliates, and Syngenta.

8. All licensing, marketing, sales, distribution, indemnity or confidentiality agreements between you and Syngenta, including but not limited to the confidentiality agreements members of the Corn Business Team entered into with you.

9. Documents sufficient to identify all persons with responsibility for the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid

7

seeds, inbred seeds/foundation seeds, herbicides and/or insecticides that have been transferred between you and Syngenta.

10.     All documents that reflect any business activities of you in the United States, including, but not limited to, any assets owned or operated in the United States.

11.     All documents concerning or relating to agreements or licenses you entered into with persons or entities concerning the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides, including but not limited to your contract with Strategic Diagnostics Inc. and Diversa Corporation.

12.     All communications between you and any person or entity concerning the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides, including but not limited to your communications with Strategic Diagnostics Inc. for the negotiation of your exclusive licensing agreement.

13.     Documents sufficient to show all visits by any officer, director, employee or agent of you to the United States in connection with the development, production, purchase, sale, licensing, marketing and/or commercialization of seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, insecticide and/or herbicides used in conjunction with any transgenic or conventional seeds in the United States, including the purpose of each trip, and each location visited during each such trip.

14.     All documents concerning your acquisition of the GA21 event, including all communications, memoranda, analyses, license agreements, contracts, press releases, emails, financial statements, projections, notes, agreements, correspondence, and reports.

15.     All documents concerning your acquisition of Golden Harvest and Garst, including but not limited to all communications, memoranda, analyses, license agreements,

contracts, press releases, emails, financial statements, projections, notes, agreements, correspondence, and reports.

16.    All documents that refer or relate to the development, production, purchase, sale, licensing, marketing and/or commercialization in the United States of the GA21 event or any product containing the GA21 event, including plans, agreements, invoices, correspondence, press releases and communications.

17.    All documents sufficient to identify all complaints filed in the United States in which you were named as a defendant and to which you filed an answer.

18.    All motions to quash service of process or to dismiss for lack of personal jurisdiction that you have filed in any United States court that was denied, including the orders denying the motions.

19.    All documents sufficient to show each and every customer and/or licensee in the State of Delaware for your seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and/or insecticides.

20.    All documents sufficient to show the revenues generated from each customer and/or licensee in the State of Delaware for your seeds, chemicals or transgenic technology, including but not limited to hybrid seeds, inbred seeds/foundation seeds, herbicides and insecticides.

21.    All contracts to which you were or are a party that contain a Delaware state or federal forum selection clause and/or a Delaware choice of law provision.

22.    To the extent not produced in response to another request, all contracts entered into with a Delaware resident or corporation, including but not limited to your contract with Strategic Diagnostics Inc., Diversa Corporation, and the University of Delaware or faculty members of the University of Delaware.

23.    All documents reviewed by and/or information provided to Daniel Michaelis and Ed Resler for the preparation of their respective declarations filed in support of your motion to

dismiss for lack of personal jurisdiction, which was filed in the instant action on November 21, 2005.

    24.    All documents concerning or relating to you document retention policy.


Respectfully submitted,

_____

Peter E. Moll                      Richard L. Horwitz (#2246)
Scott E. Flick                    POTTER ANDERSON & CORROON, LLP
John J. Rosenthal             Hercules Plaza, 6th Floor
HOWREY LLP               1313 N. Market St.
1299 Pennsylvania Ave., N.W.    Wilmington, DE 19801
Washington, DC 20004        (302) 984-6000
(202) 783-0800               (302) 658-1192 facsimile
(202) 383-6610 facsimile

Attorney for MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC


Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Of Counsel

Dated: December   , 2005

# EXHIBIT 52

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 53

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 54

Syngenta International AG
Media Office
CH-4002 Basel
Switzerland
Telephone: +41 61 323 23 23
Fax:        +41 61 323 24 24
www.syngenta.com



