IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-305-SLR (Consol.) |
| | ) | |
| SYNGENTA SEEDS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SYNGENTA AG AND SYNGENTA PARTICIPATIONS AG'S
REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
MONSANTO'S COUNTERCLAIM FOR LACK OF PERSONAL JURISDICTION
AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell  (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Counterclaim Defendants Syngenta AG
and Syngenta Participations AG*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Jonathan R. DeFosse
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated:  January 9, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT .....................................................................................1

ARGUMENT ...............................................................................................................2

I.    SYNGENTA AG AND PARTICIPATIONS LACK SUFFICIENT CONTACTS WITH
DELAWARE ............................................................................................................2

    A.    Syngenta AG and Participations Are Not Subject To Jurisdiction In Delaware
Based On Their Own Contacts.................................................................................2

        1.    Specific Jurisdiction...........................................................................3

            a.    Ownership Of Delaware Corporations .................................3

            b.    "Stream of Commerce" Theory..........................................3

            c.    Press Releases ....................................................................4

            d.    Contract With A Delaware Company....................................5

            e.    The Corn Business Team .....................................................6

            f.    Filing Of The Antitrust Complaint In This Case....................7

        2.    General Jurisdiction...........................................................................7

    B.    Syngenta AG and Participations Are Not Subject To Agency Jurisdiction.....................8

II.    MONSANTO CANNOT ESTABLISH JURISDICTION UNDER FED. R. CIV. P. 4(K)(2)....12

    A.    Monsanto's 4(k)(2) Jurisdiction Argument Will Be Moot if Syngenta Seeds, Inc.'s
Motion to Dismiss Monsanto's Federal Claims Is Granted...........................................12

    B.    Monsanto Has Failed to Establish that Syngenta AG and Participations Are Not
Subject to Jurisdiction in Any State ......................................................................13

    C.    Monsanto Has Not Alleged Sufficient National Contacts .............................................16

III.    MONSANTO IS NOT ENTITLED TO ADDITIONAL JURISDICTIONAL DISCOVERY....17

    A.    Monsanto Has Already Had Extensive Discovery Relevant To Jurisdiction.................17

    B.    Monsanto's Jurisdictional Allegations Are Insufficient as a Matter of Law and, as a
Result, Additional Jurisdictional Discovery Should Not Be Granted ............................18

CONCLUSION ...........................................................................................................20

        

## TABLE OF AUTHORITIES

### CASES

*A.V. Imports, Inc. v. Col De Fratta, S.p.A.,*
   171 F. Supp. 2d 369 (D.N.J. 2001) .................................................................................. 4

*Ace & Co. v. Balfour Beatty PLC,*
   148 F. Supp. 2d 418 (D. Del. 2001) ............................................................................... 3, 9

*Action Manufacturing Co. v. Simon Wrecking Co.,*
   375 F. Supp. 2d 411 (E.D. Pa. 2005) ............................................................................ 9, 10

*Akzona, Inc. v. E.I. Du Pont De Nemours & Co.,*
   607 F. Supp. 227 (D. Del. 1984) .................................................................................. 10, 11

*American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,*
   No. Civ. A. 99-218-SLR, 1999 WL 615175 (D. Del. Aug. 3, 1999) ................................ 5

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
   772 F. Supp. 1458 (D. Del. 1991) ................................................................................. 7,9

*Asahi Metal Indus. Co. v. Superior Court,*
   480 U.S. 102 (1987) ................................................................................................... 4,19

*In re Automotive Refinishing Paint Antitrust Litig.,*
   358 F.3d 288 (3d Cir. 2004) ......................................................................................... 13

*In re Automotive Refinishing Paint Antitrust Litig.,*
   No. 1426, 2002 WL 31261330 (E.D. Pa. July 31, 2002) ............................................... 15

*Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory,*
   283 F.3d 208 (4th Cir. 2002) ......................................................................................... 15

*Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory,*
   47 Fed. Appx. 73 (3d Cir. 2002) ................................................................................... 19

*Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.,*
   230 F.3d 934 (7th Cir. 2000) ......................................................................................... 19

*CFMT, Inc. v. Steag Microtech,*
   No. Civ. A. 95-442-LON, 1997 WL 313161 (D. Del. Jan 9, 1997) ................................ 12, 13, 14

*Commissariat á l'Energie Atomique v. Chi Mei Optoelectronics Corp.,*
   293 F. Supp. 2d 423 (D. Del. 2003) ............................................................................. 4, 8

*Comsat Corp. v. Finshipyards S.A.M.,*
   900 F. Supp. 515 (D.D.C. 1995) .................................................................................... 13

*Cordis Corp. v. Advanced Cardiovascular Systems, Inc.,*
  No. Civ. A. 97-635-SLR, 1999 WL 805284 (D. Del. Sept. 17, 1999) ........................................... 9

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
  539 U.S. 23 (2003) ...................................................................................................................... 12

*Delaware Mktg. Partners v. Creditron Fin. Servs.,*
  No. Civ. 04-36-SLR, 2004 WL 1999973 (D. Del. Aug. 31, 2004) ................................................ 9

*eSpeed, Inc. v. Brokertec USA,*
  No. 03-612-KAJ, 2004 WL 2346137 (D. Del. Sept. 13, 2004) ..................................................... 18

*Estates of Ungar v. Palestinian Authority,*
  153 F. Supp. 2d 76 (D.R.I. 2001) ............................................................................................... 14

*Fleetwood v. B.C.E., Inc.,*
  No. Civ. A. DKC 2003-2125, 2004 WL 903754 (D. Md. Apr. 28, 2004) ................................... 18

*Friedman v. Alcatel Alsthom,*
  752 A.2d 544 (Del. Ch. 1996) ...................................................................................................... 3

*Hansen v. Neumueller GmbH,*
  163 F.R.D. 471 (D. Del. 1995) ................................................................................................... 18

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,*
  147 F. Supp. 2d 268 (D. Del. 2001) .............................................................................................. 4

*IMO Indus. v. Kiekert AG,*
  155 F.3d 254 (3d Cir. 1998) ..................................................................................................... 4, 5

*In re Lupron Marketing & Sales Practices Litig.,*
  245 F. Supp. 2d 280 (D. Mass. 2003)........................................................................................ 15

*Little Switzerland, Inc. v. Destination Retail Holdings Corp.,*
  No. Civ. A. 98-315-SLR, 1999 WL 223496 (D. Del. Mar. 31, 1999) ........................................... 3

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical,*
  No. Civ. A. 19760-NC, 2004 WL 415251 (Del. Ch. Mar. 4, 2004)............................................... 9

*Mobil Oil Corp. v. Advanced Envtl. Recycling Technologies, Inc.,*
  833 F. Supp. 437 (D. Del. 1993) .................................................................................................. 7

*NRG Barriers, Inc. v. Jelin,*
  No. 15013, 1996 WL 377014 (Del. Ch. July 1, 1996) .................................................................. 3

*Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,*
  658 F. Supp. 1061 (D. Del. 1987) .............................................................................................. 10

*Poe v. Babcock Int'l, plc,*
  662 F. Supp. 4 (M.D. Pa. 1985) ................................................................................. 19

*Quick Technologies, Inc. v. Sage Group,*
  313 F.3d 338 (5th Cir. 2002) .................................................................................... 16

*Reach & Associates, P.C. v. Dencer,*
  269 F. Supp. 2d 497 (D. Del. 2003) ............................................................................ 8

*Red Sail Easter Ltd. Partners v. Radio City Music Hall Prod. Inc.,*
  1999 WL 129174 (Del. Ch. July 10, 1991) ................................................................. 8

*Renner v. Lanard Toys Ltd.,*
  33 F.3d 277 (3d Cir. 1994) ......................................................................................... 4

*Saudi v. Northrop Grumman Corp.,*
  221 F.R.D. 452 (E.D. Va. 2004) ............................................................................... 15

*Sears, Roebuck & Co. v. Sears plc,*
  744 F. Supp. 1297 (D. Del. 1990) ............................................................................ 10

*Smith v. Pat & Jane Emblems, Inc.,*
  No. 05-127-PH, 2005 WL 3032535 (D. Me. Nov. 10, 2005) ..................................... 15

*Smith v. S&S Dundalk Eng'g Works, Ltd.,*
  139 F. Supp. 2d 610 (D.N.J. 2001) ..................................................................... *passim*

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court,*
  482 U.S. 522 (1987) ............................................................................................ 1, 13

*Sunshine Distrib. Inc. v. The Sports Authority Michigan, Inc.,*
  157 F. Supp. 2d 779 (E.D. Mich. 2001) ................................................................... 16

*Telcordia Technologies v. Alcatel S.A.,*
  No. Civ. A. 04-874, 2005 WL 1268061 (D. Del. May 27, 2005) ............... 13, 15, 16, 19

*Toys "R" Us  v. Step Two, S.A.,*
  318 F.3d 446 (3d Cir. 2003) ............................................................................... 18, 19

*United States v. Bestfoods,*
  524 U.S. 51 (1998) .................................................................................................. 11

*United States v. Offshore Marine Ltd.,*
  179 F.R.D. 156 (D.V.I. 1998) ................................................................................... 18

*United States v. Swiss American Bank,*
  191 F.3d 30 (1st Cir. 1999) ..................................................................................... 14

*Villar v. Crowley Maritime Corp.*,
   990 F.2d 1489 (5th Cir. 1993) ................................................................... 18

*Vikoma Int'l Ltd. v. Oil Stop, Inc.*,
   Civ. A. No. 92-573-SLR, 1993 WL 14647 (D. Del. Jan. 14, 1993) .............................................. 5

*In re Vitamins Antitrust Litig.*,
   120 F. Supp. 2d 45 (D.D.C. 2000) ............................................................... 15

*In re Vitamins Antitrust Litig.*,
   94 F. Supp. 2d 26 (D.D.C. 2000) ................................................................ 14

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984) ....................................................................... 9

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000) ......................................................................... 16

## STATUTES

Fed. R. Civ. P. 12(b)(2) ................................................................................. 20

Fed. R. Civ. P. 4(k)(2) ............................................................................. *passim*

## PRELIMINARY STATEMENT

The relevant forum for jurisdictional contacts in this case is Delaware. That is the forum in which the lawsuit was filed and that is the forum into which Monsanto seeks to hail the two Swiss counter-defendants, Syngenta AG and Syngenta Participations AG ("Participations").

Syngenta AG and Participations are not subject to jurisdiction in Delaware because Monsanto has failed to allege, let alone prove, *any* Delaware activities undertaken, directed or controlled by the Swiss entities that could establish personal jurisdiction under the relevant legal standards. The few Delaware-specific contacts alleged – such as the ownership of Delaware companies and a contract with a Delaware company unrelated to Monsanto's Counterclaim – are legally insufficient to satisfy Monsanto's burden of proving personal jurisdiction.

Unable to establish sufficient contacts with Delaware, Monsanto argues that jurisdiction may be based on "national contacts" under Fed. R. Civ. P. 4(k)(2). This argument fails for two reasons:

First, Rule 4(k)(2) has a strict "negation requirement" by which the plaintiff must establish that the defendant is *not* subject to personal jurisdiction in any one state. Courts in this District and elsewhere have required plaintiffs to make an "affirmative representation" to this effect if they wish to rely on national contacts. Those same courts have rejected national contacts jurisdiction when plaintiffs assert that there *is* jurisdiction in the forum where the lawsuit was filed. Because Monsanto asserts that jurisdiction exists in Delaware, it cannot satisfy the negation requirement.

Second, Rule 4(k)(2) requires that Monsanto assert a cause of action under federal law. Here, Monsanto's only federal claims, under the Lanham Act, are the subject of a fully-submitted motion to dismiss by the domestic counter-defendants. Both case law and common sense dictate that the Court should first rule on the motion to dismiss before ordering the parties to embark on a time-consuming and burdensome evaluation of contacts with the United States as a whole. This approach is especially warranted in this case involving Swiss nationals in view of the Supreme Court's guidance in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court*, 482 U.S. 522, 546 (1987) that district

1

courts should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."

Finally, Monsanto's request for additional discovery should be denied. Monsanto has already received millions of pages of documents and dozens of depositions from the U.S. Syngenta counter-defendants. This discovery has occurred (i) in this antitrust case; (ii) in the related patent case; and (iii) in a Missouri litigation between the parties that relates to the marketing of genetically modified seeds. Much of this discovery relates directly to the commercialization of GA21 glyphosate-tolerant corn seed in the United States, and on the participation, if any, of the Swiss entities in those events. Since Monsanto has had ample opportunity to explore the Swiss entities' role, including U.S. contacts, further jurisdictional discovery should be denied.

## ARGUMENT

## I. SYNGENTA AG AND PARTICIPATIONS LACK SUFFICIENT CONTACTS WITH DELAWARE

### A. Syngenta AG and Participations Are Not Subject To Jurisdiction In Delaware Based On Their Own Contacts

The essential Delaware-specific facts proffered in counter-defendants' motion to dismiss are not disputed. For example, Monsanto's answering brief ("Mon. Br.") does not dispute that:

- Neither Syngenta AG nor Participations is registered to do business in Delaware nor has: (i) an office; (ii) a manufacturing plant; (iii) a registered agent for service of process; (iv) a bank account; (v) a post office box; or (vi) a telephone listing in Delaware (*see* Declaration of Daniel Michaelis ("Michaelis Decl.") ¶¶ 6-7);

- None of the directors of Syngenta AG or Participations is a resident of Delaware, no member of the Syngenta AG Executive Committee is a resident of Delaware, and neither company is controlled by persons or entities located in Delaware (*Id*. at ¶ 8);

- Neither company owns or leases any real property in Delaware (*Id*. at ¶ 10);

- Neither company is a party to any lawsuit commenced in Delaware (*Id*. at ¶ 11);

- Neither company itself manufactures products and, as such, has not sold any products to customers in Delaware, including any GA21 corn seed (*Id*. at ¶ 12).

Against this background, the very limited Delaware contacts alleged by Monsanto are, individually and collectively, insufficient on their face to establish personal jurisdiction.

1.    **Specific Jurisdiction**

Monsanto's specific jurisdiction analysis (Mon. Br. at 21-23) relies on alleged contacts of a type that courts have routinely rejected as the basis for personal jurisdiction. Such allegations, even if true, are legally insufficient to carry Monsanto's burden.

a.    **Ownership Of Delaware Corporations**

Monsanto asserts that Syngenta AG has acquired and owns shares in several companies incorporated under the laws of Delaware (only one of which is actually located in Delaware). (Mon. Br. at 4, 21.) However, "the mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent." *Ace & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 422-23 (D. Del. 2001). Only where the cause of action arises from the act of incorporating a Delaware company is that act relevant to personal jurisdiction. *Id*. at 424 (sale of Delaware corporation leading to dispute over right of first refusal insufficient to establish jurisdiction in Delaware); *Little Switzerland, Inc. v. Destination Retail Holdings Corp.*, No. Civ. A. 98-315-SLR, 1999 WL 223496, at *6 (D. Del. Mar. 31, 1999) (requiring that act of incorporation in Delaware be "integral component" of the transaction giving rise to the lawsuit).[1]

Monsanto's Counterclaim in this case does not arise from the formation of a Delaware corporation or a transaction involving the purchase or sale of Delaware shares. Instead, the alleged connection to Delaware is simply that several of Syngenta AG's indirect U.S. subsidiaries are incorporated in Delaware. Under the above case law, this is insufficient.

b.    **"Stream of Commerce" Theory**

Monsanto argues that "Syngenta AG, Participations and their U.S. subsidiaries have caused the misappropriated GA21 to be placed into the stream of commerce for sale throughout the United States, including . . . Delaware." (Mon. Br. at 21.) The so-called "stream of commerce" theory is

---

[1] The cases cited by Monsanto are consistent with this rule. *Friedman v. Alcatel Alsthom*, 752 A.2d 544, 549 (Del. Ch. 1996) (challenged merger was effected by the creation of a Delaware subsidiary); *NRG Barriers, Inc. v. Jelin*, No. 15013, 1996 WL 377014, at *4 (Del. Ch. July 1, 1996) (contract to sell Delaware stock, with Delaware choice of law clause, was basis for plaintiff's claim).

a limited jurisdictional theory applicable where *a manufacturer* deliberately targets the forum state as a market for the goods it makes. *E.g.*, *ICT Pharms. v. Boehringer Ingelheim Pharms.*, 147 F. Supp. 2d 268, 272 (D. Del. 2001) ("The theory requires that there be evidence of some intent or purpose on behalf of the manufacturer to serve the Delaware market."); *Commissariat á l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 293 F. Supp. 2d 423, 429 (D. Del. 2003) (requiring "intent or purpose" to serve Delaware market; purpose to serve North American market insufficient). As even the case cited by Monsanto makes clear, "the mere placement of a product into the stream of commerce with an awareness that it may end up in a specific state is not enough to establish minimum contacts." *A.V. Imports v. Col De Fratta, S.p.A.*, 171 F. Supp. 2d 369, 372 (D.N.J. 2001) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)); *see also Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 282 (3d Cir. 1994) ("there must have been some 'purposeful availment' by the defendant of the forum state").

The "stream of commerce" theory is plainly inapplicable to this case. First, it is undisputed that neither Syngenta AG nor Participations itself manufactures products (including seeds) and, accordingly, are not manufacturers who placed goods in a stream of commerce. Mon. Br. 14 (seed sales in U.S. are made by U.S. companies); Michaelis Decl. ¶ 12. Second, Monsanto presents no evidence of the required "intent or purpose" by Syngenta AG or Participations to specifically target the Delaware market for sales of GA21 seeds. The fact, as Monsanto alleges, that Syngenta AG or Participations may have been aware that GA21 might end up in Delaware is legally insufficient.

### c.    Press Releases

Monsanto refers to press releases and advertising, which it claims were disseminated "throughout the United Sates and, presumably, Delaware." (Mon. Br. at 22.) As explained in Syngenta AG and Participations' opening brief ("Op. Br."), press releases and similar communications do not give rise to personal jurisdiction unless they are "expressly aimed" at the relevant forum, in this case Delaware. *E.g., IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998); *see* Op. Br. at 13. Here, the fact that communications were allegedly available in the United States and "presumably Delaware"

(Mon. Br. at 22) is, on its face, insufficient to establish that Delaware was the "focal point" of the alleged tortious activity. *IMO*, 155 F.3d at 265; *Vikoma Int'l Ltd. v. Oil Stop, Inc.*, Civ. A. No. 92-573-SLR, 1993 WL 14647, at *2-3 (D. Del. Jan. 14, 1993) (advertising generally available in the U.S. is insufficient); *see* Op. Br. at 13.[2]

### d.     Contract With A Delaware Company

In 1998, Novartis Seeds AG, a predecessor of Syngenta Crop Protection AG, entered an agreement with Strategic Diagnostics, Inc. ("SDI"), a Delaware company.[3] (Mon. Br., Exh. 48.) This contract concerned the development of kits used to test plants for the presence of fungal pathogens and certain proteins. (Declaration of Martha Dunn ("Dunn Decl.") ¶ 2.) The parties later entered three distribution agreements by which SDI licensed the right to distribute the kits.[4] (*Id.* ¶¶ 4-5.) This contractual relationship predated the events in Monsanto's Counterclaim by more than five years. Moreover, the testing technology that is the subject of the contracts cannot be used to detect GA21. (*Id.* ¶ 3.) In fact, the research article that Monsanto appends to its submission states clearly that GA21 is *not detectable* by protein testing methods such as the ones developed by SDI. *See* Mon. Br., Exh. 49 at p.40 (protein methods cannot detect GA21 because natural corn protein and GA21 protein are indistinguishable); Dunn Decl. ¶ 3.

Monsanto argues that the SDI contracts are relevant under sections 3104(c)(1) and (2) of the Delaware long arm statute relating to transacting business or contracting to supply services in the State. (Mon. Br. at 21.) But those are specific jurisdiction provisions requiring a nexus between the act

---

[2] In the case cited by Monsanto, *American Bio Medica Corp. v. Peninsula Drug Analysis Co.*, No. Civ. A. 99-218-SLR, 1999 WL 615175, at *4-5 (D. Del. Aug. 3, 1999), this Court found jurisdiction over a defendant who engaged in a "concerted marketing effort" that was "directed at Delaware residents" but *rejected* jurisdiction over another defendant whose advertising was available in Delaware, but who did not specifically target Delaware. This case thus supports counter-defendants' position.

