Sheet _7_ of _8_

| Form 1449* | | Atty. Docket No. 9696.1-US-01 | Serial No. 07/~~467,983~~ 974 379 |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | | Applicant Ronald Lundquist et al. | |
| | | Filing Date Jan 22, 1990 | Group 184 |

*(MAIL ROOM, MAY 4 1992, TRADEMARK, 52)*

## U.S. PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Name | Class | Subclass | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| _____| | | | | | |
| _____| | | | | | |
| _____| | | | | | |

## FOREIGN PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Country | Class | Subclass | Translation Yes | No |
|---|---|---|---|---|---|---|---|
| _____| | | | | | | |
| _____| | | | | SM 0000749 | | |
| _____| | | | | | | |

## OTHER DOCUMENTS
(Including Author, Title, Date, Pertinent Pages, Etc.)

**Examiner Initial

| | |
|---|---|
| | J. Odell et al., "Identification of DNA Sequences Required for Activity of the Cauliflower Mosaic Virus 35S Promoter", Nature, 313:810-811 (1985) |
| | P. Ozias-Akins et al., "Progress and Limitations in the Culture of Cereal Protoplasts", Trends in Biotechnology, 2:119-123 (1984) |
| | P. Ozias-Akins et al., "In Vitro Regeneration and Genetic Manipulation of Grasses", Physiologia Plantarum, 73:565-569 (1988) |
| | J. Poehlman, Breeding Field Crops, 3rd Ed., AVI Publishing Co., pp.469-481 (1986) |
| | I. Potrykus et al., "Callus Formation from Stem Protoplasts of Corn (Zea mays L.)", Molec. gen. Genet., 156:347-350 (1977) |
| | Sanford, "Biolistic Plant Transformation", Physiol. Plantarum, 79:206-209 (1990) |
| | A. Schmidt et al., "Media and Environmental Effects on Phenolics Production from Tobacco Cell Cultures", Chem Abstracts, 110:514-515, Abstract 230156 (1989) |
| | R. Smith et al., "Shoot Apex Explant for Transformation", Plant Physiology (Suppl.), 86:108, Abstract 646 (1988) |
| | Spencer et al. Poster Presentation, Faseb Plant Gene Expression Conference, Copper Mountain, Colorado, (August 6-11 1989) |
| | Spencer et al., "Bialaphos Selection of Stable Transformations from Maize Cell Culture", Theor. Appl. Genet., 79:625-631 (May 1990) |

| Examiner GARY BENZION | Date Considered 7/6/93 |
|---|---|

*Substitute Disclosure Statement Form (PTO-1449)
**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Sheet _8_ of _8_

Form 1449*

MAIL ROOM
52  MAY 4 1992
PT. & TRADEMARK OFF.

INFORMATION DISCLOSURE STATEMENT
BY APPLICANT
(Use several sheets if necessary)

| Atty. Docket No. 9696.1-US-01 | Serial No. 07/~~467,981~~ 974379 |
|---|---|
| Applicant Ronald Lundquist et al. | |
| Filing Date Jan 22, 1990 | Group 184 |

## U.S. PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Name | Class | Subclass | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Country | Class | Subclass | Translation Yes \| No |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | SM 0000750 | | |

## OTHER DOCUMENTS
(Including Author, Title, Date, Pertinent Pages, Etc.)

| **Examiner Initial | |
|---|---|
| | C. Thompson et al., "Characterization of the Herbicide-Resistance Gene bar from Streptomyces hygroscopicus", EMBO J., 6:2519-2523 (1987) |
| | Tomes et al., "Transgenic Tobacco Plants and Their Progeny Derived by Microprojectile Bombardment of Tobacco Leaves", Plant Mol. Biol., 14:261-268 (Feb 1990) |
| | D. Twell et al., "Transient Expression of Chimeric Genes Delivered into Pollen by Microprojectile Bombardment", Plant Physiol., 91:1271-1274 (1989) |
| | E. Ulian et al., "Transformation of Plants via the Shoot Apex", In Vitro Cellul & Dev. Biol., 9:951-954 (1988) |
| | V. Vasil et al., "Improved Efficiency of Somatic Embryogenesis and Plant Regeneration in Tissue Cultures of Maize (Zea mays L.)", Theor. Appl. Genet., 66:285-289 (1983) |
| | V. Vasil et al., "Plant Regeneration from Friable Embryogenic Callus and Cell Suspension Cultures of Zea mays L.", J. Plant Physiol., 124:399-408 (1986) |
| | V. Walbot et al., "Molecular Genetics of Corn", Ag. Mono., 18:389-430 (1988) |
| | Y. Wang et al., "Transient Expression of Foreign Genes in Rice, Wheat and Soybean Cells Following Particle Bombardment", Plant Mol. Biol., 11:433-439 (1988) |
| | J. White et al., "A Cassette Containing the Bar Gene of Streptomyces hygroscopicus: A Selectable Marker for Plant Transformation", Nucleic Acids Res., 18:1062 (1989) |

| Examiner GARY BENZION | Date Considered 2/4/93 |
|---|---|

*Substitute Disclosure Statement Form (PTO-1449)

**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO |
|---|---|---|---|
| 07/467983 | 1/22/90 | Lundgquist et al. | 9696.1-US-01 |

EXAMINER
Benzion, G

| APT UNIT | PAPER NUMBER |
|---|---|
| 1804 | 19 |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Warren D. Woessner                    (3) _____

(2) Gary Benzion                          (4) _____

Date of interview    11/20/92

Type: ☐ Telephonic    ☒ Personal (copy is given to ☐ applicant ☒ applicant's representative)

Exhibit shown or demonstration conducted: ☐ Yes ☒ No    If yes, brief description: _____

Agreement ☐ was reached with respect to some or all of the claims in question.    ☒ was not reached.

Claims discussed: _X's one_

Identification of prior art discussed: _None._

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Applicants have relied on FWC on 11/2/92 — interview preliminary to new filing. Applicant will file 132 declaration attesting to herbicide resistance by process claimed and 132's to establish non-obviousness. 102(g) issues will be discussed in next office action if appropriate._

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1~7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☒ It is not necessary for applicant to provide a separate record of the substance of the interview.

SM 0000751

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

Gary Benzion
Examiner's Signature

PTOL-413 (REV 1-84)

S/N  07/467,983

PATENT

MAIL ROOM
18  10
1992

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:  Ronald C. Lundquist et al.    Examiner:  Benzlon

Serial No:  07/467,983                Group Art Unit:  1804

Filed    :  01/22/90                  M&G 9696.1US01

For      :  FERTILE TRANSGENIC CORN PLANTS

NOV 2 4 1992

PETITION FOR EXTENSION OF TIME

Hon. Commissioner of
Patents and Trademarks
Washington, D. C.  20231

Sir:

In accordance with the provisions of 37 C.F.R. 1.136(a), it
is respectfully requested that a three-month extension of time be
granted in which to respond to the outstanding Office Action mailed
May 13, 1992, said period of response being extended from August
13, 1992, to November 13, 1992.

Our check in the amount of $840 is enclosed to cover the
required extension fee.

"Express Mail" mailing number  RB901843767US

Date of Deposit _____11-10-92_____
I hereby certify that this paper or fee is being deposited
with the United States Postal Service "Express Mail Post
Office ... ce under 37 CFR 1 10 on the
da ...          ... and is addressed to the
Cor ... ... and Trademarks, Washington,
D C 20231

Brian Stevens
printed name

Brian W Stevens
signature

Dated: Nov 10 1992

Respectfully submitted,

Ronald C. Lundquist et al.,

By their attorneys,

MERCHANT, GOULD, SMITH, EDELL,
WELTER & SCHMIDT, P.A.
3100 Norwest Center
Minneapolis, Minnesota 55402
612/332-5300

SM 0000752

By  Warren O Woessner
Warren D. Woessner
Registration No. 30,440
1 117    840.00 CK

040 FT 11/23/92 07467983



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
|  |  |  |  |

|  | EXAMINER |
|---|---|
|  |  |
| ART UNIT | PAPER NUMBER |
|  | 21 |

DATE MAILED:

## NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ☑ Applicant's failure to respond to the Office letter, mailed __5/13/92__

2. ☐ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138.

