Applicants' duty of disclosure. As the Examiner was previously advised, Applicants' investigation has been hampered by what is both a surprising closeness in the respective dates, and what is perceived to be uncertainty in the law regarding what constitutes conception, diligence or a reduction to practice.

As an initial attempt to satisfy Applicants' duty of candor on this issue, and to demonstrate to the Examiner the difficulty of making the determination, Applicants have summarized the relative dates of what are believed to be the pertinent steps in the development of transgenic corn plants by the respective inventors. This summary is set forth below in Table II. To maintain as confidential the precise dates, Table II is structured in terms of relative dates. Thus, the first date at which a transgene was introduced into corn tissue, by ballistic bombardment, has been assigned to be Time Zero (0), to provide an arbitrary reference point against which the progress of both teams may be measured in terms of days. The following tabulated dates appear to be reasonably substantiated based upon laboratory notebooks, progress reports, and discussions with the various individuals involved.

SM 0000799

Table II.  Comparison of Reduction to Practice

| | *PSRI* | *DKPG* |
|---|---|---|
| BOMBARDMENT | 0 | 38 |
| RESISTANT CALLUS OBTAINED | 70 | Unknown |
| PROTEIN EXPRESSION IN CALLUS | Not accomplished | 87 |
| DNA DETECTION IN CALLUS BY PCR | 139 | Not accomplished |
| DNA DETECTION IN CALLUS BY SOUTHERN HYBRIDIZATION | 186 | 152 |
| PLANTS REGENERATED FROM CALLUS ($R_0$) TO GREENHOUSE | 192 | 178 |
| $R_0$ PLANTS SHOWN TO HAVE ENZYME ACTIVITY | Not accomplished | 181 |
| TRANSGENE DETECTION IN $R_0$ PLANTS BY SOUTHERN HYBRIDIZATION | 277 | 227 |
| $R_0$ PLANTS POLLINATED | 239 | 240 |
| $R_0$ X $R_0$ SEED ($R_1$) HARVESTED | 286 | 273 |
| $R_1$ SEED GERMINATED | 288 | (280) |
| $R_1$ TISSUE TESTED FOR ENZYME ACTIVITY | 304 | 322 |
| $R_1$ PLANTS GREENHOUSE | 300 | 325 |
| TRANSGENE DETECTION IN $R_1$ PLANTS BY SOUTHERN HYBRIDIZATION | 334 | 342 |

SM 0000800

It is pointed out that the foregoing is intended as a synopsis of facts as determined by Applicants' representative. Should the Examiner wish to conduct a review of any or all of the laboratory notebooks or progress reports from either DKPG or PSRI which substantiate the information presented herein, Applicants' representative would be pleased to forward copies of any such material requested. If the Examiner has any further questions regarding any of the information presented above, or believes that additional facts are needed to address the issues raised, the Examiner is requested to contact the undersigned Applicants' representative.

No fee is believed to be required in connection with the filing of this document. However, should any fees be deemed to be necessary, the Commissioner is hereby authorized to deduct said fees from Merchant & Gould Deposit Account No. 13-2725.

Please return the enclosed postcard to acknowledge receipt of these materials.

Respectfully submitted,

RONALD C. LUNDQUIST ET AL.

By their attorneys,

MERCHANT, GOULD, SMITH, EDELL,
  WELTER & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN   55402
(612) 332-5300 or 336-4622 (direct)

Date_mar 4 1993_____        By _Warren O Woessner_

Warren D. Woessner
Reg. No. 30,440

6                    SM 0000801



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/974379 | 11/10/92 | Lundquist | 9696.1U501 |

| EXAMINER |
|---|
| Benzan, G. |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1804 | 25 |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) _Warren Woesner_                    (3) _____

(2) _Gary Benzion_                       (4) _____

Date of interview ___8/20/93___

Type: ☑ Telephonic   ☐ Personal (copy is given to  ☐ applicant  ☐ applicant's representative).

Exhibit shown or demonstration conducted:  ☐ Yes   ☐ No.   If yes, brief description: _____

Agreement  ☐ was reached with respect to some or all of the claims in question.  ☑ was not reached.

Claims discussed: _____None_____

Identification of prior art discussed: _____None_____

SM 0000802

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Applicant attorney called regarding interweaving of 1st Action first + response of March 8, 1993. Consequently, penalty will be withdrawn and the clock for response restarted._

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1—7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☑ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

_Gary Benzion_
Examiner's Signature

PTOL 413 (REV 1 84)



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|

07/974,973      11/10/92      (illegible)

|  |  |
|---|---|
| | EXAMINER |
| | (illegible) |
| ART UNIT | PAPER NUMBER |
| 1801 | 26 |

MERCHANT, GOULD, SMITH, EDELL, WELTER &
SCHMIDT, P.A.: ATTN: WARREN D. WOESSNER
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS, MN 55402

DATE MAILED: 08/31/(illegible)

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined    ☑ Responsive to communication filed on _March 8, 1993_    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _three (3)_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Draftsman's Patent Drawing Review. PTO-948
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application. PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _39, 41-42 + 47-68_ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _39, 41-42 + 47-68_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review. PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

SM 0000803

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

#26

Serial No.      07/974379                                    2 of 5
Art Unit        1804

5          Prosecution will continue on the invention elected in the parent application of the instant
File Wrapper Continuation.  See 1406 O.G. 2, issued September 4, 1984.

