De Block et al. disclose the introduction of the *bar* gene into the dicots tobacco, tomato and potato by *Agrobacterium*-mediated transformation. There is no suggestion in De Block et al. to transform maize by microprojectile bombardment, or to regenerate fertile transgenic maize plants capable of transmitting the foreign DNA to progeny plants. Thus, De Block et al., alone or in combination with the other cited art fails to yield the claimed method.

The Examiner cites Poehlman as disclosing that backcross breeding can be used to add a gene encoding a superior characteristic to a different variety. Of course, Applicants do not claim to have invented these techniques. However, the availability of such techniques does not remedy the deficiencies in the teachings of the art. There is no suggestion in Poehlman that maize can be transformed by microprojectile bombardment, or that fertile transgenic maize capable of transmitting the foreign DNA to progeny plants can be regenerated from bombarded cells.

The combination of Sanford, Klein et al., Armstrong et al., Adang et al., De Block et al., and Poehlman et al. as applied to claims 23-29, 41-45, 48-52 and 55-59 does not teach or suggest the claimed method. Consequently, the Examiner has not established a *prima facie* case of obviousness, and reconsideration and withdrawal of the 35 U.S.C. § 103(a) rejection of claims 23-29, 41-45, 48-52 and 55-59 is respectfully requested.

Even assuming, *arguendo*, that the cited art renders it *prima facie* obvious to proceed along the lines arguably suggested by Sanford and Klein et al. to bombard maize Type II callus with DNA, it is respectfully submitted that it would still be unexpected that fertile transgenic maize plants would be obtained by this route. As evidence of the reasonable expectations of the art with respect to these teachings, the Examiner is requested to consider paragraph 14 of the Rule 132 declaration executed by Professor Ronald J. Phillips on July 20, 1992, in commonly-assigned application Serial No. 07/508,045, filed April 11, 1990 (copy enclosed). In his declaration, Professor Phillips contrasts the regenerability of friable Type II embryogenic maize callus, to characteristics that would render its transformation unpredictable, namely its fragility and the uncertainty with respect to its ability to stably integrate foreign DNA or to regenerate plants. Paragraph 14, which summarizes his conclusions, is reproduced below:

> 14.      It might well be obvious for a researcher in this area
> to try to transform a maize tissue, cultured cells or
> protoplasts that had a history of "regenerability" in the

RESPONSE UNDER 37 C.F.R. § 1.111
Serial Number: 08/677,695
Filing Date: July 10, 1996
Title:      METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

Page 14
Dkt: 950.001US4

untransformed state. However, the "state of the art" in mid-1989 to early 1990 would not permit one of ordinary skill in the art to reasonably predict that the three pieces of the puzzle of maize transformation, namely stable transformation accompanied by subsequent cell division, regenerability, and fertility/transmission, would come together via any available methodology employing any available maize starting material, including scutellum, much less that the biolistic transformation of friable embryonic Type II callus would be the path to success.

In *In re Wood*, 202 U.S.P.Q. 171, 174 (CCPA 1979), the court emphasized that "[o]f course, an evaluation of the claimed invention performed by an impartial, qualified third party is a valuable indication of the nonobviousness of an invention." The Examiner is requested to consider that Professor Phillips' declaration is based on facts derived from his extensive experience with the *in vitro* cell/tissue culture of maize, and that the declaration is sufficient to rebut any *prima facie* case of obviousness established by the cited art. The Examiner is also requested to consider that the declaration is particularly effective in view of the remoteness of the cited art from the claimed invention; there are no experiments disclosed in the cited art relating to obtaining stably transformed dividing cells from any transformed maize tissue source, following the use of microprojectile bombardment to introduce the foreign DNA, and then regenerating fertile plants from the transformed cells. Therefore, withdrawal of the obviousness rejection of claims 23-29, 41-45, 48-52 and 55-59 is appropriate and is respectfully requested.

Claims 68-74 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Sanford (Physiol. Plant., 79, 206-209 (1990)) in view of Klein et al. (Bio/Technol., 6, 559-563 (1988)) and Armstrong et al. (Planta, 164, 207-214 (1985)), Adang et al. (U.S. Patent No. 5,380,381), DeBlock et al. (EMBO J., 6, 2513-2518 (1987)) and Poehlman (In: Breeding Field Crops, 3rd Edition, AVI Publishing Co., Inc., Westport, CT, p. 203-206 (1986)) as applied to claims 23-29, 41-45, 48-52 and 55-59 above and further in view of Murry et al. (U.S. Patent 5,371,003) and Fillatti et al. (U.S. Patent 5,565,347). This rejection respectfully traversed.

The Examiner asserts Murry et al. disclose a method for the introduction of DNA into plant "material" in which selection of transgenic cells and plants is based on the detection of expressed transgenic antibiotic resistance markers. Murry et al. claim a method for transforming

RESPONSE UNDER 37 C.F.R. § 1.111
Serial Number: 08/677,695
Filing Date: July 10, 1996
Title:    METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

Page 15
Dkt: 950.001US4

non-protoplastic plant tissue and cells which involves the horizontal electrophoresis of DNA into plant tissue and cells. Murry et al. also claim a method for producing transformed fertile plants, including dicots, monocots, and corn, using this method of transformation.

To begin with, Murry et al. do not disclose a transformation process based on microprojectile bombardment, as recited by the independent claims, e.g., claim 23. Furthermore, experiments disclosed in the Murry et al. patent simply do not provide reasonably convincing evidence of stable transformation of corn. The Murry et al. patent discloses that the application of a constant low voltage electric force to plant cells in the presence of exogenous DNA can result in the production of transformed plant cells incorporating the exogenous DNA. However, it was well known to the art, as early as 1990, that the introduction of DNA into plant cells using electrical forces requires enzyme digestion, or other wounding, of the plant cell wall in order to allow entry of the DNA into the plant cell (see Rhodes et al., Science, 240, 204 (1988); D'Halluin et al., Plant Cell, 4, 1495 (1992); Krzyzek et al., U.S. Patent No. 5,384,253 (issued Jan. 24, 1995)).

This DNA digestion may either take the form of complete digestion to produce protoplasts (e.g., Rhodes et al., Science, 240, 204 (1988)), or partial digestions as disclosed in Krzyzek et al. (U.S. Patent No. 5,384,253 (issued Jan. 24, 1995)), and D'Halluin et al. (Plant Cell 4: 1495 (1992)). D'Halluin et al. clearly demonstrate that there is no DNA delivery to immature embryos of maize following application of an electrical force in the absence of enzyme digestion. D'Halluin et al., Plant Cell 4: at 1496, figure 2.

Although the Murry et al. patent discloses that DMSO is added during transformation to facilitate uptake of DNA into cells, DMSO affects membrane permeability (as is stated in the Murry et al. patent, col. 5, lines 25-37), not the structure of the plant cell wall, and would not substitute for the use of enzymatic degradation of the cell wall. Krzyzek and D'Halluin readily demonstrate that there is an absolute requirement for enzyme treatment of cell walls in order for DNA to enter a cell using an electromotive force and that in the absence of this treatment, DNA does not enter cells. Thus, one of ordinary skill in the art would not expect the transformation technique disclosed in Murry et al. to be successful.

In addition, Murry et al. disclose an alleged method for introducing DNA into stage 3 corn embryos, using hygromycin selection to identify transformants comprising the

RESPONSE UNDER 37 C.F.R. § 1.111
Serial Number: 08/677,695
Filing Date: July 10, 1996
Title:    METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

Page 16
Dkt: 950 001US4

introduced gene. In Example 1, a gene conferring resistance to the antibiotic hygromycin was introduced in the sense (vector H83E) and antisense (vector H83R) orientations. An art worker would only expect the gene introduced in the sense direction to express a protein capable of conferring hygromycin resistance on a recipient cell. However, the data disclosed in Table E shows that at 11 days after DNA delivery to the embryos, 12 embryos into which the H83E vector (sense) was introduced and 12 embryos into which the H83R vector (antisense) was introduced were demonstrating resistance to hygromycin. Furthermore, at 14 days post DNA delivery, more embryos that received the antisense gene vector demonstrated resistance to hygromycin than those that received the sense gene vector. Based on these results, one skilled in the art would conclude that any observed "resistance" to hygromycin in this experiment is not associated with the introduction of the gene encoding hygromycin resistance and thus, the method disclosed by Murry et al. would not be successful to select transformed corn plants.

In Example 2, Murry et al. disclose DNA analysis of putative transformants selected with hygromycin as described in Example 1. Murry et al. report that 10% of the plants recovered from Example 1 are transformed based on DNA analysis using dot blot analysis. This type of analysis is known by the art to be unreliable for detecting transgenes in plant species, including corn, because genomic DNA entraps the DNA probe and leads to false positive signals. See Gordon-Kamm et al., Plant Cell, 2, 7, 603 (1990). Absent separation of DNA species by electrophoresis (such as a Southern blot), one skilled in the art would conclude that the use of dot blot techniques would result in the production of false positive signals.

Example 5 of the Murry et al. patent purports to disclose transgenic F1 corn plants and seedlings derived therefrom. However, for many reasons, this example does not evidence successful transformation. First, it is unclear whether the results reported therein are prophetic or actual, as the majority of Example 5 is written in the present tense rather than the past tense. This indicates that the majority of the example is prophetic, not actual. M.P.E.P. § 608.01(p).

Next, Example 5 discloses that corn embryos are transformed with the pZ033 plasmid. The pZ033 plasmid contains the 35S CaMV promoter linked to the CAT marker gene, which encodes chloramphenicol acetyl transferase, linked to a 3' NOS sequence in a pUC19 background. Review of Example 5 reveals that the embryos were cultured without selection to form seedlings which are then regenerated into plants. These regenerated plants are then

RESPONSE UNDER 37 C.F.R. § 1.111
Serial Number: 08/677,695
Filing Date: July 10, 1996
Title:   METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

Page 17
Dkt: 950.001US4

disclosed as being cross-pollinated to yield F1 hybrid plants. The cobs of the F1 plants are then analyzed using an assay to detect CAT activity. Of 8 cobs from F1 plants, 2/8 cobs are disclosed as having seeds, which upon germination, exhibited CAT activity. However, the results of the CAT assay are not shown and Example 5 contains no indication that negative or positive controls were ever carried out.

One skilled in the art would not find the results of the CAT assay, as disclosed by Murry et al., to be indicative of transformation with the CAT gene. It is highly unlikely that an embryo, which was exposed to exogenous DNA, but was not placed under selection for the presence (i.e., expression) of that exogenous DNA, would contain that exogenous DNA, much less an integrated form of that DNA. In fact, a maize embryo contains about 1 million cells, of which only the meristem comprises 433 cells (Johri and Coe, Maize for Biological Research, Sheridan, W.F. (Ed.), pp. 301-310 (1982)). In a maize embryo, about 4 cells of the shoot apical meristem are the progenitors of the tassel of the mature plant and 2-4 cells of the shoot apical meristem are the progenitors of the ear shoot. Therefore, of the 433 meristematic cells, at most 8 of those cells give rise to reproductive structures in the mature maize plant. Thus, a transgenic plant capable of transmitting the "transgene" to progeny can only arise from the transformation of at least one of those 8 cells. Even with the most efficient DNA delivery system, the art would find it truly incredible that Murry et al. could deliver DNA in 25 % of the embryos to these 8 cells out of potentially millions of target cells. Therefore, the art worker would logically conclude that it is also unlikely that the genome of a plant derived from such an embryo contains an integrated form of the exogenous DNA.

