REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 04-305-SLR (lead case) |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | |
| Defendants. | ) ) | |
| DEKALB GENETICS CORPORATION, | ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-355-SLR |
| v. | ) ) | **CONTAINS RESTRICTED CONFIDENTIAL** |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | **INFORMATION SUBJECT TO PROTECTIVE ORDER - FILED UNDER SEAL** |
| Defendants. | ) ) | |

## SYNGENTA'S OPENING BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY

Of counsel:
Michael J. Flibbert
Howard W. Levine
Scott J. Popma
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

Attorneys for Defendants

Dated: January 11, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

REDACTED VERSION – PUBLICLY FILED

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

Index of Exhibits ....................................................................................................... iv

I.      NATURE OF PROCEEDINGS ............................................................................ 1

II.     SUMMARY OF ARGUMENT .............................................................................. 2

III.    ARGUMENT ...................................................................................................... 4

       A.    The Court Should Exclude Monsanto's Proposed Expert Testimony
              Relating to Alleged Infringement of the Shah Patent Under the Doctrine of
              Equivalents ............................................................................................... 5

           1.    Monsanto Did Not Raise Its Doctrine of Equivalents Argument
                     Until the Last Day of Fact Discovery ......................................... 5

           2.    Dr. Keegstra's Initial Expert Report Cited No Evidence and Was
                     Wholly Conclusory .................................................................. 6

           3.    Dr. Keegstra's "Surrebuttal" Report Was Untimely Served on the
                     Eve of His Deposition, After the Deadline for Expert Reports ......... 8

           4.    Dr. Keegstra's "Surrebuttal" Report Relies on Technical
                     Documents that Monsanto Withheld from Syngenta During
                     Discovery ............................................................................... 9

       B.    The Court Should Exclude Monsanto's Proposed Expert Testimony
              Concerning Alleged Secondary Considerations of Non-Obviousness ............. 10

       C.    The Court Should Exclude Monsanto's Proposed Expert Testimony
              Regarding Developmental Corn Products Not Accused of Infringement ........... 11

       D.    The Court Should Exclude the Sections of Dr. Gasser's Expert Report
              Relying on Hearsay .................................................................................. 13

IV.     CONCLUSION ................................................................................................. 18

DB01:1960059.1
059155.1008

REDACTED VERSION – PUBLICLY FILED

## TABLE OF AUTHORITIES

**Cases**

*Advanced Medical Optics, Inc. v. Alcon Inc.*,
  No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803 (D. Del. Apr. 7, 2005) ................................. 4

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,
  No. Civ. A. 01-669-KAJ, 2004 WL 1534786 (D. Del. May 21, 2004) ................................... 7

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................................................................ passim

*Finch v. Hercules Inc.*,
  No. Civ. A. 92-251-MMS 1995 WL 785100 (D. Del. Dec. 22, 1995) .................................. 10

*Honeywell Int'l. Inc. v. Universal Avionics Sys. Corp.*,
  347 F. Supp. 2d 129 (D. Del. 2004) ................................................................................. 7

*In re Mercedes-Benz Anti-Trust Litig.*,
  225 F.R.D. 498 (D.N.J. 2005) ........................................................................................ 10

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999) ........................................................................................... 15

*Izumi Prod. Co. v Koninklijke Philips Elect.*,
  315 F. Supp. 2d 589 (D. Del. 2004) ............................................................................... 16

*Loeffel Steel Prods, Inc.*,
  No. 01 C 9389, 2005 U.S. Dist. LEXIS 15718 (N.D. Ill. July 22, 2005) ............................ 15

*Phillips Elecs. N. Am. Corp. v. Contec Corp.*,
  No. Civ. A. 02-123-KAJ 2004 WL 769371 (D. Del. Apr. 5, 2004) ..................................... 10

Praxair, Inc. v. ATMI, Inc.,
  231 F.R.D. 457 (D. Del. 2005) ..................................................................................... 3, 8

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*,
  272 F.3d 1335 (Fed. Cir. 2001) ....................................................................................... 9

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
  127 F.3d 1462 (Fed. Cir. 1997) ..................................................................................... 12

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................. 8

Fed. R. Civ. P. 37(c)(1) .............................................................................................. 5, 10

DB01:1960059.1                                           059155.1008

REDACTED VERSION – PUBLICLY FILED

Federal Rule of Evidence 403 .................................................................................................. passim

