REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 04-305-SLR (lead case) |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., | ) ) ) ) | |
| Defendants. | ) ) | |
| DEKALB GENETICS CORPORATION, | ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-355-SLR |
| v. | ) ) | **CONTAINS RESTRICTED CONFIDENTIAL** |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., | ) ) ) ) | **INFORMATION SUBJECT TO PROTECTIVE ORDER - FILED UNDER SEAL** |
| Defendants. | ) | |

## SYNGENTA'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE SHAH PATENT

Of counsel:
Michael J. Flibbert
Howard W. Levine
Jared S. Cohen
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

Attorneys for Defendants

Dated: January 11, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

REDACTED VERSION – PUBLICLY FILED

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INDEX OF EXHIBITS ........................................................................................................... v

I.      INTRODUCTION .................................................................................................... 1

II.     NATURE OF PROCEEDINGS ............................................................................... 1

III.    SUMMARY OF ARGUMENT ............................................................................... 2

IV.     STATEMENT OF FACTS ...................................................................................... 3

        A.      Syngenta's GA21 Corn Product ................................................................... 3

        B.      The '835 Patent ............................................................................................ 6

        C.      The Technology Underlying the '835 patent ............................................... 7

        D.      The CTP Must Be Naturally Occurring ....................................................... 8

                1.      The Missouri Court Held that the CTP Must Be Naturally
                        Occurring .......................................................................................... 8

                2.      The Specification and the Understanding of Those Skilled in the
                        Art Support the Missouri Court's Construction ............................... 9

        E.      A CTP Within the Meaning of the '835 Patent Must Target the EPSPS
                Protein to the Chloroplast and Be Removed from the Mature EPSPS ................. 11

V.      ARGUMENT ........................................................................................................... 14

        A.      Summary Judgment Is Appropriate Vehicle for Holding the '835 Patent
                Not Infringed ............................................................................................... 14

        B.      Rules of Claim Construction ....................................................................... 15

        C.      The CTP Must Be Naturally Occurring, Target the Passenger Protein to
                the Chloroplast, and Subsequently Be Removed ........................................ 17

                1.      Naturally Occurring ......................................................................... 17

                2.      Target the EPSPS Protein to the Chloroplast and Be Removed to
                        Yield an Active Mature Protein ...................................................... 18

        D.      Syngenta's GA21 Corn Product Does Not Infringe as It Does Not Contain
                a CTP Within the Meaning of Claim 1 of the '835 Patent ......................... 20

REDACTED VERSION – PUBLICLY FILED

VI.     CONCLUSION.................................................................................................................24

REDACTED VERSION – PUBLICLY FILED

## TABLE OF AUTHORITIES

### FEDERAL CASES

*ABB Automation Inc. v. Schlumberger Res. Mgmt. Servs., Inc.,*
　254 F. Supp.2d 479 (D. Del. 2003) ................................................................. 15

*Allen Engineering Corp. v. Bartell Indus., Inc.,*
　299 F.3d 1336 (Fed. Cir. 2002) .................................................................... 21

*Anderson v. Liberty Lobby, Inc.,*
　477 U.S. 242 (1986) ........................................................................... 14, 15

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.,*
　289 F.3d 801 (Fed. Cir. 2002) ..................................................................... 21

*Celotex Corp. v. Catrett,*
　477 U.S. 317 (1986) .............................................................................. 14

*Cybor Corp. v. FAS Techns., Inc.,*
　138 F.3d 1448 (Fed. Cir. 1998) ................................................................... 21

*Glaxo Inc. v. Novopharm Ltd.,*
　110 F.3d 1562 (Fed. Cir. 1997) ................................................................ 20, 23

*Laitram Corp. v. Rexnord, Inc.,*
　939 F.2d 1533 (Fed. Cir. 1991) ................................................................... 20

*Markman v. Westview Instruments, Inc.,*
　52 F.3d 967 (Fed. Cir. 1995) ..................................................................... 15

*Multiform Desiccants, Inc. v. Medzam, Ltd.,*
　133 F.3d 1473 (Fed. Cir. 1988) ................................................................... 15

*Phillips v. AWH Corp.,*
　415 F.3d 1303 (Fed. Cir. 2005) ......................................................... 15, 16, 17, 19

*Rhone-Poulenc Agro S.A. v. Monsanto,*
　No. 1:97CV1138, 2000 U.S. Dist. LEXIS 21330 (M.D.N.C. Feb. 8, 2000) ............................ 6

*Rohm & Haas Co. v. Brotech Corp.,*
　127 F.3d 1089 (Fed. Cir. 1997) ................................................................... 20

*Texas Digital Sys., Inc. v. Telegenix, Inc.,*
　308 F.3d 1193 (Fed. Cir. 2002) ................................................................... 16

REDACTED VERSION – PUBLICLY FILED

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996)..................................................................................15

*Wahpeton Canvas Co. v. Frontier, Inc.,*
   870 F.2d 1546 (Fed. Cir. 1989)..............................................................................21

## DOCKETED CASES

*DeKalb Corp. v. Syngenta Seeds, Inc.,*
   No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) ....................................................2

*Monsanto Co. v. Bayer CropScience LP,*
   Case No. 4:01CV01825 (E.D. Mo. filed November 20, 2001) ......................................1, 8, 13

*Monsanto Co. v. Syngenta Seeds, Inc.,*
   No. 04-CV-0305 (D. Del. filed May 12, 2004) ....................................................2

## FEDERAL STATUTES

Fed. R. Civ. P. 56(c) ....................................................................................................14

REDACTED VERSION – PUBLICLY FILED

## INDEX OF EXHIBITS

| Appendix Pages | Description |
|---|---|
| A1-26 | U.S. Patent No. 4,940,835 |
| A27-39 | Excerpt from transcript of *Markman* hearing before the Honorable Catherine D. Perry on July 1 and 2, 2003, *Monsanto Co. v. Bayer CropScience LP*, Case No. 4:01CV01825 CDP (E.D. Mo. filed November 20, 2001) |
| A40-97 | U.S. Patent No. 6,040,497 and Certificate of Correction |
| A98-104 | U.S. Patent No. 5,510,471 and Certificate of Correction |
| A105-110 | Comai et al., *Chloroplast transport of a ribulose bisphosphate carboxylase small subunit-5-enolpyruvyl 3-phosphoshikimate synthase chimeric protein requires part of the mature small subunit in addition to the transit peptide*, J. Biol. Chem. 263:15104-15109 (1988) |
| A111-114 | Amrhein et al., "The Mode of Action of the Herbicide Glyphosate," *Naturwissenschaften*, 60:356-57 (1980) |
| A115-124 | Mousdale and Coggins, "Subcellular localization of the common shikimate-pathway enzymes in *Pisim sativum* L.," *Planta*, 163:241-49 (1985) |
| A125-160 | U.S. Patent No. 5,728,925 |
| A161-163 | Claims Construction Order, *Monsanto Co. v. Bayer CropScience LP*, Case No. 4:01CV01825 CDP (E.D. Mo. filed November 20, 2001) |
| A164-166 | Transcript excerpts from October 7, 2005 deposition of Dilip M. Shah |
| A167-178 | Transcript excerpts from December 15, 2005 deposition of Kenneth Keegstra |
| A179-184 | Transcript excerpts from December 16, 2005 deposition of Barry D. Bruce |
| A190-192 | Transcript excerpts from March 25, 2003 deposition of Kenneth Keegstra, *Monsanto Co. v. Bayer CropScience LP*, Case No. 4:01CV01825 CDP (E.D. Mo. filed November 20, 2001) |
| A193-199 | U.S. Reissue Patent No. 36,449 |

