REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-305-SLR |
| v. | ) ) | (lead case) |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | |
| Defendants. | ) ) | |
| DEKALB GENETICS CORPORATION, | ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-355-SLR |
| v. | ) ) | **CONTAINS RESTRICTED** |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | **CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER - FILED** |
| Defendants. | ) ) ) | **UNDER SEAL** |

SYNGENTA'S OPENING BRIEF IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
OF THE LUNDQUIST PATENTS

Of counsel:
Michael J. Flibbert
Howard W. Levine
Jennifer A. Johnson
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

Attorneys for Defendants

Dated: January 11, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

REDACTED VERSION – PUBLICLY FILED

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INDEX OF EXHIBITS ................................................................................................... v

I.  INTRODUCTION ................................................................................................ 1

II.  NATURE AND STAGE OF PROCEEDINGS ................................................. 2

III.  SUMMARY OF THE ARGUMENT .................................................................. 3

IV.  STATEMENT OF UNDISPUTED MATERIAL FACTS ................................. 5

    A.  GA21 Corn ..................................................................................................... 5

    B.  The Asserted Process Claims ....................................................................... 6

    C.  DeKalb's Admissions That Syngenta Never Used the Claimed
        Bombardment Process ................................................................................. 6

V.  ARGUMENT ........................................................................................................ 8

    A.  Legal Standards for Infringement of Patented Processes ........................ 8

    B.  Syngenta Has Not Directly Infringed Independent Claim 1 of the
        Lundquist Patents Under Section 271(a) .................................................. 9

        1.  Claim 1 of Each Patent Requires the Performance of a Three-Step
            Process for Producing a Transgenic Corn Plant ........................... 9

        2.  DeKalb Has Admitted That Syngenta Never Performed Any of the
            Process Steps of Claim 1 of the Lundquist Patents .................... 10

        3.  DeKalb Performed the Process Steps of Claim 1 of the Lundquist
            Patents Before Either Patent Issued ........................................... 10

    C.  Syngenta Has Not Directly Infringed the Dependent Claims of the
        Lundquist Patents Under Section 271(a) ................................................ 11

        1.  Claims 5 and 6 of the '863 Patent Incorporate by Reference the
            Three-Step Process of Claim 1 .................................................... 11

        2.  Claims 4-9 of the '880 Patent Incorporate by Reference the Three-
            Step Process of Claim 1 ................................................................ 13

            a.  DeKalb Previously Admitted That Claims 4-9 Depend
                From Claim 1 .................................................................... 14

REDACTED VERSION – PUBLICLY FILED

b.    The Illinois District Court Construed the '880 Patent Claims as Requiring Microprojectile Bombardment.................... 15

c.    Claims 4-9, by Their Form and Language, Depend From Claim 1...................................................................................... 16

d.    The Dependency of Claims 4-9 on Claim 1 Follows From the Prosecution History................................................................ 17

3.    Given That the Asserted Claims Incorporate the Process Steps of Claim 1, Syngenta as a Matter of Law Cannot Have Infringed Them ...................................................................................................... 19

D.    Section 271(g) Does Not Save DeKalb's Flawed Infringement Contentions....... 21

E.    Syngenta Did Not Indirectly Infringe Any Claim of the Lundquist Patents Under Section 271(b) or (c) .............................................................................. 24

VI.    CONCLUSION.......................................................................................................... 25

REDACTED VERSION – PUBLICLY FILED

## TABLE OF AUTHORITIES

**Cases**

*Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
    228 F.3d 1338 (Fed. Cir. 2000).............................................................................................. 22

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................................. 8

*Bloom Eng'g Co. v. North Am. Mfg. Co.*,
    129 F.3d 1247 (Fed. Cir. 1997)....................................................................................... 13, 17

*British Telecomm. v. Qwest Communications Int'l Inc.*,
    Nos. 03-526-SLR, 03-527-SLR, 03-528-SLR (D. Del. Feb. 24, 2004)........................... 22, 23

*Canton Bio-Medical, Inc. v. Integrated Liner Techs., Inc.*,
    216 F.3d 1367 (Fed. Cir. 2000)....................................................................................... 3-4, 8

*DeKalb Corp. v. Syngenta Seeds, Inc.*,
    No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) .................................................................. 3

*DeKalb Genetics Corp. v. Northrup King Co.*,
    No. 96 C 50169 (N.D. Ill. filed June 10, 1996) .................................................................. 15

*Desper Prods., Inc. v. QSound Labs, Inc.*,
    157 F.3d 132 (Fed. Cir. 1998)............................................................................................... 20

*EMI Group N. Am. v. Intel Corp.*,
    157 F.3d 887 (Fed. Cir. 1998)................................................................................................. 8

*General Foods Corp. v. Studiengesellschaft Kohle mbH*,
    972 F.2d 1272 (Fed. Cir. 1992)............................................................................................... 8

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*,
    205 F.3d 1377 (Fed. Cir. 2000)............................................................................................. 20

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993)......................................................................................... 5, 8, 24

*London v. Carson Pirie Scott & Co.*,
    946 F.2d 1534 (Fed. Cir. 1991)............................................................................................. 20

*MLMC, Ltd. v. Airtouch Communications, Inc.*,
    172 F.Supp. 2d 557 (D. Del. 2001)....................................................................................... 21

REDACTED VERSION – PUBLICLY FILED

*Monsanto Co. v. Syngenta Seeds, Inc.*,
No. 04-CV-0305 (D. Del. filed May 12, 2004) ....................................................... 3

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
252 F.3d 1306 (Fed. Cir. 2001)................................................................. 24

*Nike, Inc. v. Wolverine World Wide, Inc.*,
43 F.3d 644 (Fed. Cir. 1994)................................................................... 8

*Oak Tech., Inc. v. Int'l Trade Comm'n*,
248 F.3d 1316 (Fed. Cir. 2001)................................................................ 20

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*,
272 F.3d 1335 (Fed. Cir. 2001)............................................................. 5, 6

*Southwall Techs., Inc. v. Cardinal IG Co.*,
54 F.3d 1570 (Fed. Cir. 1995)................................................................ 19

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*,
870 F.2d 1546 (Fed. Cir. 1989)............................................................ 4, 20

*Wolverine World Wide, Inc. v. Nike, Inc.*,
38 F.3d 1192 (Fed. Cir. 1994)................................................................ 20

**Statutes, Rules, and Other Authorities**

35 U.S.C. § 112.................................................................................. passim

35 U.S.C. § 271(a) .............................................................................. passim

35 U.S.C. § 271(b) .............................................................................. 5, 24

35 U.S.C. § 271(c) .............................................................................. 5, 24

35 U.S.C. § 271(g) .............................................................................. passim

Fed. R. Civ. P. 56(c) .......................................................................... 8

