REDACTED VERSION – PUBLICLY FILED

C B I DELETED

Petition for Determination of Nonregulated Status:

Roundup Ready Corn Line GA21

The undersigned submits this petition of 7 CFR 340.6 to request that
the Director, BBEP, make a determination that the article should not
be regulated under 7 CFR part 340.

Submitted by:

Jean-Noël Mutz, Regulatory Affairs Manager
Monsanto Company
700 Chesterfield Parkway North, BB1K
Chesterfield, MO 63198
Tel: 314-737-7054 / Fax: 314-737-7085

and

T. Michael Spencer, Manager, Regulatory Affairs
DEKALB Genetics Corporation

submitted April 9, 1997
revised July 28, 1997

#97-138-U

Prepared by:

J-N Mutz, T.M. Spencer, D.A. Dixon, R.S. Sidhu, D. Miller.

Contributors:

F. Behr, K.A. Croon, R.L. Fuchs, C. George, J. Gwyn, C.M. Hironaka,
B.E. Ledesma, T.C. Lee, K.M. Magin, G.J. Rogan, P.R. Sanders, L. Turner.

DKB 029864

A79

REDACTED VERSION – PUBLICLY FILED

Petition For Determination of Nonregulated Status for
Roundup Ready™ Corn Line GA21

## Summary

Monsanto Company and DEKALB Genetics Corporation are submitting this
Petition for Determination of Nonregulated Status to the Animal Plant Health
Inspection Service (APHIS) for corn which is tolerant to the herbicide
Roundup®. This petition requests a determination from APHIS that the
Roundup Ready corn line GA21, any progenies derived from crosses between
this line and other corn varieties, and any progeny derived from crosses of this
line with transgenic corn varieties that have also received a determination of
nonregulated status, no longer be considered regulated articles under
regulations in 7 CFR part 340.

Corn is the largest crop in the United States in terms of planted acreage, total
production and crop value. United States production in 1996 was estimated at
236 million metric tons produced on over 73 million acres with the majority of
national production concentrated across what is known as the "Corn Belt" in
the upper Midwest. Weed management is a critical component to maximize
corn yields and retain a high-quality harvest, free of weed seeds. The use of
corn plants containing the Roundup Ready gene for corn production would
enable the farmer to utilize Roundup herbicide for effective control of weeds
during the growing season and to take advantage of this herbicide's
environmental and safety characteristics. Glyphosate is highly effective
against the majority of annual and perennial grasses and broad-leaved weeds.
Glyphosate has excellent environmental features, such as rapid soil binding
(resistance to leaching) and biodegradation (which decreases persistence), as
well as extremely low toxicity to mammals, birds and fish. The use of Roundup
Ready corn can positively impact current agronomic practices in corn by 1)
offering the farmer a new, wide-spectrum weed control option, 2) allowing the
use of an environmentally acceptable herbicide, 3) increasing flexibility to treat
weeds on an "as needed" basis, 4) providing an excellent fit with reduced-tillage
systems, which results in increased soil moisture, while reducing soil erosion
and fuel use and 5) providing cost-effective weed control.

Roundup Ready corn line GA21 has been transformed with a restriction
fragment of plasmid pDPG434 that contains only the modified corn EPSPS
gene cassette. Roundup Ready corn line GA21 is tolerant to Roundup through
the expression of a modified corn EPSPS protein whose sequence is more than
99.3 % identical to the endogeneous corn EPSPS protein. Data and information
included in this petition demonstrate that GA21 does not represent a unique
plant pest risk. Therefore, Monsanto Company and DEKALB Genetics
Corporation request a determination from APHIS that Roundup Ready corn
line GA21, any progenies derived from crosses between this line and other corn
varieties, and any progeny derived from crosses of this line with transgenic corn
varieties that have also received a determination of nonregulated status, no
longer be considered regulated articles under regulations in 7 CFR part 340.

