REDACTED VERSION – PUBLICLY FILED

135

**ORIGINAL**

1    UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF CONNECTICUT

2
                                    CLERK
3                                   U.S. DISTRICT COURT
                                    HARTFORD, CONN.

4    * * * * * * * * * * * * *
     PLANT GENETIC SYSTEMS

5                                   No. 3:96CV2015(DJS)

6         v.

7

8    DEKALB GENETICS CORP.          May 16, 2000
     * * * * * * * * * * * * *      Hartford, CT

9

10            COMPLETE TRANSCRIPT OF HEARING
        BEFORE THE HONORABLE DOMINIC J. SQUATRITO

11

12   Appearances:

13   For the Plaintiff:    Eric H. Weisblatt, Esq.
                           Regis E. Slutter, Esq.
14                         R. Danny Huntington, Esq.
                           George A. Hovanec, Jr., Esq.
15                         Craig A. Raabe, Esq.

16   For the Defendant:    John F. Lynch, Esq.
                           Thomas A. Miller, Esq.
17                         Daniel Shvodian, Esq.
                           Hemant Kewalramani, Esq.
18                         Donald L. Traut, Esq.
                           John C. Yavis, Jr., Esq.

19

20

21   Court Reporter:       Wendy Allen
                           Official Court Reporter
22                         U.S. District Court
                           450 Main Street
23                         Hartford, Connecticut  06103
                           (860) 524-0887

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided-transcription.

REDACTED VERSION – PUBLICLY FILED

326

1    Your Honor, given what's happened in the

2    courtroom, you know that February 4th, 1985 is years

3    before our filing date of March 1987, and they say, well,

4    March of '87, it's completely impossible.  In fact -- and

5    you hear this all the time.

6         THE COURT:  Impossible for what?

7         MR. WEISBLATT:  It's impossible to get

8    transformed corn, because everyone who speaks for DEKALB

9    wants to say the same thing, they want you to believe the

10   same thing.  Why is it impossible?  Because nobody could

11   do it until we did it in '89.  And that's it.

12        THE COURT:  Let me just have him give a quick

13   response.  We'll go in more detail later.

14        MR. LYNCH:  I have a little bit more than a

15   quick one, because this has been called a sham.

16        THE COURT:  Well, that was kind of inflammatory

17   language.  He didn't mean to say that.

18        MR. WEISBLATT:  I apologize, Judge.

19        THE COURT:  What he meant to say, it's not

20   really a good defense.

21        MR. LYNCH:  What he said was that this was filed

22   without an investigation.

23        Now, Your Honor, there are so many documents --

24        THE COURT:  You mean the defense was filed

25   without an investigation?

1          MR. LYNCH:  That the counterclaim --

2          THE COURT:  That's what I meant, right.

3          MR. LYNCH:  There are so many documents and

4    DEKALB is on file in so many places, by the way, Your

5    Honor, prosecuting patents that deal with the

6    transformation of corn as the fundamental core of their

7    patent estate, they have said so many times that the

8    fundamental transformation of corn was done in 1990 by

9    Catherine Mackey and others, that it would be ludicrous,

10   ludicrous -- and I can bring those in to Your Honor -- I

11   didn't mark them because I regarded this as an inference

12   and a build-up of statements and logic that only counsel

13   would put together.  There have been so many statements,

14   it would be ludicrous for DEKALB to go before any court

15   and say that.

16         THE COURT:  Say what?

17         MR. LYNCH:  To say that corn was transformed

18   before Catherine Mackey did it.

19         That has been a uniform position.  I can bring

20   in not one -- I could bring in 50 statements and briefs in

21   court where that statement has been made, and it's never

22   been inconsistent.

23         Admittedly, Pioneer -- and what -- Your Honor,

24   what is not here, is that clearly the gene, the gene that

25   is involved in Pioneer is also infringed by the Comai

1  patents.

2         But the Comai patents, and this patent by the

3  way, Your Honor, as you will see, refers to dicotyledons

4  in almost every claim.  So it says dicotyledons in every

5  claim.  If Pioneer is using this gene as well in soybeans,

6  which it doesn't say soybeans, but it says including, and

7  there's evidence that there are Roundup ready soybeans out

8  there, there's a potential that this is infringed.

9         The point of the matter is, is that with the

10  number of allegations that are out there by DEKALB saying

11  that corn was first transformed in 1990, and they well

12  predate this document, well predate this document, the

13  inference that counsel is making that there must be an

14  accusation of this claim against corn and that must mean

15  that we are saying that corn was transformed in 1985 is

16  absurd.

17         But beyond that, Your Honor -- beyond that, this

18  is an allegation where, if indeed such a statement was

19  made in the litigation, where is it?  Where is the

20  statement made anywhere in the litigation, in briefs, in

21  arguments to the Court, in answers to discovery, in

22  whatever that, this has occurred?

