REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-305-SLR |
| v. | ) ) | (lead case) |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., | ) ) ) | |
| Defendants. | ) ) | |
| DEKALB GENETICS CORPORATION, | ) ) | Civil Action No. 05-355-SLR |
| Plaintiff, | ) ) | **CONTAINS RESTRICTED** |
| v. | ) ) ) | **CONFIDENTIAL INFORMATION SUBJECT TO** |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., | ) ) | **PROTECTIVE ORDER - FILED UNDER SEAL** |
| Defendants. | ) ) | |

**SYNGENTA'S OPENING CLAIM CONSTRUCTION BRIEF REGARDING THE LUNDQUIST AND SHAH PATENTS**

Of counsel:
Michael J. Flibbert
Howard W. Levine
Sanya Sukduang
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

Attorneys for Defendants

Dated:  January 11, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

REDACTED VERSION – PUBLICLY FILED

**TABLE OF CONTENTS**

I.     INTRODUCTION ...............................................................................................1

II.    NATURE OF PROCEEDINGS..........................................................................2

III.   SUMMARY OF ARGUMENT ..........................................................................3

IV.    CLAIM CONSTRUCTION PRINCIPLES ........................................................5

V.     THE LUNDQUIST PATENTS ...........................................................................7

       A.    The Claims and Specifications of the Lundquist Patents.........................7

       B.    Claim Construction Issues Relating to Syngenta's Motion for
             Summary Judgment of Non-Infringement of the Lundquist Patents......................9

             1.    There Is No Claim Construction Dispute Concerning the '863
                   Patent...............................................................................................10

             2.    Claims 4-9 of the '880 Patent Incorporate by Reference the
                   Three-Step Process of Claim 1 .....................................................10

                   a.    DeKalb Previously Admitted That Claims 4-9 Depend
                         From Claim 1 .......................................................................11

                   b.    The Illinois District Court Construed the '880 Patent
                         Claims as Requiring Microprojectile Bombardment ....................12

                   c.    Claims 4-9, by Their Form and Language, Depend
                         From Claim 1 .......................................................................13

                   d.    The Dependency of Claims 4-9 on Claim 1 Follows
                         From the Prosecution History .....................................................14

             3.    Regardless of Its Dependency, Claim 4 Requires Performance
                   of Process Steps (i)-(iii) and the Additional Step of Obtaining
                   Progeny ...........................................................................................16

       C.    Other Claim Construction Issues ...........................................................16

             1.    The Term "Herbicide" in Claim 1 of the '880 Patent Means a
                   Chemical Agent Employed to Kill or Inhibit the Growth of
                   Weeds and Excludes Antibiotics ...................................................17

                   a.    The Specification Distinguishes Between Herbicides
                         and Antibiotics .....................................................................17

i

b.    The Prosecution History of the '880 Patent and a
Related Application Confirm that Distinction Between
Herbicides and Antibiotics...............................................................19

2.    The Term "Progeny" in Claims 4-7 of the '880 Patent Means
the R1 Progeny.............................................................................22

3.    The Term "Further Progeny" in Claims 6-9 of the '880 Patent
Means the R2 Progeny ...................................................................24

4.    The Term "Progeny" in Claim 9 of the '880 Patent Means the
R3 Progeny...................................................................................24

VI.    THE SHAH '835 PATENT .........................................................................25

A.    The Functional Language of the Asserted Claims Must Be Given
Effect................................................................................................25

B.    The CTP Must Be Naturally Occurring, Target the Passenger Protein
to the Chloroplast, and Subsequently Be Removed.................................29

1.    The CTP Must Be Naturally Occurring ......................................29

a.    The Missouri District Court's Claim Construction........................29

b.    The '835 Patent Specification Describes Only Naturally
Occurring CTPs ............................................................30

c.    During the 1985-86 Time Frame, Those Skilled in the
Art Understood that All Existing CTPs Were Naturally
Occurring .....................................................................31

2.    The CTP Must Target the EPSPS Protein to the Chloroplast....................31

3.    The CTP Must Be Cleaved (or Removed) from the Mature
EPSPS ..........................................................................32

C.    A Fusion Polypeptide Is a Chain of Amino Acids Consisting of a CTP
Fused to an EPSPS, Where the CTP and EPSPS Are Not Found
Together in Nature ...............................................................................34

1.    The Missouri Court's Claim Construction...................................34

2.    The Missouri Court Was Correct ...............................................36

a.    The Claim Language Supports the Missouri Court's
Claim Construction ........................................................36

REDACTED VERSION – PUBLICLY FILED

b.    The Specification and Prosecution History Confirm that the CTP and EPSPS in the Fusion Polypeptide Come From Different Sources.................................................................37

D.    The Phrase "Enhance the Glyphosate Resistance of a Plant Cell" Means the Plant Cell Will Survive Application of Glyphosate at a Concentration Sufficient to Select a Transformed Plant Cell From a Non-Transformed Plant Cell...............................................................................39

VII.    CONCLUSION...............................................................................................................40

059155.1008

REDACTED VERSION – PUBLICLY FILED

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acco Brands, Inc. v. Micro Sec. Devices, Inc.,*
  346 F.3d 1075 (Fed. Cir. 2003)................................................................27

