**20**

129

1      IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF ILLINOIS
2                  WESTERN DIVISION

3
       DE KALB GENETICS CORP.,        )   Rockford, Illinois
4                                     )   Tuesday, February 13, 2001
                       Plaintiff,     )   8:45 o'clock a.m.
5                                     )
             v.                       )   96 C 50112
6                                     )
       PIONEER HI-BRED                )
7      INTERNATIONAL,                 )
                                      )
8                      Defendant.     )

9                        VOLUME II
                    TRANSCRIPT OF TRIAL
10        BEFORE THE HON. PHILIP G. REINHARD, and a jury

11     Appearances:

12
       On Behalf of DeKalb
13     Genetics Corp.:           HOWREY, SIMON, ARNOLD & WHITE
                                 (750 Bering Drive, Suite 400,
14                               Houston, Texas 77057) by
                                 MR. JOHN F. LYNCH
15                               MR. THOMAS A. MILLER
                                 MS. SUSAN K. KNOLL
16
                                 WILLIAMS & MC CARTHY
17                               (321 West State St., Suite 400
                                 Rockford, Illinois 61101) by
18                               MR. JOHN J. HOLEVAS

19     On Behalf of Pioneer
       Hi-Bred International:     FOLEY & LARDNER
20                               (330 North Wabash,
                                 Suite 3300,
21                               Chicago, Illinois 60611) by
                                 MS. SHARON R. BARNER
22                               MS. JEANNE MARIE GILLS

23                               CLIFFORD, CHANCE, ROGERS & WELLS
                                 (200 Park Avenue,
24                               New York, New York 10166) by
                                 MR. THOMAS FLEMING
25                               MS. LEORA BEN-AMI

Clerk's File Copy

130

```
1    On behalf of Pioneer
     Hi-Bred International:      MAGGIO & FOX
2                               (501 Seventh Street,
                                Suite 501,
3                               Rockford, Illinois 61104) by
                                MR. FRANK P. MAGGIO
4

5    Court Reporter:            Mary T. Lindbloom
                                211 South Court Street
6                               Rockford, Illinois 61101
                                (815) 987-4486
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Lundquist - redirect                    266

1    A    Are you referring to those first two I was just mentioning?

2    Q    Yes, the two down at the bottom.

3    A    Yes.  That so-called dap A gene is a bacterial gene that if

4    you could put that into a corn plant, get that into a corn

5    seed, the idea was that you would have more lysine.  Lysine is

6    an essential amino acid.  So, that was to improve the

7    nutritional quality of corn.

8            And the second one, the Bt toxin gene, that was so

9    that farmers wouldn't have to use chemicals.  You would get

10   insect resistance in corn.

11   Q    Now, I believe Ms. Barner asked you a question about

12   Example I and Example II of the patent.  Were those examples

13   intended to deal with Bt genes in any way?

14   A    No.

15   Q    Now, did the hygromycin gene that you actually used, did

16   that gene have any commercial value at all?

17   A    None, whatsoever.  After all that time, I haven't even said

18   what hygromycin is.  It's an antibiotic.  I think it still

19   might be used medically.  I'm not sure.  But it has -- nobody

20   sprays antibiotic on the cornfield.  It has no commercial value

21   whatsoever.  It's a model system, and that's what we used it

22   for.

23   Q    Why did you use it?  I mean, why did you pick that

24   particular gene?

25   A    Because we had shown in those nonregenerable cells and

21

RECEIVED GROUP 180

IJUN 1 7 1991 PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants: Ronald C. Lundquist et al. Examiner: G. Benzion

Serial No. : 07/467,983            Group Art Unit: 184

Filed    : January 22, 1990        Docket: 8955.1-US-01

Title    :· FERTILE TRANSGENIC CORN PLANTS

_____

RECEIVED GROUP 1ᶜ

JUN 1 7 1991

Hon. Commissioner of Patents
and Trademarks
Washington, D.C.  20231

AMENDMENT

Sir:

In response to the Office Action mailed December 7, 1990,
please amend the above-identified application as follows:

IN THE CLAIMS

Cancel claims 1-38, 40 and 44-46, and amend as follows:

_____

Claim 39. (amended)  A process for producing a fertile
transgenic _Zea_ _mays_ plant [which stably expresses heterologous
DNA which is heritable, wherein the process comprises] comprising
the steps of (i) establishing a regenerable [cell] friable,
embryogenic callus culture from a _Zea_ _mays_ plant to be trans-
formed, (ii) transforming said culture by bombarding it with DNA-
coated microprojectiles, (iii) identifying or selecting a trans-

SM 0000668

#12

formed cell line <u>wherein said DNA is chromosomally integrated</u>, and (iv) regenerating a fertile transgenic <u>Zea mays</u> plant therefrom, <u>wherein said DNA is transmitted through a complete sexual cycle of said transgenic plant to its progeny</u>.

