Serial No. 07/467983                          9 of 10
Art Unit      184


amenable to all the prior art forms of transformation with the
exception of the more recalcitrant dicots -- such as soybeans,
and soybeans were recognized to be easily transformed by
biolistics -- one in the art considering all avenues would
5    chose biolistics.

     Finally applicants have asserted that patentability can be
found for the instant application because of the evidence of a
long felt need established by Nelson et al. (newly cited by
applicants). Applicants neglect, however, to note that in
10   consideration of the establishment of a long felt need of the
issue is whether failure to succeed were due to a lack of
interest or appreciation of an invention's potential or
marketability rather than want of technical know-how. See MPEP
716. It is the Examiner's position that the evidence presented
15   to establish the "long felt need" and the reasons for the
absence of a method to solve it fail to meet the above test.
Furthermore, Nelson talks of the need for a reliable method and
it is not clear that the instant method would fall into that
category. In this regard attention is again drawn to page 39
20   of the instant specification where applicants question the
repeatability of the claimed method.

     No claim is allowed.

     Any inquiry concerning this or earlier communication from
the examiner should be directed to Gary Benzion, Ph.D whose
25   telephone number is (703) 308-1119. Any inquiry of a general
nature or relating to the status of this application should be
directed to the Group receptionist whose telephone number is
(703) 308-0196.

                                        SM 0000706

Serial No. 07/467983                              10 of 10
Art Unit      184

     Papers related to this application may be submitted to
Group 180 by facsimile transmission.  Papers should be faxed to
Group 180 via the PTO Fax Center located in Crystal Mall 1.
The faxing of such papers must conform with the notice
5   published in the Official Gazette, 1096 OG 30 (November 15,
1989).  The CM1 Fax Center number is (703)-308-4227.


Benzion
August 20, 1991

10

Gary Benzion, Ph.D
PATENT EXAMINER
GROUP ART UNIT 184

SM 0000707

**23**

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant :  Ronald C. Lundquist et al.    Examiner:  G. Benzion

Serial No. : 7/467,983                      Group Art Unit:  184

Filed     : January 22, 1990               M&G:  9696.1-US-01
                                                 (was 8955.1-US-01)

Title     : FERTILE TRANSGENIC CORN PLANTS

Hon. Commissioner of Patents
  and Trademarks
Washington, D.C.  20231

                              RESPONSE

Sir:

        In response to the Office Action mailed August 23,

1991, reconsideration and withdrawal of the rejection of the

claims of the above-identified application is respectfully

requested.

        At page 2 of the Office Action, the Examiner rejected

claim 48, which recites that the selectable marker gene intro-

duced by the present process imparts herbicide resistance, under

35 U.S.C. §112(1), on the basis that the specification would not

enable the art worker to produce a transgenic corn plant express-

ing a recombinant selectable marker gene that would impart

herbicide resistance to said plant.  This rejection is respect-

fully traversed.

        In the first place, it is clear that the specification

explicitly discloses genes which impart herbicide resistance to

be a subgenus of the genus "selectable marker genes" (see

page 12, lines 6-8).  In the second place, the Examiner is

                                              SM 0000711

#16

respectfully requested to consider that this position is incon-
sistent with his position taken with respect to the herbicide
resistance claim (9) of Applicants' corresponding PCT Application
(PCT/US91/00183). As taken from the Written Opinion mailed
November 18, 1991, it is the Examiner's opinion that: "[t]he
selectable marker[s kanamycin, hygromycin and methotrexate]
employed [in the prior art] all possess herbicidal properties."
Applicants' agree with this statement. Finally, the Examiner is
requested to note that the commonly-assigned PCT application
WO 91/02071 discloses transgenic corn plants produced by the
claimed method which express foreign DNA encoding resistance to
the broad spectrum herbicide Basta® TX (ammonium phosphinothri-
cin). Although this PCT application is not conceded to be prior
art to the present application, it is cited as evidence that
Applicants' process, as described in the specification, would be
effective to yield transgenic corn plants resistant to more
conventional herbicides. Furthermore, the bar gene introduced by
Adams et al. also was used for selection (see pages 45-55, 70-74
of corresponding PCT application WO 91/02071). Therefore,
withdrawal of this rejection is respectfully requested.

