REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-305-SLR |
| v. | ) ) | (lead case) |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., | ) ) ) ) | |
| Defendants. | ) ) | |
| DEKALB GENETICS CORPORATION, | ) ) | Civil Action No. 05-355-SLR |
| Plaintiff, | ) ) | **CONTAINS RESTRICTED** |
| v. | ) ) ) | **CONFIDENTIAL INFORMATION SUBJECT TO** |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., | ) ) ) | **PROTECTIVE ORDER - FILED UNDER SEAL** |
| Defendants. | ) ) | |

**APPENDIX OF EXHIBITS IN SUPPORT OF SYNGENTA'S**
**OPENING CLAIM CONSTRUCTION BRIEF REGARDING**
**THE LUNDQUIST AND SHAH PATENTS**

**VOLUME II (EXHIBITS 25-44)**

Michael J. Flibbert
Howard W. Levine
Sanya Sukduang
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001-4413
(202) 408-4000

Dated: January 11, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Defendants*

059155.1008

REDACTED VERSION – PUBLICLY FILED

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | U.S. Patent No. 6,013,863 |
| Exhibit 2 | U.S. Patent No. 5,538,880 |
| Exhibit 3 | U.S. Patent No. 4,940,835 |
| Exhibit 4 | DeKalb's Second Supplemental Responses to Syngenta's Interrogatories Nos. 1 & 2 |
| Exhibit 5 | DeKalb's Responses to Syngenta's Third Set of Interrogatories (Nos. 13-16) |
| Exhibit 6 | Letter from T. Miller to M. Flibbert dated December 20, 2005 |
| Exhibit 7 | DeKalb's Second Amended and Supplemental Response to Interrogatory No. 9, *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, No. 96 C 50169 (N.D. Ill. filed June 10, 1996) |
| Exhibit 8 | Excerpt from transcript of proceedings before the Honorable P. Michael Mahoney on May 16, 2005, *DeKalb Genetics Corp. v. Syngenta Seeds, Inc. et al.*, No. 04 C 50323 (N.D. Ill. filed July 27, 2004) |
| Exhibit 9 | Order adopting Report and Recommendation of Special Master Regarding Claim Construction, *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, Nos. 96 C 50112, 96 C 50114, 96 C 50169, 96 C 50239, 96 C 50241, 96 C 50284, 96 C 50186 (N.D. Ill. filed June 10, 1996) |
| Exhibit 10 | Report and Recommendation of Special Master Regarding Claim Construction, *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, Nos. 96 C 50112, 96 C 50114, 96 C 50169, 96 C 50239, 96 C 50241, 96 C 50284, 96 C 50186 (N.D. Ill. filed June 10, 1996) |
| Exhibit 11 | Supplemental Amendment filed on March 28, 1995 in Application Ser. No. 08/249,458 |
| Exhibit 12 | Amendment filed on January 27, 1994 in Application Ser. No. 08/249,458 |
| Exhibit 13 | PTO's Notice of Allowability dated November 16, 1995 in Application Ser. No. 08/249,458 |

i

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| Exhibit 14 | Amendment Under 37 C.F.R. § 1.312 filed on December 8, 1995 in Application Ser. No. 08/249,458 |
| Exhibit 15 | PTO's Response to Rule 312 Communication in Application Ser. No. 08/249,458 |
| Exhibit 16 | Index of Claims in Application Ser. No. 08/249,458 |
| Exhibit 17 | *Manual of Patent Examining Procedure*, § 717.04 at 700-156 (6th Ed. Rev. 2, July 1996) |
| Exhibit 18 | Excerpt from transcript of the December 14, 2005, deposition of Dr. Eric Ward |
| Exhibit 19 | Excerpt from Petition for Determination of Nonregulated Status: Roundup Ready Corn Line GA21 |
| Exhibit 20 | Excerpt from February 13, 2001, trial testimony of Dr. Ronald Lundquist in *DeKalb Genetics Corp. v. Pioneer HiBred Int'l, Inc. et al.*, Nos. 96 C 50112 (N.D. Ill.). |
| Exhibit 21 | Amendment filed on June 7, 1991 in Application Ser. No. 07/467,983 |
| Exhibit 22 | Office Action filed on August 23, 1991 in Application Ser. No. 07/467,983 |
| Exhibit 23 | Response filed on February 20, 1992 in Application Ser. No. 07/467,983 |
| Exhibit 24 | Final Office Action filed on May 13, 1992 in Application Ser. No. 07/467,983 |
| Exhibit 25 | Office Action filed on March 8, 1993 in Application Ser. No. 07/974,379 |
| Exhibit 26 | Preliminary Amendment filed on March 4, 1993 in Application Ser. No. 07/974,379 |
| Exhibit 27 | Declaration Under 37 C.F.R. § 1.132, filed in Application Ser. No. 07/974,379 |
| Exhibit 28 | Interview Summary filed on July 27, 1994 in Application Ser. No. 07/974,379 |
| Exhibit 29 | Preliminary Amendment filed on November 12, 1996 in Application Ser. No. 08/677,695 |

