IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY LLC,<br><br>   Plaintiffs,<br>v.<br>SYNGENTA SEEDS, INC.<br>SYNGENTA BIOTECHNOLOGY, INC., et al.,<br><br>   Defendants. | C. A. No. 04-305 SLR<br>(Lead Case)<br><br>**PUBLIC VERSION** |
| DEKALB GENETICS CORPORATION,<br><br>   Plaintiff,<br>v.<br>SYNGENTA SEEDS, INC.,<br>SYNGENTA BIOTECHNOLOGY, INC., et al.<br><br>   Defendants. | |

**PLAINTIFFS' OPENING BRIEF N SUPPORT OF THEIR MOTION TO
EXCLUDE TESTIMONY RELATED TO PORTIONS OF THE EXPERT
REPORTS OF ERIC WARD, BARRY BRUCE, AND PAUL CHRISTOU**

OF COUNSEL:

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
(713) 787-1400

Dated: January 11, 2006
Public Version Dated: January 30, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Monsanto Company,
Monsanto Technology LLC, and
DEKALB Genetics Corporation*

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDINGS ..................................................3

III. SUMMARY OF ARGUMENT ....................................................................................3

IV.  STATEMENT OF FACTS ...........................................................................................4

V.   ARGUMENT .................................................................................................................7

    A.   The Applicable Law..........................................................................................7

    B.   Dr. Ward's Testimony Regarding The North Carolina Litigation Should Be Excluded Because It Is Not Relevant To The Infringement Issues In This Case ...........................................10

    C.   Dr. Bruce's Testimony Comparing The Gene Used To Make The GA21 Event To Another RPA Gene Should Be Excluded .................................................................................................11

    D.   Testimony By Defendants' Experts Regarding Court Opinions Should Be Excluded ...........................................................................12

VI.  CONCLUSION............................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                     **PAGE**

*Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*,
   340 F.3d 1298 (Fed. Cir. 2003) .................................................................. 11, 12

*In re: Breast Implant Litigation*,
   11 F. Supp. 2d 1217 (D. Colo. 1998) .................................................................. 9

*Calhoun v. Yamaha Motor Corp. U.S.A.*,
   350 F.3d 316 (3rd Cir. 2003) ............................................................................ 10, 13

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579, 113 S. Ct. 2786 (1993) ........................................................ *passim*

*General Electric Co. v. Joiner*,
   522 U.S. 136, 118 S. Ct. 512 (1997) .................................................................. 8

*J&M Corp. v. Harley-Davidson, Inc.*,
   269 F.3d 1360 (Fed. Cir. 2001) ................................................................... 11, 12

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137, 119 S. Ct. 1167 (1999) ................................................................. 8

*In re: Paoli RR Yard PCB Litigation*,
   35 F.3d 717 (3rd Cir. 1994) ................................................................................ 9

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*,
   998 F.2d 1224 (3rd Cir. 1993) ........................................................................... 8

*Plant Genetic Systems v. Dekalb Genetics Corp.*,
   175 F. Supp. 2d 246 (D. Conn. 2001) ............................................................... 7

*Plant Genetic Systems, N.V. v. DEKALB Genetics Corp.*,
   315 F.3d 1335 (Fed. Cir. 2003) ................................................................... 7, 13

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992) ......................................................................... 12

*Rhone-Poulenc Agro, S.A. v. Dekalb Genetics Corp.*,
   272 F.3d 1335 (Fed. Cir. 2002) ......................................................................... 7

*Rhone-Poulenc Agro, S.A. v. Dekalb Genetics Corp.*,
   284 F.3d 1323 (Fed. Cir. 2002) ......................................................................... 7

*Surace v. Caterpillar, Inc*,
   111 F.3d 1039 (3d Cir. 1997) ..................................................................... 10, 13

*U.S. v. Mamah*,
  332 F.3d 475 (7th Cir. 2003) ............................................................................................9

