**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MONSANTO COMPANY and )
MONSANTO TECHNOLOGY LLC, )
)
Plaintiffs, )
v. )          C. A. No. 04-305 SLR
)                (Lead Case)
SYNGENTA SEEDS, INC. )
SYNGENTA BIOTECHNOLOGY, INC., et al., )
)               **PUBLIC VERSION**
Defendants. )
)
_____ )
)
DEKALB GENETICS CORPORATION, )
)
Plaintiff, )
v. )
)
SYNGENTA SEEDS, INC., )
SYNGENTA BIOTECHNOLOGY, INC., et al. )
)
)
Defendants. )

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT THAT THE '880 AND '863 PATENTS ARE NOT**
**INVALID UNDER 35 U.S.C. §§102 OR 103 IN VIEW OF THE WORK,**
**PUBLICATIONS, OR DISCLOSURES OF KLEIN ET AL.**

OF COUNSEL:

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
(713) 787-1400

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Monsanto Company,*
*Monsanto Technology LLC, and*
*DEKALB Genetics Corporation*

Dated: January 11, 2006
Public Version Dated: January 30, 2006

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................. 1

II.   SUMMARY OF ARGUMENT ................................................................. 1

III.  STATEMENT OF FACTS ...................................................................... 5

      A.    The Inventors' Discovery Of A Method For Producing Fertile
            Transgenic Corn As Reflected In The Patents ................................. 5

      B.    The Prior Art Relied Upon By Syngenta ....................................... 8

            1.    Syngenta's Contentions ...................................................... 8

            2.    The 1986 Grant Application ............................................... 10

            3.    The Work Underlying The 1990 Fromm et al. Article ................... 14

            4.    The Klein et al. 1988 Publications ...................................... 14

            5.    Klein et al.'s Disclosure To Lundquist ................................. 15

IV.   DISCUSSION ................................................................................... 16

      A.    Legal Standard ...................................................................... 16

      B.    The Asserted Claims Of The '880 Patent Are Not Invalid
            Under 35 U.S.C. §102(g) Based Upon Klein et al.'s Work
            Because There Is No Evidence That The 1986 Grant
            Application Is A Conception ..................................................... 17

      C.    The Asserted Claims Of The '880 Patent Are Not Invalid
            Under 35 U.S.C. § 102(g) Based Upon The USDA Work
            Because Syngenta Has Not Proved A Conception Date ...................... 21

      D.    The Asserted Claims Of The '880 Patent Are Not Invalid
            Under 35 U.S.C. §102(b) In View Of Klein et al.'s 1986 Grant
            Application ........................................................................... 22

      E.    The Asserted Claims Of The '880 And '863 Patents Are Not
            Invalid Under 35 U.S.C. §103 In View Of Klein et al.'s 1988
            Articles ............................................................................... 22

F.    The Asserted Claims Of The '880 Patent Are Not Invalid
Under 35 U.S.C. §102(f) Based Upon Any Derivation From
Klein et al. ................................................................................................23

V.    CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Amgen, Inc. v. Chugai Pharmaceutical Co.,*
   927 F.2d 1200 (Fed. Cir. 1991) ........................................................... 19

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)............................... 16

*Brosnahan Builders, Inc. v. Harleysville Mutual Ins. Co.,*
   137 F. Supp. 2d 517 (D. Del. 2001),
   *aff'd* by 2003 WL 146486 (3rd Cir. Jan. 21, 2003) ...................................... 17

*Burroughs Wellcome Co. v. Barr Labs., Inc.,*
   40 F.3d 1223 (Fed. Cir. 1994) ................................................... 4, 18, 21

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)................................ 16

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.,*
   143 F.3d 1303 (Fed. Cir. 1998). ........................................................... 22

*Fiers v. Revel,*
   984 F.2d 1164 (Fed. Cir. 1993). ........................................................... 19

*Gambro Lundia AB v. Baxter Healthcare Corp.,*
   110 F.3d 1573 (Fed. Cir. 1997) ........................................................... 23

*Hitzeman v. Rutter,*
   243 F.3d 1345 (Fed. Cir. 2001) ............................................... 18, 19, 20

*Horowitz v. Fed. Kemper Life Assurance Co.,*
   57 F.3d 300 (3d Cir.1995) ................................................................. 16

*International Rectified Corp. v. IXYS Corp.,*
   361 F.3d 1363 (Fed. Cir. 2004) ......................................................... 4, 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S. Ct. 1348, L.Ed.2d 538 (1986)................................... 16

*Meitzner v. Corte*
   410 F.2d 433 (CCPA 1969) ......................................................... 19, 20

*Pa. Coal Ass'n v. Babbitt,*
   63 F.3d 231 (3rd Cir. 1995) ............................................................... 16

*PPG Industries, Inc. v. Guardian Industries Corp.*,
    75 F.3d 1558 (Fed. Cir. 1996) ..................................................................................... 22

*Taskett v. Dentlinger*,
    344 F.3d 1337 (Fed. Cir. 2003) ................................................................................. 17

## Statutes

35 U.S.C. § 102(b) ................................................................................................ passim

35 U.S.C. § 102(f) ................................................................................................. passim

35 U.S.C. § 102(g) ................................................................................................ passim

35 U.S.C. § 103 ..................................................................................................... passim

## Rules

Fed. R. Civ. P. 56 ...................................................................................................... 16

Fed.R.Civ.P. 56(c) .................................................................................................... 16

Fed.R.Civ.P. 56(e) .................................................................................................... 16

Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") and DEKALB Genetics Corporation ("DEKALB") move for summary judgment that the asserted claims of U.S. Patent Nos. 5,538,880 (the '880 patent) and 6,013,863 (the '863 patent) are not invalid under 35 U.S.C. §§ 102(b), (f) and (g) or 103 based upon the prior work, publications, or disclosures of Klein et al. Because there is no substantial evidence (1) that Klein et al. had a prior conception of the claims, (2) that he published an enabling disclosure of how to practice the claimed invention, or (3) that he communicated an enabling disclosure to the inventors, Plaintiffs bring this motion to narrow the number of issues for trial in this complex case.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Monsanto brought the "lead case," C.A. No. 04-305 SLR, in this action on May 12, 2004 alleging that Defendants Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc.'s ("Syngenta") GA21 corn products infringe Monsanto's U.S. Patent No. 4,940,835. C.A. No. 05-355 SLR, a case transferred from the N.D. of Illinois in which DEKALB asserts that Syngenta's GA21 corn products infringe the '880 and '863 patents, was consolidated with the lead case in an order dated August 23, 2005. Fact and expert discovery for the patent portions of the case are closed, and the patent case is set for trial May 30, 2006.

## II.    SUMMARY OF ARGUMENT

The related '880 and '863 patents that list Ronald Lundquist and David Walters as inventors provide one of the most significant breakthroughs in plant genetic engineering. [Exh. 1 and 2, collectively, "the Lundquist patents"] The patents taught scientists for the first time a method for making fertile transgenic corn plants and progeny corn plants

containing a gene of interest that will produce a desired trait. Lundquist and Walters are recognized as being the first to achieve the important success that made it possible to build into corn plants useful traits such as herbicide resistance or insect resistance and as a result, create a revolutionary change in agriculture. Over 200 companies are licensed under the Lundquist patents.

Claim 1 in both patents commonly recites steps to the method: "bombarding intact regenerable *Zea mays* cells with DNA-coated microprojectiles;" "[identifying or] selecting a population of transformed cells;" and "regenerating a fertile transgenic plant therefrom." Claim 1 further recites that the DNA imparts herbicide resistance ('880 patent) or glyphosate resistance (the '863 patent) to the resulting fertile transgenic corn plants and that the recited trait is transmitted to progeny plants. ['880 patent, col. 22, ll. 48-55; '863 patent, col. 29, l. 26-col. 30, l. 5] The asserted claims of the Lundquist patents are specifically directed to the production of progeny plants. Syngenta's GA21 corn products accused of infringement in this case are progeny corn plants that are resistant to glyphosate, the active ingredient in Monsanto's RoundUp® brand herbicide products. The original GA21 corn plants were produced by DEKALB using the steps recited in claim 1 of the Lundquist patents.

Unable to develop its own commercial glyphosate resistant corn product, Syngenta acquired two corn seed companies (co-defendants Garst and The Golden Harvest Companies) previously licensed by Plaintiffs to sell GA21 corn. Syngenta used the GA21 trait from the licensees' seed and bred that trait into Syngenta commercial corn lines, with no license or authority from Plaintiffs. This activity infringes claims 4-9 of the '880 patent and claims 5-6 of the '863 patent, all of which cover the production of

progeny corn plants. Syngenta seeks to excuse this willful derogation of Plaintiffs' patent rights with a multitude of invalidity defenses, including anticipation, obviousness, prior invention, derivation, non-enablement, and written description.

However, no evidentiary basis exists for Syngenta's assertions that the Lundquist patents are invalid based upon the prior work, publications, or disclosures of a researcher, Ted Klein ("Klein et al"). Syngenta's expert, Dr. Paul Christou, agrees that Lundquist and Walters were the first scientists in the world to produce fertile transgenic corn plants using the method recited in claim 1. And except for one legal issue resolvable at the Markman hearing,[1] Syngenta does not dispute that Lundquist and Walters were the first to use the process of claim 1 of the '880 patent to achieve *herbicide resistant* fertile transgenic corn plants in December 1989 (an actual reduction to practice) or that the inventors constructively reduced to practice on January 22, 1990 when the patent application was filed. Instead, Syngenta argues that Klein et al. had an earlier conception of these claims when they filed a 1986 USDA grant application setting forth a mere research plan and hope to transform corn by bombardment. Syngenta further contends that the grant application is a publication, that Klein et al. published articles in 1988, and that Klein et al. described to Dr. Lundquist how the gene gun worked, all giving rise to defenses under § 102(b)(anticipation), § 102(f)(derivation), § 102(g)(prior invention), and § 103(obviousness).

---

[1] The '880 patent contains an example of a plant resistant to hygromycin, which is an antibiotic that is herbicidally active against plant cells and plants. Syngenta has proposed a construction of "herbicide" which would only include commercial herbicides and exclude other substances commonly toxic to plants, such as antibiotics.

3

Conception, however, requires "a particular solution to the problem at hand, not just a general goal or research plan; [one] hopes to pursue." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). Here, no genuine issue of material fact exists that Klein et al.'s 1986 grant application fails to meet the legal standard for a conception because, as Syngenta's expert admitted, it only sets forth a research plan that they hoped to pursue to make fertile transgenic corn, and not a definite and permanent idea of how to do so. The evidence is undisputed that (1) the grant application was nothing more than a research plan, (2) the parameters set forth in the grant application for making fertile transgenic corn have never been used to produce fertile transgenic corn, and (3) Klein et al. undertook extensive efforts after 1986 to make fertile transgenic corn with no success before the January 22, 1990 filing date of the '880 and '863 patents.

