# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MONSANTO COMPANY, *et al*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 04-305-SLR |
| | ) | (Consolidated) |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| SYNGENTA SEEDS, INC., *et al*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MONSANTO'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS

OF COUNSEL:

Peter E. Moll
Scott Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone (202) 783-0800

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
Telephone (202) 942-5000

Dated: January 25, 2006
Public Version Dated: February 1, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Attorneys for Monsanto Company and
Monsanto Technology LLC

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... iii

SUMMARY OF THE ARGUMENT ........................................................................1

RELEVANT FACTUAL BACKGROUND ...............................................................3

    A.    The Notes Describe Syngenta AG and Participations AG's
           Role In Developing and Implementing a Business Strategy
           To Misappropriate Monsanto's GA21 in the United States...........................3

    B.    Syngenta AG, Participations AG and Mr. Resler Have
           Grossly Understated or Intentionally Misrepresented the
           Role of These Foreign Parents in Misappropriating
           Monsanto's GA21 ........................................................................................5

           1.    Swiss-Based Management "Calls the Shots"
                 Against Monsanto As Shown By the Role of
                 Syngenta AG's Executive Committee and Corn
                 Business Team in Executing the Strategy To
                 Misappropriate Monsanto's GA21 ....................................................6

           2.    Syngenta AG's Acquired Garst and Golden Harvest
                 with the Intent To Wrongfully Secure Access To
                 Monsanto's GA21 .............................................................................6

           3.    Documents Supplied by Syngenta As Attachments
                 To Resler's Supplemental Declaration Controvert
                 the Prior Sworn Statements in His Initial
                 Declaration .......................................................................................7

ARGUMENT ...........................................................................................................9

I.    THE NOTES ARE NOT PROTECTED BY THE ATTORNEY-
      CLIENT PRIVILEGE .....................................................................................9

    A.    The Notes Describe Syngenta AG's Business Strategy for
           Misappropriating Monsanto's GA21 .........................................................10

    B.    Ms. Flattery's and Mr. Resler's Attendance at the Meeting
           Does Not Render the Communications Privileged ....................................11

    C.    Incidental References to Legal Matters Cannot Shield the
           Notes from Production under the Attorney-Client Privilege ...................12

II.   SYNGENTA HAS WAIVED THE ATTORNEY-CLIENT
      PRIVILEGE BY SUBMITTING MR. RESLER'S
      DECLARATIONS ................................................................................13

III.  THE CRIME-FRAUD EXCEPTION PRECLUDES THE
      APPLICATION OF THE ATTORNEY-CLIENT PRIVILEGE.........................14

      A.   Syngenta AG, Participations AG and Mr. Resler Have
           Attempted To Mislead the Court About the Foreign
           Parent's Role in Misappropriating Monsanto's GA21 ...............................15

      B.   Syngenta Knew at the Time It Filed Its Sham Patent Claim
           That It Had No Basis to Do So ...................................................................16

IV.   IT WOULD BE MANIFESTLY UNJUST TO NOW CONCEAL
      THE NOTES BY THE WORK PRODUCT DOCTRINE BECAUSE
      MONSANTO HAS A SUBSTANTIAL NEED FOR THE
      DOCUMENT AND CANNOT OBTAIN SUBSTANTIALLY
      EQUIVALENT MATERIAL WITHOUT UNDUE HARDSHIP.........................17

V.    SYNGENTA'S PRODUCTION OF THE NOTES WAS NOT
      INADVERTENT AND, IRRESPECTIVE OF THAT
      DETERMINATION, THE NOTES SHOULD BE PRODUCED IN
      THE INTERESTS OF JUSTICE .............................................................19

CONCLUSION ......................................................................................23

# TABLE OF AUTHORITIES

**Page No(s)**

## CASES

*ABB Kent-Taylor, Inc. v. Stallings & Co.,*
172 F.R.D. 53 (W.D.N.Y. 1996)................................................................................10

*Augenti v. Cappellini,*
150 F.R.D. 465 (S.D.N.Y. 1993) ..............................................................................19

*Bowne, Inc. v. AmBase,*
198 F.R.D. 26 (N.D.N.Y. 2000)................................................................................14

*Burton v. R.J. Reynolds Tobacco Co.,*
177 F.R.D. 491 (D. Kan. 1997)................................................................................12

*Central Die Casting and Mfg. v. Tolkeim Corp.,*
1994 U.S. Dist. LEXIS 11411 (N.D. Ill. Aug. 15, 1994)....................................21, 22

*Ciba-Geigy Corp. v. Sandoz, Ltd.,*
916 F. Supp. 404 (D. N.J. 1995)...............................................................................21

*Eigenheim Bank v. Halpern,*
598 F. Supp. 988 (S.D.N.Y. 1984) ...........................................................................20

*Fine v. Facet Aerospace Prods Co.,*
133 F. Supp. 439 (S.D.N.Y. 1990) ...........................................................................11

*Fisher v. United States,*
425 U.S. 381 (1976)..................................................................................................13

*Harris v. Provident Life & Accident Ins.,*
198 F.R.D. 26 (N.D.N.Y. 2000)...........................................................................18, 19

*Hearn v. Rhay,*
68 F.R.D. 574 (E.D. Wash. 1975).............................................................................13

