**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 04-305 SLR |
| v. | ) ) | (Lead Case) |
| SYNGENTA SEEDS, INC. SYNGENTA BIOTECHNOLOGY, INC., et al., | ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) ) ) | |
| DEKALB GENETICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., ET AL. | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
SYNGENTA'S MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT OF THE SHAH '835 PATENT**

OF COUNSEL:

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
(713) 787-1400

Dated: January 26, 2006
Public Version Dated: February 1, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Monsanto Company,
Monsanto Technology LLC, and
DEKALB Genetics Corporation*

## INDEX OF ABBREVIATIONS AND EXHIBITS

| Abbreviations | Description |
|---|---|
| '835 patent | U.S. Patent No. 4,940,835 |
| Bruce Tr | Excerpts from Deposition of Barry Bruce taken December 16, 2005 |
| Bruce Rpt. | Expert Report of Barry Bruce, served October 27, 2005 |
| Br. Reb. Rpt. | Expert Report of Barry Bruce served November 22, 2005 |
| JCCS | Parties' Joint Claim Construction Statement |
| Keegstra Tr. | Excerpts from deposition of Kenneth Keegstra taken December 15, 2005 |
| Keegstra Decl. | Declaration of Kenneth Keegstra dated January 26, 2006 |
| Keegstra J. Tr. | Excerpts from *Markman* testimony dated July 1-2, 2003 |
| *Markman* Tr. | Transcript of *Markman* hearing |
| Pl. OM Br. | Plaintiffs Opening Markman Brief |
| Syn. 1st C.C. | Syngenta's Original Claim Construction, Served December 1, 2005 |
| Syn. '835 NI Br. | Syngenta's Opening Brief in Motion for Support of Summary Judgment of Non-Infringement of the Shah '835 Patent |
| Syn. '835 NI App. | Appendix to Syngenta's Brief in Support of Motion for Summary Judgment of Non-Infringement of the Shah '835 Patent |
| Syn. OM Br. | Syngenta's Opening Markman Brief |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS ...............................................1

III.   SUMMARY OF ARGUMENT ...................................................................2

IV.    STATEMENT OF FACTS .......................................................................3

       A.    The Naturally Occurring Elements Of The OTP ...............................3

       B.    Claim 1 Of The '835 Patent And The '835 Specification .....................6

             1.    The Claim Does Not Require That The CTP Be
                   Naturally Occurring But Instead It Exemplifies
                   CTPs That Are Not ............................................................7

             2.    The Specification Uses The Term "Import" In A
                   Manner That Distinguishes It From Cleavage .........................8

       C.    The Missouri Court's Claim Construction Is Inconsistent
             With Syngenta's Position Here ..................................................11

       D.    Syngenta's Changing Claim Constructions ...................................13

       E.    Syngenta's New Definition Excludes Art-Recognized CTPs
             Known At The Time The '835 Patent Was Filed ...........................16

V.     ARGUMENT ...................................................................................17

       A.    Syngenta's Motion Does Not Meet The Standards
             Necessary For Summary Judgment .............................................17

       B.    The Court Should Adopt Monsanto's Proposed
             Construction Of Chloroplast Transit Peptide................................19

             1.    Syngenta's "naturally occurring" Claim Language
                   Is Inconsistent With The Specification And Based
                   Upon An Irrelevant Argument.............................................19

             2.    No Cleavage Requirement Should Be Included In
                   the Definition Of A CTP, Much Less A
                   Requirement That Cleavage Occur Only At A
                   Particular Place To Leave Only A Mature EPSPS .........................21

       C.    Syngenta Would Infringe Even Under Its Own Proposed
             Construction..................................................................................22

D.  Syngenta's "Cleavage To Leave A Mature EPSPS"
Limitation Must Be Rejected ...................................................................23

1.  Syngenta's New Limitation Contradicts That Of
The Missouri Court..........................................................................23

2.  Syngenta's Position Is Also Inconsistent With
Controlling Law Of The Federal Circuit ........................................24

E.  Dr. Keegstra's Testimony Taken As A Whole Undercuts
Syngenta's Motion..................................................................................25

F.  Syngenta Has Failed To Address The Infringement Under
The Doctrine Of Equivalents ..................................................................26

VI.  CONCLUSION..................................................................................................27

## TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby,*
   477 U.S. 242 (1986) .................................................................................................. 18

*Bell Atlantic, Network Servs. v. Covad Communs. Group,*
   262 F.3d 1258 (Fed. Cir. 2001) ................................................................................ 22

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ............................................................................................ 17, 26

*Genentech, Inc. v. Chiron Corp.,*
   112 F.3d 495 (Fed. Cir. 1997) .............................................................................. 24, 25

*Gillette Co. v. Energizer Holdings,*
   405 F.3d 1367 (Fed. Cir. 2005) ............................................................................ 21, 25

*Innovad Inc. v. Microsoft Corp.,*
   260 F.3d 1326 (Fed. Cir. 2001) ................................................................................ 22

*Invitrogen Corp. v. Clontech Labs, Inc.,*
   429 F.3d 1052 (Fed. Cir. 2005) ................................................................................ 19

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 25, 26

*Playtex Products v. Proctor & Gamble Co.,*
   400 F.3d 901 (Fed. Cir. 2005) .................................................................................. 20

*Sanchez & Son, Inc. v. United States,*
   6 F.3d 1539 (Fed. Cir. 1993) .................................................................................... 18

## RULES

Fed. R. Civ. P. 56(c) ............................................................................................ 17, 18

D. Del. L. R. 7.1.3(c)(2)............................................................................................ 19

## I.    INTRODUCTION

Plaintiffs Monsanto Company and Monsanto Technology LLC ("Monsanto") and Plaintiff DEKALB Genetics Corporation oppose Syngenta's motion for summary judgment of non-infringement of the Shah '835 patent. Syngenta's argument boils down to it does not infringe the '835 patent because the chimeric gene in the accused GA21 corn contains two transit peptides rather than one. That argument cannot possibly be correct. There is no dispute that the chimeric gene in the accused GA21 corn products contains a chloroplast transit peptide ("CTP"), as that term is properly construed. Moreover, Syngenta would even infringe under the claim construction Syngenta itself proposed in the parties' Joint Claim Construction Statement ("JCCS"). For that reason, Syngenta attempts to support its motion by (1) proposing a new claim construction in its brief that requires the CTP to be cleaved at a precise position so as "to leave the mature EPSPS protein" [Syn. '835 NI Br. at 22] and (2) advancing incorrect technical arguments about the way in which the OTP allegedly functions [*Id.* at 6]. Neither has merit. Syngenta does not even attempt to address the issue of the doctrine of equivalents. Syngenta's excuses as to why it should not be held liable for its infringing acts fail as a matter of fact and law.

