## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY and                )
MONSANTO TECHNOLOGY LLC,            )
                                    )
        Plaintiffs,                 )
                                    )        C. A. No. 04-305 SLR
    v.                              )            (Lead Case)
                                    )
SYNGENTA SEEDS, INC.                )
SYNGENTA BIOTECHNOLOGY, INC., et al., )
                                    )        **PUBLIC VERSION**
        Defendants.                 )
                                    )
_____     )
                                    )
DEKALB GENETICS CORPORATION,        )
                                    )
        Plaintiff,                  )
    v.                              )
                                    )
SYNGENTA SEEDS, INC.,               )
SYNGENTA BIOTECHNOLOGY, INC., ET AL. )
                                    )
                                    )
        Defendants.                 )

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
## SYNGENTA'S MOTION FOR SUMMARY JUDGMENT OF
## NON-INFRINGEMENT OF THE LUNDQUIST PATENTS

OF COUNSEL:

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
(713) 787-1400

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Monsanto Company,*
*Monsanto Technology LLC, and*
*DEKALB Genetics Corporation*

Dated: January 26, 2006
Public Version Dated: February 1, 2006

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   NATURE AND STAGE OF PROCEEDINGS ..................................................... 1

III.  SUMMARY OF THE ARGUMENT ................................................................... 3

IV.   STATEMENT OF MATERIAL FACTS NOT DISCLOSED BY
      SYNGENTA ........................................................................................................ 5

V.    ARGUMENT ....................................................................................................... 7

      A.    Syngenta's Argument That Dependent Claims Of The
            Patents Cannot Be Infringed If Independent Claim 1 Is Not
            Infringed Is Wrong As A Matter Of Law ................................................... 9

      B.    Because § 271(g) Applies To The Use Or Sale Of Products
            Made In The United States By A Patented Process, It Is
            Irrelevant That DEKALB Made The Original GA21 Event.................... 13

      C.    Syngenta Infringes By Completing The Claimed Process
            During The Term Of The '880 and '863 Patents..................................... 19

      D.    Syngenta Infringes The Asserted Claims Under §271(a)
            Even Though DEKALB Carried Out The Steps Recited In
            Claim 1 .................................................................................................... 22

      E.    The Asserted Claims Of The '880 Patent Are Infringed For
            The Additional Reason That They Are Directed To Methods
            Of Making Progeny Plants....................................................................... 24

VI.   CONCLUSION.................................................................................................. 27

# TABLE OF AUTHORITIES

## CASES

*Ajinomoto Co. v. Archer-Daniels-Midland Co.,*
    228 F.3d 1338 (Fed. Cir. 2000) ................................................................... 18

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S. Ct. 2505 (1986) ........................................................... 8

*Avery Dennison Corp. v. UCB Films PLC,*
    No. 95 C 6351, 1997 WL 665795 (N.D. Ill. Oct. 20, 1997) ........................... 14

*Bayer A.G. v. Housey Pharmaceuticals, Inc.,*
    340 F.3d 1367 (Fed. Cir. 2003) ................................................................... 14

*British Telecomm. v. Qwest Comm'ns Int'l, Inc.,*
    Nos. 03-526-SLR, 03-527-SLR; 03-528-SLR (D. Del., Feb. 24, 2004) ......... 14

*Cable Elec. Prods., Inc. v. Genmark, Inc.,*
    770 F.2d 1015 (Fed. Cir. 1985) ..................................................................... 7

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548 (1986) ........................................................... 7

*Demarest v. Manspeaker,*
    498 U.S. 184, 111 S. Ct. 599 (1991) ........................................................... 14

*Desper Prods., Inc. v. QSound Labs, Inc.,*
    157 F.3d, 1325 (Fed. Cir. 1998) ................................................................... 11

*E.I. DuPont de Nemours & Co. v. Monsanto Co.,*
    903 F. Supp. 680 (D. Del. 1995) ............................................................ *passim*

*General Foods Corp. v. Studiengesellschaft Kohle mbH,*
    972 F.2d 1272 (Fed. Cir. 1992) ................................................................... 21

*Graffenried v. U.S.,*
    25 Cl. Ct. 209, 24 U.S.P.Q.2d 1594 (1992) ................................................... 21

*Idacon, Inc v. Central Forest Products, Inc.,*
    No. 82-158-C, 1986 WL 15837 (E.D. Okla. Apr. 25, 1986) ........................... 23

*Jeneric/Pentron, Inc. v. Dillon Co.,*
    205 F.3d 1377 (Fed. Cir. 2000) ................................................................... 10

*London v. Carson Pirie Scott & Co,*
    946 F.2d, 1534 (Fed. Cir. 1991) ................................................................... 11

ii

*MLMC, Ltd. v. Airtouch Comm'ns, Inc.,*
   172 F. Supp. 2d 557 (D. Del. 2001) .............................................................................. 11

*Mycogen Plant Science, Inc. v. Monsanto Co.,*
   252 F.3d 1306 (Fed. Cir. 2001) ............................................................ 11, 19, 20, 21, 22

*Oak Tech., Inc. v. Int'l Trade Comm'n,*
   248 F.3d, 1316 (Fed. Cir. 2001) .................................................................................. 10

*Shamrock Technologies, Inc. v. Precision Micron Powders, Inc.,*
   No. 91-0869, 1991 WL 335362,  (E.D.N.Y., Aug. 8, 1991) ......................................... 14

*Trustees of Columbia University v. Roche Diagnostics GmbH,*
   272 F. Supp. 2d 90 (D. Mass. 2002) ............................................................................ 19

*Wahpeton Canvas Co. v. Frontier, Inc.,*
   870 F.2d 1546 (Fed. Cir. 1989) .............................................................. 9, 10, 11, 12, 13

*Wilson Sporting Goods Co. v. David Geoffrey & Assoc.,*
   904 F.2d 677 (Fed. Cir. 1990) ................................................................... 3, 9, 11, 12, 13

*Wolverine World Wide, Inc. v. Nike, Inc.,*
   38 F.3d 1192 (Fed. Cir. 1994) ...................................................................................... 11

## STATUTES AND REGULATIONS

35 U.S.C. § 271 (a) ................................................................... 4, 5, 18, 20, 22, 23, 24

35 U.S.C. § 271(g) ........................................... 3, 4, 5, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23

FED. R. CIV. P. 56(C) ..................................................................................................... 7

37 C.F.R. § 1.312 ........................................................................................................... 26

## OTHER AUTHORITIES

Chisum on Patents § 16.02[6][d][ii]16-69 (2004) ............................................................ 14

## I.    INTRODUCTION

Plaintiffs Monsanto Company and Monsanto Technology LLC (Monsanto) and DEKALB Genetics Corporation oppose Syngenta's motion for summary judgment of non-infringement of the Lundquist '880 and '863 patents. There is no dispute that all of the steps recited in the asserted claims of the '880 and '863 patents were used in producing Syngenta's accused GA21 corn products. Syngenta has not demonstrated that it is entitled to summary judgment of noninfringement as a matter of law.

