# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 03-526-SLR |
| SBC COMMUNICATIONS INC., AMERITECH CORPORATION and SOUTHWESTERN BELL COMMUNICATIONS SERVICES, INC., | ) ) ) ) ) | |
| Defendants. | ) | |
| BRITISH TELECOMMUNICATIONS, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. No. 03-527-SLR |
| QWEST COMMUNICATIONS INTERNATIONAL INC. and QWEST COMMUNICATIONS CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) | |
| BRITISH TELECOMMUNICATIONS, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. No. 03-528-SLR |
| VERIZON COMMUNICATIONS, INC., VERIZON DELAWARE, INC., and GTE SOUTHWEST INCORPORATED, | ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM ORDER

At Wilmington this 24th day of February, 2004, having considered the defendants' various motions to dismiss and the papers submitted in connection therewith;

IT IS ORDERED that defendants' motions to dismiss (Civ. No. 03-526-SLR, D.I. 14; Civ. No. 03-527-SLR, D.I. 13; Civ. No. 03-528-SLR, D.I. 32) are granted, for the reasons that follow:

1. **Standard of review.** The standards governing motions filed under Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure require that the court accept as true all of the material allegations of the complaint and construe the complaint in plaintiff's favor. See Trump Hotels & Casinos Resort, Inc. v. Mirage Resorts, Inc., 140 F.3d 478 (3d Cir. 1998). Motions for judgment on the pleadings should be granted only if the asserted claims fail to allege any set of facts under which plaintiff would be entitled to relief. See Conley v. Gibson, 355 U.S. 41 (1957).

2. **Background.** Plaintiff has alleged that multiple defendants are infringing U.S. Patent No. 4,691,896 (the "'896 patent"), entitled "Optical Fiber Transmission Line," and U.S. Patent No. 4,948,097 (the "'097 patent), entitled "Method of and Apparatus for Installing Transmission Lines." More specifically, plaintiff contends that defendants have infringed the patents in suit by:  a) "installing fiber optic cable using [claimed] processes," in violation of 35 U.S.C. § 271(a); b) actively

2

inducing its subsidiaries to infringe one or more of the asserted claims; and c) "using fiber optic cable installed using [claimed] processes," in violation of 35 U.S.C. § 271(g). (Civ. No. 03-526-SLR, D.I. 8 at ¶¶ 8,9; Civ. No. 03-527-SLR, D.I. 8 at ¶¶ 7,8; Civ. No. 03-528-SLR, D.I. 10 at ¶¶ 7,8) Defendants' motions are directed to these latter claims of infringement; to wit, defendants assert that, as a matter of law, their alleged use of fiber optic cable does not implicate 35 U.S.C. § 271(g).

    3. Section 271(g) provides that

> [w]hoever without authority imports into the the United States or offers to sell, sells, or **uses within the United States a product which is made by a process patented in the United States** shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent . . . . A product which is made by a patented process will, for purposes of this title, not be considered to be so made after –
>
> (1) it is materially changed by subsequent processes; or
>
> (2) it becomes a trivial and nonessential component of another product.

(Emphasis added)

    4. The Federal Circuit, in <u>Bayer AG v. Housey Pharmaceuticals, Inc.</u>, 340 F.3d 1367 (Fed. Cir. 2003), found the above statutory language to be ambiguous and, therefore, embarked on a review of the legislative history of § 271(g). One of the primary sources of the legislative history of the Process Patents Amendments Act of 1987 is Senate Report No. 100-83 (1987),

3

*reprinted in* 9 Donald S. Chisum, Chisum On Patents, App. 25 (2002). S. Rep. No. 100-83 describes the background of the legislation as follows:

> The U.S. patent laws recognize three basic types of inventions for which patents may be obtained: products, methods of use, and methods of manufacture. Patents on the last are also known as process patents, that is, patents on process inventions. A process patent covers a process for making a product, which may or may not be patented itself. Process patents promise to be increasingly important to a number of industries in the coming years, especially in the areas of industrial and pharmaceutical chemicals, optical fibres, and above all in the fields of biotechnology and bioengineering research. Biotechnology companies are often built around a new process for artificial manufacture of a substance that occurs in nature and is therefore itself unpatentable. A well known example is the Genentech Corporation of California, whose principal assets since its founding in 1976 have been process patents on revolutionary new ways of making human insulin and growth hormone.

9 Donald S. Chisum, Chisum On Patents, App. 25 at 41-42 (emphasis added). In further explanation of newly added § 271(g), S. Rep. No. 100-83 provides:

> This subsection provides that whoever without authority imports in the United States or sells or uses within the United States a product which is made by a process patented in the United States is liable as an infringer.
>
> Since a process patentee can already prevent the use of the patented process by domestic manufacturers, the primary effect will be on foreign-made goods. These amendments will not give extraterritorial effect to U.S. law. U.S. patents will not prevent foreign manufacturers from using abroad the process covered by the

4

> U.S. patent, so long as the products they make thereby are sold and used abroad. But the amendments will prevent circumvention of a U.S. patentee's rights through manufacture abroad and subsequent importation into the United States of products made by the patented process.

Id. at 67 (emphasis added). The Federal Circuit in Bayer concluded through its review of S. Rep. No. 100-83 that the statute was limited to "manufactured tangible products." Bayer, 340 F.3d at 1375.

