## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY and )
MONSANTO TECHNOLOGY LLC, )
    )
    Plaintiffs, )
    )    C. A. No. 04-305 SLR
    v.    )    (Lead Case)
    )
SYNGENTA SEEDS, INC. )
SYNGENTA BIOTECHNOLOGY, INC., et al., )
    )    **PUBLIC VERSION**
    Defendants. )
    )
_____)
    )
DEKALB GENETICS CORPORATION, )
    )
    PLAINTIFF, )
    V.    )
    )
SYNGENTA SEEDS, INC., )
SYNGENTA BIOTECHNOLOGY, INC., ET AL. )
    )
    )
    DEFENDANTS. )

## PLAINTIFFS' OPPOSITION TO SYNGENTA'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY

OF COUNSEL:

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
(713) 787-1400

Dated: January 26, 2006
Public Version Dated: February 1, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Monsanto Company,*
*Monsanto Technology LLC, and*
*DEKALB Genetics Corporation*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     NATURE AND STAGE OF PROCEEDINGS ......................................... 2

III.    SUMMARY OF THE ARGUMENT ........................................................ 2

IV.     STATEMENT OF FACTS ..................................................................... 4

V.      ARGUMENT ...................................................................................... 4

        A.    The DOE Opinion Expressed In Dr. Keegstra's Initial Expert Report
              Should Not Be Excluded ........................................................... 4

        B.    Dr. Keegstra's Sur-rebuttal Expert Report Was Timely Filed To Address
              Issues Raised For The First Time In Dr. Bruce's Rebuttal Report ............ 9

        C.    The Sections Of Dr. Cahoon's And Dr. Keegstra's Rebuttal Reports
              Relating To Nonobviousness Of The '880 And '863 Patents Should Not
              Be Excluded ........................................................................... 11

        D.    Expert Testimony Regarding Syngenta's Failed Attempt To Develop Its
              Own Glyphosate Resistant Corn And Adoption Of GA21 Instead Is
              Highly Relevant To Willful Infringement ................................... 13

        E.    Dr. Gasser Properly Spoke With Scientists Who Had Worked On The
              Glyphosate Resistance Project At Monsanto To Confirm His
              Understanding Of The Facts ....................................................... 16

VI.     CONCLUSION .................................................................................. 23

i

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) ........................................................................................ 1, 3, 10, 12, 20

*Handguards, Inc. v. Johnson & Johnson,*
   13 F.Supp. 926  (N.D. Cal. 1976)........................................................................................ 14

*J&M Corp. v. Harley-Davidson, Inc.,*
   269 F.3d 1360 (Fed. Cir. 2001) ........................................................................................ 10

*Micro Chemical, Inc. v. Lextron, Inc.,*
   317 F.3d 1387 (Fed. Cir. 2003) ........................................................................................ 19, 22

*Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.,*
   1994 WL 529331 (N.D. Ill. 1994).................................................................................. 18, 20

*Smith v. Ayeska Pipline Svc. Co.,*
   538 F. Supp. 977 (D. Del. 1982) ........................................................................................ 14

*Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer*
*Maschinenfabrik Aktiengesellschaft.*
   829 F.2d 1075 (Fed. Cir. 1987). ........................................................................................ 3, 14, 15

*SRI, Int'l, Inc. v. Advanced Tech. Labs., Inc.,*
   127 F.3d 1462 (Fed. Cir. 1997) ........................................................................................ 13

**Rules**

Fed. R. Civ. P. 26(a)(2)(C) ........................................................................................ 2, 9, 11

Fed. R. Evid. 702 ........................................................................................ 1, 19, 20

Fed. R. Evid. 703 ........................................................................................ 4, 17, 18, 20

## INTRODUCTION

Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") and Plaintiff DEKALB Genetics Corporation ("DEKALB") oppose the *Daubert* Motion to Exclude Expert Testimony ("*Daubert* Motion") filed by Defendants Syngenta Seeds, Inc., et al. (collectively "Syngenta"). Syngenta's motion is factually and legally baseless and is not properly brought as a *Daubert* motion.

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) held that the District Court acts as a gatekeeper to exclude unhelpful and unreliable expert testimony offered under Fed. R. Evid. 702. Rule 702 specifies that expert testimony should be excluded if it will not assist the jury in understanding the evidence or determining a fact in issue, the expert is not qualified to provide the testimony, or the expert has not used appropriate principles or methods in arriving at the opinions offered. The grounds for exclusion raised by Syngenta either do not fall within those grounds enumerated in Rule 702 or Syngenta's characterization of the testimony is demonstrably wrong based on the facts and law.[1]  Accordingly, Syngenta's motion should be denied in all respects.

