V.  **ARGUMENT**

    A.  **Significant Factual Inquiries Preclude Summary Judgment that the Claims of the '880 Patent Are Not Invalid Under § 102(g) Based on Klein's Grant Application**

Summary judgment is appropriate only when no genuine issue exists as to any material fact. Fed. R. Civ. P. 56. A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor. *Id.* at 255; *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001).

        1.  **Dr. Klein's Grant Application Constitutes a Conception**

The evidence, as explained above, establishes that Klein conceived of a three-step method for making transgenic corn plants by DNA bombardment, selection, and plant regeneration well prior to Lundquist and Walters and in fact disclosed that conception to Dr. Lundquist. In its summary judgment motion, Monsanto does not contest that the Grant application is a publication under § 102, that Dr. Klein was diligent, the Grant application's inventorship, and Klein's direct involvement in the experiments leading to fertile transgenic herbicide-resistant corn plants. D.I. 200 at pp. 10, 17-18.

Instead, Monsanto challenges Dr. Klein's conception, basing its summary judgment motion on the flawed notion that the Grant application is a "pure research plan" that does not meet the requirements of a conception of the invention claimed in the '880 patent as a matter of law. D.I. 200 at p. 18. Monsanto, however, ignores the actual limitations of the claims at issue, confuses conception with reduction-to-practice, and disregards that conception is a fact-intensive inquiry not appropriately resolved on summary judgment. *See In re Jolley*, 308 F.3d 1317, 1323 (Fed. Cir. 2002).

"Conception is the touchstone of inventorship, the completion of the ***mental part*** of invention." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994) (emphasis added) (citing *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994)). In determining whether a conception has taken place, courts examine "whether the inventor has an idea that was definite and permanent enough that one skilled in the art could understand the invention . . . ." *Id.* at 1228. The analysis "necessarily turns on the inventor's ability to describe his invention with particularity." *Id.* "Conception is complete only when the idea is so clearly defined in the inventor's mind that the only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Id.* (citing *Sewall*, 21 F.3d at 415). In determining whether extensive experimentation is necessary, courts should examine whether "the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice." *Id.* at 1229.

Precedent does not require that "the final size and shape of every part and the location of every nut, screw, and bolt must be exactly foreseen before the conception of an apparatus can be said to be complete." *In re Tansel*, 253 F.2d 241, 243 (C.C.P.A. 1958). "Whether or not subsequent testing succeeded or failed, or even took place, does not determine whether conception was complete as of that date." *In re Jolley*, 308 F.3d at 1325.

Moreover, regarding whether a "research proposal" suffices as a conception, the Federal Circuit has specifically acknowledged that "the ***conception inquiry is fact-intensive*** and ***no per se rule excludes 'research proposals' as evidence of conception***." *Id.* at 1323 (emphasis added). As such, "[t]he determinative inquiry is not whether [the relevant] disclosure was phrased

19

certainly or tentatively," but whether the idea allows a skilled artisan to practice the invention without undue experimentation. *Id.* at 1324.

Monsanto relies primarily on cases addressing the conception of DNA sequences: *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200 (Fed. Cir. 1991) and *Fiers v. Revel*, 984 F.2d 1164 (Fed. Cir. 1993). But these cases are not applicable to the facts set forth above. In *Amgen*, the "invention recited in claim 2 is a 'purified and isolated DNA sequence' encoding human EPO." 927 F.2d at 1206. The alleged prior conception, however, could not identify the very DNA sequence that was later claimed. Accordingly, the Federal Circuit explained that there was no conception of the claimed DNA sequence: "A gene is a chemical compound . . . and it is well established in our law that conception of a chemical compound requires that the inventor be able to define it so as to distinguish it from other materials, and to describe how to obtain it." *Id.*; *see also Fiers*, 984 F.2d at 1169 (summarizing *Amgen* that "irrespective of the complexity or simplicity of the method of isolation employed, conception of a DNA, like conception of any chemical substance, requires a definition of that substance other than by its functional utility."). Here, Dr. Klein conceived of a specific method and identified all the method steps for obtaining fertile transgenic corn using microprojectile bombardment that are set forth in the very broad claims of the '880 patent. The question raised by Monsanto's motion cannot be whether the elements of the claimed subject matter can be found in the disclosure of the Klein idea, i.e. conception, but instead whether the Klein disclosures were sufficient to enable practicing the Klein method. *Amgen* and *Fiers* are simply not relevant to the instant motion.

