## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY and MONSANTO
TECHNOLOGY LLC,

        Plaintiffs,

        v.

SYNGENTA SEEDS, INC.,
SYNGENTA BIOTECHNOLOGY, INC.,

        Defendants.

DEKALB GENETICS CORPORATION,

        Plaintiff,

        v.

SYNGENTA SEEDS, INC.,
SYNGENTA BIOTECHNOLOGY, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-305-SLR
(lead case)

**CONTAINS RESTRICTED
CONFIDENTIAL
INFORMATION SUBJECT TO
PROTECTIVE ORDER - FILED
UNDER SEAL**

## SYNGENTA'S ANSWERING BRIEF OPPOSING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT THAT THE '835 PATENT IS NOT INVALID UNDER 35 U.S.C. § 102(e) OVER THE '925 PATENT

Of counsel:
Michael J. Flibbert
Howard W. Levine
Jared S. Cohen
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

Attorneys for Defendants

Dated:  January 26, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, L.L.P.
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

INDEX OF EXHIBITS ..................................................................................... iv

I.    INTRODUCTION ................................................................................ 1

II.   NATURE OF PROCEEDINGS .......................................................... 3

III.  SUMMARY OF ARGUMENT .......................................................... 4

IV.   STATEMENT OF FACTS .................................................................. 5

    A.    Monsanto's '835 Patent ........................................................... 5

    B.    The Disclosure of the '925 Patent ......................................... 10

V.    ARGUMENT ..................................................................................... 12

    A.    The Correct Construction of the Term CTP/EPSPS "Fusion Polypeptide"
        Warrants Denial of Monsanto's Motion .................................. 12

        1.    The Missouri Court's Claim Construction ................................. 13

        2.    The Missouri Court Was Correct ............................................. 14

        3.    Monsanto Had Not Invented a Fusion Polypeptide Before the
            July 15, 1985, Priority Date of the '925 Patent ......................... 16

    B.    This Court Should Deny Monsanto's Motion Even if It Adopts Monsanto's
        Construction of the Term CTP/EPSPS "Fusion Polypeptide" ............... 17

VI.   CONCLUSION ................................................................................. 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.,*
  314 F.3d 1313 (Fed. Cir. 2003)....................................................................................11

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)....................................................................................................12

*Atofina v. Great Lakes Chemical Corp.,*
  2005 U.S Dist. LEXIS 7365 (D. Del. March 16, 2005)..............................................12

*Cooper v. Goldfarb,*
  154 F.3d 1321 (Fed. Cir. 1998)..............................................................................18, 19

*In Re Cruciferous Sprout Lit.,*
  301 F.3d 1343 (Fed. Cir. 2002)....................................................................................12

*In re Fulton,*
  391 F.3d 1195 (Fed. Cir. 2004)....................................................................................22

*Graham v. John Deere Co. of Kansas City,*
  383 U.S. 1 (1966).........................................................................................................21

*Helifix Ltd. v. Blok-Lok, Ltd.,*
  208 F.3d 1339 (Fed. Cir. 2000)....................................................................................12

*In re Clarke,*
  356 F.2d 987 (C.C.P.A. 1965) .....................................................................................20

*Monon Corp. v. Stoughton Trailers, Inc.,*
  239 F.3d 1253 (Fed. Cir. 2001)....................................................................................12

*Mycogen Plant Science, Inc. v. Monsanto Co.,*
  243 F.3d 1316 (Fed. Cir. 2001)....................................................................................18

*In re Rainer,*
  390 F.2d 771 (C.C.P.A. 1968) .................................................................................20-21

*Sakraida v. AG Pro, Inc.,*
  425 U.S. 273 (1976).....................................................................................................22

*South Corp. v. United States,*
  690 F.2d 1368 (Fed. Cir. 1982)....................................................................................20

DB01:1976944.1                                                                                        059155.1008

*In re Stempel*,
    241 F.2d 755 (C.C.P.A. 1957) ................................................................................20

*Symbol Technologies, Inc. v. Opticon, Inc.*,
    935 F.2d 1569 (Fed. Cir. 1991)...............................................................................22

*Theeuwes v. Bogentoft*,
    2 U.S.P.Q.2d 1378 (Comm'r Pat. & Trademarks Dec. 11, 1986)............................19

*Velander v. Garner*,
    348 F.3d 1359 (Fed. Cir. 2003)..........................................................................21-22

## DOCKETED CASES

*DeKalb Corp. v. Syngenta Seeds, Inc.*,
    No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) .....................................................4

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    No. 04-CV-0305 (D. Del. filed May 12, 2004) ........................................................4

## FEDERAL STATUTES AND RULES

35 U.S.C. § 103...........................................................................................................21

35 U.S.C. § 102(e) ............................................................................................... passim

35 U.S.C. § 120.............................................................................................................5

37 C.F.R. § 1.131 ....................................................................................................20, 21

37 C.F.R. § 41.201 .......................................................................................................18

Fed. R. Civ. P. 56(c) ....................................................................................................12

## OTHER

*Manual of Patent Examining Procedure*, § 201.08
    (8th Ed. Rev. 3, August 2005) ..................................................................................5

*Manual of Patent Examining Procedure*, § 715.03
    (8th Ed. Rev. 3, August 2005) ................................................................................21

## INDEX OF EXHIBITS

| Appendix Pages | Description |
|---|---|
| A1-5 | Excerpts from *Manual of Patent Examining Procedure* (8th Ed. Rev. 3, August 2005) |
| A6-8 | Excerpt from June 1, 1984 Plant Mol. Bio. Monthly Report |
| A9-10 | Excerpt from August 1984 Plant Mol. Bio. Monthly Report |
| A11-17 | Transcript excerpts from 9/13/05 deposition of Stephen Rogers |
| A18-25 | Transcript excerpts from 10/7/05 deposition of Dilip M. Shah |
| A26-30 | Transcript excerpts from 9/2/05 deposition of Robert B. Horsch |
| A31-35 | Transcript excerpts from 9/30/05 deposition of Ganesh Kishore |
| A36-38 | Excerpt from June 1, 1985 Plant Mol. Bio. Monthly Report |
| A39-41 | Transcript excerpts from 10/10/05 deposition of Robert Fraley |
| A42-45 | Excerpts from laboratory notebook of Nancy Mathis (Hoffman) |

## I.    INTRODUCTION

In its motion for summary judgment, Plaintiffs (collectively referred to as "Monsanto")

argue that U.S. Patent No. 4,940,835 to Shah et al. ("the '835 patent") is not anticipated under 35

U.S.C. § 102(e) by U.S. Patent No. 5,728,925 to Herrera-Estrella et al. ("the '925 patent").

