IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-305-SLR |
| v. | ) ) | (lead case) |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | **CONTAINS RESTRICTED CONFIDENTIAL** |
| Defendants. | ) ) | **INFORMATION SUBJECT TO PROTECTIVE ORDER** |
| DEKALB GENETICS CORPORATION, | ) ) | **FILED UNDER SEAL** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | |
| Defendants. | ) ) | |

**SYNGENTA'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY RELATED TO PORTIONS OF THE EXPERT REPORTS
OF ERIC WARD, BARRY BRUCE, AND PAUL CHRISTOU**

Of counsel:
Michael J. Flibbert
Howard W. Levine
Scott J. Popma
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Attorneys for Defendants

Dated: January 26, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      NATURE OF PROCEEDINGS......................................................................................... 1

II.     SUMMARY OF THE ARGUMENT ............................................................................. 2

III.    STATEMENT OF FACTS ............................................................................................. 3

IV.     ARGUMENT ................................................................................................................ 3

        A.      Dr. Ward's Testimony Is Relevant to Rebut Dr. Finer's Testimony
                Concerning the Technology Used to Create GA21 Corn ...................................... 3

        B.      Dr. Bruce's Testimony Is Relevant to Rebut Dr. Keegstra's Testimony
                Concerning Alleged Infringement of the Shah Patent Under the Doctrine
                of Equivalents ........................................................................................................ 7

        C.      Dr. Christou's Testimony Is Relevant to Support Syngenta's Non-
                Enablement Defense with Respect to the Shah Patent............................................ 9

V.      CONCLUSION........................................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Plant Genetic System, N.V. v. DeKalb Genetics Corp.,*
  175 F. Supp. 2d 246 (D. Conn. 2001) ............................................................................ 3, 9-10

*Plant Genetic System, N.V. v. DeKalb Genetics Corp.,*
  315 F.3d 1335 (Fed. Cir. 2003) ................................................................................... 3, 6, 9-10

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.,*
  345 F.3d 1366 (Fed. Cir. 2003) .............................................................................................. 7

*Rhone-Poulenc Agro, S.A. v. Monsanto Co.,*
  No. 1:97CV1138, 2000 U.S. Dist. LEXIS 21330 (M.D.N.C. Feb. 8, 2000) ................... passim

## FEDERAL RULES

Fed. R. Evid. 804(b)(1) ........................................................................................................... 6

Fed. R. Evid. 801(d)(2) ......................................................................................................... 10

Defendants Syngenta Seeds, Inc., Syngenta Biotechnology Inc., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (collectively "Syngenta") oppose the motion filed by Plaintiffs Monsanto Company, Monsanto Technology LLC, and DeKalb Genetics Corporation (collectively "Plaintiffs") on January 11, 2006, seeking to exclude certain proposed testimony of Syngenta's technical experts, Dr. Eric Ward, Dr. Barry Bruce, and Dr. Paul Christou.

## I.     NATURE OF PROCEEDINGS

This is a patent case involving three patents asserted by the Plaintiffs.

On May 12, 2004, Syngenta announced that it had acquired rights to GA21 corn technology from Bayer CropScience, a successor of Rhone-Poulenc Agro, S.A. ("RPA"). The same day, Monsanto Company, together with Monsanto Technology LLC, sued Syngenta for infringement of the Shah patent in this Court. *Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-CV-0305 (D. Del. filed May 12, 2004) ("the Shah action").

On July 27, 2004, DeKalb, a wholly owned subsidiary of Monsanto Company, sued Syngenta in the Northern District of Illinois, alleging that Syngenta had infringed the Lundquist patents in connection with Syngenta's proposed marketing of GA21 corn. *DeKalb Corp. v. Syngenta Seeds, Inc.*, No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) ("the Lundquist action").

