## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY and MONSANTO
TECHNOLOGY LLC,

        Plaintiffs,

        v.

SYNGENTA SEEDS, INC.,
SYNGENTA BIOTECHNOLOGY, INC., et al.

        Defendants.

DEKALB GENETICS CORPORATION,

        Plaintiff,

        v.

SYNGENTA SEEDS, INC.,
SYNGENTA BIOTECHNOLOGY, INC., et al.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-305-SLR
(lead case)

## SYNGENTA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE LUNDQUIST PATENTS

Of counsel:
Michael J. Flibbert
Howard W. Levine
Jennifer A. Johnson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

Attorneys for Defendants

Dated:  February 2, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

I.    INTRODUCTION ........................................................................................ 1

II.   REPLY ......................................................................................................... 4

    A.   DeKalb Has Not Raised Any Material Factual Disputes Precluding
         Summary Judgment ............................................................................... 4

    B.   DeKalb Has Not Opposed Syngenta's Request for Summary Judgment of
         Non-Infringement of Claim 1 of the Lundquist Patents ........................ 6

    C.   DeKalb's Position That Syngenta Infringed the Dependent Claims of the
         Lundquist Patents Is Legally Unsupported ........................................... 6

        1.   *Wilson Sporting Goods* Is Inapplicable Because DeKalb Has Not
            Alleged Infringement Under the Doctrine of Equivalents ......................... 6

        2.   DeKalb Does Not Even Allege Any Unauthorized Use of the
            Patented Process During the Patent Term, Which Is Required for
            Infringement Under Section 271(a) or 271(g) ........................................... 9

        3.   DeKalb's Allegation That Syngenta "Completed" the Patented
            Process Is Legally Insufficient to Establish Infringement ...................... 11

        4.   DeKalb's Proposed Construction of Claim 4 of the '880 Patent Is
            Inconsistent with DeKalb's Prior Claim Construction, the Illinois
            Court's Claim Construction, and the Intrinsic Evidence ......................... 15

III.  CONCLUSION ............................................................................................. 18

DB01:1983198.1                                                        059155.1008

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
    228 F.3d 1338 (Fed. Cir. 2000)..................................................................9, 10

*Canton Bio-Medical, Inc. v. Integrated Liner Techs., Inc.*,
    216 F.3d 1367 (Fed. Cir. 2000)..............................................................2, 11, 12

*E.I. DuPont DeNemours & Co. v. Monsanto Co.*,
    903 F. Supp. 680 (D. Del. 1995)....................................................................12

*General Foods Corp. v. Studiengesellschaft Kohle mbH*,
    972 F.2d 1272 (Fed. Cir. 1992)......................................................................11

*Idacon, Inc. v. Central Forest Prods., Inc.*,
    No. 82-158-C, 1986 WL 15837 (E.D. Okla. Apr. 25, 1986) ...................................12

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
    252 F.3d 1306 (Fed. Cir. 2001).....................................................................13

*Nike Inc. v. Wolverine World Wide, Inc.*,
    43 F.3d 644 (Fed. Cir. 1994).........................................................................15

*Rhone-Poulenc-Agro, S.A. v. DeKalb Genetics Corp.*,
    272 F.3d 1335 (Fed. Cir. 2001)........................................................................5

*Rhone-Poulenc-Agro, S.A. v. DeKalb Genetics Corp.*,
    345 F.3d 1366 (Fed. Cir. 2003)........................................................................5

*Trustees of Columbia Univ. v. Roche Diagnostics GmbH*,
    272 F. Supp. 2d 90 (D. Mass. 2002) ............................................................9, 10

*Wahpeton Canvas Co. v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir. 1989).....................................................................7, 8

*Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*,
    904 F.2d 677 (Fed. Cir. 1990)....................................................................6, 7, 8

## DOCKETED CASES

*DeKalb Genetics Corp. v. Ciba-Geigy Corp.*,
    No. 96 C 50241 (N.D. Ill. filed July 23, 1996) ....................................................14

059155.1008

*DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, Inc.*,
  No. 96 C 50112 (N.D. Ill. filed Apr. 30, 1996) ..................................................................8, 14

## FEDERAL STATUTES

35 U.S.C. § 112...........................................................................................................................16

35 U.S.C. § 271(a) ................................................................................................... passim

35 U.S.C. § 271(g) ................................................................................................... passim

059155.1008

## I.    INTRODUCTION

Defendants (collectively "Syngenta") submit this Reply Brief in response to the Answering Brief filed by plaintiffs DeKalb Genetics Corporation, Monsanto Company, and Monsanto Technology LLC (collectively "DeKalb") on January 26, 2006, in opposition to Syngenta's motion for summary judgment of non-infringement of the Lundquist patents.

