Redacted Version -
Publicly Filed

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-305-SLR (lead case) |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | **CONTAINS RESTRICTED CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER** |
| Defendants. | ) ) ) | |
| DEKALB GENETICS CORPORATION, | ) ) | **FILED UNDER SEAL** |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | |
| Defendants. | ) ) | |

## SYNGENTA'S REPLY BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY

Of counsel:
Michael J. Flibbert
Howard W. Levine
Scott J. Popma
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

Attorneys for Defendants

Dated: February 2, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

I.    REPLY ............................................................................................................................ 1

    A.    The Court Should Exclude Monsanto's Proposed Expert Testimony
          Relating to Alleged Infringement of the Shah Patent Under the Doctrine of
          Equivalents........................................................................................................... 1

    B.    Monsanto Admits That Its Proposed Testimony Concerning Alleged
          Secondary Considerations of the Non-Obviousness of the Shah Patent Is
          No Longer Relevant............................................................................................. 6

    C.    Monsanto's Proposed Expert Testimony Regarding Developmental Corn
          Products Not Accused of Infringement Is Not Relevant to Willful
          Infringement and Should Be Excluded ............................................................ 7

    D.    The Court Should Exclude the Sections of Dr. Gasser's Expert Report
          Relying on Hearsay............................................................................................. 8

II.   CONCLUSION............................................................................................................ 12

DB01:1984059.1                                                                   059155.1008

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579, 592-95 (1993) ...................................................................................... passim

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,*
    347 F. Supp. 2d 129 (D. Del. 2004) ............................................................................. 2, 3

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,*
    No. 01 C 9389, 2005 U.S. Dist LEXIS 15718 (N.D. Ill July 22, 2005) ................................. 8

*Micro Chem., Inc. v. Lextron, Inc.,*
    317 F.3d 1387 (Fed. Cir. 2003) ..................................................................................... 11

*Rhone-Poulenc Agro S.A. v. Monsanto Co.,*
    No. 1:97CV1138, 2000 U.S. Dist. LEXIS 21330 (M.D.N.C. Feb. 8, 2000) ...................... 3, 5

*Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.,*
    No. 92 C 5170, 1994 WL 529331 (N.D. Ill. Sept. 27 1994) .................................................. 9

*SmithKline Beecham Corp. v. Apotex Corp.,*
    No. Civ.A.99-CV-4304, 2005 WL 941671 (E.D. Pa. 2005 Mar. 31, 2005) ........................... 2

*Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer*
    *Maschinenfabrik Aktiengesellshcaft,*
    829 F.2d 1075 (Fed. Cir. 1987) ..................................................................................... 7-8

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.,*
    No. 03 Civ. 8253, 2006 WL 44053 (S.D.N.Y. Jan. 9, 2006) .................................................. 4

## FEDERAL RULES

Fed. R. Evid. 703 ............................................................................................................... 6, 8

DB01:1984059.1                                                                                          059155.1008

Defendants Syngenta Seeds, Inc., Syngenta Biotechnology Inc., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (collectively "Syngenta") respectfully submit this Reply Brief in support of their *Daubert* motion to exclude expert testimony.

I.    **REPLY**

A.    **The Court Should Exclude Monsanto's Proposed Expert Testimony Relating to Alleged Infringement of the Shah Patent Under the Doctrine of Equivalents**

Syngenta established in its opening *Daubert* brief that:

• Monsanto, despite having the burden to prove infringement, waited until the *last day* of fact discovery before raising any contention of infringement of the Shah patent under the doctrine of equivalents ("DOE"), depriving Syngenta of the opportunity to take any fact discovery on this issue.

• Nothing in discovery justified Monsanto's delay, since the chemical structure of the glyphosate-tolerance gene in GA21 corn was known to Monsanto since long before it filed this lawsuit.

• Monsanto's interrogatory response and Keegstra initial expert report were entirely conclusory, citing no record evidence and applying no scientific analysis or methodology.

• Monsanto sought to cure its obviously deficient DOE position by serving a purported "surrebuttal" Keegstra report well after the deadline for rebuttal reports and just two days before Dr. Keegstra's deposition.

Docket Item ("D.I.") 221 at 5-10.

