# EXHIBIT 49



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| | 07/07/88 | SHAH | |

DENNIS R. HOERNER, JR.
MONSANTO CO.
800 N. LINDBERGH BLVD.
ST. LOUIS, MO  63167

| EXAMINER |
|---|
| FU, T.D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 187 | 12 |

DATE MAILED: 05/26/88

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined   ☑ Responsive to communication filed on 1/15/88   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I** THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:
1. ☐ Notice of References Cited by Examiner, PTO-892.   2. ☐ Notice re Patent Drawing, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449   4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II** SUMMARY OF ACTION

1. ☑ Claims 33-91 are pending in the application.
   Of the above, claims _____ are withdrawn from consideration.
2. ☑ Claims 1-32 have been cancelled.
3. ☐ Claims _____ are allowed.
4. ☑ Claims 33-91 are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ Claims _____ are subject to restriction or election requirement.
7. ☑ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.
8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).
10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed _____ has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.
12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

0005336

PTOL-326 (Rev. 7-82)   EXAMINER'S ACTION

Serial No.  879814                    -2-

Art Unit    184

    The Group and/or Art Unit location of your
application in the PTO has changed.  To aid in corre-
lating any papers for this application, all further
correspondence regarding this application should be
directed to Group Art Unit 184.

    The application should be reviewed for errors.
Errors appear, for example, in claim 90, line 1 where
"resistnat" should be changed to --resistant--.

    Receipt of form PTO-1449 and copies of the
corresponding references is acknowledged.

    The text of those sections of Title 35 U. S. Code
not included in this action can be found in a prior
Office action.

    Claims 33-91 are provisionally rejected under the
judicially created doctrine of obviousness-type double
patenting as being unpatentable over claims 8-39 and
44-49 of copending application serial no. 054,337.
Although the conflicting claims are not identical, they
are not patentably distinct from each other because both
sets of claims are drawn to plants containing a vector
containing an EPSPS gene encoding glyphosate
resistance.

    This is a provisional obviousness-type double
patenting rejection because the conflicting claims have
not in fact been patented.

    The obviousness-type double patenting rejection is a
judicially established doctrine based upon public policy
and is primarily intended to prevent prolongation of the
patent term by prohibiting claims in a second patent not
patentably distinct from claims in a first patent.  In

0005337

Serial No. 879814                    -3-

Art Unit    184


re Vogel, 164 USPQ 619 (CCPA 1970). A timely filed ter-
minal disclaimer in compliance with 37 CFR 1.321(b)
would overcome an actual or provisional rejection on
this ground provided the conflicting application or
patent is shown to be commonly owned with this applica-
tion. See 37 CFR 1.78(d).

Claim 67 is rejected under 35 U.S.C. 112, second

paragraph, as being indefinite for failing to par-

ticularly point out and distinctly claim the subject

matter which applicant regards as the invention. Claim

67 is confusing in its recitation of

"glyphosate-resistant plant cell" which lacks antecedent

basis. Based upon the comments found on page 12,

paragraph 3 of the amendment filed 25 January 1988, it

appears that —glyphosate-resistant plant— was

intended.

The following is a quotation of the first paragraph

of 35 U.S.C. 112:

> The specification shall contain a
> written description of the inven-
> tion, and of the manner and process
> of making and using it, in such
> full, clear, concise, and exact
> terms as to enable any person
> skilled in the art to which it per-
> tains, or with which it is most
> nearly connected, to make and use
> the same and shall set forth the
> best mode contemplated by the inven-
> tor of carrying out his invention.

The specification is objected to under 35 U.S.C.

112, first paragraph, as failing to provide an enabling

disclosure. The deposit rejection of the last Office

action is repeated. Applicants' statement in the amend-

0005338

Serial No. 879814                    -4-

Art Unit    184

ment filed 25 January 1988 regarding the terms of the

deposit is acknowledged. However, replacement of the

deposit in the event of inviability remains unclear.  In

order to certify that the deposit meets all of the cri-

teria set forth in MPEP 608.01(p)C,  Applicants may pro-

vide assurance of compliance by an affidavit or

declaration, or by a statement by an attorney of record

over his or her signature and registration number,

showing that the deposit will be replaced if it should

ever become inviable.

    Claims 33-91 are rejected under 35 U.S.C. 112,

first paragraph, for the reasons set forth in the above

objection to the specification.

    Claims 34, 42, 49, 55, 62, 69 and 76 are rejected

under 35 U.S.C. 112, first paragraph, as the disclosure

is enabling only for claims limited to CaMV promoters as

per pages 12-64 of the specification, as stated for

claim 6 in the last office action.  See MPEP 706.03(n)

and 706.03(z).

