# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SYNGENTA SEEDS, INC.,<br>SYNGENTA BIOTECHNOLOGY, INC.,<br><br>Defendants.<br><br>DEKALB GENETICS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SYNGENTA SEEDS, INC.,<br>SYNGENTA BIOTECHNOLOGY, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 04-305-SLR
(lead case)

**CONTAINS RESTRICTED CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER - FILED UNDER SEAL**

## SYNGENTA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE SHAH PATENT

Of counsel:
Michael J. Flibbert
Howard W. Levine
Sanya Sukduang
Jared S. Cohen
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
 Washington, D.C. 20001
(202) 408-4000

Attorneys for Defendants

Dated: February 2, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT...................................................................................................3

    A.    The CTP Must Be Naturally Occurring, Target the Passenger Protein to
        the Chloroplast, and Subsequently Be Removed From the Mature Protein ............3

        1.    Monsanto's Disagreement With the Missouri Court's "Naturally
             Occurring" Construction Ignores the Specification and the
             Understanding Held by Skilled Artisans.....................................................3

        2.    Cleavage Is a Defining Feature of a CTP as of the '835 Patent's
             Filing Date ............................................................................................6

        3.    The Missouri Court's Construction of "CTP/EPSPS Fusion
             Polypeptide" Has No Bearing on the Construction of CTP......................10

    B.    Syngenta's GA21 Corn Product Does Not Infringe as It Does Not Contain
        a CTP Within the Meaning of Claim 1 of the '835 Patent....................................11

        1.    The OTP Should Be Considered as a Whole ...............................................11

        2.    Dr. Keegstra's Newly Submitted Expert Report Should Be
             Excluded ...............................................................................................15

        3.    Monsanto Failed to Plead Infringement Under the Doctrine of
             Equivalents...........................................................................................16

III.  CONCLUSION...............................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Genentech, Inc. v. Chiron Corp.,*
    112 F.3d 495 (Fed. Cir. 1997)......................................................................10, 11, 12

*Hackman v. Valley Fair,*
    932 F.2d 239 (3d Cir. 1991)........................................................................14, 15, 16

*Novartis Corp. v. Ben Venue Labs., Inc.,*
    271 F.3d 1043 (Fed. Cir. 2001).............................................................................3

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005).............................................................................4

*Praxair, Inc. v. ATMI, Inc.,*
    2003 U.S. Dist. LEXIS 26794 (D. Del. Nov. 8, 2003) .............................................15

*Sinskey v. Pharmacia Opthalmics, Inc.,*
    982 F.2d 494 (Fed. Cir. 1992).............................................................................14, 16

*TechSearch L.L.C. v. Intel Corp.,*
    286 F.3d 1360 (Fed. Cir. 2002).............................................................................5, 6

## INDEX OF EXHIBITS

| Appendix Pages | Description |
| --- | --- |
| C1-4 | Excerpts from transcript of *Markman* Hearing before the Honorable Catherine D. Perry on July 1 and 2, 2003, *Monsanto Co. v. Bayer CropScience LP*, Case No. 4:01CV01825 CDP (E.D. Mo. Filed November 20, 2001) |
| C5-9 | Transcript excerpts from December 16, 2005 deposition of Barry D. Bruce |
| C10-12 | Monsanto's Statement Regarding the Const. of the Asserted Claims of the '835 patent, filed in 01-CV-01825 (E.D. Mo. Filed November 20, 2001) |
| C13-15 | Monsanto's Response to Bayer's Opening Brief Regarding the Construction of the Asserted Claims of the '835 Patent filed in 01-CV-1825 (E.D. Mo. Filed November 20, 2001) |
| C16-18 | Transcript excerpts from March 25, 2003 deposition of Kenneth Keegstra |
| C19-20 | Excerpts from Expert Witness Report of Dr. Kenneth Keegstra, filed October 27, 2005 |

## I.    INTRODUCTION

As discussed in Defendants' (collectively "Syngenta") opening brief, claim 1 of the '835 patent (and its dependent claims 5-6) recite a "chloroplast transit peptide" or "CTP" as an element of the claim. The proper claim construction of this element requires that the CTP must (1) be naturally occurring, (2) target the EPSPS protein to the chloroplast, and (3) be cleaved (or removed) to leave the mature protein. The parties agree that element (2) is a necessary characteristic of the CTP. Thus, the dispute between the parties centers on criteria (1) and (3).

