# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY and MONSANTO
TECHNOLOGY LLC,

    Plaintiffs,

    v.

SYNGENTA SEEDS, INC.,
SYNGENTA BIOTECHNOLOGY, INC.,

    Defendants.

_____

DEKALB GENETICS CORPORATION,

    Plaintiff,

    v.

SYNGENTA SEEDS, INC.,
SYNGENTA BIOTECHNOLOGY, INC.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-305-SLR
(lead case)

**CONTAINS RESTRICTED
CONFIDENTIAL
INFORMATION SUBJECT TO
PROTECTIVE ORDER - FILED
UNDER SEAL**

## SYNGENTA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-ENABLEMENT OF THE SHAH PATENT

Of counsel:
Michael J. Flibbert
Howard W. Levine
Jennifer A. Johnson
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

Attorneys for Defendants

Dated: February 2, 2006

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

059155.1008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INDEX OF EXHIBITS....................................................................................................... iv

I.      INTRODUCTION ..................................................................................................1

II.     REPLY ...................................................................................................................3

        A.    The Functional Language in Claims 1, 5, and 6 the '835 Patent Cannot
              Be Ignored and Renders the Claims Invalid Under 35 U.S.C. § 112 .....................3

              1.    Monsanto Chose to Use Functional Language in Claims 1, 5,
                    and 6.......................................................................................................4

              2.    Monsanto Cannot Ignore the Functional Language.....................................5

        B.    Claims 1, 5, and 6 Are Not Enabled for Their Full Scope....................................11

        C.    Monsanto's Has Not Raised Any Factual Issues That Are Material to
              Syngenta's Summary Judgment Motion ..............................................................15

III.    CONCLUSION......................................................................................................18

059155.1008

# TABLE OF AUTHORITIES

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003)....................................................................13, 14, 16

*In re Brana*,
   51 F.3d at 1567 (emphasis added) ..................................................................16, 17

*Enzo Biochem, Inc. v. Calgene, Inc.*,
   14 F. Supp. 2d 536 (D. Del. 1998)........................................................................10

*Enzo Biochem, Inc. v. Calgene, Inc.*,
   188 F.3d 1362 (Fed. Cir. 1999)....................................................................... passim

*In re Fisher*,
   427 F.2d 833 (C.C.P.A. 1970) ...............................................................................15

*Genentech Inc. v. Novo Nordisk A/S*,
   108 F.3d 1361 (Fed. Cir. 1997)..............................................................................11

*Invitrogen Corp. v. Clontech Laboratories, Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005)..............................................................................14

*Johns Hopkins University v. CellPro, Inc*,
   152 F.3d 1342 (Fed. Cir. 1998)........................................................................12, 13

*K-2 Corp. v. Salomon S.A.*,
   191 F.3d 1356 (Fed. Cir. 1999)................................................................................6

*Lemelson v. United States*,
   752 F.2d 1538 (Fed. Cir. 1985)................................................................................6

*National Recovery Techs., Inc. v. Magnet Separation System, Inc.*,
   166 F.3d 1190 (Fed. Cir. 1999)..............................................................................11

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
   182 F.3d 1298 (Fed. Cir. 1999)................................................................................8

*Plant Genetic System, N.V. v. DeKalb Genetics Corp.*,
   315 F.3d 1335 (Fed. Cir. 2003)....................................................................... passim

*In re Swinehart*,
   439 F.2d 210 (C.C.P.A. 1971) ................................................................................6

*In re Vaeck*,
   947 F.2d 488 (Fed. Cir. 1991)........................................................................ passim

DB01:1983248.1                                                      059155.1008

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
    520 U.S. 17 (1997).................................................................................................6

*In re Wright*,
    999 F.2d 1557 (Fed. Cir. 1993)......................................................................11

## FEDERAL STATUTES

35 U.S.C. § 112.......................................................................................... passim

059155.1008

# INDEX OF EXHIBITS

| C1-4 | January 17, 1994, Discovery Research Project Report |

## I.    INTRODUCTION

The broad claims of the U.S. Patent No. 4,940,835 ("the '835 patent") define a chimeric plant gene primarily in terms of its function—not structure. Claim 1 (and by necessity dependent claims 5 and 6), expressly recites a chimeric plant gene that "functions in *plant cells*" "to enhance the glyphosate resistance of *a plant cell* transformed with the gene." Docket Item ("D.I.") 214, '835 patent at claim 1, col. 32 (emphasis added) (A25). There are, however, two major kinds of plant cells (representing two distinct classifications of plants), dicots and monocots. In its moving papers, Defendants (collectively "Syngenta") established that as of the 1986 filing date of the '835 patent, monocot plant cells could not be transformed to include a foreign gene that would provide glyphosate resistance. For this reason, and based on the well-established precedent of the Federal Circuit, claim 1, which is not limited to genes functioning in dicots but covers genes functioning in monocots as well, is not enabled for its full scope and is invalid under 35 U.S.C. § 112.

