IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY LLC,<br><br>      Plaintiffs,<br>v.<br><br>SYNGENTA SEEDS, INC.<br>SYNGENTA BIOTECHNOLOGY, INC., et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  C. A. No. 04-305 SLR<br>)  (Lead Case)<br>)<br>)<br>)  **PUBLIC VERSION**<br>) |
| DEKALB GENETICS CORPORATION,<br><br>      Plaintiff,<br>v.<br><br>SYNGENTA SEEDS, INC.,<br>SYNGENTA BIOTECHNOLOGY, INC., et al.<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT THAT THE SHAH '835 PATENT
IS NOT INVALID UNDER § 102 (e) OVER THE '925 PATENT**

OF COUNSEL:

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
(713) 787-1400

Dated: February 2, 2006
Public Version Dated: February 10, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Monsanto Company,
Monsanto Technology LLC, and
DEKALB Genetics Corporation*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................2

II.  ARGUMENT......................................................................................................2

     A.   Syngenta's Opposition Is Predicated Upon An Improper
          Construction Of The CTP/ESPSP "Fusion Polypeptide" Term ..................2

          1.   Syngenta's Proposed Claim Construction Impermissibly
               Reads An Extraneous "Heterologous" Limitation Into The
               Claims ..................................................................................................2

          2.   The Specification Of The '835 Patent Describes Both
               Homologous and Heterologous CTP/EPSPS Fusions ........................2

          3.   Syngenta's Proposed Construction Excludes Preferred
               Embodiments, Including pMON546...................................................2

          4.   Syngenta's Proposed Construction Is Inconsistent With The
               Prosecution History Of The '835 Patent.............................................2

     B.   Syngenta's Opposition Also Relies Upon A Misapplication Of
          Interference Law And The Applicable Law Under § 102(e) ......................2

          1.   Syngenta Misapplies Interference Case Law To The
               § 102(e) Analysis ................................................................................2

          2.   The "Rule 131" Cases Are Not Controlling In The § 102(e)
               Context, And Even So, The '925 Patent Is Indirectly
               Antedated ............................................................................................2

III. CONCLUSION...................................................................................................2

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) .................................................................................... 8

*In re Clarke*,
  356 F.2d 987 (C.C.P.A. 1966) ...................................................................................... 11

*Cooper v. Goldfarb*,
  154 F.3d 1321 (Fed. Cir. 1998) ............................................................................. 7, 8, 9

*In re Etter*,
  756 F.2d 852 (Fed. Cir. 1985 ....................................................................................... 10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  234 F.3d 558 (Fed. Cir. 2000) ....................................................................................... 8

*Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*,
  26 F.3d 1112 (Fed. Cir. 1994) ...................................................................................... 12

*Mahurkar v. C.R. Bard, Inc.*,
  79 F.3d 1572 (Fed. Cir. 1996) .................................................................................... 8, 9

*Pfizer, Inc. v. Teva Pharm. USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005) ..................................................................................... 5

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................................. 2, 3

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*,
  98 F.Supp.2d 362 (S.D.N.Y. 2000),
  *aff'd*, 237 F.3d 1359 (Fed. Cir. 2001) ......................................................................... 10

*In re Rainer*,
  390 F.2d 771 (C.C.P.A. 1968) ...................................................................................... 11

*In re Stempel*,
  241 F.2d 755 (C.C.P.A. 1957) ...................................................................................... 10

*Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*,
  872 F.2d 978 (Fed. Cir. 1989) ........................................................................................ 8

*In re Zletz*,
  893 F.2d 319 (Fed. Cir. 1989) ........................................................................................ 9

**Rules and Statutes**

35 U.S.C. § 102(e) .................................................................................................... *passim*

35 U.S.C. § 102(g) .................................................................................................... 7, 8, 9

35 U.S.C. § 282 ........................................................................................................ 10, 12

37 C.F.R. § 1.131 .................................................................................................... 10

37 C.F.R. § 1.601(f) ................................................................................................ 8

I.  **INTRODUCTION**

Plaintiffs respectfully submit this reply brief in support of their motion for summary judgment that the asserted claims of the '835 patent are not invalid under § 102(e) over the '925 patent. Syngenta's opposition is based upon its asserted claim construction for the term CTP/EPSPS fusion polypeptide that excludes homologous fusions, a construction that impermissibly reads an extraneous heterologous limitation into the claims, excludes a disclosed preferred embodiment, and ignores the specification and prosecution history of the '835 patent.

