*282*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*,          )
                                     )
                    Plaintiffs,      )
                                     )
            v.                       )        C.A. No.: 04-305-SLR (Consol.)
                                     )
SYNGENTA SEEDS, INC., *et al.*,      )        **RESTRICTED CONFIDENTIAL –**
                                     )        **FILED UNDER SEAL**
                    Defendants.      )

**SYNGENTA SEEDS, INC., SYNGENTA CORPORATION,
SYNGENTA BIOTECHNOLOGY, INC., ADVANTA USA, INC., GARST SEED
COMPANY, AND GOLDEN HARVEST SEEDS, INC.'S ANSWERING
BRIEF IN OPPOSITION TO MONSANTO'S MOTION TO COMPEL**

<div style="margin-left:40%">

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell  (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta
Corporation, Syngenta Biotechnology, Inc., Advanta
USA, Inc., Garst Seed Company, and Golden Harvest
Seeds, Inc.*

</div>

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY  10022-6069
(212) 848-4000

Heather Lamberg Kafele
Shaniek Mills Maynard
Jonathan R. DeFosse
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2634
(212) 508-8000

Dated:  February 6, 2006

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................iii

NATURE AND STAGE OF THE PROCEEDINGS AND SUMMARY OF ARGUMENT ............. 1

STATEMENT OF FACTS ........................................................................................................ 4

      A.    Syngenta Seeks Legal Advice at the Offices of Its Outside Counsel ......................... 4

      B.    Syngenta's In-House Patent Attorney Drafts a Memo Reflecting Legal Advice and Litigation Strategy Provided During the Meeting................................................. 6

      C.    Syngenta Undertakes a Massive Production of Documents in this Case..................... 6

      D.    Syngenta Implements a Multi-Level Review Procedure to Prevent Disclosure of Privileged Documents ..................................................................................................... 7

      E.    Inadvertent Production of the Flattery Memo............................................................. 8

ARGUMENT ......................................................................................................................... 10

I.    THE FLATTERY MEMO IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE............................................................................................................... 10

      A.    The Flattery Memo Reflects Confidential Communications Between Attorneys and Their Client ....................................................................................................... 11

      B.    The Purpose of the Memo Was to Provide Legal Advice........................................... 12

            1.    The plain text of the Memo reflects legal advice................................ 14

            2.    The Memo does not offer business advice......................................... 16

      C.    Syngenta Has Not "Placed in Issue" the Advice of Its Attorneys ............................. 17

      D.    Monsanto's Invocation of the Crime-Fraud Exception to Attorney-Client Privilege Is Baseless ................................................................................................... 19

            1.    Monsanto has not established a *prima facie* case of a crime or fraud ............................................................................................. 20

                 a.    Monsanto has not established that Mr. Resler committed a "fraud on the Court"......................................... 20

                 b.    Monsanto has not established that Syngenta's claims of sham patent litigation were a fraud ....................... 22

2.  Monsanto *has not even attempted* to establish the second prong of the crime-fraud exception – that the Flattery Memo is "in furtherance" of the alleged frauds .......................................................... 24

II.  THE FLATTERY MEMO IS PROTECTED BY THE ATTORNEY WORK PRODUCT DOCTRINE .......................................................................................... 25

A.  The Memo Was Prepared in Anticipation of Litigation ............................ 26

B.  The Memo Is Opinion Work Product and Is Discoverable Only in Rare and Exceptional Circumstances ............................................................................ 29

C.  Even Under the Standard for Ordinary Work Product, Monsanto Has Not Shown a Substantial Need for the Flattery Memo or Undue Hardship in Obtaining Equivalent Material from Another Source ............................................................ 30

III.  THE INADVERTENT PRODUCTION OF THE FLATTERY MEMO DOES NOT CONSTITUTE A WAIVER ........................................................................................ 31

A.  The Protective Order Agreed to by Monsanto Precludes a Finding of Waiver ......... 31

B.  Even Absent the Protective Order, the Inadvertent Production of the Flattery Memo Would Not Constitute Waiver ...................................................................... 33

CONCLUSION ....................................................................................................................... 39

## TABLE OF AUTHORITIES

### CASES

*American Optical Corp. v. Medtronic*, 56 F.R.D. 426 (D. Mass. 1972)..........................................29

*Aramony v. United Way of America*, 969 F. Supp. 226 (S.D.N.Y. 1997) ....................................35

*Asian Vegetable Research & Dev. Ctr. v. Institute of Int'l Educ.*, No. 94 CIV 6551, 1995
    WL 491491 (S.D.N.Y. Aug. 17, 1995) .........................................................................35

*Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992)..................................20

*Bartlett v. State Farm Mutual Auto Ins. Co.*, No. IP01-0510, 2002 WL 1048825 (S.D. Ind.
    May 22, 2002)...........................................................................................................30

*Berg Electronic, Inc. v. Molex, Inc.*, 875 F. Supp. 261 (D. Del. 1995) ..........................33, 37, 38

*Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109 (7th Cir. 1983) ...........................26

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.* No. IP96-1718, 2001 WL 699850 (S.D.
    Ind. May 29, 2001).......................................................................................................32

*In re Cendant Corp. Securities Litigation*, 343 F.3d 658 (3d Cir. 2003)......................................26

*Coleman v. ABC*, 106 F.R.D. 201 (D.D.C. 1985) ..............................................................12, 13

*Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985)............................11

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) .......................................3

*Delaware State Bar Ass'n v. Alexander*, 386 A.2d 652 (Del. 1978).............................................15

*FMC Corp. v. R.W. Christy, Inc.*, No. 88-5793, 1988 WL 76097 (E.D. Pa. July 15, 1988) .. 12, 16

*Federal Election Comm'n v. Christian Coalition*, 178 F.R.D. 456 (E.D. Va. 1998)....................20

*Fleet Business Credit Corp. v. Hill City Oil Co., Inc.*, No. 01-02417, 2002 WL 31741282
    (W.D. Tenn. 2002) .....................................................................................................12

*In re Ford Motor Company*, 110 F.3d 954 (3d Cir. 1997)............................................3, 12, 13, 16

*Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695 (10th Cir. 1998)..............................18

*In re Grand Jury (Impounded)*, 138 F.3d 978 (3d Cir. 1998).................................................25, 38

*In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979) ..............................................26, 27

*In re Grand Jury Proceedings*, 604 F.2d 798 (3d Cir. 1979) ........................................ 26

*In re Grand Jury Subpoena*, 223 F.3d 213 (3d Cir. 2000)...................................... 20, 24

*In re Grand Jury Subpoena*, 357 F.3d 900 (9th Cir. 2004) .......................................... 28

*In re Grand Jury Subpoena*, 419 F.3d 329 (5th Cir. 2005) .......................................... 24

*Haines v. Liggett Group Inc.*, 975 F.2d 81 (3d Cir. 1992)........................................... 26

*Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) ..................................................... 19

*In re Hechinger Investment Co.*, 303 B.R. 18 (D. Del. 2003) ...................................... 37

*Helman v. Murray's Steaks, Inc.*, 728 F. Supp. 1099 (D. Del. 1990) ........................... 38

*Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136 (D. Del. 1977) ............................... 11, 15, 28, 38

*Hickman v. Taylor*, 329 U.S. 495 (1946)................................................................. 31

*In re International Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235 (5th Cir. 1982)................. 31

*James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138 (D. Del. 1982)............................ 26, 27, 28, 29

*Jinks-Umstead v. England*, 232 F.R.D. 142 (D.D.C. 2005)......................................... 30

*Johnson Matthey, Inc. v. Research Corp.*, No. 01CIV8115, 2002 WL 1728566 (S.D.N.Y. July 24, 2002)........................................................................................... 19

*In re LTV Sec. Litig.*, 89 F.R.D. 595 (N.D. Tex. 1981) .............................................. 12

