**REDACTED -- Public Version filed 5/4/06**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-305-SLR |
| v. | ) ) | (lead case) |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | |
| Defendants. | ) ) | |
| DEKALB GENETICS CORPORATION, | ) ) | |
| Plaintiff, | ) ) | **REDACTED** |
| v. | ) ) | |
| SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., et al. | ) ) ) | |
| Defendants. | ) ) ) | |

---

**SYNGENTA'S OPENING BRIEF IN SUPPORT OF ITS MOTION
TO BIFURCATE THE ISSUE OF LIABILITY FROM THE
ISSUES OF DAMAGES AND WILLFULNESS**

Of counsel:
Michael J. Flibbert
Howard W. Levine
York M. Faulkner
Sanya Sukduang
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000
Attorneys for Defendants

Dated: April 28, 2006

John W. Shaw (No. 3362)
Seth J. Reidenberg (No. 3657)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

DB01:2085018.1

059155.1008

REDACTED -- Public Version filed 5/4/06

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... iiiv

I.      INTRODUCTION ....................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS ............................................ 2

III.    SUMMARY OF ARGUMENT .................................................................... 4

IV.     FACTUAL BACKGROUND ....................................................................... 5

        A.     The Technical Evidence Concerning Liability ................................. 5

               1.     The Shah Patent ....................................................................... 5

               2.     The Lundquist Patents .............................................................. 6

        B.     The Extensive and Distinct Evidence Concerning Willfulness and Damages ........ 6

               1.     Syngenta's acquisition of rights from Bayer .............................. 7

                      a.     Monsanto's "willfulness" evidence ................................ 7

                      b.     Syngenta's damages valuation ...................................... 8

               2.     Syngenta's alleged interference with contractual relations ......... 9

               3.

               4.     Other miscellaneous "willfulness" evidence ............................ 11

V.      ARGUMENT ............................................................................................... 12

        A.     Bifurcation Will Avoid Unnecessary Jury Confusion .......................... 13

        B.     Bifurcation Will Further Convenience and Judicial Economy ............ 14

        C.     Bifurcation Will Avoid Prejudice .................................................... 16

VI.     CONCLUSION ........................................................................................... 19



**Redacted**

### TABLE OF AUTHORITIES

**Page**

*Air-Shields, Inc. v. BOC Group,*
No. WN-91-2571, 1992 U.S. Dist. LEXIS 17398 (D. Md. Feb. 28, 1992) ...................... 15

*Avia Group Int'l, Inc. v. Nike, Inc.,*
No. 91-326-JU, 1991 U.S. Dist. LEXIS 20492 (D. Or. Sep. 17, 1991)...................... 14, 19

*Ciena Corp. v. Corvis Corp.,*
210 F.R.D. 519, 521 (D. Del. 2002) ......................................................................... 13, 14

*Enzo Life Sciences Inc. v. Digene Corp.,*
C.A. No. 02-212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003) .......................... 13, 19

*Gardco Mfg., Inc. v. Herst Lighting Co.,*
820 F.2d 1209 (Fed. Cir. 1987)........................................................................................ 13

*General Patent Corp. v. Hayes Microcomputer,*
No. SA CV 97-429-GLT(ANx), 1997 U.S. Dist. LEXIS 21342 (C.D. Cal. Oct. 20,
1997) ................................................................................................................................ 16

*Giro Sport Design Inc. v. Pro-Tec, Inc.,*
10 U.S.P.Q.2d 1863 (N.D. Cal. 1989) .............................................................................. 13

*In re Recombinant DNA Technology Patent and Contract Litigation,*
MDL No. 912, 1994 U.S. Dist. LEXIS 20993 (S.D. Ind. Oct. 20, 1994) ................... 14, 18

*Intermedics, Inc. v. Cardiac Pacemakers, Inc.,*
No. 4-95-716 (JRT/RLE), 1998 U.S. Dist. LEXIS 23181 (D. Minn. Feb. 17, 1998) ...... 14

*Lockwood v. American Airlines, Inc.,*
No. 91-1640-E(CM), 1992 U.S. Dist. LEXIS 22077 (S.D. Cal. Oct. 27, 1992) ........ 15, 18

*Pittway Corp. v. Maple Chase Co.,*
No. 91-CV-3582, 1992 U.S. Dist. LEXIS 19237 (N.D. Ill. Dec. 15, 1992)...................... 18

