## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SYNGENTA SEEDS, INC. and | ) | C.A. No. 04-305-SLR |
| SYNGENTA BIOTECHNOLOGY, INC., | ) | (Lead Case) |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| DEKALB GENETICS CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SYNGENTA SEEDS, INC., | ) | |
| SYNGENTA BIOTECHNOLOGY, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT PROPOSED FINAL JURY INSTRUCTIONS

Plain Text – Agreed

Underlined Text – Proposed by Monsanto and Objected to by Syngenta

**Bold Text – Proposed by Syngenta and Objected to by Monsanto**

In view of the substantive issues that remain to be decided in the pending motions and the issues remaining to be discussed at the pre-trial conference, the fact that a party has submitted an instruction on an issue, or does not object to an instruction concerning that issue, does not mean that the party agrees that the issue is one that is properly in the case.

**INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**JURORS' DUTIES**

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

# BURDENS OF PROOF

This is a civil case in which plaintiff, Monsanto, is charging defendant, Syngenta, with patent infringement.  Plaintiff has the burden of proving patent infringement by what is called a preponderance of the evidence.  That means that plaintiff has to produce evidence which, when considered in light of all of the facts, leads you to believe that what plaintiff asserts is more likely true than not.  To put it differently, if you were to put plaintiff's and defendant's evidence of infringement on opposite sides of a scale, the evidence supporting plaintiff's assertions would have to make the scales tip somewhat to its side. **If the scales are <u>exactly</u> even or tip toward defendant's side, then plaintiff has not met its burden of proof.**

In this case, defendant is urging that the asserted claims of the patents-in-suit are invalid.  Since a patent is presumed to be valid, defendant has the burden of proving, by clear and convincing evidence, that each asserted claim is invalid.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Monsanto is also charging Syngenta with willful infringement.  Like Syngenta's invalidity claims, Monsanto has the burden of proving willful infringement by clear and convincing evidence.

**EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of the court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my comments or questions are evidence.  The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to or identify evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked or I may have struck things from the record.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things

are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he or she saw it raining outside, and you believed him or her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

# CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence which tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, the testimony of a witness may be discredited or impeached by showing that the witness has made an incorrect statement or has given a prior statement or testimony which is inconsistent with his or her testimony at this trial. It is the province of the jury to determine whether an incorrect statement or prior inconsistent statement discredits the witness's testimony.

But bear in mind that an innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or to an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

**EXPERT WITNESSES**

When knowledge of technical or financial subject matter might be helpful to the jury, a person who has special training or experience in that technical or financial field is permitted to state his or her opinion on those technical or financial matters.  He or she is called an expert witness.  However, you are not required to accept an expert witness's opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion whole or in part.

## DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or played on videotape.  This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## STIPULATIONS

During the course of the trial, you heard that certain stipulations of fact had been agreed to by the parties. A stipulation of fact is an agreement between the parties that a certain fact is true. You must regard such facts as true.

**DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts, animations, and demonstrations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called demonstrative exhibits, have not been admitted, are not evidence and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in the case.

**THE PARTIES**

I will now review for you the parties in this action.

Plaintiffs are Monsanto Company, Monsanto Technology LLC, and DeKalb Genetics Corp., which I have referred to collectively as "Monsanto."  Monsanto is the owner of the patents-in-suit.

Defendants are Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Golden Harvest Seeds, Inc., Garwood Seeds Co., Golden Seed Co., LLC, Sommer Bros. Seed Co., Thorp Seed Co., JC Robinson Seeds, Inc., and Garst Seed Company**, which I have referred to collectively as "Syngenta.**" Because an affiliate of Syngenta Seeds, Inc. owns a controlling interest in all of these companies, they will be  collectively referred to in this case as "Syngenta."

## PLAINTIFF'S CONTENTIONS

Monsanto contends that Syngenta has infringed claims 1, 5 and 6 of the '835 patent, claims 4-9 of the '880 patent, and claims 5-6 of the '863 patent by making, using selling or offering for sale GA21 corn under the tradename "Agrisure" or "GT." Monsanto further contends that Syngenta's infringement was willful. Monsanto also contends that, as a result of the infringement of the patents-in-suit by Syngenta, Syngenta is liable for damages. Specifically, Monsanto contends that it is entitled to damages in the form of a reasonable royalty from Syngenta.

# DEFENDANTS' CONTENTIONS

Syngenta contends that the GA21 "Agrisure" and "GT" corn does not infringe any of the asserted claims. **Syngenta also contends that it did not induce others to infringe any of the asserted claims and did not contribute to the infringement of any of the asserted claims.** Syngenta <u>also</u> contends that all of the asserted claims are invalid in view of certain prior art and because the specifications of the patents fail to provide an enabling disclosure and a written description of the claimed inventions. **Syngenta also contends that the subject matter of the asserted claims of the '880 patent were previously invented by scientists other than the named inventors on the '880 patent, that the named inventors on the '880 patent derived the invention of the asserted claims from other scientists, and that the '880 patent does not name the proper inventors.** Syngenta further contends that the asserted claims of the '835 patent are invalid because the inventors failed to disclose the best mode of practicing the claimed invention. **Syngenta does not owe any damages to Monsanto if the asserted claims do not cover the GA21 "Agrisure" and "GT" corn (not infringed) or if the asserted claims do not meet the requirements of the patent laws (invalid). Syngenta contends that it owes no damages because none of the asserted claims are both infringed and valid.**

## SUMMARY OF PATENT ISSUES

In this case, you must decide several issues according to the instructions that I shall give you.  They include:

Whether Monsanto has proven by a preponderance of the evidence that Syngenta**'s GA21 corn product** literally infringes any asserted claim of the '835, '880, or '863 patents.

Whether Monsanto has proven by a preponderance of the evidence that Syngenta**'s GA21 corn product** infringes any asserted claim of the '835 patent under the doctrine of equivalents.

If you decide that Syngenta has infringed, then you must also decide whether Monsanto has proven by clear and convincing evidence that Syngenta's infringement was willful.

Whether Syngenta has proven by clear and convincing evidence that any asserted claim of the '835, '880, or '863 patents is invalid.

If you decide that at least one claim of '835, '880, or '863 patents is infringed by Syngenta**'s GA21 corn product** and is not invalid, you should also decide whether Monsanto has proven by a preponderance of the evidence that it is entitled to recover

damages as compensation for Syngenta's infringement and, if so, what amount of damages.

