# EXHIBIT 1

# EXHIBIT 1

## THE PARTIES' STATEMENT OF ADMITTED FACTS

1.    Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively, "Monsanto") are both corporations organized and existing under the laws of the State of Delaware, with their principal places of business at 800 N. Lindbergh Blvd., St. Louis, Missouri 63167.

2.    Plaintiff DEKALB Genetics Corporation ("DEKALB") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 3100 Sycamore Road, DeKalb, Illinois 60015.

3.    Plaintiff DEKALB is a wholly owned subsidiary of Monsanto Company.

4.    The United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 4,940,835 ("the '835 patent") on July 10, 1990 from Application No. 879,814 filed July 7, 1986. The patent, entitled "Glyphosate-Resistant Plants," lists Dilip Shah, Stephen Rogers, Robert Horsch and Robert Fraley as inventors.

5.    The '835 patent was filed as a continuation-in-part ("CIP") of Application No. 792,390 ("the '390 application") filed October 29, 1985.

6.    The '390 application was filed as a CIP of Application No. 763,482 filed August 7, 1985.

7.    The '835 patent is assigned to Monsanto Technology LLC.

8.    The PTO issued U.S. Patent No. 5,538,880 ("the '880 patent") on July 23, 1996 from Application No. 249,458 filed on May 26, 1994. The patent, entitled "Method For Preparing Fertile Transgenic Corn Plants," lists Ronald Lundquist and David Walters as inventors.

9.      The '880 patent was filed as a continuation of Application No. 974,379 ("the '379 application") filed November 10, 1992.

10.     The '379 application was filed as a continuation of Application No. 467,983 filed January 22, 1990.

11.     The '880 patent is assigned to DeKalb Genetics Corporation.

12.     The PTO issued U.S. Patent No. 6,013,863 ("the '863 patent") on January 11, 2000 from Application No. 08/844,555 filed April 21, 1997.  The patent, entitled "Fertile Transgenic Corn Plants," lists Ronald Lundquist and David Walters as inventors.

13.     The '863 patent was filed as a division of Application No. 677,695 ("the '695 application") filed July 10, 1996.

14.     The '695 application was filed as a continuation of the '379 application.

15.     The '863 patent is assigned to DeKalb Genetics Corporation.

16.     Defendant Syngenta Seeds, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 7500 Olson Memorial Highway, Golden Valley, Minnesota 55427.

17.     Defendant Syngenta Biotechnology, Inc. (collectively with Syngenta Seeds, Inc., "Syngenta") is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 3054 Cornwallis Road, Research Triangle Park, North Carolina 27709.

18.     Defendant Syngenta Biotechnology, Inc. is a wholly owned subsidiary of Syngenta Seeds, Inc.

19.     Defendant Golden Harvest Seeds, Inc. is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 18346 IL Route 9, P.O. Box 248, Pekin, Illinois 61555.

20.     Defendant Garwood Seed Co. is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 1929 N. 2050 East Rd., Stonington, Illinois 62567.

21.     Defendant Golden Seed Company, L.L.C. is a limited liability corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 27525 135th Ave. N. Cordova, Illinois 61242.

22.     Defendant Sommer Bros. Seed Company is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 18346 IL Route 9, P.O. Box 248, Pekin, Illinois 62567.

23.     Defendant Thorp Seed Co. is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at RR #3 Box 257, Clinton, Illinois 61727.

24.     Defendant JC Robinson Seeds, Inc. is a corporation organized and existing under the laws of the State of Nebraska, with its principal place of business at 100 JC Robinson Blvd., P.O. Box 307, Waterloo, Nebraska 68069.

25.     Each of Defendants Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds Inc. (the "Golden Harvest Companies") owns a partial interest in Golden Harvest Seeds, Inc.

26.     Syngenta or a Syngenta affiliate owns a controlling interest in the Golden Harvest Companies.

27.    Defendant Garst Seed Company is a corporation organized and existing under the laws of the State of Delaware, with its principle place of business in Slater, Iowa.

28.    Syngenta or a Syngenta affiliate owns a controlling interest in Garst Seed Company.

29.    The microprojectile bombardment process used to create the GA21 event was performed in 1993 by DEKALB at DEKALB's facilities in Connecticut. Rhone-Poulenc Agro Chemie ("RPA") provided DEKALB with a DNA construct coding for what RPA termed the Optimized Transit Peptide ("OTP"), a coding region for a double mutant maize EPSPS protein, and a terminator sequence. Using this DNA construct, DEKALB added the rice actin promoter containing the first intron and then transformed corn germplasm using microprojectile bombardment with the genetic construct containing the rice actin promoter, the OTP, the double mutant maize EPSPS and a terminator sequence.

30.    Monsanto and DEKALB jointly filed regulatory submissions with the USDA seeking nonregulated status for transgenic glyphosate tolerant corn line GA21 in April 1997 (MGA0013659-719) and a revised filing in July 1997 (MGA0100905-968).

31.    The construct contains the genetic elements described at pages MGA0100928-932 of Monsanto and DeKalb's petition for nonregulated status with the exception that there is a typographical error in the sequence for the chloroplast transit peptide for *Helianthus annus* in Figure IV.1 (MGA0100932). There is an additional glycine at amino acid 52 in Figure IV.1 that is not present in the sunflower transit peptide or in the chimeric gene in GA21 corn.

32.     The GA21 event was created by the transformation of embryogenic corn cells using particle acceleration transformation (microprojectile bombardment) as described at page MGA0100928 in those regulatory submissions.

33.     The early crosses with the GA21 R0 plant were made by DeKalb with inbred corn plants.  MGA0002618.

34.     The USDA approved Monsanto and DEKALB's petition for nonregulated status and it became effective on November 18, 1997.  (MGA0101051-085).

35.     In the United States corn industry, a "unit" is an 80,000 kernel bag of corn seed.

36.     On May 12, 2004, an affiliate of Syngenta announced publicly that it had acquired Bayer CropScience's rights to the GA21 event.

