# EXHIBIT 8

# EXHIBIT 8

## PLAINTIFFS' LIST OF LIVE WITNESSES
## AND EXPERT STATEMENTS

## I.     PLAINTIFFS' LIST OF LIVE WITNESSES

The following is a list of the names and addresses of witnesses Plaintiffs may call

to testify in person or by deposition:

Charles Armstrong
Monsanto Company
700 Chesterfield Parkway West
Chesterfield, MO 63017

Joe Bothe
Monsanto Company
800 N. Lindbergh Boulevard
St. Louis, MO  63167

Xavier Delannay
Monsanto Company
800 N. Lindbergh Boulevard
St. Louis, MO  63167

Robb Fraley
Monsanto Company
800 N. Lindbergh Boulevard
St. Louis, MO  63167

Michael Fromm
Director, UNL Center For Biotechnology
E207 Beadle Center
1901 Vine Street
Lincoln, NE 68588-0665

Charles S. Gasser
University of California-Davis
One Shields Avenue
Davis, California  95616

Delbert Harper
Monsanto Company
800 N. Lindbergh Boulevard
St. Louis, MO  63167

Robert Horsch
Monsanto Company
800 N. Lindbergh Boulevard
St. Louis, MO  63167

Paul Julstrom
Monsanto Company
634 East Lincoln Way
Ames, IA 50010-6598

Ganesh Kishore
11966 Sackston Ridge Dr.
St. Louis, Missouri  63141

Marshall Kostiuk
Syngenta Plant Science
7500 Olson Memorial Highway
Golden Valley, MN  55427

Harry Klee
University of Florida-Gainesville
P. O. Box 110690
Gainesville, Florida 32611

Anthony Leisure
Monsanto Company
800 N. Lindbergh Boulevard
St. Louis, MO  63167

Ronald Lundquist
4901 Clear Springs Road
Minnetonka, MN  55345

Nancy Hoffman Mathis
616 Bull Valley Drive
St. Charles, MO  63304

Edward Resler
Syngenta Plant Science
7500 Olson Memorial Highway
Golden Valley, MN  55427

Ken Rinkenberger
Monsanto Company
800 N. Lindbergh Boulevard

St. Louis, MO 63167

Rob Robinson
JC Robinson Seed Company
100 JC Robinson Boulevard
Waterloo, NE 68069

Stephen Rogers
86 Lafayette Park
Lynn MA 01902

Dilip Shah
Donald Danforth Plant Science Center
975 North Warson Road
St. Louis, Missouri 63132

Michael Spencer
Monsanto Company
62 Maritime Drive
Mystic, CT 06355-1958

David Walters
Monsanto Company
62 Maritime Drive
Mystic, CT 06355-1958

David Witherspoon
Garst Seed Company
2369 330th Street
Slater, IA 50244

## II.    PLAINTIFFS' BRIEF STATEMENT OF EXPERT WITNESSES' TESTIMONY

The following is a brief summary of the proposed opinion testimony from Plaintiffs' expert witnesses who Plaintiffs may call to testify in person or by deposition:

### John Finer

Dr. Finer is a Professor in the Department of Horticulture and Crop Science at The Ohio State University. His qualifications are fully set forth in his curriculum vitae, which is attached to his expert report. Dr. Finer is expected to testify on the opinions and statements in his expert report served in this action and those expressed in his deposition,

including how the GA21 event was created and how the Defendants' activities with GA21 meet the limitations of the asserted claims of the '880 and '863 patents. He may testify regarding his opinion that NK603 corn was made by the steps in the asserted claims of the '880 and '863 patents. Dr. Finer may also testify in response or rebuttal to any infringement or related issue raised by Defendants. As an expert in the transformation of corn and the regeneration of fertile transgenic corn plants, Dr. Finer may also provide tutorials on those subjects.

Michael Fromm

Dr. Fromm is a Professor of Agronomy and Horticulture at the University of Nebraska. His qualifications are fully set forth in his curriculum vitae, which is attached to his expert reports. Dr. Fromm is expected to testify on the opinions and statements in his expert reports served in this action and those expressed in his deposition, including Syngenta's failed attempts to develop their own glyphosate resistant corn products; that the '880 and '863 patents meet the written description and enablement requirements; that Klein et al.'s Grant Application does not anticipate the asserted claims of the '880 patent; that U.S. Patent No. 6,040,497 does not anticipate the asserted claims of the '863 patent; that Lundquist and Walters did not derive the subject matter of the asserted claims of the '880 patent from Klein and Sanford; that Klein was not the prior inventor of the subject matter of the '880 patent claims; that Michael Spencer was not the prior inventor of the subject matter of the '880 patent claims; that the work underlying the 1990 article by Fromm et al. was not a prior invention of the subject matter of the '880 patent claims; the level of ordinary skill in the art relevant to the '880 and '863 patents; the scope and content of the prior art relevant to the '880 and '863 patents; the differences between the

prior art and the claimed subject matter; objective evidence that the '880 and '863 patents are not obvious; and that the asserted claims of the '880 and '863 patents are not obvious. Dr. Fromm may also testify in rebuttal to any invalidity or related issue raised by Defendants. As an expert in transformation of corn and regeneration of fertile transgenic corn plants, Dr. Finer may also provide tutorials on those subjects.

Kenneth Keegstra

Dr. Keegstra is the Director of the Michigan State University Plant Research Laboratory. His qualifications are fully set forth in his curriculum vitae, which is attached to his expert report. Dr. Keegstra is expected to testify on the opinions and statements in his expert reports served in this action and those expressed in his deposition, including the level of ordinary skill in the art, what the '835 patent describes and teaches to one of ordinary skill in the art, the scope and content of the prior art, the filing date to which the '835 patent is entitled, and that U.S. Patent No. 5,728,925 does not anticipate the '835 patent. He may testify about Syngenta's activities with and sale of GA21 corn. Dr. Keegstra is expected to testify about how the genetic construct in GA21 corn meets the limitations of the asserted claims of the '835 patent. He may also testify about how the genetic construct in NK603 corn meets the limitations of the asserted claims of the '835 patent and about the genetic constructs in Syngenta's Ffybes events. In the event that the Court denies Plaintiffs' *Daubert* Motion with respect to certain testimony from Dr. Barry Bruce, he may also testify about the Lebrun Declaration and the data underlying it. Dr. Keegstra may also testify in rebuttal to any noninfringement, invalidity or related issue raised by Defendants. As an expert on protein transport into chloroplasts, Dr. Keegstra may provide a tutorial on that subject.

