IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYNGENTA SEEDS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No.: 04-305-SLR (Consol.) |
| ) | |
| MONSANTO COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**NOTICE OF DEPOSITION**

TO:   John J. Rosenthal, Esquire
      Howrey LLP
      1299 Pennsylvania Ave., N.W.
      Washington, DC 20004

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc. (collectively "Syngenta"), will take the deposition of the corporate designee(s) of Monsanto Company and Monsanto Technology LLC, most knowledgeable about the matters set forth in Attachment A on June 16, 2006, at 9:00 a.m., at the offices of Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022-6069, or an alternate location and time to be negotiated by the parties.

The deposition will be taken upon oral examination before a court reporter or other person authorized by law to administer oaths, and may be recorded by stenographic means and/or by videotape. The deposition will be taken for purposes of discovery, for use as evidence in this matter, and for such purposes as permitted under the Federal Rules of Civil Procedure.

1

The deposition will continue from day to day until completed or adjourned by agreement of counsel. You are invited to attend and cross-examine.

Dated: May 24, 2006

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Seth J. Reidenberg (No. 3657)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
sreidenberg@ycst.com

*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2634
(212) 508-8000

## ATTACHMENT A

### I.   Definitions

1.   The term "Monsanto" shall mean Monsanto Company and Monsanto Technology LLC and any of their present or former subsidiaries, divisions, agents, employees directors, officers, trustees, and attorneys, or any other person or entity acting in concert with Monsanto Company, directly or indirectly, including but not limited to American Seeds, Inc., Asgrow Seed Company, Inc., Channel Bio Corp., Corn States Hybrid Service LLC, DeKalb Genetics Corporation, NC+ Hybrids, Inc., and Holden's Foundation Seeds, Inc.

2.   The term "Monsanto Licensee" shall mean any individual or entity who has executed a Monsanto Trait License or Licensee Incentive Agreement with Monsanto.

3.   The term "Monsanto Trait License" shall mean all executed versions, amendments, derivations, and restatements of the Roundup Ready GA21 Corn License and Seed Services Agreement, Roundup Ready NK603 Corn License and Seed Services Agreement, YieldGard Corn License and Seed Services Agreement, CRW Insect Control Corn License and Seed Services Agreement, and Roundup Ready Soybean License and Seed Services Agreement between Monsanto and any Monsanto Licensee. All responses and information shall be given separately for each applicable license.

4.   The term "Defined Payment" shall mean, with respect to each Monsanto Licensee, any and all defined, periodic, or milestone payments referred to in Section 4.01 of the Roundup Ready (GA21 or NK603) Corn License and Seed Services Agreement, Section 4.01 of the YieldGard Corn License and Seed Services Agreement, Section 4.01 of the CRW Insect

3

Control Corn License and Seed Services Agreement, and Section 4 of the Licensee Incentive Agreement.

5. The term "Licensee Incentive Agreement" shall mean all executed versions, amendments, derivations, and restatements of the Licensee Incentive Agreement, including but not limited to, the Amended and Restated Licensee Incentive Agreement and the Licensee Incentive Agreement II, between Monsanto and any Monsanto Licensee.

6. The term "Seed Service Fee" shall refer collectively to and responses shall be given separately for the following:

   a. Bonus Seed Services Fee as set forth in Section 4.02 and Appendix E of the Roundup Ready (GA21 or NK603) Corn License and Seed Services Agreement;

   b. Bonus Seed Services Fee as set forth in Section 4.02 and Appendix E of the YieldGard Corn License and Seed Services Agreement;

   c. Product Growth Incentive Seed Services Fee as set forth in Section 4.02 and Appendix E of the YieldGard Corn License and Seed Services Agreement;

   d. Production Incentive Seed Services Fee as set forth in Section 4.02 and Appendix E of the YieldGard Corn License and Seed Services Agreement; and

   e. Incremental Seed Services Fee as set forth in Sections 4.01(b), 4.01(c), 4.01(d), and 4.01(e) of the Licensee Incentive Agreement.

