IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*,                )
                                            )
                    Plaintiffs,             )
                                            )
        v.                                  )    C.A. No.: 04-305-SLR (Consol.)
                                            )
SYNGENTA SEEDS, INC., *et al.*,             )    **Redacted Version -**
                                            )    **Publicly Filed**
                    Defendants.             )

**OPENING BRIEF IN SUPPORT OF SYNGENTA SEEDS, INC., SYNGENTA
CORPORATION, SYNGENTA BIOTECHNOLOGY, INC., ADVANTA USA, INC., GARST
SEED COMPANY, AND GOLDEN HARVEST SEEDS, INC.'S MOTION FOR SANCTIONS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell  (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation,
Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed
Company, and Golden Harvest Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY  10022-6069
(212) 848-4000

Heather Lamberg Kafele
Jonathan R. DeFosse
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(212) 508-8000
Dated:  June 9, 2006

**TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

SUMMARY OF ARGUMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

    A.   Syngenta's Counsel Represents Vahid Aidun and Agrees to Produce Him for a
          Deposition without Need for Subpoena........................................................................ 2

    B.   Howrey Schedules a Secret *Ex Parte* Meeting with Mr. Aidun at a Hotel in Minnesota... 3

    C.   During the Secret Meeting, Howrey Repeatedly Seeks Disclosure of Confidential
          Information ...................................................................................................... 4

    D.   The Secret Meeting Is Revealed during Mr. Aidun's Deposition ...................................... 5

ARGUMENT...................................................................................................................... 5

I.      HOWREY'S SECRET *EX PARTE* MEETING WITH MR. AIDUN VIOLATED THE
        RULES OF PROFESSIONAL CONDUCT ..................................................................... 5

II.     HOWREY ACTED IN BAD FAITH IN ATTEMPTING TO INDUCE MR. AIDUN TO
        BREACH HIS CONFIDENTIALITY AGREEMENT ..................................................... 8

III.    THE COURT SHOULD SANCTION MONSANTO ..................................................... 11

CONCLUSION............................................................................................................... 14

## TABLE OF AUTHORITIES

### CASES

*Advanced Mfg. Techs. v. Motorola, Inc.*, No. CIV99-01219, 2002 WL 1446953 (D. Ariz. July 2, 2002)..................................................................................................................7

*Belote v. Maritrans Operating Partners*, No. Civ. A. 97-3993, 1998 WL 136523 (E.D. Pa. Mar. 20, 1998).....................................................................................................12

*Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660 (D. Kan. 1998) ...............................6

*Butler v. Biocore Medical Technologies, Inc.*, 348 F.3d 1163 (10th Cir. 2003)............................10

*Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147 (D.N.J. 1999)..............................................11

*Conley v. Chaffinch*, C.A. No. 04-1394-GMS, 2006 WL 1329951 (D. Del. May 17, 2006) ...........................................................................................................................5

*E.E.O.C. v. Hora, Inc.*, No. Civ. A. 03-CV-1429, 2005 WL 1745450 (E.D. Pa. July 22, 2005) ..........................................................................................................................11

*Faison v. Thornton*, 863 F.Supp. 1204 (D. Nev. 1993) ..................................................6, 11, 12, 13

*Haffer v. Temple University of Com. System of Higher Educ.*, 115 F.R.D. 506 (E.D. Pa. 1987) ..........................................................................................................................13

*Hill v. St. Louis Univ.*, 123 F.3d 1114 (8th Cir. 1997)..................................................................13

*Insituform of North America, Inc. v. Midwest Pipeliners, Inc.*, 139 F.R.D. 622 (S.D. Ohio 1991) ...........................................................................................................................12

*MMR/Wallace Power & Industrial, Inc. v. Thames Associates*, 764 F.Supp. 712 (D. Conn. 1991)................................................................................................................12

*Muriel Siebert & Co. Inc. v. Intuit Inc.*, No. 602942/03 (N.Y. Sup. Ct. Jan. 23, 2006) .........10, 11

*Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080 (S.D.N.Y. 1989) ...................12

*Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006 (N.D. Ill. 2003)............................7

*Penda Corp. v. STK, LLC*, No. Civ. A. 03-5578, 2004 WL 1628907 (E.D. Pa. July 16, 2004) ......................................................................................................................11, 12

*Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F.Supp. 651 (M.D. Fla. 1992), *aff'd*, 43 F.3d 1439 (11th Cir. 1995).......................................................................10

*In re Smith,* 306 B.R. 5 (Bkrtcy. M.D. Ala. 2004)..........................................................................13

*Tucker v. Norfolk & Western Ry. Co.,* 849 F.Supp. 1096 (E.D. Va. 1994) ...................................11

*United States v. Smallwood,* 365 F. Supp. 2d 689 (E.D. Va. 2005) ................................................6

*Univ. Patents, Inc. v. Kligman,* 737 F.Supp. 325 (E.D. Pa. 1990)................................................12

## MISCELLANEOUS

Model Rules of Prof'l Conduct R. 4.2 (2002) .........................................................................5, 6, 7

Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc. (collectively "Syngenta") respectfully submit this opening brief in support of their motion for sanctions against Monsanto Company and Monsanto Technology LLC (collectively "Monsanto").

## SUMMARY OF ARGUMENT

On May 16, 2006, Monsanto's counsel, Howrey LLP ("Howrey"), engaged in an unauthorized *ex parte* meeting with Vahid Aidun, a former Syngenta employee that Howrey deposed on May 23, 2006. This conduct was improper, unethical, and deserving of sanctions for two reasons.

*First*, Mr. Aidun was represented by counsel for Syngenta in his capacity as a former employee, and Howrey did not seek nor receive permission from his counsel to engage in *ex parte* contact. Howrey thus violated accepted norms of ethical attorney behavior as codified in the Model Rules of Professional Conduct.

*Second*, Howrey knew Mr. Aidun was bound by a confidentiality agreement with Syngenta, and that Howrey was thus not entitled to the information it sought to obtain from Mr. Aidun. Howrey's disregard for Mr. Aidun's confidentiality obligations is particularly mystifying given Monsanto's prior insistence that such obligations be strictly honored in regard to its former employees. Indeed, less than a month before its *ex parte* meeting with Mr. Aidun, Howrey had successfully argued before this Court that Syngenta's counsel should not be permitted to question a current Syngenta employee about his prior employment at Monsanto due to his continuing obligations under a confidentiality agreement. Howrey thus acted in bad faith in seeking confidential information from Mr. Aidun.

Syngenta accordingly requests that this Court order all appropriate relief to remedy this misconduct, including payment of attorneys fees, payment of expenses incurred in arranging for

1

Mr. Aidun's deposition, exclusion of evidence obtained at the *ex parte* meeting, exclusion of Mr.

Aidun's tainted deposition, and production of materials related to the *ex parte* meeting.

## STATEMENT OF FACTS

**A.    Syngenta's Counsel Represents Vahid Aidun and Agrees to Produce Him for a Deposition without Need for Subpoena**

On January 30, 2006, Monsanto sent Syngenta's counsel, Shearman & Sterling LLP

("Shearman & Sterling"), a list of the people Monsanto intended to depose in this case.

(Declaration of Heather Lamberg Kafele ("Kafele Decl.") Ex. A.) The first person on the list

was Vahid Aidun, a former Syngenta employee who was with the company from October 1998

until November 2005. (May 23, 2006 Deposition of Vahid Aidun ("Aidun Dep.") at 7-8,

attached hereto as Kafele Decl. Ex. D.) Mr. Aidun, as the former Business and Key Accounts

Manager for GreenLeaf Genetics, was involved in licensing, an area that would naturally involve

attorney-client privileged communications and access to confidential information. Mr. Aidun,

like all current and former Syngenta employees, continues to be bound by a confidentiality

agreement. (Kafele Decl. Ex. E.) ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████ *(See*

May 12, 2006 Deposition of Jeffrey Stein ("Stein Dep.") at 16, attached hereto as Kafele Decl.

Ex. H.)

In response to Monsanto's request to depose Mr. Aidun, Shearman & Sterling contacted

Mr. Aidun to schedule not only his deposition, but also a time at which he could meet with

Shearman & Sterling in order to prepare for his deposition. (Kafele Decl. at ¶ 3.) ████████

████████████████████████████████████████ (Aidun Dep. at 252.)

