# EXHIBITS A-O

# REDACTED IN THEIR ENTIRETY

# Exhibit P

New York Law Journal

Monday, January 23, 2006

NEW YORK — LEGAL PROFESSION

# Court Denies Leave to Reargue, Renew Decision Which Disqualified Defendant's Counsel

MURIEL SIEBERT & CO., INC. v. INTUIT INC.—Before the court is a motion by defendant Intuit, Inc. (Intuit), through the firm of Stroock & Stroock & Lavan, LLP, for leave to reargue and renew Plaintiff Muriel Siebert & Co., Inc.'s (Siebert) motion to disqualify Intuit's counsel Quinn Emanuel Urquhart Oliver & Hedges, LLP (Quinn Emanuel), as its counsel. In the alternative, Intuit requests a stay of the underlying litigation pending appeal and for a modification of the court's order to preserve the notes and extracts of its informal communication with Nicholas Dermigny (Dermigny) pending appeal.

## BACKGROUND

The facts and circumstances underlying this motion have been discussed at length in the court's decision to disqualify dated November 3, 2005 (the "Decision"). Accordingly, these facts and circumstances will not be renewed here.

## DISCUSSION

The defendant urges the court for leave to reargue the plaintiff's motion to disqualify and to reconsider its November 3, 2005 Decision, arguing that the court misapplied the applicable laws and facts, and because "new evidence undermines" the court's basis for disqualification. In the alternative, Intuit requests a stay of the underlying litigation pending appeal and to modify its November 3, 2005 order to permit the preservation of Quinn Emanuel's attorney notes pending appeal.

### A. The Misapprehension of the Law

Intuit urges the court to reconsider the motion to disqualify, arguing that the court, in its November 3, 2005 Decision, misapprehended the relevant law as well as misapplied the facts according to that misinterpretation.

A motion for reargument addressed to the discretion of the court is designed to afford a party an opportunity to establish that the court overlooked or misapprehended relevant facts or misapplied any controlling principle of law; its purpose is not to serve as a vehicle to permit the unsuccessful party to argue, once again, the questions previously decided (CPLR 2221[d][2]; William P. Pahl Equip. Corp. v. Kassis, 182 AD2d 22 [1st Dept 1992], lv to app dismissed in part, den. in part, 80 NY2d 1005 [1992]; Foley v. Roche, 68 AD2d 558 [1st Dept 1979]).

Here, Intuit argues that the court misapprehended the applicable legal standard when it determined that the appearance of impropriety warranted disqualification. Supported by the affidavit of Professor Geoffrey C. Hazard, Jr., to whom the court cited in its Decision disqualifying Quinn Emanuel, Intuit argues that the court's usage of Canon 9 is incorrect and not supported by the law. Intuit further argues that there is no "independent basis for disqualification" under the appearance of impropriety standard, and, in

---

NEW YORK — LEGAL PROFESSION

Court Denies Leave to Reargue, Renew Decision Which Disqualified Defendant's Counsel

DEFENDANT MOVED for leave to reargue and renew plaintiff's motion to disqualify defendant's counsel, alleging the court misapplied the applicable laws and facts when it determined the appearance of impropriety warranted disqualification and new evidence undermined the court's basis for disqualification. The court stated that while the appearance of impropriety alone was insufficient to require disqualification, it would disqualify a firm where there was a potential for actual prejudice arising from a conflict of interest or a substantial risk of an abuse of confidence. In its prior decision, the court noted that the major concern was the protection of the attorney-client privilege, stating it did not misapply the relevant law or misapprehend the salient facts as it arose from the potential for actual prejudice to the plaintiff that confidential information was divulged that required disqualification. Thus, the motion for leave to reargue and renew was denied and counsel's disqualification stood.

Muriel Siebert & Co. Inc. v. Intuit Inc., 602942/03, Supreme Court, Justice Lowe.

SEE PAGE 19 COLUMN 1

19

addition, that this criterion is "too vague and subjective" a standard for the court to utilize (see Def. Memo of Law at 7-8). The court disagrees.

As our Court of Appeals has pointed out, in matters involving the professional conduct of lawyers, "we are not constrained to read the rules literally or effectuate the intent of the drafters, but *look to the rules as guidance to be applied with due regard for the broad range of interests at stake,*" especially where the interests of non-lawyers are at stake (Niesig v. Team I, 76 NY2d 363, 369 [1990][emphasis added]). While the appearance of impropriety alone is "not sufficient to require disqualification" (see People v. Herr, 86 NY2d 638, 641 [1995]), the court will nonetheless disqualify a firm where there is "the potential for actual prejudice arising from the conflict of interest or a substantial risk of an abuse of confidence" (see In re Stephanie X, 6 AD3d 778, 779 [3d Dept 2004]; see also People v. English, 88 NY2d 30, 33-34 [1996]). Professor Hazard, while opining that the "contact with and interview of former employees, even high-ranking ones, is permissible ... as long as inquiry is not made into a protected category" (Hazard Aff. ¶8), also articulates that disqualification is warranted "*where it is evident that* the interview was conducted for the very purpose of obtaining confidential information, or where it *entails a high risk that such information will be disclosed*" (Hazard & Hodes, The Law of Lawyering §38.7 [3d ed 2005][emphasis added]; see also Model Rules of Professional Responsibility 4.2).

