IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*,           )
                                      )
                    Plaintiffs,       )
                                      )
        v.                            )        C.A. No.: 04-305-SLR (Consol.)
                                      )
SYNGENTA SEEDS, INC., *et al.*,       )
                                      )
                    Defendants.       )

## ANSWERING BRIEF IN OPPOSITION TO MONSANTO'S SECOND MOTION FOR LEAVE TO SUPPLEMENT THE RECORD RELATING TO SYNGENTA AG'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

<div style="margin-left:40%">

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Counterclaim Defendants Syngenta AG*
*and Syngenta Participations AG*

</div>

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY  10022-6069
(212) 848-4000

Heather Lamberg Kafele
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated:  June 15, 2006

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

I.    MONSANTO'S SECOND RECORD SUPPLEMENT FAILS TO ALLEGE ANY
      JURISDICTIONALLY RELEVANT CONTACTS WITH DELAWARE ...................... 3

      A.  The 2002 Meeting Is Unrelated to Monsanto's Counterclaim ...................... 3

      B.  Syngenta AG's Involvement in Authorizing this Antitrust Lawsuit Is
          Unrelated to Monsanto's Counterclaim ...................................................... 6

II.   MONSANTO'S SECOND RECORD SUPPLEMENT FAILS TO ESTABLISH
      AGENCY JURISDICTION ........................................................................................ 7

      A.  The Second Record Supplement Fails to Show Syngenta AG Controls the
          Day-to-Day Operations of its U.S. Subsidiaries ........................................... 8

      B.  The Second Record Supplement Fails to Show Control of Jurisdictionally
          Relevant Activities in Delaware ................................................................. 10

CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Ace & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418 (D. Del. 2001) ........................................ 11

*Akzona, Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227 (D. Del. 1984) ................. 8, 10

*Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. at 1458 (D. Del 1991) ......................... 9

*In re Bigmar, Inc.*, No. Civ. A. 19289-NC, 2002 WL 550469 (Del. Ch. Apr. 5, 2002) ................. 3

*Bliss v. Rochester City Sch. Dist.*, 196 F. Supp. 2d 314 (W.D.N.Y. 2002) ..................................... 3

*Cordis Corp. v. Advanced Cardiovascular Sys., Inc.*, No. Civ. A. 97-635-SLR, 1999 WL
    805284 (D. Del. Sept. 17, 1999) ................................................................................. 3, 11

*Delaware Mktg. Partners v. Creditron Fin. Serv.*, No. Civ. 04-36-SLR, 2004 WL
    1999973 (D. Del. Aug. 31, 2004) ..................................................................................... 11

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*, No. Civ A. 03-612-KAJ, 2004 WL 2346137 (D.
    Del. Sept. 13, 2004) ......................................................................................................... 10

*ICT Pharm., Inc. v. Boehringer Ingelhem Pharm., Inc.*, 147 F. Supp. 2d 268 (D. Del.
    2001) .................................................................................................................................. 10

*Mobil Oil Corp. v. Advanced Envtl. Recycling Techs.*, 833 F. Supp. 437 (D. Del. 1993) .......... 2, 6

*Monsanto Co. v. Aetna Cas. & Sur. Co.*, No. 88C-JA-118, 1994 WL 233945 (Del. Super.
    Ct. May 9, 1994) ................................................................................................................. 2

*Phoenix Canada Oil Co. v. Texaco*, 658 F. Supp. 1061 (D. Del. 1987) ......................................... 8

*Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297 (D. Del. 1990) ......................................... 8

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................................. 8

## STATUTES

10 Del. C. § 3104(c)(1)-(3) and (5)(6) ........................................................................................... 3

Counterclaim defendants Syngenta AG and Syngenta Participations AG ("Participations") respectfully submit this brief in opposition to the Motion for Leave to Supplement the Record (D.I. 407) filed on June 5, 2006 by Monsanto Company and Monsanto Technology LLC (collectively "Monsanto").

