IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-305-SLR (Consol.) |
| | ) | |
| SYNGENTA SEEDS, INC., *et al.*, | ) | **RESTRICTED CONFIDENTIAL** |
| | ) | **FILED UNDER SEAL** |
| Defendants. | ) | **REDACTED PUBLIC VERSION** |

**REPLY BRIEF IN SUPPORT OF SYNGENTA SEEDS, INC., SYNGENTA CORPORATION, SYNGENTA BIOTECHNOLOGY, INC., ADVANTA USA, INC., GARST SEED COMPANY, AND GOLDEN HARVEST SEEDS, INC.'S MOTION FOR SANCTIONS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

Of Counsel:
SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Jonathan R. DeFosse
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: June 30, 2006

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................. 3

I.  MONSANTO'S SECRET MEETING WITH MR. AIDUN VIOLATED RULE 4.2 ....... 3

II. MONSANTO ACTED IN BAD FAITH BY ELICITING CONFIDENTIAL
    INFORMATION FROM MR. AIDUN AT THE SECRET MEETING ........................... 7

   A. The Evidence Shows that Howrey Did Not Arrange this Secret *Ex Parte* Meeting Only to
      Discuss Mr. Aidun's Personal Background and His Views on the Corn Industry ............. 7

   B. Mr. Aidun Testified that Howrey Sought Confidential Information from Him at the
      Secret Meeting ................................................................................................................... 9

   C. Howrey's Conduct Here is Inconsistent with Positions it Took Before this Court When
      Seeking to Prevent Syngenta from Interviewing a Former Monsanto Employee about his
      Time at Monsanto ............................................................................................................ 10

III. SYNGENTA'S PROPOSED RELIEF IS APPROPRIATE ............................................ 11

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

## CASES

*Butler v. Biocore Medical Technologies, Inc.*, 348 F.3d 1163 (10th Cir. 2003) ..............8

*Faison v. Thornton*, 863 F. Supp. 1204 (D. Nev. 1993) ..............4

*Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080 (S.D.N.Y. 1989) ..............12

*Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006 (N.D. Ill. 2003) ..............7

*Penda Corp. v. STK, LLC*, No. Civ. A. 03-5578, 2004 WL 1628907 (E.D. Pa. July 16, 2004) ..............12

*Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651 (M.D. Fla. 1992), *aff'd*, 43 F.3d 1439 (11th Cir. 1995) ..............8

*Terra Int'l Inc. v. Miss. Chem. Corp.*, 913 F. Supp. 1306 (N.D. Iowa 1996) ..............4

## MISCELLANEOUS

ABA/BNA, Lawyer's Manual on Prof'l Conduct (Nov. 17, 2004) ..............5

ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-396 (1995) ..............5

ABA Report to the House of Delegates, No. 401 (February 2002) ..............5

Model Rules of Prof'l Conduct R. 4.2 (2002) ..............2, 3, 5

Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc. (collectively "Syngenta") respectfully submit this reply brief in support of their motion for sanctions against Monsanto Company and Monsanto Technology LLC (collectively "Monsanto").

## SUMMARY OF ARGUMENT

There is no dispute that an attorney for Monsanto – John Bogart of Howrey LLP – flew to Minnesota and conducted a secret *ex parte* interview of Vahid Aidun, a former Syngenta employee who Mr. Bogart deposed shortly thereafter. The meeting violated Rule 4.2 of the ABA Model Rules of Professional Conduct and was in contravention of the spirit of a prior ruling from the Court on the propriety of such meetings. The three arguments Monsanto now raises in an effort to avoid sanctions all lack merit.

First, Howrey claims that it was free to engage in *ex parte* contact with Mr. Aidun because he was not represented by Syngenta's counsel, Shearman & Sterling LLP.  (Kafele Decl.[1] Ex. D ("Aidun Dep.") at 128, 271.) Monsanto also fails to dispute the other overwhelming evidence of legal representation in this case, and ignores the fact that on at least two occasions Monsanto has taken the position that all former employees should be deemed represented and thus be off limits to the other side. In the face of these circumstances, Monsanto could not rely on a lay person's understanding of whether he was

---

[1] The declaration of Heather Lamberg Kafele was filed with Syngenta's motion for sanctions on June 9, 2006.

or was not represented and "evade the requirement of obtaining the consent of counsel by closing [its] eyes to the obvious." Model Rules of Prof'l Conduct R. 4.2 cmt. 8 (2002).

