IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, et al.,       )
                                )
        Plaintiffs,             )
                                )
                                ) Civ. No. 04-305-SLR
    v.                          )
                                )
                                )
SYNGENTA SEEDS, INC., et al.,   )
                                )
        Defendants.             )

---

Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter, Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Peter E. Moll, Esquire, John J. Rosenthal, Esquire and Scott Flick, Esquire of Howrey LLP, Washington D.C.; Kenneth A. Letzler, Esquire and Jonathan I. Gleklen, Esquire of Arnold & Porter LLP, Washington D.C..

John W. Shaw, Esquire and Rolin P. Bissell, Esquire of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Richard F. Schwed, Esquire and Stephen Fishbein, Esquire of Shearman & Sterling LLP, New York, New York; Heather Lamberg Kafele, Esquire and Jonathan R. DeFossee, Esquire of Shearman & Sterling, LLP, Washington D.C..

---

**MEMORANDUM OPINION**

Dated: August 4, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On July 28, 2004, Syngenta Seeds, Inc. filed this antitrust action against Monsanto Company and Monsanto Technology LLC (collectively called "Monsanto") alleging Monsanto has monopolized the markets for glyphosate-tolerant corn ("GA21 corn") traits and European corn borer-tolerant corn traits, and has attempted to monopolize the foundation corn seed market. Monsanto filed an amended answer with counterclaims against Syngenta AG, Syngenta Participations AG, Syngenta Corporation, Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Advanta USA, Inc., Gartst Seed Co., and Golden Harvest Seed Co (collectively called "Syngenta").[1] Monsanto asserts in its counterclaims that Syngenta misappropriated Monsanto's GA21 event and is improperly selling Monsanto's event as its own. Before the court is Syngenta's motion to dismiss counterclaims I, II and III. (D.I. 132)

## II. BACKGROUND

The case involves disputed rights to corn seed containing the trait that permits farmers to grow corn tolerant to a leading non-selective herbicide, glyphosate. (D.I. 133 at 4) The glyphosate-tolerant trait allows growers to spray glyphosate herbicide over the entire crop to kill weeds without damaging the

---

[1]Syngenta AG and Syngenta Participations AG contest personal jurisdiction and do not join this motion.

crop. (Id.)

In the early 1990s, DEKALB Genetics Corporation ("DEKALB") and Rhone-Poulenc Agro, S.A. ("RPA") collaborated to genetically alter corn to make it resistant to glyphosate. (D.I. 77, countercl. at ¶ 21) In 1993, DEKALB grew transformed GA21 event corn plants resistant to Roundup herbicide and developed a glyphosate-tolerant corn line containing this event, the "GA21 corn line." (Id. at ¶ 22) RPA granted Monsanto the right to make, use, sell, import and export GA21 event corn seed. (Id. at ¶ 25) In 1998, Monsanto began marketing a glyphosate-tolerant corn trait, sold under the brand name Roundup Ready®, using the GA21 event. (Id.)

During the same time, Monsanto entered GA21 license agreements with Garst and Golden Harvest, as well as many other seed companies, granting the seed companies licenses to "develop, produce, have produced, and sell" corn hybrids created through crossing a GA21 corn line from Monsanto with another inbred line from the seed company. (Id.) In 2004, Syngenta acquired Garst and Golden Harvest Seeds, which were both licensees of GA21 event Roundup Ready® corn at the time of the acquisitions. (Id. at ¶ 46-7) Garst and Golden Harvest transferred to Syngenta inbred corn lines containing the GA21 event licensed to them in 1998. (Id. at ¶ 50) Those GA21 inbred lines were crossed with other proprietary inbred lines to make GA21 hybrid corn seeds, which

2

were offered for sale by Syngenta, Garst and/or Golden Harvest for the 2005-selling season under the brand name Agrisure GT. (Id. at 53-4)  Monsanto alleges that Syngenta is selling corn seed that contains or derives from GA21 event technology that Monsanto licensed to Garst and/or Golden Harvest in 1998. (D.I. 77 at ¶¶ 53, 55-60, 62)

### III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiffs. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id.  Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiffs cannot demonstrate any set of facts that would entitle them to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

### IV. DISCUSSION

Monsanto has asserted three counterclaims that are at issue

3

in this motion: (1) Reverse passing off under the Lanham Act (count I); (2) False advertising under the Lanham Act (count III); and (3) Violations of the Delaware Deceptive Trade Practices Act (count II). (D.I. 77) The court will address each in turn.

