THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 04-305-SLR |
| v. | ) | (Consolidated) |
| | ) | |
| SYNGENTA SEEDS, INC., *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MONSANTO'S MOTION TO STAY
THE TRIAL IN THE ANTITRUST ACTION PENDING RESOLUTION OF
<u>MONSANTO'S PATENT CLAIMS ON APPEAL</u>**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON, LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Peter E. Moll
Scott E. Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004
(202) 783-0800
(202) 383-6610 facsimile

Dated: August 23, 2006

Attorneys for MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT .........................................................................................................2

ARGUMENT ........................................................................................................................................3

I.   THE ANTITRUST TRIAL SHOULD BE STAYED PENDING
     RESOLUTION OF THE PATENT APPEAL ...........................................................................3

     A.   A Stay Will Preclude the Necessity to Retry the Antirust
          Claims Should the Federal Circuit Reverse the Court's
          Summary Judgment Ruling .................................................................................4

     B.   Resolution of the Patent Claims On Appeal Will Simplify
          The Issues Presented At Trial And Promote Judicial
          Economy ...................................................................................................................8

     C.   The Balance of Harm to the Parties Weighs in Favor of A
          Stay of the Antitrust Trial ....................................................................................9

     D.   A Stay Will Be of Moderate Duration While the Court
          Awaits Resolution of the Patent Issues Currently on Appeal .................10

CONCLUSION ..................................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
  315 F. Supp. 2d 615 (D. Del. 2004) .................................................................................. 5

*Baxter International, Inc. v. Cobe Laboratories, Inc.*, No. 89 C 9460,
  1992 WL 77665 (N.D. Ill. Apr. 7, 1992) ............................................................................ 5

*Carpet Group International v. Oriental Rug Importers Ass'n, Inc.*,
  227 F.3d 62 (3d Cir. 2000) ................................................................................................. 8

*Cheminor Drugs, Ltd. v. Ethyl Corp.*
  168 F.3d 119 (3d Cir. 1999) ............................................................................................... 7

*Cheyney State College Faculty v. Hufstedler*,
  703 F.2d 732 (3d Cir. 1983) .......................................................................................... 4, 10

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
  720 F. Supp. 373 (D. Del. 1989) ........................................................................................ 4

*Elsag Bailey (Canada) Inc. v. Trojan Technologies, Inc.*, No. 96-CV-3615,
  1996 U.S. Dist. LEXIS 14679 (E.D. Pa. Oct. 2, 1996) .................................................. 5, 8

*In re Innotron Diagnostics*,
  800 F.2d 1077 (Fed. Cir. 1986) ......................................................................................... 5

*In re Warfarin Sodium Antitrust Litigation*,
  214 F.3d 395 (3d Cir. 2000) ............................................................................................... 7

*Landis v. North American Co.*,
  299 U.S. 248 (1936) .................................................................................................. 3, 4, 10

*Nobelpharma AB v. Implant Innovations, Inc.*,
  141 F.3d 1059 (Fed. Cir. 1998) ......................................................................................... 7

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries Inc.*,
  508 U.S. 49 (1993) .......................................................................................................... 7, 8

*SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304 et al.,
  2004 U.S. Dist. LEXIS 13907 (E.D. Pa. July 16, 2004) ............................................ passim

*United Sweetner USA, Inc v. Nutrasweet Co.*,
  766 F. Supp. 212 (D. Del. 1991) ........................................................................................ 6

## NATURE AND STAGE OF THE PROCEEDINGS

On May 12, 2004, Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") filed an action in the United States District Court for Delaware against Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc., alleging infringement of the Shah patent. *See Monsanto Co. v. Syngenta Seeds, Inc.*, C. A. No. 04-305 (SLR), D.I. 1. Monsanto filed its First Amended Complaint on June 9. D.I. 9. Syngenta answered and asserted counterclaims. *See* D.I. 10.

On July 28, 2004, Syngenta Seeds, Inc. sued Monsanto in Delaware for alleged violations of Section 2 of the Sherman Act. *See Syngenta Seeds, Inc. v. Monsanto Co.*, C. A. No. 04-908 (SLR), D.I. 1. Syngenta filed an Amended Complaint on September 14, 2004. *See* D.I. 8. Syngenta filed a Second Amended Complaint in the antitrust action on September 9, 2005. D.I. 124. Monsanto asserted certain counterclaims against Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Advanta USA, Inc., Syngenta AG, Syngenta Corporation and Syngenta Participations AG. *See* D.I. 138 (C. A. No. 04-305 (SLR) consolidated).

