could not "lawfully" commercialize GA21 in the United States, and has stated that Monsanto is seeking to enjoin Syngenta's "unauthorized" sales of GA21 corn.

76.  ~~80.~~ Monsanto also has disparaged its (former) glyphosate corn trait, GA21, in favor of NK603.

77.  ~~81.~~ Monsanto's misrepresentations, known to be false, are made in bad faith. The misrepresentations are intended to undermine Seed Company and grower confidence in Syngenta's entry, block or hinder Syngenta's ability to commercialize GA21, mislead consumers into believing that Syngenta may not lawfully commercialize GA21, and deter Syngenta's customers from licensing Syngenta's products and thereby competing with Monsanto.

    c.    *Monsanto's Attempts to Destroy GA21 Inbreds and Accelerate the Withdrawal of GA21 from the Market*

        (i)    Monsanto's Original Plan

78.  ~~82.~~ Because Monsanto lost its rights to GA21 via the DeKalb license as a result of the Rhone-Poulenc litigation, Monsanto decided in 2000 to require Seed Companies to switch to the NK603 glyphosate-tolerant trait.

79.  ~~83.~~ By letter to the Seed Companies on February 28, 2000, Monsanto announced its original plan to withdraw GA21 from the market. Invoking Section 3.12 of the GA21 License, Monsanto notified its customers that no GA21 corn hybrid "may be produced, sold or used" after February 28, 2005 (five years from the date of the letter, consistent with the terms of the GA21 License).

80.  ~~84.~~ Thereafter, according to Monsanto's letter, Seed Companies could continue to offer a glyphosate-tolerant corn seed based on the NK603 technology if the Seed Companies signed a new NK603 license. Monsanto agreed to waive large payments due under the existing GA21 licenses only if the Seed Companies signed the NK603 license promptly.

81.  ~~85.~~ Monsanto reconfirmed the 2005 cutoff for production, sale and use of GA21 by letter dated July 19, 2001.

82.  ~~86.~~ In 2003, Monsanto extended the withdrawal date until June 28, 2005 in order to permit the seed companies to make a more orderly transition from GA21 to NK603.

(ii)  <u>Monsanto and its Licensees Are Granted New GA21 Rights</u>

83.  ~~87.~~ On March 26, 2002, the Federal Circuit held that Monsanto did not have a bona fide purchaser defense to Rhone-Poulenc's infringement case and therefore did not have rights to the GA21 technology.

84.  ~~88.~~ Thereafter, Monsanto reached a settlement with Rhone-Poulenc's successor, Aventis (now Bayer CropScience), whereby Aventis granted to Monsanto *and Monsanto's sublicensees* the right to make, produce, use and sell GA21 corn seeds through the 2004 growing season, and, thereafter, to sell any carry-over inventory of GA21 corn seed produced in 2004, *i.e.*, into 2005 and beyond.

(iii)  Monsanto Accelerated the End of GA21 Production and
<u>Told Seed Companies to Destroy Existing Inventories</u>

85.  ~~89.~~ When Monsanto learned that Syngenta had acquired the GA21 patent rights and was about to enter the market as a competing source of glyphosate-tolerant corn traits, Monsanto changed its plan and wrongfully accelerated the withdrawal of GA21 corn seeds by ordering Seed Companies to stop production and destroy all GA21 foundation seeds.

86.  ~~90.~~ On information and belief, Monsanto learned that Syngenta acquired the rights to GA21 at least as early as March 11, 2004. By that time, a Syngenta affiliate had submitted a GA21 planting request to an Argentinean agricultural committee that included a Monsanto representative.

87. ~~91.~~ On March 17, 2004, Monsanto notified its GA21 licensees that, despite its earlier notices and the rights conferred on the Seed Companies by the Aventis GA21 License,

> "the final production year for event GA21 was 2003. <u>No production of Roundup Ready Corn (Event GA21) is allowed in 2004 or thereafter. All production of Roundup Ready Corn in 2004 must be Event NK603. Accordingly, all inbred seed stock of GA21 must be destroyed.</u>" (emphasis in original).

