- Seed Companies may not sell "corn inbreds or parent lines required for the development of" GA21 corn hybrids to any other party;

- Seed Companies may not sell GA21 corn seed to any other Monsanto licensee except with Monsanto's express written consent or through Monsanto's wholly-owned subsidiary Corn States Hybrid Service, Inc.;

- Seed Companies may not sell GA21 corn seed without the express written consent of Monsanto; and

- Seed Companies must withdraw all GA21 corn seeds from the market after five years, i.e., 2005.

44.     In addition, the GA21 License typically provides substantial financial incentives for the Seed Companies to favor Monsanto's trait:

- If Seed Companies require growers that purchase Roundup Ready® seeds to sign Monsanto's grower license, Monsanto will pay the Seed Company 10% of the Grower Fee (the "Seed Services Fee");

- If the Seed Company meets certain sales targets ( i.e., if Roundup Ready® corn seeds exceed a set percentage of the Seed Company's total corn seed sales), it can make 50% more per bag; and

- If Monsanto's Roundup Ready® corn seeds constitute, for example, 85% of the Seed Company's herbicide-tolerant corn seed sales, on or before milestone dates, milestone payments owed by the Seed Companies are significantly reduced or waived altogether.

45.     Substantially similar Monsanto agreements, with varied target market shares, control the use by Seed Companies and farmers of (i) Monsanto's NK603 glyphosate-tolerant corn trait, (ii) its ECB-resistant corn trait, (iii) its CRW-resistant corn trait (iv) its glyphosate-tolerant soybean trait, and (v) products containing combinations or "stacks" of the corn traits in (i), (ii) and (iii).

46.     As Monsanto added new traits to its portfolio, it leveraged its more established traits to promote its newer traits by bundling additional financial incentives across all of its products.  At least as early as 1998, Monsanto bundled additional payments of fees and

additional waivers of milestone payments across its glyphosate-tolerant soybeans, glyphosate-tolerant corn and ECB-resistant corn.  At least by 2003, Monsanto had expanded the range of products covered by its bundled incentives to cover CRW-resistant corn as well.

47.     To carry out its bundling plan, Monsanto has entered an "Amended and Restated Licensee Incentive Agreement" (the "Incentive Agreement") with Seed Companies.  Under the Incentive Agreement, Seed Companies meeting certain targets are paid an additional 5% to 10% of the fee and receive reduced or waived milestone payments that may be due under the individual trait licenses.

48.     However, to qualify for any of these payments or waivers, the Seed Company must ensure every year that its sales of each trait are at least 70% Monsanto brand products.  If the Seed Company does not maintain Monsanto's target in any product, it loses the incentives across the entire line of products and must repay previous waived fees.  Thus, for example, a Seed Company may be faced with substantial financial penalties for one Monsanto product (such as glyphosate-tolerant corn) if it fails to sell enough of another Monsanto product (such as ECB-resistant corn).  The Seed Company may also lose the Incentive Agreement and thus lose the upside opportunities on all traits.

49.     On information and belief, Monsanto's trait licenses, including its GA21 License and its Incentive Agreements generally run at least through 2007 and may not be voluntarily terminated.  A majority of independent Seed Companies in the United States has signed Monsanto trait licenses and Incentive Agreements.

### 3.  Monsanto's Strategy and Dominance

50.     In recent years, Monsanto has shifted its business strategy from a focus on Roundup® herbicide to a focus on its traits and seed businesses.  Hugh Grant, Chairman,

President and Chief Executive Officer of Monsanto, declared, in Monsanto's 2003 Annual

Report, that:

> " . . . 2003 has been especially important for Monsanto shareowners
> because this was the year we saw our business make the transition from a
> company led by Roundup herbicide to a company based on seeds and
> traits. This evolution of our business was carefully planned; we've been
> working toward it for some time."

51.     Monsanto's acquisitions of trait and seed assets have made it the dominant

provider of biotechnology traits in the U.S., the leading supplier of foundation seeds, and a

leading supplier of hybrid seeds and other crop protection products. Monsanto estimates that its

traits accounted for more than 90% of the biotechnology acres planted worldwide in 2003. More

than 300 Seed Companies in the U.S. license at least one biotechnology trait from Monsanto.

