glyphosate-tolerant corn traits. Absent Monsanto's exclusionary conduct and practices, Syngenta's entry would have created effective competition in the markets for the licensing of glyphosate-tolerant corn traits. Syngenta's entry would have introduced much-needed competition to these markets, increasing market efficiency, providing greater access to traits, and increasing choice and lower costs for Seed Companies, foundation seed companies and growers. If Monsanto is permitted to maintain its sham litigation and continue its campaign of unlawful tactics and licensing practices, Syngenta's entry and ability to compete successfully in the glyphosate-tolerant corn trait and stacked traits markets will continue to be harmed.

139. Monsanto's wrongful acts to exclude Syngenta from glyphosate-tolerant corn trait licensing have caused injury to Syngenta's business in the form of increased expenses and delay, and adverse effects on customers as well as lost revenues. Monsanto's exclusionary conduct has adversely affected Syngenta's ability to gain market acceptance for and confidence in its entry, depriving Syngenta of potential profits.

140. By delaying Syngenta's entry and impeding its ability to compete, Monsanto has harmed, and will continue to harm, competition and cause injury at all levels of distribution: foundation seed producers, hybrid seed producers, dealers and retailers, and end-use growers. Monsanto's wrongful acts have forced Seed Companies, foundation seed producers and growers to pay higher fees than would prevail in a competitive environment.

      2.     **Effects on the ECB-Resistant and Stacked Corn Trait Markets**

141. Monsanto's wrongful acts have also injured and will injure competition in the market for the licensing of ECB-resistant corn traits and stacked ECB-resistant corn traits. Monsanto's control of ECB-resistant corn traits licensing leaves Seed Companies and end-use growers with effectively only one source from which to license ECB-resistant corn traits or

30

stacked traits. If Monsanto is permitted to maintain its sham litigation and continue its campaign of unlawful tactics and licensing practices, Syngenta's ability to expand its licensing of ECB-resistant traits and stacks to offer a real alternative to Monsanto will be substantially hampered.

142. Delay of Syngenta's expansion has harmed and will continue to harm competition and cause injury at all levels of distribution: foundation seed producers, hybrid seed producers, retailers and dealers, and end-use growers. Seed Companies, foundation seed producers and growers are deprived of a competitive alternative to Monsanto, and pay higher fees than would prevail in a competitive environment.

143. Monsanto's wrongful acts have caused injury to Syngenta's business in the form of increased expenses and delay, as well as lost revenues. If permitted to persist, Monsanto's exclusionary conduct will deprive Syngenta of potential profits.

144. Monsanto's concerted campaign is a thinly veiled attempt to impede, hamper and delay Syngenta's entry into key corn trait markets in an attempt to cling to its monopoly positions, allowing it to charge supracompetitive prices for as long as possible at the expense of Seed Companies, growers and, ultimately, the public. If permitted to persist in its exclusionary practices and other illegal conduct, Monsanto will only further entrench itself against Syngenta, causing substantial injury to the market and ultimately to Seed Companies and growers.

145. Because of all the foregoing, Syngenta has suffered antitrust injury with respect to all of the relevant markets.

## CLAIMS FOR RELIEF

## COUNT ONE

### Willful Maintenance of a Monopoly of the Glyphosate-Tolerant and Stacked Corn Trait Markets In Violation of Sherman Act, Section 2

146. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1 to 145 herein.

147. The licensing of glyphosate-tolerant corn traits is a relevant line of commerce within the meaning of the antitrust laws. A related relevant market or submarket is the licensing of glyphosate-tolerant stacked corn traits.

148. The relevant geographic market is the United States.

149. Monsanto possesses monopoly power in the relevant markets, and has maintained a market share of at least 99%. Substantial barriers to entry and expansion exist in the relevant markets.

150. Monsanto has the power to control market prices and exclude competition.

151. Monsanto has engaged in conduct and a pattern of conduct with anticompetitive effects to unlawfully maintain and enhance its monopoly in the relevant markets and to keep prices high, stifle competition and eliminate consumer choice though exclusionary behavior designed to keep Syngenta from entering the relevant markets and competing successfully. It has done so with the intent to monopolize the relevant markets.

152. There is no legitimate business justification for defendants' conduct.

153. Syngenta has suffered and will likely suffer additional antitrust injury. Defendants' wrongful conduct is material, and has impeded, hampered and delayed Syngenta's

ability to enter quickly the relevant markets and has caused, and continues to cause, Syngenta to lose business and suffer damages in an amount to be proven at trial.

