IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*,  )
                                      )
            Plaintiffs,  )
                                        )
            v.  )      C.A. No.: 04-305-SLR (Consol.)
                                        )
SYNGENTA SEEDS, INC., *et al.*,  )      **REDACTED – PUBLICLY**
                                        )      **FILED VERSION**
            Defendants.  )

## ANSWERING BRIEF IN OPPOSITION TO MONSANTO'S MOTION TO STAY THE TRIAL IN THE ANTITRUST CASE PENDING RESOLUTION OF MONSANTO'S PATENT CLAIMS ON APPEAL

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta*
*Corporation, Syngenta Biotechnology, Inc., Advanta*
*USA, Inc., Garst Seed Company, and Golden Harvest*
*Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: September 27, 2006

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

NATURE OF THE PROCEEDING AND SUMMARY OF ARGUMENT .................................. 1

STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY .............................. 3

ARGUMENT ............................................................................................................... 6

I.    RESOLUTION OF MONSANTO'S PATENT APPEAL WILL NOT SIMPLIFY THE
      ISSUES PRESENTED AT TRIAL IN THE ANTITRUST CASE ..................................... 6

II.   STAYING THE ANTITRUST TRIAL WOULD ALLOW MONSANTO TO
      CONTINUE ITS ANTICOMPETITIVE CONDUCT TO THE DETRIMENT OF
      SYNGENTA, SEED COMPANIES, AND GROWERS.................................................. 15

III.  A STAY PENDING RESOLUTION OF THE PATENT CASE COULD BE LENGTHY
      AND THUS EXACERBATE HARM TO SYNGENTA AND THE MARKET ............. 18

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Alarm Device Mfg. Co. v. Alarm Products Int'l, Inc.*, 60 F.R.D. 199 (E.D.N.Y. 1973)............... 11

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293 (Fed. Cir. 2006)............................ 18

*In re Armstrong World Industries, Inc.*, 432 F.3d 507 (3d Cir. 2005)......................................... 10

*Baxter Int'l, Inc. v. Cobe Lab., Inc.*, No. 89 C 9460, 1992 WL 77665 (N.D. Ill. Apr. 7, 1992) ................................................................................................................................... 11

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of North America, AFL-CIO*, 544 F.2d 1207 (3d Cir. 1976)................................................................................................................. 6

*Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir. 1987) ................................................................ 16

*Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732 (3d Cir. 1983) ...................................... 6

*Delgrosso v. Spang & Co.*, 903 F.2d 234 (3d Cir. 1990)................................................................ 10

*Dawson v. Dodd*, No. Civ. A. 99-CV-2644, 1999 WL 410366 (E.D. Pa. June 17, 1999) ........... 16

*Elsag Bailey (Canada) Inc. v. Trojan Techs., Inc.*, No. 96-CV-3615, 1996 U.S. Dist. LEXIS 14679 (E.D. Pa. Oct. 2, 1996) ........................................................................................ 11

*In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986)....................................................... 11

*Massachusetts Institute of Technology and Electronics For Imaging, Inc. v. Abacus Software*, No. 05-1142, 2006 WL 2613439 (Fed. Cir. Sept. 13, 2006)......................................... 18

*Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356 (Fed. Cir. 201) ........................... 18

*Neomagic Corp. v. Trident Microsystems, Inc.*, No. Civ. A. 98-699-RRM, 2001 WL 1064812 (D. Del. Sept. 7, 2001) ................................................................................................ 11

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ........................................................................ 10

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) ................. 10

*SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304 et. al., 2004 U.S. Dist. LEXIS 13907 (E.D. Pa. July 16, 2004)............................................................................. 6, 10, 12

*Venture Industries Corp. v. Autoliv ASP, Inc.*, No. 04-1486, 2006 WL 2252836 (Fed. Cir. Aug. 7, 2006) ....................................................................................................................... 18

*Worldcom Techs., Inc. v. Intelnet Int'l, Inc.*, No. Civ.A. 00-2284, 2002 WL 1971256, (E.D. Pa. Aug. 22, 2002)............................................................................................................ 16

*Wohl v. Wilkoski*, Civ. A. No. 87-1445, 1989 WL 64426 (E.D. Pa. June 14, 1989) .................... 16

Syngenta Seeds, Inc., Syngenta Corporation, Syngenta Biotechnology, Inc., Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc. (collectively "Syngenta") respectfully submit this answering brief in opposition to the motion filed by Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") to stay the antitrust trial (D.I. 488).

