IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*,  )
                             )
            Plaintiffs,      )
                             )
    v.                       )    C.A. No.: 04-305-SLR (Consol.)
                             )
SYNGENTA SEEDS, INC., *et al.*,  )    **Redacted Version -**
                             )    **Publicly Filed**
            Defendants.      )

**APPENDIX TO**
**ANSWERING BRIEF IN OPPOSITION TO MONSANTO'S MOTION TO STAY**
**THE TRIAL IN THE ANTITRUST CASE PENDING RESOLUTION**
**OF MONSANTO'S PATENT CLAIMS ON APPEAL**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta*
*Corporation, Syngenta Biotechnology, Inc., Advanta*
*USA, Inc., Garst Seed Company, and Golden Harvest*
*Seeds, Inc.*

Of Counsel:
SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY  10022-6069
(212) 848-4000

Heather Lamberg Kafele
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated:  September 27, 2006

## TABLE OF CONTENTS

Exhibit 1      March 24, 2005 Order, C.A. No. 04-908, D.I. 15

Exhibit 2      April 7, 2005 Monsanto Op. Br. in Support of its Motion to Stay the
               Antitrust Case, D.I. 54

Exhibit 3      April 13, 2005 Hearing Transcript, D.I. 59, pp. 1-12

Exhibit 4      Transcript of May 9, 2006 Deposition of Lawrence C. Beck, pp. 78-
               87, 202-209

Exhibit 5      Transcript of May 10, 2006 Deposition of Irvin K. Parker, pp. 13-17

Exhibit 6      June 2, 2006 Monsanto Reply Br. in Support of its Rule 54(b) Motion,
               D.I. 404

Exhibit 7      July 26, 2006 Expert Report of Richard J. Gilbert

Exhibit 8      Transcript of June 6, 2006 Deposition of Thomas Lizer, pp. 32-37

Exhibit 9      Transcript of May 30, 2006 Deposition of William J. Wyffels, Jr., pp.
               30-34

Exhibit 10     Transcript of April 27, 2006 Deposition of Scott Thompson, pp. 34-48

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYNGENTA SEEDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-908-SLR |
| | ) | |
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC, | ) | |
| | ) | |
| Defendants. | ) | |

---

John W. Shaw, Esquire and Karen E. Keller, Esquire of Young
Conaway Stargatt & Taylor, L.L.P., Wilmington, Delaware; Steven
C. Sunshine, Esquire and Heather Lamberg Kafele, Esquire of
Shearman & Sterling, L.L.P., Washington, District of Columbia;
Richard F. Schwed, Esquire and Thomas A. McGrath III, Esquire of
Shearman & Sterling, L.L.P., New York, New York.   Counsel for
Plaintiff.

Richard L. Horwitz, Esquire of Potter Anderson & Corroon L.L.P.,
Wilmington, Delaware; Peter E. Moll, Esquire of Howrey Simon
Arnold & White, Washington, District of Columbia; Susan Knoll,
Esquire of Howrey Simon Arnold & White, Houston, Texas; Kenneth
A. Letzler, Esquire of Arnold & Porter, Washington, District of
Columbia.   Counsel for Defendants.

---

**MEMORANDUM OPINION**

Dated: March 24 , 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

On July 28, 2004, plaintiff Syngenta Seeds, Inc. sued defendants Monsanto Co. and Monsanto Technology LLC (collectively "defendants") alleging "improper and illegal monopolization and attempted monopolization in the supply chain for biotechnology seed traits used by farmers throughout the United States." (D.I. 1). Presently before the court is defendants' motion to dismiss plaintiff's complaint or, in the alternative, to consolidate the present action with a patent infringement suit. (D.I. 10) For the reasons set forth below, the court denies defendants' motion to dismiss but grants defendants' motion to consolidate.

## II.  BACKGROUND

Through the use of biotechnology, it is possible to introduce new genetic characteristics, or traits, into seeds in order to add desirable characteristics to crops. (D.I. 8 at 2) For example, biotechnology seed traits permit farmers to grow corn or soybeans tolerant to a leading non-selective herbicide, glyphosate. (Id.) This glyphosate-tolerant trait allows growers to spray glyphosate herbicide over the entire crop and kill all weeds, without risking any damage to the corn or soybean crop. (Id.) Other biotechnology seed traits permit farmers to plant corn that is resistant to certain pervasive insects, such as corn rootworm and the European corn borer. (Id.) Plaintiff and

2

defendants are major suppliers of biotechnology traits and seeds. (<u>Id.</u> at 6)

On May 12, 2004, plaintiff's affiliate announced that it had acquired intellectual property rights to "GA21," a glyphosate-resistant corn trait. (D.I.8 at 4; D.I. 11 at 3) Plaintiff's affiliate also announced its intent to acquire the corn and soybean seed businesses of Garst Seeds and the Golden Harvest Group. (<u>Id.</u>) That same day, defendants filed Civil Action Number 04-305 (the "Shah Litigation"), alleging infringement of U.S. Patent No. 4,940,835 ("the '835 patent"), entitled "Glyphosate-Resistant Plants."

On July 28, 2004, plaintiff sued defendants, alleging that defendants' conduct in the corn trait and seed market violates Section 2 of the Sherman Act (the "Antitrust Litigation"). (D.I. 1) Plaintiff filed an amended complaint on September 14, 2004. (D.I. 8) The amended complaint alleges that defendants have willfully maintained monopolies in: (1) the glyphosate-tolerant corn trait market (<u>Id.</u> at 36-37); (2) the European corn borer trait market (<u>id.</u> at 37-38); and (3) the foundation corn seed market (<u>id.</u> at 38-39).

## III. STANDARD OF REVIEW

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication

3

the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). "A compulsory counterclaim not raised in the first action is barred in subsequent litigation." Bristol Farmers Mkt. and Auction Co. v. Arlen Realty & Dev. Corp., 589 F.2d 1214, 1220 (3d Cir. 1978). As this court noted in Metallgesellschaft AG v. Foster Wheeler Energy Corp., 143 F.R.D. 553, 558 (D. Del. 1992), the United States Court of Appeals for the Third Circuit has embraced a fairly liberal interpretation of the "transaction or occurrence" standard, establishing as "the operative question in determining if a claim is a compulsory counterclaim . . . [is] whether [the counterclaim] bears a logical relationship to an opposing party's claim." A counterclaim is logically related to the opposing party's claim "[w]here multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961). In determining whether a "logical relationship" exists between an opposing party's claim and a counterclaim, the court will analyze several factors: (1) Are the issues in fact and law raised by the claim and counterclaim largely the same?; (2) Would res judicata bar plaintiff's subsequent suit absent the compulsory counterclaim rule?; and (3) Will substantially the same evidence support or refute the claim

4

as well as the counterclaim? <u>Metallgesellschaft</u>, 143 F.R.D. at
558.

Pursuant to Fed. R. Civ. P. 42(a), district courts have the
authority to consolidate "actions involving a common question of
law or fact . . . pending before the court." Decisions to
consolidate cases are at the discretion of the district court,
but often courts balance considerations of efficiency, expense
and fairness. <u>See</u> <u>United States v. Dentsply Int'l, Inc.</u>, 190
F.R.D. 140, 142-43 (D. Del. 1999). Under Fed. R. Civ. P. 42(a),
"a district court [has] broad power . . . to consolidate causes
for trial as may facilitate the administration of justice."
<u>Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.</u>, 339 F.2d
673 (3d Cir. 1964).

IV.  DISCUSSION

Plaintiff's Antitrust Litigation does not arise from the
same transaction or occurrence that is the subject matter of
defendants' Shah Litigation. The Antitrust Litigation arises
from defendants' allegedly anticompetitive conduct. The Shah
Litigation arises from plaintiff's alleged infringement of the
'835 patent. Because the Antitrust Litigation arises from
defendants' conduct, and the Shah Litigation arises from
plaintiff's conduct, the two actions could not arise from the
same transaction or occurrence.

Furthermore, the Antitrust Litigation presents distinct

5

factual issues from the Shah Litigation.  In the Antitrust
Litigation, defendants are alleged to have monopolies in the
glyphosate-tolerant trait market, the European corn borer trait
market, and the foundation corn seed market.  (D.I. 8 at 36-39)
More specifically defendants are alleged to have:  (1) bundled
commercial incentives across several products sold to corn
growers to create a barrier to plaintiff and other competitors
(id. at 24, 28); (2) enforced exclusive dealing contracts to
prevent plaintiff or other competitors from entering markets (id.
at 21-23); (3) filed the "baseless" Shah Litigation against
plaintiff (id. at 16-17); (4) filed separate "baseless" patent
case in Illinois concerning two other glyphosate-tolerant trait
patents (id. at 17-18); (5) misrepresented plaintiff's ability to
commercialize glyphosate-tolerant traits to discourage seed
companies from dealing with plaintiff (id. at 18); (6) demanded
destruction of all GA21 production to impair plaintiff's entry
into the glyphosate-tolerant traits market (id. at 19-21); (7)
intimidated seed companies not to do business with plaintiff (id.
at 22-23); and (8) denied plaintiff access to foundation seeds
and pressured foundation seed companies not to deal with
plaintiff (id. at 25).  While several of these allegations are
specific to the glyphosate-resistant seed trait market, most of
the allegations are broader.  In contrast, the Shah Litigation
only involves infringement of a patent relating to glyphosate-

6

resistant plants. As a result, the Antitrust Litigation presents different factual issues than the Shah Litigation.

