THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONSANTO COMPANY, *et al*, | ) |
| | ) C.A. No. 04-305-SLR |
| Plaintiffs, | ) (Consolidated) |
| | ) |
| v. | ) **PUBLIC VERSION** |
| | ) |
| SYNGENTA SEEDS, INC., *et al*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MONSANTO'S
MOTION IN LIMINE TO EXCLUDE DAMAGES TESTIMONY
OF PLAINTIFF'S EXPERT RICHARD GILBERT**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON, LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

*Attorneys for MONSANTO COMPANY
and MONSANTO TECHNOLOGY LLC*

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004
(202) 783-0800
(202) 383-6610 facsimile

Dated: October 13, 2006
Public Version Dated:  October 17, 2006

## TABLE OF CONTENTS

NATURE AND STATE OF THE PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................... 1

ARGUMENT AND AUTHORITIES ..................................................................................... 3

    I.     LEGAL STANDARD FOR ADMISSION OF EXPERT TESTIMONY ................................................................................................. 3

    II.    DR. GILBERT'S DAMAGES OPINION IS SUPPORTED BY UNFOUNDED ASSUMPTIONS AND SHOULD THEREFORE BE EXCLUDED FROM THE JURY'S CONSIDERATION ................... 4

CONCLUSION ........................................................................................................................ 8

# TABLE OF AUTHORITIES

## CASES

*Concord Boat v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ............................................................................. 2, 3, 4, 5

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ................................................................................................... 3, 4

*GE v. Joiner*,
   522 U.S. 136 (1997) ....................................................................................................... 4

*Intimate Bookshop, Inc. v. Barnes & Noble, Inc.*,
   2003 U.S. Dist. LEXIS 17231 (S.D.N.Y. 2003) ......................................................... 5, 6

*Kumho Tire v. Carmichael*,
   526 U.S. 137 (1999) ....................................................................................................... 3

*Montgomery County v. Microvote Corp.*,
   320 F.3d 440 (3d Cir. 2002) .......................................................................................... 4

*U.S. v. Downing*,
   753 F.2d 1224 (3d Cir. 1985) ........................................................................................ 3

*Virgin Atlantic Airways Ltd. v. British Airways PLC*,
   69 F. Supp. 2d 571 (S.D.N.Y. 1999), *aff'd*, 257 F.3d 256 (2d Cir. 2001) ...................... 4

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000) ....................................................................................................... 3

## STATUTES

Fed. R. Evid. 702 ................................................................................................................ 4, 8

Defendants Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") respectfully move the Court to exclude the damages testimony of plaintiffs' expert Richard J. Gilbert.

## NATURE AND STATE OF PROCEEDINGS

On July 28, 2004, Syngenta Seeds, Inc. brought this action against Monsanto for alleged violations of Section 2 of the Sherman Act. On January 12, 2006 the Court entered a Scheduling Order, which required that all Daubert motions be filed on or before October 13, 2006. D.I. 197. On July 26, 2006, Syngenta served an expert report for Richard J. Gilbert, offering opinions purportedly supporting, among other things, Syngenta's damages from Monsanto's alleged anticompetitive conduct.

## SUMMARY OF ARGUMENT

Dr. Gilbert's opinion on damages is based entirely on two untested sets of internal Syngenta projections for its start-up licensing business, GreenLeaf Genetics ("GLG") (now a joint venture between Syngenta and DuPont/Pioneer). The first forecast – used by Dr. Gilbert as his "but-for" projection – reflects Syngenta's financial expectations for GLG in 2004, prior to its formation. The second forecast, created months after Syngenta formed GLG in late 2004 and nearly a year after Syngenta filed this action, is treated by Dr. Gilbert as his "actual" projection. Dr. Gilbert asserts that the difference between the 2004 "but-for" and the lower 2005 "actual" projections reflect Syngenta's damages from Monsanto's alleged anticompetitive conduct. In other words, Dr. Gilbert calculated damages merely by subtracting one Syngenta projection from another, then assuming that the difference was caused solely by Monsanto's alleged conduct. He did not check the

accuracy of the projections, examine the data underlying them (if there is any), or conduct any statistical or econometric analyses.

