**REDACTED – PUBLIC VERSION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-305-SLR (Consol.) |
| | ) | |
| SYNGENTA SEEDS, INC., *et al.*, | ) | **RESTRICTED CONFIDENTIAL** |
| | ) | **FILED UNDER SEAL** |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF SYNGENTA'S MOTION TO EXCLUDE THE
EXPERT REPORT AND TESTIMONY OF DR. WILLIAM R. LATHAM**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta
Corporation, Syngenta Biotechnology, Inc., Advanta
USA, Inc., Garst Seed Company, and Golden Harvest
Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: October 13, 2006

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................iii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 2

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT.................................................................................................................... 7

I.    DR. LATHAM'S TESTIMONY DOES NOT "FIT" THE LEGAL CLAIMS AT ISSUE
      IN THIS CASE AS REQUIRED BY *DAUBERT*............................................... 7

      A.    Dr. Latham's Testimony Should be Excluded Because he Fails to Fit his Analysis to
            the Damages that Flow from the Alleged Act of Tortious Interference ................... 9

      B.    Dr. Latham's Testimony Should be Excluded Because it Calculates Damages that
            Monsanto is Contractually Barred from Collecting................................................ 11

      C.    Dr. Latham's Testimony Concerning Disgorgement of Counter-Defendants' Profits
            Should be Excluded Because Monsanto is not Legally Entitled to Such Damages  13

II.   DR. LATHAM'S TESTIMONY ON DISGORGEMENT SHOULD BE EXCLUDED
      BECAUSE HIS METHODOLOGY IS UNRELIABLE ................................................ 15

III.  DR. LATHAM'S TESTIMONY THAT SYNGENTA'S CONDUCT WAS "WILLFUL"
      SHOULD BE EXCLUDED BECAUSE OF HIS FAILURE TO SUBSTANTIATE
      THAT OPINION ......................................................................................................... 20

IV.   DR. LATHAM'S TESTIMONY IS MORE PREJUDICIAL THAN PROBATIVE AND
      THUS SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 403... 22

CONCLUSION................................................................................................................ 24

## TABLE OF AUTHORITIES

### CASES

*A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576 (11th Cir. 2001)..............................7

*Adkins Adjustment Serv., Inc. v. Blumhof*, No. Civ.A.3:98-CV-2789-H, 2001 WL 484436 (N.D. Tex. May 2, 2001)....................................................................................................8, 23

*American Air Filter Co. v. McNichol*, 527 F.2d 1297 (3d Cir. 1975)...........................................13

*Anderson v. Hale*, No. Civ-02-0113-F, 2002 WL 32026151 (W.D. Okla. Nov. 4, 2002)..............8

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996).....................................................16

*Brown v. SAP America, Inc.*, No. 98-507-SLR, 1999 WL 803888 (D. Del. Sept. 13, 1999)........................................................................................................................................12

*Certified Labs. of Tex., Inc. v. Rubinson*, 303 F. Supp. 1014 (E.D. Pa. 1969)..............................14

*Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008 (8th Cir. 2001)..................................8

*Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir. 1999).....................................................................21

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000).....................................19

*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995)............................................21

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)................................................7, 15, 22

*Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.*, 73 F. Supp. 2d 997 (N.D. Iowa 1999)......................................................................................................................................23

*Developers Three v. Nationwide Ins. Co.*, 582 N.E.2d 1130 (Ohio 1990).....................................13

*Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Distrib. Co.*, 734 S.W.2d 322 (Tenn. 1987)........................................................................................................................................13

*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000).......................................................................7

*Fazio v. ULS Corp.*, No. 97-71418, 1999 U.S. Dist. LEXIS 4563 (E.D. Mich. Mar. 31, 1999) *aff'd*, 229 F.3d 1151 (6th Cir. 2000)..........................................................................8

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 325 F. Supp. 2d 841 (M.D. Tenn. 2004).........................................................................................................................................8

*Herman Schwabe, Inc. v. United Shoe Mach. Corp.*, 297 F.2d 906 (2d Cir. 1962).....................23

*Hexamedics, S.A.R.L. v. Guidant Corp.*, No. Civ. 00-2532, 2003 WL 21012179 (D. Minn. Apr. 30, 2003) ...........................................................................................8

*JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098 (E.D. Pa. Apr. 15, 1998) .............................................................19

