IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONSANTO COMPANY, *et al*, | ) |
| | ) C.A. No. 04-305-SLR |
| Plaintiffs, | ) (Consolidated) |
| | ) |
| v. | ) **PUBLIC VERSION** |
| | ) |
| SYNGENTA SEEDS, INC., *et al*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STAY**

Of COUNSEL:

Peter E. Moll
Scott Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Attorney for MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC

Dated: October 18, 2006
Public Version Dated: October 25, 2006
757767 / 28128

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 2

I. SYNGENTA INGORES THAT THE ANTITRUST CASE HAS CHANGED, BOTH PROCEDURALLY AND SUBSTANTIVELY, FROM WHEN MONSANTO MADE ITS PREVIOUS MOTION ........................ 2

    A. With the Dismissal of Count III, The Issues Now On Appeal Directly Impact All of the Remaining Counts of the Second Amended Complaint ........................................................................................... 2

    B. The Instant Motion Only Seeks The Stay of the Trial Pending the Resolution of the Issue Before the Federal Circuit ............................... 4

II. SYNGENTA IS ATTEMPTING TO OVERPLAY ITS CLAIM OF PREJUDICE .................................................................................................... 4

    A. Syngenta's Recent Performance Belies its Claim of Prejudice ................. 4

    B. Many of Syngenta's Factual Allegations Are No Longer Relevant ........................................................................................................ 6

    C. Prejudice to Syngenta, If Any, Would Be Minimal Because the Requested Stay Would Be of Limited Duration ........................................ 6

III. A STAY AVOIDS THE POTENTIAL OF HAVING HAVING TO RETRY THE ANTITRUST CASE ................................................................... 7

CONCLUSION ......................................................................................................................... 8

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 2

I. SYNGENTA INGORES THAT THE ANTITRUST CASE HAS CHANGED, BOTH PROCEDURALLY AND SUBSTANTIVELY, FROM WHEN MONSANTO MADE ITS PREVIOUS MOTION ........................ 2

    A. With the Dismissal of Count III, The Issues Now On Appeal Directly Impact All of the Remaining Counts of the Second Amended Complaint ........................................................................................... 2

    B. The Instant Motion Only Seeks The Stay of the Trial Pending the Resolution of the Issue Before the Federal Circuit ............................... 4

II. SYNGENTA IS ATTEMPTING TO OVERPLAY ITS CLAIM OF PREJUDICE .................................................................................................... 4

    A. Syngenta's Recent Performance Belies its Claim of Prejudice ................. 4

    B. Many of Syngenta's Factual Allegations Are No Longer Relevant ........................................................................................................ 6

    C. Prejudice to Syngenta, If Any, Would Be Minimal Because the Requested Stay Would Be of Limited Duration ........................................ 6

III. A STAY AVOIDS THE POTENTIAL OF HAVING HAVING TO RETRY THE ANTITRUST CASE ................................................................... 7

CONCLUSION ......................................................................................................................... 8

# TABLE OF AUTHORITIES

## CASES

*Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.*,
   227 F.3d 62 (3d Cir. 2000) ................................................................................. 3

*E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.*,
   720 F. Supp. 373 (D. Del. 1989) .......................................................................... 7

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936) ............................................................................................. 7

*SmithKline Beecham Corp. v. Apotex Corp.*,
   No. 99-CV-4304, 2004 U.S. Dist. LEXIS 13907 (E.D. Pa. July 16, 2004) ...... 4, 7

This case sits in a dramatically different posture, both procedurally and substantively, than when Monsanto previously moved for a stay, as the Court recognized when it raised the issue *sua sponte* at the June 27, 2006 hearing. (D.I. 474 – Hearing Tr. 36). Substantively, Syngenta has now dropped its allegations that Monsanto attempted to monopolize the foundation seed market and, thus, the remaining counts in the Second Amended Complaint (D.I. 124) are directly impacted by the issues now on appeal. Procedurally, the stay at issue is far more limited, seeking only to stay the trial, not the entire case, and only until resolution of the appeal.

