IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*,           )
                                      )
                    Plaintiffs,       )
                                      )
            v.                        )          C.A. No.: 04-305-SLR (Consol.)
                                      )
SYNGENTA SEEDS, INC., *et al.*,       )
                                      )          **Redacted Version -**
                    Defendants.       )          **Publicly Filed**
                                      )

## ANSWERING BRIEF IN OPPOSITION TO MONSANTO'S MOTION TO EXCLUDE DR. RICHARD J. GILBERT'S TESTIMONY ON DAMAGES

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: November 3, 2006

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

NATURE OF THE PROCEEDINGS AND SUMMARY OF ARGUMENT................................ 1

STATEMENT OF FACTS .................................................................................................. 2

      A.    Dr. Gilbert's Qualifications ................................................................ 2

      B.    Dr. Gilbert's Analysis and Conclusions............................................. 2

      C.    Dr. Gilbert's Damages Methodology.................................................. 3

      D.    Monsanto's Challenge ....................................................................... 6

ARGUMENT...................................................................................................................... 6

I.     DR. GILBERT'S TESTIMONY ON DAMAGES IS RELIABLE ...................................... 6

II.    MONSANTO DOES NOT ASSERT A PROPER LEGAL BASIS FOR EXCLUDING
      DR. GILBERT'S TESTIMONY UNDER *DAUBERT*........................................ 13

CONCLUSION................................................................................................................. 17

## TABLE OF AUTHORITIES

### CASES

*Ambrosini v. Labarraque*, 101 F.3d 129 (D.C. Cir. 1996) .............................................................13

*Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946) ...................................................................11

*In re: BRIDGESTONE/FIRESTONE, INC.*, No. IP 00-9374-C-B/S, 2004 WL 315148 (S.D. Ind. Jan. 2004) ..........................................................................................................................................12

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000).....................................15

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).............................................6, 13, 16

*Double H Plastics, Inc. v. Sonoco Products Co.*, 732 F.2d 351 (3d Cir. 1984) ...........................11

*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) ......................................................................6

*Heller v. Shaw Indus., Inc.*, 167 F.3d 146 (3d Cir. 1999)..............................................................14

*Intimate Bookshop, Inc. v. Barnes & Noble, Inc.*, No. 98 Civ. 5564, 2003 U.S. Dist. LEXIS 17231 (S.D.N.Y. Sept. 30, 2003) .................................................................................................14

*N. W. Controls, Inc. v. Outboard Marine Corp.*, 333 F. Supp. 493 (D. Del. 1971) .....................11

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431 (D. Del. 2004) ........................13, 16

*In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3d Cir. 1994) .................................................6

*Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d Cir. 2002) .....................................14, 16

*United States v. Mitchell*, 365 F.3d 215 (3d Cir. 2004).............................................................10, 16

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969) ..........................................11

### MISCELLANEOUS

Fed. R. Evid. 702 Advisory Committee's Note..............................................................................14

P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 391a (2d ed. 2000) ..................................................11

Syngenta Seeds, Inc. ("Syngenta") respectfully submits this answering brief in opposition to the motion filed by Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") to exclude Dr. Richard J. Gilbert's testimony on damages. (D.I. 501.)

## NATURE OF THE PROCEEDINGS AND SUMMARY OF ARGUMENT

Monsanto's motion to exclude Dr. Gilbert's testimony on damages should be denied. Dr. Gilbert constructed a damages model based on a universally accepted methodology: comparing Syngenta's profits "but-for" Monsanto's illegal anticompetitive conduct with Syngenta's "actual" profits in the market affected by that conduct. Monsanto cannot and does not challenge this methodology. Rather, Monsanto argues that the entire damages calculation should be rejected because, according to Monsanto, business plans that provided one input into the model were not reliable. This argument is legally and factually flawed.

