THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al*, | ) | |
| | ) | C.A. No. 04-305-SLR |
| Plaintiffs, | ) | C.A. No. 04-908-SLR |
| | ) | (Consolidated) |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| SYNGENTA SEEDS, INC., *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

**MONSANTO'S STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE
ISSUE TO BE TRIED IN SUPPORT OF A MOTION FOR SUMMARY JUDGMENT ON
COUNTS I AND II REGARDING SYNGENTA'S SHAM PATENT ALLEGATIONS**

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone (202) 783-0800

Dated: February 29, 2008
Public Version Dated: March 7, 2008

853618 / 28128

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Monsanto Company and
Monsanto Technology LLC*

Pursuant to the Court's Order, dated February 11, 2008, Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") file this statement of facts as to which there is no genuine issue to be tried supporting a motion for partial summary judgment on Count I and II of the Third Amended Complaint relating to Syngenta's sham patent allegations.

## SUMMARY OF THE ISSUES

To establish its sham patent litigation claim, Syngenta must prove by **clear and convincing evidence** is that Monsanto's *Shah Action* and *Lundquist Action* were **objectively baseless**, *i.e.*, no reasonable litigant could have expected any chance of its claims in the *Shah Action* or the *Lundquist Action* being found valid based upon the objective facts known when the suits were brought. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures, Indus., Inc.*, 508 U.S. 49, 60, 62-63 (1993).[1]  No substantial evidence exists to support this element of Syngenta's claims.

### I. MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

#### A. Objective Evidence From Which a Reasonable Litigant Could Have Expected More Than a Mere Chance of Prevailing on Syngenta's Enablement Defense to the Shah Patent

##### 1. Presumption of Validity

1. On July 10, 1990, the United States Patent and Trademark Office issued U.S. Patent No. 4,940,835. (MRR 005636 - 661). The Shah Patent was presumed to be valid at the time Monsanto brought the *Shah Action*. 35 U.S.C. § 282.

---

[1] Syngenta must also prove that Monsanto's **subjective intent** in filing both actions was to damage Syngenta's business rather than to protect Monsanto's patent rights. 508 U.S. at 61. But this element of Syngenta' proof would not be the subject of Monsanto's motion for summary judgment.

### 2. Several Hundred Licenses Were Issued Under the Shah Patent, Without a Single Challenge to Their Validity

2. Several hundred seed companies across the United States have entered into licensing agreements with Monsanto, which expressly granted the licensee the rights to use the intellectual property rights set forth in the Shah Patent. (MGA 0058330; MGA 0009238-242; MGA 0053706-709). During the life of those licenses, none of those seed companies ever challenged the validity of the Shah Patent.

3. Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, LLC, Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (all now Syngenta owned companies) were licensees to the Shah Patent. (MGA0058307-44). None ever challenged the validity of the Shah Patent before the *Shah Action*.

### 3. Monsanto's and DEKALB's Prior Success in Enforcing the Shah Patent Against Bayer's GA21 Corn Activities

4. On November 20, 2001, Monsanto filed its original complaint in *Monsanto Co. and Monsanto Tech. LLC v. Aventis CropScience*, SA, C.A. No. 4:01CV01825 in the United States District Court for the Eastern District of Missouri (the "*First Shah Action*"). In the *First Shah Action*, Monsanto alleged that Aventis CropScience S.A. ("Aventis") infringed the Shah Patent. Aventis later changed its name to Bayer CropScience S.A. (hereinafter collectively referred to as "Bayer").

5. One of the Bayer products alleged to infringe the Shah Patent in the *First Shah Action* was GA21 corn.

6. In the *First Shah Action*, Bayer never moved for summary judgment that any of claims 1, 5 or 6 of the Shah Patent (the claims asserted against Syngenta in the *Shah Action*) were invalid under 35 U.S.C. § 112 because corn could not be transformed in 1986.

7. No ruling from the *First Shah Action* suggested that any of claims 1, 5 or 6 of the Shah Patent were invalid under 35 U.S.C. § 112 because corn could not be transformed in 1986.

8. On July 2, 2003, the court in the *First Shah Action* issued its claims construction order construing the claims of the Shah Patent. (Goffney Report, Ex. G).

9. Following the claims construction order, the parties entered into an agreement settling the *First Shah Action*. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

10. Section 3.5 of the Shah License Agreement further provided:

████████████████████████████████████████████████.

11. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

12. After executing the Shah License Agreement, Bayer terminated its activities with regard to GA21 corn in all countries where Shah Patent Rights existed.

13. At no time during the *First Shah Action* did the court rule that the asserted claims of the Shah Patent failed to satisfy the enablement requirement of 35 U.S.C. § 112 because corn could not be transformed in 1986.

