THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al*, | ) ) ) | C.A. No. 04-305-SLR |
| Plaintiffs, | ) ) | C.A. No. 04-908-SLR (Consolidated) |
| v. | ) ) | **PUBLIC VERSION** |
| SYNGENTA SEEDS, INC., *et al*, | ) ) | |
| Defendants. | ) ) ) | |

**MONSANTO'S STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE
ISSUE TO BE TRIED IN SUPPORT OF A MOTION FOR SUMMARY
JUDGMENT ON COUNT I AND II REGARDING LACK OF FORECLOSURE**

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone (202) 783-0800

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Monsanto Company and
Monsanto Technology LLC*

Dated: February 29, 2008
Public Version Dated: March 7, 2008

853630 / 28128

Pursuant to the Court's Order, dated February 11, 2008, Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") file this statement of facts as to which there is no genuine issue to be tried supporting summary judgment on Counts I and II alleging that Monsanto's conduct foreclosed Syngenta from the ability to license glyphosate tolerant ("GT") traits and European Corn Borer ("ECB") traits.

## SUMMARY OF THE ISSUES

Syngenta claims that Monsanto's conduct (including its seed licensing agreements and related incentive programs) foreclosed Syngenta from licensing its GT and ECB traited products to the approximately 300 independent seed companies. Those seed companies comprise only 24.8% of all corn sold in the United States. (Doane Data, MGA 0613239). Assuming *arguendo*, for summary judgment purposes, that Syngenta could not license to that segment (which is not the case), restraints that foreclose less than 30-40% of the potential trait licensees do not, as a matter of law, constitute "substantial foreclosure" rising to the level of a violation of Section 2 of the Sherman Act. *See, e.g., Jefferson Hospital District v. Hyde*, 466 U.S. 2, 44-45 (1984); *Barr Labs. v. Abbott Labs.*, 978 F.2d 98, 110-11 (3d Cir. 1992); *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island*, 373 F.3d 57, 68 (1st Cir. 2004). No case has ever found foreclosure of 24.8% of potential customers to constitute "substantial foreclosure" to violate Section 2 of the Sherman Act absent extraordinary facts that are not existent here. *See* Hovenkamp, Antitrust Law ¶ 1821c at 176-79.

I.  **MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

   A.  **Syngenta Has No Evidence that Its Alleged Foreclosure Affects a Substantial Share of Potential Licensees of Traits**

      1.  **Monsanto Introduction of a Series of Traits and Its Broad Licensing of Those Traits to Others Gave it a First Mover Advantage Over Syngenta**

1. Monsanto introduced its corn-borer resistant trait, YieldGard, in 1997. (Third Am. Compl. ¶ 32). The ECB-resistant trait combats the European Corn Borer without using pesticides. (Third Amended Compl. ¶¶ 2, 24).

2. Monsanto introduced its glyphosate resistant trait, Roundup Ready, in 1998, and introduced a second generation in 2001. (Third Am. Compl. ¶¶ 36, 42). The glyphosate tolerant trait allows a farmer to apply the herbicide glyphosate without harming the corn plant. (Third Amended Compl. ¶ 2).

3. In 1998, Monsanto introduced its first stacked product, YieldGardPlus, which combined Monsanto's glyphosate-tolerant trait and its corn borer-resistant trait. (Monsanto Trait Pipeline, DTX 3); (SYN-AT-000643148).

4. In 2003, Monsanto released a stack containing the corn rootworm-resistant trait and its glyphosate resistant trait. (Monsanto Trait Pipeline, DTX 3).

5. In 2004, Monsanto introduced a stack containing Monsanto's rootworm-resistant trait and its corn borer-resistant trait. (Monsanto Trait Pipeline, DTX 3).

