THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al*, | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 04-305-SLR<br>C.A. No. 04-908-SLR<br>(Consolidated) |
| v. | ) ) | **PUBLIC VERSION** |
| SYNGENTA SEEDS, INC., *et al*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MONSANTO'S STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED IN SUPPORT OF A MOTION FOR SUMMARY JUDGMENT ON COUNT I AND II REGARDING FAILURE TO ESTABLISH MONOPOLY POWER**

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone (202) 783-0800

Dated: February 29, 2008
Public Version Dated: March 7, 2008

853629 / 28128

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Monsanto Company and Monsanto Technology LLC*

Pursuant to the Court's Order, dated February 11, 2008, Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") file this statement of facts as to which there is no genuine issue to be tried supporting summary judgment on Counts I and II of the Third Amended Complaint on the grounds that Monsanto lacks monopoly power in the relevant product market.

## SUMMARY OF THE ISSUES

Syngenta Seeds, Inc. ("Syngenta") has alleged an artificially restricted product market to inflate Monsanto's market share and, thus, attempts to incorrectly impute market power to Monsanto, a requisite element to a Sherman Act Section 2 claim. Specifically, Syngenta alleges that European Corn Borer-resistant ("ECB") and glyphosate-tolerant ("GT") traits constitute their own product markets. (D.I. 529 -- Third Am. Compl. ¶¶ 121, 129). Monsanto maintains the relevant product markets are competing conventional and transgenic systems for controlling weeds and insects.[1]

The relevant product market, however, must be defined by the reality of the marketplace. *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 479 (3d Cir. 1992); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 781 (5th Cir. 1999). Courts have "not hesitated to reject market allegations that make no economic sense." *Deep South Pepsi-Cola*

---

[1] Syngenta's Third Amended Complaint alleges that complementary products, such as herbicides and pesticides, are not part of the relevant product market. For purposes of this motion only, Monsanto does not challenge Syngenta's position that complementary products are not part of the relevant product markets. Accepting Syngenta's position, the relevant product markets can only be: (i) a trait market (which is simply not plausible); (ii) foundation corn seed market (which Syngenta previously alleged but dropped); or (iii) hybrid corn seed market (in which case, Monsanto's market shares are at a level that, no reasonable trier of fact could find that Monsanto has market power). At trial, Monsanto reserves its rights to present evidence on what it believes to be the appropriate relevant product markets of competing weed and insect control systems.

*Bottling Co. v. Pepsico Inc.*, 1989 WL 48400, at *7 (S.D.N.Y. May 2, 1989); *see also Weiss v. York Hospital*, 745 F.2d 786, 826 (3d Cir. 1984).

Syngenta's proposed relevant product market definition is not economically plausible and does not reflect the reality of the corn business, including its own corn business. There can be no separate and independent trait licensing market as alleged in the Third Amended Complaint. In this case, Syngenta itself previously admitted and prevailed on the argument that traits are not separate, physical products but merely a component to corn seed. (D.I. 133 -- Syngenta Br. in Support of Syngenta's Mot. to Dismiss Counterclaims Nos. 1-3); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 651-52 (D. Del. 2006) (finding "that the seed is the tangible product sold in the marketplace").

In support of its Motion to Dismiss Monsanto's Counterclaims, Syngenta confirmed this marketplace reality -- it is physically impossible to deliver solely a trait to a licensee: ***"[t]here are not stores of separate, tangible, pre-manufactured units called 'GA21' that are physically inserted into the corn seed."*** (D.I. 133 -- Syngenta Br. in Support of Syngenta's Mot. to Dismiss Counterclaims Nos. 1-3, at 4) (emphasis added). Instead, traits are "delivere[d via] inbred corn seed lines containing the [trait], germplasm, and other agronomic characteristics." *Id.* at 4, n.4. Then, the licensee "uses that inbred corn seed line to cross with another inbred corn seed line to produce hybrid seed, which is planted by the farmer." *Id.* As a result of Syngenta's own admissions, market reality requires the relevant product market to be either inbred seeds (also called foundation seeds) or hybrid seeds. Monsanto is entitled to summary judgment under either relevant product market definition.

As to the former, Count III of Syngenta's Second Amended Complaint alleged that Monsanto attempted to monopolize an alleged "foundation seed market." (D.I. 124 -- Second

2

Am. Compl ¶¶ 191-99). After completing discovery, however, Syngenta decided that it could not proceed to trial with that claim. (D.I. 491 -- Syngenta Mot. to Amend the Second Am. Compl.). As a result, Counts I and II cannot be predicated on a relevant product market of "foundation seed." If it is not economically plausible that traits are a relevant product market and Syngenta has dropped its claim predicated upon a foundation seed market, the only remaining commercially viable traited product is hybrid corn seed. Within such a relevant product market market, every witness in this case (including Syngenta's, Monsanto's and every third party) has confirmed that conventional hybrid corn seed and transgenic hybrid corn seed compete with one another.