**Media Release**

## Syngenta files antitrust lawsuit against Monsanto

### Basel, Switzerland, 28 July 2004

Syngenta announced today that its US subsidiary Syngenta Seeds, Inc. has filed a lawsuit against Monsanto Company and Monsanto Technology LLC to challenge Monsanto's monopolization of biotechnology corn seed in the US

This lawsuit was filed in Federal District Court in Delaware and asserts that Monsanto has engaged in a pattern of illegal and improper activities to maintain its monopoly in key corn traits in the US, including Monsanto's attempts to prohibit Syngenta from competing with GA21, an established and proven glyphosate-tolerant corn trait. These attempts include trying to force seed companies to stop producing GA21 seeds, to destroy GA21 inventories, and to adhere to exclusive dealing contracts.

Syngenta announced its acquisition of GA21 rights on May 12, 2004. It plans to offer the technology through its NK[®] brand, the Garst and Golden Harvest brands[1], and through licenses with other seed companies for the 2005 growing season

Syngenta is a world-leading agribusiness committed to sustainable agriculture through innovative research and technology. The company is a leader in crop protection, and ranks third in the high-value commercial seeds market. Sales in 2003 were approximately $6.6 billion. Syngenta employs some 19,000 people in over 90 countries. Syngenta is listed on the Swiss stock exchange (SYNN) and in New York (SYT). Further information is available at www.syngenta.com.

| Media Enquiries: | Markus Payer (Switzerland) | +41 61 323 2323 |
| | Sarah Hull (USA) | +1 (202) 347 8348 |
| Analyst/Investor Enquiries. | Jonathan Seabrook (Switzerland) | +41 61 323 7502 |
| | Jennifer Gough (Switzerland) | +41 61 323 5059 |
| | Rhonda Chiger (USA) | +1 (917) 322 2569 |

Cautionary Statement Regarding Forward-Looking Statements

This document contains forwarding-looking statements, which can be identified by terminology such as 'expect', 'would', 'will', 'potential', 'plans', 'estimated', 'aiming', 'on track' and similar expressions. Such statements may be subject to risks and uncertainties that could cause the actual results to differ materially from these statements. We refer you to Syngenta's publicly available filings the U S Securities and Exchange Commission for information about these and other risks and uncertainties. Syngenta assumes no obligation to update forward-looking statements to reflect actual results, changed assumptions or other factors. This document does not constitute. or form part of. any offer or invitation to sell or issues, or any solicitation of any offer, to purchase or subscribe for any ordinary shares in Syngenta. AG. or Syngenta ADSs. nor shall it form the basis of. or be relied on in a connection with. any contract therefore

[1] Subject to the regulatory approval of these acquisitions announced on 12 May and 25 June 2004

# EXHIBIT 55

WHOIS Search provides domain registration information from Network Solutions

## agrisuretraits.com



<u>Certified Offer Service</u> - Make an offer on this domain
<u>Backorder</u> - Try to get this name when it becomes available
<u>SSL Certificates</u> - Make this site secure
<u>Site Confirm Seals</u> - Become a trusted Web Site

```
The data in Register.com's WHOIS database is provided to you by
Register.com for information purposes only, that is, to assist you in
obtaining information about or related to a domain name registration
record.  Register.com makes this information available "as is," and
does not guarantee its accuracy.  By submitting a WHOIS query, you
agree that you will use this data only for lawful purposes and that,
under no circumstances will you use this data to: (1) allow, enable,
or otherwise support the transmission of mass unsolicited, commercial
advertising or solicitations via direct mail, electronic mail, or by
telephone; or (2) enable high volume, automated, electronic processes
that apply to Register.com (or its systems).  The compilation,
repackaging, dissemination or other use of this data is expressly
prohibited without the prior written consent of Register.com.
Register.com reserves the right to modify these terms at any time.
By submitting this query, you agree to abide by these terms.

    Registrant:
        Syngenta Participations AG
        Intellectual Property Domain Name Management,
        Schwarzwaldallee 215 .
        Basel, CH CH-4058
        CH
        Email: syngenta.dns_admin@syngenta.com

    Registrar Name....: REGISTER.COM, INC.
    Registrar Whois...: whois.register.com
    Registrar Homepage: www.register.com

    Domain Name: agrisuretraits.com

        Created on..............: Tue, May 03, 2005
        Expires on..............: Sat, May 03, 2008
        Record last updated on..: Tue, May 10, 2005

    Administrative Contact:
        Syngenta Participations AG
```