[3] The SDI contracts were entered by a predecessor of Syngenta Crop Protection AG and not by either of the named counter-defendants, Syngenta AG or Participations.

[4] SDI also entered an agreement concerning the testing of sugar beets in 2001 with a Swedish Syngenta entity, Syngenta Seeds AB. (Dunn Decl. ¶ 7.)

in Delaware and plaintiff's cause of action. (*See* Op. Br. at 9.) Since the SDI contracts are wholly unrelated to the alleged "passing off" of GA21 that is the subject of Monsanto's Counterclaim, they can not provide the basis for specific jurisdiction under the Delaware long-arm statute.

e.    **The Corn Business Team**

Monsanto describes at some length the operation of the Corn Business Team, which Monsanto alleges was involved in developing the strategy to commercialize GA21 in the United States. (Mon. Br. at 11-12.) However, Monsanto's allegations and the discovery materials cited in support thereof fail to establish *any* connection between Syngenta AG or Participations and *Delaware*.

The discovery produced by the Syngenta U.S. counter-defendants in this case includes comprehensive material relating to the Corn Business Team, including monthly meeting minutes and presentations. Yet Monsanto fails to allege that any Swiss involvement with the Corn Business Team touched Delaware in any way. In fact, the *only* Delaware connection alleged is that one of the dozens of individuals associated with the Corn Business Team over the years, Bill Dickheiser, was based in Delaware. The discovery materials made available to Monsanto show that Mr. Dickheiser was a U.S. employee (Mon. Br., Exh. 32 p.3; Supplemental Declaration of Edward Resler ("Resler Supp. Decl.") ¶ 4), a fact that Monsanto does not dispute. Moreover, the monthly Corn Business team meeting minutes (also produced to Monsanto in discovery) establish: (i) Mr. Dickheiser was not listed in attendance at any team meeting after May 2003, well before the events in Monsanto's Counterclaim;[5] (ii) Mr. Dickheiser was not listed as a responsible person for any of the projects or tasks of the Corn Business Team; (iii) none of the Corn Business Team meetings took place in Delaware; and (iv) Swiss personnel were, at most, a small minority of the members of the Corn Business Team, which was comprised principally of U.S. employees in Minnesota and North Carolina. *See* Mon. Br. at 12, n.5 (head of Corn Business Team and most of its members are based in the U.S.); Resler Supp. Decl. ¶ 3, Exh. B.

---

[5] In fact, Mr. Dickheiser left his employment at Syngenta Corporation as of December 31, 2003. (Resler Supp. Decl. ¶ 4.)

Surprisingly, Monsanto asserts that a reference to "Wilmington" in an email proposing a meeting to discuss corn strategy evidences a contact with Delaware. (Mon. Br. at 8-9.) The email plainly states, however, that the meeting was proposed for Golden Valley, Minnesota. (Mon. Br., Exh. 30.) Moreover, the reference to "Wilmington" was to a biotechnology conference in Wilmington, *North Carolina* that some of the Syngenta personnel planned to attend and which affected their availability for the Golden Valley meeting. The biotech conference did occur in Wilmington, North Carolina on the dates referred to in the email, as the agenda for the conference makes clear. (Resler Supp. Decl. ¶ 6, Exh. D.) Thus, this email fails to establish any contact with Delaware.

### f. Filing Of The Antitrust Complaint In This Case

The filing of the antitrust complaint in this case by Syngenta Seeds, Inc. cannot serve as the basis for personal jurisdiction over Syngenta AG or Participations. Monsanto utterly fails to explain how the filing of this lawsuit itself constitutes a "tortious act" for purposes of the Delaware long arm statute. Significantly, Monsanto's Counterclaim does not even mention the antitrust lawsuit as a basis for its claims. This is in stark contrast to the sole case cited by Monsanto, *Mobil Oil Corp. v. Advanced Envtl. Recycling Techs.*, 833 F. Supp. 437 (D. Del. 1993), in which the filing of a Delaware lawsuit was itself the subject of a subsequent claim for "sham litigation." *Id.* at 439. The *Mobil* court *rejected* jurisdiction over an individual who filed an affidavit in support of the lawsuit finding that "there is not a sufficient nexus between [defendant's] claim of 'sham litigation' and Mr. Ferrari's affidavit to support jurisdiction." *Id.* at 445. Here, any role that Syngenta AG or Participations may have had in monitoring or even authorizing the antitrust lawsuit is irrelevant in so far as there is no nexus between the act of filing the antitrust lawsuit and the conduct alleged in Monsanto's Counterclaim.

### 2. General Jurisdiction

General jurisdiction requires a showing that the defendant has continuous and systematic contacts with Delaware such that it is "generally present" here. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1469 (D. Del. 1991). Such contacts must be "so extensive and continuing that it

is fair and consistent with state policy to require that the defendant appear here and defend a claim." *Red Sail Easter Ltd. Partners v. Radio City Music Hall Prod. Inc.*, Civ. A. No. 12036, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991). Because of this very high standard, "[c]ases of general jurisdiction under Delaware's long-arm statute are rare." *Commissariat á l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 293 F. Supp. 2d 423, 429 (D. Del. 2003); *Reach & Assoc. v. Dencer*, 269 F. Supp. 2d 497, 505 (D. Del. 2003) ("the standard for general jurisdiction is high in practice and not often met").

Monsanto identifies no "extensive and continuing" contacts with Delaware. To the contrary, its general jurisdiction argument refers to tortious acts "throughout the United States" and "beyond Delaware's borders" (Mon Br. at 24), which are plainly insufficient. Monsanto's speculation that "there is every reason to believe" that Syngenta AG and Participations derive substantial revenue from Delaware (*id.*) is also inadequate as Monsanto identifies no products sold by those companies in Delaware. Indeed, Monsanto's carefully-worded brief makes clear that it is the U.S. Syngenta entities that sell products in the U.S. (*Id.* at 14 & 24) Monsanto does not dispute that Syngenta AG and Participations themselves neither produce nor sell anything in the U.S. (*See* Michaelis Decl. ¶ 12). Absent evidence that the named Swiss defendants are "generally present" in Delaware and themselves receive substantial revenue from the State, there is no basis for general jurisdiction.[6]

### B.    Syngenta AG and Participations Are Not Subject To Agency Jurisdiction

Monsanto contends that Syngenta AG and Participations are subject to jurisdiction on the basis of an agency relationship with their U.S. subsidiaries. (Mon Br. at 19.) For such a theory to be viable, however, Monsanto must demonstrate not only that the Swiss parent companies dominated the day-to-day activities of their subsidiaries, but that they controlled specific acts *in Delaware* giving rise to

---

[6] Monsanto has had extensive discovery in the patent and antitrust cases concerning sales of GA21 in the U.S. In fact, Monsanto includes in its submission an expert report with a detailed analysis of those sales. (Mon. Br., Exh. 56.) The report calculates total U.S. gross sales (not just Delaware) of around $7 million, a tiny fraction of the $7.2 billion in sales of all products reported by the consolidated Syngenta group in 2004. (Mon. Br., Exh. 7, p.28.) Similarly, the royalties received from SDI, $14,311 in 2004 and $9,421 through the third quarter of 2005 (Dunn Decl. ¶ 6), are very small and cannot support the derivation of substantial Delaware revenue.

personal jurisdiction under the long arm statute. *E.g. Delaware Mktg. Partners v. Creditron Fin. Servs.*, No. Civ. 04-36-SLR, 2004 WL 1999973, at *3 (D. Del. Aug. 31, 2004) (requiring "that the defendants were directing or controlling the activities *within Delaware*"); *Ace & Co.*, 148 F. Supp. 2d at 425 ("agency theory requires not only that the precise conduct shown to be instigated by the parent . . . but also . . . that the jurisdictional conduct take place in Delaware"); *Cordis Corp. v. Advanced Cardiovascular Systems*, No. Civ. A. 97-635-SLR, 1999 WL 805284, at *6 (D. Del. Sept. 17, 1999) (parent company's control and direction over subsidiary's marketing campaign insufficient where plaintiff failed to establish control over specific Delaware acts).

Monsanto does not identify a single *Delaware act* allegedly controlled or directed by Syngenta AG or Participations. Thus, even if Monsanto's evidence could establish that the Swiss parent companies had the means to control their U.S. subsidiaries, the absence of any allegation that such control was exercised as to a specific Delaware conduct is fatal to Monsanto's position. *E.g. Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, No. Civ. A. 19760-NC, 2004 WL 415251, at *4 (Del Ch. Mar. 4, 2004) (rejecting agency theory absent evidence that subsidiary undertook acts on behalf of parent in Delaware); *Applied Biosystems,* 772 F. Supp. at 1464 (no agency jurisdiction absent allegations that Delaware-incorporated subsidiary was directed to perform relevant acts in Delaware).

Moreover, even the evidence of generalized "control" cited by Monsanto is, on its face, legally insufficient. It is well-recognized that personal jurisdiction does not attach to a parent company merely by virtue of its ownership – even 100% ownership – of a U.S. subsidiary. *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 420 (E.D. Pa. 2005) (citing cases). This is true notwithstanding that such parent companies always "control" the subsidiary in the sense that they own all of its shares and can elect its board of directors. *Id.* at 423 ("officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject [the] parent to . . . jurisdiction") (quoting *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)).

The issue, then, is not whether there is *some* overlap of officers and directors, or whether the parent participates in and monitors the broad strategic plans of the subsidiary – all of which is expected – but whether the parent "dominates" the subsidiary through direct control of its day-to-day activities. *E.g. Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305-06 (D. Del. 1990) ("[A]bsent total control of the subsidiary, evidenced by interference in the day-to-day operations of the subsidiary, the presence of the subsidiary can not be imputed to the parent for jurisdictional purposes."); *Phoenix Canada Oil Co. v. Texaco,* 658 F. Supp. 1061, 1084-85 (D. Del. 1987) (agency theory applies only if parent "dominates" subsidiary; parent of wholly-owned subsidiary that had seats on board, took part in financing, and approved major policy decisions was not liable because parent did not have day-to-day control); *Akzona, Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984) ("The parent must have actual, participatory and total control of the subsidiary.").

Monsanto's presentation falls far short of the required domination of day-to-day activities.[7] The use of the "Syngenta" name on the company's web-site and other materials to describe the entire group of companies is unremarkable and does not establish control for agency purposes. *E.g. Action Mfg.*, 375 F. Supp. 2d at 417 (no jurisdiction where annual report referred to all group companies collectively as "we," "our," and "us"); *Akzona,* 607 F. Supp. at 237 (no jurisdiction where subsidiary was referred to in annual report as a "division" of parent). Any inference of improper control is further defeated by the fact that the very materials Monsanto includes in its submission make clear that Syngenta does business through separate legal entities. *E.g.* Mon. Br., Exh. 3 (Syngenta financial report listing

---

[7] Monsanto is incorrect that a meeting between U.S. and Swiss representatives in Washington D.C. contradicts the declaration of Edward Resler submitted in support of the motion to dismiss. (Mon. Br. at 16-17.) Mr. Resler's declaration states that Syngenta Seeds, Inc. and its U.S. affiliates manage their own day-to-day operations. (Declaration of Edward Resler ¶ 10.) The fact that U.S. personnel may have consulted with the ultimate parent company on broad strategic issues, such as the acquisition and development of a new product, in no way contradicts Mr. Resler's statement. *See Phoenix Canada*, 658 F. Supp. at 1085 (distinguishing between approval of major decisions such as acquisitions and day-to-day control). Moreover, Monsanto improperly relies on a privileged document inadvertently produced by Syngenta. (Mon. Br., Exh. 1.) The proper procedure would have been for Monsanto to consult with Syngenta about this document (which is clearly labeled as privileged) rather than to "shoot first and ask questions later" by including it in their brief. The Protective Order in this case includes a procedure for the recall of such inadvertently produced documents, which Syngenta has invoked.

separate legal entities); *see Akzona*, 607 F. Supp. at 237 (no agency where subsidiary was referred to in annual report as division because report also contained list of separate legal entities).[8]

   Moreover, Monsanto does not dispute that corporate formalities – such as regular board meetings, the maintenance of separate corporate records, etc. – have been observed. (*See* Michaelis Decl. ¶¶ 19-24.) And, of the several dozen board members of the U.S. companies named in the Counterclaim, Monsanto has identified only a small minority – seven to be precise – who at any time also had an alleged affiliation with Syngenta AG or Participations. (Mon. Br. at 6.)[9] Such minority overlap between parent and subsidiary management is clearly insufficient to establish personal jurisdiction under an agency theory. *E.g., Smith v. S&S Dundalk Eng'g Works, Ltd.*, 139 F. Supp. 2d 610, 621 (D.N.J. 2001) ("overlap of employees . . . has been held insufficient to establish the requisite showing to disregard the corporate structure") (citing cases); *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.") (citing cases).[10]

---

[8] In fact, Monsanto's brief mischaracterizes the evidentiary record when it sets forth a "corporate governance chart" that purports to be taken from Syngenta's 2004 Annual Report. The chart, as reproduced by Monsanto, omits a critical reference to the separate corporations that make up the group. (Mon. Br. at 5.) Specifically, Monsanto omits from the chart in its brief (without indicating a redaction) an explicit note titled "Group structure" that refers to Note 32 of the group financial statements. (*See* Mon. Br., Exh. 7, p.24.) Note 32, in turn, describes the separate legal entities that make up the Syngenta group. (Resler Supp. Decl. ¶ 5, Exh. C.)

[9] Even here, Monsanto has the facts wrong. Michael Mack is not the President of Syngenta Corporation. (Michaelis Decl. ¶ 20.) Mr. Mack was at one time on the board of Syngenta Corporation, but he resigned in early 2005, within two months of being appointed to the Syngenta AG Executive Committee. Similarly, Graham Walker left his position as a director of Garst at the end of 2001, long before he assumed a position with Syngenta in Basel. We will refrain from enumerating the many other errors in Monsanto's factual presentation as they do not change the legal analysis set forth in this motion.

[10] Nor is the alleged "transfer" of employees between Switzerland and the U.S. significant. The discovery materials cited by Monsanto show that of the thousands of employees of the Syngenta U.S. companies, six have spent time in positions in Basel. (*See* Mon. Br. at 7-8.) The fact that a handful of U.S. employees have also had positions in Switzerland hardly establishes that the Swiss companies exercise day-to-day control over their subsidiaries.

In short, the picture that emerges from the voluminous materials submitted by Monsanto is that of a typical global corporation.  In today's world, it would be surprising to find any major international company that *does not* have minority representation on its subsidiaries' boards, allow its U.S. employees to take limited assignments with the foreign parent company, encourage a common "brand" for its separate corporate entities, and inform itself and participate in the major strategic decisions of the group as a whole.  If this were the standard for establishing an agency relationship for jurisdictional purposes, then virtually every foreign company with a U.S. subsidiary would be subject to jurisdiction here.  That is not the law.  Rather, agency jurisdiction is reserved for those few foreign parent companies that control the specific day-to-day *Delaware* activities of their subsidiaries such that the Delaware conduct may be attributed to the parent.  Monsanto has made no such showing in this case.

## II.    MONSANTO CANNOT ESTABLISH JURISDICTION UNDER FED. R. CIV. P. 4(K)(2)

Fed. R. Civ. P. 4(k)(2) establishes a "narrow exception" to the usual rule that jurisdictional contacts are measured with respect to the state forum in which suit is brought.  *CFMT Inc. v. Steag Microtech*, No. Civ. A. 95-442-LON, 1997 WL 313161, at *7 (D. Del. Jan. 9, 1997).  Under Rule 4(k)(2), a national contacts analysis is appropriate where: (i) plaintiff asserts a federal cause of action; and (ii) the defendant is "not subject to the jurisdiction of the courts of general jurisdiction of any state." Fed. R. Civ. P. 4(k)(2).  Monsanto has not satisfied either of these prerequisites.

### A.    Monsanto's 4(k)(2) Jurisdiction Argument Will Be Moot if Syngenta Seeds, Inc.'s Motion to Dismiss Monsanto's Federal Claims Is Granted

Rule 4(k)(2) only applies if the cause of action for which jurisdiction is sought arises under federal law.  Monsanto's Counterclaim purports to assert two such claims under the Lanham Act.  However, these Lanham Act claims have been the subject of a motion to dismiss by the domestic counter-defendants that has been pending for several months.  As set forth in that motion, Monsanto's federal causes of action are precluded by the Supreme Court's recent decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  If the Court grants Syngenta Seeds, Inc.'s

motion to dismiss, Monsanto's Counterclaim would no longer state a federal cause of action and

jurisdiction over Syngenta AG and Participations under Rule 4(k)(2) would be unavailable.

   Under these circumstances, the Court should first rule on the motion to dismiss before

permitting Monsanto to proceed on a national contacts theory under Rule 4(k)(2). That is what the court

did in *Comsat Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 525 (D.D.C. 1995), in which it

determined "[t]here is no need in this case to determine whether [defendant] has sufficient minimum

contacts with the United States [under Rule 4(k)(2)] because the Court concludes that [plaintiff] has

failed to state a federal claim under the Communications Act of 1934." Such an approach is especially

justified in this case because of the burden that would be visited on the Swiss companies in investigating

jurisdictional contacts with 50 states. *See Societe Nationale Industrielle Aerospatiale v. United States

Dist. Court*, 482 U.S. 522, 546 (1987) (courts should "exercise special vigilance to protect foreign

litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a

disadvantageous position"); *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 305 (3d

Cir. 2004) (emphasizing need for "special vigilance").

  **B.**  **Monsanto Has Failed to Establish that Syngenta AG and
Participations Are Not Subject to Jurisdiction in Any State**

   Under the second element of Rule 4(k)(2) jurisdiction – the so-called "negation

requirement" – Monsanto must establish that Syngenta AG and Participations are not subject to

jurisdiction in any single state. The purpose of this requirement is to fulfill the purpose of Rule 4(k)(2)

as a limited, stop-gap measure that was intended to apply *only* when a plaintiff is unable to obtain

jurisdiction over the defendant with reference to its contacts with any one state. *See* Rule 4(k)(2)

Advisory Committee Notes.

   Importantly, Monsanto, not Syngenta, bears the burden of proving the lack of state-

specific contacts. *CFMT*, 1997 WL 313161, at *7 n.10 (the burden is on "the party opposing the motion

to dismiss to affirmatively represent and demonstrate that the defendant is not subject to the jurisdiction

of any state"); *Telcordia Technologies v. Alcatel S.A.*, No. Civ. A. 04-874, 2005 WL 1268061, at *5 (D.

Del. May 27, 2005) ( "The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that [the plaintiff] bears the burden of demonstrating that [the defendant] is not subject to jurisdiction in any state."). In order to make out even a *prima facie* case under this element, Monsanto must "affirmatively represent . . . that the defendant is not subject to the jurisdiction of any state." *CFMT,* 1997 WL 313161, at *7 n.10; *S&S Dundalk*, 139 F. Supp. at 622 (same); *United States v. Swiss American Bank,* 191 F.3d 30, 41 (1st Cir. 1999) ("The plaintiff . . . must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state."); *Estates of Ungar v. Palestinian Authority*, 153 F. Supp. 2d. 76, 92 (D.R.I. 2001) (same); *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (same).[11]

       Monsanto has failed to make such an affirmative representation.  To the contrary, Monsanto argues that Syngenta AG and Participations *are* subject to both specific and general personal jurisdiction in Delaware and possibly other states. (Monsanto's Counterclaim ¶ 2-3; Mon. Br. at 18-24.) Monsanto cannot have it both ways.  Because the certification of the lack of jurisdiction in any single state is a threshold requirement, courts have routinely rejected jurisdiction under Rule 4(k)(2) when plaintiff contends that there *is* jurisdiction in a particular forum.  For example, the United States District Court for the District of Massachusetts recently rejected an argument almost identical to the one Monsanto raises in its answering brief, noting that Rule 4(k)(2):

> requires plaintiffs to certify that to their knowledge, based on information that is "readily available," [defendant] is not subject to the jurisdiction of any state court. This [plaintiffs] have not done. Instead, they have attempted to shift the burden to [defendant] by arguing that if [defendant] is successful in

---

[11] Monsanto's argument that it need only negate *general* jurisdiction in any individual state (as opposed to specific jurisdiction) is wrong. (Mon. Br. at 29.) The text of Rule 4(k)(2) states that it is applicable where defendant is "not subject to the jurisdiction of the *courts of general jurisdiction* of any state." The phrase "courts of general jurisdiction" refers to the subject matter jurisdiction of the court, not personal jurisdiction. Monsanto's argument is based on a case that apparently mixed up the language and moved the word "general" earlier in the sentence. (Mon. Br. at 29.) In any event, the Advisory Committee notes make clear that the requirement of establishing the defendant's lack of jurisdiction in any state is not limited to general, as opposed to specific, jurisdiction. Fed. R. Civ. P. 4(k)(2), Advisory Committee Notes.

> defeating jurisdiction under the laws of Illinois, Massachusetts, Alabama, and Minnesota, "then it is difficult to imagine any state in which Plaintiffs can establish, or in which [defendant] will concede, in personam jurisdiction." . . . Th[is] argument is not a substitute for the [certification] requirements of *Swiss Bank I* . . .

*In re Lupron Marketing & Sales Practices Litig.*, 245 F. Supp. 2d 280, 302-03 (D. Mass. 2003).

Many other cases have reached similar results. *E.g., Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002) (refusing to assert 4(k)(2) jurisdiction because plaintiff "continues to assert that personal jurisdiction . . . is proper in Maryland as well as in other states"); *Smith v. Pat & Jane Emblems, Inc.,* No. 05-127-PH, 2005 WL 3032535, at *6 (D. Me. Nov. 10, 2005) (refusing to assert jurisdiction in the absence of the required certification); *Saudi v. Northrop Grumman Corp.*, 221 F.R.D. 452, 457 (E.D. Va. 2004) (refusing to assert jurisdiction under Rule 4(k)(2) when allegations in the complaint indicate that the defendant "might" be subject to jurisdiction in at least two states); *In re Automotive Refinishing Paint Antitrust Litig.*, No. 1426, 2002 WL 31261330, at *9 n.12 (E.D. Pa. July 31, 2002) ("We note, however, application of Rule 4(k)(2) against BASF AG or BASF Coatings is undermined by several of the allegations and arguments raised by Plaintiffs."); *S&S Dundalk*, 139 F. Supp. 2d at 623 ("if plaintiff were successful in proving that [defendant] does business in several other states, that would be sufficient to confer jurisdiction in a state other than New Jersey and would render the narrow exception of Rule 4(k)(2) unavailable."); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 58 (D.D.C. 2000) (noting that burden under the negation requirement shifts to defendant "only at that point" when "plaintiffs have certified that, to the best of their knowledge, these defendants are not subject to jurisdiction in any state").

Monsanto's argument – raised only in a footnote – that it should be permitted to make inconsistent pleadings "in the alternative" (Mon. Br. at 28 n.9) is incorrect as well as contrary to the long line of precedent cited above. In one of the cases Monsanto cites, *S&S Dundalk*, 139 F. Supp. 2d at 623, the court *rejected* 4(k)(2) jurisdiction and denied national contacts discovery precisely because plaintiff contended that jurisdiction might exist in several individual states. Similarly, in *Telcordia*, 2005 WL

1268061, at *5, also cited by Monsanto, the court denied jurisdiction and jurisdictional discovery on the ground that the plaintiff failed to meet its burden of affirmatively alleging lack of contacts with any state; plaintiff could not simply refer to defendant's denial of jurisdictional contacts to satisfy the negation requirement.[12] Thus, even Monsanto's cases reject the ploy to avoid the negation requirement that Monsanto has attempted here.

### C.    Monsanto Has Not Alleged Sufficient National Contacts

Even if the Court were to consider national contacts, Monsanto's presentation is insufficient to establish personal jurisdiction on that basis. For the most part, Monsanto's alleged national contacts are of the same type as those alleged in Delaware, and fail to establish jurisdiction for the same reasons. For example, with respect to Monsanto's agency theory, it has failed to establish any specific act in the United States related to GA21 that was controlled or directed by Syngenta AG or Participations. To the extent Monsanto asserts bases for jurisdiction of a different kind, *e.g.* Syngenta AG's New York stock exchange listing or Participations' ownership of intellectual property registered in the U.S., those contacts are also legally insufficient. *See, e.g., Quick Technologies v. Sage Group*, 313 F.3d 338, 344 (5th Cir. 2002) (refusing to assert jurisdiction under Rule 4(k)(2) based on filings with the United States Patent Office that did not give rise to plaintiff's claim); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000) ("the prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depository for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."); *Telcordia*, 2005 WL 1268061, at *7 (NY stock exchange listing "does not justify an exercise of jurisdiction" over matters unrelated to that listing).

---

[12] In the other case relied on by Monsanto, *Sunshine Distrib. Inc. v. Sports Authority Michigan, Inc.*, 157 F. Supp. 2d 779 (E.D. Mich. 2001), the court raised the issue of 4(k)(2) sua sponte and therefore was not presented with any argument that plaintiff's jurisdictional contentions were inconsistent with the negation requirement of Rule 4(k)(2).

**III.     MONSANTO IS NOT ENTITLED TO ADDITIONAL JURISDICTIONAL DISCOVERY**

    **A.     Monsanto Has Already Had Extensive Discovery Relevant To Jurisdiction**

        Monsanto has already received *over 2.2 million* pages of documents from Syngenta Seeds, Inc. and five of its U.S. affiliates named as Counterclaim Defendants in this case. Many of those documents directly relate to the events asserted in Monsanto's Counterclaim and, specifically, the involvement, if any, of Syngenta AG and Participations in those events. For example, the documents produced concern, *inter alia*, the Bayer GA21 Agreement, the Corn Business Team, and the sale and marketing of GA21 in the United States. Monsanto makes heavy use of this material in the multiple volumes of exhibits it submits with its response to the jurisdiction motion. Indeed, Monsanto acknowledges at the outset of its brief that its jurisdictional arguments are based on "[d]ocuments produced by Syngenta AG and Participations' subsidiaries and the testimony of employees from the U.S. subsidiaries . . . ." (Mon. Br. p.2).

        Monsanto has also obtained discovery in its patent case against Syngenta Seeds, Inc., which is currently pending before this Court. Thus far in that case, Monsanto has received over 100,000 pages of documents and taken 20 depositions, including the deposition of Edward Resler, who submitted a declaration in support of this jurisdictional motion. During Mr. Resler's deposition, he was asked, among other things, about (1) the acquisition of the Golden Harvest Companies (Resler Dep. at 17-18); (2) the Bayer GA21 Agreement (*id*. at 44-45); and (3) the May 12, 2004 press release issued in Switzerland by the media office of Syngenta International AG (*id*. at 149-58). During at least 10 of these depositions, Monsanto inquired extensively about the membership and operation of the Corn Business Team. *See, e.g.*, 8/25/05 Wilde Dep. at 16-24, 66-69, 78-82; 10/5/05 Deposition of Thomas Klevorn at 11-13, 34-36, 45-47, 98) (copies attached to Declaration of Stephen Fishbein, Exh. A & B).

        Monsanto has also been given access to the entire discovery record in the so-called "branding-case," in which Monsanto sued Syngenta Seeds, Inc. in the District of Missouri concerning the marketing of genetically modified soybean seeds. Monsanto asked Syngenta for permission to use the

branding case discovery record in connection with this jurisdiction dispute, to which Syngenta agreed. Monsanto refers to the branding material in its submission.  (Mon. Br. at 17.)

Thus, unlike the typical plaintiff who has not had any discovery related to personal jurisdiction, Monsanto has already had extensive discovery on these issues.  In such circumstances, courts have held that additional jurisdictional discovery is not appropriate.  *E.g., Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1495 (5th Cir. 1993) (no jurisdictional discovery when plaintiff had "extensive discovery" in two related cases), *abrogated on other grounds*, 145 F.3d 211 (5th Cir. 1998); *eSpeed, Inc. v. Brokertec USA*, No. 03-612-KAJ, 2004 WL 2346137, at *2 n.6 (D. Del. Sept. 13, 2004) (refusing to grant additional jurisdictional discovery where parties had "ample opportunity" to conduct such discovery); *Fleetwood v. B.C.E., Inc.*, No. Civ. A. DKC 2003-2125, 2004 WL 903754, at *6 (D. Md. Apr. 28, 2004) (denying jurisdictional discovery where plaintiff "has not provided reason to believe that there exists additional information that Plaintiff has not had access to or that would affect or alter the court's analysis of personal jurisdiction in this case"); *United States v. Offshore Marine Ltd.*, 179 F.R.D. 156, 160 (D.V.I. 1998) (no jurisdictional discovery where the plaintiff "has had ample time, both through investigation prior to filing and during the pendency of this action to establish a basis for jurisdiction"). The same result should apply here.

**B.      Monsanto's Jurisdictional Allegations Are Insufficient as a Matter of Law and, as a Result, Additional Jurisdictional Discovery Should Not Be Granted**

Even with its access to the comprehensive discovery discussed above, Monsanto has not met the standard for establishing its entitlement to jurisdictional discovery.  Since the issue here is *additional* discovery and not discovery in the first instance, these standards should be strictly applied.

Jurisdictional discovery is not an automatic right.  *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995) ("[A] court cannot permit discovery as a matter of course simply because a plaintiff has named a particular party as a defendant.").  Rather, as the Third Circuit has explained, the party seeking discovery must present "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the defendant] and the forum state.'" *Toys "R" Us*

*v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). The reason for this is that jurisdictional discovery must flow *from* factual allegations, not the other way around. Thus, "[i]t would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction." *Poe v. Babcock Int'l, plc*, 662 F. Supp. 4, 7 (M.D. Pa. 1985); *Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory*, 47 Fed. Appx. 73, 77 (3d Cir. 2002) (denying jurisdictional discovery "where, as here, the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Telcordia*, 2005 WL 1268061, at *9 (denying jurisdictional discovery where it "would amount to allowing [plaintiff] to conduct a fishing expedition").

The Court should be particularly wary of allowing additional discovery in this case both because Monsanto has already had extensive discovery and because Syngenta AG and Participations are foreign companies. As the Supreme Court has noted, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987). Indeed, courts should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Aerospatiale*, 482 U.S. at 546; *accord Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists.") (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir.1998)).

As explained above, Monsanto's allegations concerning contacts with Delaware, even if credited as true, are legally insufficient to establish personal jurisdiction. Further discovery would therefore serve no purpose and is inappropriate in view of the extensive discovery record to which Monsanto has already had access. National contacts discovery under 4(k)(2) is similarly inappropriate given Monsanto's failure to satisfy the threshold negation requirement. *See S&S Dundalk*, 139 F. Supp. 2d at 623 (denying discovery where plaintiff failed to satisfy 4(k)(2) negation requirement); *Telcordia*, 2005 WL 1268061, at *5 (same). At the very least – and consistent with the Supreme Court's

admonition to avoid burdensome discovery on foreign defendants – national contacts discovery should be held in abeyance pending the Court's ruling on whether Monsanto has stated a viable federal cause of action to support its national contacts theory under Rule 4(k)(2).

Finally, if the Court determines that some jurisdictional discovery is appropriate, such discovery should be extremely narrow in scope. Monsanto's proposed document requests, interrogatories and deposition notices (Mon. Br., Exh. 50 & 51) – provided to Syngenta in draft, but not yet served – are far too broad. Among other things, these requests reach contacts beyond Delaware; cover products beyond the GA21 that is the subject of Monsanto's Counterclaim; extend years before the conduct alleged in Monsanto's Counterclaim and, generally, would require an inappropriately burdensome inquiry into all aspects of the counter-defendants' business. Certainly, if Monsanto expects jurisdictional discovery to proceed under the Federal Rules of Civil Procedure as opposed to the Hague Convention on the Taking of Evidence in Civil and Commercial Matters (*see* Mon. Br. at 35-37), then the scope of discovery *must* be narrow so as to respect the sovereign interests of Switzerland which, as a signatory to the Hague Convention, has an interest in the matter. *Aerospatiale*, 482 U.S. at 545-46.

## CONCLUSION

For the foregoing reasons, Syngenta AG and Participations respectfully request that this Court dismiss Monsanto's Counterclaim against Syngenta AG and Participations for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or, in the alternative, failure to state a claim under Fed. R. Civ. P. 12(b)(6).[13] Syngenta AG and Participations also respectfully request that the Court deny Monsanto's request to conduct further jurisdictional discovery.

---

[13] Counter-defendants rely on their opening brief for their arguments in support of their motion to dismiss Monsanto's Counterclaim for failure to state a claim.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Counterclaim Defendants Syngenta AG and
Syngenta Participations AG*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Jonathan R. DeFosse
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: January 9, 2006

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on January 9, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza, 6th Floor
> 1313 N. Market Street
> Wilmington, DE 19801

I further certify that January 9, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

> Peter E. Moll, Esquire
> Howrey Simon Arnold & White, LLP
> 1299 Pennsylvania Ave., N.W.
> Washington, D.C. 20004

> Susan Knoll, Esquire
> Howrey Simon Arnold & White, LLP
> 750 Bering Drive
> Houston, TX 77057

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C.  20004


YOUNG CONAWAY STARGATT & TAYLOR, LLP


_____
John W. Shaw (No. 3362)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

Attorneys for Counterclaim Defendants Syngenta AG and
Syngenta Participations AG