3. ☐ Applicant's failure to timely file the response received _____ within the period set in the Office letter.

4. ☐ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of _____ of the Notice of Allowance.

   ☐ The issue fee was received on _____

   ☐ The issue fee has not been received in Allowed Files Branch as of _____

   In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, in the amount specified by 37 C.F.R. 1.17 (i), and a verified showing as to the causes of the delay.

   If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc. v. Schuyler, 172 U.S.P.Q. 513.

5. ☐ Applicant's failure to timely correct the drawings and/or submit new or substitute formal drawings by _____ as required in the last Office action.
   ☐ The corrected and/or substitute drawings were received on _____

6. ☐ The reason(s) below.

**GARY BENZION**
**PATENT EXAMINER**
**GROUP 180**

SM 0000753

PTO-1432 (REV 8-83)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Ronald C. Lundquist. et al.                Examiner: ---
                                                      (Parent: Benzlon)

Serial No. -------
           (Parent: 07/467,983)                Group Art Unit: ----
                                                      (Parent: 1804)    07/974379

Filed: On even date herewith
NOV 10 1992        (Parent: 01/22/90)          Docket No.:   9696.1US01

For:   FERTILE TRANSGENIC CORN PLANTS

The Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

We are transmitting herewith the attached:
[ ] An assignment of the invention to _____
_____, a _____ corporation.
[ ] Small entity status of this application under 37 C.F.R. 1.9 and 1.27 has been established
    by verified statement previously submitted.
[ ] A verified statement to establish small entity status under 37 C.F.R. 1.9 and 1.27 is
    enclosed.
[ ] A signed Combined Declaration and Power of Attorney is enclosed.
[ ] An unsigned Combined Declaration and Power of Attorney is enclosed.
[X] Other:  Request for File Wrapper Continuation Under CFR 1.62, check for $710 to cover
    filing fee
[X] The filing fee has been calculated below as follows:

CLAIMS AS FILED

| FOR: | (1) No. Filed | (2) No. Extra | SMALL ENTITY RATE | FEE | or | OTHER RATE | FEE |
|------|---------------|---------------|-------------------|-----|-----|-----------|-----|
| BASIC FEE |  |  |  | $355 | or |  | $710 |
| TOTAL CLAIMS | 5 -20 = |  | x 11 = | $ | or | x 22 = | $ |
| INDEPENDENT CLAIMS | 1 - 3 = |  | x 37 = | $ | or | x 74 = | $ |
| [ ] MULTIPLE DEPENDENT CLAIM PRESENTED | | + | + 115= | $ | or | + 230 = | $ |
|  |  | TOTAL |  | $ |  |  | $710 |

  If the difference in Column (1) is less than zero, enter "0" in Column (2).

[X] Attached is a Petition for Extension of Time for 3 months and fee of $840.
[X] Attached is a check in the amount of $710 to cover the Filing Fee.
[X] Attached is a return postcard.

Please charge any additional fees or credit overpayment to Deposit Account No. 13-2725.
A duplicate copy of this sheet is enclosed.

MERCHANT, GOULD, SMITH, EDELL, WELTER & SCHMIDT      By:   Warren D Woessner
3100 Norwest Center, Mpls, MN 55402 (612)332-5300    Name:   Warren D. Woessner
                                                     Reg. No.:         30,440

CERTIFICATE UNDER 37 CFR 1.10:

              "Express Mail" mailing label number: RB901843767US       SM 0000754
              Date of Deposit:    November 10, 1992
I hereby certify that this paper or fee is being deposited with the United States Postal Service
"Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above
and is addressed to the Comm. of Patents and Trademarks, Box FWC, Washington, D.C. 20231.
              By:   Brian W Stevens
              Name:        Brian Stevens
                           (NEW FILING)

Revised 4/30/90

$710^{TD}/10/

A/Eng
22/RC
C

07/974379

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| Docket Number | Anticipated Classification of this Application: | | Prior Application | |
|---|---|---|---|---|
| | Class | Subclass | | |
| 9696.1US01 | | | Examiner Benzlon | Art Unit 1804 |

**Request For File Wrapper Continuing Application Under 37 CFR 1.62**

Hon. Commissioner of Patents
 and Trademarks
Box FWC
Washington, DC  20231

Dear Sir:

    This is a request for filing a ☐ continuation-in-part [X] continuation ☐ divisional application under 37 CFR 1.62 of prior application Serial No. 07/467,983, filed on January 22, 1990, entitled FERTILE TRANSGENIC CORN PLANTS by the following inventor(s):

| Full Name of Inventor | Family Name LUNDQUIST | First Given Name Ronald | Second Given Name C. |
|---|---|---|---|
| Residence & Citizenship | City Minnetonka | State or Foreign Country Minnesota | Country of Citizen U.S.A. |
| Post Office Address | Post Ofc. Address 4901 Clean Spring | City Minnetonka | State/Zip/Country MN/55345/U.S.A. |

| Full Name of Inventor | Family Name WALTERS | First Given Name David | Second Given Name A. |
|---|---|---|---|
| Residence & Citizenship | City Bloomington | State or Foreign Country Minnesota | Country of Citizen U.S.A. |
| Post Office Address | Post Ofc. Address 11424 Kell Road | City Bloomington | State/Zip/Country MN/55437/U.S.A. |

SM 0000755

The above-identified prior application in which no payment of the issue fee, abandonment of, or termination of proceedings has occurred, is hereby expressly abandoned as of the filing date of this new application.  Please use all the contents of the prior application file wrapper, including the drawings, as the basic papers for the new application.  (Note: 37 CFR 1.60 may be used for applications where the prior application is not to be abandoned.)

1.    ☐    Enter the amendment previously filed on _____
          Under 37 CFR 1.116 but unentered, in the prior application.

2.    ☐    A Preliminary amendment is enclosed.

The filing fee is calculated on the basis of the claims existing in the prior application as amended at 1 and 2 above.

| CLAIMS AS FILED | | | |
|---|---|---|---|
| NUMBER FILED    NUMBER EXTRA | | RATE | BASIC FEE $710/355 |
| Total Claims 5 -20 = | 0 | $22/11 | |
| Independent Claims 1  -3 = | 0 | $74/37 | |
| MULTIPLE DEPENDENT CLAIM PRESENTED | | | $230/115 |
| | | FILING FEE: | $710 |

☐    Small entity status of this application under 37 C.F.R. 1.9 and 1.27 has been established by verified statement previously submitted.

3.    Payment of fees:

      X    Attached is a check in the amount of $710.

      ___    Please charge Deposit Account No. 13-2725.

SM 0000756

4.   The Commissioner is hereby authorized to charge any
     additional fees as set forth in 37 CFR 1.16 to 1.18
     or 37 CFR 1.15(b)1 which may be required such as an
     extension of time in the parent application or credit
     any overpayment to Account No. 13-2725.

5.   [X]  Amend the specification by inserting before the
          first line the sentence: This is a
          [ ]  continuation-in-part, [X] continuation,
          [ ]  division, of application Serial No. 07/467,983,
               filed January 22, 1990, now abandoned.

6.   [ ]  A new oath or declaration is included since this application
          is a continuation-in-part which discloses and claims additional
          matter.

7.   [ ]  Priority of application Serial No. _____, filed on
          _____ in _____ is claimed
          under 35 U.S.C. 119.

8.   [X]  The prior application is assigned of record to
          __DeKalb Plant Genetics_____.

9.   The Power of Attorney in the prior application is to:

          John D. Gould et al.
          Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A.
          3100 Norwest Center
          90 South Seventh Street
          Minneapolis, Minnesota  55402

10.  Also enclosed:  Request for 3-month Extension of Time to Reply to
     Final Rejection; fee of $840.

Address all future communications to (may only be completed by applicant,
or attorney or agent of record):

          Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A.
          3100 Norwest Center
          90 South Seventh Street
          Minneapolis, MN  55402

          Attn.:  __Warren D. Woessner_____       SM 0000757

The undersigned declare further that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements made jeopardize the validity of the application or any patent issuing therefrom.

_____Nov 10 1992_____          _Warren D Woessner_____
Date                                Warren D. Woessner
                                    Reg. No. 30,440

Address of Signator:              ☐   Inventor
MERCHANT, GOULD, SMITH,
   EDELL, WELTER, & SCHMIDT        ☐   Assignee of complete interest
3100 Norwest Center
Minneapolis, MN 55402             ☒   Attorney or agent of record

"Express Mail mailing label number RB901843767US
Date of Deposit _____11-10-92_____
I hereby certify that this paper or fee is being deposited with
the United States Postal Service "Express Mail Post Office to
Addressee" service under 37 C.F.R. 1.10 on the date indicated
above and is addressed to the Commissioner of Patents and
Trademarks, Washington, D. C.  20231

_____Brian Stevens_____
            printed name
_Brian H. Stevens_____
            signature

SM 0000758



**UNITED STATE₁ ..DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|

07/974,379   11/10/92   LUNDQUIST

| | |
|---|---|
| | **EXAMINER** |

MERCHANT, GOULD, SMITH, EDELL, WELT 13M1
SCHMIDT, P.A., ATTN: WARREN D. WOESSNER
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS, MN 55402

BENZION,G

| ART UNIT | PAPER NUMBER |
|---|---|
| 1804 | 23 |

DATE MAILED:   01/08/93

This is a communication from the examiner in charge of your application
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined   ☑ Responsive to communication filed on _Nov10,1992_   ☑ This action is made final

A shortened statutory period for response to this action is set to expire _Three(3)_ month(s), _____ days from the date of this letter
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892. (1)
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449. (8)
4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _39, 41-42 & 47-48_ _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _39, 41-43, 47 & 48_ _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☑ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received. ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

SM 0000759

#2?

5      Prosecution will continue on the invention elected in the parent application of the instant
File Wrapper Continuation. See 1406 O.G. 2, issued September 4, 1984.

Claims 39, 41-42 and 47-48 remain the only claims pending.

Applicants intention to file appropriate 132 declarations as memorialized in the interview
summary of 11/23/92 (paper No.19) is noted. However, more than three months have passed
10    since the filing of the instant FWC and in the interest to reduce pendency this application must be
taken up at this time. Any subsequently filed declaration will be viewed with leniency.

Claim 48 remains rejected under 35 U.S.C. § 112, first paragraph, as the disclosure is
enabling only for claims limited to the transformation and expression of a selectable marker or
reporter gene as set forth in the specification at pages 22-39. See MPEP 706.03(n) and
15    706.03(z).

The specification teaches the transformation and expression of marker/reporter genes
conferring expression of hygromycin B phosphotransferase, B-glucuronidase, and luciferase. The
instant claimed subject matter is limited to the expression of a selectable marker gene which
imparts herbicide resistance to transformed maize plants. With the exception of the genes noted
20    above, which are not considered to be gene that confer resistance to art recognized "herbicides",
the specification is silent as to a gene which when expressed would impart said herbicide
resistance. Attention is directed to the paragraph bridging pages 11-12 in which all three of the
exemplified genes are noted as selectable marker and/or reporter genes. Genes which encode
resistance or tolerance to glyphosate and the like are considered herbicide resistance gene (see
25    line 4-8 of page 12). Applicants have not demonstrated the successful isolation of the any
coding regions which would confer herbicide resistance nor the transformation and expression of
any of these genes. Furthermore, the expression of a heterologous gene in a host is not
axiomatic even in the event that gene had been previously isolated and cloned. Variability in
expression was art recognized to be due to numerous factors, including: incomplete
30    transcription; inefficient mRNA processing; impaired transport of the mRNA from the nucleus to
the cytoplasm; instability of the mRNA; inefficient translation of the cytoplasmic mRNA and the
instability of the protein due to its susceptibility to plant specific proteases (DeGreve et al. pages

Serial No.      07/974379                                    3 of 5
Art Unit        1804

5    3-4). Thus, for the reason noted above enablement is limited to marker genes demonstrated in
     the specification in which herbicide resistance is not a consideration.

          Claims 39, 41-42 and 47-48 remain rejected under 35 U.S.C § 103 as being unpatentable
     over Klein et al. in view of McCabe et al. and Phillips et al.

          Klein et al. (Biotechnology, pages 559-563) reveal the factors influencing gene delivery
10   into maize suspension cells via the use of high-velocity microprojectile acceleration.  In addition,
     these authors teach the application of the process to the surface of explanted maize embryos in
     which the GUS reporter/marker gene is expressed.  In particular, at page 562, right column of the
     penultimate paragraph, stable transformation of maize callus via the disclosed technique is
     evident.  Thus, Klein et al. is seen to clearly teach the application of the method of biolistic
15   transformation to maize tissue cultures.  Klein et al. does not teach regeneration from
     transformed maize tissue, however, the regeneration of maize from totipotent cells in culture was
     well known in the art.

          McCabe et al. (pages 923-926) disclose the transformation and regeneration of soybeans
     via the method of particle acceleration into excised embryonal axes.  McCabe is cited to
20   demonstrate that meristematic regions in plant tissue culture had been demonstrated as
     susceptible to transformation in which regenerants display the heritable presence of the
     transgenic DNA.  The importance of this observation is found in the basic nature of maize friable
     (Type II) cultures in that these cultures represent the de novo multiplication of meristematic
     zones, i.e. somatic embryos (see Phillips et al. section 5-2.8).  Phillips et al. (pages 345-387)
25   reviews the methods of cell/tissue culture and in vitro manipulation of maize.  This reference is
     cited to teach the method of explant initiation and maintenance of a friable maize tissue culture.
     Re claim 42, the use of solid or liquid culture for the initiation of maize tissue cultures are
     considered routine (see Phillips et al. section 5-1.3, for example).  Furthermore, the initiation and
     superior vigor of totipotent A188 x B73 cultures or any other culture of a superior genotype
30   initiated on "solid" medium (re claim 42) were well know to those of ordinary skill in the art (page
     351, for example).  These cultures were known in the art to produce friable (Type II) in vitro
     growth at high frequencies (re claim 40).  Re claim 41, the selection of callus culture clumps of
     about 30 to 80 mg per clump would appear to be the result of routine callus subculture and
     growth parameters.  Re claims 48 the expression of a reporter gene for its known and expected

Serial No.    07/974379                                    4 of 5
Art Unit      1804

5    benefits would be considered an obvious application of the technology. In this regard herbicide
resistant plants facilitate efficient agronomic growth. In sum, it was well within the ordinary skill
in the art to employ the claimed elements in order to obtain their known and expected results.

Consequently, the use of biolistic or particle acceleration technology to transform
totipotent maize cultures is both the logical progression from the observation of stable
10    transformation as noted in Klein et al. (page 562), providing motivation and the expected result
of this application, thus providing a reasonable expectation of success. Applicants' have failed to
establish the presence of any unexpected or unpredictable results in the claimed method.

Accordingly, the modification of the method of Klein et al. in view of the teachings of
McCabe regarding the regeneration of meristematic tissue in transgenic soybeans, and the use of
15    friable totipotent maize cultures as disclosed by Phillips et al. was well within the ordinary skill of
the art at the time the claimed invention was made. Thus, the claimed invention as a whole was
clearly prima facie obvious in view of the references, in the absence of sufficient, clear, and
convincing evidence to the contrary.

No claim is allowed.

20    This is a File Wrapper Continuation of applicant's earlier application S.N. 07/467983. All
claims are drawn to the same invention claimed in the earlier application and could have been
finally rejected on the grounds or art of record in the next Office action if they had been entered
in the earlier application. Accordingly, THIS ACTION IS MADE FINAL even though it is a first
action in this case. See MPEP 706.07(b). Applicant is reminded of the extension of time policy as
25    set forth in 37 CFR 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO
EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS
FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY
ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY
30    PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY
ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136(a) WILL BE
CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS
FINAL ACTION.

SM 0000762

Serial No.    07/974379
Art Unit      1804                                          5 of 5

5      Any inquiry concerning this communication or earlier communication from the examiner
should be directed to Gary Benzion, Ph.D whose telephone number is (703) 308-1119. Any
inquiry of a general nature or relating to the status of this application should be directed to the
Group receptionist whose telephone number is (703) 308-0196.

Benzion
10   03/04/93


GARY BENZION
PRIMARY EXAMINER
GROUP 1800

SM 0000763

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

| FORM PTO-892 (REV 2-92) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/974379 | GROUP ART UNIT 1804 | ATTACHMENT TO PAPER NUMBER 23 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) *Lundquist et al.* | | |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | | | | | | |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS DWG | PP SPEC |
|---|---|---|---|---|---|---|---|---|---|
| X | L | 0193259 | 9/3/86 | EPO | De Greve | C12Y | 1500 | | 34 |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| X R | McCabe et al. (1988) Biotechnology Vol 6. pp 923-926 |
| S | |
| T | |
| U | SM 0000764 |

| EXAMINER Benzion | DATE 3/4/93 | 10/1 |
|---|---|---|

\* A copy of this reference is not being furnished with this office action
(See Manual of Patent Examining Procedure, section 707.05 (a).)

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants: Ronald C. Lundquist et al.    Examiner:  G. Benzion

Serial No.: 07/974,379              Group Art Unit:  1804

Filed     :  November 10, 1992      Docket:  9696.1-US-01

Title     :  FERTILE TRANSGENIC CORN PLANTS

Hon. Commissioner of Patents
  and Trademarks
Washington, D.C.  20231

## PRELIMINARY AMENDMENT

Sir:

        Prior to the first Office Action, please amend the
above-identified application as follows:

### IN THE SPECIFICATION

        At page 1, line 1, before "FERTILE TRANSGENIC CORN
PLANTS" insert --METHOD FOR PREPARING--.

### REMARKS

        The title has been amended to conform to the pending
method claims.

        Claims 39, 41-42 and 47-48 are pending in the above-
identified application.

        At page 2 of the Office Action mailed May 13, 1992,
with respect to parent application Serial No. 7/467,983, the

SM 0000765

#94

Examiner rejected claim 48 under 35 U.S.C. §112(1), alleging that the disclosure only enables the transformation and expression of a selectable marker gene as set forth at pages 22-39, relating to the expression of marker/reporter genes conferring expression of hygromycin, $\beta$-phosphotransferase, $\beta$-glucuronidase and luciferase.

In the Response filed February 20, 1992, Applicants cited commonly assigned PCT application Serial No. PCT/US90/04462 (WO 91/02071) for its disclosure of transgenic corn plants produced by the claimed method which express foreign DNA encoding herbicide resistance.' In the personal interview conducted on November 20, 1992, it was agreed that Applicants would file a 132 Declaration attesting to herbicide resistance.

Therefore, the Examiner is respectfully requested to consider the enclosed Rule 132 Declaration, executed by Dr. William J. Gordon-Kamm, a named co-inventor on PCT application Serial No. WO 91/02071 and a co-author of the paper "Transformation of Maize Cells and Regeneration of Fertile Transgenic Plants," The Plant Cell, 2, 603 (July 1990). In his Declaration, Dr. Gordon-Kamm states that the claimed method was effective to transform cultured maize cells with the bacterial gene bar, which encodes the enzyme phosphinotricin acetyltransferase (PAT). Fertile transgenic R0 maize plants were recovered which yielded R1 maize plants which were resistant to the herbicide bialaphos. Furthermore, the bar gene also was used for selection. Finally, Dr. Gordon-Kamm presents his opinion that the present method will be effective to produce transgenic maize plants which express

2

introduced genes known to impart herbicide resistance to other species of plants, such as genes encoding mutant EPSP syntheses, the nitrilase gene, mutant ALS, methothrexate-resistant DHFR genes and the like. Therefore, it is respectfully submitted that the present specification fully meets the requirements of 35 U.S.C. §112.

At pages 3-5 of the Office Action, the Examiner rejected claims 39, 41-42 and 47-48 under 35 U.S.C. §103 as obvious in view of Klein et al., Bio/Technology, 6, 559 (1988), in view of McCabe et al., Bio/Technology, 6, 923 (1989) and chapter 5 by Phillips et al., in Corn and Corn Improvement, ASA, Madison, WI (1988).

However, it remains Applicants' position that one of skill in the art, in possession of the cited papers, would replace the BMS cells or the scutellum which was bombarded by Klein et al. with the meristems of immature corn seeds, since this was the only tissue used successfully by McCabe et al. However, one of skill in the art would not expect that the success achieved by McCabe et al. in the case of soybean meristems could be reproduced using maize meristems. As stated by I. Potrykus, in Bio/Technology, 535 (June 1990):

> The route via shoot meristems (in analogy to the successful soybean case) is considerably more difficult for cereals, because (a) the meristem is far better protected and more difficult to expose, (b) regeneration via multiple adventitious shoots from the tissue below the meristem is far less efficient, and (c) it is still an open question whether

3

SM 0000767

> biolistics can transform meristematic cells.
> This is not unimportant for cereals because
> in cereals regeneration requires meristematic
> cells.

If the Examiner agrees with this analysis of maize meristem transformability, it is respectfully submitted that one would not use McCabe et al. as a departure point for the search for transformable maize tissue. If the Examiner disagrees with the analysis by Potrykus, then the only logical conclusion to draw is that maize meristems should be bombarded, not scutellum as suggested by Klein et al. This is particularly true in view of the extremely narrow teaching in McCabe et al. They do not disclose that any other soybean tissue source could be used and they do not disclose that any other species of plant could be successfully transformed using this methodology. It is not logical to combine McCabe et al. with Klein et al. in any other way.

It is respectfully submitted that the Examiner has used McCabe et al. to suggest the use of a specific type of cultured maize tissue, disclosed in Phillips et al., that was not used by either Klein et al. or McCabe et al. However, in the absence of the knowledge of Applicants' methodology, McCabe et al. can simply not be read to point to one out of the many types of cultured maize tissues/cells/protoplasts disclosed in the Phillips et al. review.

As earlier pointed out by the Examiner, this lengthy chapter reviews the methods of cell/tissue culture and *in vitro*

4

SM 0000768

manipulation of maize, and teaches the general method of explant initiation and maintenance of a friable maize tissue culture. However, it is Applicants' position that in the absence of know-ledge of Applicants' success, this review does not suggest that any particular type of tissue would survive biolistic transforma-tion, so as to be regenerable into plants, much less that fer-tile, stably transformed _Zea mays_ would result that would trans-mit the introduced DNA to progeny.

The Examiner is requested to consider that maize tis-sues that more readily regenerate plants than Type II callus cultures have failed to yield transgenic maize plants following particle bombardment. These failures are summarized by I.K. Vasil in _Bio/Technology_, _8_, 797 (September 1990):

> Plant regeneration in cereals is most easily obtained from cultured, immature embryos, bases of young leaves and young infloresc-ences, often directly from single cells. Delivery and integration of foreign DNA into such cells can rapidly yield non-chimeric somatic embryos and plants. Unfortunately, despite many attempts, it has not been pos-sible thus far to obtain transgenic plants, or even stably transformed callus, following DNA delivery into such explants by particle bombardment. This is an important limitation to be overcome.

To return to the primary reference, the Examiner is urged to consider that he is reading Klein et al. to "teach" much more than the art worker could possibly derive from this limited and specific disclosure. For example, Applicants specifically disagree with the Examiner's conclusion at page 4 of the Office

5

Action that "stable transformation of maize callus via the disclosed technique is evident," for the following reasons:

(1)  Klein et al. do <u>not</u> disclose or confirm that the cultured BMS maize cells or the scutellum that were bombarded integrated the exogenous DNA, much less that the DNA could be passed from one cell generation to another.  Klein et al. repeatedly refer to <u>transient</u> expression of the gene in both the cultured cells and scutellum.

(2)  Klein et al. do not disclose what type of tissue was used to produce the "cultures of maize" that were "stably transformed" in the "manuscript in preparation", much less that these cultures could be regenerated into fertile plants.  The fact that both the cited Klein et al. paper and the Klein et al. <u>Plant Physiol.</u> paper use BMS cultures as starting materials is evidence that Klein et al. in fact transformed a tissue that could not be regenerated into plants.

(3)  The mention of "tissue" that will be a prime target for <u>future</u> attempts at transformation is clearly intended as a reference to scutellum, not to callus.  However, as noted at point (1) above, there is nothing to suggest that Klein et al. believed that they had

SM 0000770

6

achieved stable transformation of scutellum.  There-
fore, Klein et al. do not "teach" the production of
stably transformed callus.

In conclusion, there is nothing in the Klein et al.
reference that would "teach" (enable) the art worker to prepare a
stably transformed maize tissue, or to regenerate the tissue into
a fertile maize plant that can sexually transmit the introduced
DNA to the next generation.  The Klein et al. reference is no
more than an invitation to conduct further undefined experiments,
and does not amount to a suggestion, either considered alone, or
in combination with McCabe et al. or the Phillips et al. review,
to take the course that led to Applicants' success.

Even assuming, *arguendo*, that the cited art renders it
*prima facie* obvious to proceed along the lines arguably suggested
by Klein et al., because it would be expected that transformed
callus could be obtained from bombarded maize scutellum, it is
respectfully submitted that it would still be unexpected that
fertile transgenic maize plants capable of transmission of the
foreign DNA to progeny would be obtained by this route.  As
evidence of the unpredictability of maize transformation via
biolistics, the Examiner is requested to consider the enclosed
copy of the Rule 132 Declaration by Professor Ronald L. Phillips,
an eminent researcher in the area of maize genetics and co-author
of the cited Phillips et al. review.  This Declaration was made

7

SM 0000771

of record in commonly assigned U.S. patent application Serial No. 7/508,405 filed April 11, 1990.

Professor Phillips discusses the problems inherent in the use of the scutellum of cultured immature embryos as a "starting material" for biolistic transformation. These include the inability to predict the extent to which integration will take place, and whether the ability to regenerate plants will be retained. Finally, even if the regenerated plants can retain the DNA in some cells, their ability to transmit the DNA to progeny is not a predictable event. It is Professor Phillips' opinion that, in view of these factors, the recovery of fertile transgenic corn plants starting with scutellum bombarded as taught by Klein et al. would not be a reasonably predictable outcome.

Professor Phillips also contrasts the regenerability of friable Type II embryogenic maize callus, to characteristics that would render its transformation unpredictable, namely, its fragility and the uncertainty with respect to its ability to stably integrate the foreign DNA or to regenerate plants.

In re Wood, 202 USPQ 171, 174 (CCPA 1979), the court emphasized that "[o]f course, an evaluation of the claimed invention performed by an impartial, qualified third party is a valuable indication of the nonobviousness of an invention." The Examiner is requested to consider that Professor Phillips' declaration is based on facts derived from his extensive experience with the in vitro cell/tissue culture of maize, and that the declaration is sufficient to rebut any prima facie case of

8

SM 0000772

obviousness established by the cited art.  The Examiner is also requested to consider that the declaration is particularly effective in view of the remoteness of the cited art from the claimed invention; there are no experiments disclosed relating to (a) transforming callus or obtaining stably transformed callus from any transformed maize tissue source, following the use of biolistics to introduce the foreign DNA; (b) regenerating plants from the transformed callus; or (c) confirming the presence of the foreign DNA in the germline cells of the regenerated plants.

With respect to Applicants' evidence of "long-felt need" and "failure of others", the Examiner is urged to consider that the Court of Appeals for the Federal Circuit has explicitly stated that all relevant facts are to be considered together in determining obviousness.  In In re Piasecki, 223 USPQ 785 (Fed. Cir. 1984), the Court stated that, if Applicant presents any evidence to rebut a holding of prima facie obviousness, then "[r]egardless of whether the prima facie case could have been characterized as strong or weak, the examiner must consider all of the evidence anew."  The Court went on to describe the appropriate procedure for resolving the obviousness question, quoting from In re Rinehart, 189 USPQ 143, 147 (CCPA 1976):

> When prima facie obviousness is established and evidence is submitted in rebuttal, the decision-maker must start over . . .. An earlier decision should not, as it was here, be considered as set in concrete, and applicant's rebuttal evidence then be evaluated only on its knockdown ability. Analytical fixation on an earlier decision can tend to

9

SM 0000773

provide that decision with an undeservedly broadened umbrella effect. *Prima facie* obviousness is a legal conclusion, not a fact. Facts established by rebuttal evidence must be evaluated along with the facts on which the earlier conclusion was reached, not against the conclusion itself . . .. [A] final finding of obviousness may of course be reached, but such finding will rest upon evaluation of all facts in evidence, uninfluenced by an earlier board upon a different record.

In <u>Piasecki</u>, the Court considered the Board's finding that an affidavit by an expert relating to secondary considerations was not persuasive "because it appears that the teachings in the prior art point in the direction of the claimed subject matter." The Court stated that:

The Board's view that the prior art teachings "point in the direction of" the subject matter is a factor to be considered along with all other considerations, but it is not the standard of 35 U.S.C. §103. To the extent that the direction in which the prior teachings may point is determined by hindsight, this standard has long been discredited. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 774, 218 USPQ 781, 791 (Fed. Cir. 1983).

It is respectfully submitted that the Examiner has used the same rationale to improperly disregard Applicants' evidence of secondary considerations, as evidenced by his indirect and conclusory statement in the Office Action mailed August 31, 1991, that the failure of others was "due to the lack of interest or appreciation of an invention's potential or marketability." Clearly, there was no failure of the many workers in this art to recognize

10

SM 0000774

the potential of a method to transform monocots.  Therefore, it
is clear that in the context in which the present invention was
made, it was the "technical know-how" that was lacking.  See MPEP
§716.

To assist the Examiner in evaluating the evidence of
secondary considerations, enclosed herewith is a copy of a
Rule 132 Declaration by Professor David A. Somers, an authority
in the area of maize cultures and transformation, in which he
reviews documentary evidence of long-felt need, failure of
others, skepticism relating to the route use by Applicants and
recognition by the art of the significance of Applicants'
success.  This original of the Declaration is of record in
commonly assigned U.S. patent application Serial No. 7/508,405,
filed April 11, 1990.

It is respectfully requested that the Examiner should
proceed to weigh the evidence of secondary considerations _in
combination_ with the other technical evidence of nonobviousness
presented herein by Applicants and by Professor Phillips, in
order to resolve the obviousness question.

In view of the totality of the evidence, it is respect-
fully submitted that the amended claims are in condition for
allowance, and notification to that effect is earnestly
solicited.

To satisfy Assignees' obligation under 37 C.F.R.
§1.78(c) and §1.56 with respect to commonly assigned Adams et al.
(U.S. Patent application Serial No. 513,298, filed April 17,

11                    SM 0000775

1990), enclosed herewith is a Supplemental Information Disclosure Statement which the Examiner is respectfully requested to consider.

The Examiner is thanked for the courtesies extended to the undersigned attorney for Applicants during the personal interview conducted on November 20, 1992, during which these issues were extensively discussed.

Respectfully submitted,

RONALD C. LUNDQUIST ET AL.

By their attorneys,

MERCHANT, GOULD, SMITH, EDELL,
  WELTER, & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 332-5300 or 336-4622 (direct)

Date _Mar 4 1993_        By _Warren D Woessner_
                            Warren D. Woessner
                            Reg. No. 30,440

SM 0000776

12



*allodent*
*to paper 24*

PATENT

)  IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:  Ronald C. Lundquist et al.    Examiner:  G. Benzion

Serial No.:  07/974,379                     Art Unit:  1804

Filed:       November 10, 1992             M&G:  9696.1-US-01

For:         FERTILE TRANSGENIC CORN PLANTS

---

Hon. Commissioner of Patents
     and Trademarks
Washington, D.C.  20231

## DECLARATION UNDER 37 CFR §1.132

Sir:

I, William J. Gordon-Kamm, declare and say as follows:

1.  I received a B.S. in Biology and an M.S. in Botany
from Western Washington University in 1979 and 1980, respec-
tively, and my Ph.D. in Plant Physiology from Cornell University
in 1985.  I joined New Mexico Highlands University as an Assis-
tant Professor in 1985, and joined the Plant Genetics Department
of Pfizer, Inc. in 1987 as a Research Scientist.  In 1990, I
joined DeKalb Plant Genetics, Mystic, CT as a Senior Research
Scientist.  I have authored or co-authored a number of papers in
the area of plant physiology and the genetic engineering of
plants, including W.J. Gordon-Kamm et al., The Plant Cell, 2, 603
(July 1990), which is attached hereto, and incorporated by
reference herein.  I am a named co-inventor on DeKalb Plant
Genetics PCT/US90/04462, entitled "Methods and Compositions for

SM 0000777

the Production of Stably Transformed, Fertile Monocot Plants and Cells."

2.   I have read the above-identified application, with the amendment filed June 7, 1991 and with the Office Action mailed May 13, 1992, and make this Declaration in support of the patentability of the claims of the above-identified application, as amended on June 7, 1991.

3.   Claim 48 of the above-identified Lundquist et al. application which is directed to a method of producing a fertile transgenic zea mays plant by microprojectile bombardment of a regenerable friable embryogenic callus culture with microparticles coated with DNA. The DNA comprises a selectable marker gene which can impart herbicide resistance to the resulting fertile transgenic Zea mays plant. At page 2 of the Office Action mailed May 13, 1992, the Examiner rejected claim 48 on the basis that one of skill in the art in possession of the transformation methodologies disclosed in the specification, would not be able to prepare fertile transgenic Zea mays plants which are herbicide resistant due to transformation with a selectable marker gene.

4.   The biolistic transformation of friable embryogenic Type II callus has, in fact, been employed to prepare stably transformed transgenic Zea mays (maize) plants which exhibit resistance to a commonly employed herbicide in both the R0 and R1 generations. More specifically, the Examiner is requested to consider the attached paper, W.J. Gordon-Kamm et al., The Plant Cell, 2, 603 (July 1990) which reports experiments which I

carried out, or which were carried out at my direction and under my supervision.

5.    In accord with the methodology disclosed in the Gordon-Kamm et al. paper, cells from embryogenic maize suspension cultures were transformed with DNA encoding the bacterial gene *bar* using microprojectile bombardment.  Transformed calli were selected from the suspension cultures using the herbicide biala-phos.  Integration of *bar* and activity of the enzyme phosphinoth-ricin acetyltransferase (PAT) encoded by *bar* were confirmed in all bialaphos-resistant callus lines.  Fertile transformed maize plants ($R_0$) were regenerated, and of 53 progeny ($R_1$) tested, 29 had PAT activity.  All PAT-positive progeny analyzed, in fact, contained *bar*.  Localized application of herbicide to leaves of *bar*-transformed $R_0$ and $R_1$ plants resulted in no necrosis, con-firming functional activity of PAT in the transgenic plants.  Co-transformation experiments were performed using a mixture of two plasmids, one encoding PAT and one containing the nonselected gene encoding $\beta$-glucuronidase.  $R_0$ plants regenerated from co-transformed callus expressed both genes.

6.    In addition to the *bar* gene exemplified in our paper, known selectable marker genes for use in connection with the claimed method to impart herbicide resistance include a mutant *aroA* gene which encodes an altered EPSP synthase protein, thus conferring glyphosate resistance; a nitrilase gene such as *bxn* from *Klebsiella Ozaenae* which confers resistance to bromoxy-nil, and a mutant acetolactate synthase gene (ALS) which confers

3                    SM 0000779

imidazolinone, sulfonylurea or chlorsulfuron resistance (European Patent Application 154,204, 1985). Where a mutant EPSP synthase gene (aroA) is employed, additional benefit may be realized through the incorporation of a suitable chloroplast transit peptide as disclosed in European Patent Application 218,571, April 15, 1987. The utility of a number of these genes in the presently claimed method is also disclosed at page 11, paragraph 3 through page 12, paragraph 1 of the above-identified Lundquist et al. application.

7.     Therefore, it is my opinion that one of skill in the art in possession of the methodologies disclosed and claimed in above-identified Lundquist et al. application would be enabled to produce transgenic Zea mays plants exhibiting useful levels of resistance to a wide variety of herbicidal compounds.

8.     I further declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further, that these statements are made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of this application or any patent issuing thereon.

Date: _Feb 8, 1993_     _____
                          William J. Gordon-Kamm

4                                   SM 0000780



PATENT

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

| | | |
|---|---|---|
| Applicants: | Ronald C. Lundquist and David A. Walters | Examiner: G. Benzion |
| Serial No.: | 07/508,045 | Art Unit: 1804 |
| Filed: | April 11, 1990 | M&G: 9696.3-US-01 |
| For: | FERTILE TRANSGENIC CORN PLANTS | |

Hon. Commissioner of Patents
    and Trademarks
Washington, D.C.  20231

<u>DECLARATION UNDER 37 CFR §1.132</u>

Sir:

I, David A. Somers, declare and say as follows:

1.    I received a B.S. degree in Soil Science from the University of Maine in 1974, and M.S. and Ph.D. degrees in Agronomy from Washington State University in 1977 and 1983, respectively.  After postdoctoral work at the University of Nottingham, England in 1983-84, I joined the University of Minnesota, Minneapolis, Minnesota in 1984, where I am currently an Associate Professor of Agronomy.  I am a member of the American Society of Agronomy, the Crop Science Society of America, the American Society of Plant Physiologists and the Maize Genetics Corporation.  I have authored or co-authored more than 40 articles, book chapters and proceedings, primarily in the area of plant physiology, including corn tissue and cell culture,

SM 0000781

# 24

genetics, herbicide resistance and enzymology, including R.L.
Phillips, D.A. Somers and K.A. Hibberd, "Cell/Tissue Culture and
In Vitro Manipulation," in Corn and Corn Improvement, G.F.
Sprague and J.S. Dudley, eds., ASA, Inc. Madison, WI (1988) at
pages 345-387, a book chapter cited by the Examiner against the
pending claims.

2.    I have read, and am thoroughly familiar with, the
above-identified application, with the Office Action dated
March 5, 1992, including the cited publications, and with the
Amendment filed herewith, and make this declaration in support of
the patentability of the claims of the application. I have no
direct or indirect financial interest in the application.

3.    As evidence of the long-felt need for transgenic
maize, the Examiner is requested to consider pages 211-212 of the
article by Professor Winston J. Brill, entitled "Agricultural
Microbiology" (Scientific American, 199 (September 1981)). In
this article, Professor Brill notes the inability of A. tumefac-
iens to infect cereals, and discusses needs such as nitrogen
fixation and enhanced protein quality that could be met by the
transfer of foreign genes into cereals.

4.    One technique which initially showed promise as a
method to introduce DNA directly into intact plant cells was the
"particle gun" developed by T.M. Klein et al. in the mid-1980s
(for example, see T.M. Klein et al., Nature, 327, 70 (1987)).
However, as late as June of 1990, researchers regarded as author-
ities in the area of field crop transformation expressed their

2                    SM 0000782

skepticism that particle acceleration would ever yield stably transformed maize.

5.    For example, Dr. Ingro Potrykus, in a review article published after the filing date of the present application (<u>Bio/Technology</u>, 535 (June 1990)) cites the work of Klein et al. and the McCabe et al. paper.  Although Potrykus discusses the apparent advantages of biolistics, he is left to ask "[w]hy then with all these advantages have no transgenic cereals been produced . . . we must assume that there are inherent problems."  Dr. Potrykus continues to discuss the serious difficulties associated with genetic engineering of monocots:

> . . . my personal experience in working towards the genetic engineering of cereals for the last 18 years convinces me that we still have serious problems in front of us . . .. It seems to me that we are really not yet close to such a situation.

(Page 535, col. 1-2.)

At page 542 in the same article, Potrykus ascribes part of this lack of optimism to his belief that monocot meristematic cells cannot be transformed:

> [A]ccumulated experience of gene transfer experiments with plants is in agreement with the hypothesis that meristematic (embryonic) cells cannot be transformed.  I do not know of any experiment that would disprove this hypothesis.

(Page 542, col. 1.)

SM 0000783

3

6.   A similar pessimism also pervades his 1990 <u>Physio-logia Plantarum</u> review article (Vol. 79, page 125):

> Despite intensive efforts with perfect embry-
> ogenic suspensions and scutellum cultures of
> maize and other cereals, so far there is not
> a single transgenic cereal seedling.  The
> success with soybean seedlings is probably
> based on very intimate experience with a well
> established and efficient system of multiple
> shoot regeneration from the shoot apex.  The
> different geometry of cereal seedlings
> together with different responses in shoot
> meristem culture do not make it easy to apply
> a similar strategy to cereals.  It might well
> be that the reason for the failure to regen-
> erate transgenic cereals after particle bom-
> bardment of either embryogenic suspension or
> immature scutelli has its cause in the
> limited amount of DNA carried into the cell
> by the particles or in the inefficiency with
> which this DNA dissociates from the parti-
> cles.

7.   An article from the journal <u>Science</u>, <u>249</u>, 630 (August 10, 1990) published shortly after the announcement that fertile transgenic corn had been achieved, emphasizes the long-felt but unresolved need, as well as the failure of others such as Carol A. Rhodes ("Corn Transformed").  The article begins by noting that the achievement of fertile, transgenic corn is "the capstone of almost a decade's efforts to genetically engineering this country's most important crop," and then continues by noting the "years of frustration" and a renewed effort to genetically engineer corn begun by Carol A. Rhodes and her colleagues.  The article notes that while Dr. Rhodes and her group were successful

4

SM 0000784

in regenerating transformed corn, their "celebrations were short-lived: the resulting plants were infertile."

8.   The <u>Science</u> article then refers to attempts by the CIBA-Geigy group, who were said to have achieved the regeneration of non-transgenic corn cells into fertile plants. However, it is pointed out that "these techniques, so far, have not worked with genetically transformed corn."

9.   In the March 1990 issue of <u>Genetic Engineering News</u>, an article reporting the successful transformation of corn by BioTechnica, quotes Ralph Hardy, president of the Boyce Thompson Institute for Plant Research at Cornell University as follows:

> "Useful corn transformation with the produc-
> tion of fertile plants that transmit the gene
> to succeeding generations has been an insur-
> mountable roadblock for agricultural biotech-
> nology."

10.   The Examiner is also requested to consider the following summary of the art of maize transformation in 1990, published by Timothy Nelson, of the Department of Biology, Yale Unviersity, in <u>The Plant Cell</u>, <u>2</u>, 589 (July 1990):

> The great experimental advantages of maize
> for the study of development and genetics
> have attracted many researchers and have
> resulted in a huge resource of mapped genes,
> molecular probes, chromosomal rearrangements,
> and other tools (citation omitted).  It has
> been a source of frustration to the same
> researchers that maize has not proved as easy
> to stably transform as many plants without as

5

rich a scientific background.  For many dico-
tyledonous plants, the <u>Agrobacterium</u>-mediated
construction of transgenic plants has become
a routine and reliable experimental tool.
Although this system may be adaptable to the
monocot rice (citation omitted), there are no
reports of success with maize.

11.   In my opinion, these reports accurately reflect
the state of the art of *in vitro* corn transformation as of early
1990.  At this time, one of skill in the art would have been
aware of at least a decade of reports of failures using every
available technology to solve a problem of great commercial and
humanitarian importance.  These reports both demonstrate the
lingering skepticism in the art with respect to the possibility
of success using any known method to deliver DNA into any maize
tissue source, and the acclaim with which the art greeted Appli-
cants' successful preparation of fertile transgenic maize.

12.   Copies of all the newly cited publications are
attached, and are incorporated by reference herein.

13.   I further declare that all statements made herein
of my own knowledge are true and that all statements made on
information and belief are believed to be true, and further that
these statements are made with the knowledge that willful false
statements and the like are punishable by fine or imprisonment,
or both, under Section 1001 of Title 18 of the United States

SM 0000786

6

Code, and that such willful false statement may jeopardize the validity of the application or any patent issuing thereon.

Date  6/9/91

David A. Somers

SM 0000787

7



# 24
Attach

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:  Ronald C. Lundquist et al.   Examiner:  G. Benzion

Serial No.:  07/508,045               Art Unit:  1804

Filed:       April 11, 1990           M&G:  9696.3-US-01

For:         FERTILE TRANSGENIC CORN PLANTS

_____

Hon. Commissioner of Patents
     and Trademarks
Washington, D.C.  20231

## DECLARATION UNDER 37 CFR §1.132

Sir:

        I, Ronald L. Phillips, declare and say as follows:

        1.  I received my Ph.D. in genetics from the University
of Minnesota, St. Paul, in 1966.  Following postdoctoral work at
Cornell University in genetics, I became an Assistant Professor
in the Agronomy and Plant Genetics Department at the University
of Minnesota in 1968, where I am currently a Professor, holding
appointments in the Graduate School in Genetics, Plant Breeding
and Agronomy.  I am a fellow of the American Society of Agronomy,
the Crop Science Society of America and the American Association
for the Advancement of Science.  I have authored or co-authored
over fifty papers, primarily in the area of plant genetics as
applied to plant improvement, including the chapter by Phillips
et al., "Cell/Tissue Culture and In Vitro Manipulation" in Corn
and Corn Improvement, G.F. Sprague et al., eds., Amer. Society of

SM 0000788

#24
(att.)

Agronomy et al., pubs., Madison, WI (1988).  In 1991, I was
elected to the National Academy of Sciences.

2.  I have read, and am thoroughly familiar with, the
above-identified application, with the Office Action mailed
March 5, 1992 including the art cited against the claims, with
the amendment filed herewith, and make this Declaration in
support of the pending claims of Serial No. 07/508,045.  I have
no direct or indirect financial interest in the application.

3.  At page 3 of the Office Action, the Examiner
rejected the claims as obvious over a combination of four papers,
T.M. Klein et al., Bio/Technology, 6, 559 (May 1988) in combina-
tion with D.E. McCabe et al., Bio/Technology, 6, 923 (August
1988), the Phillips et al. review article cited above, and Rhodes
et al., Science, 240, 204 (1988).  However, it is my opinion that
a worker in the area of cereal transformation generally, and
maize transformation specifically, in possession of these papers,
would not be able to predict the success achieved by Applicants
following their bombardment of cultured embryogenic Type II maize
callus.

4.  The primary experimental work relied on by the
Examiner is the disclosure in Klein et al. of the bombardment of
immature maize embryos with particles coated with GUS-encoding
plasmid DNA.  Following bombardment, and treatment with GUS
substrate, "up to 23 blue spots could be visualized on the
scutellum . . . " and "(about 30 to 50) single cells expressing
the GUS gene could be observed under higher magnification."

2                    SM 0000789

Although the authors do not state that these experiments led to

stable integration of the foreign gene, at page 562 of the Klein

et al. paper, it is disclosed that:

> Because embryos and embryogenic <u>callus</u> can be
> generated from the surface of maize scutel-
> lum, that tissue will be a prime target for
> future attempts to deliver selectable markers
> with the particle gun . . . .
>
> Recent results (manuscript in preparation)
> indicate that stably transformed <u>cultures</u> of
> maize and tobacco can be recovered using the
> optimized parameters that are detailed in the
> present study [emphasis added].

The use of the phrase "future attempts" in the first section of

this quote suggests that the "recent results" referred to in the

second section do not relate to embryogenic callus, derived from

scutellum of immature embryos.

> 5.   The ability to generate callus or plants from

cultured immature embryos had not led to transgenic monocots of

any species in 1988.  In 1990, I.K. Vasil summarized the status

of this work (<u>Bio/Technology</u>, <u>8</u>, 79 (1990)):

> Plant regeneration in cereals is most easily
> obtained from cultured, immature embryos,
> bases of young leaves and young inflores-
> ences, often directly from single cells.
> Delivery and integration of foreign DNA into
> such cells can rapidly yield non-chimeric
> somatic embryos and plants.  Unfortunately,
> despite many attempts, it has not been pos-
> sible thus far to obtain transgenic plants,
> or even stably transformed callus, following
> DNA delivery into such explants by particle
> bombardment.  This is an important limitation
> to be overcome.

**SM 0000790**

3

6. The only "stably transformed maize callus" reported prior to 1990 was that disclosed by Klein et al. in Plant Physiol., 91, 440 (1989), which was derived by bombardment of cultured BMS cells, not immature embryos, and was nonregenerable. The transgenic maize plants obtained by Rhodes et al. by regeneration of transformed protoplasts were sterile. There were a few reports of pollen-mediated transformation, with no accompanying evidence of stable integration. Thus, prior to 1990, the art worker had no experience whatsoever with fertile transgenic cereal plants prepared from transformed tissue of any origin. Although the bombardment of embryogenic maize callus is arguably obvious to try, one cognizant of the literature would not have predicted success.

7. The scutellum consists of many cells, and bombardment by the DNA-coated particles is a random process. The particles can only penetrate and transform a small fraction of the cells. Therefore, at best, a mosaic pattern of transformed cells in scutellum would be expected. Furthermore, there are no cells in scutellum that are progenitors of reproductive cells.

8. Assuming, for argument's sake, that the "stably transformed" maize "cultures" mentioned by Klein et al. are transformed callus cultures, achieved by bombardment of scutellum, followed by generation of callus therefrom, the foreign DNA may be integrated in cells to the extent that it is found "in" some portions of the regenerated plants, or may or may not be transmitted to the next generation.

**SM 0000791**

4

9. Assuming, for argument's sake, that one of ordinary skill in the art be led by the disclosures of the cited art to replace the scutellum bombarded by Klein et al. or the meristems bombarded by McCabe et al. with embryogenic Type II callus disclosed in my review article, the Examiner is urged to consider that, in view of these disclosures, I would have had no reasonable expectation that the bombarded Type II callus would yield fertile transgenic corn plants possessing the ability to transmit the foreign DNA through at least one complete sexual cycle to progeny.

10. To begin with, given the invasive nature of particle bombardment, I would not be able to predict that the bombarded Type II callus cells would remain viable, e.g., would continue to divide, and would not simply be destroyed by bombardment. Therefore, I would expect bombardment to severely stress these cells, and would therefore not necessarily expect this process to lead to viable callus. I would also not be able to predict with any certainty that the foreign DNA introduced into the cells would be stably integrated into the chromosomes of the cells, i.e., so that it would be transmitted to succeeding generations of germline cells. Evidence to support these assertions is found in Klein et al., wherein bombardment of both BMS suspension cell cultures and scutellum was not observed to yield stable transformation events. In fact, there is also no evidence presented by Klein et al. that the cells retained the ability to

5

SM 0000792

divide following bombardment, whether or not the DNA was inte-
grated.

11.  Likewise, although Type II callus is highly regen-
erable, there is nothing in the prior art that would lead me to
believe that it would be an improved target for bombardment
insofar as characteristics relating to the retention of viability
and stable integration of the foreign DNA are concerned.  Simply
because "native" Type II callus is highly regenerable does not
suggest that it possesses any enhanced ability to survive bom-
bardment, must less to stably integrate the introduced DNA.  In
fact, the state of the art prior to 1990 would have led me to
predict that only transient expression of the introduced DNA
would be much more likely.  As noted above, the literature had
reported bombardment of a number of dicot and monocot tissues,
but the research groups involved had not been convinced that
expression relating to stable transformation in viable, regener-
able monocot tissue had been achieved.

12.  Furthermore, selection of embryogenic Type II
callus as the target might yield regenerable callus that was not
stably transformed, or the ability to regenerate plants might be
lost even though stable transformation was attained, or the cells
might simply be rendered non-dividing by the particle penetra-
tion, or not sufficiently penetrated to accomplish transforma-
tion.

13.  Finally, the success reported by McCabe et al. in
regenerating transgenic soybean plants following bombardment of

6

SM 0000793

exposed soybean meristems would not lead me to expect that success would be imminent with maize using biolistics. McCabe et al. did not indicate that any other types of embryogenic tissue could be used in place of meristematic tissue. Also, the structural differences between soybean meristems and maize meristems would not lead me to predict that maize meristems could be successfully bombarded and regenerated into fertile maize plants using the techniques taught by McCabe.

14. It might well be obvious for a researcher in this area to try to transform a maize tissue, cultured cells or protoplasts that had a history of "regenerability" in the untransformed state. However, the "state of the art" in mid-1989 to early 1990 would not permit one of ordinary skill in the art to reasonably predict that the three pieces of the puzzle of maize transformation, namely stable transformation accompanied by subsequent cell division, regenerability, and fertility/-transmission, would come together via any available methodology employing any available maize starting material, including scutellum, much less that the biolistic transformation of friable embryogenic Type II callus would be the path to success.

15. I further declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further, that these statements are made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States

SM 0000794

Code, and that such willful false statements may jeopardize the validity of this application or any patent issuing thereon.

Date: _July 20, 1992_____    _____Ronald L. Phillips_____
                                              Ronald L. Phillips

SM 0000795

8



PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:  Ronald C. Lundquist et al. Examiner:  G. Benzion

Serial No.:  7/974,379            Group Art Unit:  1804

Filed    :  November 10, 1992     M&G:  9696.1-US-01

Title    :  FERTILE TRANSGENIC CORN PLANTS

Hon. Commissioner of Patents
  and Trademarks
Washington, D.C.  20231

## SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

Sir:

In compliance with the duty of disclosure under 37
C.F.R. §1.56, it is respectfully requested that this Supplemental
Information Disclosure Statement be entered and the comments
below considered by the Examiner and made of record.

This paper is filed to bring to the Examiner's atten-
tion certain facts regarding the conception, development, and the
reduction to practice of the invention disclosed and claimed in
the above-referenced patent application, 07/974,379, and the
invention disclosed and claimed in other applications currently
undergoing examination in the U.S. Patent and Trademark Office.

SM 0000796

## Ownership of the Inventions

The invention concerning fertile transgenic corn disclosed and claimed in the patent application Serial No. 07/565,844 ('844 application), by Adams et al., was invented by employees of DeKalb Plant Genetics ("DKPG") and was assigned to DKPG at the time of filing.  The '844 application was filed on August 9, 1990, as a continuation-in-part of Serial No. 07/513,298, filed April 17, 1990.  An earlier, related application was filed on August 9, 1989 (U.S. Serial No. 07/392,176). The '176 application is now abandoned, and no priority benefit is claimed from this application.

Since the filing of these applications, DKPG purchased various assets of Plant Science Research Incorporated ("PSRI"). Included in the asset purchase were three patent applications directed to subject matter that is similar to that disclosed in the above DKPG applications.  The relevant applications are Serial Numbers 07/636,089, 07/508,045 and 07/467,983, filed December 28, 1990, April 17, 1990 and January 22, 1990, respectively.  All three applications were assigned to BioTechnica International, Inc. at the time of their respective filing, and are now assigned to DeKalb Plant Genetics.

## Status of the Applications

The status of the applications believed to be relevant to the present discussions are set forth below in Table I.

2

SM 0000797

### Table I.  Status of the Applications

**DeKalb**

| Serial No. | Filing Date | Inventors | Status | History |
|---|---|---|---|---|
| 07/565,844 | Aug. 9, 1990 | Adams et al. | Pending | CIP of 513,298 |
| 07/513,298 | Apr. 17, 1990 | Adams et al. | Abandoned | |

**PSRI**

| Serial No. | Filing Date | Inventors | Status | History |
|---|---|---|---|---|
| 07/974,379 | Nov. 10, 1992 | Lundquist & Walters | Pending | FWC of 467,983 |
| 07/636,089 | Dec. 28, 1990 | Lundquist, Walters & Kirihara | Pending | CIP of 508,045 |
| 07/508,045 | Apr. 11, 1990 | Lundquist & Walters | Pending | CIP of 467,983 |
| 07/467,983 | Jan. 22, 1990 | Lundquist & Walters | Recently Abandoned | Parent |

---

## Reduction to Practice of the Inventions

In that all of the above-referenced applications are now commonly owned by DKPG, Applicants' representative has undertaken an investigation into the conception, and more particularly, the reduction to practice of the invention of fertile transgenic corn, or of the process of making fertile transgenic corn.

Applicants have previously notified the Examiner that such an investigation was being undertaken in connection with

3