           Claims 39, 41-42 and 47-48 remain the only claims pending.

           The instant remarks and declaration filed March 8, 1993, in which reference was made to
a newly submitted publications, was filed after the first action and more than three months after
10   filing the application.  The teachings relied on by the applicants have been considered but as they
were filed without a certification of timely filing or the required fee under §§ 1.97-1.98 and a PTO
Form 1449, they have not been made of record in the application.

           The finality of the prior Office Action is withdrawn in view of the intercrossing of the
previous Office Action, mailed March 8, 1993 and applicants' preliminary amendment received
15   March 8, 1993.

           The instant response applicants have indicated that determination of the date of
invention in copending applications 07/565844 and 07/636089 -- as it may affect either reduction
to practice or conception of the instant invention -- has been difficult to ascertain.  As each
application is currently commonly owned and assigned the Office cannot set up an interference
20   in the event that allowable subject matter is found to reside in two or more applications.
Consequently, it remains applicants' responsibility to determine which party was the "first to
invent" and to proceed accordingly.  The following provisional rejections are thus mandated.

           Claims 39, 41-42 and 47-48 are provisionally rejected under 35 U.S.C § 103 as being
obvious over copending application serial numbers 07/565844.

25         Copending application serial numbers 07/565844 (priority to 07/392176 now
abandoned) have a common assignee with the instant application.  Based upon the earlier
effective U.S. filing date of the copending application, it would constitute prior art under 35
U.S.C 102(e) if patented.  This provisional rejection under 35 U.S.C 103 is based upon a
presumption of future patenting of the conflicting application.

30         This provisional rejection might be overcome either by showing under 37 CFR 1.132 that
any unclaimed invention disclosed in the copending application was derived from the inventor of

Serial No.      07/974379                                    3 of 5
Art Unit        1804

5    this application and is thus not the invention "by another, or by a showing of a date of invention
     prior to the effective U.S. filing date of the copending application.

             Claims 41and 42 are rejected under 35 U.S.C. § 112, second paragraph, as being
     indefinite for failing to particularly point out and distinctly claim the subject matter which
     applicant regards as the invention.

10           Claim 41 depends from canceled claim 40 and as such is indefinite.

             Claim 48 remains rejected under 35 U.S.C. § 112, first paragraph, as the disclosure is
     enabling only for claims limited to the transformation and expression of a selectable marker or
     reporter gene as set forth in the specification at pages 22-39.  See MPEP 706.03(n) and
     706.03(z).

15           The specification teaches the transformation and expression of marker/reporter genes
     conferring expression of hygromycin B phosphotransferase, B-glucuronidase, and luciferase.  The
     instant claimed subject matter is limited to the expression of a selectable marker gene which
     imparts herbicide resistance to transformed maize plants. With the exception of the genes noted
     above, which are not considered to be gene that confer resistance to art recognized "herbicides",
20   the specification is silent as to a gene which when expressed would impart said herbicide
     resistance. Attention is directed to the paragraph bridging pages 11-12 in which all three of the
     exemplified genes are noted as selectable marker and/or reporter genes.  Genes which encode
     resistance or tolerance to glyphosate and the like are considered herbicide resistance gene (see
     line 4-8 of page 12). Applicants have not demonstrated the successful isolation of the any
25   coding regions which would confer herbicide resistance nor the transformation and expression of
     any of these genes.  Furthermore, the expression of a heterologous gene in a host is not
     axiomatic even in the event that gene had been previously isolated and cloned.  Variability in
     expression was art recognized to be due to numerous factors, including: incomplete
     transcription; inefficient mRNA processing; impaired transport of the mRNA from the nucleus to
30   the cytoplasm; instability of the mRNA; inefficient translation of the cytoplasmic mRNA and the
     instability of the protein due to its susceptibility to plant specific proteases (DeGreve et al. pages
     3-4). Thus, for the reason noted above enablement is limited to marker genes demonstrated in
     the specification in which herbicide resistance is <u>not</u> a consideration.

Serial No.    07/974379
Art Unit      1804                                          4 of 5

5          Applicants' arguments and the Gordon-Kamm declaration have been carefully considered
and are not deemed persuasive. The Gordon-Kamm declaration is not commensurate to the
scope of the disclosure and the claimed invention. While a declaration may be employed to
evidence greater breath where there exist a foundation for that breath in the specification it
cannot be employed to broaden the invention beyond that enabled by the original disclosure. If
10    enablement was limited under § 112, first paragraph, only to those reporter genes found in the
specification a declaration that evidenced other reporter genes would be helpful in overcoming
such a rejection. The instant declaration, however, is drawn to an invention beyond the scope in
to which support is found. As explained above the mere fact that a reporter gene can be
expressed in a transgenic organism does not mean that any and all genes which might confer
15    herbicide resistance would be properly processed and expressed in sufficient amounts to be
biologically effective. There simply is not support for the expression of a herbicide resistance
"gene" in the specification as originally filed.

        The rejection of claims 39, 41-42 and 47-48 under 35 U.S.C § 103 as being unpatentable
over Klein et al. in view of McCabe et al. and Phillips et al. is withdrawn in vie of applicants'
20    arguments.

        In applications' arguments reference is made to the Phillips' and Sommers' declarations
made in commonly owned applications 07/508045. Although applicants' arguments have been
fully considered that which specifically pertained to these declaration are not relevant to the
instant case. Specifically, in the prior application a rejection under 35 U.S.C. § 103 was
25    predicated on the combination of four references while in the instant application three prior art
citations were made. Neither declarant addressed the facts presented in the instant application
nor indicated familiarity with this case. Accordingly, those arguments which stray from the
specific fact situation are not deemed germane have been given no weight.

        Claims 39, 41-42 and 47-48 are deemed free of the prior art.

30      No claim is allowed.

        Any inquiry concerning this or earlier communication from the examiner should be
directed to Gary Benzion, Ph.D whose telephone number is (703) 308-1119. Any inquiry of a

SM 0000806

Serial No.    07/974379                                    5 of 5
Art Unit      1804

5    general nature or relating to the status of this application should be directed to the Group
     receptionist whose telephone number is (703) 308-0196.

          Papers related to this application may be submitted to Group 180 by facsimile
     transmission. Papers should be faxed to Group 180 via the PTO Fax Center located in Crystal Mall
     1. The faxing of such papers must conform with the notice published in the Official Gazette,
10   1096 OG 30 (November 15, 1989). The CM1 Fax Center number is (703)-305-3014.

     Benzion
     08/27/93

15

                                        GARY BENZION
                                        PRIMARY EXAMINER
                                        GROUP 1800

SM 0000807

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:  R. C. Lundquist et al.      Examiner:  G. Benzion

Serial No :  _____             Group Art Unit:  1804

Filed     :  November 10, 1992           Docket:  9696.1-US01

Title     :  METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

---

### AMENDMENT

Hon. Commissioner of Patents
    and Trademarks
Washington, D.C.   20231

Sir:

In response to the Office Action filed August 31, 1993,
please amend the above-identified application as follows:

### IN THE CLAIMS

Claim 39 (amended). A process for producing a fertile
transgenic *Zea mays* plant comprising the steps of (i) establish-
ing a regenerable [friable,] embryogenic callus culture from a
*Zea mays* plant to be transformed, (ii) transforming said culture
by bombarding it with DNA-coated microprojectiles, (iii) identi-
fying or selecting a transformed cell line, wherein said DNA is
chromosomally integrated, and (iv) regenerating a fertile trans-
genic *Zea mays* plant therefrom wherein said DNA is transmitted
through a complete sexual cycle of said transgenic plant to its
progeny.

In claim 41, line 1, delete "40" and insert --39--.

SM 0000808

# 27/E

*Serial No. 07/974,329*                                                    Amendment

## REMARKS

Reconsideration and withdrawal of the rejection of the claims of the above-identified application is respectfully requested.

Claims 39 and 41 having been amended, the claims pending in the above-identified application are claims 39, 41-42 and 47-48.

For clarity, the remaining pending claims are repro-duced below:

41.  The process of claim 39 wherein the callus culture subjected to bombardment is in clumps of about 30 to 80 mg per clump.

42.  The process of claim 41 wherein said callus is initiated on solid media.

47.  The process of claim 39 wherein the DNA comprises selectable marker gene or a reporter gene.

48.  The process of claim 47 wherein said selectable marker gene imparts herbicide resistance to said fertile transgenic *Zea mays* plant.

The amendment to claim 39 is supported at page 8, full paragraph 1.

The amendment to claim 41 is made to correct its dependency, and moots the Examiner's rejection thereto as set forth at page 3 of the Office Action.

**SM 0000809**

2

*Serial No. 07/974,329*                              Amendment

        At page 2 of the Office Action, the Examiner provision-
ally rejected the pending claims as obvious in view of co-
pending, commonly assigned U.S. patent application Serial
No. 7/565,844.  The rejection is respectfully traversed.

        Were Serial No. 7/565,844 to issue as a patent, it
would only constitute §§102(e)/103 prior art to the presently
claimed invention if an obvious variant of the present invention
is also disclosed in parent application Serial No. 07/392,176,
which was filed on August 9, 1989.  However, the Examiner is
respectfully reminded that a lengthy Rule 131 Declaration by the
inventors was filed in the parent application on June 7, 1991,
which established that the effective date of the invention, as
presently claimed, is prior to May 24, 1989.  Therefore, with-
drawal of the provisional rejection is appropriate, and is
respectfully requested.

        At pages 3-5 of the Office Action, the Examiner
rejected claim 48 under 35 U.S.C. §112(1) on the basis that the
specification would only enable one of skill in the art to
produce the fertile transgenic corn plants disclosed by the
working examples.  This rejection is respectfully traversed.

        In the first place, the cited MPEP sections do not
support this type of rejection.  Section 706.03(n) simply
requires <u>correspondence</u> between the language of the specification
and the language of the claims, and it is not disputed that this

                                3

*Serial No. 07/974,329*                                    *Amendment*

requirement is met in the present disclosure.  See, for example, page 12, lines 3-8.  Section 706.03(z) requires that the recitation of a <u>genus</u> of compounds in a claim be supported by the disclosure of a sufficient number of <u>species</u> in the specification.  It is not a requirement to provide any number of working examples.  <u>In re Borkowski</u>, 164 USPQ 642 (CCPA 1970).

Nonetheless, the first basis for the Examiner's rejection of claim 48 is that, while the working examples demonstrate the introduction of genes classified as "selectable marker or reporter genes" (i.e., the genus of claim 47), the practice of the present method using the subgenus of "herbicide resistance genes" as the exogenous DNA, is not enabled by the specification.  As stated by the Examiner:

> Applicants have not demonstrated the success-
> ful isolation of [any of the] coding regions
> which would confer herbicide resistance nor
> the transformation and expression of any of
> these genes.

To begin with, the Examiner is requested to consider that Applicants are not claiming to have invented any or all of DNA sequences or "genes" which are known to be generally useful to confer herbicide resistance to plants, but rather to have invented an effective method to introduce such DNA sequences into *Zea mays* cells so as to produce herbicide resistant *Zea mays* plants.

SM 0000811

4

Furthermore, 35 U.S.C. § 112 does not require that the specification or claims specifically recite every known gene which would be effective to confer herbicide resistance.  It is well settled that the specification need not teach that which would be apparent to one of skill in the art.  In re Meyers, 161 USPQ 668 (CCPA 1969).

Evidence that one of ordinary skill in the art could readily obtain herbicide resistance-imparting genes as starting materials for use in the present invention is provided by the specification itself.  Page 12 of the specification discloses six classes of genes that would impart resistance to herbicides. Furthermore, the specification contains extensive references to scientific articles and reviews which demonstrate that a wide variety of herbicide resistance genes were available to the art. For example, Table 1 of the cited 1988 review by K. Weising et al., Ann. Rev. Genet., 22, 421 (1988) references a number of selectable marker genes which impart resistance to various herbi-cidal compounds, including those referenced in the specification. A copy of this table is attached which also includes a listing of the papers which the·table references as sources of the genes.

The second part of the Examiner's objection to the specification is based on the fact that no working example relat-ing to the introduction and expression of a herbicide resistance gene is included in the specification.  However, the Examiner is

5

SM 0000812

requested to consider that the presence of a working example is
only one factor to be considered in resolving the enablement
question.  Ex parte Forman et al., 230 USPQ 546 (CCPA 1986).   The
Forman court did not overrule In re Borkowski, 164 USPQ 642 (CCPA
1970), which held that, as a matter of law, working examples are
not required to satisfy § 112(1).   In terms of the directions
available to the art worker, the Examiner has noted that working
examples are present which teach "the transformation and expres-
sion of marker/reporter genes conferring expression of hygromycin
$\beta$ phosphotransferase, $\beta$-glucuronidase and luciferase.   Addition-
ally, apart from the working examples, the specification at pages
8-21 sets forth detailed operating parameters for the practice of
the claimed transformation method.   In contrast to the detailed
instructions provided by the present specification with respect
to the operating parameters of the presently claimed method, the
Forman et al. application only provided a general description of
how to produce the claimed vaccine, which was based on a mutant
strain of S. typhi.

          In view of the detailed procedures present in the
specification, which would enable the art worker to practice the
steps recited for the present process, the only question that
Applicants can reasonably be requested to resolve, is whether or
not these procedures would yield a fertile *Zea mays* plant, which
can sexually transmit herbicide resistance to progeny.

                            6                SM 0000813

Before this burden can be shifted to Applicants, the
Patent Office also must explain why it doubts the truth or accur-
acy of a statement of operability in the specification and pro-
vide evidence <u>inconsistent</u> with the contested statement.  <u>In re</u>
<u>Marzocchi et al.</u>, 169 USPQ 367 (CCPA 1971).  In the present case,
the Examiner has attempted to meet this burden by asserting that
"[v]ariability in expression was art recognized to be due to
numerous factors ...", and proceeded to list six general factors
related to expression of heterologous genes in a host.  A Euro-
pean patent application published in 1986 is cited as authority
for these art-recognized difficulties.

Assuming, for argument's sake, that the Examiner has
presented evidence sufficient to shift the burden to Applicants
to establish that the claimed method can introduce genes into *Zea*
*mays* that impart herbicide resistance, Applicants filed a
Rule 132 Declaration with the Preliminary Amendment by
Dr. William J. Gordon-Kamm, reporting his success using the
claimed process to introduce a representative selectable marker
gene, *bar*, that imparted bialaphos resistance to transgenic R0
and R1 *Zea mays* plants.  He also presented his opinion, based on
these results, that other herbicide resistance genes could be
introduced into *Zea mays* using the same methodology.

However, at page 4, paragraph 1 of the Office Action,
the Examiner did not deem the declaration persuasive.  While he

did not question the objective evidence of enablement presented
by the declaration, the Examiner (a) did not find the evidence in
the declaration commensurate in scope with the subject matter of
claim 48 and/or (b) disregarded the declaration entirely.  With
respect to point (b), the Examiner stated, without citation of
authority:

> While a declaration may be employed to evi-
> dence greater [breadth] where there [exists]
> a foundation for that [breadth] in the speci-
> fication it cannot be employed to broaden the
> invention beyond that enabled by the original
> disclosure.

The Examiner is respectfully requested to consider that
his concerns about the "foundation" for the breadth of specifica-
tion and invention and attempts to "broaden the invention" are
unfounded.  The invention is in fact claimed less broadly than as
disclosed and originally claimed.  Applicants are not attempting
to broaden the invention, but only to rebut the Examiner's rejec-
tion of claims directed to a method of imparting herbicide resis-
tance to *Zea mays* as not adequately enabled by the specification.
The basis for the Examiner's "lack of foundation" concern may be
that the use of the *bar* gene itself is not specifically disclosed
or claimed in the application.  However, as documented above,
this gene was well-known to the art as a potential herbicide-
resistance gene in plants prior to the filing date of the present
invention.  Thus, it is a representative species of the genus of
genes which impart herbicide resistance, and as such, evidence of

8

its successful use is permissible to rebut the Examiner's allega-
tion that the specification would not enable Applicants' trans-
formation method to be practiced as broadly as it is claimed.

The Examiner is also requested to consider that, in
contrast to an attempt to supplement the <u>steps</u> disclosed in the
specification to be necessary to practice the claimed process, it
is permissible to present studies conducted after the filing
date, in order to rebut the Examiner's position that the steps of
the claimed process would not, in fact, yield the recited <u>pro-
duct</u>. See, <u>In re Wands</u>, 8 USPQ2d 1400, 1406 (Fed.Cir. 1988).
(where the Federal Circuit found that a study carried out <u>after</u>
the filing date supported a conclusion of enablement), <u>In re
Armbruster</u>, 185 USPQ 152 (CCPA 1975), the court held that "Appli-
cant's affidavit reciting experiments and comparative results can
be considered in demonstrating objective enablement [of the
claimed process] since the affidavit is being employed only to
demonstrate that the teaching in the specification is enabling,
not to add information to the specification."  Therefore, a full
and fair consideration of the Gordon-Kamm declaration is appro-
priate, and is respectfully requested.

To supplement the evidence presented by this declara-
tion, and to further support the generality of the claimed
method, the Examiner is requested to consider the enclosed Rule
132 Declaration by Dr. Christopher Flick.  Exhibit A of

Dr. Flick's declaration presents a compilation of studies being
carried out at DEKALB Plant Genetics (DPG) involving the intro-
duction of various exogenous DNA segments to yield fertile,
transgenic corn plants.  As can be seen, a variety of genes have
been introduced into transgenic corn lines through the applica-
tion of the techniques set forth in the present application.  The
Exhibit A table indicates whether the gene and/or expression was
detected in callus, R0 plants and progeny.  Those studies indi-
cated as in progress are ongoing, so the fact that the gene
and/or expression has not been detected means that studies have
not progressed to this stage.  It is submitted that the Exhibit A
table indicates that stable transformants have been recovered
containing all genes attempted.  Expression has been detected
from all structural genes listed in at least one transformed cell
line in experiments that have progressed to this stage.

The declaration indicates that fertile plants have been
recovered from transformants containing the *uidA, bar, Bt,* and
*aroA* genes.  The *uidA* gene is a possible selectable marker gene.
the *aroA* gene is an ESPS synthase gene which encodes glyphosate
resistance, and is discussed in the specification as a selectable
marker at, e.g., page 12, line 4.  The *Bt* gene is a well-known
insect resistance gene, discussed in the specification at page
11, para. 2.  Expression of the *bar* gene has been detected in
progeny from all transformants examined (19/19).  Expression of

10                    SM 0000817

the *uidA* gene was detected in progeny of one out of five trans-
formants assayed.

Further, as can be seen from Dr. Flick's Exhibit A
table, there are many additional studies that are in progress.
These include the introduction of the *lux* (luciferase) gene,
discussed in the specification at page 14, line 13; the introduc-
tion of the screenable *R* gene (anthocyanin pigment) marker, and
the *pinII* gene, a protease inhibitor, useful in providing pest
resistance as discussed in the specification at page 13, line 4.
The Exhibit A table also sets forth transformation studies in-
volving altered lysine production using the *dapA* gene, and vari-
ous approaches for altering storage protein content in seeds as a
means of altering the amino acid profile of the corn, and hygro-
mycin resistance.

In a further section of his declaration, Dr. Flick
reviews studies carried out by third parties which are submitted
to even further support the broad applicability of the present
invention. As explained by Dr. Flick in paragraph 8, the Exhibit
B table is set forth in a manner similar to that of the Exhibit A
table.  The data set forth in Exhibit B was obtained through a
review of scientific publications, including articles from refer-
enced journals and meeting abstracts, as well as a review of
field release permits filed with the Animal and Plant Health
Inspection Service (APHIS).  The techniques employed by the

11                    SM 0000818

various entities to obtain introduction of the indicated trans-
gene was determined by review of the article or document, as was
the question of whether the resultant transgenic corn plant
expressed the introduced transgene.  Dr. Flick further explains
that, as is being routinely found by studies carried out by DPG,
the third party studies reflected in Exhibit B demonstrate that
the introduction of transgenes into the corn genome by micropro-
jectile bombardment routinely results in the generation of trans-
genic maize plants that express the gene of interest.

          Also enclosed herewith is a copy of a Rule 132 Declara-
tion submitted in commonly-assigned U.S. patent application
Serial No. 508,045, filed April 11, 1990, by T. Michael Spencer.
Mr. Spencer reports experiments which led to the successful
introduction of the *aro*A gene into *Zea mays* and its expression to
impart glyphosate resistance to transgenic R1 progeny.  This
embodiment of the invention is disclosed at page 12, lines 1-4 of
the specification of the present application as filed.

          It is submitted that Dr. Flick's declaration and compi-
lation and Mr. Spencer's declaration demonstrate that the ability
to introduce transgenic DNA into the corn genome is reproducible
from DNA to DNA, and that this ability was not contingent upon
the nature of the DNA employed.  The declarations demonstrate
that in each study that has progressed sufficiently to the R1
stage, the inserted DNA was stably transmitted to the R1 plant.

                              12              **SM 0000819**

Furthermore, subsequent studies by others, using microprojectile
bombardment, provide additional evidence of broad enablement.

With respect to the generality of the method employed
to produce the present transgenic plants, the Examiner is also
respectfully requested to consider the evidence provided by the
specification of commonly assigned U.S. patent application Serial
No. 07/636,089, filed December 28, 1990, which is a continuation-
in-part of the present application. With respect to the identity
of the disclosures of the "DNA Delivery Process," the Examiner is
requested to compare pages 25-26 of the '089 application to
pages 16-18 of the present application. In the Office Action
mailed November 17, 1992, the Examiner accepted as fully enabl-
ing, the working examples which disclose expression of the recom-
binant Z27-Z10 gene to yield elevated levels of the 10 kDa zein
protein, after its introduction into *Zea mays* cells by micropro-
jectile bombardment. Thus, this confirmation of a phenotypic
change in transgenic *Zea mays* via introduction of a gene encoding
a *Zea mays* seed storage protein provides further evidence that
the methodology disclosed in the present specification would
enable one of skill in the art to produce the transgenic *Zea mays*
plants of claim 39.

Finally, the Examiner is requested to note that satis-
faction of the enablement requirement of § 112 is not precluded
by the necessity for some experimentation, such as routine

13                    **SM 0000820**

screening. The key word is "undue," not "experimentation." In
re Angstadt, 190 USPQ 214, 219 (CCPA 1976). A considerable
amount of experimentation is permissible if it is merely routine,
or if the specification provides a reasonable amount of guidance
with respect to the direction in which the experimentation should
proceed. In re Jackson, 217 USPQ 804 (Bd. App. 1982). The
Examiner is respectfully requested to note that the present
specification provides detailed methodologies which would enable
the art worker to practice the invention as broadly as it is
claimed. It is well settled that it is not necessary that a
patent applicant test all the embodiments of the invention in
order to meet the requirements of § 112. In re Angstadt, 190
USPQ 214, 218 (CCPA 1976). The fact that transformation would
have to be carried out and assays conducted in order to determine
the level of expression of a given transgene within the scope of
the claims does not constitute "undue experimentation," particu-
larly in an art where the level of skill is so high. In re
Wands, 8 UPSQ2d 1400 (Fed. Cir. 1988).

        Thus, it is respectfully submitted that the evidence
presented in these Declarations and provided by Serial
No. 07/636,089 is more than sufficient to rebut the Examiner's
allegation that the specification is not enabling with respect to
any of the pending claims, and withdrawal of this rejection is
respectfully requested.

                                    **SM 0000821**

                    14

*Serial No. 07/974,329*                                     Amendment


It is respectfully submitted that all of the claims have been placed in condition for allowance, and notification to that effect is earnestly solicited.

Respectfully submitted,

R. C. LUNDQUIST ET AL.,

By their Attorneys,

MERCHANT, GOULD, SMITH, EDELL,
    WELTER & SCHMIDT, P.A.
3100 Norwest Center
Minneapolis, MN 55402
(612) 332-5300

Date: 9 - 23 - 93          By _Warren D. Woessner_
                              Warren D. Woessner
                              Reg. No. 30,440


**SM 0000822**

15

PATENT

27
1993 IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of      §
     R. C. Lundquist et al. §
                     §   Group Art Unit:  1804
Serial No. 07/974,379     §
                     §   Examiner:  G. Benzion
Filed: November 10, 1992   §
                     §   Atty. Dkt.:  9696.1-US-01
For: METHOD FOR PREPARING   §
     FERTILE TRANSGENIC   §
     CORN PLANTS         §
                     §
                     §

## DECLARATION OF CHRISTOPHER FLICK

I, CHRISTOPHER FLICK, HEREBY DECLARE AS FOLLOWS:

1.    I reside at 23 Pepperidge Trail, Old Saybrook, Connecticut.

2.    I am employed by Dekalb Plant Genetics (DPG), and work at DPG's Discovery Research facility at 62 Maritime Drive in Mystic, Connecticut.  My duties include management of the maize transformation team and herbicide resistance projects.

3.    My background and training include a Ph.D. in Molecular Biophysics (Florida State University, 1978), and 15 years experience in plant tissue culture, transformation and molecular biology, including in particular, experience in tissue culture of dicot and monocot species, somaclonal variation, somatic hybridization (protoplasts and protoplast fusion), mutant

- 1 -    **SM 0000823**

isolation, and 8 years experience in plant transformation -- 5 of those years involved in the study of corn transformation.  I have authored numerous publications in the area of plant regeneration from tissue culture, mutant isolation, and somatic hybridization.

4.    I am generally familiar with the specifications of USSN 07/974,379, and the underlying corn transformation studies that they describe.  I am also familiar with corn transformation studies based upon these applications that have been subsequently carried out by DPG, and with corn transformation studies that have been carried out in accordance with the techniques disclosed in the present application employing different corn cultures.

5.    A variety of genes have been introduced into transgenic corn lines by DPG (or PSRI) scientists through the application of the techniques set forth in the referenced application, and a compilation of these studies is set forth in the Exhibit A table. The Exhibit B table indicates whether the gene and/or expression was detected in callus, Ro plants and progeny.  Those studies indicated as in progress are ongoing, so the fact that the gene and/or expression has not been detected means that studies have not progressed to this stage.

6.    The Exhibit A table indicates that stable transformants have been recovered containing all genes attempted.  Expression

- 2 -                **SM 0000824**

has been detected from all structural genes listed in at least
one transformed cell line in studies that have progressed to this
stage.  Detection of expression is dependent on the promoter and
enhancers used to drive expression of the structural gene, the
structural gene itself, and the limits of the detection system.
At this point in time fertile plants containing the *uidA, bar,
Bt, aroA, dapA*, 10 kD zein storage protein and hygromycin
resistance genes have been recovered from transformants.
Expression of the *bar* gene has been detected in progeny from all
transformants examined (19/19).  Expression of the *uidA* gene has
been detected in the progeny of one out of five transformants
assayed.


        7.    The protocols employed for preparing the transgenic
plants described in the foregoing Exhibit table were as described
in the specification of the above-identified Lundquist et al.
application.  The preparation of the various vectors, *etc.*, was
accomplished through the application of molecular biology
techniques as described in the application and/or using routine
laboratory procedures.  The numeral designations under "Protocol"
represent the following:

                1.    Tissue (suspension) was plated on filters,
                bombarded and then filters were transferred to culture
                medium.  After 2-7 days, the filters were transferred
                to selective medium.  Approximately 3 weeks after
                bombardment, tissue was picked from filters as separate
                callus clumps onto fresh selective medium.


                            **SM 0000825**

                              - 3 -

2.   As in 1. above, except after bombardment the suspension was put back into liquid - subjected to liquid selection for 7-14 days and then pipetted at a low density onto fresh selection plates.

3.   Callus was bombarded while sitting directly on medium.  It was briefly put into liquid to disperse the tissue onto selective plates at a low density.

4.   Callus bombardment.  The tissue was transferred onto selective plates one day after DNA introduction, and at 2-week subculture intervals, the tissue pieces were moved onto successively higher concentrations of selective agent.

8.   The Exhibit B table sets forth studies carried out by third parties that further demonstrate the broad applicability of maize transformation as a means of obtaining expression in maize of a selected transgene.  Methods referenced as 1 and 2 relate to transformations of embryogenic Type I or Type II callus or suspension cultures derived therefrom.  Exhibit B table includes data obtained through a review of scientific publications, including both refereed journals and meeting abstracts, as well as a review of field release permits filed with the U.S. Department of Agriculture, Animal and Plant Health Inspection Service (APHIS).  The transformation technique employed by the various entities to obtain introduction of the indicated transgene was determined by review of the article or document, as was the question of whether the resultant transgenic corn plant expressed the introduced transgene.

**SM 0000826**

- 4 -

9.    The achievements by third parties reflected in Exhibit B evidence a wide range of success employing the referenced invention in achieving fertile, transgenic maize plants.  In addition to the particular transgenic species that have been developed at DPG and discussed above, the Exhibit B compilation evidences success with a number of other transgenes.  From these results there can be no doubt that the techniques of the present invention are generally applicable and not limited in their applicability to only a few species, and that introduction of transgenes into the corn genome routinely results in the generation of transgenic maize plants that express the gene of interest.

10.    I hereby declare that all statements made of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under § 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of this application or any patent issued thereon.

_Christopher Flick_
Christopher Flick

Date: _September 22, 1993_

- 5 -                          **SM 0000827**

EXHIBIT A

| Expression Cassette | Protocol | Gene in Callus | Callus Expression | Gene in Ro Plant | Ro Plant Expression | Gene in Progeny Plant | Progeny Plant Expression |
|---|---|---|---|---|---|---|---|
| uidA (GUS, reporter gene) | 1,2,3,4 | + | + | + | + | + | + |
| bar (bialaphos resistance, selectable marker) | 1,2,3,4 | + | + | + | + | + | + |
| lux (luciferase reporter, gene) | 2 | + | + | + | + | In progress | |
| hyg (hygromycin resistance, selectable marker) | 4 | + | + | + | + | + | + |
| 35S-adh-aroA (Glyphosate tolerance) | 2 | + | + | + | + | + | + |
| α-tubulin-aroA (Glyphosate tolerance) | 2 | + | + | + | + | In progress | |
| 2xhis-aroA (Glyphosate tolerance) | 2 | + | - | ND | ND | In progress | |
| 35Shis-aroA (Glyphosate tolerance) | 2 | + | - | ND | ND | In progress | |
| R,C1 (anthocyarin pigment synthesis) | 1 | + | + | | | | |

SM 0000828

- 6 -

| Expression Cassette | Protocol | Gene in Callus | Callus Expression | Gene in Ro Plant | Ro Plant Expression | Gene in Progeny Plant | Progeny Plant Expression |
|---|---|---|---|---|---|---|---|
| 35S-IaB6 (Bt) | 2 | + | ND | + | ND | In progress | |
| 35S-HD73 (Bt) | 4 | + | - | + | - | + | ND |
| 35S-1800b (Bt) | 2.4 | + | - | + | + | + | + |
| 2730CS-AdhVI-1800b (Bt) | 2 | + | ND | + | + | + | + |
| 35S-Adh1-1800b (Bt) | 2.4 | + | ND | + | In progress | | |
| 35S-MZTP-1800b (Bt) | 2.4 | + | In progress | + | + | In progress | |
| Adh1-adh1-1800b (Bt) | 4 | + | + | + | - | Completed | |
| potato pinII (proteinase inhibitor confers insect resistance) | 2 | + | + | + | ND | In progress | |
| tomato pinII (proteinase inhibitor confers insect resistance) | 2 | + | ND | + | ND | In progress | |
| 35S-dapA (altered lysine production) | 3.4 | + | + | In progress | | | |
| Z27-dapA (altered lysine production in seed) | 3.4 | + | NA | ND | ND | In progress | |
| Z27Z10 (altered storage protein in seed) | 3.4 | + | NA | ND | NA | + | + |

**SM 0000829**

- 7 -

| Expression Cassette | Protocol | Gene in Callus | Callus Expression | Gene in Ro Plant | Ro Plant Expression | Gene in Progeny Plant | Progeny Plant Expression |
|---|---|---|---|---|---|---|---|
| Z4Z10 (altered storage protein in seed) | 3,4 | + | NA | ND | NA | In progress | |
| Z10Z10 (altered storage protein in seed) | 3,4 | + | NA | ND | NA | In progress | |
| 1024ENT (altered storage protein in seed) | 3,4 | + | NA | ND | NA | In progress | |
| 1020P (altered storage protein in seed) | 3,4 | + | NA | ND | NA | In progress | |
| 35S-adh1-mtlD (enhanced stress resistance) | 2 | + | In progress | | | | |
| deh (resistance to dalapon herbicide) | 4 | ND | + | In Progress | | | |

NA indicates not applicable, e.g., gene does not express in that tissue type.

ND indicates not done, but tissue was available.

Blank space indicates experiment has not progressed to this point or was terminated before this point.

The symbol "+" indicates that expression of the gene was detected by RNA, protein, enzyme assay or biological assay.

SM 0000830

- 8 -