Furthermore, evidence of CAT activity in seeds of a F1 plant is simply not credible evidence of the stable integration of the CAT gene in that plant. Because some plant species have endogenous CAT activity, or non-specific acetylases (Charest et al., Plant Cell Reports, 7, 628 (1989); Herrera-Estrella et al., Plant Mol. Biol. Manual B1, 1 (1988)), rigorous negative controls are necessary in CAT assays which employ plant extracts in order to draw any meaningful conclusions about the assays. Yet, as noted supra, Example 5 of the Murry et al. patent contains no reported results of negative control samples.

It is further disclosed in Example 5 that DNA is isolated from the leaves of "CAT-positive" F1 plants and from the tassel employed to generate the F1 plants. The purported CAT

RESPONSE UNDER 37 C.F.R. § 1.111
Serial Number: 08/677,695
Filing Date: July 10, 1996
Title:    METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

Page 18
Dkt: 950 001US4

positive F1 transformants were analyzed for the presence of the CAT gene sequence, as Murry et al. disclose that the DNAs from these sources are digested with an enzyme that cleaves pZ033 and then are hybridized to a CAT gene probe. The Southern blot data allegedly provides evidence that a CAT gene-containing fragment of pZ033 was present in at least some leaf cells from F1 plants. However, the DNA hybridization results in this example are confusing because the results were not as expected. Murry et al. state that

> [a] diagnostic 1.2 kb fragment is released whenever the pZ033 (35S-CAT-NOS) plasmid or genomic DNA transformed with the plasmid is cut the restriction enzymes Hind III and Eco RI and probed with the CAT gene.

Murry et al., U.S. Patent No. 5,371,003 (issued December 6, 1994), col. 14, lines 10-15.

Murry et al. then state that "[i]n this progeny family, the 1.2 kb fragment is always associated with a 1.4 kb fragment." (Id., col. 14, lines 15-17). Thus, Murry et al. disclose that a Southern blot of F1 DNA samples contained two bands, the expected 1.2 kb band and another, unexplained, 1.4 kb band. It is unclear why, in the F1 family, the additional 1.4 kb fragment always associates with the diagnostic 1.2 kb fragment described above. The presence of the 1.4 kb fragment is unexpected and unexplained.

Absent data to demonstrate the presence of pZ033-derived junction fragments in leaf DNA from F1 plants, there is nothing in Example 5 in the Murry et al. patent to evidence the successful production of a transgenic corn plant, the genome of which is stably augmented with heterologous DNA. Thus, the Murry et al. patent does not anticipate the claimed invention.

The Examiner asserts Fillatti et al. disclose a method to obtain transgenic plants in which the selection of transgenic cells and plants based on the detection of expressed transgenic antibiotic resistance markers.

Fillatti et al. disclose the method of transforming "plants employed for commercial purposes and subject to cultivation and management . . . . including vegetables" by co-cultivating cotyledon tissue with *Agrobacterium* (col. 3, lines 2-3). Transformed cells are selected on in media containing kanamycin. However, while Fillatti et al. suggest the disclosed

RESPONSE UNDER 37 C.F.R. § 1.111
Serial Number: 08/677,695
Filing Date: July 10, 1996
Title:    METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

Page 19
Dkt: 950 001US4

method will transform plants employed for commercial purposes, the specification provides examples of and claims directed to transforming only tomato cells.

There is no suggestion in Murry et al. or Fillatti et al. that maize cells can or should be transformed by microprojectile bombardment. Moreover, neither Murry et al. or Fillatti et al. suggest that fertile transgenic maize capable of transmitting the foreign DNA to progeny plants can be regenerated from bombarded cells. Furthermore, none of the methods disclosed by Murry et al. and Fillatti et al. are capable of transforming maize so that fertile transgenic maize are regenerated that are capable of transmitting the foreign DNA to progeny plants. Thus, Murry et al. and Fillatti et al., either alone or in combination fail to yield the claimed method.

Applicants respectfully submit that the Examiner has not established a *prima facie* case of obviousness. As discussed above, neither Sanford, Klein et al., Armstrong et al., Adang et al., DeBlock et al., or Poehlman teach or suggest the method of claims 23-29, 41-45, 48-52 and 55-59. Furthermore, Murry et al. and Fillatti et al. do not cure the deficiencies of Sanford, Klein et al., Armstrong et al., Adang et al., DeBlock et al., or Poehlman. Thus, the claimed method as recited in claims 68-74 is not clearly *prima facie* obvious in view of Sanford, Klein et al., Armstrong et al., Adang et al., DeBlock et al., or Poehlman further in view of Murry et al. and Fillatti et al. Reconsideration and withdrawal of the 35 U.S.C. § 103(a) rejection of claims 68-74 as being unpatentable over the cited art is respectfully requested.

RESPONSE UNDER 37 C.F.R. § 1.111
Serial Number: 08/677,695
Filing Date: July 10, 1996
Title:    METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

Page 20
Dkt: 950 001US4

## CONCLUSION

It is respectfully submitted that the amended claims are in condition for allowance and allowance of the claims is earnestly solicited.

The Examiner is invited to telephone the below-signed attorney at 612-373-6903 to discuss any questions which may remain with respect to the present application. The Examiner is thanked for the courtesies extended during the interviews of December 4, 1997, and March 17, 1998, during which these issues were extensively discussed.

Respectfully submitted,

RONALD C. LUNDQUIST ET AL.

By their Representatives,

SCHWEGMAN, LUNDBERG, WOESSNER & KLUTH, P.A.
P.O. Box 2938
Minneapolis, MN  55402
(612) 373-6903

Date _15 June 1998_    By _____

WDW:dlp

Warren D. Woessner
Reg. No. 30,440

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to Assistant Commissioner of Patents, Washington, D.C. 20231 on June _15, 1998.

Frances Essien
Name

Frances Essie
Signature

0002657

PATENT

<u>S/N 08/677,695</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicants: | Ronald C. Lundquist et al. | Examiner: Gary Benzion |
| Serial No.: | 08/677,695 | Group Art Unit: 1649 |
| Filed: | July 10, 1996 | Docket: 950.001US4 |
| Title: | METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS | |

## SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

Assistant Commissioner for Patents
Washington, D.C. 20231

In compliance with the duty imposed by 37 C.F.R. § 1.56, and in accordance with 37 C.F.R. §§ 1.97 *et. seq*, the enclosed materials are brought to the attention of the Examiner for consideration in connection with the above-identified patent application. Applicants respectfully request that this Supplemental Information Disclosure Statement be entered and the documents listed on the attached Form 1449 be considered by the Examiner and made of record. Pursuant to the provisions of MPEP 609, Applicants further request that a copy of the 1449 form, initialled by the Examiner to indicate that all listed citations have been considered, be returned with the next official communication.

Applicants have included the fee of $240.00 under 37 C.F.R. §§ 1.97(c) and 1.17(p). Please charge any additional fees or credit any overpayment to Account No. 19-0743.

The Examiner is invited to contact Applicants' Representatives at the below-listed telephone number if there are any questions regarding this communication.

Respectfully submitted,

RONALD C. LUNDQUIST ET AL.

By their Representatives,

SCHWEGMAN, LUNDBERG, WOESSNER & KLUTH, P.A.
P.O. Box 2938
Minneapolis, MN 55402
(612) 373-6903

Date ___24 June 1998___    By _W. D. W._____
WDW:jsf
Warren D. Woessner
Reg. No. 30,440

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to Assistant Commissioner of Patents, Washington, D.C. 20231 on June 25, 1998.

___JONATHAN FERGUSON___    _____
Name                        Signature

0002658

Sheet 1 of 1

| Form 1449* | Atty. Docket No.: 950.001US4 | Serial No. 08/677,695 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | Applicants: Ronald C. Lundquist et al. | |
| | Filing Date: July 10, 1996 | Group: 1649 |

## U.S. PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Name | Class | Subclass | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | 5,278,325 | 01/11/1994 | Strop et al. | 554 | 12 | 07/30/90 |

## FOREIGN PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Country | Class | Subclass | Translation Yes / No |
|---|---|---|---|---|---|---|
| | 2,032,443 A1 | 12/17/1990 | Canada | C12N | 15/87 | |

## OTHER DOCUMENTS
(Including Author, Title, Date, Pertinent Pages, Etc.)

| **Examiner Initial | |
|---|---|
| | Armstrong, C.L., et al., "Genetic and Cytogenetic Variation in Plants Regenerated from Organogenic and Friable, Embryogenic Tissue Cultures in Maize", Crop Science, 28, 363-369 (1988) |
| | Dure III, L., et al., "Common Amino Acid Sequence Domains Among the LEA Proteins of Higher Plants", Plant Molecular Biology, 12, 475-486 (1989) |
| | Hong, B., et al., "Cloning and Characterization of cDNA Encoding a mRNA Rapidly-Induced by ABA in Barley Aleurone Layers", Plant Molecular Biology, 11, 495-506 (1988) |
| | Mundy, J., et al., "Abscisic Acid and Water-Stress Induce the Expression of a Novel Rice Gene", The EMBO Journal, 7, 2279-2286 (1988) |

| Examiner | Date Considered |
|---|---|
| | |

*Substitute Disclosure Statement Form (PTO-1449)

**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

S/N 08/677,695                                                    PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicants: | Ronald C. Lundquist et al. | Examiner: Gary Benzion |
| Serial No.: | 08/677,695 | Group Art Unit: 1649 |
| Filed: | July 10, 1996 | Docket: 950.001US4 |
| Title: | METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS | |

### SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

Assistant Commissioner for Patents
Washington, D.C. 20231

In compliance with the duty imposed by 37 C.F.R. § 1.56, and in accordance with 37 C.F.R. §§ 1.97 *et. seq.*, the enclosed materials are brought to the attention of the Examiner for consideration in connection with the above-identified patent application. Applicants respectfully request that this Supplemental Information Disclosure Statement be entered and the documents listed on the attached Form 1449 be considered by the Examiner and made of record. Pursuant to the provisions of MPEP 609, Applicants further request that a copy of the 1449 forms, initialled by the Examiner to indicate that all listed citations have been considered, be returned with the next official communication.

During discussions relating to his 1998 deposition, the undersigned attorney for Applicants, learned that the plants regenerated from transformed callus described in Example II did not transmit the native *Bt* gene to progeny.

Also during 1990-91, repeated application of the methodologies of this application yielded seven lines comprising the hpt gene. However, not every attempt to reproduce the results of Example I of this application was successful.

Applicants have included the fee of $240.00 under 37 C.F.R. §§ 1.97(c) and 1.17(p). Please charge any additional fees or credit any overpayment to Account No. 19-0743.

The Examiner is invited to contact Applicants' Representatives at the below-listed telephone number if there are any questions regarding this communication.

Respectfully submitted,

RONALD C. LUNDQUIST ET AL.

By their Representatives,

SCHWEGMAN, LUNDBERG, WOESSNER & KLUTH, P.A.
P.O. Box 2938
Minneapolis, MN 55402
(612) 373-6903

Date _____ 8·20-98 _____     By _____
WDW:jsf                               Warren D. Woessner
                                      Reg. No. 30,440

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to Assistant Commissioner of Patents, Washington, D.C. 20231 on August 20, 1998.

JONATHAN FERGUSON _____     Signature _____
Name

| Form 1449* | Atty. Docket No.: 950.001US4 | Serial No. 08/677,695 |
| --- | --- | --- |
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | Applicants: Ronald C. Lundquist et al. | |
| | Filing Date: July 10, 1996 | Group: 1649 |

### U.S. PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Name | Class | Subclass | Filing Date If Appropriate |
| --- | --- | --- | --- | --- | --- | --- |
| | 4,885,357 | 12/05/1989 | Larkins et al. | 530 | 373 | 06/12/85 |
| | 4,886,878 | 12/12/1989 | Larkins et al. | 536 | 26 | 06/12/85 |
| | 5,013,658 | 05/07/1991 | Dooner et al. | 435 | 172.3 | 05/13/88 |
| | 5,273,894 | 12/28/1993 | Strauch et al. | 435 | 129 | 08/21/87 |
| | 5,576,203 | 11/19/1996 | Hoffman | 435 | 172.3 | 08/29/86 |

### FOREIGN PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Country | Class | Subclass | Translation Yes \| No |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | |

### OTHER DOCUMENTS
(Including Author, Title, Date, Pertinent Pages, Etc.)

| **Examiner Initial | |
| --- | --- |
| | Abe, K., et al., "Molecular Cloning of a Cysteine Proteinase Inhibitor of Rice (Oryzacystatin)", The Journal of Biological Chemistry, 262, 16793-16797 (Dec. 15, 1987) |
| | Anderson, J.M., et al., "The Encoded Primary Sequence of a Rice Seed ADP-glucose Pyrophosphorylase Subunit and Its Homology to the Bacterial Enzyme", The Journal of Biological Chemistry, 264, 12238-12242 (July 25, 1989) |
| | Bol, J.F., et al., "Plant Pathogenesis-Related Proteins Induced by Virus Infection", Annu. Rev. Phytopathol., 28, 113-138 (1990) |
| | Depicker, A.G., et al., "A Negative Selection Scheme for Tobacco Protoplast-Derived Cells Expressing the T-DNA Gene 2", Plant Cell Reports, 7, 63-66 (1988) |
| | Domoney, C., et al., "Cloning and Characterization of Complementary DNA for Convicilin, a Major Seed Storage Protein in Pisum sativum L.", Planta, 159, 446-453 (1983) |
| | Dunn, G.M., et al., "Inheritance of Cyclic Hydroxamates in Zea mays L.", Can. J. Plant Sci., 61, 583-593 (July 1981) |
| | Gepts, P., et al., "Enhanced Available Methionine Concentration Associated with Higher Phaseolin Levels in Common Bean Seeds", Theor. Appl. Genet., 69, 47-53 (1984) |
| | Guerrero, F.D., et al., "Turgor-Responsive Gene Transcription and RNA Levels Increase Rapidly When Pea Shoots are Wilted. Sequence and Expression of Three Inducible Genes", Plant Mol. Biol., 15, 11-26 (1990) |
| | Hu, N.-T., et al., "Primary Structure of a Genomic Zein Sequence of Maize", The EMBO Journal, 1, 1337-1342 (1982) |

| Examiner | Date Considered |
| --- | --- |
| | |

*Substitute Disclosure Statement Form (PTO-1449)

**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

| Form 1449* | Atty. Docket No.: 950.001US4 | Serial No. 08/677,695 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | Applicants: Ronald C. Lundquist et al. | |
| | Filing Date: July 10, 1996 | Group: 1649 |

OTHER DOCUMENTS
(Including Author, Title, Date, Pertinent Pages, Etc.)

**Examiner Initial

Jaworski, J.G., et al., "A Cerulenin Insensitive Short Chain 3-Ketoacyl-Acyl Carrier Protein Synthase in *Spinacia oleracea* Leaves", Plant Physiol., 90, 41-44 (1989)

Josefsson, L.-G., et al., "Structure of a Gene Encoding the 1.7 S Storage Protein, Napin, from *Brassica napus*", The Journal of Biological Chemistry, 262, 12196-12201 (Sep. 5, 1987)

Kim, C.-S., et al., "Improvement of Nutritional Value and Functional Properties of Soybean Glycinin by Protein Engineering", Protein Engineering, 3, 725-731 (1990)

Malan, C., et al., "Correlation Between CuZn Superoxide Dismutase and Glutathione Reductase, and Environmental and Xenobiotic Stress Tolerance in Maize Inbreds", Plant Science, 69, 157-166 (1990)

Marks, M.D., et al., "Nucleotide Sequence Analysis of Zein mRNAs from Maize Endosperm", The Journal of Biological Chemistry, 260, 16451-16459 (Dec. 25, 1985)

Montoliu, L., et al., "A Tandem of α-Tubulin Genes Preferentially Expressed in Radicular Tissues from *Zea mays*", Plant Molecular Biology, 14, 1-15 (1989)

Mundy, J., et al., "Selective Expression of a Probable Amylase/Protease Inhibitor in Barley Aleurone Cells: Comparison to the Barley Amylase/Subtilisin Inhibitor", Planta, 169, 51-63 (1986)

O'Reilly, D.R., et al., "A Baculovirus Blocks Insect Molting by Producing Ecdysteroid UDP-Glucosyl Transferase", Science, 245, 1110-1112 (Sep. 8, 1989)

Smith, I.K., et al., "Properties and Functions of Glutathione Reductase in Plants", Physiol. Plant., 77, 449-456 (1989)

Viotti, A., et al., "Each Zein Gene Class Can Produce Polypeptides of Different Sizes", The EMBO Journal, 4, 1103-1110 (1985)

Werr, W., et al., "Structure of the Sucrose Synthase Gene on Chromosome 9 of *Zea mays* L.", The EMBO Journal, 4, 1373-1380 (1985)

Yenofsky, R.L., et al., "Isolation and Characterization of a Soybean (*Glycine max*) Lipoxygenase-3 Gene", Mol. Gen. Genet., 211, 215-222 (1988)

| Examiner | Date Considered |
|---|---|
| | |

*Substitute Disclosure Statement Form (PTO-1449)

**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conforma and not considered. Include copy of this form with next communication to applicant.



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, DC 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/877/43 | 8/710/96 | FRICKHEFF | R | GINW 950.001 |

|  |  |
|---|---|
| | **EXAMINER** |
| 10471 SAL:8 | MF21041.G |
| SCHWEGMAN LUNDBERG WOESSNER & KLUTH | **ART UNIT** / **PAPER NUMBER** |
| PO BOX 2938 | |
| MINNEAPOLIS MN 55440 | 1649    26 |

DATE MAILED: 08/28/98

*Oct. 28, 1998*
*Nov. 28, 1998*
*Feb. 28, 1999*

**CLIENT COPY**

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

Schwegman, Lundberg,
Woessner & Kluth, P.A.

**SEP 0 3 1998**

**RECEIVED**

PTO-90C (REV. 2/95)                                                     2-M

| | Application No. 08/677,695 | Applicant(s) Lundquist et al. |
|---|---|---|
| ***Office Action Summary*** | Examiner Gary Benzion, Ph.D. | Group Art Unit 1649 |

☐ Responsive to communication(s) filed on _____ .

☐ This action is **FINAL.**

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____*three*_____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *23-29, 41-45, 48-52, 55-59, and 68-74*_____ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *23-29, 41-45, 48-52, 55-59, and 68-74*_____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is  ☐ approved  ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All  ☐ Some*  ☐ None  of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____ .

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). *22 & 25*

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

0002664

*— SEE OFFICE ACTION ON THE FOLLOWING PAGES —*

Serial No. 08/677,695                                                         2 of 7
Art Unit  1649

### Status of the Application

Effective February 7, 1998, the Group and Art Unit location of your application in the PTO has changed. To aid in correlating any papers for this application, all further correspondence regarding this application should be directed to Group Art Unit 1649.

Claims 23-29, 41, 48 and 55 have been amended. Claims 23-29, 41-45, 48-52, 55-59 and 68-74 are pending.

### 35 U.S.C.§ 101, Statutory Basis for Doubling Patenting.

A rejection based on double patenting of the "same invention" type finds its support in the language of 35 U.S.C.§ 101 which states that "whoever invents or discovers any new and useful process ... may obtain a patent therefor ..." (Emphasis added). Thus, the term "same invention" in this context, means an invention drawn to identical subject matter. *Miller v. Eagle Mfg. Co.*, 151 U.S. 186 (1894); *In re Ockert*, 245 F.2d 467, 114 USPQ 330 (CCPA 1957); and *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970).

A statutory type (35 U.S.C.§ 101) double patenting rejection can be overcome by canceling or amending the conflicting claims so that they are no longer coextensive in scope. The filing of a terminal disclaimer <u>cannot</u> overcome a double patenting rejection based upon 35 U.S.C.§ 101.

Claim 26 is rejected under 35 U.S.C.§ 101 as claiming the same invention as that of claim 1 of prior U.S. patent No.5,538,880. This is a double patenting rejection.

Claim 27 is rejected under 35 U.S.C.§ 101 as claiming the same invention as that of claim 10 of prior U.S. patent No.5,538,880. This is a double patenting rejection.

### Obviousness-type Double Patenting

Claims 23-25, 28-29, 41, 48 and 55, newly amended, are rejected and claims 42-45, 49-52 and 56-59 remain rejected under the judicially created doctrine of obviousness-type double patenting over claims 1-10 of US Patent #5,538,877 and claims 1-18 of US Patent # 5538.880 for the reason of record applied to the rejections set forth in the previous Office Action.

Serial No. 08/677,695
Art Unit 1649

Applicants state that upon the indication of allowable subject matter they will consider filing a terminal disclaimer. Applicants' arguments have been carefully considered and are not deemed persuasive of error in the previous Office Action. In the event that all pending issues are disposed of, with the lone exception of one, a notice of allowability cannot be mailed if any substantive rejection has not been addressed by argument or amendment, to facilitate its removal.

*35 U.S.C.§ 112*

Claims 23-25, 28-29, 41, 48 and 55, newly amended, are rejected and claims 42-45, 49-52 and 56-59 remain rejected under 35 U.S.C.§ 112, first paragraph, because while being enabling for the expression of the selectable or screenable marker genes as exemplified by the *hpt* gene of bacterial origin and the reporter gene as exemplified by the use of luciferase but does not reasonably provide enablement for the expression of known genetic elements *per se* in the absence of the demonstration that the prior art clearly teach that the technology necessary to express said genetic elements was known and available to those of skill in the art, for the reasons of record as previously applied to claims 3-29, 41-45, 48-52 and 55-59 at pages 4-5 of the previous Office Action.

Applicants argue that the specification disclose, in great detail, the methodologies to make and maintain maize cell cultures, DNA delivery systems, selection of transformants, plants, seed and confirmation of success. Applicants' arguments have been carefully considered and are not deemed persuasive as they fail to address completely the basis of the rejection, and where addressed, fail to teach that the method disclosed in the specification would enable the broad scope of the claimed invention.

While it is well settled that a patent application need not teach each possible embodiment, it is manifestly true that enablement cannot be settled by reliance on that which has not been achieved in the art. That is, a specification is not considered enabled if it fails to disclose the specific starting materials or conditions for making the invention (*Genentech, Inc. v. Novo Nordisk*, 108 F3d. 1361, 42 USPQ2d 100. Fed. Cir. 1997). In the instant application the specification does not broadly teach what is needed to transfer, in a heritable way and express, all transgenic DNA into maize, nor does it provide specific guidance as to what genetic elements will lead to the successful transfer and expression in the claimed invention. In the instance of selectable or screenable marker genes, as exemplified by the *hpt* gene of bacterial origin and the reporter gene as exemplified by the use of luciferase, it is not seen how bacterial DNA successfully teaches what the person having skill in the art would need to practice the claimed

0002666

Serial No. 08/677,695
Art Unit 1649

invention in which the DNA of interest is human growth hormone via cleavable fusion, for example. In terms of the numerous declarations cited at pages 6-10 of applicants recent response, what these teaching evidence is that very specific combination of genetic elements are required to affect the method of transfer in each specific case, and it is not clear from that discourse, what unifying elements would enable the invention as claimed. For example, the expression of *Bt* endotoxin, *bar, and* the *ESPS* gene, were made using a truncated structural gene or that which was optimized for maize specific codons. What the person having skill in the art would glean from this is that each instance is not successful due to a generic disclosure but requires precise manipulations of exact starting material to make the claimed invention. Accordingly it is not clear from this description that the instant inventors were in possession of the an invention which was enabled by the specification. See *University of California v. Eli Lilly*, 43 USPQ2d 1398 (Fed. Cir. 1997).

Claims 23-25, 28-29, 41, 48 and 55, newly amended, are rejected and claims 42-45, 49-52 and 56-59 remain rejected under 35 U.S.C § 103 as being unpatentable over Sanford in view of Klein et al., Armstrong et al., Adang et al., DeBlock et al. and Poehlman for the reasons of record as set forth at pages 7-8 of the previous Office Action as applied to claims 23-29, 41-45, 48-52 and 55-59.

Applicants argue that Sanford et al. and Wang et al. do not disclose transgenic maize plants, Klein is argued to not teach stable transformation nor regeneration into plants or the use of callus for transformation. Armstrong et al. is argued to be deficient in not teaching stable transformation, Adang et al is argued to be deficient in not teaching biolistics nor that maize cells are capable of regeneration of fertile transgenic plants that transmit the DNA of interest. Adang et al. is argued as failing to teach the claimed invention by itself or in combination with the other art. DeBlock is argued as failing to teach the invention either alone or in combination. Poehlman et la. Is argued as irrelevant to the claimed invention.

Applicants' arguments have been carefully considered and are not deemed persuasive. Applicants' various arguments pertaining to the fact that individual references do not teach or directly suggest the claimed invention are noted. It is pointed out that these references were employed in a rejection under section 103, not section 102, and that taken together by one of ordinary skill in the art, at the time the claimed invention was made, they would collectively have suggested the claimed invention to one of ordinary skill in the art familiar with them. The individual references themselves are not required to make a suggestion for the combination to be obvious. As stated in *In re* Rosselet 347 F.2d 847, 146 USPQ 183 (CCPA 1965), "the test of obviousness is not express suggestion of the claimed invention in

Serial No. 08/677,695
Art Unit  1649

any or all of the references, but rather what the references taken collectively would suggest to those of ordinary skill in the art presumed to be familiar with them." For the purpose of combining references, those references need not explicitly suggest combining teachings, much less specific references, *In re Nilssen*, 851 F 2d 1401, 7 USPQ2d 1500 (fed. Cir 1988) and  In re Dillon (CA FC)· 16 USPQ2d 1897 (Fed. Cir. EN BANC 1990) which disclose that a *prima facie* case of obviousness does not require that the prior art references necessarily recognize or even suggest the problem which applicant attempted to solve.

    In terms of the Phillips declaration, it is noted that the claims, in their broadest reading, do not require the use of friable Type II embryogenic callus. Accordingly, the limitation, "… wherein said DNA is transmitted through a complete sexual cycle …" is not read to require that the DNA be sexually transmissible, as argued, but merely that it be transmitted through a complete sexual cycle by any means available.

    Claims 68-74, remain rejected under 35 U.S.C § 103 as being unpatentable over Sanford in view of Klein et al., Armstrong et al., Adang et al., DeBlock et al. and Poehlman as applied to claims 23-29, 41-45, 48-52 and 55-59 above, and further in view of Murray et al. (US Patent # 5,371,003, of record) and Fillatti et al. (US Patent # 5,565,347.)

    Applicants argue that Murray et al. does not teach the use of microprojectile bombardment. Applicants' arguments have been carefully considered and are not deemed persuasive. Murray was not cited to teach that which is objected to but to teach the introduction of DNA into plant material using an abiotic system of transformation in which selection of transgenic cells and plants is based on the detection of the expression of antibiotic resistance markers. Furthermore, even if Murray et al. were cited as argued "microprojectile bombardment" is not a claim limitation, and while applicants may argue that Murray is not enabled for what is claimed therein, it is an issued US patent is considered to be valid. Applicants' arguments are understood to indicate that the process of the Murray et al. patent <u>cannot</u> produce a transformed *Zea mays* plant. Such a presumption cannot be made in the absence of a consideration of 35 U.S.C § 101. The **Supreme Court** in *Brenner, Comr. Pats. V. Manson*, 148 USPQ 689 (US SupCt 1966) clearly stated that under section 101 one may only patent that which is useful, stating:

> Our starting point is the proposition, neither disputed nor disputable, that one may patent only that which is "useful." In Graham v. John Deere Co., 382 U.S. —, 148 USPQ 459 , we have reviewed the history of the requisites of patentability, and it need not be repeated here. Suffice it

Serial No. 08/677,695
Art Unit 1649

to say that the concept of utility has maintained a central place in all of our patent legislation, beginning with the first patent law in 1790 and culminating in the present law's provision that

> "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

As is so often the case, however, a simple, everyday word can be pregnant with ambiguity when applied to the facts of life. That this is so is demonstrated by the present conflict between the Patent Office and the CCPA over how the test is to be applied to a chemical process which yields an already known product whose utility-other than as a possible object of scientific inquiry-has not yet been evidenced. It was not long ago that agency and court seemed of one mind on the question. In application of Bremner, 37 CCPA 1032, 1034, 182 F.2d 216, 217, 86 USPQ 74, 75, the court affirmed rejection by the Patent Office of both process and product claims. It noted that "no use for the products claimed to be developed by the processes had been shown in the specification." It held that "It was never intended that a patent be granted upon a product, or a process producing a product, unless such product be useful." Nor was this new doctrine in the court. See Thomas v. Michael, 35 CCPA 1036, 1038-1039, 166 F.2d 944, 946-947, 77 USPQ 216, 217-218.

As is manifestly evident from the above, the claimed invention of Murray et al. must have utility to issue as a patent so that it meets the requirements of 35 U.S.C.§ 101. Therefore, the patent must be enabled to produce the product set forth in the claims.

Fillatti et al., as in the case with Murray et al. was cited to teach the use of antibiotic selection and not the method of transformation.

*Summary*

No claim is allowed

Applicants' amendment necessitated the new grounds of rejection. Accordingly, THIS ACTION IS MADE FINAL. See MPEP 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE

Serial No. 08/677,695
Art Unit 1649

ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE
LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION

### *Inquiries*

Any inquiry concerning this or earlier communication from the examiner should be directed to
Gary Benzion, Ph.D. whose telephone number is (703) 308-1119. The examiner can normally be reached
on Monday-Friday from 8 AM to 4:30 PM. If attempts to reach the examiner by telephone are
unsuccessful, the examiner's supervisor, Douglas W. Robinson can be reach on (703)-308-4618. Any
inquiry of a general nature or relating to the status of this application should be directed to the Group
receptionist whose telephone number is (703) 308-0196. Papers related to this application may be
submitted to Group 1600 by facsimile transmission. Papers should be faxed to Group 1600 via the PTO
Fax Center located in Crystal Mall 1. The faxing of such papers must conform with the notice published
in the Official Gazette, 1096 OG 30 (November 15, 1989).

Benzion
08/27/98

GARY BENZION, Ph.D.
PRIMARY EXAMINER
GROUP ART/UNIT 1649

**0002670**

JUN 2 9 1998

Sheet 1 of 1

Form 1449*

INFORMATION DISCLOSURE STATEMENT
BY APPLICANT
(Use several sheets if necessary)

| Atty. Docket No.: 950.001US4 | Serial No. 08/677,695 |
| Applicants: Ronald C. Lundquist et al. | |
| Filing Date: July 10, 1996 | Group: 1649 |

### U.S. PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Name | Class | Subclass | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | 5,278,325 | 01/11/1994 | Strop et al. | 554 | 12 | 07/30/90 |

### FOREIGN PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Country | Class | Subclass | Translation Yes \| No |
|---|---|---|---|---|---|---|
| | 2,032,443 A1 | 12/17/1990 | Canada | C12N | 15/87 | |

### OTHER DOCUMENTS
(Including Author, Title, Date, Pertinent Pages, Etc.)

| **Examiner Initial | |
|---|---|
| | Armstrong, C.L., et al., "Genetic and Cytogenetic Variation in Plants Regenerated from Organogenic and Friable, Embryogenic Tissue Cultures in Maize", _Crop Science, 28_, 363-369 (1988) |
| | Dure III, L., et al., "Common Amino Acid Sequence Domains Among the LEA Proteins of Higher Plants", _Plant Molecular Biology, 12_, 475-486 (1989) |
| | Hong, B., et al., "Cloning and Characterization of cDNA Encoding a mRNA Rapidly-Induced by ABA in Barley Aleurone Layers", _Plant Molecular Biology, 11_, 495-506 (1988) |
| | Mundy, J., et al., "Abscisic Acid and Water-Stress Induce the Expression of a Novel Rice Gene", _The EMBO Journal, 7_, 2279-2286 (1988) |

RECEIVED

JUL 0 8 1998

| Examiner | | Date Considered 8/27/98 |
|---|---|---|

*Substitute Disclosure Statement Form (PTO-1449)

**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

APR - 3 1998

Sheet 1 of 1

| Form 1449* | Atty. Docket No.: 950.001US4 | Serial No. 08/677,695 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | Applicants: Ronald C. Lundquist et al. | |
| | Filing Date: July 10, 1996 | Group: 1649 |

## U.S. PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Name | Class | Subclass | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | 5,164,310 | 11/17/1992 | Smith et al. | 435 | 172.3 | 06/01/88 |
| | 5,215,912 | 06/01/1993 | Hoffman | 435 | 240.4 | 08/29/86 |
| | 5,276,268 | 01/04/1994 | Strauch et al. | 800 | 205 | 08/21/87 |

## FOREIGN PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Country | Class | Subclass | Translation Yes / No |
|---|---|---|---|---|---|---|
| | 0 189 707 A2 | 08/06/1986 | European | C12N | 15/00 | |

## OTHER DOCUMENTS
(Including Author, Title, Date, Pertinent Pages, Etc.)

| **Examiner Initial | |
|---|---|
| | Flavell, R., et al., "Prospects for Transforming Monocot Crop Plants", Nature, 307, 108-109 (Jan. 12, 1984) |
| | Goodman, R.M., et al., "Gene Transfer in Crop Improvement", Science, 236, 48-54 (Apr. 3, 1987) |
| | Paszkowski, J., et al., "Direct Gene Transfer to Plants", The EMBO Journal, 3, 2717-2722 (1984) |
| | Potrykus, I., et al., "Direct Gene Transfer to Cells of a Graminaceous Monocot", Mol. Gen. Genet., 199, 183-188 (1985) |

Examiner _____    | Date Considered 8/27/98

*Substitute Disclosure Statement Form (PTO-1449)

**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

## EXPEDITED PROCEDURE - EXAMINING GROUP 1649

<u>S/N 08/677,695</u>                                                            <u>PATENT</u>

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant: | Ronald C. Lundquist et al. | Examiner: Gary Benzion |
| Serial No.: | 08/677,695 | Group Art Unit: 1649 |
| Filed: | July 10, 1996 | Docket: 950.001US4 |
| Title: | METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS | |

### RESPONSE UNDER 37 C.F.R. § 1.116

Box AF
Assistant Commissioner for Patents
Washington, D.C. 20231

In response to the final Office Action mailed August 28, 1998, please amend the application as follows:

### IN THE CLAIMS

Cancel claims 26-27.

In claim 23, lines 4-5, delete "transmitted through a complete sexual cycle of said transgenic plant to" and insert --heritable to yield--.

In claim 28, line 1, delete "27" and insert --23--.

In claim 29, line 1, delete "27 or".

In claim 41, lines 6-7, delete "transmitted through a complete sexual cycle of said transgenic plant" and insert --heritable--.

In claim 48, lines 5-6, delete "transmitted through a complete sexual cycle of said transgenic plant to" and insert --heritable to yield--.

### REMARKS

Reconsideration and withdrawal of the rejection of the pending claims is respectfully requested.

Claims 26-27 having been canceled and claims 23, 28-29, 41 and 48 having been amended, the claims pending in the above-identified application are claims 23-25, 28-29, 41-45, 48-52, 55-59 and 68-74.

The amendment to claims 23, 41 and 48 to recite that the exogenous DNA is heritable to yield transgenic progeny is supported by pages 5 and 7 of the specification and is made to

address the Examiner's concerns at page 5 of the Office Action, that the claims do not recite that the DNA is sexually transmissible.

The cancellation of claims 26-27 moots the § 101 double patenting rejection as set forth at page 2 of the Office Action.

At pages 2-3, the Examiner rejected claims 23-25, 28-29, 41-45, 48-52 and 56-59 under the doctrine of obviousness-type double patenting over the claims of commonly assigned U.S. patent Nos. 5,538,877 and 5,538,880. Upon indication of otherwise allowable subject matter, Applicants will consider filing a terminal disclaimer to overcome this rejection. Earlier filing of a terminal disclaimer would not be appropriate, since the otherwise allowable claims, as amended, might not be subject to this rejection.

At pages 3-4 of the Office Action, the Examiner rejected claims 23-25, 28-29, 41-45, 48-52 and 55-59, under 35 U.S.C. § 112, first paragraph. This rejection is respectfully traversed.

As set forth at page 3, para. 2 of the Office Action, the first-stated basis for the rejection is that the specification "does not reasonably provide enablement for the expression of known genetic elements *per se* in the absence of demonstration that the prior art clearly [teaches] that the technology necessary to express said genetic elements was known and available to those of skill in the art...." [emphasis added]. To begin with, this rejection is facially inapplicable to claims 23-25 and 28 which do not require expression of the DNA employed for transformation.

The Examiner appears to agree that the specification discloses "in great detail, the methodologies to make and maintain maize cell culture, DNA delivery systems, selection of transformants, plants, seed and confirmation of success." Therefore, the thrust of the Examiner's rejection is that the specification fails to disclose which DNA constructs would be integrated and expressed once they were introduced into maize plants. This is indicated by the statement that "a specification is not considered enabled if it fails to disclose the specific starting materials or conditions for making the invention," and that success in expression "requires precise manipulations of exact starting material to [practice the claimed method]."

However, the Examiner is requested to note that of the three examples given to evidence the need to alter genes to obtain expression, neither the bar gene nor the ESPS gene were truncated or codon optimized and the Bt gene need not be truncated to obtain expression.

Although the Examiner has cited U.C. v. Lilly, 43 USPQ2d 1398 (Fed. Cir. 1997) as supporting his contention that the inventors were not in possession of "an invention which was

enabled by the specification," this case was decided on the basis of the written description requirement of § 112(1), not on the basis of enablement, which was found to be present. Furthermore, the holding of U.C. v. Lilly related to compositions of matter, not to method claims, which necessarily recite manipulative elements, and do not claim structural components. Applicants know of no case law holding that an originally filed method claim fails to meet the written description requirement due to some failure in the teachings of the specification.

In Genentech Inc. v. Novo Nordisk, the method claim asserted by Genentech was held to be nonenabled due to a total absence of information relating to a manipulative step and the starting material to which it was to be applied: "For example, no reaction conditions for the steps needed to produce hGH are provided; no description of any specific cleavable conjugate protein appears" [emphasis added]. In the present situation, a working example is provided, along with a description of at least three specific vectors designed to introduce foreign DNA into maize.

The Examiner also argues that "the specification does not broadly teach what is needed to transfer, in a heritable way and express, all transgenic DNA into maize, nor does it provide specific guidance as to what genetic elements will lead to the successful transfer and expression in the claimed [method]" [emphasis added]. The first of these two assertions is contradicted by the Examiner's recognition that a patent specification need "not teach each possible embodiment." With respect to the second assertion, the Examiner is requested to consider that Applicants specifically disclosed almost every DNA construct that was known to express in non-maize plant cells, tissue or plants as of the filing date, by citing the fifty page Weising et al. review (C.K. Weising et al., "Foreign Genes in Plants: Transfer, Structure, Expression and Applications," Ann. Rev. Genet., 22, 421 (1988)). As concluded by the authors:

> To summarize, the expression of any desirable gene in plants, even if derived from another kingdom, should be possible in [the] future by creating an appropriate construct of cDNA and functional control regions. Whether or not the resulting transcripts will be translated to yield stable proteins will probably depend on the particular gene under study.

To address a specific point raised by the Examiner, the desirability of truncated genes is disclosed by Weising et al. at page 459. Codon modification was known to the art by 1989. See, E. Murray et al., Nucl. Acids Res., 17, 477 (1989). As the Examiner is well aware, a specification need not include, and preferably omits, that which is known to the art. Furthermore, Applicants can rely upon prior art which contains other information needed to

render the specification enabling. Spectra-Physics, Inc. v. Coherent Inc., 3 USPQ2d 1737 (Fed. Cir. 1987). However, by citing Weising et al. and many other prior art references, including those relied upon by the Examiner to support his obviousness rejection, Applicants adequately informed the art of DNA constructs that could be employed in the present method. The fact that it would be necessary to carry out multiple transformation experiments and extensive screening to determine which constructs would integrate, be heritable and/or express protein as to impart a phenotypic change is not fatal to enablement.

The fact that the outcome of such a transformation/screening program is unpredictable for any given vector is precisely why a screening program is carried out. The Examiner simply cannot reasonably contend that a screening program to locate transformants with target phenotypic properties would not be carried out by the art because the results cannot be predicted in advance.

In fact, the Federal Circuit has explicitly recognized that the need, and methodologies required, to carry out extensive synthesis and screening programs to locate bioactive molecules do not constitute undue experimentation. In re Wands, 8 USPQ2d 1400, 1406-1407 (Fed. Cir. 1988), the Court stated:

> The nature of monoclonal antibody technology is that it involves screening hybridomas to determine which ones secrete antibody with desired characteristics. Practitioners of this art are prepared to screen negative hybridomas in order to find one that makes the desired antibody.

Likewise, practitioners in the art related to the present application would be well-equipped to prepare and screen putative transformed maize cells and plants to identify target transgenic material. See also, Hybritech Inc. v. Monoclonal Antibodies Inc., 231 USPQ 81, 84 (Fed. Cir. 1986) (evidence that screening methods used to identify characteristics [of monoclonal antibodies] were available to art convincing of enablement). Thus, the fact that a given method claim envisions production of a large number of cells or plants which required screening is not dispositive of the enablement issue, particularly in an art area in which the level of skill is very high and in which screening large numbers of cells and plants is standard practice.

Finally, the Examiner is urged to consider that it is not supportable to dismiss the declaratory evidence on the basis that the claimed method was practiced successfully using constructs that were prepared after the filing date of the application. The declaratory evidence is not submitted solely to evidence that prior art DNA constructs could be introduced and expressed in maize, but rather to evidence that the methodologies disclosed in the specification would

enable transformation of a wide variety of DNA constructs, which would be expressed to yield a variety of useful phenotypes. Any chemical process claim can only be evaluated in terms of its ability to function with the starting materials available as of the effective filing date of the claim. It is simply a Catch 22 for the Examiner to argue that a process claim is overly broad because additional starting materials were synthesized and found to work that were not contemplated by the art as of the filing date. This is why examiners are directed not to use post-filing date references to demonstrate that an application is nonenabling. In re Gunn, 190 USPQ 202 (CCPA 1976); In re Hogan, 194 USPQ 527 (CCPA 1977); MPEP 2164.05(a). Conversely, a claim can encompass embodiments of the invention that are invented after the effective filing date of the claim, even if those embodiments may themselves be patentable. See Atlas Powder Co. v. E. I. DuPont DeNemours & Co., 224 USPQ 409 (Fed. Cir. 1985). Under the Examiner's reasoning, method claims enabled as of their filing date would become nonenabled as the art progressed, not a result contemplated by the patent statutes.

### Rejection under 35 U.S.C. § 103

Claims 23-25, 28-29, 41-45, 48-52 and 55-59 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Sanford (Physiol. Plant., 79, 206-209 (1990)) in view of Klein et al. (Bio/Technol., 6, 559-563 (1988)), Armstrong et al. (Planta, 164, 207-214 (1985)), Adang et al. (U.S. Patent No. 5,380,318), De Block et al. (EMBO J., 6, 2513-2518 (1987)) and Poehlman (In: Breeding Field Crops, 3rd Edition, AVI Publishing Co., Inc., Westport, CT, p. 203-206 (1986)).

The Examiner cites Sanford (Physiologia Plantarum, 79, 206-209 1990) as teaching the method of microprojectile bombardment to deliver DNA to plant cells. However, this review, published in June, 1990, simply reflects the art prior to the first report of the successful production of fertile transgenic maize by Gordon-Kamm et al. in July, 1990 (The Plant Cell, 2, 603-618 (July, 1990)). The Examiner is respectfully requested to consider that the Sanford review does not disclose transgenic maize plants prepared by bombardment. At page 207, col. 1, Sanford states that "with further development of the [bombardment] technology, any tissue of any plant species might be transformable by the biolistic process" (emphasis added). Sanford does not provide any specific techniques relating to tissue for transformation, selection or segmentation. This is no more than an invitation to conduct further experiments, and does not amount to a disclosure that maize cells can be transformed, selected, and subsequently regenerated to yield fertile transgenic plants.

With respect to Klein et al. (Bio/Technol., 6, 559-563 (1988)), the Examiner states that page 562, col. 2, discloses that the "stable transformation of maize callus via the disclosed technique is evident," and concludes-that Klein et al. "clearly teach the application of the method of bombarding maize scutellum and/or suspension cells to transform them." However, the Examiner is urged to consider that he is reading Klein et al. to "teach" much more than the art worker could possibly derive from this limited and specific disclosure.

To begin with, Klein et al. do not disclose or confirm that the cultured BMS maize cells or the scutellum that were bombarded were found to be stably transformed with the exogenous DNA. Klein et al. repeatedly refer to transient expression of the gene in both the cultured cells and scutellum (see, for instance, Figure 2 and Figure 3), and conclude that "[bombardment] may be useful for the stable transformation of monocot species" (emphasis added).

Moreover, Klein et al. do not disclose what type of tissue was used to produce the "cultures of maize" that were "stably transformed" in the "manuscript in preparation" much less that these cultures could be regenerated into fertile plants. The fact that both the cited Klein et al. paper and the later Klein et al. Plant Physiol. paper (91, 440 (1989)) use BMS cultures as starting materials is evidence that Klein et al. in fact transformed a tissue that could not be regenerated into plants. As the Examiner is well aware, BMS had been transformed by other methodologies as early as 1986. M.E. Fromm et al. Nature, 319, 791 (1986).

There is nothing in the Klein et al. paper that would "teach" the art worker how to prepare stably transformed maize cells, or how to regenerate the cells to yield a fertile maize plant that can sexually transmit the introduced DNA to subsequent generations. The Klein et al. paper is no more than an invitation to conduct further undefined experiments, and does not amount to a suggestion of Applicants' method, either considered alone, or in combination with any of the cited art.

The Examiner cites Armstrong et al. (Planta, 164, 207-214 (1985)) as disclosing the regeneration of maize from friable embryogenic callus of both Type I and Type II tissue cultures of inbred and hybrid cultures. However, Armstrong et al. do not suggest that such cultures would remain viable after bombardment and selection, or that the cultures would retain the ability to regenerate fertile maize plants containing the foreign DNA or to sexually transmit the foreign DNA to progeny plants. Thus, Armstrong et al. do not suggest Applicants' method, either alone or in combination with any of the cited art.

The Examiner cites Adang et al. as teaching the modification and use of Bt endotoxin to

produce plants that are insect resistant. Adang et al. suggest that both dicots and monocots can be transformed. The methods disclosed by Adang et al. to transform plants consist of direct DNA uptake, electroporation, microinjection, and T-DNA mediated transformation.

There is no suggestion in Adang et al. that maize cells can be transformed by microprojectile bombardment, or that fertile transgenic maize capable of transmitting the foreign DNA to progeny plants can be regenerated from bombarded cells. Thus, Adang et al., alone or in combination with the other cited art, fails to suggest the claimed method.

De Block et al. disclose the introduction of the *bar* gene into the dicots tobacco, tomato and potato by *Agrobacterium*-mediated transformation. There is no suggestion in De Block et al. to transform maize by microprojectile bombardment, or to regenerate fertile transgenic maize plants capable of transmitting the foreign DNA to progeny plants. In fact, De Block does not suggest any utility for bar-modified corn, i.e., that corn is even susceptible to phosphinothricin. Thus, De Block et al., alone or in combination with the other cited art fails to yield the claimed method.

The Examiner cites Poehlman as disclosing that backcross breeding can be used to add a gene encoding a superior characteristic to a different variety. Of course, Applicants do not claim to have invented these techniques. However, the availability of such techniques does not remedy the deficiencies in the teachings of the art. There is no suggestion in Poehlman that maize can be transformed by microprojectile bombardment, or that fertile transgenic maize capable of transmitting the foreign DNA to progeny plants can be regenerated from bombarded cells. In fact, until a transgene is successfully moved into inbred and hybrid lines, it is not predictable that these "conventional methods" would accomplish these results.

The combination of Sanford, Klein et al., Armstrong et al., Adang et al., De Block et al., and Poehlman et al. as applied to claims 23-29, 41-45, 48-52 and 55-59 does not teach or suggest the claimed method. Consequently, the Examiner has not established a *prima facie* case of obviousness, and reconsideration and withdrawal of the 35 U.S.C. § 103(a) rejection of claims 23-29, 41-45, 48-52 and 55-59 is respectfully requested.

Although the Examiner has argued that Applicants have not considered the references in combination, the Examiner has not presented reasons that the art worker would logically combine them. For example, what would lead the art worker to extract the constructs taught by Adang et al. or De Block et al. as usable with transformation methods such as *A. tumefaciens*-mediated transformation, and expect to successfully transform maize with them using

bombardment? Even assuming, *arguendo*, that the cited art renders it *prima facie* obvious to proceed along the lines arguably suggested by Sanford and Klein et al. to bombard maize Type II callus with DNA, it is respectfully submitted that it would still be unexpected that fertile transgenic maize plants would be obtained by this route. As evidence of the reasonable expectations of the art with respect to these teachings, the Examiner is requested to consider paragraph 14 of the Rule 132 declaration executed by Professor Ronald J. Phillips on July 20, 1992, in commonly-assigned application Serial No. 07/508,045, filed April 11, 1990. In his declaration, Professor Phillips contrasts the regenerability of friable Type II embryogenic maize callus, to characteristics that would render its transformation unpredictable, namely its fragility and the uncertainty with respect to its ability to stably integrate foreign DNA or to regenerate plants. Paragraph 14, which summarizes his conclusions, is reproduced below:

> 14.    It might well be obvious for a researcher in this area to try to transform a maize tissue, cultured cells or protoplasts that had a history of "regenerability" in the untransformed state. However, the "state of the art" in mid-1989 to early 1990 would not permit one of ordinary skill in the art to reasonably predict that the three pieces of the puzzle of maize transformation, namely stable transformation accompanied by subsequent cell division, regenerability, and fertility/transmission, would come together via any available methodology employing any available maize starting material, including scutellum, much less that the biolistic transformation of friable embryonic Type II callus would be the path to success.

In *In re Wood*, 202 USPQ 171, 174 (CCPA 1979), the court emphasized that "[o]f course, an evaluation of the claimed invention performed by an impartial, qualified third party is a valuable indication of the nonobviousness of an invention." The Examiner is requested to consider that Professor Phillips' declaration is based on facts derived from his extensive experience with the *in vitro* cell/tissue culture of maize, and that the declaration is sufficient to rebut any *prima facie* case of obviousness established by the cited art. The Examiner is also requested to consider that the declaration is particularly effective in view of the remoteness of the cited art from the claimed invention; there are no experiments disclosed in the cited art relating to obtaining stably transformed dividing cells from any transformed maize tissue source, following the use of microprojectile bombardment to introduce the foreign DNA, and then regenerating fertile plants from the transformed cells. A copy of the declaration, as made of record in parent application Ser. No. 07/974,379 is enclosed. Therefore, withdrawal of the obviousness rejection of claims 23-29, 41-45, 48-52 and 55-59 is appropriate and is respectfully requested.

Claims 68-74 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Sanford (Physiol. Plant., 79, 206-209 (1990)) in view of Klein et al. (Bio/Technol., 6, 559-563 (1988)) and Armstrong et al. (Planta, 164, 207-214 (1985)), Adang et al. (U.S. Patent No. 5,380,381), De Block et al. (EMBO J., 6, 2513-2518 (1987)) and Poehlman (In: Breeding Field Crops, 3rd Edition, AVI Publishing Co., Inc., Westport, CT, p. 203-206 (1986)) as applied to claims 23-29, 41-45, 48-52 and 55-59 above and further in view of Murry et al. (U.S. Patent 5,371,003) and Fillatti et al. (U.S. Patent 5,565,347). This rejection respectfully traversed.

The Examiner asserts Murry et al. disclose a method for the introduction of DNA into plant "material" in which selection of transgenic cells and plants is based on the detection of expressed transgenic antibiotic resistance markers. Murry et al. claim a method for transforming non-protoplastic plant tissue and cells which involves the horizontal electrophoresis of DNA into plant tissue and cells. Murry et al. also claim a method for producing transformed fertile plants, including dicots, monocots, and corn, using this method of transformation.

To begin with, Murry et al. do not disclose a transformation process based on microprojectile bombardment, as recited by all of the independent claims, e.g., claim 23. The Examiner's comment that the microprojectile bombardment is not a claim limitation is not understood. This term is shorthand for the claim element "bombarding . . . cells with DNA-coated microprojectiles in the pending claims." Thus, Murry et al. is not relevant to the patentability of the present process claims, except insofar as it teaches antibiotic resistance markers, which Applicants do not claim to have invented.

The Examiner asserts Fillatti et al. disclose a method to obtain transgenic plants in which the selection of transgenic cells and plants based on the detection of expressed transgenic antibiotic resistance markers.

Fillatti et al. disclose the method of transforming "plants employed for commercial purposes and subject to cultivation and management . . . . including vegetables" by co-cultivating cotyledon tissue with *Agrobacterium* (col. 3, lines 2-3). Transformed cells are selected on in media containing kanamycin. However, while Fillatti et al. suggest the disclosed method will transform plants employed for commercial purposes, the specification provides examples of and claims directed to transforming only tomato cells.

There is no suggestion in Murry et al. or Fillatti et al. that maize cells can or should be transformed by microprojectile bombardment or selected as taught therein. Moreover, neither Murry et al. or Fillatti et al. suggest that fertile transgenic maize capable of transmitting the

foreign DNA to progeny plants can be regenerated from bombarded cells. Furthermore, none of the methods disclosed by Murry et al. and Fillatti et al. are capable of transforming maize so that fertile transgenic maize are regenerated that are capable of transmitting the foreign DNA to progeny plants. Thus, Murry et al. and Fillatti et al., either alone or in combination fail to yield the claimed method.

Applicants respectfully submit that the Examiner has not established a *prima facie* case of obviousness. As discussed above, neither Sanford, Klein et al., Armstrong et al., Adang et al., De Block et al., or Poehlman teach or suggest the method of claims 23-29, 41-45, 48-52 and 55-59. Furthermore, Murry et al. and Fillatti et al. do not cure the deficiencies of Sanford, Klein et al., Armstrong et al., Adang et al., De Block et al., or Poehlman. Thus, the claimed method as recited in claims 68-74 is not clearly *prima facie* obvious in view of Sanford, Klein et al., Armstrong et al., Adang et al., De Block et al., or Poehlman further in view of Murry et al. and Fillatti et al.

Finally, the Examiner is requested to consider that the nonobviousness of the claimed method is evidenced by the discussion in the enclosed Rule 132 declaration by Professor David A. Somers. The undersigned attorney for applicants verifies that this is a true copy of the declaration filed in commonly-assigned U.S. patent application Ser. No. 07/508,045, and made of record in parent application Ser. No. 07/974,379, filed November 10, 1992.

In the declaration, Professor Somers reviews documentary evidence of long-felt need, failure of others, skepticism relating to the route use by Applicants and recognition by the art of the significance of Applicants' success. The cited literature is of record.

It is respectfully requested that the Examiner should proceed to weigh the evidence of secondary considerations in combination with the other technical evidence of nonobviousness presented herein by Applicants and by Professor Phillips, in order to resolve the obviousness question.

In view of the totality of the evidence, it is respectfully submitted that the amended claims are in condition for allowance, and notification to that effect is earnestly solicited.

Reconsideration and withdrawal of the 35 U.S.C. § 103(a) rejection of claims 68-74 as being unpatentable over the cited art is respectfully requested.

## CONCLUSION

It is respectfully submitted that the amended claims are in condition for allowance and allowance of the claims is earnestly solicited.

The Examiner is invited to telephone the below-signed attorney at 612-373-6903 to discuss any questions which may remain with respect to the present application.

Respectfully submitted,

RONALD C. LUNDQUIST ET AL.

By their Representatives,

SCHWEGMAN, LUNDBERG, WOESSNER & KLUTH, P.A.
P.O. Box 2938
Minneapolis, MN  55402
(612) 373-6903

Date ____19 Nov 1998____    By _____
                                Warren D. Woessner
                                Reg. No. 30,440

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to Assistant Commissioner of Patents, Washington, D.C. 20231 on November 19, 1998.

____Jane Brockschunk____    _____
Name                        Signature

0002683

# 24
attach



PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:   Ronald C. Lundquist et al.     Examiner:  G. Benzion

Serial No.:   07/508,045                      Art Unit:  1804

Filed:        April 11, 1990                  M&G:  9696.3-US-01

For:          FERTILE TRANSGENIC CORN PLANTS

Hon. Commissioner of Patents
   and Trademarks
Washington, D.C.   20231

## DECLARATION UNDER 37 CFR §1.132

Sir:

I, Ronald L. Phillips, declare and say as follows:

1.  I received my Ph.D. in genetics from the University of Minnesota, St. Paul, in 1966.  Following postdoctoral work at Cornell University in genetics, I became an Assistant Professor in the Agronomy and Plant Genetics Department at the University of Minnesota in 1968, where I am currently a Professor, holding appointments in the Graduate School in Genetics, Plant Breeding and Agronomy.  I am a fellow of the American Society of Agronomy, the Crop Science Society of America and the American Association for the Advancement of Science.  I have authored or co-authored over fifty papers, primarily in the area of plant genetics as applied to plant improvement, including the chapter by Phillips et al., "Cell/Tissue Culture and In Vitro Manipulation" in Corn and Corn Improvement, G.F. Sprague et al., eds., Amer. Society of

#24
(aff.)

Agronomy et al., pubs., Madison, WI (1988).  In 1991, I was
elected to the National Academy of Sciences.

2.  I have read, and am thoroughly familiar with, the
above-identified application, with the Office Action mailed
March 5, 1992 including the art cited against the claims, with
the amendment filed herewith, and make this Declaration in
support of the pending claims of Serial No. 07/508,045.  I have
no direct or indirect financial interest in the application.

3.  At page 3 of the Office Action, the Examiner
rejected the claims as obvious over a combination of four papers,
T.M. Klein et al., Bio/Technology, 6, 559 (May 1988) in combina-
tion with D.E. McCabe et al., Bio/Technology, 6, 923 (August
1988), the Phillips et al. review article cited above, and Rhodes
et al., Science, 240, 204 (1988).  However, it is my opinion that
a worker in the area of cereal transformation generally, and
maize transformation specifically, in possession of these papers,
would not be able to predict the success achieved by Applicants
following their bombardment of cultured embryogenic Type II maize
callus.

4.  The primary experimental work relied on by the
Examiner is the disclosure in Klein et al. of the bombardment of
immature maize embryos with particles coated with GUS-encoding
plasmid DNA.  Following bombardment, and treatment with GUS
substrate, "up to 23 blue spots could be visualized on the
scutellum . . . " and "(about 30 to 50) single cells expressing
the GUS gene could be observed under higher magnification."

2

Although the authors do not state that these experiments led to stable integration of the foreign gene, at page 562 of the Klein et al. paper, it is disclosed that:

> Because embryos and embryogenic callus can be generated from the surface of maize scutellum, that tissue will be a prime target for future attempts to deliver selectable markers with the particle gun . . . ..
>
> Recent results (manuscript in preparation) indicate that stably transformed cultures of maize and tobacco can be recovered using the optimized parameters that are detailed in the present study [emphasis added].

The use of the phrase "future attempts" in the first section of this quote suggests that the "recent results" referred to in the second section do not relate to embryogenic callus, derived from scutellum of immature embryos.

    5.  The ability to generate callus or plants from cultured immature embryos had not led to transgenic monocots of any species in 1988. In 1990, I.K. Vasil summarized the status of this work (Bio/Technology, 8, 79 (1990)):

> Plant regeneration in cereals is most easily obtained from cultured, immature embryos, bases of young leaves and young inflorescences, often directly from single cells. Delivery and integration of foreign DNA into such cells can rapidly yield non-chimeric somatic embryos and plants. Unfortunately, despite many attempts, it has not been possible thus far to obtain transgenic plants, or even stably transformed callus, following DNA delivery into such explants by particle bombardment. This is an important limitation to be overcome.

3

0002686

6.  The only "stably transformed maize callus" reported prior to 1990 was that disclosed by Klein et al. in Plant Physiol., 91, 440 (1989), which was derived by bombardment of cultured BMS cells, not immature embryos, and was nonregenerable. The transgenic maize plants obtained by Rhodes et al. by regeneration of transformed protoplasts were sterile.  There were a few reports of pollen-mediated transformation, with no accompanying evidence of stable integration.  Thus, prior to 1990, the art worker had no experience whatsoever with fertile transgenic cereal plants prepared from transformed tissue of any origin. Although the bombardment of embryogenic maize callus is arguably obvious to try, one cognizant of the literature would not have predicted success.

7.  The scutellum consists of many cells, and bombardment by the DNA-coated particles is a random process.  The particles can only penetrate and transform a small fraction of the cells.  Therefore, at best, a mosaic pattern of transformed cells in scutellum would be expected.  Furthermore, there are no cells in scutellum that are progenitors of reproductive cells.

8.  Assuming, for argument's sake, that the "stably transformed" maize "cultures" mentioned by Klein et al. are transformed callus cultures, achieved by bombardment of scutellum, followed by generation of callus therefrom, the foreign DNA may be integrated in cells to the extent that it is found "in" some portions of the regenerated plants, or may or may not be transmitted to the next generation.

4

9. Assuming, for argument's sake, that one of ordinary skill in the art be led by the disclosures of the cited art to replace the scutellum bombarded by Klein et al. or the meristems bombarded by McCabe et al. with embryogenic Type II callus disclosed in my review article, the Examiner is urged to consider that, in view of these disclosures, I would have had no reasonable expectation that the bombarded Type II callus would yield fertile transgenic corn plants possessing the ability to transmit the foreign DNA through at least one complete sexual cycle to progeny.

10. To begin with, given the invasive nature of particle bombardment, I would not be able to predict that the bombarded Type II callus cells would remain viable, e.g., would continue to divide, and would not simply be destroyed by bombardment. Therefore, I would expect bombardment to severely stress these cells, and would therefore not necessarily expect this process to lead to viable callus. I would also not be able to predict with any certainty that the foreign DNA introduced into the cells would be stably integrated into the chromosomes of the cells, i.e., so that it would be transmitted to succeeding generations of germline cells. Evidence to support these assertions is found in Klein et al., wherein bombardment of both BMS suspension cell cultures and scutellum was not observed to yield stable transformation events. In fact, there is also no evidence presented by Klein et al. that the cells retained the ability to

5

divide following bombardment, whether or not the DNA was integrated.

11.  Likewise, although Type II callus is highly regenerable, there is nothing in the prior art that would lead me to believe that it would be an improved target for bombardment insofar as characteristics relating to the retention of viability and stable integration of the foreign DNA are concerned.  Simply because "native" Type II callus is highly regenerable does not suggest that it possesses any enhanced ability to survive bombardment, must less to stably integrate the introduced DNA.  In fact, the state of the art prior to 1990 would have led me to predict that only transient expression of the introduced DNA would be much more likely.  As noted above, the literature had reported bombardment of a number of dicot and monocot tissues, but the research groups involved had not been convinced that expression relating to stable transformation in viable, regenerable monocot tissue had been achieved.

12.  Furthermore, selection of embryogenic Type II callus as the target might yield regenerable callus that was not stably transformed, or the ability to regenerate plants might be lost even though stable transformation was attained, or the cells might simply be rendered non-dividing by the particle penetration, or not sufficiently penetrated to accomplish transformation.

13.  Finally, the success reported by McCabe et al. in regenerating transgenic soybean plants following bombardment of

6

0002689

exposed soybean meristems would not lead me to expect that success would be imminent with maize using biolistics. McCabe et al. did not indicate that <u>any</u> other types of embryogenic tissue could be used in place of meristematic tissue. Also, the structural differences between soybean meristems and maize meristems would not lead me to predict that maize meristems could be successfully bombarded and regenerated into fertile maize plants using the techniques taught by McCabe.

14.   It might well be obvious for a researcher in this area to try to transform a maize tissue, cultured cells or protoplasts that had a history of "regenerability" in the <u>untransformed</u> state. However, the "state of the art" in mid-1989 to early 1990 would not permit one of ordinary skill in the art to reasonably predict that the three pieces of the puzzle of maize transformation, namely stable transformation accompanied by subsequent cell division, regenerability, and fertility/-transmission, would come together via <u>any</u> available methodology employing <u>any</u> available maize starting material, including scutellum, much less that the biolistic transformation of friable embryogenic Type II callus would be the path to success.

15.   I further declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further, that these statements are made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States

7

0002690

Code, and that such willful false statements may jeopardize the validity of this application or any patent issuing thereon.

Date: _July 20, 1992_ _____     _Ronald L. Phillips_
                                  Ronald L. Phillips

8



**UNITED STATES** **EPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/677.695 | 07/10/96 | LUNDQUIST | R | SLWK·950.001US4 |

SCHWEGMAN LUNDBERG WOESSNER & KLUTH
PO BOX 2938
MINNEAPOLIS MN 55540

NM11/0122

| EXAMINER |
|---|
| BENZION.G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1649 | |

DATE MAILED: 01/22/99

CLIENT COPY    D Feb. 28, 1999 - 6th Mo.

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

Schwegman, Lundberg,
Woessner & Kluth, P.A.

**JAN 2 9 1999**

**RECEIVED**

| **_Advisory Action_** | Application No. | Applicant(s) |
| | 08/677,695 | Lundquist et al. |
| | Examiner | Group Art Unit |
| | Gary Benzion, Ph.D. | 1649 |



THE PERIOD FOR RESPONSE:  [check only a) or b)]

    a) ☐  expires _____ months from the mailing date of the final rejection.

    b) ☒  expires either three months from the mailing date of the final rejection, or on the mailing date of this Advisory Action, whichever is later. In no event, however, will the statutory period for the response expire later than six months from the date of the final rejection.

    Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a), the proposed response and the appropriate fee. The date on which the response, the petition, and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee. Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date of the originally set shortened statutory period for response or as set forth in b) above.

☐  Appellant's Brief is due two months from the date of the Notice of Appeal filed on _____ (or within any period for response set forth above, whichever is later).  See 37 CFR 1.191(d) and 37 CFR 1.192(a).

Applicant's response to the final rejection, filed on __25 Nov 1998__ has been considered with the following effect, but is NOT deemed to place the application in condition for allowance:

☒  The proposed amendment(s):

    ☒  will be entered upon filing of a Notice of Appeal and an Appeal Brief.

    ☐  will not be entered because:

        ☐  they raise new issues that would require further consideration and/or search.  (See note below).

        ☐  they raise the issue of new matter.  (See note below).

        ☐  they are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.

        ☐  they present additional claims without cancelling a corresponding number of finally rejected claims.

    NOTE:  _____
        _____
        _____

    ☒  Applicant's response has overcome the following rejection(s):
        _Statutory Double patenting._ _____

☐  Newly proposed or amended claims _____ would be allowable if submitted in a separate, timely filed amendment cancelling the non-allowable claims.

☒  The affidavit, exhibit or request for reconsideration has been considered but does NOT place the application in condition for allowance because:
    _See attachment_ _____
    _____

☐  The affidavit or exhibit will NOT be considered because it is not directed SOLELY to issues which were newly raised by the Examiner in the final rejection.

☒  For purposes of Appeal, the status of the claims is as follows (see attached written explanation, if any):

    Claims allowed: _____

    Claims objected to: _____

    Claims rejected: _23-25, 28, 29, 41-45, 48-52, 55-59, and 68-74_ _____

☐  The proposed drawing correction filed on _____  ☐ has  ☐ has not been approved by the Examiner.

☒  Note the attached Information Disclosure Statement(s), PTO-1449, Paper No(s).  __27__

☐  Other

0002693

GARY BENZION, PH.D.
PRIMARY EXAMINER
ART UNIT 1649

Serial No. 08/677,695
Art Unit 1649

### *Attachment to Advisory Action.*

The information disclosure statement filed is noted and has been considered as it was filed four days before the mailing of the final rejection.

With regards to the rejection under 35 U.S.C.§ 112, first paragraph, the examiner does not agree that the specification sets forth in great detail the methodologies to make and maintain maize cell cultures. While the disclosure alleges to enable all gene, the specific examples of hpt and Bt are acknowledged by applicants attorney to be problematic[1]. Furthermore the Office is unaware of any example of a non-truncated Bt genes which are expressible in plants and which yields plants which are insecticidal. In terms of the declaratory evidence, such evidence was not dismissed, as stated by applicants, but the evidence did not clearly address the questions raised by the examination. Applicants arguments as to the examiner reasoning are noted, and although the examiner did not foresee this as the basis of the rejection, applicants reasoning do not seem to be based on the written rejection of record. Simply, as of the date of filing, there was insufficient evidence to teach that any gene know at the time were expressible in maize to meet the requirements of the claims.

Finally the rejection was not set forth under written description, but clearly based on the lack of enablement in the absence of undue experimentation of the method as claimed.

With regards to the 103 rejection, the substance of the arguments have been previously addressed. In terms of the work of Klein et al. it would seem that the use of non-regenerable culture to demonstrate that *Zea mays* is transformable has not been disputed. The person having skill in the art would use this culture to optimize transformation technology. This teaching provides clear motivation to next use regenerable cell cultures, such as that taught by Armstrong et al. Whereas applicants agree that Adang et al. suggest that monocots, such as maize, can be transformed, much like the teaching of Klein et al.

Applicants argue that the Office action fails to teach why the person having skill in the art would logically combine them, such as why would the worker in biolistics look to what worked in *Agrobacterium* transformation. Perhaps because it worked, perhaps because monocots were transformed by *Agrobacterium* , perhaps because they are in a single field of endeavor!

---

[1] See IDS signed by Warren Woessner on 8/20/98.

Serial No. 08/677,695                                                          3 of 3
Art Unit 1649

With regards to the Phillips declaration, the claims under examination herein are not directed to the invention which Dr. Phillips commented upon in an earlier application. For example, there is no requirement in the broadest independent claim that the regenerable callus be capable of transmitting the transgene to progeny. Similarly there is no requirement that the cell source be scetullem or meristem based. Clearly, the declaration is particularly ineffective considering the remoteness of the discussion by Dr. Phillips as it might pertains to an invention not claimed in this application.

With regards to Murray et al. it is maintained that Murray et al. was not cited to teach microprojectile bombardment. Fillatti et al. was not cited to teach maize transformation but to evidence the use of antibiotics in selection for transformants.

Finally, the Sommers declaration, is not directed to the claimed invention.

*Inquires*

Any inquiry concerning this or earlier communication from the examiner should be directed to Gary Benzion, Ph.D. whose telephone number is (703) 308-1119. The examiner can normally be reached on Monday-Friday from 7:00 AM to 3:30 PM. Any inquiry of a general nature or relating to the status of this application, or if the examiner cannot be reached as indicated above, should be directed to the Group receptionist whose telephone number is (703) 308-0196.

Papers related to this application may be submitted to Group 1600 by facsimile transmission. Papers should be faxed to Group 1600 via the PTO Fax Center located in Crystal Mall 1. The faxing of such papers must conform with the notice published in the Official Gazette, 1096 OG 30 (November 15, 1989).

Benzion
01/11/99

GARY BENZION, Ph.D.
PRIMARY EXAMINER
GROUP ART UNIT 1649

OIPE
AUG 2 4 1998
PATENT & TRADEMARK OFFICE

Sheet 1 of 2

Form 1449

| Atty. Docket No.: 950.001US4 | Serial No. 08/677,695 |
|---|---|

INFORMATION DISCLOSURE STATEMENT
BY APPLICANT
(Use several sheets if necessary)

| Applicants: Ronald C. Lundquist et al. | |
|---|---|
| Filing Date: July 10, 1996 | Group: 1649 |

## U.S. PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Name | Class | Subclass | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | 4,885,357 | 12/05/1989 | Larkins et al. | 530 | 373 | 06/12/85 |
| | 4,886,878 | 12/12/1989 | Larkins et al. | 536 | 26 | 06/12/85 |
| | 5,013,658 | 05/07/1991 | Dooner et al. | 435 | 172.3 | 05/13/88 |
| | 5,273,894 | 12/28/1993 | Strauch et al. | 435 | 129 | 08/21/87 |
| | 5,576,203 | 11/19/1996 | Hoffman | 435 | 172.3 | 08/29/86 |

## FOREIGN PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Country | Class | Subclass | Translation Yes \| No |
|---|---|---|---|---|---|---|
| | | | | | | |

## OTHER DOCUMENTS
(Including Author, Title, Date, Pertinent Pages, Etc.)

**Examiner Initial

Abe, K., et al., "Molecular Cloning of a Cysteine Proteinase Inhibitor of Rice (Oryzacystatin)", The Journal of Biological Chemistry, 262, 16793-16797 (Dec. 15, 1987)

Anderson, J.M., et al., "The Encoded Primary Sequence of a Rice Seed ADP-glucose Pyrophosphorylase Subunit and Its Homology to the Bacterial Enzyme", The Journal of Biological Chemistry, 264, 12238-12242 (July 25, 1989)

Bol, J.F., et al., "Plant Pathogenesis-Related Proteins Induced by Virus Infection", Annu. Rev. Phytopathol., 28, 113-138 (1990)

Depicker, A.G., et al., "A Negative Selection Scheme for Tobacco Protoplast-Derived Cells Expressing the T-DNA Gene 2", Plant Cell Reports, 7, 63-66 (1988)

Domoney, C., et al., "Cloning and Characterization of Complementary DNA for Convicilin, a Major Seed Storage Protein in Pisum sativum L.", Planta, 159, 446-453 (1983)

Dunn, G.M., et al., "Inheritance of Cyclic Hydroxamates in Zea mays L.", Can. J. Plant Sci., 61, 583-593 (July 1981)

Gepts, P., et al., "Enhanced Available Methionine Concentration Associated with Higher Phaseolin Levels in Common Bean Seeds", Theor. Appl. Genet., 69, 47-53 (1984)

Guerrero, F.D., et al., "Turgor-Responsive Gene Transcription and RNA Levels Increase Rapidly When Pea Shoots are Wilted. Sequence and Expression of Three Inducible Genes", Plant Mol. Biol., 15, 11-26 (1990)

Hu, N.-T., et al., "Primary Structure of a Genomic Zein Sequence of Maize", The EMBO Journal, 1, 1337-1342 (1982)

| Examiner | Date Considered 1/11/99 |
|---|---|

*Substitute Disclosure Statement Form (PTO-1449)

**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Sheet 2 of 2

| Form 1449* | Atty. Docket No.: 950.001US4 | Serial No. 08/677,695 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | Applicants: Ronald C. Lundquist et al. | |
| | Filing Date: July 10, 1996 | Group: 1649 |

OTHER DOCUMENTS
(Including Author, Title, Date, Pertinent Pages, Etc.)

**Examiner Initial

Jaworski, J.G., et al., "A Cerulenin Insensitive Short Chain 3-Ketoacyl-Acyl Carrier Protein Synthase in *Spinacia oleracea* Leaves", Plant Physiol., 90, 41-44 (1989)

Josefsson, L.-G., et al., "Structure of a Gene Encoding the 1.7 S Storage Protein, Napin, from *Brassica napus*", The Journal of Biological Chemistry, 262, 12196-12201 (Sep. 5, 1987)

Kim, C.-S., et al., "Improvement of Nutritional Value and Functional Properties of Soybean Glycinin by Protein Engineering", Protein Engineering, 3, 725-731 (1990)

Malan, C., et al., "Correlation Between CuZn Superoxide Dismutase and Glutathione Reductase, and Environmental and Xenobiotic Stress Tolerance in Maize Inbreds", Plant Science, 69, 157-166 (1990)

Marks, M.D., et al., "Nucleotide Sequence Analysis of Zein mRNAs from Maize Endosperm", The Journal of Biological Chemistry, 260, 16451-16459 (Dec. 25, 1985)

Montoliu, L., et al., "A Tandem of α-Tubulin Genes Preferentially Expressed in Radicular Tissues from *Zea mays*", Plant Molecular Biology, 14, 1-15 (1989)

Mundy, J., et al., "Selective Expression of a Probable Amylase/Protease Inhibitor in Barley Aleurone Cells: Comparison to the Barley Amylase/Subtilisin Inhibitor", Planta, 169, 51-63 (1986)

O'Reilly, D.R., et al., "A Baculovirus Blocks Insect Molting by Producing Ecdysteroid UDP-Glucosyl Transferase", Science, 245, 1110-1112 (Sep. 8, 1989)

Smith, I.K., et al., "Properties and Functions of Glutathione Reductase in Plants", Physiol. Plant., 77, 449-456 (1989)

Viotti, A., et al., "Each Zein Gene Class Can Produce Polypeptides of Different Sizes", The EMBO Journal, 4, 1103-1110 (1985)

Werr, W., et al., "Structure of the Sucrose Synthase Gene on Chromosome 9 of *Zea mays* L.", The EMBO Journal, 4, 1373-1380 (1985)

Yenofsky, R.L., et al., "Isolation and Characterization of a Soybean (*Glycine max*) Lipoxygenase-3 Gene", Mol. Gen. Genet., 211, 215-222 (1988)

Examiner _____ | Date Considered 1/1/99

*Substitute Disclosure Statement Form (PTO-1449)

**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

# Schwegman, Lundberg, Woessner & Kluth, P.A.

## Status Report: February 03, 1999

Title of Application: METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

Docket No. 00950.001US4

Serial Number: 08/677,695

Filing Date:  07/10/96

Inventors: Ronald C. Lundquist, David A. Walters

Client Reference:

Division/Project:

Contact(s):  Donald  L. Traut, Dennis R. Hoerner and Christopher
Flick

Foreign Filing Status:

Related Cases (SLWK Docket No.) 00950.001BR1, 00950.001BR2, 00950.001US1, 00950.001US5, 00950.001US6,
00950.003US1, 00950.005JP2, 00950.005RU2, 00950.005US1, 00950.013BR1,

Synopsis of Claimed Invention(s):

Generic process claim for producing fertile transgene corn by bombardment microprojectile.

Current Status of Application:

Claims 23-25, 28, 29, 41-45, 48-52, 55-59 and 68-74 are rejected to in the Advisory Action mailed 01/22/993

Claims 23-29, 41-45, 48-52, 55-59 and 68-74 are rejected to in the Office Action mailed 08/28/98.

SLWK Action or Recommendations:

File response to a.a.

Estimated Cost of Recommended SLWK Action:

Client Decision/Action Required:

Provide instr. to file response to a.a.

Date Required (If applicable):

* Not a legal opinion of actual claim scope

sur