Federal Rule of Evidence 702 .................................................................................................. passim

Federal Rule of Evidence 703 .................................................................................................. passim

DB01:1960059.1                                                                                                                      059155.1008

REDACTED VERSION – PUBLICLY FILED

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | Monsanto's Fourth Supplemental Response to Syngenta's Interrogatory No. 3 and First Supplemental Response to Syngenta's Interrogatory No. 4 |
| Exhibit 2 | Expert Witness Report of Dr. Kenneth Keegstra |
| Exhibit 3 | Surrebuttal Report of Dr. Kenneth Keegstra to Rebuttal Report of Dr. Barry Bruce |
| Exhibit 4 | Syngenta's Fourth Set of Document Requests (Nos. 8-180) |
| Exhibit 5 | May 10, 2005 letter from Scott Popma to Scott Clark |
| Exhibit 6 | Monsanto's Response to Syngenta's Fourth Set of Document Requests (Nos. 8-180) |
| Exhibit 7 | May 17, 2005 letter from Scott Clark to Mike Flibbert |
| Exhibit 8 | Rebuttal Report of Dr. Kenneth Keegstra to Expert Report of Dr. Barry Bruce |
| Exhibit 9 | Rebuttal Report of Richard S. Cahoon Pursuant to Federal Rules of Civil Procedure 26 |
| Exhibit 10 | January 9, 2006 letter from Scott Popma to Thomas Miller |
| Exhibit 11 | Expert Witness Report of Dr. Michael E. Fromm |
| Exhibit 12 | MRR029924 - MRR029983 (Xavier Delannay Lab Notebook) |
| Exhibit 13 | Excerpts from December 13, 2005 deposition transcript of Charles S. Gasser |
| Exhibit 14 | Rebuttal Expert Report of Charles S. Gasser |
| Exhibit 15 | Excerpts from September 30, 2005 deposition transcript of Ganesh Kishore |

DB01:1960059.1

059155.1008

REDACTED VERSION – PUBLICLY FILED

Defendants Syngenta Seeds, Inc., Syngenta Biotechnology Inc., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (collectively "Syngenta") respectfully submit this brief pursuant to paragraph 3(c)(3) of the Court's Scheduling Order to exclude expert testimony of plaintiffs Monsanto Company, Monsanto Technology, LLC, and DeKalb Genetics Corporation pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and the relevant Federal Rules of Civil Procedure and Federal Rules of Evidence.

## I.    NATURE OF PROCEEDINGS

This is a patent case involving three patents asserted by the Plaintiffs.

On May 12, 2004, Syngenta announced that it had acquired rights to GA21 corn technology from Bayer CropScience, a successor of Rhone-Poulenc Agro, S.A. The same day, Monsanto Company, together with Monsanto Technology LLC, sued Syngenta for infringement of the '835 patent in this Court. *Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-CV-0305 (D. Del. filed May 12, 2004) ("the Shah action").

On July 27, 2004, DeKalb, a wholly owned subsidiary of Monsanto Company, sued Syngenta in the Northern District of Illinois, alleging that Syngenta had infringed the Lundquist patents in connection with Syngenta's proposed marketing of GA21 corn. *DeKalb Corp. v. Syngenta Seeds, Inc.*, No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) ("the Lundquist action").

The Shah and Lundquist actions both charged Syngenta with patent infringement in the use of GA21 corn, which is a genetically modified corn tolerant to the herbicide glyphosate. Due to the overlapping issues, Syngenta moved to transfer the Lundquist action to this Court. On May 19, 2005, the Illinois district court granted Syngenta's motion to transfer. Docket Item ("D.I.") 92. This Court consolidated the Shah and Lundquist actions on August 23, 2005. D.I. 111. The parties completed all discovery on December 19, 2005. *Id.*

- 1 -

REDACTED VERSION – PUBLICLY FILED

## II.    SUMMARY OF ARGUMENT

1.    The Court should exclude the proposed testimony of Monsanto's expert, Dr. Kenneth Keegstra, relating to alleged infringement of U.S. Patent No. 4,940,835 ("the Shah patent") under the doctrine of equivalents ("DOE"). Dr. Keegstra provided a wholly conclusory, one-paragraph statement regarding the DOE in his initial expert report without citing any supporting scientific methodology, publication, or, indeed, *any evidence* in the record. Dr. Keegstra's bald assertion of equivalence, unsupported by any scientific evidence or analysis, cannot possibly satisfy the standards for admissibility of expert opinions under *Daubert*.

2.    Monsanto sought to remedy Dr. Keegstra's plainly deficient DOE opinion by serving—after the deadline for expert reports and only two days before Dr. Keegstra's deposition—a purported "surrebuttal" report that, for the first time, attempted to factually support his DOE opinion. The Court should strike this untimely "surrebuttal" report. The chemical structure of the glyphosate-resistance gene in GA21 corn (the product at issue in this case) is undisputed and has been known to Monsanto since before it filed this lawsuit in 2004. Monsanto has the burden to prove infringement of the Shah patent, yet it failed to even allege infringement under the DOE until *the last day of fact discovery*, effectively precluding Syngenta from taking any discovery on this issue. Further, Monsanto should have set forth its DOE position in Dr. Keegstra's initial expert report rather than disclosing it for the first time in a "surrebuttal" report served on the eve of Dr. Keegstra's deposition—after Syngenta had already served its rebuttal reports. In addition, Dr. Keegstra relies on technical documents that Monsanto deliberately *withheld* from Syngenta during fact discovery. Syngenta has been severely prejudiced by Monsanto's unexcused delay in disclosing its DOE position and supporting technical evidence. The Court should therefore exclude Dr. Keegstra's proposed testimony on

- 2 -

REDACTED VERSION – PUBLICLY FILED

the DOE. *See, e.g., Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463-64 (D. Del. 2005) (excluding rebuttal expert report served on the eve of deposition).

3.    Syngenta has informed Monsanto that, in order to narrow the issues, it is no longer pursuing an obviousness defense relating to the Shah patent. Monsanto, however, has declined to withdraw its proposed rebuttal expert testimony relating to alleged "secondary considerations" of non-obviousness of the Shah patent. The Court should exclude Monsanto's proposed expert testimony concerning alleged secondary considerations of non-obviousness, because obviousness of the Shah patent is no longer at issue in the case. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

4.    The Court should also exclude Monsanto's proposed expert testimony relating to Syngenta's development of non-GA21 corn products in its "Ffybes" research program. Monsanto and DeKalb have never asserted that any of the glyphosate-resistant corn products developed by Syngenta in its Ffybes research program infringed any of the patents-in-suit. Expert testimony concerning these admittedly *non-infringing corn products* is thus not relevant to any issue in this case. Contrary to Monsanto's position, expert testimony concerning Syngenta's development of non-infringing corn products would not be probative of alleged willful infringement. Rather, such testimony would only confuse the jury and potentially prejudice Syngenta.

5.    Finally, the Court should preclude Monsanto's expert, Dr. Charles Gasser, from testifying about certain uncorroborated telephone conversations he allegedly had after the close of fact discovery with two fact witnesses: Dr. Xavier Delannay (a current Monsanto employee) and Dr. Ganesh Kishore (a former Monsanto employee). Monsanto's decision to have its expert

- 3 -

REDACTED VERSION – PUBLICLY FILED

wait until after fact discovery closed before "interviewing" these fact witnesses deprived Syngenta of an opportunity to depose the witnesses about the substance of the alleged telephone discussions. Further, Dr. Gasser asserts that, in these telephone discussions, the witnesses made statements contrary to documents and sworn deposition testimony in this case. Monsanto obviously intends to use Dr. Gasser as a substitute witness for Drs. Delannay and Kishore. The Court should bar Dr. Gasser from giving this unreliable and prejudicial hearsay testimony. *See* Fed. R. Evid. 702, 703, and 403.

## III.    STATEMENT OF FACTS

The facts necessary to decide this motion are set forth in the Argument below.

## IV.    ARGUMENT

Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise . . . ." This rule "obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Advanced Medical Optics, Inc. v. Alcon Inc.*, No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803, at *3 (D. Del. Apr. 7, 2005). Moreover, "[t]he party offering the expert testimony has the burden of proving admissibility." *Id.* at *4.

As the U.S. Supreme Court explained in *Daubert*, expert testimony must have "a grounding in the methods and procedures of science" and be based on "more than subjective belief or unsupported speculation." 509 U.S. at 589-90. That is, "an inference or assertion must be derived by the scientific method . . . [and] supported by appropriate validation." *Id.* at 590.

Further, Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or determine a fact in issue." This "'helpfulness' standard requires a valid scientific

- 4 -

connection to the pertinent inquiry as a precondition of admissibility." *Daubert*, 509 U.S. at 591-92. That is, the expert's opinion must "have a reliable basis in the knowledge and experience of his discipline." *Id.* at 592.

Additionally, in assessing a proffer of expert testimony under Rule 702, the Court should also be mindful of other applicable rules. *Id.* at 595. Rule 703 provides that expert opinions based on otherwise inadmissible hearsay may be admitted only if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Also, Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Lastly, Fed. R. Civ. P. 37(c)(1) permits the exclusion of all expert opinion based on documents that were not made available during fact discovery.

### A. The Court Should Exclude Monsanto's Proposed Expert Testimony Relating to Alleged Infringement of the Shah Patent Under the Doctrine of Equivalents

#### 1. Monsanto Did Not Raise Its Doctrine of Equivalents Argument Until the Last Day of Fact Discovery

Under the Court's Scheduling Order, fact discovery closed on October 10, 2005. D.I. 111. Monsanto raised its DOE contention for the first time in a supplemental interrogatory response served on October 18, 2005, the last day of fact discovery by agreement of the parties.[1] *See* Ex. 1 at 13-14. Moreover, Monsanto's response was non-substantive and simply parroted the "function, way, result" language of the DOE:

---

[1]    The parties agreed to exchange verifications and any final supplementations to discovery responses on October 18, 2005, just after the official close of fact discovery.

REDACTED VERSION – PUBLICLY FILED

*Id.*

Monsanto failed to provide any factual basis for its DOE position. *Id.* Further, although Monsanto "reserve[d] the right to supplement" the deficient response, Monsanto never supplemented the response to provide the factual basis for its DOE position. *Id.* at 14.

There is no excuse for Monsanto's delay in raising the DOE for the first time on the last day of fact discovery. The chemical structure of the glyphosate-resistance gene in Syngenta's GA21 corn product is undisputed and has been known to Monsanto since before it filed this lawsuit in 2004. Nothing in discovery in any way changed the infringement issues in this case. Further, Monsanto had a duty under Fed. R. Civ. P. 26(e) to seasonably supplement or amend its interrogatory response during fact discovery, but it failed to assert infringement under the DOE until the very last day of fact discovery, when it was too late for Syngenta to take any discovery on this issue. For this reason, and for the reasons further explained below, Syngenta has been severely prejudiced by Monsanto's conduct in regard to the DOE issue and its unexcused delay.

### 2. Dr. Keegstra's Initial Expert Report Cited No Evidence and Was Wholly Conclusory

On October 27, 2005, Monsanto served Dr. Keegstra's initial expert report, which contained a conclusory, one-paragraph statement concerning alleged infringement under the DOE:

DB01:1960059.1

059155.1008

Redacted

REDACTED VERSION – PUBLICLY FILED

Ex. 2 at 14 (section X(C)).

Consistent with Monsanto's non-substantive interrogatory response, Dr. Keegstra cited

*no evidence* to support his view that the optimized transit peptide ("OTP") in Syngenta's GA21

corn product allegedly

*Id.* Nor did he cite any

evidence to support his opinion that Syngenta's OTP allegedly functions

(Note that section V describes Dr. Keegstra's intention to give the Court a technical

"tutorial" and provides no factual basis for an expert opinion on infringement under the DOE.)

Finally, Dr. Keegstra cited no evidence supporting his bald assertion that Syngenta's OTP

Ex. 2 at 14.

The Court should exclude this proposed expert testimony because it is wholly conclusory

and not based on any factual evidence as required for admissibility under *Daubert. See, e.g.,*

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, No. Civ. A. 01-669-KAJ, 2004

WL 1534786, at *4 (D. Del. May 21, 2004) (granting *Daubert* motion to exclude expert opinion

as unreliable where basis was not factually supported); *see also Honeywell Int'l. Inc. v.*

*Universal Avionics Sys. Corp.*, 347 F. Supp. 2d 129, 134-135 (D. Del. 2004) (excluding expert's

DB01:1960059.1

059155.1008

Redacted

proposed DOE testimony because it was conclusory and failed to prove equivalency on a limitation-by-limitation basis "with particularized testimony and linking argument"). Further, Dr. Keegstra's proposed expert report fails to disclose "the basis and reasons" for his DOE opinion as required by Fed. R. Civ. P. 26(a)(2)(B). *See Honeywell*, 347 F. Supp. 2d at 135.

>    **3.    Dr. Keegstra's "Surrebuttal" Report Was Untimely Served on the Eve of His Deposition, After the Deadline for Expert Reports**

Apparently realizing that its interrogatory response and initial expert report provided no factual basis whatsoever for a claim of infringement under the DOE, Monsanto attempted to factually support a DOE argument by serving a "surrebuttal" expert report of Dr. Keegstra on December 13, 2005—*after* the November 22, 2005 deadline for rebuttal reports and just two days before Dr. Keegstra's deposition. Ex. 3. Even though Monsanto has the burden to prove infringement, this was the first substantive disclosure by Monsanto of its DOE position during the entire litigation. *Id.*

Monsanto should not be permitted to wait until the very end of expert discovery to raise for the first time its technical contentions regarding alleged infringement under the DOE. Indeed, in *Praxair* the defendants also improperly submitted a supplemental expert report containing "new testing, conclusions and theories" not contained in their expert's original report served on the eve of his expert deposition. *Id.* at 463-464. This Court found no justification for the late submission and struck the supplemental expert report, noting:  "[i]t is not plaintiff's responsibility to study and analyze an expert report overnight to save defendant's discovery flaw." *Id.* at 464. Similarly, Monsanto improperly provided its detailed factual contentions regarding the DOE for the first time in a "surrebuttal" report served on the eve of Dr. Keegstra's

deposition.[2] Syngenta was prejudiced by this late disclosure and was unable to examine Dr. Keegstra about his new opinions at his deposition or serve any rebuttal report addressing those opinions. Thus, the Court should strike the entire Keegstra "surrebuttal" report, which relates exclusively to alleged infringement of the Shah patent under the DOE. *See id.*

### 4. Dr. Keegstra's "Surrebuttal" Report Relies on Technical Documents that Monsanto Withheld from Syngenta During Discovery

Finally, in his "surrebuttal" report, Dr. Keegstra cites and relies upon laboratory notebooks and other technical documents from a prior litigation, *Rhone-Poulenc Agro, SA v. Monsanto Co. & DeKalb Genetics Corp.* (M.D.N.C) ("the *RPA* case"), that concerned the development of GA21 corn. Ex. 3 (Exhibits A, D, F, H, J, K, M, and N of Surrebuttal Report). During fact discovery in the present litigation, however, Syngenta had specifically requested production of documents from the *RPA* case, including the laboratory notebooks and other technical documents that Dr. Keegstra now seeks to rely upon. See Ex. 4 at 30-31; Ex. 5. Monsanto, however, *withheld* these documents from Syngenta and only produced documents concerning the "inventorship" issue in the *RPA* case. *See* Ex. 6 at 94-95; Ex. 7.

Monsanto cannot withhold requested documents during discovery, then attach a select group of those documents to an untimely "surrebuttal" report served after the deadline for expert

---

[2]    Dr. Keegstra's deposition took place on December 15, 2005. The "surrebuttal" report (containing multiple exhibits in French) was handed to Syngenta's attorney while he was examining Dr. Gasser (another of Monsanto's experts) on December 13, 2005.

REDACTED VERSION – PUBLICLY FILED

reports.[3] *Phillips Elecs. N. Am. Corp. v. Contec Corp.*, No. Civ. A. 02-123-KAJ, 2004 WL 769371, at *1 (D. Del. Apr. 5, 2004) (excluding documents produced after discovery cutoff pursuant to Fed. R. Civ. P. 37(c)(1)). Had Monsanto produced these documents during fact discovery as requested, Syngenta's course of discovery would have changed. *In re Mercedes-Benz Anti-Trust Litig.*, 225 F.R.D. 498, 506 (D.N.J. 2005) (prejudice exists when the surprised party would have conducted discovery differently). Accordingly, for this additional reason, the Court should exclude the entire "surrebuttal" report of Dr. Keegstra. *Cf. Finch v. Hercules Inc.*, No. Civ. A. 92-251-MMS, 1995 WL 785100, at **9-10 (D. Del. Dec. 22, 1995) (excluding fact witness who was relying on documents that were requested but not timely produced).

### B.    The Court Should Exclude Monsanto's Proposed Expert Testimony Concerning Alleged Secondary Considerations of Non-Obviousness

On November 22, 2005, Monsanto served rebuttal expert reports responding to Syngenta's proposed expert testimony relating to the obviousness of the Shah patent. Ex. 8 at section II (subparts G, H, and I); Ex. 9 at sections 7.0 and 7.2.[4] In those rebuttal reports, Monsanto set forth certain proposed expert testimony relating to alleged "secondary considerations" of non-obviousness of the Shah patent, including alleged "long-felt need,"

---

[3]    Monsanto has only produced a few select documents from the *RPA* case, while withholding the remaining documents that the jury and district court presumably relied upon in finding *against* DeKalb on all issues in that case. DeKalb lost the *RPA* case and was found liable for patent infringement, trade secret misappropriation, and fraud. *See Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335, 1341-42 (Fed. Cir. 2001) (affirming judgment of fraud, trade secret misappropriation, and patent infringement against DeKalb in connection with the GA21 collaboration). Both Monsanto and DeKalb were permanently enjoined from selling GA21 corn in the United States as a result of the outcome of the case.

[4] Moreover, Cahoon rebuttal report section 7.0 and 7.2 improperly rely on the *Bayer v. Monsanto* settlement agreement that Monsanto refused to produce. For this additional reason these sections should be excluded.

"failure of others," "acquiescence by others," "professional approval," "unexpected results," and "commercial success." *Id.*

However, in a letter dated January 9, 2006, Syngenta notified Monsanto that, in an effort to narrow the remaining disputed issues, Syngenta would not pursue its obviousness defense with respect to the Shah patent. Ex. 10. In view of Syngenta's withdrawal of its obviousness defense concerning the Shah patent, Syngenta requested that Monsanto withdraw certain corresponding sections of its rebuttal expert reports relating to alleged secondary considerations of non-obviousness of the Shah patent. *Id.* Monsanto declined to withdraw its proposed expert testimony.

Because Syngenta has affirmatively withdrawn its obviousness defense with respect to the Shah patent, expert testimony concerning alleged secondary considerations of non-obviousness of the Shah patent is no longer relevant in this case. *Daubert*, 509 U.S. at 591; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (admissibility of expert testimony depends in part on the "connection between the scientific research or test result to be presented and particular disputed factual issues in the case"). Accordingly, the Court should preclude Monsanto's experts from testifying about any alleged secondary considerations of non-obviousness of the Shah patent.

### C. The Court Should Exclude Monsanto's Proposed Expert Testimony Regarding Developmental Corn Products Not Accused of Infringement

Monsanto served technical expert reports of Dr. Michael Fromm and Dr. Keegstra outlining proposed testimony relating to Syngenta's "Ffybes" research program into glyphosate-tolerant corn. Ex. 11; Ex. 2 at section XII. As explained below, this testimony is not relevant to any issue in the case because Monsanto has never asserted that any of the products Syngenta developed in this research program infringed any of the patents-in-suit.

REDACTED VERSION – PUBLICLY FILED

From 1998 to 2004, Syngenta had a research program known internally as the "Ffybes" program, which was directed to the development of glyphosate-resistant corn products. Monsanto pursued discovery into issues relating to the Ffybes program, presumably in an effort to determine whether any of the products Syngenta developed infringed any of the patents-in-suit. Importantly, Monsanto (and DeKalb) never asserted that any of Syngenta's corn products developed in the Ffybes program infringed any of the patents-in-suit.

Monsanto nonetheless asserts that Syngenta's Ffybes research program is relevant to its allegation of willful infringement in this case. Syngenta strongly disagrees. As noted above, Monsanto has never alleged that any of Syngenta's corn products developed in the Ffybes research program infringed any of the patents-in-suit. Syngenta's development of admittedly *non-infringing corn products* cannot be probative of Monsanto's allegation of willful infringement with respect to the accused GA21 corn products (which were *not* developed in the Ffybes program).

The primary consideration for determining willfulness is "whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997). This inquiry, to the extent it is ever reached in this case, will have nothing to do with Syngenta's development of non-infringing corn products in the Ffybes program. Moreover, expert testimony concerning developmental corn products not accused of infringement would only confuse the jury and potentially prejudice Syngenta. The fact that willful infringement may, in some general sense, be based on "the totality of the circumstances" does not justify admitting irrelevant and potentially prejudicial expert testimony concerning non-

- 12 -

REDACTED VERSION – PUBLICLY FILED

infringing products. The Court should therefore exclude any expert testimony relating to the non-infringing corn products developed in the Ffybes program. *See Daubert*, 509 U.S. at 591.

### D. The Court Should Exclude the Sections of Dr. Gasser's Expert Report Relying on Hearsay

As part of Syngenta's best mode defense, Syngenta contends that as of the July 1986 filing date of the '835 patent, the inventors did not disclose that a mutant EPSPS gene (internally designated "SM-1") containing a very specific mutation (G→A) provided better glyphosate resistance than the naturally occurring petunia EPSPS gene that is discussed in the patent. The '835 patent does disclose a plasmid identified by the code designation "pMON542," which is used in Examples 8 and 9. Through discovery, Syngenta learned that pMON542, containing the SM-1 EPSPS gene, was found to provide superior glyphosate resistance. However, while Examples 8 and 9 of the '835 patent acknowledge that pMON542 was used, neither in these examples nor elsewhere in the '835 patent specification is the specific G→A mutation in the SM-1 EPSPS gene disclosed or is it revealed that this mutation provided the inventors with enhanced glyphosate resistance results. The naturally occurring petunia gene is contained in plasmid "pMON546" and used in Examples 2-3, 10-13 of the '835 patent.

As evidence supporting its position that the inventors knew that pMON542 was more effective than pMON546, Syngenta will rely, *inter alia*, on the 1986 laboratory notebook of Dr. Delannay, a former Monsanto employee. In this notebook, Dr. Delannay explicitly wrote that

Ex. 12

at MRR029934 (emphasis added). This page of Dr. Delannay's notebook is dated March 6, 1986, months before the '835 patent was filed.

Redacted

REDACTED VERSION – PUBLICLY FILED

Dr. Gasser, a former employee of Monsanto, intends to provide expert testimony opposing Syngenta's best mode defense and the entries in Dr. Delannay's notebook. Rather than calling Dr. Delannay to provide testimony about his own notebook, Monsanto seeks to use Dr. Gasser as a stand-in witness for Dr. Delannay. On November 8, 2005—19 years after the date of the notebook *and after the close of fact discovery*—Dr. Gasser and Monsanto's attorneys allegedly had a telephone conversation with Dr. Delannay about the accuracy of his notebook entries. Ex. 13 at 205:19-208:11. Paragraph 43 of Gasser's rebuttal expert report states,

Ex. 14 at paragraph 43. Thus, it is clear that Monsanto intends to use Gasser, who has no personal knowledge of the experiments in the notebook, as a substitute witness for Delannay.

Furthermore, Dr. Gasser did not even attempt to explore the reasons why Dr. Delannay supposedly now believes

or *when* he came to that belief. Ex. 13 at 209; 211-212; 218.   Instead, he claims to accept, at face value, what he would testify are Dr. Delannay's current beliefs about the results of the experiment and adopts those beliefs as his "expert" opinion as to what was known before July, 1986.

In the same way, in the third sentence of paragraph 65 of his rebuttal report, Dr. Gasser relies on a November 8, 2005 telephone conversation—again after the close of fact discovery— between himself and Dr. Kishore, another former Monsanto employee. Ex. 14. This phone call lasted                                        Ex. 13 at 220:15-221:19. During this conversation, Dr.

- 14 -

**Redacted**

REDACTED VERSION – PUBLICLY FILED

Kishore allegedly concurred with Dr. Gasser's assessment that the '835 patent


Dr. Kishore, however, was specifically deposed in this case, and Dr. Gasser's proposed testimony *directly contradicts Dr. Kishore's own sworn testimony in this case*:


Ex. 15 at 19:12-22 (emphasis added).

        Thus, Dr. Kishore's sworn testimony

                                conflicts with his alleged statement to Dr. Gasser


        Federal Rule of Evidence 703 requires an expert to base his opinions on facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject . . . ." *See In re TMI Litig.*, 193 F.3d at 697. It is up to the party proffering the expert to prove that the kind of information relied on by the expert "is the kind 'reasonably relied upon by experts in the particular field.'" *Loeffel Steel Prods, Inc.*, No. 01 C 9389, 2005 U.S. Dist. LEXIS 15718, at *33 (N.D. Ill. July 22, 2005) (internal citations omitted). Rule 703, however, does not allow an expert to merely become the "mouthpiece" of another witness. *Id.* at *34. Rule 703 is "not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose

- 15 -

Redacted

statements or opinions the expert purports to base his opinion." *Id.* at \*\*33-34. This is precisely

what Dr. Gasser attempts to do concerning both Dr. Delannay and Dr. Kishore.

Rather than have Dr. Delannay testify, Monsanto seeks to use Dr. Gasser to contradict the

explicit statements in Dr. Delannay's notebook based on a hearsay conversation with Dr.

Delannay *nineteen years after the fact.* Syngenta does not move to exclude Dr. Gasser's

interpretation of any of the experiments in Dr. Delannay's notebook, but merely his unverifiable

conversation with Dr. Delannay, a conversation *after* the close of fact discovery. Likewise, Dr.

Gasser's intended testimony based on his at most five-minute call with Dr. Kishore—testimony

that contradicts Dr. Kishore's sworn own deposition—should also be excluded under Rule 703

Federal Rule of Evidence 702 also demonstrates that the testimony based on Dr. Gasser's

conversations with Dr. Delannay and Dr. Kishore should be excluded. Rule 702 permits expert

testimony if it "will assist the trier of fact," if the testimony is "based on sufficient facts or data"

and "reliable principles and methods," if the witness "has applied the principles and methods

reliably to the facts of the case." Testimony of an expert is not reliable, i.e. helpful, if it is based

on "subjective belief or unsupported speculation" rather than "the methods and procedures of

science." *Izumi Prods. Co. v Koninklijke Philips Elect. N.V.*, 315 F. Supp. 2d 589, 600 (D. Del.

2004). Here, Dr. Gasser's intended testimony about his hearsay conversations with Dr.

Delannay and Dr. Kishore do not satisfy these standards. For example, during his conversation

with Dr. Delannay, Dr. Gasser did not ask Dr. Delannay the most basic questions about Dr.

Delannay's alleged current belief regarding the experiments. Moreover, Dr. Gasser's

call with Dr. Kishore could not provide Dr. Gasser with sufficient basis to contradict

Dr. Kishore's sworn deposition testimony.

- 16 -

**Redacted**

REDACTED VERSION – PUBLICLY FILED

Finally, Dr. Gasser's opinions of invalidity based on the uncorroborated conversations with Dr. Delannay and Dr. Kishore should also be excluded because of unfair prejudice to Syngenta. Under the Court's Scheduling Order, fact discovery closed on October 10, disclosure of expert testimony on issues as to which each party has the burden of proof were due October 27, 2005, and rebuttal expert reports were due November 22, 2005. Dr. Gasser's discussions with Dr. Kishore and Dr. Delannay occurred on November 8, 2005, nearly a month after the close of fact discovery. This precluded Syngenta from obtaining discovery from Dr. Kishore and Delannay *relating to their discussions with Dr. Gasser*. This is especially prejudicial because Dr. Delannay allegedly contradicted statements in his laboratory notebook, and Dr. Kishore allegedly made statements to Dr. Gasser that directly contradicted his sworn deposition testimony.

REDACTED VERSION – PUBLICLY FILED

## V.    CONCLUSION

For all of the above reasons, the Court should exclude:

(A)  Keegstra initial expert report section X(C) and the entire Keegstra surrebuttal report;

(B)  Keegstra rebuttal section II (subparts G, H, and I); and Cahoon rebuttal sections 7.0 and 7.2;

(C)  The entire Fromm initial expert report; and  Keegstra initial expert report section XII; and

(D)  Gasser rebuttal report paragraph 43 and the third sentence of paragraph 65.

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

Of Counsel:

Michael J. Flibbert
Howard W. Levine
Scott J. Popma
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000                              Attorneys for Defendants

Dated:  January 11, 2006

- 18 -

REDACTED VERSION – PUBLICLY FILED

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on January 11, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

### BY FEDERAL EXPRESS

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on January 19, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

**BY FEDERAL EXPRESS**

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*