REDACTED VERSION – PUBLICLY FILED

## I.   INTRODUCTION

Defendants (collectively referred to as "Syngenta") respectfully move for summary judgment that their GA21 corn product cannot infringe claims 1, 5, and 6 of United States Patent No. 4,940,835 ("the '835 patent") (A1-26) as a matter of law. Claim 1 of the '835 patent (and its dependent claims 5-6) recite a "chloroplast transit peptide" or "CTP" as an element of the claim. The proper claim construction of this element requires that the CTP must (1) be naturally occurring, (2) target the EPSPS protein to the chloroplast, and (3) be removed to leave the mature protein. This claim construction is compelled by the language of the claim as understood by those skilled in the art, the specification of the '835 patent, and a prior claim construction of the *same term* by the U.S. District Court for the District of Missouri reached in a prior case involving Plaintiff Monsanto. July 1-2, 2003, *Markman* Hearing Tr., *Monsanto Co. v. Bayer CropScience LP*, Case No. 4:01CV01825 CDP (E.D. Mo. filed November 20, 2001) ("*Markman* Hearing Tr."), at 166-172 (A33-39).

Based on this claim construction, Syngenta's GA21 corn product cannot infringe the '835 patent as a matter of law because it does not contain a "CTP" within the meaning of claim 1. Instead, GA21 contains an "optimized transit peptide" or "OTP." The OTP does target the EPSPS protein to the chloroplast, and it is removed to leave the mature EPSPS protein. Thus, Syngenta's OTP does satisfy criteria (2) and (3) of the CTP element. There can be no genuine dispute, however, that the OTP is not naturally occurring and thus fails to satisfy criterion (1). Since the OTP is not a "CTP" within the meaning of claim 1 of the '835 patent, GA21 lacks an element of the claim and it cannot infringe as a matter of well-established law.

## II.   NATURE OF PROCEEDINGS

This is a patent case involving three patents asserted by the Monsanto.

On May 12, 2004, Syngenta announced that it had acquired rights to GA21 corn technology from Bayer CropScience, a successor of Rhone-Poulenc Agro, S.A. ("RPA"). The same day, Monsanto Company, together with Monsanto Technology LLC, sued Syngenta for infringement of the '835 patent in this Court. *Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-CV-0305 (D. Del. filed May 12, 2004) ("the Shah action").

On July 27, 2004, DeKalb, a wholly owned subsidiary of Monsanto Company, sued Syngenta in the Northern District of Illinois, alleging that Syngenta had infringed the Lundquist patents in connection with Syngenta's proposed marketing of GA21 corn. *DeKalb Corp. v. Syngenta Seeds, Inc.*, No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) ("the Lundquist action").

The Shah and Lundquist actions both charged Syngenta with patent infringement in the use of GA21 corn, which is a genetically modified corn tolerant to the herbicide glyphosate. Due to the overlapping issues, Syngenta moved to transfer the Lundquist action to this Court. On May 19, 2005, the Illinois district court granted Syngenta's motion to transfer. Docket Item ("D.I.") 92. This Court consolidated the Shah and Lundquist actions on August 23, 2005. D.I. 111. The parties completed all discovery on December 19, 2005. *Id.*

## III.    SUMMARY OF ARGUMENT

1.    Claim 1 of the '835 patent recites the term "chloroplast transit peptide" ("CTP"). Within the meaning of claim 1, a CTP is a (1) naturally occurring chain of amino acids that (2) functions to target a protein to the chloroplast and (3) is cleaved (or removed) leaving the mature EPSPS protein. This construction is supported by the claim language as understood by those of ordinary skill, the specification, the consistent scientific testimony of both Monsanto's and Syngenta's technical experts, and a prior construction of the same claim term by the United States District Court for the Eastern District of Missouri.

2.      Syngenta's GA21 corn product cannot infringe the '835 patent as a matter of law because it does not contain a "CTP" within the meaning of claim 1. Instead, GA21 contains an "optimized transit peptide" or "OTP." There can be no genuine dispute that the OTP is *not* naturally occurring and thus fails to satisfy criterion (1). Since GA21 lacks an element of the claims of the '835 patent, it cannot infringe those claims as a matter of well-established law.

## IV.    STATEMENT OF FACTS

### A.    Syngenta's GA21 Corn Product

Syngenta currently markets a genetically engineered corn product, "GA21" corn, that is resistant to the herbicide glyphosate. GA21 was developed through a collaboration between RPA and DeKalb, one of the Plaintiffs in this action. RPA contributed the OTP and the mutant EPSPS gene that ultimately conveyed glyphosate resistance, and DeKalb took the gene and used it to transform corn cells using the microprojectile bombardment technique. *See* U.S. Patent No. 6,040,497 ("the '497 patent") at Example 2 (A83-84); col. 24, lines 59-64 (A75); Table 5 (A76); *see also* U.S. Patent No. 5,510,471 ("the '471 patent") at col. 3, lines 39-46 (A100). One of the transformed corn cell lines that resulted from bombarding corn cells with RPA's gene was labeled "GA21." '497 patent at Example 2 (A83-84). Syngenta's GA21 corn product is derived from this cell line.

The construct resulting in the GA21 event contained different parts responsible for the ability to impart glyphosate resistance to corn cells. *Id*. at Table 5 (A76). In particular, the construct contained an intron, a double-mutant corn EPSPS gene, and something called an "optimized transit peptide" or "OTP." *Id*. Syngenta's motion for summary judgment concerns only the OTP and whether it constitutes a "CTP" within the meaning of claims 1, 5, and 6 of the '835 patent.

REDACTED VERSION – PUBLICLY FILED

RPA described the OTP in the '471 patent. The OTP was prepared by joining together three pieces of DNA in a way that does *not* occur in nature. The first piece is from DNA that encodes the transit peptide from *sunflower* RuBisCO, a plant protein that is transported into the chloroplast. '471 patent at col. 3, lines 39-46 (A100). The second piece is from DNA that encodes 22 amino acids of the *maize* RuBisCO protein itself. *Id.* The third piece is from DNA that encodes the transit peptide from *maize* RuBisCO. *Id.*

| | | |
|---|---|---|
| **DNA** | DNA for Sunflower RuBisCO CTP | DNA for 22 amino acids Maize RuBisCO | DNA for Maize RuBisCO CTP |

↓ Encodes

| | |
|---|---|
| **Protein** | OTP |

These pieces of DNA do not occur together in nature[1] and were joined synthetically to create the OTP. The OTP increases the efficiency of transport of the protein of interest to the chloroplast *and* also provides the correct cleavage site. Prior to RPA's creation of the OTP, the art had recognized the problems in transporting foreign EPSPS proteins into the chloroplast. For example, one paper published in 1988 demonstrated that a naturally occurring CTP from RuBisCO fused to a bacterial EPSPS *was not successful* in transporting the EPSPS into the chloroplast. Comai et al., *Chloroplast transport of a ribulose bisphosphate carboxylase small subunit-5-enolpyruvyl 3-phoshoshikimate synthase chimeric protein requires part of the mature small subunit in addition to the transit peptide*, J. Biol. Chem. 263:15104-15109 (1988), at Fig. 3, p. 15107 (A108). In contrast, when a portion of the RuBisCO mature protein (24 amino acids) was fused to the CTP, then the CTP efficiently transported the EPSPS protein into the

---

[1] Even the two pieces of maize DNA do not occur together naturally in the order assembled in the OTP.

REDACTED VERSION – PUBLICLY FILED

chloroplast. *Id.* The problem with this approach, as shown below, was that it resulted in an EPSPS with a portion of the RuBisCO protein attached to its end:



Thus, the art presented a paradox. To obtain efficient targeting of the EPSPS protein to the chloroplast, one needed to include a portion of the CTP's mature protein. Yet, when that addition was made, the EPSPS protein would possess a portion of the RuBisCO protein attached to it (as shown above), which would interfere with the EPSPS's activity. The OTP solved this problem. Using the three pieces of DNA synthetically engineered in the specified order, the OTP creates a proper cleavage site (as shown below) such that the EPSPS protein does not contain the unwanted "extra" RuBisCO portion:



As stated by the United States District Court for the Middle District of North Carolina in the context of an unsuccessful challenge to the validity of the OTP patent by DeKalb, "the OTP solved the 'paradox' that existed with the Comai prior art because its N-terminal extension is disengaged after the passenger protein is transported into the chloroplast." *Rhone-Poulenc Agro, S.A. v. Monsanto*, No. 1:97CV1138, 2000 U.S. Dist. LEXIS 21330, at *97 (M.D.N.C. Feb. 8, 2000).

## B.    The '835 Patent

The '835 patent, entitled "Glyphosate-Resistant Plants," discusses the transformation of dicot plant cells (and plants regenerated from such cells) to enhance their resistance to the herbicide glyphosate. The '835 patent is a continuation-in-part of Application No. 792,390, filed October 29, 1985, which is itself a continuation-in-part of Application No. 763,482, filed August 7, 1985. Plaintiff Monsanto has asserted that Syngenta infringes claims 1, 5, and 6 of the '835 patent. Claim 1 recites:

A chimeric plant gene which comprises:

(a)    a promoter sequence which functions in plant cells;

(b)    a coding sequence which causes the production of RNA, encoding a *chloroplast transit peptide* [referred to herein as "CTP"]/5-enolpyruvylshikimate-3-phosphate synthase [referred to herein as "EPSPS"] fusion polypeptide, which chloroplast transit peptide permits the fusion polypeptide to be imported into a chloroplast of a plant cell; and

(c)    a 3' non-translated region which encodes a polyadenylation signal which functions in plant cells to cause the addition of polyadenylate nucleotides to the 3' end of the RNA;

the promoter being heterologous with respect to the coding sequence and adapted to cause sufficient expression of the fusion polypeptide to enhance the glyphosate resistance of a plant cell transformed with the gene.

(emphasis added.)  Claim 5 recites, "A chimeric gene of claim 1 in which the coding sequence encodes a mutant 5-enolpyruvylshikimate-3-phosphate synthase (EPSPS)."  Claim 6 recites, "A chimeric gene of claim 1 in which the EPSPS coding sequence encodes an EPSPS from an organism selected from the group consisting of bacteria, fungi and plants."  The additional recitations of claims 5 and 6 do not affect this motion for summary judgment and stand or fall with claim 1.

C.    The Technology Underlying the '835 patent

Glyphosate kills plants by blocking the activity of a particular enzyme that exists in the plant's chloroplast.  Mousdale and Coggins, "Subcellular localization of the common shikimate-pathway enzymes in *Pisim sativum* L.," *Planta*, 163:241-49 (1985) ("Mousdale 1985") at 248 (A122);  Amrhein et al., "The Mode of Action of the Herbicide Glyphosate," *Naturwissenschaften*, 60:356-57 (1980) (A113-14).  The enzyme (5-EnolPyruvyl Shikimate-3-Phosphate Synthase or "EPSPS") carries out a step in a complex biochemical pathway that produces certain amino acids that are essential for the plant's survival.  U.S. Patent No. 5,728,925 ("the '925 patent") at col. 2, lines 1-6 (A142); Mousdale 1985 at 241, 248 (A115, 122).  This EPSPS enzyme is encoded by DNA from the nucleus of a plant cell.  '925 patent at col. 2, lines 4-5 (A142).  The enzyme is synthesized in the cytoplasm and then transported to the chloroplast

by the "chloroplast transit peptide" or "CTP." *Id.* at col. 2, lines 1-6 (A142); '835 patent at col. 2,

line 66 to col. 3, line 2 (A10-11). In plants, the CTP naturally occurs adjacent to the EPSPS

enzyme and transports the EPSPS enzyme to the chloroplast, where (according to the '835

patent) the CTP is "believed to be removed . . . so that an active portion of the EPSPS . . . exists

and functions inside the chloroplast." '835 patent at col. 4, lines 28-34 (A11).

### D.    The CTP Must Be Naturally Occurring

####    1.    The Missouri Court Held that the CTP Must Be Naturally Occurring

The specification of the '835 patent describes that the "gene of the present invention

encodes an CTP/EPSPS fusion polypeptide." '835 patent at col. 4, lines 23-24 (A11). This

CTP/EPSPS fusion polypeptide contains two parts: a CTP and an EPSPS. This motion depends

on the correct construction of the term CTP, which was previously construed by the Eastern

District of Missouri in *Monsanto Co. v. Bayer CropScience LP*, Case No. 4:01CV01825 CDP

(E.D. Mo. filed November 20, 2001). There, the court explicitly held that the term "'chloroplast

transit peptide' means a *naturally occurring* series of amino acids that causes the transport of a

polypeptide into a chloroplast." July 2, 2003 Claim Construction Order ("7/2/03 Claim

Construction Order") (A161-62) (emphasis added).

In reaching this conclusion, the Missouri court explained that "I have accepted Bayer's

argument that *the CTP must be naturally occurring* because . . . reading the claim language and

the patent as a whole, and giving due consideration to the prosecution history, that at the time of

this invention, a chloroplast transit peptide under the widely-held understanding in the pertinent

technical field, meant something found to naturally occur in a plant. . . ." *Markman* Hearing Tr.

at 166 (A33) (emphasis added).

The court continued in its analysis by focusing on the patent specification, stating that

"[t]he references in the patent specification to sources for CTP all point to plants or naturally

occurring substances, not to synthetic substances. At the time of this patent application, the state

of the knowledge of CTPs was such that *I do not believe that the patent contemplated that this*

*term would include anything that might ever be invented that would function like a CTP."* *Id.*

at 166-67 (A33-34) (emphasis added).

### 2.    The Specification and the Understanding of Those Skilled in the Art Support the Missouri Court's Construction

The specification of the '835 patent clearly supports the Missouri court's construction.

Every example in the patent where plant cells (or plants regenerated from such cells) are

transformed to obtain glyphosate resistance describes the use of a naturally occurring CTP.

Examples 2, 3, 4, 8, 9, 10, 12, and 13 describe transformations (actual and prophetic) using the

naturally occurring CTP from the petunia EPSPS gene.   Examples 5, 6, and 7, prophetic

examples, suggest using the naturally occurring CTP from the cotton EPSPS gene, the oil seed

rape EPSPS gene, and the flax EPSPS gene, respectively.

Indeed, throughout the '835 patent, the inventors make a clear distinction between

something that must be naturally occurring and something that can be mutated, modified, or

altered.  For example, when describing promoters, the inventors state that promoters may be

mutated or altered by various processes. '835 patent at col. 3, line 45 to col. 4, line 12 (A11).

Similarly, the inventors contemplate the use of mutant forms of the coding sequence for the

EPSPS gene.  *Id.* at col. 5, lines 1-3 (A12).  No similar language exists with respect to CTP.

Rather than being altered or modified, the specification merely states that the CTP should be

"obtained from" a natural plant source. '835 patent at col. 4, lines 35-40 (A11).

Furthermore, the only nucleotide or amino acid sequence for a CTP actually disclosed in

the '835 patent is the naturally occurring petunia CTP from the petunia EPSPS gene. Its DNA

and amino acid sequences are disclosed in Figures 3 and 4 of the '835 patent.   This was

confirmed by Dr. Shah, an inventor on the '835 patent, who stated that:

October 7, 2005, Shah

Deposition Tr. at p. 135:8-9 (A166).

The expert testimony in this case by both Syngenta's and Monsanto's expert witnesses further demonstrate that those skilled in the art during the 1985-86 time period understood that all CTPs were naturally occurring and found at the N-terminus of nuclear-encoded proteins. December 15, 2005, Keegstra Deposition Tr. ("12/15/05 Keegstra Tr.") at 36-38 (A169-70); December 16, 2005, Bruce Tr. ("12/16/05 Bruce Tr.") at 31-32 (A181).  Dr. Barry Bruce, Syngenta's expert in the present case, testified that "[y]ou could say absolutely every transit peptide known in 1985 was placed at the N-terminus of a nuclear-encoded polypeptide." 12/16/05 Bruce Tr. at 38:9-11 (A183).

Likewise, Dr. Kenneth Keegstra, Monsanto's expert in the present case, testified that

12/15/05

Keegstra Tr. at 36:17-38:5 (A169-70).  Moreover, there were only seven CTPs known to exist during the 1985-86 time frame out of the approximately 2000 proteins that are targeted to a plant's chloroplast.  12/15/05 Keegstra Tr. at 118 (A174).  Furthermore, as Dr. Keegstra confirmed, there was no structural similarity between any of the seven CTPs:

REDACTED VERSION – PUBLICLY FILED

12/15/05 Keegstra Tr. at 119:21-120:25 (A174) (emphasis added).  Because of the lack of structure/function relationship, there were no synthetic constructs considered to be CTPs, either in the literature or disclosed in the '835 patent.  *See, e.g.*, 12/16/05 Bruce Tr. at 40-45 (A183-84). Moreover, Dr. Keegstra testified as follows:

12/15/05 Keegstra Tr. at 38:15-20 (A170); *see id*. at 125-26 (A175-76).  Thus, the specification as understood by those skilled in the art at the time demonstrates that the CTP must be naturally occurring.

### E.    A CTP Within the Meaning of the '835 Patent Must Target the EPSPS Protein to the Chloroplast and Be Removed from the Mature EPSPS

Defining features of the CTP are that it targets the EPSPS protein to the chloroplast and is removed to yield the mature protein.  This claim construction issue impacts whether the OTP *as a whole*—as opposed to its individual pieces—should be considered in determining whether it constitutes a naturally occurring CTP within the meaning of claim 1 of the '835 patent.  As

discussed above, the OTP as a whole targets the EPSPS protein to the chloroplast and is removed

to yield a mature protein, but is not naturally occurring.

The specification of the '835 patent itself states that the CTP functions to target a

passenger protein to the chloroplast and is then removed to release an active polypeptide: "The

CTP leader sequence causes the polypeptide to be imported into chloroplasts, and the CTP leader

sequence encoded by the plant-derived EPSPS gene is believed to be removed from the

remainder of the polypeptide so that an active portion of the EPSPS polypeptide exists and

functions inside the chloroplast." '835 patent, at col. 4, lines 28-34 (A11). This process is

demonstrated in the figure below.



In addition, Examples 18 and 19 of the '835 patent specifically disclose the removal of the CTP

from the passenger protein to which it is attached. '835 patent, Example 18, col. 30, lines 3-5

(A24); Example 19, col. 31, lines 8-12 (A25). In fact, the success of these experiments was

determined by the presence of the passenger protein, cleaved from its CTP, in the stroma of the

chloroplast. *Id.*

REDACTED VERSION – PUBLICLY FILED

Those skilled in the art also understood that, as set forth in the '835 patent, a necessary feature of the CTP is that it is removed from the mature protein.  Perhaps the best evidence of this point is the testimony of Monsanto's own expert, Dr. Keegstra.  Dr. Keegstra had previously testified as Monsanto's expert in connection with a *Markman* hearing concerning the interpretation of claim 1 of the '835 patent.  *Monsanto Co. v. Bayer CropScience LP*, Case No. 4:01CV01825 CDP (E.D. Mo. filed November 20, 2001).  During his deposition in that case, Dr. Keegstra unambiguously testified that cleavage is a defining feature of a CTP.  March 25, 2003, Keegstra Deposition Tr. at 55:15-18 (A192).  During his expert deposition in the present case, Dr. Keegstra was asked about his prior testimony and whether he still agreed with it.  Dr. Keegstra testified that he agreed, as a matter of science, that whether or not there was cleavage

12/15/05 Keegstra Tr. at 45 (A171).  Also, along the same line, he testified as follows:

12/15/05 Keegstra Tr. at 50:21-51:10 (A173) (emphasis added).

Dr. Keegstra also tied in the understanding that one skilled in the art would have had during the 1985-86 time period to the specific language of the '835 patent:

REDACTED VERSION – PUBLICLY FILED

12/15/05 Keegstra Tr. at 149:23-150:15 (A177-78) (emphasis added). Moreover, Syngenta's expert Dr. Bruce agrees with Dr. Keegstra on this point and, thus, there is no dispute between the parties that cleavage is a defining feature of a CTP. 12/16/05 Bruce Tr. at 31-32 (A181).

Thus, the specification of the '835 patent, supported by the understanding of those skilled in the art at the time, clearly demonstrates that defining features of the CTP are that it is naturally occurring, targets the EPSPS to the chloroplast, and is then removed (or cleaved) to yield a mature EPSPS protein. As discussed above, the OTP as a whole targets the EPSPS protein to the chloroplast and is cleaved to yield a mature protein. *See* § IV.A., *supra*. And it is undisputed that the OTP composite is synthetically made, not naturally occurring.

## V.    ARGUMENT

### A.    Summary Judgment Is Appropriate Vehicle for Holding the '835 Patent Not Infringed

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party must then demonstrate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Redacted

The mere existence of a "scintilla of evidence" or evidence which is merely colorable or not significantly probative is not sufficient to raise a genuine issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 249, 251. "[T]here must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." *ABB Automation Inc. v. Schlumberger Res. Mgmt. Servs., Inc.*, 254 F. Supp.2d 479, 481 (D. Del. 2003).

**B.    Rules of Claim Construction**

The Federal Circuit recently issued an *en banc* decision concerning the correct approach for interpreting claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). In *Phillips*, the Federal Circuit held that courts should interpret the claim terms to have their "ordinary and customary meaning," which is the meaning the term would have "to a person of ordinary skill in the art in question at the time of the invention." *Id.* "It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field." *Id.* (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1988)).

In addition, because the claims form part of the patent as a whole, courts must read the claims "'in view of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "The specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history." *Id.* (quoting *Multiform Desiccants*, 133 F.3d at 1478).

REDACTED VERSION – PUBLICLY FILED

The Federal Circuit in *Phillips* also resolved conflicting precedent over the use of dictionaries in claim construction. The Federal Circuit explained that there were a line of cases in which the court determined the dictionary meaning of the terms in the claim and then examined the specification merely to determine if the specification defined the words differently. *Phillips*, 415 F.3d at 1319-20. These cases placed greater emphasis on the dictionary meaning of terms and "limit[ed] the role of the specification in claim construction to serving as a check on the dictionary meaning of a claim term if the specification requires the court to conclude that fewer than all the dictionary definitions apply, or if the specification contains a sufficiently specific alternative definition or disavowal." *Phillips*, 415 F.3d at 1320 (citing *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002)). The Federal Circuit, sitting *en banc,* explicitly held that these cases applied the wrong analysis because they "improperly restrict[ed] the role of the specification in claim construction." *Id.* "A claim should not rise or fall based upon the preferences of a particular dictionary editor, or the court's independent decision, uninformed by the specification, to rely on one dictionary rather than another." *Id.* at 1322. "The resulting definitions therefore do not necessarily reflect the inventor's goal of distinctly setting forth his invention as a person of ordinary skill in that particular art would understand it." *Id.*

The Federal Circuit also re-affirmed that it was permissible to use other extrinsic evidence to interpret claim terms. *Id.* at 1319. "[B]ecause extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence." *Id.*

C.   **The CTP Must Be Naturally Occurring, Target the Passenger Protein to the Chloroplast, and Subsequently Be Removed**

1.   **Naturally Occurring**

The term "CTP" appearing in claim 1 (and dependent claims 5-6) is a broad term that is not tied to a particular nucleotide or amino acid sequence. Thus, as set forth by the Federal Circuit in *Phillips*, it is important to understand how those of ordinary skill would understand the term "CTP" as of the time of the filing of the '835 patent. Here, based on the specification—"the single best guide to the meaning of a disputed term" according to *Phillips*—and the understanding of those skilled in the art (the testimony of Dr. Keegstra and Dr. Bruce), it is clear that the "CTP" must be *naturally occurring*. *See* § IV.D., *supra*.

Indeed, the U.S. District Court for the Eastern District of Missouri—using the claim construction analysis endorsed by *Phillips*—reached this *exact conclusion*. *See* § IV.D.1., *supra*. After examining the claim language, the specification, and the prosecution history, the court held that a "'chloroplast transit peptide' means a *naturally occurring* series of amino acids that causes the transport of a polypeptide into a chloroplast." 7/2/03 Claim Construction Order (A161-62) (emphasis added.) "At the time of this patent application, the state of the knowledge of CTPs was such that *I do not believe that the patent contemplated that this term would include anything that might ever be invented that would function like a CTP.*" *Markman* Hearing Tr. at 166-67 (A33-34) (emphasis added).

Moreover, and as set forth above, the Missouri court was clearly correct in its analysis. *See* § IV.D.2., *supra*. The term "CTP" as understood by those of ordinary skill at the time, and the patent specification indicate that the term "CTP" appearing in claim 1 means a naturally occurring CTP. *Id.* Every example in the patent where a plant cell was transformed also describes a naturally occurring CTP. *Id.* Of the CTPs known to exist as of the 1985-86 time

REDACTED VERSION – PUBLICLY FILED

frame, all of them were naturally occurring.  *Id.*  The only amino acid sequence of a CTP set forth in the '835 patent is the naturally occurring petunia CTP from the petunia EPSPS gene.  *Id.*  Both Monsanto's expert (Dr. Keegstra) and Syngenta's expert (Dr. Bruce) agree that all the existing CTPs at the time were naturally occurring.  12/15/05 Keegstra Tr. at 36-38 (A169-70); 12/16/05 Bruce Tr. at 31-32 (A181).  Indeed, Dr. Keegstra does "not strongly" disagree with the Missouri court's construction because the CTPs known to exist at the time were in fact naturally occurring:

12/15/05 Keegstra Tr. at 37:13-38:8 (A169-70) (emphasis added).  Accordingly, for all the above reasons, Syngenta submits that this Court should hold, as did the Missouri court, that the CTP in context of the '835 patent, must be naturally occurring.

    2.    **Target the EPSPS Protein to the Chloroplast and Be Removed to Yield an Active Mature Protein**

As discussed above, the term "CTP" is a term that does not refer to a particular nucleotide or amino acid sequence.  Thus, it is essential to review the specification to determine how those

**Redacted**

REDACTED VERSION – PUBLICLY FILED

skilled in the art would understand the term. *Phillips*, 415 F.3d at 1313. The specification of the '835 patent specifically indicates that the CTP targets the EPSPS protein to the chloroplast and is removed to leave a mature protein: "The CTP leader sequence causes the polypeptide to be imported into chloroplasts, and the CTP leader sequence encoded by the plant-derived EPSPS gene is believed to be removed from the remainder of the polypeptide so that an active portion of the EPSPS polypeptide exists and functions inside the chloroplast." '835 patent, at col. 4, lines 28-34 (A11). Furthermore, as scientists skilled in the art, both Monsanto's expert and Syngenta's expert *agree* that cleavage is a determining factor in assessing whether a particular element is a transit peptide. 12/15/05 Keegstra Tr. at 50-51 (A173); 12/16/05 Bruce Tr. at 31-32 (A181). As testified to by Dr. Keegstra,

> 12/15/05 Keegstra Tr. at 150:3-5 (A178) (emphasis

added); *see* § IV.E, *supra*.

Defining the CTP as requiring cleavage is also consistent with the decision of the Missouri court in the prior case. There, Bayer and Monsanto disputed the meaning of the term "import" that appears in claim 1. Bayer argued that the phrase "permits the fusion polypeptide to be imported into a chloroplast of a plant cell" means that entire CTP/EPSPS needed to be imported into the chloroplast intact. *Markman* Hearing Tr. at 169-71 (A36-38). The Missouri court disagreed, stating that "I think when the patent is read as a whole, it is clear that Monsanto was claiming the process of getting this fusion gene into the chloroplast, and whichever of the two ways it worked, once it began to enter the chloroplast, both are covered, and the important thing is the business gets in, *not the timing of the cleavage* of the CTP from the EPSPS, and that's really what this issue is about. *It's not about importing. It's really an issue about when*

Redacted

REDACTED VERSION – PUBLICLY FILED

*does cleavage occur, and nothing in the word 'importing' suggests that that's an issue covered by the patent."* *Markman* Hearing Tr. at 171 (A38) (emphasis added).

While Syngenta agrees that the *timing* of the cleavage is not important, what is significant to the current claim construction issue is that the Missouri court recognized that *cleavage of the CTP does in fact take place.* Although whether cleavage is required for a CTP was not an issue for resolution by the court in the prior case, there was no dispute that cleavage was a defining feature of the CTP as both experts believed that to be the case, none of the parties argued to the contrary, and it is evident that the Missouri court assumed cleavage to be an intrinsic feature of a CTP. Thus, as the specification, the expert testimony, and the Missouri decision all demonstrate that those skilled in the art as of the 1985-86 time frame understood that the CTP must be removed (or cleaved) from the mature protein (*see* § IV.E, *supra*), this Court should interpret the term CTP as a naturally occurring amino acid sequence that functions to target the EPSPS protein to the chloroplast and be cleaved to leave the mature protein.

### D.    Syngenta's GA21 Corn Product Does Not Infringe as It Does Not Contain a CTP Within the Meaning of Claim 1 of the '835 Patent

Monsanto and DeKalb bear the burden of proving by a preponderance of the evidence that Syngenta's GA21 corn product infringes claims 1, 5, and 6 of the '835 patent. *See, e.g., Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). In order for a plaintiff to prove infringement, the plaintiff "must show that every limitation of the claims asserted to be infringed is found in the accused device." *Glaxo Inc. v. Novopharm Ltd.*, 110 F.3d 1562, 1565 (Fed. Cir. 1997). Claim 1 is an independent claim. Claims 5 and 6 depend from claim 1, and thus, retain all the limitations of claim 1. Consequently, if claim 1 is held not to be infringed, claims 5 and 6

cannot be infringed. *See, e.g., Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

Determining whether an accused product infringes a patent claim is a two-step process. *See, e.g., Cybor Corp. v. FAS Techns., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). "The first step in any such analysis is to construe the claims at issue, which is a matter of law for the court." *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). Second, the fact finder compares the properly construed claim to the accused product. *See, e.g., Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002).

Here, there is no question that one of the elements of claim 1 of the '835 patent is a CTP. Syngenta submits that its GA21 corn product does not contain a CTP within the meaning of claim 1 of the '835 patent and thus Monsanto cannot prove infringement or demonstrate that there are material facts in genuine dispute to avoid summary judgment of non-infringement.

As discussed above, the "CTP" set forth in claim 1 of the '835 patent must (1) be naturally occurring, (2) target the EPSPS protein to the chloroplast, and (3) be removed to leave the mature protein. GA21 contains an "OTP" that targets the EPSPS to the chloroplast and is then removed, leaving a mature EPSPS protein. *See* § IV.A, *supra*. Thus, the OTP satisfies criteria (2) and (3) of the definition of a "CTP" as that term is used in the '835 patent. However, the OTP *fails* to satisfy criterion (1) because it is unquestionably not naturally occurring. *See id.* There is no dispute that the three pieces of DNA encoding the OTP do not occur together in nature. Thus, the OTP is not a "CTP" within the meaning of claim 1 of the '835 patent, and there can be no infringement as a matter of law.

Moreover, in assessing whether the OTP is naturally occurring, it would be improper to examine the individual pieces of DNA that were joined together to encode the OTP and then

REDACTED VERSION – PUBLICLY FILED

look to see, if separated, what those individual pieces of DNA would encode. Such an exercise would ignore the very essence of the OTP as a composite product. The requirement (3) of the definition of the CTP—that it *must be removed to leave a mature protein*—provides strong support for examining the OTP as a whole rather than considering just one of the components of the OTP. Specifically, there is no dispute that the *entire OTP as a whole* is removed to leave the mature EPSPS protein. 12/15/05 Keegstra Tr. at 47-50 (A172-73). By definition, therefore, the entire OTP must be considered to determine whether it is a "CTP" within the meaning of claim 1 of the '835 patent. The entire OTP, however, is not naturally occurring and therefore cannot be considered a CTP within the meaning of claim 1 of the '835 patent.

Once again, the best evidence that the entire OTP should be examined as a whole comes from Monsanto's own expert, Dr. Keegstra:

---

[2] Reissue Patent No. 36,449 is a reissue of the '471 patent and also describes the OTP (A193-99).

**Redacted**

REDACTED VERSION – PUBLICLY FILED

12/15/05 Keegstra Tr. at 47:25-51:2 (A172-73) (emphasis added).

Accordingly, if this Court finds—as Syngenta argues it should—that removal or cleavage is a defining feature of the CTP, then there can be no question that the entire OTP must be analyzed to determine whether it meets the CTP element of claim 1 of the '835 patent.  If the entire OTP is examined, then there is no question that it does not occur naturally and cannot be a CTP within the meaning of claim 1 of the '835 patent.  Accordingly, as GA21 lacks an essential element of claim 1, it cannot infringe either that claim or any claims that depend on claim 1.  *See*, *e.g.*, *Glaxo*, 110 F.3d at 1565.

Redacted

## VI.    CONCLUSION

For all the above reasons, Syngenta respectfully requests that the Court enter summary judgment that Syngenta's GA21 corn product does not infringe claims 1, 5, and 6 of the '835 patent.

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Of counsel:

Michael J. Flibbert
Howard W. Levine
Jared S. Cohen
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000                            Attorneys for Defendants

Dated: January 11, 2006

REDACTED VERSION – PUBLICLY FILED

Appendix

# United States Patent [19]

## Shah et al.

REDACTED VERSION – PUBLICLY FILED

[11] Patent Number: 4,940,835

[45] Date of Patent: Jul. 10, 1990

[54] GLYPHOSATE-RESISTANT PLANTS

[75] Inventors: Dilip M. Shah, Creve Coeur; Stephen G. Rogers, Chesterfield; Robert B. Horsch; Robert T. Fraley, both St. Louis, all of Mo.

[73] Assignee: Monsanto Company, St. Louis, Mo.

[21] Appl. No.: 879,814

[22] Filed: Jul. 7, 1986

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 792,390, Oct. 29, 1985, abandoned, which is a continuation-in-part of Ser. No. 763,482, Aug. 7, 1985, abandoned.

[51] Int. Cl.5 .......................... A01H 1/04; C12N 15/00; C12N 5/00; C07H 15/12

[52] U.S. Cl. .................................. 800/205; 435/172.3; 435/240.4; 435/320; 536/27; 935/35; 935/47; 935/48; 935/64; 935/67; 800/DIG. 44; 800/DIG. 43; 800/DIG. 26; 800/DIG. 14; 800/DIG. 17; 800/DIG. 63; 800/DIG. 27; 800/DIG. 24; 800/230; 800/DIG. 67

[58] Field of Search .......................... 435/172.3, 68, 317, 435/240, 240.4, 320; 536/27; 47/58; 800/1

[56] References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,535,060 | 8/1985 | Comai | 435/317 |
| 4,769,061 | 9/1988 | Comai | 71/86 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 0115673 | 8/1984 | European Pat. Off. | 935/14 |

### OTHER PUBLICATIONS

Smart et al., J. of Biol. Chem (1985) 260, 30, pp. 16338–16346.
Lee, T. T., J. Plant Growth Regul (1982) 1:37–48.
Jensen, R. A., Physiol. Plant (1985) 66:164–168.
Rubin et al., Plant Physiol. (1982) 70, 833–839.
Mousdale et al., Planta (1985) 163:241–249.
'dAmato, T. A., et al., Planta (1984) 162:104–108.
Rothe, G. M., et al. Planta (1983) 157:358–366.
Singh et al., Arch. of Biochem & Bioph. (1985) 243:2 pp. 374–384.
Saijo et al., Agric. Biol. Chem (1979) 43 (7) pp. 1427–1432.
Schmidt et al., P.N.A.S. (1983) 80, 2632–2636.

Stalker et al., J. Biol. Chem (1985) 260:8 pp. 4724–4728.
Science (1986) 231: 1360–1361.
Biotechnology (1984) Nov., pp. 944.
Cole et al., Weed Research (1983) 23, 173–183.
Rubin et al. Plant Physiol. (1984)75, pp. 839–945.
Guilley et al. (1982) "Transcription of CAMV DNA. . ." Cell 30: 763–73.
Mazur et al. (1985) "Cloning Herbicide. . . " World Biotech Rep 2: 97–108.
Goodman et al. (1987) "Gene Transfer in Crop. . ." Science 236: 48–54.
Amrhein et al. (1983) "Biochemical Basis For. . ." FEBS Letters 157: 191–6.
Najziger et al. (1984) "Selection & Characterization. . ." Plant Physiol 76: 571–4.
Vanden Broeck et al. (1985) "Targeting of. . ." Nature 313: 358–63.
Koziel et al. (1984) "A Cauliflower Mosaic Virus. . ." J. Mol. Appl. Genet 2: 549–62.
Rogers et al (1983) Appl. Environ Microbiol 46 : 37–43.
Comai et al. (1983) Science 221: 370–1.

Primary Examiner—Charles F. Warren
Assistant Examiner—David T. Fox
Attorney, Agent, or Firm—Dennis R. Hoerner, Jr.; James W. Williams, Jr.; Larry R. Swaney

[57] ABSTRACT

This invention involves a cloning or expression vector comprising a gene which encodes 5-enolpyruvylshikimate-3-phosphate synthase (EPSPS) polypeptide which, when expressed in a plant cell contains a chloroplast transit peptide which allows the polypeptide, or an enzymatically active portion thereof, to be transported from the cytoplasm of the plant cell into a chloroplast in the plant cell, and confers a substantial degree of glyphosate resistance upon the plant cell and plants regenerated therefrom.

The EPSPS coding sequence may be ligated to a strong promoter, such as the 35S promoter from cauliflower mosaic virus, to create a chimeric gene. Such genes can be inserted into plant transformation vectors, and subsequently introduced into plant cells. Plant cells transformed using such genes and plants regenerated therefrom have been shown to exhibit a substantial degree of glyphosate resistance.

59 Claims, 8 Drawing Sheets



A1

REDACTED VERSION – PUBLICLY FILED

**U.S. Patent**     Jul. 10, 1990     Sheet 1 of 8     **4,940,835**



FIGURE 1

**U.S. Patent**    Jul. 10, 1990    Sheet 2 of 8    **4,940,835**



FIGURE 2

A3

U.S. Patent     Jul. 10, 1990     Sheet 3 of 8     4,940,835

```
  1 GAATTCCCTCAATCTTTACTTTCAAGAATGGCACAAATTAACAACATGGCACAAGGGATA  60
              Met Al aGl nIl eAsn AsnMetA la Gl nGl yI le

 61 CAAACCCTTAATCCCAATTCCAATTTCCATAAACCCCAAGTTCCTAAATCTTCAAGTTTT 120
     Gl nThr LeuAsnPr oAsnSer AsnPheHi sLys Pr oGl nVal Pr oLysSer Ser Phe

121 CTTGTTTTTGGATCTAAAAAACTGAAAAATTCAGCAAATTCTATGTTGGTTTTGAAAAAA 180
     LeuVal PheGl ySer LysLys LeuLysAsnSer Al aAsnSer Met LeuVal LeuLysLys

181 GATTCAATTTTTATGCAAAAGTTTTGTTCCTTTAGGATTTCAGCATCAGTGGCTACAGCA 240
     AspSer I l ePheMet Gl nLys PheCysSer PheArgI l eSer Al aSer Val Al aThr Al a

241 CAG
     Gl n
```

FIGURE 3

```
  1 GAATTCCCTCAATCTTTACTTTCAAGAATGGCACAAATTAACAACATGGCTCAAGGGATA    60
    Met Al aGl nIl eAsn AsnMet Al aGl nGl yIl e

 61 CAAACCCTTAATCCCAATTCCAATTTCCATAAACCCCAAGTTCCTAAATCTTCAAGTTTT  120
    Gl nThr LeuAsnPro AsnSer AsnPheHi sLysProGl nVal ProLysSerSerSerPhe

121 CTTGTTTTTGGATCTAAAAAACTGAAAAATTCAGCAAATTCTATGTTGGTTTTGAAAAAA  180
    LeuVal PheGl ySerLysLys LeuLysAsnSer Al aAsnSer Met LeuVal LeuLysLys

181 GATTCAATTTTTATGCAAAAGTTTTGTTCCTTTAGGATTTCAGCATCAGTGGCTACAGCA  240
    AspSer Il ePheMet Gl nLysPheCysSerPheArg Il eSer Al aSer Val Al aThr Al a
    |··· >mature EPSPS

241 CAGAAGCCTTCTGAGATAGTGTTGCAACCCATTAAAGAGATTTCAGGCACTGTTAAATTG  300
    Gl nLysProSer Gl uIl eVal LeuGl nProIl eLysGl uIl eSer Gl yThr Val LysLeu

301 CCTGGCTCTAAATCATTATCTAATAGAATTCTCCTTCTTGCTGCCTTATCTGAAGGAACA  360
    ProGl ySerLysSer LeuSer AsnArg Il eLeuLeuLeuAl a Al aLeuSer Gl uGl yThr

361 ACTGTGGTTGACAATTTACTAAGTAGTGATGATATTCATTACATGCTTGGTGCCTTGAAA  420
    ThrVal Val AspAsnLeuLeuSer SerAspAsp Il eHi sTyr Met LeuGl yAl aLeuLys

421 ACACTTGGACTGCATGTAGAAGAAGATAGTGCAAACCAACGAGCTGTTGTTGAAGGTTGT  480
    Thr LeuGl yLeuHi sVal Gl uGl uAspSer Al aAsnGl nArg Al aVal Val Gl uGl yCys

481 GGTGGGCTTTTCCCTGTTGGTAAAGAGTCCAAGGAAGAAATTCAACTGTTCCTTGGAAAT  540
    Gl yGl yLeuPheProVal Gl yLysGl uSerLysGl uGl uIl eGl nLeuPheLeuGl yAsn

541 GCAGGAACAGCAATGCGGCCACTAACAGCAGCAGTTACTGTAGCTGGTGGAAATTCAAGG  600
    Al aGl yThrAl aMet ArgProLeuThr Al aAl aVal Thr Val Al aGl yGl yAsnSer Arg

601 TATGTACTTGATGGAGTTCCTCGAATGAGAGAGACCAATTAGTGATTTGATGGT  660
    Tyr Val LeuAspGl yVal Pro ArgMet ArgGl uAr gProIl eSer AspLeuVal AspGl y

661 CTTAAACAGCTTGGTCAGAGGTTGATTGTTTCCTTGGTACGAAATGTCCTCCTGTTCGA  720
    LeuLysGl nLeuGl yAl aGl uVal Il eVal AspCysPheLeuGl yThr LysCysProProVal Arg

721 ATTGTCAGCAAGGGAGGTCTTCCTGGAGGGAAGGTCAAGCTCTCTGGATCCATTAGCAGC  780
    Il eVal SerLysGl yGl yLeuProGl yGl yLysVal LysLeu SerGl ySerIl eSerSer

781 CAATACTTGACTGCTCTGCTTATGGCTGCTCCACTGGCTTTAGGAGATGTGGAGATTGAA  840
    Gl nTyr LeuThr Al aLeuLeu Met Al aAl aProLeuAl aLeu Gl yAspVal Gl uIl eGl u

841 ATCATTGACAAACTAATTAGTGTACCTTATGTCGAGATGACATTGAAGTTGATGGAGCGA  900
    Il eIl eAspLysLeuIl eSer Val ProTyr Val Gl uMet Thr LeuLysLeuMet Gl uArg

901 TTTGGTATTTCTGTGGAGCACAGTAGTAGCTGGGACAGGTTCTTTGTCCGAGGAGGTCAG  960
    PheGl yIl eSer Val Gl uHi sSer SerSer Tr pAspArgPhe PheVal Ar gGl yGl yGl n

961 AAATACAAGTCTCCTGGAAAAGCTTTTGTCGAAGGTGATGCTTCAAGTGCTAGCTACTTC 1020
    LysTyr LysSer ProGl yLysAl aPheVal Gl uGl yAspAl aSer SerAl aSer Tyr Phe

1021 TTGGCTGGTGCAGCAGTCACAGGTGGAACTATCACTGTTGAAGGTTGTGGGACAAACAGT 1080
    LeuAl aGl yAl aAl aVal Thr Gl yGl yThr Il eThr Val Gl uGl yCysGl yThr AsnSer

1081 TTACAGGGGGATGTCAAATTTGCTGAGGTACTTGAAAAAATGGGAGCTGAAGTTACGTGG 1140
    LeuGl nGl yAspVal LysPhe Al aGl uVal LeuGl uLysMet Gl yAl aGl uVal ThrTrp
```

FIGURE 4a

A5

1141  ACAGAGAACAGTGTCACAGTCAAAGGACCTCCAAGGAGTTCTTCTGGGAGGAAGCATTTG  1200
      ThrGluAsnSerValThrValLysGlyProProArgSerSerSerGlyArgLysHisLeu

1201  CGTGCCATTGATGTGAACATGAATAAAATGCCTGATGTGTTGCCCATGACACTTGCTGTTGTT  1260
      ArgAlaIleAspValAsnMetAsnLysMetProAspValAlaMetThrLeuAlaValVal

1261  GCACTTTATGCTGATGGTCCCACAGCTATAAGAGATGTTGCTAGCTGGAGAGTCAAGGAA  1320
      AlaLeuTyrAlaAspGlyProThrAlaIleArgAspValAlaSerTrpArgValLysGlu

1321  ACTGAGCGCATGATCGCCATATGCACAGAACTTAGGAAGTTAGGAGCAACCGTTGAAGAA  1380
      ThrGluArgMetIleAlaIleCysThrGluLeuArgLysLeuGlyAlaThrValGluGlu

1381  GGACCAGACTACTGCATAATCACCCCACCGGAGAAACTAAATGTGACCGATATTGATACA  1440
      GlyProAspTyrCysIleIleThrProProGluLysLeuAsnValThrAspIleAspThr

1441  TACGATGATCACAGGAATGCCATGGCTTTTCTCTGCTGCTTGTGCAGATGTTCCCGTC  1590
      TyrAspAspHisArgAsnAlaMetAlaPheSerLeuAlaCysAlaAspValProVal

1501  ACCATCAATGACCCTGGCTGCACGCGGAAAACCTTCCCTAACTACTTTGATGTACTTCAG  1550
      ThrIleAsnAspProGlyCysThrArgLysThrPheProAsnTyrPheAspValLeuGln

1561  CAGTACTCCAAGCATTGAACCGCTTCCCTATATTGCAGAATGTAAGTAAGAATATGTGAA  1620
      GlnTyrSerLysHisEnd

1621  GAGTTTAGTTCTTGTACAAGACAGGCTACGACTGCCTGGTATCAGAACCACAATGGGTTC  1660

1681  CATTTCAGTTCAGAAGGGCATTCCAAGGCTTCGAACTCTTTACTTATTTGCGAGTGATGA  1740

1741  AATGTATTTGTTAGAGTTGAGCTTCTTTTTGTCTTTAAGGAATGTACACTAATAGAGTTA  1890

1801  AGAATTACTAGTATGGGCCAGTGTAAGGAGTACTATTACTCTTTGCTTATTTTATTGATT  1860

1861  GAGTTTTGTCAAGGATCTGGCTTTGTCAAGAATTACTGGTTAATTTTATTGACAATCTCA  1920

1921  TGTGTCTAAATGAAATTGTTTGATAAAAAAAAAAAAAAAAAAAAAAAAAGGAATTC  1976



FIGURE 4b

A6





FIGURE 5

A7