*Manual of Patent Examining Procedure*,
§ 717.04 (6th Ed. Rev. 2, July 1996) ...................................................... 19

Senate Report No. 100-83, Process Patents Amendments Act of 1987........................ 23

REDACTED VERSION – PUBLICLY FILED

## INDEX OF EXHIBITS

| Appendix Pages | Description |
|---|---|
| A1-35 | U.S. Patent No. 6,013,863 and Certificate of Correction |
| A36-60 | U.S. Patent No. 5,538,880 |
| A61-82 | DeKalb's Second Supplemental Responses to Syngenta's Interrogatories Nos. 1 & 2 and excerpts from Exhibit 3 to those responses |
| A83-90 | DeKalb's Responses to Syngenta's Third Set of Interrogatories (Nos. 13-16) |
| A91-95 | Transcript excerpts from December 7, 2005 deposition of John Finer |
| A96-97 | Letter from T. Miller to M. Flibbert dated December 20, 2005 |
| A98-106 | Excerpts from DeKalb Genetics Corporation's Second Amended and Supplemental Responses to Defendant Northrup King's Contention Interrogatories Nos. 1-13, *DeKalb Genetics Corp. v. Northrup King Co.*, No. 96 C 50169 (N.D. Ill. filed June 10, 1996) |
| A107-108 | Excerpt from transcript of proceedings before the Honorable P. Michael Mahoney on May 16, 2005, *DeKalb Genetics Corp. v. Syngenta Seeds, Inc. et al.*, No. 04 C 50323 (N.D. Ill. filed July 27, 2004) |
| A109-110 | Order adopting Report and Recommendation of Special Master Regarding Claim Construction, *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, Nos. 96 C 50112, 96 C 50114, 96 C 50169, 96 C 50239, 96 C 50241, 96 C 50284, 96 C 50186 (N.D. Ill. filed June 10, 1996) |
| A111-166 | Report and Recommendation of Special Master Regarding Claim Construction, *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, Nos. 96 C 50112, 96 C 50114, 96 C 50169, 96 C 50239, 96 C 50241, 96 C 50284, 96 C 50186 (N.D. Ill. filed June 10, 1996) |
| A167-169 | Supplemental Amendment filed on March 28, 1995 in Application Ser. No. 08/249,458 |
| A170-171 | Excerpts from Amendment filed on January 27, 1994 in Application Ser. No. 08/249,458 |
| A172 | PTO's Examiner Interview Summary Record for interview conducted on November 15, 1995 in Application Ser. No. 08/249,458 |
| A173-175 | PTO's Notice of Allowability dated November 16, 1995 in Application Ser. No. 08/249,458 |
| A176-180 | Amendment Under 37 C.F.R. § 1.312 filed on December 8, 1995 in Application Ser. No. 08/249,458 |
| A181 | PTO's Response to Rule 312 Communication in Application Ser. No. 08/249,458 |
| A182-183 | Excerpt from Senate Report No. 100-83 (1987), Process Patents Amendments Act of 1987 |
| A184-192 | *British Telecomm. v. Qwest Commc'ns Int'l Inc.*, Nos. 03-526-SLR, 03-527-SLR, 03-528-SLR, slip op. (D. Del. Feb. 24, 2004) |
| A193 | Index of Claims in Application Ser. No. 08/249,458 |
| A194-95 | *Manual of Patent Examining Procedure*, § 717.04 (6th Ed. Rev. 2, July 1996) |

REDACTED VERSION – PUBLICLY FILED

## I.    INTRODUCTION

Defendants Syngenta Seeds, Inc., Syngenta Biotechnology Inc., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (collectively "Syngenta") respectfully submit this brief in support of their motion for summary judgment that Syngenta's marketing and sale of glyphosate-tolerant GA21 corn has not infringed (and will not infringe) any claim of the patents asserted against it by plaintiff DeKalb Genetics Corporation ("DeKalb")—U.S. Patent Nos. 6,013,863 ("the '863 patent") (A1-35) and 5,538,880 ("the '880 patent") (A36-60) (collectively "the Lundquist patents").

The Lundquist patents are directed to a "bombardment" process for producing a herbicide-resistant transgenic (genetically modified) corn plant. All of the claims of both patents are *process* claims; there is no product claim in either patent. Independent claim 1 of the '863 patent recites a process involving three steps: (i) "bombarding" corn cells with DNA; (ii) "selecting" transformed cells; and (iii) "regenerating" a fertile transgenic corn plant from those transformed cells (referred to herein as "process steps (i)-(iii)"). Independent claim 1 of the '880 patent claims a process requiring what are essentially the same three process steps.

DeKalb has acknowledged in discovery that Syngenta never used the claimed bombardment process—including *any* of process steps (i)-(iii)—to make any GA21 corn product. In fact, DeKalb has admitted that *only DeKalb itself*, not Syngenta, carried out process steps (i)-(iii) with respect to GA21 corn, and that it did so between July 1993 and February 1994, before either Lundquist patent issued (in 1996 and 2000). Indeed, DeKalb has specifically conceded that it is no longer charging Syngenta with infringement of independent claim 1 of either patent.

- 1 -

REDACTED VERSION – PUBLICLY FILED

DeKalb nonetheless argues that Syngenta has infringed claims 5-6 of the '863 patent and claims 4-9 of the '880 patent. Each of these claims, however, depends from claim 1 of each respective patent and requires process steps (i)-(iii) to be performed plus one or more additional steps. Because Syngenta has not infringed claim 1 of either patent, it cannot, as a matter of law, infringe claims that depend from claim 1.

Indeed, DeKalb cannot prevail on its infringement claim as a matter of settled law for three separate reasons: (1) one cannot infringe a process patent claim without carrying out all the steps of the claim; (2) one cannot infringe a dependent claim without infringing the independent claim from which the dependent claim depends; and (3) one cannot infringe a process claim without carrying out all the claimed steps during the term of the patent.

The Federal Circuit has consistently held that the "all-elements rule" of patent infringement applies to process patents, such that all of the claimed steps of a patented process must be performed in an infringing process. The Federal Circuit has also repeatedly held that it is "axiomatic" and a "fundamental principle of patent law" that dependent claims cannot be infringed unless the claims from which they depend have also been infringed. And the requirement for infringing activity "during the term of the patent" is an express requirement of the patent infringement statute, 35 U.S.C. § 271(a).

DeKalb's erroneous infringement contentions raise pure questions of law, and DeKalb cannot prevail on each of several legal grounds. Accordingly, this Court should enter summary judgment of non-infringement in Syngenta's favor.

## II.    NATURE AND STAGE OF PROCEEDINGS

On May 12, 2004, Syngenta announced that it had acquired rights to GA21 corn technology from Bayer CropScience, a successor of Rhone-Poulenc Agro, S.A. ("RPA"). The same day, Monsanto Company, together with Monsanto Technology LLC, sued Syngenta for

- 2 -

REDACTED VERSION – PUBLICLY FILED

infringement of U.S. Patent No. 4,940,835 ("the Shah patent") in this Court. *Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-CV-0305 (D. Del. filed May 12, 2004) ("the Shah action").

On July 27, 2004, DeKalb, a wholly owned subsidiary of Monsanto Company, sued Syngenta in the Northern District of Illinois, alleging that Syngenta had infringed the Lundquist patents in connection with Syngenta's proposed marketing of GA21 corn. *DeKalb Corp. v. Syngenta Seeds, Inc.*, No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) ("the Lundquist action").

The Shah and Lundquist actions both charged Syngenta with patent infringement in the use of GA21 corn, which is a genetically modified corn tolerant to the herbicide glyphosate. Accordingly, on May 19, 2005, the Illinois district court granted Syngenta's motion to transfer the Lundquist action to this Court. Docket Item ("D.I.") 92. This Court consolidated the Shah and Lundquist actions on August 23, 2005. D.I. 111.

The parties completed all discovery on December 19, 2005. D.I. 111. As detailed below, there are no material factual disputes precluding the grant of summary judgment of non-infringement in Syngenta's favor with regard to the Lundquist patents. As a matter of law, there can be no infringement of the process patent claims of either Lundquist patent because the claims all require process steps that DeKalb admits Syngenta never performed.

III.    SUMMARY OF THE ARGUMENT

1.    DeKalb first charges infringement of the Lundquist patents under 35 U.S.C. § 271(a). DeKalb has admitted, however, that Syngenta never performed any of process steps (i)-(iii) of claim 1 of either patent to make any GA21 corn product. Instead, DeKalb admits that only DeKalb itself, not Syngenta, used the claimed bombardment process to produce a transgenic corn plant. Because it is undisputed that Syngenta never carried out any of process steps (i)-(iii), Syngenta cannot be liable for direct infringement of claim 1 of either process patent under section 271(a). *See, e.g., Canton Bio-Medical, Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d

REDACTED VERSION – PUBLICLY FILED

1367, 1370 (Fed. Cir. 2000) ("Infringement of process inventions is subject to the 'all-elements rule' whereby each of the claimed steps of a patented process must be performed in an infringing process, literally or by an equivalent of that step . . . .").

2.    It is also undisputed that DeKalb—and not Syngenta—carried out the three-step bombardment process with respect to GA21 corn between July 1993 and February 1994, before the Lundquist patents issued (in 1996 and 2000). Thus, *no one* (including DeKalb) practiced the claimed three-step process to make any GA21 corn product during the term of either patent. This undisputed fact also precludes any finding of direct infringement of claim 1 of either patent under section 271(a). *See* 35 U.S.C. § 271(a) (direct infringement requires unauthorized use of the patented invention "during the term of the patent"). Indeed, DeKalb has admitted that it no longer contends that Syngenta infringed claim 1 of either patent.

3.    The asserted claims of the Lundquist patents (claims 5 and 6 of the '863 patent and claims 4-9 of the '880 patent) are dependent claims that depend, directly or indirectly, from independent claim 1 of each patent and therefore require the performance of process steps (i)-(iii) plus one or more additional steps (which are not relevant here). *See* 35 U.S.C. § 112, ¶ 4. Because Syngenta never performed any of process steps (i)-(iii) and did not infringe claim 1 of the Lundquist patents, as a matter of law Syngenta cannot have infringed these narrower dependent claims. *See, e.g., Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed . . . .").

4.    DeKalb's assertion that Syngenta directly infringed the Lundquist patent claims under 35 U.S.C. § 271(g) is likewise flawed. Section 271(g) was enacted to close a loophole in U.S. patent law and impose liability for the importation, sale, or use in the United States of a

REDACTED VERSION – PUBLICLY FILED

product made abroad by a process patented in the United States. The fundamental purpose underlying the enactment of section 271(g) thus does not apply to this case. DeKalb does not allege (nor can it) that Syngenta carried out the patented bombardment process abroad and then imported into the United States a product made by that process. Moreover, section 271(g) does not change the legal principles that are dispositive here: (1) the "all-elements rule" of patent infringement (which applies to process patents), (2) the related principle that dependent claims cannot be infringed unless the claims from which they depend have also been infringed, or (3) the requirement for infringing activity during the patent term. Section 271(g) therefore does not save DeKalb's flawed infringement contentions.

    5.    DeKalb's assertions of inducement and contributory infringement under 35 U.S.C. § 271(b) and (c) fail as a matter of law because there has been no direct infringement of the Lundquist patents by any party. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement or for contributory infringement is dependent upon the existence of direct infringement.").

## IV.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    GA21 Corn

    The product at issue in this case, GA21 corn, is a transgenic corn product that is tolerant to the herbicide glyphosate. The original GA21 transformation event resulted from a collaboration between RPA and DeKalb in which RPA provided the gene construct that was incorporated by DeKalb into the transformed corn plant. *See Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335, 1341-42 (Fed. Cir. 2001) (affirming judgment of fraud, trade secret misappropriation, and patent infringement against DeKalb in connection with the GA21 collaboration). To transform the corn cells with the RPA construct, DeKalb employed a three-step "bombardment" (or "biolistic") method. According to DeKalb's own interrogatory

- 5 -

REDACTED VERSION – PUBLICLY FILED

responses in this case, DeKalb (i) bombarded corn cells with DNA-coated microprojectiles, (ii)

selected a population of transformed cells, and (iii) regenerated a plant—referred to as the "R0

plant" and designated as "GA21"—from the transformed cells that were resistant to glyphosate.

*See* DeKalb's Second Supplemental Responses to Syngenta's Interrogatories Nos. 1 & 2, at 5-6,

12 (A65-66, 72).[1]

### B.    The Asserted Process Claims

DeKalb asserted in its First Amended Complaint that Syngenta infringed "the claims" of

the '863 patent and claims 1-9 of the '880 patent. D.I. 32 at 6. However, DeKalb subsequently

limited its infringement contentions to claims 5 and 6 of the '863 patent and claims 4-9 of the

'880 patent (all of which are process claims) and admitted that it no longer contends that

Syngenta infringed claim 1 of either patent. *See* DeKalb's Second Supplemental Responses to

Syngenta's Interrogatories Nos. 1 & 2, at 3-15 (A63-75); DeKalb's Responses to Syngenta's

Third Set of Interrogatories (Nos. 13-16), at 3, 6 (A85, 88). As will be discussed in detail below,

Syngenta contends that all of the asserted claims depend from claim 1 of their respective patents,

and thus incorporate by reference the three-step process required by claim 1 of both patents.

### C.    DeKalb's Admissions That Syngenta Never Used the Claimed
###        Bombardment Process

In its interrogatory responses, DeKalb admitted without qualification that DeKalb, not

Syngenta, performed process steps (i)-(iii) of claim 1 of the Lundquist patents when it produced

the first generation GA21 corn plants (R0 plants). For example, the only "evidence" DeKalb

cited in its interrogatory responses as showing that process steps (i)-(iii) of claim 1 of each patent

---

[1] It is unnecessary for the Court to delve into GA21 corn technology to resolve this motion. However, to the extent the Court is interested, the technology is described in the Federal Circuit's opinion in *Rhone-Poulenc Agro, S.A.* (*see* 27 F.3d at 1340-43).

REDACTED VERSION – PUBLICLY FILED

were performed was a petition filed by Monsanto and DeKalb with the USDA, which described

DeKalb's use of the bombardment process in generating Monsanto/DeKalb's Roundup Ready®

GA21 corn line. *See* DeKalb's Second Supplemental Responses to Syngenta's Interrogatories

Nos. 1 & 2, at 5-6, 12, Exh. 3 (A65-66, 72, 77-82). In addition, DeKalb stated that "DEKALB

generated R0 plants from transgenic corn event GA21 at its Mystic, Connecticut facility." *Id.* at

8, 14 (A68, 74).

Consistent with DeKalb's admissions in its interrogatory responses, DeKalb's expert on

infringement, Dr. John Finer, testified as follows at his deposition:

> Q.    Are you aware of any evidence that Syngenta ever
> performed any of the three steps of claim 1 of the '863 patent in
> connection with any GA21 corn product?
>
> A.    No. They could not have.
>
> Q.    Syngenta did not perform the bombardment, selection or
> regeneration steps with respect to GA21 corn. Is that correct?
>
> A.    They could not have, that's correct.
>
> Q.    Do you have any basis to contend that Syngenta infringed
> claim 1 of the '863 patent?
>
> A.    Claim 1, no.

Finer Tr. at 112 (A92).

Dr. Finer similarly admitted that Syngenta "could not have" performed any of the three

steps of claim 1 of the '880 patent in connection with any GA21 corn product and that he had no

basis to contend that Syngenta infringed claim 1 of the '880 patent. Finer Tr. at 129-30 (A94-

95).

DeKalb further admitted in its interrogatory responses that it performed the steps required

by claim 1 of both Lundquist patents before either patent issued. Specifically, DeKalb admitted

that, in generating the R0 plants from transgenic corn event GA21, DeKalb performed step (i) of

REDACTED VERSION – PUBLICLY FILED

claim 1 of the Lundquist patents on July 15, 1993, step (ii) on July 27, 1993, and step (iii) on February 25, 1994. A69, 75. The Lundquist patents, however, did not issue until 1996 and 2000. A1, 36. Thus, DeKalb has admitted that no party (including DeKalb) ever carried out process steps (i)-(iii) of claim 1 of the Lundquist patents during the term of either patent to make any GA21 corn product.

## V.    ARGUMENT

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994); *see also* Fed. R. Civ. P. 56(c). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.    Legal Standards for Infringement of Patented Processes

Infringement of a patented process "is subject to the 'all-elements rule' whereby each of the claimed steps of [the] patented process must be performed in [the] infringing process, literally or by an equivalent of that step . . . ." *Canton Bio-Medical*, 216 F.3d at 1370; *see also EMI Group N. Am. v. Intel Corp.*, 157 F.3d 887, 896 (Fed. Cir. 1998) ("For infringement of a process invention, all of the claimed steps of the process must be performed, either as claimed or by an equivalent step."); *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274 (Fed. Cir. 1992) (a patented process covers only the specific combination of claimed process steps, not any individual process step). In addition, "[a] method claim is directly infringed only by one practicing the patented method." *Joy Techs.*, 6 F.3d at 775 (vacating an injunction where no use of the patented method would occur during the patent term).

- 8 -

**B.    Syngenta Has Not Directly Infringed Independent Claim 1 of the Lundquist Patents Under Section 271(a)**

As noted above, Monsanto has rightly dropped its contention that Syngenta infringed claim 1 of the Lundquist patents. The reasons for non-infringement of those claims are important to the Court's determination of whether the asserted claims, all of which incorporate the requirements of claim 1, also are not infringed by Syngenta. Indeed, without infringement of claim 1 of either patent, the asserted dependent claims cannot, as a matter of law, be infringed.

**1.    Claim 1 of Each Patent Requires the Performance of a Three-Step Process for Producing a Transgenic Corn Plant**

Independent claim 1 of the '863 patent recites the following three-step bombardment process:

> 1.    A process for producing a fertile transgenic *Zea mays* [corn] plant comprising the steps of (i) *bombarding* intact regenerable *Zea mays* cells with DNA-coated microprojectiles, wherein said DNA comprises at least a selectable marker gene; (ii) *selecting* a population of transformed cells expressing the selectable marker gene; and (iii) *regenerating* a fertile transgenic plant therefrom, wherein said DNA is expressed so as to impart glyphosate resistance to said transgenic plant and is transmitted through a normal sexual cycle of said transgenic plant to progeny plants.

'863 patent at cols. 29-30 and Certificate of Correction (A33, 35) (emphasis added).

Similarly, independent claim 1 of the '880 patent recites essentially the same three-step process:

> 1.    A process for producing a fertile transgenic *Zea mays* plant comprising the steps of (i) *bombarding* intact regenerable *Zea mays* cells with DNA-coated microprojectiles, (ii) *identifying or selecting* a population of transformed cells, and (iii) *regenerating* a fertile transgenic plant therefrom, wherein said DNA is transmitted through a complete sexual cycle of said transgenic plant to its progeny, and imparts herbicide resistance thereto.

'880 patent at col. 22 (A59) (emphasis added).

- 9 -

Thus, according to the plain claim language (and without any dispute by DeKalb), claim 1 of each patent covers a three-step process for transforming corn cells by (i) "bombarding" the cells with "DNA-coated microprojectiles"; (ii) "selecting" (or "identifying or selecting") a population of transformed cells; and (iii) "regenerating" a fertile transgenic plant from those transformed cells. A33, 59. This bombardment process produces a glyphosate-resistant ('863 patent) or herbicide-resistant ('880 patent) transgenic corn plant, which is known as the "R0" generation plant. *See, e.g.,* '863 patent at col. 1, lines 13-14 (A19) (stating that the invention relates to a process for "producing transgenic plants via particle bombardment"); *id.* at col. 18, lines 36-37 (A27) ("The plants regenerated from the transformed callus are referred to as the R0 generation or R0 plants."). Claim 1 of each patent contains other limitations, but those limitations need not be considered for purposes of the present motion.

### 2. DeKalb Has Admitted That Syngenta Never Performed Any of the Process Steps of Claim 1 of the Lundquist Patents

As explained above, DeKalb has admitted that it, not Syngenta, performed process steps (i)-(iii) of claim 1 of each patent in producing the R0 generation GA21 corn plants, and that it does not contend that Syngenta practiced or infringed claim 1 of either patent. *See* discussion *supra* pp. 6-8 (§ IV.C). Accordingly, Syngenta cannot be liable for direct infringement of claim 1 of either patent in connection with any GA21 corn product under section 271(a), either literally or under the doctrine of equivalents.

### 3. DeKalb Performed the Process Steps of Claim 1 of the Lundquist Patents Before Either Patent Issued

Syngenta also cannot have directly infringed the Lundquist patents under section 271(a) because Syngenta did not perform the three steps of claim 1 of either patent "during the term of the patent," as required by section 271(a). Here, DeKalb admits that, in generating the R0 plants from transgenic corn event GA21, DeKalb performed the claimed three-step bombardment

REDACTED VERSION – PUBLICLY FILED

process between July 1993 and February 1994—*before* the Lundquist patents issued (in 1996 and 2000). *See* discussion *supra* pp. 6-8 (§ IV.C). Thus, even ignoring the fact that it was DeKalb, not Syngenta, that carried out the claimed bombardment process with respect to GA21 corn, it is undisputed that no party (including DeKalb) ever carried out process steps (i)-(iii) of claim 1 of the Lundquist patents during the term of either patent to make any GA21 corn product. *Id.* This fact constitutes an additional reason why Syngenta cannot have infringed claim 1 of either patent under section 271(a). *See* 35 U.S.C. § 271(a).

C. **Syngenta Has Not Directly Infringed the Dependent Claims of the Lundquist Patents Under Section 271(a)**

As demonstrated above, Syngenta did not infringe claim 1 of either Lundquist patent under section 271(a). Further, as established below, the asserted claims—claims 5 and 6 of the '863 patent and claims 4-9 of the '880 patent—are dependent claims that depend (directly or indirectly) from claim 1 of each patent and require process steps (i)-(iii) plus one or more additional steps. *See* 35 U.S.C. § 112, ¶ 4. The Federal Circuit has repeatedly held that dependent claims cannot be infringed unless the claims from which they depend have been infringed. *See* discussion *infra* pp. 19-21 (§ V.C.3). Accordingly, DeKalb's infringement allegations concerning the dependent claims of the Lundquist patents necessarily fail as a matter of law.

1. **Claims 5 and 6 of the '863 Patent Incorporate by Reference the Three-Step Process of Claim 1**

Claims 5 and 6 of the '863 patent read as follows:

5. The process of claim 1 further comprising obtaining transgenic glyphosate resistant progeny plants of subsequent generations from said fertile transgenic plant.

6. The process of claim 5 further comprising obtaining seed from one of said progeny plants.

- 11 -

'863 patent at col. 30 (A33).

It is undisputed that both of these claims depend from claim 1. In fact, DeKalb has expressly admitted that claims 5 and 6 of the '863 patent depend from claim 1 of that patent. In its responses to Syngenta's interrogatories, DeKalb stated that claims 2-5 of the patent are

_See_ DeKalb's Response to Interrogatory No. 16 (A89). Further, DeKalb stated that claim 6 is

" _See id; see also_ Letter from T. Miller to M. Flibbert dated December 20, 2005, at 2 (A97) ("Plaintiffs agree that claims 5 and 6 are dependent claims.").

DeKalb's expert, Dr. Finer, similarly testified as follows:

> Q.    So you agree that claim 5 [of the '863 patent] requires the bombardment, selection and regeneration steps of claim 1, plus the additional step recited in claim 5. Is that correct?
>
> A.    With my understanding of these claims, yes.
>
> Q.    So claim 5 is a four-step process. Is that fair?
>
> A.    Yes.
>
> Q.    Who performed the first three steps of claim 5, the bombardment, selection, and regeneration steps?
>
> A.    In this case, DeKalb did.
>
> Q.    Syngenta did not perform any of the first three steps of claim 5, did it?
>
> A.    No.

Finer Tr. at 115-16 (A93).

But there could be no doubt about the dependent nature of claims 5 and 6 in any event. The patent statute, 35 U.S.C. § 112, ¶ 4, provides that "a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter

- 12 -

**Redacted**

REDACTED VERSION – PUBLICLY FILED

claimed." Claim 5 does precisely that: It refers to a previous claim, independent claim 1, and it then specifies a further limitation ("obtaining transgenic glyphosate-resistant progeny plants . . ."). In addition, the phrase "said fertile transgenic plant" in claim 5 necessarily refers back to the "fertile transgenic plant" produced in step (iii) of claim 1 or the phrase would lack any antecedent basis. Likewise, claim 6 depends from claim 5, and thus also depends from claim 1.

Under the patent law, moreover, the effect of writing a claim in dependent form is clear. As the statute (35 U.S.C. § 112, ¶ 4) provides, "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." *See also Bloom Eng'g Co., Inc. v. North Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("As stated in 35 U.S.C. § 112 ¶ 4, a dependent claim incorporates by reference all of the limitations of the claim from which it depends."). Therefore, dependent claims 5 and 6, which depend directly (claim 5) or indirectly (claim 6) from claim 1, incorporate by reference process steps (i)-(iii) of claim 1 of the '863 patent.[2]

### 2. Claims 4-9 of the '880 Patent Incorporate by Reference the Three-Step Process of Claim 1

Similarly, claims 4-9 of the '880 patent read as follows:

> 4. A process comprising obtaining progeny from a fertile transgenic plant obtained by the process of claim 1 which comprise said DNA.

---

[2] Claims 5 and 6 also require other process limitations (including the fourth step of "obtaining transgenic glyphosate resistant progeny plants . . ." recited in claim 5), which Syngenta has not practiced. However, the Court need not consider these other limitations to grant summary judgment of non-infringement because it is undisputed that Syngenta never performed any of the first three steps of the claimed process.

5.    The process of claim 4 wherein said progeny are obtained by crossing said fertile transgenic plant with an inbred line.

6.    The process of claim 4 comprising obtaining seed from said progeny and obtaining further progeny plants comprising said DNA from said seed.

7.    The process of claim 5 wherein the progeny obtained are crossed back to the inbred line, to obtain further progeny which comprise said DNA.

8.    The process of claim 6 wherein seeds are obtained from said further progeny plants and plants comprising said DNA are recovered from said seed.

9.    The process of claim 7 wherein said further progeny are crossed back to the inbred line to obtain progeny which comprise said DNA.

'880 patent at col. 22-23 (A59-60).

For the following reasons, each of these claims depends (directly or indirectly) from claim 1 of the '880 patent:  (a) DeKalb has admitted that these claims depend from claim 1;  (b) the Illinois district court construed the '880 patent claims as requiring microprojectile bombardment;  (c) by their form and language, the claims depend from claim 1; and (d) the prosecution history compels a conclusion that the claims be treated as dependent from claim 1.

        a.    **DeKalb Previously Admitted That Claims 4-9 Depend From Claim 1**

Although DeKalb has specifically admitted that claims 5-9 of the '880 patent are dependent claims that depend (directly or indirectly) from claim 4 of the patent, DeKalb has equivocated with regard to the dependent nature of claim 4, refusing to take a position on its status as dependent or independent.  *See* DeKalb's Response to Interrogatory No. 14 (A87) (stating, with regard to claim 4, that DeKalb "does not have a contention as to the classification of this claim as independent or dependent").

- 14 -

REDACTED VERSION – PUBLICLY FILED

Up to now, however, DeKalb plainly treated claim 4 as dependent on and requiring practice of all the process steps of claim 1. As explained below, DeKalb and the PTO treated claim 4 as a dependent claim during prosecution of the '880 patent. And during a prior litigation involving the same '880 patent, consistent with that prosecution history, DeKalb admitted that claim 4 depends from claim 1, expressly asserting that processes covered by claim 4 require the performance of process steps (i)-(iii) plus the additional step of obtaining progeny:

> [P]rocesses that are covered by this claim *must comprise at least the steps listed in subparts (i) - (iii) of claim 1 and the additional step of obtaining progeny* from a plant obtained by the process that has at least those steps.

DeKalb's Second Amended and Supplemental Response to Interrogatory No. 9, *DeKalb Genetics Corp. v. Northrup King Co.*, No. 96 C 50169 (N.D. Ill. filed June 10, 1996), at 60 (A103) (emphasis added). Thus, DeKalb previously advocated that claim 4 requires *four steps*: steps (i)-(iii) plus the additional step of obtaining progeny.[3] *Id.*

### b.    The Illinois District Court Construed the '880 Patent Claims as Requiring Microprojectile Bombardment

In this same prior litigation involving the '880 patent, the Illinois district court adopted a Special Master's Report and Recommendation regarding claim construction. A109-10. This prior claim construction (which adopted the position DeKalb urged) refutes DeKalb's new position—conveniently crafted for the present litigation—that claim 4 somehow covers a "*one-step*" process that does not require the practice of the bombardment, selection, and regeneration steps of claim 1. The district court recognized that the '880 patent claims "are directed to processes, *each comprising a number of steps*." Report and Recommendation at 18 (A128)

---

[3]  DeKalb also described claim 4 as a "dependent claim" during a discovery conference in the present litigation, before the case was transferred to this Court. A108.

REDACTED VERSION – PUBLICLY FILED

(emphasis added). The court further determined that each of the '880 patent claims requires microprojectile bombardment:

> As already indicated, the microprojectile bombardment limitation of the product claims of the '956 patent cannot be ignored. *Each of the process claims of the remaining three patents* [including the '880 patent] *contains a step calling for bombardment with DNA-coated microprojectiles.*

Report and Recommendation at 29 (A139) (emphasis added); *see also id.* at 36 (A146) ("The '880 claims call for bombardment of 'intact regenerable *Zea mays* cells.'"). Nothing in the prior claim construction suggests that claim 4 (or any other '880 patent claim) does not require practice of the bombardment, selection, and regeneration steps of claim 1.

In addition, the district court determined that the "independent process claims" of the '880 patent "each contain the following language: 'wherein said DNA is transmitted through a complete sexual cycle of said transgenic plant to its progeny.'" *Id.* at 19 (A129). Claim 4 does not contain the quoted language and thus is not an independent claim under the prior claim construction.

c.    Claims 4-9, by Their Form and Language, Depend
      From Claim 1

Even apart from DeKalb's admissions and the Illinois court's claim construction order, there can be no doubt that claims 4-9 of the '880 patent all depend from claim 1 of the patent. Initially, claim 4 is a dependent claim because it follows the statutory form—it refers to a previous claim (independent claim 1), and it then recites a further step ("obtaining progeny . . ."). *See* 35 U.S.C. § 112, ¶ 4. In addition, the phrase "said DNA" in claim 4 necessarily refers back to the "DNA" recited in claim 1 or this phrase would lack any antecedent basis. Further, claims 5-9 are all written in this same form, referring (either directly or indirectly) to claim 4 and incorporating one or more additional limitations. Thus, claims 4-9 all depend directly (claim 4)

- 16 -

REDACTED VERSION – PUBLICLY FILED

or indirectly (claims 5-9) from claim 1 and—as a matter of law—incorporate by reference process steps (i)-(iii) of claim 1. *See* 35 U.S.C. § 112, ¶ 4; *Bloom Eng'g*, 129 F.3d at 1250.[4]

### d.    The Dependency of Claims 4-9 on Claim 1 Follows From the Prosecution History

The prosecution history of the '880 patent before the U.S. Patent and Trademark Office ("PTO") further establishes that claim 4 (and, thus, claims 5-9 as well) depends from claim 1.

Claim 4 of the '880 patent issued from application claim 30. Specifically, on March 28, 1995, during patent prosecution, DeKalb filed a Supplemental Amendment adding new application claims 30-35, which later became claims 4-9 of the '880 patent. A167-68. Application claim 30, which ultimately issued as claim 4, originally read as follows:

> 30. The process of claim 23 further comprising (iv) obtaining progeny from said fertile transgenic plant of step (iii), which comprise said DNA.

A167.

Claim 23, which became patent claim 1, recited and required practice of process steps (i)-(iii). A170. Thus, application claim 30 (patent claim 4) expressly required the practice of each of steps (i) through (iii) of application claim 23 (patent claim 1), plus a fourth step (step "(iv)") of "obtaining progeny from said fertile transgenic plant of step (iii)." A167, 170. As a result, there can be no question that application claim 30 (patent claim 4) was, at this time during the prosecution process, written as a claim that depended from application claim 23 (patent claim 1).

---

[4] Claims 4-9 also require other process limitations (including the fourth step of "obtaining progeny . . ." recited in claim 4). Again, however, while Syngenta's activities also do not meet the additional process limitations of claims 4-9, the Court need not consider these other limitations because it is undisputed that Syngenta never performed any of the first three steps of the claimed process.

On November 15, 1995, the Examiner conducted an interview with DeKalb's attorney and agreed to allow the claims. A172. The PTO mailed a Notice of Allowability on November 27, 1995, stating that application claims 23, 24, and 29-35 (renumbered as claims 1-9) were allowed and that prosecution on the merits was "CLOSED in this application." A173.

*After* prosecution was closed, however, DeKalb submitted an amendment under 37 C.F.R. § 1.312 ("Rule 312"). Rule 312 permits claim revisions under limited circumstances, e.g., a change in wording of the claims not affecting the *scope* of the claims. DeKalb's amendment, filed on December 8, 1995, changed claim 30 (patent claim 4) as follows (additions underlined; deletions bracketed and struck through):

> 30. [The] A process [of claim 23 further] comprising [(iv)] obtaining progeny from [said] a fertile transgenic plant [of step (iii)] obtained by the process of claim 23, which comprise said DNA.

A178.

Indeed, DeKalb made it clear that its wording change was a matter of form only. Specifically, DeKalb represented to the PTO that the amended claim did "not introduce new matter" and was "allowable without further search or consideration." A180. And the PTO entered DeKalb's Rule 312 amendment on that basis, characterizing it "as directed to matters of form *not affecting the scope of the invention.*" A181 (emphasis added).

It is evident from the prosecution history, therefore, that both the PTO and DeKalb understood and treated claim 4 of the '880 patent as having the same scope as corresponding application claim 30 (before amendment), which unambiguously required the practice of steps (i)-(iii) of application claim 23 (patent claim 1) plus the recited step "(iv)" of "obtaining progeny from said fertile transgenic plant of step (iii)." A167, 170.

Consistent with that understanding, in the "Index of Claims" portion of the '880 patent's file history, the PTO identified application claims 23 and 36 (patent claims 1 and 10) as independent claims and the remaining claims, including application claim 30 (patent claim 4), as dependent claims. *See* Index of Claims (A193); *Manual of Patent Examining Procedure*, § 717.04 at 700-156 (6th Ed. Rev. 2, July 1996) (A194-95) ("Independent claims should be designated in the Index of Claims by encircling the claim number in red ink.").

Thus, the prosecution history confirms that claim 4 of the '880 patent is a dependent claim that incorporates process steps (i)-(iii) of claim 1. *See, e.g., Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576-77 (Fed. Cir. 1995) (construing claim in view of its prosecution history and affirming summary judgment of non-infringement). As noted above, this is exactly the construction DeKalb itself advocated in the prior litigation involving the '880 patent.

### 3. Given That the Asserted Claims Incorporate the Process Steps of Claim 1, Syngenta as a Matter of Law Cannot Have Infringed Them

Consistent with 35 U.S.C. § 112, ¶ 4 and the "all-elements rule," a dependent claim that includes all the elements of its independent claim *plus* something additional cannot be infringed unless the independent claim is infringed. DeKalb, however, contends that the question of whether the asserted claims here are dependent or independent is one of "semantics" that "does not have any impact on the correct infringement analysis." DeKalb's Responses to Syngenta's Third Set of Interrogatories (Nos. 13-16), at 4, 7 (A86, 89).

DeKalb is simply wrong. The law makes it clear that the question of whether a particular claim depends from another claim is hardly one of semantics; instead, it has a direct effect on the claim's scope and thus the infringement analysis. First, the statute itself (35 U.S.C. § 112, ¶ 4) provides that "[a] claim in dependent form *shall be construed* to incorporate by reference all the

limitations of the claim to which it refers" (emphasis added). Second, the Federal Circuit has consistently held that a dependent claim cannot be infringed unless the corresponding independent claim is also infringed. Indeed, in *Wahpeton Canvas*, the Federal Circuit described this principle as "axiomatic":

> It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed . . . .

*Wahpeton Canvas*, 870 F.2d at 1553. Similarly, in *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377 (Fed. Cir. 2000), the Court stated that it is a "fundamental principle of patent law" that dependent claims cannot be infringed unless the claims from which they depend have been infringed. *Id.* at 1383 (citing *Wahpeton Canvas*, 870 F.2d at 1553). And numerous other Federal Circuit decisions have applied this same fundamental principle, including: *Oak Tech., Inc. v. Int'l Trade Comm'n*, 248 F.3d 1316, 1323 n.4 (Fed. Cir. 2001) ("Because we affirm the Commission's conclusion that claim 1 is not infringed, we need not address the dependent claims separately.") (citing *Jeneric/Pentron*, 205 F.3d at 1383); *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1338 n.5 (Fed. Cir. 1998) ("QSound does not argue the remaining dependent claims separately, and because those claims necessarily must be narrower than the independent claims, they too cannot be infringed."); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994) ("Finally, because we have concluded that Nike's accused shoes do not infringe claim 1 of the '531 patent as a matter of law, it follows that claims 4 and 5, which depend from claim 1, also are not infringed.") (citing *Wahpeton Canvas*, 870 F.2d at 1553); and *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991) (holding that affirmance of summary judgment of non-infringement with respect to independent claim 1 of the asserted patent required affirmance of non-infringement with respect to dependent claim 2 of the patent) (citing *Wahpeton Canvas*, 870 F.2d at 1552 n.9).

REDACTED VERSION – PUBLICLY FILED

This Court's decisions follow the same rule. *See, e.g., MLMC, Ltd. v. Airtouch Communications, Inc.*, 172 F.Supp. 2d 557, 565-66, 567 (D. Del. 2001) ("Claims 19 and 20 are dependent on claim 18; if defendants' systems do not infringe claim 18, they do not infringe the dependent claims either.") (granting summary judgment of non-infringement).

In short, therefore, because the asserted Lundquist claims all depend from claim 1 of the patents, any assertion that Syngenta has infringed these dependent claims evaporates as a result of DeKalb's admissions. That is, DeKalb has admitted that Syngenta did not perform the steps of claim 1 (as DeKalb did), and that the steps of claim 1 were, in any event, performed before the patents issued. Moreover, DeKalb squarely admitted in the prior litigation that claim 4 incorporates the process steps of claim 1, and DeKalb admits here that all the other asserted claims are dependent claims. Thus, however viewed, these admissions lead inevitably to the conclusion that, since Syngenta has not infringed claim 1 of either Lundquist patent, *as a matter of law* Syngenta has not infringed any of the asserted claims under section 271(a).

### D.    Section 271(g) Does Not Save DeKalb's Flawed Infringement Contentions

In addition to asserting that Syngenta has infringed the Lundquist patents under 35 U.S.C. § 271(a), DeKalb also alleges direct infringement under 35 U.S.C. § 271(g). *See* DeKalb's Second Supplemental Responses to Syngenta's Interrogatories Nos. 1 & 2, at 4, 10-11 (A64, 70-71).[5] Section 271(g) provides in relevant part:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as

---

[5] While DeKalb alleges that Syngenta's "acts of infringement under § 271(a) include making such [GA21 corn] products," DeKalb alleges that Syngenta's "acts of infringement under § 271(g) include using, selling, and offering for sale such products." *See id.* at 4, 10 (A64, 70).

REDACTED VERSION – PUBLICLY FILED

> an infringer, if the importation, offer to sell, sale, or use of the
> product occurs during the term of such process patent.

Congress's intent in enacting section 271(g) was to eliminate a loophole that had previously allowed products made according to a process covered by U.S. patent to be made abroad and then sold in the United States with impunity. However, the fundamental legal principles that apply to process claims, including the all-elements rule and the requirement that the process be performed during the patent term, still apply in the context of section 271(g).

In *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338 (Fed. Cir. 2000) (affirming judgment of this Court), for example, the Federal Circuit expressly stated that the purpose of section 271(g) was to "impose[] liability for infringement by importation, sale, or use in the United States of a product *made abroad* by a process patented in the United States." *Ajinomoto*, 228 F.3d at 1347. As the Federal Circuit further explained in that case:

> Section 271(g) was enacted in 1988. Previously, the holder of a
> United States process patent had no recourse against one who
> practiced the process abroad and imported the product. The
> purpose of § 271(g) was to close this loophole and bring United
> States law into conformity with that of other nations. Thus
> § 271(g) imposes liability for infringement of the United States
> patent, with certain safeguards as set forth in the statute.

*Ajinomoto*, 228 F.3d at 1347. *See also British Telecomm. v. Qwest Commc'ns Int'l Inc.*, Nos. 03-526-SLR, 03-527-SLR, 03-528-SLR, slip op. at 7 (D. Del. Feb. 24, 2004) (A190) ("In the case at bar, the patented methods at issue are being used, if at all, in this country; consequently, the fundamental purpose underlying passage of the statute [§ 271(g)] has absolutely no application.").

DeKalb does not allege that Syngenta carried out the patented bombardment process abroad (or had some third party perform the process abroad for it), and then imported into the

REDACTED VERSION – PUBLICLY FILED

United States a product made by that process. As a result, the purpose of section 271(g) has no application to the facts of this case.

Further, although the wording of section 271(g) is not limited to products made abroad by infringing processes, there was no congressional intent to change the law of *domestic* process patent infringement, which was already covered by section 271(a). Rather, the broad wording was used only because Congress recognized that section 271(g) had to conform to the GATT treaty and not result in trade discrimination against foreign manufacturers. The legislative history explains:

> Because of our obligations under the GATT treaty to refrain from trade discrimination, the process patent bill was crafted to apply equally to the use or sale of a product made by a process patented in this country whether the product was made (and the process used) in this country or in a foreign country. As explained earlier, the bill is prompted by the use of patented processes in other countries followed by the importation of the resulting products into this country. The use of the process in this country is already an act of infringement under existing patent law, and such an infringing party would be subject to the jurisdiction of the U.S. courts. *Thus the inclusion of domestic process patent infringement in the scope of the bill to extend protection to the products is regarded by the Committee as a formality to conform to the GATT, with little or no practical consequences in patent enforcement.*

S. REP. NO. 100-83, at 46 (1987) (A183) (emphasis added).[6]

Thus, the legislative history of section 271(g) confirms that Congress had no intention of eliminating the "all-elements rule" of patent infringement or the related principle that dependent claims cannot be infringed unless the claims from which they depend have been infringed, or of imposing liability for direct infringement of a process patent where the steps of the claimed

---

[6] This Court has described this Senate Report as "[o]ne of the primary sources of the legislative history of the Process Patents Amendments Act of 1987." *British Telecomm.*, slip op. at 3 (A186).

- 23 -

REDACTED VERSION – PUBLICLY FILED

process were not performed during the patent term. *See Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1317-19 (Fed. Cir. 2001) (holding that section 271(g) requires that a process patent be issued and in force at the time that the process is practiced and the product is made).

In sum, section 271(g) is simply inapposite here. It remains undisputed—and dispositive—that Syngenta did not perform *any* of process steps (i)-(iii) of the Lundquist patent claims, and that these steps were performed (by DeKalb) *before* the patents issued. Accordingly, section 271(g) does not save DeKalb's flawed infringement allegations.

### E.    Syngenta Did Not Indirectly Infringe Any Claim of the Lundquist Patents Under Section 271(b) or (c)

DeKalb's First Amended Complaint also asserts inducement under 35 U.S.C. § 271(b) and contributory infringement under § 271(c) with respect to the Lundquist patents. *See* D.I. 32 at 5 (¶ 20), 6 (¶ 25). However, liability under either of these theories requires finding direct infringement first. *See, e.g., Joy Techs.*, 6 F.3d at 774 ("Liability for either active inducement or for contributory infringement is dependent upon the existence of direct infringement.").

In its interrogatory responses, DeKalb indicated that Syngenta's liability for inducement and contributory infringement stems from Syngenta's sale of GA21 seed to farmers and other companies (including seed companies such as the Golden Harvest companies). *See* DeKalb's Second Supplemental Responses to Syngenta's Interrogatories Nos. 1 & 2, at 4, 10-11 (A64, 70-71). For all the reasons stated above, however, including the undisputed fact that no party (including DeKalb) carried out process steps (i)-(iii) of the Lundquist patent claims during the term of either patent, farmers and others who simply grow GA21 seed cannot directly infringe any of the asserted claims of either patent. Moreover, DeKalb has not alleged (and there is no basis in fact for concluding) that Syngenta has induced, encouraged, abetted, or contributed to any other party's practice of process steps (i)-(iii) in connection with any GA21 corn product.

- 24 -

Accordingly, DeKalb's allegations of inducement and contributory infringement also fail as a matter of law.

## VI.    CONCLUSION

For the reasons given above, the Court should grant summary judgment that Syngenta has not infringed any claim of the Lundquist patents under any provision of 35 U.S.C. § 271.

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
   TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Of counsel:

Michael J. Flibbert
Howard W. Levine
Jennifer A. Johnson
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000                    Attorneys for Defendants

Dated:  January 11, 2006