DKB 029865

REDACTED VERSION – PUBLICLY FILED

Certification

The undersigned certifies, that to the best knowledge and belief of the undersigned, this petition includes all information and views on which to base a determination, and that it includes relevant data and information known to the petitioner which are unfavorable to the petition.


Jean-Noël Mutz, Regulatory Affairs Manager
Monsanto Company
700 Chesterfield Parkway North, BB1K
Chesterfield, MO 63198
Tel: 314-737-7054
Fax: 314-737-7085


T. Michael Spencer, Manager, Regulatory Affairs
DEKALB Genetics Corporation

DKB 029866

3

A81

REDACTED VERSION – PUBLICLY FILED

III. Description of the Transformation Method Utilized in the
Development of Roundup Ready Corn Line GA21

A. Particle Acceleration Transformation System

An agarose gel-isolated restriction fragment of plasmid DNA was introduced
into embryogenic corn cells using the particle acceleration method (Klein *et al.*,
1987; Gordon-Kamm *et al.*, 1990). DNA is precipitated onto microscopic gold
particles using calcium chloride and spermidine. A drop of the coated particles
is then placed onto a plastic macrocarrier, which is accelerated at a high
velocity through a barrel by the discharge of compressed helium gas. The
macrocarrier hits a metal screen which stops the flight of the macrocarrier but
allows continued flight of the DNA-coated particles. The particles penetrate
the target plant cells, where the DNA is deposited and incorporated into the
cell chromosome. The introduced DNA contains a gene encoding for herbicide
tolerance (e.g. the modified corn EPSPS gene conferring tolerance to
glyphosate). The plant cells are grown in the presence of glyphosate and only
the transformed cells continue to grow.

B. Plasmid Sequence Utilized for Transformation

Roundup Ready corn line GA21 was produced using a 3.4 Kb agarose gel-
isolated NotI restriction fragment of the plasmid vector pDPG434 (Figure III.1)
and the particle acceleration method identified above. The plasmid vector
pDPG434 contains the modified corn EPSPS gene cassette, the *bla* selectable
marker gene encoding ampicillin resistance in the bacteria allowing selection of
bacteria containing the plasmid, an origin of replication necessary for
replicating the plasmid in *E. coli*, and a partial *lacZ* sequence (Table III.1).
The agarose gel-isolated NotI restriction fragment of plasmid vector pDPG434
utilized for transformation of Roundup Ready corn line GA21 contains only the
modified corn EPSPS gene expression cassette and does not contain the *bla*
selectable marker gene, the origin of replication and the partial *lacZ* sequence
(Figure III.1).

DKB 029887

23

A82

REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DEKALB GENETICS CORPORATION, | C.A. NO. 04 C 50323 |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| | Judge Philip G. Reinhard |
| SYNGENTA SEEDS, INC., | |
| SYNGENTA BIOTECHNOLOGY, INC., | Magistrate Judge P. Michael Mahoney |
| GOLDEN HARVEST SEEDS, INC., | |
| GARWOOD SEED CO., | |
| GOLDEN SEED COMPANY, L.L.C., | **RESTRICTED CONFIDENTIAL –** |
| SOMMER BROS. SEED COMPANY, | **SUBJECT TO PROTECTIVE** |
| THORP SEED CO., AND | **ORDER** |
| JC ROBINSON SEEDS, INC., | |
| Defendants. | |

**DEKALB'S RESPONSES TO SYNGENTA'S THIRD SET OF
INTERROGATORIES (NOS. 13-16)**

A83

Redacted

REDACTED VERSION – PUBLICLY FILED

# Pages A84 through A90
# REDACTED

REDACTED VERSION – PUBLICLY FILED

John Finer - December 7, 2005
Monsanto Company v. Syngenta Seeds, Inc.,

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3    MONSANTO COMPANY and          )

4    MONSANTO TECHNOLOGY           )

5    LLC,                          )

6                                  )

7              Plaintiffs,         )

8                                  )        Civil Action

9                                  )        No. 04-305-SLR

10   v.                            )        (lead case)

11                                 )

12   SYNGENTA SEEDS, INC.,         )

13   SYNGENTA BIOTECHNOLOGY,       )

14   INC.,                         )

15                                 )

16             Defendants.         )

17   ****************************************************

18            VIDEOTAPED ORAL DEPOSITION OF

19                      JOHN FINER

20                  December 7, 2005

21   ****************************************************

22            *** RESTRICTED - CONFIDENTIAL ***

23            *** SUBJECT TO PROTECTIVE ORDER ***

24

25   REPORTED BY:  SUSAN P. MILLER, RDR, CRR, CBC

REDACTED VERSION – PUBLICLY FILED

# Pages A92 through A95
# REDACTED

12/20/05  16:40   HOWREY HOUSTON 750BERING 2ND FLR → F-65  WILFILD 1815F   NO.517  P222
REDACTED VERSION – PUBLICLY FILED

# HOWREY LLP

1111 Louisiana, 25th Floor
Houston, Texas 77002-5242
www.howrey.com

**Thomas A. Miller**
Partner
T 713.787.1483
F 713.787.1440
millert@howrey.com

December 20, 2005

FILES: 11914.0191 / 10687.0022

VIA FACSIMILE: 202.408.4400

Michael J. Flibbert, Esq.
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Ave, N.W.
Washington, D.C. 20001-4413

RE:    *Monsanto Company et al. v. Syngenta Seeds, Inc. et al.*
       No. 04-305 (SLR)
       *DEKALB Genetics Corporation v. Syngenta Seeds, Inc. et al,*
       No. 05-355 (SLR)

Dear Mike:

This is to confirm our meet-and confer telephone conference yesterday regarding the upcoming claim construction submissions.

Plaintiffs will take the responsibility of preparing the joint claim construction submission due January 11. To facilitate the timely preparation of the joint submission, the parties are planning to exchange their respective drafts of proposed claim constructions and intrinsic evidence by close of business on January 6.

The parties will file their opening claim construction briefs on January 11. Responsive claim construction briefs will be filed February 2.

With respect to our substantive discussion of the parties' proposed claim constructions, I believe this is where things stand:

1.    The '835 patent: you will let us know whether Defendants will agree with our proposed construction of terms in the preamble of claim 1. I believe that I forgot to tell you in our conference yesterday that Plaintiffs will agree to Defendants' proposed construction of "transformed." All other terms in the asserted '835 patent claims are disputed.

2.    The '880 patent: you will let us know whether Defendants will agree with our proposed construction of terms in the preamble, paragraph (i), and paragraph (iii) of claim 1. Plaintiffs agree that claims 5-9 are dependent claims. All other terms in the asserted claims of the '880 patent are disputed.

DM_US\8292368.v1

A96

12/20/05  16:40    HOWREY HOUSTON 750BERING 2ND FLR REDACTED VERSION - PUBLICLY FILED

# HOWREY LLP

Mr. Michael J. Flibbert
Page 2
December 20, 2005

3.    The '863 patent:  Defendants will let us know whether they will agree with Plaintiffs'
proposed construction of terms in the preamble, "*zea mays*," "intact regenerable *zea mays*
cells," and "transgenic plant" in claim 1.  Plaintiffs agree that claims 5 and 6 are
dependent claims.  All other terms in the asserted claims are disputed.

Finally, it is Plaintiffs' position that the issues of claims 4-9 of the '880 patent and claims 5 and 6
of the '863 patent covering Defendants' activities regardless of whether Defendants made the R0
GA21 event and regardless of whether some steps of a claimed process were performed before
the patents issued are infringement issues, not claim construction issues.  Please confirm your
agreement with this.

Very truly yours,

*Thomas A. Miller*

Thomas A. Miller

TAM:bas

DM_US\8292368.v1

A97

REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

DEKALB GENETICS CORPORATION,

Plaintiff,

v.

NORTHRUP KING CO.
(formerly d/b/a Sandoz Seeds Co.)
(now NOVARTIS SEEDS, INC.),

Defendant.

§
§
§
§
§
§
§
§
§
§
§

CONFIDENTIAL – FOR
ATTORNEY'S EYES ONLY

Civil Action No. 96 C 50169

DEKALB GENETICS CORPORATION'S SECOND AMENDED AND
SUPPLEMENTAL RESPONSES TO DEFENDANT
NORTHRUP KING'S CONTENTION INTERROGATORIES NOS. 1-13

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff DEKALB Genetics

Corporation ("DEKALB") serves these Second Amended and Supplemental Responses to

Defendant Northrup King's (now Novartis Seeds, Inc.) ("NK/Novartis") Contention

Interrogatories Nos. 1-13 in writing and under oath.

GENERAL OBJECTIONS

The following general objections should be interpreted to apply to each individual request

as if set forth in full in response thereto:

1.    DEKALB objects to each and every interrogatory to the extent that the

interrogatory seeks information protected from discovery by the attorney-client privilege, the



Finer
Exhibit 4
12·7·05
Susan Perry Miller, CSR, RDR, CRR

423

H 304255(611.2011.DOC)

A98

REDACTED VERSION – PUBLICLY FILED

## Contention Interrogatory No. 9

For each claim of each patent-in-suit, describe, on an element-by-element basis, DEKALB's contentions concerning the construction or interpretation of each claim element and each term used in the claim; state all bases for DEKALB's contentions regarding the construction or interpretation of each claim element and term; and identify all documents and relevant passages thereof that are relied upon in support of such contentions.

### RESPONSE to Contention Interrogatory No. 9

Subject to and without waiving the general objections above, DEKALB responds as follows:

Under the law of *Markman v. Westview Instruments, Inc.*, the Court should consider the claims, specification, and prosecution history of the patent-in-suit. 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd,* 116 S.Ct. 1384 (1996). Extrinsic evidence may be used by the Court to understand the patent, but not for the purpose of varying or contradicting the terms of the claims. *Id.* at 981.

DEKALB contends that the language of the asserted claims of the patents-in-suit, and the claims to which they refer, is clear when interpreted in view of the specification and prosecution history. Further, DEKALB submits that certain extrinsic evidence supports these contentions.

DEKALB's contentions as to the meaning of the claim language as presently contemplated are set forth in the tables below. DEKALB is still in the process of formulating its contentions as to the meaning of the claim language of the patents-in-suit and may further supplement this response and supplant these tables with information disclosed in the expert reports. DEKALB also reserves the right to modify its contentions with respect to issues raised by any defendant in this or other DEKALB litigation pending in this Court during *Markman* phase claim construction. Asserted claims are denoted by an asterisk (*).

38

H: 30403X(6f5_@911.DOC)

REDACTED VERSION – PUBLICLY FILED

| Claim Elements | Evidence |
|---|---|
| plant to its progeny. | |
| and imparts insect resistance thereto. | The term "insect resistance" is intended to have its ordinary and accepted meaning, for example, the dictionary meaning.   Examples of genes for conferring insect resistance are set forth in col. 6, lns. 35-36 and 41-42. |
| 9.* The process of claim 6 wherein said DNA comprises a selectable marker gene or a reporter gene. | Selectable marker and reporter genes are discussed in the '877 patent at col. 6, ln. 43 - col. 7. ln. 8. |
| 10.* The process of claim 9 wherein said selectable marker gene imparts herbicide resistance to said fertile transgenic Zea mays plant. | This claim requires that the selectable marker gene confer herbicide resistance.  See description for claim 1(iv) above. |

'880 Patent

| Claim Elements | Evidence |
|---|---|
| 1.* A process for producing a fertile transgenic Zea mays plant comprising the steps of | This phrase refers to a process for preparing a genetically engineered "transgenic" corn plant that is fertile and therefore capable of passing the engineered genetics to progeny ("subsequent generations").  '880 patent, col. 2, lns. 56-58; col. 3; lns. 44-67; col. 4, lns. 50-56.

"Transgenic" is defined at col. 4, lns. 57-63 of the '880 patent to "include any cell, cell line, callus, tissue, plant part, or plant, the genotype of which has been altered beneficially by the presence of heterologous DNA that was introduced into the genotype by a process of genetic engineering, or which was initially introduced into the genotype of a parent plant by such a process and was subsequently transferred to later generations by sexual or asexual cell crosses or cell divisions."

"Plants regenerated from transformed callus are referred to as the R0 generation or R0 plants."  '880 patent, col. 11, lns. 14-15.

"Comprising" is " open" language under the patent |

57

H:\64204\6SL2\011.DOC\

A100

REDACTED VERSION – PUBLICLY FILED

| | Claim Elements | Evidence |
|---|---|---|
| | | law which means "having at least the steps listed." Therefore, processes that are covered by this claim must comprise at least the steps listed in subparts (i)-(iii). However, processes that comprise additional steps are also within the scope of the claim. For example, a process of producing a fertile, transgenic inbred plant that involved practicing steps (i)-(iii) and then carrying out a series of breeding crosses to obtain descendant fertile transgenic *Zea mays* plants and seed is also covered by this claim. |
| (i) | bombarding intact regenerable *Zea mays* cells with DNA-coated microprojectiles, | "The only actual requirement for the cells which are transformed is that after transformation they must be capable of regeneration of a plant containing the heterologous DNA following the particular selection or screening procedure actually used." '880 patent, col. 6, lns. 14-18.<br><br>Regenerable maize cells are described generally at col. 5, ln. 15 - col. 6, ln. 18.<br><br>Examples of regenerable cells are also set forth in claim 3 to include cells of immature embryos.<br><br>Examples of microprojectile bombardment are discussed in the '880 patent, at col. 8, ln. 20 - col. 9, ln. 32.<br><br>"Intact regenerable *Zea mays* cells" refers to *Zea mays* cells having an intact cell wall, which are capable of being regenerated to form mature, fertile maize plants. Examples of regenerable cells are also set forth in claim 3 of the '880 patent, and include cells of immature embryos. Support for this interpretation may be found throughout the prosecution history of the application leading to the '880 patent, including at least the specification at col. 2, lines 31-54; col. 5, line 14 through col. 6, line 18; col. 8, lines 20-30; col. 9, lines 8-67; col. 10, line 53 through col. 11, line 9; and Examples I-III; claim 23 of the Preliminary Amendment filed 5/26/94; and the Response to Office Action filed 12/17/94 at pg. 2, third paragraph; pg. 3, second paragraph; and pg. 6, |

H: 30400X(SR_8011.DOC)

REDACTED VERSION – PUBLICLY FILED

| | Claim Elements | Evidence |
|---|---|---|
| | | first paragraph. |
| (ii) | identifying or selecting a population of transformed cells, and | This claim element has an ordinary, unambiguous meaning to one of skill in the art.<br><br>Selection is discussed in the '880 patent at col. 9, ln. 34 - col. 10, ln. 51.<br><br>"Population of transformed cells" refers to a group of cells containing heterologous DNA. The term "population" indicates the possibility of a heterogeneous genetic complement. For example, different transformed cells within the population may contain different copy numbers of heterologous DNA. Support for this interpretation may be found throughout the prosecution history of the application leading to the '880 patent, including at least the specification at col. 4. lines 57-63; col. 5, lines 1-11; col. 5, line 14 through col. 6, line 18; col. 9, lines 36-67; col. 10, line 53 through col. 11, line 9; Examples I-III; and claim 23 of the Preliminary Amendment filed on 5/26/94. DEKALB further asserts that certain parts of this phrase are used according to their plain and ordinary meaning within the art. For example, the definition of "population" finds support at least in <u>Glossary of Plant Tissue Culture</u>, Danielle Donnelly and William Vidaver, Advances in Plant Sciences Series, Vol. 3, (ed. Theodore Dudley) Dioscorides Press, Portland, Oregon, 1988. |
| (iii) | regenerating a fertile transgenic plant therefrom, | This claim element has an ordinary, unambiguous meaning to one of skill in the art.<br><br>Regeneration is discussed in the '880 patent at col. 10, ln. 54 - col. 11, ln. 9. |

H: 30420X(6EL@011.DOC)

REDACTED VERSION – PUBLICLY FILED

| | Claim Elements | Evidence |
|---|---|---|
| | wherein said DNA is transmitted through a complete sexual cycle of said transgenic plant to its progeny. | Transmission to progeny means that the plant must be able to transmit the DNA to subsequent generations. This is supported in the '880 application, as detailed below:<br><br>"The invention further relates to regenerated fertile mature maize plants obtained from transformed embryogenic tissue. transgenic seed produced therefrom, and R1 and subsequent generations." '880 patent, col. 3, lns. 64-7. This evidences that the invention is not limited to R0, R1, and R2 plants..<br><br>"The present invention is directed to the production of fertile transgenic plants and seeds of the species *Zea mays* and to the plants, plant tissues, and seeds derived from such transgenic plants, as well as the subsequent progeny and products derived therefrom." '880 patent, col. 4, lns. 49-53. |
| | and imparts herbicide resistance thereto. | The transgenic progeny exhibits some level of resistance to a herbicidal compound.<br><br>*See, e.g.,* '880 patent, col. 7, lns. 1-21; col. 11, lns. 20-27; col. 17, lns. 55 to col. 18, ln. 44.<br><br>*See also* Response dated 3/6/92, page 2, and Action dated 5/13/92, page 2, in prosecution of parent SN 07/974,379. |
| 3.* | The process of claim 1 wherein the cells are derived from immature embryos. | This claim element has an ordinary, unambiguous meaning to one of skill in the art. |
| 4.* | A process comprising obtaining progeny from a fertile transgenic plant obtained by the process of claim 1 | "Comprising" is " open" language under the patent law, which means "having at least the steps listed." Therefore, processes that are covered by this claim must comprise at least the steps listed in subparts (i)-(iii) of claim 1 and the additional step of obtaining progeny from a plant obtained by the process that has at least those steps. However, processes that comprise additional steps are also within the scope of the claim. For example, a process of producing a fertile transgenic inbred plant that involved practicing steps (i)-(iii) to obtain a transgenic plant as the |

60

H:\0402\0(652.8911.DOC)

A103

REDACTED VERSION – PUBLICLY FILED

| | Claim Elements | Evidence |
|---|---|---|
| | | starting material for a series of breeding crosses to obtain a descendant fertile transgenic *Zea mays* plant is also covered by this claim.<br><br>"Progeny transgenic *Zea mays* plant" as used in the claims denotes a descendant of any generation of an R0 plant. This is supported in the '880 application, as detailed below:<br><br>"The invention further relates to regenerated fertile mature maize plants obtained from transformed embryogenic tissue, transgenic seed produced therefrom, and R1 and subsequent generations." '880 patent, col. 3, lns. 64-7. This evidences that the invention is not limited to R0, R1, and R2 plants.<br><br>"The present invention is directed to the production of fertile transgenic plants and seeds of the species *Zea mays* and to the plants, plant tissues, and seeds derived from such transgenic plants, as well as the subsequent progeny and products derived therefrom." '880 patent, col. 4 lns. 49-53. |
| | which comprise said DNA. | The heterologous DNA is present in the progeny plants. |
| 5.* | The process of claim 4 wherein said progeny are obtained by crossing said fertile transgenic plant with an inbred line. | This claim element has an ordinary, unambiguous meaning to one of skill in the art.<br><br>Breeding and preparation of transgenic progeny and seed is discussed in the '880 patent at col. 10, ln. 52 - col. 11, ln. 67. |
| 6.* | The process of claim 4 comprising obtaining seed from said progeny and obtaining further progeny plants comprising said DNA from said seed. | This claim element has an ordinary, unambiguous meaning to one of skill in the art.<br><br>Breeding and preparation of transgenic progeny and seed is discussed in the '880 patent at col. 10, ln. 52 - col. 11, ln. 67. |

61

H:304050(SSL@011.DOC)

REDACTED VERSION – PUBLICLY FILED

|  | Claim Elements | Evidence |
|---|---|---|
| 8.* | The process of claim 6 wherein seeds are obtained from said further progeny plants, and plants comprising said DNA are recovered from said seed. | This claim element has an ordinary, unambiguous meaning to one of skill in the art.<br><br>Breeding and preparation of transgenic progeny and seed is discussed in the '880 patent at col. 10, ln. 52 - col. 11, ln. 67. |
| 10 * | A process for producing a fertile transgenic *Zea mays* plant comprising the steps of | This phrase refers to a process for preparing a genetically engineered "transgenic" corn plant that is fertile and therefore capable of passing the engineered genetics to progeny ("subsequent generations"). '880 patent, col. 2, lns. 56-58; col. 3, lns. 44–67; col. 4, lns. 50-56.<br><br>"Transgenic" is defined at col. 4, lns. 57-63 of the '880 patent to "include any cell, cell line, callus, tissue, plant part, or plant, the genotype of which has been altered beneficially by the presence of heterologous DNA that was introduced into the genotype by a process of genetic engineering, or which was initially introduced into the genotype of a parent plant by such a process and was subsequently transferred to later generations by sexual or asexual cell crosses or cell divisions."<br><br>"Plants regenerated from transformed callus are referred to as the R0 generation or R0 plants." '880 patent, col. 11, lns. 14–15.<br><br>"Comprising" is " open" language under the patent law, which means "having at least the steps listed." Therefore, processes that are covered by this claim must comprise at least the steps listed in subparts (i)-(iii). However, processes that comprise additional steps are also within the scope of the claim. For example, a process of producing a fertile transgenic inbred plant that involved practicing steps (i)-(iii) and then carrying out a series of breeding crosses to obtain descendant fertile transgenic *Zea mays* plants and seed is also covered by this claim. |
| (i) | bombarding intact regenerable *Zea mays* cells with DNA-coated | "The only actual requirement for the cells which are transformed is that after transformation they must be |

62

A105

REDACTED VERSION – PUBLICLY FILED

Subject to the above general objections, DEKALB has not apportioned damages between each of the patents-in-suit, and does not presently contend that infringement of any single patent-in-suit entitles it to twenty-five (25) percent of the damages.

Dated: 12/4/98

Respectfully submitted,

Roderick B. Williams
  Texas Bar No. 21573700
ARNOLD WHITE & DURKEE
750 Bering Drive
Houston, TX 77057
Telephone: (713) 787-1400
Facsimile: (713) 787-1440

David L. Parker
  Texas Bar No. 15475320
ARNOLD WHITE & DURKEE
1900 One American Center
600 Congress Avenue
Austin, TX 78701
Telephone: (512) 418-3000
Facsimile: (512) 474-7577

John J. Holevas
  Illinois Bar No. 06193167
WILLIAMS & MCCARTHY
321 West State Street
P.O. Box 219
Rockford, IL 61105-0219
Telephone: (815) 987-8900

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:
John H. Witmer, Jr.
Donald L. Traut
DEKALB Genetics Corporation
3100 Sycamore Road
DeKalb, IL 60115

H:10450(ASL_8911.DOC)

74

A106