23         What we have here is a pleading, and without any

24  discovery, and without any allegations of how this comes

25  about, counsel is saying, this perforce, this leads the

REDACTED VERSION – PUBLICLY FILED

329

 1   Court inevitably to the conclusion that corn was

 2   transformed in 1985.  And that this is, in effect, some

 3   type of admission to that effect.

 4        Now, Your Honor, I just -- there's no way that

 5   there's a link-up that's made based upon the statement

 6   that genetic constructs, genetic constructs are not corn,

 7   and technology in the development and commercialization of

 8   herbicide resistant products, including corn and corn

 9   seed, including -- it doesn't say limited to corn and corn

10   seed.  That is the whole point of this.

11        If there are genetic constructs made by the

12   lysine of Claim 1, if there are genetic constructs

13   maintained in cells, dicot cells, soybean cells, or if

14   there are dicots, then indeed this -- there's a potential

15   that this claim would be infringed.

16        And what happened in this case, according to our

17   information, was that RPA transferred a gene that was the

18   Comai gene -- and the Comai gene, by the way, Your Honor,

19   was bought -- I mean the Comai patents were bought from

20   RPA.  They were purchased from RPA.  So these patents

21   originally resided with RPA.

22        There was an allegation that that gene, the gene

23   was transferred to Pioneer, and that Pioneer was using the

24   gene.

25        Now, how we come to a conclusion based on

REDACTED VERSION – PUBLICLY FILED

330

1   counsel's argument that this represents an inevitable

2   conclusion by a company that has uniformly taken the

3   position that corn was first transformed in 1990, Your

4   Honor, there are litigations going on on transformation of

5   corn in Rockford, Illinois.  They've gone on in

6   Wilmington, Delaware, and (they were on -- there was a

7   partial trial in the Middle District of the North Carolina

8   in Greensboro.

9            In all of those cases, counsel -- I would

10  challenge counsel to find one statement anywhere that corn

11  was transformed before Catherine Mackey or Lundquist did

12  it in 1990.  Those are two teams.  There's a lot of

13  litigation.

14           How counsel comes to the conclusion that this

15  represents an admission to the contrary just isn't there.

16  If there was such a statement by myself in a pleading or

17  somewhere, that would be a different story.  But, Your

18  Honor, I can -- if the Court will give me leave to

19  establish this, because I didn't think this would even

20  come to the level of admissibility, I can.

21           THE COURT:  We'll take it up at a later --

22           MR. LYNCH:  I could come to this court with

23  allegations on the public record that the first

24  transformation of corn occurred in 1980, and those are

25  allegations made by DEKALB, and no allegations to the

Wendy Allen, Official Court Reporter

A49

1  contrary have ever been made.

2        THE COURT:  Okay.

3        MR. WEISBLATT:  Your Honor --

4        THE COURT:  Let's go on.

5        MR. WEISBLATT:  I don't want to take any more of

6  your time.  I'd like to take one minute.

7        Of course there is nothing in the Middle

8  District of North Carolina that would shed light on what's

9  going on here, because when this complaint was secretly

10  filed and maintained under seal, it was stayed.  There has

11  been no answer, discovery, in this case.  There isn't any

12  piece of paper in the docket -- clerk's office in North

13  Carolina about this.

14        Second of all, there are statements about who

15  transformed corn first.  They took the Goldman deposition.

16        I will move on, Your Honor, but I would

17  respectfully request that we be permitted to brief the

18  issue, especially, in fact, as this impacts on the issue

19  of willfulness.

20        THE COURT:  Well, just -- what do you want to do

21  with this, Mr. Lynch?  I'm not sure how this -- relevant

22  or how critical this is.  Do you want to brief something

23  and get it in on Monday, or something?

24        MR. LYNCH:  Your Honor --

25        THE COURT:  I don't want to have a lot more

1  paper in here.

2          MR. LYNCH:  The only way I can brief this, Your

3  Honor, is to burden Your Honor with an awful lot of paper

4  making clear what our public position has been.  But I'm

5  willing to do that.  And the statements that counsel is

6  making --

7          MR. WEISBLATT:  Again, whether DEKALB has made

8  10,000 statements about who transformed corn first and it

9  was them, if you interpret the plain language of these

10  documents, I believe you get the allegations as I've

11  described them.  And I believe it's appropriate to brief

12  that in the post-trial briefs.

13          I will concede that DEKALB has mouthed the

14  words, over and over again, that it's become a part of

15  their psyche that they were the first to transform corn.

16  That is their belief.  They've said that everywhere.  That

17  doesn't make it true, and it doesn't making anything in a

18  sealed pleading any different.

19          MR. LYNCH:  Your Honor, first of all, I will say

20  that the pleading was sealed because it supposedly

21  contained RPA information at the beginning.

22          But regardless of that, the fact of the matter

23  is, is that if we want to proceed along the veins of

24  logic, how would anyone with as many admissions that corn

25  was the milestone, that if in fact it was alleged by

1   DEKALB that it was Holy Grail of agronomics, that the Holy

2   Grail was the transformation of corn in 1990, that's what

3   it was called, how could DEKALB go before a jury in North

4   Carolina with the number of statements that exist like

5   this and say:  Oh, no, corn was developed, corn was

6   enabled in 1985?

7          This case, Your Honor, and the defense in the

8   case predates that document.  This was filed in May of

9   1999, so it was a sealed document.  And the fact of the

10  matter is, if this were going to be an area, this area

11  should have been pursued by RPA, which is in league, part

12  of Aventis, or by someone else.

13         The fact of the matter is, there is no

14  admission, there is no link, and there is no inference

15  that can be drawn from this particular document that there

16  was -- corn was enabled in February of 1985.

17         If Your Honor wants to brief that now, that's

18  fine.  If you want to brief that separately in the

19  post-trial briefing, that may be the acceptable course.

20         MR. WEISBLATT:  Your Honor, if it's a waste of

21  time, I'll waste my time in the post-trial brief.

22         THE COURT:  Remind me to take a look at this a

23  couple days from now.  Let me see how it relates to

24  everything else we're doing.

25         Go ahead.

1  Q.    (By Mr. Weisblatt)  Dr. Leemans, would you please

2  turn to Plaintiff's Exhibit 312?

3  A.    I have it, and I'm still here.

4  Q.    The lawyers hadn't been able to say very much, so

5  we needed to take our turn.

6        What is Exhibit 312, Dr. Leemans?

7  A.    It's a document from the U.S. Patent Office in

8  which it informs that it declares and has declared an

9  interference between a patent application of mine and an

10 issued patent of DEKALB.

11       MR. WEISBLATT:  First, Your Honor, I need to

12 correct the record.  I called it earlier Exhibit 4A.

13       There already is a 4A, so we've changed it to 4B

14 and I'd like the record to reflect that it is 4B.  4B was

15 the selection of pages -- your clerk might have it.  It's

16 the selection of pages for United States Serial Number

17 131,140.

18       THE COURT:  Yes.

19 Q.    (By Mr. Weisblatt)  Dr. Leemans, is United States

20 patent application 131,140 listed on the first page of

21 Exhibit 312 as the last application under the paragraph

22 accorded benefit of --

23 A.    Sorry, I cannot see.

24 Q.    If you look, it says applicants, then it says

25 application number.  Then it has a title.  And then

REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
SEP 22 '00
CLERK
U.S. DISTRICT COURT
HARTFORD, CONN.

| | |
|---|---|
| PLANT GENETIC SYSTEMS, N.V. and BIOGEN, INC., § | CIVIL ACTION NO. 3:96 CV 2015 DJS |
| § | |
| Plaintiffs, § | |
| § | SEPTEMBER 22, 2000 |
| v. § | |
| § | **OUTSIDE COUNSEL ONLY** |
| DEKALB GENETICS CORPORATION, § | **CONFIDENTIAL MATERIAL** |
| § | |
| Defendant. § | |
| § | |

## DEKALB GENETICS CORPORATION'S
## PROPOSED CONCLUSIONS OF LAW

John F. Lynch (ct 20042)
Thomas A. Miller  (ct 01493)
Daniel Shvodian (ct. 21427)
Shashi Kewalramani  (ct. 21422)
HOWREY SIMON ARNOLD & WHITE, LLP
750 Bering Drive
Houston, TX  77057-2198
Tel:  (713) 787-1400
Fax:  (713) 787-1440

John C. Yavis, Jr.  (ct 04203)
Francis J. Brady  (ct 04296)
MURTHA, CULLINA, RICHTER
AND PINNEY
Cityplace I
185 Asylum Street
Hartford, CT  06103-3469
Tel:  (860) 240-6000
Fax:  (860) 240-6150

**Of Counsel:**

Donald L. Traut
DEKALB GENETICS CORPORATION
3100 Sycamore Rd.
DeKalb, IL  60115

**ATTORNEYS FOR DEFENDANT
DEKALB GENETICS CORPORATION**

A54

REDACTED VERSION – PUBLICLY FILED

Cir. 1991) ("The essential question here is whether the scope of enablement [of the patent] is as broad as the scope of the claim[s].").

**COL 15.**    While the enablement requirement may be satisfied when some routine experimentation is necessary to practice the claimed invention, the claims are not enabled if an undue amount of experimentation is needed. *Vaeck*, 947 F.2d at 495-96; *see also White Consol. Indus., Inc. v. Vega Servo-Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983) (The court found that "1 ½ to 2 man years of effort" constituted an unreasonable amount of experimentation and held the patent invalid due to lack of enablement.). In unpredictable arts, due to the uncertainty regarding the outcome of experimentation, the Federal Circuit has applied a stricter standard for enablement. *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558 (Fed. Cir. 1996); *see also Vaeck*, 947 F.2d at 496 ("[T]he disclosure must adequately guide the art worker to determine, without undue experimentation, which species among all those encompassed by the claimed genus possess the disclosed utility.").

**COL 16.**    Although DEKALB bears the burden to show invalidity by clear and convincing evidence, DEKALB can satisfy that burden by showing that "there is no credible evidence that the claimed [invention] can be made by those skilled in the art by the disclosed process, and all evidence from both the inventor and his assignee and from third parties is to the contrary . . . " *Amgen*, 927 F.2d at 1217.

**COL 17.**    In *In re Goodman*, 11 F.3d 1046 (Fed. Cir. 1993), the Federal Circuit held that a patent application that disclosed a method for practicing an invention in dicots did not enable a claim that encompassed practicing the invention in both dicots and monocots.

**COL 18.**    To determine if a claim is enabled, a court should consider the factors set forth in *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988):

REDACTED VERSION – PUBLICLY FILED

**COL 51.**  In determining a reasonable royalty utilizing the *Georgia-Pacific* factors, a court may "look to events and facts that occurred [after the date of infringement] and that could not have been known to or predicted by the hypothetical negotiators." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1571-72 (Fed. Cir. 1988) (quoting *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988)).

Date:  September 22, 2000

*Thomas A. Miller*
John F. Lynch   (ct 20042)
Thomas A. Miller   (ct 01493)
H.H. Shashi Kewalramani
HOWREY SIMON ARNOLD & WHITE, LLP
750 Bering Drive
Houston, TX  77057-2198
Tel:  (713) 787-1400
Fax:  (713) 787-1440

Daniel T. Shvodian
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
Tel:  (650) 463-8100
Fax:  (650) 463-8400

John C. Yavis, Jr.   (ct 04203)
Francis J. Brady   (ct 04296)
MURTHA, CULLINA, RICHTER AND PINNEY
Cityplace I
185 Asylum Street
Hartford, CT  06103-3469
Tel:  (860) 240-6000
Fax:  (860) 240-6150

Of Counsel:

Donald L. Traut
DEKALB GENETICS CORPORATION
3100 Sycamore Road
Dekalb, IL  60115

**ATTORNEYS FOR DEFENDANT DEKALB GENETICS CORPORATION**

15

A56

REDACTED VERSION – PUBLICLY FILED

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of **DEKALB Genetics Corporation's Proposed Conclusions Of Law** on all counsel of record on this 22nd day of September, 2000, as follows:

James A. Wade, Esq.                          Via Federal Express
Craig A. Raabe, Esq.                         (Saturday delivery)
ROBINSON & COLE
One Commercial Plaza
280 Trumbull Street
Hartford, CT  06103-3597

Eric H. Weisblatt, Esq.                      Via Federal Express
Regis E. Slutter, Esq.                       (Saturday delivery)
BURNS, DOANE, SWECKER & MATHIS, LLP
1737 King Street, Suite 500
Alexandria, VA  22314-2756


_Patti Osborne_

1

A57

REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

SEP 25  11·20 AM '00

CLERK
U.S. DISTRICT COURT
HARTFORD, CONN

PLANT GENETIC SYSTEMS, N.V. and
BIOGEN, INC.,

     Plaintiffs,

     v.

DEKALB GENETICS CORPORATION,

     Defendant.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 396 CV 2061 DJS

SEPTEMBER 22, 2000

**OUTSIDE COUNSEL ONLY
CONFIDENTIAL MATERIAL**

# DEKALB GENETICS CORPORATION'S
## INITIAL POST-TRIAL BRIEF

John F. Lynch (ct 20042)
Thomas A. Miller  (ct 01493)
Daniel Shvodian (ct. 21427)
Shashi Kewalramani  (ct. 21422)
HOWREY SIMON ARNOLD & WHITE, LLP
750 Bering Drive
Houston, TX  77057-2198
Tel:  (713) 787-1400
Fax:  (713) 787-1440

John C. Yavis, Jr.  (ct 04203)
Francis J. Brady  (ct 04296)
MURTHA, CULLINA, RICHTER
AND PINNEY
Cityplace I
185 Asylum Street
Hartford, CT  06103-3469
Tel:  (860) 240-6000
Fax:  (860) 240-6150

**ATTORNEYS FOR DEFENDANT
DEKALB GENETICS CORPORATION**

Of Counsel:

Donald L. Traut
DEKALB GENETICS CORPORATION
3100 Sycamore Rd.
DeKalb, IL  60115

REDACTED VERSION – PUBLICLY FILED

## INTRODUCTION

Plaintiffs face a dilemma. Plaintiffs have accused DEKALB of infringing United States Patent No. 5,561,236 (the '236 patent) because DEKALB makes and sells corn that contains a foreign (heterologous) gene called the bar gene. None of the methods and examples disclosed in the '236 patent for placing heterologous genes into plants, however, are operable in corn. In fact, at the time the application for the '236 patent was filed, no one in the world had succeeded in stably integrating a heterologous gene into the genome of corn such that the gene was capable of being passed to later generations. Furthermore, the '236 patent does not mention corn or any other monocotyledonous plant. Nevertheless, Plaintiffs allege that DEKALB infringes the '236 patent through DEKALB's production and sale of corn plants and seeds that contain the bar gene.

Therein lies the dilemma facing Plaintiffs. On the one hand, if the claims of the '236 patent are construed broadly enough to cover corn, then they must be held invalid because the patent does not contain a disclosure that would have enabled one of ordinary skill in the art to practice the invention. The claims would also have to be held invalid due to an inadequate written description because the patent does not show that the named inventors were in possession of such an invention. On the other hand, if the patent claims are construed in a manner consistent with the narrow disclosure of the '236 patent (i.e., limited to dicotyledonous plants), then DEKALB's corn products do not infringe the patent. Under either construction, DEKALB cannot be held liable for infringement of the '236 patent.

In an attempt to escape this dilemma, Plaintiffs have proffered arguments that are directly contrary to controlling Federal Circuit law and the facts of this case. First, Plaintiffs argue that the applicants' disclosure of an *Agrobacterium*-mediated method of transformation enabled one of ordinary skill in the art to practice the claimed invention in both monocots and dicots. In the

REDACTED VERSION – PUBLICLY FILED

case of *In re Goodman*, 11 F.3d 1046 (Fed. Cir. 1993), however, the Federal Circuit held that a patent applicant that disclosed the same *Agrobacterium*-mediated method of plant transformation that Plaintiffs disclosed did not enable claims that covered monocotyledonous plants. Moreover, Plaintiffs have admitted that the disclosed method cannot be used in corn.

Faced with that admission and the controlling Federal Circuit case law, Plaintiffs try to distinguish that case by arguing that its patent application was filed two years after Goodman's application was filed. PGS contends that fact distinguishes *Goodman* because advancements in the art that occurred during the time period enabled on of ordinary skill to transform corn. Plaintiffs' argument fails for two reasons.

First, information essential to practice the claimed invention cannot be incorporated from outside a patent. *Genentech v. Novo Nordisk, A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997). Second, neither of the transformation techniques outside of the patent relied upon by Plaintiffs enabled one of ordinary skill to transform corn. Therefore, Plaintiffs' attempt to distinguish *Goodman* fails, and any claims of the '236 patent that are construed to cover corn are invalid due to lack of enablement.

The claims are also invalid due lack of an adequate written description. To satisfy the written description requirement, a patentee must provide a description that clearly allows persons of ordinary skill in the art to recognize that the inventor invented what is claimed. The inventors of the '236 patent admit that when they drafted the specification of the patent and filed it overseas, they did not know how to transform corn. They also admit that they did not add anything to the specification when they filed it in the United States that would tell someone reading the patent how to transform corn or any other monocot. Therefore, it is impossible that one of ordinary skill in the art, reading the specification of the '236 patent, would recognize that

2

A60

the inventors invented corn containing the bar gene. Accordingly, any claims that are interpreted

to cover corn are also invalid due to the lack of an adequate written description.

## ARGUMENT

I.    INTERPRETATION OF THE CLAIMS OF THE '236 PATENT

A.    The Legal Standard For Claim Construction

The analysis of a patent for infringement or validity must begin with the court's

construction of the meaning and scope of the claims at issue. *Markman v. Westview Instruments,*

*Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) *(en banc)*, *aff'd*, 517 U.S. 370 (1996). When the meaning

of a term in a claim is in dispute, the court must determine what that term would have meant to

one of ordinary skill in the art at the time the patent was filed. *Schering Corp. v. Amgen Inc.*,

2000 WL 1055975, at *5-6 (Fed. Cir. Aug. 1, 2000). The court's analysis may not be based on

or guided by later developments in that technological field. *Id.*

In order to determine how one of ordinary skill would have construed a term, a court

"should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims,

the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic,*

*Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). When doing so, the court should consider what was

described and enabled by the specification at the time it was filed. *Schering*, 2000 WL 1055975,

at *5-6.

If the analysis of the intrinsic evidence fails to resolve an ambiguity in a disputed claim

term, the court may refer to extrinsic evidence to determine what the term would have meant to

one of ordinary skill in the art at the time of filing. *Vitronics*, 90 F.3d at 1583; *Markman*, 52

F.3d at 986 ("[T]he focus in construing disputed terms in claim language . . . is on the objective

test of what one of ordinary skill in the art at the time of the invention would have understood the

term to mean."). If the court must refer to extrinsic evidence, however, another claim

REDACTED VERSION – PUBLICLY FILED

Alternatively, if the court determines that the plant and seed claims are not limited to dicots, but cover monocots such as corn, then DEKALB requests the court to enter judgment that the claims are invalid for failing to enable the full scope of the claims and for lack of an adequate written description, and that therefore, DEKALB is not liable for infringement, willful infringement, or damages.

Date: September 22, 2000

*Thomas A. Miller*

John F. Lynch   (ct 20042)
Thomas A. Miller   (ct 01493)
H.H. Shashi Kewalramani   (ct 21422)
HOWREY SIMON ARNOLD & WHITE, LLP
750 Bering Drive
Houston, TX  77057-2198
Tel:  (713) 787-1400
Fax: (713) 787-1440

Daniel T. Shvodian   (ct 21427)
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025-3434
Tel:  (650) 463-8100
Fax: (650) 463-8400

John C. Yavis, Jr.   (ct 04203)
Francis J. Brady   (ct 04296)
MURTHA CULLINA LLP
Cityplace I
185 Asylum Street
Hartford, CT  06103-3469
Tel:  (860) 240-6000
Fax: (860) 240-6150

**ATTORNEYS FOR DEFENDANT
DEKALB GENETICS CORPORATION**

**Of Counsel:**

Donald L. Traut
DEKALB GENETICS CORPORATION
3100 Sycamore Road
Dekalb, IL  60115
*H:406141*

76

A62

REDACTED VERSION – PUBLICLY FILED

### CERTIFICATE OF SERVICE

This is to certify that I have served a copy of **DEKALB Genetics Corporation's Initial Post-Trial Brief** on all counsel of record on this 22nd day of September, 2000, as follows:

James A. Wade, Esq.                          Via Federal Express
Craig A. Raabe, Esq.                         (Saturday delivery)
ROBINSON & COLE
One Commercial Plaza
280 Trumbull Street
Hartford, CT  06103-3597

Eric H. Weisblatt, Esq.                      Via Federal Express
Regis E. Slutter, Esq.                       (Saturday delivery)
BURNS, DOANE, SWECKER & MATHIS, LLP
1737 King Street, Suite 500
Alexandria, VA  22314-2756


_____
Patti Osborne

77

A63

REDACTED VERSION – PUBLICLY FILED

1673



**ORIGINAL**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

May 30  10 52 AM '00

CLERK
U.S. DISTRICT COURT
HARTFORD CONN

* * * * * * * * * * * *

PLANT GENETIC SYSTEMS

    v.

DEKALB GENETICS CORP.
* * * * * * * * * * * *

No. 3:96CV2015(DJS)

May 26, 2000
Hartford, CT

COMPLETE TRANSCRIPT OF HEARING
BEFORE THE HONORABLE DOMINIC J. SQUATRITO

Appearances:

For the Plaintiff:    Eric H. Weisblatt, Esq.
    Regis E. Slutter, Esq.
    Jon Redway, Esq.
    R. Danny Huntington, Esq.
    George A. Hovanec, Jr., Esq.
    Craig A. Raabe, Esq.

For the Defendant:    John F. Lynch, Esq.
    Thomas A. Miller, Esq.
    Daniel Shvodian, Esq.
    Hemant Kewalramani, Esq.
    Donald L. Traut, Esq.
    John C. Yavis, Jr., Esq.

Court Reporter:    Wendy Allen
    Official Court Reporter
    U.S. District Court
    450 Main Street
    Hartford, Connecticut  06103
    (860) 524-0887

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided-transcription.

1    '86.

2            THE COURT:  So by that time you'd already done

3    all this work?

4            THE WITNESS:  Yes.

5            THE COURT:  But had you gotten regeneration of

6    those things that you had somehow changed through

7    electroproration?

8            THE WITNESS:  We were not able to regenerate

9    that, this BMS cell line, no.  In our hands

10   electroproration never produced a plant or a regenerable

11   cell.

12           THE COURT:  I want to make sure I understand

13   that.  I thought you said, and maybe I misunderstood you,

14   that you did, after a few weeks, regenerate cells out of

15   that original one that had been changed.

16           THE WITNESS:  Maybe I misspoke in terms of my

17   nomenclature.

18           THE COURT:  Forget plants, just cells.

19           THE WITNESS:  The BMS that we made protoplasts

20   from would regenerate their cell wall and become callus

21   again, but not become plants.

22           THE COURT:  Forget the plants.  But that

23   particular protoplast that regenerated the cell wall,

24   would that then subdivide?

25           THE WITNESS:  Yes.

REDACTED VERSION – PUBLICLY FILED
1840

1    THE COURT:  And in its subdivision, from your

2  studies, the DNA that had been injected into that, through

3  whatever vectors you used, was stable, to the best of your

4  knowledge, through testing?

5    THE WITNESS:  Yes.

6    THE COURT:  So that cell was transformed, did

7  regenerate, but did not make fertile transgenic plants?

8    THE WITNESS:  Regenerate in the sense of putting

9  on a cell wall and dividing, yes, not in the sense of

10  making plants.

11    THE COURT:  All right, okay.

12  Q.    (By Mr. Lynch)  Let's go to that just a moment to

13  clarify one thing.  Is this a characteristic of a BMS

14  culture, that is, the ability to go from protoplast to

15  cells?

16  A.    It was the characteristic of the culture we were

17  working with, yes.

18  Q.    And the BMS culture is kind of like a lab rat

19  that's used in laboratories as a model system?

20  A.    Yes.

21  Q.    Now, at this same period of time, if you wanted to

22  take a corn cell, a corn cell from a regular corn plant,

23  make protoplasts out of it, what about, I mean, and make

24  protoplasts, what about getting that kind of a protoplast

25  back to an ordinary corn cell?

REDACTED VERSION – PUBLICLY FILED

1841

1  A.    We were not able to do that.

2  Q.    So when you tried to take nonBMS protoplast and do

3  the experiment with nonBMS protoplast and get them back

4  into corn cells so you can regenerate a plant, you

5  couldn't do that?

6  A.    We could not do that.

7        THE COURT:  What's the difference between BMS

8  and a regular corn cell?

9        MR. LYNCH:  It was --

10 Q.    Please explain.

11 A.    They are all corn cells, but I think the

12 distinction was whether they could form plants or not, so

13 if you take most any genotype of corn and chop it up and

14 put it in the tissue culture, it won't proliferate its

15 callus.  You have to pick the right part and do the right

16 manipulations.  You can do that with a certain amount of

17 effort, but at least for us we couldn't make protoplasts

18 of that and get it to make a plant again.  That was very

19 hard.  We couldn't do it.

20 Q.    (By Mr. Lynch)  This BMS, you got it as a tissue

21 culture, it always existed as a tissue culture and it

22 stays as a tissue culture?

23 A.    In our hands, yes.

24 Q.    And to your knowledge, has anyone ever been able to

25 regenerate BMS into a plant?

REDACTED VERSION – PUBLICLY FILED

1842

1  A.    Not this old cell line, no.

2  Q.    When you tried to move this work with

3  electroproration to ordinary corn cells and transform

4  them, you didn't have the same success, I mean, ordinary

5  corn protoplasts and transform them?

6  A.    In our hands, we took corn cells that were capable

7  of reforming plants.  We could establish what we call

8  regenerable cultures, which is a corn cell culture that

9  makes plants again, and we could make protoplasts from

10 that.  The problem is our protoplasts would die and would

11 never, in our hands never divide and form plants again.

12 So we had a couple pieces, but no one system that went all

13 the way from protoplast back to plants.

14        THE COURT:  But you said later in 1990 you were

15 able to regenerate corn plants; right?

16        THE WITNESS:  Yes.

17 Q.    (By Mr. Lynch)  And that was using what?

18 A.    Again, we have what we call regenerable cultures,

19 embryonic regenerable cultures that we always could take

20 from cells, but not protoplasts back to plants.  That was

21 state of the art, common ability.

22        Our problem was, without the gene gun, we could

23 only put genes in the protoplasts, which we could not take

24 back to plants, or the reason we liked the gene gun

25 approach is it could put genes into cells with their cell

REDACTED VERSION – PUBLICLY FILED

1843

1   walls that were capable of making plants.

2          THE COURT:  Well, if a protoplast would

3   regenerate its wall, and then subdivide, and have the

4   stable incorporation of the DNA, the gene that expressed

5   itself, why couldn't it then just continue to subdivide

6   and go into plants, just because it didn't --

7          THE WITNESS:  Essentially that's correct.  For

8   the cell line we were using, it just didn't --

9          THE COURT:  If you used a different cell line,

10  would it have worked?

11         THE WITNESS:  Historically, over later, that

12  turned out to be true.  There's no inherent reason why it

13  can't.  It's just difficult, and people had to learn how

14  to manipulate the cells to make them do that.

15         THE COURT:  When did someone else do that using

16  this method that you talked about without the gun?

17         THE WITNESS:  The publication I can recall that

18  I believe was true was about 1991.

19         THE COURT:  What publication is that?

20         THE WITNESS:  I call it the Dudits publication.

21  Denis Dudits was the main author.  He had developed a corn

22  cell, corn genotype that he could make cells that could

23  divide, could make protoplasms, could be transformed and

24  could regenerate back to plants.  But that took quite a

25  bit of development of the genotype and the tissue culture

REDACTED VERSION – PUBLICLY FILED

Michael Fromm  - August 24, 2005
Monsanto Company v. Syngenta Seeds, INC.,

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY and          )

MONSANTO TECHNOLOGY           )

LLC,                          )

      Plaintiffs,          )

                     )    Civil Action

                     )    No. 04-305-SLR

v.                            )    (lead case)

                     )

SYNGENTA SEEDS, INC.,         )

SYNGENTA BIOTECHNOLOGY,       )

INC.,                         )

      Defendants.          )

**************************************************

VIDEOTAPED ORAL DEPOSITION OF

MICHAEL FROMM

08/24/2005

**************************************************

*** DESIGNATED CONFIDENTIAL ***

REPORTED BY:  SUSAN P. MILLER, RDR, CRR, CBC

d5256f66-8c5b-49ce-9da0-9e6a4bee99f7

A70

REDACTED VERSION – PUBLICLY FILED

Michael Fromm  - August 24, 2005
Monsanto Company v. Syngenta Seeds, INC.,

**Page 2**

1   VIDEOTAPED ORAL DEPOSITION OF MICHAEL
2   FROMM, produced as a witness at the instance of the
3   Defendants, and duly sworn, was taken in the above
4   styled and numbered cause on Wednesday, 08/24/2005,
5   from 9:02 a.m. to 1:27 p.m., before Susan Perry
6   Miller, RDR, CRR, CBC, Notary Public in and for the
7   State of Texas, reported via Machine Shorthand with
8   Realtime Computer Translation and reported at the
9   offices of Howrey LLP, 1111 Louisiana, 25th Floor,
10  Houston, Texas, pursuant to notice, the Federal
11  Rules of Civil Procedure, and/or any provisions
12  stated on the record.
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 3**

1       APPEARANCES
2   FOR PLAINTIFFS:
3   .  HOWREY, LLP
4       1111 Louisiana
5       25th Floor
6       Houston, Texas 77002-5242
7       (T) 713.787.1592
8       (F) 713.787.1440
9       By:  Mr. Thomas A. Miller
10          MillerT@howrey.com
11
12  FOR DEFENDANTS:
13  FINNEGAN HENDERSON FARABOW
14  GARRETT & DUNNER, LLP
15      901 New York Avenue, NW
16      Washington, DC 20001-4413
17      (T) 202.408.4000
18      (F) 202.408.4400
19      By:  Mr. Howard W. Levine
20          howard.levine@finnegan.com
21      Ms. Jennifer A. Johnson, Ph.D.
22          jennifer.johnson@finnegan.com
23
24
25

**Page 4**

1       APPEARANCES
2
3
4   VIDEOGRAPHER:
5
6   Mr. Mike Davis
7
8
9       ***********************
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 5**

1       STIPULATIONS
2
3       VIDEOTAPED ORAL DEPOSITION OF
4   MICHAEL FROMM, taken on 08/24/2005, pursuant to
5   notice, the Federal Rules of Civil Procedure, and/or
6   any provisions stated on the record.
7
8       Signature of the witness was waived
9   by agreement of the witness and agreement of the
10  parties at the time of the deposition. The Original
11  Deposition Transcript will be delivered to Mr.
12  Howard W. Levine, Custodial Attorney.
13
14
15      **************************
16
17
18
19
20
21
22
23
24
25

2 (Pages 2 to 5)

A71

REDACTED VERSION – PUBLICLY FILED

# Pages A72 through A74 REDACTED

REDACTED VERSION – PUBLICLY FILED



Michael Freeling     Virginia Walbot
Editors

# The Maize Handbook

With 120 Illustrations. 1 in color



Springer-Verlag
New York Berlin Heidelberg London Paris
Tokyo Hong Kong Barcelona Budapest



Fromm
Exhibit 5
8-24-05
Susan Perry Miller, CSR, RDR, CRR

EXHIBIT
Fromm-46
2-20-98

REDACTED VERSION – PUBLICLY FILED

Michael Freeling
Department of Plant Biology
University of California
Berkeley, CA 94720 USA

Virginia Walbot
Department of Biological Sciences
Stanford University
Stanford, CA 94305 USA

Library of Congress Catalog-in-Publication Data
The Maize handbook / Michael Freeling, Virginia Walbot, editors.
    p.  cm.
    Includes bibliographical references and index.
    ISBN 0-387-97826-7 (New York).—ISBN 3-540-97826-7 (Berlin)
    1. Corn—Handbooks, manuals, etc.  2. Corn—Biotechnology—
Handbooks, manuals, etc.  I. Freeling, Michael.  II. Walbot, Virginia.
    SB191.M2M3275  1993
633.1'5—dc20                                                                          92-32462

Printed on acid-free paper.

© 1994 Springer-Verlag New York, Inc.
All rights reserved. This work may not be translated or copied in whole or in part with-
out the written permission of the publisher (Springer-Verlag New York, Inc., 175 Fifth
Avenue, New York, NY 10010, USA), except for brief excerpts in connection with re-
views or scholarly analysis. Use in connection with any form of information storage and
retrieval, electronic adaptation, computer software, or by similar or dissimilar meth-
odology now known or hereafter developed is forbidden.
The use of general descriptive names, trade names, trademarks, etc., in this publication,
even if the former are not especially identified, is not to be taken as a sign that such
names, as understood by the Trade Marks and Merchandise Marks Act, may accordingly
be used freely by anyone.

Acquiring Editor: Robert Garber
Production managed by Henry Krell; manufacturing supervised by Vincent Scelta.
Typeset using the editors' Microsoft Word files by Impressions, Inc., Ann Arbor, MI.
Color separations and printing of the insert by New England Book Components,
    Hingham, MA.
Printed and bound by Edwards Brothers, Inc., Ann Arbor, MI.
Printed in the United States of America.

9 8 7 6 5 4 3 2 1

ISBN 0-387-97826-7 Springer-Verlag New York Berlin Heidelberg
ISBN 3-540-97826-7 Springer-Verlag Berlin Heidelberg New York

A76