*Bloom Engineering Co. v. N. America Manufacturing Co.,*
  129 F.3d 1247 (Fed. Cir. 1997)..............................................................13

*Enzo Biochem, Inc. v. Calgene, Inc.,*
  188 F.3d 1362 (Fed. Cir. 1999)...............................................................27

*K-2 Corp. v. Salomon S.A.,*
  191 F.3d 1356 (Fed. Cir. 1999)...............................................6, 17, 26, 29

*Lemelson v. United States,*
  752 F.2d 1538 (Fed. Cir. 1985).................................................................26

*Microsoft Corp. v. Multi-Tech System, Inc.,*
  357 F.3d 1340 (Fed. Cir. 2004)...........................................................7, 22

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005)..................................................... passim

*Schumer v. Laboratory Computer System, Inc.,*
  308 F.3d 1304 (Fed. Cir 2002)...............................................................18

*Southwall Techs., Inc. v. Cardinal IG Co.,*
  54 F.3d 1570 (Fed. Cir. 1995).................................................................16

*In re Swinehart,*
  439 F.2d 210 (C.C.P.A. 1971) ..............................................6, 26, 29

*TechSearch, L.L.C. v. Intel Corp.,*
  286 F.3d 1360 (Fed. Cir. 2002)..............................................................26

*In re Vaeck,*
  947 F.2d 488 (Fed. Cir. 1991)...............................................................27

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,*
  520 U.S. 17 (1997).................................................................................26

*Wright Medical Tech., Inc. v. Osteonics Corp.,*
  122 F.3d 1440 (Fed. Cir. 1997)..............................................................26

DB01:1959785.1

059155.1008

REDACTED VERSION – PUBLICLY FILED

## DOCKETED CASES

*DeKalb Corp. v. Syngenta Seeds, Inc.,*
   No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) ...............................................................2, 12

*DeKalb Genetics Corp. v. Northrup King Co., et al.,*
   Nos. 96 C 50169 *et al.* (N.D. Ill. filed June 10, 1996) ...........................................................12

*DeKalb Genetics Corp. v. Pioneer Hi-Bred International, Inc. et al.,*
   Nos. 96 C 50112 *et al.* (N.D. Ill., filed June 10, 1996). ....................................................12, 18

*Monsanto Co. v. Bayer CropScience LP,*
   Case No. 4:01CV-1825 (E.D. Mo. filed Nov. 20, 2001) .....................................................29

*Monsanto Co. v. Syngenta Seeds, Inc.,*
   No. 04-CV-0305 (D. Del. filed May 12, 2004) ......................................................................2

## FEDERAL STATUTES

35 U.S.C. § 112, ¶ 1 ................................................................................................................1, 20

35 U.S.C. § 112, ¶ 4 ..............................................................................................................10, 13

## OTHER

*Manual of Patent Examining Procedure*, § 717.04
   (6th Ed. Rev. 2, July 1996) ....................................................................................................16

DB01:1959785.1                                                                                                              059155.1008

REDACTED VERSION – PUBLICLY FILED

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | U.S. Patent No. 6,013,863 |
| Exhibit 2 | U.S. Patent No. 5,538,880 |
| Exhibit 3 | U.S. Patent No. 4,940,835 |
| Exhibit 4 | DeKalb's Second Supplemental Responses to Syngenta's Interrogatories Nos. 1 & 2 |
| Exhibit 5 | DeKalb's Responses to Syngenta's Third Set of Interrogatories (Nos. 13-16) |
| Exhibit 6 | Letter from T. Miller to M. Flibbert dated December 20, 2005 |
| Exhibit 7 | DeKalb's Second Amended and Supplemental Response to Interrogatory No. 9, *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, No. 96 C 50169 (N.D. Ill. filed June 10, 1996) |
| Exhibit 8 | Excerpt from transcript of proceedings before the Honorable P. Michael Mahoney on May 16, 2005, *DeKalb Genetics Corp. v. Syngenta Seeds, Inc. et al.*, No. 04 C 50323 (N.D. Ill. filed July 27, 2004) |
| Exhibit 9 | Order adopting Report and Recommendation of Special Master Regarding Claim Construction, *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, Nos. 96 C 50112, 96 C 50114, 96 C 50169, 96 C 50239, 96 C 50241, 96 C 50284, 96 C 50186 (N.D. Ill. filed June 10, 1996) |
| Exhibit 10 | Report and Recommendation of Special Master Regarding Claim Construction, *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, Nos. 96 C 50112, 96 C 50114, 96 C 50169, 96 C 50239, 96 C 50241, 96 C 50284, 96 C 50186 (N.D. Ill. filed June 10, 1996) |
| Exhibit 11 | Supplemental Amendment filed on March 28, 1995 in Application Ser. No. 08/249,458 |
| Exhibit 12 | Amendment filed on January 27, 1994 in Application Ser. No. 08/249,458 |
| Exhibit 13 | PTO's Notice of Allowability dated November 16, 1995 in Application Ser. No. 08/249,458 |

REDACTED VERSION – PUBLICLY FILED

| Exhibit 14 | Amendment Under 37 C.F.R. § 1.312 filed on December 8, 1995 in Application Ser. No. 08/249,458 |
|---|---|
| Exhibit 15 | PTO's Response to Rule 312 Communication in Application Ser. No. 08/249,458 |
| Exhibit 16 | Index of Claims in Application Ser. No. 08/249,458 |
| Exhibit 17 | *Manual of Patent Examining Procedure*, § 717.04 at 700-156 (6th Ed. Rev. 2, July 1996) |
| Exhibit 18 | Excerpt from transcript of the December 14, 2005, deposition of Dr. Eric Ward |
| Exhibit 19 | Excerpt from Petition for Determination of Nonregulated Status: Roundup Ready Corn Line GA21 |
| Exhibit 20 | Excerpt from February 13, 2001, trial testimony of Dr. Ronald Lundquist in *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, Nos. 96 C 50112 (N.D. Ill.). |
| Exhibit 21 | Amendment filed on June 7, 1991 in Application Ser. No. 07/467,983 |
| Exhibit 22 | Office Action filed on August 23, 1991 in Application Ser. No. 07/467,983 |
| Exhibit 23 | Response filed on February 20, 1992 in Application Ser. No. 07/467,983 |
| Exhibit 24 | Final Office Action filed on May 13, 1992 in Application Ser. No. 07/467,983 |
| Exhibit 25 | Office Action filed on March 8, 1993 in Application Ser. No. 07/974,379 |
| Exhibit 26 | Preliminary Amendment filed on March 4, 1993 in Application Ser. No. 07/974,379 |
| Exhibit 27 | Declaration Under 37 C.F.R. § 1.132, filed in Application Ser. No. 07/974,379 |
| Exhibit 28 | Interview Summary filed on July 27, 1994 in Application Ser. No. 07/974,379 |
| Exhibit 29 | Preliminary Amendment filed on November 12, 1996 in Application Ser. No. 08/677,695 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| Exhibit 30 | Response to Restriction Requirement filed on August 21, 1997 in Application Ser. No. 08/677,695 |
| Exhibit 31 | U.S. Patent No. 6,946,587 |
| Exhibit 32 | Response Under 37 C.F.R. § 1.116 - Expedited Examining Procedure - Group 1803 filed on May 31, 1995 in Application Serial No. 08/249,458 |
| Exhibit 33 | Examiner Interview Summary Record filed on January 4, 1988 in Application Ser. No. 879,814 |
| Exhibit 34 | Excerpt from July 1-2, 2003, Markman hearing transcript in *Monsanto Co. v. Bayer CropScience LP*, Case No. 4:01CV01825 CDP (E.D. Mo.) |
| Exhibit 35 | Excerpts from October 7, 2005, deposition transcript of Dilip Shah |
| Exhibit 36 | Excerpts from December 16, 2005 deposition transcript of Barry Bruce |
| Exhibit 37 | Excerpts from December 15, 2005, deposition transcript of Kenneth Keegstra |
| Exhibit 38 | Excerpts from March 25, 2003, deposition transcript of Kenneth Keegstra |
| Exhibit 39 | Specification of U.S. Application No. 763,482 |
| Exhibit 40 | Specification of U.S. Application No. 792,390 |
| Exhibit 41 | May 1, 1985 Plant Mol. Bio. Monthly Report |
| Exhibit 42 | Excerpts from laboratory notebook of Nancy Mathis (MRR015207 and MRR015232) |
| Exhibit 43 | Specification of U.S. Application No. 879,814 |
| Exhibit 44 | Amendment A filed on January 21, 1988 in U.S. Application No. 879,814 |

DB01:1959785.1

059155.1008

REDACTED VERSION – PUBLICLY FILED

Defendants Syngenta Seeds, Inc., Syngenta Biotechnology Inc., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (collectively "Syngenta") respectfully submit this brief in support of their proposed construction of claims 4-9 of U.S. Patent No. 5,538,880 ("the '880 patent") (Ex. 2) asserted by Plaintiff DeKalb Genetics Corporation ("DeKalb"), and claims 1 and 5-6 of U.S. Patent No. 4,940,835 ("the Shah patent" or "the '835 patent") (Ex. 3), assigned to Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively "Monsanto").

## I.     INTRODUCTION

The Court can dispose of this litigation on summary judgment if it adopts a limited number of Syngenta's proposed claim constructions. More specifically, Syngenta has filed three summary judgment motions which include claim construction issues. First, if the Court construes the asserted claims of the '880 patent as dependent claims—as the plain claim language requires—then Syngenta cannot infringe any asserted claim of this patent because it is undisputed that Syngenta never infringed independent claim 1 from which the asserted claims depend.[1]

Second, if the court gives effect to the functional language recited in the broad claims of the '835 patent asserted against Syngenta, then that patent would also be invalid under 35 U.S.C. § 112, ¶ 1 as lacking an enabling disclosure.[2]

---

[1] *See* Syngenta's Opening Brief in Support of Its Motion for Summary Judgment of Non-Infringement of the Lundquist Patents filed January 11, 2006 ("Lundquist Patents Non-Infringement Motion"). In its Lundquist Patents Non-Infringement Motion, Syngenta contends that it cannot infringe claims 4-9 of the '880 patent as well as asserted claims 5-6 of U.S. Patent No. 6,013,863 ("the '863 patent") (Ex. 1) (collectively "the Lundquist patents"). As far as Syngenta is aware, there are no claim construction disputes between the parties on the '863 patent relating to the non-infringement issue.

[2] *See* Syngenta's Opening Brief in Support of Its Motion for Summary Judgment of Non-Enablement of the Shah Patent filed January 11, 2006 ("Shah Patent Non-Enablement Motion").

REDACTED VERSION – PUBLICLY FILED

Third, if the Court construes the term "chloroplast transit peptide," as recited in claim 1 of the '835 patent, to mean (1) a naturally occurring chain of amino acids that (2) targets the EPSPS protein to the chloroplast, and (3) is cleaved (or removed) from the mature protein, then Syngenta cannot literally infringe any asserted claim of the '835 patent.[3]

As explained below, Syngenta's proposed claim constructions supporting the three summary judgment motions are well-grounded in the intrinsic evidence and relevant extrinsic evidence. While adoption of a limited number of claim constructions should dispose of the entire litigation on summary judgment, Syngenta also addresses additional claim construction issues that bear on other defenses should trial of this case be necessary.

## II.    NATURE OF PROCEEDINGS

On May 12, 2004, Syngenta announced that it had acquired rights to GA21 corn technology from Bayer CropScience, a successor of Rhone-Poulenc Agro, S.A. ("RPA"). The same day, Monsanto Company, together with Monsanto Technology LLC, sued Syngenta for infringement of the '835 patent in this Court. *Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-CV-0305 (D. Del. filed May 12, 2004) ("the Shah action").

On July 27, 2004, DeKalb, a wholly owned subsidiary of Monsanto Company, sued Syngenta in the Northern District of Illinois, alleging that Syngenta had infringed the Lundquist patents in connection with Syngenta's proposed marketing of GA21 corn. *DeKalb Corp. v. Syngenta Seeds, Inc.*, No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) ("the Lundquist action").

The Shah and Lundquist actions both charged Syngenta with patent infringement in the use of GA21 corn, which is a genetically modified corn tolerant to the herbicide glyphosate. Due

---

[3] *See* Syngenta's Opening Brief in Support of Its Motion For Summary Judgment of Non-Infringement of the Shah Patent filed January 11, 2006 ("Shah Patent Non-Infringement Motion").

059155.1008

REDACTED VERSION – PUBLICLY FILED

to the overlapping issues, Syngenta moved to transfer the Lundquist action to this Court. On May 19, 2005, the Illinois district court granted Syngenta's motion to transfer. Docket Item ("D.I.") 92. This Court consolidated the Shah and Lundquist actions on August 23, 2005. D.I. 111. The parties completed all discovery on December 19, 2005. D.I. 111.

## III.    SUMMARY OF ARGUMENT

1.    The '880 patent is directed to a "bombardment" process for producing a herbicide-resistant transgenic (genetically modified) corn plant. DeKalb has now withdrawn its charge of infringement of independent claim 1—as it is undisputed that Syngenta never used the claimed process with respect to any GA21 corn product. Despite its admitted failure to establish infringement of independent claim 1, DeKalb continues to assert infringement of certain *dependent* claims (claims 4-9). As established below, however, each of claims 4-9 depends (directly or indirectly) from claim 1 of the '880 patent, because: (a) DeKalb has admitted that claims 4-9 depend from claim 1; (b) in a prior litigation, the Illinois district court construed the '880 patent claims as requiring microprojectile bombardment; (c) by their form and language, claims 4-9 depend from claim 1; and (d) the prosecution history compels a conclusion that these claims be treated as dependent from claim 1. If the Court construes claims 4-9 as dependent claims, DeKalb's infringement allegations can be dismissed as a matter of law for the reasons set forth in the accompanying Lundquist Patents Non-Infringement Motion.

2.    If the Court does not eliminate DeKalb's infringement allegations on summary judgment, the Court should construe certain terms of the Lundquist patents as follows:

a.    The term "herbicide" in claim 1 of the '880 patent means a chemical agent employed to kill or inhibit the growth of weeds and excludes antibiotics. The specification consistently distinguishes between "herbicides" (such as glyphosate) and "antibiotics" (such as

3

REDACTED VERSION – PUBLICLY FILED

hygromycin).  The prosecution history of the '880 patent and a related application also confirm the distinction between herbicides and antibiotics.

b.    The '880 patent's claim language, specification, and prosecution history establish that: (i) the term "progeny" in claims 4-7 means the R1 progeny; (ii) the term "further progeny" in claims 6-9 means the R2 progeny; and (iii) the term "progeny" (second occurrence) in claim 9 means the R3 progeny.

3.    With respect to the '835 patent, claim 1 defines a chimeric plant gene (and its component DNA sequences) primarily in terms of its *function* as opposed to its DNA structure. For example, the claim requires that the gene function "in a plant cell," such that the CTP "permits the fusion polypeptide to be imported into a chloroplast of a plant cell," and that the promoter be "adapted to cause sufficient expression of the fusion polypeptide to enhance the glyphosate resistance of a plant cell transformed with the gene."  In fact, Monsanto agreed during prosecution to draft the claims using functional language.  Syngenta is simply requesting that the Court confirm that the express functional language of claim 1 constitutes limitations of the claims that cannot be ignored.  There is nothing in the claim language, the specification, the prosecution history, or the relevant case law, that would allow the Court to read the express functional language out of claim 1.

4.    Claim 1 of the '835 patent recites the term "chloroplast transit peptide" ("CTP"). The Court should construe this term to mean (1) a naturally occurring chain of amino acids that (2) functions to target a protein to the chloroplast and (3) is cleaved (or removed) leaving the mature EPSPS protein.  This proposed construction is supported by the claim language as understood by those of ordinary skill in the art, the specification, the consistent scientific

4

testimony of both Monsanto's and Syngenta's technical experts, and a prior construction of the same claim term by the U.S. District Court for the Eastern District of Missouri.

     5.     Claim 1 of the '835 patent also recites the term "chloroplast transit peptide[CTP]/5-enolpyruvylshikimate-3-phosphate synthase [EPSPS] *fusion polypeptide*." A "fusion polypeptide" is a chain of amino acids consisting of a CTP sequence (as defined above) fused to an EPSPS sequence, where the CTP and EPSPS are not found together in nature. This construction is supported by the claim language as understood by those skilled in the art, the specification, the prosecution history, and the Missouri district court's prior claim construction. Indeed, the Missouri district court found that construing the claim to require that the CTP/EPSPS fusion polypeptide must be synthetic and not naturally occurring was not even "a close call."

## IV.    CLAIM CONSTRUCTION PRINCIPLES

     As the Court is aware, the Federal Circuit recently issued an *en banc* decision concerning the correct approach for interpreting claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). In *Phillips*, the Federal Circuit held that courts should interpret a claim term to have its "ordinary and customary meaning," which is the meaning the term would have "to a person of ordinary skill in the art in question at the time of the invention . . . ." *Id.* at 1313. "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id.* "It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field." *Id.* (quoting *Multiform Desiccants, Inc. v. Medzazm, Ltd.,* 133 F.3d 1473, 1478 (Fed. Cir. 1988)).

DB01:1959785.1

059155.1008

REDACTED VERSION – PUBLICLY FILED

To determine the ordinary and customary meaning of a term the Court must first examine the claims themselves, as it is "a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In examining the words of a claim, courts must give effect to functional language because such language "is, of course, an additional limitation in the claim." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999); *see also In re Swinehart*, 439 F.2d 210, 212 (C.C.P.A. 1971) (recognizing the use of functional language in claims).

Because the claims form part of the patent as a whole, courts must read the claims "in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). In many cases, the specification is "the single best guide to the meaning of a disputed term." *Id.* "The specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history." *Id.* (quoting *Multiform Desiccants*, 133 F.3d at 1478).

The prosecution history is also important to claim construction as it "provides evidence of how the PTO and the inventor understood the patent." *Id.* at 1317. The prosecution history "was created by the patentee in attempting to explain and obtain the patent[,]" and "can often inform the meaning of the claim language by demonstrating . . . whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* Moreover, because "[a]ny statement of the patentee in the prosecution of a related

6

application as to the scope of the invention would be relevant to claim construction," statements made during the prosecution history of a later-issued patent are relevant to earlier-issued patents sharing common specifications. *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (applying statements made during prosecution of a later-issued patent to construe terms of earlier-issued patent sharing the same specification).

Finally, although "less significant than the intrinsic record," courts may rely on extrinsic evidence "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1317-18 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).

The Federal Circuit in *Phillips* also resolved conflicting precedent over the use of dictionaries in claim construction. The Federal Circuit, sitting *en banc,* explicitly held that "[a] claim should not rise or fall based upon the preferences of a particular dictionary editor, or the court's independent decision, uninformed by the specification, to rely on one dictionary rather than another." *Id.* at 1322. "The resulting definitions, therefore, do not necessarily, reflect the inventor's goal of distinctly setting forth his invention as a person of ordinary skill in that particular art would understand it." *Id.*

## V.    THE LUNDQUIST PATENTS

### A.    The Claims and Specifications of the Lundquist Patents

The claims of both Lundquist patents are directed to a process for obtaining fertile transgenic herbicide-resistant or glyphosate-resistant corn plants using the microprojectile bombardment method. Independent claim 1 of the '863 patent recites the following three-step process:

7

059155.1008

REDACTED VERSION – PUBLICLY FILED

> 1.  A process for producing a fertile transgenic *Zea mays* plant comprising the steps of (i) **bombarding** intact regenerable *Zea mays* cells with DNA-coated microprojectiles, wherein said DNA comprises at least a selectable marker gene; (ii) **selecting** a population of transformed cells expressing the selectable marker gene; and (iii) **regenerating** a fertile transgenic plant therefrom, wherein said DNA is expressed so as to impart glyphosate resistance to said transgenic plant and is transmitted through a normal sexual cycle of said transgenic plant to progeny plants.

Ex. 1 at col. 29:26[4] to col. 30:5, and Certificate of Correction (emphasis added).

Independent claim 1 of the '880 patent recites a similar three-step process:

> 1.  A process for producing a fertile transgenic *Zea mays* plant comprising the steps of (i) **bombarding** intact regenerable *Zea mays* cells with DNA-coated microprojectiles, (ii) identifying or **selecting** a population of transformed cells, and (iii) **regenerating** a fertile transgenic plant therefrom, wherein said DNA is transmitted through a complete sexual cycle of said transgenic plant to its progeny, and imparts herbicide resistance thereto.

Ex. 2 at col. 22:48-55 (emphasis added).

Thus, according to the plain language of the claims, claim 1 of each patent covers a three-step process involving (i) "bombarding" corn cells with DNA-coated microprojectiles; (ii) "selecting" ("identifying or selecting" in the '880 patent) a population of transformed cells; and (iii) "regenerating" a fertile transgenic corn plant from those transformed cells (referred to herein as "process steps (i)-(iii)"). Ex. 1, claim 1; Ex. 2, claim 1. This bombardment process produces a glyphosate-resistant ('863 patent) or herbicide-resistant ('880 patent) transgenic corn plant, which is known as the "R0" generation plant. *See, e.g.*, Ex. 1 at col. 1:13-14 (stating that the invention relates to a process for "producing transgenic plants via particle bombardment"); *id.* at col. 18:36-37 ("The plants regenerated from the transformed callus are referred to as the R0 generation or R0 plants."). All of the examples of the Lundquist patents are directed to

---

[4] Citations to xx:yy refer to either column:line number or page:line number.

8

REDACTED VERSION – PUBLICLY FILED

imparting resistance to the antibiotic hygromycin, and there is no example relating to resistance to any herbicide.

DeKalb has now withdrawn its assertion of infringement with respect to independent claim 1 of the Lundquist patents. DeKalb, however, still asserts infringement of claims 5-6 of the '863 patent and claims 4-9 of the '880 patent, respectively, all of which are process claims that directly or indirectly depend from claim 1 of each patent. *See* DeKalb's Second Supplemental Responses to Syngenta's Interrogatories Nos. 1 & 2, at 8 and 14 (Ex. 4); DeKalb's Responses to Syngenta's Third Set of Interrogatories (Nos. 13-16), at 3, 6-7 (Ex. 5); Ex. 1 at col. 30; Ex. 2 at cols. 22-23.

Not only does independent claim 1 of each Lundquist patent recite essentially the same three-step process, the specifications of both Lundquist patents are essentially identical. Moreover, both patents stem from the same family of applications, including U.S. Application Nos. 467,983 ("the '983 application"), filed January 22, 1990, and 974,379 ("the '379 application"), filed November 10, 1992. *See* Ex. 1, front cover; Ex. 2, front cover. The '863 patent also claims priority to U.S. Application No. 677,695 ("the '695 application"), filed July 10, 1996. *See* Ex. 1, front cover.

**B.    Claim Construction Issues Relating to Syngenta's Motion for Summary Judgment of Non-Infringement of the Lundquist Patents**

Syngenta's Motion for Summary Judgment of Non-Infringement of the Lundquist Patents should be granted if the Court construes the asserted claims of the '880 patent as dependent claims, thereby including process steps (i)-(iii) of claim 1. As discussed below, the claim language, specifications, and prosecution histories dictate such a construction. Indeed, as explained below, in a prior litigation involving the '880 patent, DeKalb admitted that claim 4

059155.1008

REDACTED VERSION – PUBLICLY FILED

depends from claim 1 and requires the performance of process steps (i)-(iii) of claim 1, a construction adopted by the district court in that litigation.

### 1.   There Is No Claim Construction Dispute Concerning the '863 Patent

Claims 5 and 6 of the '863 patent read as follows:

5. The process of claim 1 further comprising obtaining transgenic glyphosate resistant progeny plants of subsequent generations from said fertile transgenic plant.

6. The process of claim 5 further comprising obtaining seed from one of said progeny plants.

Ex. 1 at col. 30.

The Court need not construe claims 5 and 6 of the '863 patent, because the parties agree that these claims depend (directly or indirectly) from claim 1 and incorporate by reference process steps (i)-(iii). *See* 12/20/05 Ltr. from T. Miller to M. Flibbert at 2 ("Plaintiffs agree that claims 5 and 6 are dependent claims.") (Ex. 6); *see also* 35 U.S.C. § 112, ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

### 2.   Claims 4-9 of the '880 Patent Incorporate by Reference the Three-Step Process of Claim 1

Claims 4-9 of the '880 patent read as follows:

4. A process comprising obtaining progeny from a fertile transgenic plant obtained by the process of claim 1 which comprise said DNA.

5. The process of claim 4 wherein said progeny are obtained by crossing said fertile transgenic plant with an inbred line.

6. The process of claim 4 comprising obtaining seed from said progeny and obtaining further progeny plants comprising said DNA from said seed.

7. The process of claim 5 wherein the progeny obtained are crossed back to the inbred line, to obtain further progeny which comprise said DNA.

059155.1008

REDACTED VERSION – PUBLICLY FILED

8.  The process of claim 6 wherein seeds are obtained from said further progeny plants and plants comprising said DNA are recovered from said seed.

9.  The process of claim 7 wherein said further progeny are crossed back to the inbred line to obtain progeny which comprise said DNA.

Ex. 2 at cols. 22-23.

For the following reasons, each of these claims depends (directly or indirectly) from claim 1 of the '880 patent: (a) DeKalb has admitted that these claims depend from claim 1; (b) the Illinois district court construed the '880 patent claims as requiring microprojectile bombardment; (c) by their form and language, the claims depend from claim 1; and (d) the prosecution history compels a conclusion that the claims be treated as dependent from claim 1.

      a.    **DeKalb Previously Admitted That Claims 4-9 Depend From Claim 1**

Although DeKalb has specifically admitted that claims 5-9 of the '880 patent are dependent claims that depend (directly or indirectly) from claim 4 of the patent, DeKalb has equivocated with regard to the dependent nature of claim 4, refusing to take a position on its status as dependent or independent. *See* Ex. 5 at 5

Leaving aside the issue of the propriety of its response, DeKalb should have been more candid.

Up to now, DeKalb plainly treated claim 4 as dependent on and requiring practice of all the process steps of claim 1. As explained below, DeKalb and the PTO treated claim 4 as a dependent claim during prosecution of the '880 patent. And during a prior litigation involving the same '880 patent, consistent with that prosecution history, DeKalb admitted that claim 4 depends from claim 1, expressly asserting that processes covered by claim 4 require the performance of process steps (i)-(iii) plus the additional step of obtaining progeny:

11

> [P]rocesses that are covered by this claim *must comprise at least the steps listed in subparts (i) - (iii) of claim 1 and the additional step of obtaining progeny* from a plant obtained by the process that has at least those steps.

DeKalb's Second Amended and Supplemental Response to Interrogatory No. 9, *DeKalb Genetics Corp. v. Northrup King Co.*, No. 96 C 50169 (N.D. Ill. filed 6/10/96) (Ex. 7) at 60 (emphasis added). Thus, DeKalb previously advocated that claim 4 requires *four steps*: steps (i)-(iii) plus the additional step of obtaining progeny.[5] *Id.*

### b. The Illinois District Court Construed the '880 Patent Claims as Requiring Microprojectile Bombardment

In this same prior litigation involving the '880 patent, the Illinois district court adopted a Special Master's Report and Recommendation regarding claim construction. *See* Order adopting Report and Recommendation of Special Master Regarding Claim Construction, *DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, Inc. et al.*, Nos. 96 C 50112 *et al.*, (N.D. Ill. filed 6/10/96) (Ex. 9). This prior claim construction refutes DeKalb's new position—conveniently crafted for the present litigation—that claim 4 somehow covers a *one-step* process that does not require the practice of the bombardment, selection, and regeneration steps of claim 1. The district court recognized that the '880 patent claims "are directed to processes, *each comprising a number of steps*." Report and Recommendation of Special Master Regarding Claim Construction at 18, *DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, Inc. et al.*, Nos. 96 C 50112 *et al.*, (N.D. Ill. filed 6/10/96) (Ex. 10) (emphasis added). The court further determined that each of the '880 patent claims requires microprojectile bombardment:

---

[5] DeKalb also described claim 4 as a "dependent claim" during a discovery conference in the present litigation, before the case was transferred to this Court. Excerpt from transcript of proceedings before the Honorable P. Michael Mahoney on May 16, 2005, *DeKalb Genetics Corp. v. Syngenta Seeds, Inc. et al.*, No. 04 C 50323 (N.D. Ill. filed 7/27/04) at 17, lines 8-13 (Ex. 8).

REDACTED VERSION – PUBLICLY FILED

> As already indicated, the microprojectile bombardment limitation of the product claims of the '956 patent cannot be ignored. ***Each of the process claims of the remaining three patents*** [including the '880 patent] ***contains a step calling for bombardment with DNA-coated microprojectiles.***

Ex. 10 at 29 (emphasis added); *see also id.* at 36 ("The '880 claims call for bombardment of 'intact regenerable *Zea mays* cells.'"). Nothing in the prior claim construction suggests that claim 4 (or any other '880 patent claim) does not require practice of the bombardment, selection, and regeneration steps of claim 1.

In addition, the district court determined that the "independent process claims" of the '880 patent "each contain the following language: 'wherein said DNA is transmitted through a complete sexual cycle of said transgenic plant to its progeny.'" *Id.* at 19. Claim 4 does not contain the quoted language and thus is not an independent claim under the prior claim construction.

c.    **Claims 4-9, by Their Form and Language, Depend From Claim 1**

Even apart from DeKalb's admissions and the Illinois district court's claim construction order, there can be no doubt that claims 4-9 of the '880 patent all depend from claim 1 of the patent. Initially, claim 4 is a dependent claim because it follows the statutory form—it refers to a previous claim (independent claim 1), and it then specifies a further limitation ("obtaining progeny . . ."). *See* 35 U.S.C. § 112, ¶ 4. In addition, the phrase "said DNA" in claim 4 necessarily refers back to the "DNA" recited in claim 1 or this phrase would lack any antecedent basis. Further, claims 5-9 are all written in this same form, referring (either directly or indirectly) to claim 4 and incorporating one or more additional limitations. Thus, claims 4-9 all depend directly (claim 4) or indirectly (claims 5-9) from claim 1 and—as a matter of law— incorporate by reference process steps (i)-(iii) of claim 1. *See* § 112, ¶ 4; *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997).

13

REDACTED VERSION – PUBLICLY FILED

### d.  The Dependency of Claims 4-9 on Claim 1 Follows From the Prosecution History

The prosecution history of the '880 patent before the U.S. Patent and Trademark Office ("PTO") further establishes that claim 4 (and, thus, claims 5-9 as well) depends from claim 1.

Claim 4 of the '880 patent issued from application claim 30.  Specifically, on March 28, 1995, during patent prosecution, DeKalb filed a Supplemental Amendment adding new application claims 30-35, which later issued as claims 4-9 of the '880 patent.  3/28/95 Supplemental Amendment in Application Ser. No. 08/249,458 (Ex. 11).  Application claim 30, which ultimately issued as claim 4, originally read as follows:

> 30.    The process of claim 23 further comprising (iv) obtaining progeny from said fertile transgenic plant of step (iii), which comprise said DNA.

Ex. 11 at 0001046.

Claim 23, which became '880 patent claim 1, recited and required practice of process steps (i)-(iii).  *See* 12/27/94 Amendment in Application Ser. No. 08/249,458 (Ex. 12) at 0001034. Thus, '458 application claim 30 (patent claim 4) expressly required the practice of each of steps (i) through (iii) of application claim 23 (patent claim 1), plus a fourth step (step "(iv)") of "obtaining progeny from said fertile transgenic plant of step (iii)."  Ex. 11 at 0001046; Ex. 12 at 0001034.  As a result, there can be no question that application claim 30 (patent claim 4) was, during the prosecution process, written as a claim that depended from application claim 23 (patent claim 1).

On November 15, 1995, the Examiner conducted an interview with DeKalb's attorney and agreed to allow the claims.  11/16/95 Notice of Allowability in Application Ser. No. 08/249,458 (Ex. 13) at 0001077.  The PTO mailed a Notice of Allowability on November 27, 1995, stating that application claims 23, 24, and 29-35 (renumbered as claims 1-9) were allowed and that prosecution on the merits was "CLOSED in this application."  *Id.*

14

REDACTED VERSION – PUBLICLY FILED

*After* prosecution was closed, however, DeKalb submitted an amendment under 37 C.F.R. § 1.312 ("Rule 312"). Rule 312 permits claim revisions under limited circumstances, e.g., a change in wording of the claims not affecting the *scope* of the claims. DeKalb's amendment, filed on December 8, 1995, changed application claim 30 (patent claim 4) as follows (additions underlined; deletions bracketed and struck through):

> 30.    [The] A process [of claim 23 further] comprising [(iv)] obtaining progeny from [said] a fertile transgenic plant [of step (iii)] obtained by the process of claim 23, which comprise said DNA.

12/8/95 Amendment Under 37 C.F.R. § 1.312 in Application Ser. No. 08/249,458 (Ex. 14) at 0001082-85.

Indeed, DeKalb made it clear that its wording change was a matter of form only. Specifically, DeKalb represented to the PTO that the amended claim did "not introduce new matter" and was "allowable without further search or consideration." Ex. 14 at 0001085. And the PTO entered DeKalb's Rule 312 amendment on that basis, characterizing it "as directed to matters of form *not affecting the scope of the invention.*" Response to Rule 312 Communication in Application Ser. No. 08/249,458 (Ex. 15) at 0001092 (emphasis added).

It is evident from the prosecution history, therefore, that both the PTO and DeKalb understood and treated claim 4 of the '880 patent as having the same scope as corresponding application claim 30 (before amendment), which unambiguously required the practice of steps (i)-(iii) of application claim 23 (patent claim 1) plus the recited step "(iv)" of "obtaining progeny from said fertile transgenic plant of step (iii)." Ex. 11 at 0001046; Ex. 12 at 0001034.

In addition, consistent with that understanding, in the "Index of Claims" portion of the '880 patent's file history, the PTO identified application claims 23 and 36 (patent claims 1 and 10) as independent claims and the remaining claims, including application claim 30 (patent claim 4), as dependent claims. *See* Index of Claims in Application Ser. No. 08/249,458 (Ex. 16) at

15

REDACTED VERSION – PUBLICLY FILED

0001130; *Manual of Patent Examining Procedure*, § 717.04 at 700-156 (6th Ed. Rev. 2, July 1996) (Ex. 17) ("Independent claims should be designated in the Index of Claims by encircling the claim number in red ink.").

Thus, the prosecution history provides clear support for the conclusion that claim 4 of the '880 patent is a dependent claim that incorporates process steps (i)-(iii) of claim 1. *See, e.g., Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576-77 (Fed. Cir. 1995) (construing claim in view of its prosecution history and affirming summary judgment of non-infringement). As noted above, this is exactly the construction DeKalb itself advocated in the prior litigation involving the '880 patent.

### 3. Regardless of Its Dependency, Claim 4 Requires Performance of Process Steps (i)-(iii) and the Additional Step of Obtaining Progeny

Claim 4 states "[a] process comprising *obtaining progeny* from a *fertile transgenic plant obtained by the process of claim 1* . . . ." Thus, in order to accomplish the step of "obtaining progeny," one must "obtain" a fertile transgenic plant by following "the process of claim 1" (i.e., process steps (i)-(iii)). In fact, the specification of the '880 patent indicates that the step of "obtaining progeny" is "well-known to those skilled in the art," confirming that the patentability of claim 4 rests on process steps (i)-(iii). Ex. 2 at col. 11:61-67. Thus, apart from whether the Court construes claim 4 as a dependent claim, the plain language of the claim requires the performance of process steps (i)-(iii) of claim 1 and the additional step of "obtaining progeny."

### C. Other Claim Construction Issues

If the Court construes claims 4-9 of the '880 patent as dependent claims and therefore dismisses DeKalb's infringement allegations, then the Court need not address the remaining claim construction issues concerning the Lundquist patents. However, if the Court finds it

16