Add the following claims:

Claim ~~17~~ 4. The process of claim ~~15~~ 1 wherein the DNA comprises a selectable marker gene or a reporter gene.

Claim ~~18~~ 5. The process of claim ~~17~~ 4 wherein said selectable marker gene imparts herbicide resistance to said fertile transgenic <u>Zea mays</u> plant.

## IN THE SPECIFICATIONS

At page 2, lines 25-26, delete "or, in some cases, it even turned out that the plants were in fact not transformed".

At page 11, line 27, delete "sequnes" and insert --sequences--.

At page 14, para. 3, line 13, delete "C. Green et al., <u>Maize for Biological Research</u>, <u>Plant Mol. Biol. Assoc.</u>, 367-372 (1982)" and insert --J.C. Sanford et al., <u>J. Particle Science and Technology</u>, <u>5</u>, 27 (1987)--.

-2-

SM 0000669

At page 21, line 10, delete "othermolecules" and insert
--other molecules--.

## REMARKS

Reconsideration and withdrawal of the rejection of the
claims of the above-identified application is respectfully
requested.

Claims 1-38, 40 and 44-46 having been cancelled, claim 39
having been amended, and claims 47-48 having been added, the
claims pending in the application are claims 39, 41-43 and 47-48.

The specification has been amended to correct various
typographical errors in accord with the Examiner's comments at
page 2 of the Office Action.  Support for the amendment to
page 14 is found at page 5, line 21, as corrected by the Prelimi-
nary Amendment filed on August 31, 1990.

The amendment to claim 39 to recite that a friable, embryo-
genic callus culture is bombarded is supported by claim 40.

The amendment to claim 39 to recite that the DNA is chromo-
somally-integrated is supported at page 5, lines 26-27.

The amendment to claim 39 to recite that the DNA is trans-
mitted through a complete sexual cycle of the transgenic plant to
its progeny (e.g., is "heritable") is supported at
page 7, lines 24-27.

Claims 47-48 are supported by the specification at page 11,
para. 3 to page 12, para. 1.

SM 0000670

-3-

The term "transgenic" as it refers to the transformed <u>Zea</u> <u>mays</u> plants resulting from the present process has been retained, since it is art-recognized and is fully defined at page 7, lines 17-23 of the specification.

At page 4 of the Office Action, the Examiner rejected claims 39-42 under 35 U.S.C. §112, due to the use of the phrase "hetero-logous DNA." Deletion of this term from the claims moots this rejection. As pointed out by the Examiner, the claimed process is directed to the "incorporation and expression of both native and non-native DNA into maize." The claimed process is not dependent on the type of DNA which is introduced, so long as it meets the functional requirements recited in the claims.

At page 5 of the Office Action, the Examiner rejected claims 39-42 under 35 U.S.C. §112(1), alleging that the disclosure is enabling only for claims limited to the transformation of the specifically-exemplified maize tissue sources and genotypes. Insofar as this rejection may be maintained with respect to the amended claims, it is respectfully traversed.

With respect to maize tissue types, it is respectfully submitted that the amendment of claim 39 to recite that cultured friable embryogenic callus is transformed moots this aspect of the rejection.

Applicants are willing to concede the validity of the Examiner's assertion that "there is a large body of evidence that the successful tissue culture initiation and regeneration of maize can only be accomplished with cells or tissue explanted...

-4-

SM 0000671

from specific inbred or hybrid lines." However, 35 U.S.C. §112
does not require either that the claims specifically recite every
known regenerable <u>Zea</u> <u>mays</u> inbred, hybrid or other population
from which immature embryos can initiate regenerable callus (for
example, all those listed on Table 5-3 of Phillips et al.). <u>In</u>
<u>re Angstadt and Griffin</u>, 190 USPQ 214, 218 (CCPA 1976). It is
well-settled that the specification need not teach that which
would be apparent to one of skill in the art, e.g., the data on
Tables 5-2 and 5-3 of Phillips et al. <u>In re Meyers</u>, 161 USPQ 668
(CCPA 1969).·

     Furthermore, claim 39 as amended requires that a "<u>regener-</u>
<u>able</u>, friable, embryogenic callus culture" is used as the target
for transformation. The use of such functional language is
explicitly sanctioned by 35 U.S.C. §112(3) and by MPEP 706.03(c),
and would readily direct the art worker to specific lines and
callus cultures that would function in the claimed process.

     Applicants also specifically dispute the Examiner's conclu-
sion that "undue experimentation would be required by one of
ordinary skill in the art to evaluate <u>any</u> plant cell source or
tissue for totipotent structure after microprojectile transforma-
tion." Contrary to the Examiner's assertion, Applicants are not
required to "[demonstrate] that callus derived from any other
totipotent structure can be regenerated after transformation."
This would be an impossible burden to meet.

     Rather, what is required by 35 U.S.C. §112(1) is that the
specification enable the art worker to determine which callus

                              -5-

                                        SM 0000672

cultures would function as starting materials in the invention
and which would not, without undue experimentation.  In re
Angstadt and Griffin, 190 USPQ 214, 218-219 (CCPA 1976).  The
present specification contains detailed processing parameters, as
well as a working example, that would readily enable the art
worker to reproduce Applicants' results or to carry out the
claimed process with other callus cultures.  The fact that
Applicants have not demonstrated by working examples that callus
obtained from other lines can be regenerated after transformation
does not mean that it would require undue experimentation to
evaluate another such starting material.  The fact that lengthy
or complex experiments must be carried out does not render the
amount of experimentation "undue" in a complex art area such as
biotechnology, in which the practitioners are highly skilled.  In
re Wands, 8 USPQ2d 1400 (Fed. Cir. 1988).

Therefore, it is respectfully submitted that the present
claims are fully in accord with 35 U.S.C. §112, and withdrawal of
these rejections is respectfully requested.

At pages 6-10 of the Office Action, the Examiner rejected
the claims as obvious over Klein et al., Bio/Technology, 6, 559
(1988) in view of a combination of Klein et al., Plant Physiol.,
9, 440 (1989), McCabe et al., Bio/Technology, 6, 923 (1988) and
the Phillips et al. review article discussed above.

Klein et al. (Bio/Technology) disclose the microprojectile
bombardment of maize suspension cell cultures and the bombardment
of intact immature maize embryos.  Based on the evidence of GUS

-6-

SM 0000673

expression on the surface of the scutellum of maize embryos,
Klein et al. speculate at page 562 that, "because embryos and
embryogenic callus can be generated from the surface of maize
scutellum, this tissue will be a prime target for future attempts
to deliver selectable markers with the particle gun" (emphasis
added).  Although at page 7, lines 19-22, the Examiner asserts
that the disclosure at page 562 in the following paragraph
indicates that "the stable transformation of maize callus via the
disclosed technique is evident," callus is not mentioned as a
possible target in this paragraph, which clearly refers to the
use of intact embryos as targets.  In contrast to this methodol-
ogy, Applicants' claim recites that friable embryogenic callus
cultures were bombarded.

     The Examiner concedes that "Klein et al. does not teach the
regeneration of transformed maize tissue cultures," but goes on
to state that "the regeneration of maize from totipotent cell
cultures was well known in the art."  However, the fact of the
latter assertion did not lead Klein et al. to predict that
success would be "well within the ordinary skill in the art at
the time the claimed invention was made."  In contrast, at the
end of the cited paragraph, Klein et al. recognize the need for
"continued improvements in the efficiency of the particle bom-
bardment process," and conclude that their results "[give] us
reason to believe that stable transformation of whole plants is
possible" (emphasis added).  Thus, the art worker in possession

SM 0000674

-7-

of this reference could not reasonably expect that microprojec-
tile bombardment of either maize suspension cell cultures or
immature embryos would lead to fertile transgenic corn plants.
In re O'Farrell, 7 USPQ2d 1675 (Fed. Cir. 1988) (prior art must
reveal reasonable expectation of success to support §103 rejec-
tion).

    The cited Klein et al. Plant Physiol. paper does not remedy
the deficiencies of the primary reference.  A suspension culture
of "Black Mexican Sweet" maize cells was prepared as described by
M.E. Fromm et al. (PNAS USA, 82, 5824 (1985)) and bombarded as
described in the primary reference.  Calli were selected from the
cells, some of which exhibited GUS expression and kanamycin
resistance.  At page 434, Klein et al. disclose that "with the
appropriate selectable or screenable markers, it should be
possible to recover transformed calli . . . that have the poten-
tial to develop into whole plants.  Improvement in transformation
efficiencies as a result of further refinements in the design of
microprojectiles and acceleration devices will aid in the
recovery of transformed plants of recalcitrant species."  It is
respectfully submitted that this paper would lead the art worker
to conduct further research to vary the foreign marker genes or
to refine the microprojectile technology, in order to attain "the
recovery of transformed plants of recalcitrant species," rather
than to bombard any given type of maize tissue.  Furthermore, the
discussion of the recovery of sterile plants following protoplast
electroporation of suspension cell cultures which immediately

-8-                    SM 0000675

precedes their conclusion would also not lead one of ordinary skill in the art to reasonably expect that the bombardment of maize suspension cell cultures would inevitably lead to the successful regeneration of fertile transgenic plants.

Furthermore, the Examiner is requested to consider that the Klein et al. Plant Physiol. paper was published subsequent to May 24, 1989 (the date that the manuscript was received "in revised form"). Therefore, as established by the enclosed Rule 131 Declaration, which was presented in divisional application Serial No. 07/508,045, filed April 11, 1990, it is not available as a prior art reference against the present claims. This Declaration establishes that the present invention was conceived prior to May 1989 in the United States, and diligently pursued in the United States until the filing of the present application on January 22, 1990, which discloses the successful regeneration of fertile transgenic Zea mays plants containing a reporter gene and a selectable marker gene from transformed maize callus tissue.

The cited McCabe et al. paper discloses the regeneration of chimeric soybean plants following bombardment of the meristems of immature seeds. The Examiner asserts that the McCabe et al. paper discloses that "meristematic regions in plant tissue culture had been demonstrated as susceptible to transformation in which [plant] regenerants display the heritable presence of transgenic DNA" (emphasis added). However, the excised embryonic axes which were bombarded by McCabe et al. were not cultured prior to bombardment by any means, but were simply excised,

-9-

SM 0000676

plated onto target plates and bombarded.  Although the Examiner
suggests that these results would lead the art worker to bombard
"maize friable (Type II cultures)," this observation can only be
based on hindsight.  None of the cited art discloses particle
bombardment of this type of cultured tissue, either derived from
maize or from any other plant species.

     As stated by the Examiner, the lengthy Phillips et al.
reference reviews the methods of cell/tissue cultures and <u>in
vitro</u> manipulation of maize, and teaches the general method of
explant initiation and maintenance of a friable maize tissue
culture.  Applicants do not claim to have invented friable (Type
II) callus cultures, but to have discovered their unexpected and
possibly unique utility in the production of fertile transgenic
plants by microbombardment.

     However, Phillips et al. also disclose at least seven other
broad classes of maize cell/tissue cultures, including the
suspension cell cultures employed unsuccessfully by Klein et al.
Despite the total lack of guidance in Phillips et al. with
respect to the selection of suitable cultured maize tissue for
biolistic transformation, the use of a different tissue culture
by Klein et al., and the lack of correlation between monocot nd
dicot transformation results, the Examiner nonetheless concludes
that "the use of biolistic. . . acceleration technology to
transform totipotent maize cultures is both the logical progres-
sion from [the primary references], thus providing motivation,
and the expected result of this application, thus providing a

                              -10-

                                        SM 0000677

reasonable expectation of success. It is respectfully submitted
that the Examiner's case of prima facie obviousness is facially
totally conclusory, and can only be based on a hindsight, piece-
meal reconstruction of Applicants' successful process from
isolated disclosures in the prior art. As stated by the Court of
Appeals for the Federal Circuit in In re Dow Chemical, 5 USPQ2d
1529, 1532 (Fed. Cir. 1988):

> The PTO presents, in essence, an "obvious to experiment"
> standard for obviousness. However, selective hindsight is
> no more applicable to the design of experiments than it is
> to the combination of prior art teachings. There must be a
> reason or suggestion in the art for selecting the procedure
> used, other than the knowledge learned from the applicant's
> disclosure. Interconnect Planning Corporation v. Feil, 774
> F.2nd 1132, 1143, 227 USPQ 543, 551 (Fed. Cir. 1985).

Furthermore, even assuming, arguendo, that the Examiner has
established the prima facie of obviousness of the recited process
steps, it is respectfully submitted that the unexpected results
achieved by the process, namely, a fertile transgenic Zea mays
plant, are sufficient to rebut any prima facie case of obvious-
ness. It is well settled that a result not suggested by the
prior art can impart patentability to a process that is prima
facie obvious from a consideration merely of the reactants, media
and steps involved. In re von Schickh, 150 USPQ 300 (CCPA 1966).

The Examiner is also requested to note that, in resolving
the obviousness question, all evidence bearing on the subject
must be considered, including evidence that supports, as well as
that which negates, patentability must be fairly considered. In
re Dow Chemical, 5 USPQ2d 1529, 1531-1532 (Fed. Cir. 1988) (copy

-11-

SM 0000678

enclosed). In this light, the Examiner is requested to consider that, subsequent to, or contemporaneously with, the cited Klein et al. and McCabe papers, at least one review article was published which contradicted any inference that might be drawn from the Klein et al. papers that success could readily be achieved using microparticle injection into maize tissue.

For example, I. Potrykus, in a review article published after the filing date of the present application (<u>Bio/Technology</u>, <u>8</u>, 540 (June 1990)) cites the work of Klein et al. and the McCabe et al. paper. Although Potrykus discusses the apparent advantages of biolistics, he is left to ask "[w]hy then with all these advantages have no transgenic cereals been produced . . . we must assume that there are inherent problems." The author continues to discuss the problem of the low frequency of transient and integrative effects and the scarcity of competent cells in cereals. He concludes that "direct gene transfer into protoplasts should be the method of choice . . . ." Thus, Potrykus clearly teaches away from the approach employed by Applicants. Finally, in contrast to the Examiner's conclusion that the present process (including the successful production of fertile transgenic maize plants) was "well within the ordinary skill of the art at the claimed time the invention was made," Potrykus teaches the art worker:

> [C]areful and large-scale experiments with biolistic devices and microinjection into meristems and microspore-derived, zygotic and somatic proembryos have not yet yielded proof for the recovery of transgenic offspring. . . .

-12-                    SM 0000679

Furthermore, as pointed out in the Potrykus review, there are at least three other fundamentally different approaches which are or have been widely investigated in the attempt to solve the long-felt need for a method to transfer genes to cereal crops. These included gene transfer mediated by A. tumefaciens, free DNA transferred to protoplasts and microinjection. The Examiner is requested to consider that the prediction of imminent success by C. Rhodes in Bio/Technology, 7, 548 (June 1989) (copy enclosed) for direct DNA uptake by regenerable maize protoplasts would discourage the art worker from pursuing or expecting success via biolistic transformation.

It is also respectfully submitted that secondary considerations such as long-felt need and the failure of others to achieve success must be considered when resolving the obviousness question. Dow Chemical Co. v. American Cyanamid Co., 2 USPQ2d 1350, 1355 (Fed. Cir. 1987) (copy enclosed). With respect to both of these considerations, the Examiner is requested to consider the following summary of the art of maize transformation in 1990, published by Timothy Nelson, The Plant Cell, 2, 589 (July 1990):

> The great experimental advantages of maize for the study of development and genetics have attracted many researchers and have resulted in a huge resource of mapped genes, molecular probes, chromosomal rearrangements, and other tools (citation omitted). It has been a source of frustration to the same researchers that maize has not proved as easy to stably transform as many plants without as rich a scientific background. For many dicotyledonous plants, the Agrobacterium-mediated

-13-

SM 0000680

> construction of transgenic plants has become
> a routine and reliable experimental tool.
> Although this system may be adaptable to the
> monocot rice (citation omitted), there are no
> reports of success with maize.  [Copy
> enclosed]

Therefore, it is respectfully submitted that this evidence, which reflects the state of the art either just prior to, or subsequent to the filing of the present application, is more than sufficient to establish that Applicants' invention is unobvious, particularly when considered with the lack of success reported in the prior art which was cited by the Examiner.

Therefore, it is respectfully submitted that the claims, as amended, have been placed in condition for allowance, and notification to that effect is earnestly solicited.

PTO Form 1449 is enclosed, listing the newly discussed papers.  However, it is not conceded that any of the newly cited art is prior art to the present application.  Copies of all of the cited cases are also enclosed.

If, upon review of this Amendment and the accompanying materials, the Examiner feels that a personal interview would be helpful to resolve or clarify any of the issues presented herein, he is respectfully requested to contact the undersigned attorney for Applicants.

SM 0000681

-14-

A request for a three-month extension of time to respond to the Office Action is enclosed herewith.

Respectfully submitted,

RONALD C. LUNDQUIST ET AL.

By their attorneys,

MERCHANT, GOULD, SMITH, EDELL,
  WELTER, & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 332-5300 or 336-4622 (direct)

Date _June 7, 1991_

By _Warren D Woessner_
Warren D. Woessner
Reg. No. 30,440

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231 on ___June 7 1991___
(Date of Deposit)

_Sandra K. Amberson_
SANDRA K. Amberson

SM 0000682

-15-

**22**



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

G.J.T.

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/467,983 | 01/22/90 | LUNDQUIST | R    BIOT104 |

EXAMINER
BENZION,G

WARREN D. WOESSNER ESQ.
MERCHANT GOULD SMITH EDELL WELTER
& SCHMIDT,P.A.3100 NORWEST CENTER
90 SOUTH SEVENTH ST
MINNEAPOLIS,MN 55402

| ART UNIT | PAPER NUMBER |
|---|---|
| 184 | 14 |

DATE MAILED: 08/23/91

☐ This application has been examined    ☑ Responsive to communication filed on June 10, 1991    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire three (3) month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

NOT 7th    1. ☑ Notice of References Cited by Examiner, PTO-892. (1)    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449. (1)    4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☑ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims 39, 41-42 & 47-48 _____ are pending in the application.

Of the above, claims _____ are withdrawn from consideration.

2. ☑ Claims 1-38, 40 and 44-46 _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims 39, 41-42 & 47-48 _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☑ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____. has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

SM 0000698

07/467983

PTOL-326 (Rev.9-89)

**EXAMINER'S ACTION**

#17

The text of those sections of Title 35, U. S. Code not included in this action can be found in a prior Office action.

Claims 1-38, 40 and 44-46 were cancelled. Claim 39 is newly amended and claims 47-48 newly added. Claims 39, 41-42
5  and 47-48 are currently pending.

Applicants' constructive election of claims 39, 41-42 and newly added claims 47-48 by cancellation of the all other remaining claims in the instant application in Paper No. 12 is acknowledged. Because Applicant did not distinctly and
10  specifically point out the supposed errors in the restriction requirement, the election has been treated as an election without traverse (MPEP. 818.03(a)).

Claim 48, newly added, is rejected under 35 U.S.C. § 112, first paragraph, as the disclosure is enabling only for claims
15  limited to the transformation and expression of a selectable marker or reporter gene as set forth in the specification at pages 22-39. See MPEP 706.03(n) and 706.03(z).

The specification teaches the transformation and expression of marker/reporter genes conferring expression of
20  hygromycin B phosphotransferase, B-glucuronidase, and luciferase. The instant claimed subject matter is limited to the expression of a selectable marker gene which imparts herbicide resistance to transformed maize plants. With the exception of the genes noted above, which are not considered to
25  be genes that confer resistance to art recognized "herbicides", the specification is silent as to a gene which when expressed would impart said herbicide resistance. Attention is directed to the paragraph bridging pages 11-12 in which all three of the

SM 0000699

exemplified genes are noted as selectable marker and/or
reporter genes.  Genes which encode resistance or tolerance to
glyphosate and the like are considered herbicide resistance
genes (see line 4-8 of page 12).  Applicants have not

5    demonstrated the successful isolation of the any coding regions
which would confer herbicide resistance nor the transformation
and expression of any of these genes.  Furthermore, the
expression of a heterologous gene in a host is not axiomatic
even in the event that gene had been previously isolated and

10   cloned.  Variability in expression was art recognized to be due
to numerous factors, including: incomplete transcription;
inefficient mRNA processing; impaired transport of the mRNA
from the nucleus to the cytoplasm; instability of the mRNA;
inefficient translation of the cytoplasmic mRNA and the

15   instability of the protein due to its susceptibility to plant
specific proteases (DeGreve et al. pages 3-4).  Thus, for the
reasons noted above enablement is limited to marker genes
demonstrated in the specification in which herbicide resistance
is not a consideration.

20       The rejection of claims 39-42 under 35 U.S.C § 112, first
and second paragraphs, as set forth at pages 4-5 of the
previous Office Action is withdrawn in view of applicants'
amendment.

         The rejection claims 39-42 under 35 U.S.C § 112, first
25   paragraph, as set forth at pages 5-6 of the previous Office
Action is withdrawn in view of applicants' amendment.

         The rejection of claims 39-42 under 35 U.S.C § 103 as set
forth at pages 6-10 of the previous Office Action is withdrawn
in favor of the rejection set forth below.

SM 0000700

Claims 39, 41-42 and 47-48 are rejected under 35 U.S.C §
103 as being unpatentable over Klein et al. in view of McCabe
et al. and Phillips et al.

Klein et al. (Biotechnology, pages 559-563) reveal the
5   factors influencing gene delivery into maize suspension cells
via the use of high-velocity microprojectile acceleration.  In
addition, these authors teach the application of the process to
the surface of explanted maize embryos in which the GUS
reporter/marker gene is expressed.  In particular, at page 562,
10  right column of the penultimate paragraph, stable
transformation of maize callus via the disclosed technique is
evident.  Thus, Klein et al. is seen to clearly teach the
application of the method of biolistic transformation to maize
tissue cultures.  Klein et al. does not teach regeneration from
15  transformed maize tissue, however, the regeneration of maize
from totipotent cells in culture was well known in the art.

McCabe et al. (pages 923-926) disclose the transformation
and regeneration of soybeans via the method of particle
acceleration into excised embryonal axes.  McCabe is cited to
20  demonstrate that meristematic regions in plant tissue culture
had been demonstrated as susceptible to transformation in which
regenerants display the heritable presence of the transgenic
DNA.  The importance of this observation is found in the basic
nature of maize friable (Type II) cultures in that these
25  cultures represent the de novo multiplication of meristematic
zones, i.e. somatic embryos (see Phillips et al. section 5-
2.8).  Phillips et al. (pages 345-387) reviews the methods of
cell/tissue culture and in vitro manipulation of maize.  This
reference is cited to teach the method of explant initiation
30  and maintenance of a friable maize tissue culture.  Re claim

SM 0000701

42, the use of solid or liquid culture for the initiation of
maize tissue cultures are considered routine (see Phillips et
al. section 5-1.3, for example).  Furthermore, the initiation
and superior vigor of totipotent A188 x B73 cultures or any
5   other culture of a superior genotype initiated on "solid"
medium (re claim 42) were well know to those of ordinary skill
in the art (page 351, for example).  These cultures were known
in the art to produce friable (Type II) in vitro growth at high
frequencies (re claim 40).  Re claim 41, the selection of
10  callus culture clumps of about 30 to 80 mg per clump would
appear to be the result of routine callus subculture and growth
parameters.  Re claims 48 the expression of a reporter gene for
its known and expected benefits would be considered an obvious
application of the technology.  In this regard herbicide
15  resistant plants facilitate efficient agronomic growth.  In
sum, it was well within the ordinary skill in the art to employ
the claimed elements in order to obtain their known and
expected results.

Consequently, the use of biolistic or particle
20  acceleration technology to transform totipotent maize cultures
is both the logical progression from the observation of stable
transformation as noted in Klein et al. (page 562), providing
motivation and the expected result of this application, thus
providing a reasonable expectation of success.  Applicants'
25  have failed to establish the presence of any unexpected or
unpredictable results in the claimed method.

Accordingly, the modification of the method of Klein et
al. in view of the teachings of McCabe regarding the
regeneration of meristematic tissue in transgenic soybeans, and
30  the use of friable totipotent maize cultures as disclosed by

SM 0000702

Phillips et al. was well within the ordinary skill of the art
at the time the claimed invention was made.  Thus, the claimed
invention as a whole was clearly _prima_ _facie_ obvious in view of
the references, in the absence of sufficient, clear, and
5    convincing evidence to the contrary.

Applicants' arguments, in as much as they may apply to the
new rejection set forth above, have been carefully considered
and are not deemed persuasive.

First, the Examiners comments found at page 7, lines 19-22
10   of the previous Office Action were directed to the penultimate
paragraph at page 562 and not the paragraph cited by
applicants.  In this paragraph reference is made to a
manuscript in preparation in which stably transformed cultures
of maize and tobacco were produced using the procedures
15   outlined in the instant publication.  Second, regarding the
alleged absence of a "well within the ordinary skill in the
art" sentiment in Klein et al. (Bio/Tech), it is clear that
these authors believed that transformation via the exemplified
method and regeneration was the expected outcome (note the use
20   of the phrase "is possible").  This statement places the use of
the technology within the level of "reasonable to do" and not
as implied the "reasonable to try."

Regarding the teaching found in Klein et al. (Plant
Physiology), this paper was cited merely to demonstrate stable
25   integration of non-native DNA via the claimed method.  The same
observation is noted at page 562, penultimate paragraph, of
Klein et al. (Bio/Tech).  Furthermore, the alleged admonition
cited by applicants is clearly taken out of context.  Attention
is directed to the entire paragraph in which the work of
30   Toriyama et al. is cited as producing transgenic rice via the

SM 0000703

#19

instant method, for example. Indeed the improvements needed were
directed to increased efficiency in a <u>protoplast system</u> as
regeneration of maize from protoplasts was not at a level of
sufficient response to be equivalent to that of tobacco.

5      Similarly, basic knowledge of the art of maize protoplast
regeneration would only lead one in the art to conclude that
the regeneration of the sterile plants by Rhodes et al. were
due to the use of sterile starting material and not that
transformation produces sterile plants.

10     Regarding McCabe et al., the Examiner never asserted that
McCabe et al. taught soybean tissue culture regeneration but
merely that the tissue employed consisted of embryonal axes.
Such tissue was not recognized as amendable to transformation
until this work. Thus, when considered in view of Phillips et

15     al. this would certainly establish that the tissue type most
amenable to regeneration (meristematic tissue) is also amenable
to transformation. Clearly, no improper hindsight was employed
in this construction. Regarding Phillips et al., friable type
II tissue was and remains the preferred tissue type for maize

20     regeneration. In addition, applicants have asserted that the
instant invention presents unexpected results. The Examiner,
however, can see none. The production of a fertile transgenic
maize plants, based on prior art technology was predictable and
thus expected. This is clearly the only possible conclusion as

25     applicants have not explained why they believe that the exact
application of the method of Klein et al. was an unexpected
application. At page 15 of the specification, applicants
state:

30     The current preferred procedure entails <u>exactly the procedure
of Klein et al. (1988b)</u> except for the doubling of the stated
optimum DNA concentration. [Emphasis added].

SM 0000704

Clearly, with the exception of a routine optimization of DNA concentration the instant method is the method of Klein et al. and nothing more. As applicants transformed the most totipotent maize tissue culture (Phillips et al.) the result was clearly expected and predictable. Accordingly, one of ordinary skill in the art aware of these publications would naturally first seek to apply the method of Klein et al. to the tissue of Phillips et al.

Regarding the Potrykus publication, newly argued by applicants, the Examiner has the following to add. First, Potrykus is essentially a negative publication which is slanted by the authors own emphasis in the belief that direct gene transfer of protoplasts should be the method of choice. Applicants are invited to review the literature in this regard and will note that the author has several publication regarding direct protoplast gene transfer. Second, although the author regards many of the techniques as not applicable to cereal, he ignores or minimizes the evidence found in Graves and Goodman for maize, the work of Rhodes et al. in electroporation in maize and Toriyama et al. and Shimamoto et al. in rice, for example. Clearly Potrykus is not the final arbiter in this arena. Furthermore, the Potrykus admonition at page 542 that "meristematic (embryonal cells) can not [sic] be transformed" again ignores the work of McCabe et al. as Potrykus did not distinguish between monocots and dicots in this regard.

Regarding applicants new citation of Rhodes (Bio/Tech) it is not seen how the successful regeneration of maize from protoplasts would discourage workers to pursue biolistics. On the contrary, as cereals were art recognized to be more recalcitrant than dicots, and most dicots were shown to be

SM 0000705