At page 4 of the Office Action, the Examiner rejected
all of the claims obvious over Klein et al., Bio/Technology, 6,
559 (1988) in view of McCabe et al., Bio/Technology, 6, 923
(1989) and Sprague et al., chapter 5 of Corn and Corn Improve-
ment, ASA, Madison, WI (1988).

SM 0000712

2

Although the Examiner maintains that the right column of page 562 of Klein et al. (Bio/Technology) discloses "stable transformation of maize callus via the disclosed technique" no stably transformed callus is disclosed in the cited paper. Rather, Klein et al. disclose that because embryogenic callus can be generated from the surface of maize scutellum, maize scutellum "will be a prime target for future attempts to deliver selectable markers with the particle gun" (emphasis added). This is a suggestion to transform scutellum and then to generate callus from the transformed cells that can hopefully be regenerated into transgenic plants, which hopefully will be fertile, etc. It is not a suggestion that callus of any sort should be the target of biolistic transformation as called for in the present claims. The Examiner has also taken the position that the statement by Klein et al. that their preliminary work (and unreported results) "gives us reason to believe that stable transformation leading to the recovery of whole plants is possible" (emphasis added), establishes a prima facie case of obviousness in accord with the current legal standards, stating that "[t]his statement places the use of the technology within the level of 'reasonable to do' and not as implied [within] the 'reasonable to try.'"

Applicants specifically and vigorously disagree that this legal conclusion can be reached on the basis of the Klein et al. disclosure. Applicants respectfully direct the Examiner's attention to the case of In re O'Farrell, 7 U.S.P.Q.2d 1673 (Fed.

SM 0000713

3

Cir. 1988), which held that in order for a reference to obviate an invention, it must be shown that the reference contains:

1)   detailed enabling methodology for practicing the claimed process;

2)   a suggestion to modify the disclosed process to yield the claimed process; and

3)   evidence suggesting that claimed process would be successful in attaining the desired result.

It is submitted that the Klein et al. paper clearly fails to satisfy this tripartite test of O'Farrell. That is, it does not contain detailed enabling methodology for practicing the claimed invention (no selection or regeneration methodology, for instance), it does not suggest how the methodologies therein might be modified to yield the claimed process, and certainly there is no evidence arising out of any of the references that suggests that the regeneration of fertile, transgenic corn plants would be successful. It is not seen on what basis the art worker would be able to predict the ultimate success of a chain of events only hinted at by Klein et al.

Furthermore, it remains Applicant's position that the Klein et al. paper does not suggest or disclose a method that would yield the present transgenic plants. The Klein et al. paper (a) does not disclose transformed callus tissue but merely demonstrates transient expression in scutella; (b) only describes transient gene expression involving single cells; there is nothing to suggest that the introduced DNA would be transferred

4                    SM 0000714

from one cell generation to another, much less from one plant
generation to the next, or that the bombarded cells are even
viable; (c) does not disclose selecting for transformed cells;
and (d) does not disclose regeneration of the transformed cells
into plants by any route.

Since Klein et al., Plant Physiol., 91, 440 (1989) is
not prior art to the present invention, the Examiner is respect-
fully reminded that he cannot rely on any part of it in support
of a rejection of the present claims, e.g., as is done on pages
6-7 of the Office Action.

The cited McCabe et al. paper discloses the regenera-
tion of chimeric soybean plants following bombardment of the
meristems of immature seeds. The Examiner asserts that the
McCabe et al. paper discloses that "meristematic regions in plant
tissue culture had been demonstrated as susceptible to transfor-
mation in which [plant] regenerants display the heritable pres-
ence of transgenic DNA" (emphasis added). However, the excised
embryonic axes which were bombarded by McCabe et al. were not
cultured prior to bombardment by any means, but were simply
excised, plated onto target plates and bombarded. The Examiner
is requested to consider claim 1 of Christou et al. (U.S. Patent
No. 5,015,580) wherein it is recited that shoot formation is then
induced directly from the embryonic axis without intermediate
proliferation of tissue in callus culture. Although the Examiner
suggest that these results would lead the art worker to bombard
"maize friable (Type II cultures)," this observation can only be

5

SM 0000715

based on hindsight. None of the cited art discloses particle bombardment of this type of cultured tissue, either derived from maize or from any other plant species.

Furthermore, the McCabe disclosure is limited to the transformation of a dicotyledonous species, soybeans, and would not suggest to the art that this methodology would be applicable to monocots such as corn. The '580 patent also does not suggest or disclose that this rather specific methodology could be used to transform corn.

The reasoning of the recent case In re Vaeck, App. No. 91-1120 (Fed. Cir. 1991), on its facts, is applicable here. In Vaeck, the Court observed that although Bacillus genes were known to be capable of expression in E. coli, such a teaching did not suggest that such genes would also be functional in cyanobacterial hosts. Similarly, in our case, the mere demonstration that transformation of soybean, a dicot, is possible in no way teaches or suggests that a much more difficult and recalcitrant monocot species, maize, would be similarly transformable.

As stated by the Examiner, the lengthy chapter in Sprague et al. reviews the methods of cell/tissue cultures and in vitro manipulation of maize, and teaches the general method of explant initiation and maintenance of a friable maize tissue culture. However, it is Applicants' position that in the absence of knowledge of Applicants' success, this review does not suggest that any particular type of tissue would be suitable for regeneration into plants following biolistic transformation, or that

6

SM 0000716

fertile stably-transformed <u>Zea mays</u> would result that would transmit the introduced DNA to progeny, so·that it would be expressed by the progeny.

While the Examiner summarily concludes that "it was well within the ordinary skill in the art to employ the claimed elements in order to obtain their known and expected results," it is respectfully submitted that without the benefit of Applicants' disclosure,·the cited art would not have motivated the art worker to employ the "claimed elements." This is because there is nothing in the prior art that would lead to a reasonable expecta-tion that "their known and expected results" would be a fertile, stably-transformed corn plant, able to transmit the introduced recombinant DNA to its progeny.

The Examiner's final assertion is that the use of biolistic or particle acceleration technology to transform totipotent maize cultures is "the logical progression from [the prior art]." However, this is no more than a further assertion that it would be <u>obvious to try</u> to transform embryogenic callus cultures via biolistic transformation and to try to regenerate plants from the bombarded tissue. Even assuming, for argument's sake, that it would be obvious to replace the scutella bombarded by Klein et al. or the meristems bombarded by McCabe et al. with cultured friable embryogenic callus, there is nothing to suggest that the claimed fertile transgenic maize plants would predict-ably arise.

SM 0000717

7

Applicants will now review a sampling of the strong secondary evidence of non-obviousness relating the long-felt need/failure of others as presented by various publications by authorities in the field of agricultural biotechnology. We will begin our review with two review articles of Dr. Ingo Potrykus (Bio/Technology, 535 (June 1990) and Physiologia Plantarum, 79, 125 (1990)). To begin with, Applicants agree with the Examiner's characterization of the former review as "essentially a negative publication which is slanted by the authors own emphasis in the belief that direct gene transfer of protoplasts should be the method of choice." This is because prior art which teaches away from the direction which led to Applicants' success is strong evidence of unobviousness (In re Rosenberger, 156 U.S.P.Q. 24 (CCPA 1967)). In the Bio/Technology article, Potrykus refers to the serious difficulties associated with genetic engineering of monocots:

> ...my personal experience in working towards
> the genetic engineering of cereals for the
> last 18 years convinces me that we still have
> serious problems in front of us.... It seems
> to me that we are really not yet close to
> such a situation.

(Page 535, col. 1-2.)

At page 542 in the same article, Potrykus ascribes part of this lack of optimism to his belief that monocot meristematic cells cannot be transformed:

> [A]ccumulated experience of gene transfer
> experiments with plants is in agreement with
> the hypothesis that meristematic (embryonic)
> cells cannot be transformed. I do not know

8

SM 0000718

of any experiment that would disprove this
hypothesis.

(Page 542, col. 1.)

A similar pessimism also pervades 1990 <u>Physiologia</u>
<u>Plantarum</u> review article:

> Despite intensive efforts with perfect
> embryogenic suspensions and scutellum cul-
> tures of maize and other cereals, so far
> there is not a single transgenic cereal
> seedling.  The success with soybean seedlings
> is probably based on very intimate experience
> with a well established and efficient system
> of multiple shoot regeneration from the shoot
> apex.  The different geometry of cereal
> seedlings together with different responses
> in shoot meristem culture do not make it easy
> to apply a similar strategy to cereals.  It
> might well be that the reason for the failure
> to regenerate transgenic cereals after
> particle bombardment of either embryogenic
> suspension or immature scutelli has its cause
> in the limited amount of DNA carried into the
> cell by the particles or in the inefficiency
> with which this DNA dissociates from the
> particles.

This summary also rebuts the Examiner's assertion as
set forth at page 8 of the Office Action that Potrykus did not
distinguish between attempts to transform monocots and attempts
to transform dicots.

An article from the journal <u>Science</u>, <u>249</u>, 630 (August
10, 1990) published shortly after the announcement that trans-
genic, fertile corn had been achieved, emphasizes the long-felt
but unresolved need, as well as the failure of others such as
Carol Rhodes ("Corn Transformed").  The article begins by noting
that the achievement of fertile, transgenic corn is "the capstone
of almost a decade's efforts to genetically engineer this

9                   SM 0000719

country's most important crop," and then continues by noting the "years of frustration" and a renewed effort to genetically engineer corn begun by Carol Rhodes and her colleagues. The article notes that while Dr. Rhodes and her group were successful in regenerating transformed corn, their "celebrations were short-lived: the resulting plants were infertile."

The Science article then refers to attempts by the CIBA-Geigy group, who were said to have achieved the regeneration of non-transgenic corn cells into fertile plants. However, it is pointed out that "these techniques, so far, have not worked with genetically transformed corn."

In the March 1990 issue of Genetic Engineering News, an article reporting the successful transformation of corn by Bio-technica, quotes Ralph Hardy, president of the Boyce Thompson Institute for Plant Research at Cornell University as follows:

> "Useful corn transformation with the produc-
> tion of fertile plants that transmit the gene
> to succeeding generations has been an insur-
> mountable roadblock for agricultural biotech-
> nology."

The Examiner is also again requested to consider the following summary of the art of maize transformation in 1990, published by Timothy Nelson, of the Department of Biology, Yale University, in The Plant Cell, 2, 589 (July 1990):

> The great experimental advantages of maize
> for the study of development and genetics
> have attracted many researchers and have
> resulted in a huge resource of mapped genes,
> molecular probes, chromosomal rearrangements,
> and other tools (citation omitted). It has
> been a source of frustration to the same
> researchers that maize has not proved as easy

10

SM 0000720

> to stably transform as many plants without as
> rich a scientific background.  For many
> dicotyledonous plants, the <u>Agrobacterium</u>-
> mediated construction of transgenic plants
> has become a routine and reliable experimen-
> tal tool.  Although this system may be adap-
> table to the monocot rice (citation omitted),
> there are no reports of success with maize.

Therefore, it is respectfully submitted that this
evidence, which reflects the state of the art either just prior
to, or subsequent to the effective filing date of the present
application, is more than sufficient to establish that
Applicants' invention is unobvious, particularly when considered
with the lack of success reported in the prior art which was
cited by the Examiner.  This art conclusively demonstrates the
significant achievement represented by the present invention to
others in the corn industry.  From this evidence it is submitted
that withdrawal of the obviousness rejection of the pending
claims is more than appropriate.

Therefore, it is respectfully submitted that the
claims, as amended, have been placed in condition for allowance,
and notification to that effect is earnestly solicited.

Dekalb Purchase of Certain Biotechnica Assets

Dekalb Plant Genetics has recently purchased certain
assets of Biotechnica International, Inc., the assignee of the
present application as filed.  An assignment of Biotechnica's
rights to certain pending Biotechnica patent applications
directed to corn transformation was included in this purchase.
The assigned applications include the present application, as

11

SM 0000721

well as Serial No. 07/508,045, filed April 11, 1990; and

07/636,089, filed December 28, 1990, each entitled "Fertile

Transgenic Corn Plants" and listing Lundquist et al. as

inventors.  Therefore, ownership of the present application is

now the same as that of Adams et al., U.S. Patent No. 513,298,

filed April 17, 1990.  Dekalb Plant Genetics intends to now

initiate an investigation to satisfy any obligation under 37

C.F.R. §1.78(c).  The results of this investigation will be

reported to the PTO Examiner as soon as it is completed.

PTO Form 1449 is enclosed, listing the newly discussed

papers.  However, it is not conceded that any of the newly cited

art is prior art to the present application.  Copies of all of

the cited cases are also enclosed.

A request for a three-month extension of time to

respond to the Office Action is also enclosed.

Respectfully submitted,

RONALD C. LUNDQUIST et al.

By their attorneys,

MERCHANT, GOULD, SMITH, EDELL,
  WELTER & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN   55402
(612) 332-5300 or 336-4622 (direct)

Date _Feb 20 1992_        By _Warren D. Woessner_
                             Warren D. Woessner
                             Reg. No. 30,440

I hereby certify that this correspondence is being de-
posited with the United States Postal Service as first
cla__ m___ __ an envelope addressed to: Commissioner
of Patents and Trademarks, Washington, D.C. 20231
on _February 20, 1992_
        (Date of Deposit)

        _SANDRA K. Amberica_
        _Sandra K. Amberica_                    SM 0000722

                              12

**24**



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/467,983 | 01/22/90 | LUNDQUIST | R | 010T104 |

|  | EXAMINER |
|---|---|
|  | BENZION, G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1804 | 17 |

WARREN D. WOESSNER ESQ.
MERCHANT GOULD SMITH EDELL WELTER
& SCHMIDT, P.A. 3100 NORWEST CENTER
90 SOUTH SEVENTH ST
MINNEAPOLIS, MN 55402

DATE MAILED: 05/13/92

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined   ☑ Responsive to communication filed on *Feb 24 1992*   ☑ This action is made final.

A shortened statutory period for response to this action is set to expire _Three (3)_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.

2. ☐ Notice re Patent Drawing, PTO-948.
4. ☐ Notice of Informal Patent Application, Form PTO-152.
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☑ Claims _39, 41- 43 d 47-48_ _____ are pending in the application.

Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _39, 41-43+47-48_ _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

SM 0000723

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-82)

#11

The text of those sections of Title 35, U. S. Code not included in this action can be found in a prior Office action.

Claims 39, 41-42 and 47-48 are currently pending.

At page 12 of the instant remarks Applicants note their submission of a PTO Form 1449, however, the same is absent from the instant application.

Claims 48 remains rejected under 35 U.S.C. 112, first paragraph, for the reasons of record as set forth at pages 2-3 of the previous Office Action.

Applicants' urge that in view of prior examination in Applicant's corresponding PCT application and the evidence of herbicidal resistance in commonly assigned PCT WO 91/0271, the limitation in claim 48, re the expression of herbicide resistance genes is warranted. First, each and every application for a patent under 35 U.S.C. 101 is entitled to and requires examination on the merits of what is presented in that application. While it may be nothing more than a matter of semantics as to whether hygromycin can be considered a herbicide, it remains a fact that the only compound that may have such properties exemplified in the instant specification was hygromycin. However, there is no evidence that the expression of hygromycin, as taught in the specification, imparts properties that satisfy the claim limitation to:

... imparts herbicide resistance to said fertile transgenic Zea mays plant.

Clearly Applicants have not demonstrated the above limitation.

Finally, while the expression of a single herbicide resistance gene may support a claim to the a transgenic plant that expresses that gene at herbicidal levels, it does not support a claim to any and all other plants that express other herbicidal genes. In this regard Applicants' attention is

SM 0000724

Serial No.  07/467983
Art Unit    1804                                    3 of 6


directed to DeGreve et al. cited by the Examiner at page 3 of the previous
Office Action.

Claims 39, 41-42 and 47-48 remain rejected under 35 U.S.C. 103 for the
reasons of record as set forth at pages 4-10 of the previous Office Action.

Applicants' assert that Klein et al. do not disclose stably transformed
callus. Again the Examiner directs Applicants' to the previously cited
recitation in the reference. Furthermore, as McCabe et al. evidence that
biolistics can be employed to stably transform soybeans there would appear to
be little reason to doubt that other cells could not be similarly transformed.
In addition the Examiner never stated or asserted that Klein et al. taught the
stable integration and expression in callus. It is believed, however, that
when all the references are considered in concert, each will clearly support a
finding of _prima facie_ obviousness and thus satisfy the findings in _In re_
O'Farrell. Furthermore, O'Farrell also addressed that obviousness under 35 USC
103 does not require absolute predictability of success-- all that is required
is a reasonable expectation of success. See _In re_ O'Farrell, 7USPQ2d 1673, at
1681 (Fed. Cir. 1988). It remains the Examiner's position that the
combination of references present such a reasonable expectation of success.

Re comments directed to the improper use of Klein et al. (Plant
Physiology 91 440, 1989), the Examiner did not rely on this publication in the
rejection. Applicants' attention is directed to the fact that the rejection
ends at page 6, first paragraph. The remaining pages comprise comments that
were directed to rebuttal.

Re McCabe et al., contrary to Applicants' statement, attention is
directed to page 923, bottom right column, in which excised meristems and axes
were plated on MS medium for regenerating embryos. Again McCabe et al. was not
cited to teach callus transformation but transformation of meristematic
regions. This observation, when considered in view of Phillips et al. and the

SM 0000725

statement in Klein et al. regarding the fact that embryos and embryogenic
callus can be generated from scutellum, certainly form a nexus of observations
and do not constitute hindsight.

Re the holding in In re Vaeck, the Examiner cannot see how the fact
situation of Vaeck, drawn to molecular biology, can in any way be considered
similar to tissue culture in which those in the art constantly borrow what had
worked in one arena to that of current interest.

Re Applicants' comments drawn to Sprague et al., at page 6, final
paragraph, are not comprehended as the same was not cited in the rejection
under consideration.

Re Applicants' comments to Potrykus (1990 Physiologia Plantarum), note
that the author at page 126 states that these comments represent:

... my personal interpretation of the present situation. ... As so many
of the arguments which I use to explain the failure of so many
experiments, have not been substantiated experimentally, this assessment
is also rather subjective.

And, at page 132, Potrykus notes that he relies on data:

... which have not been published and are visible only indirectly in
conference discussions ...

Clearly, and in view of Applicants' agreement that Potrykus is rather
negative towards methods other than the direct protoplast route, it is hard to
view the arguments presented by Potrykus and supported by Applicants as more
than unsubstantiated assertions not well anchored in fact in the public
purview.

Finally, Applicants' cite publications in Science, August 1990; Genetic
Engineering News; March 1990; and The Plant Cell, July 1990; to evidence the
long felt need for transformed maize.  These articles evidence that the method

SM 0000726

Serial No.  07/467983
Art Unit    1804

of Rhodes and others in using protoplast transformation and regeneration had
not been successful while the method of biolistics had.  It would seem,
however, that as workers in the art were aware of the problems of regenerating
fertile transformed maize and the success of producing transformed soybeans
these publication merely give support to the clear prima facie case of
obviousness established by the art of record.

No claim is allowed.

THIS ACTION IS MADE FINAL.  Applicant is reminded of the extension of
time policy as set forth in 37 CFR 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO
EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION.  IN THE EVENT A FIRST
RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION
AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH
SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON
THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37
CFR 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION.
IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX
MONTHS FROM THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication or earlier communication from
the examiner should be directed to Gary Benzion, Ph.D whose telephone number
is (703) 308-1119.  Any inquiry of a general nature or relating to the status
of this application should be directed to the Group receptionist whose
telephone number is (703) 308-1119.

Papers related to this application may be submitted to Group 180 by
facsimile transmission.  Papers should be faxed to Group 180 via the PTO Fax
Center located in Crystal Mall 1.  The faxing of such papers must conform with
the notice published in the Official Gazette, 1096 OG 30 (November 15, 1989).

SM 0000727

Serial No.   07/467983                              6 of 6
Art Unit     1804

The CM1 Fax Center number is (703)-308-4227.

Benzion
05/08/92

*Elizabeth C. Weimar*
ELIZABETH C. WEIMAR
SUPERVISORY PATENT EXAMINER
ART UNIT 184

SM 0000728

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 11, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on January 11, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

**BY FEDERAL EXPRESS**

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

DB01:1611981.1

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on January 19, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

### BY FEDERAL EXPRESS

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*