| Exhibit 30 | Response to Restriction Requirement filed on August 21, 1997 in Application Ser. No. 08/677,695 |
| Exhibit 31 | U.S. Patent No. 6,946,587 |
| Exhibit 32 | Response Under 37 C.F.R. § 1.116 - Expedited Examining Procedure - Group 1803 filed on May 31, 1995 in Application Serial No. 08/249,458 |
| Exhibit 33 | Examiner Interview Summary Record filed on January 4, 1988 in Application Ser. No. 879,814 |
| Exhibit 34 | Excerpt from July 1-2, 2003, Markman hearing transcript in *Monsanto Co. v. Bayer CropScience LP*, Case No. 4:01CV01825 CDP (E.D. Mo.) |
| Exhibit 35 | Excerpts from October 7, 2005, deposition transcript of Dilip Shah |
| Exhibit 36 | Excerpts from December 16, 2005 deposition transcript of Barry Bruce |
| Exhibit 37 | Excerpts from December 15, 2005, deposition transcript of Kenneth Keegstra |
| Exhibit 38 | Excerpts from March 25, 2003, deposition transcript of Kenneth Keegstra |
| Exhibit 39 | Specification of U.S. Application No. 763,482 |
| Exhibit 40 | Specification of U.S. Application No. 792,390 |
| Exhibit 41 | May 1, 1985 Plant Mol. Bio. Monthly Report |
| Exhibit 42 | Excerpts from laboratory notebook of Nancy Mathis (MRR015207 and MRR015232) |
| Exhibit 43 | Specification of U.S. Application No. 879,814 |
| Exhibit 44 | Amendment A filed on January 21, 1988 in U.S. Application No. 879,814 |

REDACTED VERSION – PUBLICLY FILED

REDACTED VERSION – PUBLICLY FILED



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/974,379 | 11/10/92 | LUNDQUIST | 3296.110U01 |

|  |
|---|
| EXAMINER |
| BENZION, G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1804 | 23 |

MERCHANT, GOULD, SMITH, EDELL, WELT & SM1
SCHMIDT, P.A., ATTN: WARREN D. WOESSNER
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS, MN 55402

DATE MAILED: 08/03/93

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined    ☑ Responsive to communication filed on _NOV 10, 1992_    ☑ This action is made final.

A shortened statutory period for response to this action is set to expire _Three_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I**    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☑ Notice of References Cited by Examiner, PTO-892. (1)    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449. (5)    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II**    SUMMARY OF ACTION

1. ☑ Claims _39, 41-43 & 47-48_ _____ are pending in the application.

Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _39, 41-43, 47 & 48_ _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☑ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

SM 0000759

EXAMINER'S ACTION

PTOL-326 (Rev. 9-83)

07/974379

#23

Serial No.      07/974379                                    2 of 5
Art Unit        1804

5      Prosecution will continue on the invention elected in the parent application of the instant
File Wrapper Continuation. See 1406 O.G. 2, issued September 4, 1984.

Claims 39, 41-42 and 47-48 remain the only claims pending.

Applicants intention to file appropriate 132 declarations as memorialized in the interview
summary of 11/23/92 (paper No.19) is noted. However, more than three months have passed
10     since the filing of the instant FWC and in the interest to reduce pendency this application must be
taken up at this time. Any subsequently filed declaration will be viewed with leniency.

Claim 48 remains rejected under 35 U.S.C. § 112, first paragraph, as the disclosure is
enabling only for claims limited to the transformation and expression of a selectable marker or
reporter gene as set forth in the specification at pages 22-39. See MPEP 706.03(n) and
15     706.03(z).

The specification teaches the transformation and expression of marker/reporter genes
conferring expression of hygromycin B phosphotransferase, B-glucuronidase, and luciferase. The
instant claimed subject matter is limited to the expression of a selectable marker gene which
imparts herbicide resistance to transformed maize plants. With the exception of the genes noted
20     above, which are not considered to be gene that confer resistance to art recognized "herbicides",
the specification is silent as to a gene which when expressed would impart said herbicide
resistance. Attention is directed to the paragraph bridging pages 11-12 in which all three of the
exemplified genes are noted as selectable marker and/or reporter genes. Genes which encode
resistance or tolerance to glyphosate and the like are considered herbicide resistance gene (see
25     line 4-8 of page 12). Applicants have not demonstrated the successful isolation of the any
coding regions which would confer herbicide resistance nor the transformation and expression of
any of these genes. Furthermore, the expression of a heterologous gene in a host is not
axiomatic even in the event that gene had been previously isolated and cloned. Variability in
expression was art recognized to be due to numerous factors, including: incomplete
30     transcription; inefficient mRNA processing; impaired transport of the mRNA from the nucleus to
the cytoplasm; instability of the mRNA; inefficient translation of the cytoplasmic mRNA and the
instability of the protein due to its susceptibility to plant specific proteases (DeGreve et al. pages

SM 0000760

Serial No.    07/974379                                    3 of 5
Art Unit      1804

5      3-4). Thus, for the reason noted above enablement is limited to marker genes demonstrated in
the specification in which herbicide resistance is not a consideration.

        Claims 39, 41-42 and 47-48 remain rejected under 35 U.S.C § 103 as being unpatentable
over Klein et al. in view of McCabe et al. and Phillips et al.

        Klein et al. (Biotechnology, pages 559-563) reveal the factors influencing gene delivery
10     into maize suspension cells via the use of high-velocity microprojectile acceleration. In addition,
these authors teach the application of the process to the surface of explanted maize embryos in
which the GUS reporter/marker gene is expressed. In particular, at page 562, right column of the
penultimate paragraph, stable transformation of maize callus via the disclosed technique is
evident. Thus, Klein et al. is seen to clearly teach the application of the method of biolistic
15     transformation to maize tissue cultures. Klein et al. does not teach regeneration from
transformed maize tissue, however, the regeneration of maize from totipotent cells in culture was
well known in the art.

        McCabe et al. (pages 923-926) disclose the transformation and regeneration of soybeans
via the method of particle acceleration into excised embryonal axes. McCabe is cited to
20     demonstrate that meristematic regions in plant tissue culture had been demonstrated as
susceptible to transformation in which regenerants display the heritable presence of the
transgenic DNA. The importance of this observation is found in the basic nature of maize friable
(Type II) cultures in that these cultures represent the de novo multiplication of meristematic
zones, i.e. somatic embryos (see Phillips et al. section 5-2.8). Phillips et al. (pages 345-387)
25     reviews the methods of cell/tissue culture and in vitro manipulation of maize. This reference is
cited to teach the method of explant initiation and maintenance of a friable maize tissue culture.
Re claim 42, the use of solid or liquid culture for the initiation of maize tissue cultures are
considered routine (see Phillips et al. section 5-1.3, for example). Furthermore, the initiation and
superior vigor of totipotent A188 x B73 cultures or any other culture of a superior genotype
30     initiated on 'solid' medium (re claim 42) were well know to those of ordinary skill in the art (page
351, for example). These cultures were known in the art to produce friable (Type II) in vitro
growth at high frequencies (re claim 40). Re claim 41, the selection of callus culture clumps of
about 30 to 80 mg per clump would appear to be the result of routine callus subculture and
growth parameters. Re claims 48 the expression of a reporter gene for its known and expected

Serial No.    07/974379                                    4 of 5
Art Unit      1804

5      benefits would be considered an obvious application of the technology. In this regard herbicide
       resistant plants facilitate efficient agronomic growth. In sum, it was well within the ordinary skill
       in the art to employ the claimed elements in order to obtain their known and expected results.

              Consequently, the use of biolistic or particle acceleration technology to transform
       totipotent maize cultures is both the logical progression from the observation of stable
10     transformation as noted in Klein et al. (page 562), providing motivation and the expected result
       of this application, thus providing a reasonable expectation of success. Applicants' have failed to
       establish the presence of any unexpected or unpredictable results in the claimed method.

              Accordingly, the modification of the method of Klein et al. in view of the teachings of
       McCabe regarding the regeneration of meristematic tissue in transgenic soybeans, and the use of
15     friable totipotent maize cultures as disclosed by Phillips et al. was well within the ordinary skill of
       the art at the time the claimed invention was made. Thus, the claimed invention as a whole was
       clearly _prima facie_ obvious in view of the references, in the absence of sufficient, clear, and
       convincing evidence to the contrary.

              No claim is allowed.

20            This is a File Wrapper Continuation of applicant's earlier application S.N. 07/467983. All
       claims are drawn to the same invention claimed in the earlier application and could have been
       finally rejected on the grounds or art of record in the next Office action if they had been entered
       in the earlier application. Accordingly, THIS ACTION IS MADE FINAL even though it is a first
       action in this case. See MPEP 706.07(b). Applicant is reminded of the extension of time policy as
25     set forth in 37 CFR 1.136(a).

              A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO
       EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS
       FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY
       ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY
30     PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY
       ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 CFR 1.136(a) WILL BE
       CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE
       STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS
       FINAL ACTION.

                                                          SM 0000762

REDACTED VERSION – PUBLICLY FILED

Serial No.      07/974379                              5 of 5
Art Unit        1804

5          Any inquiry concerning this communication or earlier communication from the examiner

should be directed to Gary Benzion, Ph.D whose telephone number is (703) 308-1119. Any

inquiry of a general nature or relating to the status of this application should be directed to the

Group receptionist whose telephone number is (703) 308-0196.

Benzion
10     03/04/93

GARY BENZION
PRIMARY EXAMINER
GROUP 1800

SM 0000763

REDACTED VERSION – PUBLICLY FILED

26

REDACTED VERSION – PUBLICLY FILED

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants: Ronald C. Lundquist et al. Examiner: G. Benzion

Serial No.: 07/974,379                Group Art Unit: 1804

Filed     : November 10, 1992         Docket: 9696.1-US-01

Title     : FERTILE TRANSGENIC CORN PLANTS

Hon. Commissioner of Patents
  and Trademarks
Washington, D.C.  20231

### PRELIMINARY AMENDMENT

Sir:

        Prior to the first Office Action, please amend the
above-identified application as follows:


### IN THE SPECIFICATION

        At page 1, line 1, before "FERTILE TRANSGENIC CORN
PLANTS" insert --METHOD FOR PREPARING--


### REMARKS

        The title has been amended to conform to the pending
method claims.

        Claims 39, 41-42 and 47-48 are pending in the above-
identified application.

        At page 2 of the Office Action mailed May 13, 1992,
with respect to parent application Serial No. 7/467,983, the

SM 0000765

#9A

Examiner rejected claim 48 under 35 U.S.C. §112(1), alleging that
the disclosure only enables the transformation and expression of
a selectable marker gene as set forth at pages 22-39, relating to
the expression of marker/reporter genes conferring expression of
hygromycin, $\beta$-phosphotransferase, $\beta$-glucuronidase and luciferase.

In the Response filed February 20, 1992, Applicants
cited commonly assigned PCT application Serial No. PCT/US90/04462
(WO 91/02071) for its disclosure of transgenic corn plants
produced by the claimed method which express foreign DNA encoding
herbicide resistance. In the personal interview conducted on
November 20, 1992, it was agreed that Applicants would file a 132
Declaration attesting to herbicide resistance.

Therefore, the Examiner is respectfully requested to
consider the enclosed Rule 132 Declaration, executed by Dr.
William J. Gordon-Kamm, a named co-inventor on PCT application
Serial No. WO 91/02071 and a co-author of the paper "Transforma-
tion of Maize Cells and Regeneration of Fertile Transgenic
Plants," The Plant Cell, 2, 603 (July 1990). In his Declaration,
Dr. Gordon-Kamm states that the claimed method was effective to
transform cultured maize cells with the bacterial gene *bar*, which
encodes the enzyme phosphinotricin acetyltransferase (PAT).
Fertile transgenic R0 maize plants were recovered which yielded
R1 maize plants which were resistant to the herbicide bialaphos.
Furthermore, the *bar* gene also was used for selection. Finally,
Dr. Gordon-Kamm presents his opinion that the present method will
be effective to produce transgenic maize plants which express

2                SM 0000766

REDACTED VERSION – PUBLICLY FILED

introduced genes known to impart herbicide resistance to other
species of plants, such as genes encoding mutant EPSP syntheses,
the nitrilase gene, mutant ALS, methothrexate-resistant DHFR
genes and the like.  Therefore, it is respectfully submitted that
the present specification fully meets the requirements of 35
U.S.C. §112.

At pages 3-5 of the Office Action, the Examiner
rejected claims 39, 41-42 and 47-48 under 35 U.S.C. §103 as
obvious in view of Klein et al., Bio/Technology, 6, 559 (1988),
in view of McCabe et al., Bio/Technology, 6, 923 (1989) and
chapter 5 by Phillips et al., in Corn and Corn Improvement, ASA,
Madison, WI (1988).

However, it remains Applicants' position that one of
skill in the art, in possession of the cited papers, would
replace the BMS cells or the scutellum which was bombarded by
Klein et al. with the meristems of immature corn seeds, since
this was the only tissue used successfully by McCabe et al.
However, one of skill in the art would not expect that the
success achieved by McCabe et al. in the case of soybean meri-
stems could be reproduced using maize meristems.  As stated by I.
Potrykus, in Bio/Technology, 535 (June 1990):

> The route via shoot meristems (in analogy to
> the successful soybean case) is considerably
> more difficult for cereals, because (a) the
> meristem is far better protected and more
> difficult to expose, (b) regeneration via
> multiple adventitious shoots from the tissue
> below the meristem is far less efficient, and
> (c) it is still an open question whether

3

SM 0000767

REDACTED VERSION – PUBLICLY FILED

```
biolistics can transform meristematic cells.
This is not unimportant for cereals because
in cereals regeneration requires meristematic
cells.
```

If the Examiner agrees with this analysis of maize meristem transformability, it is respectfully submitted that one would not use McCabe et al. as a departure point for the search for transformable maize tissue. If the Examiner disagrees with the analysis by Potrykus, then the only logical conclusion to draw is that maize meristems should be bombarded, not scutellum as suggested by Klein et al. This is particularly true in view of the extremely narrow teaching in McCabe et al. They do not disclose that any other soybean tissue source could be used and they do not disclose that any other species of plant could be successfully transformed using this methodology. It is not logical to combine McCabe et al. with Klein et al. in any other way.

It is respectfully submitted that the Examiner has used McCabe et al. to suggest the use of a specific type of cultured maize tissue, disclosed in Phillips et al., that was not used by either Klein et al. or McCabe et al. However, in the absence of the knowledge of Applicants' methodology, McCabe et al. can simply not be read to point to one out of the many types of cultured maize tissues/cells/protoplasts disclosed in the Phillips et al. review.

As earlier pointed out by the Examiner, this lengthy chapter reviews the methods of cell/tissue culture and *in vitro*

4

SM 0000768

REDACTED VERSION – PUBLICLY FILED

manipulation of maize, and teaches the general method of explant
initiation and maintenance of a friable maize tissue culture.
However, it is Applicants' position that in the absence of know-
ledge of Applicants' success, this review does not suggest that
any particular type of tissue would survive biolistic transforma-
tion, so as to be regenerable into plants, much less that fer-
tile, stably transformed Zea mays would result that would trans-
mit the introduced DNA to progeny.

The Examiner is requested to consider that maize tis-
sues that more readily regenerate plants than Type II callus
cultures have failed to yield transgenic maize plants following
particle bombardment. These failures are summarized by I.K.
Vasil in Bio/Technology, 8, 797 (September 1990):

> Plant regeneration in cereals is most easily
> obtained from cultured, immature embryos,
> bases of young leaves and young infloresc-
> ences, often directly from single cells.
> Delivery and integration of foreign DNA into
> such cells can rapidly yield non-chimeric
> somatic embryos and plants. Unfortunately,
> despite many attempts, it has not been pos-
> sible thus far to obtain transgenic plants,
> or even stably transformed callus, following
> DNA delivery into such explants by particle
> bombardment. This is an important limitation
> to be overcome.

To return to the primary reference, the Examiner is
urged to consider that he is reading Klein et al. to "teach" much
more than the art worker could possibly derive from this limited
and specific disclosure. For example, Applicants specifically
disagree with the Examiner's conclusion at page 4 of the Office

5

SM 0000769

REDACTED VERSION – PUBLICLY FILED

Action that "stable transformation of maize callus via the dis-
closed technique is evident," for the following reasons:

(1)  Klein et al. do <u>not</u> disclose or confirm that the cul-
     tured BMS maize cells or the scutellum that were bom-
     barded integrated the exogenous DNA, much less that the
     DNA could be passed from one cell generation to
     another.  Klein et al. repeatedly refer to <u>transient</u>
     expression of the gene in both the cultured cells and
     scutellum.

(2)  Klein et al. do not disclose what type of tissue was
     used to produce the "cultures of maize" that were
     "stably transformed" in the "manuscript in prepara-
     tion", much less that these cultures could be regener-
     ated into fertile plants.  The fact that both the cited
     Klein et al. paper and the Klein et al. <u>Plant Physiol.</u>
     paper use BMS cultures as starting materials is evi-
     dence that Klein et al. in fact transformed a tissue
     that could not be regenerated into plants.

(3)  The mention of "tissue" that will be a prime target for
     <u>future</u> attempts at transformation is clearly intended
     as a reference to scutellum, not to callus.  However,
     as noted at point (1) above, there is nothing to
     suggest that Klein et al. believed that they had

SM 0000770

6

REDACTED VERSION – PUBLICLY FILED

achieved stable transformation of scutellum.  There-
fore, Klein et al. do not "teach" the production of
stably transformed callus.

In conclusion, there is nothing in the Klein et al.
reference that would "teach" (enable) the art worker to prepare a
stably transformed maize tissue, or to regenerate the tissue into
a fertile maize plant that can sexually transmit the introduced
DNA to the next generation.  The Klein et al. reference is no
more than an invitation to conduct further undefined experiments,
and does not amount to a suggestion, either considered alone, or
in combination with McCabe et al. or the Phillips et al. review,
to take the course that led to Applicants' success.

Even assuming, *arguendo*, that the cited art renders it
*prima facie* obvious to proceed along the lines arguably suggested
by Klein et al., because it would be expected that transformed
callus could be obtained from bombarded maize scutellum, it is
respectfully submitted that it would still be unexpected that
fertile transgenic maize plants capable of transmission of the
foreign DNA to progeny would be obtained by this route.  As
evidence of the unpredictability of maize transformation via
biolistics, the Examiner is requested to consider the enclosed
copy of the Rule 132 Declaration by Professor Ronald L. Phillips,
an eminent researcher in the area of maize genetics and co-author
of the cited Phillips et al. review.  This Declaration was made

7

SM 0000771

of record in commonly assigned U.S. patent application Serial No.
7/508,405 filed April 11, 1990.

Professor Phillips discusses the problems inherent in
the use of the scutellum of cultured immature embryos as a
"starting material" for biolistic transformation. These include
the inability to predict the extent to which integration will
take place, and whether the ability to regenerate plants will be
retained. Finally, even if the regenerated plants can retain the
DNA in some cells, their ability to transmit the DNA to progeny
is not a predictable event. It is Professor Phillips' opinion
that, in view of these factors, the recovery of fertile trans-
genic corn plants starting with scutellum bombarded as taught by
Klein et al. would not be a reasonably predictable outcome.

Professor Phillips also contrasts the regenerability of
friable Type II embryogenic maize callus, to characteristics that
would render its transformation unpredictable, namely, its fra-
gility and the uncertainty with respect to its ability to stably
integrate the foreign DNA or to regenerate plants.

In re Wood, 202 USPQ 171, 174 (CCPA 1979), the court
emphasized that "[o]f course, an evaluation of the claimed inven-
tion performed by an impartial, qualified third party is a valu-
able indication of the nonobviousness of an invention." The
Examiner is requested to consider that Professor Phillips'
declaration is based on facts derived from his extensive experi-
ence with the *in vitro* cell/tissue culture of maize, and that the
declaration is sufficient to rebut any *prima facie* case of

8                          SM 0000772

REDACTED VERSION – PUBLICLY FILED

obviousness established by the cited art.  The Examiner is also
requested to consider that the declaration is particularly effec-
tive in view of the remoteness of the cited art from the claimed
invention; there are no experiments disclosed relating to (a)
transforming callus or obtaining stably transformed callus from
any transformed maize tissue source, following the use of biolis-
tics to introduce the foreign DNA; (b) regenerating plants from
the transformed callus; or (c) confirming the presence of the
foreign DNA in the germline cells of the regenerated plants.

    With respect to Applicants' evidence of "long-felt
need" and "failure of others", the Examiner is urged to consider
that the Court of Appeals for the Federal Circuit has explicitly
stated that all relevant facts are to be considered together in
determining obviousness.  In In re Piasecki, 223 USPQ 785 (Fed.
Cir. 1984), the Court stated that, if Applicant presents any
evidence to rebut a holding of prima facie obviousness, then
"[r]egardless of whether the prima facie case could have been
characterized as strong or weak, the examiner must consider all
of the evidence anew."  The Court went on to describe the appro-
priate procedure for resolving the obviousness question, quoting
from In re Rinehart, 189 USPQ 143, 147 (CCPA 1976):

>              When prima facie obviousness is established
>         and evidence is submitted in rebuttal, the
>         decision-maker must start over . . . ..  An
>         earlier decision should not, as it was here,
>         be considered as set in concrete, and appli-
>         cant's rebuttal evidence then be evaluated
>         only on its knockdown ability.  Analytical
>         fixation on an earlier decision can tend to

9

> provide that decision with an undeservedly
> broadened umbrella effect. *Prima facie*
> obviousness is a legal conclusion, not a
> fact. Facts established by rebuttal evidence
> must be evaluated along with the facts on
> which the earlier conclusion was reached, not
> against the conclusion itself . . . . [A]
> final finding of obviousness may of course be
> reached, but such finding will rest upon
> evaluation of all facts in evidence, uninflu-
> enced by an earlier board upon a different
> record.

In Piasecki, the Court considered the Board's finding

that an affidavit by an expert relating to secondary considera-

tions was not persuasive "because it appears that the teachings

in the prior art point in the direction of the claimed subject

matter." The Court stated that:

> The Board's view that the prior art teachings
> "point in the direction of" the subject
> matter is a factor to be considered along
> with all other considerations, but it is not
> the standard of 35 U.S.C. §103. To the
> extent that the direction in which the prior
> teachings may point is determined by hind-
> sight, this standard has long been dis-
> credited. *Kalman v. Kimberly-Clark Corp.*,
> 713 F.2d 760, 774, 218 USPQ 781, 791 (Fed.
> Cir. 1983).

It is respectfully submitted that the Examiner has used the same

rationale to improperly disregard Applicants' evidence of secon-

dary considerations, as evidenced by his indirect and conclusory

statement in the Office Action mailed August 31, 1991, that the

failure of others was "due to the lack of interest or apprecia-

tion of an invention's potential or marketability." Clearly,

there was no failure of the many workers in this art to recognize

10

REDACTED VERSION – PUBLICLY FILED

the potential of a method to transform monocots.  Therefore, it is clear that in the context in which the present invention was made, it was the "technical know-how" that was lacking.  See MPEP §716.

To assist the Examiner in evaluating the evidence of secondary considerations, enclosed herewith is a copy of a Rule 132 Declaration by Professor David A. Somers, an authority in the area of maize cultures and transformation, in which he reviews documentary evidence of long-felt need, failure of others, skepticism relating to the route use by Applicants and recognition by the art of the significance of Applicants' success.  This original of the Declaration is of record in commonly assigned U.S. patent application Serial No. 7/508,405, filed April 11, 1990.

It is respectfully requested that the Examiner should proceed to weigh the evidence of secondary considerations _in combination_ with the other technical evidence of nonobviousness presented herein by Applicants and by Professor Phillips, in order to resolve the obviousness question.

In view of the totality of the evidence, it is respectfully submitted that the amended claims are in condition for allowance, and notification to that effect is earnestly solicited.

To satisfy Assignees' obligation under 37 C.F.R. §1.78(c) and §1.56 with respect to commonly assigned Adams et al. (U.S. Patent application Serial No. 513,298, filed April 17,

11                    SM 0000775

REDACTED VERSION – PUBLICLY FILED

1990), enclosed herewith is a Supplemental Information Disclosure Statement which the Examiner is respectfully requested to consider.

The Examiner is thanked for the courtesies extended to the undersigned attorney for Applicants during the personal interview conducted on November 20, 1992, during which these issues were extensively discussed.

Respectfully submitted,

RONALD C. LUNDQUIST ET AL.

By their attorneys,

MERCHANT, GOULD, SMITH, EDELL,
  WELTER, & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 332-5300 or 336-4622 (direct)

Date _Mar 4 1993_        By _Warren D. Woessner_
                            Warren D. Woessner
                            Reg. No. 30,440

SM 0000776

12

REDACTED VERSION – PUBLICLY FILED



PATENT



) IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:   Ronald C. Lundquist et al.   Examiner:  G. Benzion

Serial No.:   07/974,379              Art Unit:  1804

Filed:        November 10, 1992       M&G:  9696.1-US-01

For:          FERTILE TRANSGENIC CORN PLANTS

---

Hon. Commissioner of Patents
     and Trademarks
Washington, D.C.  20231

### DECLARATION UNDER 37 CFR §1.132

Sir:

I, William J. Gordon-Kamm, declare and say as follows:

1.  I received a B.S. in Biology and an M.S. in Botany from Western Washington University in 1979 and 1980, respectively, and my Ph.D. in Plant Physiology from Cornell University in 1985.  I joined New Mexico Highlands University as an Assistant Professor in 1985, and joined the Plant Genetics Department of Pfizer, Inc. in 1987 as a Research Scientist.  In 1990, I joined DeKalb Plant Genetics, Mystic, CT as a Senior Research Scientist.  I have authored or co-authored a number of papers in the area of plant physiology and the genetic engineering of plants, including W.J. Gordon-Kamm et al., The Plant Cell, 2, 603 (July 1990), which is attached hereto, and incorporated by reference herein.  I am a named co-inventor on DeKalb Plant Genetics PCT/US90/04462, entitled "Methods and Compositions for

SM 0000777

REDACTED VERSION – PUBLICLY FILED

the Production of Stably Transformed, Fertile Monocot Plants and Cells."

     2.  I have read the above-identified application, with the amendment filed June 7, 1991 and with the Office Action mailed May 13, 1992, and make this Declaration in support of the patentability of the claims of the above-identified application, as amended on June 7, 1991.

     3.  Claim 48 of the above-identified Lundquist et al. application which is directed to a method of producing a fertile transgenic zea mays plant by microprojectile bombardment of a regenerable friable embryogenic callus culture with microparticles coated with DNA. The DNA comprises a selectable marker gene which can impart herbicide resistance to the resulting fertile transgenic Zea mays plant. At page 2 of the Office Action mailed May 13, 1992, the Examiner rejected claim 48 on the basis that one of skill in the art in possession of the transformation methodologies disclosed in the specification, would not be able to prepare fertile transgenic Zea mays plants which are herbicide resistant due to transformation with a selectable marker gene.

     4.  The biolistic transformation of friable embryogenic Type II callus has, in fact, been employed to prepare stably transformed transgenic Zea mays (maize) plants which exhibit resistance to a commonly employed herbicide in both the R0 and R1 generations. More specifically, the Examiner is requested to consider the attached paper, W.J. Gordon-Kamm et al., The Plant Cell, 2, 603 (July 1990) which reports experiments which I

2

SM 0000778