**RULES**

Fed. R. Evid. 401 ..............................................................................................................8

Fed. R. Evid. 402 ..............................................................................................................8

Fed. R. Evid. 403 ...................................................................................................9, 11, 12

Fed. R. Evid. 702 ......................................................................................................*passim*

Fed. R. Evid. 703 .....................................................................................................4, 9, 14

I.  **INTRODUCTION**

Plaintiffs Monsanto Company, Monsanto Technology LLC, and DEKALB Genetics Corporation move for an order excluding certain testimony of Defendants' technical experts Eric Ward, Barry Bruce, and Paul Christou. The testimony that should be excluded concerns two prior litigations, a North Carolina case between Monsanto/DEKALB and RPA and a Connecticut case between DEKALB and PGS. The following proposed expert testimony regarding these cases is irrelevant to the present litigation and should be excluded:

(1) Testimony about the details of RPA's providing a gene that DEKALB used to make the GA21 event, in rebuttal to Plaintiffs' infringement expert, because it is not relevant to whether the asserted process claims of the '880 and '863 patents are infringed.

(2) Testimony comparing the gene provided by RPA (now in Defendants' infringing GA21 corn) to another RPA gene to prove no infringement of the '835 patent under the doctrine of equivalents, because comparison of the accused product to another product is a legally improper infringement analysis.

(3) Testimony regarding DEKALB's arguments in the Connecticut litigation that PGS's patent was not enabled for corn, because nonenablement of those claims covering plant cells, plants, and seeds is irrelevant to whether the '835 patent claims, which cover chimeric genes, are enabled.

Because this testimony is clearly irrelevant, Defendants are trying to inject these prior litigations into this case for the improper purpose of misleading the jury into deciding that the patents-in-suit are invalid or not infringed on legally improper grounds.

Moreover, it appears that Defendants are attempting to inject the North Carolina litigation to paint Plaintiffs in a bad light. In that litigation, RPA brought claims against

DEKALB for fraudulent inducement to enter into a contract, trade secret misappropriation, infringement of two RPA patents, and co-inventorship rights of RPA in DEKALB patents. DEKALB had made the GA21 glyphosate resistant corn event using a gene provided by RPA. ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████ Those Syngenta GA21 hybrids are accused of infringement here.

Although Syngenta had obtained some rights to GA21 corn held by Bayer (RPA's successor) in early 2004, those rights did not include rights under the '880, '863, and '835 patents-in-suit.[1] Those three patents were not involved in the North Carolina litigation, and Syngenta asserts no rights in them through anything that transpired in the North Carolina litigation or through any rights that it acquired from Bayer. Indeed, the inventions of the Shah '835 patent (mid-1980s) and the Lundquist '880 and '863 patents (1989) were completed long before the events involved in the North Carolina litigation even transpired. Moreover, at the time of their invention, Lundquist and Walters were employed by a separate company, PSRI, which was only later acquired by DEKALB.

Accordingly, what transpired between RPA and Monsanto/DEKALB and what happened in the North Carolina litigation is not relevant to Plaintiffs' claims for patent infringement here or to Defendants' defenses. This is the kind of expert testimony that should be excluded under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), because it does not meet the requirements of Fed. R. Evid. 702.

---

[1] Bayer had settled a case brought by Monsanto for infringement of the '835 patent and abandoned its own efforts to commercialize GA21 event corn.

2

## II. NATURE AND STAGE OF THE PROCEEDINGS

On October 27, 2005, the parties exchanged opening expert reports. Rebuttal expert reports were exchanged on November 22, 2005. In a December 29, 2005 letter, Plaintiffs notified Defendants of their intent to object to the portions of Defendants' expert reports addressed in this motion in accordance with L.R. 7.1.1. On January 4, 2006, Mr. Scott Popma, attorney for Defendants, confirmed that Defendants would not withdraw the portions of Defendants' expert reports addressed in this motion. Pursuant to the Court's scheduling order in this case, *Daubert* motions are to be filed by January 11, 2006. A jury trial is scheduled to begin on May 30, 2006.

## III. SUMMARY OF ARGUMENT

Dr. Ward's testimony about the details of RPA's providing a gene that DEKALB used to make the GA21 event is irrelevant (1) to any noninfringement theory asserted by Defendants and (2) to whether the asserted process claims of the '880 and '863 patents-in-suit are infringed. Infringement of process claims is determined by whether the steps of the claimed process were carried out in the accused process, not by where material came from that was used in the accused process. Moreover, it appears that Defendants are attempting to inject this testimony for an improper and highly prejudicial purpose—to cast Monsanto and DEKALB in a bad light by recounting litigation involving RPA's claims of fraudulent inducement and failure to name RPA scientists as co-inventors on two DEKALB patents not involved in the present case.

Dr. Bruce's testimony comparing the gene provided by RPA used in making the GA21 event to another RPA gene is legally improper and, therefore, irrelevant. The proper comparison that must be made under the doctrine of equivalents is between the accused product and the claims of the '835 patent, not some different gene.

Rule 702 requires that expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." The proposed testimony of Drs. Ward and Bruce will not assist the trier of fact because "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795. There is also a substantial risk that it will mislead the jury. Dr. Ward's testimony about the fraudulent inducement and co-inventorship issues from the North Carolina litigation is also highly prejudicial because those events have nothing to do with the patents at issue in this case. Accordingly, this testimony of Drs. Ward and Bruce should be excluded.

Opinions by Drs. Ward, Bruce, and Christou based on the North Carolina and Connecticut district court and appellate court opinions and DEKALB briefs from the Connecticut litigation should be excluded under Rule 702 because (1) these technical experts have no expertise to testify about court opinions or briefs and (2) as pointed out above, the prior litigation is irrelevant to the issues on which these experts are offering opinions. The court opinions and briefs themselves should also be excluded because they are not reasonably relied upon by experts in the field and they are hearsay that does not fall under any hearsay exception. Defendants should not be permitted to get this inadmissible hearsay before the jury in the guise of expert testimony. Fed. R. Evid. 703.

## IV.    STATEMENT OF FACTS

Defendants have proffered three technical experts on the issues of patent invalidity and noninfringement, Drs. Ward, Bruce, and Christou.

On November 22, 2005, Defendants served the Rebuttal Rule 26(a)(2) Expert Report of Eric Ward, Ph.D. ["Ward Rebuttal Report" excerpts, Exh. 1] Section I of the Ward Rebuttal Report responds to pages 20-24 of a report submitted by Plaintiffs'

expert, Dr. Finer, who provided his opinion that the GA21 event incorporated into Defendants' accused GA21 corn products was made by a process covered by claim 1 of the '880 patent. ["Finer Report" excerpts, Exh. 4] Dr. Ward states that:

> Dr. Finer did not, however, disclose that scientists from Rhone-Poulenc Agro ("RPA") created the DNA construct [used to created the GA21 event]. Moreover, Dr. Finer failed to report that Mr. Spencer and DeKalb obtained a patent, U.S. Patent No. 6,040,497 ("the '497 patent"), specifically directed to the GA21 event, but did not name those .... In the interest of completing Dr. Finer's narrative describing the creation of the GA21 event, RPA's contributions of the transgene used to create GA21 should be addressed.

[Exh. 1, ¶¶ 1-2]

The remainder of Section I of the Ward Rebuttal Report discusses details of prior North Carolina litigation between Monsanto/DEKALB and RPA, quotes testimony of a third-party witness (DeRose) from that litigation, and relies on that third-party testimony and the district court and court of appeals decisions in reaching an opinion that "the OTP/double mutant maize EPSPS gene obtained by DEKALB from RPA was, as expressed by Dr. DeRose, 'absolutely essential and critical' for the creation of GA21." [Exh. 1, ¶¶ 3-26] Dr. Ward, however, does not link this testimony to any infringement issue in the present case, and he cannot because it has absolutely no bearing on whether every element of the asserted '880 and '863 patent claims is satisfied by the accused processes.

Specifically, the only noninfringement defenses raised by Dr. Ward to the asserted claims of the '880 and '863 patents are set out at Ward Rebuttal Report ¶¶ 48-56 and 59. [Exh. 1] None of these defenses have anything to do with the source of the EPSPS gene used to make the GA21 event or to whether that EPSPS gene was "essential" to the creation of the GA21 event. Asserted claims 4-9 of the '880 patent and

5

asserted claims 5 and 6 of the '863 patent do not include any limitations regarding the source or nature of the gene used to provide herbicide resistance (the '880 patent) or glyphosate resistance (the '863 patent). [Exh. 5, '880 patent at col. 22-23; Exh. 6, '863 patent at col. 29-30]

When asked why he included Section I in his rebuttal report, Dr. Ward responded that he included it because DEKALB had "defrauded RPA." [Exh. 8, Ward Tr. 182:6-185:24] This, along with the reference to the co-inventorship issue regarding DEKALB's '497 patent referenced in Ward Rebuttal Report ¶1 quoted above, clearly shows Syngenta's intent to inject this testimony for an improper purpose.

Defendants served the Rule 26(a)(2) Responsive Expert Report of Barry D. Bruce, Ph.D. on November 22, 2005. ["Bruce Responsive Report" excerpts, Exh. 2] Section II.C. of the Bruce Responsive Report is purportedly a rebuttal to the opinion of Plaintiffs' expert, Dr. Keegstra, that a component of the gene in Defendants' GA21 corn called the "OTP" is equivalent to the chloroplast transit peptide (CTP) recited in claim 1 of the '835 patent. [Exh. 2, ¶¶ 29-39] However, instead of comparing the OTP in GA21 corn to the CTP of claim 1 of the '835 patent to demonstrate that the OTP performs the same function in a substantially different way and achieves a substantially different result, Dr. Bruce compares the OTP to another RPA gene, which he refers to as the "294 construct." [Exh. 2, ¶¶ 33-35, 36, and 38-39]

Defendants served the Rule 26(a)(2) Expert Report of Paul Christou, Ph.D. on October 27, 2005. ["Christou Report" excerpts, Exh. 3] The title of Section III of the Christou Report indicates that it concerns enablement. Section III.B. expresses the opinion that monocots such as corn could not be transformed as of the filing date of the

'835 patent-in-suit. In support of his nonenablement opinion, Dr. Christou relies upon and quotes from DEKALB's briefs and findings of fact and conclusions of law submitted in *Plant Genetic Systems v. Dekalb Genetics Corp.* 175 F. Supp. 2d 246 (D. Conn. 2001). [Exh. 3, ¶¶ 30, 39, 46, 51-52, and 62]  Dr. Christou also relies upon and quotes from the district court's opinion in that case.  [Exh. 3, ¶ 47]  The Connecticut case, however, involved a PGS patent (the '236 patent) filed in 1986, the claims of which are directed to transgenic plant cells, plants, and seeds. *Plant Genetic Systems, N.V. v. DEKALB Genetics Corp.*, 315 F.3d 1335, 1338 (Fed. Cir. 2003). By contrast, asserted claims 1, 5, and 6 of the '835 patent are directed to genes, specifically, chimeric plant genes that enhance resistance to glyphosate. [Exh. 7, '835 patent at col. 32]

Drs. Ward and Bruce also rely upon and quote from court opinions from the litigation between Monsanto/DEKALB and RPA in North Carolina. [Exh. 1, ¶¶ 3, 5, 6, 12, 20, and 25; Exh. 2, ¶ 36]  The North Carolina litigation involved RPA's claims of fraudulent inducement to enter a contract, trade secret misappropriation, patent infringement, and co-inventorship. *See, e.g., Rhone-Poulenc Agro, S.A. v. Dekalb Genetics Corp.*, 284 F.3d 1323 (Fed. Cir. 2002); *Rhone-Poulenc Agro, S.A. v. Dekalb Genetics Corp.*, 272 F.3d 1335 (Fed. Cir. 2002). The North Carolina litigation did not involve any of the patents-in-suit here.

V. **ARGUMENT**

   A. **The Applicable Law**

The admissibility of expert testimony in a patent case, like any other case, is governed by Fed. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

7

education, may testify thereto in the form of an opinion or otherwise, if (i) the testimony is based upon sufficient facts or data, (ii) the testimony is the product of reliable principles and methods, and (iii) the witness has applied the principles and methods reliably to the facts of the case.

The district court acts as a gatekeeper to exclude unhelpful and unreliable expert testimony offered under Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 590-95, 113 S. Ct. at 2795-98. The court's "gatekeeper authority" applies to all areas of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171 (1999).

"There are three intertwined bases for excluding expert testimony under Rule 702: (1) if the testimony will not assist the trier of fact; (2) if scientific [technical or other specialized] evidence is not sufficiently reliable; and (3) if the particular expert does not have sufficient specialized knowledge to assist the jurors." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1238 (3rd Cir. 1993). The trial court has broad discretion in deciding whether to admit or exclude expert testimony. *General Electric Co. v. Joiner*, 522 U.S. 136, 142, 118 S. Ct. 512, 517 (1997) (abuse of discretion is the proper standard of review of rulings admitting or excluding expert testimony).

Expert evidence must meet the baselines established by Rules 401 and 402—the evidence must be relevant. Rule 702 requires that the evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." Whether an expert's testimony will assist the jury "goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795.

"It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support.

8

(citation omitted) The court is not obligated to admit testimony just because it is given by an expert." *U.S. v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). The *Daubert* court described this consideration as one of "fit." 509 U.S. at 591; 113 S. Ct. at 2796. The expert's testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* The evidence must have a valid "connection to the pertinent inquiry." 509 U.S. at 591-92, 113 S. Ct. at 2796.

"[T]he standard [for fit] is higher than bare relevance." *In re Paoli RR Yard PCB Litigation*, 35 F.3d 717, 745 (3rd Cir. 1994). Proffered expert testimony must be excluded under Rule 702 unless "it speaks clearly and directly to an issue in dispute in the case" and "will not mislead the jury." *In re Breast Implant Litigation*, 11 F. Supp. 2d 1217, 1223 (D. Colo. 1998). In jury trials, the danger of prejudice and misleading the jury from the presentation of expert testimony is significant. "Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595, 113 S. Ct. at 2798.

Under Rule 703, an expert may give expert opinion based on facts or data not admissible in evidence "if of a type reasonably relied upon by experts in the particular field." However, "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion ... unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

Even though a proposed witness might possess credentials to render some expert opinions, the trial court should exclude on grounds of disqualification any testimony that

extends beyond the witness's demonstrated expertise. *See, e.g., Calhoun v. Yamaha Motor Corp. U.S.A.*, 350 F.3rd 316, 322-23 (3d Cir. 2003); *Surace v. Caterpillar, Inc.*, 111 F.3rd 1039, 1055-56 (3d Cir. 1997).

**B.     Dr. Ward's Testimony Regarding The North Carolina Litigation Should Be Excluded Because It Is Not Relevant To The Infringement Issues In This Case**

Section I of the Ward Rebuttal Report purports to respond to the opinion of DEKALB's expert, Dr. Finer, that the steps used by DEKALB to create the GA21 event included all of the recited process steps in claim 1 of the '880 patent. [Exh. 1, ¶¶ 1-2] Dr. Ward states that "in the interest of completing Dr. Finer's narrative describing the creation of the GA21 event, RPA's contribution of the transgene used to create GA21 should be addressed." [Exh. 1, ¶ 2] The fact that RPA contributed the transgene used to create GA21, however, is not relevant to any of Defendants' infringement defenses against the '880 and '863 patents. Dr. Ward, Defendants' expert on the issue of infringement, has not asserted a noninfringement theory based on the source of the EPSPS gene. [Exh. 1, ¶¶ 48-56 and 59]

Just as importantly, the fact that RPA contributed the transgene used to create GA21 is irrelevant to a proper analysis of whether infringement exists in this case. Infringement of a process patent claim is determined by whether all of the steps of the claimed process have been carried out. The source of the transgene used in the infringing process is irrelevant to this inquiry.

Accordingly, the proposed testimony from Section I of the Ward Rebuttal Report discussing the North Carolina litigation should be excluded because it will not "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

10

This testimony should also be excluded because there is a substantial risk that it will result in unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403; *see Daubert*, 509 U.S. at 595, 113 S. Ct. at 2798. If Dr. Ward is permitted to offer this testimony to the jury, there is a danger that the jury will be confused into believing that RPA's provision of the transgene used to make GA21 should result in noninfringement of the process claims of the '880 and '863 patents. It is Defendants' intent in offering this testimony to parade before the jury a "black hat" story that (1) DEKALB failed to include RPA scientists as co-inventor's on DEKALB's '497 patent [Exh. 1, ¶ 1] and (2) DEKALB defrauded RPA [Exh. 8, Ward. Tr. 182:6-185:24]. However, the inventions underlying the '880 and '863 patents were made before the events which transpired between DEKALB and RPA occurred. Accordingly, because the proposed testimony set forth in Section I (¶¶ 1-26) of the Ward Rebuttal Report is highly prejudicial and has no probative value, it should be excluded. Fed. R. Evid. 403.

### C.   Dr. Bruce's Testimony Comparing The Gene Used To Make The GA21 Event To Another RPA Gene Should Be Excluded

Infringement under the doctrine of equivalents is determined by comparing the accused devices with the claims of the patent-in-suit. *See J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001). The issue is whether the infringing device performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention. *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1313 (Fed. Cir. 2003).

Section II.C. of the Bruce Responsive Report purports to rebut the opinion of Monsanto's expert, Dr. Keegstra, that the OTP in Defendants' GA21 corn is equivalent to the CTP of claim 1 of the '835 patent. [Exh. 2, ¶ 29] He concludes that the OTP

11

functions in a substantially different way and achieves a substantially different result. [*Id.*] However, Dr. Bruce does not compare the OTP in GA21 corn to claim 1 of the '835 patent as required by Federal Circuit precedent. Instead, he compares the OTP in Defendants' GA21 corn products to the RPA 294 construct. [Exh. 2, ¶¶ 32-35 and 38-39] Under *J&M* and *Anchor Wall Systems*, such an analysis is irrelevant to infringement under the doctrine of equivalents. Accordingly, the proposed testimony set forth in Section II.C. (¶¶ 29-39) of the Bruce Responsive Report should be excluded because it does not relate to any issue in the case and therefore will not be helpful to the jury. *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795.

The Federal Circuit recognizes that when a jury is presented with evidence comparing the accused device to another device, rather than to the claim limitations, there is a danger that the jury will be led to an improper "comparison of devices, rather than between the accused device and the claim...." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 822 n. 2 (Fed. Cir. 1992). For this additional reason, this testimony should be excluded under Rule 403 because there is a substantial risk that it will confuse the jury as to what evidence is relevant to the infringement inquiry.

### D. Testimony By Defendants' Experts Regarding Court Opinions Should Be Excluded

The Ward Rebuttal Report indicates that he intends to testify about a district court and three appellate court decisions stemming from prior litigation between Monsanto, DEKALB, and RPA in North Carolina. [Exh. 1, ¶¶ 3, 5, 6, 12, 20, and 25] Dr. Bruce also intends to testify about the North Carolina district court's opinion. [Exh. 2, ¶ 36] Dr. Christou intends to testify about the district court's opinion and briefs and findings of fact and conclusions of law submitted by DEKALB in the Connecticut litigation. [Exh.

3, ¶¶ 30, 39, 46, 47, 51-52, and 62] Drs. Ward, Bruce, and Christou are all technical experts. They have no expertise in analyzing court opinions or legal briefs submitted by parties in court proceedings. Under Rule 702, matters outside an expert's expertise should be excluded. *See, e.g., Calhoun v. Yamaha Motor Corp. U.S.A.*, 350 F.3d at 322-23; *Surace v. Caterpillar, Inc.*, 111 F.3d at 1055-56.

This opinion testimony should also be excluded because the North Carolina and Connecticut litigations are completely irrelevant to the issues in this case. The irrelevance of the North Carolina litigation has already been explained in detail. The Connecticut litigation involved PGS's claims that DEKALB infringed a PGS patent (the '236 patent) filed in 1986, the claims of which are directed to transgenic plant cells, plants, and seeds. DEKALB argued, and the court held, that those claims were not enabled for monocots such as corn because as of the '236 patent's filing date, corn could not be transformed. By contrast, asserted claims 1, 5, and 6 of the '835 patent are directed to chimeric plant genes, not plant cells, plants, or seeds. [Exh. 7, '835 patent at col. 32] Because the enablement issue must be decided with reference to the claimed subject matter at issue, *see Plant Genetic Systems, N.V. v. DEKALB Genetics Corp.*, 315 F.3d 1335, 1338 and 1345 n.4 (Fed. Cir. 2003), Dr. Christou's reliance on the nonenablement of claims directed to plant cells, plants, and seeds (on grounds that corn could not be transformed) has no relevance to enablement of the chimeric gene claims involved in the present case.

Finally, these experts should not be able to inject the prior court opinions and briefs themselves into evidence because they are not reasonably relied upon by experts in the field and they are hearsay that does not fall under any exception to the hearsay rule.

Simply put, Defendants should not be permitted to get this inadmissible hearsay in front of the jury in the guise of expert testimony. Fed. R. Evid. 703.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' experts should be excluded from testifying about matters reflected in the following portions of their expert reports:

1.    Section I (¶¶ 1-26) of the Rebuttal Rule 26(a)(2) Expert Report of Eric Ward, Ph.D.;

2.    Section II.C (¶¶ 29-39) of the Rule 26(a)(2) Responsive Expert Report of Barry D. Bruce, Ph.D.; and

3.    Paragraphs 30, 39, 46-47, 51-52, and 62 of the Rule 26(a)(2) Expert Report of Paul Christou, Ph.D.

                                        Respectfully submitted,

OF COUNSEL:                             POTTER ANDERSON & CORROON LLP

Susan K. Knoll
Thomas A. Miller                        By: /s/ David E. Moore
Melinda Patterson                            Richard L. Horwitz (#2246)
Stephen E. Edwards                           David E. Moore (#3983)
Steven G. Spears                             Hercules Plaza, 6th Floor
HOWREY LLP                                   1313 N. Market Street
1111 Louisiana, 25th Floor                   Wilmington, DE  19801
Houston, Texas 77092                         Telephone (302) 984-6000
Telephone (713) 787-1400                     rhorwitz@potteranderson.com
                                             dmoore@potteranderson.com
Dated:  January 11, 2005
Public Version Dated:  January 30, 2006  *Attorneys for Plaintiffs*

717315

14

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on January 30, 2006, the attached document was hand-delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

I hereby certify that on January 30, 2006, I have Federal Expressed the foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022-6069

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
   Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC  20001-4413

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com