Klein et al.'s 1988 publications also are not invalidating prior art because they too (1) only expressed a hope of achieving fertile transgenic corn with no working protocol for doing so and (2) did not set forth all elements of the claims, specifically, they did not include a workable selection protocol. A derivation defense under 35 U.S.C. § 102(f) requires a showing of a prior conception of the invention by Klein et al. *International Rectified Corp. v. IXYS Corp.*, 361 F.3d 1363, 1376 (Fed. Cir. 2004). Because Klein et al. had no prior conception, there logically can be no derivation of that non-existent Klein conception by the Lundquist inventors. Furthermore, Syngenta's expert admits that in the meeting Drs. Sanford and Klein had with Dr. Lundquist, there was no disclosure to Dr. Lundquist of three of the elements recited in claim 1 of the '880 and '863 patents—the target tissue for bombardment, a selection protocol, or a regeneration protocol.

Finally, Syngenta's obviousness defense based on the grant application, the Klein et al. work, and the Klein et al. 1988 articles fails because, as noted above, this asserted prior art does not disclose all elements of the '880 and '863 patent claims, and Syngenta does not combine them with any other prior art that provides those missing claim elements.

## III.    STATEMENT OF FACTS

### A.    The Inventors' Discovery Of A Method For Producing Fertile Transgenic Corn As Reflected In The Patents

The '880 and '863 patents are directed to solving the problem of creating fertile transgenic corn (that is, corn that both contains a foreign DNA stably integrated into its genome and is capable of passing that gene on to progeny plants).  The patents describe and claim a method of bombarding "regenerable" corn cells (i.e., capable of becoming whole corn plants) with DNA-coated microprojectiles, selecting transformed cells, and regenerating those cells to produce fertile transgenic corn plants having a trait of interest. The '880 patent claims corn with herbicide resistance, while the '863 patent claims corn with resistance to a specific herbicide, glyphosate.

In the mid to late 1980's, the achievement of fertile transgenic corn was a major goal of the plant molecular biology research community.  Achievement of this goal was a high priority for a large number of research organizations throughout the world.  [Exh. 3, Christou Tr. 47:3-48:7]  Dr. Paul Christou, a professor at the University of Lleida in Spain, is Syngenta's expert for this case on plant transformation technology. He admits that the first scientists in the world to achieve fertile transgenic corn were Lundquist and Walters at Plant Science Research Inc. ("PSRI"), a small research company in Minnesota subsequently acquired by DEKALB.  [Ex. 3, Christou Tr. 52:7-14]    Shortly following

this success, Lundquist and Walters filed a patent application on January 22, 1990 which led to the '880 and '863 patents. [Exh. 1 and 2, face page]

The specification[2] explains the problems faced by scientists in arriving at fertile transgenic corn prior to its filing:

> A variety of methods have been developed and are currently available for the transformation of various plants and plant cells with DNA. Generally these plants have been dicotyledonous, and some success has been reported with certain of the monocotyledonous cereals. However, some species have heretofore proven untransformable by any method. Thus, previous to this discovery, no technology had been developed which would permit the production of stably transformed *Zea mays* plants in which the transforming DNA is heritable thereof. This failure in the art is well documented in the literature and has been discussed in a number of recent reviews (Potrykus, 1989; Weising et al., 1988; Cocking et al., 1987).

[Exh. 1, '880 patent, col. 1, ll. 31-44]

Lundquist and Walters first succeeded in producing fertile transgenic corn in December 1989 by discovering a workable combination of target tissue, bombardment conditions, selection conditions, and regeneration procedures. While Klein et al. had published use of bombardment to produce transient expression[3] in corn cells, the '880 and '863 patents specifically explain how those published bombardment protocols were modified to successfully produce fertile transgenic corn. [Id., col. 8, l. 60-col. 9, l. 7]

Another variable involved the type of cell to be bombarded.

> No protocols have been published describing the introduction of DNA by a bombardment technique into cultures of regenerable maize cells of any type. No stable expression of a gene has been

---

[2] Plaintiffs will refer only to the '880 patent specification because the '880 and '863 patent specifications are essentially identical.

[3] Transient expression can occur when a foreign gene is inserted in a cell, even though it is not integrated into the cell's genome.

reported by means of bombardment of corn callus followed by regeneration of fertile plants and no regenerable fertile corn has resulted from DNA-coated microprojectile bombardment of the suspension cultures. Thus, the art has failed to produce fertile transformed corn plants heretofore.

[Id., col. 2, ll. 37-44]  The specification describes in detail the types of regenerable corn cells used by the inventors in achieving their results.  [Id., col. 5, l. 15-col. 6, l. 19]

Another "stumbling block to the successful production of fertile transgenic corn plants [was] in selecting those few transformants in such a manner that neither the regeneration capacity nor the fertility of the regenerated transformant are destroyed." [Id., col. 2, ll. 45-49]  The selection process is generally described at columns 9-10 of the '880 patent, and is specifically exemplified in Example I.  That example describes incorporating in the foreign DNA the hygromycin B phosphotransferase (HPT) gene that confers resistance to hygromycin and subsequently using specific concentrations of hygromycin to kill the untransformed plant cells.  [Id., col. 13, ll. 33-40; col. 15, l. 1-col. 16, l. 8]

Finally, the specification sets forth how the transformed cells were regenerated into whole plants.  [Id., col. 10, ll. 54-67; col. 17, ll. 20-52]  The proper determination of each of these variables was required to arrive at fertile transgenic corn, and Dr. Christou agrees that the '880 and '863 patents set forth a workable method "that resulted in fertile transgenic corn."  [Exh. 3, Christou Tr. 51:17-52:5]  Thus, the Lundquist patents set forth all of the methodologies required to create fertile transgenic corn plants and progeny plants.

The asserted claims of the '880 and '863 patents require each of these elements. The asserted claims for the '880 patent are claims 4-9, all directed to producing progeny plants.  Exemplary claim 4 recites:

> A process comprising obtaining progeny from a fertile transgenic plant obtained by the process of claim 1 which comprise said DNA.

[Exh. 1, '880 patent, col. 22, l. 61-63]  Claims 4-9 all reference claim 1, which recites a method for producing the original (R0) transgenic plant:

> A process for producing a fertile transgenic *Zea mays* plant comprising the steps of (i) bombarding intact regenerable *Zea mays* cells with DNA-coated microprojectiles, (ii) identifying or selecting a population of transformed cells, and (iii) regenerating a fertile transgenic plant therefrom, wherein said DNA is transmitted through a complete sexual cycle of said transgenic plant to its progeny, and imparts herbicide resistance thereto.

With respect to the '863 patent, asserted claims 5 and 6 (directed to producing progeny plants) and claim 1 (reciting a method for producing the R0 plant) from which they depend recite:

> 1.  A process for producing a fertile transgenic *Zea mays* plant comprising the steps of (i) bombarding intact regenerable *Zea mays* cells with DNA-coated microprojectiles, wherein said DNA comprises at least a selectable marker gene; (ii) selecting a population of transformed cells expressing the selectable marker gene; and (iii) regenerating a fertile transgenic plant therefrom, wherein said DNA is expressed so as to impart glyphosate resistance to said transgenic plant and is transmitted through a normal sexual cycle of said transgenic plant to progeny plants.
>
> 5.  The process of claim 1 further comprising obtaining transgenic glyphosate resistant progeny plants of subsequent generations from said fertile transgenic plant.
>
> 6.  The process of claim 5 further comprising obtaining seed from one of said progeny plants.

[Exh. 2, '863 patent, col. 29, l. 16-col. 30, l. 17]

## B.    The Prior Art Relied Upon By Syngenta

### 1.    Syngenta's Contentions

Syngenta's prior art invalidity defenses on which Plaintiffs move for summary judgment are set forth in Syngenta's responses to DEKALB's interrogatory Nos. 6 and

10. [Exh. 4] With respect to the '880 patent, these prior art invalidity defenses include the following:

(1)    Anticipation based on the prior invention of Klein, et al. under § 102(g). Syngenta relies upon a February 27, 1986 grant application by Klein, et al. as evidence of conception, and a 1990 article by Fromm et al. as evidence of reduction to practice. [*Id.* at 5-9]

(2)    Derivation of the claimed invention from Klein et al. under § 102(f) based on a disclosure of the gene gun to Dr. Lundquist during a visit he made to the laboratory of Drs. Sanford and Klein at Cornell. [*Id.* at 10-11]

(3)    The February 27, 1986 grant application as an anticipatory publication under § 102(b). [*Id.* at 11-12]

(4)    Anticipation based on the work underlying the 1990 Fromm et al. article under § 102(g). [*Id.* at 10]

(5)    Obviousness under § 103 based upon two 1988 Klein et al. articles. [*Id.* at 14-15]. Syngenta cites no prior art besides Klein et al. to provide any missing claim elements for its obviousness defense on the '880 patent claim.

Syngenta contends that the asserted claims of the '863 patent are obvious under § 103 based upon either the Klein et al. work discussed in (1) above, the grant application discussed in (3) above, or the two Klein et al. 1988 articles, taken in combination with a "hypothetical glyphosate reference" to provide the glyphosate feature recited in the '863 patent claims, which Syngenta apparently concedes is missing from the above references. [*Id* at 18-19]. However, for purposes of this motion, if the Klein et al. references are not invalidating prior art to the asserted claims because they fail to disclose all of the claimed steps for achieving fertile transgenic corn, then the existence of prior art merely providing the glyphosate feature does not cure that inadequacy.[4]

---

[4] Dr. Christou has offered opinions that the claims of the patents-in-suit are invalid for anticipation. He has no opinion that the asserted claims are invalid based upon obviousness. [Exh. 5, Christou Report at ¶¶ 83-122]

## 2.    The 1986 Grant Application

In the mid-1980s, Ted Klein was a researcher at Cornell University with two other scientists, John Sanford and Ray Wu. On February 27, 1986, Drs. Klein, Sanford and Wu submitted a grant application to the USDA seeking funding for a research project to experiment with bombarding plant cells, including corn cells, using a device called the gene gun. [Exh. 6, Grant Appl.] Syngenta contends that this grant application reflects a prior conception by Klein et al. of the asserted claims under §102(g) and that it constitutes an invalidating publication under §102(b).[5]

However, the text of the 1986 grant application shows that it is nothing more than a research plan with a hope of producing fertile transgenic corn by bombardment using a gene gun. In a section titled "Experimental Plan for this Proposal," Klein et al. conceded "we realize that a great deal of developmental research is still required." [Exh. 6, Grant Appl. at 6] They write:

> After the basic aspects of particle gun-mediated transformation have been studied with onion and tobacco, we will apply the concept of gene delivery with the particle gun to two important grain crops (corn and rice). Our techniques will be optimized for bombardment of tissues and cells chosen for their potential for regeneration to whole plants. Eventually, further refinements will be made with the hope of developing a system applicable for the transformation of other grain species. When this technology is fully mature, it is our hope that it will be the system of choice for transforming most plant species.

[Id.]

Syngenta's expert concurs that the grant application does not set forth a protocol (i.e., a recipe) for achieving fertile transgenic corn. [Exh. 3, Christou Tr. 121:10-19,

---

[5] For purposes of this motion, Plaintiffs are not challenging Syngenta's assertion that the grant application was published.

122:22-123:4]  He admits that is it merely a "research plan" proposed with the hope of developing a method to produce fertile transgenic corn.  [Id. at 76-77, 107-09]  For example, he testified:

> Q:    By a road map, do you mean an experimental plan?
>
> A:    I would say an outline of an experimental plan which would include the parameters that could be varied to achieve the end objective.  And of course, these parameters may need to be varied.

[Id. at 77:10-15]

> Q:    Okay.  Then beginning on page 6 of the application, the middle of the page there's a heading that says "experimental plan for this proposal."  Do you see that?
>
> A:    Yes, I do.
>
> Q:    Okay.  And so this section, then, sets out a research plan for conducting various experiments; is that right?
>
> A:    I agree with that, it does.
>
>        …
>
> Q:    And then on page 10 and running through page 12, they discuss their research plan for transformation of corn using the gun; right?
>
> A:    That is correct.

[Id. at 107:18-108:18]

The evidence is undisputed that Dr. Klein's research plan in the 1986 grant application was no plan at all.  Later events demonstrate just how flawed that research plan was with respect to its failure to address the many process variables facing scientists pursuing the goal of fertile transgenic corn and progeny plants.  For example, the only selectable marker gene mentioned in the research plan was the neo gene using

kanamycin[6] as a selective agent. [Exh. 3, Christou Tr. 114:22-115:2; Exh. 6, Grant Appl. at 10-11]  However, Dr. Christou admits that he is not aware of the neo gene ever being used successfully as a selectable marker with kanamycin as a selection agent to produce fertile transgenic corn.  [Exh. 3, Christou Tr. 115:15-21]  Dr. Christou concedes "the grant application does not include the identification of a selectable marker and a selection agent that could be used to produce fertile transgenic corn." [Id. at 123:5-10]  Indeed, Dr. Christou admits that no selection agent was known in February 1986 when the grant application was filed that would work for producing fertile transgenic corn.  [Id. at 117:21-118:5]

As for target tissue, the only specific genotypes referenced in the grant application are H99 and PA91.  [Id. at 111:7-10; Exh. 6, Grant Appl. at 10]  Dr. Christou is unaware of any instance where either of these genotypes has ever been used to produce fertile transgenic corn.  [Exh. 3, Christou Tr. 111]  Moreover, the grant application lists a number of different types of target tissue (immature embryos, callus, and suspension cultures) with which to experiment but gives no guidance or reason to expect that any one of these could be successfully used to produce fertile transgenic corn.  [Exh. 6, Grant Appl. at 10]  The 1986 grant application further proposes that when the various experimental target tissues were bombarded, they were to be covered with water or alginate. [Exh. 3, Christou Tr. 127:1-5; Exh. 6, Grant Appl. at 10-11]  Dr. Christou, however, is unaware of anyone ever successfully obtaining fertile transgenic corn when

---

[6] Kanamycin is often referred to as an antibiotic, but like hygromycin, it has herbicidal activity against plant cells and plants.  Syngenta's assertion that the grant application is a §102 reference against the herbicide resistance claims of the '880 patent is inconsistent with Syngenta's proposed claim construction that "herbicide resistance" does not include resistance to so-called antibiotics such as kanamycin and hygromycin.

the target tissue is covered in this manner. [Exh. 3, Christou Tr. 128:12-129:3] Thus, the 1986 grant application does not set forth workable methods for performing all of the elements of the claims--i.e., what regenerable tissue will work, workable bombardment conditions, or a workable selection protocol.

The inadequacy of the grant application is further evidenced by the undisputed fact that Drs. Klein, Sanford, and Wu never achieved fertile transgenic corn at Cornell. Dr. Klein transferred to the USDA lab headed by Dr. Fromm in late 1987 to continue his work. Dr. Fromm's lab, using tissue cultures provided by Dr. Armstrong of Monsanto in early 1989 [Exh. 7, Fromm Tr. 136:3-13], finally achieved fertile transgenic corn in March 1990 [*Id.* 106:17-25], after Lundquist and Walters had already obtained fertile transgenic corn and filed their patent application. Dr. Fromm's work was published later in 1990. [Exh. 8]

Syngenta's reliance on Dr. Fromm's later work as a reduction to practice of what was described in the grant application is improper because when Dr. Fromm demonstrated fertile transgenic corn in March 1990, he did so using materially different procedures and materials from those set out in the 1986 grant application. Dr. Christou concedes that Fromm used (1) a corn genotype that was not described in the grant application, (2) different target tissue than that described in the grant application (Type II as opposed to Type I callus), (3) different bombardment conditions (not covering the target tissue with a liquid layer), and (4) a different selectable marker (the ALS and bar genes instead of the neo gene), selective agent (chlorsulfuron and bialaphos instead of kanamycin), and selection conditions. [Exh. 3, Christou Tr. 145:22-149:25]

### 3.    The Work Underlying The 1990 Fromm et al. Article

The Fromm et al. article was published in September 1990.  [Exh. 8] ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮  [Exh. 7, Fromm Tr. 106:17-25]  Syngenta has not even

alleged a date of conception by the USDA group and diligence to Fromm's later March

1990 reduction to practice.  Accordingly, there is no substantial evidence that the USDA

work is a prior invention under § 102(g).

### 4.    The Klein et al. 1988 Publications

Syngenta also relies upon two 1988 publications by Klein et al. as prior art

allegedly rendering the asserted claims of the '880 and '863 patents obvious under 35

U.S.C. §103.  However, these two publications suffer from the same deficiencies as the

1986 grant application, i.e., they do not disclose all elements of the asserted claims, and

Syngenta does not combine them with any other references that fill in these deficiencies.

It is undisputed that Klein's 1988 Bio/technology article (Klein et al. 1988a) only

described transient expression (not stable integration) of a GUS gene in regenerable

embryogenic corn cells and non-regenerable BMS cells.  The GUS gene is a screenable

marker,[7] not a selectable marker, and has never been successfully used to produce fertile

transgenic corn.  [Exh. 9, Fromm Decl. ¶ 13; Exh. 10, Klein 1988a; Exh. 4, Syngenta Int.

Responses at 7; Exh. 5, Christou Report ¶ 88]  Instead, Klein 1988a still expresses only

the hope that "[c]oupled with continuous improvements in the efficiency of the particle

bombardment process, this gives us reason to believe that stable transformation leading to

---

[7] Screenable markers are often used in transient expression assays.  They provide a visual detection of transient expression, usually by color.

the recovery of whole plants *is possible*." [Exh. 10 at 562, emphasis added; Exh. 9, Fromm Decl. ¶ 13]

Klein et al.'s 1988 PNAS article (Klein 1988b) reports similar procedures and results, except that the CAT gene was used as a screenable marker instead of the GUS gene. [Exh. 9, Fromm Decl. ¶ 14; Exh. 11, Klein 1988b; Exh. 4, Syngenta Int. Responses at 7-8; Exh. 5, Christou Report ¶ 89] Like the GUS gene, the CAT gene has also never been successfully used to produce fertile transgenic corn. [Exh. 9, Fromm Decl. ¶ 14]

Both articles only report transient expression of a foreign gene, not the stable integration of foreign gene that is necessary to produce fertile transgenic corn plants where the foreign gene is passed to progeny as recited in claim 1 of the '880 patent. [Exh. 9, Fromm Decl. ¶ 15] Accordingly, the Klein et al. 1988a and 1988b articles do not teach all elements of the asserted claims, and in particular they do not teach a target tissue and selection protocol that will result in fertile transgenic corn. [*Id.* at ¶ 16] Syngenta has cited no other prior art that can be combined with Klein 1988a and 1988b to arrive at all of the recited claim elements.

### 5. Klein et al.'s Disclosure To Lundquist

Finally, Syngenta contends that the '880 patent is invalid under 35 U.S.C. § 102(f) because the Lundquist inventors ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

[Exh. 3, Christou Tr. 163:8-164:25] ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ [Id. at

165:11-166:12] ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

[Exh. 1, '880 patent, col. 8, l. 60-col. 9, l. 7; Exh. 3, Christou Tr. 166:13-167:21]

## IV.    DISCUSSION

### A.    Legal Standard

Plaintiffs bring this motion for summary judgment pursuant to Fed. R. Civ. P. 56.

This Court has stated the standard for summary judgment as follows:

> A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3rd Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S. Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3rd Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

*Brosnahan Builders, Inc. v. Harleysville Mutual Ins. Co.*, 137 F. Supp. 2d 517, 524-25 (D. Del. 2001), *aff'd* 2003 WL 146486 (3rd Cir. Jan. 21, 2003).

Summary judgment is particularly appropriate in this case because priority of invention, and its underlying issues of conception and reduction to practice, are "questions of law predicated on subsidiary factual findings." *Taskett v. Dentlinger*, 344 F.3d 1337, 1339 (Fed. Cir. 2003). Because no material underlying fact is disputed as it relates to Klein et al.'s alleged earlier conception, the Court can properly address this issue as a question of law.

> **B.    The Asserted Claims Of The '880 Patent Are Not Invalid Under 35 U.S.C. §102(g) Based Upon Klein et al.'s Work Because There Is No Evidence That The 1986 Grant Application Is A Conception**

35 U.S.C. §102(g) (2) provides that a person shall be entitled to a patent unless "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." The first person who reduces an invention to practice is the first and true inventor unless the other party can show it was the first to conceive the invention and exercised reasonable diligence in reducing it to practice. *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1332 (Fed. Cir. 2001); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir 1996). Here, Syngenta asserts the 1986 grant application as evidence of Klein et al.'s earlier conception and the work of Fromm et al. at the USDA as a reduction to practice in March 1990.

For purposes of this motion, Plaintiffs are not attacking the Klein et al. prior invention on grounds that there was no diligence; or that the cast of characters changed between the grant application (Sanford, Klein, and Wu) and the alleged reduction to

17

practice at the USDA (Fromm, Armstrong, Klein, Morrish, Williams, and Thomas); or

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████. [Exh. 7, Fromm Tr. 136:14-137:5]  Instead, Plaintiffs' summary

judgment argument focuses on the undisputed fact that the 1986 grant application is a

pure research plan and does not meet the requirements of a conception as established by

the Federal Circuit.  No evidence exists that the 1986 grant application was anything

more than that--a hope for developing a method to produce fertile transgenic corn.

Conception is "the formation in the mind of the inventor, of a definite and

permanent idea of the complete and operative invention, as it is hereafter to be applied in

practice." *Burroughs Wellcome*, 40 F.3d at 1228.  "Conception is complete only when

the idea is so clearly defined in the inventor's mind that only ordinary skill would be

necessary to reduce the invention to practice, without extensive research or

experimentation."  *Id.*  "An idea is definite and permanent when the inventor has a

***specific, settled idea, a particular solution to the problem at hand, not just a general***

***goal or research plan he hopes to pursue.***"  *Hitzeman v. Rutter*, 243 F.3d 1345, 1356

(Fed. Cir. 2001)(quoting *Burroughs Wellcome*, 40 F.3d at 1228)(emphasis in original).

In *Hitzeman* the Federal Circuit addressed the claim of a junior party in an

interference to a 1981 conception of a method for transforming yeast cells to produce a

hepititis B antigen to be used in vaccines.  243 F.3d at 1348-49.  In 1981, however, the

junior party had only disclosed a plan to try to express the antigen in yeast cells, without

details for how this goal might ultimately be achieved.  *Id.* at 1349.  The Federal Circuit

rejected this evidence of a research plan as proof of a prior conception:

> [T]he critical deficiency is that Hitzeman specifically claimed the result of a biological process (i.e., the expression by yeast of the S-protein, followed by the assembly of the S-protein into particles) with no more than a hope, or wish, that yeast would perform this assembly process that had never been achieved in yeast. Such a bare hope is insufficient to establish a conception.... ***When a research plan requires extensive research before the inventor can have a reasonable expectation that the limitations of the count will actually be met, complete conception has not occurred.***

*Id.* at 1356-57 (emphasis added).

Other Federal Circuit decisions have reached the same conclusion. In *Fiers v. Revel*, the Federal Circuit held that a research plan to isolate a particular gene encoding an interferon protein could not be a conception of the claimed gene because "such a disclosure just represents a wish, or arguably a plan, for obtaining the DNA." 984 F.2d 1164, 1171 (Fed. Cir. 1993). In *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200, 1207 (Fed. Cir. 1991), the Federal Circuit held:

> Conception of a generalized approach for screeening a DNA library that might be used to identify and clone the EPO gene of then unknown constitution is not conception of a "purified and isolated DNA sequence" encoding human EPO. It is not "a definite and permanent idea of the complete and operative invention." Fritch's conception of a process had to be sufficiently specific that one skilled in the relevant art would succeed in cloning the EPO gene.

In Meitzner v. Corte, 410 F.2d 433, 437 (CCPA 1969), the CCPA similarly held that "a mere hope" for a solution cannot be considered "an inventive conception."

> Conception of an inventive process involves proof of mental possession of the steps of an operative process and, if necessary, of means to carry it out to such a degree that nothing remains but routine skill for effectuation thereof. If after the claimed conception date extensive research was found necessary before achieving minimum satisfactory performance obviously the mental embodiment of that date was a mere hope or expectation, a statement of a problem, but not an inventive conception.

19

Here, no evidence exists that the 1986 grant application provides anything more than a research plan. Syngenta's expert agrees that the document merely sets forth a research plan, not a protocol that has ever been successfully used to produce fertile transgenic corn. [Exh. 3, Christou Tr. 121:10-19, 122:22-123:4] Indeed, Dr. Christou testified that this research plan contemplated that numerous process parameters would be varied through trial and error experimentation in an effort to achieve fertile transgenic corn. [Id. at 77:12-15, 127:13-128:11]

Accordingly, the 1986 grant application does not evidence a "specific, settled idea, a particular solution to the problem at hand" that is required for conception. *Hitzeman* 243 F.3d at 1356. It does not set forth a protocol for arriving at fertile transgenic progeny corn plants, but rather simply sets forth a number of variables to be experimented in the hope of arriving at this result. Just as in *Hitzeman* and *Meitzner*, Klein et al.'s "research plan require[d] extensive research before the inventor c[ould] have a reasonable expectation" of achieving fertile transgenic corn. Indeed, it is undisputed that a number of process parameters described in the research plan set forth in the 1986 grant application (including genotypes used, selectable marker gene/selection agent used, and covering the target tissue with liquid) have never been used to produce fertile transgenic corn.[8] While the USDA ultimately achieved fertile transgenic corn in March 1990, four years after the grant application, a completely different protocol was

_____

[8] The fact that the grant application does not describe a method that can be used to produce fertile transgenic corn is consistent with the portions of Dr. Christou's report where he addresses invalidity of the '835 patent-in-suit and states that there was no known method for producing fertile transgenic monocot plants (such as corn, wheat, and rice) as of July 1986, five months after the grant application. [Exh. 5, Christou Report ¶¶ 29-52]

used, including different corn genotypes, target tissues, bombardment conditions, and selection materials and conditions.[9]

Accordingly, no evidence exists that the 1986 grant application shows possession by Klein et al. of "a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Burroughs Wellcome*, 40 F.3d at 1228. The claims of the '880 patent require (1) bombardment conditions (including appropriate target tissue), (2) selection conditions, and (3) regeneration conditions that will result in the production of fertile transgenic corn plants that can pass the trait of interest to progeny plants. [Exh. 1, '880 patent, col. 22, ll. 48-55] The 1986 grant application does not show that Klein et al. had possession of all of these elements as they were "[t]hereafter to be applied in practice." With no evidence of conception in the grant application and a reduction to practice after the '880 patent filing date, there is no substantial evidence that Klein et al. are prior inventors under 35 U.S.C. §102(g).

### C.    The Asserted Claims Of The '880 Patent Are Not Invalid Under 35 U.S.C. § 102(g) Based Upon The USDA Work Because Syngenta Has Not Proved A Conception Date

The reduction for practice date (i.e., the date that progeny plants were obtained having the gene of interest) for Dr. Fromm's group at the USDA was March 1990, after the '880 patent filing date. [Exh. 7, Fromm Tr. 106:17-25] To prove that the USDA work is a prior invention, Syngenta must prove an earlier conception date plus diligence

---

[9] Klein et al.'s 1988a and 1988b publications further prove the insufficiency of Klein's conception. These publications evidence the extensive experimentation with different selectable markers, genotypes, target tissues, and bombardment conditions that were undertaken by Klein et al. in hopes of arriving at a protocol that could achieve fertile transgenic corn. [Exh. 10 and 11; Exh. 9, Fromm Decl. ¶ 13]

to a reduction to practice. Syngenta has not alleged a conception date or diligence in its contention interrogatory [Exh. 4 at 10], nor has Dr. Christou asserted conception and diligence in his expert report. [Exh. 5, Christou Report ¶ 95] Accordingly, summary judgment should be entered on this prior art defense.

### D. The Asserted Claims Of The '880 Patent Are Not Invalid Under 35 U.S.C. §102(b) In View Of Klein et al.'s 1986 Grant Application

The Klein et al. 1986 grant proposal also cannot be considered invalidating §102(b) prior art for the same reasons that it cannot evidence a prior conception. "To anticipate a claim, a reference must disclose every element of the challenged claim and enable one skilled in the art to make the anticipating subject matter." *PPG Industries, Inc. v. Guardian Industries Corp.*, 75 F.3d 1558, 1566 (Fed. Cir. 1996). Here, there is no evidence that the 1986 grant application satisfies either requirement. As detailed above, it does not teach each element of the asserted '880 patent claims because it does not teach bombardment conditions, target tissues, or selection conditions that can be used to produce fertile transgenic corn. Moreover, the disclosure does not enable one to produce fertile transgenic corn without undue experimentation, because this result could not be accomplished without extensive additional research resulting in entirely different protocols for each of these claim elements.

### E. The Asserted Claims Of The '880 And '863 Patents Are Not Invalid Under 35 U.S.C. §103 In View Of Klein et al.'s 1988 Articles

Summary judgment should be entered against an obviousness defense where there is no substantial evidence that all of the claim elements are disclosed and enabled by the combination of prior art references. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 143 F.3d 1303, 1312-13 (Fed. Cir. 1998).

Here, Syngenta only asserts that the asserted claims of the '880 patent are obviousness in view of the Klein 1988a and 1988b publications. Klein 1988a and 1988b, however, merely perpetuate Klein et al.'s hope to arrive at a method for achieving fertile transgenic corn. They do not teach workable methods for each element of the asserted claims. [*See* Section III.B.3., *supra*] Again, Syngenta has not pointed to any prior art with which the Klein et al. 1988a and 1988b articles can be combined to arrive at these teachings.

Likewise, as demonstrated above, the Klein et al. work, the alleged grant application publication, and the Klein et al. 1988a and 1988b articles are missing elements of the asserted claims of the '863 patent. And, Syngenta does not cite any prior art that can be combined with those deficient references which provides the missing target tissue, bombardment condition, and selection protocol features of the claims.

### F.    The Asserted Claims Of The '880 Patent Are Not Invalid Under 35 U.S.C. §102(f) Based Upon Any Derivation From Klein et al.

The same problems underlie Syngenta's allegation that Lundquist and Walters derived their invention from information provided to Dr. Lundquist during a late 1986 visit to Klein and Sanford's lab at Cornell. "Derivation requires a showing of both (1) prior conception of the invention by another and (2) communication of that conception to the patentee that is 'sufficient to enable [him] to construct and successfully operate the invention.'" *International Rectifier*, 361 F.3d at 1376 (quoting *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1577 (Fed. Cir. 1997)). Here, as detailed above, Klein et al. did not have a complete conception of the asserted claims and so they could not have communicated that non-existent conception to Lundquist and Walters.



[Exh. 3, Christou Tr. 166:13-167:21; Exh. 1, col. 8, l. 60-col. 9, l. 7]

## V.   CONCLUSION

Klein et al. did not possess any working method to produce fertile transgenic corn and progeny plants before Lundquist and Walters. Thus, each of the defenses through which Syngenta seeks to assert Klein et al.'s work and/or publications as invalidating the Lundquist patents fail as a matter of law. For the forgoing reasons, Defendants respectfully request that this Court enter judgment that the the asserted claims of the '880 and '863 patents are not invalid as a matter of law under 35 U.S.C. §§102(b), (g) and/or (f), or §103 based upon the work and/or publications by Klein et al.

Respectfully submitted,

OF COUNSEL:                                POTTER ANDERSON & CORROON LLP

Susan K. Knoll
Thomas A. Miller                           By: */s/ David E. Moore*_____
Melinda Patterson                               Richard L. Horwitz (#2246)
Stephen E. Edwards                              David E. Moore (#3983)
Steven G. Spears                                Hercules Plaza, 6th Floor
HOWREY LLP                                      1313 N. Market Street
1111 Louisiana, 25th Floor                      Wilmington, DE  19801
Houston, Texas 77092                            Telephone (302) 984-6000
Telephone (713) 787-1400                        rhorwitz@potteranderson.com
                                                dmoore@potteranderson.com

Dated:  January 11, 2005
Public Version Dated:  January 30, 2006    *Attorneys for Plaintiffs*
717326

24

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 30, 2006, the attached document

was hand-delivered to the following persons and was electronically filed with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801


I hereby certify that on January 30, 2006, I have Federal Expressed the

foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
    Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413


*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com