*Hercules Inc. v. Exxon Corp.,*
434 F. Supp. 136 (D. Del. 1977)..........................................................................10, 13

*Herring v. United States,*
424 F.3d 384 (3d Cir. 2005)......................................................................................15

*Hickman v. Taylor,*
329 U.S. 495 (1947)..................................................................................................18

iii

*Holmes v. Pension Plan of Bethlehem Steel Corp,*
213 F.3d 124 (3d Cir. 2000)................................................................................................17

*In re A. H. Robins Co., Inc.,*
107 F.R.D. 2 (D. Kan. 1985)................................................................................................14

*In re Feldberg,*
862 F.2d 622 (7th Cir. 1988) ..............................................................................................14

*In re Hechinger Inv. Co. of Delaware v. Fleet Retail Fin. Group.,*
303 B.R. 18 (D. Del. 2003)..................................................................................................19

*In re Grand Jury (Impounded),*
138 F.3d 978 (3d Cir. 1998)................................................................................................19

*In re Grand Jury Subpoena Duces Tecum,*
731 F. 2d 1032 (2d Cir. 1984).............................................................................................15

*In re Natta,*
264 F. Supp. 734 (D. Del. 1967)..........................................................................................10

*International Digital Sys. Corp. v. Digital Equip. Corp.,*
120 F.R.D. 445 (D. Mass. 1988)....................................................................................20, 21

*International Tel. & Tel. Corp. v. United Tel. Co. of Fla,*
60 F.R.D. 177 (M.D. Fla. 1973)...........................................................................................11

*Lemelson v. Bendix Corp.,*
104 F.R.D. 13 (D. Del. 1984) ..............................................................................................14

*Marten v. Yellow Freight Sys.,*
1998 U.S. Dist. LEXIS 268 (D. Kan. Jan. 6, 1998)......................................................12, 13

*Multiform Dessicants, Inc. v. Stanhope Prod. Co.,*
930 F. Supp. 45 (W.D.N.Y. 1996)........................................................................................14

*Park Avenue Bank, N.A. v. Bankasi,*
1994 WL 722690 (S.D.N.Y. Dec. 30, 994) ..........................................................................11

*Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group,*
*Inc.,* 116 F.R.D. 46 (M.D.N.C. 1987)............................................................................20, 21, 22

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
508 U.S. 49 (1993) ..............................................................................................................16

*Resnick v. American Dental Assoc.,*
  95 F.R.D. 372 (N.D. Ill. 1982).................................................................................11

*Robinson v. Audi Aktiengesellschaft,*
  56 F.3d 1259 (10th Cir. 1995)..................................................................................15

*State Chartered Bank v. Ayala Int'l Holding,*
  111 F.R.D. 76 (S.D.N.Y. 1986)...............................................................................13

*Tri-Cran, Inc. v. Fallon,*
  98 B.R. 609 (D. Mass. 1989)...................................................................................15

*Union Carbide Corp. v. Dow Chemical Co.,*
  619 F. Supp. 1036, (D. Del. 1985).............................................................9, 10, 13, 18

*United States v. Int'l Bus. Mach., Corp.,*
  66 F.R.D. 206 (S.D.N.Y. 1974)................................................................................12

*United States Postal Service v. Phelps Dodge Refining Corp.,*
  852 F. Supp. 156 (E.D.N.Y. 1994)..........................................................................12

*UpJohn v. United States,*
  449 U.S. 383 (1981)....................................................................................................2

*Workman v. Bell,*
  227 F.3d 331 (6th Cir. 2001)....................................................................................15

## RULE

Fed. R. Civ. P. 26(b)(3).................................................................................................18

## MISCELLANEOUS

Rice, Paul, *Attorney-Client Privilege in the United States,* § 3:14 (2d ed. 1999).......................9

## SUMMARY OF THE ARGUMENT

This motion arises from Syngenta Biotechnology, Inc.'s[1] production to Monsanto

of notes of a business meeting in Washington, D.C. that outline a two-prong strategy to

misappropriate Monsanto's GA21 and introduce it in the U.S. as Syngenta's GA21.

(Rosenthal Dec. ¶ 2 Ex. 1) ("the Notes"). Monsanto relied upon the Notes in its

opposition brief to Syngenta's motion to dismiss for lack of personal jurisdiction, filed

with the Court on December 30, 2005. (D.I. 184.) It is clear the document constitutes a

"smoking gun" on the merits of this case and also significantly belies the jurisdictional

protestations of Syngenta, including the sworn representations made by a declarant who

attended the Swiss-U.S. strategy meeting. Syngenta Seeds, Inc. ("Syngenta") invokes

paragraph 5 of the Stipulated Amended Protective Order ("Protective Order") in

requesting the return of the Notes on the grounds that it they were "inadvertently

produced." (D.I. 239, at 14.) Monsanto contests the application of any privilege to

conceal these Notes and that they were inadvertently produced on the following grounds:

1. The Notes describing Syngenta's business strategy to introduce its "own"

GA21 by misappropriating Monsanto's GA21 are not protected by the attorney-client

privilege. The fact that attorneys were involved in the four-day strategy meeting and/or

that the Notes mention the possibility of a lawsuit does not act to shield a document that

predominantly consists of and references a business strategy and business advice.

2. Syngenta, under the circumstances of this case, voluntarily waived any

claim of privilege when it submitted the declaration of Ed Resler (Vice President and

General Counsel of Syngenta), thereby placing at issue the veracity and substance of the

statements contained therein. Mr. Resler's assertion that Syngenta's U.S. subsidiaries

developed their own strategy is belied by the Notes that demonstrate Mr. Resler was fully

---

[1] Syngenta Biotechnology, Inc. is one of the domestic subsidiaries of Syngenta AG.

aware of Syngenta AG and Participations AG's role in orchestrating and implementing a strategy to introduce GA21 in the United States by misappropriating Monsanto's GA21. Mr. Resler attended the four-day strategy meeting. The interest of full candor and disclosure to the Court support require the consideration of these Notes.

3.    As a result of Syngenta AG and Participation's AG's submission of the Resler declaration, the crime-fraud exception bars any assertion of privilege. Syngenta AG, Participations AG and Mr. Resler have misrepresented to the Court the role played by the foreign parents in designing and implementing a strategy to introduce GA21 in the United States by misappropriating Monsanto's GA21. The Notes further establish that Syngenta lacked a good faith basis to file its antitrust action with this Court, alleging at its core that Monsanto had filed a sham patent case to enforce its rights under the Shah patent. Additionally, the Notes establish that Syngenta cannot have suffered the antitrust injury requisite to its claims in this action because they admit Syngenta could not develop its own GA21 until 2007/8.

4.    For the reasons set forth above, the Notes are also not protected from disclosure under the attorney work-product doctrine. Moreover, even if the work product doctrine might be held to apply, Monsanto has demonstrated substantial need for the Notes and cannot obtain substantially equivalent materials without undue hardship, if at all.

5.    The Notes were not produced from the files of any participant in the meeting or any legal files, but rather from the files of Erik Dunder (Regulatory Manager from Syngenta Biotechnology, Inc.). This dissemination of the Notes constitutes a waiver.[2]

---

[2] To maintain any claim of privilege, Syngenta must set forth the extent to which the Notes were disseminated and demonstrate that such wide-spread dissemination did not constitute a waiver of any privilege. *Upjohn Co. v. United States,* 449 U.S. 383 (1981).

6.    The fact that the Notes were reviewed prior to production and a decision made to designate them "RESTRICTED CONFIDENTIAL" demonstrates that their production was deliberate, not inadvertent. The fact that, to date, Syngenta has allegedly inadvertently produced 147 purportedly privileged documents in the patent and antitrust portions of this case, precludes Syngenta from asserting the clawback provision of the protective order.

7.    The Notes disclose the existence of other critical, highly relevant, and evidently likewise non-privileged business documents that were not produced by Syngenta, such as a detailed project timeline and a related action plan.

**RELEVANT FACTUAL BACKGROUND**

**A.**    **The Notes Describe Syngenta AG and Participations AG's Role In Developing and Implementing a Business Strategy To Misappropriate Monsanto's GA21 in the United States**

Chief among Syngenta's business objectives was the offering of a glyphosate-tolerant corn product to further compete with Monsanto. ████████████████ Syngenta initially endeavored to develop its own product through a research and development project called FFYBES. That project, however, ultimately failed.

Syngenta AG next set out to gain access to GA21 through an agreement with Bayer CropScience ("Bayer") to purchase the purported "right" to GA21 technology. ████████████████████    This key agreement was signed by two Participations AG employees from Switzerland – Adrian Dubock and Marian Flattery ████████

████████████████████████████████
████████████████████████████████
████████████████████████████████

████████████████████████████████
████████████████████████████████

3

*(Id.)*



(*Id.*)

Significantly, this Basel-driven strategy explicitly recognized that Monsanto has rights under its Shah patent and that Syngenta needed to take affirmative steps, inside and outside the United States, to prevent detection by Monsanto so that it would take legal action to defend its intellectual property rights:



_____

[3]

**B.**  **Syngenta AG, Participations AG and Mr. Resler Have Grossly Understated or Intentionally Misrepresented the Role of These Foreign Parents in Misappropriating Monsanto's GA21**

In support of Syngenta AG and Participations AG's Motion to Dismiss (in part, for lack of personal jurisdiction), Ed Resler (Vice President and General Counsel, Syngenta Seeds, Inc.), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Astonishingly, Mr. Resler states under oath:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This statement (as well as similar statements contained in Syngenta's Opposition Memorandum) (*see, e.g.*, D.I. 190 at, 8-12) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These Notes demonstrate that Syngenta AG and Participations AG were directly involved in the development of the strategy to introduce a purportedly Syngenta GA21 in the United States by misappropriating Monsanto's GA21.

Mr. Resler's declaration and similar statements contained in Syngenta's Motion to Dismiss to the effect that the foreign parents do not direct or control the U.S. subsidiaries and are not involved in the efforts to misappropriate GA21 in the United States are further contradicted by a wide variety of facts confirming Syngenta AG and Participations AG's direct role in executing the two-prong strategy described in the Notes.

1. **Swiss-Based Management "Calls the Shots" Against Monsanto As Shown By the Role of Syngenta AG's Executive Committee and Corn Business Team in Executing the Strategy To Misappropriate Monsanto's GA21**

Notwithstanding Mr. Resler's declaration, Syngenta AG effectively controlled its U.S. subsidiaries through its Executive Committee based in Basel, Switzerland, whose members also served as board members and key officers of its U.S. subsidiaries. (D.I. 184, at 5-6.) Reporting to the Executive Committee is Syngenta AG's Business Development Leadership Team, which is comprised of senior management from Syngenta AG and headed by David Jones, a member of Syngenta AG's Executive Committee. (*Id.* at 6.) Reporting to the Business Development Team is Syngenta AG's Corn Business Team, which was principally responsible for "*tak[ing] traits from nothing . . . to commercialization*." (*Id.* at 11) (emphasis added.)

Syngenta does not dispute that the Corn Business Team was comprised of employees from Syngenta AG, Syngenta International AG, Syngenta Seeds, Syngenta Crop Protection, Syngenta Biotechnology, and Syngenta Corporation. Nor can Syngenta seriously challenge that the Corn Business Team was tasked with carrying out the two-prong strategy to misappropriate Monsanto's GA21 by pursuing its "interest in and possibility of accessing GA21" and identifying "trademarks, brands, logos, etc. for product launches" including GA21. (*Id.*). Attendees of the Swiss-U.S. team meeting in Washington were members of Syngenta AG's Corn Business Team, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮

2. **Syngenta AG's Acquired Garst and Golden Harvest with the Intent To Wrongfully Secure Access To Monsanto's GA21**

A second prong of Syngenta AG's strategy to misappropriate Monsanto's GA21 was to acquire Monsanto's GA21 from "seed companies." To effectuate this prong of the strategy, Syngenta AG and Participations AG purchased the seed companies Garst and

Golden Harvest – licensees of Monsanto's Roundup Ready traits containing the GA21 event. (D.I. 184, at 13.) Following Syngenta AG's acquisition of Garst and Golden Harvest, Syngenta Seeds (at Syngenta AG's direction) gained improper access to Monsanto's proprietary GA21, in violation of Monsanto's patent and other ownership rights. (*Id.*)[4]

### 3. Documents Supplied by Syngenta As Attachments To Resler's Supplemental Declaration Controvert the Prior Sworn Statements in His Initial Declaration

In support of Syngenta AG and Participations AG's Reply Brief on the Motion to Dismiss, Mr. Resler submitted a supplemental declaration that attached certain minutes of meetings of the Corn Business Team. Careful examination of these minutes reveals contradictions in the statements contained in his earlier declaration that the U.S. subsidiaries ██████████████████████████████████████ independent of the foreign parents. For example, the Notes confirm that:



4 ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████



## ARGUMENT

### I.    THE NOTES ARE NOT PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

The party seeking to invoke the attorney-client privilege has the burden to demonstrate that (1) it is (or sought to become) a client, (2) the person to whom the communication was made is a member of the bar of a court, (3) the communication relates to a fact which was informed by the party, without the presence of strangers, for the purpose of securing primarily either an opinion of law, or legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort, and (4) the privilege has been claimed and not waived. *See Union Carbide Corp. v. Dow Chemical Co.*, 619 F. Supp. 1036, 1046 (D. Del. 1985).

> "Although the elements of the privilege are generally the same for both in-house and outside counsel, the proponent's burden for establishing those elements is often more difficult in the in-house context. Because in-house counsel is often extensively involved in the business matters of the company . . . one will apply different assumptions to the nature of his work than one would with retained counsel of the company."

Rice, Paul, *Attorney-Client Privilege in the United States*, § 3:14 (2d ed. 1999). Syngenta does not and cannot meet its burden here.

A.    **The Notes Describe Syngenta AG's Business Strategy for Misappropriating Monsanto's GA21**

Business advice is not protected by the attorney-client privilege. *See Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147-50 (D. Del. 1977) (affording no privilege protection to communications whose primary purpose is to "solicit or render advice on non-legal matters"); *see also ABB Kent-Taylor, Inc. v. Stallings & Co., Inc.*, 172 F.R.D. 53, 58 (W.D.N.Y. 1996); *Union Carbide Corp.*, 619 F. Supp. at 1045-48 (denying protection of privilege to communications with attorney "not necessitating a legal opinion or interpretation"). The Notes themselves state the purpose of the meeting was to develop a



These communications reflect the discussion of a business strategy that neither requires legal acumen nor the solicitation of legal advice or opinion and, therefore, are not shielded from production under a claim of privilege. *See, e.g., Park Avenue Bank, N.A. v. Bankasi*, No. 93 CIV. 1483, 1994 WL 722690, at *1 (S.D.N.Y. Dec. 30, 1994) (finding no privilege protection for business decision to dishonor bank's letter of credit and communications surrounding it); *Fine v. Facet Aerospace Prods. Co. v. Cessna Aircraft Co.*, 133 F.R.D. 439, 44 (S.D.N.Y. 1990) (finding no privilege protection for communications in manufacturer's internal report where communications revealed "no legal advice, no confidential information conveyed to the attorney by the client, and nothing of the thought processes of counsel").

## B. Ms. Flattery's and Mr. Resler's Attendance at the Meeting Does Not Render the Communications Privileged

Syngenta cannot claim that the Notes are privileged because attorneys – Ms. Flattery and Mr. Resler – attended the meeting. A communication is not privileged merely because it is made by, to, or in the presence of a lawyer. *See In re Natta*, 264 F. Supp. 734, 741 (D. Del. 1967), *aff'd*, 388 F.2d 215 (3d Cir. 1968). Attendance by an attorney at a meeting does not render everything done or said at that meeting privileged. *Int'l Tel. & Tel. Corp. v. United Tel. Co. of Fla*, 60 F.R.D. 177, 185 (M.D. Fla. 1973) (emphasizing that communications "must have related to the acquisition or rendition of professional legal services and must have retained a confidential character"); *Resnick v. Am. Dental Assoc.*, 95 F.R.D. 372, 375-76 (N.D. Ill. 1982) (finding no privilege protection for documents "essentially management-oriented ... so that the lawyer-client relationship was no more than tangential" to the documents and their contents).

Ms. Flattery and Mr. Resler were serving as members of a Swiss-U.S. team for the purpose of developing a business strategy. There is no discernible indication in the Notes that they were created for the purpose of seeking or rendering legal advice. Moreover, the fact that Ms. Flattery was one of the signatories to Participation AG's agreement with Bayer highlights the business role she played. *See Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 500 (D. Kan. 1997) (holding documents not protected by privilege where communications relate nothing more than "the fact of a meeting with counsel, the subject generally discussed at that meeting, the type of documents distributed at the meeting, an agreement concerning the pursuit of certain contracts, and the sharing of information"); *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 163 (E.D.N.Y. 1994) (ruling privilege inapplicable to documents "written for some other purpose other than to seek legal advice").

### C.    Incidental References to Legal Matters Cannot Shield the Notes from Production under the Attorney-Client Privilege

Syngenta argues that the Notes reflect legal advice or legal strategy. (D.I. 239, at 18-19.) General references to legal matters, however, do not make an otherwise discoverable document immune from production under the attorney-client privilege. *See, e.g., Marten v. Yellow Freight Sys., Inc.*, 1998 U.S. Dist. LEXIS 268, at *20 (D. Kan. Jan. 6, 1998) (affording no privilege protection to legal advice sought or received during meeting with predominant business purpose and incidental considerations of legal implications); *United States v. Int'l Bus. Mach., Corp.*, 66 F.R.D. 206, 213 (S.D.N.Y. 1974) (refusing privilege protection for document prepared for primary purpose of simultaneous review by legal and non-legal business personnel). As the court explained in *Marten*, "[w]hen the legal advice *'is merely incidental to business advice,'* the privilege does not apply." *Marten*, 1998 U.S. Dist. LEXIS, at *16 (citation omitted, emphasis added).

12

███████████████████████ Any statements in the Notes concerning the legal consequences of Syngenta's business strategy are merely incidental to the business advice and are thus entirely discoverable as well. (D.I. 239, at 19) (the Court commenting in response to Syngenta's assertion that the Noted discuss legal risks: "Well, but it's really the legal risk attached to their proposed business strategies").[5] As the court stated in *Marten*:

> [A] business decision may have legal consequences, as do many decisions of any business. That fact, together with the presence of legal counsel, however, does not convert the meeting into a conference between attorney and client. Nor does it make the attorney-client privilege applicable to whatever is said and done during the meeting. 1998 U.S. Dist. LEXIS 268, at *22.

## II.    SYNGENTA HAS WAIVED THE ATTORNEY-CLIENT PRIVILEGE BY SUBMITTING MR. RESLER'S DECLARATIONS

The attorney-client privilege cannot be used as both a shield and a sword. *See Fisher v. United States*, 425 U.S. 391, 403 (1976) ("Since the privilege has the effect of withholding relevant information … it applies only where necessary to achieve its purpose."). A party waives its privilege where, as here: (1) assertion of the privilege was a result of some affirmative act by the asserting party, such as filing suit; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to information vital to its case. *See Hearn v. Rhay*, 68 F.R.D. 574, 578 (E.D. Wash. 1975); *see also State Chartered Bank v. Ayala Int'l Holdings*, 111 F.R.D. 76, 83 (S.D.N.Y. 1986).

---

[5] Any purely factual information contained in the document is also discoverable. *See Union Carbide Corp. v. Dow Chemical Co.*, 619 F. Supp. 1036, 1046 (D. Del. 1985) ("Technical information, such as the results of research, tests, and experiments … not necessitating a legal opinion or interpretation are … devoid of protection."); *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977) (same).

Mr. Resler's declarations squarely placed at issue the nature and extent of
Syngenta AG and Participations AG's role in developing a business strategy to introduce
GA21 in the United States by misappropriating Monsanto's GA21. Syngenta cannot,
therefore, now attempt to assert a privilege over the Notes that stand in direct
contradiction to Mr. Resler's representations to this Court and, in fact, constitute key
evidence of this Court's jurisdiction and supports Monsanto's counterclaim. *See, e.g.,*
*Multiform Dessicants, Inc. v. Stanhope Prod. Co.*, 930 F. Supp. 45, 48 (W.D.N.Y. 1996)
("By submitting the declarations of the [attorney] ... the plaintiffs had voluntarily waived
the attorney-client privilege with respect to all communications relating to the subject
matter of the declarations."); *Bowne, Inc. v. AmBase*, 150 F.R.D. 465, 488 (S.D.N.Y.
1993) (finding waiver where defendant's counterclaim placed communications at issue).

### III.     THE CRIME-FRAUD EXCEPTION PRECLUDES THE APPLICATION OF THE ATTORNEY-CLIENT PRIVILEGE

To establish the applicability of the crime-fraud exception, Monsanto must show
that (1) a *prima facie* case of crime or fraud exists, and (2) that the communications were
made in furtherance of the crime or fraud. *Lemelson v. Bendix Corp.*, 104 F.R.D. 13, 16-
17 (D. Del. 1984). A *prima facie* case is established by proof "such as to subject the
opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left
unrebutted." *Id.* That is, a *prima facie* showing "require[s] the adverse party, the one
with superior access to the evidence and in the best position to explain things, to come
forward with that explanation." *See In re Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988)
(citations omitted) (noting that the question is not whether the evidence supports a verdict
but whether it calls for inquiry).[6]

---

[6] The exception applies not merely to fraudulent activity, but also tortious activity. *See,*
*e.g., In re A.H. Robins Co., Inc.*, 107 F.R.D. 2, 14 (D. Kan. 1985) (applying exception to
communications made "in order to enable or aid commission or planning of a crime or
tort"). Here, the tortious activity contemplated by the Notes in the form of

A.    **Syngenta AG, Participations AG and Mr. Resler Have Attempted To Mislead the Court About the Foreign Parent's Role in Misappropriating Monsanto's GA21**

The fraud at issue in this instance is fraud upon the Court. A *prima facie* case of fraud upon the Court requires: (1) an intentional fraud; (2) by an officer of the Court; (3) which is directed at the Court itself; and (4) that in fact deceives the Court. *See Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005).[7]  The Notes reflect that Mr. Resler was well aware of the nature and extent of Syngenta AG and Participations AG's role in developing a ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Nevertheless, Mr. Resler, an officer of the Court, executed a declaration representing facts to the contrary in an effort to dissuade the Court from exercising jurisdiction over Syngenta AG and Participations AG. The contents of Mr. Resler's sworn declaration cannot be reconciled with the Notes.

This fraud upon the Court precludes any claim of privilege. *See Tri-Cran, Inc. v. Fallon*, 98 B.R. 609, 616 (D. Mass. 1989) (noting that an attorney's "loyalty to the Court, as an officer thereof, demands integrity and honesty dealing with the Court"); *see also Workman v. Bell*, 227 F.3d 331, 336 (6th Cir. 2001) (holding that an officer's intentional or reckless failure to disclose information in order to deceive the court may constitute fraud on the court); *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir.

---

misappropriation, conversion and deceptive advertising as it relates to GA21 constitutes future tortious conduct for which no privilege can attach.

[7] Importantly, the fraud need not have actually occurred for the exception to be applicable; it need only have been the objective of the communication. Moreover, the fraudulent nature of the objective need not be established definitively; there need only be a reasonable basis for believing that the objective was fraudulent. *See In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1039 (2d Cir. 1984). Here, Monsanto has established that basis.

1995) (noting violation of the duty of honesty is essential to a claim of fraud on the court).

**B.    Syngenta Knew at the Time It Filed Its Sham Patent Claim That It Had No Basis to Do So**

A litigant is generally "immune from antitrust liability" arising out of the filing of a lawsuit even if the "sole purpose" of the lawsuit is to injure or destroy a competitor. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). A narrow exception to the *Noerr-Pennington* immunity is the so-called "sham-litigation" exception. To establish sham litigation, a plaintiff must show that:

> "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail." *Id.* at 60.

The Notes establish that Syngenta (including its counsel, Mr. Resler) lacked a good-faith basis to bring its sham patent claim. ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████ Plainly, Syngenta did not consider either the Shah patent to be invalid or any lawsuit predicated on the patent to be "objectively baseless."

There is a stark contrast between the allegations of Syngenta's Second Amended Complaint and the Notes:

| | |
|---|---|
| **Syngenta's Second Amended Complaint** |  |
| 72. "Monsanto filed a baseless patent infringement lawsuit … that alleges that "Syngenta has infringed Patent No. 4,940, 835 (the 'Shah patent'), which allegedly covers a technique used in producing in producing glyphosate-tolerant plants" and further that Monsanto knew or should have known that the Shah patent is invalid or unenforceable against Syngenta with respect to the GA21 event in corn." | |
| 73. "Monsanto knew or should have known that the Shah patent is invalid or unenforceable against Syngenta with respect to the GA21 event in corn." | |

By asserting privilege over the Notes, Syngenta is attempting to hide the fact that it had no good faith basis to make the claim that the Shah patent action is baseless.

**IV.    IT WOULD BE MANIFESTLY UNJUST TO NOW CONCEAL THE NOTES BY THE WORK PRODUCT DOCTRINE BECAUSE MONSANTO HAS A SUBSTANTIAL NEED FOR THE DOCUMENT AND CANNOT OBTAIN SUBSTANTIALLY EQUIVALENT MATERIAL WITHOUT UNDUE HARDSHIP**

"The doctrine of work-product immunity shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (internal quotation omitted). However, the work-product doctrine is far narrower than the attorney-client privilege and only protects documents from discovery under

limited circumstances.[8] *See Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992). These circumstances do not exist here.

Many of the arguments set forth above as to why the Notes cannot be protected from disclosure under the attorney-client privilege also defeat any assertion of the work-product doctrine, including: (i) the Notes were generated for the purpose of providing business advice and not for the purpose of litigation; (ii) any application of the doctrine was waived by placing Mr. Resler's declarations at issue, and by the calculated production of the bates-stamped Notes marked "RESTRICTED CONFIDENTIAL"; and (iii) the crime-fraud exception applies to the work product doctrine as well. An additional factor also preludes the application of the doctrine here.

Federal Rule of Civil Procedure 26(b)(3) provides that a party may obtain discovery of materials reflecting the mental processes of an attorney upon a showing (1) of substantial need of the document in the course of preparation of its case and (2) that it cannot obtain substantially equivalent material by other means without undue hardship. *See Union Carbide Corp*, 619 F. Supp. at 1048-50. To make this determination, the Court may consider factors such as the importance of the information sought and the difficulty that the party seeking discovery will face in obtaining substantially equivalent information from other sources if discovery is denied. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

The Notes are critical to Monsanto's case, both in its case-in-chief as to its Counterclaims as well as in its defense against Syngenta's sham-patent suit allegation.

██████████████████████████████████████████████████████████████

---

[8] A party seeking work product protection has the burden of showing that the material (1) is a document or tangible thing, (2) was prepared in anticipation of litigation, and (3) was prepared by or for a party. *See Harris v. Provident Life & Accident Ins.*, 198 F.R.D. 26, 29 (N.D.N.Y. 2000) (citation omitted).



The Notes are directly relevant to the respective claims and defenses of the parties. *See Harris,* 198 F.R.D. at 31 (finding substantial need for privilege documents "critical to [opposing party's] defenses"); *Augenti v. Cappellini,* 84 F.R.D. 73, 80 (M.D. Pa. 1979) (noting compelling need for production of Notes "substantially aid[ing] in the search for truth in case). Additionally, because Syngenta's representations to Monsanto and the Court have been disingenuous and obstructive at best, it is highly unlikely that Monsanto would be able to discover information substantially equivalent to that in the Notes without undue hardship. Accordingly, the Court should permit Monsanto discovery of the Notes.

## V.    SYNGENTA'S PRODUCTION OF THE NOTES WAS NOT INADVERTENT AND, IRRESPECTIVE OF THAT DETERMINATION, THE NOTES SHOULD BE PRODUCED IN THE INTERESTS OF JUSTICE

Both the Third Circuit and this Court have held that the careless production of documents may waive any claimed privilege. *In re Grand Jury (Impounded)*, 138 F.3d 978, 981-83 (3d Cir. 1998) (finding waiver for inadvertent disclosure); *In re Hechinger Inv. Co. of Delaware v. Fleet Retail Fin. Group*, 303 B.R. 18, 19-21 (D. Del. 2003) (same). In determining whether a document has lost its privileged character through inadvertent disclosure, the Court may consider factors such as: (1) the reasonableness of the precautions taken to prevent inadvertent disclosures in view of the extent of the

document productions; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interests of justice would be served by relieving a party of its error. *See Parkway Gallery Furniture, Inc. v. Kittinger/ Pennsylvania House Group, Inc.*, 116 F.R.D. 46, 50 (M.D.N.C. 1987). Consideration of these factors demonstrates that the production was not inadvertent.

**The Reasonableness of the Precautions Taken.** Syngenta has argued that the production of the Notes was "just an oversight" and that "this document just slipped through the cracks." (D.I. 239, at 14-15.) The fact, however, that the Notes were expressly designated "RESTRICTED CONFIDENTIAL" under the provisions of the Protective Order suggests otherwise. To make that designation under the Protective Order, a lawyer presumably: (i) reviewed the Notes; (ii) determined that the Notes were responsive to Monsanto's requests for production and should be produced; (iii) decided that the Notes should be designated as "RESTRICTED CONFIDENTIAL", the highest protection under the order for documents containing "trade secrets, confidential and propitiatory technical, research, or development information…" with access limited to outside counsel. (D.I. 44, at 2-3.) This is not just an oversight, particularly where the Notes in question bear the designation at the top "Strictly Confidential" and "Legally Privileged." *See Int'l Digital Sys. Corp.*, 120 F.R.D. at 448 (holding the privilege does not apply to an "inadvertently produced" document even though it was written on counsel's stationery).

**The Number of "Inadvertent Disclosures."** This is not the first instance of claimed "inadvertent production" by Syngenta in this case. To date, Syngenta has "inadvertently produced" 147 documents that it has sought the return of under the terms of the Protective Order (Rosenthal Dec. ¶ 6.) These requests, along with the production of the Notes, highlight a procedure by Syngenta to maintain confidentiality "so lax, careless, inadequate or indifferent to consequences as to constitute a waiver." *Eigenheim*

*Bank v. Halpern*, 598 F. Supp. 988, 991 (S.D.N.Y. 1984) (internal quotations and citations omitted).[9]

**The Extent of the Disclosure.** The document was fully disclosed when it was produced and relied upon by Monsanto in response to Syngenta's motion to dismiss. Under such circumstances, courts have declined to uphold a claim of "inadvertent production." *See Central Die Casting & Mfg. Co. v. Tokheim Corp.*, 1994 U.S. Dist. LEXIS 11411, at *12 (N.D. Ill. Aug. 15, 1994) (noting that confidentiality of communications "can never be restored, regardless of whether the disclosure was 'inadvertent' or purposeful," and that Court could enter no order that "erases from [Monsanto's] counsel's knowledge what has been disclosed"). *Int'l Digital Sys. Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445, 449 (D. Mass. 1988) (holding "inadvertent disclosure" of document operated as waiver of privilege where document was disclosed during course of pretrial discovery).

**Whether the Overriding Interests of Justice Would or Would Not Be Served By Relieving a Party of Its Error.** Overriding interests of fairness and justice warrant a finding that Syngenta waived the privilege. From the outset, Syngenta has sought to

---

[9] Syngenta and opposing counsel have had plenty of notice that a protective order does not shield a producing party when its own privilege review procedures are grossly inadequate. *See Ciba-Geigy Corp. v. Sandoz, Ltd.*, 916 F. Supp. 404 (D. N.J. 1995). In *Ciba-Geigy* defendant Sandoz (a precursor to Syngenta) produced a privileged document and later moved for a protective order to compel plaintiff to return the document. Using the same five-point test enumerated in *Parkway Gallery*, the court denied defendant's request to compel, finding that Sandoz had failed to demonstrate that it undertook "reasonable precautions to avoid inadvertent disclosures of privileged documents." *Ciba-Geigy*, 916 F. Supp at 412. The *Ciba-Geigy* court further concluded that a protective order does not immunize all unintentional disclosures against any waiver argument, for this would render it a "'blanket' disclosure provision." *Id.* The facts of *Ciba-Geigy* are remarkably similar to those here. In both cases, the document at issue was produced more than once, the producing party only became aware of its mistake after the receiving party discovered and relied upon the document, attorneys of the producing party reviewed the respective documents before their release, and the producing party inadvertently produced numerous other documents during the course of discovery. Notably, counsel for Sandoz was also Shearman & Sterling.

represent to Monsanto and this Court that Syngenta AG and Participations AG have no involvement in the underlying dispute in this case, relying principally on the declarations of Mr. Resler ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Furthermore, the Notes are key evidence that proves Monsanto's counterclaim for misappropriation.

In similar instances, federal courts have held that the circumstances surrounding the production of the claimed privileged document constitute a waiver. For example, in *Parkway Gallery*, the court found that the production of 20 pages out of a 12,000 page production waived the privilege as to those 20 pages, noting that "[m]ere inadvertence, standing alone, is not sufficient to counter the strong policy that disclosure constitutes waiver." 116 F.R.D. at 51. The court, while acknowledging the disclosing party's timely efforts to discover and retrieve the inadvertently disclosed documents, nonetheless found that waiver was warranted because the documents had lost all confidentiality. *Id.* "[W]hen disclosure is complete, a court order cannot restore confidentiality and, at best, can only attempt to restrain further erosion." *Id.* at 52. Similarly, a disclosure of a one-page memorandum resulted in waiver in *Central Die Casting*, 1994 U.S. Dist. LEXIS 11411. There, the court found waiver, where the disclosing party "had over six weeks to go through its files to determine which documents to produce" and "the memorandum was fully disclosed because it was copied, produced to [the opposing party], and then incorporated into [that party's] motion for summary judgment." 1994 U.S. Dist. LEXIS 11411, at *14-15. "Under the circumstances," the court concluded, "the bell has already been rung, and the court cannot now unring it by denying [the discovering party] access to the [memorandum]." *Id.* at 16 (citation omitted).

22

## CONCLUSION

For the foregoing reasons, Monsanto's motion to compel should be granted. The Court should order Syngenta to produce immediately unredacted copies of document SYN-AT-001938548 – SYN-AT-001938550. Further, Monsanto seeks an order from the Court for the production of all documents mentioned in the Notes, including but not limited to the "detailed project timeline and action plan" as well as all similar notes or documents relating to this two-pronged strategy to misappropriate Monsanto's GA21 and sell it in the U.S. as Syngenta GA21.

Respectfully Submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Peter E. Moll
Scott Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone (202) 783-0800

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
Telephone (202) 942-5000

By: */s/ David E. Moore*
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE 19801
        Telephone (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

Attorneys for Monsanto Company and
Monsanto Technology LLC

Dated: January 25, 2006
Public Version Dated: February 1, 2006

716916
717885

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 1, 2006, the attached

document was hand delivered on the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on February 1, 2006, I have Federal Expressed the

foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Thomas A. McGrath III
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
rschwed@shearman.com

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
   Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413
michael.flibbert@finnegan.com
don.burley@finnegan.com
howard.levine@finnegan.com

　　　/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

700765