## II.    NATURE AND STAGE OF PROCEEDINGS

On May 12, 2004, Monsanto brought C.A. No. 04-305-SLR (lead case) in this Court against Syngenta for infringement of U.S. Patent No. 4,940,835 ("the '835 patent") when Syngenta announced its "acquisition of rights to GA21 corn technology" from Bayer CropScience and its intent to sell GA21 corn, which is resistant to the herbicide glyphosate. The '835 patent claims asserted in this case are directed to chimeric genes that provide plants with resistance to glyphosate. Monsanto sells glyphosate herbicide

under the RoundUp Ready® trademark. Monsanto had previously sued Bayer for infringement of the '835 patent regarding Bayer's activities with GA21 corn. ▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

## III.    SUMMARY OF ARGUMENT

If the Court rejects Syngenta's improper attempt to read extraneous limitations into the claim term "chloroplast transit peptide" – that the CTP be "naturally occurring" and that it be "cleaved (or removed)" from the EPSPS protein – then the Court need not even consider Syngenta's motion. Even if those extra limitations are read into the term "CTP," the motion cannot succeed because Syngenta has failed to present evidence establishing that the GA21 corn being sold by Syngenta would not meet those limitations.

Despite attorney arguments to the contrary, Syngenta has failed to offer any evidence that the chimeric gene in GA21 corn does not contain a "naturally occurring CTP." In fact, the so-called "OTP" discussed in Syngenta's brief *does* contain a naturally occurring CTP from sunflower, located at the front end of the OTP, which functions to cause transport of the EPSPS into chloroplasts. That evidence alone presents a genuine issue of material fact which precludes summary judgment. Moreover, the facts that the OTP also contains (1) a bit of intervening linker protein which is also naturally occurring and (2) a second naturally occurring CTP located at the back end which provides an additional cleavage site, cannot save Syngenta from liability for infringement.

The Missouri court's claim construction and Federal Circuit law establish that Syngenta cannot avoid infringement simply because GA21 corn has additional elements

2

located between the CTP and the EPSPS. The Missouri court correctly rejected Bayer's attempt to introduce a requirement that the CTP and EPSPS be "directly adjacent" to one another in the CTP/EPSPS fusion polypeptide. Such a construction would preclude the existence of additional elements between the CTP and the EPSPS. Such a requirement would also contradict controlling Federal Circuit precedent holding that "comprising" claims are open to the inclusion of additional elements.

Syngenta attempts to side-step this law and the Missouri court's claim construction by proposing for the first time that not only must the CTP be cleaved, it must be cleaved to leave only "the mature EPSPS." Such a monumental importation of extraneous material into the claim language cannot be countenanced under Federal Circuit law. Syngenta's interpretation that the Court should ignore individual pieces of the OTP and instead view it only "as a whole" is directly contrary to the Missouri court's construction. Syngenta's argument would also result in a construction of "CTP" that excludes examples of art-recognized CTPs, which are identified as such in Syngenta's own brief.

## IV.    STATEMENT OF FACTS

### A.    The Naturally Occurring Elements Of The OTP

It is undisputed that the three-element OTP in the GA21 corn being sold by Syngenta contains (1) a sunflower CTP from a protein known as RuBisCO, (2) a linker from the maize RuBisCO protein, and (3) a second CTP sequence, also from a maize RuBisCO protein. The sunflower CTP is located at the front end or N-terminal portion of the OTP, the maize RuBisCO linker is located in the middle, and the second CTP sequence from maize is located at the back end or C-terminal portion of the OTP. [Ex. 1, Keegstra Decl. at ¶ 5] Both transit peptides are located at the front end of the N-terminal

3

portion of the EPSPS enzyme. [*Id.*] These elements in relation to the EPSPS enzyme are graphically depicted below. [*Id.*]



After the EPSPS enzyme has been transported to the chloroplast, it functions in plant cells to confer glyphosate resistance. [*Id.* at ¶ 5] Because the sunflower CTP is located at the extreme N-terminal portion of the protein, it interacts with the import apparatus of the chloroplast membrane and causes importation of the EPSPS into the chloroplast. [*Id.* at ¶¶ 4, 5] There is no dispute that the sunflower CTP is identical in sequence to that found in nature and thus retains its original cleavage site. [*Id.* at ¶ 5] The maize linker and maize CTP sequence are also naturally occurring. [*Id.*] Thus, the OTP is made up of a series of three elements, each of which comes from a natural source. [*Id.*]

There is no dispute that the sunflower CTP retains its own naturally occurring cleavage site. This is a site at the back end of the sunflower CTP (cleavage site #1) at which an enzyme in the plant cuts the sunflower CTP away. [*Id.*] The maize CTP also has a cleavage site at its back end (cleavage site #2) [*Id.*], and Syngenta has admitted that the maize CTP is also cleaved from the mature portion of the EPSPS enzyme. [Syn. '835 NI Br. at 6]

Syngenta attempts to explain the way the OTP functions in a drawing at page 6 of Syngenta's motion, which is reproduced below.



Based on this drawing, Syngenta states "that the entire OTP as a whole is removed" and that it is undisputed that this is so. [Syn. '835 NI Br. at pp. 6, 22] However, Syngenta's assertion is unsupported by any evidence. Contrary to Syngenta's assertions, the OTP is not "removed as a whole" and does not function as "a whole." [Ex. 1 at ¶ 5] Rather, because each of the CTP sequences has its own cleavage site, each of the CTP sequences is cleaved. [Id] Thus, a more accurate depiction is set forth below:



As this figure shows, the sunflower CTP functions to direct the EPSPS protein to the chloroplast, is cleaved at cleavage site #1 and is located at the N-terminal portion of the EPSPS protein. [*Id* at ¶¶ 4, 5]  The additional maize CTP merely adds an additional point of cleavage (cleavage site #2) and plays no known role in importing the EPSPS enzyme into the chloroplast.  [*Id*]   Hence, the maize linker and maize CTP are merely intervening elements between the functional CTP and the EPSPS.

**B.    Claim 1 Of The '835 Patent And The '835 Specification**

Claim 1 of the '835 patent reads as follows:

1. A chimeric plant gene which comprises:

(a) a promoter sequence which functions in plant cells;

(b) a coding sequence which causes the production of RNA, encoding a chloroplast transit peptide/5-enolpyruvylshikimate-3-phosphate synthase fusion polypeptide, which chloroplast transit peptide permits the fusion polypeptide to be imported into a chloroplast of a plant cell; and

(c) a 3' non-translated region which encodes a polyadenylation signal which functions in plant cells to cause the addition of polyadenylate nucleotides to the 3' end of the RNA;

the promoter being heterologous with respect to the coding sequence and adapted to cause sufficient expression of the fusion polypeptide to enhance the glyphosate resistance of a plant cell transformed with the gene.

### 1.    The Claim Does Not Require That The CTP Be Naturally Occurring But Instead It Exemplifies CTPs That Are Not

Properly construed, claim element (b), which is the focus of the instant motion, requires no more than a CTP/EPSPS fusion polypeptide. The claim does not state that the CTP must be "naturally occurring." The only requirement that claim element (b) imposes on the CTP is that the CTP "permits the fusion polypeptide to be imported into a chloroplast of a plant cell." Plaintiffs' proposed construction, "a series of amino acids that cause the transport of a polypeptide into a chloroplast" (Ex. 2, JCCS at 30), is in keeping with the plain language of the claim.

Syngenta claims that "the only ... amino acid sequence for a CTP actually disclosed in the '835 patent is the naturally occurring petunia CTP from the EPSPS gene" and that "of the CTPs known to exist as of the 1985-1986 time frame, all of them were naturally occurring." [Syn. '835 NI Br. at 10] That assertion on its face creates issues of fact that preclude summary judgment. But, contrary to Syngenta's assertions, the specification specifically exemplifies a CTP that is *not* naturally occurring and also discloses its amino acid sequence. As explained in Pl. OM Br. at p. 27, the CTP in Example 19 has specified changes to the last 6 amino acids of the CTP, and is thus not naturally occurring. Instead, it is a hybrid CTP made up of two elements – one part from the EPSPS CTP and one part from the RuBisCO CTP. [col. 30, l. 42-col. 31, l. 15] The amino acid sequence of the EPSPS CTP portion is set forth in the first 66 amino acids in Figure 4a. The amino acid sequence of the RuBisCO portion is set forth at col. 30, l. 62 as gly-gly-arg-val-ser-cys/met. The substitution of the last 6 amino acids did not merely

7

to insert a restriction site so as to permit the CTP to be joined to a passenger protein; it was a change to make a hybrid CTP [Ex. 1 at ¶ 9]. Thus, to the extent the term "naturally occurring" is construed to exclude CTPs of naturally occurring elements, that would contradict the disclosure of the '835 patent itself and exclude a disclosed embodiment from claim coverage.

### 2.    The Specification Uses The Term "Import" In A Manner That Distinguishes It From Cleavage

There is also nothing in the language of the claim that requires the CTP to be cleaved (or removed) from the EPSPS at any point– much less anything to require that it be cleaved at a particular position between the CTP and EPSPS portion of the CTP/EPSPS fusion polypeptide. The claim only requires that the CTP permits "import" into the chloroplast.

The specification is consistent with the claim language and uses the term "import" in a manner that distinguishes it from "removal" or cleavage.

> The CTP leader sequence causes the polypeptide to be *imported* into chloroplasts, and the CTP leader sequence encoded by the plant-derived EPSPS gene is believed to be *removed* from the remainder of the polypeptide so that an active portion of the EPSPS polypeptide exists and functions inside the chloroplast.

[Syn. '835 NI App. at A11, col.4, lines 28-34 (emphasis added)] [1]  The specification also

---

[1] Dr. Keegstra testified that this portion of the specification (upon which Syngenta is relying to support its argument that a cleavage limitation should be imported into the definition of a CTP [Syn. OM Br. at 32]) suggests exactly the opposite:

> A.    [T]hat is, in fact, one of the places where they use 'import' to mean translocation, because that sentence would – that sentence only makes sense if you read, The CTP leader sequence causes the polypeptide to be translocated into chloroplasts, and the CTP leader sequence encoded by the plant-derived EPSPS gene is believe to be removed.' If the word 'import' there included processing [i.e., cleavage], it would be a nonsensical sentence.

refers to cleavage as being preferred, but it does not say it is necessary.

> EPSPS genes which encode an enzyme with a functional chloroplast transit peptide (which is **preferably removed** from the mature EPSPS polypeptide) also provide useful selectable marker genes for plant cell transformation.

[*Id.* at A12, col. 5, lines 41-43 (emphasis added)]

Contrary to Syngenta's assertions at p. 20 of its brief that "the Missouri court assumed cleavage to be an intrinsic feature of a CTP," and that none of the parties argued to the contrary, Dr. Keegstra specifically testified that the meaning of the term "CTP" as advanced by Monsanto did not include "proteolytic removal" or cleavage.

> Q.    (By Mr. Pazuniak) By your definition that you have given to the Court, would it include any CTPs, whether or not they remained attached to the passenger protein inside the chloroplast?
>
> A.    I guess by my definition, yes, that would be true, since *we have not made proteolytic removal part of our definition*. If they remained attached, they would be covered.

[Ex. 4, *Markman* Tr. at 88 (emphasis added)]

The Missouri court defined "import" in a manner consistent with the specification and with Monsanto's definition as not requiring cleavage:

> 'Permits' means allows. '*To be imported' means for something to be carried into some place.* That's what the words mean, and that's the function of the CTP. It permits a polypeptide to be imported into a chloroplast. That's what the words say and that's what they mean . . . .

[Syn. '835 NI App. at A37, ll. 14-18 (emphasis added)]

Dr. Keegstra agreed that the specification of the '835 patent supported the Missouri court's construction as not requiring cleavage. Dr. Keegstra testified:

> Q.    Now, just so I understand what you were telling Mr. Edwards, is it your belief that the way the term 'import' is used in the '835 patent that it doesn't include cleavage? Is that what you're testifying to?

[Ex. 3, Keegstra Tr. at 149:13-22]

> A.    I think -- I think I said this before in my previous deposition.
> I came across this statement in my review of that, that it was my
> impression -- and I haven't gone back and checked  this -- that the '835
> patent was not internally consistent in how it used the term 'import.' ***But
> by and large, I think when they use the term 'import,' they mean what I
> would call translocation.***

[Ex. 3, Keegstra Tr. at 148:13-25 (emphasis added)]

Thus, reliance by Syngenta on Dr. Keegstra's testimony is misplaced.  Syngenta

fails to point out that in the testimony cited by Syngenta Dr. Keegstra was requested to

*ignore* the prior court's construction based on the teachings in the specification.  [Ex. 3,

Keegstra Tr. at 49:12-16]  Dr. Keegstra explained that the deposition testimony now

highlighted in Syngenta's brief was based on a modern day understanding of the

chloroplast import process as a whole, not what was the state of the knowledge at the

time the application was filed.  [Ex. 3, at 54:14-63:18]  Dr. Keegstra testified:

> You expressed earlier, in response to a question from Mr. Levine,
> that despite having a difference of opinion, based on your scientific
> definition of 'import,' that I think you indicated that you do not strongly
> disagree with the Court's definition of 'import.'  Why is that?
>
> A.      I think there are two reasons for that. ***One is that I think
> what the judge was taking into account, at least I assume what the judge
> was taking  into account, was the state of the knowledge at the time of
> the '835 patent, and a lot of what I've been talking about here is
> knowledge that has come  subsequent.***
>
> In *1984-85*, as I've described several times during the course of the
> events today, we had a very poor understanding of this process of protein
> import, and so it was – ***it was quite common for people to use the term
> 'import' to talk just about the movement of the protein into the
> chloroplast.*** . . .
>
> ***So I think in part, it makes sense to use that definition because
> that reflects the state of the knowledge in 1985***; in part, because there are
> still folks who use it that way. ***I think the '835 patent, by and large, used
> it that way.***

[Ex. 3, Keegstra Tr. at 145:17-146:18 (emphasis added)]

10

In responding to this opposition brief, Syngenta's reply may point to additional testimony by Dr. Keegstra but that testimony too would merely create more issues of fact.[2] Based upon the Missouri court's construction, which took into account the claim defining factors of the teachings of the specification and the skill of the art at time the applications was filed, Dr. Keegstra concluded that the CTP from sunflower, rather than the OTP as a whole, met the CTP limitation of the '835 patent claims.

> Q.    Based on the way that the term 'import' is used in the '835 and the Court's definition of the term 'import,' do you -- what portion of the -- what portion of the three-piece construct described in the 36,449 patent would you consider the chloroplast transit peptide?
>
> THE WITNESS:  *I would consider it to be the sunflower, the sunflower CTP, the one that's at the most amino-terminal before the bit of mature. Yes, that's the part that's -- in my opinion, that is the part that is doing the translocation, and if we define 'import' as translocation, that's the part of that molecule that does it.*

[*Id.* at 147:15-148:4 (emphasis added)]

Thus, when the patent claim is properly interpreted, considering the specification and the skill of the art at the time, Dr. Keegstra's conclusions do not support the position advanced by Syngenta.

### C.    The Missouri Court's Claim Construction Is Inconsistent With Syngenta's Position Here

Syngenta correctly points out that the Missouri court required that the CTP in the CTP/EPSPS fusion polypeptide had to be "naturally occurring," a position with which Plaintiffs openly disagree. But, Syngenta also fails to mention that the Missouri court's construction of the entire claim term "chloroplast transit peptide/5-enolpyruvylshikimate-3-phosphate synthase fusion polypeptide" ("CTP/EPSPS"), of which the term CTP is the

---

[2] *See, e.g.*, Keegstra Tr. at 52:8-16 discussing the fact that there were two cleavage sites in the OTP "as a matter of science."

first part, is inconsistent with Syngenta's proposed construction here which seeks to have the Court interpret the term CTP so as to exclude the presence of elements intervening between the CTP and EPSPS.

The Missouri court construed the claim term CTP/EPSPS fusion polypeptide to mean "a polypeptide that has *at least* two parts, which must *include* a chloroplast transit peptide (as defined above) *joined* to an EPSPS . . . ." [Syn. '835 NI App. at A161-62] The term "joined" does not exclude the presence of intervening elements between the CTP and the EPSPS. In fact, the Missouri court specifically rejected Bayer's attempt to require that the CTP and EPSPS be "directly adjacent" to one another. The Court stated:

> Now, I'm not including Bayer's urged language that they have to be directly adjacent to one another, as I don't believe there is anything in the claim language or anywhere else that provides that restriction, and so that is not included in the construction I've adopted.

[*Id.* at A36, ll. 20-24]

Instead, the Missouri court expressly adopted Monsanto's construction that the polypeptide "has *at least* two parts," which correctly leaves the claim open to the inclusion of additional elements, such as a linker protein and a second CTP sequence between a CTP and an EPSPS in the CTP/EPSPS fusion polypeptide. That interpretation is consistent with the transitional phrase "comprising" used in the claim preamble.

Here, Syngenta's expert, Dr. Bruce, has agreed that the claim is open to the inclusion of such elements. Dr. Bruce's report states:

> Implicit in my definition above is that [chloroplast transit peptide/5-enolpyruvylshikimate-3-phosphate synthase fusion polypeptide] requires a chain of amino acids comprising *two or more distinct elements* . . . .

[Ex. 5, Bruce Rpt. at ¶ 27 (emphasis added)] In keeping with that conclusion, Dr. Bruce testified that he would not read the claim term to exclude additional "elements

intervening between the chloroplast transit peptide and the mature EPSPS coding sequence." [Ex. 6, Bruce Tr. 60:24-61:8]

Thus, under the Missouri court's construction of "CTP/EPSPS fusion polypeptide," as well as Dr. Bruce's construction of that term, the accused GA21 corn satisfies the CTP/EPSPS limitation because the sunflower CTP is naturally occurring; the presence of an EPSPS is undisputed; any intervening elements, *i.e.*, the maize RuBisCO linker and the second CTP, are merely additional features. The presence of the additional linker element and the additional CTP sequence from maize does not negate infringement, even under the Missouri court's requirement that the CTP be naturally occurring.

### D.   Syngenta's Changing Claim Constructions

Syngenta's motion is based on a new proposed claim construction that imposes further limitations on the meaning of the term "chloroplast transit peptide" that were not present in the claim construction proffered by Syngenta in the parties' Joint Claim Construction Statement ("JCCS").

Syngenta's proposed definition of CTP continues to change over time.   In Dr. Bruce's original expert report, there was no cleavage requirement.   Dr. Bruce stated:

> The term chloroplast transit peptide means a naturally occurring chain of amino acids that is naturally located at the N-terminal portion of a nuclear-encoded polypeptide. . . .

[Bruce Rpt. at 17]   This is essentially the same definition that was advanced in Syn. Supp. Resp. to Interrogatory No. 3 [Ex. 7, pp. 6-8].   Dr. Bruce changed this definition to include a "cleavage" requirement for the first time in his Rebuttal Expert Report on November 11, 2005.   [Bruce Reb. Rpt., Ex. 8 at ¶ 6]

13

By December 2005, when the original proposed claim constructions were exchanged, Syngenta proposed the following definition of CTP:

> [A] naturally occurring chain of amino acids that is naturally located at the N-terminal portion of a nuclear-encoded polypeptide, which directs the polypeptide to a chloroplast and is cleaved therefrom.

[Ex. 9, p. 1]

In the JCCS filed January 11, 2006, Syngenta again changed its proposed construction allowing yet further limitations:

> [A] naturally occurring chain of amino acids that is located at the N-terminal portion of a nuclear-encoded polypeptide, which directs the polypeptide to a chloroplast and is cleaved (or removed) from the EPSPS polypeptide.

[Ex. 2, JCCS at 30]

Now, in its *Markman* Brief and non-infringement motion, Syngenta has again changed its claim construction for CTP so that it now includes further limitations on specific cleavage:

> [A] naturally occurring amino acid sequence that is located at the N-terminal of a protein that functions to target the EPSPS protein to the chloroplast and is cleaved to leave the mature protein.[3]

[Syn. OM Br. at 34]

There is nothing in either Syngenta's original proposed construction in the JCCS that specifies that the CTP must be cleaved at the point where it would leave only the mature EPSPS protein.   It is only here for the first time that Syngenta advanced this additional limitation.

---

[3] Syngenta's briefs contain various statements of its latest proposed claim interpretation, but all are consistent in the change specifying that the CTP must be cleaved to leave "the mature EPSPS."

Syngenta's own uncertainty in its multiple claim constructions underscores the shortcomings of its position. Syngenta's original proposed construction of CTP merely required the use of a CTP that was "naturally occurring" and thus retained its naturally occurring cleavage site. The function of the CTP in the chimeric gene - targeting the EPSPS protein to the chloroplast - is spelled out in the remaining claim language "which permits the fusion polypeptide to be imported into a chloroplast of a plant cell."

Two days before the JCCS was due, Syngenta changed its construction to delete the "naturally located" language from its original construction. Syngenta also substituted the words "the EPSPS polypeptide" for the word "therefrom," which had originally referred to the polypeptide that the CTP was "naturally located at the N-terminal portion of." Syngenta made this last minute switch because the former construction mandated examination of the individual elements making up the OTP, as contemplated by the Missouri court's claim construction. Syngenta's original construction clearly encompassed the CTP from sunflower because, in nature, the sunflower RuBisCO CTP is known to be cleaved from the sunflower RuBisCO protein. [Ex. 1 at ¶ 5]

However, Syngenta's last minute switch still did not distinguish the OTP. The proposed construction in the JCCS would also include the chimeric gene in the accused GA21 corn. That is because the naturally occurring sunflower CTP retains its cleavage site so that it is cleaved from the protein with which it occurs in nature *and* it is also cleaved from the EPSPS protein encoded by the chimeric gene in the accused GA21 corn. [*See* Ex. 1 at ¶ 5]

15

Having failed to propose a construction that does not include the chimeric gene in GA21 corn, Syngenta now takes the position that the CTP must be N-terminal to and must be cleaved to leave "a mature EPSPS" protein stating:

> The requirement (3) of the definition of the CTP – that it ***must be removed to leave a mature protein*** – provides strong support for examining the OTP as a whole rather than considering just one of the components of the OTP.

[Syn. '835 NI Br. at 22 (emphasis added)]

Syngenta's new "requirement 3" would completely negate the Missouri court's holding that the CTP/EPSPS fusion polypeptide could contain additional intervening elements because, as mentioned above, if the CTP has to be cleaved to leave only the "mature EPSPS protein," there can be no elements intervening between the CTP and EPSPS as the claim language plainly permits and the Missouri court so found.

### E. Syngenta's New Definition Excludes Art-Recognized CTPs Known At The Time The '835 Patent Was Filed

Syngenta's new definition would exclude CTPs so labeled by Syngenta at pages 4 and 5 of its brief. At the time the '835 patent was filed, it was recognized that one could employ a CTP followed by an additional element (a portion of the mature protein with which the CTP was found in nature), followed by a protein of interest to be targeted to the chloroplast. [Ex. 1, Keegstra Decl. at ¶ 6] CTPs of this type are taught, for example, by Schreier, et al., *EMBO J.* January 1985; 4(1): 25–32. [*Id.*] The Schreier approach was subsequently utilized by Comai in 1988 as discussed at pp. 4-5 of Syngenta's brief. A construct of the type disclosed by Comai included a naturally occurring CTP segment, worked to target the EPSPS to the chloroplast, and had a portion that was cleaved from the EPSPS [*see* Syn. '835 NI Br. at 4], but because the cleavage site was 24 amino acids upstream from the sequence encoding the mature EPSPS enzyme, the CTP portion was

16

not removed to leave a mature EPSPS protein. [Ex. 1 at ¶ 6]  Contrary to Syngenta's assertions, the presence of the additional amino acids did not "interfere with the EPSPS's activity."  [*Id.* at ¶ 7]  This yet another of the numerous factual disputes that preclude summary judgment.

The Schreier-type constructs were universally acknowledged to contain a CTP [*Id.*], and even Syngenta repeatedly labels such constructs as including a "CTP" in its motion, see pp. 4-5.  But, the definition of CTP adopted in Syngenta's motion – that the CTP must be cleaved to "leave a mature protein" – would exclude such constructs.  [*Id.*]  Thus, Syngenta's third proposed construction is inconsistent with the understanding in the art at the time, as well as the presentation set forth in Syngenta's own brief.

## V.   ARGUMENT

Syngenta supports its motion by (1) ignoring the Missouri court's construction of "CTP/EPSPS fusion polypeptide" that allowed additional elements to occur between the CTP and EPSPS fusion polypeptide, (2) importing a non-existent restriction into the definition of CTP to require that the CTP must be cleaved precisely at the N-terminus of the mature EPSPS protein, and (3) advancing an unsupported argument that the "entire OTP as a whole is removed" [Syn. '835 NI Br. at 22].  Not one of these can be sustained, much less all of them, as would be required for Syngenta to succeed on its motion.

### A.   Syngenta's Motion Does Not Meet The Standards Necessary For Summary Judgment

Summary judgment may be entered only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

As the movant, it is Syngenta's burden to come forward with a showing sufficient to establish the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c). Judgment cannot be sustained in favor of the movant unless the movant makes a showing establishing that there is no version of the facts that could support a claim in favor of the non-movant. *See Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1546; (Fed. Cir. 1993), citing *Liberty Lobby, 477 U.S. at 250*

Syngenta's motion violates these standards. As discussed below, not only is Syngenta's motion based on an improper claim construction, Syngenta has asked the Court to draw multiple inferences in its favor, such as to infer "that the Missouri court assumed cleavage to be an intrinsic feature of a CTP." [Syn. '835 NI Br. at 20] Moreover, Syngenta relies solely on attorney arguments about what the OTP is and how it works – most of which are wrong and, in any event, disputed. For example, without any supporting evidence Syngenta states that (1) the "***entire OTP as a whole*** is removed" [Syn. '835 NI Br. at 22];[4] (2) the presence of extraneous amino acids at the N-terminal portion of the EPSPS protein "would interfere with the EPSPS's activity" [*Id.* at 5]; (3) one needed to include a portion of the CTP's mature protein to "obtain efficient targeting" [*Id.*]; and (4) "the OTP increases efficiency of transport" [*Id.* at 4]. None of these assertions is factually true, and all are disputed.

---

[4] Syngenta cites Dr. Keegstra's testimony. [Syn. '835 NI Br. at 22] But Dr. Keegstra never testified to that effect – he merely said that the elements of the OTP were "completely removed," not that the OTP was removed "as a whole."

Syngenta similarly ignores the fact that the naturally occurring sunflower CTP retains its own cleavage site and it is independently cleaved from the EPSPS protein, much less presents any evidence that it is not – a flaw that is fatal to its motion under Syngenta's own proposed construction in the JCCS required by the this Court.

Despite making broad assertions about the OTP and how it allegedly "functions as a whole" and its so-called advantages, Syngenta has offered absolutely no evidence to prove those assertions. [Ex. 1] *See Invitrogen Corp. v. Clontech Labs, Inc.,* 429 F.3d 1052, 1068 (Fed. Cir. 2005) (criticizing use of unsubstantiated attorney argument regarding the meaning of technical evidence.) Because Syngenta did not adequately support its motion in the first instance, any attempt to fix this deficiency in a reply brief should be rejected. *See* D. Del. L.R.7.1.3(c)(2).

**B.    The Court Should Adopt Monsanto's Proposed Construction Of Chloroplast Transit Peptide**

   **1.    Syngenta's "naturally occurring" Claim Language Is Inconsistent With The Specification And Based Upon An Irrelevant Argument**

Syngenta's attempt to introduce the requirement that a CTP be defined as a "naturally occurring sequence of amino acids" reads a limitation into the term "chloroplast transit peptide" that is not there. Although the patent directs one skilled in the art *to sources* for CTPs that are from plants or from natural sources [Syn. '835 NI App. at A33, ll. 21-22 (emphasis added)], that does not require a conclusion that a CTP may not contain amino acid additions or substitutions and still be recognized by those of skill in the art as a CTP. CTPs having amino acid sequences that are not all "naturally occurring" are specifically contemplated by the '835 patent, as set forth in Example 19, but would be excluded Syngenta's definition of a "naturally occurring" series of amino

acids. The result, construing a claim term to exclude embodiments in the examples without any basis in the language of the claims, is disfavored. *See, e.g., Playtex Products v. Proctor & Gamble Co.*, 400 F.3d 901 (Fed. Cir. 2005) (claims of a patent may be limited to a preferred embodiment only by the express declaration of the patentee).

Much of Bayer's argument to the Missouri court that the chloroplast transit peptide must be "naturally occurring" rested upon a conclusion that, as of the filing date, entirely synthetic chloroplast transit peptides that had been prepared starting from scratch in the laboratory, *i.e.*, synthetic molecules that would function like a CTP but that had been designed "*a priori*" "from first principles" were not known. Dr. Bruce recently explained the nature of such CTPs as follows:

> Q.    Okay. Okay. I think we're on the same page now. And I think what I'm understanding you're saying, basically, is when you're saying a priori and first principles, that one of skill in the art in that 1985-1986 time frame did not know how to sit down with a piece of paper and design a chloroplast transit peptide that would function just by choosing individual amino acids and lining them up?
>
> A.    No. As much as, you know, I said it in my own words, I think that we're saying the same thing.

[Ex. 6, Bruce Tr. at 45:9-22]

That is the basis on which Bayer apparently convinced the Missouri court to adopt the requirement that a chloroplast transit peptide had to be "naturally occurring." In justifying this conclusion, the Missouri court stated:

> The references in the patent specification to sources for CTP all point to plants or naturally occurring substances, ***not to synthetic substances***. ... I do not believe that the patent contemplated that this term would include anything that might ever be invented that would function like a CTP.

[Syn. '835 NI App. at A33:21-A34:2 (emphasis added)]

But, even if such entirely synthetic "CTPs" were not known in 1985 as Syngenta has contended, the lack of that knowledge should not require reading a "naturally occurring" limitation into the claims, that would literally exclude the many types of changes that were known. Syngenta's emphasis on hypothetical "synthetic CTPs" is not supported by the intrinsic evidence and is nothing more than a red herring; clearly, an insufficient basis for inserting limitations into the claims that are not there. *See Gillette Co. v. Energizer Holdings*, 405 F.3d 1367, 1374 (Fed. Cir. 2005) ("words of expressions of ***manifest exclusion***" or "***explicit disclaimers*** in the specification" are necessary to disavow claim scope.") (emphasis added).

### 2. No Cleavage Requirement Should Be Included In the Definition Of A CTP, Much Less A Requirement That Cleavage Occur Only At A Particular Place To Leave Only A Mature EPSPS

As set forth in Pl. OM Br., pp. 28-29, Syngenta's attempt to require that the CTP be cleaved from the EPSPS is contradicted by the language in the specification, which distinguishes between transport (*i.e.*, import) and cleavage and repeatedly makes that distinction. *See, e.g.*, the passages cited in Pl. OM Br. at 28-29.

Thus, the specification indicates that the CTP performs an importing function, not a cleavage function. Although cleavage may occur during or after transport, this issue is not addressed by the plain language of the claim. Notably, the function of the CTP as set forth in the claim says nothing about the cleavage limitation that Syngenta is now trying to add to the claim. The Missouri court recognized this in its claim construction when it stated: "To be 'imported' means for something to be carried into some place." [Syn. '835 NI App. at A37: 14-15] Syngenta cannot override this statement simply by asking this Court to infer that the "Missouri Court assumed cleavage to be an intrinsic feature of a

21

CTP." [Syn. '835 NI Br. at 20]  Not only would drawing such an inference in Syngenta's favor be improper in the context of a motion for summary judgment, it is contradicted by what the Missouri court actually said based upon the record.

Monsanto's proposed definition, on the other hand, is fully in keeping with the Missouri court's understanding of what the specification considered to be the function of a chloroplast transit peptide.  As stated by the Missouri court, "I think when the patent is read as a whole, it is clear that Monsanto was claiming the process of getting this fusion gene [sic, protein] into the chloroplast . . . ."  [Syn. '835 NI App. at A38:15-17] Cleavage, whether it be at a certain time, position in the gene, or even at all, is not required by the plain language of the claims.

Thus, Syngenta's proposed construction of the term "chloroplast transit peptide" is a flagrant attempt to read limitations into the claim which is improper as a matter of law. *Bell Atlantic, Network Servs. v. Covad Communs. Group*, 262 F.3d 1258 (Fed. Cir. 2001); *Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1332 (Fed. Cir. 2001) (The "interpretative process forbids importing limitations from the specification into the defining language of the claims.").

### C.    Syngenta Would Infringe Even Under Its Own Proposed Construction

Even if this Court were to adopt the proposed claim construction filed by Syngenta in the parties' JCCS, however, the construct in GA21 corn would infringe.  It is undisputed that the OTP contains not one but two naturally occurring chloroplast transit peptide sequences.

Both CTP sequences are located at the N-terminal portion of the nuclear-encoded RuBisCO polypeptides with which they occur in nature.  Both CTP sequences are also

located at the N-terminal portion of the EPSPS after placement in the accused chimeric gene in GA21 corn. Further, Syngenta itself admits that the EPSPS is directed to the chloroplast so there is no dispute that at least one of the CTPs, *i.e.*, the sunflower CTP [Ex. 1 at ¶ 4], is effective in accomplishing that function. Finally, each of the naturally occurring CTPs in the "OTP" retains its own cleavage site so that each is cleaved (or removed) from the EPSPS polypeptide. [*Id.* at ¶¶ 4, 5]

Thus, even if the construction provided by Syngenta in the JCCS is adopted, the chimeric gene in the accused GA21 corn contains a chloroplast transit peptide within the meaning of the claims. Syngenta has utterly failed to establish that it does not.

**D.    Syngenta's "Cleavage To Leave A Mature EPSPS" Limitation Must Be Rejected**

Because GA21 corn infringes under Syngenta's own JCCS claim construction, Syngenta tries to avoid infringement by introducing *yet an additional* requirement into the construction – that the transit peptide be removed "as a whole" to leave a "mature EPSPS." Syngenta ignores the individual CTP component(s) of the OTP and insists on "viewing the OTP as a whole."

**1.    Syngenta's New Limitation Contradicts That Of The Missouri Court**

By layering the requirement of cleavage to leave only a "mature EPSPS protein" on the claim construction proposed in its JCCS, Syngenta is proposing a construction that is directly contrary to the Missouri court's construction, which held that there *could* be elements intervening between the CTP and the EPSPS. Specifically, if the CTP is cleaved at the point where it would leave only a mature EPSPS protein as Syngenta now asserts, there would be no room for such intervening elements to exist.

23

Syngenta attempts to ignore the distinction between import and cleavage made in the claims, the specification, and the Missouri court's claim construction by arguing that the Missouri court merely found that the ***timing*** of cleavage is not important, and then claiming that the exact ***point*** of cleavage in the protein is critical. Such a hyper-technical argument is contrary to the plain meaning of the claims and the Missouri court's construction and should be rejected.

### 2. Syngenta's Position Is Also Inconsistent With Controlling Law Of The Federal Circuit

Syngenta's new construction is also contravened by Federal Circuit precedent. In *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997), the Federal Circuit explicitly rejected a district court's claim construction much like that proposed by Syngenta here. In that case, an interference count required a DNA construct coding for human IGF-I joined in proper reading frame with a saccharomyces α-factor secretory leader and processing signal. The count read as follows:

> A DNA construct comprising a sequence coding for human insulin-like growth factor-I joined in proper reading frame with Saccharomyces alpha-factor secretory leader and processing signal sequence.

*Id.* at 497.

The district court had construed the count to exclude a construct which had both of the claimed elements but also included an additional element, DNA that encoded a collagenase cleavage site, between the IGF-I and α-factor secretory leader. The Federal Circuit reversed on grounds that this construction was unduly narrow and fundamentally at odds with the open-ended nature of comprising claims.

> ***This interpretation of the count is consistent with the open-ended term
> 'comprising.'*** 'Comprising' is a term of art used in claim language which

24

means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.

> ***The claim construction issue then becomes whether the term 'joined' forecloses the possibility of additional nucleotides being inserted between the two joined elements, the alpha-factor processing sequences and human IGF-I sequence. We find that it does not.***

*Id.* at 501 (citations omitted, emphasis added).

The *Genentech* precedent is directly on point with the issue here and confirms the Missouri court's construction with respect to the issue of intervening elements. As in *Genentech*, nothing here eliminates a construct which has elements intervening between the CTP and the EPSPS from the scope of the claim. The Missouri court reached that same conclusion, defining the CTP/EPSPS fusion polypeptide as including "at least two parts," a CTP and an EPSPS, and rejecting Bayer's attempt to require that the CTP and EPSPS be "directly adjacent" to one another.

### E.    Dr. Keegstra's Testimony Taken As A Whole Undercuts Syngenta's Motion

In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the Federal Circuit held that in construing claim language, it is proper to look at the meaning of claim terms . . . not in a vacuum but in the context of the written description. The intrinsic record usually provides the technological and temporal context to enable the Court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention. *Id.* at 1318; *Gillette Co.*, 405 F.3d at 1370. The Court in *Phillips* explained that extrinsic evidence is in general considered to be less reliable than the patent and its prosecution history in determining how to read claim terms, and a court should discount any expert testimony "that is clearly at odds with the claim construction mandated by the

claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." *Phillips* at 1318.

Although Syngenta repeatedly cites Dr. Keegstra's testimony in its brief, the testimony it cites was elicited in response to questions in which Dr. Keegstra was directed to disregard the Missouri court's claim construction. Moreover, the testimony upon which Syngenta relies was based, not on the patent specification viewed from the proper temporal context (*i.e.*, the vantage of one skilled in the art in 1985), but rather on subsequent knowledge, divorced from the patent specification. [*See* Ex. 3, Keegstra Tr. at 145:17-146:18] When Dr. Keegstra was directed to consider those factors, he concluded that the sunflower CTP met the CTP claim element. [*Id.* at 147:15-148:4]

### F.    Syngenta Has Failed To Address The Infringement Under The Doctrine Of Equivalents

Syngenta's brief does not address infringement under the doctrine of equivalents at all, much less come forward with any evidence to refute it. As explained in Plaintiffs' opposition to Syngenta's so-called "Daubert Motion," that doctrine is properly in the case. Because Syngenta did not provide any basis to rebut Plaintiffs' allegations that the "OTP" would infringe under that doctrine, Syngenta's motion must be denied for that reason as well. *See Celotex v. Catrett,* 477 U.S. 317, 325 (1986) (party advancing summary judgment must point out basis for its motion). Dr. Keegstra's Declaration provides evidence establishing that GA21 corn would infringe under that doctrine in any event. [*See* Ex. 1 at ¶ 10 explaining why the chimeric gene in GA21 corn would also infringe under the doctrine of equivalents.]

## VI.    CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court adopt Plaintiffs' proposed construction of CTP and reject Syngenta's motion for summary judgment.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, Texas 77092
Telephone (713) 787-1400

By:   */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19801
      Telephone (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

Dated:  January 26, 2005
Public Version Dated:  February 1, 2006
717604

*Attorneys for Plaintiffs*

27

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 1, 2006, the attached document

was hand-delivered to the following persons and was electronically filed with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on February 1, 2006, I have Federal Expressed the foregoing

document(s) to the following non-registered participants:

Richard F. Schwed
Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
   Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413

  */s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com