## II.    NATURE AND STAGE OF PROCEEDINGS

On May 12, 2004, Monsanto brought C.A. No. 04-305-SLR (lead case) in this court against Syngenta for infringement of U.S. Patent No. 4,940,835 (the '835 patent) when Syngenta announced its "acquisition of rights to GA21 corn technology" from Bayer CropScience and its intent to sell GA21 corn, which is resistant to the herbicide glyphosate. The '835 patent is directed to genes that provide plants with resistance to glyphosate. Monsanto sells glyphosate herbicide under the RoundUp Ready® trademark. Monsanto had previously sued Bayer for infringement of the '835 patent regarding Bayer's activities with GA21 corn. ██████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████    Whatever rights Syngenta obtained from Bayer, they did not include any rights under the '835 patent, and Syngenta has asserted no such rights in this case.

On July 27, 2004, DEKALB brought an action in the Northern District of Illinois against Syngenta for infringement of "one or more of claims 1-9" of DEKALB's U.S. Patent No. 5,538,880 and for "one or more claims" of DEKALB's U.S. Patent

No. 6,013,863 (collectively, the Lundquist patents).[1]  Claim 1 of both Lundquist patents covers methods for making fertile transgenic corn plants having herbicide resistance (the '880 patent) and glyphosate resistance (the '863 patent).  Asserted claims 4-9 of the '880 patent and asserted claims 5-6 of the '863 patent cover methods of making progeny plants and seeds.  Syngenta has not claimed that it has any right to practice the asserted claims of the Lundquist patents through its acquisition of "rights to GA21 corn technology" from Bayer or otherwise.  The Illinois action was transferred to this Court and was designated as C.A. No. 05-355-SLR.  On August 23, 2005, it was consolidated with the lead case.  [D.I. 111]

In mid-2004, Syngenta announced that it was acquiring two U.S. seed companies, Garst and The Golden Harvest Companies.  Both had sold GA21 corn for a number of years under license from Monsanto, which included licenses under the '835, '880, and '863 patents.  After these suits were brought, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Accordingly, Plaintiffs amended their complaints to add Garst and The Golden Harvest Companies as defendants.  [D.I. 34, 90 att. 6, and 111]  The parties completed all

---

[1] Thus, the assertion in Syngenta's Brief at 6 that DEKALB's complaint charged Syngenta with infringing "the claims" of the '863 patent and "claims 1-9" of the '880 patent is wrong.  Syngenta's assertion that "DEKALB admitted that it no longer contends that Syngenta infringed claim 1 of either patent" [*id.*] is also wrong, since DEKALB never asserted infringement of claim 1 in the first place.

discovery on December 19, 2005. Trial is scheduled to begin on May 30, 2006. [D.I. 111]

### III.    SUMMARY OF THE ARGUMENT

Syngenta does not offer any evidence to dispute that all of the steps recited in the asserted claims of the '880 and '863 patents were used to make Syngenta's accused GA21 corn products. [*See* Exh. 30, Finer Decl. ¶¶ 5-38][2] Instead, Syngenta makes hyper technical arguments to excuse its infringement [Syngenta Brief at 3-5], all of which demonstrably have no merit based on the facts and law.

First, under Federal Circuit case law, Syngenta cannot avoid infringement by invoking the "axiom" that there is no infringement of a dependent claim if the independent claim from which it depends is not infringed. Although independent claim 1 of the '880 and '863 patents are not asserted against Syngenta, Syngenta does not dispute that the process steps recited in the independent claims were used to make the original (R0) transgenic GA21 event. In *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990), the Federal Circuit held that the aforementioned "axiom" does not apply when all limitations of the independent claim are present in the accused device. Accordingly, whether Syngenta infringes independent claim 1 of the '880 and '863 patents is irrelevant.

Second, Syngenta argues that § 271(g) is limited to use of a patented process outside the United States and, therefore, does not apply here because the claimed processes were carried out in the United States to make Syngenta's accused GA21 corn products. However, the plain language of § 271(g), which covers the "use or sale" of

---

[2] All references to exhibits herein (Exh. ___) refer to exhibits contained in the Appendix in Support of Plaintiffs' Answering Brief in Opposition to Syngenta's Motion For Summary Judgment Of Non-Infringement of the Lundquist Patents, filed contemporaneously herewith.

products "made by a process patented in the United States," is not limited to use of patented processes in the United States. Courts (including this Court in *E.I. DuPont de Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680 (D. Del. 1995)) have applied § 271(g) when the patented process was used in the United States. Because it does not matter who carried out the process under § 271(g), Syngenta's argument that it cannot infringe because DEKALB performed the steps recited in claim 1 is meritless.

Third, Syngenta's "DEKALB performed the claim 1 steps" argument also does not help Syngenta avoid infringement under § 271(a). This Court in *DuPont* (and other courts) has held that when two parties carry out the steps of a patented process, the party completing the process is liable for infringement. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. This cannot be the law.

Fourth, it is irrelevant that the steps recited in claim 1 of the '880 and '863 patents were used to make the original GA21 corn event before the patents issued because liability for infringement attaches when the claimed process is completed. Here, the processes recited in the asserted claims were completed by Syngenta after the patents issued.

Finally, the asserted claims of the '880 patent are infringed for yet another reason—they cover methods of making progeny plants and seed derived from plants

made according to the process of claim 1. Claim 4 recites a method of obtaining

progeny, not a step added to the method recited in claim 1. ████████████████



████████████████████████ This activity is clearly covered by the asserted claims of

the '880 patent.[3]

## IV. STATEMENT OF MATERIAL FACTS NOT DISCLOSED BY SYNGENTA

Syngenta's statement of facts is incomplete. Syngenta fails to provide the facts

surrounding how ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ These facts

demonstrate that Syngenta is liable for infringement of the asserted progeny claims, even

though DEKALB made the original GA21 event before the '880 and '863 patents issued.

*See E.I. Dupont De Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680 (D. Del. 1995).

DEKALB made the original GA21 corn event in the early 1990's using an EPSPS

gene provided by RPA. Syngenta's motion acknowledges that DEKALB used the steps

recited in claim 1 of the '880 and '863 patents to make the GA21 event [Syngenta Brief

at 5-6], and this is also demonstrated by the declaration of Dr. Finer. [Exh. 30, Finer

Decl. ¶¶ 8-11]

Under an agreement with DEKALB, Monsanto introduced GA21 glyphosate

resistant corn into the marketplace in 1998 and licensed other seed companies to sell

---

[3] Syngenta's argument [Brief at 24] that it did not contribute to or induce infringement by others is based solely on its argument that there is no direct infringement under § 271(a) or (g).

GA21 corn under the trademark RoundUp Ready®.  Two of the seed companies that Monsanto licensed (including licenses under the '880 and '863 patents) were Garst and Golden Harvest, co-defendants in this case.    [Exh. 1, Monsanto/Golden Harvest RoundUp Ready® License at ¶ 2.14 and App. A; Exh. 2, Monsanto/Garst RoundUp Ready® License at ¶ 2.14 and App. A]   In 1997, ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████ [Exh. 3 and 4, Resler 30(b)(6) Depo. Exh. 23 and 24; Exh. 5, Resler 30(b)(6) Tr. 35:12-39:14] ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ [Exh. 1 and 2 at ¶¶ 3.01(a), 3.02, 3.04, 3.05]

████████████████████████████████████████

████████████████████ [Exh. 6, Wilde 30(b)(6) Depo. Exh. 57; Exh. 7, Wilde 30(b)(6) Tr. 21:19-22] ███████████████

████████████ [Exh. 6, Wilde 30(b)(6) Depo. Exh. 57; Exh. 7, Wilde 30(b)(6) Tr. 92:11-23]  Syngenta turned instead to commercially proven GA21 corn.  ████████████

██████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████

[Exh. 8, Stein Depo. Exh. 4; Exh. 9, Stein Tr. 79:17-87:5]

In mid-2004, Syngenta announced that it was acquiring Garst and Golden Harvest. [Exh. 10 and 11] ████████████████████████████████████

████████████████████████████████████████████████████████

[Exh. 12, Klevorn Depo. Exh. 21 at 1 ████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████ [Exh. 13, Hawkins Depo. Exh. 10; Exh. 14, Hawkins Tr. 52:25-53:10, 54:15-55:23, 57:11-15; Exh. 15, Parker 30(b)(6) Depo. Exh. 6] ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████ [Exh. 16, Dunder Tr. 115:16-17; Exh. 30, Finer Decl. ¶¶ 15-20]

## V.    ARGUMENT

Summary judgment may be entered only when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). As the movant, it was Syngenta's burden to come forward with evidence to establish the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1022 (Fed. Cir. 1985). "The evidence of the non-movant is to be believed, and all justifiable inferences

are to be drawn in his favor." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

Here, Syngenta completely misstates the law. When the correct law is applied to the facts of this case (even the facts as stated by Syngenta), summary judgment should be denied. If Syngenta disputes the material facts provided by Plaintiffs showing that all the steps of the asserted claims were carried out in producing Syngenta's GA21 corn or the material facts provided by Plaintiffs regarding the relationships among DEKALB, Monsanto, Garst, Golden Harvest, and Sygnenta, then Syngenta's motion should be denied for the additional reason that disputed issues of material fact exist that preclude summary judgment when the correct law is applied, including this court's decision in *DuPont*.

Syngenta's excuses as to why it should not be held liable for infringement are inconsistent with the fact that ███████ Garst, and Golden Harvest all took licenses under the '880 patent.[4] As noted above, Garst and Golden Harvest both took licenses in 1998 from Monsanto under the '880 patent to carry out exactly the same activities (producing and selling GA21 progeny plants and seed) that Syngenta is conducting now, even though the original GA21 event was made before the '880 patent issued. ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ [Exh. 17,

Cross License and Settlement Agreement §§ 1.26 and 3.1; Exh. 18, Koziel et al., "Field

---

[4] The '863 patent had not yet issued when the parties entered into these licenses, but the family of Lundquist patents licensed included the '863 patent.

Performance of Elite Transgenic Maize Plants Expressing an Insecticidal Protein Derived from *Bacillus Thuringiensis*," Bio/Technology Vol. 11 194 (1993)]

If Syngenta's current non-infringement positions were correct, there would have been no need for ▮▮▮▮ Garst, and Golden Harvest to enter into those licenses under the '880 patent. The arguments put forward in Syngenta's motion are litigation-inspired arguments that should be rejected.

**A.    Syngenta's Argument That Dependent Claims Of The Patents Cannot Be Infringed If Independent Claim 1 Is Not Infringed Is Wrong As A Matter Of Law**

Syngenta argues that, because Plaintiffs do not assert infringement of claim 1 of the '880 and '863 patents, Syngenta does not infringe "dependent" claims 4-9 of the '880 patent and dependent claims 5-6 of the '863 patent. Syngenta relies upon *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) for the "axiomatic" principle that dependent claims cannot be infringed if the independent claim from which they depend is not infringed. Syngenta's position is wrong as a matter of law, because the Federal Circuit has limited the applicability of this "axiomatic" principle to the situation where elements of the independent claim are missing from the accused product or process. That situation not present here.[5]

In *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677 (Fed. Cir. 1990), the court found that the independent claim of the patent-in-suit was not infringed because it could not be given a range of equivalents broad enough to encompass the accused device without also covering the prior art. Nevertheless, the Federal Circuit

---

[5] Whether claim 4 of the '880 patent is properly characterized as a dependent claim is irrelevant to the outcome of this motion. However, Plaintiffs do dispute Syngenta's assertion that claim 4 covers a process beginning with the three steps recited in claim 1 and ending with the "obtaining progeny" process recited in claim 4, as discussed in Section V.E., *infra*.

determined that it had to consider whether the dependent claims might be infringed, even though the independent claim was not.    The court explained why the "axiomatic" principle of *Wahpeton* did not apply:

> Before separately analyzing the asserted dependent claims, we should first explain why we are bothering to do so.  This court has stated:  "It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have found to have been infringed." *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1553 & n.9, 10 USPQ2d 1201, 1208 & n.9 (Fed. Cir. 1989).  While this proposition is no doubt generally correct, it does not apply in the circumstances of this case.
>
> Here, we have reversed the judgment of infringement of independent claim 1 solely because the asserted range of equivalents of the claim limitations would encompass the prior art Uniroyal ball.  The dependent claims, of course, are *narrower* than claim 1; therefore, it does not automatically follow that the ranges of equivalents of these narrower claims would encompass the prior art, because of their added limitations. In contrast, in *Wahpeton Canvas,* the court affirmed the judgment of noninfringement of the independent claims because the accused products did not include particular claim limitations or their substantial equivalents. 870 F.2d at 1552, 10 USPQ2d at 1207.  Where that is the reason for noninfringement of the independent claim, it follows that, for the same reason, the dependent claims will not be infringed.  But that is not true here and we therefore turn to the asserted dependent claims, to determine whether they can be infringed under the doctrine of equivalents.

*Id.* at 685-86 (emphasis in original).

Like *Wahpeton*, all of the other cases cited in Syngenta's Brief at 20-21 involve situations where there was no infringement of the independent claim because the accused product did not include a particular limitation recited in the independent claim. *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000) (0-1% of an ingredient recited in the independent claim missing from accused product); *Oak Tech., Inc. v. Int'l Trade Comm'n*, 248 F.3d, 1316, 1323-24, 1330-31 (Fed. Cir. 2001) ("a cyclic redundancy checker for detecting errors in said assembled data after correction of said data by said correction circuitry" recited in independent claim 1 missing from the accused

product); *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d, 1325, 1331, 1337-38 (Fed. Cir. 1998) ("maintaining the first channel signal separate and apart from the second channel signal following the step of altering the amplitude and shifting the phase" recited in independent claim 1 missing from the accused device); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994) ("forefoot enveloping" recited in independent claim 1 missing from the accused shoe product); *London v. Carson Pirie Scott & Co.*, 946 F.2d, 1534, 1539 (Fed. Cir. 1991) ("for embracing the spaced shanks of the space garment hangers" recited in independent claim 1 missing from the accused device); *MLMC, Ltd. v. Airtouch Comm'ns, Inc.*, 172 F. Supp. 2d 557, 565-66 (D. Del. 2001) ("unenciphered signaling communications" recited in independent claim 18 missing from accused system).

Because all of the foregoing cases present the same fact situation as *Wahpeton*, i.e., the dependent claims were not infringed because the accused products did not include a particular claim limitation of the independent claim, they are distinguishable from the present case. Here, the steps recited in claim 1 of the '880 and '863 patents were used to make the original GA21 corn event. [*See* Syngenta Brief at 5-6] The court in *Wilson Sporting Goods* specifically limited application of the axiom that dependent claims cannot be infringed unless the independent claim is infringed to the situation where the accused device or process is missing a limitation of the independent claim. Thus, *Wahpeton* and the other cases cited by Syngenta simply do not apply here.

The distinction made by the Federal Circuit in *Wilson Sporting Goods* was applied by the Northern District of Illinois in the prior litigation brought by DEKALB against Pioneer, Syngenta's predecessors (Ciba-Geigy and Northrup King), and Mycogen

in a context very similar to the present case. In that litigation, Pioneer brought a motion for summary judgment of noninfringement of DEKALB's U.S. Patent No. 5,484,956, which shares the same initial application with the '880 and '863 patents. [Exh. 19, '956 patent, cover page] Claim 1 of the '956 patent is directed to fertile transgenic corn plants "of the R0 generation." Claim 5 is directed to R1 transgenic corn plants, and claim 6 is directed to "progeny" corn plants "derived from the plant of claim 5." [*Id.*, col. 26, ll. 29-52] DEKALB asserted that Pioneer infringed claim 6. DEKALB did not assert infringement of claims 1 and 5 because the R0 and R1 plants of the MON810 corn at issue were made by Monsanto before the '956 patent issued. Pioneer's accused infringing activities were with respect to later progeny of those R0 and R1 plants. [Exh. 20, Special Master Report at 3-4]

Pioneer argued, like Syngenta here, that because the plants of claims 1 and 5 had not been produced during the term of the '956 patent (and DEKALB did not accuse Pioneer of infringing claims 1 and 5), "the patent law axiom that 'dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed'" precluded infringement of claim 6. [*Id.* at 7] Citing *Wilson Sporting Goods*, the court correctly rejected Pioneer's argument, stating:

> [W]hile this proposition is no doubt generally correct, it does not apply in all situations. (citation omitted) When one examines *Wahpeton* closely, it is clear that this rubric has to do with whether all of the elements of the parent claims are present in the accused product, and not with considerations such as when those elements were produced.

[*Id.* at 7-8] The Illinois court thoroughly considered the above-quoted portion of the *Wilson Sporting Goods* case and concluded that the rationale of *Wilson Sporting Goods* applied to defeat the same noninfringement argument being advanced here [*id.* at 8-9].

Similarly, Pioneer's argument, for purposes of the present motion, is not based upon the assertion that the R0 and R1 plants did not include the particular limitations of claims 1 and 6 [sic, 5]. Rather, it is based upon the fact that those R0 and R1 plants were in existence before the patent issued. But this is no different from a very common situation, wherein some or all of the components of a patented invention are in existence prior to the date the patent issued, and are combined later, after the patent issues, to produce the invention. Thus, the *Wahpeton* axiom no more controls this case than it did *Wilson Sporting Goods*.

It is not disputed that the original GA21 corn event was made according to the steps recited in claim 1 of the '880 and '863 patents.[6] Thus, unlike *Wahpeton*, and the other cases cited by Syngenta, the present case does not involve the situation where a limitation of independent claim 1 of the '880 and '863 patents is missing from the process that was used to make the original GA21 corn event, from which Syngenta's accused products were derived. Following the analysis of the Illinois court, infringement of claims 4-9 of the '880 patent and claims 5-6 of the '863 patent exists here even though Syngenta is not accused of infringing claim 1 of those patents.

**B.    Because § 271(g) Applies To The Use Or Sale Of Products Made In The United States By A Patented Process, It Is Irrelevant That DEKALB Made The Original GA21 Event**

Syngenta argues that § 271(g) does not apply here because that provision is limited to the use of patented processes outside the United States, and the processes used to make the accused GA21 corn products were carried out in the United States. Syngenta's reading of § 271(g) is wrong. Section 271(g), however, applies to use or sale of products made by a patented process no matter where that process is carried out.

The relevant portion of 35 U.S.C. § 271(g) states:

---

[6] Syngenta's Brief at 5-6 assumes this, and Syngenta's noninfringement contentions and noninfringement expert (Dr. Ward) do not assert otherwise. [Exh. 21, Syngenta Response to Interrogatory Nos. 6 and 10; Exh. 22, Ward Rebuttal Report ¶¶ 48-56, 59]

> Whoever without authority imports into the United States or offers to sell,
> sells, or uses within the United States a product which is made by a
> process patented in the United States shall be liable as an infringer, if the
> importation, offer to sell, sale, or use of the product occurs during the term
> of such process patent.

The language of § 271(g) is clear and unambiguous. It is not limited to processes carried out overseas. *Avery Dennison Corp. v. UCB Films PLC*, No. 95 C 6351, 1997 WL 665795, at *2 & n. 2 (N.D. Ill. Oct. 20, 1997) ("The statute makes no distinction as to where the steps are performed—it is only concerned with tile [sic, the] importation, sale or use of the end product.... It is not limited to imported goods."); *D. Chisum*, Chisum on Patents § 16.02[6][d][ii]16-69 (2004) ("Section 271(g)'s primary purpose was to extend United States process patent owners' rights to unpatented products made by processes practiced in other countries, but its literal scope, which includes without limitation "sale" and "use" in the United States, is not so limited." (citing *Shamrock Technologies, Inc. v. Precision Micron Powders, Inc.*, No. 91-0869, 1991 WL 335362, (E.D.N.Y., Aug. 8, 1991) as "correctly reject[ing] an argument that § 271(g) 'was enacted to create a cause of action against manufacturers and importers of infringing goods but not against domestic sellers of infringing goods....'")).

Where, as here, the terms of a statute are unambiguous, judicial inquiry is complete except in rare and exceptional circumstances. *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S. Ct. 599, 604 (1991). *Avery* at *2 n.3 and *Shamrock* at *1798 concluded that review of the legislative history was unnecessary because § 271(g) is unambiguous.[7] *See also Chisum* at 16-69. Even if the legislative history is examined,

---

[7] In *Bayer A.G. v. Housey Pharmaceuticals, Inc.*, 340 F.3d 1367 (Fed. Cir. 2003), cited by this Court in *British Telecomm. v. Qwest Comm'ns Int'l, Inc.*, Nos. 03-526-SLR; 03-527-SLR; 03-528-SLR, slip op. at 3 (D. Del., Feb. 24, 2004) (attached here to as Exh. A) found that the language "a product which is made by a process" in § 271(g) was

however, it reveals that Congress intended that § 271(g) applies to the use and sale of goods made by a patented process no matter where that process is carried out.

Congress first sought to amend the patent statute in 1984 to provide increased protection for process patent owners. The most favored of the House bills was H.R. 6286 sponsored by Rep. Kastenmeier. The relevant section of H.R. 6286 read:

> (e) Whoever without authority imports into or sells or uses within the United States *a product which is made in another country* by a process patented in the United States shall be liable as an infringer, if the importation, sale, or use of the product occurs during the term of such process patent.

[Exh. 23, H.R. 6286, 98th Cong. at 2 (2d Sess. 1984), emphasis added]    Thus, this proposed legislation explicitly applied only to products made outside the U.S. by patented processes. A Senate bill, S. 1535, contained similar language:

> (e) Whoever without authority imports into or sells or uses within the United States *a product made in another country* by a process patented in the United States shall be liable as an infringer.

[Exh. 24, S. 1535, 98th Cong. at 1 (1st Sess. 1983), emphasis added]

However, another Senate bill, S. 1841, did not contain the same "a product which is made in another country" language of H.R. 6286 and S. 1535:

> TITLE V—PROCESS PATENTS: (a)(2) If the patented invention is a process, whoever without authority uses or sells in the United States during the term of the patent therefor a product produced by such process infringes the patent.

[Exh. 25, S. 1841, 98th Cong. at 10 (1st Sess. 1983)]

Hearings were conducted on the proposed legislation. One concern addressed at the hearings was that adoption of H.R. 6286 or S. 1535 would violate GATT

---

ambiguous as to whether it covered only manufacturing processes used to make physical goods. 340 F.3d at 1372. That is not relevant here.

requirements.   Specifically, concern was expressed that because those bills offered

protection only to products of foreign manufacture, they would violate GATT's "no less

favorable treatment" requirement.[8]   In a hearing before the Senate Judiciary Committee,

the Assistant Secretary and Commissioner of Patents and Trademarks, Hon. Gerald J.

Mossinghoff, stated:

> S. 1535 is limited to foreign produced products. There is no remedy under
> this bill against use or sale of a product made in the United States by
> infringing a process patent. Foreign products are, therefore, treated less
> favorably than domestic products. The Office of the United States Trade
> Representative has expressed concern that it would violate our obligation
> under Article III of the GATT not to discriminate against foreign made
> products. S. 1841 [...] does not suffer this deficiency. Title V of S. 1841
> would make the use or sale of a product made without authorization by a
> process patented in the United States an infringement irrespective of
> where the product was made.

[Exh. 26, *Patent Law Improvements Act: Hearing Before the Subcomm. on Patents,*

*Copyrights and Trademarks of the S. Comm. on the Judiciary*, 98th Cong. at 24-25

(1984)]   Bills with language similar to that of S. 1841 were introduced in the 99th

Congress.  As Rep. Kastenmeier stated:

> These bills do not distinguish between products made using the patented
> process within the United States and those made outside the United
> States.... Similar legislation, S. 1543, is also pending in the Senate.

[Exh. 27, Patent Equity Act, H. Rpt. 99-807, 99th Cong. at 11 (2nd Sess. 1986)]   In the

100th Congress, H.R. 1931 and S. 1200 were passed by the House and Senate and,

---

[8] The relevant provision of GATT, Article III, ¶ 4, states that "[t]he products of the
territory of any contracting party imported into the territory of any contracting party shall
be accorded treatment no less favorable than that accorded to like products of national
origin in respect of all laws, regulations, and requirements affecting their internal sale,
offering for sale, purchase, transportation, distribution or use...."   General Agreement on
Tariffs and Trade, Oct. 30, 1947, 61 Stat. A-11, 55 U.N.T.S. 194.

following the House and Senate conference comparing the final versions of the two bills,

they were codified in § 271(g) as part of the Omnibus Trade and Competitiveness Act of

1988.

Senate Report No. 100-83 clearly stated that "the process patent bill was crafted

to apply equally to the use or sale of a product made by a process patented in this country

***whether the product was made (and the process used) in this or a foreign country.***"

[Syngenta Brief at 23, emphasis added]   The House Report, ignored by Syngenta,

discusses that the purpose of the bill was to provide meaningful protection to owners of

patented processes; that under the then-existing law there was no remedy against parties

who use or sell a product made by a patented process, regardless where it is made; and

that there was a particular need for protection against use or sale of products made by

patented processes in the biotechnology field.

> The purpose of this bill is to provide meaningful protection to owners of patented processes. Under current patent law, owners of such patents have remedies for unauthorized use of the process only if the process was used in the United States. As a consequence, while a domestic manufacturer using the patented process would infringe the process patent, a foreign manufacturer who imports the product would not. ***There is also no remedy against parties who use or sell the product, regardless where it is made***.

> The value of new manufacturing techniques is reflected in the resulting products. A new process may enhance the quality of the product produced, or the new process may permit the product to be made much more economically. In some cases, for example biotechnology, the new process may be the only method of producing a new product. In all of these instances, the advantage to the process patent owner is realized by using or selling the product, or licensing others to do so. As a consequence, the unfettered ability of others to import, sell or use a product made by the patented process severely diminishes the value of a U.S. process patent.

[Exh. 28, Process Patent Amendments Act of 1987, H. Rpt. 100-60, 100th Cong. at 3 (1st

Sess. 1987), emphasis added]   Accordingly, both the clear, unambiguous language of

§ 271(g) and the legislative history demonstrate that § 271(g) applies to the use or sale of goods made in the United States by a process patented in the United States.

Syngenta misstates the Federal Circuit's comments in *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338 (Fed. Cir. 2000). The Federal Circuit did *not* say that the *only* purpose of § 271(g) was to impose liability for infringement on importation, sale, or use in the United States of a product made abroad by a process patented in the United States, as Syngenta suggests. [Syngenta Brief at 22]  Instead, the Federal Circuit stated:

> Previously, the holder of a United States process patent had no recourse against one who practiced the process abroad and imported the product. The purpose of § 271(g) was to close this loophole *and bring United States law into conformity with that of other nations*.

[*Id.* at 1347, emphasis added]  Thus, the Federal Circuit recognized *two* purposes of § 271(g):  to provide a remedy against practice of a patented process overseas *and* to conform U.S. law to that of other countries, i.e., to address the concern raised in Congress that the provision needed to apply no matter where the process was carried out in order to avoid a violation of U.S. obligations under GATT.

Both this Court and the Federal Circuit have applied § 271(g) to situations where the patented process was carried out in the United States. In *E.I. DuPont de Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680 (D. Del. 1995), Monsanto was held liable under § 271(g) for selling fibers *made in the United States* by a separate company, CaMac, using a patented process. *Id.* at 733-34.[9]  And in *Mycogen Plant Science, Inc. v.*

---

[9]  Although the decision does not explicitly state that CaMac carried out the process in the United States, this was clearly the case, since the court held that CaMac directly infringed by carrying out the patented process under § 271(a), which only applies to use of the process in the United States. *Id.* at 735.

*Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001), at issue was Monsanto's activity in designing a codon modified *Bt* gene that was eventually used in Monsanto's commercial MON810 insect resistant corn. Mycogen asserted that Monsanto's activities in designing the MON810 *Bt* gene infringed a Mycogen process patent under § 271(g). This Court is aware from its involvement in the trial between Syngenta and Monsanto in late 2004 that Monsanto's design activities were carried out in the United States. Nevertheless, the Federal Circuit in *Mycogen* considered whether Monsanto infringed under § 271(g).

The application of § 271(g) in this case removes Syngenta's argument that it cannot infringe the asserted claims of the '880 and '863 patents just because DEKALB (and not Syngenta) made the original GA21 corn event, because under § 271(g), it is irrelevant who carried out the process covered by the product. As the court stated in *Trustees of Columbia University v. Roche Diagnostics GmbH*, 272 F. Supp. 2d 90, 108 (D. Mass. 2002), "it is irrelevant under Section 271(g) who manufactured the goods so long as the goods were manufactured using a patented process… The defendant need not have performed the patented process itself." The infringing act is Syngenta's use of progeny plants made in accordance with claims 4-9 of the '880 patent and claims 5 and 6 of the '863 patent to make further progeny plants (eventually, commercial hybrids) and then selling hybrid seed in the marketplace.

## C.     Syngenta Infringes By Completing The Claimed Process During The Term Of The '880 and '863 Patents

Syngenta's Brief at n. 2 and 4 asserts that Syngenta does not perform the steps recited in '880 patent claims 4-9 and '863 patent claims 5-6, but Syngenta provides no evidence in support of these assertions. Syngenta's activities are clearly covered. [Exh. 30, Finer Decl. ¶¶ 12-38]

Instead, Syngenta's Brief at 8 cites three Federal Circuit cases for the proposition that infringement of a process patent requires the performance of all steps of the claimed process. Plaintiffs do not disagree that this is the law. The cases cited by Syngenta, however, do *not* stand for the further propositions that Syngenta urges—(1) that all of the claimed steps must be carried out during the term of the patent and (2) all of the claimed steps must be carried out by the alleged infringer. Neither proposition is supported by a holding in Syngenta's cited cases, and neither is a correct statement of the law.

Nor does the Federal Circuit's decision in *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001) regarding § 271(g) [Syngenta Brief at 23-24] provide support for Syngenta's position. In *Mycogen*, the issue was whether Monsanto infringed by using and selling products made by a patented process when all of the claimed steps were carried out *entirely* before issuance of the patent-in-suit. The court held that in this circumstance, there was no infringement under § 271(g). *Id.* at 1317-19. Thus, the *Mycogen* case did not address the issue presented here—whether infringement of a process patent occurs under § 271(a) or (g) when the infringer completes the patented process after the patent issued.

The case law is clear that there is no infringement of a process patent until all of the steps of the process have been carried out. That is, a claim reciting a four-step process is not infringed when only the first three steps have been completed; infringement occurs when the final, fourth step of the process has been carried out. Thus, in *E.I. DuPont de Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680, 735 (D. Del. 1995) (citing *Joy Technologies*, 6 F.3d at 773), the court held the party that *completed* the claimed process liable for infringement but the party that carried out the first step of the

process not liable for infringement. *See also General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274 (Fed. Cir. 1992) (no patent right in step A apart from the combination of steps A-B-C); *cf. Graffenried v. U.S.*, 25 Cl. Ct. 209, 214, 24 U.S.P.Q.2d 1594, 1598 (1992) (a claim to a product is only infringed when assembly of the product has been completed, even though the product was partially assembled before patent issuance).

In the prior litigation in the Northern District of Illinois, this issue was addressed by the court in connection with summary judgment motions in the cases involving Mycogen and Pioneer. DEKALB accused Mycogen's Cry1F products of infringing DEKALB's U.S. Patent No. 5,538,877 to Lundquist et al. Mycogen and DEKALB both filed motions for summary judgment with respect to the infringement issue. The issue on DEKALB's motion was whether Mycogen infringed under § 271(g) when it completed the last step of the process recited in claim 1 after the '877 patent issued, even though the first three steps recited in claim 1 were completed before the patent issued. Applying § 271(g), the court denied DEKALB's motion because there was an issue of fact as to whether or not the last step of the claimed process was carried out after the '877 patent issued.

> In its motion, DeKalb says that the "timing" issue is somewhat different for the Cry1F products, because it alleges that the R0 plant from which those products were ultimately derived was not "made"—that is, all steps of the claim process were not completed—until after the '877 patent issued, thus distinguishing the situation from *Monsanto*. The claims of the '877 patent require, as a final step of the process, "regenerating a fertile transgenic *Zea mays* [corn] plant." ... DeKalb argues that, although the Pioneer R0 plant from which the Cry1F products derive was in existence prior to issuance of the patent, that plant did not mature to the point of fertility until after the patent issued. Therefore, it says, "[f]or purposes of determining whether the Cry1F product infringes, the Court should look to

the date that Pioneer obtained a fertile transgenic plant—in other words, to the date that Pioneer completed the process claimed in the '877 patent." ...

Mycogen does not appear to dispute this logic.... What it does dispute, however, is DeKalb's factual assertion that the Pioneer R0 plant had not matured to the point of fertility prior to the patent issue date.... The SM has examined the evidence cited by DeKalb on this point (Exh. I-L) and has concluded that it demonstrates only that there is a genuine triable issue of fact as to whether the R0 plants have matured to the point of fertility by the time the patent issued. Inasmuch as it is DeKalb's burden to establish infringement, and in as much as it cannot prevail under the rule of *Monsanto* without showing that the process was completed after the patent issued, its motion must be denied on that ground alone.

[Exh. 29, Special Master Report at 10-11]    Thus, the Illinois court recognized that infringement occurs under §271(g) even when only the last step of a process is carried out after the patent issues.

The Illinois court also commented upon §271(g) in its decision regarding Pioneer's motion for summary judgment of noninfringement of DEKALB's '956 patent. "The use of a process involves carrying out the steps of the process. It would not therefore be unreasonable to require that at least one step of a patented process be carried out during the term of the patent in order to find infringement." [Exh. 20, Special Master Report at 9]

Applying the same rationale here, Syngenta infringes claims 4-9 of the '880 patent and claims 5-6 of the '863 patent by making progeny plants and seed. The fact that the steps of claim 1 of the '880 and '863 patents were performed before those patents issued is irrelevant.

### D.    Syngenta Infringes The Asserted Claims Under §271(a) Even Though DEKALB Carried Out The Steps Recited In Claim 1

Syngenta argues that it does not infringe the asserted claims because DEKALB, not Syngenta, carried out the steps recited in claim 1 of the '880 and '863 patents in

producing the original GA21 corn event. [Syngenta Brief at 10] As already pointed out above, whether Syngenta carried out *any* steps of the claimed processes is legally irrelevant to whether Syngenta infringes under §271(g). The fact that DEKALB made the original GA21 event is also irrelevant to Syngenta's infringement liability under §271(a) based on this court's holding in *DuPont*.

A party can be liable for infringement of a process patent under §271(a) even though the party did not itself perform all of the steps of the claimed process. That is exactly what happened in *E.I. DuPont de Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680 (D. Del. 1995). DuPont alleged that Monsanto should be liable for infringement under §271(a) for its "joint manufacture" of carpet fibers with a company called CaMac. Monsanto carried out the first step of the claimed process and sold the resulting copolymer to CaMac, which then carried out the last two steps of the process. *Id.* at 734. The court found that Monsanto could not be liable as a direct infringer under §271(a) in carrying out the first step of the claimed process but that CaMac, which completed the process, could be liable for infringement under §271(a).

> The cases cited by DuPont in support of its joint infringement theory are distinguishable. The *Shields*, *Crowell*, and *Metal Film* cases establish that a party cannot avoid liability for infringement by having someone else perform one or more steps of a patented process for them. It seems to the Court that this principle is more appropriately applied to CaMac than to Monsanto. That is, under *Shields*, *Crowell*, and *Metal Film*, CaMac cannot avoid liability for infringement of DuPont's process patent by paying Monsanto to practice step (a) of the patented process for it. (citation omitted) ... Clearly, the direct infringer in this case is CaMac, who buys the 46BJ polymer from Monsanto and then uses it to perform the process claimed in the Anton patent.

*Id.* at 735; *see also Idacon, Inc. v. Central Forest Products, Inc.*, No. 82-158-C, 1986 WL 15837, at *19 (E.D. Okla. Apr. 25, 1986) ("Infringement of a patented method cannot be avoided by having another perform one step of the method.")



Any attempt by Syngenta to distinguish this case from cases such as *DuPont* would effectively boil down to this: if Syngenta had contracted with a third party to make a transgenic event using the steps of the '880 and '863 patents, Syngenta could be liable for infringement of claims 4-9 of the '880 patent and claims 5-6 of the '863 patent under this Court's holding in *DuPont,* but because ███████████████, Syngenta is not liable for infringement. Such an argument should be rejected out of hand. Syngenta cannot excuse its infringement by claiming that the party ████████████ performed the steps recited in claim 1 of the patents. The above-recited facts demonstrate that Syngenta should be held liable as an infringer under § 271(a).

### E.    The Asserted Claims Of The '880 Patent Are Infringed For The Additional Reason That They Are Directed To Methods Of Making Progeny Plants

Yet another reason why Syngenta infringes claims 4-9 of the '880 patent is that those claims cover processes of obtaining progeny plants and seed using plants obtained by the process of claim 1, which is precisely what Syngenta is doing. Claims 4-9 do not merely add steps to the process of claim 1 like claims 5-6 of the '863 patent. Thus, Syngenta infringes claims 4-9 by making progeny plants and seed, as long as the original

fertile transgenic corn plant was made by someone at some time using the steps recited in claim 1 of the '880 patent. That is exactly what happened here.

Claim 4 covers "[*a*] *process comprising obtaining progeny* from a fertile transgenic plant obtained by the process of claim 1 which comprises said DNA." ['880 patent, col. 22, ll. 61-63, emphasis added] Contrary to Syngenta's Brief at 16, claim 4 does not recite "the process of claim 1" and then add a further step. Thus, the clear language of claim 4 contrasts with that of claim 5 of the '863 patent, which recites "the process of claim 1" and then adds the further step of obtaining progeny plants:

> 5.  ***The process of claim 1 further comprising*** obtaining transgenic glyphosate resistant progeny plants of subsequent generations from said fertile transgenic plant.

['863 patent, col. 30, ll. 14-16, emphasis added] Claim 5, unlike '880 patent claim 4, refers back to the process of claim 1 in its preamble and recites that the claimed process "further" comprises an additional step. The differences in language between claim 4 of the '880 patent and claim 5 of the '863 patent demonstrate that claim 4 covers the plant of claim 1 as a starting material to make progeny plants and seed. [*See also* Plaintiffs' Claim Construction Brief at 21, D.I. 203, which discusses the intrinsic evidence in the specification and prosecution history that supports this interpretation of the unambiguous language of claim 1]

Syngenta argues that, despite the clear difference in claim language, claim 4 of the '880 patent should be interpreted in precisely the same way as claim 5 of the '863 patent. First, Syngenta points to positions taken by DEKALB and statements made by the court in the Illinois litigation that claim 4 covers a multi-step process. [Syngenta Brief at 14-16] However, the issue presented here—whether claim 4 covers an additional step of the process of claim 1 (as Syngenta asserts) or whether it covers a method of

25

making progeny plants from the fertile transgenic corn plant made by the process of claim 1 (as Plaintiffs assert)—simply was not at issue in the Illinois litigation. To be clear, Plaintiffs do not deny that claim 4 recites a process of making progeny plants from a fertile transgenic corn plant made by the microprojectile bombardment process of claim 1 and that to infringe claim 4, someone at some time must have carried out the three steps of claim 1 to make the original fertile transgenic corn plant.[10]

Second, Syngenta argues that the prosecution history of the '880 patent does not support Plaintiffs' claim construction. Syngenta argues that DEKALB submitted an amendment under PTO Rule 312, which Syngenta says "permits claim revisions under limited circumstances, e.g., a change in wording of the claims not affecting the *scope* of the claims." [Syngenta Brief at 18] Rule 312, however, says no such thing. Rule 312 states:

> No amendment may be made as a matter of right in an application after the mailing of the notice of allowance. Any amendment pursuant to this paragraph filed before the payment of the issue fee may be entered on the recommendation of the primary examiner, approved by the Commissioner, without withdrawing the case from issue.

37 C.F.R. § 1.312, Amendments After Allowance (1985).

DEKALB did not tell the PTO, as Syngenta alleges, that "its wording change was a matter of form only." [Syngenta Brief at 18] On the contrary, DEKALB told the PTO that the amended claim did not introduce new matter and was allowable without further search or consideration. [*See* Syngenta Brief Appendix at A180] Further, Syngenta cites no authority for the proposition that the examiner's checking a box labeled "as directed to

---

[10] As the Illinois court noted, '956 patent claim 1 also recited microprojectile bombardment. [*See* Syngenta Brief at 16] Nevertheless, the Illinois court denied Pioneer's motion for summary judgment of noninfringement of claim 6 of the '956 patent directed to progeny plants.

matters of form not affecting the scope of the invention" [*id.* at A181] can somehow change the clear language of the claim. The unambiguous language of claim 4 (and claims 5-9 dependent thereon) covers Syngenta's accused activities. Syngenta is making progeny plants and seeds using corn that was produced by the process of claim 1. That is what claim 4 requires, nothing more.

## VI.    CONCLUSION

In view of the foregoing, Syngenta's motion for summary judgment of non-infringement of the Lundquist '880 and '863 patents should be DENIED.

Respectfully submitted,

OF COUNSEL:                                          POTTER ANDERSON & CORROON LLP

Susan K. Knoll
Thomas A. Miller                                     By:   */s/ David E. Moore*
Melinda Patterson                                            Richard L. Horwitz (#2246)
Stephen E. Edwards                                           David E. Moore (#3983)
Steven G. Spears                                             Hercules Plaza, 6th Floor
HOWREY LLP                                                   1313 N. Market Street
1111 Louisiana, 25th Floor                                   Wilmington, DE  19801
Houston, Texas 77092                                         Telephone (302) 984-6000
Telephone (713) 787-1400                                     rhorwitz@potteranderson.com
                                                             dmoore@potteranderson.com

Dated:  January 26, 2005
Public Version Dated:  February 1, 2006              *Attorneys for Plaintiffs*
717626

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 1, 2006, the attached document

was hand-delivered to the following persons and was electronically filed with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

I hereby certify that on February 1, 2006, I have Federal Expressed the

foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022-6069

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
    Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC  20001-4413

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com