5. The Federal Circuit came to the same conclusion after reviewing the House Report on the same legislation:

> "The purpose of this bill is to provide meaningful protection to owners of patented processes. Under current patent law, owners of such patents have remedies for unauthorized use of the process only if the process was used in the United States. As a consequence, while a **domestic manufacturer** using the patented process would infringe the process patent, a **foreign manufacturer** who imports the product would not.
>
> \*\*\*\*\*\*\*\*\*\*\*
>
> The value of new manufacturing techniques is reflected in the resulting new products. A new process may enhance the quality of the product produced, or the new process may permit the product to be made much more economically. In some cases, for example biotechnology, the new process may be the only method of producing a new product. In all of these instances, the advantage to the process patent owner is realized by suing or selling the product, or licensing others to do so. As a consequence, the unfettered ability of others to import, sell or use a product made by the patented process, severely diminishes the value of a U.S. process patent."

5

> [H.R. Rep. No. 100-60 at 3]. Thus, Congress was concerned with tangible products and not mere information. Here again, "process patent" was interpreted as synonymous with "manufacturing technique."

Id. at 1376. The Federal Circuit observed that, "[i]n the face of silence in the legislative history, here as to the coverage beyond manufactured articles, courts are reluctant to broadly interpret the legislation." Id. The Federal Circuit concluded, therefore, "that in order for a product to have been 'made by a process patented in the United States' it must have been a physical article that was 'manufactured'. . . ." Id. at 1377.

   6. **Analysis.** Although the facts in Bayer are distinguishable from those at issue, the Federal Circuit's discussion in Bayer constitutes the analytical framework which this court must employ. Significantly, the Federal Circuit found the statutory language of § 271(g) to be ambiguous and, therefore, resorted to the statute's legislative history to discern its meaning and scope. Having reviewed at some length both the statutory language and the legislative history, the court concludes that it is difficult to reconcile the two within the factual context of this case.

   7. On the one hand, the legislative history addresses a relatively narrow universe of problems, that is, to provide protection to owners of United States process patents against foreign manufacturers who would use the processes outside the

6

United States to make products that are then imported, used or sold in the United States. In the case at bar, the patented methods at issue are being used, if at all, in this country; consequently, the fundamental purpose underlying passage of the statute has absolutely no application.[1] Moreover, the legislative history clearly indicates that Congress was concerned with methods of manufacture and with manufactured goods destined to travel in the stream of commerce. The fiber optic cable installation at issue cannot be characterized as such a good. Once installed, the fiber optic cable installation does not travel in the stream of commerce. Instead, it serves as the fixed backbone for an underground optical fiber telecommunications network. Finally, at least one passage from the legislative history indicates that plaintiff's patents are not "process" patents at all,[2] but a "method of use" patent and, therefore, not the proper subject of a § 271(g) claim.

8. The language of the statute, of course, is much broader than forecast by the legislative history; accordingly, it is possible to shoehorn plaintiff's facts into the words employed

---

[1] Remember that Congress recognized that § 271(g) did not have to address the unauthorized domestic use of a patented process, because there were already remedies for such conduct.

[2] S. Rep. No. 100-83 specifically describes patents covering "methods of manufacture" as "process patents" and distinguishes the latter from patents covering "methods of use."

7

by Congress.[3] The question is whether clever word-smithing of the broad statutory language should take precedence over the more narrow message sent by Congress in its legislative deliberations. The court cannot honestly say that the facts at bar fit within the meaning of the statute as illuminated by its legislative history.[4] Therefore, defendants' motions shall be granted.

IT IS FURTHER ORDERED that plaintiff's motions for leave to file a surreply brief in opposition to defendants' motions to dismiss (Civ. No. 03-526-SLR, D.I. 30; Civ. No. 03-527-SLR, D.I. 29; Civ. No. 03-528-SLR, D.I. 57)) are denied as moot.

---

[3] Plaintiff offers the plausible, albeit not compelling, argument that the fiber optic cable installation at issue is a "multi-component product comprising an underground conduit (a tubular pathway extending between two points) and a fiber optic cable." (D.I. 24 at 6)

[4] The language of both the claims and specification of the patents in suit substantiates this conclusion. Claim 1 of the '896 patent uses the phrase "[a] **method of advancing a** lightweight and flexible optical fiber member along a previously installed tubular pathway." ('896 Reexam Cert., col. 1 at ll. 22-26)(emphasis added)  Claim 1 of the '097 patent likewise recites "[a] **method of installing** a lightweight and flexible transmission line into and along a length of previously installed tubular pathway between first and second ends of the pathway." ('097 Reexam Cert., col 2 at ll. 8-11)(emphasis added)  The '896 specification states that the "invention relates to optical fibre transmission lines, and in particular though not exclusively to **methods**, apparatus, and cable structures **for their installation**." ('896 patent, col. 1 at ll. 6-9)(emphasis added)  Similarly, the '097 specification states that the invention relates to "a **method** and apparatus **for installing**" "optical fibre and other lightweight and flexible transmission lines." ('097 patent, col. 1 at ll. 13-17)(emphasis added)

8

IT IS FURTHER ORDERED that defendants' motions to stay (Civ. No. 03-526-SLR, D.I. 19; Civ. No. 03-527-SLR, D.I. 18) are denied without prejudice to renew at the conclusion of discovery.

_____
United States District Judge