---

[1] By contrast, Plaintiffs' *Daubert* motion seeks exclusion of certain proposed testimony of Syngenta's experts on grounds enumerated in Rule 702. The proffered testimony of Dr. Ward regarding RPA's providing a gene used to make the GA21 event is irrelevant to infringement of the '880 and '860 process patent claims. Dr. Bruce's testimony comparing the gene in the accused product with another RPA gene is likewise an improper method of determining noninfringement. In both cases, "the testimony is the product of [un]reliable principles and methods." Further, Syngenta's technical experts are not qualified to testify about court decisions or legal submissions by the parties in prior lawsuits.

## I.    NATURE AND STAGE OF PROCEEDINGS

At the close of fact discovery, on October 18, 2005, the parties served supplemental interrogatory responses that provided their updated contentions on issues including infringement and validity. Expert discovery followed. On October 22, the parties submitted expert reports on issues for which they have the burden of proof. Rebuttal expert reports were submitted on November 22. Expert depositions were completed on December 22. Trial is scheduled to begin on May 30, 2006.

## II.    SUMMARY OF THE ARGUMENT

Syngenta's motion seeks to exclude five areas of expert testimony. Syngenta's grounds for exclusion, however, lack merit both legally and factually.

1) The two grounds on which Syngenta seeks to exclude Dr. Keegstra's opinion that Syngenta's GA21 corn infringes the asserted claims of the '835 patent under the doctrine of equivalents are unsupportable. Contrary to Syngenta's assertion, Plaintiffs timely provided their doctrine of equivalents ("DOE") contention on October 18. Syngenta's argument that Plaintiffs' contention was too conclusory is totally meritless, because it was at least as detailed as Syngenta's doctrine of equivalents contention provided the same day. Nor is Dr. Keegstra's report conclusory. When read in its entirety, his report provides more than adequate detail to support his DOE conclusion.

2) Dr. Keegstra's sur-rebuttal report was submitted on December 13, 2005, solely to address one section of Dr. Bruce's November 22 rebuttal report raising a DOE argument that was never raised previously by Syngenta during discovery. It was entirely proper that Dr. Keegstra addressed this in a sur-rebuttal report under Fed. R. Civ. P. 26(a)(2)(C), and it was timely submitted under that rule. Moreover, Plaintiffs informed

2

Syngenta that the opinions expressed in the sur-rebuttal would be used only if Dr. Bruce's irrelevant testimony comparing the gene construct in Syngenta's GA21 corn to another RPA gene (purportedly to show no DOE infringement) was not excluded by the Court. [*See* Plaintiffs' *Daubert* motion at 11-12, D.I. 206] The irrelevance of the comparison that Dr. Bruce makes also provides the reason why some of the information Dr. Keegstra relies on in his sur-rebuttal report was not produced during discovery.

    3)    The opinions expressed in §§ II(G-I) of Dr. Keegstra's rebuttal report and §§ 7.0 and 7.2 of Dr. Cahoon's rebuttal report should not be excluded just because Syngenta states that it has dropped its obviousness defense to the '835 patent. If Syngenta does not put on an obviousness defense as it has represented to the Court, then there will be no need for Plaintiffs to present expert testimony directed to nonobviousness of the '835 patent. This entire issue could have been avoided if Syngenta had properly met and conferred with Plaintiffs before filing its motion.

    4)    The testimony discussed in Dr. Fromm's initial report and § XII of Dr. Keegstra's initial report regarding ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████     *See Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft.* 829 F.2d 1075, 1084 (Fed. Cir. 1987).

███████████████████████████████████████████████████

███████████████████████████████████

███████████████████████

5)   Syngenta's attempt to exclude portions of ¶¶ 43 and 65 of Dr. Gasser's rebuttal report regarding telephone conversations that he had with scientists who worked on Monsanto's glyphosate resistance project to confirm his understanding of that project should be rejected because they are "of a type reasonably relied upon by experts in the particular field," and, therefore, need not themselves be admissible in evidence.  Fed. R. Evid. 703.   Contrary to Syngenta's assertions, Dr. Gasser's discussions with Drs. Delannay and Kishore do not contradict other evidence, and even if they did, the proper remedy is cross-examination, not exclusion.  Moreover, Syngenta specifically elected not to depose Dr. Delannay.

## III.   STATEMENT OF FACTS

The facts necessary to decide this motion are set forth in the Argument below.

## IV.   ARGUMENT

### A.   The DOE Opinion Expressed In Dr. Keegstra's Initial Expert Report Should Not Be Excluded

Syngenta's first argument for excluding the DOE opinion expressed in Dr. Keegstra's initial report is that Monsanto did not provide a DOE contention until the last day of fact discovery.  [Syngenta Brief at 5-6]  Although this argument is more properly the subject for a motion in limine, which this Court has explicitly informed the parties that they are not to file [D.I. 111, ¶ 12],  Plaintiffs nevertheless will demonstrate below that they did not delay in making their contention, and Syngenta has not been prejudiced by the timing of or detail provided in that contention.

Plaintiffs' DOE contention was served on October 18, the last day on which the parties agreed to provide their final infringement contentions. The contention, which must be read in the context of the preceding portion of the response to interrogatory No. 4, stated:

> However, in the event that Syngenta contends that the chloroplast transit peptide from *Helianthus annus* (sunflower) RuBisCo present in GA21 is not a "chloroplast transit peptide" as required by the asserted claims of the '835 patent and that the "chloroplast transit peptide" in GA21 is in fact the so-called "Optimized Transit Peptide"—as Syngenta uses that phrase—Syngenta's activities with GA21 corn would infringe the asserted claims of the '835 patent under the doctrine of equivalents. Monsanto contends that the "Optimized Transit Peptide" performs the identical function of a chloroplast transit peptide, in the same way as a chloroplast transit peptide, to achieve the same result as a chloroplast transit peptide, namely to cause the transport of a polypeptide into a chloroplast in a plant cell. Monsanto reserves the right to supplement this response in response to the positions taken by Syngenta and the witnesses it relies on as experts, and in response to the construction of the claims of the '835 patent by the Court.

[*Id.* at 13-14; *see also*, 12-16] This provided more than an adequate statement of plaintiffs' DOE contention. Moreover, it provided more detail than Syngenta's non-infringement DOE contention:



[Exh. 1, Syngenta's 2d Supp. Response to Monsanto's Interrogatory No. 3 at 7-8] Dr. Keegstra's initial expert report discussing his DOE opinion was served only nine days later, on October 27. According, there is no basis for Syngenta to complain about prejudice based on the timing of, or detail provided in, Plaintiffs' DOE contention.

Focusing only on § X(c) of Dr. Keegstra's report, Syngenta contends that the discussion of DOE is conclusory and cites no evidence to support Dr. Keegstra's opinion that the OTP contains a chloroplast transit peptide ("CTP") which performs the same function, in the same way, to achieve the same result as the claimed CTP in claim 1 of the '835 patent. [Syngenta Brief at 6-8]  But § X(c) cannot be read in a vacuum. When § X(c) is read in conjunction with Dr. Keegstra's entire report, and specifically with §§ V, IX and the rest of § X, there is more than sufficient factual detail to support his opinion. In § V, which is specifically referenced in § X(c), Dr. Keegstra provided a tutorial on the mechanism of protein transport into chloroplasts as follows:

> Plastids are important organelles found within plant cells. A plastid's structure and function varies greatly depending upon the specific plant tissue and cell type in which it is located. Chloroplasts, located in green tissues such as leaves, are the most complex plastid type, both structurally and functionally. They contain distinct compartments and perform essential processes such as fatty acid and amino acid biosynthesis in addition to their well-known role in photosynthesis. The chloroplastic proteins needed for these diverse and essential metabolic pathways derive from two genetic systems. The chloroplastic genome encodes approximately 100 proteins, but the vast majority of chloroplastic proteins are encoded by nuclear genes and synthesized as precursors in the cytoplasm.

> In general, protein import, as schematically presented in Exhibit C, Figure 1, includes a variety of activities: specific targeting of precursor proteins to chloroplasts, transport across the two envelope membranes, proteolytic removal of the transit peptide, and in some cases, further transport to a subcompartment. It is now known that proper localization into chloroplasts of cytoplasmically synthesized chloroplastic proteins is accomplished by interactions between targeting sequences contained within the precursor proteins and the transport machinery contained within the chloroplasts. *See also*, Keegstra & Cline, *The Plant Cell* (1999) 11:557-570.

[Exh. 2 to Syngenta Brief at 3-4]

In § IX, Dr. Keegstra discusses his opinions on literal infringement, and as part of that discussion, he describes the genetic construct in GA21 corn that confers glyphosate tolerance, including the OTP component of the construct.  [*Id.* at 8-10]  He specifically states that "[t]he *chloroplast transit peptide element of the claim is met by the chloroplast transit peptide from Helianthus annus located at the N-terminal portion of the protein*, which serves the chloroplast function of carrying the fusion polypeptide into the chloroplast."  [*Id.* at 9, emphasis added]

In § X, Dr. Keegstra discusses the Missouri court's claim construction.  [*Id.* at 10-14]  He discusses certain disagreements that he has with that construction and why, in his opinion, even if the Missouri court's claim construction were to be adopted, the genetic construct in GA21 corn would still infringe the asserted claims of the '835 patent.  [*Id.* at 11-13]  Specifically, he discusses the genetic make-up of the OTP and its function as follows:

> The chimeric gene in GA21 corn contains a naturally occurring chloroplast transit peptide, *i.e.*, a naturally occurring sequence of amino acids that causes the transport of a polypeptide into the chloroplast.  I have compared the amino acid sequence of the *Helianthus annus* CTP in GA21 corn to the sequence of the naturally encoded series of amino acids in the RUBISCO precursor protein from *Helianthus annus* and determined that the amino acids are the same.
>
> . . .
>
> In my opinion, the additional DNA in the [OTP] construct [besides the *Helianthus annus* CTP from RUBISCO] which encodes the 22 amino acids of the maize mature RUBISCO protein and the second chloroplast transit peptide from the maize RUBISCO protein are not the elements that are responsible for carrying the passenger protein into the chloroplast but are merely additional elements as contemplated by the court's prior definition.  It has been shown that the cellular machinery of chloroplast recognizes the transit peptide at the N-terminal end of the precursor protein and that that transit peptide determines the cellular compartment into which where the protein will be carried.  *See* de Castro Silva Filho et al.

7

(1996), *Plant Mol. Biol.* 30:769-780; N. Peeters, I. Small, *Biochimica et Biophysica Acta*, 1541 (2001) 54-63. That additional elements are present in what Rhone Poulenc called the OTP is in keeping with the prior construction and order. *See* MGA0062516; MGA0058867. In addition, all of the elements of what Rhone Poulenc called the "OTP" encode naturally occurring amino acid sequences.

[*Id.* at 11-12] This discussion informs the reader that there are three parts to the OTP:

(1) a *Helianthus annus* CTP from RUBISCO, (2) 22 amino acids of maize mature

RUBISCO, and (3) a maize CTP from RUBISCO. This passage also informs the reader

that, in Dr. Keegstra's opinion, the *Helianthus annus* CTP of RUBISCO performs the

function of the claimed CTP.

In § X(c), Dr. Keegstra provides his conclusion that Syngenta's GA21 corn

infringes under the doctrine of equivalents:

> In the event that certain of my claim constructions are not adopted, I would be of the opinion that the claims of the patent would be infringed under the doctrine of equivalents in any event. *The "optimized transit peptide" as Syngenta uses that phrase still contains **a chloroplast transit peptide element** that performs the function of a transit peptide by causing importation of the protein into the chloroplast of a plant cell, which is the stated function of a chloroplast peptide.* This importation would occur the same way using the same cellular machinery of peptide transport that I addressed in section V above and would achieve the same result of localizing the EPSPS protein inside the chloroplast where it catalyzes synthesis of EPSPS and thus provides glyphosate resistance to a plant cell transformed with the gene.

[*Id.* at 14, emphasis added]

Accordingly, when Dr. Keegstra's report is read in its entirety, it provides detailed

support for his opinion that whether the OTP is considered as a whole or as a

combination of individual elements, it contains a chloroplast transit peptide (CTP) that

causes the EPSPS in the GA21 construct to be imported into the chloroplast of a plant

cell in the same way as the claimed CTP. In the previously cited passages, he explained the basis for this opinion:

> It has been shown that the cellular machinery of chloroplast recognizes the transit peptide at the N-terminal end of the precursor protein and that that transit peptide determines the cellular compartment into which where the protein will be carried. *See* de Castro Silva Filho et al. (1996), *Plant Mol. Biol.* 30:769-780; N. Peeters, I. Small, *Biochimica et Biophysica Acta*, 1541 (2001) 54-63.

[*Id.* at 12]

Furthermore, Syngenta had the opportunity to depose Dr. Keegstra regarding the DOE opinion expressed in his expert report, and Syngenta took full advantage of that opportunity. Dr. Keegstra was questioned at length about the issue that is central to DOE infringement—the nature and function of the so-called OTP in GA21 corn. [Exh. 2, Keegstra Tr. at 46-52, 142-148]

For all of the foregoing reasons, Dr. Keegstra's DOE opinion set forth in his initial report is well supported and should not be excluded.

**B.    Dr. Keegstra's Sur-rebuttal Expert Report Was Timely Filed To Address Issues Raised For The First Time In Dr. Bruce's Rebuttal Report**

Syngenta argues that the opinions expressed in Dr. Keegstra's sur-rebuttal expert report should be excluded as untimely. The sur-rebuttal report, however, was timely served on December 13 under Fed. R. Civ. P. 26(a)(2)(C) because it was submitted solely to respond to issues disclosed for the first time in Dr. Bruce's responsive expert report served November 22.

Rule 26(a)(2)(C) provides that "if the evidence [in an expert disclosure] is intended solely to contradict or rebut evidence on the same subject matter identified by another under paragraph (2)(B), [then the expert disclosure shall be made] within 30 days

9

after the disclosure made by the other party." Dr. Keegstra's sur-rebuttal report addresses Section II.C. of Dr. Bruce's rebuttal report, which purports to rebut Dr. Keegstra's opinion that the OTP in Syngenta's GA21 corn is equivalent to the CTP of claim 1 of the '835 patent. [Exh. 3, ¶ 29] Dr. Bruce concludes that the OTP functions in a substantially different way and achieves a substantially different result. [*Id.*] However, Dr. Bruce does not compare the OTP in GA21 corn to claim 1 of the '835 patent as required by Federal Circuit precedent. *See, e.g., J&M Corp. v. Harley-Davidson, Inc.,* 269 F.3d 1360, 1366 (Fed. Cir. 2001). Instead, he compares the OTP in Syngenta's GA21 corn products to the RPA 294 construct. [*Id.* ¶¶ 32-35 and 38-39] Accordingly, Plaintiffs have moved to exclude the proposed testimony set forth in Section II.C. (¶¶ 29-39) of Dr. Bruce's responsive report because it does not relate to any issue in the case and therefore will not be helpful to the jury. *Daubert,* 509 U.S. at 591, 113 S. Ct. at 2795. [D.I. 206] If Plaintiffs' *Daubert* motion is granted, then Syngenta's *Daubert* motion with respect to Dr. Keegstra's sur-rebuttal report will be moot.

Plaintiffs served Dr. Keegstra's sur-rebuttal expert report on December 13 with a cover letter expressly informing Syngenta that Plaintiffs intended to use Dr. Keegstra's report only if Dr. Bruce's purported DOE testimony was not excluded. [Exh. 4, Patterson letter to Levine] This letter demonstrates unequivocally that the sur-rebuttal report was submitted only to respond to Section II.C. of Dr. Bruce's responsive report.

In Section II.C. of his report, Dr. Bruce relies heavily on a decision by the North Carolina court in a prior case involving RPA and a declaration by an RPA scientist, Dr. LeBrun, that was submitted during the prosecution of an RPA patent that discloses the OTP. [Exh. 3, ¶¶ 29-39] As discussed in Section V(A), *supra,* prior to Dr. Bruce's

10

rebuttal report, Syngenta had made only a conclusory allegation in its contentions that it did not infringe under the doctrine of equivalents. There was no mention of the North Carolina decision, the LeBrun declaration, or a comparison of the gene construct in GA21 to the RPA 294 construct prior to Dr. Bruce's rebuttal report. Thus, Dr. Keegstra could not have addressed these issues in an earlier report, and his submission of a sur-rebuttal report to address them was proper under Fed. R. Civ. P. 26(a)(2)(C).

Dr. Keegstra's sur-rebuttal report explains a number of deficiencies of the LeBrun declaration and criticizes Dr. Bruce's reliance on that declaration for his DOE opinions. [Exh. 3 to Syngenta Brief and related exhibits]  To show the deficiencies in the LeBrun declaration, Dr. Keegstra's sur-rebuttal report discusses documents that were used as exhibits in one of the RPA trials in North Carolina.  Plaintiffs did not produce these materials earlier in the case because they were not relevant.[2]  It was not until Dr. Bruce presented his improper DOE analysis comparing the GA21 construct to the RPA294 construct in his rebuttal report that these documents became relevant.

Accordingly, if Dr. Bruce's DOE analysis in Section II.C. of his rebuttal report is not excluded, then there is no basis for excluding Dr. Keegstra's sur-rebuttal report.

### C.    The Sections Of Dr. Cahoon's And Dr. Keegstra's Rebuttal Reports Relating To Nonobviousness Of The '880 And '863 Patents Should Not Be Excluded

Syngenta seeks to exclude §§ II(G-I) of Dr. Keegstra's rebuttal report and §§ 7.0 and 7.2 of Dr. Cahoon's rebuttal report as no longer relevant on grounds that Syngenta has withdrawn its obviousness defense to the asserted claims of the '835 patent.

---

[2] Syngenta sought production of voluminous documents related to three trials between Monsanto/DEKALB in North Carolina.  Plaintiffs agreed to produce the requested documents related to one of those trials, the inventorship trial.  [Exh. 7 to Syngenta's Brief at 4]  Thereafter, Syngenta never moved to compel documents related to the other trials.

11

[Syngenta Brief at 10-11]  With the exception of § 7.0 of Dr. Cahoon's report, Plaintiffs' agree that the opinions expressed in these portions of the expert reports will not need to be offered to address nonobviousness of the '835 patent if Syngenta does not present an obviousness defense.  Syngenta's request for exclusion based on *Daubert*, however, is inappropriate.

This portion of Syngenta's motion would have been completely unnecessary if Syngenta had properly met and conferred with Plaintiffs in advance of filing its motion. Syngenta only sent a letter to Plaintiffs on January 9 advising that Syngenta would be filing a motion to exclude expert testimony, just two days before the motion was due.[3] Syngenta's Brief at 11 alleges that Plaintiffs were asked to withdraw the subject expert testimony on grounds that Syngenta was withdrawing its obviousness defense to the '835 patent and that Plaintiffs refused.  This assertion is misleading.  In a telephone conference on January 9, the day Syngenta's letter was received, Plaintiffs asked Syngenta whether they would also be dropping their obviousness defenses to the other patents-in-suit and pointed out that at least some of the evidence in question was also relevant to nonobviousness of the '880 and '863 patents.  Syngenta counsel said that he would inquire and get back to Plaintiffs.  He never did.

Thus, Plaintiffs were left wondering whether Syngenta was reconsidering its withdrawal of the obviousness defense to the '835 patent.  Plaintiffs were not in a position to withdraw the sections of the expert reports in question and were left with no choice but to respond that they would not agree to the requested withdrawal.  [Exh. 5, Jan. 11, 2006 email from Miller to Popma]

---

[3] By contrast, Plaintiffs sent Syngenta letter on December 29 notifying Syngenta of their intent to file a *Daubert* motion and requesting a meet and confer in accordance with the Local Rules.

In summary, with one exception, Plaintiffs will have no need to offer the expert testimony set out in §§ II(G-I) of Dr. Keegstra's rebuttal report and §§ 7.0 and 7.2 of Dr. Cahoon's rebuttal report if in fact Syngenta has withdrawn its obviousness defense to the asserted claims of the '835 patent as it has represented to the Court. Section 7.0 of Dr. Cahoon's report as it relates to nonobviousness of the '880 and '863 patents, however, remains relevant. Syngenta's request for exclusion should be denied.

**D.    Expert Testimony Regarding ███████████████████ ████████████ And Adoption Of GA21 Instead Is Highly Relevant To Willful Infringement**

Syngenta seeks to exclude the entire initial expert report of Dr. Fromm and § XII of Dr. Keegstra's initial expert report, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ [Syngenta Brief at 11-13] Syngenta asserts that this testimony is not relevant and potentially prejudicial.[4]  [*Id.* at 12]

---

[4] ████████████████████████████████████████████████████

████████████████████████████████████████████ Nonetheless, Syngenta's Brief at 12 casts the inquiry regarding willful infringement in this case as a determination of "whether the accused infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to infringe," citing *SRI, Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997). The court in *SRI* went on to say:

> The law of willful infringement does not search for minimally tolerable behavior, but requires prudent, and ethical, legal and commercial actions. Thus precedent displays the consistent theme of whether a prudent person would have had sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated. *Id.* at 1465 (cites omitted).

However, Syngenta has blocked any attempt to evaluate whether it had sound reason to believe that the patents in suit would be held to be not infringed and/or invalid because Syngenta has steadfastly refused to produce its opinions of counsel. Moreover, to the extent that Syngenta will attempt to rely on its "good faith" beliefs regarding validity and



In *Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075 (Fed. Cir. 1987), the Federal Circuit affirmed the district court's finding of willful infringement on facts very similar to the present case. The defendant (Schubert) had tried to develop its own competitive design, failed, and then adopted the patented technology. The court stated:

---

infringement of the patents in suit in making the decision to make, use and sell GA21 corn as a defense to Plaintiffs' willful infringement allegations and those beliefs rely on advice of counsel, Syngenta's injection of its good faith into this case may very well waive the privilege it has so carefully guarded throughout this litigation. *Handguards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926,929 (N.D. Cal. 1976)("The deliberate interjection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice."); *Smith v. Alyeska Pipline Svc. Co.*, 538 F. Supp. 977, 979 (D. Del. 1982).



[Exh. 6, Sept. 7, 2005 Hearing Tr. at 9]

14

> The district court did not, however, find that Schubert had exerted good faith efforts to design around the '946 patent. Rather, it was found that Schubert, unable to design its own automatic piecing device, knowingly proceeded to employ technology protected by the '946 patent.

*Id.* at 1084. Thus, expert testimony about ███████████████ is highly relevant to demonstrate that Syngenta willfully infringed the patents-in-suit and should not be excluded for that reason alone.

This evidence is also highly relevant to damages, specifically, the determination of an appropriate reasonable royalty, because a number of Syngenta financial documents that describe how Syngenta valued glyphosate tolerant corn cannot be understood properly without an understanding of ███████████████████████

████████████████████████████████████

████████████

One example is "GT Corn—Valuing an Opportunity," the document at issue in the telephonic hearing with the Court on January 10, 2006. [Exh. 7, SYN 96708-712] █

████████████████████████████████████

████████ [*Id.* at SYN 96712] ████████████████████

████████████████████████████████████

████████████ [*Id.* at SYN 96709]

Another example is "GT Corn Business Case Drivers." [Exh. 8, SYN 94634-644]

████████████████████████████████████

████████████████████████████████████

████████████████████████████ [Exh. 9,

Expert Report of Richard Cahoon at p. 20]



[Exh. 10,

Expert Report of Christopher Spadea at pp. 17-19]

*[Id.* at ¶ 18]

Accordingly, because Dr. Fromm's initial expert report and § XII of Dr. Keegstra's initial expert report are highly relevant to willful infringement and are necessary to interpret and understand many key damages related documents, they should not be excluded.

### E.   Dr. Gasser Properly Spoke With Scientists Who Had Worked On The Glyphosate Resistance Project At Monsanto To Confirm His Understanding Of The Facts

Syngenta seeks to exclude the expert testimony of Dr. Gasser to the extent that he relies on telephone conversations with Dr. Delannay and Dr. Kishore, both scientists who were involved in Monsanto's glyphosate resistance development program. [Syngenta Brief at 13-17] Syngenta argues that Dr. Gasser is improperly using these conversations to contradict one of Dr. Delannay's documents and certain deposition testimony of Dr. Kishore. [*Id.* at 15-16] Syngenta also contends that this testimony should be excluded because Dr. Gasser did not talk to Drs. Delannay and Kishore until after the close of fact discovery and thus Syngenta was precluded from deposing Drs. Delannay and Kishore about their discussions with Dr. Gasser during fact discovery. [*Id.*, p. 17] Syngenta's complaints ultimately go to the weight that should be given Dr. Gasser's testimony and are properly addressed by cross-examination of Dr. Gasser, not by excluding the

testimony. Moreover, Dr. Gasser's consultations with these two scientists provided him was the kind of information contemplated by Fed. R. Evid. 703.

Syngenta relies on a statement in Dr. Delannay's laboratory notebook regarding the first experiment in which he was comparing the efficacy of genetic constructs



[Syngenta Brief at 13]

[Exh. 14 to Syngenta Brief, ¶ 42]

In his expert report, Dr. Gasser points out the fallacy in drawing the conclusions that Syngenta would like to draw from this experiment. [*Id.* at ¶¶ 42-45] He states in ¶ 42 of his report:



17

 For the

same reason, they are just the type of information "reasonably relied upon by experts in

[this] particular field in forming opinions or inferences upon the subject." Fed. R. Evid.

703; *see, Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.*, 1994 WL 529331, *11

(N.D. Ill. 1994). What Syngenta's argument really comes down to is a disagreement

about how the facts should be interpreted, but this is not a proper basis for excluding expert testimony.

Syngenta fails to mention that it chose not to depose Dr. Delannay during fact discovery. Syngenta noticed his deposition, and Monsanto provided a date for the deposition. [Exh. 11, Aug. 10, 2005 Ltr. Edwards to Sukduang] Nonetheless, Syngenta elected not to depose him. [Ex. 12, Sept. 7, 2005 Ltr. Patterson to Sukduang] Furthermore, Syngenta deposed Dr. Gasser regarding his discussion with Dr. Delannay. [Exh. 13, Gasser Tr. at 193-208, 211-212] He also provided them with his contemporaneous notes of the conversation. [*Id.* at 224] Consequently, Syngenta has not been deprived of discovery on this issue.

In *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003), the court refused to exclude testimony of a damages expert who had relied on the statements of others in reaching his opinions for this very reason:

> The parties disputed many of the facts relevant in determining a reasonable royalty, the foremost being whether the defendants' modified systems would have been available at the time of a hypothetical royalty negotiation and whether the defendants promoted sales of their other products by distributing their infringing systems to feedlots free of charge or at a substantial loss. When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony. We find the Advisory Committee note to Rule 702 instructive in this regard:
>
> > When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.
>
> ...The Advisory Committee note further counsels that "the trial

19

> court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Indeed, as the Supreme Court stated in *Daubert*: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

By seeking exclusion of Dr. Gasser's discussion with Dr. Delannay, Syngenta is asking this Court to do what Rule 702 says it cannot do, decide now in favor of Syngenta's version of the facts.

Syngenta also seeks to exclude Dr. Gasser's discussion with Dr. Kishore about Example 8 of the '835 patent. Dr. Kishore, a former Monsanto employee, was head of the Biochemistry Group in the Plant Molecular Biology Group that performed the experiment leading to Example 8 and the isolation of the mutant EPSPS used in pMON542. Dr. Gasser was in the Plant Molecular Biology Group, albeit not the Biochemistry Group, during his tenure at Monsanto. Syngenta alleges that Dr. Gasser is attempting to contradict Dr. Kishore's deposition testimony. [Syngenta Brief at 15] Plaintiffs disagree and so did Dr. Gasser in his deposition. [Exh. 13, Gasser Tr. at 210] ███████████████████████████████████████████████████████ ███████████████████████████████████████████ are just the "type reasonably relied upon by experts in [this] particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703; *see*, *Sam's Wines & Liquors*, 1994 WL 529331 at *11.

███████████████████████████████████

███████████████████████████████████████████

████████████ [Syngenta Brief at 13] ████████████

███████████████████████████████████████████

████████████████████████████████████ [Exh. 14 to Syngenta

Brief, ¶ 65]  Dr. Gasser stated his opinion that:



[*Id.*]

Dr. Kishore was asked during his deposition about repeating an experiment

similar to Example 8 and testified as follows:



[Exh. 15 to Syngenta Brief  at 19]

████████████████████████████████████

████████████████████████████████████



Syngenta deposed Dr. Gasser regarding his discussion with Dr. Kishore. [Exh. 13, Gasser Tr. at 209-214]  He also provided them with his contemporaneous notes of the conversation.  [*Id.* at 224]  Consequently, Syngenta has not been deprived of discovery on this issue.  Thus, Syngenta's concerns should be dealt with through cross-examination, not exclusion of the testimony.  *Micro Chemical*, 317 F.3d at 1392.

------

6

Finally, Syngenta suggests that it was improper for Dr. Gasser to talk to Drs. Delannay and Kishore after the close of fact discovery because this prevented Syngenta from deposing Drs. Delannay and Kishore about their discussions with Dr. Gasser. [Syngenta Brief at 17] But there is no requirement in the Federal Rules of Civil Procedure that if experts discuss issues with fact witnesses relevant to their proposed testimony, they must do so *before* the fact witness is deposed *and* disclose the fact of the discussion to opposing counsel so that the fact witness can be deposed about the discussion.

## V.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Syngenta's motion to exclude expert testimony.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, Texas 77092
Telephone (713) 787-1400

By:   */s/ David E. More*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Dated: January 26, 2005
Public Version Dated: February 1, 2006
717592

*Attorneys for Plaintiffs*

23

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 1, 2006, the attached document

was hand-delivered to the following persons and was electronically filed with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on February 1, 2006, I have Federal Expressed the

foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
    Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413

_/s/ David E. Moore_
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com