Indeed, in *Burroughs Wellcome Co. v. Barr Labs.*, Barr labs, citing *Amgen* and relying on the "so-called doctrine of simultaneous conception and reduction to practice," argued that when the invention deals with uncertain or experimental disciplines, an "inventor's definite and

20

permanent idea must include a reasonable expectation that the invention will work for its intended purpose," particularly "where the inventor cannot reasonably believe an idea will be operable until some result supports the conclusion." 40 F.3d at 1228. Barr further argued that without "some experimental confirmation . . . the inventor has *only a hope or an expectation, and has not yet conceived the invention . . . .*" *Id.* (emphasis added). The Federal Circuit, however, specifically rejected Barr's argument, unambiguously stating, "*But this is not the law.*" *Id.* (emphasis added). The Federal Circuit explained that an "inventor's belief that his invention will work or his reasons for choosing a particular approach are irrelevant to his conception." *Id.* "*[A]n inventor need not know that his invention will work for conception to be complete . . . [h]e need only show that he had the idea; the discovery that an invention actually works is part of its reduction to practice.*" *Id.* (emphasis added).

Monsanto further cites *Hitzeman v. Rutter*, 243 F.3d 1345, 1356 (Fed. Cir. 2001) as support for its position. But this case is also not applicable to the current facts. In *Hitzeman*, the count of the inference was directed to particles that could be used as a vaccine against hepatitis. *Id.* at 1348. The dispositive fact in *Hitzeman* was that an essential limitation of the count was "the particle size and sedimentation rate." *Id.* at 1355. In particular, "a sedimentation rate which is virtually identical to that of authentic 22 nm HBsAg particles." *Id.* at 1353 n.3. Thus, the question was whether Hitzeman had adequately conceived of the particle size and sedimentation rate before the other party. Based on the extensive evidentiary record in that case, the Federal Circuit held that Hitzeman did not have "reasonable expectation that using yeast as host cell, rather than bacteria, would yield successful assembly of particles, which he specifically claimed." *Id.* at 1357.

Unlike the facts in *Hitzeman*, here, Lundquist and Walters did not claim the very specific parameters used to obtain fertile transgenic corn but the broad process that had previously been conceived by Dr. Klein. The facts here are much more similar to that of *Burroughs Wellcome* where the claims at issue were directed to methods of using AZT to treat AIDS: "[a] method of treating a human having acquire immunodeficiency syndrome comprising the oral administration of an effective acquired immunodeficiency syndrome treatment amount of [AZT] to said human." *Burroughs Wellcome*, 40 F.3d at 1225 n.3. (representative claim).

Furthermore, in *Hitzeman*, the Federal Circuit specifically considered *Burroughs Wellcome*, and explained that while *Burroughs Wellcome* held that an inventor need not have a reasonable expectation that his invention "would work for its intended purpose" in order to have a conception, "[h]ere, in contrast, we are focusing on whether the inventors had a reasonable expectation that they would produce the claimed invention." *Hitzeman*, 243 F.3d at 1358. In this case, Dr. Klein's Grant application clearly disclosed all the elements of claim 1 of the '880 patent, and the testimony of Dr. Klein, his publications, and the work of other groups, all demonstrate that Dr. Klein had a "reasonable expectation" that his invention would work. To the extent Monsanto disputes that Dr. Klein had such a reasonable expectation, it further shows that this is a factual issue not appropriately resolved on summary judgment.

Monsanto also relies on *Meitzner v. Corth*, 410 F.2d 433 (C.C.P.A. 1969). There, the C.C.P.A. stated that "if after the claimed conception date extensive research was found necessary before achieving minimum satisfactory performance obviously the mental embodiment of that date was a mere hope or expectation, a statement of a problem, but not an inventive conception." *Id.* at 437. The C.C.P.A. found that there was no conception of the method because the inventors could not direct one skilled in the art to successfully reduce their method to practice. *Id.* Unlike

*Meitzner*, here, Dr. Klein conceived of a method which was independently carried out by three separate groups to successfully obtain fertile transgenic corn and did not take "extensive research" to reduce to practice. Moreover, contrary to Monsanto's assertions, Dr. Klein's publications from 1987-89 demonstrate that Dr. Klein successfully achieved each goal he had established in reducing his invention to practice. There were no "experimental failures" that so "undermined" Dr. Klein's method sufficient to demonstrate that Dr. Klein's Grant application did not constitute a conception. *See Burroughs Welcome,* 40 F.3d at 1229.

Furthermore, both the *Hitzeman* and *Meitzner* cases relied on by Monsanto were from interferences where the Federal Circuit and the C.C.P.A. reached their decisions after an extensive evidentiary record was developed. These cases makes clear that the question concerning whether Dr. Klein's Grant application constitutes a conception is intensively factual. Such a factual question cannot be properly resolved on summary judgment.

### 2. Dr. Klein Conceived Each Element of Claim 1 of the '880 Patent

Analysis of the broad claims of the '880 patent reveals that Dr. Klein's Grant application disclosed each limitation of the asserted claims. As discussed above, the Grant application disclosed step (i) of the three-step process recited in claim 1 of the '880 patent, "bombarding regenerable *Zea mays* cells with DNA-coated microprojectiles." *See supra,* § IV.B.1. It additionally provided details and conditions for practicing the bombardment step. *Id.*

Dr. Klein also conceived of step (ii) of claim 1 of the '880 patent. As described above in § IV.B.2, he specifically disclosed bombarding regenerable corn cells with DNA conferring resistance to kanamycin, and appreciated that similar selectable markers could be used in the place of kanamycin if desired. *Id.* He provided details regarding how to choose the correct

23

concentration of selective agent, and how to accurately perform the selection step. MGA0080497 (A102).

Finally, there is no question that the Grant application disclosed taking the transformed cells and regenerating fertile transgenic plants, step (iii). *See supra*, § IV.B.3. As discussed above, Dr. Klein appreciated that plant regeneration systems were previously known in the art. MGA0080496 (A101). In fact, he chose to generate transgenic corn plants, in part, because of the regeneration systems already in place. *Id.* Since these existing systems certainly would teach one of skill in the art how to regenerate a fertile transgenic plant, Dr. Klein also conceived of step (iii).

Thus, the "invention" recited in claim 1 of the '880 patent was *not* made by Dr. Lundquist and Mr. Walters, but by Dr. Klein and his collaborators, and Klein's conception was unquestionably prior to any conception by Lundquist and Walters. It was Klein that came up with the truly inventive idea of using a "shotgun" to "shoot" pellets coated with DNA into regenerable corn cells. *See* 12/7/05 Finer Dep. Tr. 102, 271

(A63-64). It was this invention that solved the long-standing problem in the art of transforming corn cells and made the subsequent reductions to practice by Klein and other researchers who learned of Klein's conception possible.

### 3. It Did Not Take Extensive Research to Reduce Klein's Conception to Practice

Monsanto's entire motion boils down to whether it took "unduly extensive research" to take Dr. Klein's method and apply it to obtain fertile transgenic corn. Clearly, it did not. As discussed above, the Grant application was made publicly available in 1987, and Dr. Klein

24

published (in Klein 1988a and 1988b) the parameters (with minor modifications) that were used by *three separate groups* (USDA, DeKalb, and Lundquist and Walters) by June 1988. In February 1989, Lundquist and Walters carried out their successful bombardment that led to fertile transgenic corn; in March 1989, DeKalb (Mr. Spencer) carried out its bombardment that led to fertile transgenic corn; and in June 1989, the USDA (Klein and Fromm) carried out its successful bombardment that led to fertile transgenic corn. The close overlap of the achievement of successful results using the gene gun and Klein's methodology indicates the time frame for reduction to practice from disclosure by Klein was in fact reasonable for this technology and apparently typical, and not "unduly" extensive.

Importantly, from the perspective of Lundquist's claims defining the invention only in terms of the broad three-step process of Klein's original conception, Lundquist and Walters made no "inventive contribution" to the claimed invention. Whatever inventive contribution they could assert to have made would have been in details of the particular materials and conditions they used, if those were patentably different from what Klein or others used. But even if such a contribution were made, it would apply only to claims that specified those materials and conditions. And Klein would still have jointly contributed to such claims by providing the original conception. In the end, the facts show that as to the claims at issue, Lundquist and Walters were only involved in reducing the Klein conception to practice and not in the discovery of the claimed invention—its conception—which was solely Klein's.

In an attempt to show undue experimentation, Monsanto contends that Lundquist and Walters needed to modify Klein's method. But Monsanto confuses reduction-to-practice with conception. All Lundquist and Walters did was take Dr. Klein's method and optimize various parameters in order to reduce the method to practice. Moreover, it is clear that these parameters

25

were not key to the success as the *other two groups did not adopt these exact parameters and still obtained fertile transgenic corn.* For example, both Spencer and Fromm did not use hygromycin. *See* MGA0002692 (A243); MGA0056707 (A268). Indeed, it should be noted that when DeKalb used RPA's gene to bombard corn cells and prepare GA21 corn (the product accused of infringement in this case), DeKalb did not use hygromycin as the selective agent, (Lundquist and Walter's choice of selective agent), and did not use the specific regenerable cell type used by Lundquist and Walters. U.S. Patent No. 6,040,497 ("the '497 patent") at Example 2, cols. 40-41 (A348-49).

This is clearly a situation where Monsanto "wants to have its cake, and eat it too." On the one hand, Monsanto emphasizes the particular modifications Lundquist and Walters made to Klein's method, such as using hygromycin, changing the concentration of DNA used to coat the microprojectiles, and the particular regenerable cells used, as *key* to the success in obtaining fertile transgenic corn. D.I. 200 at pp. 6-7. But on the other hand, Monsanto asserts that the claim broadly covers the use of microprojectile bombardment using *any* set of parameters, *any* selectable maker, *any* concentration of DNA, and *any* type of embryogenic corn cells. Monsanto needs to take such positions because Syngenta's GA21 corn was not made using hygromycin as the selective agent and was not made using the particular regenerable cells used by Lundquist and Walters.

Specifically, Monsanto criticizes the Grant application's use of a kanamycin resistance gene as a selectable marker, arguing that Dr. Christou admits that he is not aware of anyone being able to use a kanamycin resistance gene as a selectable marker to produce fertile transgenic corn. D.I. 200 at p. 12. Syngenta, however, disputes the factual implication of Monsanto's argument that undue experimentation would be required for one of skill in the art to substitute a

26

known selectable marker for the gene conferring resistance to kanamycin and its known corresponding selective agent for kanamycin. For example, the review article Weising et al., *Foreign genes in plants: transfer, structure, expression, and applications*, Annual Review of Genetics, 22:421-77 (1988), incorporated by reference into the '880 application, summarizes in Table 1 eleven selectable markers and selective agent combinations previously used in plant transformation. MGA0047980 (A368). And one of these selectable markers available as of 1986 was the hygromycin resistance gene. *Id.* At his expert deposition, Dr. Fromm testified that he did not believe that only hygromycin would work, indicating that many of the selectable markers disclosed in the '880 patent could be used to obtain fertile transgenic corn. 12/16/05 Fromm Dep. Tr. 117-19 (A396-97). Dr. Klein himself recognized that substituting selectable markers and agents was well within the skill of practicing scientists when he specifically noted that "[v]arious [DNA] plasmids with similar selectable markers which are used for plant transformation are also available to us." MGA0080492 (A97).

Monsanto also criticizes the Grant application because it refers to two regenerable corn genotypes, H99 and PA91, when "Dr. Christou is unaware of any instances where either of these genotypes has ever been used to produce fertile transgenic corn." D.I. 200 at p. 12. However, Monsanto has not proven that these corn genotypes are incapable of being used. And in any event, based on the disclosure of the Grant application and Lundquist and Walter's admission in the '880 patent that "regeneration techniques are well known and not critical to the present invention," one of skill in the art could have replaced the two regenerable cell lines mentioned with different regenerable cells as part of routine experimentation. Importantly, the fact that Klein's Grant application disclosed the two cell lines, as opposed to others, has not been shown to discourage any of the researchers in the various laboratories from pursuing the Klein method,

and it has not been shown that Lundquist discovered a unique cell line that could be used in reducing the Klein's method. To the contrary, Lundquist disclosed a known cell line in the '880 patent (A188 x B73), and as mentioned above, in making GA21, DeKalb scientists did not even use that specific cell line. *See* '880 patent at col. 12, lines 63-67 (A19); 9/28/05 Armstrong Dep. Tr. 30-32 (A277); '497 patent at col. 40, line 66 to col. 41, line 3 (A348-49).

For these reasons, Syngenta contends that the evidence of record and to be presented at trial demonstrates that Dr. Klein's Grant application constitutes a conception under well-established law. But at a minimum, there are genuine material factual disputes between the parties concerning the adequacy of the conception that preclude a conclusion that there is no reasonable possibility of a jury finding the '880 patent anticipated and invalid in view of the Klein work and disclosures. As stated above, and is evident from Monsanto's motion and Syngenta's response, "the *conception inquiry is fact-intensive*." *In re Jolley*, 308 F.3d at 1323 (emphasis added). Thus, summary judgment is simply not appropriate for this issue.

**B.    The Grant Application Is § 102(b) Prior Art**

In its § 102(b) analysis, Monsanto makes the wrong comparison. Although it should be comparing the Grant application to the broad *claims* of the '880 patent, Monsanto, instead, compares the Grant application to the specific parameters set forth in the *specification*, i.e., the use of the hygromycin, the precise selection concentrations used, and the specific type of regenerable corn cells used. Monsanto mistakenly asserts that the USDA Grant application cannot be invalidating § 102(b) prior art because "it does not teach bombardment conditions, target tissues, or selection conditions that can be used to produce fertile transgenic corn." D.I. 200 at p. 22.

But comparing the Grant application to the broad claims of the '880 patent—the correct comparison—reveals that the Grant application does in fact disclose each and every element of

Case 1:04-cv-00305-SLR   Document 266-2   Filed 02/02/2006   Page 12 of 20

REDACTED VERSION – PUBLICLY FILED

...

the claim. As explained above, the Grant application discloses the three-step process of claim 1 comprising bombarding regenerable corn tissue, selecting transformed cells, and regenerating fertile transgenic herbicide-resistant corn plants. *See supra*, § IV.B. Monsanto's complaint seems to be that the Grant application does not meet the enablement standard of 35 U.S.C. §112. But under § 102, for invalidation of the '880 patent claims, Monsanto is wrong to assert that an enablement analysis under 35 U.S.C. § 112 is a controlling factor.

As the Federal Circuit recently held in *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1326 (Fed. Cir. 2005), a prior art reference that discloses each and every step of the claimed method is an anticipating disclosure under § 102 even if the same disclosure would not be found enabling under the standard set forth for a patent under § 112. In *Rasmusson*, a claim reciting a method of treating human prostate cancer with the drug finasteride was held anticipated by a § 102(b) reference (EP '383) even though it was established that "at the time of the publication of EP '383 . . . there was no reasonable scientific basis for a person of ordinary skill in the art to conclude that the claimed method would be effective in treating prostate cancer, and . . . that given the lack of proof provided in the publication itself, a person of ordinary skill in the art as of the publication date of the EP '383 would not have believed that the method described in EP '383 would be effective." *Id.* at 1326. Moreover, the identical disclosure as in the EP '383 reference was found not to meet the enablement standard of § 112, first paragraph. *Id.* at 1325. Nevertheless, the Federal Circuit held that these *"findings are insufficient to support the . . . conclusion that the EP '383 is not an enabling reference for purpose of anticipation."* *Id.* at 1326. The Federal Circuit explained that the enablement standard under § 102(b) differs from that in § 112, and that it would be sufficient if the reference discloses each element of the claimed subject matter such that one of ordinary skill could practice the invention.

*Id.* at 1325. *See also Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1379 (Fed. Cir. 2001) (holding that an article was an anticipatory reference even though it contained data showing that the later claimed method was *not* effective).

Here, there is no question that the Grant application discloses each element of claim 1 of the '880 patent. As was asserted in *Rasmusson*, Monsanto argues that as of the date of the Grant application, no one would reasonably believe that one skilled in the art could take Dr. Klein's method and obtain fertile transgenic corn. But, according to *Rasmusson*, such actual success, is not necessary. Even so, in this case, it clearly was possible for those of ordinary skill to take the Klein teachings and obtain the claimed invention. Three separate groups did so and practiced the method of the asserted '880 claims with the result that they obtained fertile transgenic corn.

Finally, whether the details disclosed in the Grant application combined with the knowledge in the art would require "extensive additional research" in order to obtain fertile transgenic corn is an inquiry too fact-laden to be resolved by this Court on summary judgment. *See Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000) (holding that if there are genuine issues of material fact relevant to any factor of the anticipation analysis, summary judgment is not proper). As such, this Court should deny Plaintiff's summary judgment motion that the claims are not invalid under § 102(b) in view of the Klein Grant application.

### C. The '880 and '863 Patents Are Obvious in Light of Klein 1988a and 1988b

#### 1. The '880 Patent Is Obvious in Light of Klein 1988a and 1988b

As mentioned above, Klein 1988a and 1988b disclose successfully bombarding BMS corn cells and immature A188 corn embryos (regenerable corn cells) with the screenable markers GUS and CAT. MGA0008493 (A158); MGA0058071 (A163); 8/24/05 Fromm Dep. Tr. 73-76 (A263-64). The papers disclose the optimal settings of several variables, such as DNA concentration and velocity of the microprojectiles, and Klein 1988b states that "[t]hese results

demonstrate that the particle bombardment process can be used to deliver foreign DNA into intact cells of maize." MGA0058071 (A163). Because this process circumvents the difficulties associated with regenerating whole plants from protoplasts, the particle bombardment process may provide significant advantages over existing DNA delivery methods for the production of transgenic maize plants." *Id.*

Monsanto argues that the 1988a and 1988b references do not render the subject matter claimed in the '880 patent obvious because these references do not by themselves enable the production of fertile transgenic corn. D.I. 200 at 14-15. This, however, is the wrong question. "Under § 103 . . . a reference need not be enabled; it qualifies as prior art, regardless, for whatever is disclosed therein." *Amgen Inc. v. Hoechst Marrion Roussel*, 314 F.3d 1313, 1357 (Fed. Cir. 2003). The correct analysis is whether in light of the teaching of the reference, one of ordinary skill would be motivated to practice the later claimed invention with a reasonable expectation of success. *In re Dow Chem. Co.*, 837 F.2d 469, 473 (Fed. Cir. 1988). Furthermore, "[t]he fact of near-simultaneous invention, though not determinative of statutory obviousness, is strong evidence of what constitutes the level of ordinary skill in the art." *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000) (citations omitted).

Here, the parameters used in the 1988a and 1988b papers were ultimately used by Drs. Klein, Sanford and Fromm in their successful production of fertile transgenic corn. The parameters were also used by Lundquist and Walters in obtaining fertile transgenic corn, and also by Mr. Spencer working at DeKalb (before DeKalb purchased MGI). Within a year of the publication of Klein 1988b all three groups had bombarded embryogenic corn cells using the parameters set forth therein, and all three groups succeeded in obtaining fertile transgenic corn. Dr. Klein testified as follows:

31

> Q. Do you believe that based upon the teachings in [Klein 1988a and Klein 1988b] a person of skill in the art as of at least the publication dates, June of '88, reading these articles would be able to perform experiments wherein the result would be the preparation of a fertile transgenic maize plant?
>
> A. Yes.

1/21/98 Klein Dep. Tr. 459 (A191-92).

Thus, the evidence in the record establishes that one skilled in the art armed with the knowledge set forth in Klein 1988a and 1988b could obtain fertile transgenic corn (particularly in light of the published Grant application). In any event, the question of obviousness is a highly fact dependent issue, particularly concerning whether or not there is a reasonable expectation of success, and there at the very least, factual issues here precluding summary judgment. *See Sakraida v. AG Pro, Inc.*, 425 U.S. 273 (1976) (stating that "resolution of the obviousness issue necessarily entails several basic factual inquiries"); *In re Fulton*, 391 F.3d 1195, 1199-2000 (Fed. Cir. 2004). As before, the factual nature of the obviousness inquiry makes this issue inappropriate to be determined on summary judgment.

### 2. The '863 Patent Is Also Obvious

Claim 1 of the '863 patent recites the same three-step process as in claim 1 of the '880 patent, except that it specifically recites fertile transgenic corn plants resistant to the herbicide glyphosate.[12] Syngenta's position is that the claims of the '863 patent are not enabled under

---

[12] Claim 1 of the '863 patent (A58) reads as follows :

1. A process for producing a fertile transgenic *Zea mays* plant comprising the steps of (i) bombarding intact regenerable *Zea mays* cells with DNA-coated microprojectiles, wherein said DNA comprises at least a screenable marker gene; (ii) selecting a population of transformed cells expressing the selectable marker gene; and (iii) regenerating a fertile transgenic plant therefrom, wherein said DNA is expressed so as to impart glyphosate resistance to said transgenic plant and is transmitted through a normal sexual cycle of said transgenic plant to progeny plants.

§ 112. No gene existed in January 1990 that could confer glyphosate resistance to corn plants. As such, the '863 claims are not enabled because one of ordinary skill in the art could not make glyphosate-resistant fertile transgenic corn plants at that time. Syngenta's Second Supplemental Response to DeKalb's Second Set of Interrogatories (Nos. 6 & 10) at pp. 17-18 (A416-17).

Monsanto, however, submits that genes were available that would impart glyphosate resistance to fertile transgenic corn plants. While Syngenta does not agree, if this Court finds that Monsanto is correct, then the asserted claims of the '863 patent would have to be invalid under § 103. It would have been obvious to use the Klein bombardment process described in the Grant application, Klein 1988a, and Klein 1988b to transform corn with such a prized gene, which many research groups were seeking throughout the decade of the 1980s into the 1990s, until RPA developed the GA21 gene. *See* '497 patent at col. 24, lines 59-64 (A340). In truth though, as discussed above, the issue of obviousness here raises complex factual issues and plainly involves disputed material facts, including the availability of a suitable gene. Therefore, Monsanto's motion seeking summary disposition by this Court in its favor as a matter of law that the claims of the '863 patent at issue would not have been obvious within the meaning of § 103 should be denied.

### D. The Lundquist '880 and '863 Patents Are Invalid Under § 102(f)

A patent is invalid under § 102(f) when the inventor "did not himself invent the subject matter to be patented." 35 U.S.C. § 102(f). As such, "section 102(f) . . . makes the naming of the correct inventor or inventors a condition of patentability; failure to name them renders a patent invalid." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998). Invalidity under § 102(f) is based on the inventorship standard, which requires that "[b]eyond conception, a purported inventor must show that he made 'a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full

33

invention, and [did] more than merely explain to the real inventors well-known concepts and/or the current state of the art.'" *Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001) (citing *Pannu*, 155 F.3d at 1351).

As stated in Syngenta's interrogatory answers, "the claims of the '880 patent are invalid under 35 U.S.C. § 102(f) as Ronald Lundquist, one of the inventors listed on the '880 patent, learned of the biolistic method for transforming corn from Dr. Klein and one of his collaborators, Dr. Sanford." Syngenta's Second Supplemental Response to DeKalb's Second Set of Interrogatories (Nos. 6 & 10) at p. 10 (A409). As set forth above, Dr. Lundquist learned of the bombardment method, if not also the entire three-step process claimed in claim 1 of the '880 patent, from Drs. Klein and Sanford. Dr. Lundquist visited Drs. Klein and Sanford in New York, where according to a declaration submitted in a previous case when the '880 patent was at issue, "Ted Klein and John Sanford show[ed] Ron [Lundquist] how gun works," and "reveal[ed] our own biolistic corn transformation data." *See* MGA0045403 (A86). A trip report prepared by Dr. Lundquist revealed that Dr. Sanford discussed the USDA Grant application with Dr. Lundquist. *See* DKLB158816 (A295). In addition, both the '880 patent itself and Dr. Lundquist's notebooks illustrated that they took the bombardment process, at the very least, from Drs. Klein and Sanford.

These facts demonstrate that at least Drs. Klein and Sanford made significant contributions to the conception of the subject matter recited in claim 1 of the '880 patent and the asserted claims of the '880 patent, which flow from independent claim 1. Indeed, Syngenta maintains, as indicated above, that Klein and Sanford *solely* provided the conception of the elements as recited in the asserted '880 patent claims. There is no question that the bombardment method is an essential element of the '880 patent and that Drs. Klein and Sanford contributed this

important piece. "[A] co-inventor need not make a contribution to every claim of a patent . . . [a] *contribution* to one claim is enough." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (emphasis added) (affirming district court determination of co-inventorship where co-inventor conceived of a subset of the elements of a claim).

Accordingly, the '880 patent is invalid under § 102(f) unless Monsanto successfully invokes § 256 to correct the patent's inventorship. *See Pannu*, 155 F.3d at 1350. Notably, any challenges to this conclusion will only be fact-based (i.e., regarding what was disclosed at these meetings) and therefore, summary judgment must be denied because all factual disputes must be resolved in Syngenta's favor.[13]

Syngenta also alleges that the '880 patent is invalid under § 102(f) because its inventors derived the entire invention from Drs. Klein and Sanford. Derivation requires a showing of (1) a prior conception of the invention by another and (2) communication of that conception to the patentee that is "sufficient to enable one of ordinary skill in the art to construct and successfully operate the invention." *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-77 (Fed. Cir. 1997) (quoting *Hedgewick v. Akers*, 497 F.2d 905, 908 (C.C.P.A. 1974)). Based on the facts presented above, Dr. Klein clearly conceived of the three-step process of bombarding regenerable corn cells, selecting transformed plants, and regenerating a fertile transgenic herbicide-resistant corn plant. Syngenta has also shown evidence sufficient for a reasonable jury to find that the communications discussed above between Drs. Klein and Sanford and Dr. Lundquist, would have enabled and in fact did enable the '880 patent inventors, as well as other researchers to practice the method of bombardment, selection and regeneration required by the asserted claims of the '880 patent. Again, any challenges to this contention will only be fact-

---

[13] These arguments apply equally to the asserted claims of the '863 patent.

35

based, especially due to the highly fact-dependent nature of the enablement inquiry and therefore, summary judgment must be denied because all factual disputes must be resolved in Syngenta's favor.

## VI. CONCLUSION

For all the above reasons, Syngenta submits that this Court should deny Plaintiffs' motion for summary judgment that the '880 and '863 patents are not invalid under 35 U.S.C. §§ 102 or 103 in view of the work, publications, or disclosures of Klein et al.

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Of counsel:

Michael J. Flibbert
Howard W. Levine
Jennifer A. Johnson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000                    Attorneys for Defendants

Dated: January 26, 2006

REDACTED VERSION – PUBLICLY FILED

## CERTIFICATE OF SERVICE

I, John W. Shaw hereby certify that on January 26, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz, Esquire
>Potter Anderson & Corroon LLP
>Hercules Plaza
>1313 North Market Street
>Wilmington, DE 19899-0951

I further certify that on January 26, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

**BY FEDERAL EXPRESS**

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

DB01:1611981.1