Monsanto, however, does *not* dispute (1) that the '925 patent discloses each and every element of

the asserted '835 patent claims, (2) that the '925 patent teaches and enables those skilled in the art

to prepare chimeric genes that function in dicot plant cells to provide enhanced glyphosate

resistance (as claimed in the '835 patent), and (3) that the '925 patent is effective as of its earliest

filing date of July 15, 1985 ("the '925 prior art date"), weeks *before* the August 7, 1985 filing

date that Monsanto claims for the '835 patent.[1]

Instead, Monsanto bases its motion solely on its alleged proof of an actual date of

invention before the '925 prior art date.  Monsanto contends it can remove the '925 patent as

prior art under 35 U.S.C. § 102(e) because "[i]t cannot be disputed that Monsanto scientists"

invented the subject matter claimed in the '835 patent before the July 15, 1985 filing date of the

'925 patent.  M. Br. at 2.[2]  However, as known by Monsanto, Syngenta *does dispute* this

contention for two primary reasons.

First, Syngenta submits that the term CTP/EPSPS "fusion polypeptide" appearing in

claim 1 of the '835 patent (and by necessity dependent claims 5 and 6) is limited to polypeptides

where the CTP and EPSPS portions do not occur together in nature.  This interpretation is

developed in Syngenta's Opening Claim Construction Brief ("*Markman* Brief") and is supported

---

[1] Syngenta contends that Monsanto is not entitled to that date for the asserted claims.

[2] The Opening Brief in Support of Plaintiffs' Motion for Summary Judgment That the Shah '835 Patent Is Not Invalid Under 35 U.S.C. § 102(e) Over the '925 patent (D.I. 202) is referred to as "M. Br. at ___."

by the clear meaning of the term "fusion polypeptide" to those of ordinary skill, the specification and the prosecution history of the '835 patent, and the prior claim construction of this very term by the U.S. District Court for the Eastern District of Missouri. Monsanto's motion ignores this essential claim construction dispute between the parties and completely ignores that *it previously lost this issue before the Missouri court.*

If the Court adopts Syngenta's claim construction, Monsanto's summary judgment motion must be denied because Monsanto clearly did *not* invent a CTP/EPSPS fusion polypeptide as so construed before the '925 prior art date. Monsanto's August 7, 1985 patent application specifically stated that "it is not known whether a *fusion peptide* . . . might confer some degree of glyphosate resistance upon a transformed cell."[3] The basis for this statement appears to be experiments conducted prior to May 1985 (involving the inventors of the '835 patent) where Monsanto specifically *failed* to obtain any enhanced glyphosate resistance using a fusion polypeptide, *i.e.* synthetic polypeptide. All the work discussed in Monsanto's moving papers refers to a naturally occurring CTP/EPSPS polypeptide—not a fusion, or synthetic, polypeptide. Thus, if this Court construes the term "fusion polypeptide" the same way as the Missouri court did and as Syngenta urges, then Monsanto's failed experiments with such a fusion polypeptide, and its explicit statement that it was *not known* whether such a fusion polypeptide will work, establish that there could not possibly have been a legally successful making of the invention by Monsanto prior to the August 7, 1985 filing date. At the very least, if "fusion polypeptide" is construed as Syngenta proposes, there are genuine issues of fact as to whether Monsanto had invented such a fusion polypeptide before the '925 prior art date.

---

[3] Appendix of Exhibits in Support of Syngenta's Opening Claim Construction Brief Regarding the Lundquist and Shah Patents, Vols. I and II (D.I. 216 and 218) Ex. 39 at 0005012:16-22.

Second, even if Monsanto's construction of the term "fusion polypeptide" is assumed to be correct, its motion for summary judgment must still be denied. According to Monsanto's claim construction, claim 1 covers a genus that includes two separate species of the claimed invention—a naturally occurring CTP/EPSPS, and a "synthetic" CTP/EPSPS where the two parts do not occur together in nature. Based on this claim construction, Monsanto clearly did *not* have possession of one of the two species of the genus, the synthetic CTP/EPSPS, as of the '925 patent's prior art date. Thus, contrary to Monsanto's assertions, it did not "construct[] an embodiment that met *all the limitations* of [sic: *the*] claim" before the filing date of the '925 patent. M. Br. at 9 (emphasis added). Rather, as explained below, to remove the '925 patent as a reference under 35 U.S.C. § 102(e), and under well-established law, Monsanto would have to show that before the '925 prior art date, it had either invented the particular species taught by the '925 patent or invented a species that rendered the species in the '925 patent obvious. Monsanto has not alleged such facts in its motion, nor could Monsanto do so. There is no question that the '925 patent discloses a synthetic CTP/EPSPS to enhance the glyphosate resistance of a plant cell. And as stated above, Monsanto had failed to achieve success with a synthetic CTP/EPSPS before the '925 prior art date (July 15, 1985) and even stated that as of August 7, 1985, it did not know whether such a polypeptide could achieve enhanced glyphosate resistance. Therefore, as a matter of fact and law, Monsanto's motion should be denied under *any* interpretation of "fusion polypeptide."

Accordingly, for all the above reasons, as further explained in detail below, Monsanto's motion for summary judgment should be denied.

## II. NATURE OF PROCEEDINGS

This is a patent case involving three patents asserted by the Monsanto.

On May 12, 2004, Syngenta announced that it had acquired rights to GA21 corn technology from Bayer CropScience, a successor of Rhone-Poulenc Agro, S.A. ("RPA"). The same day, Monsanto Company, together with Monsanto Technology LLC, sued Syngenta for infringement of the '835 patent in this Court. *Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-CV-0305 (D. Del. filed May 12, 2004) ("the Shah action").

On July 27, 2004, DeKalb, a wholly owned subsidiary of Monsanto Company, sued Syngenta in the Northern District of Illinois, alleging that Syngenta had infringed the Lundquist patents in connection with Syngenta's proposed marketing of GA21 corn. *DeKalb Corp. v. Syngenta Seeds, Inc.*, No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) ("the Lundquist action").

The Shah and Lundquist actions both charged Syngenta with patent infringement in the use of GA21 corn, which is a genetically modified corn tolerant to the herbicide glyphosate. Due to the overlapping issues, Syngenta moved to transfer the Lundquist action to this Court. On May 19, 2005, the Illinois district court granted Syngenta's motion to transfer. Docket Item ("D.I.") 92. This Court consolidated the Shah and Lundquist actions on August 23, 2005. D.I. 111. The parties completed all discovery on December 19, 2005. *Id.*

## III.    SUMMARY OF ARGUMENT

1.    Monsanto bases its motion solely on its alleged proof of an actual date of invention before the '925 prior art date. Syngenta submits that the term "CTP/EPSPS fusion polypeptide" appearing in claim 1 of the '835 patent (and by necessity dependent claims 5 and 6) is limited to polypeptides where the CTP and EPSPS portions do not occur together in nature. If the Court adopts Syngenta's claim construction, Monsanto's summary judgment motion must be denied because Monsanto clearly did ***not*** invent a CTP/EPSPS fusion polypeptide as so construed before the '925 prior art date. At the very least, there are genuine issues of fact as to whether Monsanto had invented such a fusion polypeptide before the '925 prior art date.

2.      Even if Monsanto's construction of the term "fusion polypeptide" is assumed to be correct, its motion for summary judgment must still be denied.  According to Monsanto's claim construction, claim 1 covers a genus that includes two separate species of the claimed invention—a naturally occurring CTP/EPSPS, and a "synthetic" CTP/EPSPS where the two parts do not occur together in nature.  To remove the '925 patent as a reference under 35 U.S.C. § 102(e),  Monsanto would have to show that before the '925 prior art date, it had either invented the particular species taught by the '925 patent (a synthetic CTP/EPSPS) or invented a species that rendered the species in the '925 patent obvious.  Monsanto has not attempted to make such a showing and given its failed experiments with a synthetic CTP/EPSPS, Monsanto cannot make such a showing.  Monsanto's motion for summary judgment should, therefore, be denied.

## IV.   STATEMENT OF FACTS

### A.    Monsanto's '835 Patent

Monsanto's '835 patent issued from application No. 879,814 ("the '814 application") filed on July 7, 1986.  The '814 application patent claims benefit of priority under 35 U.S.C. § 120 of two prior applications.  Contrary to Monsanto's representations (M. Br. at 3), the '814 application was *not* a "continuation" of the earlier-filed applications.  Instead, the '814 application was a continuation-*in-part* from United States Patent Application No. 792,390, filed October 29, 1985 ("the October 29th application"), which was itself a continuation-*in-part* from United States Patent Application No. 763,482, filed August 7, 1985 ("the August 7th application").  This distinction is important because by definition, a continuation-in-part or "CIP" adds new matter that was *not disclosed* by the earlier-filed application.[4]  Here, the '814 application (which led to

---

[4]  *See Manual of Patent Examining Procedure* ("MPEP") § 201.08 at 200-52 to 200-53 (8th Ed. Rev. 3, August 2005) (A2-3).

the '835 patent) added two specific examples discussing the use of synthetic (fusion) polypeptides—subject matter that Monsanto had *not* described in the August 7th and October 29th applications and that was not in Monsanto's possession as of that earlier time.

Prior to the August 7th and October 29th applications, Dr. Shah, a Monsanto scientist, had been working towards isolating the petunia "EPSPS" gene. EPSPS ("5-EnolPyruvyl Shikimate-3-Phosphate Synthase") is an enzyme that carries out a step in a complex biochemical pathway that is essential for the plant's survival. The herbicide glyphosate kills plants by blocking the activity of the EPSPS enzyme. By July 1984, Dr. Shah obtained a portion of the petunia EPSPS gene, which appeared to contain a "pre-sequence." MRR002347-2348 (A7-8); MRR002388 (A10). Based on conversations with a Dr. Nick Amhrein (an outside consultant) around July of 1984, Dr. Shah and the other Monsanto scientists came to understand that this "pre-sequence" encoded something called a chloroplast transit peptide or "CTP." MRR002388 (A10); 9/13/05 Rogers Tr. at 45 to 47 (A13-14); 10/7/05 Shah Tr. at 44 to 46 (A21-22). A CTP is a naturally occurring chain of amino acids that targets a plant protein to the chloroplast and then is removed to yield the protein, called the "mature protein," lacking the pre-sequence. Dr. Shah proceeded to try to isolate the complete petunia EPSPS gene. After several unsuccessful attempts, Dr. Shah finally obtained the full length petunia cDNA in approximately late May 1985. MRR002747-48 (A37-38).[5]

---

[5] This date comes from the Monsanto monthly reports, as opposed to Dr. Shah's laboratory notebook. Dr. Shah did not record his experiments in his laboratory notebook at the time he performed them. 10/7/05 Shah Tr. at 30:22 to 31:5, 94 to 96 (A20, A24). Instead, he recorded his experiments on separate sheets of paper, which he then later recorded into his laboratory notebook. *Id.* at 94 to 96 (A24). Thus, the dates set forth in Dr. Shah's notebook are not accurate. *See id.*

Before obtaining the full-length petunia cDNA, Monsanto scientists (under Dr. Shah's supervision) "fused" DNA encoding the CTP from the petunia EPSPS gene (the portion Dr. Shah had isolated) with DNA encoding a bacterial EPSPS (called "the SM-1 gene") in an attempt to make a synthetic polypeptide. D.I. 218, Ex. 41 at MRR002678; 10/7/05 Shah Tr. 83:1-5 (A23). Monsanto scientists (under inventor Dr. Rogers's supervision) inserted this gene into a plasmid, identified as pMON542, and used the plasmid to transform petunia cells. D.I. 218, Ex. 41 at MRR002678; 10/7/05 Shah Tr. at 82:12 to 83:10 (A23). There is no dispute that pMON542 encodes a fusion polypeptide. But, as reported in a May 1985 Monsanto Monthly Report, in a section written by inventor Dr. Horsch, the petunia CTP/bacterial EPSPS fusion polypeptide *failed* to provide enhanced glyphosate resistance:

D.I. 218, Ex. 41 at MRR002678 (emphasis added).


*Id.*; 9/2/05 Horsch Tr. at 96-98 (A29-30); 9/30/05 Kishore Tr. at 34-35, 51-56 (A33, A34-35). Concerning these experiments, Dr. Rogers specifically testified that the plasmid

9/13/05 Rogers Tr. at 71:14-16 (A15); *see also id.* at 81:18 to 82:21 (A16-17). This May 1985 Monthly report was distributed by Dr. Robert Fraley (the head of Monsanto's research department and another inventor listed on the '835 patent). D.I. 218, Ex. 41 at MRR002663.

Soon after Monsanto's failed experiments with the CTP/EPSPS fusion polypeptide, Dr. Shah finally obtained the full length petunia EPSPS cDNA in late May 1985. MRR002747-48 (A37-38). By August 7, 1985, when Monsanto filed its first application (the '482 application), Monsanto had transformed dicot plant cells (petunia) using plasmid pMON546, which contained

**Redacted**

the *naturally occurring CTP/EPSPS gene from petunia.* D.I. 218, Ex. 39 at 0005014-35.

Monsanto reported that the cells had some degree of glyphosate resistance. *Id.*, Ex. 39 at

0005034-35.

While the August 7th application disclosed the naturally occurring petunia CTP/EPSPS

gene in pMON546, there was no disclosure of a fusion polypeptide. Consistent with the recent

failure with the fusion polypeptide in May of 1985, the August 7th application *did not teach the*

*use of a fusion polypeptide to obtain enhanced glyphosate resistance.* Indeed, the August 7th

application unambiguously stated:

> Although it is *not known* whether a *fusion peptide* comprising (1) a CTP
> sequence derived from a *heterologous protein* such as ssRUBISCO, coupled to
> (2) a mature EPSPS sequence derived from a bacterial or plant cell, *might confer*
> *some degree of glyphosate resistance upon a transformed cell*, removal of the
> CTP leader sequence from the mature EPSPS sequence is preferred.

*Id.* at 0005012 (emphasis added). This text clearly indicates that as of August 7, 1985, Monsanto

itself recognized that it did not have possession of a CTP/EPSPS fusion polypeptide (where the

CTP and EPSPS portions were heterologous, i.e., from different sources) that worked as

intended, and it did not invent a gene expressing such a protein. This exact same text also

appeared in the October 29th CIP application. *Id.*, Ex. 40 at 005107.

Monsanto's researchers' inability to determine whether a fusion polypeptide could be

made to enhance glyphosate resistance is reflected in deposition testimony concerning the

August 7th and October 29th applications from several Monsanto scientists named as inventors

of the '835 patent. *See* 9/2/05 Horsch Tr. at 35:19 to 36:8 (A28); 10/10/05 Fraley Tr. at 55:24 to

57:1 (A41). Dr. Rogers, one such inventor, testified:

**Redacted**

9/13/05 Rogers Tr. at 81:4-11 (emphasis added) (A16).  In addition, Dr. Shah himself also

expressed this uncertainty, when he testified about the language in the '482 and '390 applications.

> Q.  The next sentence says, "Although it is not known whether a fusion peptide comprising a CTP sequence derived from a heterologous protein such as ssRUBISCO, coupled to (2) a mature EPSPS sequence derived from a bacterial or plant cell, might confer some degree of glyphosate resistance upon a transformed cell."  Let me stop reading there.  What is your understanding about what the text I just read to you means?
>
> A.  It means that if you take mature EPSPS sequence from either a bacterium or a plant and fused that to the EPSPS transit peptide sequence, when expressed in plant cells, that might confer tolerance to glyphosate.
>
> Q.  But it's not — it's not known whether it will?
>
> A.  *It's not known if — at the time of writing it's not known if it will*.

10/7/05 Shah Tr. at 100:20 to 101:12 (emphasis added) (A25).

After significant time and effort, Monsanto eventually determined that pMON542 was

capable of providing glyphosate resistance.  On October 25, 1985, Nancy Hoffman (a scientist

working for Robert Horsch, a listed inventor) wrote in her laboratory notebook that due to some

promising results with pMON542 in plants (obtained on October 22, 1985—months after the

filing date of the '925 patent), she was going to re-test pMON542 in both

MRR015138 (A45).  These additional experiments with pMON542 took place during

the April-May *1986* time frame. D.I. 218, Ex. 42 at MRR015207, MRR015232.

The experiments demonstrated that fusion polypeptide pMON542 not only provided

enhanced glyphosate resistance, but that it provided resistance far above that provided by the

naturally occurring CTP/EPSPS in pMON546.  *Id.*  Ms. Hoffman's results indicated that while

pMON546 produced cells that could survive                            pMON542 could survive

i.e. five times the amount of glyphosate.  *Id.*  On July 7, 1986, about a year

after '925 prior art date, Monsanto filed the CIP application that led to the '835 patent.  Joint

**Redacted**

Submission of File History U.S. Patent 4,940,835 (D.I. 219) at 0005200-87. In this application, Monsanto now included two new examples (Examples 8-9) describing the use of the fusion polypeptide pMON542 to provide glyphosate resistance in tobacco. *Id.* at 0005246-51.

In early 1988, during prosecution of the application leading to the '835 patent, none of the claims of the pending application contained any reference to "fusion polypeptide." *Id.* at 0005271-74. On January 21, 1988, Monsanto cancelled its existing claims, and added claims 33-91. *Id.* at 005314-21. Claim 33 ultimately issued as claim 1 of the '835 patent. *Id.* at 005315. This claim now contained the "fusion polypeptide" language, which was not in the claims of any of the prior applications. Claim 1 recites:

> A chimeric plant gene which comprises:
>
> (a)      a promoter sequence which functions in plant cells;
>
> (b)      a coding sequence which causes the production of RNA, encoding a chloroplast transit peptide/5-enolpyruvylshikimate-3-phosphate synthase [CTP/EPSPS] *fusion polypeptide*, which chloroplast transit peptide permits the *fusion polypeptide* to be imported into a chloroplast of a plant cell; and
>
> (c)      a 3' non-translated region which encodes a polyadenylation signal which functions in plant cells to cause the addition of polyadenylate nucleotides to the 3' end of the RNA;
>
> the promoter being heterologous with respect to the coding sequence and adapted to cause sufficient expression of the *fusion polypeptide* to enhance the glyphosate resistance of a plant cell transformed with the gene.

D.I. 216, Ex. 3 at col. 32:31-47 (emphasis added).

**B.      The Disclosure of the '925 Patent**

The '925 patent, entitled "Chimeric Gene Coding for a Transit Peptide and a Heterologous Polypeptide," issued from a series of continuation applications first filed July 15, 1985. Because the disclosure of any continuation is the same as the original application, there is

no dispute that the '925 patent has an effective filing date of July 15, 1985—weeks before the August 7, 1985 priority date Monsanto relies on for the claims of the '835 patent. Consequently, the '925 patent is prior art to Monsanto's '835 patent under 35 U.S.C. § 102(e).

Claim 1 of the '925 patent recites a "chimaeric DNA sequence," wherein a "transit peptide," is joined to "a protein or polypeptide of interest." M. Br., Ex. 12 at col. 33:64 to col. 34:4. Dependent claims 2 and 3 further defines the "protein or polypeptide of interest" as of bacterial or plant origin, respectively, and dependent claim 4 recites that the "polypeptide of interest confers resistance to an herbicide." *Id.* at col. 34:15-20.

Concerning the particular protein that provides resistance to a herbicide, the '925 specification teaches that "[t]he invention also provides means for solving other problems that have been mentioned in the preamble i.e. the production of herbicide resistant plants." *Id.* at col. 29:1-3. In the Field of the Invention (the preamble), the '925 patent specifically discusses the relationship between EPSPS and glyphosate, how the EPSPS enzyme is targeted to the chloroplast, how "the use of . . . bacterial genes to confer herbicide resistance to plant cells could be successful if their gene products were efficiently transported into the chloroplast where they function," and specifically suggests using the bacterial EPSPS gene described in a prior art 1983 Comai reference to obtain herbicide resistance. *Id.* at col. 2:1-16. Thus, the '925 patent discloses the use of a CTP/EPSPS fusion protein where the CTP comes from a plant source and the EPSPS is from a bacterial source in order to obtain glyphosate resistance.

Monsanto's motion for summary judgment does not dispute that the '925 patent discloses each and every element of claims 1, 5, and 6 of the '835 patent, and does not challenge the presumption that the '925 patent is an enabling reference. *See Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354-55 (Fed. Cir. 2003) (placing burden on patentee to show that

prior art patent is not enabling). Thus, the sole question raised by Monsanto's motion is whether it can show priority of invention before the prior art date—the July 15, 1985, filing date—of the '925 patent. Monsanto cannot make such a showing as it did not have possession of a synthetic CTP/EPSPS polypeptide before the '925 prior art date.

## V.    ARGUMENT

### A.    The Correct Construction of the Term CTP/EPSPS "Fusion Polypeptide" Warrants Denial of Monsanto's Motion

Summary judgment is appropriate only when no genuine issue exists as to any material fact. Fed. R. Civ. P. 56(c). A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor. *Id.* at 255; *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001).

The first step of an anticipation analysis is to construe the claims of the patent. *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). Once the claims are properly understood, the Court can compare the properly construed claims to the prior art. *In Re Cruciferous Sprout Lit.*, 301 F.3d 1343, 1346 (Fed. Cir. 2002); *Atofina v. Great Lakes Chem. Corp.*, 2005 U.S Dist. Lexis 7365, *46 (D. Del. March 16, 2005) (citations omitted).

Here, if the Court construes the Shah patent claim term CTP/EPSPS "fusion polypeptide" as meaning a polypeptide where the CTP and EPSPS portions do not occur together in nature, Monsanto's motion for summary judgment must fail as there are, at the very least, disputed issues of fact as to when Monsanto first invented such a fusion polypeptide that provided glyphosate resistance. Indeed, the evidence in the record discussed above strongly demonstrates that Monsanto *did not have possession* of such a fusion polypeptide as of the July 15, 1985 prior art

date of the '925 patent. *See* § IV.A., *supra*. As stated in Monsanto's *August 7, 1985*, application, "it is *not known* whether a *fusion peptide* . . . might confer some degree of glyphosate resistance upon a transformed cell . . . ." D.I. 218, Ex. 39 at 0005012 (emphasis added). Thus, if the Court adopts Syngenta's claim construction, Monsanto cannot demonstrate that it invented a CTP/EPSPS fusion polypeptide that was capable of providing enhanced glyphosate resistance before the *July 15, 1985* filing date of the '925 patent.

Syngenta's *Markman* briefing extensively discusses the reasons supporting its construction of the term "CTP/EPSPS fusion polypeptide," and Syngenta relies on its position detailed therein. *See* D.I. 215 at 34-37. Syngenta briefly recounts below the bases supporting its claim construction.

### 1.     The Missouri Court's Claim Construction

Monsanto's proposed construction—the construction upon which it bases the entirety of its summary judgment motion—has already been *rejected* by the United States District Court for Eastern District of Missouri. D.I. 218, Ex. 34 at 168-69. There, the Missouri court specifically construed the term CTP/EPSPS "fusion polypeptide" to mean "a polypeptide that has at least two parts which must include a . . . [CTP] as defined already joined to an EPSPS *where the . . . [CTP] and EPSPS are not found together in nature.*" *Id*. at 168:2-9 (emphasis added). Monsanto's brief completely ignores this decision.

The Missouri court reached this claim construction after a *Markman* hearing where the court considered the claim language, the '835 patent specification, and relevant expert testimony. *Id*. at 162-63. The parties to that case were Monsanto (one of the plaintiffs here) and Bayer (the licensor of Syngenta's GA21 technology). The Missouri court stated that, "I thought this issue was going to be the be the hardest one to decide, but as I just discussed, I don't think it was. I don't think this was that close a call . . . ." *Id*. at 168:10-12. The court, rejecting Monsanto's argument

that it was being its own lexicographer, found that the lay definition, the understanding of scientists in the field, and the dictionary definition all pointed to same meaning of the disputed term:

> To put it as simply as possible, "fusion" in this patent means what most people think it means. Lay people like me think fusion means putting different things together. Scientists in this field think it means putting different things together. The dictionary thinks "fusion polypeptide" or "fusion protein" means a protein created out of two genetically different things, in other words, a protein created in a non-natural process, i.e. fused, which contains amino acid sequences from distinct proteins. Even Monsanto's expert witness agrees that that's what it normally means.

*Id*. at 168:13-22.

Considering the patent specification and prosecution history, the Missouri court explained that "Monsanto, not the patent examiner, first used the term in the original application, and when Monsanto used it the first time, it used it with the plain and ordinary meaning of the definition I've adopted here. ***Everyone agrees that a naturally occurring EPSPS has a CTP, and nobody refers to those naturally occurring things as fusion polypeptides***." *Id*. at 169:9-14 (emphasis added).

### 2.    The Missouri Court Was Correct

The plain meaning of the term "fusion polypeptide" supports the Missouri court's construction. Dr. Keegstra (Monsanto's expert here and in the Missouri action) testified at his prior deposition that a "fusion polypeptide . . . [is] *not* the way that I would refer to a naturally-occurring precursor . . . ." D.I. 218, Ex. 38 at 101:20 to 103:12 (emphasis added). During the prior *Markman* hearing, Dr. Keegstra reiterated that "[m]ost people use 'fusion' to designate things that are synthetically joined together, and not naturally joined together." D.I. 218, Ex. 34 at 67:5-7. "I think I said earlier that [fusion] is not the term that I would have used in describing [the fusion polypeptides of the '835 patent] . . . . It is not the normal — the most common use of

the term 'fusion polypeptide' or 'fusion protein.'" *Id.* at 97:17-21. Dr. Keegstra confirmed in this case that the term "fusion polypeptide" does not, by plain and ordinary usage, designate a naturally occurring CTP/EPSPS protein, and that he was unaware of any publication where either he or anyone else used the term "fusion polypeptide" to refer to a naturally occurring protein. *Id.*, Ex. 37 at 65-68. Dr. Barry Bruce (Syngenta's expert) likewise expresses the opinion that a fusion polypeptide means that the two parts do not occur together in nature. *Id.*, Ex. 36 at 59-61.

Consistent with the plain meaning of the term, both the August 7th and October 29th applications specifically define a fusion peptide as having the CTP and EPSPS portions from different sources:

> Although it is not known whether a *fusion peptide* comprising (1) a *CTP sequence derived from a heterologous protein* such as ssRUBISCO, *coupled to (2) a mature EPSPS sequence derived from a bacterial or plant cell,* might confer some degree of glyphosate resistance upon a transformed cell, removal of the CTP leader sequence from the mature EPSPS sequence is preferred.

*Id.*, Ex. 39 at 0005012:16-23; *id.*, Ex. 40 at 0005107:16-23. And that definition carries over to specification of the '835 patent. For example, the '835 patent specification states that:

> The EPSPS gene of the present invention encodes an *CTP/EPSPS fusion polypeptide*. After the CTP/EPSPS polypeptide from a gene of this invention is translated from mRNA in the cytoplasm of the transformed plant cell, it is believed to be processed in the same manner as the *natural EPSPS polypeptide*.

D.I. 216, Ex. 3 at col. 4:23-28. Thus, the specification distinguishes between the *naturally occurring* EPSPS polypeptide having its native CTP and a "CTP/EPSPS fusion polypeptide" where the CTP and EPSPS portions are from different sources. Indeed, whenever the specification of the '835 patent uses the terms "fusion" or "fused," it describes the fusion of a CTP and EPSPS from different sources, i.e., heterologous. *See, e.g., id.* at col. 30:45-58.

Moreover, as discussed above, neither the August 7th or October 29th applications contained a claim specifically directed to a "fusion polypeptide" because as discussed above, the

inventors had not yet established that they could achieve enhanced glyphosate resistance using a CTP/EPSPS fusion polypeptide where the CTP portion and EPSPS portion were from different sources. D.I. 218, Ex. 39 at 0005038-41; *id.*, Ex. 40 at 0005133-36; *id.*, Ex. 41 at MRR002678. It was only when Examples 8-9 of the '835 patent were added, which clearly show transformation of dicot plant cells using a fusion polypeptide, that Monsanto added a new claim that included the fusion polypeptide language. D.I. 219 at 0005246-51; *id.* at 0005315.

### 3.    Monsanto Had Not Invented a Fusion Polypeptide Before the July 15, 1985, Priority Date of the '925 Patent

Based on the claim construction asserted by Syngenta, Monsanto's summary judgment motion could not be granted because Monsanto does not allege or purport to establish that it had demonstrated glyphosate resistance achieved with a "fusion polypeptide" as so construed before the '925 prior art date. If anything, Monsanto's summary judgment motion, which does not challenge the prior art effect of the '925 patent if not antedated by a showing of prior invention, suggests that the asserted claims of the '835 patent are indeed anticipated and invalid if the claims are construed as limited to a synthetic or non-natural CTP/EPSPS polypeptide.

At the least, there are disputed issues of material fact as to whether Monsanto had invented a CTP/EPSPS fusion protein that could provide glyphosate resistance before the July 15, 1985, prior art date of the '925 patent. The experimental work discussed by Monsanto at pages 9-12 of its motion for summary judgment with pMON546 is *irrelevant* as this plasmid contains the naturally occurring CTP/EPSPS petunia gene, not a fusion polypeptide, and does not fall within the scope of claim 1 of the '835 patent.

The May 1985 report discussed above plainly demonstrates that Monsanto tried a fusion protein construct (pMON542) but it *failed* to provide glyphosate resistance. D.I. 218, Ex. 41 at MRR002678. Likewise, both the August 7, 1985, and October 29, 1985 priority applications

clearly state that the inventors of the '835 patent *did not know* if a CTP/EPSPS fusion polypeptide "might confer some degree of glyphosate resistance upon a transformed cell . . . ." *Id.*, Ex. 39 at 0005012; *id.*, Ex. 40 at 0005107. Thus, Monsanto cannot show that it invented a fusion polypeptide meeting all the limitations of claim 1 of the '835 patent before the July 15, 1985 filing date of the '925 patent. Accordingly, Monsanto's motion for summary judgment should be denied if the claims are construed in the manner urged by Syngenta.

**B.    This Court Should Deny Monsanto's Motion Even if It Adopts Monsanto's Construction of the Term CTP/EPSPS "Fusion Polypeptide"**

Monsanto argues that "in order to constitute prior art . . . the '925 patent must have been filed before the researchers at Monsanto *invented* the subject matter of the '835 patent." M. Br. at 2 (emphasis added). Monsanto argues it can prove an early date of *invention* by showing a reduction to practice before the '925 patent's July 15, 1985 U.S. filing date (the '925 prior art date). Mr. Br. at 9 (citing *Loral Fairchild Corp. v. Matsushita Elecs.*, 266 F.3d 1358 (Fed. Cir. 2001) (Newman J., concurring)). Monsanto, however, does not contend that claims 1, 5, and 6 of the '835 patent are limited to the natural petunia CTP/EPSPS protein that Monsanto tested before the '925 prior art date. Rather, according to its *own* proposed claim construction, Monsanto asserts that the CTP/EPSPS required by the asserted '835 claims constitutes two classes of *species*: (A) synthetic or "heterologous" CTP/EPSPS polypeptides where the CTP and EPSPS do not occur together in nature and (B) naturally occurring or "homologous" CTP/EPSPS polypeptides. *See* M. Br. at 4. Monsanto does not even argue in its motion for summary judgment that it had possession of the entire *genus* of CTP/EPSPS fusion proteins before the filing date of the '925 patent. Instead, Monsanto only argues that it had reduced-to-practice *species B*—a *naturally occurring* CTP/EPSPS (within plasmid pMON546) that it relies on as demonstrating enhancement of the glyphosate resistance of petunia cells. M. Br. at 4-6. The

'925 patent, in contrast, discloses the *other* species of the genus, a synthetic CTP/EPSPS where the two parts do not occur together in nature.

Thus, the question presented by Monsanto's motion is whether its reduction-to-practice of one species in the genus is sufficient to antedate a reference (the '925 patent) that discloses a *different* species in the genus. Monsanto seeks to answer this question by relying on law relating to determining priority of invention of the subject matter defined by so-called "counts" used in interference proceedings conducted in the U.S. Patent and Trademark Office ("PTO"), not to determine the patentability or validity of claims over prior art. Citing such a case, *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998), Monsanto argues that all it need do is "(1) construct[ ] an embodiment that met all the limitations of [sic: *the*] *claim*; and (2) determine[ ] that the invention would work for its intended purpose." M. Br. at 9 (emphasis added). Monsanto mischaracterizes *Cooper*, however, which actually states that "to establish an actual reduction to practice, the inventor must prove that: (1) he constructed an embodiment . . . that met *all the limitations of the interference count*; and (2) he determined that the invention would work for its intended purpose." 154 F.3d at 1327 (emphasis added). An interference count is *not* a patent claim, but an artificial construct used to determine priority. *See* 37 C.F.R. § 41.201.

Furthermore, a count is carefully constructed to encompass only a single patentable invention and would not include, for example, two distinct species such as the natural CTP/EPSPS with which Monsanto experimented before the '925 prior art date and the synthetic or "fusion" polypeptide that is disclosed in the '925 patent. As the Federal Circuit has noted, in interferences, "each count corresponds to a separate patentable invention." *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1332 (Fed. Cir. 2001). And an interference count

cannot "be broadened to such an extent as to include another, separately patentable invention." *Theeuwes v. Bogentoft*, 2 U.S.P.Q.2d 1378, 1380 (Comm'r Pat. & Trademarks Dec. 11, 1986).

Thus, the interference standard announced in *Cooper* as to a distinct **interference count** simply does not apply to the situation here where the ***claim***, according to Monsanto's own claim construction, covers a genus of patentably distinct species:  (A) synthetic and (B) naturally occurring polypeptides.  As explained by the Board of Patent Appeals and Interferences, "if the count were drawn to species A and one party's best proofs [of an earlier date of invention] were allegedly to species B, it would be improper to broaden the count to a Markush group of species A and B if species B were a separate patentable invention . . . with respect to species A.  If the count were broadened to cover species A and B, *the anomalous possibility would arise that the one party could win priority as to both of the separate patentable inventions (A and B) merely by providing priority as to one of them (B)*."  *Id.* (emphasis added).  This "anomalous possibility" is exactly what Monsanto is trying to do here: establish priority for species A of the synthetic CTP/EPSPS polypeptide disclosed in the '925 patent, by allegedly demonstrating an earlier date of invention for species B, the naturally occurring polypeptide.  Monsanto attempts to do this even though it failed with a synthetic CTP/EPSPS polypeptide and literally stated that it did not know whether the synthetic polypeptide would work.  Monsanto cannot, in these circumstances, assert that the synthetic polypeptide of the '925 patent was not separately patentable over the naturally occurring petunia CTP/EPSPS, and at a minimum, it cannot be said that there are no genuine issues of material fact on this question.

Although the *Cooper* standard is not applicable to the facts here, there is a long standing body of law that was specifically developed to answer the precise question of what needs to be shown to antedate a reference.  This law arose out of *ex parte* prosecution cases where the patent

applicant seeks to antedate an apparent prior art reference by making an evidentiary showing of a date of invention earlier than that of the reference pursuant to the rules of the PTO, 37 C.F.R. § 1.131 ("Rule 131"). The cases arising under Rule 131 practice are analogous to Monsanto's attempt here to antedate the '925 prior art date and apply to the present facts.

In *In re Stempel*, 241 F.2d 755, 759 (C.C.P.A. 1957), for example, the United States Court of Customs and Patent Appeals (predecessor of the Federal Circuit),[6] specifically held that "under the law all the applicant can be required to show is priority with respect to so much of the claimed invention as the reference happens to show. When he had done that he has disposed of the reference." *Id.; In re Clarke*, 356 F.2d 987, 991 (C.C.P.A. 1966) (citing *Stempel*). Thus, under the *Stempel* standard, to antedate the '925 patent, Monsanto would need to show that it had priority to so much of the claimed invention as the '925 patent discloses. Here, Monsanto cannot do that because the '925 patent discloses synthetic polypeptides, *subject matter which Monsanto did not have possession of by the July 15, 1985, prior art date of the '925 patent and as to which Monsanto does not even allege it had priority as compared to the '925 patent.* See § IV.A., *supra.*

There are situations where "a single species could be sufficient to antedate indirectly a different species of a reference." *In re Clarke*, 356 F.2d at 992. But as with the interference count situation, that is not possible when species A and species B are separately patentable. "When that species of the generic invention which has been completed prior to the effective date of the reference would make obvious to one of ordinary skill in the art the species disclosed in the reference, the reference may be said to have been 'indirectly antedated.'" *In re Rainer*, 390

---

[6] The decisions of the C.C.P.A. are binding precedent in the Federal Circuit. *South Corp. v. United States*, 690 F.2d 1368, 1369-70 (Fed. Cir. 1982) (*en banc*).

F.2d 771, 774 (C.C.P.A. 1968) (citing *Clarke*).  "Proof of prior completion of a species different from the species of the reference or activity will be sufficient to overcome a reference indirectly under 37 C.F.R. 1.131 if the species shown in the reference or activity would have been obvious in view of the species shown to have been made by the applicant."  MPEP § 715.03 at 700-255 to 700-256 (A4-5).

As explained above, however, Monsanto has not asserted and cannot maintain that it "indirectly antedated" the '925 patent by proving that the naturally occurring CTP/EPSPS it allegedly reduced-to-practice before July 15, 1985, rendered the synthetic CTP/EPSPS construct described in the '925 patent unpatentably obvious within the meaning of 35 U.S.C. § 103.  Monsanto, in fact, has made *no such showing* in its motion for summary judgment, and this deficiency alone provides sufficient basis to deny Monsanto's motion.  Indeed, all the evidence in the record demonstrates that Monsanto could not make such a showing, particularly on summary judgment where all factual disputes are viewed in Syngenta's favor.

The evidence establishes that by May 1985, Monsanto's efforts to use a synthetic CTP/EPSPS fusion polypeptide, where the CTP and EPSPS portions do not occur together in nature, to enhance the glyphosate resistance of a plant cell *failed*.  *See* § IV.A., *supra*.  Due to this failure, the August 7th and October 29th 1985 applications, state that "it is not known" whether a synthetic CTP/EPSPS "might confer some degree of glyphosate resistance upon a transformed cell."  D.I. 218, Ex. 39 at 0005012:16-23; *id.*, Ex. 40 at 0005107:16-23.  Given Monsanto's failure, it cannot be said that the naturally occurring CTP/EPSPS would render a synthetic CTP/EPSPS obvious within the meaning of the patent law.  *See* 35 U.S.C. § 103; *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966).  Indeed, one of the requisite elements of obviousness is a reasonable expectation of success.  *See, e.g., Velander v. Garner*,

348 F.3d 1359, 1378-79 (Fed. Cir. 2003) (affirming Board's finding of obviousness and that one skilled in the art would have found a reasonable expectation of success in practicing the claimed invention from the prior art references); *see also Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578-79 (Fed. Cir. 1991) (stating that "[n]onobviousness is suggested by the failure of others to 'find a solution to the problem which the patent[s] in question purport[] to solve . . . .'") (citation omitted). Monsanto cannot show that based on its work with the naturally occurring CTP/EPSPS from petunia, it would have a reasonable expectation of success of obtaining enhanced glyphosate resistance with a synthetic CTP/EPSPS, particularly where its prior work with a synthetic CTP/EPSPS failed. Clearly, on the facts presented by Monsanto in its summary judgment motion and the evidence cited herein by Syngenta, Monsanto cannot conceivably allege a reasonable expectation of success.

In any event, the question of obviousness is a highly fact dependent issue, and there are, at the very least, factual issues precluding summary judgment. *See Sakraida v. AG Pro, Inc.*, 425 U.S. 273, 280 (1976); *In re Fulton*, 391 F.3d 1195, 1199-1200 (Fed. Cir. 2004). Thus, under the applicable legal authority, Monsanto cannot antedate the '925 patent even under its own claim construction, and its motion must fail.