The Shah and Lundquist actions both charged Syngenta with patent infringement in the use of GA21 corn, which is a genetically modified corn tolerant to the herbicide glyphosate. Due to the overlapping issues, Syngenta moved to transfer the Lundquist action to this Court. On May 19, 2005, the Illinois district court granted Syngenta's motion to transfer. Docket Item ("D.I.") 92. This Court consolidated the Shah and Lundquist actions on August 23, 2005. D.I. 111. The parties completed all discovery on December 19, 2005. *Id.*

## II.    SUMMARY OF THE ARGUMENT

1.    Plaintiffs argue that Dr. Ward should not be permitted to testify concerning "the details" of how GA21 corn was created, including the fact that RPA, not Plaintiffs, created the gene construct that provides glyphosate tolerance in GA21 corn. The Court should reject this contention. Dr. Ward's testimony is relevant to rebut the testimony of Plaintiffs' expert, Dr. John Finer, concerning the technology used to create GA21 corn. His testimony, like Dr. Finer's, concerns both the product accused of infringement (GA21 corn) and the process used to make that product. Such testimony cannot be irrelevant simply because Dr. Ward will testify in more detail than Dr. Finer concerning how GA21 corn was created. Although Plaintiffs obviously do not want the jury to learn through Dr. Ward's testimony that RPA, not Plaintiffs, created the critical gene construct that imparts glyphosate tolerance to GA21 corn, Syngenta would be prejudiced if Dr. Finer is permitted to testify about the creation of GA21 corn without allowing Dr. Ward to rebut that testimony with a more complete and accurate description of the relevant GA21 corn technology.

2.    Plaintiffs next challenge Dr. Bruce's proposed testimony rebutting the testimony of Monsanto's expert, Dr. Kenneth Keegstra, relating to alleged infringement of the Shah patent under the doctrine of equivalents ("DOE"). Plaintiffs argue that Dr. Bruce's proposed testimony is "legally improper" because he allegedly compared the gene in GA21 corn to another RPA gene to prove non-infringement. This assertion is incorrect. Dr. Bruce will testify that, although the optimized transit peptide ("OTP") in Syngenta's GA21 corn products performs the same function as the naturally occurring chloroplast transit peptide ("CTP") required by the Shah patent claims, it does so in a substantially different way and achieves a substantially different result (improved glyphosate resistance). Thus, Dr. Bruce will make a legally appropriate

comparison between the accused GA21 corn products, which contain an OTP, and the asserted claims of the Shah patent, which require a naturally occurring CTP.

       3.     Finally, Plaintiffs seek to exclude Dr. Christou's proposed testimony concerning DeKalb's admissions in *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 175 F. Supp. 2d 246 (D. Conn. 2001), *aff'd*, 315 F.3d 1335 (Fed. Cir. 2003) ("the *PGS* case"), that it was not possible in 1987 to stably transform monocots such as corn. Plaintiffs argue that the *PGS* case involved a different patent and, therefore, Dr. Christou's proposed testimony is not relevant to establish non-enablement of the Shah patent claims. This assertion is also incorrect. DeKalb has specifically admitted that, even as late as 1987, it was not possible to stably transform monocots such as corn—a key fact supporting Syngenta's non-enablement defense with respect to the Shah patent. That the *PGS* case involved a different patent is irrelevant, because the dispositive issue concerning the state of the art of monocot transformation in 1985-87 is identical in the present case and in the previously litigated *PGS* case.

## III.    STATEMENT OF FACTS

      The facts necessary to resolve Syngenta's opposition to Plaintiffs' motion are set forth in the Argument below.

## IV.    ARGUMENT

### A.    Dr. Ward's Testimony Is Relevant to Rebut Dr. Finer's Testimony Concerning the Technology Used to Create GA21 Corn

      Plaintiffs first argue that Section I of Dr. Ward's rebuttal expert report should be excluded because Dr. Ward addresses "the details" concerning how GA21 corn was created, including the fact that RPA, not Plaintiffs, created the gene construct that provides glyphosate tolerance in GA21 corn. D.I. 206 at 1. Plaintiffs argue that the "source of the transgene used in the infringing process is irrelevant" because "[i]nfringement of a process patent claim is

determined by whether all of the steps of the claimed process have been carried out." D.I. 206 at 10. Plaintiffs also express their concern that Dr. Ward may "paint Plaintiffs in a bad light" if he testifies about the determinations (affirmed on appeal), in *Rhone-Poulenc Agro, S.A. v. Monsanto Company*, No. 1:97CV1138, 2000 U.S. Dist. LEXIS 21330 (M.D.N.C. Feb. 8, 2000) ("the *RPA case*") (Ex. 1), that DeKalb committed fraud, patent infringement, and trade secret misappropriation in connection with the creation and marketing of GA21 corn. D.I. 206 at 1-2.

Syngenta agrees that process patent infringement requires, *inter alia*, that Plaintiffs prove that all of the steps of the claimed process were carried out in the accused process. Precisely because it is undisputed that Syngenta never performed *any* of the first three steps of the "bombardment" transformation process claimed in the Lundquist patents, the Court should grant Syngenta's motion for summary judgment of non-infringement of the Lundquist patents. *See* D.I. 209.

Nonetheless, if this case does go to trial, Syngenta should be entitled to rebut the proposed testimony of Plaintiffs' infringement expert, Dr. Finer. According to his expert report, Dr. Finer intends to testify at length about how GA21 corn was created by plaintiff DeKalb, ostensibly in order to establish that the GA21 event was made through a process including every step of claim 1 of the Lundquist patents. *See* Ex. 2 (Finer expert report), at 20-24, 45-48.

Dr. Ward's rebuttal testimony, which Plaintiffs challenge, addresses the **same subject matter** discussed in Dr. Finer's report—the technology used to create GA21 corn—but with greater factual detail. Dr. Ward lays out the "who, what, where, and when" facts concerning the technology used to create GA21 corn, whereas Dr. Finer skims over or omits many of those same technical facts. *See* Ex. 3 (Ward rebuttal expert report), at 1-9; Ex. 2 (Finer expert report), at 20-24, 45-48; *see also* Ex. 4 (Ward. Tr.) at 182 (Dr. Ward's rebuttal report includes details

- 4 -

concerning the creation of GA21 corn that Dr. Finer omitted). For example, Dr. Ward discusses the gene construct developed by RPA, which imparts glyphosate tolerance in GA21 corn, whereas Dr. Finer omits any mention of RPA or its contribution of the gene construct used to create GA21 corn. *See id.*

Plaintiffs obviously want to prevent the jury from learning that RPA, not Plaintiffs, invented the critical gene construct that makes GA21 corn possible. However, excluding testimony concerning RPA's contribution to GA21 corn would allow Plaintiffs to mislead the jury into believing that GA21 corn is solely Plaintiffs' invention, when it is not. Moreover, Dr. Ward's testimony is relevant to the issues in this case because it concerns both the product accused of infringement (GA21 corn) and the process used to make that product. Dr. Ward's testimony cannot be irrelevant simply because he will provide more factual detail than Dr. Finer concerning how GA21 corn was created and prevent the false impression that the transgene in GA21 corn was created by Plaintiffs. There cannot be undue prejudice to Plaintiffs if the jury learns that the transgene in GA21 corn was created by RPA, not Plaintiffs.

Indeed, if the Court excludes Dr. Ward's testimony concerning the creation of GA21 corn, then it should also exclude Dr. Finer's testimony concerning the creation of GA21 corn. But it would be manifestly prejudicial to Syngenta to permit Dr. Finer to testify about the creation of GA21 corn without allowing Dr. Ward to rebut that testimony with a more complete and accurate description of the relevant GA21 corn technology.

In addition, as Dr. Ward explained in his deposition, RPA's gene construct, which provides the glyphosate tolerance in GA21 corn, "is quite far away from anything that's even remotely referred to in the '880 or the '863 patents" in suit and "further serves to demonstrate how much additional work was required to find a gene that would actually confer glyphosate

resistance in maize." Ex. 4 (Ward Tr.) at 183. Thus, the fact that the first successful glyphosate-tolerant corn product, GA21 corn, was developed years after the filing of the Lundquist and Shah patents in suit, and required the creation of new technology (RPA's gene construct) that is not described in the asserted patents, strongly supports Syngenta's non-enablement defenses. *See, e.g., Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1343-44 (Fed. Cir. 2003) (holding that district court properly considered post-1987 reports concerning the first transformation of corn cells as evidence of the state of the art of corn transformation existing in 1987).

In forming his scientific opinions concerning the creation of GA21 corn and the development of gene constructs necessary to impart glyphosate tolerance, Dr. Ward reasonably considered the testimony in the *RPA* case of the RPA scientists who invented the gene construct that provides glyphosate tolerance in GA21 corn.[1] At trial, Dr. Ward will provide relevant *technical* testimony supporting Syngenta's defenses, but he will *not* testify about the determinations in the *RPA* case that DeKalb committed fraud, patent infringement, and trade secret misappropriation in connection with the creation and marketing of GA21 corn. Thus, contrary to Plaintiffs' speculation, Dr. Ward will not "paint Plaintiffs in a bad light" with testimony concerning DeKalb's fraud. D.I. 206 at 1.

Further, Plaintiffs' argument rings hollow because they have *not even objected* to the proposed testimony of Syngenta's damages expert, John Jarosz, concerning the *RPA* case. To rebut Plaintiffs' allegations of reasonable royalty damages, Mr. Jarosz will testify, for example,

---

[1] If the knowledgeable RPA witnesses are unavailable to testify at trial, Syngenta will establish at trial (or at the pre-trial conference) that the prior testimony of these RPA scientists is admissible because Plaintiffs had an opportunity and similar motive to cross-examine them during the *RPA* case. *See* Fed. R. Evid. 804(b)(1).

that Plaintiffs lost their right to market GA21 corn as a result of the judgment and permanent injunction entered in the *RPA* case and that Plaintiffs began paying RPA (and later Syngenta) for the right to continue to sell GA21 corn through the 2004 crop year.[2]  Ex. 5 (Jarosz rebuttal report), at 5-8, 12-15.  Mr. Jarosz will also testify, again without objection from Plaintiffs, that DeKalb was ordered to pay RPA $50 million in punitive damages for fraudulent inducement.[3]  *Id.* at 8.

      **B.**    **Dr. Bruce's Testimony Is Relevant to Rebut Dr. Keegstra's Testimony Concerning Alleged Infringement of the Shah Patent Under the Doctrine of Equivalents**

Plaintiffs next challenge certain proposed expert testimony of Syngenta's expert, Dr. Bruce, rebutting the testimony of Monsanto's expert, Dr. Keegstra, relating to alleged infringement of the Shah patent under the DOE.  Plaintiffs argue that Dr. Bruce's proposed testimony is "legally improper" because he allegedly compared the gene in GA21 corn to another RPA gene to prove non-infringement.  D.I. 206 at 1, 3.  Plaintiffs assert that, under the DOE, the only proper comparison is between the accused GA21 products and the claims of the asserted patent.  *Id.* at 3, 11-12.

Plaintiffs' challenge to Dr. Bruce's rebuttal testimony on the DOE issue will be moot if the Court holds the Shah patent not infringed or invalid on summary judgment or if it grants Syngenta's *Daubert* motion and excludes Dr. Keegstra's proposed testimony regarding alleged infringement under the DOE.  *See* D.I. 212; D.I. 214; D.I. 221.

---

[2] Plaintiffs failed in their efforts to negotiate a long-term license for GA21 corn. Consequently, as Monsanto's Ken Rinkenberger testified, Plaintiffs knew they

[3] The Federal Circuit upheld the punitive damages award based on "the egregious nature of DeKalb's fraudulent conduct."  *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 345 F.3d 1366, 1372 (Fed. Cir. 2003).

- 7 -

**Redacted**

As explained in Syngenta's *Daubert* motion, Dr. Keegstra's expert report on infringement contained only a single conclusory paragraph concerning the DOE without citing *any evidence* to support his view that the OTP in Syngenta's GA21 corn products is equivalent to the CTP required by claim 1 of the Shah patent. *See* D.I. 221 at 5-8. Dr. Keegstra's wholly unsupported proposed testimony cannot possibly meet the standards for admissible expert testimony under *Daubert*.[4]

However, if Dr. Keegstra is permitted to testify concerning the DOE, Dr. Bruce's proposed rebuttal testimony is entirely appropriate. As set forth in his rebuttal report, Dr. Bruce will testify that, although the OTP in Syngenta's GA21 corn products performs the same function as the naturally occurring CTP required by the Shah patent claims, it does so in a substantially different way and achieves a substantially different result. Ex. 6 (Bruce rebuttal expert report) at 9. Thus, Dr. Bruce's proposed testimony does in fact make a legally appropriate comparison between the accused GA21 corn products, which contain an OTP, and the asserted claims of the Shah patent, which require a naturally occurring CTP.[5]  *Id.*

Further, as part of his technical analysis, Dr. Bruce properly considered Lebrun et al., U.S. Patent No. 5,510,471 ("the '471 patent") (Ex. 7), which describes the OTP developed by RPA. Ex. 6 at 9-13. Dr. Bruce also properly considered a declaration of RPA's Dr. Lebrun filed during prosecution of the '471 patent, which established that the OTP (which is present in GA21

---

[4] In addition, Monsanto waited until the last day of fact discovery to raise its DOE contention, which prevented Syngenta from taking any fact discovery on this issue. Moreover, Monsanto's interrogatory response simply parroted the "function, way, result" language of the DOE without providing any factual support for the new DOE contention. *See* D.I. 221 at 5-6.

[5] Syngenta's *Markman* brief explains why the Court should construe the CTP required by the asserted Shah patent claims as a naturally occurring CTP. D.I. 215 at 29-31.

corn) provides increased glyphosate tolerance in transformed plants compared to a gene construct of the prior art ("the 294 construct"). *See id.*

Plaintiffs do not deny that the 294 construct represents an embodiment of the gene of claim 1 of the Shah patent. As such, Dr. Bruce's proposed testimony concerning Dr. Lebrun's data comparing the OTP to the 294 construct is relevant to show that the OTP in GA21 corn works in a substantially different way, leading to substantially different results (improved glyphosate resistance), than the CTP in claim 1 of the Shah patent.

### C.   Dr. Christou's Testimony Is Relevant to Support Syngenta's Non-Enablement Defense with Respect to the Shah Patent

Finally, Plaintiffs seek to exclude paragraphs 30, 39, 46-47, 51-52, and 62 of Dr. Christou's expert report, which concern DeKalb's *admissions* in the *PGS* case that it was not possible in 1987 to stably transform monocots such as corn. Plaintiffs argue that the *PGS* case involved a different patent and, therefore, Dr. Christou's proposed testimony is not relevant to establish non-enablement of the Shah patent claims, which are directed to a chimeric gene. D.I. 206 at 1, 4, 12-13.

Plaintiffs' challenge to Dr. Christou's proposed testimony will be moot if the Court holds the Shah patent not infringed or invalid on summary judgment. *See* D.I. 212; D.I. 214.

As fully addressed in Syngenta's summary judgment briefing on the non-enablement issue, DeKalb's admissions in the *PGS* case are highly relevant to the issue of non-enablement of the Shah patent. *See, e.g.,* D.I. 214 at 9-10. For example, DeKalb has specifically admitted that, even as late as 1987, it was not possible to stably transform monocots such as corn. *See, e.g.,* D.I. 214 at 4-5, 10 (quoting DeKalb's admission that, "As of March 11, 1987, a person of ordinary skill in the art of plant molecular biology could not transform corn."). DeKalb's unequivocal admission goes to the heart of Syngenta's non-enablement defense, because the

- 9 -

asserted Shah patent claims expressly require that the claimed gene function "to cause sufficient expression of the fusion polypeptide *to enhance the glyphosate resistance of a plant cell transformed with the gene.*" *See id.* at 4 (emphasis added). DeKalb's admission that it was not possible to transform corn in 1987 means that this function, which is expressly required by the Shah patent claims, could not be carried out with respect to monocots when the Shah patent was filed in 1985-86.

Dr. Christou properly relied on DeKalb's prior statements concerning the state of the art of monocot transformation in the mid-1980's. *See* Exh. 8 (Christou expert report) at ¶¶ 30, 39, 46, 51, 52, 62. DeKalb's statements are admissible as party-opponent admissions under Federal Rule of Evidence 801(d)(2). The fact that the *PGS* case involved a different patent is irrelevant. The pivotal issue concerning *the state of the art of monocot transformation in 1985-87* is identical in the present case and in the previously litigated *PGS* case. And if the non-enablement issue is not resolved on summary judgment, the jury should be permitted to consider and weigh the relevance of DeKalb's prior statements about the state of the art.

Finally, Plaintiffs argue that Dr. Christou and Syngenta's other technical experts should not be able to testify about published court opinions from the *PGS* and *RPA* cases. D.I. 206 at 12-14. Syngenta's technical experts reasonably considered Plaintiffs' admissions as well as documents and testimony from those prior cases. They also reasonably considered the published court opinions discussing monocot transformation and GA21 corn technology. However, Syngenta's technical experts do not intend to testify at trial about any published judicial opinions, so Plaintiffs' motion is moot in that respect.

## V.     CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion to exclude portions of the expert testimony of Dr. Ward, Dr. Bruce, and Dr. Christou.

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Of counsel:

Michael J. Flibbert
Howard W. Levine
Scott J. Popma
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000                              Attorneys for Defendants

Dated:  January 26, 2006

- 11 -