DeKalb does not dispute that the only alleged "invention" of the Lundquist patents is the three-step "bombardment" transformation process of claim 1 of the patents.  DeKalb also does not dispute that Syngenta never used this process in connection with any GA21 corn product. DeKalb raises *no opposition* to Syngenta's request for summary judgment of non-infringement with respect to claim 1 of the Lundquist patents.

Despite conceding that Syngenta did not use the only alleged "invention" of the Lundquist patents—the "bombardment" transformation process of independent claim 1—DeKalb asserts that Syngenta infringed certain *narrower* dependent claims.  Syngenta established in its Opening Brief that this is a legal impossibility, because dependent claims cannot be infringed where there is no infringement of the corresponding independent claims.  Docket Item ("D.I.") 209 at 19-21.

In response, DeKalb does not dispute that DeKalb (not Syngenta) used the claimed "bombardment" transformation process, and that DeKalb did so between July 1993 and February 1994, before either Lundquist patent issued (in 1996 and 2000).  D.I. 209 at 5-8.  DeKalb argues, however, that Syngenta "completed" the patented process by carrying out the last (of four) claimed steps and that Syngenta "misappropriated" DeKalb's GA21 corn.  D.I. 244 at 5-7, 19-24. DeKalb also invokes 35 U.S.C. § 271(g) as an alternative basis for alleged liability.  D.I. 244 at 13-19.

Significantly, DeKalb's infringement theories raise only pure issues of law, confirming that the Court can dispose of the infringement issue on summary judgment. And grant of summary judgment of non-infringement is warranted because DeKalb's infringement theories contravene established law. Patent infringement is the use "without authority" of the patented invention "during the term of the patent." 35 U.S.C. § 271(a). Further, "[i]nfringement of process inventions is subject to the 'all-elements rule' whereby each of the claimed steps of a patented process must be performed in an infringing process, literally or by an equivalent of that step . . . ." *Canton Bio-Medical, Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000).

The asserted dependent claims here require at least four process steps, and DeKalb does not dispute that Syngenta never carried out *any of the first three steps* of the claimed process. DeKalb's *own* activities, *before* any patent issued, cannot satisfy the statutory requirements for an infringing use by Syngenta of each step of the claimed process "without authority . . . during the term of the patent." 35 U.S.C. § 271(a). DeKalb's use of its process was neither "without authority" nor "during the term of the patent." Moreover, alleged "misappropriation" by Syngenta of GA21 corn is legally irrelevant to the issue of process patent infringement.

The same analysis applies under section 271(g). DeKalb argues that section 271(g) is not limited to patented processes used overseas and encompasses processes used in the United States, and that it is irrelevant under section 271(g) who uses the patented process. *See* D.I. 244 at 13-19. DeKalb's arguments miss the mark. That section 271(g) technically may apply to *infringing* processes carried out in the United States by parties other than the defendant is irrelevant, because it is undisputed here that there has been no such infringing use of the claimed process *by anyone, anywhere* in the world. No court has interpreted section 271(g) as

eliminating the underlying requirement for proof of an *unauthorized use* of the patented process (including all the claimed steps) *by someone* during the patent term.

To illustrate the degree to which DeKalb's infringement contentions are legally unsupported, the Court should note the following:

• DeKalb cites no case in which a dependent claim was held infringed even though there was no infringement of the corresponding independent claim.

• DeKalb cites no case in which process patent infringement was found even though the defendant (or its agent) did not carry out all of the steps of the claimed process.

• DeKalb cites no case in which a defendant's liability for process patent infringement was predicated on the authorized acts of the plaintiff patent holder rather than unauthorized acts of the defendant (or its agent).

• DeKalb cites no case in which process patent infringement was found even though one or more steps of the claimed process were carried out before any patent issued.

• DeKalb cites no case in which "misappropriation" was held to be relevant to process patent infringement.

• DeKalb cites no case in which liability was found under section 271(g) where there was no unauthorized use of the patented process (including all claimed steps) by anyone, anywhere in the world, during the patent term.

Suffice it to say, DeKalb also cites no case in which these circumstances were combined, as in this case.

For the reasons further developed below, DeKalb's baseless assertions of process patent infringement fail as a matter of law on several independent grounds and should be dismissed on summary judgment.

## II.    REPLY

### A.    DeKalb Has Not Raised Any Material Factual Disputes Precluding Summary Judgment

DeKalb does not dispute *any* of the facts set forth in Syngenta's Opening Brief, including

the fact that Syngenta never performed any of process steps (i)-(iii) of claim 1 of the Lundquist

patents in connection with any GA21 corn product. *See* D.I. 244; D.I. 209. DeKalb also does

not dispute that DeKalb, not Syngenta, performed process steps (i)-(iii) of the Lundquist claims

between July 1993 and February 1994, before the Lundquist patents issued (in 1996 and 2000).

*See id.* As such, DeKalb does not challenge the factual basis for Syngenta's summary judgment

motion: the undisputed fact that no party (including DeKalb) ever carried out process steps (i)-

(iii) of claim 1 of the Lundquist patents during the term of either patent with respect to any GA21

corn product. *See* D.I. 209 at 5-8. The Court should therefore grant summary judgment of non-

infringement for all the reasons set forth in Syngenta's Opening Brief. *See* D.I. 209.

Unable to dispute any of the *relevant* facts concerning alleged infringement, DeKalb

interjects assertions concerning alleged "misappropriation" of GA21 corn by Syngenta that have

no bearing on the issue of patent infringement under the statute or case law. D.I. 244 at 5-7.

DeKalb's "misappropriation" allegations are, of course, completely irrelevant to the issue of

process patent infringement. By definition, the Lundquist patents (if valid and infringed) can

only provide a remedy for infringement of the claimed "bombardment" transformation *process*;

they cannot provide a remedy for alleged "misappropriation" of GA21 corn. DeKalb cites no

case in which any court has held that "misappropriation" is relevant to process patent

infringement.

DeKalb did not even assert "misappropriation" as a claim in this case or as a

counterclaim in the related antitrust action between the parties. Nor did DeKalb disclose its new

- 4 -

"misappropriation" theory of infringement in its interrogatory responses in this case. *See* D.I. 209 at A63-75. In any event, "misappropriation" is legally irrelevant to alleged infringement of the Lundquist patents.[1]

Further, DeKalb's new theory that Syngenta "misappropriated" GA21 corn flies in the face of the final decision in the prior *RPA* case that ***DeKalb misappropriated from Rhone-Poulenc Agro, S.A.*** ("RPA") the gene construct that provides glyphosate tolerance in GA21 corn—the same gene construct used in Syngenta's GA21 corn products. *See Rhone-Poulenc-Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335 (Fed. Cir. 2001) (affirming judgment of fraudulent inducement, trade secret misappropriation, and patent infringement against DeKalb in connection with GA21 corn); *Rhone-Poulenc-Agro, S.A. v. DeKalb Genetics Corp.*, 345 F.3d 1366 (Fed. Cir. 2003) (reaffirming district court judgment in its entirety, including award of $50 million in punitive damages, following remand from the Supreme Court on punitive damages issue). In view of "the egregious nature of DeKalb's fraudulent conduct," 345 F.3d at 1372, in unlawfully misappropriating RPA's gene construct, DeKalb hardly is in a position to raise baseless assertions that Syngenta (which is licensed by RPA's successor Bayer CropScience) "misappropriated" GA21 corn.

DeKalb also raises irrelevant factual assertions concerning Syngenta's "Ffybes" research program relating to the development of glyphosate-tolerant corn products. D.I. 244 at 6-7. The short answer here is that DeKalb has never asserted that Syngenta's activities in the Ffybes program infringed either of the Lundquist patents. Indeed, although DeKalb mentions the Ffybes

---

[1]    DeKalb's similar assertions concerning alleged license agreements or alleged violations of those agreements also are irrelevant to process patent infringement. *See* D.I. 244 at 2, 5-6, 8-9. DeKalb appears to be referring to its "tortious interference with contract" counterclaim in the related antitrust case between the parties. *See* D.I. 138 at 38.

059155.1008

program in its statement of allegedly "material" facts, DeKalb does not refer to it again in connection with its various arguments concerning alleged infringement. *See* D.I. 244 at 7-27.

**B.     DeKalb Has Not Opposed Syngenta's Request for Summary Judgment of Non-Infringement of Claim 1 of the Lundquist Patents**

Syngenta's Opening Brief established that Syngenta has not infringed claim 1 of the Lundquist patents. *See* D.I. 209 at 9-11. DeKalb has not opposed any of Syngenta's arguments with respect to these independent claims. *See* D.I. 244. The Court should therefore grant summary judgment that Syngenta has not infringed claim 1 of either Lundquist patent.[2]

**C.     DeKalb's Position That Syngenta Infringed the Dependent Claims of the Lundquist Patents Is Legally Unsupported**

The asserted claims *depend from* claim 1 of the Lundquist patents and therefore require the performance of the three-step process of claim 1 of each patent plus one or more additional steps. *See* D.I. 209 at 11-19. Because dependent claims cannot be infringed unless the claims from which they depend have been infringed, DeKalb's infringement allegations concerning these dependent claims fail as a matter of law. *See id.* at 19-21 (citing six Federal Circuit decisions and one decision of this Court to support Syngenta's non-infringement position).

**1.     *Wilson Sporting Goods* Is Inapplicable Because DeKalb Has Not Alleged Infringement Under the Doctrine of Equivalents**

DeKalb responds that the rule that dependent claims cannot be infringed unless the corresponding independent claims are infringed does not apply here in view of the decision in *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677 (Fed. Cir. 1990). DeKalb

---

[2]     DeKalb tries to downplay its failure to establish infringement of the independent claims of the Lundquist patents by asserting that it "never asserted infringement of claim 1 in the first place." D.I. 244 at 2 n.1. This statement is false. DeKalb's First Amended Complaint specifically requested entry of a "judgment that Defendants have infringed claims 1-9 of the '880 patent and the claims of the '863 patent." D.I. 32 at 6.

- 6 -

is simply wrong. In *Wilson Sporting Goods*, the Federal Circuit held that, in conducting a "hypothetical claim" infringement analysis **under the doctrine of equivalents** ("DOE"), there may be circumstances where a dependent claim could be infringed under the DOE without the corresponding independent claim being infringed. The issue in *Wilson Sporting Goods* was that, in asserting the DOE, a patentee cannot ensnare subject matter that is in the prior art. Specifically, because dependent claims are narrower than their corresponding independent claims and include additional limitations, a narrower "hypothetical" claim under the DOE might *not* ensnare the prior art (and would be infringed under the DOE) while a broad independent claim might ensnare the prior art if given a range of equivalents necessary to cover the accused product (and would not be infringed under the DOE). As the Federal Circuit stated, under this "hypothetical claim" DOE analysis, "it does not automatically follow that the ranges of equivalents of the narrower claims would encompass the prior art, because of their added limitations." 904 F.2d at 686. The court did not even apply this theoretical "exception" to the facts of that case, but instead reversed the judgment of infringement with respect to *all* of the claims, including the asserted dependent claims. *Id.* at 683-87.

DeKalb has *not* asserted infringement under the DOE. The "hypothetical claim" DOE analysis of *Wilson Sporting Goods* is therefore completely irrelevant to the issue of alleged literal infringement of the Lundquist patents. DeKalb cites no decision applying *Wilson Sporting Goods* in the context of a literal infringement analysis.[3]

DeKalb attempts to distinguish *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546 (Fed. Cir. 1989), and the five other Federal Circuit decisions cited in Section V(C)(3) of

---

[3]    Indeed, DeKalb cites no case applying *Wilson Sporting Goods* to find literal infringement *or* infringement under the DOE of a dependent claim. Syngenta is aware of no case at all applying the hypothetical dicta of *Wilson Sporting Goods*.

059155.1008

Syngenta's Opening Brief on the ground that those decisions concerning infringement of dependent claims are limited to "the situation where elements of the independent claim are missing from the accused product or process." D.I. 244 at 9. DeKalb suggests that, "That situation [is] not present here." *Id.*

To the contrary, that is exactly the situation here. The asserted dependent claims require at least *four process steps* and there is no dispute that Syngenta never performed *any of the first three required steps*. Thus, those first three required process steps are in fact "missing" from Syngenta's activities—which is precisely why Syngenta has not infringed claim 1 of the Lundquist patents. Accordingly, under controlling case law regarding infringement of dependent claims, the absence of infringement of claim 1 of the Lundquist patents mandates a conclusion that Syngenta also has not infringed the narrower dependent claims. *See, e.g.*, *Wahpeton Canvas*, 870 F.2d at 1553 ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed . . . ."). DeKalb cannot distinguish *Wahpeton Canvas* or the other controlling cases cited in Syngenta's Opening Brief. *See* D.I. 209 at 19-21. Significantly, DeKalb cites no case where a dependent claim was held infringed even though there was no infringement of the corresponding independent claim.[4]

---

[4]    DeKalb falsely argues that *DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, Inc.*, No. 96 C 50112 (N.D. Ill. filed Apr. 30, 1996), is a case where "the rationale of *Wilson Sporting Goods* applied to defeat the same noninfringement argument being advanced here." D.I. 244 at 12. The *Pioneer* case involved a *product* claim, not a patented process. *See* D.I. 245, Ex. 19 (product claims 1-6), Ex. 20 at 9 ("Here the claims are directed to a product rather than a process."). Moreover, the Special Master did *not* "apply" the rationale of *Wilson Sporting Goods*. To the contrary, he cited this case only to illustrate that the holding of *Wahpeton Canvas* regarding dependent claims does not address the issue of *when* infringement of a product claim must occur. D.I. 245, Ex. 20 at 8-9. Further, apart from the fact that this Special Master's report (continued...)

2.    **DeKalb Does Not Even Allege Any Unauthorized Use of the Patented Process During the Patent Term, Which Is Required for Infringement Under Section 271(a) or 271(g)**

DeKalb argues at great length that its infringement contentions under section 271(g) are not barred simply because the process used to make GA21 corn was carried out in the United States rather than overseas. *See* D.I. 244 at 13-19. In addition, DeKalb argues that the decision in *Trustees of Columbia Univ. v. Roche Diagnostics GmbH*, 272 F. Supp. 2d 90, 108 (D. Mass. 2002), establishes that it is irrelevant under section 271(g) who used the patented process. D.I. 244 at 19.

DeKalb's arguments completely miss the point. Syngenta has not infringed the Lundquist patents under section 271(a) *or* 271(g) because Syngenta never performed any of the first three required steps of the patented process and did not perform the required steps during the term of either patent. That section 271(g) technically may apply to *infringing* processes carried out in the United States by parties other than the defendant is irrelevant, because it is undisputed here that there has been no unauthorized use of the claimed process by *anyone*, anywhere in the world.

As the Federal Circuit stated in *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338 (Fed. Cir. 2000), "§ 271(g) imposes liability for infringement of the United States [process] patent, with certain safeguards set forth in the statute." *Id.* at 1347. Thus, to establish liability under section 271(g), a patentee must first show that there has been an unauthorized use of the patented process (either abroad or in the United States), then prove that the defendant imported, offered for sale, sold, or used within the United States a product made by that infringing process.

---

(...continued)
is irrelevant to the process patent infringement issues here, DeKalb cites no district court order adopting the report.

No court has interpreted section 271(g) as eliminating the threshold requirement for proof of an unauthorized use of the patented process.

For example, in *Trustees of Columbia University*, cited by DeKalb (D.I. 244 at 19), Columbia alleged that Roche was liable for direct infringement under section 271(g) for importing a product that its collaborator, Genetics Institute ("GI"), had made using a process covered by Columbia's "Axel" patents. 272 F. Supp. 2d at 95. Roche and GI worked together on this project under a "Development & License Agreement." *Id.* at 98. In considering Roche's section 271(g) infringement contentions, the district court correctly determined that:

> Roche's liability depends on GI's. It is liable only if GI's underlying actions directly infringed the Axel patents. . . . If the product shipped by Roche into the United States was made by a process that did not directly infringe upon Columbia's patents, then Roche cannot have violated Section 271(g).

*Id.* at 100. The court then analyzed the limitations of the asserted process claims to determine whether GI had directly infringed the patented process, before determining whether Columbia had established the other requirements for infringement under section 271(g). *Id.* at 100-104.

Thus, the infringement analysis of the *Trustees of Columbia University* case is entirely consistent Syngenta's position that it cannot be liable under section 271(g) in view of the undisputed absence of any unauthorized use—*by anyone, anywhere* in the world—of the process claimed in the Lundquist patents. *See also Ajinomoto Co.*, 228 F.3d at 1347 ("Ajinomoto bore the burden of establishing that the imported strains were manufactured by a process covered by the '765 patent."). Again, DeKalb cites no case where liability was found under section 271(g) without proof of an unauthorized use of the patented process.

- 10 -

### 3.     DeKalb's Allegation That Syngenta "Completed" the Patented Process Is Legally Insufficient to Establish Infringement

DeKalb acknowledges, as it must, that "infringement of a process patent requires the performance of all steps of the claimed process." D.I. 244 at 20. DeKalb asserts, however, that, even though Syngenta never performed the first three steps of the patented process, Syngenta infringed the Lundquist patents by "completing" the process after the patents issued. *Id.* at 19-22. Again, DeKalb's position fails to withstand analysis.

DeKalb's contention that Syngenta infringed the Lundquist patents by "completing" the claimed process violates the fundamental principle that "[i]nfringement of process inventions is subject to the 'all-elements rule' whereby *each of the claimed steps of a patented process must be performed in an infringing process*, literally or by an equivalent of that step . . . ." *Canton Bio-Medical*, 216 F.3d at 1370 (emphasis added). It is legally impermissible to reduce a multi-step process to a single step, for the simple reason that only the *combination* of claimed steps is patented, not any individual step. As the Federal Circuit explained in *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272 (Fed. Cir. 1992):

> It cannot be said—though it often is, incorrectly, by the uninitiated—that a part of a claim is "claimed" subject matter. For example, a claim to a process comprising the step A followed by step B followed by step C defines, as a matter of law, only the A-B-C process and one cannot properly speak of any single step as being "claimed," for it is not; all that is claimed is the process consisting of the combination of all three steps. Such a claim, therefore, creates no patent right or monopoly in step A, no right to prevent others from using step A apart from the combination of steps A-B-C. Step A is not "patented."

*Id.* at 1274. For this reason, the individual (fourth) step of "obtaining progeny" in the asserted Lundquist claims is not "patented," and Syngenta's alleged performance of this single step cannot constitute direct infringement of the claimed four-step process. *See id.*

This Court's decision in *E.I. DuPont DeNemours & Co. v. Monsanto Co.*, 903 F. Supp. 680 (D. Del. 1995), cited by DeKalb (D.I. 244 at 23), does not hold to the contrary or otherwise support DeKalb's position.  In that case, DuPont owned patents covering a three-step process for manufacturing certain stain-resistant nylon carpet fibers.  Under a toll processing agreement with CaMac, Monsanto practiced step (a) of the patented process.  It then shipped the product resulting from step (a) to CaMac, who performed steps (b) and (c).  CaMac then sold the resulting fibers.  The court held CaMac liable for direct infringement of the process patent under § 271(a) in view of the manufacturing agreement between Monsanto and CaMac, even though CaMac did not perform step (a) itself, because "a party cannot avoid liability for infringement *by having someone else perform one or more steps of a patented process for them.*"  *Id.* at 735 (emphasis added).  Thus, unlike this case, CaMac (with its partner Monsanto) together performed *all* of the steps of the claimed process, during the patent term.  *See also Idacon, Inc. v. Central Forest Prods., Inc.*, No. 82-158-C, 1986 WL 15837, at *19 (E.D. Okla. Apr. 25, 1986) (also cited by DeKalb) ("Infringement of a patented method cannot be avoided by having another perform one step of the method.").

These "joint infringement" cases stand for the unremarkable proposition that one cannot avoid process patent infringement by employing *an agent* to carry out one or more of the claimed process steps.  Because it is undisputed that Syngenta never practiced the Lundquist "bombardment" process—with or without the assistance of another party—Syngenta cannot be liable for direct infringement under section 271(a) or 271(g).  *See, e.g., Canton Bio-Medical*, 216 F.3d at 1370.

Recognizing that *DuPont* is plainly distinguishable, DeKalb argues that "Syngenta cannot excuse its infringement by claiming that the party from whom it misappropriated the GA21 trait

- 12 -

performed the steps recited in claim 1 of the patents." D.I. 244 at 24. DeKalb cites no authority

for its novel theory that alleged "misappropriation" is relevant to process patent infringement.

*See id.* As discussed in Section II(A) above, "misappropriation" is totally irrelevant to process

patent infringement. DeKalb cannot salvage its baseless patent infringement allegations by

raising new, equally baseless allegations of "misappropriation."

DeKalb also cannot show any *unauthorized* use of the claimed four-step process. *See*

35 U.S.C. § 271(a) (infringement requires use of a patented process "without authority"). Here,

the plaintiff DeKalb, not Syngenta, allegedly performed steps (i)-(iii) of the claimed process.

DeKalb cites no case in which a defendant's liability for process patent infringement was

predicated on the *authorized acts of the plaintiff patent holder.* Obviously, DeKalb's own

activities do not constitute a use by Syngenta "without authority" of the claimed process. *Id.*

DeKalb also cannot establish that the steps of the claimed process were carried out during

the term of either Lundquist patent as required for liability under either 35 U.S.C. §§ 271(a) or

271(g). In *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001), for

example, the Federal Circuit stated as follows:

> We hold, therefore, that in imposing liability for selling or using
> products "made by a process patented in the United States,"
> section 271(g) requires that the patent be issued and in force at the
> time that the process is practiced and the product is made.
> Accordingly, we affirm the district court's grant of summary
> judgment that Monsanto did not infringe Mycogen's process
> claims based on any process it performed before the patent issued.

*Id.* at 1319.

In an effort to distinguish *Mycogen*, DeKalb points out that, in that case, *all* of the

claimed steps were performed before the patent-in-suit issued, while here *three of four* steps of

the accused process were carried out (by DeKalb) before the patents issued. D.I. 244 at 20. But

this is a distinction without meaning, as all the steps of a patented process must be carried out to

establish infringement. DeKalb can cite no case where process patent infringement was found under section 271(a) or 271(g) where one or more steps of the claimed process were carried out before any patent issued. *See* D.I. 244 at 19-22. DeKalb's own activities in carrying out three of the four steps of the claimed process cannot establish an infringing use of the process by Syngenta "without authority . . . during the term of the patent." 35 U.S.C. § 271(a).

DeKalb cites a Special Master's report in *DeKalb Genetics Corp. v. Ciba-Geigy Corp.*, No. 96 C 50241 (N.D. Ill. filed July 23, 1996), as allegedly showing that it is irrelevant that Syngenta never performed steps (i)-(iii) of the claimed process. D.I. 244 at 21-22. The cited report is irrelevant because DeKalb *did* allege in that case that the defendants had carried out all of the steps of the claimed microprojectile bombardment process. D.I. 245, Ex. 29, at 2-3. Further, the report simply recommended that the district court deny DeKalb's motion for partial summary judgment on the ground that there were triable issues of fact concerning infringement. *Id.* at 11. DeKalb cites no district court order adopting this Special Master's report, which is not binding or persuasive precedent.

Similarly, DeKalb cites an ambiguous remark by the same Special Master in another prior case: "The use of a process involves carrying out the steps of the process. It would not therefore be unreasonable to require that at least one step of a patented process be carried out during the term of the patent in order to find infringement." D.I. 244 at 22. The patent at issue in that case was a *product* patent, not a process patent, so the Special Master's "at least one step" remark is dictum (apart from the fact that it is unsupported by any citation to case law). D.I. 245, Ex. 20 at 9. Moreover, the report was issued before the Federal Circuit's decision in *Mycogen*. Again, DeKalb cites no district court order adopting this Special Master's report, which is not controlling or persuasive precedent.

- 14 -

4.    **DeKalb's Proposed Construction of Claim 4 of the '880 Patent Is Inconsistent with DeKalb's Prior Claim Construction, the Illinois Court's Claim Construction, and the Intrinsic Evidence**

As a final "alternative" position, DeKalb argues that claim 4 of the '880 patent covers a process for "obtaining progeny" irrespective of whether Syngenta performed steps (i)-(iii) of claim 1 of the Lundquist patents:

> Plaintiffs do not deny that claim 4 recites a process of making progeny plants from a fertile transgenic corn plant made by the microprojectile bombardment process of claim 1 and that to infringe claim 4, *someone at some time* must have carried out the three steps of claim 1 to make the original fertile transgenic corn plant.

D.I. 244 at 26 (emphasis added). According to DeKalb, it need only show that "someone" (i.e., DeKalb itself) used the patented process "at some time" (i.e., before the patents issued), which conveniently fits the only factual allegation that DeKalb can make in this case: the legally irrelevant allegation that *DeKalb, not Syngenta, used the claimed "bombardment" process before either Lundquist patent issued.*

As fully addressed in Syngenta's Opening Brief, DeKalb's proposed construction of claim 4 is incorrect:

1.    In the prior Illinois case, DeKalb specifically asserted that claim 4 requires *four* process steps: steps (i)-(iii) plus "the additional step of obtaining progeny." D.I. 209 at 14-15. There is no explanation for DeKalb's new proposed claim construction other than the fact that, under its previously proposed construction, there would be no infringement by Syngenta. The Court should reject DeKalb's litigation-induced proposed claim construction. *See, e.g., Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647 (Fed. Cir. 1994) ("The [district] court correctly rejected Nike's proposed claim construction. Nike cannot, in effect, rewrite its patent claims to suit its needs in this litigation.").

2.      In its Opening Claim Construction Brief, DeKalb urges that, "The Illinois court's claim construction should be adopted in the instant case." D.I. 203 at 3. Curiously, DeKalb fails to explain why there would be infringement if this prior claim construction is adopted. The Illinois court ruled that the '880 patent claims, including claim 4, require *more than one* process step, including "a step calling for bombardment with DNA-coated microprojectiles"—the step DeKalb now wants to read *out* of claim 4. D.I. 209 at 15-16. Thus, there would in fact be no infringement if the prior claim construction is adopted because it is consistent with Syngenta's proposed construction and inconsistent with DeKalb's newly proposed construction.

3.      The form and language of claim 4 show that it is a dependent claim. *See* D.I. 209 at 16-17. The claim follows the form of a dependent claim under the statute—it refers to a previous claim (independent claim 1), and it then recites a further step ("obtaining progeny . . ."). *See* 35 U.S.C. § 112, ¶ 4. In addition, the phrase "said DNA" in claim 4 necessarily refers back to the "DNA" recited in claim 1 or this phrase would lack any antecedent basis. DeKalb fails to address the "said DNA" claim language and *does not even mention* 35 U.S.C. § 112 in its Answering Brief. DeKalb's failure to respond to Syngenta's arguments is telling.

4.      The prosecution history of the '880 patent confirms that both DeKalb and the PTO treated claim 4 as having the same scope as corresponding application claim 30 (as allowed before DeKalb's Rule 312 amendment). *See* D.I. 209 at 17-19. Claim 30 required the practice of steps (i)-(iii) of application claim 23 (patent claim 1) plus the recited step "(iv)" of "obtaining progeny from said fertile transgenic plant of step (iii)." *Id.* at 17. After prosecution was closed, the PTO entered DeKalb's Rule 312 amendment to claim 30 only because the amendment was "directed to matters of form *not affecting the scope of the invention*." *Id.* at 18 (emphasis added). The PTO never examined for patentability a claim of any other scope, and DeKalb never

- 16 -

responded to the PTO's statement of the reason for entry of the amendment. Anyone reading the file history would conclude that DeKalb's silence meant that it agreed with the PTO that DeKalb's Rule 312 amendment did not change the scope of allowed application claim 30. The public, including Syngenta, is entitled to rely on the unambiguous '880 patent file history.

DeKalb does not dispute the *substance* of this prosecution history. Instead, DeKalb argues, without legal authority, that the prosecution history cannot "change the clear language of the claim." D.I. 244 at 27. However, it is DeKalb, not Syngenta, that is arguing that the '880 claims can mean one thing during prosecution (and in a prior litigation) and something entirely different here. Moreover, as explained above and in Syngenta's Opening Brief, the claim language read in light of section 112 (which DeKalb fails to address) fully supports an interpretation of claim 4 as requiring the performance of steps (i)-(iii). *See* D.I. 209 at 16-17. The prosecution history removes any remaining question and makes it absolutely clear that claim 4 has the same scope as application claim 30 (as allowed before amendment). *See id.* at 17-19. DeKalb cannot responsibly maintain that such a claim construction changes the claims, because DeKalb advocated (and established) exactly this *same* construction in the prior Illinois case. For all the reasons set forth in Syngenta's Opening Brief and this Reply, Syngenta cannot infringe claim 4 (or claims 5-9) as a matter of law under this correct claim construction.

Finally, DeKalb has not disputed that, if the Court grants summary judgment of no direct infringement, DeKalb's claims of inducement and contributory infringement also must be dismissed. *See* D.I. 209 at 24-25; D.I. 244 at 7-27.

## III.   CONCLUSION

For the reasons set forth above and in Syngenta's Opening Brief, the Court should grant

summary judgment that Syngenta has not infringed any claim of the Lundquist patents under any

provision of 35 U.S.C. § 271.

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Of counsel:

Michael J. Flibbert
Howard W. Levine
Jennifer A. Johnson
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000                          Attorneys for Defendants

Dated:  February 2, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on February 2, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

### BY FEDERAL EXPRESS

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*