In response, Monsanto does not, and cannot, seriously dispute any of these essential facts. Instead, Monsanto tries to excuse its failure to timely and fully disclose its DOE position by suggesting that its alleged evidence of *literal* infringement somehow doubles as support for its

- 1 -

DB01:1984059.1                                                                          059155.1008

new DOE theory of infringement.   This assertion is incorrect as a matter of law.   Under established law, Monsanto must *separately* prove equivalency on a limitation-by-limitation basis "with particularized testimony and linking argument."   *Honeywell Int'l. Inc. v. Universal Avionics Sys. Corp.*, 347 F. Supp. 2d 129, 134-135 (D. Del. 2004).   Monsanto cannot simply point to its alleged proof of literal infringement or its expert's proposed "technical tutorial" to establish infringement under the DOE.   Monsanto does not dispute that it cannot prove equivalency on a limitation-by-limitation basis as required, and its expert's conclusory proposed testimony parroting the "function, way, and result" language of the DOE cannot possibly meet the minimum standards for admissible expert testimony under *Daubert*.   Monsanto cites no case where a technical expert was permitted to testify on the DOE under such circumstances.

In response to Syngenta's argument that it was severely prejudiced by Monsanto's delay in presenting its DOE infringement contentions, Monsanto argues that any "prejudice based on the timing of, or detail provided in, Plaintiffs' DOE contention" was somehow remedied by the service of Dr. Keegstra's initial expert report "only nine days later."   D.I. 251 at 5.   However, it is hard to understand how this could have remedied the lack of detail provided in Monsanto's supplemental interrogatory response.   As Syngenta explained at pages 6-8 of its opening brief, Dr. Keegstra's initial expert report cited no evidence in support of Monsanto's DOE contentions and itself was wholly conclusory.   D.I. 221 at 6-8.   *See SmithKline Beecham Corp. v. Apotex Corp.*, No. Civ.A.99-CV-4304, 2005 WL 941671 at *34 (E.D. Pa. 2005 Mar. 31, 2005) (court found that the unsupported DOE contentions of plaintiff's experts were insufficient to raise a genuine issue of material fact and granted summary judgment of noninfringement).

Monsanto next attempts to piece together sections from the "tutorial" and literal infringement sections of Dr. Keegstra's expert report to argue that the DOE section is not wholly

- 2 -

conclusory and contained sufficient factual detail to support its DOE contention. D.I. 251 at 6-9.

Yet, even this strained attempt to reverse engineer support for Dr. Keegstra's DOE contention

fails to provide a sufficient basis for Dr. Keegstra's opinions that the OTP in Syngenta's GA21

corn product allegedly "still contains" a CTP that "performs the function of a transit peptide by

causing importation of the protein into the chloroplast of a plant cell" in "the same way using the

same cellular machinery of peptide transport" and "would achieve the same result of localizing

the EPSPS protein inside the chloroplast." *Id.* at 8. Nor does Monsanto explain how this

cobbled-together DOE theory differs from Dr. Keegstra's literal infringement theory. Monsanto

cannot show that Dr. Keegstra proved equivalency on a limitation-by-limitation basis "with

particularized testimony and linking argument." *Honeywell Int'l*, 347 F. Supp. 2d at 134-135.

For example, in Keegstra's opening report, he does not provide any data or scientific analysis

showing that the OTP is no more effective than a naturally occurring CTP in transporting an

EPSPS protein into the chloroplast. Such evidence was first raised by Dr. Keegstra in his

surrebuttal report, even though Monsanto was clearly aware that RPA obtained a patent on the

OTP based in part on its superior properties as compared to a naturally occurring CTP. D.I. 222,

Ex. 3 at 3-7; Ex. 3; *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, No. 1:97CV1138, 2000 U.S.

Dist. LEXIS 21330, at *97 (M.D.N.C. Feb. 8, 2000). In meeting Monsanto's burden of showing

that the OTP functions "in the same way" as a naturally occurring CTP, Dr. Keegstra was

required to present such evidence in his opening report—not a surrebuttal report filed two days

before his deposition. Therefore, this proposed testimony should be excluded. Moreover, the

necessity of submitting a detailed factual surrebuttal report is also evidence that Monsanto itself

realized that Dr. Keegstra's initial report was deficient.

- 3 -

Monsanto next argues that Syngenta had the opportunity to depose Dr. Keegstra regarding the DOE opinion expressed in his report, and his opinion should therefore not be excluded. D.I. 251 at 9. However, as fully explained in Syngenta's opening brief, Dr. Keegstra's first detailed factual DOE contentions were served on Syngenta's counsel just two days before Dr. Keegstra's deposition. Furthermore, this surrebuttal report contained multiple exhibits that had not been previously produced, including a number of documents in French. D.I. 221 at 8-10. This was hardly a fair opportunity to depose Dr. Keegstra. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, No. 03 Civ. 8253, 2006 WL 44053, at *2 (S.D.N.Y. Jan. 9, 2006) ("without a timely produced expert report, served sufficiently in advance of a deposition so that the adversary can effectively use the services of its own expert to prepare for a deposition, the adversary does not have an adequate opportunity, at the deposition, to test the expert's opinions and qualifications to assert those opinions").

In response to Syngenta's argument that Dr. Keegstra's surrebuttal report was untimely served on the eve of his deposition, Monsanto argues that the surrebuttal report was timely because it was submitted "solely to contradict or rebut evidence" presented in Dr. Bruce's responsive expert report. D.I. 251 at 9-11. The surrebuttal report, however, not only responds to Dr. Bruce's cited evidence but also cites new alleged support for the position expressed in Dr. Keegstra's initial expert report. D.I. 222, Ex. 3 at 2-3. Moreover, Monsanto does not dispute that it carries the burden of proving infringement under the DOE. Instead of meeting this burden in its initial report, Monsanto waited for an unscheduled surreply to make its first substantive DOE argument. It would be inherently prejudicial to Syngenta to permit Monsanto to submit its first substantive argument on the eve of Dr. Keegstra's deposition, long after both the close of discovery and the deadline for submission of expert reports.

-4-

Monsanto next argues that Dr. Keegstra could not have addressed these issues in an earlier report because "[t]here was no mention of the North Carolina decision, the LeBrun declaration, or a comparison of the gene construct in GA21 to the RPA 294 construct prior to Dr. Bruce's rebuttal report." *Id.* at 10-11.   However, Monsanto was actually a party in "the North Carolina decision," *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, No. 1:97CV1138, 2000 U.S. Dist. LEXIS 21330 (M.D.N.C. Feb. 8, 2000), and thus was in a much better position than Syngenta to be familiar with the issues surrounding the importance of the OTP as discussed in both Dr. Lebrun's declaration and the court's decision.   Secondly, Monsanto does not dispute that it first raised its DOE contention on the last day of discovery and that it did not agree to produce the requested documents from the North Carolina actions.   Given these facts, Monsanto cannot reasonably argue that its late response was proper on the grounds that Syngenta did not formulate and present a detailed DOE defense prior to Dr. Bruce's rebuttal report.

Monsanto also does not dispute that the documents from the North Carolina litigation cited in Dr. Keegstra's surrebutal report were not previously produced in this litigation despite repeated requests from Syngenta.   Instead, Monsanto argues that the documents suddenly became relevant only after Dr. Bruce presented his DOE analysis.   Syngenta has long contended that the documents from the North Carolina litigations were relevant.   D.I. 221 at 9.   Yet, Monsanto improperly chose not to produce them until it needed to rely on them.   These document were produced far too late, completely depriving Syngenta and its experts of an opportunity to analyze or review them.   Further, because only *selected* documents from this litigation have been produced, Syngenta does not have access to the remaining documents from this case that the jury and district court presumably relied on in finding against Monsanto and

DeKalb on all issues.  Monsanto should not be permitted to rely on these select, late-produced documents.[1]

**B.    Monsanto Admits That Its Proposed Testimony Concerning Alleged Secondary Considerations of the Non-Obviousness of the Shah Patent Is No Longer Relevant**

Monsanto admits that it will have no need to offer the expert testimony set out in §§ II G-1 of Dr. Keegstra's rebuttal report and § 7.2 of Dr. Cahoon's rebuttal report if Syngenta has withdrawn it obviousness defense to the '835 patent.  D.I. 251 at 11-12.  Syngenta again confirms that it has withdrawn it obviousness defense to the '835 patent.  Indeed, Syngenta clearly notified Monsanto that "[i]n an effort to narrow the issues for trial, Syngenta will not pursue its obviousness defense with respect to the Shah patent."  D.I. 223, Ex. 10.  Syngenta's counsel again confirmed this in a January 9, 2006 telephone conversation with Monsanto's counsel.[2]  Therefore, these sections are no longer relevant and should be stricken.

--------------------------------

[1]Monsanto also argues that Syngenta raised an improper basis for excluding the proposed testimony in Dr. Keegstra's initial expert report when it argued that Monsanto did not provide a DOE contention until the last day of fact discovery.  Monsanto argues that this "is more properly the subject for a motion in limine."  D.I. 251 at 1, 4.  Syngenta disagrees.  Syngenta's challenges to Monsanto's expert testimony are entirely appropriate under Daubert, as illustrated by the authorities cited in Syngenta's opening brief.  Further, in assessing a proffer of expert testimony under Rule 702, the Court should be mindful of other applicable rules. *Daubert,* 509 U.S. at 595; D.I. 221 at 5.

[2]  Monsanto argues that Syngenta did not properly meet and confer on this issue.  This is simply not true.  On January 9, 2006, Syngenta's counsel sent a letter notifying Monsanto that Syngenta will not pursue its obviousness defense with respect to the '835 patent, and requested that Monsanto withdraw certain corresponding sections from its expert reports.  D.I. 223 Ex. 10.  Later that same day, in a separate meet-and-confer telephone call Syngenta's counsel again confirmed that Syngenta was not pursuing its obviousness defense with respect to the '835 patent.  It is hard to understand how after this conversation Monsanto could be "left wondering whether Syngenta was reconsidering its withdrawal of the obviousness defense to the '835 patent."  D.I. 251 at 12.  Any argument that Syngenta failed to properly meet and confer relating to  the '880 and '863 patents is simply not relevant, because Syngenta has not moved to exclude proposed testimony regarding secondary considerations of nonobviousness for the '880 and '863 patent.  Indeed, Syngenta continues to assert that these patents are obvious.

C.    **Monsanto's Proposed Expert Testimony Regarding Developmental Corn Products Not Accused of Infringement Is Not Relevant to Willful Infringement and Should Be Excluded**

Monsanto argues that Syngenta's "Ffybes" research program is "highly relevant" to willful infringement, citing a passage from *Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellshcaft*, 829 F.2d 1075 (Fed. Cir. 1987) for the proposition that when determining willful infringement the court considers the failure of a design around attempt. *Id.* at 14-15.

First, *Spindelfabrik* is distinguishable on factual grounds because the Ffybes program was not a failure of a design around attempt, but rather was terminated for business reasons, including                                    Ex. 1 at p. 87:14 - p. 89:9; p. 76:20- p. 77:4.[3]  Second, when the cited passage from *Spindelfabrik* is reviewed in context it shows that the court was actually considering *defendant's* argument that, *inter alia,* its "bona fide attempts to design around the patent" should be considered as support for reversing the district court's finding of willful infringement:

> We have noted a good faith effort to "design around" as indicating support for a non-willful finding.  We have also indicated value in encouraging such efforts.  The district court did not, however, find that Schubert had exerted good faith efforts to design around the '946 patent.  Rather, it was found that Schubert, unable to design its own automatic piecing device, knowingly proceeded to employ technology protected under the '946 patent.

*Spindelfabrik,* 829 F.2d at 1084 (citation omitted).  Here, Syngenta will *not* be relying on any Ffybes documents to establish good faith.  Thus, Monsanto has failed to establish how Syngenta's development of admittedly *non-infringing* corn products could be probative of

---

[3] Monsanto ignores these facts when it mischaracterizes the reasons for the termination of the Ffybes program as being related to "various technical, regulatory, and time-to-market reasons." D.I. 251 at 14.

**Redacted**

Monsanto's allegation of willful infringement with respect to the accused GA21 corn products.[4]

Third, *Spindelfabrik* involved a bench trial and thus did not implicate the issues of potential jury

confusion and prejudice raised here.

Monsanto also argues that Dr. Fromm's and Dr. Keegstra's proposed testimony on the

Ffybes program is needed to interpret certain documents relevant to damages. D.I. 251 at 15-16.

However, the cited documents can be interpreted without testimony by Dr. Fromm or Dr.

Keegstra. Indeed, Monsanto's damages experts, Mr. Cahoon and Mr. Spadea, did not rely on

Drs. Fromm or Keegstra when interpreting these documents. Moreover, Syngenta has not

objected to testimony regarding these documents from Mr. Cahoon or Mr. Spadea.

### D.    The Court Should Exclude the Sections of Dr. Gasser's Expert Report Relying on Hearsay

Monsanto completely ignores Syngenta's argument that Dr. Gasser should not be

permitted to become a "mouthpiece" for the opinions of Drs. Kishore and Delannay.   Rule 703

is "not intended to abolish the hearsay rule and to allow a witness, under the guise of giving

expert testimony, to in effect become the mouthpiece of the witness on whose statements or

opinion the expert purports to base his opinion." D.I. 221 at 15-16, citing *Loeffel Steel Prods.,*

*Inc. v. Delta Brands, Inc.*, No. 01 C 9389, 2005 U.S. Dist. LEXIS 15718, at *33-34 (N.D. Ill.

July 22, 2005).

Instead, Monsanto argues that Syngenta's arguments "ultimately go to the weight that

should be given Dr. Gasser's testimony" and could be "properly addressed by cross-examination

---

[4] Monsanto also suggests in a footnote that "Syngenta's injection of its good faith into this case may very well waive . . . privilege." D.I. 251 at 13-14. However, Syngenta has not interjected "its good faith into this case" but rather was simply arguing that the FFYBES program "will have nothing to do" with the willfulness inquiry. D.I. 221 at 12.

059155.1008

of Dr. Gasser." D.I. 251 at 16-17. However, when Dr. Gasser was questioned about these conversations during his deposition, it was clear that he did not even attempt to explore the reasons why Dr. Delannay supposedly now believes his contemporaneous evaluation of the experiment in question might not have been accurate, or when he came to that belief.[5] D.I. 221 at 14; D.I. 223, Ex. 13 at 209, 211-212; 218. Similarly, Dr. Gasser's "at most, I think five minute[]" conversation with Dr. Kishore lacked foundation and directly contradicted Dr. Kishore's own sworn testimony in this case. D.I. 221 at 14-15. Thus, cross-examination of Dr. Gasser at trial would not "properly address" Syngenta's concerns. Instead, this is exactly the type of situation where the Court should exercise its gatekeeper function and strike the sections of Dr. Gasser's report relying on the unreliable hearsay testimony of Drs. Delannay and Kishore. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-95 (1993).

Monsanto cites *Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.*, No. 92 C 5170, 1994 WL 529331 (N.D. Ill. Sept. 27, 1994) and argues that Dr. Gasser's conversations with Dr. Delannay and Dr. Kishore are the type of statements that are reasonably relied upon pursuant to Fed. R. Evid. 703. D.I. 251 at 18, 20. However, *Sam's Wines & Liquors* is distinguishable. There, an expert in a trademark dispute was proposing to testify regarding the general public's perception of whether the plaintiff's name had acquired secondary meaning. The court found that his testimony regarding the public's perception was "a type reasonably relied upon . . . when forming opinions or inferences upon the subject." *Sam's Wines & Liquors* 1994 WL 529331 at *11. In short, testimony of an expert qualified to testify on a survey of the public about the public's perception is distinctly different from an expert eliciting a new version of facts already

---

[5] Monsanto does not dispute that Dr. Gasser did not ask Dr. Delannay the most basic questions about Dr. Delannay's alleged current beliefs regarding the experiments.

testified to. The latter is not the expert's field of expertise. Furthermore, here, Syngenta is attempting to prevent the introduction of the hearsay statements of Dr. Kishore and Dr. Delannay. If Monsanto wants to rely on the testimony of Dr. Kishore and Dr. Delannay, it should call these witnesses to testify at trial—not use Dr. Gasser as their stand-in. Monsanto does not dispute that it has control over Dr. Kishore and Dr. Delannay and could bring them to trial.

Monsanto next argues that "Dr. Gasser discussed the experiment with Dr. Delannay to confirm his conclusions stated in ¶ 42 of his report" and that the statements in ¶ 43 provide "clarification of the circumstances at the time the experiment was done." D.I. 251 at 18.

Syngenta has not moved to preclude the conclusions reached in ¶ *42* of Dr. Gasser's report. Rather, Syngenta is objecting to the introduction of the uncorroborated hearsay testimony of Dr. Delannay in ¶ *43*. Paragraph 42 is based upon Dr. Gasser's interpretation of Dr. Delannay's notebook, whereas paragraph 43 simply paraphrases a discussion Dr. Gasser had with Dr. Delannay. If Monsanto would like to introduce this proposed testimony it should call Dr. Delannay as a trial witness, where he can be properly cross-examined.

Monsanto also argues that Syngenta chose not to depose Dr. Delannay and "thus has not been deprived of discovery on this issue." D.I. 251 at 19. However, the deposition was scheduled to take place *before* the conversation between Dr. Gasser and Dr. Delannay occurred. Furthermore, Syngenta was in the possession of Dr. Delannay's notebook that unquestionably supports Syngenta's position. Dr. Delannay's testimony only became relevant after he disparaged his own results during an *ex parte* conversation with Dr. Gasser after the close of discovery. Therefore, even if the deposition took place, Syngenta would still not have been able to obtain discovery on this issue. Indeed, Syngenta did take the deposition of Dr. Kishore, but

- 10 -

Dr. Gasser nevertheless subsequently contacted Dr. Kishore and reported that Dr. Kishore made statements that conflict with his sworn testimony.

Monsanto further argues that because "contemporaneous notes" of Dr. Gasser's conversations with Dr. Kishore and Dr. Delannay have been provided, Syngenta has not been deprived of discovery. *Id.* at 19 and 22. However, a cursory review of this page of sparse notes reveals that it does nothing to cure the deficiencies outlined above and in Syngenta's opening brief. *See* Ex. 2. (For example, the notes do not establish when Dr. Delannay supposedly came to the belief that his contemporaneous evaluation of the experiment might not have been accurate.)

Monsanto then cites *Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1392 (Fed. Cir. 2003) for the proposition that "[w]hen as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." D.I. 251 at 19-20. However, this is not the situation here. Syngenta is not asking the Court to resolve conflicting facts, but rather is asserting that the proposed testimony is not based on "reliable principles and methods." As explained in Syngenta's opening brief, Dr. Gasser did not ask Dr. Delannay even the most basic questions about Dr. Delannay's alleged current beliefs. D.I. 221 at 16. With respect to the proposed testimony regarding Dr. Gasser's conversation with Dr. Kishore, Syngenta is not asking for the Court to evaluate the facts underlying Dr. Gasser's proposed testimony, but rather to prevent Dr. Gasser from acting as a mouthpiece to introduce uncorroborated testimony that Dr. Kishore "concurred" with Dr. Gasser's assessment. Indeed, Monsanto has not even attempted to introduce underlying facts that support this statement.

- 11 -

Monsanto next argues that Dr. Gasser is not attempting to contradict the deposition testimony of Dr. Kishore and that his conversation with Dr. Kishore is the type of statement that is reasonably relied upon pursuant to Fed. R. Evid. 703. D.I. 251 at 20. However, as discussed above, Dr. Gasser is not using Dr. Kishore's statement as a basis for his opinion. Rather, Dr. Gasser is stating the Dr. Kishore *agrees* with the opinion that Dr. Gasser *has already formed*. This is simply an improper attempt to introduce uncorroborated hearsay testimony from Dr. Kishore. As discussed above, if Monsanto wants to introduce this conclusory opinion of Dr. Kishore, it should call Dr. Kishore as a trial witness where he can be properly cross-examined and his alleged concurrence compared to his prior testimony.

## II.    CONCLUSION

For all of the above reasons, the Court should grant Syngenta's *Daubert* Motion to Exclude Expert Testimony.

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Of counsel:

Michael J. Flibbert
Howard W. Levine
Scott J. Popma
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000                 Attorneys for Defendants

Dated: February 2, 2006

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on February 2, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

### BY FEDERAL EXPRESS

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

DB01:1611981.1