    The examiner agrees with Applicants' assertion that

claims broadly drawn to promoters functioning in plants

are enabled, since many promoters functional in plants

are known.  However, the examiner maintains that claims

specifically drawn to plant virus promoters should be

limited to the exemplified CaMV promoters, since undue

experimentation would be required to isolate; sequence,

Serial No. 879814                    -5-

Art Unit    184


and determine the functionality of promoters from other

plant viruses.

     Claims 61-81 are rejected under 35 U.S.C. 112,

first paragraph, as the disclosure is enabling only for

claims limited to a method for producing dicot plants

comprising regeneration from transformed protoplasts and

regenerated dicots therein, as per pages 12-64 of the

specification.  See MPEP 706.03(n) and 706.03(z).  Since

plant transformation requires cell wall removal for DNA

uptake, and since plant regeneration from transformed

protoplasts is limited to the dicots (see Goodman et

al., pages 52-53) undue experimentation would be

required by one of ordinary skill in the art to obtain

plant cell transformation through the cell wall or mono-

cot regeneration as claimed.

     This application currently names joint inventors.
In considering patentability of the claims under 35
U.S.C. 103, the examiner presumes that the subject
matter of the various claims was commonly owned at the
time any inventions covered therein were made absent any
evidence to the contrary.  Applicant is advised of the
obligation under 37 CFR 1.56 to point out the inventor
and invention dates of each claim that was not commonly
owned at the time a later invention was made in order
for the examiner to consider the applicability of poten-
tial 35 U.S.C. 102(f) or (g) prior art under 35 U.S.C.
103.

     Claims 33-35, 37, 38, 40, 42, 43, 45-47, 49, 50,

52-56, 58, 59, 61-63, 65, 66, 68-70, 72, 73, 75-77, 79,

80 and 82-90 are rejected under 35 U.S.C. 103 as being

unpatentable over Comai taken with Van den Broeck et al,

Koziel et al., Mousdale et al., and Netzer.  Comai

Serial No. 879814                    -6-

Art Unit    184


teaches a DNA sequences coding for a mutant, bacterial, glyphosate resistant 5-enolpyruvyl-3-phosphoshikimate synthetase (EPSPS). In page 8 of the specification, it is stated that the DNA sequence may be introduced into plant cells to confer glyphosate resistance. Additionally, Comai states that it may be necessary to introduce appropriate regulatory signals for expression where the structural gene has been obtained from a source having regulatory signals which are not recognized by the plant host. Comai does not teach the use of a chloroplast transit peptide construct in a disarmed Agrobacterium vector to obtain regeneration of glyphosate-resistant plants. Van den Broeck teaches the construction of a chimaeric gene which encodes a fusion protein consisting of the transit peptide of the precursor to the small subunit of ribulose 1,5-bisphosphate carboxylase from pea linked to the amino terminus of bacterial neomycin phosphotransferase II (see pages 359-360). After introduction into tobacco cells by Agrobacterium mediated cell transformation, the fusion protein was translocated into chloroplasts and subsequently cleaved removing the transit peptide from the neomycin phosphotransferase II peptide. Koziel et al. teaches the use of a disarmed plasmid and 19 S CaMV promoter to transfer foreign genes into plant cells wherein the transformed plants are capable of rege-

0005341

Serial No. 879814                    -7-

Art Unit    184


nerating into normal, fertile plants exhibiting
expression of the foreign gene (see, e.g., page 560,
column 2). Mousdale et al. teaches the predominance of
plant EPSPS in the chloroplast, and teaches that genes
encoding other enzymes involved in the shikimate pathway
are translated in the nucleus and transported to the
chloroplast (see, e.g., page 241, column 2; page 243,
paragraphs bridging columns 1 and 2; page 247, column
1). Netzer teaches plant transformation to introduce a
bacterial mutant gene conferring herbicide resistance,
the use of chloroplast transit sequences to confer her-
bicide resistance to transformed plants containing a
chloroplast gene inserted into the nuclear genome, and
suggests the use of chloroplast transit peptides to
confer glyphosate tolerance to plants transformed with a
mutant bacterial gene (see, e.g., page 941, column 2,
third full paragraph; paragraph bridging pages 941 and
942; page 942, fourth and fifth full paragraph;
paragraph bridging 943 and 944). It would have been
obvious to one of ordinary skill in the art to transform
plants with the glyphosate-resistant EPSPS gene taught
by Comai utilizing the Agrobacterium construct and
chloroplast transit peptide taught by Van den Broeck et
al and disarmed Ti plasmid and CaMV promoter taught by
Koziel et al to obtain glyphosate-resistant plants, as
suggested by Comai, Mousdale et al., and Netzer since

0005342

Serial No. 879814                    -8-

Art Unit  184

each would continue to function in its known and
expected manner.  Choice of regenerable, transformed
dicot plant would be the optimization of process parame-
ters.  Thus, the claimed invention was clearly prima
facie obvious as a whole to one of ordinary skill in the
art at the time it was made, especially in the absence
of evidence to the contrary.

Claims 36, 44, 51, 57, 64, 71 and 78 are rejected
under 35 U.S.C. 103 as being unpatentable over Comai
taken with Van den Broeck et al., Koziel et al.,
Mousdale et al., and Netzer as applied to claims 33-35,
37, 38, 40, 42, 43, 45-47, 49, 50, 52-56, 58, 59, 61-63,
65, 66, 68-70, 72, 73, 75-77, 70, 80 and 82-90 are
above, and further in view of Guilley et al.  Comai
taken with Van den Broeck et al., Koziel et al.,
Mousdale et al. and Netzer teach the obtention of
glyphosate-resistant plants containing a chimeric gene
comprising the RUBISCO promoter and transit peptide, an
EPSPS gene, and a 3' non-translated region as discussed
supra, but does not teach the utilization of the 35 S
CaMV promoter.  Guilley et al teaches the mapping of the
35 S, 8 S and 19 S transcripts of CaMV RNA's including
their promoter regions and teaches that the presence of
the 35 S transcripts in high amounts indicates a strong
promoter (see, e.g., pages 769-770, including Figures 7
and 8).  It would have been obvious to one of ordinary
skill in the art to incorporate the 35 S CaMV promoter

0005343

Serial No. 879814                          -9-

Art Unit   184

taught by Guilley et al. into the method of obtaining
glyphosate-resistant plants taught by Comai taken with
Van den Broeck et al., Koziel et al., Mousdale et al and
Netzer, as suggested by Guilley et al., since each would
continue to function in its known and expected manner.
Thus, the claimed invention was clearly prima facie
obvious as a whole to one of ordinary skill in the art
at the time it was made, especially in the absence of
evidence to the contrary.

    Claims 39, 41, 48, 60, 67, 74, 81 and 91 are
rejected under 35 U.S.C. 103 as being unpatentable over
Comai taken with Van den Broeck et al., Koziel et al.,
Mousdale et al., Netzer, and Guilley et al as applied to
claims 33-38, 40, 42-47, 49-59, 61-66, 68-73, 75-80 and
82-90 above, and further in view of Amrhein et al. taken
with Mazur et al. Comai taken with Van den Broeck et
al., Koziel et al., Mousdale et al., Netzer and Guilley
et al teaches the obtention of glyphosate-resistant
plants containing a chimeric gene comprising the 35 S
CaMV promoter, RUBISCO transit peptide, and EPSPS gene
as discussed supra, but does not teach transformation
with plant EPSPS transit peptide or coding sequence to
obtain glyphosate-resistant plants. Amrhein et al
teaches that the overproduction of glyphosate-sensitive
EPSPS in cultured plant cells confers glyphosate
resistance (see, e.g. page 195, paragraph bridging
columns 1 and 2). Mazur et al teaches the cloning of

Serial No. 879814                    -10-

Art Unit    184

herbicide-resistant plant ALS genes using a yeast her-
bicide-resistant ALS gene probe.  It would have been
obvious to one of ordinary skill in the art to utilize
the method of transferring glyphosate tolerance taught
by Comai taken with Van den Broeck et al., Koziel et
al., Mousdale et al., Netzer, and Guilley et al.; to
determine the coding region (and indirectly determine
the transit peptide region) of the plant EPSPS gene
taught by Mousdale et al and Amrhein et al by probing
with the bacterial EPSPS gene taught by Comai, as
suggested by Mazur et al.; and to incorporate the plant
EPSPS transit peptide and coding region as suggested by
Amrhein et al., since each would continue to function in
its known and expected manner.  Thus, the claimed inven-
tion was clearly _prima facie_ obvious as a whole to one
of ordinary skill in the art at the time it was made,
especially in the absence of evidence to the contrary.

    No claim is allowed.

    Any inquiry concerning this communication should be
directed to David Fox at telephone number 703-557-9393.

DJF
FOX:pc

5/10/88:retype 5/12/88

CHARLES F. WARREN
SUPERVISORY PATENT EXAMINER
GROUP ART UNIT 124
187

0005345