Concerning criterion (1), Plaintiffs (collectively "Monsanto") have already litigated this precise issue before the U.S. District Court of the Eastern District of Missouri and *lost*. The Missouri court held that "the term 'chloroplast transit peptide' means a ***naturally occurring*** series of amino acids that causes the transport of a polypeptide into a chloroplast." D.I. 212, 7/2/2003 Claim Construction Order (emphasis added) (A161). While the Missouri court's claim construction is not binding, it is entitled to weight where, as here, it is supported by the plain language of the claim as that term is understood by those skilled in the art and the specification of the '835 patent. Furthermore, there is no question here that Syngenta's OTP is synthetically made and does not naturally occur. On this basis alone, the Court should award summary judgment in Syngenta's favor.

Monsanto, however, continues to argue that instead of looking at the OTP as a whole, the Court should break it up into its component pieces and examine the particular origin of the DNA before the pieces were joined to form a sequence that encodes the OTP. Monsanto's exercise, however, defies the plain fact that the OTP in the accused GA21 product does not consist only of one or another of its component pieces, but rather the whole gene sequence constituting the OTP. Additionally, Monsanto's argument runs afoul of criterion (3), that the CTP is removed to leave a mature protein. Again, this claim construction is supported by the claim language as

understood by those of ordinary skill, and the specification of the '835 patent: "The CTP leader sequence causes the polypeptide to be imported into chloroplasts, and the CTP leader sequence encoded by the plant-derived EPSPS gene *is believed to be removed from the remainder of the polypeptide so that an active portion of the EPSPS polypeptide exists and functions inside the chloroplast.*" D.I. 212, '835 patent at col. 4:28-34 (emphasis added) (A11). In the case of Syngenta's OTP, it is undisputed that the *entire* OTP is removed to leave a mature EPSPS protein. Thus, the OTP as a whole is the element in GA21 that should be examined to determine if it is a naturally occurring CTP. As the OTP is not naturally occurring, it does not meet the CTP element of claim 1.

Although not disputing that the entire OTP is removed, Monsanto argues that it is removed in *pieces* as opposed to being removed as *a whole*. Initially, Monsanto has no evidence to support this position except a *new* expert report from Dr. Keegstra, filed as a declaration with its answering brief. This attempt to file a new expert report outside of the Court's Scheduling Order should be rejected. Moreover, even if the OTP was removed in two pieces, it would not affect whether the whole OTP was in fact ultimately removed, and thus the OTP is the construct that should be examined to determine whether it meets the CTP element of the claim. Dr. Keegstra unambiguously agreed at his deposition that even if the OTP had an additional cleavage site, he would still "consider the whole thing a transit peptide" and "the fact that . . . [the OTP] has two cleavage sites" did not affect his "determination as to whether the three-piece construct is a transit peptide." D.I. 212, 12/15/05 Keegstra Tr. at 51:11 to 52:16 (A173). Hard as it tries, Monsanto cannot escape this testimony, which leaves no room for doubt that the OTP should be examined as whole to determine whether it meets the "CTP" element of claim 1 of the '835

patent. As there is no dispute that the OTP is not naturally occurring, it cannot infringe as a matter of law.

## II.    ARGUMENT

According to the Federal Circuit, "[s]ummary judgment *must* be granted against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (emphasis added). Here, Monsanto has failed to raise any genuine issue of material fact precluding Syngenta's motion for non-infringement of the '835 patent and, thus, Syngenta's motion should be granted.

### A.    The CTP Must Be Naturally Occurring, Target the Passenger Protein to the Chloroplast, and Subsequently Be Removed From the Mature Protein

#### 1.    Monsanto's Disagreement With the Missouri Court's "Naturally Occurring" Construction Ignores the Specification and the Understanding Held by Skilled Artisans

After carefully reviewing "the claim language and the patent as a whole, and giving due consideration to the prosecution history, [and] . . . the widely-held understanding in the pertinent technical field," the Missouri court held that the term CTP means "a naturally occurring series of amino acids . . . ." D.I. 212, *Markman* Hearing Tr. at 166 (A33). The Missouri court's construction is correct. *See* Syngenta's Resp. to Pl. Open. Cl. Const. Brief at 17-21 (filed concurrently herewith).

Although Monsanto professes to disagree with this construction, they do not dispute that the '835 patent only describes the use of natural CTPs that were obtained from a plant source. D.I. 247 at 19. Monsanto also does not dispute that the '835 patent makes a clear distinction between something that must be naturally occurring and something that can be mutated, modified, or altered. *See* '835 patent at col. 3:45 to col. 4:12 (stating that promoters can be

mutated or modified) (A11), col. 5:1-3 (stating that the EPSPS coding sequence can be mutated or modified) (A12), and col. 4:35-40 (stating that the CTP must be "obtained from" a natural plant source) (A11). Further, Monsanto does not dispute that both experts, Dr. Bruce and Dr. Keegstra, agree that during the 1985-86 time period *all* CTPs were naturally occurring and found at the N-terminus of nuclear-encoded proteins. D.I. 212, 12/15/05 Keegstra Tr. at 36-38 (A169-70) ("all of them [CTPs] that were known at that time were naturally occurring."); 12/16/05 Bruce Tr. at 31-32 (A181).[1]

Monsanto's primary argument that the '835 patent contemplates CTPs other than naturally occurring ones rests on Example 19 of the patent. D.I. 247 at 7-8 and 19-20. Monsanto contends that Example 19 discloses a "hybrid" CTP and is an "embodiment" that should not be excluded from the asserted claims. *Id.* Monsanto's reliance on Example 19 is misplaced for three reasons. First, the construct disclosed in Example 19 does not fall within the scope of claim 1. D.I. 212, *Markman* Hearing Tr. at 167:22 to 168:1 (A34-35); *Markman* Hearing Tr. at 98:15 to 99:7 (C3-4). Example 19 does not disclose a CTP/EPSPS fusion polypeptide (it fuses the naturally occurring petunia CTP to the *ssRUBISCO* from wheat), was conducted *in vitro* (not in plant cells), and does not describe obtaining enhanced glyphosate resistance of a plant cell. *See* D.I. 212, '835 patent at col. 30:43 to col. 31:15 (A24-25); *see also Markman* Hearing Tr. at 98:15 to 99:7. There can be no dispute that Example 19 is not within the scope of claim 1.

---

[1] In *Phillips*, the Federal Circuit cautioned against the use of extrinsic evidence in the form of expert testimony because it "is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). Here, however, both experts agree that as of the filing date of the '835 patent, all CTPs were naturally occurring. Thus, the caution concerning expert testimony set forth in *Phillips* does not apply in the instant case. Moreover, the Federal Circuit in *Phillips* stated that a court can consider such expert testimony at its discretion to understand how those skilled in the art would understand the claim terms. *Id.*

Second, and contrary to Monsanto's assertions, Example 19 uses the naturally occurring CTP from the petunia EPSPS gene. D.I. 212, '835 patent at col. 30:47-49 ("The 72-amino-acid transit peptide of EPSPS was fused to the mature ssRUBISCO from wheat.") (A24). The petunia CTP in Example 19 is not a "hybrid" CTP as Monsanto contends, nor is it a synthetic construct such as the OTP used in GA21, which is comprised of three DNA sequences fused together to create a non-naturally occurring transit peptide. Both Dr. Keegstra and Dr. Bruce, Monsanto's and Syngenta's experts, agree that changes within the amino acid sequence of a naturally occurring CTP to facilitate genetic engineering, such as adding linkers to facilitate the fusion of a transit peptide and passenger protein, do not affect whether the CTP should be considered a naturally occurring CTP. *See* D.I. 212, 12/15/05 Keegstra Tr. at 39-40 (A170); 12/16/05 Bruce Tr. at 104:24 to 106:12 (C8-9). Example 19 specifically states that the cleavage cite of pMON6140 was changed to "introduce[ ] an in-frame SphI site *which allows CTP switching* between ssRUBISCO and EPSPS." D.I. 212, '835 patent at col. 30:61-66 (A24).[2] Thus, the change made to the petunia CTP used in Example 19 was done merely to facilitate genetic engineering (CTP switching) and still remains a naturally occurring CTP in the eyes of both experts.

Third, the Missouri district court considered these very same arguments with respect to Example 19 and still reached the conclusion that the term CTP means a naturally occurring series

---

[2] In his new expert report submitted with Monsanto's answering brief, Dr. Keegstra states that the "CTP switching" sequence was done for a purpose other than to facilitate genetic engineering. D.I. 247, Ex. 1 at ¶ 9. Dr. Keegstra, however, cites no scientific authority or experimental data to support his opinion, which is in direct conflict with the plain language in the specification. As such, Dr. Keegstra's unsupported opinion should be given no weight. *See TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372-74 (Fed. Cir. 2002) (affirming summary judgment of non-infringement where an expert declaration presented only a conclusory opinion of infringement insufficient to defeat the motion for summary judgment).

of amino acids. *Id.*, *Markman* Hearing Tr. at 167-168 (A34-35). Particularly, the Missouri court

stated that it was not convinced that Example 19 was inconsistent with its construction, but even

if it were, "the law does not require that every example be within the scope of all the claims."

*Id.* at 167 (A34).  Moreover, the Missouri court acknowledged that both experts agreed that

Example 19 was not within the scope of the claims.  *Id.*  For these reasons, Example 19 has no

bearing on the construction of the term CTP.

Monsanto also contends that the fact that "synthetic" CTPs did not exist in the 1985-86

time period is irrelevant to whether a "CTP" is naturally occurring. D.I. 247 at 20-21. Monsanto

is wrong.  The fact that "synthetic" CTPs did not exist at the time further demonstrates that the

term "CTP" appearing in claim 1 means a naturally occurring CTP.  As stated by the Missouri

Court:

> *At the time of this patent application, the state of the knowledge of CTPs was such that I do not believe that the patent contemplated that this term would include anything that might ever be invented that would function like a CTP.* The language of the patent just doesn't justify saying that anything ever invented that functions like a CTP must be one, and *I think the CTP in this patent has to be naturally occurring because that's what the words meant at the time they were used.*

*Id.* at 166-167 (A33-34) (emphasis added).  It is clear that the Missouri court concluded that a

CTP had to be naturally occurring, and not synthetic (such as Syngenta's OTP) because "that's

what the words meant at the time they were used." *Id.*

### 2.    Cleavage Is a Defining Feature of a CTP as of the '835 Patent's Filing Date

Monsanto has not, and cannot dispute that during the 1985-86 time period, all known

CTPs were cleaved (or removed) from the mature protein.  The specification of the '835 patent

confirms this scientific principle, stating that "the CTP leader sequence encoded by the plant-

derived EPSPS gene *is believed to be removed from the remainder of the polypeptide so that an*

*active portion of the EPSPS polypeptide exists and functions inside the chloroplast.*" D.I. 212,
'835 patent at col. 4:30-34 (emphasis added) (A11).   Monsanto also does not dispute that
Examples 18 and 19 demonstrate that the CTP is removed from the mature protein to which it is
attached and that success of these experiments was determined by the presence of the passenger
protein, cleaved from the CTP, in the stroma of the chloroplast.   *Id.*, '835 patent, Example 18,
col. 30:3-5 (A24); Example 19, col. 31:8-12 (A25).   The specification of the '835 patent is
clear—CTPs are cleaved from the mature EPSPS protein.

Moreover, Monsanto's own expert witness, Dr. Keegstra, testified that as a matter of
science, those skilled in the art understood in 1985-86 that cleavage of the CTP from the mature
protein is a defining feature of a CTP in the context of the '835 patent.

> Q.    *But doesn't that mean, according to this part of the patent [col. 4, lines
>       28-34], that the CTP leader sequence is, in fact, cleaved from the mature
>       part of the protein?*
>
> A.    *I think that they envision that it is in this case; and in the 1985 time
>       frame, I think -- I would say it was -- there were no CTP -- there were no
>       uncleaved CTPs known from chloroplasts.*  There were some known
>       from mitochondria, and there are now some known from chloroplasts.
>
> Q.    *And, again, I just want to -- is it correct, as a scientist and not talking
>       about the Court's decision, it's your testimony that the site of cleavage is
>       a determining factor in assessing whether a particular element is a
>       transit peptide? Correct?*
>
> A.    *That's correct.*  So the reason that I -- yes.  I'll just stop there.  *That's
>       correct.*

D.I. 212, 12/15/05 Keegstra Tr. at 149:23-150:15 (A177-78) (emphasis added); 50:21 to 51:10
(A173).  Dr. Bruce's (Syngenta's expert) opinion is consistent with that of Dr. Keegstra's.  D.I.
212, 12/16/05 Bruce Tr. at 31-32 (A181).

Monsanto seeks to discredit its own expert's testimony in two ways.  First, Monsanto
argues that Dr. Keegstra's testimony was based on "a modern day understanding of the

chloroplast import process as a whole, not what was the state of the knowledge at the time the application was filed." D.I. 247 at 10-11 and 25-26. However, the very testimony set forth above, establishes that Dr. Keegstra was talking about 1985: "*and in the 1985 time frame, I think -- I would say it was -- there were no CTP -- there were no uncleaved CTPs known from chloroplasts.*" D.I. 212, 12/15/05 Keegstra Tr. at 149:23-150:15 (emphasis added) (A177-78).

Second, Monsanto argues that in providing such testimony, Dr. Keegstra was asked to ignore the Missouri claim construction and just provide his opinions based on his understanding of the science. D.I. 247 at 10-11 and 25-26. But the reason Dr. Keegstra was asked to ignore the Missouri claim construction is that according to Monsanto's and Dr. Keegstra's reading of the opinion, the Missouri court held that cleavage was not a defining feature of a CTP. D.I. 247 at 9. As set forth in Syngenta's moving papers, this is not accurate. *See* D.I. 212 at 19-20. The Missouri court only determined, in construing the phrase "permits the fusion polypeptide to be imported in a chloroplast of a plant cell," that the particular timing of *when* the cleavage took place was not important, but it did not hold that cleavage was not a defining feature of a CTP. *Id.* None of the parties in the prior case even argued that cleavage was not a defining feature of a CTP. *In fact, Monsanto specifically argued that it was*.

In the prior Missouri action, Monsanto argued that in keeping with the '835 patent's specification and the "scientific understanding of protein transport into the chloroplast of a plant cell," "*the chloroplast transit peptide is 'removed' from the remainder of the polypeptide during the importation process.*" Monsanto's Statement Regarding the Const. of the Asserted Claims of the '835 patent, filed in 01-CV-01825 (E.D. Mo. Nov. 20, 2001) at 18 (emphasis added) (C11). To support its position, Monsanto pointed to Example 18 (the same example Syngenta relies on to support its construction), which they characterize as "evidencing the

*removal* of the CTP during import into the chloroplast." *Id.* (emphasis added). Monsanto also

relied on publications by its expert, Dr. Keegstra, which it argued indicated that "during the

process of importation . . . the CTP is proteolytically *cleaved* from the EPSPS passenger protein,

leaving the processed EPSPS in the chloroplast." *Id.* at 19 (emphasis added) (C12). Monsanto

also acknowledged that "the specification [of the '835 patent] . . . expressly recognizes that this

importation process results in *the cleavage of the CTP from the EPSPS protein.*" Monsanto's

Response to Bayer's Opening Brief Regarding the Construction of the Asserted Claims of the

'835 Patent ("Monsanto's Resp. to Bayer's Cl. Const.") filed in 01-CV-01825 (E.D. Mo.

Nov. 20, 2001) at 14-15 (emphasis added) (C14-15). Finally, Dr. Keegstra specifically testified

in the previous litigations that the site of cleavage was a "determining factor in assessing whether

a particular element is a transit peptide." D.I. 212, 3/25/03 Keegstra Tr. at 55:15-18 (A192).

It is for this reason that Monsanto's contention about Syngenta's allegedly changing

claim construction is so disingenuous. *See* D.I. 247 at 13-16. Given Monsanto's and Dr.

Keegstra's position before the Missouri court requiring cleavage of the CTP, Syngenta did not

believe that it was necessary to explicitly state that cleavage was a defining feature of the CTP.

Monsanto's revised claim construction in the present case to exclude cleavage required Syngenta

to expressly state the obvious in its proposed construction—cleavage from the mature protein is a

defining feature of a CTP.[3]

---

[3] Monsanto argues that Syngenta has phrased the cleavage requirement differently. *See* D.I. 247 at 14-15. However, Syngenta has used the terms "mature protein," "mature EPSPS," and "EPSPS polypeptide" interchangeably. Even Monsanto acknowledges that those terms are synonymous. *See* D.I. 203, at 30 n. 12 (stating that the term "EPSPS protein" is also called "the 'mature EPSPS' protein"). The key point is that the CTP is removed. In the case of Syngenta's OTP, it is undisputed that the entire OTP is removed to leave a mature protein. Monsanto's position is that it is removed in pieces rather than as a whole.

Monsanto further argues that cleavage is not a defining feature of the CTP because claim 1 of the '835 patent recites a "chimeric plant gene which comprises . . . a coding sequence . . . encoding a chloroplast transit peptide/5-enolpyruvylshikimate-3-phosphate synthase fusion polypeptide, which chloroplast transit peptide permits the fusion polypeptide to be *imported* into a chloroplast of a plant cell . . . ." D.I. 212, '835 patent, Claim 1 (emphasis added). Because the claim language states that the fusion polypeptide is "imported" and does not mention "cleavage," Monsanto argues that cleavage is not a defining feature of the CTP. D.I. 247 at 8-9 and 21-22. But nothing in the claim language excludes cleavage as a defining feature of a CTP. And as discussed above, in 1985, those skilled in the art (as testified by *both* parties' experts) understood that cleavage was in fact a defining feature of a CTP. D.I. 212, 12/15/05 Keegstra Tr. at 50:21 to 51:10 (A173); 12/16/05 Bruce Tr. at 31-32 (A181). Furthermore, as also discussed above, Monsanto specifically argued in the prior Missouri case that "the chloroplast transit peptide is 'removed' from the remainder of the polypeptide *during the importation process*." Monsanto's Statement Regarding the Const. of the Asserted Claims of the '835 patent, filed in 01-CV-01825 (E.D. Mo. Nov. 20, 2001) at 18 (emphasis added) (C11). Monsanto's inconsistent positions demonstrate the weakness of its argument.

### 3. The Missouri Court's Construction of "CTP/EPSPS Fusion Polypeptide" Has No Bearing on the Construction of CTP

In its answering brief, Monsanto asserts that Syngenta's argument that cleavage is a defining feature of the CTP conflicts with the prior claim construction reached by the Missouri court. D.I. 247 at 11-13, 16-17 and 24-25 (citing *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495 (Fed. Cir. 1997)). Monsanto is wrong and is merely trying to create a disputed issue where none exists. In the prior case, the Missouri court held that the term "CTP/EPSPS fusion polypeptide" in claim 1 does not mean that the CTP must be directly adjacent to the EPSPS, and that there

could be intervening elements between the CTP and the EPSPS. *See* D.I. 212, *Markman* Hearing Tr. at 169:20-24 (A36). Syngenta does not challenge this finding by the Missouri court and, thus, Monsanto's reliance on *Genentech* is of no moment. Indeed, in its opening brief, Syngenta provided an example of the fusion of a naturally occurring CTP and EPSPS wherein ***an additional 24 amino acids was inserted between the two.*** *See* D.I. 212 at 4-5. Contrary to Monsanto's assertions (D.I. 247 at 16-17) Syngenta does not dispute that the CTP in this example is a naturally occurring CTP within the meaning of claim 1 of the '835 patent.

Monsanto's "intervening elements" argument is based on slicing the OTP into three parts and arguing that the first portion is really the CTP. D.I. 247 at 6, 13. According to Monsanto, the other parts of the OTP are merely additional elements between the CTP and EPSPS protein that do not preclude infringement under the Missouri court's claim construction. *Id.* Syngenta disagrees, and contends that it is improper to examine the OTP in this way—the OTP must be considered as a whole for the reasons sets forth in its opening brief at pages 21-23 and briefly re-counted below. Since the OTP is not naturally occurring, it does not meet the CTP element of claim 1 of the '835 patent.

**B.    Syngenta's GA21 Corn Product Does Not Infringe as It Does Not Contain a CTP Within the Meaning of Claim 1 of the '835 Patent**

**1.    The OTP Should Be Considered as a Whole**

Monsanto argues that instead of considering the OTP in GA21 as a whole, the Court should break it up into its component pieces and examine the particular origin of the DNA before the pieces were joined to form a sequence that encodes the OTP. D.I. 247 at 22-23. Supported by a new expert report from Dr. Keegstra (submitted as a declaration to its answering brief), Monsanto asserts that the OTP contains multiple cleavage sites and is thus cleaved in two parts. D.I. 247 at 6 (figure), 22-23. Also based on Dr. Keegstra's declaration, Monsanto contends that

the sunflower DNA sequence comprising a portion of the OTP (by itself) meets the CTP limitation of claim 1. *Id.* at 22-23, 26.

Monsanto's infringement analysis, however, conflicts with the proper construction of CTP, which requires transport and cleavage of the CTP. Whether the OTP is cleaved from the mature EPSPS as a whole, or in separate pieces, the undisputed fact remains that the OTP is cleaved from the mature protein. Here, the entire OTP transports the EPSPS protein to the chloroplast and is removed. Thus, the OTP as a whole is a "transit peptide" and must be examined to determine if it meets the CTP element of the claim.

The best evidence that the OTP should be examined as a whole, regardless of how its individual component parts are described and/or cleaved, is established by Dr. Keegstra's sworn deposition testimony. In the Missouri case, Dr. Keegstra was deposed and offered his opinion that the OTP contains "*two* transit peptides as well as the mature protein elements." 3/25/03 Keegstra Tr. at 53:16-17 (C18). This is similar to the opinions set forth in Dr. Keegstra's declaration filed with Monsanto's answering brief. D.I. 247, Ex. 1 at ¶ 5. Nevertheless, despite his opinion that the OTP contains two CTPs, Dr. Keegstra specifically testified that he would characterize the entire OTP as "*a transit peptide*." D.I. 212, 3/25/03 Keegstra Tr. at 54:13-25, 56:5-22 (A192); 12/15/05 Keegstra Tr. at 51:11 to 52:16 (A173). Dr. Keegstra testified:

> Q.    Is it your testimony that the three-part construct described in patent 36,449[4] is a transit peptide?
>
> A.    I'm reporting what they said, but I do agree with that assessment that *that whole thing is a transit peptide*.

****

---

[4] Reissue Patent No. 36,449 is a reissue of U.S. Patent No. 5,517,471 patent and describes the OTP.

Q.    As you ordinarily use the term 'chloroplast transit peptide,' as a scientist of -- practicing in the field of protein transport, *is the three-piece construct described in patent 36,449 a chloroplast transit peptide?*

A.    *Yes.*

Q.    In your opinion, why is the three-piece construct described in patent 36,449 a transit peptide, yet the two-piece construct used by Dr. Comai not a transit peptide?

A.    *The three-piece transit peptide,* the three-component transit peptide, whatever you want to call it, *is completely removed,* according to their own data, after import. The mature -- the 24 amino acids of the mature that were added to the construct that Dr. Comai created were not removed. I think his data supports that conclusion that there are extra amino acids on the amino-terminal [sic: *end*] of the aroA gene product.

*****

Q.    *So is it your testimony that the site of cleavage is a determining factor in assessing whether a particular element is a transit peptide?*

A.    *Yes.*

*Id.,* 3/25/2003 Keegstra Dep. Tr. at 54-57 (emphasis added) (A192).   After providing this testimony, Dr. Keegstra then *completely and utterly contradicted* the position Monsanto now takes in its answering brief:

Q.    Now, hypothetically, if the three component constructs described in patent 36,449 [OTP] *cleaved in two locations*, once between the first transit peptide and the mature protein, and a second cleavage between the second transit peptide and the passenger protein, in such a hypothetical situation, *what would you consider to be the transit peptide or transit peptides in that construct?*

A.    *I WOULD CONSIDER THE WHOLE THING A TRANSIT PEPTIDE.*

Q.    The entire three-piece construct?

A.    *YES.*

Q.    So the additional cleavage site, the fact that it has two cleavage sites, does not affect your determination as to whether that three piece construct is a transit peptide?

A.    NO.

*Id.*, 3/25/2003 Keegstra Tr. at 56:5-22 (emphasis added) (A192). Dr. Keegstra *repeated this exact testimony in this case*. *Id.*, 12/15/2005 Keegstra Tr. at 47-52 (A172-173). Indeed, Dr. Keegstra's declaration in this case does not even indicate that the entire OTP should not be considered as a whole, but merely that the OTP has two cleavage sites. D.I. 247, Ex. 1 at ¶ 5. As shown by Dr. Keegstra's sworn testimony, the fact that the OTP may have two cleavage sites does *not* mean that the OTP should not be considered as a "whole."

Furthermore, to the extent any of the new opinions in Dr. Keegstra's declaration contradict his previous sworn deposition testimony, the declaration should be disregarded by this Court in determining summary judgment. "A party cannot create an issue of fact by supplying an affidavit contradicting his prior deposition testimony, without explaining the contradiction or attempting to resolve the disparity. Where, as here, a party has been examined extensively at deposition and then seeks to create an issue of fact through a later, inconsistent declaration, he has the duty to provide a satisfactory explanation for the discrepancy at the time the declaration is filed. To allow him to preclude summary judgment simply by contradicting his own prior statements would seriously impair the utility of Federal Rule of Civil Procedure 56.   The trial court properly disregarded the declaration in assessing the existence of a genuine issue of fact." *Sinskey v. Pharmacia Opthalmics, Inc.*, 982 F.2d 494, 498 (Fed. Cir. 1992) (citations omitted); *see also, Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) (When "a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists.")  Given its own expert's sworn deposition testimony, Monsanto cannot create any factual issues as to whether the OTP should

be examined as a whole in comparing it to the CTP element of claim 1 of the '835 patent. As the OTP is not naturally occurring, it is not a CTP within the meaning of claim 1 of the '835 patent and there can be no infringement.

### 2.   Dr. Keegstra's Newly Submitted Expert Report Should Be Excluded

Monsanto, bearing the burden of proving infringement and realizing that it did not provide adequate support for its infringement contention in Dr. Keegstra's opening expert report, submitted a new expert report well after the close of expert discovery in the guise of a declaration supporting its answering brief. D.I.·247 at Ex. 1. Dr. Keegstra's new expert report, however, contains information and arguments not presented in his opening expert report, which should have contained *all* of his opinions supporting infringement. For example, in his new expert report, Dr. Keegstra specifically states that the OTP is cleaved in two locations and, thus, the OTP meets the CTP limitation of claim 1. *Id.* at Ex. 1 ¶ 5. Yet, he failed to present these opinions in his opening expert report and thus prevented Syngenta from deposing Dr. Keegstra concerning such opinions. *See* Expert Witness Report of Dr. Kenneth Keegstra, filed October 27, 2005 at 9 (C20). On this basis alone, Dr. Keegstra's newly submitted expert report, submitted over two months after the final date for expert reports and over one month after the close of expert discovery, should be excluded. *See Praxair, Inc. v. ATMI, Inc.*, 2003 U.S. Dist. LEXIS 26794, *17-*20 (D. Del. Nov. 8, 2003) (excluding an expert report where the "report contained new . . .theories . . . not contained in . . . [the] original report[ ] and [t]he report was filed ten days before the summary judgment motions were due, so plaintiffs had no opportunity to conduct rebuttal discovery for the summary judgment motions.").

Moreover, Dr. Keegstra's new expert report directly contradicts his previous deposition testimony in certain respects. More specifically, in paragraph 4 of his new expert report, Dr. Keegstra contends that in the OTP, "the CTP function is conferred by the sunflower RuBisCO

CTP which is at the N-terminal end of the protein and engages the transport apparatus." D.I. 247, Ex. 1 ¶ 4. Dr. Keegstra, however, was previously asked in the Missouri case, "Do you have an opinion as to whether the second of the two transit peptides in that three component construct [OTP] . . . participates in the targeting of the precursor protein to the chloroplast?" D.I. 212, 3/25/03 Keegstra Tr. at 57:9-13 (A192). Dr. Keegstra testified, "No. I -- it would require speculation on my part. I don't -- I'm not aware of any data that has analyzed the components of that -- of that complex transit peptide, and -- and -- and so anything I said would be just speculation." *Id.*, 3/25/03 Keegstra Tr. at 57:14-18 (A192). The declaration should be stricken for this reason as well. *Sinskey*, 982 F.2d at 498; *see also*, *Hackman*, 932 F.2d at 241.

### 3.    Monsanto Failed to Plead Infringement Under the Doctrine of Equivalents

As discussed in Syngenta's opening *Daubert* motion (D.I. 221) this Court should exclude Monsanto's proposed expert testimony relating to the doctrine of equivalents ("DOE"), as Monsanto did not raise DOE until the last day of fact discovery and its proofs of infringement under the DOE, including the expert report of Dr. Keegstra, were wholly conclusory and lacked any factual basis. *See* D.I. 221 at 5-10. Moreover, Monsanto's submission of Dr. Keegstra's surrebuttal report (containing exhibits in French), which contains for the first time Dr. Keegstra's opinions regarding infringement under the DOE nearly a month after the deadline for rebuttal reports and a day and a half prior to Dr. Keegstra's deposition, was prejudicial and prevented Syngenta from examining Dr. Keegstra about his new opinions. *Id.* Because Monsanto has no factual basis to support its conclusory opinion that Syngenta's GA21 corn product infringes the '835 patent, Syngenta is not required to address this allegation.

## III.  CONCLUSION

For all the above reasons, Syngenta respectfully requests that the Court enter summary judgment that Syngenta's GA21 corn product does not infringe claims 1, 5, and 6 of the '835 patent.

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
   TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Of counsel:

Michael J. Flibbert
Howard W. Levine
Sanya Sukduang
Jared S. Cohen
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000                          Attorneys for Defendants

Dated: February 2, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on February 2, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

### BY FEDERAL EXPRESS

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*