In its opposition, Plaintiffs (collectively "Monsanto") *have not disputed that one skilled in the art could not transform monocot plant cells as of the 1986 filing date of the '835 patent.* D.I. 248 at 1. Thus, there is *no issue of disputed fact* on the dispositive issue raised by Syngenta's motion for summary judgment. Instead, Monsanto argues that because claim 1 of the '835 patent is a "gene claim" and not a "plant cell" claim, the undisputed fact that monocot plant cells could not be transformed is not relevant to the issue of enablement. Monsanto, however, is simply wrong. Given that Monsanto chose to draft its claim using broad functional language, it cannot ignore such language in determining the scope of enablement. Importantly, deciding whether and how the functional language must be taken into account reduces to a pure issue of law, which if resolved in Syngenta's favor, leads to grant of summary judgment.

- 1 -

On the merits, Monsanto's fundamental argument rests on an untenable distinction between a "gene" claim and a "plant cell" claim. The law of § 112 enablement is no different for "gene" or "plant cell" claims, particularly when both types of claims rely on the *functioning* of a gene in a plant cell. As further explained below, *In re Vaeck*, 947 F.2d 488, 495-96 (Fed. Cir. 1991), cited by Syngenta, is virtually on all fours with the present facts. *Vaeck* held a chimeric gene claim invalid because it sought to claim the gene by reference to its functioning in *all* bacteria in the claimed class, but it would have taken undue experimentation to determine if the gene worked in the full range of bacteria. *See also Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362 (Fed. Cir. 1999). Monsanto cannot distinguish these cases, which are directly applicable to the instant facts. Once the functional language in the claim is considered, there is no question that the broad claims of the '835 patent are invalid. *See Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1343 (Fed. Cir. 2003) ("the *PGS* case") (holding claims encompassing the transformation of monocot plant cells invalid because it was not possible to transform monocots as of the 1987 filing date).

Finally, in a last-ditch effort to avoid summary judgment, Monsanto argues that there are disputed facts as to whether the '835 patent discloses a gene that one of ordinary skill could use to transform a monocot cell, particularly corn, to provide glyphosate resistance. Indeed, Monsanto spends seven pages of its opposition brief discussing such facts. D.I. 248 at 8-15. *Syngenta, however, did not move for summary judgment on that basis*. Monsanto's response to an "argument" that Syngenta simply did not make in its moving papers cannot create a material issue in genuine dispute and it affords no basis to preclude summary judgment. Furthermore, while Monsanto cites various experiments which allegedly prove that the '835 patent discloses a gene useful in monocots, it fails to mention the *dates* of those experiments, which were, in fact,

059155.1008

conducted years *after* the 1986 filing date of the Shah '835 patent. Monsanto does not even purport to show how these later experiments establish that any of the transformation work essential to the cited experimentation could have been accomplished without undue experimentation as of the 1986 filing date of the '835 patent. Persons of ordinary skill could *not* even begin to conduct experiments to determine whether or not a gene allegedly disclosed in the '835 patent would work to provide enhanced glyphosate resistance in monocots, including corn, *because it was not possible to transform monocot cells with such a gene until years after the 1986 filing date of the '835 patent.* And Monsanto concedes this decisive fact. Thus, irrespective whether the '835 patent even discloses a gene that could ever be used in a monocot cell to provide enhanced glyphosate resistance, this issue is completely immaterial to the Court's adjudication of Syngenta's summary judgment motion. For these reasons, as further explained below, and for the reasons given in Syngenta's summary judgment motion, the motion should be granted and summary judgment of invalidity of the '835 patent rendered against Monsanto.

## II.    REPLY

### A.    The Functional Language in Claims 1, 5, and 6 the '835 Patent Cannot Be Ignored and Renders the Claims Invalid Under 35 U.S.C. § 112

As set forth in Syngenta's opening brief, *In re Goodman, PGS,* and *Monsanto v. Bayer,* all establish that monocots could not be transformed as of the filing date of the '835 patent, and that claims requiring the transformation of monocot cells are thus not enabled under 35 U.S.C. § 112. D.I. 214 at 7-16. In its opposition brief, Monsanto has *not* disputed any of these points. Instead, Monsanto primarily argues that the claims at issue in these cases are not "gene" claims, and that Monsanto argued in *PGS* and *Monsanto v. Bayer* the difference between "gene" claims and "plant cell" claims. Thus, as Monsanto does not dispute the fact that monocot cells could not be transformed as of the filing date of the '835 patent, Monsanto's arguments concerning the

- 3 -

difference between a "gene" claim and a "plant cell" claim raise pure questions of law that can appropriately be resolved on summary judgment.

        1.     **Monsanto Chose to Use Functional Language in Claims 1, 5, and 6**

Although Monsanto repeats its mantra throughout its opposition brief that claims 1, 5, and 6 recite a "gene," not a plant cell, the fact of the matter is that Monsanto *chose* to claim the "gene" in terms of its ability to transform a plant cell such that gene can carry out various functions (such as transporting the EPSPS protein into the chloroplast) to enhance the glyphosate resistance of the cell. The '835 patent describes by name two plasmids that can be used to transform dicot plant cells to enhance the cell's glyphosate resistance: pMON546 (containing a naturally occurring CTP/EPSPS polypeptide from petunia) and pMON542 (containing a petunia CTP fused to a bacterial EPSPS). It would have been a simple matter for Monsanto to have specifically claimed these two plasmids or the particular genes contained therein. But, if it had, Monsanto would not have been able to even allege that Syngenta's GA21 corn product infringes such a claim. Instead, in an effort to expand its patent rights beyond what the specification teaches, Monsanto drafted claim 1 using broad functional language.

Claim 1, with the relevant functional language emphasized, recites:

A chimeric plant gene which comprises:

(a)    a promoter sequence *which functions in plant cells*;

(b)    a coding sequence which causes the production of RNA, encoding a chloroplast transit peptide [referred to herein as "CTP"]/5-enolpyruvylshikimate-3-phosphate synthase [referred to herein as "EPSPS"] fusion polypeptide, *which chloroplast transit peptide permits the fusion polypeptide to be imported into a chloroplast of a plant cell; and*

(c)    a 3' non-translated region which encodes a polyadenylation signal *which functions in plant cells to cause the addition of polyadenylate nucleotides to the 3' end of the RNA*;

                                                         

the promoter being heterologous with respect to the coding sequence and *adapted to cause sufficient expression of the fusion polypeptide to enhance the glyphosate resistance of a plant cell transformed with the gene*.

D.I. 214, '835 patent at col. 32 (emphasis added) (A25). This language requires that the gene be used to transform "a plant cell," achieve transport of a defined fusion polypeptide to the chloroplast of the plant cell, and obtain expression of the fusion polypeptide to enhance the glyphosate resistance of the cell. Only by actually effectuating these functions, including transforming a cell with the gene, could one skilled in the art show that the specific functions recited in the claim could be performed, and that he had obtained a gene within the scope of the claim. Thus, since monocots could not be transformed as of the filing date of the '835 patent, one of ordinary skill could not have even tested a CTP/EPSPS fusion polypeptide in a monocot cell to determine if the gene could function, as claimed, to provide enhanced glyphosate resistance.

### 2.    Monsanto Cannot Ignore the Functional Language

Although satisfied with the broad functional language in the context of demonstrating infringement, Monsanto, in an effort to preserve the validity of this claim, essentially ignores most of the broad functional language expressly recited in the claim.[1]    Monsanto cannot have both a broad scope of patent coverage and a narrow scope of enablement. *See PGS,* 315 F.3d at 1341 ("We conclude that the law does not support PGS' assertion that the '236 patent is entitled to both a broad scope of coverage and a lower standard of enablement.").

---

[1] For example, in its opposition brief, Monsanto discusses the functional language in elements (a) and (c) of the '835 patent, but *completely ignores* the functional language in element (b) of the claim, "which chloroplast transit peptide permits the fusion polypeptide to be imported into a chloroplast of a plant cells" and the language in the key element of the claim that requires that the promoter "being . . . adapted *to cause sufficient expression of the fusion polypeptide to enhance the glyphosate resistance of a plant cell transformed with the gene*." D.I. 248 at 4 (emphasis added).

- 5 -

Monsanto does not even address the authorities cited by Syngenta that hold that functional language in a claim cannot be ignored and that all claim limitations are material to defining the scope of the claim for purposes of infringement and validity. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999) (functional language "is, of course, an additional limitation in the claim."); *In re Swinehart*, 439 F.2d 210, 212-13 (C.C.P.A. 1971); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention . . . ."); *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) ("[I]t is . . . well settled that each element of a claim is material and essential . . . .").

Indeed, *Vaeck* gave controlling effect to the functional language used to define a gene in a claim substantially similar to claim 1 of the '835 patent. *In re Vaeck*, 947 F.2d at 490. Claim 1 of the patent at issue in *Vaeck*, with emphasis on the relevant functional language, recited:

> A chimeric gene *capable of being expressed in Cyanobacteria cells* comprising:
>
> (a) a DNA fragment comprising a promoter region *which is effective for expression of a DNA fragment in a Cyanobacterium*; and
>
> (b) at least one DNA fragment coding for an insecticidally active protein produced by a Bacillus strain, or coding for an insecticidally active truncated form of the above protein or coding for a protein having substantial sequence homology to the active protein,
>
> the DNA fragments being linked so that the gene is expressed.

*Id.* (emphasis added). The Federal Circuit held this "chimeric gene" claim invalid under 35 U.S.C. § 112 due to the functional language that required the gene be "capable of being expressed in Cyanobacteria cells" because it would have required undue experimentation to determine if the "chimeric gene" would work in the full range of cyanobacteria recited in the claim. *"There is no reasonable correlation between the narrow disclosure in appellants'*

- 6 -

059155.1008

*specification and the broad scope of protection sought in the claims encompassing gene expression in any and all cyanobacteria.*" *Id.* at 495 (emphasis added). Likewise, here, claim 1 of the '835 patent recites a gene that functions "*in plant cells,*" such that a chloroplast transit peptide "permits the fusion polypeptide to be imported into a chloroplast of *a plant cell,*" and that the promoter be "adapted to cause sufficient expression of the fusion polypeptide *to enhance the glyphosate resistance of a plant cell transformed with the gene.*" D.I. 214, '835 patent at col. 32 (emphasis added) (A25). Moreover, as in *Vaeck,* it is undisputed that it would have taken undue experimentation to determine if the "chimeric gene" would work in the full range of cells recited in the claim since monocot cells could not be transformed. *Vaeck* leaves no room for Monsanto's argument that claim 1 of the '835 patent only recites a "gene" claim and therefore somehow presents a unique non-enablement issue.

Furthermore, Monsanto's efforts to distinguish *Vaeck* are completely without merit. D.I. 248 at 22-24. First, Monsanto argues that the language "capable of being expressed in Cyanobacteria cells" is in the *preamble* of the claim at issue in *Vaeck,* but the functional language in claim 1 of the '835 patent appears in the *body* of the claim. *Id.* at 22. This argument makes no sense for several reasons. For one thing, the functional language in *Vaeck* in fact appeared in both the preamble and the body of the claim. Further, there is no indication in the Federal Circuit opinion that the location of the functional claim language had any significance to the court's § 112 enablement analysis. Monsanto provides no legal authority or reasoning for attaching significance to the appearance of the *Vaeck* language in the preamble (as well as the body) rather than just the body of the claim.

Moreover, the fact that the functional language appears in the body of claim 1 of the '835 patent means that such language necessarily constitutes limitations for purposes of validity

whereas in certain circumstances, preamble recitations might not be taken as limitations of a claim. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (stating that "[i]f the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim.") (citations omitted). Since the functional language appeared in the body of the *Vaeck* claim as well as the preamble, and appears in the body of the '835 claims, there is no issue that the functional language must be given effect in determining the scope and meaning of the claims.

In addition, demonstrating that there is no substance to Monsanto's attempt to distinguish *Vaeck*, Monsanto actually ignores the stated basis of the Federal Circuit's decision and instead cites a U.S. Patent Office action (from the Vaeck prosecution history) where the Examiner made a rejection on the basis that that the expressed protein was not insecticidal. D.I. 248 at 23. *But that was not the basis for the Examiner's rejection considered in the case, the Board of Patent Appeals and Interferences' decision, or the Federal Circuit's decision affirming the Board.* The Examiner's rejection that was the basis for the enablement holding in the case was exactly as discussed above—that the claim recited a gene that could be used in all Cyanobacteria cells. As stated by the Federal Circuit:

> The examiner also rejected claims 1-48 and 50-51 under 35 U.S.C. § 112, first paragraph, on the ground that the disclosure was enabling only for claims limited in accordance with the specification as filed. Citing *Manual of Patent Examining Procedure* (MPEP) provisions 706.03(n) and (z) as support, the examiner took the position that undue experimentation would be required of the art worker to practice the claimed invention, in view of the unpredictability in the art, the breadth of the claims, the limited number of working examples and the limited guidance provided in the specification. With respect to unpredictability, the examiner stated that "[t]he cyanobacteria comprise a large and diverse group of photosynthetic bacteria including large numbers of species in some 150 different genera including *Synechocystis, Anacystis, Synechococcus, Agmenellum, Nostoc, Anabaena*, etc. The molecular biology of these organisms has only recently

- 8 -

> become the subject of intensive investigation and this work is limited to a few
> genera. Therefore the level of unpredictability regarding heterologous gene
> expression in this large, diverse and relatively poorly studied group of procaryotes
> is high . . . ." The Board affirmed, noting that "the limited guidance in the
> specification, considered in light of the relatively high degree of unpredictability
> in this particular art, would not have enabled one having ordinary skill in the art to
> practice the broad scope of the claimed invention without undue
> experimentation."

*In re Vaeck*, 947 F.2d at 492-93 (footnotes omitted). The basis for the decision had nothing to do

with whether the expressed protein was actually insecticidal. Indeed, the Federal Circuit stated

that the "*working examples* relevant to the claims on appeal detail the transformation of a single

strain of cyanobacteria . . . transformed with a plasmid comprising . . . a gene encoding a

particular insecticidal protein . . . ." *Id.* at 490 (emphasis added). *Vaeck* is clear precedent for

the applicability of the same § 112 enablement standards and factors whether the claims are

"gene" claims or "plant cell" claims.

The *Enzo Biochem* case also strongly supports Syngenta's position. *Enzo Biochem, Inc.*

*v. Calgene, Inc.*, 188 F.3d 1362 (Fed. Cir. 1999). There, the patent at issue claimed antisense

technology as a method for controlling gene expression in both prokaryotes (i.e., bacteria) and

eukaryotes (i.e., human cells). *Id.* at 1367-68. The Federal Circuit held the claims not enabled

under 35 U.S.C. § 112 because "the breadth of enablement in the patent specifications is not

commensurate in scope with the claims, as the quantity of experimentation required to practice

antisense in cells other than E. coli at the filing date would have been undue." *Id.* at 1377

(citation omitted).

Monsanto, however, argues that the case is not applicable because it only addressed a

plant cell not a gene. But contrary to Monsanto's assertions, the Federal Circuit specifically

noted that there were gene "construct" claims. The court stated:

> The claims at issue in the '931 patent are directed to *antisense constructs,*
> methods of regulating gene expression in a cell using antisense constructs, and

- 9 -

cells containing antisense constructs. *Representative* cell, method, *and construct claims read as follows*:

1. A prokaryotic or eukaryotic cell containing a non-native DNA construct, which construct produces an RNA which regulates the function of a gene, said DNA construct containing the following operably linked DNA segments:

a. a transcriptional promoter segment;

b. a transcription termination segment; and therebetween

c. a DNA segment;

whereby transcription of the DNA segment produces a ribonucleotide sequence which does not naturally occur in the cell, is complementary to a ribonucleotide sequence transcribed from said gene, and said non-naturally occurring ribonucleotide sequence regulates the function of said gene.

3. A method of regulating the function of a gene in a prokaryotic or eukaryotic cell which comprises introducing into said cell the DNA construct of claim 1.

5. *A non-native DNA construct* which, when present in a prokaryotic or eukaryotic cell containing a gene, produces an RNA which regulates the function of said gene, said DNA construct containing the following operably linked DNA segments:
a. a transcriptional promoter segment;

b. a transcription termination segment; and

c. a DNA segment comprising a segment of said gene, said gene segment located between said promoter segment and said termination segment and being inverted with respect to said promoter segment and said termination segment, whereby the RNA produced by transcription of the inverted gene segment regulates the function of said gene.

*Id.* at 1368 (emphasis added.) Both the district court and the Federal Circuit considered all these claims *together*. As stated by the Federal Circuit, "the other disputed claims stand or fall together with claim 1." *Id.* at 1377. Likewise, the district court held that its "decision concerns Claim 1 of the '931 Patent unless otherwise stated, however, the Court's conclusions necessarily apply to all claims at issue." *Enzo Biochem, Inc. v. Calgene, Inc.*, 14 F. Supp. 2d 536, 566 (D. Del. 1998). Neither the district court, the Federal Circuit, or apparently the parties, adopted the

- 10 -

legal fiction proposed by Monsanto in this case that there is some meaningful distinction between claims reciting "a plant cell containing a gene that functions a certain way" and claims reciting "a gene when used in a plant cell functions a certain way." Both types of claims were held to be invalid under 35 U.S.C. § 112 for the same reason.

Thus, the ability of the gene to function in all plant cells, monocots and dicots, in the ways required by the functional language set forth in claim 1 of the '835 patent (and by necessity claims 5-6) must be considered in determining whether the claims are commensurate with the teaching of the specification and knowledge in the art. As further explained below, because the asserted claims are plainly broader than the scope of enablement as of the 1986 Shah '835 patent filing date, as in *Vaeck* and *PGS*, there can be no question that the asserted claims are invalid under 35 U.S.C. § 112.

### B.    Claims 1, 5, and 6 Are Not Enabled for Their Full Scope

It is black-letter law that a patent must teach how to make and use an invention as broadly as it is claimed. *In re Vaeck*, 947 F.2d at 495-96. "The scope of the claims must be less than or equal to the scope of the enablement." *Nat'l Recovery Techs., Inc. v. Magnet Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999). "The specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993); *Genentech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (citing *In re Wright*); *PGS*, 315 F.3d at 1339 (citing *Genentech*, 108 F.3d at 1365).

Here, as mentioned above, it is undisputed that while claims 1, 5, and 6 cover a CTP/EPSPS gene that could be used to transform a monocot cell to enhance its glyphosate resistance, one skilled in the art could *not* transform a monocot cell to accomplish this task as of

the 1986 filing date of the '835 patent. Accordingly, as in *PGS* and *In re Goodman*, claims 1, 5, and 6 of the '835 patent are not enabled under 35 U.S.C. § 112.

Monsanto, however, challenges this well-established case law, and instead argues, citing *Johns Hopkins Univ. v. CellPro, Inc*, 152 F.3d 1342, 1361 (Fed. Cir. 1998), that the "enablement requirement is met if the description enables *any mode* of making and using the invention." D.I. 248 at 17 (emphasis in original). Certainly, there is no suggestion in *CellPro* that *Vaeck* was somehow nullified or overruled, and *Enzo*, which followed *CellPro*, shows that *CellPro* effected no basic change in the principles of *Vaeck*. Rather, Monsanto mischaracterizes the meaning of the quoted language and the holding in *CellPro*. The case is inapplicable to the circumstances here.

Specifically, in *CellPro*, the claim at issue was directed to a "monoclonal antibody which specifically binds to an antigen on nonmalignant, immature human marrow cells, wherein said antigen is stage specific and not lineage dependent, and said antigen is also specifically bound by the antibody produced by the hybridoma deposited under ATCC Accession No. HB-8483 . . . ." *CellPro*, 152 F.3d at 1347. CellPro argued that this claim was not enabled because certain of the antigens disclosed in the specification of the patent could not be used to obtain the claimed antibody. *Id.* at 1359. The Federal Circuit rejected this argument, explaining that while certain antigens in the specification would not result in the claimed antibody, other antigens in the specification would work to obtain the invention. *Id.* at 1360. Thus, since enablement "is met if the description enables any mode of making and using the invention," the fact that one method or mode of obtaining the claimed invention did not work is not fatal to enablement. *See id.* at 1361. Accordingly, *CellPro* did not hold that the full scope of the claim need not be enabled, but that the specification only needs to disclose one mode of obtaining that full scope.

- 12 -

For example, assume that claim 1 of the '835 patent was limited to a gene used to transform *dicot plant cells* to provide glyphosate resistance, and Syngenta had argued that some of the transformation methods disclosed in the specification (i.e., electroporation) would not work to transform dicot cells. *CellPro* stands for the proposition that even though some methods in the specification would not work to transform dicot cells, one skilled in the art could still practice the full scope of the claimed invention by using a method in the specification that did work (i.e., *Agrobacterium*) to transform dicots. Here, however, claim 1 of the '835 patent broadly claims a gene that can be used to transform *any plant cell* (dicot or monocot) to enhance its glyphosate resistance, and *there is no question that those skilled in the art could not transform monocots by any method at the time the '835 patent was filed.* D.I. 248 at 1. There is no "mode" in the '835 patent that enables the full scope of claim 1.

Monsanto also relies on *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1336 (Fed. Cir. 2003). D.I. 248 at 17. In *Amgen*, one set of claims at issue were directed to a "non-naturally occurring erythropoietin glycoprotein product having the in vivo biological activity of causing bone marrow cells to increase production of reticulocytes . . . ." *Amgen*, 314 F.3d at 1322. There were apparently two ways to obtain such a glycoprotein product, one using endogenous DNA and a second using exogenous DNA. *Id.* at 1321. Since the specification disclosed a method using exogenous DNA, the claim was enabled for its full scope even though the specification did not mention the other "mode" of obtaining the claimed glycoprotein. *Id.* at 1334-35. As with *CellPro,* this holding has no application to the present case. Here, Monsanto does not even dispute that persons skilled in the art could *not* transform monocot plant cells with a CTP/EPSPS gene using any method described in the '835 specification.

059155.1008

Other claims at issue in the *Amgen* case were "genetically manipulated 'vertebrate cells' . . . having certain characteristics and properties, including an ability to produce the claimed levels of human EPO." *Id.* at 1336. Since Amgen had only used one specific type of vertebrate cells to make EPO producing cells, the issue before the Federal Circuit was whether Amgen was entitled to claim *any type of vertebrate cell* that could produce EPO. *Id.* Citing *Vaeck* and *Enzo*, the Federal Circuit held that the claim was enabled, but only because the "district court made fact several fact-findings indicating *that any gaps between the disclosures and the claim breadth could be easily bridged.*" *Id.* at 1336 (emphasis added). "[T]he district court held the disclosure did enable the genus because the differences between using the two described mammalian (and vertebrate) cells and other such cells *were small and easily accommodated by the artisan.*" *Id.* at 1338 (emphasis added). Here, of course, the facts are exactly *opposite.* It is undisputed that skilled artisans could not take a CTP/EPSPS gene and transform monocot plant cells at the 1986 filing date of the '835 patent—the monocot barrier had not yet been overcome. Thus, contrary to Monsanto's assertions, applying the Federal Circuit's reasoning and holding in *Amgen* further supports Syngenta's position in this case—not Monsanto's.

Monsanto also cites *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1071 (Fed. Cir. 2005), for the proposition that "[e]nablement does not require the inventor to foresee every means of implementing an invention at pains of losing his patent franchise. Were it otherwise, claimed inventions would not include improved modes of practicing those inventions." D.I. 248 at 23-24. Again, this language is not applicable to the facts here. The ability to transform monocot cells with a CTP/EPSPS gene is not an "improvement" of the invention, but a necessary requirement of the asserted claims. Moreover, monocot transformation was *not* unforeseen at

- 14 -

059155.1008

the time of invention; it was one of the primary goals of plant biotechnology—a goal that was not achieved until years after the 1986 filing date of the '835 patent.

Monsanto's argument is almost identical to the argument advanced by PGS, which the Federal Circuit rejected. There, PGS, citing *In re Fisher*, 427 F.2d 833 (C.C.P.A. 1970), argued that "an inventor should be allowed to dominate the future patentable inventions of others where those inventions were based in some way on his teachings." *PGS*, 315 F.3d at 1340. The Federal Circuit disagreed, stating that this language in *Fisher* merely "sets the context for *Fisher's* holding that '[i]t is equally apparent . . . that [the inventor] must not be permitted to achieve this dominance by claims which are insufficiently supported and hence not in compliance with the first paragraph of 35 U.S.C. § 112." *Id.* at 1340 (citation omitted). An inventor is not allowed "to claim what was specifically desired but difficult to obtain at the time the application was filed, unless the patent discloses how to make and use it." *Id.* This is exactly what Monsanto attempts to do here.

### C.    Monsanto's Has Not Raised Any Factual Issues That Are Material to Syngenta's Summary Judgment Motion

In a final effort to avoid summary judgment, Monsanto responds to an argument *not* raised by Syngenta in its moving papers. Monsanto spends approximately seven pages of its brief arguing that the '835 patent discloses a gene that would allegedly work to provide enhanced glyphosate resistance in corn. D.I. 248 at 8-15. This "red herring" should be ignored by the Court.

In particular, Monsanto relies on work with an aroA gene that allegedly was capable of providing glyphosate resistance in corn. Monsanto, however, conveniently fails to mention that the work it relies on took place in *1993*. As stated by Dr. Fromm's Declaration in support of Monsanto's brief, "in April 1993, DeKalb scientist performed corn transformation studies using

- 15 -

the C-*aroA* EPSPS gene . . . ."  D.I. 248, Ex. 7 ¶ 4.a.  And the USDA permit attached as an exhibit to Monsanto's motion is dated October 1, *1992*.  *Id.* at Ex. 8.  Moreover, the work with the *aroA* gene was performed using microprojectile bombardment, *a technique that had not yet been invented at the time of the 1986 filing date.*

Syngenta vehemently disagrees with the facts set forth at pages 8-15 of Monsanto's brief concerning whether or not the '835 patent discloses an EPSPS gene that would ever work in a monocot cell, particularly corn, to provide glyphosate resistance.  Indeed, DeKalb's own scientists characterized the work with the aroA gene as a failure,

and ordering all work with the aroA gene stopped.  January 17, 1994, Discovery Research Project Report at MGA0013003 (C4).  However, because parties dispute this fact, Syngenta did *not* base its motion for summary judgment on a factual determination that the '835 patent does not disclose a gene that would work in monocots.  Instead, *Syngenta's motion is based on the undisputed fact that it was impossible for one of ordinary skill to conduct experiments to even make that determination as of the filing date of the '835 patent because monocot cells (including corn) could not be transformed as of that time.  See PGS*, 315 F.3d at 1339 ("Enablement is determined as of the effective filing date of the patent.").

Monsanto relies on *Amgen* and *In re Brana* for the proposition that post-filing declarations and publications may be relied on to show enablement.  D.I. 248 at 25 (citing *Amgen*, 314 F.3d at 1334 [*sic*, 1336] and *In re Brana*, 51 F.3d 1560, 1567 n.19 (Fed. Cir. 1995)).  What Monsanto leaves out is that such evidence must "prove that the disclosure was in fact enabling *when filed*."  *In re Brana*, 51 F.3d at 1567 n.19 (emphasis added).  As such, Dr. Fromm's declaration stating that DeKalb scientists created glyphosate resistant plants using the

**Redacted**

aroA gene in April 1993 is irrelevant because it does not address what could have been done as of the 1986 filing date of the '835 patent or the 1985 priority date claimed by Monsanto. D.I. 248, Ex. 7. There is no disputed issue of fact that monocots, such as corn, could not be transformed at that time. This argument applies equally to Gasser's declaration. In his declaration, Dr. Gasser states that using the teachings of the '835 patent, a plant expression vector with a corn EPSPS gene could be used to transform corn cells to impart glyphosate resistance. *Id.* at Ex. 6. While Syngenta disagrees with Dr. Gasser's position, the undisputed fact, as admitted by Monsanto, is that corn could not be transformed as of the '835 patent's 1986 filing date. D.I. 248 at 1. Thus, whether experimentation in the 1990s was or was not successful is irrelevant to the issue of enablement raised by Syngenta's motion and creates no genuine issue of material fact. Accordingly, while Monsanto's motion raises factual issues as to whether the '835 patent even discloses a gene that would work, such issues are not material to the actual motion filed by Syngenta and cannot preclude the entry of summary judgment.

- 17 -

III.   **CONCLUSION**

For all the above reasons, Syngenta submits that this Court should enter summary judgment that claims 1, 5, and 6 of the '835 patent are invalid under 35 U.S.C. § 112.


Respectfully submitted,


John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Of counsel:

Michael J. Flibbert
Howard W. Levine
Jennifer A. Johnson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000                              Attorneys for Defendants

Dated:  February 2, 2006

- 18 -

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on February 2, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

### BY FEDERAL EXPRESS

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation,*
*Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst*
*Seed Company, and Golden Harvest Seeds, Inc.*