Syngenta also relies upon a misapplication of the law relating to § 102(e), arguing that even if its claim construction for fusion polypeptide is rejected, that Plaintiffs must establish that the inventors constructed a heterologous CTP/EPSPS fusion polypeptide that would antedate the '925 patent based upon a genus/species argument in the interference context. However, to antedate a reference under § 102(e), Plaintiffs need only establish that the inventors constructed an embodiment that met all the limitations of claim and determined that the invention would work for its intended purpose.

Although Syngenta claims that there are disputed issues of fact that would preclude summary judgment, Syngenta fails to expressly identify any genuine issues of material fact. Therefore, summary judgment is appropriate as a matter of law.

II.  **ARGUMENT**

  **A. Syngenta's Opposition Is Predicated Upon An Improper Construction Of The CTP/ESPSP "Fusion Polypeptide" Term**

Syngenta argues that Monsanto scientists did not invent a chimeric gene containing a CTP/EPSPS fusion polypeptide before the July 15, 1985 filing date of the '925 patent because the pMON546 construct relied upon by Plaintiffs employs a naturally

occurring (i.e., homologous) CTP/EPSPS fusion polypeptide, which Syngenta asserts does not fall within the scope of the properly construed claims of the '835 patent.[1] Notwithstanding lack of merit in that position, Syngenta does not dispute *any* of the facts surrounding the pMON546 construct that are set forth in Plaintiffs' Opening Brief ("Plaintiffs' Brief") at 4-6—all of which occurred prior to the July 15, 1985 filing date of the '925 patent. Syngenta does not dispute that Monsanto researchers assembled the pMON546 construct before July 15, 1985, nor does Syngenta dispute that Monsanto researchers demonstrated that this construct imparted glyphosate resistance before July 15, 1985. Thus, there is no factual dispute concerning the pMON546 construct.

Instead, Syngenta deems the pMON546 construct irrelevant because the construct contains a "naturally occurring CTP/EPSPS petunia gene" and thus, it cannot be a chimeric gene containing a CTP/EPSPS fusion polypeptide in accordance with its construction of the asserted claims of the '835 patent. [*See* Syngenta Brief at 16] But this position is necessarily predicated upon Syngenta's assumption that this Court will adopt its construction of the term CTP/EPSPS fusion polypeptide that is limited to "polypeptides where the CTP and EPSPS portions do not occur together in nature," and thus exclude the pMON546 construct from the § 102(e) analysis.[2] [*Id* at 1] However, as

---

[1] Because Plaintiffs need only show that they reduced their *own* invention to practice prior to the filing date of the '925 patent, it is not relevant for purposes of § 102(e) whether the '925 patent discloses the elements of the asserted '835 patent claims, what the '925 patent teaches, or whether the '925 patent is effective as of its earliest filing date. As such, Plaintiffs need not (and do not) concede any of these points as Syngenta asserts on page 1 of its opposition.

[2] Although the CTP/EPSPS fusion polypeptide term was previously construed by the Missouri court in 2003 to require a heterologous CTP and EPSPS, since the Missouri court's claim construction, the Federal Circuit's *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), has made clear that patent claims should be interpreted based on the intrinsic evidence. Because the Missouri court's construction

2

set forth below (and in more detail in Plaintiffs claim construction submissions), this is an improper construction of the term because (1) it impermissibly reads an extraneous "heterologous" limitation into the claims, (2) it ignores the specification of the '835 patent which discloses both homologous and heterologous constructs, (3) it excludes a preferred embodiment of the '835 patent, i.e., the pMON546 construct, and (4) it is inconsistent with the prosecution history of the '835 patent.

Accordingly, because there is no factual dispute concerning the pMON546 construct, Plaintiffs' motion for summary judgment should be granted if the proper claim construction for the term fusion polypeptide term is applied.

### 1. Syngenta's Proposed Claim Construction Impermissibly Reads An Extraneous "Heterologous" Limitation Into The Claims

The term "fusion polypeptide" means two or more dissimilar peptides, e.g., a CTP and an EPSPS, that have been joined together to create a polypeptide, whether those elements are found together in nature ("a homologous fusion" or "naturally occurring fusion") or are two elements that do not occur together in nature ("a heterologous fusion"). [See D.I. 203, Plaintiffs' Claim Construction Brief at 32] In accordance with Plaintiffs' claim construction, the pMON546 construct satisfies this limitation because it contains a homologous CTP/EPSPS fusion. If the inventors had intended to specify that the CTP and EPSPS were to come from different sources, they would have used the term "heterologous" in the claim as they did when describing the promoter. [Ex. 1, '835

---

did not properly accord the intrinsic evidence the weight it deserved in relation to the dictionary or lay meaning of the term "fusion," as mandated by the Federal Circuit's recent decision in *Phillips*, the Missouri court's construction of this term cannot be correct as a matter of law.

3

patent, col. 32, ll. 31-47 ("the promoter being *heterologous* with respect to the coding sequence ...")] But they did not and there is no such requirement in the claim.

### 2. The Specification Of The '835 Patent Describes Both Homologous and Heterologous CTP/EPSPS Fusions

Syngenta's proposed claim construction also ignores the fact that the specification of the '835 patent describes both heterologous and homologous CTP/EPSPS fusion polypeptides. A majority of the examples describe homologous plant CTP/EPSPS fusions (Examples 1-7 and 10-17), whereas Examples 8-9 describe a heterologous plant CTP/bacterial EPSPS construct. Moreover, the specification implicitly contemplates that homologous constructs would function in certain embodiments, because it specifically states "non-homologous" CTPs may function "in particular embodiments." [Ex. 1, '835 patent, col. 4, ll. 43-45]

Syngenta's reliance on Example 8 cannot support a claim construction that would exclude all other examples from the specification. [*See* D.I. 215, Syngenta's Claim Construction Brief at 38-39] Example 8 was added along *with* Examples 5-7, 10, and 14-17—all of which involve homologous CTP/EPSPS coding sequences. [Ex. 14, Serial No. 06/763,482 at 0005243-62, attached hereto] As Plaintiffs' Claim Construction Brief discusses, this and other activity by the Applicants during prosecution, such as filing a declaration (which the PTO accepted) to antedate certain references based on the discovery of a homologous CTP/EPSPS fusion polypeptide, is inconsistent with Syngenta's suggestion that the Applicants meant to abandon all non-heterogeneous CTP/EPSPS subject matter when they added the word "fusion" to the claims. [*See* D.I. 203, Plaintiffs' Claim Construction Brief at 36-37]

4

### 3. Syngenta's Proposed Construction Excludes Preferred Embodiments, Including pMON546

Homologous fusions such as pMON546 are described within the specification of the '835 patent as preferred embodiments. Hence, Syngenta's proposed construction would exclude preferred embodiments, a result that is rarely, if ever, correct. *See Pfizer, Inc. v. Teva Pharm USA, Inc.*, 429 F.3d 1364, 1374 (Fed. Cir. 2005). For example, Figure 1 describes the creation and use of a homologous petunia CTP/EPSPS construct and the specification states that "Figure 1 depicts the major steps used in one preferred embodiment of this invention." [Ex. 1, '835 patent, col. 2, ll. 41-42] And, it is uncontroverted that the steps used in that "preferred embodiment" resulted in the production of a homologous fusion—an EPSPS gene that contained the CTP fused to the EPSPS with which it occurs in nature. Examples 1-7 are included as "preferred embodiments of this invention." [*Id.*, col. 6, ll. 10-11]

Syngenta's proposed construction excludes from the scope of the claims all of the Examples that describe homologous CTP/EPSPS coding sequences, i.e., 16 of the 19 Examples in the patent. Indeed, several of these describe work with pMON546, the very construct that Syngenta has deemed irrelevant to Plaintiffs' motion. Specifically, Example 1 describes the creation of pMON546, a vector which utilizes a coding sequence for a chloroplast transit peptide and EPSPS both from petunia. [*Id.*, col. 6-16] Examples 2 and 3 describe creating glyphosate resistant petunia cells and tobacco cells, respectively, using pMON546. [*Id.*, col. 16-17] In addition, Examples 5-7 describe the use of plant transformation vectors similar to pMON546, except that the CTP/EPSPS coding sequences are obtained from cotton, oil seed rape, and flax, respectively. [*Id.*, col. 19-21] Examples 10-17 describe other work with homologous fusions. [*Id.*, col. 24-28]

### 4. Syngenta's Proposed Construction Is Inconsistent With The Prosecution History Of The '835 Patent

Syngenta's proposed construction of the term fusion polypeptide is not in accord with the prosecution history. [*See* D.I. 203, Plaintiffs' Opening Claim construction Brief at 35-37] For example, the final patent application added descriptions of heterologous CTP/EPSPS constructs, notably Examples 8 and 9, but also included the same petunia CTP/EPSPS constructs as in the first and second patent applications and added others describing homologous CTP/EPSPS coding sequences, including Examples 5-7, 10, and 14-17. [Ex. 14, Serial No. 06/763,482 at 0005204-270] If the inventors had intended to exclude all embodiments describing homologous CTP/EPSPS fusion constructs by adding the term "fusion polypeptide" in the final patent application, as Syngenta claims, why would they also carry forward the examples from the first and second patent applications and add Examples 5-7, 10, and 14-17, all of which describe homologous CTP/EPSPS constructs?

During prosecution, inventor Dr. Shah provided a declaration directed to his cloning of the homologous CTP/EPSPS gene from petunia to establish certain facts concerning the invention date at a time when the claims recited a "CTP/EPSPS fusion polypeptide." [*Id.*, 0005357-62] Had the claims required a heterologous fusion as Syngenta claims, why would such a declaration have been relevant or accepted by the PTO? Simply put, Syngenta's arguments in its opposition here (and in its claim construction submissions) should be rejected because its proposed construction relies on extrinsic evidence and impermissibly reads extraneous limitations into the claims.

### B. Syngenta's Opposition Also Relies Upon A Misapplication Of Interference Law And The Applicable Law Under § 102(e)

Syngenta argues that even if its claim construction is rejected for fusion polypeptide, Plaintiffs must establish that the inventors constructed a *heterologous* CTP/EPSPS fusion polypeptide that would antedate the '925 patent for purposes of § 102(e) based upon a genus/species argument in the interference context. [Syngenta Brief at 17 *et seq.*] However, to antedate a reference under § 102(e), Plaintiffs need only establish that the inventors constructed an embodiment that met all the limitations of claim and determined that the invention would work for its intended purpose. *See* Cooper v. Goldfarb, 154 F.3d 1321, 1327 (Fed. Cir. 1998). Moreover, even if the disclosure of a *homologous* CTP/EPSPS polypeptide (such as pMON546) was arguably insufficient to directly antedate a reference that purportedly discloses a *heterologous* CTP/EPSPS polypeptide (such as the '925 patent) as Syngenta argues, Syngenta has admitted that the '925 patent has been indirectly antedated because a heterologous construct would have been obvious to one of ordinary skill in the art once pMON546—a homologous CTP/EPSPS fusion polypeptide—was reduced to practice. Moreover, it is undisputed that Plaintiffs made a heterologous construct before the filing date of the '925 patent.

#### 1. Syngenta Misapplies Interference Case Law To The § 102(e) Analysis

In arguing that Plaintiffs has to invent a heterologous construct in order to antedate the '925 patent under § 102(e), Syngenta misconstrues Plaintiffs' reliance upon *Cooper* and misapplies interference law under § 102(g). [*See* Syngenta's Brief at 18, citing Cooper, 154 F.3d at 1327] Although the § 102(g) reduction to practice standard

7

from *Cooper* is analogous to the § 102(e) priority analysis, it does not stand for the proposition (nor have Plaintiffs argued) that a § 102(e) analysis is to be resolved using interference counts to determine priority, as Syngenta suggests. [*See* Syngenta Br. at 18-19] As recognized by the Federal Circuit in *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed. Cir. 1996), the standard for an actual reduction to practice in priority contests is one of "several rules of law *borrowed* from the interference context." *Id.* at 1576 (emphasis added).

As set forth in *Cooper*, "to establish an actual reduction to practice in an interference under § 102(g), an inventor must prove that: (1) he constructed an embodiment ... that met all the limitations of the interference count; and (2) he determined that the invention would work for its intended purpose." *Cooper*, 154 F.3d at 1327. This standard is also applicable in the § 102(e) context, although with one important difference—the constructed embodiment must meet the limitations of the claim, not an interference count. *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 983-84 (Fed. Cir. 1989), *overruled by A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (regarding laches defense) *abrogated by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558 (Fed. Cir. 2000) (regarding prosecution history estoppel).

Under 37 C.F.R. § 1.601(f), a "count defines the interfering subject matter between two or more applications or between one or more applications and one or more patents." However, "[u]nder 35 U.S.C. § 102(e), the entire disclosure of [the '925 patent] specification is effective as a reference, but only as of [its] filing date." *Sun Studs*, 872 F.2d at 983-84. Accordingly, "the *disclosure* in a ... United States patent does not fall

8

under 35 U.S.C. § 102(g) but under 35 U.S.C. § 102(e) .... But when the subject matter sought to be antedated is *claimed* in the reference patent ... an interference [under 102(g)] must be had to determine priority." *In re Zletz*, 893 F.2d 319, 323 (Fed. Cir. 1989) (emphasis added). Here, Syngenta has asserted that the allegedly anticipatory subject matter is *disclosed* (but not claimed) in the '925 patent specification.[3] Therefore, it is unnecessary to first define the interfering subject matter between the '835 and '925 patents—Plaintiffs need only show that they reduced their *own* invention to practice first.[4] *See Mahurkar*, 79 F.3d at 1577.

Having misapprehended the application of *Cooper*, Syngenta then argues—without any supporting case law—that Plaintiffs' claim construction of the term CTP/EPSPS fusion polypeptide covers a genus of "patentably distinct species." [Syngenta Br. at 19] Through this artificial construction, Syngenta implicitly argues that the scope of the claim should be limited because it is purportedly directed to two separately patentable inventions. Although the term "fusion polypeptide" is directed to a genus that includes both homologous and heterologous fusions, it is nonetheless a *single* claim to a *single* invention. It simply does not follow that a claim to a genus gives rise to multiple, patentably distinct inventions. Syngenta's argument should be recognized for what it is—another attempt to insert the very same limitations to a claim, as discussed above.

Applying the correct legal analysis, Plaintiffs need only show that they conceived of and reduced to practice the invention claimed in the '835 patent. Applying the proper

---

[3] The '925 patent claims are directed generically to plants, unlike the asserted claims of the '835 patent which are directed to chimeric genes. Hence, the claimed subject matter is different.

[4] *See* footnote 1, *supra*.

9

construction of "fusion polypeptide," there can be no dispute that the pMON546 construct is an embodiment of the claimed invention and that Monsanto scientists conceived of and reduced this invention to practice before the '925 patent priority date. Accordingly, summary judgment should be granted in favor of Plaintiffs that the '925 patent is not § 102(e) prior art.

### 2. The "Rule 131" Cases Are Not Controlling In The § 102(e) Context, And Even So, The '925 Patent Is Indirectly Antedated

Syngenta also asserts that a series of "Rule 131"[5] cases are controlling in an attempt to elevate the standard that Plaintiffs must meet in order to antedate the '925 patent under § 102(e). Not only has Syngenta failed to cite a *single* district court patent infringement case that has applied Rule 131 in this context, but "37 C.F.R. § 1.131 applies by its terms only to 'any claim of any application or patent under reexamination' in the Patent Office, where the present proceeding is district court litigation." *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 98 F.Supp.2d 362, 386 (S.D.N.Y. 2000), *aff'd*, 237 F.3d 1359 (Fed. Cir. 2001). The Federal Circuit has explicitly distinguished Patent Office proceedings from litigation, noting that different rules of procedure apply to each. *See In re Etter*, 756 F.2d 852, 857-58 (Fed. Cir. 1985 (en banc) (presumption of validity pursuant to 35 U.S.C. § 282 applies only to litigation, not to Patent Office proceedings).

Nonetheless, Syngenta cites *In re Stempel*, 241 F.2d 755 (C.C.P.A. 1957) for the proposition that Plaintiffs would have to show prior possession of heterologous

---

[5] Rule 131 refers to 37 C.F.R § 1.131 which provides a mechanism for a patent applicant to submit a declaration or affidavit to antedate a prior art reference.

polypeptides to antedate the '925 patent. [Syngenta Br. at 20] However, because homologous and heterologous polypeptides are the *only* constructions for the term CTP/EPSPS "fusion polypeptide" at issue, Syngenta essentially is requiring that Plaintiffs show that they possessed *all* embodiments of the claimed invention to show actual reduction to practice. That simply is not required to antedate an alleged § 102(e) reference under established Federal Circuit law. [*See* Plaintiffs' Brief at 8-9] Even if the cited Rule 131 cases were somehow analogous to the present situation, Plaintiffs can still establish that possession of the homologous CTP/EPSPS polypeptides is enough to support possession of entire "genus." "A showing of a prior reduction to practice of every embodiment of the inventions is, of course, not required." *In re Rainer*, 390 F.2d 771, 774 (C.C.P.A. 1968).

As Syngenta acknowledges [Syngenta Brief at 20], "in an appropriate case a single species could be sufficient to antedate indirectly a different species of a reference." *In re Clarke*, 356 F.2d 987, 992 (C.C.P.A. 1966). A reference is indirectly antedated "[w]hen that species of the generic invention which has been completed prior to the effective date of the reference would make obvious to one of ordinary skill in the art the species disclosed in the reference." *In re Rainer*, 390 F.2d at 774. Although Syngenta asserts that "Monsanto has made no such showing" that the "naturally occurring CTP/EPSPS ... rendered the synthetic CTP/EPSPS construct ... unpatentably obvious," Syngenta has failed to submit *any* evidence that the heterologous (i.e., synthetic) construct would have been non-obvious once a homologous construct has been reduced

to practice.[6] Moreover, "[u]nder 35 U.S.C. § 282, a patent is presumed valid and one challenging its validity bears the burden of proving invalidity by clear and convincing evidence." *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994). Not only can Syngenta not make this showing by clear and convincing evidence, but Syngenta's own expert, Dr. Bruce, testified that a non-homologous (i.e., heterologous or synthetic) construct *would have been obvious* to one of ordinary skill in the art before the July 15, 1985 filing date of the '925 patent:

> Q. I'm at column 4, line 40. "Although there is little homology between the CTP sequences of the EPSPS gene and the ssRU-BISCO gene," and then they cite a reference to the RUBISCO gene, "one may find that non-homologous CTPs may function in particular embodiments."
> So you're saying there that that statement that's made there under the detailed description of the invention is something that everybody would have known as of January 1985?
>
> A. Well, this -- this disclosure came out in July of '86.
>
> Q. Right. But you're saying that this was something that people of ordinary skill in the art would already have known as of January 1985; is that correct, based upon --
>
> A. Yes.
>
> Q. -- the disclosure?

[Ex. 15, Bruce Tr. 194:12–195:4, attached hereto]

Moreover, even if the heterologous construct would not have been obvious, Syngenta has admitted that Plaintiffs were in *possession* of a heterologous construct before the July 15, 1985 filing date and that it was subsequently shown to be capable of providing glyphosate resistance. In its opposition brief, Syngenta specifically asserts that

---

[6] Plaintiffs contend that the '835 invention would not have been obvious to one of ordinary skill in the art as of the '925 patent filing date. Once a homologous CTP/EPSPS construct has been reduced to practice, however, the heterologous CTP/EPSPS construct would have been obvious to one of ordinary skill.

12

"[t]here is no dispute that pMON542 encodes a fusion polypeptide," and that the pMON542 "petunia CTP/bacterial EPSPS fusion polypeptide" is referred to in a "May 1985 Monsanto Monthly Report," unquestionably prior to the July 15, 1985 filing date of the '925 patent. [Syngenta Br. at 7]  It is also undisputed (and Syngenta specifically asserts) that "pMON542 was capable of providing glyphosate resistance." [Syngenta Br. at 9]  Hence, there is no dispute that Plaintiffs also possessed a heterologous CTP/EPSPS fusion polypeptide prior to the '925 filing date.

Thus, even under Syngenta's Rule 131 analysis, the '925 patent cannot serve as invalidating prior art under § 102(e) for the asserted claims of the '835 patent.

### III. CONCLUSION

In view of the foregoing, as well as the facts and legal authorities discussed in Plaintiffs' Opening Brief, Plaintiffs respectfully request that this Court enter judgment that the the asserted claims of the '835 patent are not invalid as a matter of law under 35 U.S.C. § 102 (e) over the '925 patent. Moreover, this Court should reject Syngenta's closing request that this Court "grant summary judgment that claims 1, 5, and 6 of the '835 patent are invalid as anticipated under 35 U.S.C. § 102(e)," because Syngenta has not moved for such relief and is therefore not entitled to summary judgment. [See Syngenta Br. at 23]

        Respectfully submitted,

        POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002
Telephone (713) 787-1400

Dated: February 2, 2006
Public Version Dated: February 10, 2006

719331

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Telephone (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 10, 2006, the attached document was hand delivered on the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on February 10, 2006, I have Electronically Mailed the foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Thomas A. McGrath III
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
rschwed@shearman.com

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
   Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413
michael.flibbert@finnegan.com
don.burley@finnegan.com
howard.levine@finnegan.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

700765