*Laurino v. Tate*, 220 F.3d 1213 (10th Cir. 2000)...................................................... 20

*Lazar v. Mauney*, 192 F.R.D. 324 (N.D. Ga. 2000)................................................... 37

*Marchello v. Chase Manhattan Auto Finance Corp.*, 219 F.R.D. 217 (D. Conn. 2004)............... 31

*Martin v. American Bankers Life Assur. Co. of Florida*, 184 F.R.D. 263 (D.V.I. 1998) ............. 18

*Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252 (3d Cir. 1993).............................. 27

*Marusiak v. Adjustable Clamp Co.*, No. 01 C 6181, 2003 WL 21321311 (N.D. Ill. June 5, 2003) ................................................................................................... 13

*McCrink v. Peoples Benefit Life Ins. Co.*, No. 04-CV-1068, 2004 WL 2743420 (E.D. Pa. Nov. 29, 2004) .................................................................................................................. 19

*McQueen v. United States*, 264 F. Supp. 2d 502 (S.D. Tex. 2003) ............................................ 28

*Minebea Co. v. Papst*, 370 F. Supp. 2d 297 (D.D.C. 2005) .................................................. 32, 37

*Monsanto Co. v. Aetna Cas. & Sur. Co.*, No. 88C-JA-118, 1994 WL 315238 (Del. Super. May 31, 1994).................................................................................................................... 33

*Montgomery County v. Microvote Corp.*, 175 F.3d 296 (3d Cir. 1999) ....................................... 10

*Multiform Dessicants, Inc. v. Stanhope Products Co.*, 930 F. Supp. 2d 45 (W.D.N.Y. 1996)..... 18

*Myers v. City of Highland Village, Texas*, 212 F.R.D. 324 (E.D. Tex. 2003) ............................... 37

*National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980 (4th Cir. 1992) ............. 26

*Phoenix Canada Oil Co. v. Texaco, Inc.*, 658 F. Supp. 1061 (D. Del. 1987)................................. 22

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 CIV 7590, 1997 WL 736726 (S.D.N.Y. Nov. 26, 1997) .................................................................................................. 32

*Public Service Company of New Mexico v. Lyons*, 129 N.M. 487 (N.M. App. 2000) .................. 19

*Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 200 F.R.D. 183 (W.D.N.Y. 2001) ................................................................................................................................. 29

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994)............. 10, 17, 18, 19

*In re Richard Roe*, 68 F.3d 38 (2d Cir. 1995)...................................................................... 24, 25

*SEC v. Treadway*, 229 F.R.D. 454 (S.D.N.Y. 2005) ............................................................. 30, 31

*Sampson Fire Sales, Inc. v. Oaks*, 201 F.R.D. 351 (D.N.J. 2001).............................. 33, 36, 37, 38

*Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574 (D.C. Cir. 1987)............. 27

*Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987), *cert. denied*, 484 U.S. 917 (1987).................................................................................................................................. 26

*SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2005 WL 2436662 (E.D. Pa. Sept. 28, 2005) .................................................................................................................. 19

*In re Special September 1978 Grand Jury (II)*, 640 F.2d 49 (7th Cir. 1980) ................................ 29

*State v. Hydrite Chemical Co.*, 220 Wis. 2d 51 (Wis. App. 1998) ................................................ 18

*Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 47 F.R.D. 334 (S.D.N.Y. 1969) ............. 28

*Super Tire Eng'g Co. v. Bandag, Inc.*, 562 F. Supp. 439 (E.D. Pa. 1983) .................................... 12

*Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454 (N.D. Ill. 1974), *aff'd,*
    534 F.2d 330 (7th Cir. 1976) ................................................................................... 28, 29

*In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation,*
    MDL No. 764, 1990 WL 90495 (E.D. Pa. June 27, 1990) ................................................ 37

*Trustmark Ins. Co. v. General & Cologne Life Re of America*, No. 00 C 1926, 2000 WL
    1898518 (N.D. Ill. Dec. 20, 2000) ...................................................................................... 30

*U.S. v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ...................................................................... 26, 28

*U.S. v. Nobles*, 422 U.S. 225 (1975) ..................................................................................... 25, 26

*Unauthorized Practice of Law Committee of Supreme Court of Colorado v. Prog*, 761 P.2d
    1111 (Colo. 1988) ................................................................................................................ 15

*United States v. Doe*, 429 F.3d 450 (3d Cir. 2005) ....................................................................... 20

*United States v. Pepper's Steel & Alloys, Inc.*, 742 F. Supp. 641 (S.D. Fla. 1990) ...................... 37

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .......................................................... 11, 12, 39

*VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8 (D. Mass. 2000) ....................................................... 32

*Ventre v. Datronic Rental Corp.*, No. 92 C 3289, 1995 WL 42345 (N.D. Ill. Feb. 2, 1995) ....... 24

*Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir. 1991) ............. 25

## STATUTES AND RULES

Fed. R. Civ. P. 26(b) ...................................................................................................................... 11

## MISCELLANEOUS

ABA Model Rule 4.4 ....................................................................................................................... 36

D. Del. Default Standard for Discovery of Elec. Documents 8, *available at*
    http://www.ded.uscourts.gov/OrdersMain.htm ................................................................... 36

Paul R. Rice, Attorney-Client Privilege in the United States (2d ed. 1999) ................................ 13

Plaintiff-Counterclaim Defendant Syngenta Seeds, Inc. and Counterclaim Defendants

Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company,

and Golden Harvest Seeds, Inc. respectfully submit this answering brief in opposition to the Motion

to Compel Production of Documents filed by Monsanto Company and Monsanto Technology LLC

(collectively "Monsanto").

### NATURE AND STAGE OF THE PROCEEDINGS AND SUMMARY OF ARGUMENT

The memorandum at issue in this motion (the "Flattery Memo" or "Memo") is privileged. It

was written by an attorney. It reflects legal advice rendered by at least five in-house and outside

counsel at a meeting that took place at the offices of Syngenta's outside patent counsel.

**REDACTED**

Indeed, Monsanto itself apparently recognized that this document

had been inadvertently produced, but opted to attach it as an exhibit to a brief, rather than notifying

Syngenta of the inadvertent production (as is required by the ABA Model rules). Not surprisingly,

Monsanto barely addresses these aspects of the privileged memorandum, but instead makes arguments

that are remarkable in at least four respects.

*First*, while it is styled as a motion to compel, the primary purpose of Monsanto's motion

appears to be to re-argue the motion to dismiss for lack of personal jurisdiction filed by Syngenta AG

and Syngenta Participations AG. Although that motion has been fully briefed for nearly a month,

Monsanto inexplicably dedicates substantial portions of its "motion to compel" to arguments that are

unabashedly related only to issues of personal jurisdiction. (*See, e.g.*, Monsanto Opening Brief in

Support of Its Motion to Compel Production of Documents ("Monsanto Br.") at 6–9 (purporting to

establish that Syngenta AG dominates and controls its U.S. subsidiaries).) Rather than accept

Monsanto's invitation to re-brief the jurisdictional issues, Syngenta refers the Court to the briefs

1

previously submitted on this issue, which demonstrate *in detail* why Syngenta AG and Syngenta Participations AG are not subject to jurisdiction in Delaware.

*Second*, Monsanto launches an all-out attack on the honesty, integrity and competency of Syngenta's employees and attorneys. Indeed, Monsanto goes so far as to accuse Edward C. Resler, General Counsel, Plant Science, for Syngenta Seeds, Inc., of committing *fraud on this Court* by submitting a false declaration in support of Syngenta AG's motion to dismiss. Monsanto, however, fails to present a single shred of evidence to corroborate these serious and offensive charges. And even a casual reading of Mr. Resler's declaration demonstrates that it is fully supported by the evidentiary record.

**REDACTED**

2

**REDACTED**

After sifting through Monsanto's various jurisdictional arguments and salacious allegations of fraud and misappropriation, the purpose of those distractions becomes clear – Monsanto's motion to compel is completely groundless. Indeed, it is hard to imagine a more clearly privileged document than the legal memo – drafted by one of Syngenta's in-house attorneys – at the heart of Monsanto's motion.

**REDACTED**

the Third Circuit's decision in *In re Ford Motor Company*, 110 F.3d 954, 965 (3d Cir. 1997) makes clear that such communications are privileged.

The memo also is protected attorney work product.    **REDACTED**

Monsanto has not demonstrated any exceptional circumstances that would allow it to avoid application of the work product doctrine.

Monsanto's alternative arguments for compelling production of the document despite its privileged status – *i.e.*, crime-fraud, "at issue" waiver, and lack of inadvertence – are completely

3

baseless. In short, Syngenta has never placed the advice of its attorneys at issue; the advice reflected in the privileged document is not even alleged to have been given in furtherance of a crime or fraud; and Syngenta put in place extensive precautions to avoid inadvertent disclosures, but, due to the massive size of the document review (an estimated 19 million pages) and a simple oversight by an attorney-reviewer, the privileged document was mistakenly produced.

The Court thus should deny Monsanto's motion to compel.

## STATEMENT OF FACTS

### A.    Syngenta Seeks Legal Advice at the Offices of Its Outside Counsel

In early 2004, Syngenta acquired the rights to GA21, a glyphosate-resistant corn trait, from Bayer CropScience ("Bayer"). (Declaration of Edward C. Resler in Support of Syngenta Seeds, Inc.'s Answering Brief in Opposition to Monsanto's Motion to Compel ("Resler Decl.") at ¶ 3.) Although this acquisition enabled Syngenta to enter the U.S. market for glyphosate-resistant corn traits, Syngenta still needed a supply of GA21 source material. In February 2004, Syngenta was considering at least two optional GA21 germplasm sources: (1) GA21 germplasm produced under a research evaluation agreement ("Evaluation Agreement") with Bayer; and (2) GA21 germplasm produced by other U.S. seed companies that had license agreements with Monsanto. (*Id.*; Declaration of Richard F. Schwed ("Schwed Decl."), Ex. 2 (Oct. 14, 2002 research evaluation agreement with Bayer).)


**REDACTED**


4

**REDACTED**

**REDACTED**

**B.**    **Syngenta's In-House Patent Attorney Drafts a Memo Reflecting Legal Advice and Litigation Strategy Provided During the Meeting**

**REDACTED**

**C.**    **Syngenta Undertakes a Massive Production of Documents in this Case**

On April 26, 2005, the Court entered a scheduling order setting October 21, 2005 as the document production deadline. (Declaration of Heather Lamberg Kafele ("Kafele Decl.") at ¶ 2.) To respond to Monsanto's wide-ranging document requests by the deadline, Syngenta launched a massive document collection and production effort. (*Id.*) Shearman & Sterling LLP attorneys visited seven

6

locations across the United States and interviewed 200 Syngenta employees. (*Id.* at ¶ 3.) Hard copy and electronic files were collected from 170 employees. (*Id.*)

Once these documents – totaling an estimated *19 million pages* – were collected, they needed to be reviewed by attorneys for responsiveness, confidentiality, and privilege. Syngenta employed 99 professionals (attorneys, paralegals, and litigation support personnel) to conduct and assist in this review. (Kafele Decl. at ¶¶ 4-5.) The entire process was handled electronically – *i.e.*, both paper and electronic documents were loaded into an electronic document repository and attorneys reviewed images of the documents using an interactive computer program. (*Id.* at ¶ 6.) Ultimately, Syngenta produced nearly three million pages of documents. (*Id.* at ¶ 7.)

### D.    Syngenta Implements a Multi-Level Review Procedure to Prevent Disclosure of Privileged Documents

In producing these documents, Syngenta used a multi-level review system to identify and prevent the inadvertent production of privileged documents. (Kafele Decl. at ¶ 8.) During the first-level review, attorneys were asked to electronically code documents in two areas: (1) responsiveness to Monsanto's document request; and (2) potential privilege. (*Id.* at ¶ 9.) If an attorney conducting the first-level review deemed a document to be potentially subject to attorney-client privilege or the attorney work product protection, he or she selected a "checkbox" identifying the document as having "Privilege Issues." (*Id.*)

Once documents passed through the first-level review, they then were subjected to a second-level review to verify the first reviewers' determinations of responsiveness and ensure that all potentially privileged documents had been segregated for further review. (Kafele Decl. at ¶ 10.) At this time, confidentiality designations also were assigned to the documents (*i.e.*, "confidential" or "restricted confidential"). (*Id.*) These confidentiality designations were assigned to all documents during the

7

second-level review, regardless of whether the documents were deemed to be potentially privileged. (*Id.*)

In addition to these two levels of review, an electronic word search was performed on all responsive documents to identify any additional documents that were potentially privileged. (Kafele Decl. at ¶ 11.)  Any documents containing one of the selected keywords (*e.g.*, "attorney-client privilege") were segregated for a further privilege review. (*Id.*)  This electronic word search, like the first two levels of review, was undertaken as a precaution to prevent the disclosure of privileged documents. (*Id.*)

Finally, a group of attorneys who were specifically trained on privilege issues reviewed documents that had been segregated as potentially privileged. (Kafele Decl. at ¶ 12.)  This team first determined whether the potentially privileged documents in fact were protected by the attorney-client privilege and/or attorney work product doctrine, and drafted the entry on Syngenta's privilege log. (*Id.*)  Next, the documents designated for production were checked to ensure that no privileged documents were produced. (*Id.*)

### E.    Inadvertent Production of the Flattery Memo

In the Fall of 2005, in an effort to ensure that the greatest number of responsive, non-privileged documents were produced by the deadline, Syngenta assigned several attorneys to conduct an initial privilege review of documents that had been set aside as potentially privileged. (Kafele Decl. at ¶ 13.)  The goal of this initial privilege review was to determine whether Syngenta had been over-inclusive and set aside documents that clearly were not attorney-client privileged. (*Id.*)  Reviewers were instructed that if there was any possibility of privilege, the document was to remain segregated for the privilege review team. (*Id.*)  As with the rest of Syngenta's review, the initial privilege review was conducted electronically. (*Id.* at ¶ 14.)  The reviewers had two checkboxes to choose from: "Privileged" and "Not Privileged." (*Id.*)

8

Syngenta's document collection included 15 copies of the Flattery Memo. (Kafele Decl. at ¶ 16.) All 15 copies had been segregated as potentially privileged and were included in the initial privilege review. (*Id.* at ¶ 17.) Fourteen of the copies were withheld from production on the grounds of attorney-client privilege and attorney work product.[2] (*Id.* at ¶ 16.) One of the copies was inadvertently marked for production when an attorney mistakenly clicked the "Not Privileged" box during the initial privilege review. (Declaration of Charles M. Mattfeldt Jr. ("Mattfeldt Decl.") at ¶ 9.) This production was inadvertent. (*Id.* at ¶ 10.) Indeed, the same reviewer had previously reviewed a different version of the Flattery Memo and marked it as potentially privileged. (Mattfeldt Decl. at ¶ 7.) Syngenta did not intend to waive its claims of attorney-client privilege or work product immunity over this document. (Resler Decl. at ¶ 11.)

Syngenta first learned of the inadvertent production of the Flattery Memo on December 30, 2005, when Monsanto attached it as Exhibit 1 to a declaration in support of its attempt to establish jurisdiction over Syngenta AG and Syngenta Participations AG. (Kafele Decl. at ¶ 15.) Monsanto clearly anticipated at that time that Syngenta had inadvertently produced the Flattery Memo. (*See* Monsanto's Answering Brief in Opposition to Syngenta AG's Motion to Dismiss for Lack of Jurisdiction ("Monsanto Jurisdiction Br.") at 11 n.4 (noting that Syngenta likely would claim privilege over the document).) Nonetheless, Monsanto did not make any attempt to alert Syngenta of the inadvertent production.

On January 3, 2006, the first business day after the inadvertent disclosure came to light, Syngenta sent Monsanto a letter pursuant to the Amended Stipulated Protective Order, requesting that

---

[2]    In addition, every copy of the Memo reviewed for discovery in the patent case was withheld on privilege grounds. (Kafele Decl. at ¶ 16.) These are reflected on the privilege log from that case at entries 71, 98, 100, 102, 103, 104, 122, 128, 723, 738, 766, 769, 807, and 1028. (*Id.*) Monsanto never challenged the privilege determination over any of those entries.

copies of the Flattery Memo be returned or destroyed. (Kafele Decl. at ¶ 20 & Ex. 1.) In entering the

protective order, Monsanto agreed (and the Court ordered) that:

> The inadvertent production of any privileged or otherwise protected or
> exempted information ... shall not be deemed a waiver or impairment of any
> claim of privilege or protection, including, but not limited to, the attorney-
> client privilege, [or] the protection afforded to work product materials ... as
> to the inadvertently produced document and any related material.

(Schwed Decl., Ex. 11 at 6.) Monsanto declined to destroy all copies of the Memo and instead sought

relief from this Court, arguing, among other things, that Syngenta's inadvertent production constituted a

waiver of privilege.

## ARGUMENT

### I.    THE FLATTERY MEMO IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

### REDACTED

As is detailed below, this Memo satisfies all of the requirements of the

attorney-client privilege:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the
> person to whom the communication was made (a) is a member of the bar of a
> court, or his or her subordinate, and (b) in connection with this
> communication is acting as a lawyer; (3) the communication relates to a fact
> of which the attorney was informed (a) by his client (b) without the presence
> of strangers (c) for the purpose of securing primarily either (i) an opinion of
> law or (ii) legal services or (iii) assistance in some legal proceeding, and (d)
> not for the purpose of committing a crime or tort; and (4) the privilege has
> been (a) claimed and (b) not waived by the client.

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (citing *United States v.*

*United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)); *Montgomery County v. Microvote*

*Corp.*, 175 F.3d 296, 301 (3d Cir. 1999).

Under Rule 26 of the Federal Rules of Civil Procedure, materials satisfying these requirements are protected from disclosure. Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…"). Courts have explained that such protection is necessary "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). This Court has noted that "[t]o induce clients to make such communications, the privilege to prevent their later disclosure is said by courts and commentators to be a necessity. The social good derived from the proper performance of the functions of lawyers acting for their clients is believed to outweigh the harm that may come from the suppression of evidence in specific cases." *Hercules, Inc. v. Exxon Corp.,* 434 F. Supp. 136, 144 (D. Del. 1977) (quoting *People's Bank v. Brown,* 112 F.2d 652 (3d Cir. 1940)).

A.    **The Flattery Memo Reflects Confidential Communications Between Attorneys and Their Client**

**REDACTED**

11

**REDACTED**

**B.    The Purpose of the Memo Was to Provide Legal Advice**

For a communication to qualify for the attorney-client privilege, its "primary purpose must be to gain or provide legal assistance." *Super Tire Eng'g Co. v. Bandag, Inc.*, 562 F. Supp. 439, 441 (E.D. Pa. 1983); *In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997). It is well-established, however, that the "privilege is not necessarily lost ... when some non-legal information is included in a communication seeking or giving advice." *Super Tire Eng'g Co.*, 562 F. Supp. at 441; *accord FMC Corp. v. R.W. Christy, Inc.*, No. 88-5793, 1988 WL 76097 (E.D. Pa. July 15, 1988). It is also well-established that "[t]he mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Coleman v. ABC*, 106 F.R.D. 201, 206 (D.D.C. 1985). Nor is the nature of the legal advice transformed merely because it is used to make business decisions. *E.g., In re LTV Sec. Litig.*, 89 F.R.D. 595, 601 (N.D. Tex. 1981) ("Information gathered in such a manner as to be privileged does not become discoverable solely because management makes other business use of the information."). Indeed, that is the very reason corporations typically obtain legal advice.

Thus, in determining whether a communication reflects primarily legal advice, the court must consider whether "the lawyer's services involve interpretation and application of legal principles to

**REDACTED**

12

specific facts in order to guide future conduct." Paul R. Rice, 1 Attorney-Client Privilege in the United States § 7.9 (2d ed. 1999) (collecting cases).

The Third Circuit's decision in *In re Ford Motor Co.* is particularly instructive on the appropriate application of these standards in the case of legal communications related to business matters. In that case, the plaintiff sought to compel production of the minutes of a Policy and Strategy Committee meeting at Ford, arguing that the minutes were business records, not "legal advice." 110 F.3d at 965. The Third Circuit disagreed, noting that the minutes reflected an attorney's discussion of the "legal implications" of Ford's Bronco II, as well as the attorney's proposal to take "a particular course of action." *Id.* at 966. The Third Circuit explained:

> The documents do not contain merely factual material nor do they detail mere business decisions ... Certainly, the ultimate decision reached by the Policy and Strategy Committee could be characterized as a business decision, but the Committee reached that decision only after examining the legal implications of doing so. Even if the decision was driven, as the district court seemed to assume, principally by profit and loss, economics, marketing, public relations, or the like, it was also infused with legal concerns, and was reached only after securing legal advice. At all events, disclosure of the documents would reveal that legal advice. We thus hold that the minutes of the 1982 meeting are protected from discovery by the attorney-client privilege.

110 F.3d at 966; *accord Marusiak v. Adjustable Clamp Co.*, No. 01 C 6181, 2003 WL 21321311, at *2 (N.D. Ill. June 5, 2003) ("The case law is clear that the attorney-client privilege is not vitiated simply because the attorney has weighed business considerations in rendering legal advice."); *Coleman*, 106 F.R.D. at 206 (same).

**REDACTED**

13

1.    **The plain text of the Memo reflects legal advice**

On its face, the Flattery Memo is a classic example of a legal advice memo that could be pulled from the files of any law firm in the country.

**REDACTED**

14

**REDACTED**

**REDACTED**

2.     The Memo does not offer business advice

**REDACTED**

16

**REDACTED**

**C.**    **Syngenta Has Not "Placed in Issue" the Advice of Its Attorneys**

**REDACTED**

As the Third Circuit has noted, a "placed in issue" waiver occurs only when a party takes "affirmative steps" to place *the advice of its counsel* at issue in a lawsuit. *Rhone-Poulenc*, 32 F.3d at 863 (waiver only occurs when a party "attempts to prove [a] claim or defense by disclosing or

17

describing an attorney-client communication."); *accord Multiform Dessicants, Inc. v. Stanhope Products Co.*, 930 F. Supp. 2d 45, 47 (W.D.N.Y. 1996) ("The doctrine of waiver arises out of the general principle that the deliberate injection of the advice of counsel into a case waives the attorney-client privilege.").[4]  The classic example of a "placed in issue" waiver is when a defendant raises an "advice of counsel" defense. *Rhone-Poulenc*, 32 F.3d at 863.  Under such circumstances, "[c]ourts have found that by placing *the advice* in issue, the client has opened to examination facts relating to *that advice*." *Id.* (emphasis added).

**REDACTED**

---

[4]    Several courts have noted that the Third Circuit's test for establishing an "at issue" waiver is more demanding (and thus more protective of the privilege) than tests applicable in some other jurisdictions. *See, e.g., Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 700 (10th Cir. 1998) (noting that *Rhone-Poulenc* adopted the "restrictive test" for "at issue" waiver and rejected "more liberal views of waiver"); *Martin v. American Bankers Life Assur. Co. of Florida*, 184 F.R.D. 263, 265 (D.V.I. 1998) (adopting *Rhone-Poulenc*'s "more restrictive view" of at issue waiver); *State v. Hydrite Chemical Co.*, 220 Wis. 2d 51, 68 (Wis. App. 1998) (same).  Notably, Monsanto fails to cite a single Third Circuit case (district or appellate court level) in support of the broad "at issue" waiver standard it advocates. (*See* Monsanto Br. at 13-14.)

18

**REDACTED**

The Third Circuit, however, has specifically rejected a relevance standard for determining "placed at issue" waivers:

> Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.

*Rhone-Poulenc*, 32 F.3d at 864. Rather, to waive attorney-client privilege, a party must take "an affirmative step to place the advice of counsel at issue." *SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2005 WL 2436662, at *3 (E.D. Pa. Sept. 28, 2005) (citing *Rhone-Poulenc*, 32 F.3d at 863); *accord McCrink v. Peoples Benefit Life Ins. Co.*, No. 04-CV-1068, 2004 WL 2743420 (E.D. Pa. Nov. 29, 2004) (waiver "only when the party asserting the privilege takes the affirmative step of 'put[ting] his or her attorney's advice in issue in the litigation.'"). "Advice is not in issue merely because it is relevant.'" *Rhone-Poulenc*, 32 F.3d at 863.[5]

**REDACTED**

**D.    Monsanto's Invocation of the Crime-Fraud Exception to Attorney-Client Privilege Is Baseless**

In an outright attack on the honesty and integrity of Syngenta's employees and attorneys, Monsanto claims that the crime-fraud exception vitiates Syngenta's claim to privilege because Syngenta has committed *fraud on this Court* by (1) filing a false declaration (Monsanto Br. at 15); and (2) making bad faith allegations of sham litigation (*id.* at 16-17). Monsanto's arguments are completely lacking in

---

[5]    Monsanto cites *Hearn v. Rhay*, 68 F.R.D. 574, 578 (E.D. Wash. 1975) in support of its "at issue" waiver arguments. (Monsanto Br. at 13.) The reasoning in *Hearn*, however, has been squarely rejected by the Third Circuit. *E.g.*, *Rhone-Poulenc*, 32 F.3d at 864 (criticizing *Hearn* as a decision "of dubious validity" and articulating alternative approach); *see also Johnson Matthey, Inc. v. Research Corp.*, No. 01CIV8115, 2002 WL 1728566, at *4 (S.D.N.Y. July 24, 2002) (contrasting the "expansive interpretation of 'at issue' waiver under *Hearn* and its progeny" with the Third Circuit's reasoning in *Rhone-Poulenc*); *Public Service Company of New Mexico v. Lyons*, 129 N.M. 487, 493 (N.M. App. 2000) ("Commentators and academicians are not alone in their criticism of *Hearn*. We deem especially persuasive the following discussion in *Rhone-Poulenc* ...").

merit. Indeed, Monsanto fails to satisfy either of the two elements required for application of the crime-fraud exception: (1) a *prima facie* case that Syngenta has committed or intended to commit a crime or fraud; and (2) that the privileged communication was made "in furtherance of that alleged crime or fraud." *E.g., United States v. Doe*, 429 F.3d 450, 454 (3d Cir. 2005); *In re Grand Jury Subpoena*, 223 F.3d 213, 217 (3d Cir. 2000).

<div align="center">

**1.    Monsanto has not established a *prima facie* case of a crime or fraud**

</div>

To establish a *prima facie* case of fraud, the movant must present evidence that if believed would be sufficient to support a finding that "the client was committing or intending to commit a fraud or crime." *Doe*, 429 F.3d at 454. Monsanto alleges two "frauds" in this case, but fails to establish a *prima facie* case with respect to either.

<div align="center">

**a.    Monsanto has not established that Mr. Resler committed a "fraud on the Court"**

</div>

Monsanto argues that Mr. Resler committed a "fraud on the Court" when he submitted a declaration in support of Syngenta AG's motion to dismiss for lack of jurisdiction explaining, among other things, that to his knowledge Syngenta AG does not control the day-to-day operations of its subsidiaries. (Resler Decl., Ex. 2.)

<div align="center">

**REDACTED**

</div>

---

[6]    Monsanto accuses officers of the court of engaging in fraud and wrongdoing far too lightly and with far too little support. *See, e.g., Federal Election Comm'n v. Christian Coalition*, 178 F.R.D. 456, 462 (E.D. Va. 1998) (noting that the Supreme Court requires a prima facie showing of fraud to invoke the crime-fraud exception "[d]ue to the serious nature of such an allegation against an officer of the court"); *cf. also Laurino v. Tate*, 220 F.3d 1213, 1216 (10th Cir. 2000) (upholding District Court order imposing Rule 11 sanctions against attorney who made "accusations of fraud, perjury [and] corruption" against police officers without supporting evidence); *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) ("Accusations of fraud can do serious damage to the goodwill of a business firm or a professional person. People should be discouraged from tossing such accusations into complaints in order to induce advantageous settlements or for other ulterior purposes.").

<div align="center">

20

</div>

First, Mr. Resler's sworn assertion that Syngenta AG does not control the day-to-day operations, including the sales and marketing function, of its U.S. subsidiaries is absolutely true. Importantly, Monsanto had more than a month to develop an argument to the contrary in drafting its answering brief in opposition to Syngenta AG's motion to dismiss. With Mr. Resler's declaration in hand, and more than two million pages of Syngenta's documents at its disposal, Monsanto was unable to point to a single instance where Syngenta AG had controlled the day-to-day operations of its U.S. subsidiaries. Also, the few arguments related to control that Monsanto did raise were thoroughly refuted in Syngenta AG's reply brief. (*See* Syngenta AG's Reply Brief in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction ("Syngenta AG Jurisdiction Reply Br.") at 8-12.) In short, the vast evidentiary record that has been developed in this case reveals that the U.S. Syngenta companies do business as separate legal entities, observe corporate formalities, and manage their own day-to-day activities. (*Id.*)

**REDACTED**

**REDACTED**

Monsanto thus has failed to offer any evidence that a finder-of-fact could rely upon to find that Mr. Resler had committed a "fraud on the Court."[7]

            **b.**      **Monsanto has not established that Syngenta's claims of sham patent litigation were a fraud**

**REDACTED**

---

[7]    In what is transparently an unauthorized sur-reply to Syngenta AG's reply brief in support of its motion to dismiss for lack of personal jurisdiction, Monsanto once again raises Syngenta AG's purported control of its U.S. subsidiaries through the Corn Business Team. (*See, e.g.*, Monsanto Br. at 8-9.) Monsanto's argument is as baseless now as when it was first made. Monsanto fails to respond to the fact that the Corn Business Team is comprised primarily of U.S. employees based in Minnesota and North Carolina. (Syngenta AG Jurisdiction Reply Br. at 6-7.) Nor does Monsanto articulate how the involvement of a small number of Swiss personnel establishes that Syngenta AG maintained day-to-day control over the U.S. Syngenta entities. (*See id.* at 8-12.)

**REDACTED**

The Court thus should reject Monsanto's claim that the sham litigation allegations in Syngenta's Complaint constitute a crime or fraud.

> 2.    Monsanto *has not even attempted* to establish the second prong of the crime-fraud exception – that the Flattery Memo is "in furtherance" of the alleged frauds

Due to the "importance of the attorney-client privilege," the Third Circuit "has emphasized that the crime-fraud exception applies only when the legal advice 'gives direction for the commission of future fraud or crime.'" *In re Grand Jury Subpoena*, 223 F.3d at 217. In order to establish this element, the party seeking to compel production must show that there "is probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity." *In re Richard Roe*, 68 F.3d 38, 40 (2d Cir. 1995); *Doe*, 429 F.3d at 454 (communication must be made "in furtherance of th[e] alleged crime or fraud."). As the Second Circuit has noted, it is not sufficient for a party to merely claim that a privileged communication is in some way relevant to an alleged fraud:

> [T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud. If it did, the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability. Instead, the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud.

*In re Richard Roe*, 68 F.3d at 40 (emphasis in original); *accord In re Grand Jury Subpoena*, 419 F.3d 329, 343 (5th Cir. 2005) (crime-fraud exception "is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct"); *Ventre v. Datronic Rental Corp.*, No. 92 C 3289, 1995 WL 42345, at *3 (N.D. Ill. Feb. 2, 1995) ("The mere fact that plaintiff[s] have advanced allegations of fraud against [defendant] is insufficient to establish that [defendant's] communications with counsel were [in] furtherance of his fraudulent scheme.").

**REDACTED**

II.    **THE FLATTERY MEMO IS PROTECTED BY THE ATTORNEY WORK PRODUCT DOCTRINE**

The purpose of the work product privilege is to "shelter the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998) (*quoting U.S. v. Nobles*, 422 U.S. 225, 238 (1975)). It allows lawyers to assist their clients free from the intrusion of opposing parties and prevents an opposing party from taking unfair advantage of the research and thoughts of its adversary's lawyer or representative. The privilege promotes the adversary system by protecting the confidential nature of materials prepared by lawyers in anticipation of litigation. It allows attorneys – both in-house and outside counsel – to prepare their cases without fear that their work will be used against them and their clients. *Id.* (*citing Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991)).

Work product that contains the mental impressions, opinions and conclusions of a party's lawyer or representative is the most sacrosanct of all forms of work product. The Third Circuit has accorded

25

such work product "near absolute immunity," discoverable only upon a showing of rare and exceptional circumstances. *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 663 (3d Cir. 2003); *Haines v. Liggett Group Inc.*, 975 F.2d 81, 94 (3d Cir. 1992). Alternatively, non-opinion or fact work product can be discovered only in the limited case where the moving party can demonstrate a "substantial need" for the information and "undue hardship" in getting the information from another source. *Id.* at 663.

**REDACTED**

### A. The Memo Was Prepared in Anticipation of Litigation

It is well-settled that the work product doctrine protects documents prepared before litigation actually commences. *In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir. 1979); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 143 (D. Del. 1982). The law requires some possibility of litigation. *Id.* The test in this Circuit is whether, "in light of the nature of the documents and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *In re Grand Jury Investigation*, 599 F.2d at 1229 (*quoting* Wright & Miller, Federal Practice and Procedure: Civil § 2024 at 198 (1970)); *see also U.S. v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (adopting Wright & Miller standard).[9] The prospect of litigation must

---

[8]    Contrary to Monsanto's assertion that work product is "far narrower" (Monsanto Br. at 17), the Supreme Court has stated that the work product doctrine is broader than other privileges. *U.S. v. Nobles*, 422 U.S. at 238 n.11. Although only confidential communications between the attorney and client are protected by the attorney client privilege, the work product doctrine encompasses any document prepared in anticipation of litigation by or for the attorney. Further, the attorney client privilege belongs to the client alone while the work product doctrine may be asserted by either the client or the attorney. *In re Grand Jury Proceedings*, 604 F.2d 798, 801-02 (3d Cir. 1979).

[9]    The same standard is used in the Fourth, Seventh, Eighth and D.C. Circuits. *See, e.g., National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992); *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983); *Simon v. G.D. Searle & Co.*, 816 F.2d 397,

be objectively reasonable. *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993).

**REDACTED**

These circumstances more than meet the standard set forth by the Third Circuit in *In re Grand Jury*. There, a corporation retained outside counsel to investigate the existence of undisclosed illegal foreign payments. 599 F.2d at 1229. In reviewing whether materials prepared in the course of that investigation were protected by the work product doctrine, the Third Circuit held that the privilege applied even though there was no suit pending at the time of the investigation because if the investigation confirmed the presence of illegal payments, litigation was almost inevitable. *Id.* The fact that the corporation did not know who would sue and on what basis was irrelevant. The prospect of litigation was sufficiently strong and reasonable to make the materials work product. *Id.*

---

401 (8th Cir. 1987), *cert. denied*, 484 U.S. 917 (1987); *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987).

REDACTED

Contrary to Monsanto's suggestion, the protection afforded by the work product doctrine is

not forfeited merely because a document discusses business decisions.  "Where a document is

created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does

not lose protection under this formulation merely because it is created in order to assist with a

business decision." *Adlman*, 134 F.3d at 1202; *see also In re Grand Jury Subpoena*, 357 F.3d 900,

---

10

REDACTED

*See Hercules*, 434 F. Supp. at 151
(noting that work product immunity has been afforded to opinion letters and background memoranda
discussing the scope and validity of patents); *see also Sylgab Steel & Wire Corp. v. Imoco-Gateway
Corp.*, 62 F.R.D. 454, 457 (N.D. Ill. 1974), *aff'd*, 534 F.2d 330 (7th Cir. 1976) (affording work product
protection to document that contained defense counsel's assessment of whether plaintiff's patent was
infringed); *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 47 F.R.D. 334 (S.D.N.Y. 1969)
(affording protection to patent opinion memorandum because of the substantial likelihood that party
would be called upon to defend its actions based on the existence of the patent).

28

908-10 (9th Cir. 2004) (under the "because of" standard, a document created in part because of the prospect of litigation but also due to business reasons is protected by the work product doctrine); *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 61 (7th Cir. 1980) (work product protection applies to materials that were prepared both in anticipation of litigation and for other purposes). Courts routinely extend work product protection to documents that advise clients on the legal implications of business decisions. *Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 200 F.R.D. 183, 190 (W.D.N.Y. 2001) (lawyer's memorandum for failed bank's receiver, assessing legal options for solving underfunding problem, was protected by work-product privilege); *American Optical Corp. v. Medtronic*, 56 F.R.D. 426, 431 (D. Mass. 1972) (memoranda prepared by a lawyer in the course of counseling a client whether to accept a license or challenge the validity of a competitor's patent in court protected work product); *Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 456 (N.D. Ill. 1974) (opinion letter analyzing whether proposed products violated patents is protected work product), *aff'd*, 534 F.2d 330 (7th Cir. 1976). The test is whether the document was created "with an eye to some specific litigation." *James Julian*, 93 F.R.D. at 143.        **REDACTED**

      B.      **The Memo Is Opinion Work Product and Is Discoverable Only in Rare and Exceptional Circumstances**

**REDACTED**

29

**REDACTED**

Monsanto completely ignores the distinction between opinion and ordinary work product, and has not even argued – let alone demonstrated – the rare and extraordinary circumstances necessary to overcome the high degree of protection afforded opinion work product material. As a result, Monsanto has not met its burden and its motion to compel should be denied.

C.    **Even Under the Standard for Ordinary Work Product, Monsanto Has Not Shown a Substantial Need for the Flattery Memo or Undue Hardship in Obtaining Equivalent Material from Another Source**

Even if the standard for ordinary work product applied to the Flattery Memo – which it does not – Monsanto has failed to meet it. While not as stringent as the standard for attorney opinion work product, this burden is a difficult one satisfied only in rare situations, such as those involving witness unavailability. *Bartlett v. State Farm Mutual Auto Ins. Co.*, No. IP01-0510, 2002 WL 1048825, at *5 (S.D. Ind. May 22, 2002); *Trustmark Ins. Co. v. General & Cologne Life Re of America*, No. 00 C 1926, 2000 WL 1898518, at *3 (N.D. Ill. Dec. 20, 2000). Undue hardship is only found when substantially similar material is unavailable from other sources. *See, e.g., Jinks-Umstead v. England*, 232 F.R.D. 142, 147 (D.D.C. 2005) (where information is available to plaintiff via other discovery means, work product protection is not overcome); *SEC v. Treadway*, 229 F.R.D. 454, 456 (S.D.N.Y. 2005) (where party can obtain substantially equivalent information through other means, undue hardship requirement

30

not met); *Marchello v. Chase Manhattan Auto Finance Corp.*, 219 F.R.D. 217, 219-20 (D. Conn. 2004)

(same).

**REDACTED**

III.  **THE INADVERTENT PRODUCTION OF THE FLATTERY MEMO DOES NOT CONSTITUTE A WAIVER**

A.     **The Protective Order Agreed to by Monsanto Precludes a Finding of Waiver**

In the Amended Stipulated Protective Order, the parties agreed and the Court ordered that "[t]he

inadvertent production of any privileged or otherwise protected or exempted information ... *shall not be*

*deemed a waiver or impairment* of any claim of privilege or protection, including, but not limited to, the

attorney-client privilege, [or] the protection afforded to work product materials ... as to the

inadvertently produced document and any related material."[11]  (Schwed Decl., Ex. 11) (emphasis

added).  As a matter of law, this provision obviates any need for further inquiry into Monsanto's

argument that Syngenta waived the protections of the attorney-client privilege or work product doctrine

because of the inadvertent production of the Flattery Memo. *E.g., Minebea Co. v. Papst*, 370 F. Supp.

2d 297, 300 (D.D.C. 2005) ("Simply put, the language of the Protective Order trumps the case law.");

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, No. IP96-1718, 2001 WL 699850, at *2-3 (S.D.

Ind. May 29, 2001) ("Defendants have not shown any persuasive reason for not enforcing the clear

terms of the agreed protective order. The protective order was the product of negotiations among able

counsel who deliberately chose to modify the otherwise applicable law concerning inadvertent

disclosure of privileged documents.").

So long as the production was inadvertent, as opposed to purposeful or the result of gross

negligence, the terms of the protective order dictate that no waiver be found. *E.g., VLT Corp. v.

Unitrode Corp.*, 194 F.R.D. 8, 12 (D. Mass. 2000) (enforcing protective order that stated inadvertent

production would not constitute waiver after finding disclosure was not "purposeful or grossly

negligent" and thus was inadvertent); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 CIV

7590, 1997 WL 736726, at *3-4 (S.D.N.Y. Nov. 26, 1997) (holding protective order stating that

inadvertent production will not waive privilege overrides "caselaw standards governing inadvertent

waiver" and bars a finding of waiver "unless the production was completely reckless").  Given

Syngenta's extensive document review safeguards and its consistent treatment of the Flattery Memo as

privileged, the protective order requires a finding that privilege was not waived.

---

[11]     Both parties have invoked the Amended Stipulated Protective Order to obtain the return of inadvertently
produced documents in both the patent and antitrust cases. Indeed, since filing its Motion to Compel,
Monsanto has requested the return of 26 additional inadvertently produced documents. (Kafele Decl. at
¶ 22.)

B.    **Even Absent the Protective Order, the Inadvertent Production of the Flattery Memo Would Not Constitute Waiver**

To determine whether privilege has been waived over an inadvertently produced document, courts typically balance five factors: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the number of inadvertent disclosures in light of the extent of the document production; (3) the extent of the disclosure; (4) the delay and measures taken to rectify the disclosure; and (5) whether the overriding interest of justice would not be served by relieving a party of its error.[12] *E.g., Sampson Fire Sales, Inc. v. Oaks*, 201 F.R.D. 351, 360 (D.N.J. 2001). These factors weigh heavily in favor of respecting the privileged status of the Flattery Memo.

**Reasonableness of the Precautions Taken.** As noted in the fact section above, the precautions Syngenta took to prevent disclosure of privileged documents in this case were extensive. Syngenta implemented a multi-level review procedure in which all responsive documents were reviewed by attorneys at least twice for privilege and then subjected to an electronic word search to make sure no potentially privileged documents were missed. Any documents deemed to be potentially privileged were segregated for a third level of review by a team of attorneys trained specifically to deal with privilege issues. This review system was designed specifically to ensure that privileged documents were not inadvertently produced. Courts have consistently approved review procedures that do not even approach the level of thoroughness and caution reflected in Syngenta's procedures. *See, e.g., Berg Electronic, Inc. v. Molex, Inc.*, 875 F. Supp. 261, 263 (D. Del. 1995) (attorneys affixed "yellow tabs" to privileged documents which either "fell off or were removed" prior to production); *Monsanto Co. v. Aetna Cas. & Sur. Co.*, No. 88C-JA-118, 1994 WL 315238, at *6 (Del. Super. May 31, 1994) (refusing to find waiver and allow Monsanto to keep inadvertently produced document despite the fact that the

---

[12]    This is the standard that would apply *in the absence of the Amended Stipulated Protective Order* that Monsanto agreed to in this case. Syngenta provides this analysis only out of an abundance of caution.

producing party's "precautions taken to protect the documents against inadvertent disclosure were minimal").

The inadvertent production of the Flattery Memo does not call into question the reasonableness of Syngenta's precautions. Unfortunately, an attorney mistakenly clicked the "not privileged" box for one copy of the Flattery Memo that had previously been segregated as privileged. The inadvertent nature of this production is illustrated by three key facts. First, the same attorney who inadvertently clicked the "not privileged" box had previously designated a different copy of the Flattery Memo as privileged during the initial privilege review. (Kafele Decl. at ¶ 17.) Second, 14 other copies of the Flattery Memo were marked as privileged and withheld from Syngenta's document production. (*Id.*) Third, in the separate document review that took place in the patent case, every copy of the Memo was withheld on privilege grounds and was entered onto a privilege log. (*Id.* at ¶ 16.) Under these circumstances, it is clear that the production of the Flattery Memo was the result of a mere oversight – not insufficient precautions or an intent to waive the privilege.

Monsanto's only argument to the contrary is that the inadvertently produced Memo was marked as "Restricted Confidential." (Monsanto Br. at 20.) Monsanto speculates that such a designation "presumably" means that the Flattery Memo was reviewed in such detail as to vitiate any claim that its production was "just an oversight." (*Id.*) Monsanto is simply wrong on the facts. Syngenta assigned confidentiality designations to all documents, regardless of their privileged status. (Kafele Decl. at ¶ 10.) As a result, the "restricted confidential" designation is not indicative of a document being considered non-privileged.

**Number of Inadvertent Disclosures.** As Monsanto talismanically recites throughout its brief, Syngenta has requested the return of 147 privileged documents, including the Flattery Memo.[13] As

---

[13]    On February 3, 2006, Syngenta requested the return of two additional inadvertently produced documents. In addition, although Syngenta has verified that only one copy of the Flattery Memo was inadvertently

courts have noted, however, the number of inadvertently produced documents must be viewed in light of the size of the production and the deadlines by which documents were required to be produced. *E.g.*, *Aramony v. United Way of America*, 969 F. Supp. 226, 237-38 (S.D.N.Y. 1997) (stating that courts must compare the "scope of the discovery with the amount of the privileged or protected material disclosed").

In this case, Syngenta's document production was enormous. Syngenta reviewed an estimated *19 million pages* of documents and produced over two million of those to Monsanto. Also, unlike Monsanto, Syngenta conducted its production in order to meet the Court's discovery deadlines. Under similar circumstances, courts have held that the privilege is not waived by the inadvertent production. *See Asian Vegetable Research & Dev. Ctr. v. Institute of Int'l Educ.*, No. 94 CIV 6551, 1995 WL 491491 (S.D.N.Y. Aug. 17, 1995) (no waiver for 20 pages inadvertently produced out of 75,000); *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of Am.*, No. 94 C 7568, 1995 WL 410979 (N.D. Ill. July 11, 1995) (no waiver for 18 pages inadvertently produced out 12,000 pages produced); *Aramony*, 969 F. Supp. at 237-38 (finding 99 pages of inadvertently disclosed documents to be a "relatively small amount" compared to the 630,000 pages reviewed and 68,500 pages produced). The result should be the same in this case.

**Extent of the Disclosure.** Monsanto argues that Syngenta should no longer be able to assert privilege because the Flattery Memo was "fully disclosed" when *Monsanto's attorneys* attached it to their brief in opposition to Syngenta AG's motion to dismiss. The dubious nature of this argument is twofold.

*First*, Monsanto demonstrates unbelievable bravado in relying on *its* questionable use of inadvertently produced documents to defeat a claim of privilege. As the American Bar Association's Model Rules of Professional Conduct provide: "A lawyer who receives a document relating to the

produced, it is currently undertaking a thorough review of its production to identify any other privileged documents that were inadvertently produced.

representation of the lawyer's client and knows or reasonably should know that the document was

inadvertently sent shall promptly notify the sender." ABA Model Rule 4.4; *accord Sampson Fire Sales*,

201 F.R.D. at 362 ("[I]nformation that ... appears on its face to be subject to the attorney-client

privilege under circumstances that make it clear it was not intended for the receiving lawyer, should not

be examined.  The receiving lawyer should immediately notify the sending lawyer and abide by his

instructions with respect to inadvertently disclosed privileged material."); D. Del. Default Standard for

Discovery of Elec. Documents 8, *available at* http://www.ded.uscourts.gov/OrdersMain.htm

("Electronic documents that contain privileged information or attorney work product shall be

immediately returned if the documents appear on their face to have been inadvertently produced.").[14]

There can be little doubt that Monsanto recognized the privileged nature of the Flattery Memo,

but nonetheless opted not to inform Syngenta's counsel of the apparent inadvertent production.  Indeed,

Monsanto included a lengthy footnote in its opposition to Syngenta AG's motion to dismiss noting that

"Syngenta may attempt to claim the document is privileged." (Monsanto Jurisdictional Opp. Br. at 11

n.4.)[15]

---

[14]    Notably, rather than making use of Monsanto's potentially privileged documents, Syngenta has sent
Monsanto a letter alerting Monsanto of the apparent inadvertent production of 65 documents.

[15]    Monsanto's questionable use of inadvertently produced privileged documents is evidenced even more
strongly in its opening brief in support of its motion to compel.

### REDACTED

Monsanto uses this document despite acknowledging that Syngenta previously
identified it as having been inadvertently produced.  (Monsanto Br. at 8 n.4.)  Monsanto is thus in
violation of not only the ABA's Model Rules of Professional Conduct, but also the Amended Stipulated
Protective Order issued by this Court, which requires Monsanto to destroy documents identified as
inadvertently produced and move to compel production if it feels those documents are not privileged.
Monsanto has made no such motion with respect to the Flattery email.  Rather, offering no explanation
for why it is above complying with the protective order, Monsanto only asserts that this Flattery email is
not privileged "[f]or the very reasons set forth" in its brief.  (*Id.*)  That contention is flat wrong.

### REDACTED
                                                                                                                    If
Monsanto moves to compel its production of the Flattery email, Syngenta will explain that document's

*Second*, Monsanto's argument would essentially vitiate the law governing inadvertent production of documents. If an inadvertently produced document lost its privileged status as soon as it was used by opposing counsel, there would be scant opportunity for a producing party to recover the document. Indeed, inadvertent production often comes to light, as it did in this case, only after opposing counsel attempts to make use of the privileged document. Courts have routinely recognized that such use does not lead to a waiver of the privilege. *See, e.g., Sampson Fire Sales*, 201 F.R.D. at 361 (privilege upheld after inadvertently produced document attached as an exhibit to a brief); *Lazar v. Mauney*, 192 F.R.D. 324, 326 (N.D. Ga. 2000) (same); *Minebea*, 370 F. Supp. 2d at 299 (privilege upheld after inadvertently produced document used in deposition); *Myers v. City of Highland Village, Texas*, 212 F.R.D. 324, 327 (E.D. Tex. 2003) (same); *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation*, MDL No. 764, 1990 WL 90495, at *5 (E.D. Pa. June 27, 1990) (same); *Berg Electronics*, 875 F. Supp. at 261 (same); *see also United States v. Pepper's Steel & Alloys, Inc.*, 742 F. Supp. 641, 645 (S.D. Fla. 1990) ("Mistakes of this type are likely to occur in cases with voluminous discovery. At best, these situations are resolved amicably, by counsel returning documents which are obviously privileged and inadvertently produced. It is unfortunate that such could not be the case here and that the Court was forced to expend a great deal of time on this relatively minor matter.").

**Delay in rectifying disclosure.** As this Court has noted, a party's speed in seeking the return of inadvertently produced documents is the *focus* of an inquiry into whether an inadvertent disclosure waived privilege. *In re Hechinger Investment Co.*, 303 B.R. 18, 25 (D. Del. 2003) ("[T]he proper focus in the case of inadvertent or involuntary disclosures is whether the party asserting the work product

---

privileged nature further at that time. In the meantime, Monsanto should begin to honor its obligations under the Amended Stipulated Protective Order and refrain from using inadvertently produced privileged documents in its briefs.

doctrine ... pursued all reasonable means to restore the confidentiality of the materials and prevent further disclosures within a reasonable period.") (quoting *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998)). Not surprisingly, Monsanto omits any discussion of this element.

In this case, Syngenta sought the return or destruction of the Flattery Memo on the first business day after its inadvertent production came to light. (Kafele Decl., Ex. 1.) Under the terms of the protective order, Monsanto was required to return or destroy the privileged document upon receiving this request. Under such circumstances, courts have held that the privilege over an inadvertently produced document should be maintained. *See, e.g., Sampson Fire Sales*, 201 F.R.D. at 361 (privilege upheld when "counsel immediately identified his error and took appropriate steps to attempt to rectify that matter"); *Helman v. Murray's Steaks, Inc.*, 728 F. Supp. 1099, 1104 (D. Del. 1990) (same).

**Interests of Justice.** In weighing this factor, courts consider the compelling public interest that gives rise to the attorney-client privilege and the need to avoid chilling "full, free and frank exchange between a lawyer and his client." *See, e.g., Sampson Fire Sales*, 201 F.R.D. at 362. As this Court has noted, "if we are serious about the attorney-client privilege and the *client's* welfare, we should require more than ... negligence by counsel before the client can be deemed to have given up the privilege." *Berg Electronics*, 875 F. Supp. at 263; *see also Hercules*, 434 F. Supp. at 144 (noting the social good served by the attorney-client privilege).

**REDACTED**

Importantly, however, even if Monsanto's relevance arguments were conceded, that would not overcome the public

interest in honoring the attorney-client privilege.  Indeed, if relevance concerns could outweigh the policy behind the attorney-client privilege, there would be no privilege in the first place.

Ultimately, the interests of justice in this case weigh heavily in favor of upholding Syngenta's claim of privilege.    **REDACTED**

This is exactly the type of communication the attorney-client privilege was designed to foster in order to "promote broader public interests in the observance of law and administration of justice."  *Upjohn*, 449 U.S. at 389.

**REDACTED**

**CONCLUSION**

For the foregoing reasons, Syngenta respectfully requests that this Court deny Monsanto's Motion to Compel.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John Shaw by Michele Sherretta

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta
Corporation, Syngenta Biotechnology, Inc., Advanta
USA, Inc., Garst Seed Company, and Golden Harvest
Seeds, Inc.*

39

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Shaniek Mills Maynard
Jonathan R. DeFosse
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2634
(212) 508-8000

Dated:  February 6, 2006

40

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on February 6, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

**BY FEDERAL EXPRESS**

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*John Shaw by Michele Sherrette*

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on February 13, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants in the manner indicated below:

### BY FEDERAL EXPRESS

Peter E. Moll, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C.  20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*