*Plant Genetic Systems, N.V. v. DeKalb Genetics Corporation,*
175 F. Supp. 2d 246 (D. Ct. 2001)...................................................................................... 3

*Power Mosfet Technologies, L.L.C. v. Siemens AG,*
378 F.3d 1396 (Fed. Cir. 2004)........................................................................................ 17

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.,*
272 F.3d 1335 (Fed. Cir. 2001)........................................................................................... 7

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.,*
   345 F.3d 1366 (Fed. Cir. 2003) ........................................................................ 7

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.,*
   284 F.3d 1323 (Fed. Cir. 2002) ...................................................................... 10

*Wilden Pump v. Pressed and Welded Prods. Co.,*
   655 F.2d 984 (9th Cir. 1981). ........................................................................ 15

## FEDERAL STATUTES

Fed. R. Civ. P. 42(b) ............................................................................... 1, 13, 19

35 U.S.C. § 112 ........................................................................................................ 2

## TREATISES

9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2388 (3d. 1998) ................................ 19

8 *Moore's Federal Practice* § 42.20(4)(c) ........................................................... 19

## I.    INTRODUCTION

Defendants Syngenta Seeds, Inc., Syngenta Biotechnology Inc., Garst Seed Co., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (collectively "Syngenta") seek a Court order pursuant to Fed. R. Civ. P. 42(b), separating trial into two immediately successive phases. In the first phase, the jury would determine liability—whether the patents-in-suit are valid and infringed. If the jury finds liability, trial would then proceed to a second phase—adjudicating willfulness and damages. Although bifurcation is common in complex patent cases such as this one, it is particularly appropriate here because plaintiffs' "willfulness" case is fundamentally suspect and involves evidence that will confuse the jury and prejudice Syngenta.

Monsanto's "willfulness" evidence encompasses Syngenta's business dealings with plaintiffs and third parties, alleged inducement of certain seed companies to breach their contracts with Monsanto, development of admittedly non-infringing alternative products, and hiring of a former Monsanto employee. It is extensive and will require complex presentations to convey and refute. In a unitary trial, that evidence will serve only to confuse the jury and consume trial time, shifting the focus away from the liability issues. That evidence does not even bear on the willfulness issue of whether Syngenta satisfied its obligations of due care before marketing its GA21 corn product, let alone on the liability issues of patent validity and infringement; it is only designed to cast Syngenta in the worst possible light before the jury.

Here, the alleged infringing activities—Syngenta's commercialization of its Agrisure GT corn ("GA21 corn") product—pointed to by plaintiffs (collectively referred to as "Monsanto") occurred *after* Monsanto initiated the lawsuits. It has been obvious from the beginning of this case that Syngenta has viable legal defenses to plaintiffs' patents. Indeed, Syngenta requested leave of Court to file early summary judgment motions directed to the validity and/or

1

infringement of those patents.  Moreover, the strength of Syngenta's now-pending summary judgment motions further emphasizes that Monsanto's willful infringement allegations are without basis.

A unitary trial on all issues would raise a substantial risk that the jury would confuse the infringement and validity inquiry with plaintiffs' "willfulness" case and improperly find in favor of plaintiffs.  Finally, because there will be little, if any, overlap between the presentations of the willfulness and damages evidence and the liability evidence, willfulness and damages may be efficiently held in reserve and, if necessary, adjudicated in a second phase of trial.

## II.     NATURE AND STAGE OF PROCEEDINGS

Plaintiffs allege that Syngenta's sales and licensing of others to sell Syngenta's GA21 corn product in the 2005 and 2006 crop years infringe U.S. Patent No. 4,940,835 ("the Shah patent") and U.S. Patent Nos. 5,538,880 and 6,013,863 ("the Lundquist patents").  Those allegations were brought against Syngenta in two separate actions that were consolidated on August 23, 2005.

Monsanto sued Syngenta on May 12, 2004, the day that Syngenta publicly announced its intention to enter the glyphosate-resistant corn seed market and before Syngenta had sold even a single unit of GA21 corn.  (D.I. 1 in C.A. No. 04-305 SLR (D. Del.).)  Syngenta answered Monsanto's complaint on July 1, 2004, raising the affirmative defense of patent invalidity and specifically pleading that to the extent the claims of the Shah patent are alleged to cover Syngenta's GA21 corn product, the claims are not enabled under 35 U.S.C. § 112.  Indeed, Syngenta had sought permission from the Court to file an early summary judgment motion on this very enablement issue on August 1, 2005.  (D.I. 89 in C.A. No. 05-355 SLR (D. Del.).)  The Court gave Syngenta leave to file such a motion, but only if the parties could agree to a stipulated set of facts.  To obtain such a stipulation, Syngenta served a set of admission requests

on September 9, 2005. (D.I. No. 126 in C.A. No. 05-355 SLR (D. Del.).) Monsanto, however, refused to admit the proposed facts even though they paralleled positions that *Monsanto (and its subsidiary DeKalb) had taken in previous litigations.* (Exhibit A, Plaintiff's Objections and Responses to Syngenta's Third Set of Requests for Admission (Nos. 24-130).)

In *Plant Genetic Systems, N.V. v. DeKalb Genetics Corporation,* DeKalb argued that it was not possible to transform monocot plant cells as of March 1987. 175 F. Supp. 2d 246, 261 (D. Ct. 2001), *aff'd,* 315 F.3d 1335 (Fed. Cir. 2003). The court agreed and found that DeKalb had presented clear and convincing evidence that in 1987, the "monocot barrier" was still firmly in place, and no one was able to transform monocots until several years later. *Id.* The claims of the Shah patent asserted by Monsanto in this case require the transformation of monocot plant cells. The Shah patent was filed in July 1986—almost a year earlier than Monsanto argued it was *not* possible to transform monocot cells.

DeKalb sued Syngenta on July 27, 2004, asserting the Lundquist patents against Syngenta. (D.I. 1 in C.A. No. 04CV50323 (N.D. Ill.).) Syngenta asserted in its answer that the Lundquist patents were not infringed and not valid. (D.I. 48 in C.A. No. 04CV50323 (N.D. Ill.).)

Additionally, Syngenta filed an antitrust action against Monsanto on July 28, 2004, alleging, among other things, that Monsanto's and DeKalb's patent infringement suits against Syngenta are baseless. (D.I. No. 1 in C.A. No. 04-908 (D. Del.).) Syngenta further asserted that Monsanto knew or should have known that its Shah patent is invalid or not enforceable against Syngenta's corn product, because of plaintiffs' previous court representations that monocot transformation was not enabled at the time the Shah patent application was filed. Syngenta also asserted that DeKalb knew or should have known that Syngenta had not practiced the

"bombardment" processes claimed in the Lundquist patents. Instead, only DeKalb itself practiced the claimed methods to create the original GA21 corn plants.

Recognizing the complexity of the Shah patent and related technologies, this Court set trial for three weeks, even before the Lundquist case was transferred from Illinois and consolidated with this case for trial.

Fact and expert discovery are closed, and this case is set for trial on May 30, 2006.

## III.     SUMMARY OF ARGUMENT

Monsanto and DeKalb have substantial and demonstrable reasons to doubt the merits of their own patent claims against Syngenta. Indeed, their legal arguments relating to infringement and validity untenably push the frontiers of patent law. Accordingly, the plaintiffs should not be permitted to shroud the weaknesses of their liability case behind complicated and extensive "willfulness" evidence in order to confuse the jury and prejudice the results of this litigation against Syngenta. Instead, the merits of plaintiffs' suspect liability claims should be fully adjudicated in a separate phase of trial that will not be tainted by plaintiffs' "willfulness" evidence. Only if plaintiffs are able to prevail on their liability claims, and if the Court at that time permits it, should the plaintiffs be given the chance to make their case that Syngenta willfully infringed their patents. None of plaintiffs' willfulness evidence is relevant to the threshold issues of liability, and presenting this evidence during the liability phase of the trial will serve only to confuse the jury. The liability issues alone are complex and difficult to assimilate, and the jury should not be overburdened with plaintiffs' extensive and confusing willfulness and damages evidence.

IV.    FACTUAL BACKGROUND

    A.    The Technical Evidence Concerning Liability

        1.    The Shah Patent

The asserted claims of the Shah patent are directed to "chimeric" genes that are defined, not by their structure, but primarily by their ability to function in plant cells transformed with the genes to enhance the plants cells' resistance to glyphosate, a herbicide. Syngenta has argued in its summary judgment papers that the asserted patent claims are not enabled because--as admitted by Monsanto--transforming monocot cells, such as corn cells, was indisputably not possible when the patent application was filed.

If the Court denies Syngenta's motion for summary judgment that these claims are not enabled, then the underlying scientific principles related to this issue will need to be considered by the jury. For example, the parties will need to educate the jury about genetics (i.e., genetic sequences, genetic engineering, gene expression); monocots and dicots (i.e., their characteristics, biological differences, and various species); and different methods of transformation (i.e., agrobacterium-mediated transformation).

In addition, if Syngenta's summary judgment motion is denied, Syngenta intends to present at trial additional non-enablement arguments not raised in its summary judgment motion. For example, Syngenta will demonstrate that even if one could transform a monocot plant cell as of the filing date of the '835 patent, the '835 patent does not teach one of ordinary skill how to make and use a gene that will function in monocot plant cells to enhance glyphosate resistance without undue experimentation. This inquiry will entail testimony and scientific evidence concerning whether any construct described in the '835 patent was ever capable of enhancing glyphosate resistance in a monocot plant cell. But to understand this, the jury must first hear

evidence about gene expression, regulation, and chloroplast transit peptide structure and function.

In addition, if the Court denies Syngenta's motion for summary judgment of non-infringement, the parties will likely present evidence on whether or not Syngenta's GA21 corn product contains a naturally occurring chloroplast transit peptide or "CTP" as that term is meant in claim 1. This inquiry will require scientific testimony about genetic engineering, protein transport within a plant cell, and the difficulties in designing a synthetic sequence that would work to successfully target an EPSPS protein into the chloroplast.

### 2.    The Lundquist Patents

The later-filed Lundquist patents are directed to a "bombardment" process for producing genetically modified corn plants resistant to glyphosate. There are no factual disputes concerning non-infringement. However, if the Court does not grant summary judgment of non-infringement, Syngenta's invalidity defense will, among other things, involve evidence demonstrating that the alleged inventions were anticipated by prior publications and were also derived from information disclosed to Lundquist by a scientist, Dr. Theodore Klein, who pioneered gene bombardment techniques.

### B.    The Extensive and Distinct Evidence Concerning Willfulness and Damages

In response to Syngenta interrogatories, plaintiffs have signaled their intention to present a wide-range of "willfulness" evidence, which will require considerable testimony to explain and refute. That evidence includes, among other things, Syngenta's acquisition of rights in its current corn product from third-party Bayer CropScience S.A. ("Bayer"), Syngenta's alleged interference with plaintiffs' contractual relationships with certain seed companies (Garst and Golden Harvest),

6

**Redacted**

1.    **Syngenta's acquisition of rights from Bayer**

a.    **Monsanto's "willfulness" evidence**

The first commercialized glyphosate-resistant corn product was developed from a genetic transformation event called "GA21." The GA21 event was the result of a collaboration between plaintiff DeKalb and Bayer's predecessor, Rhone-Poulenc Agro ("RPA"). *See Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335, 1341-42 (Fed. Cir. 2001) ("RPA II"). RPA contributed the gene that provided glyphosate resistance, and DeKalb bombarded the RPA gene into the corn cells. *Id.* at 1341. DeKalb described RPA's gene as "the key to success" in achieving glyphosate tolerance in corn plants. *Id.* at 1342. The collaboration ultimately ended in protracted litigation between the two companies, in which DeKalb was held liable to RPA, in part, for defrauding RPA by withholding field trial data about the glyphosate tolerance of GA21 corn.[1] *Id.* at 1343. DeKalb was also held liable for infringing an RPA patent that claimed the genetic construct in GA21 corn. *Id.*

Nevertheless, to preserve its dominance in the glyphosate-resistant corn market, Monsanto sued Bayer under the Shah patent, alleging that Bayer infringed the patent through efforts to develop its own GA21 corn product. *Monsanto Co. v. Bayer CropScience LP*, No. 01-CV-1825 (E.D. Mo.). Monsanto and Bayer ultimately concluded that and other litigations by a global settlement,

---

[1] The Federal Circuit described DeKalb's fraud relating to GA21 corn as "egregious." *Rhone-Poulenc Agro, S.A. v. Dekalb Genetics Corp.*, 345 F.3d 1366, 1372 (Fed. Cir. 2003). The court affirmed an award of $50 million in punitive damages against DeKalb for its fraud. *Id.*

7

(Exhibit B, Monsanto's Supplemental Responses to Syngenta's Interrogatory Nos. 5, 6, 8 and 9 at p. 12 ("Monsanto's Response to Interrogatory 9").)

Ultimately, Syngenta acquired Bayer's patent and other rights in GA21 corn.

Plaintiffs intend to delve into this Bayer-rights-acquisition history as part of their willfulness case in an apparent effort to prove that Syngenta was aware of the Shah patent through its dealings with Bayer

This evidence is an obvious diversion from the threshold issues of patent infringement and validity. These issues will consume significant trial time and resources and involve witnesses and evidence that do not overlap with the liability issues.

### b.    Syngenta's damages valuation

The evidence is, however, relevant to the damages issues in this case, even though Monsanto's expert has largely ignored the value of key GA21 corn technologies in his damages calculation. He wrongly assumes that plaintiffs' Shah and Lundquist patents account for 100% of the technology value for GA21 corn. In essences, he assumes that RPA's GA21 rights--the rights that Syngenta now owns--are worthless.

8

**Redacted**

This will entail testimony and evidence about the Bayer acquisition, the litigations between RPA on the one hand and DeKalb and Monsanto on the other, and the technological contributions of RPA. Although this evidence is not relevant to the threshold liability issues, it does overlap with the "willfulness" evidence that plaintiffs intend to present concerning Syngenta's acquisition of GA21 rights from Bayer.

### 2.     Syngenta's alleged interference with contractual relations

Trying willfulness now will also require presentation to the jury of large parts of Monsanto's tortious interference counterclaim in the related antitrust litigation, along with Syngenta's corresponding defenses. For example, plaintiffs will attempt to show that Syngenta induced certain seed companies, Garst and Golden Harvest,[2] to breach license agreements they had entered with Monsanto. (Exhibit B, Monsanto's Response to Interrogatory 9 at p. 14.)

Syngenta, in fact, obtained GA21 corn from Garst and Golden Harvest, seed companies that were ultimately acquired by Syngenta for a host of legitimate business reasons. Garst and Golden Harvest had remaining inventory of the discontinued GA21 corn product that had been sold under a supposed license from Monsanto. Plaintiffs will also attempt to show that Syngenta purchased the seed companies and induced them to provide GA21 materials in breach of that "license." (*Id.* at 14.)

---

[2] In the related antitrust litigation, Monsanto's tortious interference counterclaim concerns only Garst's agreement with Monsanto; it does not concern Golden Harvest. However, in this litigation, Monsanto has indicated that it will assert that Syngenta induced both Garst and Golden Harvest to provide it with GA21 materials in violation of their agreements with Monsanto. (Exhibit B, Monsanto's Response to Interrogatory 9 at p. 14.)

9

**Redacted**

While it is not clear how this evidence demonstrates a lack of due care on Syngenta's part, Syngenta will nonetheless need to respond. Syngenta will present evidence that the license was not effective, in part, because DeKalb's fraud against RPA prevented Monsanto from obtaining rights in GA21 corn through DeKalb. *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323 (Fed. Cir. 2002) (holding that Monsanto is not shielded from DeKalb's fraud as a bona fide purchaser for value) ("RPA III"). Syngenta will also need to justify its acquisition of the seed companies by showing the legitimate business reasons for these acquisitions, including access to high-quality germplasm, regional markets, and a strong sales force. Monsanto itself unsuccessfully sought to acquire these companies, presumably for the same legitimate business reasons.

None of this evidence has any relevancy to the underlying patent infringement and validity issues in the case and does not overlap with those issues and will distract from the trial presentations that are integral to the invalidity and noninfringement issues of this case.

3.

10

**Redacted**

**REDACTED -- Public Version filed 5/4/06**

4.    Other miscellaneous "willfulness" evidence

11

**Redacted**

Finally, plaintiffs intend to present evidence that Syngenta hired the former head of Monsanto's corn business to lead Syngenta's corn business. (*Id.* at 12.) Even if relevant to the willfulness issues in the case, this evidence has no overlap with or bearing on the fundamental liability issues in this case.

## V.     ARGUMENT

By piling on such far-reaching "willfulness" evidence, plaintiffs obviously hope to create enough "smoke" that the jury will believe there is a fire. Here, plaintiffs' willfulness case is fundamentally flawed. It fails to place the alleged infringing activities, the sales and licensing of Syngenta's GA21 corn product, in true context—all occurring after plaintiffs sued Syngenta and after Syngenta had mounted vigorous defenses against those allegations. Regardless of the fact that Syngenta has refused to waive privilege and rely on advice of counsel as a defense against willfulness, it is clear that before any of the alleged infringing commercial activities began, Syngenta had viable and non-trivial defenses, which plaintiffs were made aware of by Syngenta through pleadings, discovery, and other communications, and which satisfy a duty of care during that pre-commercialization stage. In contrast, it is not at all clear that plaintiffs acted properly in suing Syngenta—they knew or should have known that the patents are invalid and that Syngenta does not infringe.

Indeed, "willful" infringement can hardly be said to exist in this context—where even the plaintiffs have substantial and demonstrable reasons to doubt the merit of their own legal claims. Plaintiffs should not be permitted to pursue such a suspect case of willful patent infringement, *if at all*, when presenting its liability evidence to the jury. If plaintiffs are permitted to pursue their willfulness case, it should be done in a setting that will not distract and confuse the jury from the threshold issues of liability—in a bifurcated second phase of trial.

Rule 42(b) of the Federal Rules of Civil Procedure authorizes the Court to bifurcate the trial of liability issues from the willfulness and damages issues:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United Sates.

Fed. R. Civ. P. 42(b).

Courts have broad discretion under this rule to separate issues for trial. *See Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987). Bifurcation under Rule 42(b) is appropriate when it "furthers convenience *or* avoids prejudice *or* is conducive to expedition and economy." *Giro Sport Design Inc. v. Pro-Tec, Inc.*, 10 U.S.P.Q.2d 1863, 1866 (N.D. Cal. 1989) (emphasis added). These objectives are stated in the disjunctive, and satisfying any one provides a basis for bifurcation. *See id.* at 1869. In the present case, *all three* of these objectives would be achieved by bifurcating the trial of liability issues from the willfulness and damages issues.

## A.    Bifurcation Will Avoid Unnecessary Jury Confusion

Bifurcation may be employed "to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to the jury." *Enzo Life Sciences Inc. v. Digene Corp.*, C.A. No. 02-212-JJF, 2003 WL 21402512, at *5 (D. Del. June 10, 2003) (internal citation omitted); *see also Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002). Here, the patent infringement and validity issues alone will be difficult enough for the jury to assimilate and understand. Those issues involve highly complex and abstract concepts of genetic engineering and the state of the biotech art when the patent applications were

filed. *See In re Recombinant DNA Technology Patent and Contract Litigation*, MDL No. 912, 1994 U.S. Dist. LEXIS 20993, at *6 (S.D. Ind. Oct. 20, 1994) (acknowledging the complexity of patented technology dealing with genetics). Bifurcation will assist the jury in focusing its efforts on those core issues. *See Ciena*, 210 F.R.D. at 521 (bifurcation may prevent jury confusion). In contrast, a unitary trial on all issues threatens to overwhelm the jury with additional, unrelated evidence and would only prolong the time between when the jury hears evidence and when it is permitted to deliberate on that evidence.

Plaintiffs' willfulness and damages evidence would likely also confuse and mislead the jury in its consideration of the patent validity issues.

### B.    Bifurcation Will Further Convenience and Judicial Economy

"Central to the concept of convenience is whether the triable issues involve evidentiary overlap, that would require the testimony of the same witnesses, and related repetitions of proof." *Intermedics, Inc. v. Cardiac Pacemakers, Inc.*, No. 4-95-716 (JRT/RLE), 1998 U.S. Dist. LEXIS 23181, *50 (D. Minn. Feb. 17, 1998). Here, the liability issues and evidence in this case are distinct from those for willfulness and damages.

As a legal matter, the liability issues regarding plaintiffs' patents and Syngenta's accused products are unrelated to the determination of willfulness and the assessment of damages. *See Avia Group Int'l, Inc. v. Nike, Inc.*, No. 91-326-JU, 1991 U.S. Dist. LEXIS 20492, at *6 (D. Or.

14

**Redacted**

Sep. 17, 1991) ("Because intent is irrelevant to a determination of patent infringement, there is no overlap concerning willfulness between the issue of liability and damages").[3] Moreover, as a factual matter, there will be little, if any, overlap in the presentation of liability evidence and the presentation of willfulness and damages evidence.

The witnesses during the liability phase will likely include the patent inventors, fact witnesses who are knowledgeable of the genetic composition of Syngenta's GA21 corn product, and technical experts who will testify about the patent infringement and validity issues.   In contrast, witnesses in the willfulness and damages phase will address unrelated topics concerning Syngenta's business dealings with Bayer,                Garst, Golden Harvest, and the plaintiffs themselves;                                                     and the hiring of Monsanto's prior head of its corn business.

None of these subjects overlap with the infringement and validity issues or necessarily involve testimony from the same individuals.  For example, Syngenta business people testifying in the willfulness and damages phase about Syngenta's business dealings would likely have no role in the liability phase.

---

[3]*See also Air-Shields, Inc. v. BOC Group*, No. WN-91-2571, 1992 U.S. Dist. LEXIS 17398, **8-9 (D. Md. Feb. 28, 1992) (concluding that "little, if any, evidentiary overlap will occur" between willfulness, which "is an inquiry into bad faith, and thus an inquiry into intent," and liability, which "is largely concerned with Air-Shields' patent and BOC's product"); *Lockwood v. American Airlines, Inc.*, No. 91-1640-E(CM), 1992 U.S. Dist. LEXIS 22077 at *10 (S.D. Cal. Oct. 27, 1992) (accepting defendant's argument that "the desire or intent to infringe a patent is irrelevant to the question of infringement," citing *Wilden Pump v. Pressed and Welded Prods. Co.*, 655 F.2d 984 (9th Cir. 1981)).

15

**Redacted**

Additionally, bifurcation may potentially save time and resources. Because liability is a predicate for both awarding damages and finding willfulness, a verdict of non-infringement or patent invalidity in the first phase of trial would obviate the need for proceeding to the next phase, and correspondingly obviate the need to resolve the numerous pre-trial issues related to willfulness and damages,[4] saving substantial time and resources for the parties and the Court.[5] Here, the fundamental weakness of plaintiffs' case on liability provides strong support for bifurcation.

### C.    Bifurcation Will Avoid Prejudice

Intent is not an element of patent infringement. *Embrex, Inc. v. Service Eng. Corp.*, 216 F.3d 1343, 1352 (Fed. Cir. 2000). Nevertheless, willfulness evidence *appears* to concern culpability, and the jury may incorrectly afford great weight to the state of mind evidence rather than focusing on the proper bases for its liability determinations—the patent and the accused products. *Cf. Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999) ("'the boundary between unintentional and culpable acts is not always bright'") (quoting *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir. 1995)).

Although the evidence in the record belies such assertions, there is a substantial risk that

---

[4] These issues--slated to be discussed during the pre-trial conference--comprise the majority of the relevancy and admissibility disputes.

[5] *See also General Patent Corp. v. Hayes Microcomputer*, No. SA CV 97-429-GLT(ANx), 1997 U.S. Dist. LEXIS 21342 at *4-*5 (C.D. Cal. Oct. 20, 1997); *Avia Group*, 1991 U.S. Dist. LEXIS 20492, at *4-*5.

16

**Redacted**

the jury will simply reach an infringement verdict based on that perception of Syngenta's "state of mind," without properly determining whether the patent claim elements are found in the accused product.

Plaintiffs also seek to introduce evidence related to issues that are currently being litigated in the antitrust litigation between the parties. Specifically, plaintiffs intend to argue that Syngenta induced Garst and Golden Harvest to breach their agreement with plaintiffs in order to obtain access to GA21 corn. If believed by the jury, there is a significant risk that the jury will be improperly prejudiced against Syngenta, concluding simply on character grounds that plaintiffs' accusations of patent infringement must also be true. Even if Syngenta had improperly induced a breach of contract, that fact would not make it any more probable that all elements of the claimed inventions are found in Syngenta's GA21 product. Infringement is determined by comparing the patent claim elements to the accused product. *See Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004) (infringement determination "requires a comparison of the properly construed claim to the accused device"). Evidence of a breach of contract does nothing to assist the jury in that determination. Instead, it would likely only further complicate the trial and confuse the jury, because Syngenta's defense to the alleged breach of contract goes to whether the contracts were even effective, due to the established fact of DeKalb's *fraud* against RPA in connection with GA21 corn.

Additionally, Monsanto seeks to further prejudice Syngenta by including evidence favorable to its willfulness claim, while excluding the evidence favorable to Syngenta's defenses. For example, Monsanto would like to rely on evidence of both the Bayer acquisition

Meanwhile, Monsanto

seeks to exclude evidence that DeKalb and Monsanto lost their rights to GA21 corn by

17

**Redacted**

defrauding RPA and infringing RPA's "OTP" patent. This evidence not only explains the origin of the GA21 rights transferred to Syngenta in the Bayer acquisition, but it is also integral to Syngenta's claim that Monsanto's GA21 licenses with Garst and Golden Harvest were invalid.

While Syngenta faces a serious risk of prejudice without bifurcation, plaintiffs will suffer no prejudice if the willfulness and damages issues are separated for trial. In fact, other courts have ruled that a "jury need not hear evidence about the desire or intent to infringe to decide whether infringement occurred." *Pittway Corp. v. Maple Chase Co.*, No. 91-CV-3582, 1992 U.S. Dist. LEXIS 19237, at *17 (N.D. Ill. Dec. 15, 1992). Moreover, if Syngenta prevails in the liability phase, plaintiffs' claims for damages and charges of willfulness will be moot. Even if plaintiffs succeed, in whole or in part, in the liability phase, there is little risk of delays in adjudicating the bifurcated issues. Fact and expert discovery on the willfulness and damages issues have been completed, and the parties should be prepared to move immediately into the second phase of trial, if necessary.

Because plaintiffs' willfulness and damages evidence has *no* role in adjudicating the threshold liability issues, this substantial risk of jury confusion far outweighs any probative value that the evidence might have in resolving liability. Under these circumstances, bifurcation is an appropriate tool to prevent such unfair prejudice and jury confusion. *See In re Recombinant*, 1994 U.S. Dist. LEXIS 20993, at **10-11; *Lockwood*, 1992 U.S. Dist. LEXIS 22077, at **7-11;

18

**Redacted**

*Avia Group*, 1991 U.S. Dist. LEXIS 20492, at *9; *Enzo Life Sciences*, 2003 WL 21402512, at **4-5.[6]

## VI.    CONCLUSION

For the foregoing reasons, Syngenta respectfully requests this Court to exercise its discretion under Fed. R. Civ. P. 42(b) to bifurcate the trial in this case into two phases: (1) patent validity and infringement, and (2) willfulness and damages.

Respectfully submitted,

John W. Shaw (No. 3362)
Seth J. Reidenberg (No. 3657)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Of counsel:                    Attorneys for Defendants
Michael J. Flibbert
Howard W. Levine
York M. Faulkner
Sanya Sukduang
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

Dated: April 28, 2006

---

[6]*See* 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2388 (3d. 1998) ("A separate trial may be ordered to avoid prejudice, as when evidence admissible only on a certain issue may prejudice a party in the minds of the jury on the other issues."); 8 *Moore's Federal Practice* § 42.20(4)(c) ("When a jury's reaction to potentially prejudicial material contained within one claim or issue threatens to injure a litigant, courts are authorized to bifurcate the case and separately try other issues in the action first, so as to minimize the risk of untoward prejudice.").

REDACTED -- Public Version filed 5/4/06

# EXHIBIT A

# Exhibit A
# Redacted in its Entirety

**REDACTED -- Public Version filed 5/4/06**

# EXHIBIT B

REDACTED -- Public Version filed 5/4/06

# Exhibit B
# Redacted in its Entirety

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 28, 2006, I caused to be electronically filed a true and correct copy

of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that

such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on April 28, 2006, copies of the foregoing document were served by hand

delivery on the above listed counsel and on the following non-registered participants by e-mail on

April 28, 2006 and by Federal Express on April 29, 2006:

> John J. Rosenthal, Esquire
> Peter E. Moll, Esquire
> HOWREY LLP
> 1299 Pennsylvania Ave., N.W.
> Washington, D.C. 20004
>
> Kenneth A. Letzler, Esquire
> Arnold & Porter LLP
> 555 12th Street, N.W.
> Washington, D.C. 20004

> Susan Knoll, Esquire
> HOWREY LLP
> 1111 Louisiana, 25th Floor
> Houston, TX 77002-5242

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _____
> John W. Shaw (No. 3362)
> Seth J. Reidenberg (No. 3657)
> Karen E. Keller (No. 4489)
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, Delaware 19801
> (302) 571-6600
> sreidenberg@ycst.com
> *Attorneys for Syngenta Seeds, Inc., Syngenta Corporation,*
> *Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed*
> *Company, and Golden Harvest Seeds, Inc.*

DB01:1611981.3