# THE ASSERTED CLAIMS

Before you can decide whether or not Syngenta**'s GA21 corn product** has infringed the '835, '880, or '863 patents, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are intended to describe, in words, the boundaries of the invention described and illustrated in the patent. The claims define the patent owner's property rights. Infringement is the act of trespassing on those rights. Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of the patent can be infringed.

In addition, the claims of a patent do not have to cover every feature of the patented invention. Each claim is a separate statement of the patented invention and, therefore, each of the asserted claims must be considered individually. To show infringement of the '835, '880, or '863 patents, Monsanto needs only to establish that one of the asserted claims in that patent has been infringed.

There are a number of claims involved here. Monsanto asserts that Syngenta**'s GA21 corn product** infringes claims 1, 5, and 6 of the '835 patent, claims 4-9 of the '880 patent, and claims 5-6 of the '863 patent. The asserted claims are being provided to you separately to help you in your deliberations.

## DEPENDENT AND INDEPENDENT CLAIMS

These are two different types of claims in a patent. The first type is called an "independent" claim. An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 1 of the '835 patent is an independent claim. You know this because claim 1 does not refer to any other claim. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

On the other hand, claim 5 of the '835 patent is a dependent claim. If you look at claim 5, it refers to claim 1. Therefore, to determine what claim 5 covers, you must consider both the words of claims 1 and 5 together. **Claim 6 of the '835 patent is also a dependent claim.**

**Monsanto has also asserted claims 4-9 of the '880 patent. Claim 4 of the '880 patent is also a dependent claim because it refers to claim 1. The words of claims 1 and 4 must be read together to determine what claim 4 covers. Claims 5-9 of the '880 patent are also dependent claims as they refer back to at least one other claim.**

**Monsanto also asserted claims 5 and 6 of the '863 patent. Claim 5 of the '863 patent is a dependent claim because it refers to claim 1 of the '863 patent.**

21

**Accordingly, the words of claims 1 and 5 must be read together in order to determine what the dependent claim 5 covers. Claim 6 of the '863 patent is also a dependent claim because it refers to claim 5.  Thus, the words of claims 1, 5, and 6 must be read together to determine what dependent claim 6 covers.**

Some claims of the patents-in-suit are broader than other claims.   You are not to read the **additional** limitations or **i.e.,** words of a narrower or **the** dependent claim**s** into **any of the** a broader or independent claim**s** if the **independent** broader claim does not explicitly include the same limitations **or words**.

## OPEN ENDED OR "COMPRISING" CLAIMS

Several claims of the patents-in-suit use the transitional term "comprising." "Comprising" is interpreted the same as "including" or "containing." In patent claims, comprising means that the claims are open ended. This means that the claim is not limited to processes or products that include only what is in the claim and nothing else. If you find that the accused processes or products include all of the limitations in any of Monsanto's patent claims, the fact that they may also include additional elements or components is irrelevant. The presence of additional elements or components does not mean that the method or product does not infringe a patent claim. **Similarly, if Syngenta shows that something in the prior art meets all the limitations of a claim, and therefore invalidates the claim, the fact that the prior art may disclose additional elements or components would also be irrelevant.**

## CLAIM CONSTRUCTION

To decide the questions of infringement and validity, you must first understand what the claims of the patent cover.   It is my duty under the law to define what the patent claims mean.  I will tell you what the claim terms mean.  You must use the meanings I give you for both your decisions on infringement and your decisions on validity.

You must ignore any different interpretation given to these terms by the witnesses or attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.  I instruct you that the following claim terms have the following definitions:

_____

## PATENT INFRINGEMENT GENERALLY

A patent owner may enforce its right to exclude others from making, using, selling, or offering to sell a patented invention by filing a lawsuit for patent infringement. A party may also infringe a method or process patent by using or selling a product made by the patented process, regardless of whether the party performs any steps of the process. Moreover, a party infringes a method or process claim if the last step of the claimed process is completed during the term of the patent, even though one or more of the steps of the claimed process was carried out before the patent issued.

**There are three ways to infringe a patent. One may: (1) directly infringe a patent; (2) indirectly infringe by inducing others to infringe a patent; or (3) indirectly infringe by contributing to the infringement of a patent.**

Here, Monsanto has alleged that Syngenta**'s GA21 corn product** infringes the asserted claims of the three patents-in-suit. Monsanto has the burden of proving, by a preponderance of the evidence, that Syngenta**'s GA21 corn products** has infringed at least one of the asserted claims **during the term of the patent. The term of the '835 patent began on July 10, 1990. The term of the '880 patent began on July 23, 1996. The term of the '863 patent began on January 11, 2000.** either literally or under the doctrine of equivalents.

A company may **directly** infringe a patent without knowledge that what it is doing is an infringement of the patent. A company may also infringe even though, in good faith, it believes that what it is doing is not an infringement of any patent. Knowledge or intent to infringe is not relevant **for direct infringement**.

## LITERAL INFRINGEMENT

To determine literal infringement **of a product claim**, you must compare Syngenta's GA21 corn product or activity with each of the asserted claims. A **product** patent claim is literally infringed if**, during the term of the patent,** the accused product or activity meets or includes each limitation **element** in that claim. If the accused product or activity does not meet or include one or more limitations **elements** in a claim, **or was made, used, sold, or offered for sale before the term of the patent,** then it does not literally infringe that claim. **Claims 1, 5, and 6 of the '835 patent are product claims.**

**To determine literal infringement of a process claim, you must compare the process used by Syngenta to make GA21 corn with each of the asserted claims. A process patent claim is literally infringed if the process used by Syngenta to make its GA21 corn product was conducted during the term of the patent and corresponds to each and every process step in the claim. If the accused process does not contain a corresponding step to one or more process steps in a claim or if the process steps were performed before the term of the patent, than the accused process does not literally infringe that claim. The asserted claims of the '880 and '863 patents are process claims. The term of the '880 patent began on July 23, 1996. The term of the '863 patent began on January 11, 2000.**

You must determine infringement with respect to each of the asserted claims individually.

Remember, the relevant question is whether**, during the term of the patent,** Syngenta's GA21 corn products **or the process used by Syngenta to make its GA21 corn products** or activities infringe**s** any of the asserted claims of the patent-in-suit. Whether Syngenta's products or activities are similar or identical to a product made by Monsanto or anyone else is not relevant to a determination of infringement here. Therefore, you must be certain to compare each of Syngenta's accused **GA21 corn product and its proces for making GA21 corn** products and activities with the asserted claims, and not with any product made by Monsanto or anyone else **or any process carried out by Monsanto**.

**INFRINGEMENT DESPITE DEFENDANTS' IMPROVEMENTS**

**OR PATENTS ON IMPROVEMENTS**

You may find that Syngenta's accused products <u>or activities</u> contain an improvement over the invention defined in the asserted claims, or disclosed in the patents-in-suit.  You have even seen and heard evidence that Syngenta or others obtained a patent on an improvement.  However, you are not to presume that these facts mean that Syngenta cannot infringe the asserted claims.  As long as Syngenta's accused products or **process for making GA21 corn** <u>or activities</u> include all of the <u>limitations</u> **elements or process steps** of at least one of the asserted claims, then **that** <u>the</u> asserted claim<u>s</u> **is** <u>are</u> infringed by Syngenta despite the improvements or patents of Syngenta or others.

## INDIRECT INFRINGEMENT

Syngenta would also be liable to Monsanto if it has engaged in acts of indirect infringement.  Indirect infringement includes both "inducing infringement," and "contributory infringement."

**INDUCING PATENT INFRINGEMENT**

Monsanto asserts that Syngenta has induced other seed companies to infringe the patents-in-suit by selling GA21 corn seed. To show induced infringement, Monsanto must prove that it is more likely than not that someone has directly infringed the asserted claims, and that Syngenta has actively and knowingly aided and abetted that direct infringement. Monsanto must show that Syngenta actually intended to cause the acts that constitute direct infringement and that Syngenta knew or should have known that its actions would induce actual infringement. **Mere knowledge of possible infringement is not enough to prove inducement. Specific intent and action to induce infringement must be proven.** If there is no direct infringement by anyone else, Syngenta has not induced infringement. If Syngenta provided instructions and directions to perform the infringing act through labels, advertising or other sales methods or by supplying the components used in an infringing method or apparatus with the knowledge and intent that its customer would use the components to make, use or sell the patented invention, this may be evidence of inducement to infringe.

## CONTRIBUTORY INFRINGEMENT

Contributory infringement is established where one offers for sale, sells, or supplies a material or product that may be, and ordinarily is, used in the manner described in the claim of a patent, and is sold or supplied with knowledge that the product would be used in that manner.

Monsanto asserts that Syngenta has contributed to the infringement by others, including seed companies, by selling, offering for sale, or licensing GA21 corn.

To prove that Syngenta is liable for contributory infringement, Monsanto must prove by a preponderance of the evidence that there is direct infringement.  If there is no direct infringement by anyone else, Syngenta has not contributorily infringed **induced infringement**.  Monsanto must also prove each of the following:

First, that the GA21 corn trait is a material component of the claimed invention and Syngenta sold or supplied that component.

Second, that Syngenta knew that the component was especially made for use in a manner that infringes the asserted claims.

Third, that the component is not a staple commodity article capable of substantial non-infringing use.

Fourth, that the component was actually used in a manner that you find infringes the asserted claims.

**A "staple commodity capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.**

Proof of contributory infringement and the underlying direct infringement may be based on circumstantial evidence you have heard in this case.

## INFRINGEMENT OF DEPENDENT CLAIMS

As I previously mentioned, there are two different types of claims in a patent—independent and dependent claims.  A dependent claim cannot be infringed if the independent claim from which it depends is not infringed.  In this case, dependent claims 5-6 of the '835 patent cannot be infringed unless you find that, during the term of the '835 patent, Syngenta's GA21 corn products infringe independent claim 1.

Further, dependent claims 4-9 of the '880 patent cannot be infringed unless you find that, during the term of the '880 patent, Syngenta also infringed the process steps of independent claim 1 of the '880 patent.

Finally, dependent claims 5 and 6 of the '863 patent cannot be infringed unless you find that, during the term of the '863 patent, Syngenta also infringed the process steps of independent claim 1 of the '863 patent.

In other words, if you find that Syngenta's GA21 corn products do not infringe independent claim 1 of the '835 patent, then you must find that Syngenta's GA21 corn products do not infringe dependent claims 5-6 of the '835 patent.

If you find that Syngenta has not infringed independent claim 1 of the '880 patent, then you must find that Syngenta has not infringe dependent claims 4-9 of the '880 patent.

Finally, if you find that Syngenta has not infringe independent claim 1 of the '863 patent, then you must find that Syngenta has not infringe dependent claims 5-6 of the '863 patent.

# INFRINGEMENT UNDER DOCTRINE OF EQUIVALENTS

If you do not find literal infringement, you may consider infringement under the "doctrine of equivalents." Under the doctrine of equivalents, an accused product can infringe an asserted claim if it includes elements that are identical or equivalent to the limitations of the claim. Under the patent law, an infringing equivalent is not treated any differently than a product or method that literally infringes the limitations of any asserted claim.

The test to determine equivalence under the doctrine of equivalents is whether the differences between the claim limitation which you have found not to be literally present and the element present in the accused GA21 corn products or activity are insubstantial. In determining whether the differences are substantial or insubstantial, you may consider whether or not the claim limitation and the element in the accused GA21 corn products or activity perform substantially the same function in substantially the same way to produce substantially the same result.

If you find only insubstantial differences between the claim limitation and the corresponding element in the accused GA21 corn products or activity, then you will have determined that the corresponding element is equivalent to the claim limitation. On the other hand, if you find that the claim limitation and the corresponding element have substantial differences, then you will have determined that the corresponding element is not equivalent to the claim limitation.

## WILLFUL INFRINGEMENT

If you find, on the basis of the evidence and the law as I have explained it, that Syngenta**'s GA21 corn products** infringes at least one of the asserted claims, you must further decide whether or not Monsanto has proven by clear and convincing evidence that Syngenta's infringement was willful.  Willful infringement is established where Monsanto has proven two things:  first, that Syngenta was aware of the patents-in-suit; and second, that Syngenta had no reasonable good faith basis **before making, using or selling its GA21 corn products** for believing (a) that Syngenta's GA21 corn product did not infringe the asserted claims of the patents in suit or (b) that the patents in suit were invalid.

To determine whether Syngenta acted with a reasonable good faith belief or whether Syngenta willfully infringed the patents-in-suit, you should consider the totality of the circumstances and all the facts, including the presence of one or more of the following factors in this case:

1.      Whether the infringer deliberately copies the ideas or design of another;

2.      Whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

3.      The infringer's behavior as a party to the litigation;

4.    The defendants' size and financial condition;

5.    The closeness of the case;

6.    The duration of defendants' misconduct;

7.    Remedial action taken by defendant;

8.    Defendants' motivation for harm; and

9.    Whether defendant attempted to conceal its misconduct.

Keep in mind that a determination by you **by a preponderance of the evidence** that Syngenta has infringed the patent does not automatically mean that **Monsanto has proved by clear and convincing evidence that** the infringement was willful.  As I have explained, infringement is not willful if Syngenta had a good faith belief that it did not infringe or that the patents-in-suit were invalid or unenforceable, and if its belief was reasonable under <u>all</u> the circumstances.

## AFFIRMATIVE DEFENSE OF INVALIDITY GENERALLY

I will now discuss Syngenta's defenses in this case.  Syngenta contends that all of the asserted claims are invalid.

The granting of a patent by the Patent Office, however, carries with it the presumption that the patent is valid and that its subject matter is new, useful, and constitutes an advance which was not, at the time the invention was made, obvious to one of ordinary skill in the art.  **This presumption can be rebutted.**  The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.  Nevertheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has said or done, consistent with these instructions on the law.

This presumption of validity puts the burden of proving invalidity on Syngenta, which it must prove by clear and convincing evidence.  **You must determine the validity of each** Each of the asserted claims is presumed valid independently of the validity of each other claim.

# ANTICIPATION

Syngenta contends that the asserted claims of the patents are invalid because the inventions as described in those claims are not new.  A person cannot obtain a patent on an invention if someone else has already made the same invention.  If someone else has already made the same invention, we say that the invention of the asserted claim is "anticipated" by the "prior art."  An invention that is anticipated by the prior art is not entitled to patent protection.  In this case, Syngenta is asserting four different types of prior art – prior art publications, the prior invention of others, prior art patents, and derivation.  I will give you further instructions specific to each of these types of prior art later.

In order to prove that a claim is anticipated, all of the limitations of the claim must be found in a single prior art reference by clear and convincing evidence.  You may not combine two or more items of prior art to prove anticipation.  A duplication of the claimed invention that was accidental, unrecognized, unappreciated and incidental to some other purpose is not an invalidating anticipation.  However, a prior art reference anticipates a claim if it discloses the claimed invention sufficiently that a person of ordinary skill in the art could take its teachings, together with his or her own knowledge of the art, and be in possession of **the elements of a claimed product or the steps of a claimed process** the claimed invention.  A prior art reference sufficiently discloses the claimed invention to enable a person of ordinary skill in the art to be in possession of the claimed invention where it describes the invention at a level of detail similar to that in the

patent. **While a prior art reference must be enabling, the standard for enablement of a prior art reference for purposes of anticipation differs from the enablement standard for a patent.  While a patent (such as Monsanto's '835, '880, and '863 patents) must have a specification that enables one skilled in the art to use the invention, there is no such requirement for an anticipatory disclosure.  Anticipation does not require actual performance of suggestions found in the prior art, so long as each and every claim element or process step is present in the prior art reference.**

You should, however, take into consideration not only what is expressly disclosed or embodied in the particular item of prior art, but also what is inherent as a natural result of the practice of the prior art.

Where the description in a reference is silent about an asserted inherent characteristic, such a gap in a prior art reference may be filled with recourse to other clear and convincing evidence that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill in the field of the invention.

Syngenta bears the burden to prove anticipation by clear and convincing evidence. You must determine invalidity with respect to each asserted claim individually.

**CONTENT OF REFERENCE NOT CHANGED BY TESTIMONY OF AUTHOR**

Syngenta has presented certain prior art references and, in some cases, the author of those references has testified here. When evaluating what a particular reference discloses, an author's or inventor's testimony concerning their own prior art references may not be used to enlarge, supplement, expand or clarify what the document itself discloses. The question to be addressed is what the reference reasonably conveys to a person of ordinary skill in the art.

## ANTICIPATION – PRIOR ART PUBLICATIONS

Syngenta first contends that the asserted claims of the '880 patent are anticipated by the USDA Grant Application by Drs. Klein, Sanford and Wu.  Therefore, you must decide whether Syngenta has proven by clear and convincing evidence that this reference was <u>published</u> **publicly available more than one year prior to the January 22, 1990, filing date of the '880 patent** and meets all of the forgoing requirements for anticipation.

Keep in mind that **to constitute an anticipatory reference,** the USDA grant application need only disclose each and every element of the '880 patent. <u>and enable one of ordinary skill in the art to make and use the claimed invention.</u>  The USDA grant application, however, does not need to **demonstrate that the process disclosed in the reference achieves the claimed or desired result.**

**If you find that Syngenta has proved that it is highly probable that the asserted claims of the '880 patent are anticipated by the USDA Grant Application by Drs. Klein, Sanford and Wu, then you must find that the claims are invalid.**

## ANTICIPATION – ISSUED PATENTS

Syngenta's <u>final</u> anticipation defense is that the asserted claims of the '835 and '863 patents are anticipated because the invention defined in those claims was described in United States patents, and because the application for those patents was filed before the Monsanto inventors made their invention.  Specifically, Syngenta contends that the asserted claims of the '835 patent are anticipated by U.S. Patent Number 5,728,925, and that the asserted claims of the '863 patent are anticipated by U.S. Patent No. 6,046,497.

A patent claim is invalid if the invention that it defines was described in a United States patent issued **from** <u>on</u> a patent application filed by another person before the invention **of the claimed subject matter** was made by the patentee.  **To remove an earlier filed patent application as a prior art reference, Monsanto must prove it had priority of invention with respect to so much of the claimed invention as the reference shows.  For example, to remove the '925 patent as prior art, Monsanto would need to show that it had priority to as much of the invention recited in claims 1, 5, and 6 of the '835 patent as the '925 patent discloses.**

To show anticipation of the patented invention, Syngenta must show by clear and convincing evidence that the alleged anticipatory patents issued from patent applications that <u>(i)</u> describe each and every element of the **claimed product in the '835 patent or the claimed process of the '863 patent and allows persons of ordinary skill in the art to make the product claimed in the '835 patent or the process claimed in the '863 patent**. <u>claims, (ii) enable a person of ordinary skill in the art to practice the claimed</u>

invention, and (iii) were filed before the Monsanto inventors' date of invention.  I have already instructed you how to determine a date of invention in connection with Syngenta's prior invention defense.

**As issued U.S. patents, you must also presume that claimed and unclaimed disclosures of the prior art '925 and '497 patents are enabling.  It is Monsanto's burden to come forward with evidence establishing that the '925 and '497 patents are not enabling.  That standard of enablement for anticipatory references is discussed above.**

**If you find that Syngenta proved that it is highly probable that each element of the asserted claims of the '835 patent is described in the '925 patent, then you must find that the claims are invalid.**

**If you find that Syngenta proved that it is highly probable that each process step of the asserted claims of the '863 patent is described in the '497 patent, then you must find that the claims are invalid.**

## ANTICIPATION – PRIOR INVENTION – GENERALLY

Syngenta also contends that the asserted claims of the '880 patent are invalid because the claimed subject matter was invented first by (i) Dr. Ted Klein **and his collaborators**, **and** (ii) Dr. Michael Fromm and his group at the USDA, and (iii) Mr. Michael Spencer before Monsanto's **January 22, 1990** date of invention.

According to the U.S. patent laws, a person shall not be entitled to a patent if the invention was made first by another inventor in the United States who had not abandoned, suppressed or concealed it. Syngenta bears the burden of proving prior invention by clear and convincing evidence.

When two parties have invented the same subject matter, the parties' rights are determined by who had the earliest date of invention. A parties' date of invention is proven by showing (i) the date that it reduced the invention to practice, or (ii) that it conceived the invention earlier and exercised reasonable diligence in later reducing the invention to practice.

Syngenta can therefore prove a prior inventorship claim if it proves by clear and convincing evidence that someone other than the Monsanto inventors (i) reduced the claimed invention to practice before the Monsanto inventors, or (ii) conceived of the invention first and reduce it to practice with reasonable diligence.

For a prior invention to anticipate a claim, it must contain each and every limitation of the claim.

I will now give you instructions on the requirements to show "conception," "reduction to practice," and "diligence."

## CONCEPTION

"Conception" of an invention is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is to be applied in practice. An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, and not just a general goal or research plan the inventor hopes to pursue. Conception is complete when one of ordinary skill in the art could understand how to make and use the invention.

**Conception is completion of the mental part of invention. In determining whether a conception has taken place, you must examine whether the inventor has an idea that was definite and permanent enough that one skilled in the art could understand the invention. In determining whether there has been a conception, you should examine whether the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice. An inventor need not know that his invention will work for conception to be complete, but only that the inventor had the idea; the discovery that an invention actually works is part of its reduction to practice.**

Where a party seeks to show conception through the oral testimony of an inventor, corroboration is required. Contemporaneous records may corroborate conception and, unlike oral testimony of an inventor, a document evidencing conception

needs no corroboration.  There is no single formula that must be followed in proving

corroboration, but a reasonable analysis of all the pertinent evidence must be made to

determine whether the inventor's testimony is credible.


In assessing corroboration, you may consider among any other pertinent facts:  (1)

the relationship of the corroborating witness and the party asserting prior invention; (2)

the time period between the event and trial; (3)  the interest of the corroborating witness

in the subject matter of the litigation; (4)  contradiction or impeachment of the witness

testimony; (5)  the extent and details of the corroborating testimony; (6)  the witness'

familiarity with the subject matter of the patented invention and the prior use; (7)

probability that a prior use could occur considering the state of the art; and (8) the impact

of the invention on the industry, and the commercial value of its practice.

**REDUCTION TO PRACTICE**

To constitute a prior invention, a reduction to practice must be a reduction to practice that meets all the limitations **elements or process steps** of a claim.  Since each claim is separately entitled to a presumption of validity, for **For** anticipation by prior invention, each claim, with all its limitations, must be compared separately to the embodiment that is allegedly reduced to practice.

"Reduction to practice" may be established in two ways.  Reduction to practice may be established by a "constructive" reduction to practice or an "actual" reduction to practice.

A constructive reduction to practice occurs when a patent application describing the claimed invention is filed with the United States Patent and Trademark Office.

An actual reduction to practice of a claimed **product** invention occurs when the inventors or persons working at their direction **(1)** construct a physical embodiment meeting each and every limitation of the claimed invention **and (2) demonstrate that the physical embodiment works for its intended purpose** that is shown to work for its intended purpose.

**An actual reduction to practice of a claimed process occurs when the inventors or persons working at their direction (1) carry out each step of the**

**claimed process and (2) demonstrate that the process works for its intended**

**purpose.**

Like conception, oral testimony from an inventor regarding reduction to practice

must be supported by corroborating evidence.

## DILIGENCE

As I just explained, priority of invention is usually awarded to the party who first reduces to practice an invention.  However, there is an important exception to this rule. When a party is first to conceive, but second to reduce to practice, that party will be the first inventor if that party was reasonably diligent during the critical period.

The critical period for the diligence of a party starts just prior to the second party's conception date and continues through the first party's reduction to practice. Lapses in diligence before the second party's conception (i.e., before the critical period) are irrelevant.  Diligence during the critical period means that the inventor's work on the invention, and the work of others at the direction of the inventor, must be reasonably continuous for the critical period in light of all the circumstances until the inventor either actually or constructively reduces to practice the invention.  Constant effort is not required to establish diligence **and interruptions necessitated by the everyday problems and obligations of the inventors or those working with him or her do not prevent a finding of diligence**.  Rather, an inventor simply must be reasonably diligent during the relevant period.  It is also not necessary to show that the inventor spent all of his/her time working on the invention.

## ANTICIPATION -- DERIVATION

**The patent laws require that the inventor on a patent be the true inventor of the invention covered by the patent claims. An inventor on a patent is not the true inventor if he "derived" the invention from someone else.** Syngenta also contends that the asserted claims of the '880 patent are invalid because Monsanto derived the claimed invention from Dr. Ted Klein and Dr. John Sanford. To prove derivation, Syngenta must show two things. First, Syngenta must prove that Dr. Klein and/or Dr. Sanford conceived of the claimed invention before the Monsanto inventors, as I have defined the term "conception" earlier. Second, Syngenta must prove that Dr. Klein and/or Dr. Sanford communicated that conception to the Monsanto inventors <u>in a manner that was sufficient to enable them to construct and successfully operate the invention</u>. Syngenta must prove its derivation claim by clear and convincing evidence.

**If you find that Syngenta has proved that it is highly probable that the Monsanto derived the invention of the '880 patent from Dr. Ted Klein or Dr. John Sanford, then you must find that the claims are invalid.**

## ANTICIPATION -- FAILURE TO NAME PROPER INVENTORS

The patent laws require that the inventor on a patent be the true inventor of the invention covered by the patent claims. If two or more people are jointly involved in making an invention, each person must be listed as an inventor on the patent. This is true even if the inventors did not physically work together in the same location or at the same time, each did not make the same type or amount of contribution, and each did not make a contribution to the subject matter of each and every claim of the patent. It is not necessary that each person contribute to the subject matter of each claim. An inventor can contribute to the subject matter of only a single claim in a patent. If a patent fails to name all of the inventors, that patent is invalid on the basis of "failure to name the proper inventors."

Syngenta contends that the asserted claims of the '880 patent are invalid because Monsanto failed to name Dr. John Sanford and Dr. Ted Klein as inventors. To prove this assertion, Syngenta must prove that Dr. Sanford and/or Dr. Klein contributed in some manner to the conception of one of the claims of the '880 patent. Syngenta must also prove that Dr. Sanford and/or Dr. Klein's contribution to the claimed invention is not insignificant in quality, when that contribution is measured against the full scope of the claimed invention.

If you find that Syngenta has proved that it is highly probable that Monsanto failed to name Dr. Sanford and/or Dr. Klein as inventors on the '880 patent, then you must find that the claims are invalid.

## OBVIOUSNESS

Syngenta also contends that the asserted claims of the '880 patent are invalid as being obvious in view of the following two prior art publications:

1.    Klein et al.'s 1988 Bio/technology article, and

2.    Klein et al.'s 1988 PNAS article.

Syngenta further contends that the asserted claims of the '863 patent are invalid as being obvious in view of the combination of a hypothetical glyphosate reference and either:

1.    The two Klein articles mentioned above,

2.    The work of Dr. Klein, or

3.    the USDA Grant Application by Drs. Klein, Sanford and Wu.

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.  To find obviousness a person of ordinary skill in the art may combine two or more items of prior art.  Therefore, you must consider the prior art reference(s) and evaluate obviousness from the perspective of one of ordinary skill in the art (not from the perspective of a layman or a genius in the art) at the time the application for invention was filed.

In determining obviousness or nonobviousness of the asserted claims, the following steps should be taken by you.

First, you should determine the scope and content of the prior art;

Second, you should identify the differences, if any, between each asserted claim of the patent in suit and the prior art;

Third, you should consider the level of ordinary skill in the pertinent art at the time the invention of each asserted claim was made; and

Fourth, you should consider objective evidence of nonobviousness, if any.

Against this background you will then make your decision as to whether the subject matter of the asserted claims would have been either obvious or nonobvious to a person of ordinary skill in the pertinent art. Syngenta must prove obviousness by clear and convincing evidence.

## SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in arriving at your decision on the issue of whether or not the asserted claims are obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem the inventor faced. The scope and content of the prior art includes references that would be considered by a person with ordinary skill in the art to solve a particular problem. A person of ordinary skill in the art knows of all such references.

## DIFFERENCES OVER THE PRIOR ART

In reaching your conclusion as to whether or not the claimed invention was obvious, you should also consider any difference or differences between the prior art and the claimed invention. When doing so, each claim must be considered in its entirety and separately from the other claims.

Although it is proper for you to note any differences between the claimed invention and the prior art, you must still determine the obviousness or nonobviousness of the invention as a whole.

## LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology and the education of others working in the field.

**When you decide the issue of obviousness, you must decide whether or not the invention would have been obvious to one having this ordinary level of skill in the field of plant transformation and genetics.**

## OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

## (SECONDARY CONSIDERATIONS)

In making your decision as to the obviousness or nonobviousness of the asserted claims, you must also consider the following objective evidence which you may find tends to show nonobviousness of the claims of the '880 and '863 patents at issue.

1.     Commercial success or lack of commercial success of **the processes** products covered by the '880 and '863 patents **caused by the merits of the claimed invention and not caused by other factors such as any marketing prowess or market power Monsanto may possess**;

2.     A long felt need in the art which was satisfied by the invention of the patent in suit;

3.     The failure of others to make the invention;

4.     Copying of the invention by Syngenta or others in the field;

5.     Unexpected results achieved by the invention.

6.     Praise of the invention by Syngenta or others in the field; and

7.      The taking of licenses under the patent by others.


There must be a connection between the evidence showing any of these factors and the inventions of the asserted claims if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the **process** product other than those described in the asserted claims, then any commercial success may have no relation to the issue of obviousness.

**FACTORS INDICATING OBVIOUSNESS**

In reaching your determination on the issue of obviousness, you should also consider whether or not the claimed invention of the '880 patent was invented independently by other persons such as Dr. Klein and Mr. Spencer, either before it was invented by Dr. Lundquist and Mr. Walters or at about the same time. Just as the failure of others to make the invention may be evidence that an invention would not have been obvious, independent making of the invention by persons other than the inventor at about the same time may be evidence that the invention would have been obvious.

## OBVIOUSNESS – HINDSIGHT

Obviousness is determined by comparing the prior art to the asserted claims; therefore, it is not improper to review the asserted claims at the start of the obviousness inquiry.   However, a determination of obviousness cannot be based upon the hindsight combination of prior art, despite the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use each asserted claim as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the asserted claims.  The teachings of different prior art references may only be combined if the prior art as a whole teaches, suggests or motivates such a combination.  A suggestion to combine references may also flow from the nature of the problem or from the ordinary knowledge of those skilled in the art that certain references are of special importance.  If the prior art references as a whole do not expressly teach, suggest or motivate that combination, then they may not be combined.  The mere fact that the prior art can be modified does not make the modification obvious unless the prior art suggests the desirability of the modification.

## OBVIOUS TO TRY

The evidence might indicate to you that what the inventors did was **merely** obvious to try.  If so, this does not indicate the patent is invalid for obviousness.  **The correct analysis is whether in light of the evidence, one of ordinary skill would be motivated to practice the later claimed invention with a reasonable expectation of success.**  "Obvious to try" is not the standard; rather it is whether the invention as a whole would have been obvious to those of ordinary skill in the inventor's field at the time he or she made the invention.

# WRITTEN DESCRIPTION

Syngenta also contends that the asserted claims of all three patents-in-suit are invalid for lack of an adequate written description. A patent specification must contain a written description of the invention. This is referred to as the written description requirement. For purposes of the written description inquiry, the invention is defined by the claim and not the specification. In determining whether a patent specification satisfies the written description requirement you should refer to the level of skill in the pertinent art at the time of the invention.

The test for an adequate written description is whether the specification reasonably conveys to a person skilled in the art that the inventors had possession of the claimed subject matter at the time the application was filed. The specification need not describe the claimed subject matter in exactly the same terms as used in the claims in question, but it must indicate to persons skilled in the art that the inventors had invented the subject matter **and were in possession of the subject matter as broadly as it** <u>that</u> is claimed. **In other words, the patent must fully describe each and every element or process step of a patent claim.**

When the prior art permits, an applicant is allowed claims that cover more than the specific embodiments shown. However, a patent claim may be no broader than the supporting disclosure. A claim is invalid when the entirety of the specification clearly indicates that the scope of the claim exceeds what the disclosure will allow.

For claims to genetic material, one skilled in the art must be able to visualize or recognize the identity of the members of the class of genes. A recitation of a common function performed by members of the class is not sufficient to satisfy the written description. A definition by function does not suffice to define the class because it is only an indication of what the gene does, rather than what it is. The written description must either provide the actual DNA sequence information for the claimed genes, or define structural features commonly possessed by members of the class of genes that distinguish them from other genes.

In this case, Syngenta contends that claims 1 and 5-6 of the '835 patent fail to comply with the written description requirement because the specification fails to disclose any DNA sequence that, when expressed, will enhance the glyphosate resistance of a monocot plant cell.

Syngenta also contends that claims 1 and 5-6 of the '835 patent fail to comply with the written description requirement because the claims are directed to all DNA sequences that function as a CTP, while the specification describes the amino acid sequence of only one CTP.

Finally, Syngenta contends that claims 5-6 of the '863 patent fail to comply with the written description requirement because the specification fails to disclose any DNA sequence that, when expressed, imparts glyphosate resistance in corn.

If you find that Syngenta has proved that it is highly probable that the '835 or '863 patents do not contain a written description of the invention covered by any of the asserted claims, then you must find that the claims are invalid.

## ENABLEMENT

Syngenta also contends that the asserted claims of all three patents-in-suit are invalid for lack of enablement.  The written description set forth in a patent must also disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the **full scope of the** claimed invention **as of the filing date of the patent,** without undue experimentation.  This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use **the full scope of** the claimed invention **as of the filing date of the patent**.  In considering whether the written description of a patent satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.  **However, the scope of the claims must be less than or equal to the scope of the enablement.**  Syngenta bears the burden of establishing lack of enablement by clear and convincing evidence.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement.  Factors that you may consider in determining whether the written description would require undue experimentation include:  (1)  the quantity of experimentation necessary; (2)  the amount of direction or guidance disclosed in the

patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

Syngenta contends that claims 1 and 5-6 of the '835 patent are invalid for lack of enablement because one of ordinary skill in the art could not, as of the filing date of the '835 patent, transform monocot plant cells, which is required to enable the full scope of the claimed invention.

Syngenta also contends that claims 1 and 5-6 of the '835 patent are invalid for lack of enablement because one of ordinary skill in the art could not, as of the filing date of the '835 patent, make and use a gene without undue experimentation that, when expressed in a monocot plant cell, would enhance the glyphosate resistance of the monocot plant cell, which is required to enable the full scope of the claimed invention.

Syngenta further contends that claims 1 and 5-6 of the '835 patent are invalid for lack of enablement because one of ordinary skill in the art could not, as of the filing date of the '835 patent, practice Example 8 of the '835 patent without undue experimentation because the specification does not disclose the specific mutation in the *E. coli* SM-1 mutant EPSPS gene disclosed in that example.

Syngenta also contends that claims 4-9 of the '880 patent are invalid for lack of enablement because the claims of the '880 patent encompass the use of any gene as a selectable marker but the specification of the '880 patent discloses only the use of the hygromycin resistance gene as a selectable marker.

Finally, Syngenta contends that claims 5-6 of the '863 patent are invalid for lack of enablement because one of ordinary skill in the art could not, as of the filing date of the '863 patent, make and use a gene without undue experimentation, capable of imparting glyphosate resistance to a fertile transgenic corn plant, which is required to enable the full scope of the claimed invention.

If you find that Syngenta has proved that it is highly probable that the asserted claims of the '835 '880 or '863 are not enabled, then you must find that the claims are invalid.

## BEST MODE

Finally, Syngenta contends that the asserted claims of the '835 patent are invalid for failure to satisfy the best mode requirement. The purpose of the best mode requirement is to ensure that the public obtains a full disclosure **of what the inventors believe is the preferred embodiment of their invention and** on how to practice the invention claimed in the patent. The inventor must disclose the best mode he or she knew at the time for carrying out the invention as described in the claims. If an inventor knows of a best way or mode of making and using the claimed invention at the time the patent application was filed, then the written description must contain a description of that mode. **If at least one inventor contemplated a best mode for a claim and failed to sufficiently describe that best mode in the specification, then that claim is invalid.**

**The best mode requirement applies equally to applications that are filed as continuation-in-part applications, such as the applications leading to the '835 patent in this case. This means that if at least one inventor contemplated a best mode prior to filing the July 7, 1986 continuation-in-part application leading to the '835 patent, but after the August 7, 1985 or October 29, 1985 applications, the July 7, 1986 continuation-in-part application must include that best method.**

Syngenta bears the burden of establishing failure to satisfy the best mode requirement by clear and convincing evidence. To determine whether the inventor complied with the best mode requirement, two questions must be answered:

68

1.    At the time the patent application **or continuation-in-part application** was filed, did <u>the</u> **at least one** inventor have a best mode for practicing his or her invention?

2.    If so, did the inventor adequately disclose the best mode in the '835 patent?

The first prong of the best mode inquiry focuses on the state of mind of the particular inventor and the knowledge he possessed at the time the application was filed. The first question is subjective. **In this case, you must determine what the inventors knew and their state of mind as of July 7, 1986, the date on which the continuation-in-part application that led to the '835 patent was filed. You must consider whether, on that date, at least one inventor knew of a best way to practice the claimed invention.**

For instance, a selection made for commercial expediency (such as the availability of certain materials, prior relationships with certain suppliers, and other routine manufacturing choices) may be the "best" decision in a manufacturing circumstance but may have been chosen by someone other than the inventor or may not be considered by the inventor to be the best mode of carrying out the invention.

If the answer to the first question is "yes," the second question of the analysis should be addressed. The second question, an objective inquiry, focuses on the scope of the patented invention and the level of skill in the field of the invention. The disclosure in the specification must be adequate to allow one of ordinary skill in the art to make and

use the best mode of the invention. Those skilled in the field of the invention should not have to look at the commercial embodiment in order to practice the best mode.

**In this case, Syngenta contends that claims 1 and 5-6 of the '835 patent are invalid for failing to disclose the best mode for practicing the claimed invention because at least one inventor on the '835 patent knew prior to July 7, 1986, that an EPSPS gene with a glycine to alanine mutation was the best mode for practicing the claimed invention, but failed to disclose the specific glycine to alanine mutation in the *E. coli* SM-1 mutant EPSPS gene disclosed in Examples 8 and 9 of the '835 patent.**

**If you find that Syngenta has proved that it is highly probable that at least one inventor of the '835 patent failed to disclose the best mode of practicing the claimed invention, then you must find that the claims are invalid.**

## DAMAGES

## COMPENSATORY DAMAGES IN GENERAL

If you have determined that Syngenta has infringed any of the asserted claims, and have further determined that those asserted claims are valid, you must next determine the damages to be awarded to Monsanto. The patent laws provide that, in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by Syngenta. Damages are compensation for all losses suffered as a result of the infringement.

Monsanto has the burden of proving its damages by a preponderance of the evidence. I have already explained the meaning of burden of proof by a preponderance of the evidence.

## REASONABLE ROYALTY AS A MEASURE OF DAMAGES

Monsanto is seeking a reasonable royalty as its measure of damages.  **A royalty is an amount of money that someone pays a patent holder in exchange for the right or license to make, use, or sell the patented invention.**  A reasonable royalty in this case is the amount of money that represents the value of the claimed inventions to the parties and represents fair compensation to Monsanto for use of the claimed inventions by Syngenta. One of the factors in determining the value of the claimed invention **to the parties** is the royalty that would be agreed to in a hypothetical arms-length negotiation between Monsanto and Syngenta, with both operating under the assumption that the negotiated patent is valid and ~~is being~~ **would be** infringed **by the products at issue.** , i.e., that absent the "reasonable royalty" payment, Syngenta would respect the patent

**A reasonable royalty is calculated from the point in time just before the allegedly infringing activities took place.**  In determining a reasonable royalty, you should place yourself in May 2004, the time at which the hypothetical arms-length negotiation between Monsanto and Syngenta would have occurred**, just before Syngenta's allegedly infringing use began**.

In the hypothetical arms-length negotiation, you must assume that **Monsanto would be willing to grant a license, and Syngenta would be** the person negotiating on behalf of Syngenta, and who was willing to take a license, would have known that Monsanto's patent was valid, was enforceable and was infringed.  You should also

assume that both Monsanto and Syngenta would have known knew all the pertinent information in existence at the time of the hypothetical negotiation.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Syngenta's use of the patented invention, including the opinion testimony of experts.

## FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining a reasonable royalty, the **these additional** factors that should be considered include:

1.      The royalties received by Monsanto for licensing others under the patents-in-suit.

2.      The rates paid by Syngenta for the use of other patents comparable to the patents-in-suit.

3.      The nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory;

4.      Whether Monsanto had an established policy and marketing program to maintain its patents' exclusivity by not licensing others to use the inventions or by granting licenses under special conditions designed to preserve that exclusivity;

5.      The commercial relationship between Monsanto and Syngenta, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventors or promoters;

6.    The effect of selling the patented item in promoting sales of other products of Syngenta.

7.    The duration of the patents-in-suit and the term of the licenses;

8.    The established profitability of the product made under the patent, its commercial success, and its current popularity;

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for working out similar results;

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Monsanto, and the benefits to those who have used the invention;

11.    The extent to which Syngenta has made use of the invention, and any evidence probative of the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.     The portion of the realizable profit that should be credited to the invention as distinguished from nonpatented elements, business risks, or significant features or improvements added by Syngenta.

14.     The opinion testimony of qualified experts; and

15.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## CLOSING STATEMENT – DAMAGES

In determining the issue of damages, the law does not permit an award of a greater sum than the monetary loss which Monsanto has suffered as a result of the alleged infringement.  If, under the Court's instructions, you find that Monsanto is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing Syngenta or to set an example.

## CURATIVE INSTRUCTION

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Monsanto.

# DELIBERATION AND VERDICT

# INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-3, or 5-2, or whatever your vote happens to be.  That should stay secret until you are finished.

## UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you a series of questions about Monsanto's claims of infringement and Syngenta's claims of invalidity.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that – your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

If you do not take notes, you should rely upon your own memory of what was said and not be overly influenced by the notes of other jurors.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations tomorrow morning. You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations tomorrow, you are not to talk about the case among yourselves or with anyone else during the evening recess. You are only supposed to talk about the case while you all are in the jury room.

So if you do go home this evening, keep that instruction in mind. Unless I hear from you that you have a different schedule in mind, I will expect you all to come back tomorrow morning at 9:30. You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 1:00 and 2:00 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you

ask a question between 1:00 and 2:00, you probably will not get an answer back right

away because we are all going to be stepping away from our phones for a few minutes.

**COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

731302