37.     During the 2005 crop year, Syngenta sold 54,785 units of Agrisure GT and Agrisure GT/CB corn seed.

38.     Through March 31 of the 2006 crop year, Syngenta has sold 179,307 units of Agrisure GT and Agrisure GT/CB.

39.     Syngenta sells GA21 corn seed in the United States.

40.     The PTO issued U.S. Patent No. 5,728,925 ("the '925 patent") on March 17, 1998.

41.     The earliest U.S. filing date of the '925 patent is July 15, 1985.

42.     Example 8 of the '835 patent was added on July 7, 1986, as part of the '814 CIP application.  This example refers to an SM-1 mutant *E. coli* EPSPS gene.

43.     The SM-1 *E. coli* EPSPS gene encodes an *E. coli* EPSPS protein that has a glycine to alanine substitution at amino acid position 96.

44.    DeKalb made the original (R0) GA21 corn plant in 1993-94 using the microprojectile bombardment transformation process, including (1) bombarding regenerable corn cells with DNA-coated microprojectiles, (2) selecting a population of transformed cells, and (3) regenerating a fertile transgenic corn plant.

45.    This three-step microprojectile bombardment process is recited in claim 1 of the '880 patent. Claim 1 recites:

> 1. A process for producing a fertile transgenic *Zea mays* plant comprising the steps of (i) bombarding intact regenerable Zea mays cells with DNA-coated microprojectiles, (ii) identifying or selecting a population of transformed cells, and (iii) regenerating a fertile transgenic plant therefrom, wherein said DNA is transmitted through a complete sexual cycle of said transgenic plant to its progeny, and imparts herbicide resistance thereto.

46.    DeKalb used the microprojectile bombardment process to make the R0 GA21 corn plant prior to the issuance of the '880 patent.

47.    Drs. John Sanford, Theodore Klein, and Ray Wu submitted a grant application to the United States Department of Agriculture ("USDA grant application") on February 27, 1986.

48.    The title of the Grant Application was "Delivery of DNA into Regenerable Tissues of Monocots, Using High-Velocity Microprojectiles."

49.    The three-step microprojectile bombardment process used to make the R0 GA21 corn plant is recited in claim 1 of the '863 patent. Claim 1 recites:

> 1. A process for producing a fertile transgenic *Zea mays* plant comprising the steps of (i) bombarding intact regenerable *Zea mays* cells with DNA-coated microprojectiles, wherein said DNA comprises at least a selectable marker gene; (ii) selecting a population of transformed cells expressing the selectable marker gene; and (iii) regenerating a fertile transgenic plant therefrom, wherein said DNA is expressed so as to impart glyphosate resistance to said transgenic plant and is transmitted through a normal sexual cycle of said plant.

50.    DeKalb used this microprojectile bombardment process to make the R0 GA21 corn plant prior to the issuance of the '863 patent.

# EXHIBIT 2

## EXHIBIT 2

### PLAINTIFFS' STATEMENT OF ISSUES OF
### FACT THAT REMAIN TO BE LITIGATED

If any statement included herein as an issue of fact should properly be considered an issue of law, then it should be so considered.

### INFRINGEMENT

The following issues of fact relating to infringement remain to be litigated.

**The '835 Patent**

1.    Whether Defendants' GA21 corn products literally include each and every limitation of any of claims 1, 5 and 6 of the '835 patent as the terms of those claims are interpreted by the Court.

2.    Whether Defendants' GA21 corn products include, under the doctrine of equivalents, each and every limitation of any of claims 1, 5 and 6 of the '835 patent as the terms of those claims are interpreted by the Court.

3.    Whether Defendants directly infringe any of claims 1, 5 and 6 of the '835 patent by making, using, selling, offering to sell or importing Defendants' GA21 corn products.

4.    Whether Defendants induce others to infringe any of claims 1, 5 and 6 of the '835 patent with regard to Defendants' GA21 corn products.

5.    Whether Defendants contribute to the infringement of any of claims 1, 5 and 6 of the '835 patent with regard to Defendants' GA21 corn products.

**The '880 Patent**

6.    Whether Defendants' GA21 corn products and the process by which they were made literally include each and every limitation of any of claims 4-9 of the '880 patent as the terms of those claims are interpreted by the Court.

7.      Whether Defendants directly infringe any of claims 4-9 of the '880 patent by making, using, selling, offering to sell or importing Defendants' GA21 corn products.

8.      Whether Defendants induce others to infringe any of claims 4-9 of the '880 patent with regard to Defendants' GA21 corn products and the process by which they were made.

9.      Whether Defendants contribute to the infringement of any of claims 4-9 of the '880 patent with regard to Defendants' GA21 corn products and the process by which they were made.

**The '863 Patent**

10.      Whether Defendants' GA21 corn products and the process by which they were made literally include each and every limitation of any of claims 5 and 6 of the '863 patent as the terms of those claims are interpreted by the Court.

11.      Whether Defendants directly infringe any of claims 5 and 6 of the '863 patent by making, using, selling, offering to sell or importing Defendants' GA21 corn products.

12.      Whether Defendants induce others to infringe any of claims 5 and 6 of the '863 patent with regard to Defendants' GA21 corn products and the process by which they were made.

13.      Whether Defendants contribute to the infringement of any of claims 5 and 6 of the '863 patent with regard to Defendants' GA21 corn products and the process by which they were made.

**The Patents-in-Suit**

14.      Whether, based on the totality of the circumstances, Defendants' infringement of the patents-in-suit has been willful.

## VALIDITY

The following issues of fact relating to validity must be proven by Defendants in light of Defendants' burden of proving invalidity by clear and convincing evidence. The issues identified below are believed to be a comprehensive list of facts related to Defendants' contentions. Plaintiffs' identification of these issues should not be construed to mean that Plaintiffs agree that such facts are in dispute or that they concern a legally supportable invalidity defense.

**The '835 Patent**

15.    Whether Defendants have shown by clear and convincing evidence that any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is anticipated under 35 U.S.C. § 102(e) by United States Patent No. 5,728,925.

16.    Whether Defendants have shown by clear and convincing evidence that the specification of the '835 patent fails to adequately describe chloroplast transit peptides ("CTPs") and EPSPS enzymes such that any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is invalid for failure to satisfy the written description requirement.

17.    Whether Defendants have shown by clear and convincing evidence that as of any of the filing dates of the '835 patent, the specification did not enable one of ordinary skill in the art to transform monocots, including corn, and therefore any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is invalid for lack of enablement.

18.    Whether Defendants have shown by clear and convincing evidence that the specification did not enable one of ordinary skill in the art to practice Example 8 such

that any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is invalid for lack of enablement.

19.    Whether Defendants have shown by clear and convincing evidence that as of the July 7, 1986 filing date, the coding sequence for the mutant *E. coli* SM-1 EPSPS in pMON 542 with a $Gly^{96}$ to $Ala^{96}$ mutation was the best mode known by the inventors for practicing the invention such that any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is invalid for failure to disclose the best mode of practicing the invention.

**The '880 Patent**

20.    Whether Defendants have shown by clear and convincing evidence that any of claims 4-9 of the '880 patent as those claims are interpreted by the Court is anticipated under 35 U.S.C § 102(b) by the grant application of Drs. Klein, Sanford and Wu.

21.    Whether Defendants have shown by clear and convincing evidence that the inventors of the '880 patent derived the subject matter of any of claims 4-9 of the '880 patent from Drs. Klein and Sanford such that any of claims 4-9 of the '880 patent as those claims are interpreted by the Court is invalid under 35 U.S.C. § 102(f).

22.    Whether Defendants have shown by clear and convincing evidence that Michael Spencer was the prior inventor under 35 U.S.C. § 102(g) of the subject matter of any of claims 4-9 of the '880 patent as those claims are interpreted by the Court.

23.    Whether Defendants have shown by clear and convincing evidence that based on his work between 1986 and 1990, Dr. Theodore Klein was the prior inventor under 35 U.S.C. § 102(g) of the subject matter of any of claims 4-9 of the '880 patent as those claims are interpreted by the Court.

24.    Whether Defendants have shown by clear and convincing evidence that based on the work underlying the 1990 paper authored by Dr. Fromm et al. was a prior invention under 35 U.S.C. § 102(g) of the subject matter of any of claims 4-9 of the '880 patent as those claims are interpreted by the Court.

25.    Whether Defendants have shown by clear and convincing evidence that any of claims 4-9 of the '880 patent as those claims are interpreted by the Court would have been obvious to one of ordinary skill in the relevant art under 35 U.S.C. § 103 in view of Klein 1988a/1988b including, whether the proper scope of the relevant art would include Klein 1988a/1988b, what the appropriate level of skill in the art was at the time the patent application was filed, the differences between Klein 1988a/1988b and the subject matter of the asserted claims, and the effect of any objective evidence of nonobviousness.

26.    Whether Defendants have shown by clear and convincing evidence that the specification of the '880 patent did not enable one of ordinary skill in the art to obtain a herbicide resistance gene to produce a herbicide-resistant fertile transgenic corn plant such that any of claims 4-9 of the '880 patent as those claims are interpreted by the Court is invalid for lack of enablement.

**The '863 Patent**

27.    Whether Defendants have shown by clear and convincing evidence that any of claims 5 and 6 of the '863 patent as those claims are interpreted by the Court is anticipated under 35 U.S.C. § 102(e) by United States Patent No. 6,040,497.

28.    Whether Defendants have shown by clear and convincing evidence that the specification of the '863 patent fails to adequately describe glyphosate resistance genes

such that any of claims 5 and 6 of the '863 patent as those claims are interpreted by the Court is invalid for failure to satisfy the written description requirement.

29.    Whether Defendants have shown by clear and convincing evidence that the specification of the '863 patent did not enable one of ordinary skill in the art to obtain a glyphosate resistance gene to produce a glyphosate-resistant fertile transgenic corn plant such that any of claims 5 and 6 of the '863 patent as those claims are interpreted by the Court is invalid for lack of enablement.

## DAMAGES

30.    The amount of reasonable royalty damages that Plaintiffs should recover based on sales of infringing GA21 corn products by Defendants and their licensees.

31.    The reasonable royalty in dollars per unit for Defendants' GA21 corn products that Plaintiffs should recover based on an analysis under the factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).

# EXHIBIT 3

**EXHIBIT 3**

Civil Action No. 04-305-SLR (Lead Case)

## SYNGENTA'S STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED

Syngenta respectfully submits the following list of issues of fact that remain to be litigated. Syngenta reserves the right to modify or supplement this Statement to reflect the Court's rulings on claim construction and pending motions. Syngenta also reserves the right to modify or supplement this Statement to the extent necessary to fairly respond to any new issues Monsanto/DeKalb raise in their Statement of Issues of Fact. Should the Court determine that any issue identified in this list as an issue of fact is more properly considered an issue of law, it should be so considered.

**I.     '835 Patent**

**A.     Non-Infringement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-infringement)**

1.     Whether Syngenta's GA21 corn products literally meet each and every limitation of claims 1 and 5-6 of the '835 patent, as those claims are properly construed. In particular, whether Syngenta's OTP satisfies the "chloroplast transit peptide" ("CTP") element of claim 1 of the '835 patent.[1]

**B.     Non-Enablement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-enablement)**

2.     Whether persons skilled in the art as of the July 1986 filing date of the '835 patent could practice the full scope of claims 1 and 5-6 of the '835 patent without undue experimentation, where (1) it is undisputed that persons skilled in the art could not

---

[1] Syngenta filed a motion to preclude Monsanto/DeKalb from presenting expert testimony concerning alleged infringement of the '835 patent under the doctrine of equivalents. Consequently, this issue is not addressed in Syngenta's Statement of Issues of Fact that Remain to be Litigated. Syngenta reserves the right to supplement this Statement should the Court deny Syngenta's motion.

transform monocot plant cells with a foreign gene as of the filing date of the patent; (2) the '835 patent provides no working examples in monocot plant cells or plants; and (3) claims 1 and 5-6 require that the claimed gene functions to enhance the glyphosate resistance of all types of plant cells, including monocots, transformed with the gene.

3.     Even assuming persons skilled in the art could transform monocot plant cells as of July 1986, whether such persons could, possessing the teachings described in the '835 patent, make and use genes capable of imparting glyphosate resistance to monocot plant cells as required by claims 1 and 5-6 without undue experimentation.

4.     Whether persons skilled in the art as of the July 7, 1986 filing date of the '835 patent could make and use a CTP/EPSPS fusion polypeptide within the scope of claims 1 and 5-6 of the '835 patent without undue experimentation, where the only example describing such a fusion polypeptide, Example 8, does not disclose the specific mutation required to practice the example.

## C.     Anticipation

5.     Whether the '925 patent describes each element of claims 1 and 5-6 of the '835 patent.

6.     Whether Monsanto can antedate the '925 patent, where Monsanto tried and failed to obtain glyphosate resistance in plant cells using a CTP/EPSPS fusion polypeptide before the July 1985 filing date of the '925 patent.

## D.    Written Description

7.    Whether the inventors of the '835 patent had possession of the genus of all possible CTPs that fall within the scope of claims 1 and 5-6 of the '835 patent as of the July 1986 filing date of the '835 patent.

8.    Whether persons of ordinary skill in the art, as of the July 7, 1986 filing date of the '835 patent, understood that there was a structure-function relationship between the amino acid sequence of different CTPs and the ability of a CTP to transport a protein into the chloroplast of a plant cell.

9.    Whether the inventors of the '835 patent had possession of any DNA sequence that falls within the scope of claims 1 and 5-6 of the '835 patent as of the July 1986 filing date that, when expressed, will enhance the glyphosate resistance of a monocot plant cell.

## E.    Best Mode

10.    Whether the glycine to alanine mutation encoded by construct pMON542 and omitted from the description of Example 8 of the '835 patent was known by any of the inventors of the '835 patent to be the best way of obtaining glyphosate resistance in a plant cell as set forth in claims 1 and 5-6 of the '835 patent as of July 7, 1986.

11.    Whether the '835 patent discloses the glycine to alanine mutation encoded by construct pMON542.

## II.    '880 Patent

### A.    Non-infringement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-infringement)

12.    The issue of Syngenta's alleged infringement of the '880 patent turns on the Court's construction of claims 4-9 of the '880 patent, in particular whether claim 4 is a dependent claim that incorporates by reference process steps (i)-(iii) of claim 1. Syngenta is not aware of any factual disputes that need to be tried concerning this issue.

### B.    Prior Invention

13.    Whether Dr. Theodore Klein and his collaborators conceived of the method for transforming fertile transgenic herbicide-resistant corn claimed in the '880 patent before the invention of Dr. Ronald Lundquist and Mr. David Walters.

14.    Whether Dr. Klein and his collaborators diligently reduced this method to practice, and ultimately obtained fertile transgenic herbicide-resistant corn.

15.    Whether Mr. Michael Spencer and his collaborators at DeKalb conceived of the method for transforming fertile transgenic herbicide-resistant corn claimed in the '880 patent before the invention of Dr. Ronald Lundquist and Mr. David Walters.

16.    Whether Mr. Spencer and his collaborators diligently reduced this method to practice, and ultimately obtained fertile transgenic herbicide-resistant corn.

### C.    Derivation and Inventorship

17.    Whether Dr. Theodore Klein and Dr. John Sanford conceived of the microprojectile bombardment method for transforming fertile transgenic herbicide-resistant corn claimed in the '880 patent.

18.   Whether Drs. Klein and Sanford disclosed this microprojectile bombardment method to Dr. Ronald Lundquist prior to the January 22, 1990 priority date of the '880 patent.

### D.   Anticipation

19.   Whether Dr. Theodore Klein's February 26, 1986 USDA Grant Application describes each and every element of claims 4-9 of the '880 patent.

### E.   Obviousness

20.   Whether claims 4-9 of the '880 patent are invalid for obviousness in view of the 1988 publications of Dr. Klein (T.M. Klein, T. Gradziel, M.E. Fromm, and J.C. Sanford, *Factors Influencing Gene Delivery Into Zea Mays Cells By High Velocity Microprojectiles*, Bio/Technology, 6:559-63 (May 1988) ("Klein 1988(a)") and T.M. Klein, M. Fromm, J.C. Sanford, et al., *Transfer of Foreign Genes into Intact Maize Cells with High-Velocity Microprojectiles*, Proc. Natl. Acad. Sci., 85:4305-09 at 4306-07 (June 1988) ("Klein 1988(b)")) particularly in light of near the simultaneous achievement of fertile transgenic herbicide-resistant corn by DeKalb (Mr. Michael Spencer and collaborators) and USDA (Dr. Ted Klein and collaborators).

### F.   Non-Enablement

21.   Whether persons skilled in the art, as of the January 22, 1990 filing date of the '880 patent, could practice the full scope of claims 4-9 of the '880 patent without undue experimentation, where (1) the claims broadly recite the use of any selectable marker resistance gene to select transformed corn cells; (2) the inventors only used the antibiotic hygromycin as a selectable agent in corn; and (3) DeKalb alleges that other

selectable markers would not have worked and that the use of the hygromycin resistance gene was the key to success.

### III.    '863 Patent

####    A.    Non-infringement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-infringement)

22.    The issue of Syngenta's alleged infringement of the '863 patent turns on the Court's construction of claims 5 and 6 of the '863 patent and DeKalb's admission that these claims incorporate by reference process steps (i)-(iii) of claim 1.  Syngenta is not aware of any factual disputes that need to be tried concerning this issue.

####    B.    Written Description

23.    Whether, as of the filing date of the '863 patent, the inventors of the '863 patent had possession of a DNA sequence that, when expressed, imparts glyphosate resistance in corn as specifically required by claims 5 and 6 of the '863 patent.

####    C.    Non-Enablement

24.    Whether persons skilled in the art as of the January 22, 1990 filing date of the '863 patent could practice the full scope of claims 5 and 6 of the '863 patent without undue experimentation, where persons of ordinary skill in the art could not make and use, without undue experimentation, a gene capable of imparting glyphosate resistance in a fertile transgenic corn plant.

####    D.    Anticipation

25.    Whether the '497 patent, and the work described therein, anticipates claims 5-6 of the '863 patent.

**IV.    Damages (Pending the Court's ruling on Syngenta's motion to bifurcate the issues of willful infringement and damages)**

26.   The amount of reasonable royalty damages in dollars per unit that plaintiffs may recover if one or more of the patents-in-suit is found valid and infringed, based on an analysis under the factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd.*, 446 F.2d 295 (2d Cir. 1971), and the value of the contribution of the patent(s) found to be valid and infringed and the value of the contributions from other patented versus non-patented technology components of the GT corn product.

27.   Whether Monsanto can prove by clear and convincing evidence that Syngenta acted in bad faith and intentionally disregarded known legal rights with respect to the patents-in-suit.

# EXHIBIT 4

# EXHIBIT 4

## PLAINTIFFS' STATEMENT OF ISSUES OF
## LAW THAT REMAIN TO BE LITIGATED

If any statement included herein as an issue of law should properly be considered an issue of fact, then it should be so considered.

### INFRINGEMENT

1.    Whether the making, using, selling, offering to sell, licensing or importing of Defendants' GA21 corn products literally infringes any of claims 1, 5 and 6 of the '835 patent, claims 4-9 of the '880 patent, or claims 5 and 6 of the '863 patent. 35 U.S.C. § 271; *Multiform Desiccants, Inc. v. Medzam, Ltd*, 133 F.3d 1473, 1476 (Fed. Cir. 1998); *SRI Int'l v. Matsushita Elec. Corp. of Am*, 775 F.2d 1107, 1121 (Fed. Cir. 1985).

2.    Whether the making, using, selling, offering to sell, licensing or importing of Defendants' GA21 corn products infringes any of claims 1, 5 and 6 of the '835 patent under the doctrine of equivalents. 35 U.S.C. § 271; *Warner Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Eagle Comtronics, Inc. v. Arrow Commc'n Labs. Inc*, 305 F.3d 1303, 1315 (Fed. Cir. 2002), *cert. denied*, 537 U.S. 1172.

3.    Whether Defendants directly infringe any of claims 1, 5 and 6 of the '835 patent, claims 4-9 of the '880 patent, or claims 5 and 6 of the '863 patent, by making, using, selling, offering to sell or importing Defendants' GA21 corn products. 35 U.S.C. § 271(a).

4.    Whether Defendants induce others to infringe any of claims 1, 5 and 6 of the '835 patent, claims 4-9 of the '880 patent, or claims 5 and 6 of the '863 patent with regard to Defendants' GA21 corn products. 35 U.S.C. § 271(b); *Fuji Photo Film Co., Ltd. v. Jazz*

*Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005); *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 968 (1988); *nCube Corp. v. SeaChange Int'l Inc.*, 313 F. Supp. 2d 361, 375 (D. Del. 2004).

5.      Whether Defendants contributorily infringe any of claims 1, 5 and 6 of the '835 patent, claims 4-9 of the '880 patent, or claims 5 and 6 of the '863 patent with regard to Defendants' GA21 corn products. 35 U.S.C. § 271(c); *Golden Blount, Inc. v. Robert H Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004); *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986); *Lucas Aerospace, Ltd. v. Unison Indus.*, 899 F. Supp. 1268, 1286 (D. Del. 1995).

6.      Whether Defendants directly infringe any of claims 4-9 of the '880 patent or claims 5 and 6 of the '863 patent by importing into the United States or offering to sell, selling, or using Defendants' GA21 corn products within the United States. 35 U.S.C. § 271(g). *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1323 (Fed. Cir. 2005); *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1348 (Fed. Cir. 2000).

## **VALIDITY**

The following list of issues of law are believed to be a comprehensive list of Defendants' contentions, but Plaintiffs' identification of this list of issues should not be construed to mean that Plaintiffs agree that these issues are in dispute or that they concern a legally supportable invalidity defense. Each of the following issues must be proven by clear and convincing evidence based on Defendants' burden of proof for proving invalidity.

**The '835 Patent**

7.      Whether United States Patent No. 5,728,925 qualifies as prior art under 35 U.S.C. § 102(e) to each of claims 1, 5 and 6 of the '835 patent. *In re Huston*, 308 F.3d 1267, 1277 (Fed. Cir. 2002); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1365 (Fed. Cir. 2001).

8.      Whether Defendants have shown by clear and convincing evidence and separately for each claim that United States Patent No. 5,728,925 anticipates claims 1, 5 and 6 of the '835 patent because it discloses each and every limitation of any claim and was granted on an application filed in the United States before the invention of the claim by the Monsanto inventors. 35 U.S.C. § 102(e); *Hazani v. U.S. Int'l Trade Comm'n*, 126 F.3d 1473, 1477 (Fed. Cir. 1997); *In re Ziegler*, 992 F.2d 1197, 1200 (Fed. Cir. 1993).

9.      Whether Defendants have shown by clear and convincing evidence and separately for each claim that the disclosure in the specification of the '835 patent does not enable one of skill in the art to practice the invention of claims 1, 5 and 6 of the '835 patent without undue experimentation. 35 U.S.C. § 112, ¶1; *Singh v. Brake*, 317 F.3d 1334, 1345 (Fed. Cir. 2003); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986); *Atlas Powder Co, v. E.I. DuPont De Nemours & Co.*, 750 F.2d 1569, 1577 (Fed. Cir. 1984).

10.     Whether Defendants have shown by clear and convincing evidence and separately for each claim that claims 1, 5 and 6 of the '835 patent are invalid because the specification of the '835 patent fails to satisfy the written description requirement. 35 U.S.C. § 112, ¶1; *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 967 (Fed. Cir. 2006); *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052, 1071-72 (Fed. Cir.

2005); *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F. Supp. 1278, 1292 (D. Del. 1987), *aff'd*, 865 F.2d 1247 (Fed. Cir. 1989).

11.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that as of the July 7, 1986 filing date of the '835 patent, the Monsanto inventors had a preferred mode of practicing their invention that they did not disclose.  35 U.S.C. § 112, ¶ 1; *Bayer AG v. Schein Pharm., Inc.*, 301 F.3d 1306, 1312-15 (Fed. Cir. 2002); *Young Dental Mfg. v. Q3 Special Prods.*, 112 F.3d 1137, 1144 (Fed. Cir. 1997); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1115 (Fed. Cir. 1996); *Wahl Instruments, Inc. v. Acvious, Inc.*, 950 F.2d 1575, 1579 (Fed. Cir. 1991).

**The '880 Patent**

12.    Whether the grant application of Drs. Klein and Sanford qualifies as prior art under 35 U.S.C. § 102(b) to each of claims 4-9 of the '880 patent.  *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737 (Fed. Cir. 2002); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987).

13.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that the grant application of Drs. Klein, Sanford and Wu anticipates because it discloses each and every limitation of, and enables one of skill in the art to practice, the invention in each of claims 4-9 of the '880 patent.  35 U.S.C. § 102(b); *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737 (Fed. Cir. 2002); *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 748 F.2d 645, 652 (Fed. Cir. 1984).

14.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that Lundquist et al. derived the subject matter of claims 4-9 of the '880 patent from Drs. Klein and Sanford.  35 U.S.C. § 102(f); *Checkpoint Sys., Inc. v. All-Tag*

*Sec. S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1381 (Fed. Cir. 2000).

15.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that Michael Spencer made the invention in claims 4-9 of the '880 patent before the invention thereof by Lundquist et al. 35 U.S.C. § 102(g)(2); *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189-90 (Fed. Cir. 2002).

16.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that based on his work between 1986 and 1990, Dr. Theodore Klein made the invention in claims 4-9 of the '880 patent before the invention thereof by Lundquist et al. 35 U.S.C. § 102(g)(2); *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189-90 (Fed. Cir. 2002).

17.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that the work underlying the 1990 paper by Dr. Fromm et al. was an invention of claims 4-9 of the '880 patent before the invention thereof by Lundquist et al. 35 U.S.C. § 102(g)(2); *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189-90 (Fed. Cir. 2002).

18.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that claims 4-9 of the '880 patent were obvious in view of Klein 1988a/1988b at the time the inventions were made. 35 U.S.C. § 103; *Metabolite Laboratories, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1368 (Fed. Cir. 2004); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1566 (Fed. Cir. 1987).

19.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that the disclosure in the specification of the '880 patent does not enable one of skill in the art to practice the invention of claims 4-9 of the '880 patent without undue experimentation. 35 U.S.C. § 112, ¶1; *Singh v. Brake*, 317 F.3d 1334, 1345 (Fed. Cir. 2003); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986); *Atlas Powder Co, v. E.I. DuPont De Nemours & Co.*, 750 F.2d 1569, 1577 (Fed. Cir. 1984).

**The '863 Patent**

20.    Whether United States Patent No. 6,040,497 qualifies as prior art under 35 U.S.C. § 102(e) to each of claims 5 and 6 of the '863 patent. *In re Huston*, 308 F.3d 1267, 1277 (Fed. Cir. 2002); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1365 (Fed. Cir. 2001).

21.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that United States Patent No. 6,040,497 anticipates claims 5 and 6 of the '863 patent because it discloses each and every limitation of any claim and was granted on an application filed in the United States before the invention of the claim by Lundquist et al. 35 U.S.C. § 102(e); *Hazani v. U.S. Int'l Trade Comm'n*, 126 F.3d 1473, 1477 (Fed. Cir. 1997); *In re Ziegler*, 992 F.2d 1197, 1200 (Fed. Cir. 1993).

22.    Whether Defendants have shown by clear and convincing evidence and separately for each claim that the disclosure in the specification of the '863 patent does not enable one of skill in the art to practice the invention of claims 5 and 6 of the '863 patent without undue experimentation. 35 U.S.C. § 112, ¶1; *Singh v. Brake*, 317 F.3d 1334, 1345 (Fed. Cir. 2003); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367,

1384 (Fed. Cir. 1986); *Atlas Powder Co, v. E.I. DuPont De Nemours & Co.*, 750 F.2d 1569, 1577 (Fed. Cir. 1984).

23.     Whether Defendants have shown by clear and convincing evidence and separately for each claim that claims 5 and 6 of the '863 patent are invalid because the specification of the '863 patent fails to satisfy the written description requirement. 35 U.S.C. § 112, ¶1; *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 967 (Fed. Cir. 2006); *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052, 1071-72 (Fed. Cir. 2005); *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F. Supp. 1278, 1292 (D. Del. 1987), *aff'd*, 865 F.2d 1247 (Fed. Cir. 1989).

## RELIEF

24.     Whether Plaintiffs are entitled to injunctive relief and the scope of such injunctive relief. 35 U.S.C. § 283; *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1338-39 (Fed. Cir. 2005) *cert. granted*, 74 U.S.L.W. 3313 (U.S. Nov. 28, 2005) (No. 05-130); *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1002 (Fed. Cir. 1986).

25.     Whether Plaintiffs should recover damages. 35 U.S.C. § 271; 35 U.S.C. § 284.

26.     The amount of damages that Plaintiffs should recover from the Defendants in the form of a reasonable royalty. 35 U.S.C. § 284; *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).

27.     Whether Plaintiffs should recover prejudgment interest in an amount to be determined by the Court. 35 U.S.C. § 284.

28.     Whether Plaintiffs should recover enhanced damages due to Defendants' willful infringement of the patents-in-suit and whether those damages should be trebled.   35 U.S.C. § 284.

29.     Whether Plaintiffs should recover their attorney fees and expenses, including expert witness expenses, pursuant to 35 U.S.C § 285 or the Court's equitable power, in an amount to be determined by the Court.

# EXHIBIT 5

**EXHIBIT 5**

Civil Action No. 04-305-SLR (Lead Case)

**SYNGENTA'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE
LITIGATED**

Syngenta expects that it will present the following issues of law at trial.  Syngenta

reserves the right to modify or supplement this Statement to reflect the Court's rulings on

claim construction and the pending motions.  Syngenta also reserves the right to modify

or supplement this Statement to the extent necessary to fairly respond to any new issues

Monsanto/DeKalb raise in their Statement of Issues of Law.  To the extent that any issue

in Syngenta's Statement of Issues of Fact That Remain to be Litigated is deemed an issue

of law, Syngenta incorporates that issue by reference into this Statement.

**I.    '835 Patent**

    **A.    Non-Infringement (Pending the Court's ruling on Syngenta's
motion for summary judgment of non-infringement)**

1.    Whether Syngenta's GA21 corn products literally meet each and every

limitation of claims 1 and 5-6 of the '835 patent, where Syngenta's GA21 corn product

contains an OTP that does not satisfy the naturally occurring CTP element of claims 1

and 5-6 of the '835 patent.[2]  35 U.S.C. § 271; *Warner-Jenkinson Co. v. Hilton Davis

Chem. Co.*, 520 U.S. 17 (1997); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535

(Fed. Cir. 1991).

2.    Whether Syngenta's activities with GA21 corn products caused the

inducement or contributory infringement of claims 1 and 5-6 of the '835 patent, as those

---

[2] Syngenta filed a motion to preclude Monsanto/DeKalb from presenting expert
testimony concerning alleged infringement of the '835 patent under the doctrine of
equivalents.  Consequently, this issue is not addressed in Syngenta's Statement of Issues
of Law that Remain to be Litigated.  Syngenta reserves the right to supplement this
Statement should the Court deny Syngenta's motion.

claims are properly construed, where there is no evidence of direct infringement. 35 U.S.C. § 271(b) and (c); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993).

### B.   Non-Enablement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-enablement)

3.    Whether claims 1 and 5-6 of the '835 patent fail to comply with the enablement requirement of 35 U.S.C. § 112, first paragraph, where persons of ordinary skill in the art could not transform monocot plant cells as of the July 7, 1986 filing date of the '835 patent, and the claims are therefore not enabled for their full scope. 35 U.S.C. § 112; *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed. Cir. 2003); *In re Vaeck*, 947 F.2d 488, 495 (Fed. Cir. 1991); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

4.    Whether claims 1 and 5-6 of the '835 patent fail to comply with the enablement requirement of 35 U.S.C. § 112, first paragraph, on the basis that as of July 7, 1986, persons of ordinary skill in the art could not make and use, without undue experimentation, a gene capable of imparting glyphosate resistance to monocot plant cells as required by claims 1 and 5-6, as properly construed. *Id.*

5.    Whether claims 1 and 5-6 of the '835 patent fail to comply with the enablement requirement of 35 U.S.C. § 112, first paragraph, on the basis that as of July 7, 1986, persons of ordinary skill in the art could not make and use, without undue experimentation, a CTP/EPSPS fusion polypeptide within the scope of the claims-at-issue, where the only example describing such a fusion polypeptide, Example 8, does not disclose the specific mutation required to practice the example.

### C.    Anticipation

6.    Whether Monsanto can antedate the '925 patent, where (1) claims 1 and 5-6 of the '835 patent recite a CTP/EPSPS fusion polypeptide; (2) the '925 patent discloses as of its July 1985 filing date a CTP/EPSPS fusion polypeptide; (3) Monsanto tried and failed in May 1985 to obtain glyphosate resistance using a CTP/EPSPS fusion polypeptide; and (4) Monsanto admitted in the '390 application filed in August 1985 that it was "unknown" whether a CTP/EPSPS fusion polypeptide would work.

7.    Whether claims 1 and 5-6 of the '835 patent are anticipated by the '925 patent under 35 U.S.C. § 102(e), where each and every element of those claims is disclosed in the '925 patent. 35 U.S.C. §102 (e); *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1332 (Fed. Cir. 2005); *Novo Nordisk Pharms., Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005); *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354-55 (Fed. Cir. 2003); *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).

### D.    Written Description

8.    Whether claims 1 and 5-6 of the '835 patent fail to comply with the written description requirement of 35 U.S.C. § 112, first paragraph, on the basis that the claims are directed to any DNA sequence that functions as a CTP, while the specification describes the DNA sequence of only one CTP, and as of the filing date of the '835 patent, there was no known structure-function relationship between a CTP's sequence and its ability to transport a protein to the chloroplast. 35 U.S.C. § 112; *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997); *Vas-Cath Inc. v. Mahurkur*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

9.    Whether claims 1 and 5-6 of the '835 patent fail to comply with the written description requirement of 35 U.S.C. § 112, first paragraph, on the basis that the specification does not describe any DNA sequence that, when expressed, will enhance the glyphosate resistance of a monocot plant cell.  35 U.S.C. § 112; *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

### E.    Best Mode

10.    Whether claims 1 and 5-6 of the '835 patent fail to comply with the best mode requirement of 35 U.S.C. § 112, first paragraph, where the specification fails to disclose the specific glycine to alanine mutation encoded by construct pMON542, which was known to the inventors as of the July 7, 1986 filing date of the '835 patent.  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1064 (Fed. Cir. 1998); *U.S. Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1215 (Fed. Cir. 1996); *Applied Materials, Inc. v. Advanced Semiconductor Materials, Am, Inc.*, 98 F.3d 1563, 1579 (Fed. Cir. 1996).

## II.    '880 Patent

### A.    Non-Infringement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-infringement)

11.    Whether Syngenta has infringed process claims 4-9 of the '880 patent, as those claims are properly construed, in connection with Syngenta's manufacture, use, and sale of its GA21 corn products, where (1) claims 4-9 are dependent claims that all depend on independent claim 1 of the '880 patent and incorporate by reference process steps (i)-(iii); (2) claim 1 recites a three-step microprojectile bombardment process (process steps (i)-(iii)) for making fertile transgenic corn; (3) Syngenta never performed the process

steps (i)-(iii) recited in independent claim 1, from which claims 4-9 depend; and (4) no one ever performed the three-step microprojectile bombardment process during the term of the '880 patent with regard to GA21 corn. 35 U.S.C. § 271; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Canton Bio-Medical, Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001).

12.    Whether Syngenta has induced or contributed to the infringement of claims 4-9 of the '880 patent through its manufacture, use, and sale of its GA21 corn products. 35 U.S.C. § 271; *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993).

### B.    Prior Invention

13.    Whether claims 4-9 of the '880 patent are anticipated under 35 U.S.C. § 102(g) where Dr. Theodore Klein and his collaborators conceived of the method for transforming fertile transgenic herbicide-resistant corn claimed in the '880 patent before the invention of Dr. Ronald Lundquist and Mr. David Walters and diligently reduced that method to practice. 35 U.S.C. § 102(g); *Mahurkur v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996); *Paulik v. Rizkalla,* 760 F.2d 1270, 1272 (Fed. Cir. 1985) (*en banc*).

14.    Whether claims 4-9 of the '880 patent are anticipated under 35 U.S.C. § 102(g) where Mr. Michael Spencer and his collaborators conceived of the method for transforming fertile transgenic herbicide-resistant corn claimed in the '880 patent before the invention of Dr. Ronald Lundquist and Mr. David Walters and diligently reduced that

method to practice. 35 U.S.C. § 102(g); *Mahurkur v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996); *Paulik v. Rizkalla,* 760 F.2d 1270, 1272 (Fed. Cir. 1985) (*en banc*).

## C. Derivation and Inventorship

15. Whether claims 4-9 of the '880 patent are anticipated under 35 U.S.C. § 102(f) where Dr. Theodore Klein and Dr. John Sanford conceived of the microprojectile bombardment method for transforming fertile transgenic herbicide-resistant corn claimed in the '880 patent and disclosed this method to Dr. Ronald Lundquist prior to the date of invention of the '880 patent. 35 U.S.C. § 102(f); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-77 (Fed. Cir. 1997) (quoting *Hedgewick v. Akers*, 497 F.2d 905, 908 (C.C.P.A. 1974)); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

## D. Anticipation

16. Whether claims 4-9 of the '880 patent are anticipated under 35 U.S.C. § 102(b) where Dr. Theodore Klein's February 26, 1986 USDA Grant Application became publicly available in 1987 (more than a year before the January 22, 1990 filing date of the '880 patent), and where the Grant Application describes each element of claims 1 and 4-9 of the '880 patent. 35 U.S.C. § 102(b); *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1326 (Fed. Cir. 2005); *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *Bristol-Myers Squibb Co. v. Ben Venue Labs.*, 246 F.3d 1368, 1379 (Fed. Cir. 2001); *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985).

### E.     Obviousness

17.   Whether claims 4-9 are obvious in view of Klein 1988(a) and Klein 1988(b), particularly in light of the near simultaneous achievement of fertile transgenic herbicide-resistant corn by DeKalb (Mr. Michael Spencer and collaborators) and USDA (Dr. Theodore Klein and collaborators).   35 U.S.C. §103; *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000).

### F.     Non-Enablement

18.   Whether claims 4-9 of the '880 patent fail to comply with the enablement requirement of 35 U.S.C. § 112, first paragraph, where (1) the claims broadly recite the use of any selectable marker resistance gene to select transformed corn cells; (2) the inventors only used the antibiotic hygromycin as a selectable agent in corn; and (3) DeKalb alleges that other selectable markers would not have worked and that the use of the hygromycin resistance gene was the key to success.   35 U.S.C. § 112; *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed. Cir. 2003); *In re Vaeck*, 947 F.2d 488, 495 (Fed. Cir. 1991); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

## III.     '863 Patent

### A.     Non-Infringement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-infringement)

19.   Whether Syngenta has infringed process claims 5 and 6 of the '863 patent, as those claims are properly construed, in connection with Syngenta's manufacture, use, and sale of its GA21 corn products, where (1) claims 5 and 6 are dependent claims that all depend on independent claim 1 of the '863 patent and incorporate by reference process

steps (i)-(iii) of claim 1; (2) claim 1 recites a three-step microprojectile bombardment process (process steps (i)-(iii)) for making fertile transgenic corn; (3) Syngenta never performed the process steps (i)-(iii) recited in independent claim 1, from which claims 5 and 6 depend; and (4) no one ever performed the three-step microprojectile bombardment process during the term of the '863 patent with regard to GA21 corn. 35 U.S.C. § 271; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Canton Bio-Medical, Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001).

20.    Whether Syngenta has induced or contributed to the infringement of claims 5 and 6 of the '863 patent through its manufacture, use, and sale of its GA21 corn products. 35 U.S.C. § 271; *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993).

### B.    Written Description

21.    Whether claims 5 and 6 of the '863 patent fail to comply with the written description requirement of 35 U.S.C. § 112, first paragraph, where the specification of the '863 patent does not describe any DNA sequence that, when expressed, imparts glyphosate resistance in corn. 35 U.S.C. § 112; *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

### C.    Non-Enablement

22.    Whether claims 5 and 6 of the '863 patent fail to comply with the enablement requirement of 35 U.S.C. § 112, first paragraph, where persons of ordinary skill in the art could not make and use, without undue experimentation, a gene capable of imparting glyphosate resistance in a fertile transgenic corn plant, which would be required to practice the claimed process.    35 U.S.C. § 112; *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed. Cir. 2003); *In re Vaeck*, 947 F.2d 488, 495 (Fed. Cir. 1991); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

### D.    Anticipation

23.    Whether claims 5-6 of the '863 patent are anticipated by the '497 patent and the work described therein.    *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1332 (Fed. Cir. 2005); *Novo Nordisk Pharms., Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005); *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354-55 (Fed. Cir. 2003); *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996); *Paulik v. Rizkalla*, 760 F.2d 1270, 1272 (Fed. Cir. 1985) (*en banc*).

## IV.    Damages (Pending the Court's ruling on Syngenta's motion to bifurcate the issues of willful infringement and damages)

24.    Whether plaintiffs are entitled to any damages and the amount of any such damages.    35 U.S.C. § 271; 35 U.S.C. § 284.

25.    Whether any reasonable royalty damage award must be limited to an apportionment of the value contributed to the accused product by the patent(s) found valid and infringed such that the damage award does not unjustly compensate plaintiffs

for any portion of value contributed to the accused product by other technology components. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 312 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Bandag Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1582 (1983).

26.    Whether plaintiffs are entitled to injunctive relief and the scope of any such injunctive relief.    35 U.S.C. § 283; *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1338-39 (Fed. Cir. 2005) *cert. granted*, 74 U.S.L.W. 3313 (U.S. Nov. 28, 2005) (No. 05-130); *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1002 (Fed. Cir. 1986).

27.    Whether plaintiffs are entitled to prejudgment interest in an amount to be determined by the Court.   35 U.S.C. § 284.

28.    Whether plaintiffs are entitled to any enhanced damages, and whether any compensatory damage award should be increased pursuant to 35 U.S.C. § 284.

29.    Whether defendants should recover any attorney fees or expenses pursuant to 35 U.S.C. § 285 or the Court's equitable power.