Charles Gasser

Dr. Gasser is a Professor in the Section of Molecular and Cellular Biology in the College of Biological Sciences at the University of California, Davis. His qualifications are fully set forth in his curriculum vitae, which is attached to his expert report. Dr. Gasser is expected to testify on the opinions and statements in his expert report served in this action and those expressed in his deposition including, what the '835 patent describes and teaches to one of ordinary skill in the art with respect to transforming corn and modes disclosed for practicing the invention. Dr. Gasser may also testify in rebuttal to any invalidity or related issue raised by Defendants.

Richard Cahoon

Dr. Cahoon is the Acting Executive Director of the Cornell Center for Technology, Enterprise & Commercialization and the Director of Cornell University's Office of Intellectual Property Management and Licensing. His qualifications are fully set forth in his curriculum vitae, which is attached to his expert report. Dr. Cahoon is expected to testify on the opinions and statements in his expert reports served in this action and those expressed in his deposition. This includes the appropriate calculation of a reasonable royalty due to Monsanto from Syngenta, assuming the asserted claims of the patents-in-suit are valid and infringed, and the commercial success of the patents-in-suit. Dr. Cahoon's assessment of a reasonable royalty will be based among other things upon the Georgia Pacific factors as well as the hypothetical negotiation between licensor and licensee. Dr. Cahoon may also testify in response or rebuttal to any damages or related issues raised by Syngenta.

<u>Christopher Spadea</u>

Mr. Spadea is a Vice President of CRA International, and his qualifications are fully set forth in his curriculum vitae, which is attached to his expert report. Mr. Spadea is expected to testify on the opinions and statements in his expert report served in this action and those expressed in his deposition including, calculation of the sales of GA21 products sold or licensed by Syngenta and Syngenta's expectations of value related to GA21. Mr. Spadea may also testify in response or rebuttal to any damages or related issues raised by Syngenta.

## III.    PLAINTIFFFS' LIST OF WITNESSES TO TESTIFY BY DEPOSITION

The following is a list of the names and addresses of witnesses Plaintiffs may call to testify by deposition:

Vahid Aidun
Jack Bernens
Jack Bernens 30(b)(6)
Dennis Bracht
Guy Della-Cioppa
Xavier Delannay
Erik Dunder
Alan Hawkins
Jeffrey Jorgensen
Thomas Klevorn
Marshall Kostiuk
Moez Meghji
Gregory Parker
Gregory Parker 30(b)(6)
Edward Resler 30(b)(6)
Raymond Riley
Raymond Riley 30(b)(6)
Rob Robinson
Dilip Shah
Jeffrey Stein
Kevin Turnblad 30(b)(6)
Rob Wilde
Rob Wilde 30(b)(6)
David Witherspoon

Raymond Wu
Ronald Wulkuhle

Plaintiffs reserve the right to designate testimony from the deposition transcript of

any of Defendants' expert witnesses not called to testify live at trial.

# EXHIBIT 9

## EXHIBIT 9

Civil Action No. 04-305-SLR (Lead Case)

### SYNGENTA'S WITNESS LIST

Syngenta may call some or all of the following witnesses either live or by deposition. Syngenta reserves the right to modify or supplement this list and reserves the right to call witnesses not included on this list as rebuttal witnesses. Syngenta reserves the right to modify or supplement this list based on the Court's rulings on claim construction and pending motions. Syngenta makes no representation that each or any of these witnesses will testify at trial.

Syngenta reserves the right to call additional witnesses to provide foundational testimony should Monsanto/DeKalb contest the authenticity or admissibility of any materials to be proffered at trial. Syngenta reserves the right to call substitute witnesses to the extent that the employment of any witness changes or a witness otherwise becomes unavailable for trial. Syngenta also reserves the right to call any witness for impeachment purposes.

Syngenta reserves the right to call at trial any witness who appears on Monsanto/DeKalb's witness list. If any of Monsanto/DeKalb's witnesses fail to appear at trial, Syngenta reserves the right to use their deposition testimony. Syngenta also reserves the right to supplement this list after it receives Monsanto/DeKalb's witness list.

The addresses of the witnesses affiliated with Syngenta are listed as "Syngenta," and can be reached through litigation counsel. The witnesses whose addresses are listed as "Monsanto/DeKalb," are Monsanto/DeKalb current or former employees, officers, or directors and can be reached through Monsanto/DeKalb's litigation counsel.

## I.    Fact Witnesses

1.   Thomas Adams - Monsanto/DeKalb

2.   Chuck Armstrong - Monsanto/DeKalb

3.   Joseph Michael Bothe - Monsanto/DeKalb

4.   Jack Bernens - Syngenta

5.   Guy Della-Cioppa - Monsanto/DeKalb

6.   Rick DeRose - 909 Camden Ct.
                    Winston Salem, NC

7.   Chris Flick - Monsanto/DeKalb

8.   Michael Fromm - Monsanto/DeKalb

9.   Charles Gasser - Monsanto/DeKalb

10. Delbert Harper - Monsanto/DeKalb

11. Nancy Hoffman - Monsanto/DeKalb

12. Robert Horsch - Monsanto/DeKalb

13. Jeff Jorgenson - Syngenta

14. Ganesh Kishore - Monsanto/DeKalb

15. Harry Klee - Monsanto/DeKalb

16. Ted Klein - 2229 Rosewood Dr.,
                Wilmington, DE

17.   Marshall Kostiuk - Syngenta

18. Michel Lebrun - Address Unknown

19. Anthony Leisure - Monsanto/DeKalb

20. Peggy Lemaux - Monsanto/DeKalb

21. Ronald Lundquist - Monsanto/DeKalb

22. Catherine Mackey - Monsanto/DeKalb

23. David Nothman - Monsanto/DeKalb

24. Greg Parker- Syngenta

25. Ed Resler - Syngenta

26. Ray Riley- Syngenta

27. Ken Rinkenberger - Monsanto/DeKalb

28. Robert Robinson - Syngenta

29. Sally Rockey - Address unknown

30. Stephen Rogers - Monsanto/DeKalb

31. John Sanford - Address unknown

32. Dilip Shah - Monsanto/DeKalb

33. Michael Spencer - Monsanto/DeKalb

34. David Walters - Monsanto/DeKalb

35. Robert Wilde - Syngenta

36. David Witherspoon - Syngenta

37. Ron Wulfkhule - Syngenta

## II.    Expert Witnesses

1. Barry Bruce

Biochemistry, Cellular & Molecular Biology Department
Walters Life Science Building
University of Tennessee at Knoxville
Knoxville, TN 37996

Dr. Bruce is a Professor in the department of Biochemistry, Cellular & Molecular biology at the University of Tennessee at Knoxville. His qualifications are fully set forth in his curriculum vitae, which is attached to his expert report. Dr. Bruce is expected to

testify on the opinions and statements in his expert reports served in this action and those expressed in his deposition, including the level of ordinary skill in the art, what the '835 patent describes and teaches to one of ordinary skill in the art, the scope and content of the prior art, the filing date to which the '835 patent is entitled, and that U.S. Patent No. 5,728,925 describes each and every element of the asserted claims of the '835 patent and allows one of ordinary skill in the art to obtain glyphosate resistant dicot plant cells. Dr. Bruce will also testify about how the OTP in Syngenta's GA21 corn product does not meet the CTP element in the asserted claims of the '835 patent. In the event that the Court denies Defendants' *Daubert* Motion with respect to certain testimony from Dr. Kenneth Keegstra, he may also testify about how the OTP in Syngenta's GA21 corn product works in a substantially different way to achieve a substantially different result from the CTP element of the asserted claims of the '835 patent. Dr. Bruce may also testify in rebuttal to any infringement, validity or related issue raised by Plaintiffs. As an expert on protein transport into chloroplasts and genetic engineering, Dr. Bruce may provide tutorials on those subjects.

      2.  Richard S. Cahoon

          Cornell University
          Cornell Center for Technology, Enterprise, and Commercialization
          20 Thornwood Drive, Suite 105
          Ithaca, New York, 14850

      3.  Paul Christou

          Univeritat de Lleida
          Department de Produccio Vegetal i Ciencia Forestal
          Av. Alcalde Rovira Roure, 177
          E-25198 LLEIDA
          Spain

Dr. Christou is a Professor in the department of Produccio Vegetal i Ciencia Forestal at the University of Lleida, Spain. His qualifications are fully set forth in his curriculum vitae, which is attached to his expert reports. Dr. Christou is expected to testify on the opinions and statements in his expert reports served in this action and those expressed in his deposition, including that Klein et al.'s Grant Application discloses each and every element of the asserted claims of the '880 patent; that U.S. Patent No. 6,040,497 teaches each and every element of the asserted claims of the '863 patent; that Lundquist and Walters derived the subject matter of the asserted claims of the '880 patent from Klein and Sanford; that Klein was the prior inventor of the subject matter of the '880 patent claims; that Michael Spencer was the prior inventor of the subject matter of the '880 patent claims; that the work underlying the 1990 article by Fromm et al. was a prior invention of the subject matter of the '880 patent claims; the level of ordinary skill in the art relevant to the '880 and '863 patents; the scope and content of the prior art relevant to the '880 and '863 patents; the differences between the prior art and the claimed subject matter; objective evidence that Klein and Spencer simultaneously conceived and reduced to practice fertile transgenic herbicide resistant corn; and that the Klein 1988a/b renders obvious the asserted claims of the '880 patent; that as of the July 7, 1986 filing date of the '835 patent, persons of skill in the art could not transform monocot plant cells, including corn; and that other methods available as of July 7, 1986 for transforming dicot plant cells were not successfully used to transform monocot plant cells as of July 7, 1986. Dr. Christou may also testify in rebuttal to any infringement or validity or related issue raised by Plaintiffs. As an expert in transformation and genetic engineering, Dr. Christou may also provide tutorials on those subjects.

4. John Jarosz

Analysis Group, Inc.
1899 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006

Mr. Jarosz is Managing Principal of Analysis Group, Inc. His qualifications are set forth in his resume, which is attached to his expert report. Mr. Jarosz is expected to testify on the opinions and statements in his expert rebuttal report served in this action and those expressed in his deposition, including his analysis of Dr. Cahoon's damages calculation, the value that the plaintiffs previously agreed to assign to RPA's contributions to GA21 corn, the reasonable royalty rate for the patents-in-suit, and the amount of plaintiffs' damages if one or more of the patents-in-suit are found to be valid and infringed. Mr. Jarosz may also testify in response or rebuttal to any other damages or related issues raised by plaintiffs.

5. Christopher Spadea

CRA International
1155 Avenue of the Americas
18th Floor
New York, New York 10036

6. Eric Ward

Cropsolution, Inc.
598 Airport Boulevard, Suite 900
Morrisville, NC 27560

Dr. Ward is CEO of Cropsolution, Inc. His qualifications are fully set forth in his curriculum vitae, which is attached to his expert report. Dr. Ward is expected to testify on the opinions and statements in his expert reports served in this action and those expressed in his deposition, including how the GA21 event was created; the '835 patent

fails to disclose the best method for practicing the claimed invention; that it would take undue experimentation to obtain a gene that, when expressed, would confer glyphosate resistance to monocot plant cells and plants, including corn as of the effective filing dates of the '835, '880, and '863 patents; the *aroA* and petunia EPSPS genes could not be used as selectable markers in corn; the level of skill in the art; Syngenta never performed process steps (i)-(iii) of claim 1 of either the '880 or '863 patents; and Syngenta's GA21 corn products consist of generations beyond the R1-R3 generations contemplated by the '880 patent. Dr. Ward may also testify in rebuttal to any infringement, validity, or related issue raised by Plaintiffs. As an expert on herbicides, herbicide resistance, and genetic engineering, Dr. Ward may provide tutorials on those subjects.

# EXHIBIT 10

# EXHIBIT 10

## PLAINTIFFS' DISCOVERY DESIGNATIONS

| DATE | DISCOVERY |
|------|-----------|
| 01/24/05 | Syngenta's Response to Monsanto's First Requests for Production (1-56) |
| 01/31/05 | Syngenta's Response to Monsanto's First Set of Interrogatories (Nos. 1-7) |
| 02/02/05 | Syngenta's Response to DEKALB's First Set of Interrogatories (Nos. 1-3) |
| 02/02/05 | Syngenta's Response to DEKALB's First Requests for Production (1-85) |
| 03/16/05 | Syngenta's Response to Monsanto's Second Requests for Production (57-77) |
| 03/24/05 | Syngenta's Response to Monsanto's Second Set of Interrogatories (No. 8) |
| 03/24/05 | Syngenta's Response to DEKALB's Second Set of Interrogatories (Nos. 4-13) |
| 04/20/05 | Syngenta's Response to Monsanto's Third Set of Interrogatories (No. 9) |
| 04/25/05 | Syngenta's Supplemental Response to Monsanto's First Set of Interrogatories (No. 1) |
| 04/25/05 | Syngenta's Supplemental Response to Monsanto's Second Set of Interrogatories (No. 8) |
| 04/25/05 | Syngenta's Supplemental Response to DEKALB's First Set of Interrogatories (No. 1) |
| 04/25/05 | Syngenta's Supplemental Response to DEKALB's Second Set of Interrogatories (No. 13) |
| 04/25/05 | Syngenta's Response to DEKALB's Third Set of Interrogatories (No. 14) |
| 05/20/05 | Syngenta's Second Supplemental Response to DEKALB's Second Set of Interrogatories (No. 13) |
| 06/02/05 | Syngenta's Second Supplemental Response to DEKALB's First Set of Interrogatories (No. 1) |
| 06/02/05 | Syngenta's Supplemental Response to DEKALB's Third Set of Interrogatories (No. 14) |
| 06/23/05 | Syngenta's Response to Monsanto's Third Requests for Production (78-83) |
| 06/27/05 | Syngenta's Response to DEKALB's Fourth Set of Interrogatories (No. 15) |
| 07/13/05 | Syngenta's Supplemental Response to DEKALB's First Set of Interrogatories (No. 2) |
| 07/25/05 | Syngenta's Supplemental Response to DEKALB's Second Set of Interrogatories (Nos. 6 & 10) |
| 09/01/05 | Syngenta's Supplemental Response to DEKALB's Fourth Set of Interrogatories (No. 15) |
| 09/16/05 | Syngenta's Supplemental Response to Monsanto's First Set of Interrogatories (No. 4) |
| 10/03/05 | Syngenta's Response to Monsanto's Fifth Set of Interrogatories (No. 11) |
| 10/18/05 | Syngenta's Second Supplemental Response to Monsanto's First Set of Interrogatories (Nos. 1-7) |
| 10/18/05 | Syngenta's Second Supplemental Response to Monsanto's Second Set of Interrogatories (No. 8) |
| 10/18/05 | Syngenta's Response to Monsanto's Fourth Set of Interrogatories (No.10) |
| 10/18/05 | Syngenta's Response to Monsanto's Sixth Set of Interrogatories (No. 12-17) |
| 10/18/05 | Syngenta's Third Supplemental Response to DEKALB's First Set of Interrogatories (No. 1) |
| 10/18/05 | Syngenta's Second Supplemental Response to DEKALB's Second Set of Interrogatories (Nos. 6 & 10) |
| 10/18/05 | Syngenta's Third Supplemental Response to DEKALB's Second Set of Interrogatories (No. 13) |
| 10/18/05 | Syngenta's Response To Monsanto's Request for Admission (1-110) |
| 10/18/05 | Syngenta's Response to Monsanto's Fourth Requests for Production (84-85) |
| 12/06/05 | Syngenta's Second Supplemental Response to DEKALB's Fourth Set of Interrogatories (No. 15) |

# EXHIBIT 11

# EXHIBIT 11

## DEFENDANTS' DISCOVERY DESIGNATIONS

| DATE SERVED | DESCRIPTION |
|---|---|
| 10/06/2004 | Syngenta's First Set of Requests for Admission (Nos. 1-21) and Syngenta's First Set of Document Requests (No. 1) |
| 10/06/2004 | Syngenta's First Set of Interrogatories (Nos. 1-4) and Syngenta's Second Set of Document Requests (No. 2) |
| 11/29/2004 | Monsanto's Response to Syngenta's First Set of Document Requests (No. 1) |
| 11/29/2004 | Monsanto's Response to Syngenta's Second Set of Document Requests (No. 2) |
| 11/29/2004 | Monsanto's Response to Syngenta's Third Set of Document Requests (Nos. 3-7) |
| 11/29/2004 | Monsanto's Response to Syngenta's First Set of Requests for Admission (Nos. 1-21) |
| 11/29/2004 | Monsanto's Responses to Syngenta's First Set of Interrogatories (Nos. 1-4) |
| 01/10/2005 | Monsanto's First Supplemental Responses to Syngenta's First Set of Interrogatories (Nos. 1-4) |
| 01/24/2005 | DeKalb's Responses to Syngenta's First Set of Interrogatories (Nos. 1-5) with exhibits |
| 01/31/2005 | Syngenta's Response to Monsanto's First Set of Interrogatories (Nos. 1-7) |
| 02/07/2005 | Monsanto's Response to Syngenta's Fourth Set of Document Requests (Nos. 8-180) |
| 02/08/2005 | Monsanto's Supplemental Response to Syngenta's First Set of Documents Requests (No. 1) |
| 02/08/2005 | Monsanto's Supplemental Response to Syngenta's Second Set of Documents Requests (No. 2) |
| 02/08/2005 | Monsanto's Amended Response to Syngenta's Third Set of Document Requests (Nos. 3-7) |
| 02/09/2005 | DeKalb's Response to Syngenta's First Set of Requests for the Production of Documents and Things (Nos. 1-180) |
| 03/21/2005 | Monsanto's Response to Syngenta's Fifth Set of Document Requests (Nos. 181-194) |
| 03/21/2005 | DeKalb's First Supplemental Responses to Syngenta's Interrogatories Nos. 1 & 2 with proof of service |
| 03/28/2005 | Monsanto's Second Supplemental Responses to Syngenta's First Set of Interrogatories (Nos. 1-4) |
| 04/15/2005 | Monsanto's Responses to Syngenta's Second Set of Interrogatories (Nos. 5-9) |
| 04/15/2005 | Monsanto's Response to Syngenta's Second Set of Requests for Admission (Nos. 22-23) |
| 04/18/2005 | DeKalb's Responses to Syngenta's Second Set of Interrogatories (Nos. 6-12) |
| 04/21/2005 | DeKalb's Second Supplemental Responses to Syngenta's Interrogatories (Nos. 1 & 2) |
| 04/27/2005 | Monsanto's Third Supplemental Responses to Syngenta's First Set of Interrogatories (Nos. 1-4) |
| 05/02/2005 | DeKalb's Responses to Syngenta's First Set of Requests for Admission (Nos. 1-17) |
| 05/02/2005 | DeKalb's Responses to Syngenta's Third Set of Interrogatories (Nos. 13-16) |
| 05/31/2005 | Monsanto's Response to Syngenta's Sixth Set of Document Requests (No. 195) |
| 06/06/2005 | DeKalb's Response to Syngenta's Second Set of Document Requests (No. 181) |
| 08/02/2005 | Monsanto's First Supplemental Responses to Syngenta's Second Set of Interrogatories (Nos. 5-9) |
| 08/10/2005 | Monsanto's First Amended Response to Syngenta's Interrogatory (No. 8) |
| 08/17/2005 | DeKalb's Supplemental Response to Syngenta's Second Set of Interrogatories (Nos. 6-12) |
| 10/18/2005 | Plaintiff's Objections and Responses to Syngenta's Third Set of Interrogatories (Nos. 10-13) |
| 10/18/2005 | Plaintiffs' Objections and Responses to Syngenta's Third Set of Requests for Admission |

|  | (Nos. 24-130) |
|---|---|
| 10/18/2005 | Plaintiffs' Objections and Responses to Syngenta's Fourth Set of Interrogatories (Nos. 14-34) |
| 10/18/2005 | DeKalb's Supplemental Responses to Syngenta's Interrogatory (Nos. 8-10 ) |
| 10/18/2005 | Monsanto's Supplemental Responses to Syngenta's Interrogatory (Nos. 5, 6, 8, and 9) |
| 10/18/2005 | Monsanto's Fourth Supplemental Response to Syngenta's Interrogatory No. 3 and First Supplemental Response to Syngenta's Interrogatory No. 4 |
| 10/18/2005 | DeKalb's Third Supplemental Response to Syngenta's Interrogatories (Nos. 1 & 2 ) |
| 11/15/2005 | Plaintiffs' Supplemental Responses to Syngenta's Interrogatory (Nos. 31-32) |
| 11/18/2005 | Monsanto's Amended Response to Syngenta's Interrogatory (No. 9) |
| 11/18/2005 | DeKalb's Amended Responses to Syngenta's Interrogatory (Nos. 9-10) |

# EXHIBIT 12

## EXHIBIT 12

### PLAINTIFFS' INTENDED PROOFS

### INFRINGEMENT

**The '835 Patent**

1.      Plaintiffs intend to establish that making, using, selling, offering for sale or importing Defendants' GA21 corn products literally infringes one or more of claims 1, 5 and 6 of the '835 patent.

2.      Plaintiffs intend to establish that making, using, selling, offering for sale or importing Defendants' GA21 corn products infringes one or more of claims 1, 5 and 6 of the '835 patent under the doctrine of equivalents.

3.      Plaintiffs intend to establish that Defendants directly infringe one or more of claims 1, 5 and 6 of the '835 patent by making, using, selling, offering for sale or importing Defendants' GA21 corn products.

4.      Plaintiffs intend to establish that Defendants induce others to infringe one or more of claims 1, 5 and 6 of the '835 patent with regard to Defendants' GA21 corn products.

5.      Plaintiffs intend to establish that Defendants contributorily infringe one or more of claims 1, 5 and 6 of the '835 patent with regard to Defendants' GA21 corn products.

**The '880 Patent**

6.      Plaintiffs intend to establish that making, using, selling, offering for sale or importing Defendants' GA21 corn products literally infringes one or more of claims 4-9 of the '880 patent.

7.    Plaintiffs intend to establish that Defendants directly infringe one or more of claims 4-9 of the '880 patent by making, using, selling, offering to sell or importing Defendants' GA21 corn products.

8.    Plaintiffs intend to establish that Defendants induce others to infringe one or more of claims 4-9 of the '880 patent with regard to Defendants' GA21 corn products and the process by which they were made.

9.    Plaintiffs intend to establish that Defendants contributorily infringe one or more of claims 4-9 of the '880 patent with regard to Defendants' GA21 corn products and the process by which they were made.

**The '863 Patent**

10.    Plaintiffs intend to establish that making, using, selling, offering for sale or importing Defendants' GA21 corn products literally infringes one or more of claims 5 and 6 of the '863 patent.

11.    Plaintiffs intend to establish that Defendants directly infringe one or more of claims 5 and 6 of the '863 patent by making, using, selling, offering to sell or importing Defendants' GA21 corn products.

12.    Plaintiffs intend to establish that Defendants induce others to infringe one or more of claims 5 and 6 of the '863 patent with regard to Defendants' GA21 corn products and the process by which they were made.

13.    Plaintiffs intend to establish that Defendants contributorily infringe one or more of claims 5 and 6 of the '863 patent with regard to Defendants' GA21 corn products and the process by which they were made.

**The Patents-in-Suit**

14.    Plaintiffs intend to establish that the Defendants' infringement of the patents-in-suit was and continues to be willful.

## VALIDITY

The following list of issues regarding validity of the patents-in-suit are believed to be a comprehensive list of Defendants' contentions, but Plaintiffs' identification of this list of issues should not be construed to mean that Plaintiffs agree that these issues are in dispute or that they concern a legally supportable invalidity defense.    Each of the following issues must be proven by clear and convincing evidence based on Defendants' burden of proof for proving invalidity.

**The '835 Patent**

15.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is anticipated under 35 U.S.C. § 102(e) by United States Patent No. 5,728,925.

16.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that the specification of the '835 patent fails to adequately describe chloroplast transit peptides ("CTPs") and EPSPS such that any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112.

17.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that as of any of the filing dates of the '835 patent, the specification did not enable one of ordinary skill in the art to transform monocots,

including corn, and therefore any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is invalid for lack of enablement under 35 U.S.C § 112.

18.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that the specification did not enable one of ordinary skill in the art to practice Example 8 such that any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is invalid for lack of enablement under 35 U.S.C § 112.

19.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that any of claims 1, 5 and 6 of the '835 patent as those claims are interpreted by the Court is invalid for failure to disclose the best mode of practicing the invention under 35 U.S.C. § 112 because as of the July 7, 1986 filing date, the coding sequence for the mutant $E. coli$ SM-1 EPSPS in pMON 542 with a $Gly^{96}$ to $Ala^{96}$ mutation was the best mode known by the inventors for the practice of the invention.

**The '880 Patent**

20.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that any of claims 4-9 of the '880 patent as those claims are interpreted by the Court is anticipated under 35 U.S.C § 102(b) by the grant application of Drs. Klein and Sanford.

21.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that the subject matter of any of claims 4-9 of the '880 patent was actually derived from Drs. Klein and Sanford such that any of claims 4-9 of

the '880 patent as those claims are interpreted by the Court is invalid under 35 U.S.C. § 102(f).

22.     Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that Michael Spencer was the prior inventor under 35 U.S.C. § 102(g) of the subject matter of any of claims 4-9 of the '880 patent as those claims are interpreted by the Court.

23.     Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that based on his work between 1986 and 1990, Dr. Theodore Klein was the prior inventor under 35 U.S.C. § 102(g) of the subject matter of any of claims 4-9 of the '880 patent as those claims are interpreted by the Court.

24.     Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that the work underlying the 1990 paper by Dr. Fromm et al. was a prior invention under 35 U.S.C. § 102(g) of the subject matter of any of claims 4-9 of the '880 patent as those claims are interpreted by the Court.

25.     Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that any of claims 4-9 of the '880 patent as those claims are interpreted by the Court would have been obvious to one of ordinary skill in the relevant art under 35 U.S.C. § 103 in view of Klein 1988a/1988b.

26.     Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that the specification of the '880 patent did not enable one of ordinary skill in the art to obtain a herbicide resistance gene to produce a herbicide-resistant fertile transgenic corn plant such that any of claims 4-9 of the '880

patent as those claims are interpreted by the Court is invalid for lack of enablement under 35 U.S.C § 112.

**The '863 Patent**

27.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that any of claims 5 and 6 of the '863 patent as those claims are interpreted by the Court is anticipated under 35 U.S.C. § 102(e) by United States Patent No. 6,040,497.

28.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that the specification of the '863 patent fails to adequately describe glyphosate resistance genes such that any of claims 5 and 6 of the '863 patent as those claims are interpreted by the Court is invalid for failure to satisfy the written description requirement of 35 U.S.C § 112.

29.    Plaintiffs intend to establish that Defendants have not met their burden of proving by clear and convincing evidence that the specification of the '863 patent did not enable one of ordinary skill in the art to obtain a glyphosate resistance gene to produce a glyphosate-resistant fertile transgenic corn plant such that any of claims 5 and 6 of the '863 patent as those claims are interpreted by the Court is invalid for lack of enablement under 35 U.S.C § 112.

## **RELIEF**

30.    Plaintiffs intend to establish that they are entitled to injunctive relief under 35 U.S.C. § 283 in the form of an injunction barring Defendants from making, using, importing, selling or offering for sale any products embodying the GA21 corn event or

making, using, importing, selling or offering for sale any other products that would otherwise infringe the patents-in-suit.

31.    Plaintiffs intend to establish that they should recover damages for infringement of one or more of claims 1, 5 and 6 of the '835 patent, claims 4-9 of the '880 patent or claims 5 and 6 of the '863 patent under 35 U.S.C. § 284 in the form of a reasonable royalty, calculated pursuant to the factors set forth in *Georgia-Pacific Corporation v. U.S Plywood-Champion Papers Inc.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).

32.    Plaintiffs intend to establish that a reasonable royalty rate for the GA21 corn products sold by Defendants is $8.10 per unit and $9.45 (45% times the $21 Agrisure GT net royalty) for GA21 corn products sold by Defendants' third party licensees.

33.    Plaintiffs intend to establish that they should recover total damages in the form of a reasonable royalty in an amount no less than $_____**[TO BE PROVIDED]** as a result of Defendants' infringement of the patents-in-suit.

34.    Plaintiffs intend to establish that they should recover prejudgment interest in an amount to be determined by the Court.

35.    Plaintiffs intend to establish that they should recover treble damages pursuant to 35 U.S.C. § 284 due to the willful infringement of the patents-in-suit by the Defendants.

36.    Plaintiffs intend to establish that this is an exceptional case and that Plaintiffs should recover their attorney fees and expenses, including expert witness expenses, pursuant to 35 U.S.C § 285 or the Court's equitable power, in an amount to be determined by the Court.

# EXHIBIT 13

# EXHIBIT 13

Civil Action No. 04-305-SLR (Lead Case)

<strong><u>SYNGENTA'S BRIEF STATEMENT OF INTENDED PROOFS</u></strong>

Syngenta respectfully submits the following list of what it intends to prove at trial. In addition to the items identified below, Syngenta intends to prove the matters identified in its interrogatory answers, expert reports (opening and rebuttal), and depositions of its experts. Syngenta also intends to offer proof of the issues of fact and issues of law identified in the parties' Pretrial Order. Syngenta also intends to offer proof to rebut the items on which Monsanto/DeKalb offers proof, and Syngenta reserves the right to amend and supplement this statement in response to Monsanto/DeKalb's pretrial activities.

As to the issues to which Monsanto/DeKalb has the burden of proof, Syngenta reserves the right to supplement this statement after receipt of Monsanto/DeKalb's statement of intended proofs. Regarding proofs to be presented by expert testimony, Syngenta incorporates by reference the reports of its experts.

**I.    '835 Patent**

Syngenta will offer proofs regarding:

**A.    Non-Infringement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-infringement)**

1.    Syngenta's GA21 corn products do not literally meet each and every limitation of claims 1 and 5-6 of the '835 patent, as those claims are properly construed, because Syngenta's GA21 corn product does not contain a naturally occurring CTP.[3]

---

[3] Syngenta filed a motion to preclude Monsanto/DeKalb from presenting expert testimony concerning alleged infringement of the '835 patent under the doctrine of equivalents. Consequently, this issue is not addressed in Syngenta's Statement of

2.    Syngenta has not induced or contributed to the infringement of claims 1 and 5-6 of the '835 patent through its manufacture, use, and sale of its GA21 corn products because there is no evidence of direct infringement.

**B.    Non-Enablement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-enablement)**

3.    Persons skilled in the art as of the July 7, 1986 filing date of the '835 patent could not practice the full scope of claims 1 and 5-6 of the '835 patent without undue experimentation, because (1) it is undisputed that persons skilled in the art could not transform monocot plant cells with a foreign gene as of the filing date of the patent; (2) the '835 patent provides no working examples in monocot plant cells or plants; and (3) claims 1 and 5-6 specifically require that the claimed gene functions to enhance the glyphosate resistance of all types of plant cells, including monocots, transformed with the gene.

4.    Even assuming persons skilled in the art could transform monocot plant cells as of July 1986, persons of ordinary skill in the art possessing the teachings described in the '835 patent could not make and use genes capable of imparting glyphosate resistance to monocot plant cells as required by claims 1 and 5-6 without undue experimentation.

5.    Persons skilled in the art as of the July 7, 1986 filing date of the '835 patent could not make and use a CTP/EPSPS fusion polypeptide within the scope of claims 1 and 5-6 of the '835 patent without undue experimentation, because the only example

---

Intended Proofs.  Syngenta reserves the right to supplement this Statement should the Court deny Syngenta's motion.

describing such a fusion polypeptide, Example 8, does not disclose the specific mutation required to practice the example.

### C.    Anticipation

6.    Monsanto cannot antedate the '925 patent because (1) claims 1 and 5-6 of the '835 patent recite a CTP/EPSPS fusion polypeptide; (2) the '925 patent discloses as of its July 1985 filing date a CTP/EPSPS fusion polypeptide; (3) Monsanto tried and failed in May 1985 to obtain glyphosate resistance using a CTP/EPSPS fusion polypeptide; and (4) Monsanto admitted in the '390 application filed in August 1985 that it was "unknown" whether a CTP/EPSPS fusion polypeptide would work.

7.    The '925 patent describes each element of claims 1 and 5-6 of the '835 patent and allows one skilled in the art to practice the subject matter claimed in the '835 patent in dicot plant cells and plants.

### D.    Written Description

8.    The inventors of the '835 patent did not have possession of the genus of all possible CTPs that fall within the scope of claims 1 and 5-6 of the '835 patent as of the July 1986 filing date of the '835 patent.

9.    As of the July 7, 1986 filing date of the '835 patent, there was no structure-function relationship between the amino acid sequence of different CTPs and a CTP's ability to transport an EPSPS protein to the chloroplast was not understood.

10.    The inventors of the '835 patent did not have possession of any DNA sequence that falls within the scope of claims 1 and 5-6 of the '835 patent as of the July

1986 filing date that, when expressed, will enhance the glyphosate resistance of a monocot plant cell.

### E.     Best Mode

11.   The glycine to alanine mutation encoded by construct pMON542 and omitted from the description in Example 8 of the '835 patent was known by at least one of the inventors of the '835 patent to be the best way of obtaining glyphosate resistance in a plant cell as set forth in claims 1 and 5-6 of the '835 patent as of July 7, 1986.

12.   The '835 patent does not disclose the glycine to alanine mutation encoded by construct pMON542.

## II.     '880 Patent

Syngenta will offer proofs regarding:

### A.     Non-Infringement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-infringement)

13.   If necessary, Syngenta will establish at trial that it has not performed each and every step of process claims 4-9 of the '880 patent during the patent term in connection with Syngenta's manufacture, use, and sale of its GA21 corn products because Syngenta never performed the process steps (i)-(iii), which are incorporated by reference in the asserted claims.  These facts are not disputed by the parties.  The dispute between the parties primarily concerns whether claim 4 is a dependent claim.

14.   Syngenta has not induced or contributed to the infringement of claims 4-9 of the '880 patent through its manufacture, use, and sale of its GA21 corn products.

### B.    Prior Invention

15.  Dr. Theodore Klein and his collaborators conceived of the method for transforming fertile transgenic herbicide-resistant corn claimed in the '880 patent before the invention of Dr. Ronald Lundquist and Mr. David Walters.

16.  Dr. Klein and his collaborators diligently reduced this method to practice, and ultimately obtained fertile transgenic herbicide-resistant corn.

17.  Mr. Michael Spencer and his collaborators at DeKalb conceived of the method for transforming fertile transgenic herbicide-resistant corn claimed in the '880 patent before the invention of Dr. Ronald Lundquist and Mr. David Walters.

18.  Mr. Spencer and his collaborators diligently reduced this method to practice, and ultimately obtained fertile transgenic herbicide-resistant corn in December 1989, before the January 22, 1990 filing date of the '880 patent.

### C.    Derivation and Inventorship

19.  Dr. Theodore Klein and Dr. John Sanford conceived of the microprojectile bombardment method for transforming fertile transgenic herbicide-resistant corn claimed in the '880 patent.

20.  Drs. Klein and Sanford disclosed this microprojectile bombardment method to Dr. Ronald Lundquist prior to the January 22, 1990 priority date of the '880 patent.

### D.    Anticipation

21.  Dr. Theodore Klein's February 26, 1986 USDA Grant Application describes each element of claims 1 and 4-9 of the '880 patent.

22. If necessary, Syngenta will establish that the Grant Application was publicly available as of 1987.

### E.    Obviousness

23. Klein 1988(a) and Klein 1988(b) render the subject matter claimed in claims 4-9 of the '880 patent obvious to persons of ordinary skill in the art, particularly in light of the near simultaneous achievement of fertile transgenic herbicide-resistant corn by DeKalb (Mr. Michael Spencer and collaborators) and the USDA (Dr. Theodore Klein and collaborators).

### F.    Non-Enablement

24. Persons skilled in the art, as of the January 22, 1990 filing date of the '880 patent, could not practice the full scope of claims 4-9 of the '880 patent without undue experimentation, where (1) the claims broadly recite the use of any selectable marker resistance gene to select transformed corn cells; (2) the inventors only used the antibiotic hygromycin as a selectable agent in corn; and (3) DeKalb alleges that other selectable markers would not have worked and that the use of the hygromycin resistance gene was the key to success.

## III.    '863 Patent

Syngenta will offer proofs regarding:

### A.    Non-Infringement (Pending the Court's ruling on Syngenta's motion for summary judgment of non-infringement)

25. If necessary, Syngenta will establish at trial that it has not performed each and every step of process claims 5 and 6 of the '863 patent during the patent term in connection with Syngenta's manufacture, use, and sale of its GA21 corn products

because Syngenta never performed process steps (i)-(iii), which are incorporated by reference into the asserted claims. These facts are not disputed by the parties. The parties also do not dispute that claims 5 and 6 are dependent claims.

26. Syngenta has not induced or contributed to the infringement of claims 5 and 6 of the '863 patent through its manufacture, use, and sale of its GA21 corn products because there is no evidence of direct infringement.

### B.    Written Description

27. The inventors of the '863 patent did not have possession of any DNA sequence as required by claims 5-6 of the '863 patent as of the filing date of the '863 patent that, when expressed, imparts glyphosate resistance in corn.

### C.    Non-Enablement

28. Persons skilled in the art as of the January 22, 1990 filing date of the '863 patent could not practice the full scope of claims 5 and 6 of the '863 patent without undue experimentation, because persons of ordinary skill in the art could not make and use, without undue experimentation, a gene capable of imparting glyphosate resistance in a fertile transgenic corn plant, which would be required to practice the claimed process.

### D.    Anticipation

29. The '497 patent and the work described therein anticipates claims 5-6 of the '863 patent.

**IV.    Damages (Pending the Court's ruling on Syngenta's motion to bifurcate the issues of willful infringement and damages)**

30.    Whether any reasonable royalty damage award must be limited to an apportionment of the value contributed to the accused product by patent(s) found valid and infringed such that the damage award does not unjustly compensate plaintiffs for any portion of value contributed to the accused product by other technology components.

31.    Whether plaintiffs are entitled to any damages and the amount of any such damages.

32.    Whether plaintiffs are entitled to injunctive relief and the scope of any such injunctive relief.

33.    Whether plaintiffs are entitled to prejudgment interest in an amount to be determined by the Court.

34.    Whether plaintiffs are entitled to any enhanced damages, and whether any damages should be trebled.

35.    Whether defendants should recover any attorney fees or expenses pursuant to 35 U.S.C. § 285 or the Court's equitable power.

# EXHIBIT 14

## EXHIBIT 14

### PLAINTIFFS' LIST OF ISSUES TO BE RAISED
### AT THE PRETRIAL CONFERENCE

Plaintiffs may raise the following issues at the May 11, 2006 Pretrial Conference.  To the extent that additional issues are discovered, Plaintiffs will promptly notify Defendants.

1.      Exclude any mention of litigation between Rhone Poulenc AgroChemie and DeKalb and Monsanto in Greensboro, North Carolina (2000 U.S. Dist. LEXIS 21330, No. 1:97 CV 1138 (M.D.N.C., Feb. 8, 2000)) and Plant Genetic Systems, N.V. v. DeKalb Genetics Corp., 315 F.3d 1335 (Fed. Cir. 2003) including, but not limited to, any mention by Defendants' expert, Mr. Jarosz, of a finding of fraud or a judgment for punitive damages against DeKalb in *Rhone-Poulenc Agro S.A. v. Monsanto Co. and DeKalb Genetics Corp*, 2000 U.S. Dist. LEXIS 21330, No. 1:97 CV 1138 (M.D.N.C., Feb. 8, 2000) and any testimony from Defendants' experts Eric Ward and Barry Bruce regarding *Rhone-Poulenc Agro S.A. v. Monsanto Co. and DeKalb Genetics Corp*, 2000 U.S. Dist. LEXIS 21330, No. 1:97 CV 1138 (M.D.N.C., Feb. 8, 2000); and any testimony from Defendants' expert Paul Christou regarding *Rhone-Poulenc Agro S.A. v. Monsanto Co. and DeKalb Genetics Corp*, 2000 U.S. Dist. LEXIS 21330, No. 1:97 CV 1138 (M.D.N.C., Feb. 8, 2000) and Plant Genetic Systems, N.V. v. DeKalb Genetics Corp., 315 F.3d 1335 (Fed. Cir. 2003) as irrelevant to any defense properly before the Court, unduly prejudicial to Plaintiffs, and confusing to the jury.

2.      Exclude any mention of any efforts by Monsanto to purchase Garst Seeds, Inc. and/or Golden Harvest Seeds, Garwood Seed Co., Golden Seed Co., L.L.C., Sommer Bros. Seed Co., Thorp Seed Co., and JC Robinson Seeds, Inc. (collectively "the Golden Harvest Companies") as irrelevant to any defense properly before the Court, unduly prejudicial to Plaintiffs and confusing to the jury.

3.    Exclude any mention or evidence of Defendants' "good faith" or state of mind in deciding to make, use, sell, offer for sale, license and import GA21 corn products, induce others to infringe to make, use, sell, offer for sale, license and import GA21 corn products, or contribute to the infringement of others in light of Defendants' knowledge of the patents-in-suit to the extent that Defendants' "good faith" is in any way based on advice from Defendants' counsel including, but not limited to, advice regarding infringement and/or the validity of any of the patents-in-suit because Defendants have refused to provide any discovery into their "good faith" claiming attorney-client privilege and have refused to produce their opinions of counsel.

4.    Exclude any mention or evidence regarding the unenforceability, ineffectiveness or invalidity of licenses from Monsanto to Garst and Golden Harvest related to GA21 corn as Defendants have prevented any discovery on this issue claiming attorney-client privilege.

5.    Exclude any mention of the 1985 Gordon Conference, Dr. Shah's presentation at that conference as potential invalidating prior art, and Dr. Stalker's notes about Dr. Shah's presentation at that conference as 1) it was cited in support of Defendants' contention that the '835 patent was invalid as obvious and Defendants have now represented that they have dropped their obviousness defense, 2) it is thus irrelevant to any defense properly before the Court and therefore prejudicial to Plaintiffs, and 3) it is confusing to the jury.

6.    Exclude any mention of the Covenant Not To Sue that Monsanto provided to Defendants regarding United States Patent No. 5,188,642 ("the '642 patent") as irrelevant, because the '642 patent is not at issue in this case.

7.    Whether jurors should be permitted to ask questions during the case presentation as this Court has recently allowed.

8.    Whether SYN-AT001938548-SYN-AT001938550 and the other documents that are the

subject of Monsanto's Motion to Compel in the antitrust case, *Syngenta Seeds, Inc. v. Monsanto Company and Monsanto Technology LLC*, C.A. No.:04-908-SLR, will be available for Plaintiffs to use at trial. (D.I. 243, 282 and 294)

9.    Whether the Court will permit the parties to play excerpts from deposition testimony during opening statements.

10.    A date certain for the reduction of the names on the parties' witness lists.

11.    The supplemental production of sales information for GA21 and NK603 corn products sold by the parties and the parties' licensees.

12.    Plaintiffs reserve the right to present additional matters in the event any such issues arise.

# EXHIBIT 15

**EXHIBIT 15**

Civil Action No. 04-305-SLR (Lead Case)

**SYNGENTA'S LIST OF MISCELLANEOUS ISSUES THAT SYNGENTA
WISHES TO DISCUSS AT THE PRETRIAL CONFERENCE**

Syngenta wishes to discuss the following issues at the pretrial conference:

1.      Whether the issue of willfulness and damages should be bifurcated from the liability phase of the trial due to the likelihood of jury confusion and prejudice, as set forth in Syngenta's motion to bifurcate filed on April 28, 2006.

2.      Whether Monsanto/DeKalb should be precluded from stating in its opening statement, closing statement, and/or presenting testimony at trial that Syngenta is not relying on opinions of counsel to rebut Monsanto/DeKalb's willfulness contentions, as any such statements or testimony will create an undue inference that no opinions were obtained by Syngenta prior to commercializing GA21 corn.

3.      Whether Monsanto/DeKalb should be precluded from presenting evidence and/or expert testimony directed to infringement of the '835 patent under the doctrine of equivalents based on Monsanto/DeKalb's failure to adequately plead and provide discovery on its contentions of infringement under the doctrine of equivalents.  (Subject of D.I. #'s 221 and 280.)

4.      Whether Monsanto/DeKalb should be precluded from arguing or stating that NK603 performs better than GA21 or is otherwise an "improvement" over GA21 on the basis that Monsanto/DeKalb failed to provide discovery on this issue.

5.      Whether Monsanto/DeKalb should be precluded from mentioning that Drs. Horsch, Fraley, and Rogers received the Presidential National Medal of Technology

for their work in *Agrobacterium* transformation methods as there is no correlation between receipt of the medal and the inventions claimed in the patents-at-issue.

6.      Whether exhibits previously admitted into evidence during a trial in which Monsanto and/or DeKalb were a party are *prima facie* authentic.

7.      Whether the Court will permit the parties to read into the record responses to Requests for Admission and Interrogatories.

8.      Whether the Court will follow a procedure for protecting trade secret information discussed during trial such as, for example, Syngenta's inbred and hybrid codes.

9.      Syngenta reserves the right to present additional matters in the event any such issues arise.