7. The term "relevant product" shall mean, and responses shall be given separately for each of the following:

4

a. herbicide-tolerant corn traits (including GA21, NK603, Liberty Link, and Clearfield);

b. ECB-resistant corn traits (including Bt11, Mon810, and Herculex);

c. CRW-resistant corn traits (including Mon863);

d. glyphosate-tolerant soybean traits;

e. foundation corn seed;

f. hybrid corn seed; and

g. combinations or stacks of two or more corn traits.

8. The scope of the matters of the deposition shall be the period from January 1, 1996 to the present.

## II. Matters on Which Examination is Requested

1. For each Monsanto Licensee, the identification of each Monsanto Trait License executed and the date on which each Monsanto Trait License was executed by the Monsanto Licensee.

Defined Payments

2. For each Monsanto Licensee, the dollar amount of each Defined Payment under each Subsection 4.01(a) - (d) of each Monsanto Trait License and the date due for each Defined Payment.

3. For each Monsanto Licensee, the dollar amount of each Defined Payment actually paid to Monsanto under each Subsection 4.01(a) - (d) of each Monsanto Trait License, and the date that each Defined Payment was actually paid.

4. For each Monsanto Licensee, the requirements necessary to qualify for a waiver of each Defined Payment under each Subsection 4.01(a) - (d) of each Monsanto Trait License and each Subsection 4.01(a)(i) - (a)(iv) of each Licensee Incentive Agreement.

5. For each Monsanto Licensee, whether the Monsanto Licensee qualified for a waiver of each Defined Payment under each Subsection 4.01(a) - (d) of each Monsanto Trait License and each Subsection 4.01(a)(i) - (a)(iv) of each Licensee Incentive Agreement, the dollar amount waived, the basis for such waiver, and the date that each waiver was granted.

6. The manner (e.g., documents, files, or repositories (whether in electronic or paper format)) in which information relating to the Defined Payments due, paid, or waived under Section 4.01 of the Monsanto Trait Licenses or Section 4.01 of the Licensee Incentive Agreements was tracked, maintained, or stored.

7. The business purpose, rationale, and justification of the Defined Payments and any waivers thereof.

Seed Service Fees

8. Identify which Monsanto Licensees failed to achieve, the dollar amount by which they failed to achieve, and the years for which they failed to achieve, the Monsanto trait for which the Monsanto Licensee failed to sell sufficient percentage of, and the amount (i.e., percentage) by which the Monsanto Licensee failed to achieve any sales, licensing, purchasing, market share, growth, or trait penetration target required to obtain each of the Seed Service Fees;

and identify each specific sales, volume, market share, growth, or trait penetration target set forth in the Monsanto Trait License or Licensee Incentive Agreement that the Monsanto Licensee failed to achieve.

9. The business purpose, rationale, and justification for conditioning the receipt of Seed Service Fees on a Monsanto Trait Licensee meeting any market share, growth, or trait penetration target.

Licensee Incentive Agreement

10. Whether each Licensee Incentive Agreement executed between Monsanto and a Monsanto Licensee contained Sections identical in substance to Sections 4.02, 4.03, 4.04, 4.05, 4.06, 4.07, and 6.01 of the Licensee Incentive Agreement executed on November 7, 1997 with Pro-Seed Inc.

11. The identification of each Monsanto Licensee that has executed Licensee Incentive Agreements in which Sections 4.02, 4.03, 4.04, 4.05, 4.06, 4.07, and 6.01 differ in substance from Sections 4.02, 4.03, 4.04, 4.05, 4.06, 4.07, and 6.01 of the Licensee Incentive Agreement executed on November 7, 1997 with Pro-Seed Inc., and the manner and substance in which these Sections differ.

Key or Strategic Partners

12. The identification of each Monsanto Licensee that has executed a Proprietary Hybrid License Agreement or similar agreement (for example, but not limited to, the Proprietary Hybrid License Agreement with Kruger Seed Company marked Bates number MGA 0610197) and the terms thereof.

7

13. The identification of any other agreements (other than the Monsanto Trait License or the Licensee Incentive Agreement) or programs entered between Monsanto and any Monsanto Licensee relating to a relevant product that offer any payment, subsidy, incentive, discount, rebate, waiver, or other financial inducement ("Incentive"); the terms for each such agreement; the time period for which each such agreement was or is in effect; the aggregate annual dollar value of each Incentive earned or paid pursuant to each such agreement; each condition that the Monsanto Licensee must meet in order to receive the Incentive offered (including any condition based on the Monsanto Licensee meeting any sales, licensing, purchasing, market share, growth, or trait penetration target); and the methodology or analysis undertaken to determine whether each such condition has been met.

14. For each Monsanto Licensee listed as "strategic" in the document marked Bates number MGA 0616061 ("Strategic Account"), the identification of any actual or proposed Monsanto offer, program, or agreement that relates to any relevant product that provides any Incentive (including, but not limited to, any "one-off" incentives as described in Tom Burrus's deposition on May 3, 2006); the conditions and terms of the offer or agreement; if such offer or agreement was written or oral; when the offer was made and accepted; the duration of the offer or agreement; the type of Incentive offered; the aggregate dollar amount of any Incentive provided or offered by Monsanto to each Strategic Account on an annual basis; and the conditions that each Strategic Account must satisfy in order to receive any incentive (including any conditions based on the Strategic Account meeting any sales, licensing, purchasing, market share, growth, or trait penetration target).

15. For each Strategic Account, the expected number of units or percentage of total corn units containing hybrids licensed under the Proprietary Hybrid License Agreement or

similar agreement by year from 2005 to 2010 that Monsanto expects each Monsanto Licensee to sell.

16. For each Strategic Account, the identification of hybrid lines and the number of hybrid lines licensed pursuant to a Proprietary Hybrid License Agreement or similar agreement (for example, but not limited to, the Proprietary Hybrid License Agreement with Kruger Seed Company marked Bates number MGA 0610197) containing each of the following traits: NK603, Mon810, and Mon863.

17. For each Strategic Account, the percentage of corn units derived from Holden's foundation seed crossed with other foundation seed hybrids and Holden's foundation seed crossed with Holden's foundation seed hybrids sold by or expected to be sold by each Strategic Account from 2000 to 2010.

18. The business purpose, rationale, and justification for offering the Incentives listed in Matter on Which Examination is Requested Nos. 12, 13, and 14.

Bridge Payments

19. The identification of which Monsanto Licensees were offered the YGCB SSF Bridge Payment ("bridge payment") program identified in the document marked Bates number MGA 0868118 and MGA 0814119 (pages marked Bates number MGA 0868175 and MGA 0814122) and the terms thereof.

20. The identification of which Monsanto Licensees receive or received any bridge payment and the date(s) in which they received each payment.

21. The conditions that each Monsanto Licensee was required to meet in order to receive each bridge payment, and whether such conditions were met for each Monsanto Licensee.

22. The date that the bridge payment program commenced, and the duration of the bridge payment program.

23. The aggregate dollar value of the bridge payment made to each Monsanto Licensee on an annual basis.

24. The business purpose, rationale, and justification for offering the bridge payments.

Other

25. The document marked Bates number MGA 1321036 ("Project Atlas") and the project referred to therein.

26. The identification and substance of Monsanto's business arrangements with entities referred to as "national accounts," including but not limited to, United Agri Products, Growmark Inc., and Wilbur-Ellis Co.

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz, Esquire
>Potter Anderson & Corroon LLP
>Hercules Plaza
>1313 North Market Street
>Wilmington, DE 19899-0951

I further certify that on May 24, 2006, copies of the foregoing document will be served by hand delivery on the above listed counsel. I additionally certify that copies of the foregoing document are being served on the following non-registered participants as indicated below:

### BY E-MAIL AND FEDERAL EXPRESS

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
John W. Shaw (No. 3362)
Seth Reidenberg (No. 3657)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
sreidenberg@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*