On May 18, 2005, Monsanto confirmed its prior request to depose Mr. Aidun by sending

a Notice of Deposition to Shearman & Sterling. (Kafele Decl. Ex. F.) The Notice of Deposition

2

for Mr. Aidun was identical to the Notices of Deposition Monsanto has sent for current employees of Syngenta Seeds, Inc. (Kafele Decl. at ¶ 6.) Monsanto did not issue a third party subpoena to Mr. Aidun and, in fact, arranged for Mr. Aidun's deposition in the same manner as all deponents represented by counsel for Syngenta. (Kafele Decl. at ¶ 2.)

████████████████████████████████████████████████

████████████████ (Aidun Dep. at 128 ████████████████

████████████████████████████████.) Indeed,

Mr. Aidun specifically contacted Edward Resler, in-house counsel at Syngenta, before his deposition to discuss representation. (Declaration of Edward Resler ("Resler Decl.") at ¶ 2.) Mr. Resler confirmed that Shearman & Sterling would represent him as a former Syngenta employee. (*Id.*) Mr. Aidun thus traveled to Washington, D.C. in advance of his deposition and met with attorneys from Shearman & Sterling, who prepared him for – and later defended him at – his deposition. (Kafele Decl. at ¶ 3.) By defending Mr. Aidun at the deposition and by not objecting to his statement that Shearman & Sterling represented him, Shearman clearly indicated that it was representing Mr. Aidun as a former Syngenta employee.

**B.    Howrey Schedules a Secret *Ex Parte* Meeting with Mr. Aidun at a Hotel in Minnesota**

In April 2006, without requesting permission from Shearman & Sterling, John Bogart, a partner at Howrey, called Mr. Aidun to ask for an *ex parte* meeting. ████████████████

████████████████████ (Aidun Dep. at 248.) ████████████████

████████████████████████████████ (*Id.* at

250.) ████████████████████████████████████████

████████████████████████████████████████████

████████████████████ (*Id.* at 248.) Indeed, Monsanto made all

3

arrangements for Mr. Aidun's deposition through Shearman & Sterling – not through Mr. Aidun. (Kafele Decl. ¶ 2.)



(Aidun Dep. at 253-56.)

*Id.* at 256.)

**C.   During the Secret Meeting, Howrey Repeatedly Seeks Disclosure of Confidential Information**



(Aidun Dep. at 256.)

*Id.* at 257-58.)

*id.* at 249),

*Id.* at 266-67.)  Indeed, although Mr. Aidun's confidentiality agreement expressly precludes disclosure of "any information . . . obtained in any way during the course of employment" (Kafele Decl. Ex. E),

*Id.* at 262.)

*Id.* at 263.)

*Id.* at 263-64.)

*Id.* at 264.)

4



dun Dep. at 260-61.)

(*Id.* at 261.)

### D.    The Secret Meeting Is Revealed during Mr. Aidun's Deposition

Mr. Aidun was deposed in this case on May 23, 2006 in Washington, D.C.  He was defended at his deposition by attorneys from Shearman & Sterling.  Mr. Bogart took the deposition on behalf of Monsanto.  As Howrey never sought permission from Shearman & Sterling to have *ex parte* communications with Mr. Aidun, the secret meeting at the Minneapolis hotel only came to light when Mr. Aidun acknowledged the meeting in response to questions from Mr. Bogart.  (Aidun Dep. at 271-72.)

## ARGUMENT

### I.    HOWREY'S SECRET *EX PARTE* MEETING WITH MR. AIDUN VIOLATED THE RULES OF PROFESSIONAL CONDUCT

Howrey's secret *ex parte* meeting with former Syngenta employee Vahid Aidun violated Rule 4.2 of the Model Rules of Professional Conduct:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

ABA Model Rules of Professional Conduct ("Model Rules"), Rule 4.2 (2002).[1]

---

[1]    This Court follows the Model Rules. *Conley v. Chaffinch*, CA. No. 04-1394-GMS, 2006 WL 1329951, at *4 (D. Del. May 17, 2006) (noting that under "Local Rule 83.6(d)(2), the District of Delaware has adopted the Model Rules of Professional Conduct").

Rule 4.2 contains three elements: the lawyer must have engaged in an ex parte communication (1) about the subject of the representation; (2) with a person the lawyer knows to be represented; (3) without the consent of that person's counsel or the court. Howrey's conduct satisfies all three elements.

The first requirement, that the communication relate to "the subject of the representation," is interpreted broadly and is easily met in this case. ███████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████ (Aidun Dep. at 257-63.) These facts more than satisfy the requirement that the *ex parte* communication relate to "the subject of the representation." *See, e.g., United States v. Smallwood*, 365 F. Supp. 2d 689, 696 (E.D. Va. 2005) (finding *ex parte* discussion related to the "subject of the representation" despite the fact nothing about the case was discussed because information obtained could be used to impeach represented person's credibility); *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 671 (D. Kan. 1998) (under Rule 4.2 "the 'subject matter of the representation' in a litigated matter is not limited to the merits of the various claims; it includes the entire litigation process").

The second requirement, that Howrey knew Mr. Aidun was represented[2] by counsel, is also satisfied. The Comments to Rule 4.2 state that knowledge of representation "must be actual knowledge of the fact of representation," but add that "such actual knowledge may be inferred from the circumstances." Model Rules, Rule 4.2 cmt. 8. The circumstances here strongly demonstrate that Howrey had knowledge of Mr. Aidun's representation:

---

[2]    Courts have held that for the purposes of Rule 4.2, "the term 'represented' is construed very broadly." *Faison v. Thornton*, 863 F. Supp. 1204, 1213 (D. Nev. 1993).

- Howrey did not subpoena Mr. Aidun to appear at the deposition, as would typically be required to depose an unrepresented third party.
- Howrey made all arrangements for Mr. Aidun's deposition through Shearman & Sterling in the same way it has for all represented Syngenta employees.



(Aidun Dep. at 261.)

(Stein Dep. at 14-15.)

Under these circumstances, it would strain credibility for Howrey to claim it did not

know that Mr. Aidun was represented by Shearman & Sterling. *See, e.g., Parker v. Pepsi-Cola*

*Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1009 (N.D. Ill. 2003) ("[A] lawyer may not avoid the

need to secure consent of counsel by closing her eyes to circumstances that make it obvious that

the person to be communicated with is represented in the matter in question.") (quoting ABA

Formal Op. 95-396 (1995)); *see also* Model Rules, Rule 4.2 cmt. 8 ("[T]he lawyer cannot evade

the requirement of obtaining the consent of counsel by closing his eyes to the obvious.").

Indeed, Monsanto had previously taken the position that all former employees – even those

whose depositions had not been requested or arranged by counsel – should be presumed to be

represented by counsel and should not be contacted by opposing counsel. *See, e.g.*, (Kafele

Decl. Ex. I (arguing, in letter dated October 24, 2005, that Syngenta's patent counsel had

---

[3] Courts have held that a formal retention agreement is not a necessary prerequisite for an attorney-client relationship. *See, e.g., Advanced Mfg. Techs. v. Motorola, Inc.*, No. CIV99-01219, WL 1446953, at *14 (D. Ariz. July 2, 2002) (stating the relationship arises when there is "intent that the lawyer provide legal services" and lawyer either consents or "fails to manifest lack of consent") (quoting § 14 *The Restatement (Third) of the Law Governing Lawyers*)). The *Motorola* court found an attorney-client relationship between a deponent and the attorney defending him at the deposition where: (a) the deponent "voluntarily appeared at [the attorney's] law office without a subpoena and communicated freely and openly with [the attorney] . . . in preparation for his upcoming deposition"; (b) the deponent identified the attorney as his counsel on the record; and (c) the attorney did not object to being so identified. *Id.* at 17-19 (stating also that "the fact that [the witness] never signed any fee agreement or paid [the attorney] for his representation at his depositions is not controlling"). Mr. Aidun, like the *Motorola* deponent, traveled to the law offices of the attorneys defending his deposition, relied on their advice in preparing for the deposition, and stated on the record – without objection from counsel – his belief that they represented him.

7

behaved improperly by attempting to contact a former Monsanto employee, Dr. David Stalker, even though there was no indication he was represented, because "we represent him in his capacity as a former . . . Monsanto employee.").); (Kafele Decl. Ex. K (stating, in letter dated November 2, 2005, that "we represent Dr. Stalker in connection with his prior employment with Monsanto").);[4] *see also* Kafele Decl. Ex. Q, at 2 (stating, in Initial Disclosures filed on May 18, 2005, that "because Monsanto's counsel will represent at least some of Monsanto's former employees, communication with Monsanto's former employees should also take place through Monsanto's counsel"). In light of Monsanto's prior positions regarding former employees and all of the circumstances surrounding Mr. Aidun's deposition, Monsanto's counsel simply could not "evade the requirement of obtaining the consent of counsel by closing his eyes to the obvious."[5]

## II.    HOWREY ACTED IN BAD FAITH IN ATTEMPTING TO INDUCE MR. AIDUN TO BREACH HIS CONFIDENTIALITY AGREEMENT

Howrey cannot in good faith claim ignorance of the fact that Mr. Aidun continued to be bound by a confidentiality agreement with Syngenta. Howrey's experience in enforcing such agreements in regard to former Monsanto employees certainly put it on notice that former Syngenta employees were under similar obligations.



(Stein Dep. at 15-16.)

---

[4] 

[5]    The third requirement is easily satisfied, as Howrey made no attempt to obtain the consent of Shearman & Sterling or the Court prior to arranging or conducting its secret *ex parte* meeting.



(*Id.*)

Monsanto's *ex parte* contact with Mr. Aidun came not only without seeking permission from Shearman & Sterling, but also in the face of Monsanto's prior (successful) argument to the Court that parties should not be allowed to engage in *ex parte* communications with former employees who are subject to confidentiality agreements. (*See* Apr. 20, 2006 Hr'g Tr. at 33, attached hereto as Kafele Decl. Ex. O.)

Indeed, less than one month before Mr. Bogart's *ex parte* meeting with Mr. Aidun, the parties appeared before the Court to address whether Syngenta would be allowed to speak with Tom Klevorn, a former Monsanto employee and current Syngenta employee, about his activities at Monsanto. Unlike Howrey's secret phone calls and clandestine meeting with Mr. Aidun, Syngenta informed Monsanto *in advance* that it wanted to meet with Mr. Klevorn about his activities at Monsanto. (Kafele Decl. Ex. M.) When Monsanto registered its objection, Syngenta brought the dispute to the Court instead of going forward and risking a meeting that might cause Mr. Klevorn to breach his confidentiality agreement. (Kafele Decl. Ex. N.) Monsanto explained to the Court that Mr. Klevorn "signed certain [confidentiality] agreements when he was [at Monsanto] and agreed to abide by them." (Kafele Decl. Ex. O at 32.) Monsanto then argued:

> [I]t's not that they [Syngenta] are being prevented from getting discovery; they're being prevented from sitting down in a room with Mr. Klevorn and pumping him for information about Monsanto that they're not entitled to in that way, that may be privileged, that's proprietary and confidential. That is the problem.

(Kafele Decl. Ex. O at 33.)

The Court accepted Monsanto's argument, and thus forbade Syngenta's attorneys from

engaging in an *ex parte* meeting with Mr. Klevorn to discuss his time at Monsanto. (*Id.* at 35.)

In disregarding this Court's order and its own arguments regarding Mr. Klevorn,

Howrey's *ex parte* meeting with Mr. Aidun may have resulted in breach of his confidentiality

agreement.[6] ████████████████████████████████████████████████████████

████████████████████████████████████ (Aidun Dep. at 268.)  In other words,

Howrey sat down in a room with Mr. Aidun and began "pumping him for information about

[Syngenta]" that they were "not entitled to in that way" that that may have been "privileged [or]

proprietary and confidential."

Howrey's conduct in this matter is in bad faith by virtue of its inconsistency with the

parties' prior practice, with representations Howrey made to this Court, and with the Court's

ruling regarding Mr. Klevorn.[8]  This Court should not tolerate Howrey blithely disregarding

confidentiality obligations Syngenta has imposed on its former employees when it has gone so

---

[6]    The confidentiality agreement prohibits disclosing "any information ... obtained in any way during the course of employment." (Kafele Decl. Ex. E.) ████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████ ██████████████████ *Id.* at 267), Mr. Aidun is not qualified to distinguish between confidential and non-confidential or privileged and non-privileged information. *See Muriel Siebert & Co. Inc. v. Intuit Inc.*, No. 602942/03 (N.Y. Sup. Ct. Jan. 23, 2006) (noting non-lawyer's "inability to distinguish between confidential, privileged material and non-confidential, non-privileged material" as a reason for disqualifying law firm that engaged in *ex parte* meeting with that person), attached hereto as Kafele Decl. Ex. P.

[7]    ████████████████████████████████████████████████████████████████████
████████████ (Aidun Dep. at 266.)

[8]    In addition, courts have found that attorneys acted improperly when they induced a former employee to divulge confidential information about a former employer even absent a preexisting court order. *See Butler v. Biocore Medical Technologies, Inc.*, 348 F.3d 1163, 1170 (10th Cir. 2003) (upholding District Court order sanctioning attorney for inducing adversary's former employee to breach confidentiality agreement); *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F.Supp. 651, 655 (M.D.Fla. 1992), *aff'd*, 43 F.3d 1439 (11th Cir. 1995) (disqualifying attorney who induced adversary's former employee to provide confidential information).

far as obtaining an order from this Court ensuring that such obligations are strictly enforced in regards to Monsanto's former employees.

## III.    THE COURT SHOULD SANCTION MONSANTO

This Court has the inherent authority to impose sanctions for violations of ethical rules and other bad faith conduct. *See, e.g., Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 161 (D.N.J. 1999) ("This Court is endowed with certain powers inherent in its authority to administer justice in cases before it. This power may be invoked to regulate the conduct of lawyers appearing before it and, when necessary, may be invoked to impose sanctions on those lawyers who violate the Rules of Professional Responsibility, the Federal Rules of Civil Procedure, the Local Rules or the general obligations of attorneys practicing in the federal courts to work towards a just, speedy and efficient resolution of claims.") (citing *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 561 (3d Cir. 1985)).[9]

Furthermore, courts have "broad . . . discretion in fashioning an appropriate penalty or sanction to discipline attorneys and remedy the problems caused by improper *ex parte* contacts." *Penda Corp. v. STK, LLC*, No. Civ. A. 03-5578, 2004 WL 1628907, at *7 (E.D. Pa. July 16, 2004). Indeed, courts have not hesitated to impose the strictest of sanctions on attorneys under such circumstances. *See, e.g., Muriel Siebert & Co. Ins. v. Intuit Inc.*, No. 602942/03 (N.Y. Sup. Ct. Jan. 23, 2006) (disqualifying law firm for improper *ex parte* meeting with former employee of its adversary), attached hereto as Kafele Decl. Ex. P; *Faison v. Thornton*, 863 F. Supp. 1204, 1216 (D. Nev. 1993) ("Another sanction which has been applied to remedy the problems created

---

[9]    *See also E.E.O.C. v. Hora, Inc.*, No. Civ. A. 03-CV-1429, 2005 WL 1745450, at *2 (E.D. Pa. July 22, 2005) ("The Court of Appeals for the Third Circuit has said that it is within the sound discretion of the district court to disqualify a lawyer for failing to avoid even the appearance of impropriety.") (collecting cases); *Tucker v. Norfolk & Western Ry. Co.*, 849 F.Supp. 1096, 1099 (E.D. Va. 1994) ("The attorney who seeks court approval before [an *ex parte*] contact does not risk an ethical violation, but one who does not acts at his or her own peril.").

11

by an attorney's improper *ex parte* communications is the disqualification of the attorney.

Courts have wide discretion in determining whether disqualification is required in a particular

case and any doubt is resolved in favor of disqualification."); *MMR/Wallace Power & Indus.,*

*Inc. v. Thames Associates,* 764 F. Supp. 712, 728 (D. Conn. 1991) (disqualifying lawyer who

engaged in *ex parte* meeting with former employee of adversary); *Papanicolaou v. Chase*

*Manhattan Bank, N.A.,* 720 F. Supp. 1080, 1082 (S.D.N.Y. 1989) (disqualifying defendant's law

firm where partner had engaged in *ex parte* meeting with plaintiff).[10]

　　　　Courts have routinely granted relief of the type requested by Syngenta in response to

improper *ex parte* contacts, including "preclusion of the use of the evidence and information

obtained through such *ex parte* communication; [and] requiring the production of all work

product related to or generated as a result of the prohibited contact." *Penda,* 2004 WL 1628907,

at *7.[11] Indeed, to allow Monsanto to use evidence it obtained at the improper *ex parte* meeting

– or deposition testimony that it had been in a position to improperly influence[12] – would allow it

to retain advantages it secured through unethical conduct. *See, e.g., Papanicolaou v. Chase*

*Manhattan Bank, N.A.,* 720 F.Supp. 1080, 1088 (S.D.N.Y. 1989) (ordering two depositions

deleted from the record that were taken within two weeks of an improper *ex parte* meeting);

*Penda,* 2004 WL 1628907, at *7 ("It would be inequitable to permit the plaintiff to keep any

---

[10]　　Although courts have disqualified attorneys and law firms for improper contact with former employees, Syngenta is not seeking that remedy here.

[11]　　*See also Belote v. Maritrans Operating Partners,* No. Civ. A. 97-3993, 1998 WL 136523, at *21 (E.D. Pa. Mar. 20, 1998) (ordering exclusion of evidence); *Faison v. Thornton,* 863 F.Supp. 1204, 1215-16 (D. Nev. 1993) (ordering exclusion of evidence and disclosure of information received in *ex parte* meeting); *Insituform of North America, Inc. v. Midwest Pipeliners, Inc.,* 139 F.R.D. 622, 626 (S.D. Ohio 1991) (ordering exclusion of evidence); *Univ. Patents, Inc. v. Kligman,* 737 F.Supp. 325, 328 (E.D. Pa. 1990) (ordering exclusion of evidence and production of work product).

[12]　　It could not have been a coincidence that the Howrey attorney who took Mr. Aidun's deposition was the same attorney who attended the earlier secret *ex parte* meeting. Furthermore, as Syngenta only learned of the *ex parte* meeting at the deposition, it was denied any opportunity to object or take action to attempt to remedy any taint that Howrey's misconduct may have introduced.

advantage it may have gained from the ethical violation."); *cf. also In re Smith*, 306 B.R. 5, 10 (Bkrtcy. M.D. Ala. 2004) ("Counsel should not be permitted to reap a competitive advantage over other lawyers by engaging in unethical conduct."). Ordering payment of attorneys fees and costs is also reasonable under the circumstances and serves as a deterrent against similar misconduct occurring in the future. *See, e.g., Hill v. St. Louis Univ.*, 123 F.3d 1114, 1121 (8th Cir. 1997) (affirming award of fees incurred in preparing sanctions motions); *Faison*, 863 F.Supp. at 1215-16 (awarding attorneys fees in addition to other relief); *Haffer v. Temple University of Com. System of Higher Educ.*, 115 F.R.D. 506, 513-14 (E.D. Pa. 1987) (ordering payment of attorneys fees and a "substantial fine").

Accordingly, Syngenta requests that the Court grant the following relief:  (1) order that Monsanto not be permitted to use any information obtained from Mr. Aidun at the *ex parte* meeting as evidence or for any other purpose; (2) order that Monsanto not be permitted to use Mr. Aidun's tainted deposition testimony as evidence or for any other purpose; (3) order Monsanto to pay the costs Syngenta incurred in reimbursing Mr. Aidun for his time and expenses; (4) order Monsanto to pay the attorneys fees Syngenta incurred as a result of arranging for Mr. Aidun's attendance at the deposition, preparing and defending Mr. Aidun for the deposition, and preparing this motion for sanctions; and (5) order Howrey to produce any materials related to the improper meeting between Mr. Bogart and Mr. Aidun, including the emails exchanged between Mr. Bogart and Mr. Aidun, the notes Mr. Bogart took during the *ex parte* meeting, and any communications among lawyers at Howrey concerning the meeting.

## CONCLUSION

For the foregoing reasons, Syngenta respectfully requests that this Court grant the motion for sanctions against Monsanto.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen E. Keller*

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Jonathan R. DeFosse
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated:  June 9, 2006

## CERTIFICATE OF SERVICE

I, Karen E. Keller hereby certify that on June 9, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on June 9, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

John J. Rosenthal, Esquire
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _Karen E. Keller_
>
> Karen E. Keller (No. 4489)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> kkeller@ycst.com
>
> Attorneys for Defendants

DB01:1592775.1

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2006, I caused to be electronically filed a sealed version of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on June 20, 2006, true and correct copies of the foregoing document will be served by hand delivery on the above listed counsel. I additionally certify that true and correct copies of the foregoing document are being served on the following non-registered participants as indicated below:

### BY E-MAIL AND FEDERAL EXPRESS

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Karen E. Keller*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Defendants Syngenta AG and*
*Syngenta Participations AG*