The court, in its November 3, 2005 Decision, noted that its major concern was "for the protection of the attorney-client privilege" (Id. at 6, quoting Niesig,76 NY2d at 374). Here, the court did not misapply the relevant law or misapprehend the salient facts. As the court noted in its Decision to disqualify counsel, the court did not only disqualify counsel only on the basis of the perception of impropriety of having the ex parte communication with the former plaintiff's Executive Vice President (Id.). Dermigny was privy to all communications involving this litigation prior to his termination (Id.). It was also the fact that Quinn Emanuel was "pursuing a path fraught with attorney-client and work product privilege problems" that was disconcerting to the court (Id. at 7-8). Obviously, counsel was aware of the contours of the ex parte contact rule (see Hazard Aff. ¶11). Nonetheless, the court was not, and still is not, persuaded that Dermigny either knew the "intricacies of" privileged information or had the ability to " decide what is privileged communication" (Decision at 8), nor could counsel decide the same issues of privilege because of its zealous representation of the defendant. Here, defendant's counsel misses the point in the court's decision to disqualify counsel: it was the potential for actual prejudice to the plaintiff that arose from the high risk that confidential information was divulged that required disqualification (see In re Stephanie X, 6 AD3d at 779). That Professor Hazard "does not in his view" believe there was any appearance of impropriety is inapposite and irrelevant (see Hazard Aff.), as the court has already found that the appearance of impropriety pervades this communication.

The defendant tries to point out that the plaintiff had every opportunity to "explore whether any privileged communications were disclosed" (Def. Memo of Law at 5). The defendant argues that, because Siebert did not explore this area, there is no evidence to warrant disqualification. Nonetheless, as the court noted in its November 3, 2005 Decision,

to have the plaintiff [inquire about what information Dermigny disclosed during this meeting], even if limited to the purpose of ascertaining whether privileged information was disclosed to the defendant, would impart to Quinn Emanuel the very information, essential to Siebert's case, that Siebert seeks to keep privileged. That would not only provide further confidential information to Quinn Emanuel, but may in turn lead to the total obliteration of the attorney-client privilege.

(Id. at 9). To have the plaintiff ask what information was departed to defendant's counsel would destroy the attorney-client privilege, and the court is unwilling to allow such a process take place.

In its final effort for renewal and reargument, Inmir asserts that creating "this new category ... effectively overrules Niesig and opens the door to a potential flood of disqualification motions" (Def. Memo of Law at 11). It is not surprising that the court disagrees. First, the court articulated in its Decision that the rule at issue in Niesig, Disciplinary Rule 7-104(A)(1), did not apply in this matter because the Rule applies to "current employees, not to former employees" (Niesig, 76 NY2d at 369), and, accordingly, the basis for disqualification under this rule was unwarranted (Decision at 6). In addition, as the Court of Appeals explicitly points out, the decision in Niesig only "resolve[d] the present controversy by allowing ex parte interviews with *nonmanagerial witnesses* employed by a corporate defendant" (Id. at 376 [emphasis added]). This court neither overruled Niesig nor opened the proverbial door for disqualification motions. Finally, and most importantly, the Court of Appeals requires the courts to "look to the rules as guidelines to be applied with due regard for the broad range of interests at stake" and to "use [the] judicial process to make our own decision in the interests of justice to all concerned" (Id. at 369-370, quoting S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp., 69 NY2d 437, 443 [1987][quoting Foley & Co. v. Vanderbilt, 523 F2d 1357, 1360 (2d Cir 1975, Gurfein, J., concurring)]).

Here, in taking the broad range of interests at stake and the high risk that this ex parte communication divulged privileged information, the court neither misinterpreted the law nor overlooked the pertinent facts in making its determination. Accordingly, the motion for leave to reargue and renew is denied and the disqualification of Quinn Emanuel stands.

B. Misapprehension of the Facts and New Evidence

The defendant also argues that new evidence, as established from Dermigny's deposition testimony held on November 1, 2005 (see Greenwald Aff., Ex. B), confirms that there was no privileged information that was obtained from the ex parte interview. Further, the defendant argues that the Timeline provided by Dermigny was produced to him by Siebert after his termination and before his meeting with Quinn Emanuel, showing that there was no appearance of impropriety as to the production of that document. Finally, the defendant points to the October 31, 2005 deposition testimony of Muriel Siebert (Siebert) as evidence that the plaintiff is trying to stall the proceeding (see Id., Ex. H).

Contrary to defendant's assertion that Dermigny's deposition confirms that no privileged information was given to Quinn Emanuel, the deposition transcript only further evidences the need to disqualify defendant's counsel. In reviewing the deposition of Dermigny (see Id., Ex. B), the court finds that the substantial risk for abuse and the obliteration of attorney-client privilege has further been demonstrated by Quinn Emanuel, requiring its disqualification. For example, during the cross-examination of Dermigny, plaintiff attempted to contradict testimony from Dermigny, after he alleged that he was not intimately involved with the preparation of Siebert's litigation. However, there was a threat made by Quinn Emanuel, namely, that "if you're [plaintiff's counsel] going to ask him [Dermigny] questions about what he did with counsel, I [Greenwald, defendant's counsel] believe that I'm entitled to ask follow-up questions about that. And I just want to alert you to that, so if this is a waiver, this is a waiver" (id. at 203:14-23). The defendant cannot have it both ways.

The defendant also asserts that because the confidential Timeline was actually produced to Dermigny after his termination from Siebert, and because its production was made prior to the Quinn Emanuel ex parte meeting, such a finding requires the reversal of the court's November 3, 2005 determination that there was an appearance of impropriety. The court differs with defendant's assessment. First, as the plaintiff noted in oral argument as to the original motion to disqualify, the document was not provided to plaintiff's counsel until after the meeting between Quinn Emanuel and Dermigny (see Oral Arg., Oct. 12, 2005). Production of the document from Dermigny days before the meeting to counsel does not change the fact that the document was actually received by Siebert after the ex parte meeting. Moreover, and more importantly, this only demonstrates Dermigny's inability to distinguish between confidential, privileged material and non-confidential, non-privileged material. Again, the court questions whether or not Dermigny, a non-lawyer, could, to the best of his knowledge and belief, provide information that was not privileged, especially given that this document was indeed produced to Quinn Emanuel (see Oblak Aff., Ex. J). Instead of reversing the court's prior determination, this information only furthers the need for disqualification.

Finally, the defendant argues that disqualification is unwarranted because it is a stalling tactic used by Siebert to deliberately delay the underlying litigation until the plaintiff is able to bring different claims against Intuit. The defendant points to Siebert's October 31, 2005 deposition testimony as proof that "two of Siebert's principal claims" are "total fabrications" (Def. Memo of Law at 19), and that Siebert's use of this disqualification motion was to buy time until Siebert could amend its claims against Intuit.

The court has broad discretion on a motion to renew (Scannell v. Mt. Sinai Med. Ctr., 256 AD2d 214 [1st Dept 1998]), especially where there is additional evidence that was not previously before the court (Segall v. Heyer, 161 AD2d 471, 473 [1st Dept 1990]). A motion to renew is granted where new information arises which existed at the time the prior motion was made and is relevant to the moving party's claim, but which was unavailable or unknown to that party at the time of the original motion (Lee v. Ogden Allied Maintenance Corp., 226 AD2d 226, 227 [1st Dept 1996]; Azzopardi v. American Blower Corp., 192 AD2d 453, 453-454 [1st Dept 1993]).

The court does not find that there is "additional evidence" that was "not previously before the court" nor does the court find such evidence relevant to this motion to renew and reargue (see Id.). First, the information garnered from Siebert's testimony is more a factual issue geared more for disposition in a motion for summary judgment, not in a motion to disqualify. Secondly, Siebert's testimony is inapposite here, as it has no bearing as to whether defendant's counsel appropriately or inappropriately held an ex parte communication with the former Executive Vice President of plaintiff's company, especially where the conversation took place days before the original motion to disqualify was brought before the court (see Decision at 5). Finally, in reading the deposition testimony of Siebert, the court does not find that the plaintiff's testimony necessarily "proves the utter falsity of Siebert's allegations" against Intuit (see Def. Memo of Law at 20), particularly where Siebert has claims for breach of contract for failure to deliver the product Intuit promised to deliver, breach of covenants of good faith, fiduciary duty, misrepresentation and fraud, and promissory estoppel (see Greenwald Aff., Ex. F).

Based on the information provided to the court and the clarification as provided in this motion to renew and reargue, the court reiterates that it neither misapprehended the facts or misapplied the law. Further, the "newly discovered evidence" is unpersuasive as to allow Intuit's motion to renew. As such, the court's decision disqualifying counsel stands.

C. Stay Pending Appeal

Finally, the defendant has requested that, should the court not grant its motion to reargue and renew Plaintiff's motion to disqualify, the proceeding be stayed while the defendant appeals the decision of this court. In the alternative, the defendant requests that, pending the appeal, the court allow the preservation of the documents and notes made during the ex parte interview with Dermigny during the pendency of the appeal. That application to stay the proceedings and to preserve the attorney notes is also denied.

CONCLUSION

Based on the foregoing reasons, it is hereby
ORDERED that defendant Intuit Inc.'s motion for leave to reargue and renew Plaintiff Muriel Siebert & Co., Inc.'s motion to disqualify Defendant Intuit's counsel is denied; it is further
ORDERED that defendant's request to stay the underlying litigation pending appeal is denied; it is further
ORDERED that defendant's request to modify the court's November 3, 2005 decision to permit the preservation of the attorney notes made during the ex parte interview of Nicholas Dermigny is denied; and it is further
ORDERED that the court's decision of November 3, 2005 shall stand.
THIS CONSTITUTES THE ORDER AND DECISION OF THE COURT. ■

*More decisions of interest on the following page*

# EXHIBIT Q

# REDACTED IN ITS ENTIRETY