## PRELIMINARY STATEMENT

This is Monsanto's *third* attempt to present to the Court facts and/or legal authority that would support the exercise of personal jurisdiction in Delaware over Syngenta AG and Participations.[1] Yet, despite these multiple submissions – and the fact that Monsanto has questioned nearly every witness in the case concerning the Swiss companies' activities in the U.S. – Monsanto remains unable even to allege, let alone prove, a single *Delaware* contact that relates in any way to its Counterclaim. If Monsanto has been unable to establish a basis for jurisdiction at this point in the case (with extensive discovery), it will never be able to do so. Monsanto's motion for leave should be denied, and Syngenta AG and Participations' motions to dismiss for lack of personal jurisdiction should be granted.

Monsanto does not dispute that, as a matter of law, a contact with Delaware does not establish personal jurisdiction unless the contact gives rise to Monsanto's Counterclaim. Here, the sole Delaware contacts alleged by Monsanto – a May 2002 meeting in Wilmington and the filing of this lawsuit – have no relation to Monsanto's Counterclaim. As explained in Syngenta AG and Participations' earlier submissions, the May 2002 meeting occurred several years before the events described in Monsanto's Counterclaim and had nothing to do with the acquisition or alleged "passing off" of GA21. Similarly, Syngenta AG's alleged authorization for the filing of

---

[1] To date, Monsanto has filed (i) a response to Syngenta AG's jurisdiction motion; (ii) a first supplemental submission on personal jurisdiction; and now (iii) this second supplemental submission on personal jurisdiction.

this antitrust lawsuit is irrelevant because Monsanto's Counterclaim does not arise from (or indeed relate in any way to) the act of filing the lawsuit. *See, e.g., Mobil Oil Corp. v. Advanced Envtl. Recycling Techs.*, 833 F. Supp. 437 (D. Del. 1993) (act of filing Delaware lawsuit may give rise to specific jurisdiction only if claim arises from very act of filing suit, such as in a claim for sham litigation).

As in its previous submissions, Monsanto again spills considerable ink on the issue of whether Syngenta AG was involved in high level strategy discussions and corporate acquisitions relating in some way to the U.S. Such facts do not show the *day-to-day control* of U.S. subsidiaries necessary for Monsanto to demonstrate personal jurisdiction under an agency theory, nor do they establish any contact with *Delaware*. Moreover, Syngenta AG has never denied that it participates in discussion of the broad strategic direction of the companies it owns, and such participation does not as a legal matter establish personal jurisdiction.

It is noteworthy that none of the issues discussed in Monsanto's submission – the May 2002 meeting, the antitrust lawsuit, and the alleged involvement of Syngenta AG in discussions of U.S. strategy – is new. Each of these issues has previously been briefed at length in the motion to dismiss and in Monsanto's various responses. The fact that in this *third* submission Monsanto cannot find anything new to argue, even though it has vigorously pursued the issue during months of depositions, demonstrates that the record is complete and that personal jurisdiction has not been established.

Courts routinely deny requests to supplement the record when, as here, the proffered evidence is not determinative of the issues under consideration. *See, e.g., Monsanto Co. v. Aetna Cas. & Sur. Co.*, No. 88C-JA-118, 1994 WL 233945, at *4 (Del. Super. Ct. May 9, 1994) (denying Monsanto's motion to supplement record because proffered evidence was not material

to issues under consideration); *In re Bigmar, Inc.*, No. Civ. A. 19289-NC, 2002 WL 550469, at *4 n.14 (Del. Ch. Apr. 5, 2002) (denying motion to supplement record where movant failed to show that proffered evidence "would add anything materially probative to her case."); *Bliss v. Rochester City Sch. Dist.*, 196 F. Supp. 2d 314, 342 (W.D.N.Y. 2002) (refusing to "supplement the record with information that is either irrelevant or inadmissible or both"). The Court should likewise deny Monsanto's motion in this case and grant the motions of Syngenta AG and Participations to dismiss the Counterclaim for lack of personal jurisdiction.

## I.   MONSANTO'S SECOND RECORD SUPPLEMENT FAILS TO ALLEGE ANY JURISDICTIONALLY RELEVANT CONTACTS WITH DELAWARE

Monsanto's supplemental submission refers to only two events that are in any way related to Delaware: (1) a single meeting that took place in May 2002; and (2) Syngenta AG's involvement in authorizing the filing of this lawsuit in a Delaware court. Neither of these events warrants the exercise of personal jurisdiction in this case.

### A.   The 2002 Meeting Is Unrelated to Monsanto's Counterclaim

The 2002 meeting cannot justify an assertion of specific jurisdiction because the meeting does not give rise or relate to Monsanto's Counterclaim. Notably, Monsanto's submission fails to cite any relevant statutory or case law, both of which require a concrete nexus between the defendant's alleged Delaware conduct and the claim being asserted. *See* 10 Del. C. § 3104(c)(1)-(3) and (5)-(6); *Cordis Corp. v. Advanced Cardiovascular Sys., Inc.*, No. Civ. A. 97-635-SLR, 1999 WL 805284, at *4 (D. Del. Sept. 17, 1999) ("[I]n order to establish transactional or specific jurisdiction, plaintiff must demonstrate not only that an act or acts occurred in Delaware but also that its causes of action arise from the act or acts.").

Monsanto's Counterclaim is narrow, focusing specifically on Syngenta's commercialization of the GA21 corn trait following an announcement in May 2004 that

3

Syngenta acquired the rights to GA21 from Bayer. Counts I and II allege that Syngenta engaged in "reverse passing off" and deceptive trade practices when it "marketed and sold [GA21 corn seed] without indicating that the true source of the GA21 event is Monsanto." (Countcl. at ¶¶ 66, 70.) Count III alleges that Syngenta engaged in false advertising by making public statements as to the ownership of intellectual property pertaining to the GA21 event. (Countcl. at ¶ 73.) Count IV alleges that Syngenta tortiously interfered with Monsanto's GA21 corn license to Garst by entering a May 10, 2004 contract "with Garst's immediate parent . . . for the transfer of the GA21 event inbred corn lines that [Garst] had received from Monsanto." (Countcl. at ¶¶ 51, 78.) All of these claims are based on actions relating to GA21 that allegedly took place in 2004 or later. (*E.g.*, Countcl. at ¶¶ 51-52, 57, 59, 63.)

As set forth at length in Syngenta AG's prior briefing, the 2002 meeting in Delaware — which occurred years before the relevant time frame and did not in any way relate to the acquisition of GA21 — does not give rise to any of Monsanto's counterclaims. *See* Syngenta's Answering Brief in Opposition to Monsanto's Motion for Leave to Supplement the Record filed on March 29, 2006 ("Syngenta AG First Supp. Reply Br."; D.I. 314) at 2-4. Nothing in Monsanto's second supplemental submission alters this analysis.[2]

First, Monsanto cites — without quoting — testimony from Gary Powell regarding Syngenta's efforts, discussed at the 2002 meeting, to "stop grower adoption of Monsanto's Roundup Ready glyphosate-tolerant trait." (Mon. Second Supp. at 9.) ▄▄▄▄▄▄▄▄▄▄

---

[2]     Monsanto devotes considerable attention to "proving" that the 2002 meeting in fact occurred, a point never disputed by Syngenta AG. (Monsanto's Second Statement of Supplemental Facts filed on June 5, 2006 ("Mon. Second Supp."; D.I. 407) at 9.) Monsanto thus misses the point entirely. In its response to Monsanto's first supplemental submission, Syngenta AG acknowledged that the meeting occurred, but argued — as it continues to do here — that the meeting is irrelevant because it did not give rise or relate to Monsanto's Counterclaim. (Syngenta AG First Supp. Reply Br. at 2-4.)

 The fact that the meeting occurred in 2002 is critical because all of the conduct that gives rise to Monsanto's Counterclaim is alleged to have occurred in 2004 or later. Indeed, in 2002 when the meeting occurred, Syngenta had not acquired GA21 and was not marketing or selling GA21, the activities which form the entire basis for Counts I-III of Monsanto's Counterclaim. (Countcl. at ¶¶ 65-75.)[4]

Second, Monsanto lists the "Five Pillars" of Project Cornucopia, notes that these were discussed at the 2002 meeting, and then  (Mon. Second Supp. at 10.) Notably absent from Monsanto's supplement is any attempt to relate these "Pillars" to the events alleged in its Counterclaim. (See id.)  (See Mon. Second Supp. at 10.)

---

3 ███████████████████████████████████████████████

4     Count IV is based solely on Syngenta Seeds, Inc.'s act of entering into a specific contract on May 10, 2004, and is thus similarly unrelated to the 2002 meeting. (Countcl. at ¶¶ 76-80.); see also Syngenta AG & Participations AG's Opening Brief in Support of Their Motion to Dismiss filed on November 21, 2005 ("Syngenta AG Op. Br."; D.I. 170) at 19-20.



**B.    Syngenta AG's Involvement in Authorizing this Antitrust Lawsuit Is Unrelated to Monsanto's Counterclaim**

Monsanto cannot rely on Syngenta AG's authorization of this lawsuit as a basis for personal jurisdiction, as Syngenta AG has already explained in response to previous Monsanto arguments on this issue. (*See* Syngenta AG Reply Br. at 7.) Indeed, the one case Monsanto has cited in support of this argument makes clear that the filing of a lawsuit can form the basis for personal jurisdiction only if the act of filing gives rise to the claim. *See Mobil Oil Corp. v. Advanced Envtl. Recycling Techs.*, 833 F. Supp. 437, 445 (D. Del. 1993). In *Mobil*, the court found personal jurisdiction in a situation in which the filing of a Delaware lawsuit was itself the subject of a subsequent claim for "sham litigation." *Id.* at 439. The *Mobil* court *rejected* jurisdiction over an individual who filed an affidavit in support of the lawsuit finding that "there is not a sufficient nexus between [defendant's] claim of 'sham litigation' and Mr. Ferrari's affidavit to support jurisdiction." *Id.* at 445. Here, Monsanto makes no claim of sham litigation and none of Monsanto's counterclaims remotely refer or relate to Syngenta's filing of the

antitrust lawsuit. The fact that Syngenta AG may have given ultimate authorization for its U.S. subsidiaries to file the lawsuit is, thus, irrelevant.[5]

## II.  MONSANTO'S SECOND RECORD SUPPLEMENT FAILS TO ESTABLISH AGENCY JURISDICTION

The remainder of the proposed record supplement is largely repetitive of Monsanto's prior assertions that Syngenta AG and Participations should be subject to jurisdiction under an agency theory because they allegedly dominate and control their U.S. subsidiaries. (*See, e.g.,* Monsanto's First Statement of Supplemental Facts filed on March 21, 2006 ("Mon. First Supp."; D.I. 310) at 2-15; Monsanto's Answering Brief in Opposing to Syngenta AG's Motion to Dismiss filed on December 30, 2005 ("Mon. Ans. Br."; D.I. 184) at 7-9, 11-12, 13-14.) The testimony Monsanto seeks to add to the record, however, is consistent with Syngenta AG and Participation's prior statements that, while they are involved in major strategic matters (*e.g.,* entering new product markets, mergers and acquisitions, review of capital budgets), they do not control the day-to-day operations of their U.S. subsidiaries. Furthermore, even if Monsanto could establish day-to-day control, agency jurisdiction would still be inappropriate because

---

[5]    In attempting to blur the issue and hint – without making an express allegation – that Syngenta's antitrust suit is somehow improper, Monsanto misrepresents testimony from Dr. John Sorenson, formerly head of Syngenta's U.S. corn business.

7

Monsanto cannot point to even a single instance in which the Swiss parent companies directed or controlled a jurisdictionally-relevant Delaware act. (*See* Syngenta Reply Br. at 8-9.)

### A.    The Second Record Supplement Fails to Show Syngenta AG Controls the Day-to-Day Operations of its U.S. Subsidiaries

It is well established that personal jurisdiction can only be asserted under an agency theory if a parent corporation controls the *day-to-day operations* of its subsidiaries. *E.g. Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305-06 (D. Del. 1990) ("[A]bsent total control of the subsidiary, evidenced by interference in the day-to-day operations of the subsidiary, the presence of the subsidiary can not be imputed to the parent for jurisdictional purposes."); *Akzona, Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984) ("The parent must have actual, participatory and total control of the subsidiary."); *see also* Syngenta Reply Br. at 10.

Syngenta AG has never disputed that it participated in broad strategic policy, major capital expenditures, or key decisions involving its subsidiaries, such as the decision to acquire Garst and Golden Harvest, or the decision to enter the market for glyphosate-resistant corn. The law is clear that such activities are not day-to-day control and thus do not create an agency relationship. *See United States v. Bestfoods*, 524 U.S. 51, 72 (1998) (recognizing permissibility of "parental oversight" and agreeing that "monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability."); *Phoenix Canada Oil Co. v. Texaco,* 658 F. Supp. 1061, 1084-85 (D. Del. 1987) (parent of wholly-owned subsidiary that had

seats on board, took part in financing, and approved major policy decisions was not liable

because parent did not have day-to-day control); *see also* Syngenta Reply Br. at 10.[6]

Monsanto's proposed record supplement does not show that Syngenta AG controlled the

day-to-day operations of its U.S. subsidiaries. To the contrary, even accepting Monsanto's

characterizations of deposition testimony,[7] the supplement reflects Syngenta AG's permissible

oversight of its subsidiaries, such as ultimate authorization for acquisitions, and the occasional

receipt of reports and presentations regarding broad strategic plans.[8]  It is well-established that

---

[6]   To the extent Monsanto intends to suggest jurisdiction may be permissible on an alter ego theory, such an argument continues to be precluded by the absence of any allegation of fraud in the corporate form.  (*See* Syngenta AG Opening Br. at 15-16 (collecting cases).)

[7]   Monsanto frequently misrepresents, exaggerates, or distorts the testimony to which they cite.



[8]   Monsanto's supplement illustrates the high level nature of Syngenta AG's involvement. *See, e.g.*, Mon. Second Supp. at 3-4 ("ultimately approved" the "overall strategy" for GA21); at 4-8 (involved in and had ultimate approval over multi-million dollar acquisitions of Garst, Golden Harvest, and Bayer GA21 rights); at 13 (received updates from Dr. Sorenson, then head of Syngenta's U.S. corn business); at 14 (had meetings with the "U.S. Leadership Team" in Europe "once a year"); at 16-17 (received "key strategy presentations" including a yearly "five-year business plan"); *see also*

9

these various exercises in high-level supervision and participation, as well as involvement in key, multi-million dollar deals, do not constitute day-to-day control of the type that can subject a foreign parent to agency jurisdiction. *See, e.g., ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.,* 147 F. Supp. 2d 268, 270 (D. Del. 2001) (refusing to assert agency jurisdiction over parent whose "finance committee reviews and approves each corporation's budget" and whose research and development committee "determines what research and development projects should be pursued and by whom"); *eSpeed, Inc. v. BrokerTec USA, L.L.C.,* No. Civ A. 03-612-KAJ, 2004 WL 2346137, at *1, 4 (D. Del. Sept. 13, 2004) (refusing to assert jurisdiction over a parent that "manages the [corporate] Group as a whole," including approving budgets and making auditing trips to operating companies); *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F. Supp. at 1458, 1462 (D. Del 1991) (no agency jurisdiction where subsidiary was required to seek parent's approval of "large scale expenditures"); *Akzona,* 607 F. Supp. at 238 (finding parent's supervision of capital expenditures in excess of $850,000 insufficient to establish jurisdiction under an agency theory).[9]

**B.     The Second Record Supplement Fails to Show Control of Jurisdictionally Relevant Activities in Delaware**

Under Delaware law, showing day-to-day control is not enough to establish jurisdiction under an agency theory. Agency jurisdiction is appropriate only if a foreign parent directed or controlled specific activities of its subsidiaries *in Delaware* and those activities are

---

[9]     Also irrelevant is Monsanto's evidence that a handful of employees had taken overseas assignments or worked for both Swiss entities and U.S. entities over their careers. (Mon. Second Supp. at 19-20.) Indeed, Monsanto made this argument in its answering brief on December 30, 2005, where it named virtually the same individuals it names here. (Mon. Ans. Br. at 7-8.) The supplement adds only one name not mentioned in Monsanto's answering brief – Tim Kroenke. Thus, Monsanto's evidence now shows that of the thousands of employees of the Syngenta U.S. companies, seven have spent time in positions in Basel. (*See id.;* Mon. Second Supp. at 19-20.) This is hardly evidence of day-to-day control. (*See* Syngenta Reply Br. at 11, n.10.)

*jurisdictionally relevant* – in other words, it must be conduct that satisfies the specific

jurisdiction provisions of the Delaware long-arm statute. *E.g. Cordis Corp.*, 1999 WL 805284,

at *5-6 ("An agency relationship alone, however, is not sufficient to confer jurisdiction. Rather,

the result of finding such an agency relationship is simply that we may attribute certain of [the

subsidiary's] acts to [the parent] in assessing whether the requirements of the Delaware long-arm

statute have been satisfied.").[10] As discussed above, Monsanto has not demonstrated that either

of the two Delaware contacts it alleges – the 2002 Cornucopia meeting and the filing of this

antitrust lawsuit – is jurisdictionally relevant in the sense that it gives rise to or relates in any way

to Monsanto's Counterclaim.[11] (*See supra* Section I.)

---

[10]  *See also Ace & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 425 (D. Del. 2001) ("The agency theory requires not only that the precise conduct shown to be instigated by the parent be attributable to the parent, but also that such conduct satisfy § 3104(c)(1); i.e., that the jurisdictional conduct take place in Delaware."); *Delaware Mktg. Partners v. Creditron Fin. Serv.*, No. Civ. 04-36-SLR, 2004 WL 1999973, at *3 (D. Del. Aug. 31, 2004) ("[T]he existence of a principal/agent relationship between two corporations does not obviate the necessity of satisfying the requirements of the Delaware long-arm statute; therefore, agent actions taken on behalf of a principal must still satisfy § 3104(c) before this court can exercise jurisdiction.").

[11]  The remaining conduct alleged by Monsanto – to which most of its supplement is devoted – involved activities outside of Delaware. (*See* Mon. Second Supp. at 2-8, 13-19.)

## CONCLUSION

For the foregoing reasons, Syngenta AG and Participations respectfully request that this

Court deny Monsanto's Second Motion for Leave to Supplement the Record.


Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

_Karen L. Keller_

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Counterclaim Defendants Syngenta*
*AG and Syngenta Participations AG*


Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated:  June 15, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2006, I caused to be electronically filed a sealed version of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on June 21, 2006, true and correct copies of the foregoing document will be served by hand delivery on the above listed counsel. I additionally certify that true and correct copies of the foregoing document are being served on the following non-registered participants as indicated below:

### BY E-MAIL AND FEDERAL EXPRESS

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Karen E. Keller*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Defendants Syngenta AG and*
*Syngenta Participations AG*

059155.1010