Second, Monsanto now claims that Mr. Bogart's interview of Mr. Aidun was permissible – despite having previously convinced this Court to prohibit just such a meeting between Syngenta and a former Monsanto employee – because Monsanto did not seek any "confidential" information. (*See* Apr. 20, 2006 Hr'g Tr. at 33, Kafele Decl. Ex. O.) Rather, Monsanto claims the meeting "focused on general information about Mr. Aidun and the corn industry." (Mon. Br. at 7.) Importantly, while Monsanto tells us what the meeting "focused on" and gives a laundry list of highly specific topics that were *not* discussed (*see* D.I. 467 ("Mon. Br.") at 6), it does not disclose what additional topics *were* discussed at the meeting beyond those that were the alleged "focus." To the extent Monsanto intends to suggest no other topics were addressed, such a representation would defy belief. Indeed, Monsanto does not offer a single credible reason why it would go to the expense of flying a Howrey partner to Minnesota in search of such "general information." [REDACTED]

Third, Monsanto argues that even if it acted unethically and in bad faith, Mr. Aidun's testimony should not be excluded because Syngenta has failed to show a "genuine taint." Monsanto misses the point. Any doubt that a party may have benefited from its unethical conduct should be resolved against that party. More importantly, the exclusion of Mr. Aidun's testimony is narrowly tailored to address Monsanto's misconduct. There is simply no way of

knowing how the *ex parte* meeting may have affected Mr. Aidun's later testimony. The potential taint of Monsanto's unethical behavior requires exclusion of Mr. Aidun's testimony.

## ARGUMENT

### I.    MONSANTO'S SECRET MEETING WITH MR. AIDUN VIOLATED RULE 4.2

Of the three elements of a Rule 4.2 violation, Howrey only disputes one: knowledge of representation. (*See* Mon. Br. at 8-10.) Therefore, the only issue before the Court in regard to whether Howrey violated the Model Rules is whether the circumstances here support an inference that Howrey knew Mr. Aidun was represented by Syngenta's counsel, Shearman & Sterling, at the time of the *ex parte* contact. *See, e.g.*, Model Rules, R. 4.2 cmt. 8 (counsel's knowledge of representation "may be inferred from the circumstances").

Monsanto does not refute the key facts presented in Syngenta's opening brief that indicate that Howrey knew Mr. Aidun was represented by Syngenta's counsel. Indeed, it is now undisputed that: (a) ███████████████████████████████████████ ███████ (b) Howrey did not subpoena Mr. Aidun to appear for his deposition, a practice it has followed for all third parties unrepresented by Syngenta's counsel that it sought to depose; (c) Howrey made arrangements for the deposition through Shearman & Sterling, in the same way it has for all persons represented by Syngenta's counsel; (d) a Howrey attorney admitted to Mr. Aidun at the *ex parte* meeting that he knew Shearman & Sterling attorneys would be preparing him for the deposition; (e) a Shearman & Sterling attorney defended Mr. Aidun at his deposition ████████████████████████████████████████████████████████ ███████ and (f) Monsanto was aware before the *ex parte* meeting that counsel for Syngenta

was representing former employees noticed for deposition in this case. (Kafele Decl. Ex. H ("Stein Dep.") at 14-15; *see also* Op. Br. at 6-8.)[2]

Monsanto's primary response to these facts is a declaration from John Bogart, the attorney who engaged in the *ex parte* meeting and who later deposed Mr. Aidun, which states that he asked Mr. Aidun whether he was represented by counsel and Mr. Aidun had responded he was not. (Mon. Br. at 1-3.) Mr. Bogart, however, was not at liberty to ignore the overwhelming indicia of representation in this case based merely on Mr. Aidun's purported statements.[3]

*Faison v. Thornton*, 863 F. Supp. 1204 (D. Nev. 1993), is directly on point. In *Faison*, two attorneys held an *ex parte* meeting with a person, Richard Gilman, who had told them that he "strongly believed that he was not represented by counsel." *Id.* at 1211. Despite that statement, the court went on to find, based on surrounding circumstances, that Gilman had been represented and that the attorneys who conducted the *ex parte* meeting knew that. *Id.* at 1214. The court held that the fact that "Gilman stated he did not believe he was represented by counsel" was "of no consequence," and that the meeting was in violation of a state ethics rule that was a "verbatim adoption of Rule 4.2." *Id.* at 1213-14 (imposing severe sanctions including disqualification of the attorneys who conducted the *ex parte* meeting). Given the extensive evidence of representation in this case, Howrey simply was not allowed to "evade the

---

[2] The cases Monsanto cite for the proposition that Rule 4.2 does not prohibit contact with former employees are not applicable here. The analysis in those decisions assumes that the former employee was not represented by counsel and that there were no facts suggesting such representation. (*See* Mon. Br. at 9 (citing such cases).) The question here is whether all of the circumstances surrounding Mr. Aidun support an inference that Howrey knew he was represented. *See, e.g., Terra Int'l Inc. v. Miss. Chem. Corp.*, 913 F. Supp. 1306, 1315 (N.D. Iowa 1996) ("[F]ormer employees who are in fact represented by the former employer's counsel, or any counsel, are plainly off limits.").

[3] ███████████████████████████████████████████████████████████████████████ (Aidun Dep. at 261-62.)

requirement of obtaining the consent of counsel by closing [its] eyes to the obvious." Model Rules, R. 4.2 cmt. 8. Howrey was required to contact Shearman & Sterling for permission to speak with Mr. Aidun, and was not at liberty to seek such permission from Mr. Aidun himself. *See, e.g.*, ABA/BNA, Lawyer's Manual on Professional Conduct at 71:309 (ABA/BNA) (Nov. 17, 2004) ("The decision to permit or prohibit direct communication with a client is therefore given to the lawyer, not the client."); *see also* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-396 (1995) (stating Rule 4.2 is intended to "provide protection of the represented person against overreaching by adverse counsel, safeguard the lawyer-client relationship from interference by adverse counsel, and reduce the likelihood that clients will disclose privileged or other information that might harm their interests"); ABA Report to the House of Delegates, No. 401 (February 2002), Model Rules, R. 4.2, Reporter's Observations, at ¶ 5 ("[T]he protections accorded by Rule 4.2 may not be waived by the client.").

Furthermore, Monsanto's brief does not address the fact that *Monsanto itself* had previously taken the position that *all* former employees should be deemed represented and not be contacted by opposing counsel. (*See* Op. Br. at 7-8 (citing Howrey letters that objected to Syngenta patent counsel's attempt to contact a former Monsanto employee who it had no reason to believe was represented on the grounds that "we represent Dr. Stalker in connection with his prior employment with Monsanto" and "we represent him in his capacity as a former . . . Monsanto employee"); *see also* Monsanto's Initial Disclosures, Kafele Decl. Ex. Q at 2 (stating that Syngenta's communication with both current and former Monsanto employees should "take place through Monsanto's counsel").)



██████ (*Id.* at 128.)[4]

Ignoring this crucial testimony, ██████ (*See* Mon. Br. at 8; *see also* Aidun Dep. at 128.) ██████

██████ The law is clear that a person need not have personally retained an attorney for a representative relationship to exist between them. (*See* Op. Br. at 7, n. 3; *see also* Stein Dep. at 14-15 ██████.)[5]

All of these factors support an inference, in accordance with the requirements of Rule 4.2, that Howrey knew Mr. Aidun was represented by Syngenta's counsel when it arranged and conducted the *ex parte* meeting. Howrey could "not avoid the need to secure consent of counsel by closing [its] eyes to circumstances that make it obvious that the person to be communicated

---



[4] ██████ (Aidun Dep. at 128.)

[5] ██████ (Aidun Dep. at 271 ██████

with is represented." *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1009 (N.D. Ill. 2003).

II.  **MONSANTO ACTED IN BAD FAITH BY ELICITING CONFIDENTIAL INFORMATION FROM MR. AIDUN AT THE SECRET MEETING**

Even if Howrey was unaware of Shearman & Sterling's representation of Mr. Aidun (despite all the evidence to contrary), Monsanto's conduct was still in violation of standards of good faith. At the time of the meeting, Monsanto knew former Syngenta employees were bound by confidentiality agreements (Op. Br. at 8-9), yet it nonetheless sought confidential information from Mr. Aidun. Indeed, even more egregiously, the meeting with Mr. Aidun was in direct conflict with Monsanto's prior (successful) argument before this Court – regarding Tom Klevorn – that meetings with former employees to discuss their former employment are inappropriate when they remain bound by a confidentiality agreement. Monsanto's response is based solely on its representation that it did not seek confidential information from Mr. Aidun. (Mon. Br. at 10-11.) This representation, however, is unsupported by the factual statements Monsanto makes in its brief and directly refuted by Mr. Aidun's testimony.[6]

A.  **The Evidence Shows that Howrey Did Not Arrange this Secret *Ex Parte* Meeting Only to Discuss Mr. Aidun's Personal Background and His Views on the Corn Industry**

Monsanto suggests that it went to the time, effort, and expense of arranging and conducting a clandestine *ex parte* meeting with a former employee of its litigation adversary yet did not seek any information about that adversary. Monsanto carefully argues that the meeting "focused on" Mr. Aidun's "personal background (*e.g.*, education and employment history)" and

---

[6] Interestingly, Monsanto attempts to defend its position by selectively attaching certain evidence relating to the *ex parte* meeting to its brief (two emails with Mr. Aidun), while conspicuously omitting other – likely more probative – evidence, such as Mr. Bogart's notes from the meeting or internal discussions about the meeting.

"his perceptions of the corn seed market." (Mon. Br. at 6-7.) Monsanto then presents a laundry list of highly specific topics that were *not* discussed at the meeting. (*Id.*) Conspicuously absent from Monsanto's brief is what additional topics *were* discussed other than those that were the alleged "focus" of the meeting. To the extent Monsanto intends to suggest that no topics were covered other than those that were the "focus," such a representation would be doubtful for several reasons.

*First*,  (*E.g.*, Reply Ex. 1, Aidun Pat. Dep. at 4-23 ▮▮▮▮)

*Second*, contacting Mr. Aidun, paying him $1,000 to attend the meeting (Mon. Br. at 5; Mon. Ex. 6),[7] making necessary arrangements with a Marriot in Minneapolis, and sending a partner at Howrey to travel to and attend the meeting no doubt caused Monsanto to incur many thousands of dollars in legal fees and expenses. If Monsanto merely wanted to obtain Mr. Aidun's personal background information and his general views on the corn industry, Howrey could have waited and asked such questions at Mr. Aidun's deposition a week later, thereby avoiding the additional time, effort, and expense of a separate meeting.

---

[7] Importantly, courts have held that sanctions are appropriate where a lawyer provides a financial inducement to an adversary's former employee that creates a risk that he might violate continuing confidentiality obligations. *See, e.g., Butler v. Biocore Medical Technologies, Inc.*, 348 F.3d 1163, 1170 (10th Cir. 2003) (upholding District Court order sanctioning attorney who had paid adversary's former employee $400 to organize documents, despite attorney and former employee's claims that no confidential information was disclosed); *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651, 655 (M.D. Fla. 1992), *aff'd*, 43 F.3d 1439 (11th Cir. 1995) (disqualifying attorney who had hired adversary's former employee as a "trial consultant" because of "the appearance that [the law firm], through its payments to [the former employee], has induced [the former employee] to disclose to it confidential matters").

*Third*, given that Mr. Aidun had worked at Syngenta for most of his professional career – from October 1998 until November 2005 – there was essentially nothing that could have been discussed but his work at Syngenta or things he had learned while working at Syngenta, both topics that would violate Mr. Aidun's confidentiality agreement. Indeed, it is undeniable that the discussions Mr. Bogart had with Mr. Aidun at the *ex parte* meeting, which by Monsanto's admission included "the nature of his employment history at Syngenta and his perceptions of the corn seed market" (Mon. Br. at 6), resulted in disclosure of information that Mr. Aidun's confidentiality agreement defines as "confidential." (Aidun Confidentiality Agreement, Kafele Decl. Ex. E (defining confidential information as, among other things, "any information . . . obtained in any way during the course of employment").)

Thus, Monsanto's representation that it did not seek confidential information is refuted both by common sense and by Monsanto's own characterizations of what was discussed.

### B. Mr. Aidun Testified that Howrey Sought Confidential Information from Him at the Secret Meeting

Monsanto attempts to justify its behavior – and distinguish the present situation from the Klevorn dispute – on the grounds that Howrey did not seek what it considered confidential information from Mr. Aidun (whereas Syngenta had signaled its intention to seek such information from Mr. Klevorn). (Mon. Br. at 10-11.) This position is fully refuted by Mr. Aidun's testimony. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

███████████████████████████████████

███████████ (Aidun Dep. at 257-63, 67.)[8]

### C. Howrey's Conduct Here is Inconsistent with Positions it Took Before this Court When Seeking to Prevent Syngenta from Interviewing a Former Monsanto Employee about his Time at Monsanto

Even if Monsanto's arguments that it did not seek what it considered confidential information were credible, and even if Mr. Aidun had not testified that Howrey had in fact sought confidential information, the meeting would still have been improper: It was not appropriate for Howrey to arrogate to itself the power to unilaterally define what constitutes confidential information when dealing with a former Syngenta employee bound by a confidentiality agreement. Indeed, Monsanto has previously made just this point to the Court. In oral argument on the Klevorn dispute, a Howrey attorney noted that "Mr. Klevorn was involved in a number of matters with lawyers that definitely involved attorney/client and other privileges" and then stressed that "I do not believe that Mr. Schwed or anyone else at Shearman & Sterling should be the arbiter of what they can find out from Mr. Klevorn." (Apr. 20, 2006 Hr'g Tr. at 33, Kafele Decl. Ex. O.)

The situation here with Mr. Aidun is indistinguishable. Mr. Aidun was the former Business and Key Accounts Manager at GreenLeaf Genetics, the licensing arm of Syngenta.

███████████████████████████████████

---

[8] ███████████████████████████████████ Mr. Aidun is a non-lawyer who testified he had no legal training (Aidun Dep. at 267), and thus cannot be expected to know where to draw the line between confidential and non-confidential or privileged and non-privileged information. (*See* Op. Br. at 10 n. 6 (citing cases).) Indeed, the topics Mr. Aidun testified he remembered discussing at the meeting show he was, in fact, incapable of accurately drawing those lines. (*See* Aidun Confidentiality Agreement, Kafele Decl. Ex. E (prohibiting disclosure of "any information . . . obtained in any way during the course of employment").) It was bad faith for Howrey to have put Mr. Aidun in this situation.

██████████████████████████████████████████

████████████████████████████████ (*See, e.g.*, Reply Ex. 2, Wulfkuhle Dep. at 20-22, 40-41; Reply Ex. 3, Jessen Dep. at 282-83; Reply Ex. 4, Resler Dep. at 74-76.) Such activities, much like Mr. Klevorn's activities, naturally involve attorney-client privileged communications and access to confidential information. If Howrey had informed Syngenta of its intentions to engage in an *ex parte* meeting with Mr. Aidun, Syngenta would have objected and argued to this Court that Mr. Aidun was no doubt in possession of privileged and/or confidential Syngenta information, and that Syngenta does "not believe that [Mr. Bogart] or anyone else at [Howrey] should be the arbiter of what they can find out from [Mr. Aidun]." As a result of Monsanto's clandestine maneuvers, however, Syngenta was denied the opportunity to make this argument, and this Court was denied the opportunity to apply its earlier ruling regarding Mr. Klevorn to Mr. Aidun.

Given the high level of similarity between Syngenta's proposed interview of Mr. Klevorn about his time at Monsanto – which this Court forbade as a result of Monsanto's arguments – and Howrey's interview of Mr. Aidun, it was bad faith for Howrey to fail to bring the possibility of such a meeting to either Syngenta or the Court before conducting it. Monsanto told this Court that Syngenta should be "prevented from sitting down in a room with Mr. Klevorn and pumping him for information about Monsanto that they're not entitled to in that way, that may be privileged, that's proprietary and confidential." (Kafele Decl. Ex. O at 33.) Yet Monsanto's counsel did exactly that with Mr. Aidun.

### III. SYNGENTA'S PROPOSED RELIEF IS APPROPRIATE

All of these circumstances support a conclusion that Howrey should have contacted Syngenta before arranging a clandestine *ex parte* meeting with a former Syngenta employee.

Sanctions are appropriate because of the violation of the Model Rules of Professional Conduct and because – even if the Rules were not violated – the conduct was in bad faith.

Syngenta's requested relief, including deletion of Mr. Aidun's deposition from the record, is appropriate because it is narrowly tailored to address the uncertainty that Howrey's misconduct has injected into the process. Monsanto would require that Syngenta prove an actual taint before being granted relief – a difficult, if not impossible, burden.[9] (Mon. Br. at 12.) The burden, however, should not be on Syngenta under these circumstances. If there is any doubt that Monsanto may have benefited from its improper meeting with Mr. Aidun,[10] that doubt should be resolved in favor of cleansing the potential taint, and precluding Monsanto from making use of evidence it obtained at the meeting or at the deposition a week later. *See, e.g., Penda Corp. v. STK, LLC*, No. Civ. A. 03-5578, 2004 WL 1628907, at *7 (E.D. Pa. July 16, 2004) ("It would be inequitable to permit the plaintiff to keep any advantage it may have gained from the ethical violation."); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080,

---

[9] [redacted]

[10] Monsanto would have this Court believe that it conducted a clandestine *ex parte* meeting with a former Syngenta employee who was scheduled to be deposed a week later, yet did not use any information it obtained at that meeting to its benefit in the deposition. That position is simply unbelievable. That the meeting impacted how Howrey conducted the deposition is a virtual certainty. What we may never know is precisely which questions Mr. Bogart asked – or did not ask – Mr. Aidun at the deposition because he had had the opportunity to pump him for information the week before. We may also never know how Mr. Bogart decided to rephrase questions to avoid problem areas for Monsanto, or to elicit a favorable response. But the fact that we many never know these things should not allow Monsanto to escape the consequences of its actions and to benefit from its unethical, bad faith conduct.

1088 (S.D.N.Y. 1989) (ordering two depositions deleted from the record that were taken within two weeks of an improper *ex parte* meeting); *see also* Op. Br. at 11-13.[11]

---

[11] Far from "overreaching" (Mon. Br. at 11), Syngenta was very measured in its request for relief, especially given that courts have routinely disqualified lawyers and law firms for similar conduct (relief that Syngenta did not request). (*See* Op. Br. at 11-12 (collecting cases).)

## CONCLUSION

For the foregoing reasons, Syngenta respectfully requests that this Court grant the motion for sanctions against Monsanto.

                                         Respectfully submitted,

                                         YOUNG CONAWAY STARGATT
                                            &amp; TAYLOR, LLP

                                        */s/ Karen E. Keller*
                                        John W. Shaw (No. 3362)
                                        Rolin P. Bissell (No. 4478)
                                        Karen E. Keller (No. 4489)
                                        The Brandywine Building, 17th Floor
                                        1000 West Street
                                        Wilmington, Delaware 19801
                                        (302) 571-6600
                                        kkeller@ycst.com
                                        *Attorneys for Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Jonathan R. DeFosse
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: June 30, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2006, I caused to be electronically filed a sealed version of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz, Esquire
>Potter Anderson & Corroon LLP
>Hercules Plaza
>1313 North Market Street
>Wilmington, DE 19899-0951

I further certify that on June 30, 2006, true and correct copies of the foregoing document will be served by hand delivery on the above listed counsel. I additionally certify that true and correct copies of the foregoing document are being served on the following non-registered participants as indicated below:

**BY E-MAIL AND FEDERAL EXPRESS**

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen E. Keller*

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Defendants Syngenta AG and Syngenta Participations AG*