### A. Reverse Passing Off

Reverse passing off occurs when one company sells another company's product as its own. See e.g., General Universal Sys. Inc. v. Lee, 379 F.3d 131, 148 (5th Cir. 2004). To state a claim for reverse passing off, Monsanto must allege that Syngenta made false or misleading statements or descriptions of fact that are likely to cause confusion or mistake as to the origin of Syngenta's "product." 5 U.S.C. § 1125(a)(1)(A). The issue raised by the papers is whether it is the GA21 trait or the seed that should be considered the "product" being sold. Syngenta does not sell the seed produced by Monsanto, but does sell a seed containing the GA21 trait produced by Monsanto.

The Supreme Court has recently limited the scope of reverse passing off claims. Dasta Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003). The plaintiff in Dastar, Twentieth Century Fox Film Corporation ("Fox"), produced a television series entitled "Crusade in Europe." Id. at 25-6. In 1988, Fox granted to SFM Entertainment ("SFM") and New Line Home Video ("New Line") the exclusive right to sell "Crusade in Europe" on

video. In 1995, the defendant, Dastar Corporation ("Dastar"), purchased tapes of the original series, modified them, and sold them under the title "World War II Campaigns in Europe." Id. at 26-7.

> Dastar's Campaigns series is slightly more than half as long as the original Crusade television series. Dastar substituted a new opening sequence, credit page, and final closing for those of the Crusade television series; inserted new chapter-title sequences and narrated chapter introductions; moved the "recap" in the Crusade television series to the beginning and retitled it as a "preview"; and removed references to images of the book. Dastar created new packaging for its Campaigns series and . . . a new title.

Id. at 26-27. Fox, SFM, and New Line sued Dastar alleging, inter alia, that Dastar had engaged in reverse passing off under the Lanham Act by selling the "World War II Campaigns in Europe" video without crediting the "Crusade in Europe" series or acknowledging reliance on the series' content. Id.

The Supreme Court held that the term "origin of goods," as used in the Lanham Act, "refer[s] to the producer of the tangible goods that are offered for sale in the marketplace" and not to the source of "the intellectual property, idea, or concept" that the product contains. Id. at 37. Because Dastar manufactured the "World War II Campaigns in Europe" video, Dastar was considered the origin of the product. Even though Dastar's version contained old film footage obtained from the plaintiffs, Dastar properly marketed and sold the products as its own, and Fox did not have a claim for reverse passing off under the Lanham

5

Act.

Under the Dastar precedent, the focus of the case at bar is on what the product is: If the product is considered the seed, Monsanto has no claim, but if the product is considered the GA21 trait, Monsanto may have a claim. Monsanto argues that Syngenta's crossing of Monsanto's inbred corn line containing the GA21 trait with another inbred corn line to create a hybrid seed without modifying the GA21 trait, is akin to simply repackaging Monsanto's product. Thus, Monsanto argues that the trait is the "product."

The court disagrees, and concludes that the seed is the tangible product sold in the marketplace. The court understands that consumers buy the seed for its GA21 trait.[2] However, under the language of Dastar, the seed is still the tangible product being sold in the marketplace. This conclusion finds support in the very language used by Monsanto in its counterclaims, where it refers to the improper marketing, selling and licensing of "**corn seed** containing Monsanto's GA21 event," "**corn-seed** products," and "**corn**." (D.I. 77, countercl. at ¶¶ 54, 55, 62)(emphasis added). This conclusion is also consistent with the reasoning of the Supreme Court in Dastar. "[W]e conclude that the phrase [origin of goods] refers to the producer of the tangible goods that are

---

[2] Monsanto cites an excerpt from GreenLeaf Genetics' website that advertises the trait, as opposed to the seed. (D.I. 144 at 9)

6

offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." Dastar, 539 U.S. at 37. Noting the Supreme Court's reluctance to tread on the areas of intellectual property, the court declines to consider Syngenta's hybrid seed containing the GA21 trait to be "merely repackag[ing]." Dastar, 539 U.S. at 31. Whether the trait contained in the seed is the intellectual property of another, is a question for the intellectual property laws. "[I]n construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." Dastar, 539 U.S. at 35 (citing Trafix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29 (2001)).

Having concluded that the seed is the tangible product being sold in the marketplace, Monsanto's counterclaim must fail. Monsanto has not pled that Syngenta sells the same seed as it. Under the Dastar precedent, Monsanto's reverse passing off claim is dismissed.

### B. Lanham Act False Advertising Claim

To state a claim for false advertising, Monsanto must plead facts alleging that Syngenta made false or misleading statements or descriptions of fact in commercial advertising or promotion

7

that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  5 U.S.C. § 1125(a)(1)(B). Monsanto asserts that Syngenta has made false statements of material fact in commercial advertising, including:  (1) Stating that Syngenta acquired the right to practice the GA21 genetic event from Bayer CropScience; (2) Stating that Syngenta has full rights in the GA21 genetic event; (3) Stating that the GA21 event corn products Syngenta is selling were developed by it or by an entity or entities unaffiliated with Monsanto; (4) Stating that Syngenta still has a license or other valid legal authority given by Monsanto to provide corn and other seed products containing Monsanto proprietary technology; and (5) Implying that Syngenta is still an authorized licensee of products under Monsanto's trademarks, but that Monsanto is requiring Syngenta to use other trademarks for such products.  (D.I. 77, countercl. at 37)

Under Dastar, a false advertising claim that merely rephrases a reverse passing off claim is barred.  However, Dastar still allows for "a cause of action - not for reverse passing off under the 'confusion . . . as to the origin' provision of § 43(a)(1)(A), but for misrepresentation under the 'misrepresents the nature, characteristics [or] qualities' provision of § 43(a)(1)(B)."  Dastar, 539 U.S. at 38.  For example, as explained in Dastar, if Syngenta were to give the impression to consumers

8

that its seed was "quite different" from Monsanto's seed, a false advertising claim may stand.

All five assertions under the Lanham Act claim relate to Syngenta's alleged false statements regarding the origin of the GA21 corn seed or the origin of the GA21 event component of the corn seed. None of Monsanto's assertions are directed to the "nature, characteristics [or] qualities" of the corn seed, which would adequately have pled a false advertising claim. See Dastar, 539 U.S. at 38. Under the reasoning in Dastar and the analysis above, the statement that Syngenta is the origin of the seed sold is not a false advertising claim. Furthermore, it follows from Dastar that Syngenta need not credit Monsanto with the GA21 technology contained in the seed, because the seed is the tangible product in the marketplace. All of the statements asserted by Monsanto boil down to Syngenta's alleged passing off Monsanto's GA21 trait as its own. Such a claim, however styled, is barred by the language and holding of Dastar. The Lanham Act counterclaim is dismissed.

### C. Delaware Deceptive Trade Practices Act

Monsanto has pled a variety of conduct as actionable under the Delaware Deceptive Trade Practices Act, including: (1) Syngenta passed off Monsanto's goods as its own; (2) Syngenta caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, certification, affiliation,

connection or association of Syngenta's glyphosate-tolerant product with Monsanto's GA21 product; (3) Syngenta falsely represented that its goods and services are of a particular standard, quality, grade or model; and (4) Syngenta engaged in other conduct which similarly creates a likelihood of confusion or of misunderstanding.  6 Del. C. § 2532(a)(1)-(3), (7), (12).

The court agrees with Syngenta that the first two allegations fail for the same reasons as the Lanham Act claim fails.  See Toro Co. v. Textron, Inc., 499 F.Supp. 241, 249 n.17 (D. Del. 1980)(concluding the Deceptive Trade Practices Act affords no greater protection than the Lanham Act).  However, the court declines to dismiss the Delaware Deceptive Trade Practices claim altogether, because Syngenta can still be liable, under Dastar, for falsely attributing certain qualities or attributes to its product.  See Dastar, 539 U.S. at 38 ("If, moreover, the producer of a video that substantially copied the Crusade series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action . . . for misrepresentation under . . . § 43(a)(1)(B).")  While Monsanto did not adequately plead such a cause of action in its Lanham Act claim, it was adequately pled under the Delaware Deceptive Trade Practices claim.  As a result, Syngenta's motion to dismiss as to this claim is denied.

## V. CONCLUSION

For the reasons discussed above, Syngenta's motion to dismiss for is granted in part and denied in part. An order consistent with this memorandum opinion shall issue.