The Court consolidated the Shah Patent and Antitrust cases on March 24, 2005. *See* D.I. 15, 16 (Mem. Op. and Order). On August 23, 2005, the Court consolidated with the previously consolidated Shah Patent and Antitrust case a separate patent infringement action originally brought by DEKALB Genetics Corp. ("DEKALB") in the Northern District of Illinois against Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. for infringement of the Lundquist patents.[1] D.I. 111 (C. A. No. 04-305 (SLR) consolidated).

---

[1] After filing the patent suits, Monsanto and DEKALB amended their complaints to add Garst Seed Co., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Co., LLC, Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. as defendants. Garst Seed Co. and Golden Harvest Seeds, Inc. were also added as counterclaim defendants in the antitrust action. All defendants in the patent case and counterclaim defendants in the antitrust case are herein collectively referred to as "Syngenta."

On May 10, 2006, the Court granted Syngenta's motions for summary judgment of invalidity of U.S. Patent No. 4,940,835 (the "Shah patent") for lack of enablement and noninfringement of U.S. Patent Nos. 5,538,880 and 6,013,863 (collectively the "Lundquist patents"). D.I. 375, D.I. 378.

On June 26, 2006, Syngenta confirmed that it was dismissing Count III of the Second Amended Complaint, alleging attempted monopolization of the foundation seed market. *See* 06/26/06 Letter from Fishbein. The antirust claims and counterclaims are currently set for trial commencing on January 8, 2006. D.I. 197. This is the original trial date set by the Court; the case has not been previously stayed.

## SUMMARY OF ARGUMENT

At the June 27, 2006 hearing in this matter, the Court raised the issue of whether this matter should be stayed pending the resolution of the appeal of the patent matter. D.I. at 16. Monsanto submits that a stay of the trial on the antitrust claims pending resolution on appeal of the patent claims is appropriate for the following reasons:

1.  Issues now on appeal concerning the patents' validity and infringement are at the core of Syngenta's antitrust claims. Indeed, Syngenta's sole economic expert asserts that Monsanto's assertion of rights under the Shah and Lundquist patents are <u>one</u> of <u>three</u> anticompetitive practices resulting in foreclosure. Similarly, Syngenta's patent law expert's "opinion" that the patent lawsuits were objectively baseless is predicated on multiple issues now before the Federal Circuit. A stay will eliminate the risk that the antitrust issues will need to be retried in the event the Court's ruling either on validity or infringement is reversed.

2.  A stay of trial on the antitrust claims will simplify the issues at trial and promote judicial economy. If either of the Court's summary judgment rulings is reversed and the patent case proceeds to trial, it demonstrates that patent suits were not objectively baseless.

2

3.  The risk of retrial far outweighs any burden associated with waiting for a decision on appeal. Here, a stay of the antitrust trial will cause little, if any, prejudice to Syngenta. Syngenta is currently and will continue to license and sell its Agrisure GT (glyphosate tolerant) and Agrisure BT (ECB tolerant) traits and hybrid corn seed. Syngenta has recently entered a joint venture to facilitate the licensing of traits with the largest seed company in the U.S. - Pioneer. Any damages that Syngenta might suffer during the pendency of a stay can be easily quantified, as evidenced by the recent report of Syngenta's expert, Dr. Gilbert, quantifying the alleged damages suffered by Syngenta as a result of the alleged anticompetitive acts.

4.  The length of the requested stay favors granting the stay because the requested stay will be short-term and remain in effect only until the Federal Circuit has ruled on Monsanto's appeal. The procedural posture of the case is dramatically different as compared to the Court's initial April 2005 decision not to stay the case. Fact discovery has been completed, expert disclosures are completed, and expert discovery will be completed shortly. The stay should not impact any of the pretrial activities, but merely the timing of the actual trial on the merits. If the Federal Circuit reverses the Court's summary judgment ruling on either Shah or Lundquist, the patent case could proceed to trial prior to the antitrust claims - as originally contemplated by the Court's coordination schedule. If the Federal Circuit upholds the Court's ruling, then the presently sought stay would automatically be lifted, and the antitrust case could proceed immediately to trial.

## ARGUMENT

### I. THE ANTITRUST TRIAL SHOULD BE STAYED PENDING RESOLUTION OF THE PATENT APPEAL

A court has the inherent power to stay an action to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also E.I. Du Pont*

3

*de Nemours & Co. v. Phillips Petroleum Co.*, 720 F. Supp. 373, 384 (D. Del. 1989) (citations omitted). In considering whether to grant a stay, the Court should consider: (1) whether a stay will simplify issues and promote judicial economy; (2) the balance of harm to the parties; and (3) the length of the requested stay. *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737–38 (3d Cir. 1983); *Landis*, 299 U.S. at 255. These factors weigh in favor of a stay of the antitrust trial pending the appeal in the patent case.

### A. A Stay Will Preclude the Necessity to Retry the Antirust Claims Should the Federal Circuit Reverse the Court's Summary Judgment Ruling

At the June 27, 2006 hearing, the Court posed the following question: "Does the Federal Circuit's decision in [the patent case] have any potential effect on the appropriate outcome of the sham litigation claim here?" D.I. at 16. The answer to this question is a resounding yes. Were the Federal Circuit to reverse the Court's summary judgment ruling on either Shah or Lundquist after the completion of a jury trial on the pending antitrust claims, the very same claims would, in all likelihood, have to be retried.

A reversal by the Federal Circuit would indeed have broad implications. The sham patent allegations form the basis of Dr. Gilbert's, Syngenta's sole economic expert, opinion on foreclosure. Indeed, he points to the patent lawsuits as one of three primary anticompetitive practices by Monsanto that resulted in alleged foreclosure to Syngenta. Moreover, Bjorge, Syngenta's patent law expert, primarily bases his opinion that the patent suits were objectively baseless upon the issues that are now directly on appeal, i.e., that the Shah patent is not enabled because corn could not be transformed in 1986 and that the asserted Lundquist patent claims are not infringed because DEKALB performed the steps of claim 1. Bjorge Report ¶¶ 43-52, 63, 67-71.

Not only are the sham patent allegations affected, but also a wide variety of the anticompetitive allegations of Syngenta's Second Amended Complaint, including Monsanto's: (i) decision to withdraw GA21 from the marketplace; (ii) instructions to its

4

customers to cease the use of its GA21 by July 2005; (iii) request that seed companies destroy their inventories of Monsanto's GA21; and (iv) Monsanto's letters advising customers about the status of the intellectual property rights surrounding GA21. D.I. 124, ¶¶ 70-71, 79, 82-86, 89-96. Evidence offered in relation to these allegations are likely to infect the entire trial, requiring a retrial of both Count I (glyphosate-tolerant traits) and Count II (ECB-tolerant traits) in the event of a reversal at the Federal Circuit. A stay pending the resolution of the appeal before the Federal Circuit would, therefore, preclude the possibility of a retrial of the antitrust claims.

Faced with a similar dilemma, courts have often stayed antitrust claims where, as here, the validity and infringement of the patents being examined or reconsidered are relevant to the antitrust claims and a stay would simplify the issues presented and promote judicial economy. *See, e.g., In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (proper judicial practice to consolidate two separate but closely related antitrust and patent cases and to try separately each distinct issue); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2004 U.S. Dist. LEXIS 13907 (E.D. Pa. July 16, 2004); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 617–18 (D. Del. 2004) (phasing infringement and validity issues of patents in suit with willfulness, damages, and antitrust counterclaims, and later dismissing sham patent claims after patents found to be valid and enforceable at jury trial); *Elsag Bailey (Canada), Inc. v. Trojan Techs., Inc.*, No. 96 CV-3615, 1996 U.S. Dist. LEXIS 14679, at *2-*3 (E.D. Pa. Oct. 2, 1996) (granting stay of antitrust case because issue of whether the patent litigation was actionable as sham litigation would "at least be greatly aided and may be disposed of by resolution of the [patent infringement suit]," and failure to grant a stay "could surely result in [*inter alia*] a waste of judicial economy . . . ."); *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, No. 89 C 9460, 1992 WL 77665 at *2, *4 (N.D. Ill. Apr. 7, 1992) (staying antitrust counterclaim based on fraudulent patent procurement pending outcome of patent suit

5

given the potential for rendering moot antitrust issues upon resolution of infringement question).[2]

The holding in *SmithKline Beecham*, 2004 U.S. Dist. LEXIS 13907, is instructive. In that case, SmithKline moved for a temporary stay of defendants' antitrust counterclaims until it had exhausted its appeal of the Federal Circuit's decision invalidating one of its patents in a related Illinois action. 2004 U.S. Dist. LEXIS 13907, at *19-*20. As the Pennsylvania patent infringement and antitrust cases proceeded on their own schedule, the Illinois Court granted SmithKline's motion for summary judgment on validity of its patent, but ruled after trial that the Illinois defendants had not infringed the patent. *Id.* at *11. Both parties appealed, and the Federal Circuit reversed the trial court's validity determination and dismissed SmithKline's claims. *Id.* at *11-*12. SmithKline moved to stay the related Pennsylvania cases and antitrust counterclaims pending its request for *en banc* review of the Federal Circuit's invalidity ruling. *Id.* at *19.

The Pennsylvania court granted SmithKline's motion, finding that a stay of the antitrust claims pending appeal would simplify the litigation in the case. *Id.* at *25-*28. Specifically, the court found that, in the event the Federal Circuit's invalidity ruling was upheld *en banc*, SmithKline would not be able to assert its patent infringement claims in the related action nor its validity defenses to defendants' antitrust counterclaims, including defendants' allegations of sham patent litigation. *Id.* at *25-*26. If, on the other hand, SmithKline succeeded in overturning the Federal Circuit's decision invalidating its patent, some of defendants' counterclaims would be moot or resolved. *Id.*

---

[2] Similarly, courts routinely order stays in ongoing patent proceedings pending conclusion of a reexamination by the Patent and Trademark Office ("PTO") of the patent at issue because "waiting for the outcome of the PTO reexamination . . . would simplify issues and aid in preparation for trial." *See, e.g., United Sweetner USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (granting stay pending reexamination of patent because to do so was more efficient before "press[ing] on toward trial").

6

at *27. In either event, the validity issues would be resolved and likely removed from the litigation, thus simplifying the litigation. *Id.* at *25-*27.

The instant case presents very similar circumstances. Here, the consolidated cases have proceeded separately at the District Court level, the Court has ruled on issues of invalidity and infringement in the related patent cases, and an appeal of those rulings is pending. Many of Syngenta's antitrust allegations are dependent upon its contention that the Shah patent is not enabled and the Lundquist patents are not infringed and therefore unenforceable against Syngenta with respect to GA21 glyphosate-tolerant corn. As in *SmithKline*, Syngenta's allegation that Monsanto filed "baseless" patent claims in the Shah and Lundquist suits, for example, is *entirely* premised upon the validity and infringement of these patents.[3] If the Court's decision is reversed and remanded and the parties proceed to try the remaining validity and infringement issues, there is strong evidence that Monsanto had, at the time it filed suit, 'a reasonable belief that there is a chance that [a] claim may be held valid upon adjudication.' *PREI*, 508 U.S. at 62–63. Syngenta's claim would therefore fail. *See SmithKline Beecham*, 2004 U.S. Dist. LEXIS

---

[3] To establish that the Shah and Lundquist cases were "sham" patent litigation, Syngenta must first prove by clear and convincing evidence that Monsanto's litigation efforts were objectively baseless, *i.e.*, that "no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized . . . ." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus. Inc.*, 508 U.S. 49, 60 (1993) (*PREI*); *accord In re Warfarin Sodium Antitrust Lit.*, 214 F.3d 395 (3d Cir. 2000); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1063 (Fed. Cir. 1998) (proof that the suit is "objectively baseless" must be shown with clear and convincing evidence). Second – and only if the objectively-baseless test is satisfied – the subjective prong is considered, *see Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 123 (3d Cir. 1999) (noting that because the Court found that defendant's lawsuit was not objectively baseless, the Court need not address the second part of the PRE [Professional Real Estate] Court's two-part definition of sham litigation). "Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor,' through the 'use [of] the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon.'" *PREI*, 508 U.S. at 60–61 (citations omitted).

7

13907, at *26-*27. While a final determination of invalidity is not dispositive on the sham patent issue because Monsanto still could have reasonably expected success on the merits at the time it filed its patent lawsuit, *see Professional Real Estate Investors,* 508 U.S. at 60 n.5, the question of patent validity will not need to be litigated in the antitrust trial and Monsanto will rely on additional defenses to these allegations.[4] *See also Elsag Bailey,* 1996 U.S. Dist. LEXIS 14679, at *2 (finding that a stay would greatly aid the Court's "Noerr-Pennington sham analysis" because "part of the 'mosaic' of [plaintiffs'] antitrust claims is that [defendant] has filed a sham action in order to enforce an invalid patent").

### B. Resolution of the Patent Claims On Appeal Will Simplify The Issues Presented At Trial And Promote Judicial Economy

Count I of the Second Amended Complaint (alleging monopolization of the glyphosate-tolerant corn market) is entirely dependent on the outcome of the pending appeal and subsequent trial. If the Court's ruling is reversed on either Shah or Lundquist and the patents are found to be valid and infringed at trial, Syngenta does not have a GA21 product. Therefore, Syngenta could not lawfully be in any relevant market as a competitor in glyphosate tolerance and thus has no standing and antitrust injury under Count I of the Second Amended Complaint – essential elements of its § 2 Sherman Act claim. *See Carpet Group Int'l v. Oriental Rug Importers Ass'n,* 227 F.3d 62, 76-77 (3d Cir. 2000) (stating that antitrust injury is "an essential component of antitrust standing" required to file suit under Sherman Act).

---

[4] The record is replete with evidence that Monsanto's patent suits were anything but objectively baseless, including (1) the fact that hundreds of companies in the industry, including Syngenta, Garst, Golden Harvest and Bayer, had taken out licenses under the Shah and Lundquist patents, (2) that the district court in prior litigation involving the Shah patent and the '880 Lundquist patent had made rulings in Monsanto's favor on those patents, and (3) that both Syngenta and Bayer were concerned about Monsanto's IP rights and took precautionary measures on GA21 material to avoid being successfully sued on the Shah patent.

If the Court's ruling is reversed, Count II would also be substantially narrowed. This count is based on Syngenta's alleged inability to offer "stacked" GA21/ECB corn seed – which, by definition, incorporates the glyphosate-tolerance technology at the heart of the Shah patent – due to Monsanto's unlawful monopolization of the European corn-borer ("ECB") resistant corn market. D.I. 124, at ¶¶ 115-124. If the Court's summary judgment decisions are revered on appeal and the Shah and Lundquist patents are found to be valid and infringed at trial, Syngenta has no right to commercialize and thus no GA21 product to stack.

### C. The Balance of Harm to the Parties Weighs in Favor of A Stay of the Antitrust Trial

A stay avoids the risk that the antitrust claims may have to be retried should the Federal Circuit reverse the Court's ruling. The risk of a mandatory retrial on these issues or even the antitrust case as a whole far outweighs any burden associated with a short wait for the appellate decision that will become the law of the case, and a stay will cause little, if any, prejudice to Syngenta.

Despite its repeated blanket assertions that it has been foreclosed from the marketplace, Syngenta has been licensing its ECB tolerant traits since 1996 and its alleged GA21 traits since 2005. A stay will not impact its ability to continue to license and sell its Agrisure GT (glyphosate tolerant) and Agrisure BT (ECB tolerant) traits and hybrid corn seed. *See SmithKline Beecham*, 2004 U.S. Dist. LEXIS 13907, at *30 (finding that one defendant, in arguing that it would be harmed because unresolved patent infringement suits deterred defendant, its customers and other manufacturers from investing in the generic Paxil market, had overstated the risk of harm to it because it had already begun selling material to generic drug manufacturers and thus had entered the market). Moreover, Syngenta has openly stated that the Court's summary judgment

9

removed a "cloud of uncertainty" that was precluding it from providing a "broader range of glyphosate tolerate corn products."[5]

To the extent a stay were, in fact, to cause any measurable harm to Syngenta, such could be easily compensated in the form of money damages. In fact, Syngenta's recent expert report of Dr. Gilbert purports to quantify the alleged damages suffered by Syngenta as a result of the alleged anticompetitive acts. Certainly, Dr. Gilbert's report can be modified to account for any additional period covered by a stay.

### D. A Stay Will Be of Moderate Duration While the Court Awaits Resolution of the Patent Issues Currently on Appeal

A stay of the antitrust trial will be of moderate duration pending a resolution of the patent issues currently on appeal. *Cheyney State College*, 703 F.2d at 738 (citing *Landis*, 299 U.S. at 257) (where party sought stay of "moderate length, and not of

---

[5] During the stay, Syngenta can continue to publicize this Court's summary judgment ruling as evidence of its ownership rights in GA21:

> "This decision is important for corn growers because it ensures there will continue to be more than one source of glyphosate tolerance in the marketplace," explains Jeff Cox, head of global corn and soybean seeds at Syngenta in Golden Valley, Minn. "We were confident that the patent infringement lawsuits filed by Monsanto were baseless, and that the Court would confirm that our GA21 corn was not covered by Monsanto's patents. Now that the cloud of uncertainty has been lifted by the Court, we can move forward aggressively with our plans to provide an even broader range of glyphosate tolerant corn products for growers."
>
> Cox further explains that the Syngenta strategy for serving customers is to offer a broad range of seed genetics, traits and crop protection products. "Winning the battle to retain rights to the Agrisure GT trait and, separately, our agreement with Pioneer Hi-Bred International providing access to the promising Optimum™ GAT™ trait for glyphosate tolerance and additional corn genetics, are significant steps in Syngenta's ability to provide choices of elite genetics, traits and trusted relationships to our growers. With multiple sources of genetics, multiple sources of traits and multiple brands of seed, we're confident we can provide each individual grower with unique products to increase productivity."

*See* www.Agrisuretraits.com

10

indefinite duration," further weighing in favor of granting stay motion). Monsanto filed its notice of appeal on June 8, 2006, and Monsanto's appellate brief is due August 18, with briefing to be completed by October 19, 2006. The parties have now completed fact discovery, expert discovery is currently ongoing and the parties are awaiting the Court's determination on whether Monsanto can file a motion for summary judgment. While the appeal is pending and the stay in effect, both parties may file dispositive motions, if permitted, and continue to prepare for trial, once the underlying patent claims have been resolved on appeal.

Unlike the procedural posture of this case at the time that the initial request for a stay by Monsanto, Syngenta will not have to wait months or years of discovery and pretrial proceedings before getting to trial. The parties have already completed the pretrial process, therefore, in the event of a reversal, the patent case can be tried in short order. The antitrust action may then proceed after the completion of the patent trial, as originally planned.

Finally, "[a]ny party may move the Court for relief from the stay if it feels that the stay has extended too long or otherwise outlived its usefulness," *SmithKline Beecham*, 2004 U.S. Dist. LEXIS 13907, at *33-*34, and the Court can of course lift the administrative stay, *sua sponte*, at any time it finds appropriate.

## CONCLUSION

For all of the foregoing reasons, Monsanto requests a stay of trial on Syngenta's antitrust claims pending the resolution of the Shah and Lundquist patent issues on appeal.

Respectfully submitted,

POTTER ANDERSON & CORROON, LLP

OF COUNSEL:

Peter E. Moll
Scott E. Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Dated: August 23, 2006

747340

By: /s/ David E. Moore
   Richard L. Horwitz (#2246)
   David E. Moore (#3983)
   Hercules Plaza, 6th Floor
   1313 N. Market St.
   Wilmington, DE 19801
   (302) 984-6000
   (302) 658-1192 facsimile
   rhorwitz@potteranderson.com
   dmoore@potteranderson.com

Attorneys for MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on August 23, 2006, the attached document was hand delivered on the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

I hereby certify that on August 23, 2006, I have Electronically Mailed the foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Thomas A. McGrath III
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022-6069
rschwed@shearman.com

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC  20001-4413
michael.flibbert@finnegan.com
don.burley@finnegan.com
howard.levine@finnegan.com

　　　　　　　　　/s/ David E. Moore
　　　　　　　　Richard L. Horwitz
　　　　　　　　David E. Moore
　　　　　　　　Potter Anderson & Corroon LLP
　　　　　　　　Hercules Plaza – Sixth Floor
　　　　　　　　1313 North Market Street
　　　　　　　　Wilmington, DE  19801
　　　　　　　　(302) 984-6000
　　　　　　　　rhorwitz@potteranderson.com
　　　　　　　　dmoore@potteranderson.com

700765