88. ~~92.~~ Monsanto's letter also reminded the Seed Companies about the June 28, 2005 cutoff for commercial activity in GA21, and then went on to demand:

> "<u>Accordingly, after June 28, 2005, all commercial hybrids containing GA21 must be destroyed.</u>" (emphasis in original).

89. ~~93.~~ On information and belief, this was the first time Monsanto had ever suggested to Seed Companies that they would be required to destroy any GA21 inventory.

90. ~~94.~~ Monsanto repeated its demand the day after Syngenta announced its acquisition of the GA21 rights:

> In our March 17, 2004 letter we gave notice to all GA21 licensees that the last year of commercial production of GA21 Roundup Ready corn was 2003, and that no production would be allowed in 2004. Additionally, the March 17 letter included notification requiring your company to destroy all GA21 inbred seed stock.

91. ~~95.~~ Monsanto's acceleration of the end of GA21 production and its demand that Seed Companies destroy GA21 inbreds and hybrids are wrongful acts intended to deny Syngenta access to a critical asset required for swift entry and to maintain Monsanto's monopoly in glyphosate-tolerant corn traits. Monsanto has no legal right to demand that the Seed Companies destroy any inventory.

92. ~~96.~~ On information and belief, some Seed Companies have destroyed their GA21 inbreds on Monsanto's instruction.

### d. *Monsanto's Exclusive Dealing Seed Licenses and Related Pressure Not To Do Business with Syngenta*

93. ~~97.~~ On May 13, 2004, the day after Monsanto filed its patent infringement lawsuit, it notified Seed Companies that it sought to prevent any unauthorized sales of GA21 corn seeds. Monsanto pressured Seed Companies not to deal with Syngenta and implicitly threatened to sue the Seed Companies if they cooperated with Syngenta's entry.

94. ~~98.~~ Monsanto's GA21 License forces Seed Companies to deal exclusively in Monsanto's GA21 and not in any other company's GA21 trait, effectively foreclosing competition in glyphosate-tolerant corn traits. Monsanto has enforced the GA21 License to prevent Seed Companies from licensing GA21 rights from Syngenta and from selling GA21 foundation seeds or hybrid seeds except to growers or other licensees directly licensed or approved by Monsanto.

95. ~~99.~~ Through these restrictions, Monsanto controls the outlets for corn seed and thus controls the Seed Companies' marketing. Seed companies are wed to Monsanto, regardless of any alternative GA21 trait available in the market. If the Seed Companies were to license GA21 from Syngenta, Monsanto would block them from bringing GA21 seeds to market, including through lawsuits, as Monsanto has made clear in its recent letters.

96. ~~100.~~ Monsanto's threats to enforce the GA21 Licenses were made even though it had lost the rights to the underlying technology as a result of the Rhone-Poulenc litigation.

97. ~~101.~~ On May 13, 2004, Monsanto warned the Seed Companies that:

> "Separately and independent of any patent claims Monsanto has against Syngenta . . . your Monsanto GA21 license agreement requires your company to withdraw all corn containing the GA21 event."

98. ~~102.~~ Monsanto also claimed that its GA21 Licenses prohibit the Seed Companies from selling GA21 seed to anyone who is not licensed or approved in advance by Monsanto:

> ". . . seed containing GA21 currently in your inventory can only be sold to growers licensed by Monsanto to plant the corn as a commercial crop or be

> sold to another GA21 licensee via Corn States Hybrid Services brokerage department. GA21 cannot be sold to companies not licensed by Monsanto. Remember, all commercial activity needs to be completed by June 28, 2005."

99. ~~103.~~ Monsanto claimed that:

> "no agreement with or intellectual property license from Syngenta or any other third party can change your obligation to discontinue commercial activity with GA21 or to withdraw and cease activity with it in the appointed timeframe."

100. ~~104.~~ Monsanto then instructed the Seed Companies that if they even talked with Syngenta about GA21, they were required to tell Monsanto. Citing a provision of its NK603 corn license that requires Seed Companies to report any infringement of Monsanto's purported patent rights:

> "If Syngenta or any other third party contacts you or your company to access from you or to offer to you any GA21 corn material, we look forward to hearing from you."

101. ~~105.~~ On June 2, 2004, Monsanto reiterated its demand that Seed Companies deal only with approved or licensed customers. By letter, Monsanto reminded licensees of their "obligations under Section 3.02" of the GA21 License agreement to sell only to growers directly licensed by Monsanto (or to retailers required to do the same) and "to obtain prior written consent from Monsanto involving any proposed transactions between yourself and another Monsanto licensee."

102. ~~106.~~ On information and belief, Monsanto's purpose in sending this letter was to make sure the Seed Companies did not directly or indirectly sell any inventory to Syngenta.

103. ~~107.~~ On information and belief, in May and June 2004, Monsanto communicated with seed brokers regarding Syngenta's entry and has required them to agree in writing not to deal

in GA21 hybrid seeds, or their brokerage agreements would be terminated and they would risk losing access to hybrids containing Monsanto germplasm and traits.

104. ~~108.~~ On information and belief, Monsanto made statements to foundation seed companies to intimidate the foundation seed companies from selling inbreds containing the GA21 trait.

105. ~~109.~~ Monsanto's intimidation of Seed Companies and foundation seed companies and attempted enforcement of the GA21 License to exclude Syngenta is wrongful conduct designed to maintain Monsanto's glyphosate-tolerant corn trait monopoly.

106. ~~110.~~ The GA21 Licenses, even if valid, constitute illegal exclusive dealing arrangements.

    *e.*  ***Monsanto's Bundled Incentives***

107. ~~111.~~ In addition to entering into exclusive dealing agreements with its customers, Monsanto has pressured Seed Companies not to sell seeds containing a single trait provided by any company other than Monsanto through its "bundling" agreements – namely, Monsanto's GA21 License, its other trait licenses and the Incentive Agreement. As a result of these agreements, Seed Companies are economically coerced into only selling seeds containing traits provided by Monsanto. If any Seed Company sells a meaningful amount of seeds containing a single trait provided by any company other than Monsanto, it will face significant penalties from Monsanto across all traits licensed by Monsanto.

108. ~~112.~~ For example, under the Incentive Agreement, for a Seed Company to qualify for certain financial incentives it must sign all applicable trait licenses and must be sure that, every year, its sales of each and every trait are at least 70% Monsanto brand products. If the Seed Company does not maintain Monsanto's target, it will lose the incentives across Monsanto's entire line of products. And if the Seed Company allows Monsanto's share to fall below a specified share

on any product, all incremental Seed Service fees, plus interest, become due and owing to Monsanto.

109.   ~~113.~~ The effect of Monsanto's bundled incentive programs is to create insurmountable economic barriers through bundling fees and incentives across all product lines, which, in turn, defeat or deter new entrants and foreclose a substantial portion of competition for the licensing of traits to Seed Companies.

~~f.   Monsanto Has Attempted to Foreclose Syngenta's Trait Access to the Foundation Corn Seed Market~~

~~114.   As discussed below, *see* Section 3 ("Monsanto's Attempted Monopolization of the Foundation Corn Seed Market"), Monsanto has engaged in conduct to deny Syngenta access to the foundation corn seed market. Such conduct also has the effect of excluding Syngenta from competing effectively in the market for glyphosate-tolerant corn traits. By foreclosing Syngenta access to foundation seeds, Monsanto undermines Syngenta's ability to gain effective distribution for its corn traits.~~

**2. Monsanto's Maintenance of its European Corn Borer Trait Monopoly**

110.   ~~115.~~ Currently, Monsanto's share of the ECB-resistant trait market is at least 80 %. Its ECB-resistance event is called MON810. Monsanto licenses the MON810 event for sale under the YieldGard® trademark and in a stack with its glyphosate-tolerant event, NK603.

111.   ~~116.~~ Syngenta's share of the ECB trait market is approximately 9%. Its ECB event is called Bt11. Syngenta is required to pay a royalty to Monsanto in connection with Bt11 and has restrictions on its ability to sublicense.

112.   ~~117.~~ Dow AgroSciences/Pioneer also market an ECB event, under the name Herculex®, representing approximately 11% of the ECB market. On information and belief, Dow/Pioneer's rights also are subject to a Monsanto license that carries a royalty.

113. ~~118.~~ Between Monsanto's sales of YieldGard® and its licensing to Syngenta and Dow AgroSciences/Pioneer, Monsanto collects revenues for all ECB-resistant corn seed sold in the United States.

114. ~~119.~~ Because combinations of traits or "stacks," such as Monsanto's ECB/NK603 stack, represent significant value to growers, there is a strong trend toward ECB/glyphosate-tolerant stacks and away from ECB-only offerings. A substantial portion of ECB-resistant traits are stacked with NK603.

115. ~~120.~~ For the 2005 planting season, through its proprietary GA21 trait, Syngenta has offered stacked GA21/Bt11 products that will confer glyphosate tolerance and ECB resistance in its own seed and through licensing to other Seed Companies.

116. ~~121.~~ Monsanto's licensing restrictions have impeded and will continue to impede Syngenta's ability to offer stacked GA21/Bt11 products, putting Syngenta at a disadvantage in the marketplace.

117. ~~122.~~ Monsanto's license restrictions have prevented Syngenta from developing stacks of Bt11 and Seed Company or foundation seed company sourced GA21 or NK603. Monsanto's GA21 and NK603 licenses prevent Seed Companies and foundation seed companies from stacking GA21 or NK603 with Bt11.

118. ~~123.~~ Monsanto's restrictions have no reasonable business or scientific justification. In fact, on information and belief, Monsanto has selectively waived these restrictions to permit certain Seed Companies to produce a comparable stack.

119. ~~124.~~ As a result of Monsanto's maintenance of its glyphosate-tolerant corn trait monopoly and its unlawful contractual restrictions, Syngenta and others are unable to compete effectively in the licensing of ECB traits or the licensing of ECB traits stacked with another corn

trait. Through these devices, Monsanto unlawfully maintains its monopoly in ECB traits or stacked traits and eliminates competition that would redound to the benefit of consumers.

### 3. ~~Monsanto's Attempted Monopolization of the Foundation Corn Seed Market~~

~~125. Through its affiliates, Monsanto controls approximately 45% of foundation corn seed production and approximately 70% of foundation corn seed sold or licensed to independent seed companies. The second largest foundation seed producer, Pioneer, controls approximately 35% of the foundation corn seed production through its hybrid seed business, and has key commercial arrangements with Monsanto. Pioneer has not made its foundation seeds available for commercial sale or licensing to hybrid seed companies.~~

~~126. Monsanto has attempted to exclude competition from the foundation seed market and attempted to monopolize that market by (i) preventing Syngenta entry and expansion in key corn traits, (ii) barring foundation seed companies from stacking Monsanto's glyphosate-tolerant corn traits with Bt11, (iii) denying Syngenta access to foundation seeds, (iv) pressuring foundation seed companies or hybrid seed companies not to deal with Syngenta or provide GA21 foundation seeds to Syngenta, (v) entering into commercial arrangements with seed companies and growers that bundle discounts and incentives across product lines to provide economic barriers to entry and (vi) attempting to acquire Advanta/Garst solely to block Syngenta's entry.~~

~~127. Developers of inbred seed lines rely on the availability of biotechnology traits to compete effectively for sales of foundation seeds to Seed Companies. Blocking Syngenta's entry/expansion in GA21 and Bt11, and the resulting absence of significant competition in trait licensing, means that Monsanto is able to set the terms on which companies may compete with its owned foundation seed operations.~~

~~128. Monsanto restricts foundation seed companies from stacking its glyphosate-tolerant corn trait with competing herbicide tolerant traits. As a result, foundation seed~~