52.     On information and belief, Monsanto controls all of the commercially practicable

trait licensing businesses. Its shares of those businesses are:

| Trait | Share |
|---|---|
| Glyphosate-Tolerant Corn | at least 99% |
| European Corn Borer-Resistant Corn | at least 80% |
| Corn Rootworm-Resistant Corn | 100% |
| Glyphosate-Tolerant Soybeans | 100% |

53.     Monsanto is active in the hybrid corn seed market through its wholly-owned

subsidiaries, DeKalb and Asgrow. It brokers corn seed and licenses foundation seed through its

wholly-owned subsidiary, Corn States Hybrid Service LLC.

54.     Monsanto is the leading producer of glyphosate-based herbicides, accounting for

at least 70% of all glyphosate sold in the United States.

## C.    *SYNGENTA*

55.    Syngenta develops and produces a wide range of agricultural products, including biotechnology traits, seeds and other crop protection products (such as herbicides, insecticides and fungicides).  Syngenta is also a provider of seed traits in the United States.

56.    Syngenta markets an ECB-resistant corn trait, Bt11, by license to other Seed Companies and through its own NK® brand corn seeds.  Its Bt11 trait is marketed under a license from Monsanto that carries a significant royalty and restrictions on sublicensing.

57.    Syngenta also sells glyphosate-tolerant soybean seeds.  Its glyphosate-tolerant soybean trait also is licensed from Monsanto with restrictions on the right to sublicense.

58.    To date, Syngenta has been able to gain a modest share only in the ECB-resistant corn trait market.

59.    In crop protection chemicals (herbicides, insecticides and fungicides), Syngenta sells a glyphosate herbicide under the Touchdown® trademark.

60.    On February 5, 2004, Syngenta's affiliate acquired the intellectual property rights to the GA21 glyphosate-tolerant corn trait from Bayer CropScience.  Syngenta now has the right to introduce and market its own GA21 product and to license others.  As part of the acquisition, Syngenta's affiliate also acquired the GA21 license from Bayer CropScience under which Monsanto and its sublicensees operate to produce GA21 corn seeds through 2004.

61.    On May 12, 2004, Syngenta's affiliate announced its intention to acquire Advanta BV, including Advanta's Garst Seeds subsidiary and its U.S. corn and soybean seed businesses.  At the same time, Syngenta's affiliate publicly announced its acquisition of the GA21 rights from Bayer CropScience.

62.    Syngenta announced an agreement to acquire the Golden Harvest group of seed companies on June 25, 2004.  Golden Harvest is a producer of hybrid corn and soybean seeds.

14

63.     The acquisitions of Golden Harvest and Advanta were completed on August 2, 2004, and September 1, 2004, respectively.

64.     The combination of the Advanta, Golden Harvest and GA21 acquisitions has given Syngenta the necessary assets to expand its corn product offering and to offer Seed Companies and growers a full range of biotechnology input traits for corn in competition with Monsanto.  In the 2005 selling season, Syngenta introduced the GA21 corn trait as a complement to its ECB-resistant trait, both in competition with Monsanto; however Syngenta's introduction of this product was hampered and continues to be hampered by Monsanto's broad range of anticompetitive conduct.  Syngenta plans to commercialize the GA21 corn trait in NK®, Golden Harvest®, and Garst® brand seeds, and through licenses to other Seed Companies.  Syngenta plans to offer a CRW-resistant trait in 2007.

65.     Syngenta also plans to expand its distribution of ECB-resistant corn trait in foundation and hybrid seeds via the NK,® Golden Harvest®, and Garst® seed brands.

**D.     *MONSANTO'S UNLAWFUL CONDUCT AND PRACTICES TO EXCLUDE SYNGENTA FROM THE TRAITS MARKETS***

66.     As soon as it learned of Syngenta's impending entry, Monsanto launched a wide-ranging attack to disrupt and delay Syngenta's entry and preserve its own monopolies in glyphosate-tolerant and ECB-resistant corn traits.

**1.  Monsanto's Efforts to Prevent Syngenta's Entry and Maintain Its Glyphosate-Tolerant Corn Trait Monopoly**

67.     Monsanto's attacks to prevent Syngenta from entering and competing effectively with GA21 have included filing two baseless patent infringement lawsuits, misrepresenting Syngenta's as well as its own patent position, wrongfully ordering Seed Companies to stop producing GA21 seeds and to destroy their GA21 inventories, attempting to enforce exclusive dealing contracts with customers, improperly bundling incentive programs to defeat or delay new

15

entry, and impeding Syngenta's trait access to the market by hampering its access to foundation seeds. All of this conduct is intended to preserve Monsanto's highly profitable dominance of many aspects of the relevant businesses and to entrench itself against challengers.

### a.    Monsanto's Baseless Patent Infringement Cases

68.    The same day that Syngenta announced its entry, Monsanto filed a baseless patent infringement lawsuit against Syngenta. *See Monsanto Company et al. v. Syngenta Seeds, Inc. et al.*, C.A. No. 04-305 (D. Del. filed May 12, 2004). The lawsuit claims that Syngenta has infringed Patent No. 4,940,835 (the "Shah patent"), which allegedly covers a technique used in producing glyphosate-tolerant plants.

69.    Monsanto knew or should have known that the Shah patent is invalid or unenforceable against Syngenta with respect to the GA21 event in corn. In fact, Monsanto or its affiliates have twice told federal courts that the technique described in its patent (and all other available techniques) would not work in corn as of the time the Shah patent was filed. *See Plant Genetic Systems, N.V. v. DeKalb Genetics Corp.*, 175 F. Supp. 2d 246 (D. Conn. 2001), *aff'd* 315 F.3d 1335 (Fed. Cir. 2003); *Monsanto Co. v. Aventis CropScience, N.V.*, No. 4:00CV01915ERW, 2002 U.S. Dist. LEXIS 27417 (E.D. Mo. Dec. 13, 2002); *Monsanto Co. v. Bayer Bioscience NV*, 363 F.3d 1235, 1245 (Fed. Cir. 2004). For this reason, the patent claims were not "enabled" and were invalid or unenforceable as to corn.

70.    Monsanto's attempt to switch its position and claim that Monsanto's patent was enabled for corn and that Syngenta's introduction of GA21 corn would infringe its patent is baseless in so much as no reasonable litigant could expect to prevail.

71.    On July 27, Monsanto, through its wholly-owned subsidiary, DeKalb Genetics Corporation, filed a second baseless patent infringement lawsuit in an effort to block Syngenta's entry. *See DeKalb Genetics Corporation v. Syngenta Seeds, Inc. et al.*, C.A. No. 04C50323

(N.D. Ill. filed July 27, 2004). Monsanto's second lawsuit alleges that Syngenta has infringed Patent Nos. 5,538,880 and 6,013,863 (collectively, the "Lundquist patents"), two process patents that claim a particular process for producing transgenic corn. As in the lawsuit on the Shah patent, Monsanto asserts that Syngenta has infringed the Lundquist patents by making and using glyphosate-tolerant corn. The Lundquist patent case has been transferred to this court.

72.    Syngenta has not infringed the Lundquist patents. In particular, it has not practiced and is not practicing any process covered by them. Monsanto and its subsidiary knew or should have known that Syngenta has not practiced the process covered by the Lundquist patents and therefore could not have infringed those patents. Monsanto's claim of infringement is baseless in so much as no reasonable litigant could expect to prevail.

73.    On July 28, 2004, Monsanto announced, among other things, that the Illinois lawsuit was filed by "Monsanto via DeKalb" to enjoin Syngenta from developing, using and selling herbicide tolerant corn seed such as corn seed based on GA21.

74.    Monsanto's intention in filing its two patent infringement cases was to maintain its monopolies in glyphosate-tolerant and ECB-resistant corn traits.

### b.    Monsanto has Misrepresented Its Patent Position and Disparaged Syngenta's Ability to Commercialize GA21

75.    In a press release that accompanied Monsanto's Delaware lawsuit and in various communications to the industry, Monsanto has misrepresented its own patent position and falsely disparaged Syngenta's patent position. Monsanto has told Seed Companies that Syngenta could not "lawfully" commercialize GA21 in the United States, and has stated that Monsanto is seeking to enjoin Syngenta's "unauthorized" sales of GA21 corn.

76.    Monsanto also has disparaged its (former) glyphosate corn trait, GA21, in favor of NK603.

17

77.     Monsanto's misrepresentations, known to be false, are made in bad faith.  The misrepresentations are intended to undermine Seed Company and grower confidence in Syngenta's entry, block or hinder Syngenta's ability to commercialize GA21, mislead consumers into believing that Syngenta may not lawfully commercialize GA21, and deter Syngenta's customers from licensing Syngenta's products and thereby competing with Monsanto.

### c.     *Monsanto's Attempts to Destroy GA21 Inbreds and Accelerate the Withdrawal of GA21 from the Market*

#### (i)     Monsanto's Original Plan

78.     Because Monsanto lost its rights to GA21 via the DeKalb license as a result of the Rhone-Poulenc litigation, Monsanto decided in 2000 to require Seed Companies to switch to the NK603 glyphosate-tolerant trait.

79.     By letter to the Seed Companies on February 28, 2000, Monsanto announced its original plan to withdraw GA21 from the market.  Invoking Section 3.12 of the GA21 License, Monsanto notified its customers that no GA21 corn hybrid "may be produced, sold or used" after February 28, 2005 (five years from the date of the letter, consistent with the terms of the GA21 License).

80.     Thereafter, according to Monsanto's letter, Seed Companies could continue to offer a glyphosate-tolerant corn seed based on the NK603 technology if the Seed Companies signed a new NK603 license.  Monsanto agreed to waive large payments due under the existing GA21 licenses only if the Seed Companies signed the NK603 license promptly.

81.     Monsanto reconfirmed the 2005 cutoff for production, sale and use of GA21 by letter dated July 19, 2001.

82.     In 2003, Monsanto extended the withdrawal date until June 28, 2005 in order to permit the seed companies to make a more orderly transition from GA21 to NK603.

(ii)     Monsanto and its Licensees Are Granted New GA21 Rights

83.     On March 26, 2002, the Federal Circuit held that Monsanto did not have a bona fide purchaser defense to Rhone-Poulenc's infringement case and therefore did not have rights to the GA21 technology.

84.     Thereafter, Monsanto reached a settlement with Rhone-Poulenc's successor, Aventis (now Bayer CropScience), whereby Aventis granted to Monsanto *and Monsanto's sublicensees* the right to make, produce, use and sell GA21 corn seeds through the 2004 growing season, and, thereafter, to sell any carry-over inventory of GA21 corn seed produced in 2004, *i.e.*, into 2005 and beyond.

(iii)     Monsanto Accelerated the End of GA21 Production and
        Told Seed Companies to Destroy Existing Inventories

85.     When Monsanto learned that Syngenta had acquired the GA21 patent rights and was about to enter the market as a competing source of glyphosate-tolerant corn traits, Monsanto changed its plan and wrongfully accelerated the withdrawal of GA21 corn seeds by ordering Seed Companies to stop production and destroy all GA21 foundation seeds.

86.     On information and belief, Monsanto learned that Syngenta acquired the rights to GA21 at least as early as March 11, 2004. By that time, a Syngenta affiliate had submitted a GA21 planting request to an Argentinean agricultural committee that included a Monsanto representative.

87.     On March 17, 2004, Monsanto notified its GA21 licensees that, despite its earlier notices and the rights conferred on the Seed Companies by the Aventis GA21 License,

> "the final production year for event GA21 was 2003. No production of Roundup Ready Corn (Event GA21) is allowed in 2004 or thereafter. All production of Roundup Ready Corn in 2004 must be Event NK603. Accordingly, all inbred seed stock of GA21 must be destroyed." (emphasis in original).

19