154.  Defendants' wrongful acts have caused and are likely to continue to cause injury to the relevant markets and have caused Seed Companies, growers and consumers to pay higher prices than they would otherwise pay in a competitive environment.

## COUNT TWO

### Willful Maintenance of a Monopoly of the ECB-Resistant and Stacked Corn Trait Markets In Violation of Sherman Act, Section 2

155.  Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1 to 154 herein.

156.  The licensing of European corn borer-resistant corn traits is a relevant line of commerce within the meaning of the antitrust laws. A related relevant market or submarket is the licensing of ECB-resistant stacked corn traits.

157.  The relevant geographic market is the United States.

158.  Monsanto possesses monopoly power in the relevant markets, maintaining a market share of at least 80%. Substantial barriers to entry and expansion exist in the relevant markets.

159.  Monsanto has the power to control market prices and exclude competition.

160.  Monsanto has engaged in conduct and a pattern of conduct with anticompetitive effects to unlawfully maintain and enhance its monopoly in the relevant markets and to keep prices high, stifle competition and eliminate consumer choice though exclusionary behavior designed to keep Syngenta from entering the relevant markets. It has done so with the intent to monopolize the relevant markets.

33

161. There is no legitimate business justification for defendants' conduct.

162. Syngenta has suffered and will likely suffer additional antitrust injury. Defendants' wrongful conduct is material, and has impeded, hampered and delayed Syngenta's ability to enter quickly the relevant markets and caused Syngenta to lose business and suffer damages in an amount to be proven at trial.

163. Defendants' wrongful acts have caused and are likely to continue to cause injury to the relevant markets and have caused Seed Companies, growers and consumers to pay higher prices than they would otherwise pay in a competitive environment.

## COUNT THREE

### Misrepresentations and False Statements In Violation of Section 43(a) of the Lanham Act

164. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1 to 163 herein.

165. Monsanto has misrepresented its own patent position and falsely disparaged Syngenta's patent position, including statements that:

- Syngenta cannot "lawfully commercialize" GA21 in the United States;
- Syngenta's sales of GA21 corn are "unauthorized"; and
- a license by Monsanto is required to "commercialize glyphosate-tolerant corn in the United States" and "Syngenta is not licensed under the intellectual property from Monsanto."

166. These statements were made in commercial advertising (Monsanto press releases and letters sent by Monsanto to Seed Companies), are either literally or impliedly false, and were made in bad faith to impede Syngenta's ability to compete effectively for glyphosate-tolerant corn traits.

34

167. Monsanto's statements are material because they are likely to influence Seed Companies' and growers' purchasing decisions. The statements have actually deceived, or have a tendency to deceive, Seed Companies and growers by causing them to believe wrongfully that Syngenta cannot lawfully commercialize GA21. Because of Monsanto's false statements, Seed Companies and growers have been less likely to purchase GA21 from Syngenta.

168. Both Monsanto's and Syngenta's products are sold and used in interstate commerce.

169. Monsanto's misrepresentations and false statements have irreparably harmed Syngenta by causing it to lose significant sales of GA21.

170. Monsanto's misrepresentations and false statements violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

**DEMAND FOR TRIAL BY JURY**

171. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS THIS COURT:

A. Find that Monsanto is wrongfully maintaining its monopoly over the licensing of glyphosate-tolerant corn traits and stacked corn traits in violation of Section 2 of the Sherman Act and award plaintiff treble damages in an amount to be proven at trial, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a);

B. Find that Monsanto is wrongfully maintaining its monopoly over the licensing of ECB-resistant corn traits and stacked corn traits in violation of Section 2 of the Sherman Act and award plaintiff treble damages in an amount to be proven at trial, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a);

C. Find that Monsanto has violated the Lanham Act and award plaintiff damages in an amount to be proven at trial, pursuant to 15 U.S.C. § 1125(a)(1)(B);

D. Grant injunctive relief prohibiting defendants and all persons, firms and corporations acting on their behalf and under their direction or control from continuing violations of Section 2 of the Sherman Act, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26;

E. Award plaintiff such other relief as is necessary or appropriate to restore and maintain competitive conditions in the markets affected by defendants' unlawful conduct; and

F. Award plaintiff attorneys' fees and costs of this action.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Plaintiff*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100

Dated: September, 7 2006