## NATURE OF THE PROCEEDING AND SUMMARY OF ARGUMENT

Monsanto's motion for a stay of the antitrust trial pending its appeal in the patent case should be denied. As this Court has already found, the outcome of Monsanto's patent claims will have little or no effect on the issues in the antitrust trial. In April 2005, the Court denied Monsanto's first attempt to stay the antitrust case on the grounds that the outcome of the patent case would not be "nearly dispositive" of Syngenta's antitrust claims. That reasoning is equally applicable today. Monsanto fails to raise a single argument in support of its current stay motion not already raised in the earlier stay motion that this Court denied. Moreover, Monsanto's current argument that there is significant overlap between the antitrust and patent cases is in direct conflict with arguments it made in support of its recent Rule 54(b) motion, in which it successfully argued – citing to this Court's April 2005 ruling – that the minimal overlap between the two cases justified granting the motion.

Unlike many antitrust cases, such as the ones cited by Monsanto in its opening brief, this is not a case where the claims are based largely on "sham litigation." To the contrary, Syngenta's antitrust case against Monsanto is based on a wide-ranging pattern of anticompetitive conduct designed to entrench Monsanto's monopoly position over two key corn trait markets. The Court has recognized the broad nature of Syngenta's antitrust case – and the minimal overlap with the patent case – in two earlier rulings, both of which Monsanto conspicuously neglects to address in its opening brief.

1

Monsanto's illegal conduct has had and will continue to have the effect of greatly limiting competition, with resulting harm to potential competitors such as Syngenta, to seed companies, and to growers who are forced to endure higher prices on downstream products than they would if these corn trait markets were competitive. Every purchasing season that passes without a court order requiring Monsanto to cease its illegal anticompetitive practices allows Monsanto to further profit from its wrongdoing and results in additional -- and irreparable -- harm to the market.

Monsanto should not be permitted to leverage its meritless patent claims into a self-serving delay of the antitrust trial that would significantly prejudice Syngenta and consumers generally.

## STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

On July 28, 2004, Syngenta filed this case against Monsanto for unlawful maintenance of its monopoly power in both the glyphosate-tolerant corn traits market (Count One) and the ECB-resistant corn traits market (Count Two) in violation of Section 2 of the Sherman Act. Syngenta subsequently filed amended complaints, the most recent dated August 12, 2005, adding a claim for false representations in violation of the Lanham Act.[1]

The crux of Syngenta's case is that Monsanto has undertaken a systematic campaign to monopolize the relevant markets and harm competition. (Syngenta Seeds, Inc.'s Second Amended Complaint, D.I. 124, ("SAC") ¶¶ 1-11.) Syngenta's complaint alleges that Monsanto's campaign to impede competition includes a wide-array of anticompetitive practices:

- Bundling commercial incentives across several products (*Id.* at ¶¶ 111-13);

- Enforcing a licensing scheme that prevents Syngenta and other competitors from effectively competing (*Id.* at ¶¶ 97-110);

- Filing baseless patent cases (the Shah and Lundquist patents) concerning glyphosate-tolerant corn (*Id.* at ¶¶ 72-77);

- Intimidating seed companies not to do business with Syngenta (*Id.* at ¶¶ 100-09);

- Misrepresenting Syngenta's ability to commercialize glyphosate-tolerant traits to discourage seed companies from dealing with Syngenta (*Id.* at ¶¶ 79-81); and

- Demanding the destruction of all GA21 inventory to impair Syngenta's entry into the glyphosate-tolerant corn traits market (*Id.* at ¶¶ 82-96).

Each of these acts has harmed Syngenta and competition in the markets for glyphosate-tolerant corn traits and ECB-resistant corn traits. Moreover, Syngenta has uncovered several additional

---

[1] On September 7, 2006, Syngenta moved for leave to file a Third Amended Complaint for the sole purpose of eliminating certain allegations that had been withdrawn from the case. (D.I. 491.) As of the date of this brief, that motion has not yet been granted and thus Syngenta will refer to its Second Amended Complaint herein. The claims and allegations cited in this brief have not been changed in Syngenta's proposed Third Amended Complaint, a redlined copy of which is attached as Exhibit 1 to D.I. 492.

anticompetitive acts and practices since the filing of its complaint, including new threats and important incentive programs unrelated to Monsanto's patent case.

On September 28, 2004, Monsanto moved to dismiss Syngenta's antitrust case on the grounds that it was a compulsory counterclaim to Monsanto's Shah patent lawsuit against Syngenta. (C.A. No. 04-908, D.I. 10.) In support of that motion, Monsanto argued that "a ruling in Monsanto's favor [in the patent case] will eliminate [Syngenta's GA21] claim altogether" and "would eliminate all or virtually all of Syngenta's ECB corn" claims. (C.A. No. 04-908, D.I. 11, at p. 10-11.) The Court rejected those arguments and denied Monsanto's motion on March 24, 2005 (C.A. No. 04-908, D.I. 16), concluding that "the Antitrust Litigation presents different factual issues than the Shah Litigation" and "also presents legal issues which are different from those of the Shah Litigation." (C.A. No. 04-908, D.I. 15, at p. 7.)

Shortly thereafter, on April 7, 2005, Monsanto filed a motion to stay the antitrust case pending resolution of the patent case (D.I. 53), arguing that: (a) "the scope of Syngenta's antitrust case" would be "substantially narrowed" if Monsanto prevailed in the patent case; (b) "Syngenta's antitrust claims are dependent to a large degree upon its contention that the Shah patent is neither valid nor infringed"; and (c) "the nature and scope of the antitrust claims will be dramatically altered by the resolution of the Shah patent claims." (D.I. 54, at p. 4, 6.) The Court denied Monsanto's motion, ruling from the bench that "the patent litigation really isn't going to be nearly dispositive, which is the only reason why I stay antitrust cases." (D.I. 59, at p. 12.)

On May 10, 2006, the Court granted Syngenta summary judgment on all of Monsanto's claims under the Shah and Lundquist patents. (D.I. 376.) On May 17, 2006, Monsanto filed a Rule 54(b) motion asking the Court to make that ruling final and thus appealable (D.I. 383), arguing that that there was only "minimal overlap" between the patent and antitrust claims, and

4

quoting several of the Court's prior rulings. (D.I. 404, at p. 4-5.) Accepting Monsanto's arguments, the Court granted its Rule 54(b) motion on June 6, 2006. (D.I. 411.) Monsanto subsequently filed a notice of appeal of the Court's ruling on its patent claims. (D.I. 414.) That appeal is before the Federal Circuit, where briefing is currently scheduled to be completed in October 2006.

Monsanto filed this motion to stay the antitrust trial on August 23, 2006. (D.I. 488.)

**ARGUMENT**

When deciding whether to stay a proceeding, a court considers several factors, including

"(1) whether a stay will simplify issues and promote judicial economy; (2) the balance of harm to

the parties; and (3) the length of the requested stay." *SmithKline Beecham Corp. v. Apotex*

*Corp.*, No. 99-CV-4304 et. al., 2004 U.S. Dist. LEXIS 13907, at *25-26 n.14 (E.D. Pa. July 16,

2004) (citing *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983)).

In addition, a stay of a proceeding pending the outcome of another case should only be granted if

resolution of that case would have a significant or dispositive effect on the issues. *See Bechtel*

*Corp. v. Local 215, Laborers' Int'l Union of North America, AFL-CIO*, 544 F.2d 1207, 1215 (3d

Cir. 1976) ("In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to

abide the outcome of another which may substantially affect it or be dispositive of the issues.").

These factors weigh in favor of denying Monsanto's motion to stay the antitrust trial pending

resolution of the patent appeal.

**I.    RESOLUTION OF MONSANTO'S PATENT APPEAL WILL NOT SIMPLIFY THE ISSUES PRESENTED AT TRIAL IN THE ANTITRUST CASE**

Staying the antitrust trial pending the outcome of Monsanto's appeal in the Shah and

Lundquist patent cases will not simplify or narrow the issues presented in the antitrust case.  This

is not an antitrust case based exclusively or even largely on a claim of "sham patent litigation."

On the contrary, Syngenta's antitrust case is based on a wide-ranging pattern of anticompetitive

conduct perpetrated by Monsanto to entrench its monopoly position in the glyphosate-tolerant

corn trait market (Count I) and the ECB-resistant corn trait market (Count II).  The crux of

Syngenta's case concerns Monsanto's illegal licensing programs, including its discount programs

and other incentives designed to lock-up the independent seed company channel, and its threats

to seed companies not to do business with Syngenta.  The facts and legal issues raised in the

6

patent case (which only involves alleged infringement of patents relating to glyphosate-tolerant traits) have no bearing on these allegations.

Monsanto's current argument that the outcome of the patent case has "broad implications" for the antitrust case (Opening Brief, D.I. 489, ("Mon. Br.") at 4) completely ignores two earlier rulings from this Court that expressly rejected that argument. In its rulings denying Monsanto's September 2004 motion to dismiss and Monsanto's first motion to stay the antitrust case (filed in April 2005), the Court has already recognized that because of the broad-sweeping nature of Syngenta's antitrust case: (1) there is minimal factual overlap between the patent and antitrust cases; and (2) the patent case will not be dispositive of the antitrust case.

In Monsanto's September 2004 motion to dismiss the antitrust case as a compulsory counterclaim to its Shah patent lawsuit, Monsanto made many of the same arguments it offers now. For example, Monsanto argued that "a ruling in Monsanto's favor [in the patent case] will eliminate [Syngenta's GA21] claim altogether" and "would eliminate all or virtually all of Syngenta's ECB corn" claims. (Sept. 28, 2004 Monsanto Op. Br. in Support of its Motion to Dismiss, C.A. No. 04-908, D.I. 11, at p. 10-11.) The Court rejected Monsanto's arguments, finding that there was "minimal factual and legal overlap" between the two cases. (Mar. 24, 2005 Order, C.A. No. 04-908, D.I. 15, attached hereto as Exhibit 1.) The Court explained that the "Antitrust Litigation will focus on typical antitrust issues such as whether defendants are monopolists and whether defendants engaged in anticompetitive conduct," while the patent case "will focus on patent issues such as construction of patent claims." (*Id.* at p. 7.) The Court also noted that the patent case "only involves infringement of a patent relating to glyphosate-resistant plants" and that "[w]hile several of [Syngenta's antitrust] allegations are specific to the

7

glyphosate-resistant seed trait market, most of the allegations are broader." (*Id.* at p. 6-7 (listing some of Syngenta's allegations).)

A month later in April 2005, in support of its first motion to stay the antitrust case pending the resolution of the patent case, Monsanto again made arguments that mirror those it makes now. Monsanto argued then that "the scope of Syngenta's antitrust case" would be "substantially narrowed" if Monsanto prevailed in the patent case; it now argues that Count II "would be substantially narrowed" if it won the patent appeal. (Apr. 7, 2005 Monsanto Op. Br. in Support of its Motion to Stay the Antitrust Case, D.I. 54, attached hereto as Exhibit 2, at p. 4; Mon. Br. at 9.) Monsanto also argued that "Syngenta's antitrust claims are dependent to a large degree" on the outcome of the patent case; it now argues that Count I "is entirely dependent on the outcome of" the patent case. (Exhibit 2, D.I. 54, at p. 4; Mon. Br. at 8.) The Court once again rejected Monsanto's arguments, ruling that "the patent litigation really isn't going to be nearly dispositive, which is the only reason why I stay antitrust cases." (Apr. 13, 2005 Hearing Transcript, D.I. 59, at p. 12, attached hereto as Exhibit 3.)

The reasons for denying Monsanto's prior motion to stay the antitrust case are equally applicable today. Monsanto has not raised – nor could it raise – any facts or arguments not previously rejected by this Court. The nature of the Syngenta's antitrust case has not changed since the Court's prior ruling in a way that would make the patent litigation any more dispositive.

Indeed, the only relevant change in the antitrust case since April 2005 has been the discovery of additional anticompetitive acts and practices that are entirely unrelated to the patent case.



8

REDACTED

(5/9/06 Beck

Dep. at 80-85, attached hereto as Exhibit 4.)

REDACTED    (*Id.*) Similarly,

REDACTED

(5/10/06 Parker Dep. at 15, attached hereto as Exhibit

5.) In addition to these – and other – threats, Syngenta has also uncovered additional Monsanto

incentive programs aimed at "key accounts" that condition incentives on seed companies

growing their share of Monsanto's corn traits at the expense of other trait providers (such as

Syngenta), furthering Monsanto's stranglehold over the relevant markets. Monsanto will have to

answer for this illegal, anticompetitive behavior regardless of the outcome of the patent

litigation.[2]

In fact, Monsanto itself recently argued, in support of its motion to amend the patent

judgment under Rule 54(b), that there is "limited overlap between the antitrust and patent cases."

(June 2, 2006 Monsanto Reply Br. in Support of its Rule 54(b) Motion, D.I. 404, attached hereto

as Exhibit 6, at p. 5.) To bolster that position, Monsanto quoted heavily from the Court rulings

cited above (including the Court's finding that "the Antitrust Litigation presents different factual

---

[2] Since the Court's previous denial of Monsanto's request to stay the antitrust case, Monsanto filed counterclaims alleging, among other things, that Syngenta tortiously interfered with Monsanto's license agreement with Garst. Monsanto's counterclaims, which would also be stayed, are not related to the patent case. This is another illustration of how the patent case has become *less* relevant to the antitrust case since April 2005.

issues than the Shah Litigation" and ruling that "the patent litigation really isn't going to be nearly dispositive" of the antitrust case).[3] (*Id.*) Monsanto should not be permitted to make arguments now that are directly inconsistent with arguments it made to this Court in support of its Rule 54(b) motion, given that the Court ruled in Monsanto's favor on that motion. *See, e.g., In re Armstrong World Industries, Inc.*, 432 F.3d 507, 517 (3d Cir. 2005) ("Judicial estoppel can be applied when a party asserts a certain position in a legal proceeding and prevails, only to assert a contrary position later on because of changed interests. Its purpose is to protect the judicial process by preventing parties from 'deliberately changing positions according to the exigencies of the moment.'") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001)); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996) (application of judicial estoppel is "particularly appropriate" in situations where "the party benefited from its original position") (quoting *Delgrosso v. Spang & Co.*, 903 F.2d 234 (3d Cir. 1990)).

Monsanto provides no basis for departing from the Court's prior rulings or its own recent position. Even the cases Monsanto relies upon do not support its current position. Those cases involved narrow patent-related antitrust counterclaims (i.e., sham litigation or fraud on the patent office claims) in which the claims of the entire (or almost entire) antitrust case depended upon the patent case. The cases did not involve licensing practices, discount programs, or a pervasive pattern of other non-patent related business practices. *See SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304 et. al., 2004 U.S. Dist. LEXIS 13907, at *25-26 n.14 (E.D. Pa. July 16, 2004) (staying antitrust counterclaim where "in order to prove that SmithKline violated the

---

[3] Recognizing that it had made contrary arguments in its September 2004 motion to dismiss and April 2005 motion to stay the case to the effect that the antitrust case would be substantially affected by the patent case outcome (the same arguments it raises in its current stay motion), Monsanto suggested in its Rule 54(b) papers that those arguments were no longer valid given "this Court's actual rulings" rejecting that position. (Exhibit 6, D.I. 404, at p. 4 (emphasis in original).)

antitrust laws, the [defendant] will have to prove that SmithKline engaged in sham patent infringement litigation"); *Baxter Int'l, Inc. v. Cobe Lab., Inc.*, No. 89 C 9460, 1992 WL 77665, at *1, *5 (N.D. Ill. Apr. 7, 1992) (staying antitrust counterclaim where it was "based on a fraudulently procured patent" and thus "the antitrust issues may be rendered moot by the determinations to be made during the patent liability trial");[4] *see also In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (distinguishing between "'pure' Sherman Act claims" and "'patent type antitrust' claims").

That courts have granted stays in such cases, where there is a complete overlap between the patent case and the antitrust claim, does not suggest a stay is appropriate on the facts of this case, where the antitrust claim is based on a wide range of conduct of which "sham litigation" is only one example. On the contrary, these cases are entirely consistent with this Court's prior ruling refusing to stay the antitrust case where resolution of the patent case would not be "nearly dispositive." (Exhibit 3, D.I. 59, at p. 12; *see also Alarm Device Mfg. Co. v. Alarm Products Int'l, Inc.*, 60 F.R.D. 199, 203 (E.D.N.Y. 1973) (refusing to grant stay where "a decision on patent validity would not necessarily moot the antitrust counterclaims").)

Even in cases where a court granted a stay of antitrust counterclaims pending the outcome of a patent case, courts have lifted such stays once the patent claims were resolved by summary judgment. *See, e.g., Neomagic Corp. v. Trident Microsystems, Inc.*, No. Civ. A. 98-

---

[4] All but one of the cases cited by Monsanto where a court stayed an antitrust case clearly involved an antitrust claim that was wholly or almost wholly dependent on the invalidity of a patent. The one case where that fact is not clear, *Elsag Bailey (Canada) Inc. v. Trojan Techs., Inc.*, No. 96-CV-3615, 1996 U.S. Dist. LEXIS 14679 (E.D. Pa. Oct. 2, 1996), involved a "sham litigation" claim, but it cannot be discerned from the short opinion how large a role it played in the antitrust suit. Regardless, that case is distinguishable because of its unique circumstances: the patent case at issue involved a Canadian patent being litigated in a Canadian court. *Id.* at *3. The court expressly noted that it "may not rule upon the validity of a foreign patent," and thus was presumably incapable of rendering a verdict on the "sham litigation" claim until the Canadian court resolved the patent dispute. *Id.*

699-RRM, 2001 WL 1064812 (D. Del. Sept. 7, 2001) (noting the court had previously granted a

stay of antitrust counterclaim that was based wholly on "sham litigation" pending resolution of

patent case, but ending that stay once the court ruled on summary judgment that the patent was

not infringed and rejecting patent holder's argument that the stay should be extended until the

appeal to the Federal Circuit was completed). In other words, courts appear to only very rarely

stay antitrust claims pending the appeal of a decision in a related patent case.[5] *Neomagic*

illustrates that this is true even when – unlike Syngenta's case – the antitrust claims are heavily

dependent on the outcome of a patent case.

   This outcome is perfectly sensible: the balance of harm – even where a stay is initially

justified because of substantial overlap between an antitrust and patent case – shifts once the

patent case has been resolved either by summary judgment or at trial. At that point, the small

risk of reversal at the appellate level – and possible retrial – simply is not sufficient to justify

further delay. Indeed, the risk of retrial following appellate reversal is routine and not an

appropriate basis for imposing or extending a stay. For example, in patent cases, every time a

district court judge resolves a claim construction issue prior to trial, or rules in favor of the patent

holder on partial summary judgment, there is a risk that the subsequent jury trial will have to be

re-done if an appellate court later reverses those predicate rulings. In spite of that risk, however,

---

[5] Indeed, Monsanto has cited only a single case where a court stayed an antitrust claim pending the outcome of a patent *appeal*. (Mon. Br. at 6 (citing *SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304 et. al., 2004 U.S. Dist. LEXIS 13907 (E.D. Pa. July 16, 2004)).) There were a number of factors in that case weighing in favor of a stay that are not present here. As noted above, *SmithKline* involved an antitrust counterclaim that required defendants to prove that the patent-holder "engaged in sham patent infringement litigation" in order to show a violation of the antitrust laws. *SmithKline*, 2004 U.S. Dist. LEXIS 13907, at *26 n.14. The court also justified the stay on the grounds that defendants had asserted additional counterclaims that sought declaratory judgments that the relevant patents were invalid, claims that would "be moot in the event the [district court] decisions holding the [patents] invalid are affirmed on appeal." *Id.* at *25. Unlike the claims at issue in *SmithKline*, Syngenta's antitrust case is not based wholly (or even largely) on a sham litigation claim, nor has Syngenta raised other claims that would be affected by the outcome of Monsanto's patent appeal.

courts do not require such trials to be stayed pending appellate review of every claims construction or summary judgment ruling. Thus, even if there were a risk that Syngenta's antitrust case would have to be retried in its entirety if Monsanto eventually won the patent case, that risk would not weigh heavily in favor of a stay.

Perhaps recognizing the inappropriateness of staying an antitrust case that would be affected little by the outcome of a related patent case, Monsanto distorts the nature of Syngenta's case in its attempt to prove that the patent issues on appeal "are at the core of Syngenta's antitrust claims." (Mon. Br. at 2.) In particular, Monsanto contends that "the sham patent allegations *form the basis* of Dr. Gilbert's, Syngenta's sole economic expert, opinion on foreclosure." (Mon. Br. at 4 (emphasis added).) Monsanto thereby misrepresents both Dr. Gilbert's analysis and the nature of Syngenta's antitrust case.

REDACTED

(Expert Report of Richard J. Gilbert ("Gilbert Report"), attached hereto as Exhibit 7, at p. 111-15.)

REDACTED

(*E.g., id.* at p. 56-107.) Thus, Monsanto's representation that "the sham patent allegations form the basis" of Dr. Gilbert's "opinion on foreclosure" is simply false.

Other than its misrepresentations of Dr. Gilbert's report, Monsanto offers no meaningful support for its position that it did not already raise in similar or identical form in its previous stay motion. Indeed, a review of Syngenta's antitrust claims show Monsanto could offer no such support. The outcome of the patent case is entirely irrelevant to Count II of Syngenta's antitrust complaint, which focuses on ECB-resistant traits. Monsanto's license restrictions, including its

provisions bundling discounts on glyphosate-tolerant traits with discounts for ECB-resistant traits, have foreclosed and continue to foreclose access to the ECB-resistant market. This illegal conduct is utterly unrelated to Monsanto's sham filing of patent lawsuits that relate to a different trait technology.[6]

Even under Count I, which focuses on glyphosate-tolerant traits, a patent victory for Monsanto would, at most, reduce the amount of damages recoverable by Syngenta. Syngenta will have a glyphosate-tolerant product in the market in the near future regardless of the outcome of Monsanto's patent litigation. One of the patents at issue, the Shah patent, expires in mid-2007, and thus Monsanto could not use that patent to prevent Syngenta from selling GA21 at that time. REDACTED

▸Under either scenario, Syngenta's antitrust case will go forward.[7]

Because the patent case has "minimal factual and legal overlap" with Syngenta's antitrust case and will not be "dispositive" of the issues, Monsanto's motion to stay the antitrust trial pending the outcome of the patent appeal should be denied.

---

[6] In addition, Monsanto's argument that stacked events (such as seed that is both ECB-resistant and glyphosate-tolerant) would be affected by the patent ruling (Mon. Br. at 9) is simply incorrect. Monsanto's monopolistic prohibitions against stacking its glyphosate-tolerant trait with traits from competitors are unlawful under the antitrust laws regardless of whether it has a valid patent in that trait.

[7] In the unlikely event that Monsanto eventually prevails in its patent lawsuit, the amount of damages due Syngenta for Monsanto's antitrust violations could likely be reduced accordingly without requiring a full retrial.

II.    **STAYING THE ANTITRUST TRIAL WOULD ALLOW MONSANTO TO CONTINUE ITS ANTICOMPETITIVE CONDUCT TO THE DETRIMENT OF SYNGENTA, SEED COMPANIES, AND GROWERS**

Every purchasing season that passes without a court order requiring Monsanto to cease its illegal anticompetitive practices allows Monsanto to reap further the benefits of its unlawful monopoly and results in additional harm to Syngenta, seed companies, and growers. Monsanto's ongoing anticompetitive practices of limiting Syngenta's and other trait provider's ability to compete have harmed and continue to harm seed companies and growers by denying them an additional choice for corn traits and forcing them to pay higher, monopoly prices.

Syngenta acquired rights to the GA21 technology in 2004 and immediately began marketing GA21 and its ECB-resistant trait (Bt11) to seed companies. Syngenta's efforts, however, have been impeded by Monsanto's licensing practices and its threats to seed companies. From the onset of this case in 2004 through the currently-scheduled January 2007 trial (three purchasing seasons, 2005-2007), Syngenta has had to fight against Monsanto's unlawful conduct. Thus, for three years, seed companies and growers have been denied an alternative to Monsanto and have been forced to pay higher prices.[8] Should the Court stay Syngenta's antitrust case pending the patent appeal, Syngenta will continue to face Monsanto's unlawful conduct for at least another purchasing season (and more likely two or more additional seasons), and the market will continue to suffer. Any delay in bringing Monsanto's conduct to a

REDACTED

---
[8]

(*See, e.g.*, Exhibit 7, Gilbert Report, at 56-111; Exhibit 8, 6/6/06 Lizer Dep. at 34-35; Exhibit 9, 5/30/06 Wyffels Dep. at 32; Exhibit 4, 5/9/06 Beck Dep. at 204-07; Exhibit 10, 4/27/06 Thompson Dep. at 36-46.)

jury will only allow it to continue this behavior, to the plain prejudice of Syngenta, seed companies and growers.[9]

Monsanto disingenuously argues that Syngenta would not face prejudice because a "stay will not impact its ability to continue to license" its traits. (Mon. Br. at 9.) This argument ignores the merit of Syngenta's antitrust claim. Syngenta is being, and will continue to be, harmed by Monsanto's monopolistic, anticompetitive conduct designed specifically to lock competitors out of a meaningful share of the relevant markets.                REDACTED

REDACTED

      (Exhibit 7, Gilbert Report, at 74-107.) The minimal sales Syngenta has managed to make in its attempts to break into the markets are hardly evidence of lack of prejudice. Any delay in bringing Monsanto's conduct to a jury will only allow it to continue its harmful, anticompetitive behavior, to the plain prejudice of Syngenta.

Monsanto also argues that any harm to Syngenta as a result of postponing the antitrust trial "could be easily compensated in the form of money damages." (Mon. Br. at 10.)[10]

---

[9] Delaying resolution of the antitrust case is not only advantageous to Monsanto's profits, but also secures it a litigation advantage. As time passes, memories may fade and become less reliable, witnesses can become unavailable, and evidence can grow stale and no longer represent market realities. *See, e.g., Burkett v. Cunningham*, 826 F.2d 1208, 1232 (3d Cir. 1987) (noting effects of delay include possibility that "witnesses may disappear, their memories may fade, and other evidence may be lost"); *Worldcom Techs., Inc. v. Intelnet Int'l, Inc.*, No. Civ.A. 00-2284, 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002) ("[F]urther delay creates the risk of prejudice to plaintiffs in the form of lost evidence, fading memories, and potentially dissipating assets."); *Dawson v. Dodd*, No. Civ. A. 99-CV-2644, 1999 WL 410366, at *2 (E.D. Pa. June 17, 1999) (refusing to grant stay requested by defendant where delay "may cause a plaintiff to suffer prejudice in that the passage of time can lead to fading memories and the death or relocation of relevant witnesses"); *Wohl v. Wilkoski*, Civ. A. No. 87-1445, 1989 WL 64426, at *2 (E.D. Pa. June 14, 1989) ("What evidence has been lost or is no longer available because of this delay is unclear, but it is clear that plaintiffs should not bear that risk. Lengthy delay alone may harm the plaintiffs.").

Monsanto's argument misses the point. In large part, this case concerns stopping Monsanto's anticompetitive practices so that Syngenta or other trait providers have freedom to compete in the markets for glyphosate-tolerant corn traits and ECB-resistant corn traits, providing consumers lower prices and additional choice. Monsanto's illegal leveraging of its monopoly position allows it to act in the marketplace in ways that could have harmful – and potentially unquantifiable – effects for years to come, even if a court eventually declared its conduct wrongful. It will likely take years for Syngenta to overcome the market effects of Monsanto's illegal anticompetitive behavior even assuming a jury declares Monsanto's conduct illegal in January 2007. Delaying the trial will only allow Monsanto to further entrench its monopoly position, and prolong the harm to the market. Moreover, even if Syngenta's harm could be quantified, monetary damages do not address the continuing harm to seed companies and growers. Indeed, any additional harm to seed companies, growers, and consumers caused by any delay in bringing Monsanto's illegal conduct to a jury would likely never be compensated.

For these reasons, it would not be just to allow Monsanto to leverage meritless patent claims into a self-serving delay of the trial on its antitrust violations. Such a ruling would provide an incentive for those who flagrantly violate the antitrust laws to file meritless patent claims simply to delay their day of reckoning in court.

---

[10] Monsanto cites to Professor Gilbert's expert report in support of that position. (Mon. Br. at 10.) This contradicts, however, prior statements by Monsanto and its expert that Professor Gilbert has not accurately measured the damages to Syngenta. Monsanto cannot legitimately argue there is no prejudice from a stay because damages are easily quantifiable when it is simultaneously attacking Syngenta's damages analysis.

## III.    A STAY PENDING RESOLUTION OF THE PATENT CASE COULD BE LENGTHY AND THUS EXACERBATE HARM TO SYNGENTA AND THE MARKET

Monsanto argues that a stay would only be "of moderate duration," citing in support only the fact that briefing is scheduled to be completed in October 2006. (Mon. Br. at 10-11.) This fact, however, by no means proves the length of the stay would be "moderate." Resolution of the patent case by the Federal Circuit is not guaranteed to follow swiftly the conclusion of briefing. Indeed, Monsanto is well aware of this fact. It was involved in an appeal to the Federal Circuit in *Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356 (Fed. Cir. 2001), where briefing was concluded on April 3, 2000, yet the court did not reach a decision until August 16, 2001, nearly *a year and a half later*.[11] Such a delay in resolution of Syngenta's antitrust case would not be "moderate," especially given that Monsanto would be permitted to continue its anticompetitive conduct and use its monopoly power to further entrench itself into various corn trait markets to the detriment of potential competitors and to consumers.

Moreover, Monsanto no doubt has the intention of leveraging any stay "pending appeal" it receives now into an even more significant delay. Monsanto has already suggested that, if it wins on appeal, it would want to extend the stay pending trial of its patent claims. (Mon. Br. at 11.) Monsanto fails to acknowledge the possibility, implicit in its argument, that even additional extensions would be required. The same reasons Monsanto advances in support of a stay here would also apply if Monsanto won the appeal, lost at trial of its remanded patent claims, and then took that verdict up on appeal. Under such circumstances, Monsanto would no doubt urge that

---

[11] Such a lengthy time-table is hardly unprecedented. In the last two months alone, the Federal Circuit decided several patent cases where briefing had been completed *more than a year* prior to the decision. *See Massachusetts Institute of Technology and Electronics For Imaging, Inc. v. Abacus Software*, No. 05-1142, 2006 WL 2613439 (Fed. Cir. Sept. 13, 2006); *Venture Industries Corp. v. Autoliv ASP, Inc.*, No. 04-1486, 2006 WL 2252836 (Fed. Cir. Aug. 07, 2006); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293 (Fed. Cir. 2006).

the antitrust stay be extended pending that appeal, as well as pending any subsequent reversals and retrials. Granting Monsanto a stay now thus risks substantial – not "moderate" – delay in putting Monsanto's wide-ranging antitrust violations before a jury. Seed companies and growers should not have to suffer through one more day of Monsanto's monopolistic conduct, let alone be forced to wait many additional years before a court of law orders that Monsanto's illegal stranglehold over the relevant markets be broken.

## CONCLUSION

For these reasons, Syngenta respectfully requests that this Court deny Monsanto's motion
to stay the trial in the antitrust case.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta
Corporation, Syngenta Biotechnology, Inc.,
Advanta USA, Inc., Garst Seed Company, and
Golden Harvest Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated:  September 27, 2006

## CERTIFICATE OF SERVICE

     I, John W. Shaw, hereby certify that on September 27, 2006, I caused to be electronically filed a

true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will

send notification that such filing is available for viewing and downloading to the following counsel of

record:

          Richard L. Horwitz, Esquire
          David E. Moore, Esquire
          Potter Anderson & Corroon LLP
          Hercules Plaza
          1313 North Market Street
          Wilmington, DE 19899-0951

     I further certify that on September 27, 2006, copies of the foregoing document were served by

hand delivery on the above listed counsel and on the following non-registered participants as indicated

below:

### BY FEDERAL EXPRESS

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

          YOUNG CONAWAY STARGATT & TAYLOR, LLP

          John W. Shaw (No. 3362)
          The Brandywine Building, 17th Floor
          1000 West Street
          Wilmington, Delaware 19801
          (302) 571-6600
          jshaw@ycst.com
          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on September 27, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>       Richard L. Horwitz, Esquire
>       David E. Moore, Esquire
>       Potter Anderson & Corroon LLP
>       Hercules Plaza
>       1313 North Market Street
>       Wilmington, DE 19899-0951

I further certify that on September 27, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants as indicated below:

### BY FEDERAL EXPRESS

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Defendants*