The Antitrust Litigation also presents legal issues which are different from those of the Shah Litigation. The Shah Litigation will focus on patent issues such as construction of patent claims, whether defendants are estopped from asserting the '835 patent based on representations made in prior litigations, whether the '835 patent is valid, and whether plaintiff infringes the '835 patent. The Antitrust Litigation will focus on typical antitrust issues such as whether defendants are monopolists and whether defendants engaged in anticompetitive conduct. Thus, the legal issues presented in the Antitrust Litigation and the Shah Litigation are distinct.[1]

The reasoning of Rohm & Haas Co. v. Brotech Corp., 770 F. Supp. 928 (D. Del. 1991), does not suggest that the claims of plaintiff's Antitrust Litigation should have been a compulsory

---

[1] The different legal issues presented by the Antitrust Litigation and the Shah Litigation will require presentation of different evidence. The Antitrust Litigation will require examination of, among other things: defendants' contracts with seed companies, defendants' incentive program, alleged threats to companies, and relevant product and geographic markets. The Shah Litigation will not consider any of this evidence and will instead focus on the '835 patent.

Defendant does not cite, and the court is unable to find, any precedent suggesting that resolution of defendants' Shah Litigation would create a res judicata bar on plaintiff's Antitrust Litigation. Consequently, this is yet another factor suggesting that the claims underlying plaintiff's Antitrust Litigation are not compulsory counterclaims of defendants' Shah Litigation.

counterclaim of the Shah litigation.  In <u>Rohm</u>, Rohm sued the
Brotech, alleging infringement of four patents ("the Delaware
Litigation").  Brotech then filed suit in Pennsylvania, alleging
Rohm engaged in anticompetitive behavior in the prosecution and
enforcement of ten patents ("the Pennsylvania Litigation"),
including the four patents in the Delaware Litigation.  <u>Id.</u>  The
<u>Rohm</u> court found that "the later filed antitrust and fraud claims
alleging fraud on the [Patent and Trademark Office], are
logically related to the patent claims at issue in the earlier
filed suit."  <u>Id.</u> at 933.  Brotech's antitrust allegations were
based solely on Rohm's actions in obtaining and enforcing the
patents in suit in the Delaware Litigation.  Unlike the facts as
examined in <u>Rohm</u>, plaintiff's antitrust allegations arise from a
broader range of defendants' actions and are not limited to
defendants' enforcement of the '835 patent.  Consequently, <u>Rohm</u>
is not instructive in the present matter.

Nevertheless, the court does find that the Shah Litigation
and the Antitrust Litigation do present minimal factual and legal
overlap.  Furthermore, the court finds that consolidating the
Shah Litigation and the Antitrust Litigation will be more
efficient than managing the cases separately.  The court does not
perceive any expense or fairness issues which would marshal
against consolidating the two litigations.  Consequently, the
court exercises its broad power to consolidate causes of action

to consolidate the Shah Litigation and the Antitrust Litigation.

## V.    CONCLUSION

For the reasons set forth above, the court denies defendants' motion to dismiss but grants defendants' motion to consolidate.  An appropriate order shall issue.

# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-305-SLR |
| | ) | |
| SYNGENTA SEEDS, INC.,<br>SYNGENTA BIOTECHNOLOGY, INC.,<br>GOLDEN HARVEST SEEDS, INC.,<br>GARWOOD SEED CO.,<br>GOLDEN SEED COMPANY, L.L.C.,<br>SOMMER BROS. SEED COMPANY,<br>THORP SEED CO., AND<br>JC ROBINSON SEEDS, INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

## OPENING BRIEF IN SUPPORT OF MONSANTO'S MOTION TO STAY OR, IN THE ALTERNATIVE, TO SCHEDULE THE ANTITRUST CLAIMS ON A SEPARATE TRACK FROM THE PATENT LITIGATION

OF COUNSEL:

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
HOWREY SIMON ARNOLD & WHITE LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

John F. Lynch
Susan K. Knoll
HOWREY SIMON ARNOLD & WHITE LLP
750 Bering Drive
Houston, TX 77057
(713) 787-1400
(713) 787-1440 facsimile

Dated: April 7, 2005

Richard L. Horwitz (#2246)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile

OF COUNSEL:

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

*Attorneys for Monsanto Company
and Monsanto Technology LLC*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...............................................1

SUMMARY OF ARGUMENT ..................................................................................2

ARGUMENT ..............................................................................................................3

I.      THE ANTITRUST CLAIMS SHOULD BE STAYED PENDING
        RESOLUTION OF THE PATENT CLAIMS ...............................................3

        A.      Earlier Resolution of the Shah Patent Claims Will Directly
                Impact the Nature and Breadth of the Antitrust Claims,
                Warranting A Stay .........................................................................4

        B.      Judicial Economy Will Be Served By Staying the Now-
                Consolidated Antitrust Claims For a Definite Period ...................7

        C.      A Stay Will Eliminate The Dangers of Unfair Prejudice and
                Likelihood of Jury Confusion In Trying the Patent and
                Antitrust Claims Together...............................................................9

II.     IN THE ALTERNATIVE, THE ANTITRUST CLAIMS
        SHOULD BE SCHEDULED ON A SEPARATE TRACK FOR
        BOTH DISCOVERY AND TRIAL PURPOSES ..........................................10

CONCLUSION..........................................................................................................12

i

## TABLE OF AUTHORITIES

### CASES

*Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615 (D. Del. 2004) ..............6

*ASM America, Inc. v. Genus, Inc.*, No. 01-2190 EDL., 2002 WL 24444
(N.D. Cal. Jan. 9, 2002) .................................................................................6, 10

*Baxter Int'l, Inc. v. Cobe Lab., Inc.*, No. 89C 9460, 1992 WL 77665
(N.D. Ill. Apr. 7, 1992) ......................................................................................6, 8

*Carlisle Corp. v. Hayes*, 635 F. Supp. 962 (S.D. Cal. 1986) ................................6

*Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62
(3d Cir. 2000) ................................................................................................4

*Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732 (3d Cir. 1983) .......................3, 7

*E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 720 F. Supp. 373
(D. Del. 1989) ...................................................................................................3

*Elsag Bailey, Inc. v. Trojan Techs., Inc.*, No. 96-CV. 3615, 1996 U.S. Dist.
LEXIS 14679 (E.D. Pa. Oct. 2, 1996) ................................................................8

*Gardco Mfg. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987) ................................10

*Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948 (S.D. Cal. 1996) ........................8

*Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068 (3d Cir. 1983) ..................................10

*Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141 (D. Mass. 1995) .....................10

*Hunter Douglas v. Comfortex Corp.*, 44 F. Supp. 2d 152 (N.D.N.Y. 1999) ......................8

*In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986) ..............................................9

*Johnson & Johnson v. W.L. Gore & Associates, Inc.*, 436 F. Supp. 704
(D. Del. 1977) ...................................................................................................6

*Landis v. North Am. Co.*, 299 U.S. 248 (1936).................................................................3, 7

*Lis v. Robert Packer Hospital*, 579 F.2d 819 (3d Cir. 1978) .............................................10

*Lloyd v. Hovensa, LLC*, 369 F.3d 263 (3d Cir. 2004) ......................................................10

*Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129 (3d Cir. 1983) .............................................10

*Pharmacia, AB v. Hybritech, Inc.*, 224 U.S.P.Q. 975 (S.D. Cal. 1984) ...............................6

*Skinder-Strauss Assoc. v. Mass. Continuing Legal Educ., Inc.*, 870 F. Supp. 8
(D. Mass. 1995) ........................................................................................................8

*Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380
(Fed. Cir. 1983)........................................................................................................3, 6

*Ventrex Laboratories, Inc v. AB Fortia*, 223 U.S.P.Q. 897 (D. Me. 1983) ....................6, 10

## INTRODUCTION

Syngenta Seeds, Inc.'s ("Syngenta") antitrust claims appropriately have been consolidated with defendants Monsanto Company and Monsanto Technology LLC's (collectively "Monsanto") Shah patent claims and the related counterclaims (collectively "Shah patent claims"). (*See* D.I. 15 at 8). The question now arises as to how the consolidated case should proceed for discovery and trial purposes, given that the resolution of the patent claims may substantially alter the nature and breadth of the antitrust claims, and that the pretrial schedule established by the Court for the narrower Shah patent claims cannot accommodate discovery on the antitrust claims. Monsanto submits that judicial economy will be promoted and likelihood of undue prejudice and jury confusion eliminated, if discovery and trial on the antitrust claims are stayed pending a resolution of the first-filed Shah patent claims. In the alternative, the antitrust claims should be scheduled on a separate and independent track from the Shah patent claims for both discovery and trial. Monsanto has been informed that, while Syngenta will oppose a stay, Syngenta is in agreement with establishing a separate schedule for the discovery and trial of its antitrust claims.

## NATURE AND STAGE OF THE PROCEEDINGS

Monsanto filed the Shah Patent Complaint on May 12, 2004 and filed its First Amended Complaint on June 9. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 04-CV-305 (SLR), D.I. 1., D.I. 9. Syngenta answered and asserted counterclaims. *See id.* D.I. 10. The Court held a scheduling conference on September 23, 2004 and set the following schedule solely for the Shah patent claims:

- March 18, 2005      Document production completed; Rule 26 disclosures supplemented

- September 30, 2005      Fact discovery closes

- October 17, 2005      Expert reports due

- November 14, 2005      Rebuttal expert reports due

- December 1, 2005      Patent claim charts due
- December 9, 2005      Overall expert discovery to be completed
- January 11, 2006      *Daubert* and summary judgment motions due
- May 11, 2006          Pretrial conference
- May 30, 2006          Trial

Syngenta's Sherman Act § 2 antitrust claims were filed on July 28, 2004 – 2½ months after the Shah patent claims. *See Syngenta Seeds, Inc.* v. *Monsanto Co.*, 04-CV-908 (SLR), D.I. 1. On September 14, 2004, Syngenta filed its Amended Complaint. *See* D.I. 8. Monsanto moved to dismiss or, in the alternative, to consolidate the action with the Shah Litigation. *See* D.I. 10. The Court granted Monsanto's motion in part on March 24, 2005, and consolidated the two related cases. *See* D.I. 15, 16 (Mem. Op. and Order). We are now merely six months away from the close of fact discovery on the Shah patent claims, with no fact discovery having occurred on the antitrust claims.

## SUMMARY OF ARGUMENT

Syngenta's antitrust claims should be stayed for the following reasons:

1. If Monsanto prevails on its Shah patent claims, Syngenta will not have a glyphosate-tolerant trait, and the scope of Syngenta's broad antitrust claims (in all three alleged markets) will be narrowed for both discovery and trial purposes.

2. A stay of the antitrust claims will promote judicial economy and the efficient use of the parties' resources. The first-filed patent claims are proceeding on a schedule under which at least one major deadline has already passed and others are quickly approaching. There is no prejudice to Syngenta in light of its prior statements that "[t]he vast majority of Monsanto's conduct at issue in the antitrust case is unrelated to the narrow questions of the Shah Patent Case and raise different factual, legal, and evidently issues." (*Id.* at 14). A stay of

2

the antitrust case would allow the Shah patent claims to proceed on their current track without disruption and undue delay.

3. A stay, resulting in what the Federal Circuit has described as a "*now-standard practice of separating* separate trials of the patent and antitrust claims," will preclude the danger of unfair prejudice and likelihood of jury confusion if the two sets of claims were to be tried together. *See Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1386 (Fed. Cir. 1983) (affirming district court's separate trial of patent issues after consolidating patent and antitrust actions and staying antitrust claims).

In the alternative, establishing a separate and more extended track for Syngenta's antitrust claims is appropriate for the reasons set forth above.

## ARGUMENT

### I.  THE ANTITRUST CLAIMS SHOULD BE STAYED PENDING RESOLUTION OF THE PATENT CLAIMS

"[The] power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. at 248, 254–55 (1936); *see also E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 720 F. Supp. 373, 384 (D. Del. 1989) (quoting *Landis* and citing Federal Circuit precedent for proposition that "[t]his Court inherently has the device of a stay – a device 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants'..."). The factors to consider are whether a stay will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the requested stay. *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737–38 (3d Cir. 1983). Here, all relevant factors weigh heavily in favor of a stay of the antitrust claims until resolution of the first-filed patent-infringement claims.

3

A.    **Earlier Resolution of the Shah Patent Claims Will
Directly Impact the Nature and Breadth of the
Antitrust Claims, Warranting A Stay**

A stay is appropriate in cases where, as here, if Monsanto prevails on its Shah

patent claims, the scope of Syngenta's antitrust case in all three alleged markets will be

substantially narrowed for both discovery and trial purposes. Syngenta's antitrust claims

are dependent to a large degree upon its contention that the Shah patent is neither valid

nor infringed.

Count I of the Amended Antitrust Complaint, for example, alleges that Monsanto

has unlawfully monopolized the alleged glyphosate-tolerant corn market. (D.I. 8 at ¶¶

71–114, 137–44, 162–64, 172–80). Although Syngenta has alleged a laundry list of

purported anticompetitive conduct engaged in by Monsanto in this alleged market, the

viability of Count I is fundamentally dependent on an initial determination that Syngenta

has the right to commercialize GA21® corn. Simply put, if Monsanto's Shah patent is

valid and infringed, Syngenta does not have a GA21® product. Therefore, Syngenta

could not lawfully be in the relevant market as a competitor and thus has no standing and

antitrust injury – essential elements of its § 2 Sherman Act claim.[1]  *See Carpet Group*

*Intern. v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 77 (3d Cir. 2000) (stating that

antitrust injury is "an essential component of antitrust standing" required to file suit under

Sherman Act).

---

[1] Syngenta has admitted that it has no right to participate in the sale of GA21® via a
license. In a recent hearing in the then-unconsolidated Shah Patent Litigation, this Court
inquired as to whether Syngenta was asserting a license defense:

   Court: "Syngenta's fortune will rise and fall on whether the corn they are – whatever
   its derivation – … infringes the patent?"

   Syngenta's Counsel:    "That's exactly right."

*See* Feb. 17, 2005, Hearing Transcript at 23, lines 16–23. (Ex. A hereto)

4

Even beyond the issue of antitrust injury, much of Syngenta's laundry list of alleged anticompetitive conduct in Count I is factually predicated – either explicitly or inferentially – on the charge that the Shah Patent is invalid or unenforceable against Syngenta with respect to GA21® glyphosate-tolerant corn. For example, Syngenta's allegation that Monsanto filed a "baseless" patent claim is *entirely* premised upon the validity and infringement of the Shah patent. Syngenta has also alleged in its Amended Complaint that another patent action, *DEKALB Genetics Corp. v. Syngenta Seeds, Inc.*, C.A. No. 04-C-50323 (PGR) (N.D. Ill., filed July 27, 2004), is also a "baseless" patent claim. (D.I. 8 at ¶¶75–78). Should Monsanto prevail in the DEKALB case, this issue would be resolved. Moreover, if Monsanto prevails on validity and infringement on either the Shah patent claim or in the DEKALB case, Syngenta will not have a GA21® product to commercialize. Similarly, if one or more of the patents are valid and infringed, then Monsanto was accurate and acting well within the scope of its lawful patent monopoly, to the extent it made any representations about Syngenta's inability to commercialize GA21® glyphosate-tolerant corn.

Count II of the Antitrust Complaint alleges that Monsanto has unlawfully monopolized the European corn-borer ("ECB") resistant corn market. Syngenta bases much of Count II on its alleged inability to offer "stacked" GA21®/ECB corn seed – which, by definition, incorporates the glyphosate technology at the heart of the Shah patent. (D.I. 8 at ¶¶ 115–124). If the Shah patent is valid and infringed, Syngenta has no GA21® product to stack.

Count III alleges that Monsanto has attempted to monopolize the alleged foundation corn seed market. The anticompetitive conduct alleged in Count III, however, essentially incorporates the very same laundry list of conduct claimed in Counts I and II relating to GA21® corn. (*See* D.I. 8 at ¶¶ 126–27). Hence, much of Count III will stand or fall with resolution of the Shah patent claim as to whether Syngenta can make, use or sell GA21® corn.

Thus, the nature and scope of the antitrust claims will be dramatically altered by the resolution of the Shah patent claims. In similar situations, both this Court and numerous other federal courts have ordered the stay of the antitrust claims pending resolution of the patent claims. In *Arthrocare Corp. v. Smith & Nephew, Inc.*, this Court followed precisely the path proposed by Monsanto here in a case that also involved patent infringement and antitrust allegations of "sham" litigation. *Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 617–18 (D. Del. 2004). In *Arthrocare*, this Court divided the case into two phases: the first addressing issues of infringement and validity of the patents in suit, and the second dealing with willfulness, damages, and the antitrust counterclaims. *Id.* (later dismissing the defendant's sham patent claims after the jury in the patent phase the case upheld the validity and enforceability of the patents, *id.* at 618, n.2). Similarly, in *Johnson & Johnson v. W.L. Gore & Associates, Inc.*, 436 F. Supp. 704, 708 n.1 (D. Del. 1977) this Court ordered a stay of "[d]iscovery and trial with respect to the antitrust issues" pending resolution of the patent claims.[2]

---

2 *See also, Underwater Devices,* 717 F.2d at 1386 (affirming District Court's consolidation of two (separately-filed, but as here, related) patent and antitrust actions, which the trial court had subsequently phased into separate trials, staying the antitrust portion of the trial pending the patent-litigation outcome); *Baxter Int'l, Inc. v. Cobe Lab., Inc.,* No. 89C 9460, 1992 WL 77665 at *2, 4 (N.D. Ill. Apr. 7, 1992) (Ex. B hereto) (staying independent discovery on antitrust counterclaim based on fraudulent patent procurement pending outcome of patent suit, given likely burden on jury and the potential for rendering moot all antitrust issues upon resolution of infringement question); *Carlisle Corp. v. Hayes,* 635 F. Supp. 962, 96–68 (S.D. Cal. 1986) (severing and staying counterclaim alleging that defendant attempted to monopolize market by seeking to enforce a patent obtained by fraud on the PTO); *Pharmacia, AB v. Hybritech, Inc.,* 224 U.S.P.Q. 975, 976 (S.D. Cal. 1984) (severing and staying antitrust and patent misuse counterclaims based on fraudulent procurement, predatory pricing, and tying); *ASM America, Inc. v. Genus, Inc.* No. 01-2190 EDL., 2002 WL 24444, *7 (N.D. Cal. Jan. 9, 2002) (Ex. C hereto) ("Resolution of the invalidity issue may dispose of some of the antitrust counterclaims altogether"); *Ventrex Laboratories, Inc v. AB Fortia,* 223 U.S.P.Q. 897, 899 (D. Me. 1983) (finding it "very probable that decision concerning the validity, enforceability of the ... patent will resolve many of the questions presented by the antitrust complaint and quite clearly those related to allegations of patent misuse").

**B.    Judicial Economy Will Be Served By Staying the Now-Consolidated Antitrust Claims For a Definite Period**

If the Shah patent is valid and infringed, the scope of the very broad antitrust claim – discovery, expert analysis and the issues to be tried – would be substantially narrowed. Indeed, certain claims such as Count I would be entirely eliminated. Staying the antitrust claims until the Shah patent claims are adjudicated, therefore, may avoid substantial expense, burden, and inconvenience. For example, a finding of validity/infringement would render moot discovery into much of Syngenta's laundry list of alleged anticompetitive conduct, including Monsanto's alleged intent in filing its "baseless" patent actions and its alleged communications with seed companies, retailers, and growers regarding Syngenta's ability to commercialize GA21. The duration of the stay sought is no more than necessary – namely until the Court renders its verdict on the Shah patent claims. The Shah patent claims are currently set for trial on May 30, 2006. Monsanto's request is for a stay of "moderate length, and not ... of indefinite duration," further weighing in favor of granting the present motion. *Cheyney State College*, *supra*, 703 F.2d at 738 (citing *Landis*, 299 U.S. at 257).

A stay of the antitrust claims will also allow the Shah patent claims to remain on their current schedule. The parties have been actively litigating the Shah patent claims over the last several months pursuant to the schedule previously entered by the Court. Document production on the Shah patent claims was to be completed by March 18th, and fact discovery will be closed at the end of September. The far more complex and extensive antitrust discovery cannot be shoehorned into this pre-existing schedule.

There is no need to derail the ongoing patent discovery and delay the earlier resolution of the narrower patent claims. Syngenta itself has argued that there will be little overlap between discovery on the patent and antitrust claims. (*See* D.I. 12 at 7–8). Different experts will be designated on these claims. Moreover, certain elements of the patent schedule, such as claim charts, are irrelevant to any antitrust claim.

Faced with the similar question of how consolidated patent and antitrust claims should proceed, federal courts have routinely found that judicial economy and the efficient use of the resources of the court and the parties are best promoted by a stay of the antitrust claims pending resolution of the patent claims:

> Various federal district courts throughout the country have almost consistently found it to be in the best interest of economy and convenience of the court as well as the parties to sever antitrust and similar issues of patent validity and infringement, and to stay discovery and trial of antitrust issues until the patent issues have been determined by trial.

*Baxter Int'l Inc.*, 1992 WL 77665 at *1 (N.D. Ill. Apr. 7, 1992) (internal citation omitted) (antitrust counterclaim raised new issues that could be rendered moot by resolution of patent issues); *see also Hunter Douglas v. Comfortex Corp.*, 44 F. Supp. 2d 152, 154 (N.D.N.Y. 1999) (interests of judicial economy are served by awaiting outcome of trial on patent suit before proceeding to hear related antitrust issues); *Elsag Bailey, Inc. v. Trojan Techs., Inc.*, No. 96-CV- 3615, 1996 U.S. Dist. LEXIS 14679, at *2-3 (E.D. Pa. Oct. 2, 1996) (Ex. D hereto) (granting stay of antitrust case because issue of whether the patent litigation was actionable as sham litigation would be "at least greatly aided and may be disposed of by resolution of the [patent infringement suit]," and failure to grant a stay "could surely result in [*inter alia*] a waste of judicial economy..."); *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 964 (S.D. Cal. 1996) (staying antitrust suit pending resolution of patent litigation in a different court); *Skinder-Strauss Assoc. v. Mass. Continuing Legal Educ., Inc.*, 870 F. Supp. 8, 11 (D. Mass. 1995) (stay of all proceedings relating to antitrust claims pending resolution of underlying copyright action "will avoid a waste of judicial and party resources ").

**C.   A Stay Will Eliminate The Dangers of Unfair Prejudice and Likelihood of Jury Confusion In Trying the Patent and Antitrust Claims Together**

By ordering separate trials, the Court avoids the danger of unfair prejudice and jury confusion that would arise from commingling distinct questions of patent and antitrust law, each complicated enough in their own right. A single trial of the validity and infringement of the Shah Patent with Syngenta's antitrust claims would require the jury simultaneously to hear, understand, and render verdicts on both, the *legal* "monopoly" granted to Monsanto by virtue of its patent, as well as on the alleged *illegal* "monopolization" of Monsanto in three different relevant markets. The spectre of a patent verdict tainted by unfair prejudice due to Syngenta's monopolization allegations cannot be eliminated without separate trials.

A stay, resulting in two fairer and more efficient trials, is certainly feasible and presents no prejudice to either party. In that regard, Syngenta, itself, has argued the distinct nature of the legal and factual issues to be presented to a jury on the two sets of claims:

> In the antitrust case, the parties will present evidence of, among other things, Monsanto's monopoly power in each of the relevant markets, competitors, licensing agreements, promotional incentives, and pressuring of foundation seed companies. This evidence is irrelevant to the Shah Patent Case, which will focus on issues of claim construction, validity, and infringement. Consequently, virtually all of the witnesses and documents put forth will be different, and there will be little or no duplication if the cases proceed separately.

(D.I. 12 at 10); *see also* Mem. Op., D.I. 15 5—7, n.1) ("The Antitrust Litigation presents distinct factual issues from the Shah Litigation"; "[t]he legal issues presented in the Antitrust Litigation and the Shah Litigation are distinct [and will require presentation of different evidence].").

The Federal Circuit has recognized the potential damage of trying patent and antitrust claims in one setting and noted the "*now-standard practice of separating* for trial patent issues and those raised in an antitrust counterclaim." *In re Innotron*

9

*Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (emphasis added) (holding that it is proper judicial practice to consolidate two separate but closely related antitrust and patent cases and to *try separately* each distinct issue); *see also Ventrex Laboratories, Inc v. AB Fortia*, 223 U.S.P.Q. 897, 899 (D. Me. 1983) (noting that, without staying trial of antitrust issues pending patent litigation, it would be "almost inconceivable that a jury could arrive at an intelligent verdict," given the complexities of the case); *Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141, 1157–58 (D. Mass. 1995) (staying counterclaim based on inequitable conduct, noting that courts often separate patent from antitrust issues, for "[a]ntitrust issues are complex and, particularly with respect to damages, raise different issues and proof"); *ASM America, Inc. v. Genus, Inc.* 2002 WL 24444, *6 (N.D. Cal. Jan. 9, 2002) (phasing trial of patent and antitrust claims, noting that it will "simplify the case, avoid confusion, and reduce the burden and costs imposed on the Court, the attorneys, and the parties by deferring the burdensome and expensive discovery that would necessarily arise from litigation of the antitrust claims, and possibly avoiding it altogether").

## II.     IN THE ALTERNATIVE, THE ANTITRUST CLAIMS SHOULD BE SCHEDULED ON A SEPARATE TRACK FOR BOTH DISCOVERY AND TRIAL PURPOSES

A federal district court has broad discretion to manage the sequencing of discovery in trials that involve complex claims "as part of its wide discretion in trial management." *Gardco Mfg. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987).[3] If the Court is not inclined to grant a formal stay of the antitrust claims, for many

---

3 *See also Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983) ("District courts have wide discretion in setting their own calendars") *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 274 (3d Cir. 2004) (stating rule that it is "well established that the scope and conduct of discovery are within the sound discretion of the trial court," citing *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983)); *Lis v. Robert Packer Hospital*, 579 F.2d 819, 824 (3d Cir. 1978) (decision to try claims separately is made on case-by-case basis and is within broad discretion of trial judge).

of the reasons set forth above, the antitrust claims should proceed on a separate track than the Shah patent claims, for both discovery and trial purposes. On the discovery side, separate tracking would allow both cases to proceed without disrupting the current schedule of the Shah patent claims that has been in effect since September of last year. Separate trials will avoid the danger of unfair prejudice and likelihood of jury confusion that would result if the two sets of claims were resolved in a single trial. Finally, the earlier resolution of the Shah patent claims could also substantially narrow the scope of the discovery and issues to be tried on the antitrust claims.

## CONCLUSION

For all of the foregoing reasons, Monsanto requests a stay of Syngenta's antitrust claims pending the resolution of the Shah patent claims. In the alternative, the Court should schedule the discovery and trial of the antitrust claims on a separate and more extended track than the Shah patent claims.

Respectfully submitted,

OF COUNSEL:

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
HOWREY SIMON ARNOLD & WHITE LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

John F. Lynch
Susan K. Knoll
HOWREY SIMON ARNOLD & WHITE LLP
750 Bering Drive
Houston, TX 77057
(713) 787-1400
(713) 787-1440 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated: April 7, 2005

677252

POTTER ANDERSON & CORROON LLP

By: _____
    Richard L. Horwitz (#2246)
    Hercules Plaza, 6th Floor
    1313 N. Market St.
    Wilmington, DE 19801
    (302) 984-6000
    (302) 658-1192 facsimile
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Monsanto Company
and Monsanto Technology LLC*

12

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on April 7, 2005, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

> John W. Shaw
> Young Conaway Stargatt & Taylor, L.L.P.
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801

I hereby certify that on April 7, 2005, I have Federal Expressed the foregoing document(s) to the following non-registered participants:

Richard F. Schwed
Thomas A. McGrath III
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069

Michael J. Flibbert, Esq.
Don O. Burley, Esq.
Howard W. Levine, Esq.
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

677273

# Exhibit 3

Court Hearing                    CondenseIt™                    Wednesday, April 13, 2005

Page 1

```
1              IN THE UNITED STATES DISTRICT COURT
2            IN AND FOR THE DISTRICT OF DELAWARE
3                        - - -
4    MONSANTO COMPANY and           :    CIVIL ACTION
     MONSANTO TECHNOLOGY LLC,        :
5                                    :
            Plaintiffs              :
6                                    :
            vs.                      :
7                                    :
     SYNGENTA SEEDS, INC. and        :
8    SYNGENTA BIOTECHNOLOGY,         :
     INC.,                           :
9                                    :
            Defendants              :     NO. 04-305 (SLR)
10                       - - -
11
                      Wilmington, Delaware
12                    Wednesday, April 13, 2005
                      9:30 o'clock, a.m.
13                       - - -
14
     BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge
15
16
     APPEARANCES:
17
18        POTTER, ANDERSON & CORROON LLP
          BY:  RICHARD L. HORWITZ, ESQ.
19
20             -and-
21
22
23             Valerie J. Gunning
               Official Court Reporter
24
25
```

Page 2

```
1    APPEARANCES (Continued):
2
3         HOWREY, LLP
          BY:  STEVEN SPEARS, ESQ
4              JOHN ROSENTHAL, ESQ.
               PETER MOLL, ESQ. and
5              SUSAN KNOLL, ESQ.
               (Dallas, Texas)
6
          Counsel for Plaintiffs
7
8    YOUNG, CONAWAY, STARGATT & TAYLOR LLP
     BY:  JOHN W SHAW, ESQ
9
10             -and-
11
     FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER,
12   L.L.P.
     BY:  MICHAEL J. FLIBBERT, ESQ.
13        (Washington, D.C.)
14             -and-
15
     SHEARMAN & STERLING LLP.
16   BY:  RICHARD F. SCHWED, ESQ.
          (New York, New York)
17
          Counsel for Defendants
18
19             - - -
20
21
22
23
24
25
```

Page 3

```
1
2                   P R O C E E D I N G S
3
4         (Proceedings commenced in the courtroom,
5    beginning at 9:30 a.m.)
6
7         MR. HORWITZ:  Good morning, your Honor.
8         THE COURT:  Good morning.
9         MR. HORWITZ:  Two days in a row.
10        THE COURT:  Always a pleasure.
11        MR. HORWITZ:  On behalf of Monsanto, Rich
12   Horwitz, from Potter Anderson.
13        There are a few familiar faces from yesterday,
14   but we have a few other attorneys from Howrey to introduce
15   to the Court and we filed a pro hac motion for them
16   yesterday.
17        From the D.C. office, Peter Moll.
18        MR. MOLL:  Good morning, your Honor.
19        THE COURT:  Good morning.
20        MR. HORWITZ:  And John Rosenthal.
21        MR. ROSENTHAL:  Good morning, your Honor.
22        THE COURT:  Good morning.
23        MR. HORWITZ:  And we're prepared to do the
24   discovery issues on the patent side or the scheduling
25   issues on the antitrust side.  Whatever you want to
```

Page 4

```
1    start with.
2         THE COURT:  All right.  All right.  Let's go
3    to Mr. Shaw and his colleagues.
4         MR. SHAW:  Good morning, your Honor.  John
5    Shaw, from Young Conaway, for Syngenta Seeds.
6         To my right, Mike Flibbert, from Finnegan
7    Henderson, and Rich Schwed, from Shearman & Sterling.
8         MR. FLIBBERT:  Good morning, your Honor.
9         MR. SCHWED:  Good morning.
10        THE COURT:  All right.  Why don't we talk
11   about scheduling first and then we'll get to the discovery
12   issues second.  And I know there's an outstanding motion,
13   but why don't we have a discussion about it, if we could.
14        MR. MOLL:  Fine, your Honor.  About the stay
15   motion, your Honor?
16        THE COURT:  Well, yes.  About where we're
17   going with this case, generally.
18        MR. MOLL:  Fine.  As your Honor knows and is
19   familiar with, having already dealt with one motion on
20   this, there are two patent cases that are implicated by
21   the antitrust claims here.  The one patent case which
22   your Honor has before her, the Shaw patent case.
23        There is a second patent case which was
24   included in the Amended Complaint in Rockford, and both
25   of those formed the allegations for baseless patent
```

Page 5

1  litigation.
2        Obviously, if those are resolved and are
3  resolved in Monsanto's favor, then the baseless patent
4  litigation claims go. But more fundamentally, Syngenta
5  has allegations in Count 1, Count 1 of their antitrust
6  complaint goes to glyphosate tolerant corn or their GA21
7  product. And fundamentally, your Honor, if Monsanto
8  prevails in the patent case in either Rockford or here
9  on validity and infringement, then it is, I think, a
10  fact that Syngenta doesn't have the right to commercialize
11  a GA21 product.
12        So the fundamental core of it is they don't
13  have a product any more and that wipes out more than the
14  baseless patent litigation. It wipes out Count 1 in its
15  entirety because that is glyphosate corn and they're out
16  of the box on that because in an antitrust case, they're
17  going to need both standing, which they wouldn't have if
18  they don't have a right to commercialize a product, and
19  obviously they wouldn't have the requisite antitrust
20  injury. They couldn't even begin to prove that, because
21  they wouldn't be a competitor in the marketplace.
22        And so Count 1 goes.
23        Now, Count 2 goes to a different trait. It
24  goes to the European corn borer. But at least in part,
25  Count 2 has allegations, for example, that part of the

Page 6

1  anticompetitive conduct is that Syngenta has been
2  prohibited from stacking their -- the GA21 product which
3  they claim they are going to introduce, and the European
4  corn borer product.
5        Obviously, if they don't have a GA21 product,
6  as far as Count 2 goes, they don't have the stacking
7  allegations any more.
8        And so eliminating the GA21 product not only
9  eliminates Count 1, but has an impact on a number of the
10  allegations in Count 2, the alleged anticompetitive
11  conduct, because the Court knows that Syngenta alleged a
12  laundry list of anticompetitive conduct, which it covered
13  in your prior opinion, and then they incorporated that in
14  Count 2.
15        They also incorporated that in Count 3. That
16  is not to say that in all probability, Monsanto prevails
17  in either Shaw or the case in Rockford, that perhaps the
18  entire antitrust case is not gone, but the antitrust case
19  looks dramatically different. It is a much narrower and
20  more focused antitrust case.
21        And so the reason why we filed a motion for a
22  stay is because, if they don't have a GA21 product because
23  of the result in the Shaw case or the Rockford case, and
24  they don't have Count 1, why should the parties engage
25  in discovery relating to Count 1? Why should the parties

Page 7

1  engage in discovery relating to the stacking claims in
2  Count 2 and part of the claims in Count 3?
3        Why should the Court be dealing with
4  potentially discovery disputes and motions relating to
5  those counts if -- and claims, if those are going to be
6  gone?
7        Why should the parties be identifying experts
8  who are going to offer opinions on Count 1 if there is no
9  Count I, and on and on?
10        THE COURT: All right. I think I do have the
11  idea.
12        MR. MOLL: That's our position on the stay.
13        The parties are in agreement, if the Court
14  denies the stay, the parties are in agreement that on the
15  alternative, which we've proposed in our motion, that the
16  antitrust case for a number of reasons should be on a
17  separate track and should be tried after the patent case
18  and separately from the patent case. We have agreed on
19  that.
20        And for the purposes of the Court's time, and
21  the Court not having to deal with disagreements over
22  dates, if the Court gets that far, we have had
23  consultations with Syngenta's counsel, and we have arrived
24  at what I would call a compromise, agreed-upon schedule
25  for the antitrust claims which, again, keep them on a

Page 8

1  separate track, and result in a separate trial later than
2  the patent case.
3        And there's only really one minor dispute in
4  that and that is the number of depositions.
5        But we think, your Honor, for the resources of
6  the party and the resources of the Court, that we ought
7  not to be proceeding until we know what the scope of the
8  antitrust case is.
9        THE COURT: All right. Thank you very much.
10        MR. MOLL: Thank you.
11        MR. SCHWED: Good morning, your Honor.
12        THE COURT: Good morning.
13        MR. SCHWED: I think Mr. Moll's view that the
14  antitrust case is much narrower, I think is a phrase he
15  used, if Monsanto is successful in the patent case is
16  nothing but wishful thinking. And the reasoning is as
17  follows: He mentioned the three counts. The third count
18  has nothing to do with the antitrust case, period. It's
19  an attempted monopolization of the foundation seed based
20  on Monsanto's practices with regard to its own traits.
21  It has nothing to do with it.
22        The second count is the -- is monopolization
23  of a market other than glyphosate tolerance. Now, there
24  is a relationship to glyphosate tolerance, but that
25  relationship has been distorted by Mr. Moll's

Page 9

1   characterization of that claim for the following reason.
2   The essence of that claim is that what Monsanto is doing
3   is that when it licenses its glyphosate tolerance, when
4   Monsanto licenses its glyphosate tolerance to seed
5   companies, it is prohibiting those seed companies from
6   stacking that with our other trait. So what it is doing,
7   it is not -- in order for that count to survive, it is
8   not dependent on Syngenta's ability to license glyphosate
9   tolerance, its glyphosate tolerance. It all has to do --
10  it is focused on the way Monsanto is licensing its
11  glyphosate tolerance.
12      So, yes, it relates to glyphosate tolerance,
13  but that claim does not in any way go away, regardless of
14  what happens in the Shaw patent litigation.
15      So that leaves Count I.
16      One of the key factors in Count 1 is that
17  the -- it is the glyphosate tolerance. It is based on our
18  ability to get into the market with GA21, but the Shaw
19  patent that's at issue expires in 2007.
20      And so even if the -- even if Monsanto is
21  successful in the Shaw patent litigation, we, undoubtedly,
22  have the ability to get into the market in 2007, and
23  there's plenty of case law that says we suffer antitrust
24  injury if they are right now entrenching themselves in
25  the market, taking steps to prohibit us from getting in

Page 10

1   the market in two years.
2       And, yes, it may affect the amount of damages
3   that we would suffer, but it would not affect the amount
4   of -- the fact of antitrust injury or our standing.
5       So all three of our claims would survive.
6       The other key fact is that the alleged
7   anticompetitive conduct by Monsanto supporting all three
8   counts is overlapping. So even if, hypothetically, you
9   get rid of the first count -- which we don't think can
10  happen anyway -- but even if you get rid of that, it's
11  not going to change the scope of discovery. It's not
12  going to change the scope of the case. It's not going to
13  change the fact that Monsanto has exclusionary contracts,
14  exclusive dealing contracts. It's not going to change
15  this bundling agreement that they have that's blatantly
16  illegal. And so we're going to need discovery into all
17  of that.
18      And what I think would be ultimately ironic
19  about granting a stay here would be essentially saying to
20  a party, we're alleging that they're monopolizing the
21  market. They are monopolists. I don't even think they
22  can dispute that. And it's basically saying you can, as
23  part of your monopolist conduct, file baseless patent
24  cases and not only are those illegal and part of your
25  monopolist conduct, but you can avoid your day of

Page 11

1   reckoning by filing, by continuing to file more and more
2   baseless patent cases by saying we shouldn't address our
3   other monopolistic conduct until the Court decides that
4   our -- whether or not our patent cases are valid and
5   whether or not they are baseless.
6       We're already dealing with a schedule that
7   is going to have a trial in about two years in the
8   proposed schedule. What they are proposing now, under
9   their stay approach, is a schedule where we don't even
10  begin discovery on the monopoly case until two years,
11  until 2006. And they don't say when they want discovery.
12  I don't know if they are saying at the end of the trial,
13  when judgment is entered, appeal, who knows. But even
14  graciously saying they're willing to do it at the end
15  of trial. They're saying we don't even begin discovery
16  until the summer of 2006, which would lead to a trial in
17  the case probably late 2008, four years after we filed
18  the case, more than a year after the Shaw patent expires,
19  and it -- there's absolutely no justification for it.
20      They say -- we'll be putting in our brief next
21  week, but all of the cases they cite deal with the really
22  narrow cases where -- and particularly there are some
23  Delaware cases where the exclusive claim in the patent
24  case, in the antitrust case, is a baseless patent
25  litigation. So they're really mirror images of the same

Page 12

1   claim and there's a reason there. This is not the case
2   as your Honor found in the motion to dismiss, and so we
3   would respectfully request today that the Court set a
4   trial schedule. Obviously, the motion will go down, but
5   set a trial schedule, enter the scheduling order, and let
6   the case proceed, and obviously your Honor will have time
7   to consider the motion.
8       THE COURT: Well, I think I'm considering the
9   motion now, so I don't know that that will happen.
10      All right. Thank you very much. I appreciate
11  that.
12      Mr. Moll, it sounds as though the patent
13  litigation really isn't going to be nearly dispositive,
14  which is the only reason why I stay antitrust cases. So
15  we're going to go forward. And let's look at the
16  schedule that you've proposed. The motion to stay is
17  denied.
18      MR. MOLL: Thank you, your Honor.
19      THE COURT: It looks as though the only --
20  this is so beautiful. I think I might frame this. It's
21  really quite nice. But the only real dispute I see in red
22  or blue is the hours of deposition.
23      MR. MOLL: That is correct, your Honor.
24      THE COURT: All right.
25      MR. MOLL: There are some dates at the end

# Exhibit 4

# EXHIBIT 4
# REDACTED IN ITS ENTIRETY

# Exhibit 5

# EXHIBIT 5
# REDACTED IN ITS ENTIRETY

# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY and )
MONSANTO TECHNOLOGY LLC, )
                                 )
         Plaintiffs, )
                                 )
      v. )   C. A. No. 04-305 SLR
                                 )      (Lead Case)
SYNGENTA SEEDS, INC. )
SYNGENTA BIOTECHNOLOGY, INC., et al., )
                                 )
         Defendants. )
                                 )
DEKALB GENETICS CORPORATION, )
                                 )
         Plaintiff, )
                                 )
      v. )
                                 )
SYNGENTA SEEDS, INC., )
SYNGENTA BIOTECHNOLOGY, INC., et al. )
                                 )
         Defendants. )

### REPLY BRIEF IN SUPPORT OF
### MOTION TO AMEND JUDGMENT
### AND FOR ENTRY OF 54(b) JUDGMENT

OF COUNSEL:

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
Tel: (713) 787-1400

Dated: June 2, 2006
734865 / 28228

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.    SUMMARY OF THE REPLY ................................................................... 1

II.   DISCUSSION ........................................................................................ 2

      A.   No Just Cause Exists To Delay Appeal of the Patent
           Judgment Where Only Separately-Triable Antitrust-related
           Claims Remain ................................................................................ 2

      B.   Syngenta Fails To Raise Any Just Cause for Delay ....................... 4

           1.   This Court Has Already Recognized That There Is
                Minimal Factual Overlap Between The Patent
                Claims and the Antitrust Claims ....................................... 4

           2.   The Patent Judgment And The Tortious Interference
                Counterclaim in the Antitrust Action Involve
                Completely Different Issues ............................................... 7

           3.   There Will Be No Piecemeal Appeals or Judicial
                Inefficiency ......................................................................... 8

      C.   Monsanto's Briefing Has Timely Addressed the Issues ............... 9

III.  CONCLUSION ....................................................................................... 10

i

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Chaparral Communications, Inc. v. Bowman Industries, Inc.,*
    798 F.2d 456 (Fed. Cir. 1986)......................................................................... 3

*Curtiss-Wright Corp. v. General Elec. Co.,*
    100 S.Ct. 1460 (1980)..................................................................................... 6

*FilmTec Corp. v. Hydranautics,*
    67 F.3d 931 (Fed. Cir. 1995)........................................................................... 7

*Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.,*
    C.A. No. 88-391-SLR, 1993 U.S. Dist. LEXIS 2473 (D. Del. Feb. 16, 1993)............... 3

*Integraph Corp v. Intel Corp.,*
    253 F.3d 695 (Fed. Cir. 2001)......................................................................... 6

*Janette Sheet Glass Corp. v. U.S.,*
    803 F.2d 1576 (Fed. Cir. 1986)....................................................................... 3

*Korody-Colyer Corp. v. General Motors Corp.,*
    828 F.2d 1572 (Fed. Cir. 1987)....................................................................... 3

*Lava Trading, Inc. v. Sonic Trading Management, LLC,*
    445 F.3d 1348 (Fed. Cir. 2006)....................................................................... 2

*Mobilificio San Giacomo S.P.A. v. Stoffi,*
    C.A. No. 96-415-SLR, 1998 WL 125536 (D. Del. Jan. 29, 1998) ................................... 3

*Pause Tech. LLC v. TiVo Inc.,*
    401 F.3d 1290 (Fed. Cir. 2005)....................................................................... 2

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,*
    508 U.S. 62 (1993)........................................................................................ 6

*Spraytex, Inc. v. DJS&T,*
    96 F.3d 1377 (Fed. Cir. 1996)......................................................................... 3

*Technicon Instruments Corp. v. Alpkem Corp.,*
    866 F.2d 417 (Fed. Cir. 1989)......................................................................... 3

*W.L. Gore & Associates, Inc. v. International Medical Prosthetics Research
Associates, Inc.,*
    975 F.2d 858 (Fed. Cir. 1992)................................................................... *passim*

**Rules**

Fed. R. Civ. P. 54(b) .................................................................................. *passim*

## I.    SUMMARY OF THE REPLY

Syngenta's opposition fails to raise a legitimate reason that the Court's May 11, 2006 Judgment (the "Judgment") should not be amended to be an appealable Rule 54(b) judgment as to the adjudicated patent claims.  Syngenta does not dispute that the Judgment is final as to the adjudicated patent claims.  All that remains before the Court in this action are antitrust claims and counterclaims.  The Federal Circuit affirmed the appropriateness of a 54(b) judgment under identical circumstances in *W.L. Gore & Associates, Inc. v. International Medical Prosthetics Research Associates, Inc.*, 975 F.2d 858, 862-65 (Fed. Cir. 1992) (affirming 54(b) judgment on patent claims when antitrust claims remained to be tried).

Rather than contest finality, Syngenta only broadly generalizes that there is factual overlap with the antitrust case, and a risk for piecemeal appeals.  But Syngenta never identifies a specific issue in the antitrust case which is duplicative of the actual issues to be addressed on appeal of the patent Judgment – the Court's non-infringement rulings as to the Lundquist patents and non-enablement ruling as to the Shah patent. Even if some factual overlap may exist with the antitrust claims, the specific issues actually decided by the Judgment will not and cannot be relitigated in the antitrust case, if the Judgment is indeed final.  While Syngenta quotes extensively from Monsanto's dismissal or consolidation briefing, it inexplicably ignores this Court's actual rulings, including that "Plaintiff's Antitrust Litigation does not arise from the same transaction or occurrence that is the subject matter of defendants' Shah Litigation." D.I. 43, pg. 5.

Syngenta's real motivation in opposing Monsanto's motion is to delay any Federal Circuit consideration of the patent Judgment.  Presently, the patents-in-suit cannot hamper Syngenta's ability to sell GA21 corn, and an appeal can only adversely

affect this status. Indeed, the risk of injunction lessens with Syngenta's delay since the Shah Patent is currently set to expire in July, 2007 – just 13 months from now. The prejudice to Monsanto arising from any delay in the appeal is thus obvious, and because there is no risk of piecemeal appeals and only limited factual overlap, there is no just cause for any such delay.

## II.    DISCUSSION

### A.    No Just Cause Exists To Delay Appeal of the Patent Judgment Where Only Separately-Triable Antitrust-related Claims Remain

"Courts analyzing whether Rule 54(b) applies must focus on both the finality of the judgment and the separateness of the claims for relief." *W.L. Gore*, 975 F.2d at 862. "Rule 54(b) allows a district court to act as a 'dispatcher' and 'determine, in the first instance, the appropriate time when each final decision upon one or more but less than all of the claims in a multiple claims action is ready for appeal.'" *Lava Trading, Inc. v. Sonic Trading Management, LLC*, 445 F.3d 1348, 1350-51 (Fed. Cir. 2006) (affirming entry of 54(b) judgment on non-infringement where invalidity and unenforceability issues remained to be tried) (quoting *Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290, 1294 n. 2 (Fed. Cir. 2005)). Accordingly, a determination that no just reason for delay exists is reviewed under an abuse of discretion standard. *W.L. Gore*, 975 F.2d at 862.

Syngenta does not dispute the central facts underlying Monsanto's motion. The Judgment is final as to the adjudicated patent claims, and all that remains are antitrust claims which have been determined to be separately triable. In *W.L. Gore*, the Federal Circuit affirmed entry of a 54(b) patent judgment under identical circumstances, where only antitrust-related claims remained to be separately tried before the district court. 975 F.2d 858, 862-65 (Fed. Cir. 1992)("In the instant case, Rule 54(b) certification is proper

2

because the infringement claim was finally adjudicated and there is more than one claim for relief – Gore's infringement claim and IMPRA's antitrust counterclaim as required by Rule 54(b)."). Separate appeals of patent judgments where antitrust claims remain to be tried in the same action are common in the Federal Circuit. *See e.g.*, *Id.*; *Technicon Instruments Corp. v. Alpkem Corp.*, 866 F.2d 417, 418-19 (Fed. Cir. 1989); *Korody-Colyer Corp. v. General Motors Corp.*, 828 F.2d 1572, 1573-74 (Fed. Cir. 1987).

The cases relied upon by Syngenta in opposing entry of a 54(b) judgment are nowhere close to being on point. Syn. Br. Pg. 7-8. The *Spraytex* and *Janette Sheet Glass* cases do not even involve situations where a 54(b) judgment was entered, but rather address efforts to appeal decisions on less than all claims without seeking a 54(b) judgment. *Spraytex, Inc. v. DJS&T*, 96 F.3d 1377, 1379 (Fed. Cir. 1996); *Janette Sheet Glass Corp. v. U.S.*, 803 F.2d 1576, 1579 (Fed. Cir. 1986). In *Chaparral Communications, Inc. v. Bowman Industries, Inc.*, the denial of a 54(b) judgment was not challenged on appeal, in part because other patent claims remained to be tried against the same product. 798 F.2d 456 (Fed. Cir. 1986). Finally, the unpublished decisions from this Court in *Mobilificio San Giacomo* and *Hatzel* are not even patent cases, but rather involved situations where the state law claims that had been decided arose from the same transaction or occurrence of the claims that were still pending. *Mobilificio San Giacomo S.P.A. v. Stoffi*, C.A. No. 96-415-SLR, 1998 WL 125536 (D. Del. Jan. 29, 1998); *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, C.A. No. 88-391-SLR, 1993 U.S. Dist. LEXIS 2473 (D. Del. Feb. 16, 1993).

Thus, none of the authority cited by Syngenta bears any relevance to the present situation. The parties and the Court agreed that the antitrust claims should be tried

3

separately from the patent claims.  Moreover, in its order denying dismissal and consolidating the cases, this Court already has determined that Syngenta's "<u>Antitrust Litigation does not arise from the same transaction or occurrence that is the subject matter of defendant's [Patent] Litigation</u>." D.I. 43, pg. 5 (emphasis added).  As detailed below, Syngenta's Opposition fails to demonstrate a single issue in the antitrust case that requires re-litigating any issue that has been finally decided by the Judgment.  Under such circumstances, the Federal Circuit's holding in *W.L. Gore* is directly on point, recognizing the appropriateness of a separate 54(b) appeal of a patent judgment where antitrust claims in the same action remain to be separately tried.  975 F.2d 858, 863-65.

**B.    Syngenta Fails To Raise Any Just Cause for Delay**

Rather than dispute the finality of the Judgment as to the adjudicated patent claims, Syngenta only opposes a 54(b) certification by arguing the following alleged just causes for delay of a separate appeal:  (1) broad generalizations about allegedly overlapping issues, (2) allegations that the appeal of the Lundquist infringement judgment will involve consideration of Monsanto's tortious interference counterclaim in the antitrust case, and (3) broad generalizations of piecemeal appeals and judicial inefficiency.  None demonstrate good causes for the delay sought by Syngenta.

**1.    This Court Has Already Recognized That There Is Minimal Factual Overlap Between The Patent Claims and the Antitrust Claims**

Syngenta's opposition for the most part parrots back arguments made by Monsanto in moving for dismissal or consolidation and in moving for a stay of the antitrust case.  Syngenta does so while ignoring this Court's actual <u>rulings</u> made in view of Syngenta's oppositions to those very same motions.  As discussed above, although the Court ordered consolidation, it denied dismissal on the grounds that the actions do not

4

arise from the same transaction or occurrence. D.I. 43, pg. 5. This Court reasoned, "Because the Antitrust Litigation arises from defendants' conduct, and the Shah Litigation arises from plaintiff's conduct, the two actions could not arise from the same transaction or occurrence." *Id.* After discussing the market-based issues pending in the antitrust case, this Court further observed, "In contrast, the Shah Litigation only involves infringement of a patent relating to glyphosate-resistance plants. As a result, the Antitrust Litigation presents different factual issues than the Shah Litigation." *Id.*, pg. 6-7. Ordering consolidation, this Court concluded:

> Nevertheless, the court does find that the Shah Litigation and the Antitrust Litigation do present <u>minimal factual and legal overlap</u>. Furthermore, the court finds that consolidating the Shah Litigation and the Antitrust Litigation will be more efficient than managing the cases separately.

*Id.*, pg. 8 (emphasis added).

A similar result was reached on Monsanto's motion to stay the antitrust case. After hearing substantial argument from Syngenta that the relationship between the two actions was minimal, the Court ruled, "[I]t sounds as though the patent litigation really isn't going to be nearly dispositive, which is the only reason why I stay antitrust cases. So we're going to go forward." Exhibit 1, hearing transcript, pg. 12. The action went forward with agreement by the parties that the antitrust claims and the patent claims would be tried separately.

Moreover, any minimal overlap that exists between the patent claims and the antitrust claims is no basis to delay the appeal of the patent Judgment. That exact issue was addressed in *W.L. Gore*. There, the antitrust plaintiff argued the existence of factual overlap of the adjudicated patent claims and the pending antitrust claims as a basis for denying a 54(b) judgment. The Federal Circuit disagreed, holding "[F]actual overlap on

only tangential issues or on 'one aspect' of a counterclaim is not adequate to show an abuse of discretion. The Supreme Court has stated that even where there is some factual overlap of issues, other factors may justify the district court's exercise of discretion to certify an appeal in a given case." *W.L. Gore*, 975 F.2d 864 9 (citing *Curtiss-Wright Corp. v. General Elec. Co*, 100 S.Ct. 1460, 1465 n.2 (1980). More recently, the Federal Circuit has held "Even for claims that arise out of the same transaction or occurrence, sound case management may warrant entry of partial final [54(b)] judgment." *Intergraph Corp. v Intel Corp.*, 253 F.3d 695, 699 (Fed. Cir. 2001).

While Syngenta is changing course now to contend that there is substantial overlap between the patent action and the antitrust action, that is not the relevant question. Instead, the Court should look at whether there is any issue to be addressed on appeal that will be duplicative of issues that remain to be litigated in the antitrust case. Other than the lone misappropriation issue addressed below, Syngenta has failed to even point to any such issue. The reason is clear. Unless the Court is inclined to find that the Judgment is not final, then it is determinative of the issues decided therein. As such, those issues – particularly the legal grounds upon which the Court found non-infringement of the Lundquist patents and non-enablement of the Shah patent – could not be relitigated in the antitrust case.

Indeed, the Judgment has no relevance at all to Syngenta's sham patent litigation claims, under established Supreme Court law. The Supreme Court has held that "The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc*, 508 U.S. 62 (1993). Accordingly, the fact that

6

this Court ultimately ruled against Monsanto in the patent Judgment is irrelevant to the sham litigation claims, because it sheds no light on whether Monsanto's filing was objectively baseless nor on Monsanto's subjective reasons for filing the action when it brought suit two years ago. *Id.*, at 57, n. 4 and 65-66; *FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 938 (Fed. Cir. 1995) ("the Supreme Court has forbidden us to equate loss on the merits with objective unreasonableness.").

**2.    The Patent Judgment And The Tortious Interference Counterclaim in the Antitrust Action Involve Completely Different Issues**

The issue of misappropriation is Syngenta's only attempt to specify where there could be duplication if a 54(b) judgment is entered, and it is a tremendous stretch of the issues. Syn. Br. Pg. 9-10. But Monsanto's patent suit never argued that the Court should completely ignore the method steps of the Lundquist patents because Syngenta misappropriated GA21. Instead, Monsanto's argument was that the first method steps had in fact been performed (by DEKALB) and that Syngenta should not be able to avoid infringement by utilizing DEKALB's prior work, and then performing the last step of the process.

This is a completely different issue from those presented in Monsanto's tortious interference counterclaim pending in the antitrust action. There, Monsanto will prove that it provided GA21 to licensees under a license agreement that allowed the licensees to use it only for specific purposes, which did not include providing GA21 to Syngenta so that Syngenta could propagate it and sell it as its own product without compensation to Monsanto. Syngenta tortiously interfered with those contractual agreements and misappropriated the biological material for its own extra-contractual uses. That conduct

7

is a tort regardless of the applicability of any patents, and thus there is no relation between this cause of action and the issues decided in the Judgment.

Moreover, Syngenta advances this argument while again completely ignoring what the Court actually found. The Judgment never seeks to resolve any factual issues related to misappropriation, because the Court clearly could not weigh fact issues like this on summary judgment. Instead, the Court entered judgment because, "In the case at bar, the critical initial steps of the claimed process were performed by the patent owner, at a time before the patents were even issued." D.I. 375, pg. 8. In reaching this ruling the Court indicated how it viewed these patent issues as being completely separate from any potential business torts:

> These facts are more suited to a business tort than patent infringement litigation, and the court declines to create an exception to fundamental principles of patent law that reach what, in fact, might be the fair result.

*Id.*, pg. 8-9

Accordingly, the appeal cannot address whether misappropriation or tortious interference in fact occurred because that issue was never addressed by this Court in the Judgment. Misappropriation cannot be resolved by the appellate court in the first instance. Instead, as to this issue, the appeal will simply address whether a triable fact issue exists that the performance of initial process steps by DEKALB can be taken into account in ascertaining Syngenta's infringement, under any factual scenario. This is no basis for delaying appeal or entry of a 54(b) judgment.

### 3. There Will Be No Piecemeal Appeals or Judicial Inefficiency

Finally, Syngenta makes a perfunctory argument that "a single appeal would best conserve judicial resources while avoiding the possibility of inconsistent appellate

decisions." Syn. Br. Pg. 1, 11.   Yet, nowhere does Syngenta state how there could possibly be inconsistent appeals.    Simply put, there is no possibility for inconsistent appeals.   Once the issues actually addressed in the patent Judgment are decided on appeal, they cannot be reargued during the antitrust trial, or on appeal of any antitrust judgment.   Those issues will have been finally decided and will be law of the case. Accordingly, there is no judicial inefficiency arising from a 54(b) judgment.

On the other hand, the tremendous prejudice to Monsanto if the patent Judgment is not certified for appeal now is obvious.

1.   Not entering a 54(b) judgment could delay Monsanto's ability to obtain appellate review of the Judgment for an extended period that could last well over a year.

2.   During that time, Syngenta will not be precluded by the patents-in-suit from continuing to sell GA21 corn.   Indeed, the scope of Monsanto's potential relief could be greatly impaired merely by the passage of time because the Shah patent expires in July 2007 – just 13 months from now.

3.   Syngenta has demonstrated no just cause to delay Monsanto's ability to obtain prompt appellate review of the Judgment.

4.   Because the patent Judgment is final, and because it addresses issues separate from the remaining antitrust claims as this Court has found, no just cause exists.

C.   **Monsanto's Briefing Has Timely Addressed the Issues**

As a final issue, Syngenta suggests that Monsanto should not be able to file a reply brief because it did not fully raise issues in its motion.   That is not correct. Monsanto's motion raised the very basis upon which 54(b) judgment should be granted –

9

the patent Judgment is final, and all that remains to be tried are antitrust issues. The motion was short, because the issues are that simple, particularly under the controlling precedent of *W.L. Gore.* 975 F.2d 858. While Monsanto did not address the basis upon which Syngenta opposes entry of a 54(b) judgment, Monsanto could not be required to guess what that basis would be. This is particularly true where most of what Syngenta argues is completely contrary to prior determinations of this Court.[1]

## III.    CONCLUSION

For the forgoing reasons, Monsanto respectfully requests amendment of the Judgment to make it a 54(b) judgment in the form attached to Monsanto's motion.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Susan K. Knoll
Thomas A. Miller
Melinda Patterson
Stephen E. Edwards
Steven G. Spears
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
Tel: (713) 787-1400

By: */s/ Richard L. Horwitz*
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE 19801
     Tel: (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

Dated: June 2, 2006
734865 / 28228

*Attorneys for Plaintiffs*

---

[1] Syngenta's suggestion that Monsanto only gave it one hour to explain the basis for its opposition misportrays what actually happened. Syn. Br. Pg. 8 n. 2. As shown in the e-mail correspondence attached as Exhibit 2, Monsanto sent Syngenta a proposed 54(b) judgment to Syngenta on May 12, asking if it had any opposition. For the next three business days (May 15-17), Monsanto repeatedly asked what Syngenta's position was, finally telling Syngenta that it needed to file the motion by the end of the day on May 17. Syngenta waited until the last hour to say it opposed, again without any explanation for why. Thus, when Monsanto asked for an explanation then, it had been asking the same question for nearly three days, with no response from Syngenta.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on June 2, 2006, the attached

document was hand delivered on the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on June 2, 2006, I have Electronically Mailed the

foregoing document(s) to the following non-registered participants:

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413
michael.flibbert@finnegan.com
don.burley@finnegan.com
howard.levine@finnegan.com

                                    /s/ Richard L. Horwitz
                                    Richard L. Horwitz
                                    David E. Moore
                                    Potter Anderson & Corroon LLP
                                    Hercules Plaza – Sixth Floor
                                    1313 North Market Street
                                    Wilmington, DE 19801
                                    (302) 984-6000
                                    rhorwitz@potteranderson.com
                                    dmoore@potteranderson.com

700765

# Exhibit 7

# EXHIBIT 7
# REDACTED IN ITS ENTIRETY

# Exhibit 8

# EXHIBIT 8
# REDACTED IN ITS ENTIRETY

# Exhibit 9

# EXHIBIT 9
# REDACTED IN ITS ENTIRETY

# Exhibit 10

# EXHIBIT 10
# REDACTED IN ITS ENTIRETY

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on September 27, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on September 27, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants as indicated below:

**BY FEDERAL EXPRESS**

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, John W. Shaw, hereby certify that on September 27, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on September 27, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants as indicated below:

**BY FEDERAL EXPRESS**

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Defendants*