This methodology is unreliable, and Dr. Gilbert has admitted as much. As he stated at deposition, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Having performed no inquiry into the foundation for or basis of Syngenta's projections, Dr. Gilbert unsurprisingly fails to distinguish between the lawful and allegedly unlawful conduct that Syngenta would have considered when creating its 2005 projections for GLG. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Courts considering expert damages opinions have not hesitated to exclude them as unreliable when the damages model does not distinguish between lawful and unlawful conduct. The reason for this is obvious – plaintiff must prove a "causal relationship between the violation and the injury, and the amount of the damages." *Concord Boat v. Brunswick Corp.*, 207 F.3d 1039, 1054 (8th Cir. 2000) (citation omitted). A damages

2

assessment that is not "sufficiently tied to the facts of the particular case . . . [cannot] aid the jury in resolving a factual dispute." *U.S. v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) (citations omitted). Indeed, courts have held that when an expert's damages model fails to separate lawful from unlawful conduct, that the assessment is "mere speculation" and should not be presented to the trier of fact. *Concord Boat*, 207 F.3d at 1057. Accordingly, Dr. Gilbert's damage assessment is speculative and unreliable, and should be excluded from the jury's consideration.

## ARGUMENT AND AUTHORITIES

### I. LEGAL STANDARD FOR ADMISSION OF EXPERT TESTIMONY

Courts function as gatekeepers with respect to the introduction of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).[1] In *Daubert*, the Supreme Court made clear that under the scheme established by the Federal Rules of Evidence, the trial judge must ensure that any and all scientific testimony or evidence admitted is not only *relevant, but reliable*. 509 U.S. at 589-92 (emphasis added). The test of reliability is an "exacting" one. *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (Since *Daubert*, "parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet.").

A trial judge must determine whether expert testimony will "assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of

---

[1] The gate keeping function assigned to judges was expanded by the Supreme Court to also apply non-scientific experts such as economists. *See Kumho Tire v. Carmichael*, 526 U.S. 137, 141 (1999) ("We conclude that *Daubert's* general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.")

3

whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 447 (3d Cir. 2002) (citing *Daubert*, 509 U.S. at 592-93); *see also GE v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered"); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 69 F. Supp. 2d 571, 579-580 (S.D.N.Y. 1999), *aff'd*, 257 F.3d 256 (2d Cir. 2001) ("an expert's opinion is not a substitute for a plaintiff's obligation to provide evidence of facts that support the applicability of the expert's opinion to the case"). Fed. R. Evid. 702 codifies this standard. It allows an expert to testify in the form of an opinion or otherwise, only if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

## II.   DR. GILBERT'S DAMAGES OPINION IS SUPPORTED BY UNFOUNDED ASSUMPTIONS AND SHOULD THEREFORE BE EXCLUDED FROM THE JURY'S CONSIDERATION

Courts have consistently excluded damage assessments that assume causation without reference to other, lawful causes for the alleged harm. For example, in *Concord Boat v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000), plaintiffs, manufacturers of boats and boat parts, brought an antitrust action against defendant Brunswick, a manufacturer of stern drive engines, alleging antitrust violations based upon Brunswick's market share and volume discount programs. Brunswick argued that because plaintiffs'

expert, Dr. Hall, did not "separate lawful from unlawful conduct" in creating his "but-for" damages model, that his assessment was unreliable and should be excluded. *Id.* at 1055-56.[2] The question posed by the Eighth Circuit was whether Dr. Hall considered other causes for plaintiffs' lost sales such that his damages model appropriately reflected the economic reality of the stern drive engine market. *See Id.* at 1055.

The *Concord* court observed that "not all relevant circumstances were incorporated into the expert's method of analysis related to antitrust liability." *Id.* at 1056. Plaintiffs' expert model ignored "inconvenient evidence" that was not related to any anticompetitive conduct, such as the recall of one of the plaintiffs' competing engines and a failed merger between two of the plaintiffs. *Id* at 1056-57. There was also market evidence that boat builders were able to forgo Brunswick's discounts. *Id* at 1056. The court found that because Dr. Hall's damages model did not reflect the economic reality of the market, and because it "did not separate lawful from unlawful conduct," Dr. Hall's opinion was "mere speculation" and should not have been admitted. *Id.* at 1057.

To a similar effect is *Intimate Bookshop, Inc. v. Barnes & Noble, Inc.*, 2003 U.S. Dist. LEXIS 17231 (S.D.N.Y. 2003). Plaintiff Intimate alleged that Barnes & Noble priced books in a discriminatory manner and that such discriminatory prices injured competition. *Id.* at *3-4. Intimate submitted five expert reports that opined on its damages. Each of Intimate's experts testified at depositions that (i) they could not establish any causal link between Intimate's lost sales and profits and defendants' alleged

---

[2]Counsel for plaintiffs assured the court that their expert's model "would reflect the reality of the market and would segregate any unlawful acts and unrelated market events that might have contributed to Brunswick's market share from any anticompetitive conduct in order to enable the jury to assign damages only for illegal actions taken by Brunswick." *Concord Boat*, 207 F.3d at 1054.

5

receipt of unlawful discounts; and (ii) their damages calculations and opinions were based merely on an *assumption that the defendants' alleged violations of the Act were the sole cause of Intimate's lost sales and profits.* *Id.* at *19-20. One of Intimate's owners brought to light the fallibility of such a model when he acknowledged during his deposition that some of Intimate's business losses may have been attributable to other factors including adverse business decision, undercapitalization, and competition with non-parties. *Id.* at *21-22. The court concluded that Intimate's "unsupported assumption of causation and supposition that all of its losses were caused by defendants' allegedly unlawful conduct" produced a damages assessment that was "impermissibly fraught with assumptions and speculation." *Id.* at 25. The court granted defendant's motion for summary judgment.

The damages assessment of Syngenta's expert, Dr. Gilbert, is similarly premised on assumptions that he did not support with data or otherwise verify. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

6



Dr. Gilbert's blind acceptance of Syngenta's projections for GLG leads to a damages assessment that is totally disconnected to Syngenta's claims in this case. Dr. Gilbert offers no evidence that Syngenta's 2005 projection for GLG reflects alleged unlawful conduct on the part of Monsanto. Dr. Gilbert also ignores other reasons — unrelated to Monsanto — for why the projections were revised downward. Travis Dickinson, who was charged with revising the GLG five-year plan ("actual" projection), explained some of these considerations during his deposition. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These legitimate

7

changes to GLG's business model are appropriate, certainly not uncommon for a startup, and obviously impacted Syngenta's projections for GLG. However, ***these changes had nothing to do with Monsanto***.

Dr. Gilbert simply ignored the inescapable reality that business plans are not premised solely on the effects of the conduct of a single competitor. Syngenta's "actual" projection, as demonstrated through Mr. Dickinson's testimony, was based on a multitude of internal and external factors totally unrelated to Monsanto's alleged anticompetitive conduct. Because Dr. Gilbert's report does not even attempt to distinguish between lawful and unlawful conduct, his damages assessment is speculation. Expert conclusions cannot be so removed from reality and yet retain their reliability as required by Fed. R. Evid. 702. Dr. Gilbert's damages assessment cannot assist the trier of fact in determining liability and should therefore be excluded.

## CONCLUSION

For all the foregoing reasons, Monsanto requests that the Court exclude Dr. Gilbert's damages testimony.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | POTTER ANDERSON & CORROON, LLP |
| OF COUNSEL: |  |
|  | By: _/s/ David E. Moore_ |
| Peter E. Moll | Richard L. Horwitz (#2246) |
| John J. Rosenthal | David E. Moore (#3983) |
| HOWREY LLP | Hercules Plaza, 6th Floor |
| 1299 Pennsylvania Ave., N.W. | 1313 N. Market St. |
| Washington, DC 20004 | Wilmington, DE 19801 |
| (202) 783-0800 | (302) 984-6000 |
| (202) 383-6610 facsimile | rhorwitz@potteranderson.com |
|  | dmoore@potteranderson.com |
| Dated: October 13, 2006 |  |
| Public Version Dated: October 17, 2006 | *Attorneys for MONSANTO COMPANY* |
| 756228/28128 | *and MONSANTO TECHNOLOGY LLC* |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on October 17, 2006, the attached document was hand delivered on the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on October 17, 2006, I have Electronically Mailed the foregoing document(s) to the following non-registered participants:

| | |
|---|---|
| Richard F. Schwed<br>Thomas A. McGrath III<br>Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022-6069<br>rschwed@shearman.com | Heather Lamberg Kafele<br>Shearman & Sterling LLP<br>801 Pennsylvania Avenue, N.W.<br>Suite 900<br>Washington, D.C. 20004<br>hkafele@shearman.com |

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

732377