*Korpacz v. Women's Professional Football League*, No. Civ.A. 04-10735, 2006 WL 220762 (D. Mass. Jan, 27, 2006) ...........................................................14

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...............................................15

*Lantec, Inc. v. Novell, Inc.*, No. 2:95-CV-97-ST, 2001 U.S. Dist. LEXIS 24816 (D. Utah Feb. 13, 2001) ...............................................................................16, 17

*Memorial Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207 (Colo. 1984) ...........................................................................................12

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113 (4th Cir. 1995) ...........................................................................................14

*Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000) ...............................................15

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, No. 1:04CV1082, 2006 WL 1663357 (N.D. Ga. June 14, 2006) ...................................................8

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ...................................15

*Pharmanetics, Inc. v. Aventis Pharm., Inc.*, No. 05-1621, 2006 WL 1526131 (4th Cir. May 31, 2006) .............................................................................................8

*Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202 (2d Cir. 1984) ...........................16

*Shepard v. United States*, 290 U.S. 96 (1933) ..........................................................23

*In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999) ...................................................15

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) *cert. denied*, 126 S. Ct. (2005) ...........................................................................................21

*Toole v. Toshin Co.*, No. 00-CV-821S, 2004 WL 2202580 (W.D.N.Y. Sept. 29, 2004) .............21

*Total Containment, Inc. v. Dayco Prods., Inc.*, No. Civ.A. 1997-CV-6013, 2001 WL 1167506 (E.D. Pa. Sept. 6, 2001) .............................................15, 17, 19

*Trimed, Inc. v. Sherwood Medical Co.*, 977 F.2d 885 (4th Cir. 1992) ...........................12

*United States v. Downing*, 753 F.2d 1224 (3d Cir. 1985)........................................................7, 22

*Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 203-04 (3d Cir. 1995) ................................12

*Western Oil & Fuel Co. v. Kemp*, 245 F.2d 633 (8th Cir. 1957)...................................................11

*Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.*, 45 F. Supp. 2d 1164 (D. Kan. 1999) .........................................................................................................................................12

## STATUTES AND RULES

6 Del. C. § 2533 ..................................................................................................................................7

Fed. R. Evid. 403 ...................................................................................................................3, 22, 23

Fed. R. Evid. 702 ...............................................................................................................7, 16, 22

## MISCELLANEOUS

*Black's Law Dictionary* 390 (6th ed. 1990)......................................................................................12

Restatement (Second) of Torts § 901 cmt. a (1979) .......................................................................13

Syngenta Seeds, Inc. ("Syngenta"), Syngenta Corporation, Syngenta Biotechnology, Inc.,

Advanta USA, Inc., Garst Seed Company, and Golden Harvest Seeds, Inc. (collectively

"Counter-Defendants") respectfully submit this opening brief in support of their motion to

exclude the expert report and testimony of Dr. William R. Latham proffered by Monsanto

Company and Monsanto Technology LLC (collectively "Monsanto").

## NATURE AND STAGE OF THE PROCEEDINGS

On July 28, 2004, Syngenta filed this case against Monsanto for violations of Section 2 of

the Sherman Act.  Syngenta subsequently filed amended complaints, the most recent dated

August 12, 2005 adding a claim for false representations in violation of the Lanham Act.  In

response to Syngenta's lawsuit, Monsanto asserted four counterclaims:  (1) reverse passing off

under the Lanham Act (Count I); (2) violations of the Delaware Deceptive Trade Practices Act

(Count II); (3) false advertising under the Lanham Act (Count III); and (4) common law tortious

interference with a contract (Count IV).  (D.I. 138 ("Countercl.") at ¶¶ 65-80.)

On September 14, 2005, Counter-Defendants filed a motion to dismiss Counts I, II, and

III of Monsanto's Counterclaim.  (D.I. 132.)  Monsanto submitted the Expert Report of Professor

William R. Latham ("Latham Report") (Appendix Ex. 1) on July 26, 2006, which purported to

calculate the damages due Monsanto if its counterclaims were successful.  (Latham Report ¶ 7.)

Shortly thereafter, on August 4, 2006, the Court issued its ruling on Counter-Defendants motion

to dismiss, ordering dismissal of Monsanto's Lanham Act counterclaims (Counts I and III) and

partial dismissal of Monsanto's deceptive trade practices counterclaim (Count II).  (D.I. 480.)

Dr. Latham has not made any changes to his report following these dismissals, and ████

████████████████████████████████████████████████████████████████

████████████████████ (Sept. 11, 2006 Transcript of the Deposition of William R. Latham

("Latham Dep.") (Appendix Ex. 2) at 35, 44.)

1

## SUMMARY OF ARGUMENT

The expert report and testimony of Professor William Latham should be excluded for the following reasons:

1.    Dr. Latham's testimony does not satisfy the *Daubert* requirement that it "fit" the facts and claims of the case. As a result of this Court's August 4, 2006 order dismissing Monsanto's Lanham Act claims, the only counterclaim Monsanto may recover monetary damages for, should it prevail, is its tortious interference claim. The basis of Monsanto's tortious interference claim is that Syngenta interfered with Garst's GA21 license agreement with Monsanto by entering into a contract with Garst's parent company to transfer GA21 from Garst to Syngenta. Dr. Latham's testimony does not "fit" Monsanto's tortious interference claim because he does not limit damages to those sales derived from the GA21 alleged to have been wrongfully transferred from Garst to Syngenta. Instead, he calculates damages based on all sales, regardless of the source of the GA21. In addition, Dr. Latham's testimony does not "fit" the tortious interference claim because he calculates damages that are not recoverable under the limited liability provision of the Garst GA21 agreement and he calculates "disgorgement" damages, which are not legally appropriate damages for tortious interference.

2.    Even if Dr. Latham's testimony "fit" the case, his opinion purporting to calculate damages based on disgorgement of Counter-Defendants' profits does not satisfy the *Daubert* standard for reliability. ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████ Dr. Latham concludes that these

figures equal Counter-Defendants' 2005-2007 profits for Agrisure GT, despite the fact that they

plainly do not project those profits. Dr. Latham thus makes the sort of "apples and oranges"

comparison that courts have routinely held cannot survive a *Daubert* motion – especially where,

as here, the expert could have calculated profits using actual data.

     3.     Dr. Latham's testimony that Syngenta's conduct was "willful" should also be

excluded as unreliable. Dr. Latham fails to offer any basis for this position other than two

conclusory sentences in his report. Courts uniformly hold that experts may not testify about

conclusions that they have not substantiated.

     4.     Even if Dr. Latham's testimony satisfied the *Daubert* "fit" and "reliability"

requirements, it should be excluded under Federal Rule of Evidence 403 on the grounds that it is

more prejudicial than probative. The Latham Report is littered with allegations of wrongdoing

that relate solely to Monsanto's now-dismissed claims under the Lanham Act, including

numerous references to the "trademark harm" that Monsanto suffered because of Syngenta's

alleged actions. It would be highly prejudicial to Syngenta to allow Monsanto to present Dr.

Latham's testimony to a jury, who would be forced to wade through accusations of illegal

conduct that are no longer at issue in this case.

## STATEMENT OF FACTS

The subject of this motion is the Expert Report of Professor William R. Latham dated July 26, 2006 and attendant testimony.  Monsanto has proffered Dr. Latham's opinion for the purpose of analyzing the damages it would be entitled to if its counterclaims were successful. (Latham Report ¶ 7.)



---

[1] GA21 is one of the two glyphosate-tolerant corn traits on the market.  Syngenta and its affiliates license and sell GA21 under the brand name Agrisure GT.



All three methodologies are based on the assumption that Monsanto is entitled to damages for *all* sales of Agrisure GT made by any Counter-Defendant. None of the alternatives attempts to calculate damages arising from the alleged wrongful transfer of GA21 inbreds from Garst to Syngenta – the only conduct alleged to have constituted tortious interference. (Countercl. ¶¶ 77-78.)

# ARGUMENT

## I.    DR. LATHAM'S TESTIMONY DOES NOT "FIT" THE LEGAL CLAIMS AT ISSUE IN THIS CASE AS REQUIRED BY *DAUBERT*

Federal Rule of Evidence 702 imposes "three distinct substantive restrictions on the admission of expert testimony:  qualifications, reliability, and fit." *Elcock v. Kmart Corp.,* 233 F.3d 734, 741 (3d Cir. 2000).  The last restriction – "fit" – focuses on "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 591 (1993) (quoting *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985)).

Dr. Latham's testimony does not "fit" with the damages recoverable for Monsanto's tortious interference counterclaim – the only relevant claim to survive this Court's August 4, 2006 ruling[3] – because:  (1) Dr. Latham's calculations are not limited to damages that flow from the alleged act of tortious interference – namely, Syngenta entering into a contract with Garst's parent company to transfer GA21 from Garst to Syngenta; (2) Monsanto is contractually prohibited from collecting lost profits or consequential damages, which is precisely what Dr. Latham has calculated; and (3) disgorgement of Counter-Defendants' profits is not an appropriate remedy for Monsanto's tortious interference claim.

Courts have routinely excluded expert testimony that addresses damages that are not recoverable for the claims at issue. *See, e.g., A.A. Profiles, Inc. v. City of Fort Lauderdale,* 253 F.3d 576, 584-85 (11th Cir. 2001) (district court abused its discretion in admitting expert

---

[3] Part of Monsanto's claim for violations of the Delaware Deceptive Trade Practices Act ("DDTPA") survived that ruling as well. (D.I. 480, p. 9-10.)  This claim, however, cannot provide the "fit" with Dr. Latham's testimony required by *Daubert* because the monetary damages calculated in the Latham Report are not available under the DDTPA. 6 Del. C. § 2533(a)-(e) (possible remedies are limited to injunctive relief, attorneys fees, trebling of award for the same conduct under other Delaware law, and, upon petition by the Attorney General, a civil penalty). ▮▮▮▮▮▮▮▮▮▮▮▮

testimony on damages not legally recoverable); *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 325 F. Supp. 2d 841, 850 (M.D. Tenn. 2004) (expert report addressing "proof of actual confusion" excluded for lack of "fit" where confusion was irrelevant to damages under case law); *Anderson v. Hale*, No. Civ-02-0113-F, 2002 WL 32026151, at *7 (W.D. Okla. Nov. 4, 2002) (expert testimony on hedonic damages excluded where such damages were not recoverable under applicable law); *Adkins Adjustment Serv., Inc. v. Blumhof*, No. Civ.A.3:98-CV-2789-H, 2001 WL 484436, at *1 (N.D. Tex. May 2, 2001) (excluding expert testimony that used gross profits as the basis for damages where the court could not find "any legal support for the proposition that the correct definition of lost profits is lost gross profits"); *Fazio v. ULS Corp.*, No. 97-71418, 1999 U.S. Dist. LEXIS 4563, at *13 (E.D. Mich. Mar. 31, 1999) *aff'd*, 229 F.3d 1151 (6th Cir. 2000) (excluding expert testimony that addressed damages that were not recoverable).

The fact that Dr. Latham submitted his report before the Court's ruling on the motion to dismiss does not excuse this defect. *See, e.g., Pharmanetics, Inc. v. Aventis Pharm., Inc.*, No. 05-1621, 2006 WL 1526131, at *3 (4th Cir. May 31, 2006) (expert testimony on damages was not "sufficiently tied to the facts of the case" where the opposing party "was not liable under all claims, as the report assumed, because the district court had granted partial summary judgment" after the report had been submitted); *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1018 (8th Cir. 2001) (expert testimony on damages excluded in part because report was based on claims that did not survive summary judgment and was not tailored to remaining claims); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, No. 1:04CV1082, 2006 WL 1663357, at *5 (N.D. Ga. June 4, 2006) (expert testimony on damages excluded for lack of "fit" where report was based "on excluded facts and claims"); *Hexamedics, S.A.R.L. v. Guidant Corp.*, No.

8

Civ. 00-2532, 2003 WL 21012179, at *5 (D. Minn. Apr. 30, 2003) (expert damages testimony

excluded because it was based on allegations that did not survive summary judgment and thus

did "not fit the facts of this case"). ████████████████████████████████

████████████████████████ (Latham Dep. at 34-35, 44.)

### A.    Dr. Latham's Testimony Should be Excluded Because he Fails to Fit his Analysis to the Damages that Flow from the Alleged Act of Tortious Interference

Dr. Latham does not fit his analysis to damages recoverable for Monsanto's tortious

interference claim, the only remaining claim under which Monsanto could obtain a monetary

recovery.

Monsanto alleges in support of that claim that:

- "Monsanto had a valid, binding contract with Garst Seed Company to license GA21 event corn products";

- "That agreement prohibited Garst from giving, selling, or otherwise transferring the GA21 event inbred corn lines it received from Monsanto to a third party"; and

- "Syngenta intentionally interfered with Monsanto's GA21 event license agreement with Garst by contracting with Garst's immediate parent, Advanta USA, Inc., for the transfer of the GA21 event inbred corn lines that it had received from Monsanto."[4]

(Countercl. ¶¶ 77-78.) In other words, Syngenta allegedly induced a breach by entering into a

contract with Garst's parent company whereby Garst transferred GA21 inbreds to Syngenta.

Monsanto thus is permitted to seek only damages from Garst's alleged wrongful transfer

of GA21 inbred corn lines to Syngenta. Dr. Latham's testimony is not consistent with this legal

requirement. Dr. Latham's opinions assume Monsanto can collect damages for *all* sales of

Agrisure GT. Dr. Latham fails even to consider the fact that a significant amount of the Agrisure

---

[4] The only "Syngenta" entity that entered into such a contract with Advanta is Syngenta Seeds, Inc. (*See* May 10, 2004 Contract, attached as Exhibit A to D.I. 172.)

GT being sold was *not* created from the allegedly wrongfully transferred Garst material. For example, Dr. Latham improperly includes Syngenta's sales of Agrisure GT that was created from inbred lines transferred from Golden Harvest.[5] (Latham Dep. at 47.) Dr. Latham also improperly includes Garst and Golden Harvest sales of Agrisure GT created from their own material. (*E.g.*, Latham Report at p. 40, Table 10.) None of these sales flow from the alleged wrongful conduct that gives rise to Monsanto's tortious interference claim.

In other words, as illustrated by the following chart, there are four different types of Agrisure GT sales, only one of which flow from Monsanto's tortious interference allegations:

| Type of Agrisure GT Sales | Flows from Tortious Interference Allegations? |
|---|---|
| Agrisure GT sold by Syngenta created from Garst GA21 material | Yes |
| Agrisure GT sold by Syngenta created from Golden Harvest GA21 material | No |
| Agrisure GT sold by Garst created from its GA21 material | No |
| Agrisure GT sold by Golden Harvest created from its GA21 material | No |

Given that Monsanto's tortious interference claim is based on an alleged wrongful transfer of Garst GA21 material (Countercl. ¶¶ 77-78), its damages must be limited to sales of Agrisure GT that fit into the first category in the chart. Dr. Latham, however, includes sales from *all four categories* in his damages calculations, without making any attempt to determine the amount of sales in each category. (*E.g.*, Latham Dep. at 47.)

---

[5] Monsanto has not asserted any claim against Syngenta based on the transfer of Golden Harvest material. (*See* Countercl. ¶¶ 65-80.) It is thus improper to include sales of Agrisure GT created from that material in a damages calculation.

This is not an insignificant problem.  By including sales of Agrisure GT not created from

the allegedly wrongfully transferred Garst GA21 material, Dr. Latham greatly inflates

Monsanto's damages. ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

██████████████████████

Dr. Latham's testimony should be excluded for his failure to fit his analysis to the

damages legally recoverable by Monsanto for its tortious interference claim.  *See supra* at p. 7-8

(citing cases excluding expert testimony that addressed damages that were not recoverable).

### B.    Dr. Latham's Testimony Should be Excluded Because it Calculates Damages that Monsanto is Contractually Barred from Collecting

Dr. Latham's testimony also does not "fit" the case because he calculates damages that

Monsanto cannot collect as a matter of law.  Monsanto alleges that Syngenta tortiously interfered

with a Garst-Monsanto GA21 License Agreement.  (Countercl. ¶ 78.)  That license agreement

contains the following limitation of liability provision:



Garst-Monsanto GA21 License Agreement, § 8.04 (Appendix Ex. 5).

When parties to a contract expressly limit the amount or type of damages either party

could recover in future disputes related to that contract, it would be unjust to allow one party to

circumvent those bargained-for provisions (that protected all contracting parties) simply by filing

a tortious interference action in lieu of a breach of contract action.  *See, e.g., Western Oil & Fuel*

*Co. v. Kemp*, 245 F.2d 633, 644 (8th Cir. 1957) (limiting the "measure of damages against the parties inducing the breach [i.e. the parties guilty of tortious interference]" to the maximum amount provided in the contract); *Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.*, 45 F. Supp. 2d 1164, 1203-04 (D. Kan. 1999) ("[A]ny recovery plaintiffs could obtain under their tortious interference with contract claims is limited to the liquidated damages specified in the employment contracts."); *Memorial Gardens, Inc. v. Olympian Sales & Mgmt. Consultants*, Inc., 690 P.2d 207, 212 (Colo. 1984) (finding defendant guilty of tortious interference with a contract but awarding no damages because contract specified the maximum damages recoverable and plaintiff had already collected that amount in breach of contract action); *see also Brown v. SAP America, Inc.*, No. 98-507-SLR, 1999 WL 803888, at *10 (D. Del. Sept. 13, 1999) ("[C]ourts routinely enforce limitation of liability clauses negotiated between sophisticated parties.") (citing *Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195, 203-04 (3d Cir. 1995)).

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████  (App. Ex. 5, § 8.04.) Thus,

Monsanto cannot recover any of the damages measured by Dr. Latham for its tortious interference claim, and his testimony should be excluded for its failure to "fit" the case. *See supra* at p. 7-8 (citing cases excluding expert testimony that addressed damages that were not recoverable).

---

[6] Monsanto does not seek damages directly caused by the act of breach/interference (the allegedly wrongful transfer of GA21 material), but instead claims harm from an eventual consequence of that act (Syngenta's sale of Agrisure GT created from that material). *See, e.g., Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 893 (4th Cir. 1992) ("Consequential damages are generally defined as '[s]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act.'") (quoting *Black's Law Dictionary* 390 (6th ed. 1990)).

C.    **Dr. Latham's Testimony Concerning Disgorgement of Counter-Defendants' Profits Should be Excluded Because Monsanto is not Legally Entitled to Such Damages**

Dr. Latham's testimony concerning "disgorgement" or "unjust enrichment" as a measure of damages does not "fit" the case and should be excluded for an additional reason:  Monsanto is not legally entitled to disgorgement of Counter-Defendants' profits.

Courts have generally held that disgorgement of the alleged wrongdoer's profits is not an appropriate remedy for tortious interference.  *See, e.g., American Air Filter Co. v. McNichol*, 527 F.2d 1297, 1300 (3d Cir. 1975) (noting that "the defendant's profits are not necessarily equivalent to the plaintiff's losses," that the "defendant's profit margin may be higher than plaintiff's for any number of reasons-e.g., product more efficiently made or distributed," and that to "compel defendant to disgorge these profits could give plaintiff a windfall"); *Developers Three v. Nationwide Ins. Co.*, 582 N.E.2d 1130, 1136 (Ohio 1990) (the "correct measure of damages in [a] tortious interference action is the plaintiff's loss . . . that arises out of the tortious interference, not the defendant's gain"); *Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Distrib. Co.*, 734 S.W.2d 322, 325 (Tenn. 1987) ("[G]enerally the lost profit element of damage [for tortious interference] must be measured by the loss sustained by the plaintiff's business and not by its effect upon defendant's business.").

This rule is consistent with tort law generally, which "attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort." Restatement (Second) of Torts § 901, cmt. a (1979) ("In determining the measure of compensation, . . . the law of torts ordinarily does not measure its recovery as do the rules based upon unjust enrichment, on the benefit received by the defendant.").  Indeed, it is likely for this reason – i.e., that the "benefit received by the defendant" is not necessarily a measure of the plaintiff's harm – that the typical measure of damages for tortious interference is the *plaintiff's*

13

lost profits. *See, e.g., Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1124 (4th Cir. 1995) ("[T]he proper measure of the plaintiff's damages [for tortious interference] is the present value of lost profits resulting from the defendant's actions."); *Korpacz v. Women's Professional Football League*, No. Civ.A. 04-10735, 2006 WL 220762, at *3 (D.Mass. Jan. 27, 2006) ("[L]ost profits [are] the usual measure of damages in a breach of contract and tortious interference actions.").[7]

It would be particularly inappropriate to measure Monsanto's damages by the profits earned by Counter-Defendants given that Monsanto's lost profits are not difficult to measure. *See Certified Labs. of Tex., Inc. v. Rubinson*, 303 F. Supp. 1014, 1025 (E.D. Pa. 1969) (using defendant's profits as the measure of damages only after finding evidence of plaintiff's lost profits deficient). Monsanto's lost profits are easily measured by multiplying Counter-Defendants' relevant unit sales times the profit or royalty Monsanto would have earned if units of its competing product had been sold instead. ██████████████████

████████████████████████████████████

████████████████████████████████████

██████████ Disgorgement is not an appropriate remedy for Monsanto's tortious interference claim because Monsanto's damages can be (and have been) easily calculated.

Dr. Latham's testimony concerning disgorgement or unjust enrichment should be excluded for failing to "fit" the case as required by *Daubert*. *See supra* at p. 7-8 (citing cases excluding expert testimony that addressed damages that were not recoverable).

---

████████████████████████████████████████

## II.    DR. LATHAM'S TESTIMONY ON DISGORGEMENT SHOULD BE EXCLUDED BECAUSE HIS METHODOLOGY IS UNRELIABLE

To determine whether an expert's testimony is reliable, *Daubert* requires courts to "assess whether the expert relied on data reasonably used by economic experts and had good grounds to rely on such data in drawing conclusions." *Total Containment, Inc. v. Dayco Prods., Inc.*, No. Civ.A.1997-CV-6013, 2001 WL 1167506, at *4 (E.D. Pa. Sept. 6, 2001) (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (where expert "testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline'") (quoting *Daubert*, 509 U.S. at 592). "[I]t is the burden of the party offering the expert scientific testimony to demonstrate reliability by a preponderance of the evidence." *In re TMI Litigation*, 193 F.3d 613, 705 (3d Cir. 1999) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

Dr. Latham's testimony on "disgorgement" or "unjust enrichment" – the profits Counter-Defendants earned on sales of Agrisure GT – should be excluded as unreliable because Dr. Latham:  (1) performed an improper "apples and oranges" comparison by equating two 2003 estimates of different business case values with Counter-Defendants' profits; (2) relied on data that he testified he did not understand; and (3) failed to use actual data.



*See, e.g., Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("[E]xpert testimony should be excluded if it is . . . in essence an 'apples and oranges comparison.'"); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984) (excluding report that compared the discounted present value of contributions with party's undiscounted consumption because "such an 'apples and oranges' comparison simply cannot withstand scrutiny"); *Lantec, Inc. v. Novell, Inc.*, No. 2:95-CV-97-ST, 2001 U.S. Dist. LEXIS 24816, *12 (D. Utah Feb. 13, 2001) (holding that

16

mixing U.S. figures and worldwide figures together in calculating market share "by itself renders [the expert's] figures unreliable").[8]

Total Containment, Inc. v. Dayco Prods., Inc., No. Civ.A.1997-CV-6013, 2001 WL 1167506 (E.D. Pa. Sept. 6, 2001) is directly on point. In that case, the same Dr. Latham whose testimony is at issue in this motion submitted an expert report on behalf of TCI purporting to calculate lost profits in the "jobber market" for pipes (which was separate from the "major oil" market for pipes). Id. at *2. To determine the market share of one of TCI's competitors in this market – a necessary part of the calculation – Dr. Latham relied on sales data from a Dun & Bradstreet report. Id. at *6. The Court found Dr. Latham did not have "good grounds" for his testimony because the Dun & Bradstreet report did not indicate if its sales data was for the "major oil or jobber, national or international" markets. Id. at *6-7. The Court thus excluded Dr. Latham's testimony, holding that "comparing the [competitor] sales data reported by Dun and Bradstreet with TCI's sales within the jobber market could lead to the sort of 'apples and oranges' comparison" that courts have rejected. Id. As a separate ground for its decision, the court also faulted Dr. Latham for relying on a prediction of customer retention "with no explanation made as to why that is a reasonable assumption" instead of calculating that figure using available sales data. Id. at *7.

---

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

See, e.g., Lantec, 2001 U.S. Dist LEXIS 24816 at *12 (excluding report for expert's failure to independently verify the accuracy of the data on which he relied).



███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████

        ██████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████

Thus, even apart from the "apples and oranges" problem, Dr. Latham's disgorgement testimony should be struck as unreliable given that Dr. Latham was incapable of providing sufficient justification for his decision to ignore actual data in favor of cherry-picked projections that he testified he did not understand. *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 207

---

[9] Even if it were true, the "missing data" justification would not provide a credible reason for Dr. Latham to turn to a methodology that involved picking two unrelated 2003 estimates that he did not understand and proclaiming them to be the range of Counter-Defendants' disgorgement. As the court noted in *Total Containment*, "if relevant data is simply unavailable," an expert has "to think hard about what potential methodology [to] employ" and cannot use the absence of certain data as an excuse to turn to "a methodology that on its face just uses data that's unsupported, untested, and unreliable." *Total Containment*, 2001 WL 1167506 at *7 (quoting with approval another expert's testimony).

F.3d 1039, 1057 (8th Cir. 2000) (excluding economic expert's testimony that failed to incorporate relevant data into his analysis); *JMJ Enters., Inc., v. Via Veneto Italian Ice, Inc.*, No. 97-CV-0652, 1998 U.S. Dist LEXIS 5098, at *22 (E.D. Pa. Apr. 15, 1998) (holding expert's testimony on damages unreliable where it was "based on an unrealistic sales projection").

## III.    DR. LATHAM'S TESTIMONY THAT SYNGENTA'S CONDUCT WAS "WILLFUL" SHOULD BE EXCLUDED BECAUSE OF HIS FAILURE TO SUBSTANTIATE THAT OPINION

Dr. Latham's testimony that Syngenta's conduct was "willful" lacks any basis in his report and should be excluded. (Latham Report ¶ 66.)



Courts routinely exclude expert testimony where, as here, it is unsupported by data or analysis. *See, e.g., Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) ("[B]ecause [the expert's] affidavits provide no rationale for his conclusions, appellants are asking that we take their expert's 'word for it.' We cannot.") (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995)), *cert. denied*, 126 S. Ct. 338; *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) ("An expert must substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless."); *Toole v. Toshin Co.*, No. 00-CV-9215, 2004 WL 2202580, at *3 (W.D.N.Y. Sept. 29, 2004) ("The complete absence of any apparent methodology or reasoning, even hypothetical or conceptual, renders Mr. Montefusco's bare conclusion with

respect to the machine's layout completely unreliable. Accordingly, Mr. Montefusco is precluded from offering this testimony at trial.").

## IV.    DR. LATHAM'S TESTIMONY IS MORE PREJUDICIAL THAN PROBATIVE AND THUS SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 403

Expert testimony, even if it "fits" a case and is reliable, may be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."); *United States v. Downing*, 753 F.2d 1224, 1242-43 (3d Cir. 1985) ("[E]ven if the proffered evidence satisfies Rule 702, the district court may decide nonetheless to invoke Rule 403 to exclude the evidence if the court finds its probative value to be substantially outweighed by other dangers, e.g., confusion of the issue or waste of time.").

Dr. Latham's testimony should be excluded under Rule 403. The references in his report to claims and allegations that this Court has dismissed are prejudicial to Syngenta and would mislead and confuse the jury. ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Moreover, Dr. Latham's testimony will allow Monsanto to leverage a narrow tortious interference claim into a wide-ranging attack on Syngenta based on allegations of wrongdoing that this Court has held do not constitute wrongdoing as a matter of law. *See, e.g., Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.*, 73 F. Supp. 2d 997, 1013 (N.D. Iowa 1999) (excluding damages report under Rule 403 that was not tailored to the legal claim at issue, despite the fact it would be "marginally relevant," because the resulting disputes would be "confusing and time-consuming" and would "distract the jury from the central issue in the case"); *Adkins Adjustment Serv.*, 2002 WL 32026151 at *2 (excluding report that did not provide the correct measure of damages and noting that "[e]ven if such testimony were relevant, the probative value of such flawed evidence is substantially outweighed by the danger of unfair prejudice, misleading the jury and confusion of issues"); *cf. also Herman Schwabe, Inc. v. United Shoe Mach. Corp.*, 297 F.2d 906, 912-13 (2d Cir. 1962) ("When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out.") (quoting *Shepard v. United States*, 290 U.S. 96, 104 (1933)).  Dr. Latham's testimony should thus be excluded under Rule 403.

## CONCLUSION

For these reasons, Syngenta respectfully requests that this Court grant Syngenta's motion to exclude the expert report and testimony of Dr. William R. Latham. A proposed order is attached hereto for the Court's convenience.

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*Karen E. Keller*

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Syngenta Seeds, Inc., Syngenta
Corporation, Syngenta Biotechnology, Inc.,
Advanta USA, Inc., Garst Seed Company, and
Golden Harvest Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: October 13, 2006

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on October 17, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on October 17, 2006, copies of the foregoing document were served by hand delivery on the above listed counsel and on the following non-registered participants as indicated below:

### BY E-MAIL AND FEDERAL EXPRESS

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen E. Keller*

Karen E. Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Defendants*

DB01:1611981.3