Monsanto requests this limited stay because the appeal of this Court's decision on the Shah and Lundquist patents affects all of Syngenta's remaining claims and a reversal by the Federal Circuit on *either* patent would result in a retrial of the entire antitrust case. The Monsanto patents impact far more than the sham patent allegations of Count I. The validity and infringement of those patents determine whether Syngenta has any right to commercialize GA21 and, thus, whether it has *any* standing to bring Count I – its claim for monopolizing the alleged glyphosate-tolerant trait market. The patent case also affects Syngenta's claim in Count II because that claim includes stacked traits incorporating GA21. Finally, the patent case will determine Syngenta's claim in Count IV, which alleges false statements made by Monsanto, because that claim depends entirely on Syngenta's assumption that Monsanto lacks patent rights to GA21. Syngenta's suggestion that the Federal Circuit appeal has limited effect on the antitrust case is no longer applicable.

As Syngenta downplays the impact of the patent appeal, it exaggerates the prejudice a stay would cause. As confirmed by Syngenta's public statements, Syngenta is performing exceedingly well in the marketplace and its recently established licensing business has been successful in its first year of operation, propelling growth in its corn and soy seed business. Syngenta's Greenleaf Genetics licensing arm has entered into a joint venture with Pioneer – the largest seed company in the United States. Syngenta also

ignores the prejudice both to the Court and to the parties in retrying the antitrust cases, a result that would be required by a reversal at the Federal Circuit of either of the two patents now on appeal.

Due to the significant effect of the patent case on Syngenta's claims, and the lack of any real prejudice to Syngenta, Monsanto requests that the Court grant its motion to stay the trial of the antitrust cases pending the resolution of the patent issues now on appeal to the Federal Circuit.

## ARGUMENT

### I. SYNGENTA IGNORES THAT THE ANTITRUST CASE HAS CHANGED, BOTH PROCEDURALLY AND SUBSTANTIVELY, FROM WHEN MONSANTO MADE ITS PREVIOUS MOTION

#### A. With the Dismissal of Count III, The Issues Now On Appeal Directly Impact All of the Remaining Counts of the Second Amended Complaint

Syngenta tries to downplay the effect of the patent case by characterizing it as affecting solely the "sham patent" issues and asserting that nothing has changed from when this Court first entertained Monsanto's motion to stay the entire case. (D.I. 494 – Opp. Br. 6). But the antitrust action sits in a significantly different substantive posture than when Monsanto previously moved for a stay. Syngenta has now dropped its allegations regarding Monsanto attempting to monopolize the foundation seed market, Count III of the Second Amended Complaint.

As a result, the patent appeal affects far more than the sham patent issues and, in fact, reaches all of the remaining allegations in the antitrust action. The resolution of the patent case, for example, directly impacts the viability of all of Count I which alleges monopolization of the glyphosate-tolerant market and the stacked trait submarket. (D.I. 124 – Second Am. Complt. ¶¶ 173-81). This very claim is the center of Syngenta's entire case and the patent case will determine whether Syngenta can even bring that claim.

2

Syngenta's only glyphosate-tolerant trait is GA21. If it cannot lawfully commercialize GA21, Syngenta does not have a glyphosate-tolerant trait and, thus, has no standing to bring Count I. *See Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 77 (3d Cir. 2000).

The patent case also directly impacts Count II claiming that Monsanto monopolized the alleged market for the ECB-resistant trait and the alleged submarket for stacks containing ECB-resistance. Syngenta could stack its ECB-resistant trait only with GA21 – it has no other commercial traits. Thus the patent case affects the claimed submarket involving stacks, as Syngenta's counsel conceded. (D.I. 59 – Hearing Tr. 8:23-25, 9:12:14).

Finally, the resolution of the issues on appeal directly impact Count IV of Syngenta's Complaint. In that claim, Syngenta accuses Monsanto of making false statements. Each statement that Syngenta identifies concerns whether Syngenta infringed Monsanto's patents:

- Syngenta could not "lawfully commercialize" GA21;
- Syngenta's GA21 sales were "unauthorized";
- Selling GA21 requires a license from Monsanto; and
- Syngenta does not have a license from Monsanto to sell GA21.

(Second Am. Cmplt. ¶ 201). The resolution of the issues on appeal impacts whether those statements are true and, thus, whether Syngenta can prevail on Count IV.[1]

In short, Syngenta's claim that a resolution of the patent appeal will have minimal effect on the antitrust claim is simply not realistic.

---

[1] In fact, Prof. Gilbert ■■■■■■■■■■■■■■■■

3

### B. The Instant Motion Only Seeks The Stay of the Trial Pending the Resolution of the Issue Before the Federal Circuit

Syngenta ignores that the procedural posture of this case and the stay sought are substantially different that the prior motion entertained by the Court. Monsanto's prior motion to stay proposed that the Court stay the entire case, including discovery, until the patent case was resolved in its entirety. (D.I. 53 – April 5, 2005, Mot. to Stay). Monsanto's present motion seeks a much more limited stay. Fact discovery and expert discovery are closed. Monsanto is not seeking a stay of any of the pretrial matters and, in fact, respectfully suggests the parties should proceed with all pretrial matters, including summary judgment motions, identification of witnesses, depositions of witnesses not previously identified, exchange of exhibit lists and objections thereto, exchange of deposition designations and objections thereto, and the filing of the pretrial order. Monsanto seeks only to stay the trial until the Shah and Lundquist appeal – not the entire patent case – is resolved.

## II. SYNGENTA IS ATTEMPTING TO OVERPLAY ITS CLAIM OF PREJUDICE

### A. Syngenta's Recent Performance Belies its Claim of Prejudice

Syngenta argues that a stay will prejudice it because it will be subject to Monsanto's alleged anticompetitive conduct during the stay. Syngenta's argument assumes the allegations in its Second Amended Complaint to be true, but Syngenta cites no authority for granting a presumption in its favor. *See SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, et al., 2004 U.S. Dist. LEXIS 13907, at *30 (E.D. Pa. July 16, 2004) (disregarding "overstated" claims of prejudice not supported by facts).

Nor do the facts support Syngenta's claim that Monsanto's actions have impaired Syngenta's corn seed and trait licensing businesses. Nowhere in its public filings does Syngenta suggest that it is having difficulty in the corn seed market due to anything done

4

by Monsanto. In fact, Syngenta's annual report touted the success of its corn seed business:

> Sales of corn and soybean grew across all regions: GARST® and GOLDEN HARVEST® made a successful first year contribution in the USA and market share was maintained; growth excluding these acquisitions was 20 percent.[2]



[3] Indeed, Greenleaf Genetics has become a joint venture between Syngenta and Pioneer, the largest seed company in the United States.

Syngenta's success is not confined to its seed business. Syngenta's most recent annual report demonstrates that Syngenta as a whole is thriving. The highlights include:

- Syngenta's sales increased 11% to $8.1 billion;
- Syngenta's North American seed sales reached $903 million;
- Syngenta's earnings per share increased 31 percent;
- Syngenta's net income increased $156 million to $779 million; and
- Syngenta returned $800 million to its shareholders.[4]

Syngenta expects to continue this success with double-digit growth this year fueled, in part, by its transgenic corn seed business:

> Continuing market share gains and the exciting potential of the pipeline in Crop Protection, *the increasing promise of our biotechnology traits in US corn seeds* and the further expansion of Professional Products, coupled with continued cost discipline, *reinforce our confidence in targeting double digit growth in earnings per share through 2008.*[5]

---

[2] Syngenta Annual Report, at 20, attached as Exhibit A hereto.
[3] The cited testimony is attached as Exhibit B hereto.
[4] Syngenta Annual Report, at 1, attached as Exhibit A.
[5] Statement of Michael Pragnell, CEO of Syngenta AG, *reprinted in* Syngenta press release, dated July 26, 2006, at 3, attached as Exhibit C hereto.

5

Even if Syngenta was correct that it would be harmed in the marketplace, Syngenta's own expert witness testified .[6] Thus, any prejudice from anticompetitive injury would be remedied by a damages award. *Id.*

### B. Many of Syngenta's Factual Allegations Are No Longer Relevant

Much of the activity that Syngenta complains about no longer occurs. For example, Syngenta alleges that Monsanto imposed *de facto* exclusive agreements and improperly bundled discounts by linking its volume discounts across product lines. (D.I. 124 – Second Am. Cmplt. ¶¶ 49-51, 111-13). But as of March 2005, Monsanto's license agreements no longer contain any linking provision. The proposed stay of these claims therefore could not cause any prejudice to Syngenta.

Similarly, Syngenta alleges that Monsanto improperly told seed companies that Monsanto, and not Syngenta, had rights to market GA21. But Syngenta has aggressively advertised the Court's recent summary judgment ruling in its favor and told potential customers that Syngenta can commercialize GA21. Thus, any ambiguity over Monsanto's rights to GA21 will not affect Syngenta during a stay while the appeal is pending.

### C. Prejudice to Syngenta, If Any, Would Be Minimal Because the Requested Stay Would Be of Limited Duration

Monsanto requests a stay only until the Shah and Lundquist patent issues are resolved on appeal. The stay would be for a limited time, and if the patent appeal takes longer than expected, the Court can lift the stay. Any prejudice would be minimal

---

[6] [redacted]

6

compared to the burden on both parties, and the Court, if the Federal Circuit alters the Court's summary judgment ruling.[7] In that case, the parties could have to retry the entire antitrust case in addition to the patent case. That burden would far outweigh any prejudice claimed by Syngenta.

### III. A STAY AVOIDS THE POTENTIAL OF HAVING TO RETRY THE ANTITRUST CASE

As noted in Monsanto's opening brief, whether to grant a stay lies within "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.*, 720 F. Supp. 373, 384 (D. Del. 1989), *quoting*, *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Thus, the Court has broad discretion to grant a stay that could prevent wasting judicial resources.

If the Federal Circuit reverses the Court's summary judgment on either validity or infringement after the antitrust case goes to trial, it is highly likely that the entire antirust case would have to be retried. The evidence Syngenta intends to offer at trial regarding its alleged rights to produce and market a GA21 product will no doubt impact the jury's consideration of all of the claims at issue and create danger of unfair prejudice. The Court will not be able to remedy the impact once the horse is let out of the barn. That risk justifies granting a stay until the patent appeal is resolved. *See, e.g., SmithKline Beecham*, 2004 U.S. Dist. LEXIS 13907, at *25-28 (issuing a stay while patent appeal was pending in order to avoid the risk of unnecessary litigation).

---

[7] Syngenta refers to the "small risk" of the Federal Circuit altering the summary judgment ruling. (D.I. 494 – Opp. Br. 12). But the Federal Circuit is an extremely active court and its reversal rate is approximately fifty percent.

7

## CONCLUSION

For the foregoing reasons, Monsanto respectfully requests that the Court stay this action until the issues before the Federal Circuit on the Shah and Lundquist patents are resolved.

Respectfully Submitted,

POTTER ANDERSON & CORROON, LLP

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated: October 18, 2006
Public Version Dated: October 25, 2006
757767 / 28128

By: /s/ David E. Moore
   Richard L. Horwitz (#2246)
   David E. Moore (#3983)
   Hercules Plaza, 6th Floor
   1313 N. Market St.
   Wilmington, DE 19801
   (302) 984-6000
   (302) 658-1192 facsimile
   rhorwitz@potteranderson.com
   dmoore@potteranderson.com

Attorney for MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

  I, David E. Moore, hereby certify that on October 25, 2006, the attached document was hand delivered on the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

  I hereby certify that on October 25, 2006, I have Electronically Mailed the foregoing document(s) to the following non-registered participants:

| | |
|---|---|
| Richard F. Schwed<br>Thomas A. McGrath III<br>Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022-6069<br>rschwed@shearman.com | Heather Lamberg Kafele<br>Shearman & Sterling LLP<br>801 Pennsylvania Avenue, N.W.<br>Suite 900<br>Washington, D.C. 20004<br>hkafele@shearman.com |

              */s/ David E. Moore*
              Richard L. Horwitz
              David E. Moore
              Potter Anderson & Corroon LLP
              Hercules Plaza – Sixth Floor
              1313 North Market Street
              Wilmington, DE 19801
              (302) 984-6000
              rhorwitz@potteranderson.com
              dmoore@potteranderson.com

732377