As a starting point, Dr. Gilbert's use of the data at issue is fully supported by the record. Testimony by Ron Wulfkuhle – the Syngenta employee responsible for the business plan at issue – demonstrates the accuracy and reliability of the data used by Dr. Gilbert. Monsanto ignores this testimony, and instead cites to a different witness's testimony about the reliability of *different* data that was *not* used by Dr. Gilbert. Moreover, on top of the record evidence, Dr. Gilbert's damage analysis is supported by his separate analysis of the anticompetitive impact of Monsanto's conduct (a portion of his expert report that Monsanto does not challenge or address in its motion). Under these circumstances, there can be no doubt that Dr. Gilbert's report meets the requirement that he must have "good grounds" for his conclusions.

In any event, the challenge put forth by Monsanto is exactly the type that is *not* appropriate for a *Daubert* motion. Criticism of Syngenta's business plans is a proper subject for cross examination and goes to the weight of Dr. Gilbert's (and Mr. Wulfkuhle's) testimony. It is a fundamental principle that these matters are for the jury, not for a *Daubert* motion.

1

## STATEMENT OF FACTS

A.    Dr. Gilbert's Qualifications

Dr. Richard J. Gilbert is a Professor of Economics at the University of California at Berkeley who received his doctorate from Stanford University. He was Chair of U.C. Berkeley's Department of Economics from 2002-2005. He has published numerous articles in academic journals and lectured extensively, including on topics directly related to this case such as intellectual property and competition policy. He served as chief economist in the Antitrust Division of the Department of Justice ("DOJ"). While at the DOJ, Dr. Gilbert led a task force that developed the Antitrust Guidelines for the Licensing of Intellectual Property, which were jointly released by the DOJ and Federal Trade Commission in 1995 and continue in force today as an expression of both agencies' enforcement policies. He also served as President of the Industrial Organization Society and as Vice-Chair of the ABA Antitrust Law Section's Economics Committee. (Expert Report of Professor Richard J. Gilbert dated July 26, 2006 ("Gilbert Report")[1] at 1-2; *see also* Ex. A to the Gilbert Report (Dr. Gilbert's CV).)

B.    Dr. Gilbert's Analysis and Conclusions

Based on his undeniable expertise in economics and antitrust policy, Dr. Gilbert submitted a 134-page expert report in this case that: (1) analyzes the relevant antitrust markets; (2) analyzes Monsanto's anticompetitive conduct and its impact; and (3) "provide[s] an assessment of the reasonably quantifiable damages suffered by Syngenta as a result of Monsanto's anticompetitive acts." (Gilbert Report at 3.) Monsanto has challenged only Dr. Gilbert's testimony on the third point, regarding Syngenta's damages. (Monsanto's Opening

---

[1] The Gilbert Report is attached in full as Exhibit 1 in the accompanying Appendix.

Brief in Support of its Motion to Exclude Dr. Gilbert's Testimony on Damages, D.I. 502 ("Mon. Br.") at 1. 8.)

The bulk of Dr. Gilbert's report is dedicated to analyzing Monsanto's anticompetitive practices and their impact on potential competitors such as Syngenta. (Gilbert Report at 56-122.) This analysis establishes that

REDACTED

Monsanto's *Daubert* motion does not challenge Dr. Gilbert's testimony on any of these issues. (*See* Mon. Br. at 1, 8.)

C.    Dr. Gilbert's Damages Methodology

REDACTED

REDACTED

REDACTED

3

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

D.    Monsanto's Challenge

Monsanto's only challenge to Dr. Gilbert's damages analysis concerns *step two*. (Mon. Br. at 1, 8.) Monsanto's position is that Dr. Gilbert's testimony on damages should be excluded because the downward adjustment in sales in the 2005 business plan may reflect sales lost for reasons other than Monsanto's anticompetitive conduct. (*Id.* at 6-7.)

## ARGUMENT

### I.    DR. GILBERT'S TESTIMONY ON DAMAGES IS RELIABLE

Expert testimony on damages is admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), if the expert is qualified, offers testimony that fits the case, and employs a reliable methodology. *E.g., Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). Exclusion of expert testimony based solely on a criticism of the expert's data or assumptions is appropriate only in the rare case where the flaw is so great that the expert lacks "good grounds" for his conclusions. *See, e.g., In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994) ("[T]he judge should not exclude evidence simply because he or she thinks that there is a flaw in the expert's investigative process, which renders the expert's conclusions incorrect. The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions.").

Monsanto does not challenge Dr. Gilbert's qualifications or the fit between his testimony and the case. Nor does Monsanto challenge Dr. Gilbert's overarching methodology for calculating damages – namely constructing an economic model that compares estimates of Syngenta's profits "but-for" Monsanto's anticompetitive conduct with estimates of Syngenta's "actual" profits given that conduct. Monsanto's challenge relates only to the second step of Dr. Gilbert's analysis:  contending that Dr. Gilbert had no basis for relying on the two business plans

as a starting point for calculating the difference in sales between the "but-for" and "actual" scenarios.[3] (Mon. Br. at 6-7.)

Contrary to Monsanto's assertions, the discovery record in this case provides the necessary "good grounds" for Dr. Gilbert's reliance on the 2004 and 2005 business plans to obtain the "but-for" and "actual" sales volumes used as the input in step two (*see supra*, pp. 3-4) of his damages model.

REDACTED

REDACTED

---

[3] Notably, Monsanto does not identify – or even suggest that there exists – more reliable data on which Dr. Gilbert could have relied.

REDACTED

(*Id.* at 161-62.)

Mr. Wulfkuhle's testimony (which Monsanto completely ignores) supports Dr. Gilbert's conclusion that the difference in sales projections are attributable to Monsanto's anticompetitive conduct. This testimony alone provides more than the "good grounds" necessary for Dr. Gilbert to rely on the business plans.

Dr. Gilbert's reliance on the two business plans is further supported by his separate analysis of the impact of Monsanto's anticompetitive conduct (testimony that Monsanto has not challenged). (*See* Gilbert Dep. at 338.

REDACTED

Importantly, Dr. Gilbert is not merely a "damages" expert. He also analyzes, based on a thorough review of the record in this case, the economic impact of Monsanto's anticompetitive conduct. Monsanto ignores the plain relevance of this additional analysis to his damages opinion. Dr. Gilbert simply did not analyze Syngenta's damages in a vacuum. Rather, his damages opinion sits atop a foundation of all his other analysis in the case. Notably, *Monsanto does not challenge that foundation.* In sum, Dr. Gilbert's opinion on damages is supported by the rest of his 134-page report, in which Dr. Gilbert employs his undeniable expertise to provide a robust analysis of the impact of Monsanto's anticompetitive conduct.

Given that backdrop, Dr. Gilbert testified that he approached the actual quantification of damages as follows:

REDACTED

REDACTED

(Gilbert Dep. at 334, 338; *see also* Gilbert Report at 125-29.)

REDACTED

(*E.g., id.* at 117-18, 126, Figure 9A.) It was thus entirely proper for Dr. Gilbert to rely on data from the Syngenta business plans in constructing his damages model.

Dr. Gilbert's testimony is fully consistent with, and supports, his damages opinion. Contrary to Monsanto's suggestions, Dr. Gilbert did not blindly and baselessly rely on unsupported business plans. Indeed, even the passages quoted by Monsanto – if viewed in their entirety rather than as selectively excerpted in Monsanto's brief – demonstrate this fact. For example, Monsanto quotes the following testimony:

REDACTED

9

(Mon. Br. at 2.) But Monsanto omits the remainder of the answer:

REDACTED

REDACTED

In short, Monsanto's accusation that Dr. Gilbert "blind[ly] accept[ed]" the sales figures in the business plans (Mon. Br. at 7) appears – at its core – to be based on an argument that an expert can never rely on business plans unless he independently recreates the numbers from scratch. That is not the law. Rather, the expert need only have "good grounds" for his testimony. *See, e.g., United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) ("Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process–competing expert testimony and active cross-examination–rather than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.").

Dr. Gilbert's report easily satisfies the requirement that he have "good grounds" for his testimony, especially in light of the fact that Syngenta's burden in proving antitrust damages is

merely to "make a just and reasonable estimate of the damage based on relevant data." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946); *see also Double H Plastics, Inc. v. Sonoco Products Co.*, 732 F.2d 351, 361 (3d Cir. 1984) ("[T]he practical difficulties facing antitrust plaintiffs attempting to show what profits they would have made had sales not been foreclosed by illegal conduct has prompted the Supreme Court to observe: '[D]amage issues in these cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts.'") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123-24 (1969));[5] *N. W. Controls, Inc. v. Outboard Marine Corp.*, 333 F. Supp. 493, 524 (D. Del. 1971) ("It is settled law that, while the fact of damage arising from a civil antitrust violation must be definitely attributable to the wrong alleged without any element of uncertainty, a dollar value may be assigned to such an injury even if some uncertainty exists as to the amount. Thus, a fact-finder may make a just and reasonable estimate of damages based on relevant data because the fact-finder is allowed to act upon probable and inferential as well as direct and positive proof. Damages in such cases are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis is afforded although the result may be only approximate."); P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 391a (2d ed. 2000) ("The

---

[5] The Third Circuit in *Double H Plastics*, 732 F.2d at 362, further elaborated:

> Our willingness to accept a degree of uncertainty in these cases rests in part on the difficulty of ascertaining business damages as compared, for example, to damages resulting from a personal injury or from condemnation of a parcel of land. The vagaries of the marketplace usually deny us sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation. But our willingness also rests on the principle articulated in cases such as *Bigelow*, that it does not "come with very good grace" for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted.

11

courts have long recognized that antitrust damages cannot be measured with absolute precision.").[6]



REDACTED

---

[6] A *Daubert* inquiry cannot be divorced from the legal requirements the party proffering the expert must satisfy and the burden of proof at trial. *See. e.g., In re: BRIDGESTONE/FIRESTONE, INC.*, No. IP 00-9374-C-B/S. 2004 WL 315148, at *3 (S.D. Ind. Jan. 2004) ("We cannot apply the *Daubert* factors in a vacuum [because] whether the expert testimony comports to the *Daubert* standard must be determined according to the facts and law of each case.").

REDACTED

REDACTED

This testimony (to the extent it addresses sales and is relevant at all) thus supports Dr. Gilbert's opinion in that it says that the 2005 plan reflected "constraints in the marketplace" – i.e.. Monsanto's anticompetitive conduct.

II.    MONSANTO DOES NOT ASSERT A PROPER LEGAL BASIS FOR EXCLUDING DR. GILBERT'S TESTIMONY UNDER *DAUBERT*

Even if Monsanto's criticism of Dr. Gilbert's damages analysis had any support in the record. that argument would challenge the *weight* that should be accorded to Dr. Gilbert's testimony. not its *admissibility. See. e.g., Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 441-42 (D. Del. 2004) (rejecting *Daubert* challenge to damages expert that was based on argument that he "relie[d] too heavily" on certain facts and "improperly ignored" others, and explaining that this argument "practically by its terms [is] applicable to the weight that should be given [the expert's] opinion. not its admissibility"); *see also Ambrosini v. Labarraque*, 101 F.3d 129, 131 (D.C. Cir. 1996) (finding that the district court's "failure ultimately to distinguish between the threshold question of admissibility and the persuasive weight to be assigned the expert evidence requires reversal and remand"). Indeed, Monsanto's reliance on Travis Dickinson's testimony (*see supra*, p. 12) to prove its case is further evidence that it is raising a factual dispute, not a true *Daubert* complaint about an expert's methodology.

As the Supreme Court stressed in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence. and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596; *see*

13

*also Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination."); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) ("Clearly, the [Supreme] Court envisioned cases in which expert testimony meets the *Daubert* standard yet is 'shaky,' and cases in which admissible expert testimony provides only a 'scintilla' of support for a claim or defense."); Fed. R. Evid. 702 Advisory Committee's Note ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. [Rule 702] is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."). Thus, Dr. Gilbert's testimony – as well as Monsanto's criticism to the extent it has any merit – is properly put before a jury.

The cases cited by Monsanto (Mon. Br. at 4-6) do not alter this conclusion. For example, *Intimate Bookshop, Inc. v. Barnes & Noble, Inc.*, No. 98 Civ. 5564, 2003 U.S. Dist. LEXIS 17231 (S.D.N.Y. Sept. 30, 2003), did not involve a *Daubert* motion – or for that matter any attempt to exclude expert testimony. The issue in that case was whether the plaintiff had sufficient evidence, for the purpose of summary judgment, that its harm was caused by the defendant's conduct. The key to the court's decision was its finding that the plaintiff was incapable of presenting *any* evidence whatsoever – expert or otherwise – that its lost sales were due to the defendant's conduct. *Id.* at *21 (noting that the plaintiff "has provided no evidence, in any form, that defendants' [conduct] . . . was a material cause of its [lost] sales and profits"). Under those circumstances, the court held that the plaintiff's claim could not survive summary judgment. Not only does the instant motion involve a different issue, but, unlike the plaintiff in

14

*Intimate Bookshop*. Syngenta has ample evidence that Monsanto's conduct is the cause of its harm. (*See. e.g.*, Syngenta Letter to Judge Robinson Opposing Summary Judgment, D.I. 438, at p. 3-4, and accompanying exhibits; *supra*, pp. 8-9).

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000), also is inapplicable. That case involved an expert who had made several serious errors, including assuming that the defendant could not permissibly have over 50% market share despite the fact that it had 75% share *prior to* the alleged anticompetitive conduct, and failing to account for several demonstrably relevant market events unrelated to defendant's anticompetitive conduct. *Id.* at 1056-57. Unlike the expert in that case, Dr. Gilbert did not "ignor[e] inconvenient evidence." *Id.* Instead, Dr. Gilbert ensured that his damages analysis reflected economic reality. (*E.g.*, Gilbert Report at 127-28  **REDACTED**  p. 129  ; p. 129-30  **REDACTED**

**REDACTED**

The only "inconvenient evidence" that Monsanto alleges Dr. Gilbert ignored was the deposition testimony of Travis Dickinson. (Mon. Br. at 7.) This allegation, as explained above, is baseless. (*See supra*, p. 12.) Moreover, unlike the damages model in *Concord Boat*, which "did not have the capacity to distinguish between lawful and unlawful market behavior," 207 F.3d at 1046, Dr. Gilbert relied on the particular business plans at issue precisely because of their unique ability to quantify the effects of Monsanto's anticompetitive conduct. (*See supra*, pp. 7-9.) Dr. Gilbert's rigorous and thorough damages model – which makes numerous adjustments to account for various economic realities (*see supra*, pp. 3-5) – can hardly be compared to the error-ridden "calculation" performed in *Concord Boat*.

The proper place for Monsanto's attacks on Dr. Gilbert is in a courtroom, in front of a jury. There, Monsanto can cross-examine Dr. Gilbert, Mr. Wulfkuhle and Mr. Dickinson, as well as present its own competing expert report on damages. Both sides can show the jury the supporting evidence for their respective calculations. That adversary process, as the cases make clear, is the normal and appropriate way of handling expert testimony. *E.g., Daubert*, 509 U.S. at 595; *Stecyk*, 295 F.3d at 414; *Oxford Gene*, 345 F. Supp. 2d at 441-42. Monsanto's criticism – even if it had merit – simply would not suffice to render Dr. Gilbert's damages analysis so unreliable that exclusion under *Daubert* is proper. *See, e.g., Mitchell*, 365 F.3d at 244 (expert testimony is admissible merely if its conclusions rest on "good grounds, based on what is known").

## CONCLUSION

For these reasons, Syngenta respectfully requests that this Court deny Monsanto's motion to exclude Dr. Richard J. Gilbert's testimony on damages.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen Keller (No. 4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
Keith R. Palfin
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: November 3, 2006

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on November 3, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on November 3, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY FEDERAL EXPRESS**
>
> Peter E. Moll, Esquire
> John J. Rosenthal, Esquire
> Howrey Simon Arnold & White, LLP
> 1299 Pennsylvania Ave., N.W.
> Washington, D.C. 20004
>
> Susan Knoll, Esquire
> Howrey Simon Arnold & White, LLP
> 1111 Louisiana, 25th Floor
> Houston, TX 77002-5242
>
> Kenneth A. Letzler, Esquire
> Arnold & Porter LLP
> 555 12th Street, N.W.
> Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Defendants