3

       **4.**    **Syngenta's Predecessor, Ciba Geigy, Paid for a License Under the Shah Patent**

14. On or about January 11, 1993, ███████████████████████
███████████████████████████████████████████████████████
███.

15. Under the ███████████████████████████████████████
███████████████████.

16. Ciba Geigy is a predecessor of Syngenta.

       **5.**    **Syngenta's Agreement with Bayer to Remove GA21 Material to a "Non-Shah" Country**

17. On October 14, 2002, ███████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████:

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████.

18. ███████████████████████████████████████
███████████████████████████████████████

4

████████████████████████████████████████

████████████████████████████.

### 6. During Prosecution, the PTO Examiner Expressly Considered the Monocot Transformation Enablement Issue, and Found that It Only Applied to the Plant Claims and Not the Asserted Gene Claims.

19. During prosecution of the Shah Patent, the PTO examiner issued an enablement rejection on August 21, 1987 of then-pending claims 22-30 and commented as follows:

> Because gene transfer via Agrobacterium and subsequent plant regeneration has not been demonstrated to be reliable in all plant species (See Goodman et al., page 236 left column) it cannot be assumed that the claimed gene construction would be transferred and expressed in all plant cells. Additionally, not all plants have been demonstrated to be capable of regeneration from single cells or callus tissue.

(Shah PH, CP 100).

20. At the time of the above rejection, pending claims 22-30 were directed to "a method of producing glyphosate resistant plants." (*Id.* at CP 73-74). The examiner did not make the same enablement rejection as to claims 12-16 which recited "a chimeric gene." (*Id.* at CP 71).

21. Following an Amendment by Monsanto, the PTO Examiner issued another enablement rejection on May 16, 1988, as to then-pending claims 61-81 and commented as follows:

> Claims 61-81 are rejected under 35 U.S.C. 112, first paragraph, as the disclosure is enabling only for claims limited to a method for producing dicot plants comprising regeneration from transformed protoplasts and regenerated dicots therein, as per pages 12-64 of the specification. See MPEP 706.03(n) and 706.03(z). Since plant transformation requires cell wall removal for DNA uptake, and since plant regeneration from transformed protoplasts is limited to the dicots (See Goodman et al., pages 52-53) undue experimentation would be required by one of ordinary skill in the

5

        art to obtain plant cell transformation through the cell wall or
        monocot regeneration as claimed.

(*Id.* at CP 140).

22.    On May 16, 1988, pending claims 61-81 recited glyphosate resistant plants and methods for making glyphosate resistant plants. (*Id.* at CP 118-20). The examiner did not make the same above rejection for then-pending claims 31-39 which recited "chimeric genes." (*Id.* at CP 115-16).

23.    On October 26, 1988, Monsanto amended its pending plant claims in the prosecution of the Shah Patent to be limited to dicot plants. (*Id.* at CP 151).

24.    On January 26, 1989, the PTO examiner mailed its notice allowing the Shah Patent claims to issue. Prosecution claims 31-39 issued as claims 1-7 of the Shah Patent, which included claims 1, 5 and 6 – the claims asserted against Syngenta in the *Shah Action*. (*Id.* at CP 164).

25.    Thus, while the PTO examiner expressly considered the enablement issued posed by the unavailability of monocot transformation as of the Shah Patent's filing date during prosecution of the Shah Patent, the PTO examiner never found that this presented enablement issues for the Shah Patent claims that were asserted against Syngenta's GA21 corn products.

      **B.    Objective Evidence that a Reasonable Litigant Needed No Further Investigation Before Bringing Suit on the Shah Patent**

26.    On May 12, 2004, Syngenta issued a press release saying that "it has acquired rights to a commercially successful glyphosate tolerance technology" "called GA21" and that "This transaction gives Syngenta fast-track entry into an important segment of the corn crop protection market." (SYN 000013).

27.    On May 12, 2004, Syngenta also issued another process release saying:

6

> Syngenta also announced today the purchase of glyphosate tolerance technology for corn called GA21 from Bayer CropScience. This purchase, together with the acquisition of Advanta's North American corn and soybean business, will enable Syngenta to market a complete range of biotech input traits in both corn and soybean from 2005. For corn, this will include Bt insect resistance, glyphosate tolerance and corn rootworm resistance.

(SYN 062551-53).

28. █████████████████████████████████████████████
████████████████████████████████████████████████
███████.

29. Monsanto brought an action to enforce its Shah Patent against Syngenta's activities with GA21 corn on May 12, 2004, the same day of the above two press releases. (*Shah Action*, D.I. 1).

30. █████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████.

31. Before May 12, 2004, Monsanto had already engaged in two years of litigation to enforce the Shah Patent against Bayer's activities with GA21 corn. *See* ¶¶ 4-13, *supra*.

32. Before May 12, 2004, Monsanto's Legal Department was familiar with the prosecution history of the Shah Patent, because one of its in-house counsel, Dennis Horner, was the primary prosecuting attorney. (*See, e.g.*, MRR005636).

7

### C. Objective Evidence From Which a Reasonable Litigant Could Have Expected More Than a Mere Chance of Prevailing on the Lundquist Patents

#### 1. Several Hundred Licenses Were Issued Under the Lundquist Patents

33. From 1998 on, several hundred seed companies across the United States entered into license agreements with Monsanto which expressly granted the licensee the rights to use the intellectual property rights set forth in the Lundquist Patent. (MGA0058330; MGA0009238-42; MGA0053706-09)

34. Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, LLC, Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (all now Syngenta owned companies) were licensees to the Lundquist Patents. (*Id.*) None of those companies ever challenged the validity of the Lundquist Patents before the *Lundquist Action*.

#### 2. Monsanto's and DEKALB's Success In Their Prior Enforcement Of The *First Lundquist Action* Against Syngenta (and Others)

35. On April 30, 1996, DEKALB filed its original complaint in *DEKALB Genectics Corp. v. Ciba-Geigy Corp. & Mycogen Corp.*, C.A. 96C50114 in the United States District Court for the Northern District of Illinois, seeking, in part, to enforce U.S. Patent No. 5,484,956 (the "'956 Patent") against Syngenta's predecessor, Ciba Geigy.

36. On July 23, 1996, DEKLAB filed its original complaint in *DEKALB Genectics Corp. v. Ciba-Geigy Corp. et al.*, C.A. 96C50241 in the United States District Court for the Northern District of Illinois, seeking to enforce both the Lundquist '880 Patent and U.S. Patent No. 5,538,877 (the "'877 Patent") against Syngenta's predecessor, Ciba Geigy.

8

37. The actions referenced in the previous two paragraphs were consolidated with other actions brought by DEKALB in the Northern District of Illinois for discovery and pre-trial purposes (collectively the "*First Lundquist Actions*").

38. The '880, '877 and '956 patents all claim priority to the same U.S. Patent Application No. 467,983 filed January 22, 1990, and named Ronald Lundquist as one of the inventors.

39. Syngenta Seeds, Inc. now owns the agricultural assets that once belonged to Ciba Geigy.

40. Two of the products accused of infringement in the *First Lundquist Actions* were Event 176 corn and MON810 corn.

41. Just as with GA21 corn, the original Event 176 and MON810 transformation events were created before any of the Lundquist Patents issued.

42. On July 1, 1999, a special master, Robert L. Harmon, issued his report and recommendation construing the claims of the patents-in-suit in the *Rockford Actions*. (Goffney ER, Ex. D).

43. During the *First Lundquist Actions*, the district court never construed claims 4-9 of the '880 patent (the claims asserted against Syngenta in the *Lundquist Action*) in a manner that would not read on the progeny of transgenic corn plants, where the initial transgenic event had been created before the '880 patent issued. (*Id.*).

44. On September 17, 1999, the district court in the *First Lundquist Actions* adopted the findings in the special master's report and recommendation on claim construction. (*Id.*).

45. The special master stated the following regarding the construction of Claim 4 of the '880 patent:

9

> Claim 4 covers the R1 and succeeding generations, no matter how
> they are obtained, from the R0 plant of claim 1.

(*Id.* at 43).

46.     Nothing in the Special Master's report and recommendations on claim construction, as adopted by the district court, suggested that the '880 patent would not be infringed by the progeny of transformation events originally made before the patent issued.

47.     In his report and recommendation addressing a non-infringement summary judgment motion based upon method steps being performed before patent issuance, the special master commented as follows:

> The use of a process involves carrying out the steps of the process.
> It would therefore not be unreasonable to require that at least one
> step of a patented process be carried out during the term of the
> patent in order to find infringement.

(Goffney ER, Ex. E, pg. 9).

48.     In the same summary judgment ruling, the special master made the following finding regarding infringement by a party who made progeny plants of transgenic events originally created before patent issuance:

> Here, the R0, R1 and progeny plants satisfying all of the
> limitations of claims 1, 5 and 6 were in existence prior to the day
> the '956 patent issued. But Pioneer used these progeny plants to
> produce more progeny after the patent issued. And this, assuming
> that the R0, R1 and progeny plants otherwise responded, as a
> matter of fact, to the limitations of claims 1, 5 and 6, was
> infringement.

(*Id.*).

49.     The report and recommendation contained in the summary judgment ruling addressed in the previous two paragraphs were adopted by the district court.

50.     In yet another report and recommendation, the special master recommended denying a motion for summary judgment of non-infringement of the Lundquist '877 patent by an

10

accused product in view of evidence that the last step of the subject method claims had been performed after the patent had issued, commenting:

> The SM has examined the evidence cited by DeKalb on this point (Exhibits I-L) and has concluded that it demonstrates only that there is a genuine triable issue of fact as to whether the R0 plants had matured to the point of fertility by the time the patent issued.

(Goffney E.R. Ex. F, pg. 11).

51. The report and recommendations contained in the summary judgment ruling addressed in the previous paragraph were adopted by the district court.

52. DEKALB brought the instant *Lundquist Action* in the same court that issued all of the foregoing rulings.

### 3. Novartis, Syngenta's Predecessor, Took a License to the '880 Patent from DEKALB, Monsanto's Predecessor.

53. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████

## II. ISSUE UPON WHICH SUMMARY JUDGMENT IS SOUGHT

**Issue: Can Syngenta Prove By Clear and Convincing Evidence that Monsanto's and DEKALB's Patent Infringement Suits Were "Objectively Baseless"?**

54. There is no substantial evidence that no reasonable litigant could have expected any chance of its claims in the *Shah Action* or the *Lundquist Action* being found valid based upon the objective facts known when the suits were brought.

11

55. "The United States Constitution expressly permits the government to grant exclusive monopolies in the form of patents, *see* U.S. CONST. art. I, § 8, cl. 8, and therefore the Sherman Act cannot be read to impede a litigant from seeking to defend constitutionally-permitted patent rights." *Andrx Pharms., Inc. v. Elan Corp. PLC*, 421 F.3d 1227, 1234 (11th Cir. 2005).

56. That summary judgment was granted in the *Shah Action* and the *Lundquist Action* is not evidence that can support a sham litigation claim. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("Neither the bringing of an unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls to invalidity, subjects the suitor to antitrust liability.").

57. Where the defendant-patentee instituted both successful and unsuccessful suits to enforce the same patents, the unsuccessful patent enforcement does not support the inference that the defendant's litigation was a sham. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1358 (S.D. Fla 2004); *Dollac Corp. v. Margon Corp.*, 164 F. Supp. 41, 62-63 (D.N.J. 1958), *aff'd*, 275 F.2d 202 (3d Cir. 1960).

58. Where, as here, there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide whether an action was objectively baseless as a matter of law. *Professional Real Estate Investors, Inc.*, 508 U.S. at 62-63.

59. Because proving that a suit was objectively baseless by clear and convincing evidence is inherently difficult, summary judgments are routinely granted against sham patent litigation claims. *See, e.g., McGahee v. Northern Propane Gas Co.*, 858 F.2d 1487, 1493 11th Cir. 1988) ("[W]hen opposing a motion for summary judgment, an antitrust plaintiff must present evidence that tends, when interpreted in a light most favorable to plaintiff, to ***exclude the***

*possibility* that defendant's conduct was as consistent with permissible competition as with illegal conduct.") (emphasis added) (citing *Mitsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 589 (1986); *see also Miller Pipeline Corp. v. British Gas PLC*, 69 F. Supp. 2d 1129, 1142 (S.D. Ind. 1999) ("We acknowledge that objective baselessness is very difficult to prove, for a litigant's reasonable belief in its chance to achieve success on the merits is quite a low threshold."); *Collins & Aikman Corp. v. Stratton Indus., Inc.*, 728 F. Supp. 1570, 1581-82 (N.D. Ga. 1989) (granting summary judgment because the appearance of the product at the trade show gave the patentee sufficient reason to believe its patent had been infringed and to overcome the "objectively baseless" standard); *see also Gamma-Metrics, Inc. v. Scantech Ltd.*, 52 U.S.P.Q.2d (BNA) 1568, 1579 (S.D. Cal. 1998) (summary judgment granted to defeat sham patent claim when the only evidence indicating the objective reasonableness of the patentee's suit was the patentee's pre-suit comparison of the defendant's accused infringing device to the disclosures of its patent – there is a chance that a claim may be held valid upon adjudication).

## CONCLUSION

Based on the foregoing statement of facts as to which there is no genuine issue to be tried, Monsanto requests that the Court permit Monsanto to file its motion for summary judgment on Syngenta's sham patent allegations regarding Counts I and II.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone (202) 783-0800

Dated: February 29, 2008
Public Version Dated: March 7, 2008

853618 / 28128

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Telephone (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Monsanto Company and Monsanto Technology LLC*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 7, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on March 7, 2008, the attached document was Electronically Mailed to the follow person(s):

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
yshaw@ycst.com
kkeller@ycst.com

Richard F. Schwed
Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
rschwed@shearman.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

707326 / 28128