6. In 2005, Monsanto introduced a triple stack containing all three Monsanto traits. (Monsanto Trait Pipeline, DTX 3).

### 2. Syngenta's Inability to License Traits Prior to 2004/2005 Was Due To Its Own Internal Problems

7.  In the early 2000's, Syngenta acknowledged ███████████ ███████████████████████████████████. In 2001, ███████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████.

### 3. Syngenta Did Not Commence A Licensing Business Until 2004

8.  ███████████████████████████████████████████████████████
███████████████████████████████████████████████.

9.  Prior to that time, ███████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████.

10. Until mid-2004, Syngenta only produced a single corn borer-resistant trait, Bt11. (Third Am. Compl. ¶¶ 56, 64).

11. Syngenta did not acquire any "rights" to license GA21 until May of 2004. (Third Am. Compl. ¶ 66). It never offered a glyphosate-tolerant trait until the 2005 selling season. (Third Am. Compl. ¶ 64).

3

12. Syngenta did not offer stacked traits until 2006. (Syngenta Trait Pipeline, DTX 15).

### 4. Syngenta Has Not Been Foreclosed from a "Substantial Share" of the Its Potential Licensees

13. Syngenta's potential customers for its traits are: (i) Syngenta's branded seed companies; (ii) DuPont/Pioneer; (iii) Dow/Mycogen; (iv) Monsanto; and (v) approximately 300 independent seed companies. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

14. In 2005, Syngenta's potential customers had the following shares of branded corn seed sold in the United States:[1]



---

[1] The year 2005 was the most recent year about which the parties had market information when discovery closed.

          **a.**     **Independent Seed Companies Do Not Comprise A Substantial Portion of the Market**

15.    Approximately 24.8% of branded corn seed sold in the United Sates is sold by independent seed companies. (Doane Data, MGA 0613239); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[2]

          **b.**     **Access to Syngenta's Branded Seed Companies**

16.    Syngenta's seed companies (NK, Garst and Golden Harvest) represent approximately 14.2% of all corn sold in the United States. (Doane Data, MGA 0613239). Syngenta can, and does, license its traits to its wholly-owned seed companies.

          **c.**     **Access to DuPont's Branded Seed Business Via Green Leaf Genetics**

17.    DuPont's branded seed company, Pioneer, represents approximately 31.5% of all of the branded corn sold in the United States. (Doana Data, MGA 0613239).

18.    In April, 2006, Syngenta's GreenLeaf Genetics became a joint venture with Pioneer for the purpose of licensing germplasm and traits. (Formation Agreement SYN-AT-003236064). Under that joint venture agreement, "DuPont receives a global license to Syngenta's insect resistance [traits]." (Syngenta and DuPont Joint Press Release, DX 81).

19.  

---

[2] Figures are based upon the data contained in the record at the time of the close of discovery in this matter.

5

20. Travis Dickinson, Syngenta's head of new business development from 2004 to 2006, testified that Monsanto posed no barrier to licensing traits to Pioneer:



### d. Access to Dow/Mycogen Branded Seed Business

21. Dow/Mycogen's branded seed business, Dow/Mycogen, represents approximately 3.4% of the branded corn sold in the United States. (Doane Data, MGA 0613239).

22. ▮

23. Syngenta has admitted that ▮

6

        **e.**    **Syngenta Has Declined to License Its Traits to Monsanto**

24.    Monsanto's branded seed companies represent approximately 26.1% of the corn sold in the United States. (Doane Data, MGA 0613239).

25.    Syngenta has chosen not to license its traits to Monsanto's branded seed companies.

        **f.**    **Syngenta Is Licensing to Independent Seed Companies**

26.    In 2005, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. With respect to its 2005 performance, Jack Bernans, head of Syngenta's Agrisure trait business, stated: "We are pleased with the acceptance of Agrisure traits by corn growers after one year on the market, but this is just the start." (SeedQuest News Section DX284).

27.    In Spring 2006, Ron Wulfkuhle, CEO of GreenLeaf Genetics, announced that GreenLeaf Genetics already had "more than 60 licensees" out of approximately 300 independent seed companies. (GreenLeaf Genetics Newsletter Spring 2006). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3]

---

[3] For purpose of summary judgment only, Monsanto is taking Syngenta's allegations as true that it has been foreclosed from licensing traits to the independent seed companies. It should be noted, however, that there is substantial evidence showing that Syngenta is successfully licensing to numerous independent seed companies within this 24.8%. Further, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

28.    ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

## II.    ISSUE UPON WHICH SUMMARY JUDGMENT IS SOUGHT

**Issue: Whether Summary Judgment Should Be Granted on Counts I and II of the Third Amended Complaint on the Ground that Syngenta Can Not Establish the Legally Requisite Substantial Foreclosure?**

29.    Summary judgment is appropriate when the plaintiff cannot prove "substantial foreclosure." *See Barr Labs v. Abbott Labs*, 978 F.2d 110-11 (affirming summary judgment for failure to show substantial foreclosure). To be anticompetitive, a contract must "foreclose competition in a substantial share of the line of commerce affected." *Tampa Electric v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

30.    When contracts foreclose less than 30-40% of the competitive market, that foreclosure is insubstantial as a matter of law. *See, e.g., Jefferson Hospital District*, 466 U.S. at 44-45; *Barr Labs*, 978 F.2d at 110-11 (affirming summary judgment that alleged foreclosure of 15% of the competitive market was insubstantial); *Stop & Shop Supermarket Co.*, 373 F.3d at 68 (observing that "foreclosure levels are unlikely to be of concern where they are less than 30 or 40 percent"); *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) (noting that 40% to 50% usually required to find substantial foreclosure); Hovenkamp, Antitrust Law ¶ 1821c at 176-79 (collecting cases).

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

8

31.     Monsanto can obtain summary judgment "by showing that the non moving party [Syngenta] has not offered evidence sufficient to establish the existence of an element essential to its case." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d. Cir. 1996); *see also Ideal Dairy Farms*, 90 F.3d at 743 ("[t]he non-movant must present concrete evidence supporting each essential element of its claim.").

32.     Hearsay statements from Syngenta's employees recounting alleged out-of-court statements of independent seed companies regarding alleged foreclosure cannot be used to defeat a motion for summary judgment. *See Orson, Inc.*, 79 F.3d at 1366 (affirming summary judgment where third party testimony refuted plaintiff's claims that it was foreclosed); *Ideal Dairy Farms v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996) (affirming summary judgment order where, "if the evidentiary record were reduced to admissible evidence, the plaintiff could not carry its burden of proof at trial.") (citing *Clark v. Modern Group Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

## CONCLUSION

Based on the foregoing statement of facts as to which there is no genuine issue to be tried, Monsanto requests that the Court permit Monsanto to file its motion for summary judgment on Counts I and II regarding lack of foreclosure.

Respectfully Submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone (202) 783-0800

Dated: February 29, 2008
Public Version Dated: March 7, 2008

853630 / 28128

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Monsanto Company and Monsanto Technology LLC*

10

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 7, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on March 7, 2008, the attached document was Electronically Mailed to the follow person(s):

| | |
|---|---|
| John W. Shaw<br>Karen E. Keller<br>Young Conaway Stargatt & Taylor, L.L.P.<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801<br>yshaw@ycst.com<br>kkeller@ycst.com | Richard F. Schwed<br>Stephen Fishbein<br>Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022-6069<br>rschwed@shearman.com |

                                      /s/ David E. Moore
                                  Richard L. Horwitz
                                  David E. Moore
                                  Potter Anderson & Corroon LLP
                                  Hercules Plaza – Sixth Floor
                                  1313 North Market Street
                                  Wilmington, DE 19801
                                  (302) 984-6000
                                  rhorwitz@potteranderson.com
                                  dmoore@potteranderson.com

707326 / 28128