When conventional hybrid seed is properly included in the hybrid corn seed product market, Syngenta as a matter of law cannot prove Monsanto has market power. In this regard, Monsanto's market share of all corn acres planted is approximately 26.1%, which is insufficient as a matter of law to establish monopoly power. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 201 (3d Cir. 1992); *see also Ideal Dairy Farms v. John Labatt, Ltd.*, 90 F.3d 737, 749-50 (3d Cir. 1996) (affirming district court's grant of summary judgment to antitrust defendant based on plaintiff's improper market definition and failure to prove defendant's monopoly power in properly-drawn product market).

**I.      MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

      **A.     Traits Cannot Be a Separate Relevant Product Market Because "Traits" Do Not Constitute a Separate Product from Corn Seed**

1.     "[T]he tangible product that Syngenta is selling to the marketplace is corn seed." (D.I. 147 -- Reply Br. in Support of Syngenta's Mot. to Dismiss Counterclaims Nos. 1-3, at 2).

3

Traits are contained in either foundation seed or hybrid seed. *See* (D.I. 124 -- Second Am. Compl. ¶ 6) (averring that traits must be contained in either hybrid seed or foundation seed).

    2.    Syngenta argued to the Court that traits do not exist outside a corn seed:

> There are not stores of separate, tangible, pre-manufactured units called "GA21" that are physically inserted into the corn seed. Rather, GA21 is contained in inbred corn seed lines made up of a combination of germplasm, genetic traits, and other agronomic characteristics.

(Syngenta Br. in Support of Motion to Dismiss Monsanto's Counterclaims, at 4). Trait producers do not, and cannot, provide a trait directly to a licensee. Rather, a trait producer

> delivers inbred corn seed lines containing the [trait], germplasm, and other agronomic characteristics. The licensee uses that inbred corn seed line to cross with another inbred corn seed line to produce hybrid corn seed, which is planted by the farmer.

(*Id.* at 4, n.4).

    3.    The Court accepted Syngenta's argument that traits do not exist outside a corn seed. The Court noted that "[t]he issue raised by the papers is whether it is the GA21 trait or the seed that should be considered the 'product' being sold." 443 F. Supp. 2d at 651. In granting the Motion to Dismiss, the Court "conclude[d] that the seed is the tangible product being sold in the marketplace." *Id.* at 652.

    **B.**    **Syngenta Cannot Prove Monsanto Possesses Market Power in a Product Market Based on Foundation Seeds**

    4.    Syngenta previously alleged that Monsanto attempted to monopolize the alleged foundation seed market. (*See* D.I. 124 -- Second Am. Compl. ¶¶ 191-99).

    5.    Syngenta's alleged foundation seed market included both transgenic and conventional seed. (*See* D.I. 124 -- Second Am. Compl. ¶ 155). Foundation seed can be either conventional seed or transgenic seed. (Tudor Tr. at 71:11 to 72:2); (Dickinson Tr. at 179:4 to 181:2).

6.  After discovery closed, Syngenta decided that it could not proceed to trial with its attempted monopolization of an alleged foundation seed market claim. (D.I. 491 -- Syngenta Mot. to Amend the Second Am. Compl.). Syngenta dropped that claim. (*Id.*).

### C. Syngenta Cannot Prove Monsanto Possesses Market Power in a Product Market Based on Hybrid Corn Seed

#### 1. Conventional Hybrid Corn Seed and Transgenic Hybird Corn Seed are Substitutes Within the Same Market

##### a. In a Prior Litigation, Syngenta Argued that Conventional Hybrid Corn Seed and Transgenic Hybrid Corn Seed Are Within the Same Relevant Product Market

7.  In *Sample v. Monsanto et al.*, Syngenta rejected the notion that conventional and transgenic hybrid corn seed are separate and distinct markets: "***Conventional corn and soy seed compete against YGC and RRS seeds. If the price of GM seeds gets too high, or if the price of conventional seed gets sufficiently low, farmers can and will switch to conventional varieties.***" (Syngenta Opposition Motion for Class Certification Brief at 7) (emphasis added).

##### b. Syngenta's Witnesses Admit that Conventional Hybrid Corn Seed Competes with Transgenic Hybrid Corn Seed

8.  Syngenta's officers and employees have repeatedly admitted that conventional hybrid seed competes with transgenic hybrid seed. *See* ¶¶ 9- 15, *infra*.

9.  Iona Tudor, Syngenta's Global Head of Corn & Soya Traits, testified as follows:



10. Moez Meghi, part of Syngenta's new corn trait development group, testified:



11. Kevin Macken, Syngenta's Manager of Market Intelligence, also testified that



12. Ed Resler, Syngenta's in-house counsel, testified as follows:



13. Gary Powell, who served as Syngenta's Head of Market Development and Director of New Product Market Development, testified as follows:





14. David Jessen, Syngenta's Head of New Traits Development, testified as follows:



15. John Scharington, Syngenta's Project Manager for its ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮:



7

        c.    **Syngenta's Internal Documents Recognize a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉**

16.    Syngenta's ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

17.    Syngenta launched ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

18.    Syngenta created ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

19.    On December 8, 2004, Syngenta presented another ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

20.    When Syngenta ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

21.   In 2005, Syngenta prepared █████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████.

        **d.    Syngenta Markets Conventional Hybrid Seed as a Competitive Alternative to Transgenic Hybrid Seed**

22.   Syngenta's internal documents confirm ████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████.

23.   Syngenta's current promotional materials acknowledge that farmers should sometimes choose conventional hybrid seed over transgenic hybrid seed. A Syngenta press release stated:

> Options, Options, and More Options
>
>              \* \* \*
>
> Corn is very susceptible to early-season competition from weeds, so with a race horse hybrid on high-yielding soils, a grower may find he's better off leaving out the glyphosate-tolerance trait and using a good soil-applied herbicide to control weeds.

9

(Media Release, *Enjoying that New Corn Smell* <http://www.syngenta-us.com/media/article.asp?article_id=823 (quoting Bruce Battles, a Syngenta Agronomist).

### 2. Within the Hybrid Corn Seed Market, Monsanto's Market Share is Insufficient as a Matter of Law to Find Market Power

24. Monsanto's market share for conventional corn seed and corn seed containing traits is approximately 26.1%. (Doane Data, MGA 0613239).

### II. ISSUE UPON WHICH SUMMARY JUDGMENT IS SOUGHT

**Issue: Whether Summary Judgment Should Be Granted on Counts I and II of the Third Amended Complaint on the Grounds that Syngenta Cannot Prove that Monsanto has Monopoly Power?**

25. A monopolization claim under Section 2 of the Sherman Act requires that plaintiff prove, among other things, that defendant possesses monopoly power in the relevant market. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).

26. The relevant product market must be defined by the reality of the marketplace. *Town Sound &* Custom *Tops, Inc.*, 959 F.2d at 479; *Alcatel USA, Inc.*, 166 F.3d at 781. Courts have "not hesitated to reject market definitions that make no economic sense." *Deep South Pepsi-Cola Bottling Co.*, 1989 WL 48400, at *7; *see also Town Sound & Custom Tops, Inc.*, 959 F.2d at 479; *Weiss*, 745 F.2d at 826.

27. Trait producers sell corn seed rather than traits. Thus, "the seed is the tangible product being sold in the marketplace." *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 652 (D. Del. 2006). The only plausible product market is a hybrid seed market.

28. In planting their corn crops, farmers choose between conventional hybrid seed and transgenic hybrid seed. The relevant product market must include all products that are "reasonably interchangeable by consumers for the same purposes." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 438 (3d Cir.1997). A reasonably interchangeable product is one

10

that is "roughly equivalent to another for the use to which it is put; while there may be some degree of preference for the one over the other, either would work effectively." *Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.*, 33 F.3d 194, 206 (3d Cir.1994).

29. The Third Circuit has held that a market share of less than 55% is insufficient as a matter of law to establish monopoly power. *Fineman*, 980 F.2d at 201; *see also Ideal Dairy Farms*, 90 F.3d at 749-50 (affirming district court's grant of summary judgment to antitrust defendant based on plaintiff's improper market definition and failure to prove defendant's monopoly power in properly-drawn product market).

## CONCLUSION

Based on the foregoing statements of material facts as to which there is no genuine issue to be tried, Monsanto requests that the Court permit it to file a motion for summary judgment on Counts I and II due to Monsanto's lack of market power.

Respectfully Submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone (202) 783-0800

Dated: February 29, 2008
Public Version Dated: March 7, 2008

853629 / 28128

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Monsanto Company and Monsanto Technology LLC*

11

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 7, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on March 7, 2008, the attached document was Electronically Mailed to the follow person(s):

| | |
|---|---|
| John W. Shaw<br>Karen E. Keller<br>Young Conaway Stargatt & Taylor, L.L.P.<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801<br>yshaw@ycst.com<br>kkeller@ycst.com | Richard F. Schwed<br>Stephen Fishbein<br>Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022-6069<br>rschwed@shearman.com |

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

707326 / 28128