WHOIS Search provides domain registration information from Network Solutions

```
         Domain Name Management Intellectual Property
         Schwarzwaldallee 215 .
         Basel, CH CH-4058
         CH
         Phone: +41.613239243
         Email: syngenta.dns_admin@syngenta.com

      Technical Contact:
         Register.Com
         Domain Registrar
         575 8th Avenue .
         New York, NY 10018
         US
         Phone: +1.9027492701
         Email: domain-registrar@register.com

      DNS Servers:

      dns32.register.com
      dns31.register.com


Register your domain name at http://www.register.com
```

The previous information has been obtained either directly from the registrant or a registrar of the domain name other than Network Solutions. Network Solutions, therefore, does not guarantee its accuracy or completeness.

Show underlying registry data for this record

| | |
|---|---|
| **Current Registrar:** | REGISTER.COM, INC. |
| **IP Address:** | 192.208.45.108  (ARIN & RIPE IP search) |
| **IP Location:** | US(UNITED STATES)-CALIFORNIA-PALO ALTO |
| **Record Type:** | Domain Name |
| **Server Type:** | Other 7 |
| **Lock Status:** | REGISTRAR-LOCK |
| **Web Site Status:** | Active |
| **DMOZ** | no listings |

WHOIS Search provides domain registration information from Network Solutions

| | |
|---|---|
| **Y! Directory:** | see listings |
| **Secure:** | No |
| **E-commerce:** | No |
| **Traffic Ranking:** | Not available |
| **Data as of:** | 27-Sep-2005 |

When you register a domain name, current policies require that the contact information for your domain name registration be included in a public database known as WHOIS. To learn about actions you can take to protect your WHOIS information visit www.internetprivacyadvocate.org.

NOTICE AND TERMS OF USE: You are not authorized to access or query our WHOIS database through the use of high-volume, automated, electronic processes or for the purpose or purposes of using the data in any manner that violates these terms of use. The Data in Network Solutions' WHOIS database is provided by Network Solutions for information purposes only, and to assist persons in obtaining information about or related to a domain name registration record. Network Solutions does not guarantee its accuracy. By submitting a WHOIS query, you agree to abide by the following terms of use: You agree that you may use this Data only for lawful purposes and that under no circumstances will you use this Data to: (1) allow, enable, or otherwise support the transmission of mass unsolicited, commercial advertising or solicitations via direct mail, e-mail, telephone, or facsimile; or (2) enable high volume, automated, electronic processes that apply to Network Solutions (or its computer systems). The compilation, repackaging, dissemination or other use of this Data is expressly prohibited without the prior written consent of Network Solutions. You agree not to use high-volume, automated, electronic processes to access or query the WHOIS database. Network Solutions reserves all rights and remedies it now has or may have in the future, including, but not limited to, the right to terminate your access to the WHOIS database in its sole discretion, for any violations by you of these terms of use, including without limitation, for excessive querying of the WHOIS database or for failure to otherwise abide by these terms of use. Network Solutions reserves the right to modify these terms at any time.



**Get a Web Site Fast and Easy**

Our hosting packages gets you started with a Web site and a FREE domain.

WHOIS Search provides domain registration information from Network Solutions

 

## Search Through Thousands of Expired Domains

Don't miss your chance to find a domain name you want. Place a Backorder on an expired domain name today.

- Reseller Programs
- WHOIS
- Free Offers
- About Network Solutions
- :
- Site Map
- :
- Policies
- :
- Service Agreement
- :
- Legal Notice





© Copyright 2005 Network Solutions. All rights reserved.

# EXHIBIT 56

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY