IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-305-SLR (Consol.) |
| | ) | |
| SYNGENTA SEEDS, INC., *et al.*, | ) | **REDACTED -** |
| | ) | **PUBLIC VERSION** |
| Defendants. | ) | |

**SYNGENTA'S RESPONSE TO MONSANTO'S STATEMENT
OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED IN
SUPPORT OF A MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II
REGARDING SYNGENTA'S SHAM PATENT LITIGATION ALLEGATIONS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
mbudicak@ycst.com

*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington, DC 20004-2634
(202) 508-8000

Dated: March 21, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

SUMMARY OF ARGUMENT ............................................................................................ 1

ISSUES OF LAW AND FACT ............................................................................................ 2

I.      NON-MATERIAL FACTS ALLEGED BY MONSANTO ................................................ 2

     A.      Response to Sham Litigation Statement ¶ 1 ........................................................ 2

     B.      Response to Sham Litigation Statement ¶¶ 2-3 .................................................. 3

     C.      Response to Sham Litigation Statement ¶¶ 4-13 ................................................ 4

     D.      Response to Sham Litigation Statement ¶¶ 14-16 .............................................. 5

     E.      Response to Sham Litigation Statement ¶¶ 17-18 .............................................. 5

     F.      Response to Sham Litigation Statement ¶¶ 19-25 .............................................. 6

     G.      Response to Sham Litigation Statement ¶¶ 26-32 .............................................. 7

     H.      Response to Sham Litigation Statement ¶¶ 33-34 .............................................. 7

     I.      Response to Sham Litigation Statement ¶¶ 35-52 .............................................. 8

     J.      Response to Sham Litigation Statement ¶ 53 ...................................................... 8

II.     MATERIAL FACTS AND EVIDENCE NOT ADDRESSED BY MONSANTO ............ 9

     A.      Monsanto's Initiation of the Shah Patent Litigation Was Objectively Baseless .. 10

          1.      Genuine Issues of Material Fact Exist Because Monsanto Did Not
               Conduct a Reasonable Pre-Suit Investigation ............................................ 10

     B.      There Is Substantial Evidence That No Reasonable Litigant Could Have
           Realistically Expected the Shah Patent to Be Valid ........................................... 16

     C.      Substantial Evidence Exists That DeKalb's Initiation of the Lundquist Patent
           Litigation Was Objectively Baseless ................................................................. 21

     D.      Summary Judgment Is Inappropriate Because Substantial Evidence Exists to
           Demonstrate That Monsanto/DeKalb's Maintenance of the Shah and
           Lundquist Patent Litigations Was Objectively Baseless ..................................... 31

E.    The Federal Circuit's Affirmance of This Court's Summary Judgment
      Rulings Further Establishes that the Monsanto/DeKalb Patent Actions Were
      Objectively Baseless ........................................................................................... 32

III.    STATEMENT OF LAW .................................................................................................. 33

CONCLUSION.......................................................................................................................... 34

TABLE OF AUTHORITIES

## CASES

*Canton Bio-Medical, Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367
(Fed. Cir. 2000)..................................................................................23, 27, 30

*Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325 (Fed. Cir. 1998)................................29

*In re Goodman*, 11 F.3d 1046 (Fed. Cir. 1993) ........................................................17

*Goss Int'l Americas, Inc. v. MAN Roland, Inc.*, No. 03-CV-513, 2006 WL 1575287
(D.N.H. June 2, 2006)..................................................................................33

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377 (Fed. Cir. 2000)...................................29

*London v. Carson Pirie Scott & Co.*, 946 F.2d 1534 (Fed. Cir. 1991).........................................29

*Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352 (Fed. Cir. 2007) ...............................1, 9, 32

*Oak Tech., Inc. v. Int'l Trade Comm'n*, 248 F.3d 1316 (Fed. Cir. 2001).....................................29

*Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335 (Fed. Cir. 2003).................17

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures, Indus., Inc.*, 508 U.S. 49 (1993)....2, 3, 33

*In re Relafen Antitrust Litig.*, 346 F. Supp. 2d 349 (D. Mass. 2004)............................................33

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335 (Fed. Cir. 2001)...............21

*Rhone-Poulenc Agro S.A. v. Monsanto Co.*, No. 97 Civ. 1138, 2000 U.S. Dist. LEXIS
21330 (M.D.N.C. Feb. 8, 2000)..................................................................................4

*In re Vaeck*, 947 F.2d 488 (Fed. Cir. 1991) ...................................................................18, 19, 20

*Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546 (Fed. Cir. 1989) ........................27, 29, 30

*Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192 (Fed. Cir. 1994).....................................29

## STATUTES

35 U.S.C. § 112....................................................................................................18, 25

35 U.S.C. § 271(a) ...............................................................................................12, 23, 27

35 U.S.C. § 271(g) ...................................................................................................28

35 U.S.C. § 282 ........................................................................................................2

## OTHER AUTHORITIES

*Manual of Patent Examining Procedure* § 717.04 (6th rev. ed. 2, July 1996) ..............................26

Pursuant to the Court's Order of February 11, 2008 (D.I. 543), Syngenta Seeds, Inc. ("Syngenta") respectfully submits this response to Monsanto Company's and Monsanto Technology LLC's ("Monsanto") Statement of Facts as to Which There Is No Genuine Issue to Be Tried in Support of a Motion for Summary Judgment on Counts I and II Regarding Syngenta's Sham Patent Litigation Allegations (D.I. 548) ("Sham Litigation Statement").

## SUMMARY OF ARGUMENT

Syngenta will prove at trial that Monsanto and its wholly owned subsidiary DeKalb Genetics Corporation ("DeKalb") filed baseless patent litigations against Syngenta relating to GA21 corn. As this Court will recall, it granted summary judgment holding the asserted claims of DeKalb's Lundquist patents not infringed and the asserted claims of Monsanto's Shah patent invalid for lack of enablement. (*See* D.I. 375). The Federal Circuit affirmed this Court's decision in all respects, holding, *inter alia*, that DeKalb's infringement contentions were "*inconsistent with the basic rule for infringement*" and that "*[t]his case lacks any basis for infringement*" under claim 1 because those steps occurred before patent issuance." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359-60 (Fed. Cir. 2007) (emphasis added). Importantly, Monsanto/DeKalb not only lost on all substantive issues before this Court and the Federal Circuit, but the undisputed facts that formed the basis for this Court's and the Federal Circuit's decisions were known to Monsanto/DeKalb long *before* they filed their baseless infringement actions. With respect to the Lundquist patents, for example, DeKalb knew years before filing suit that Syngenta had never used the claimed "bombardment" transformation process in connection with GA21 corn. With respect to the Shah patent, Monsanto knew (and had repeatedly argued in other litigations) that persons skilled in the art could not transform monocots (including corn) in the 1985-1986 time period. Syngenta will therefore establish at trial, through fact and expert testimony, and other evidence, that no litigant in

Monsanto/DeKalb's position could have reasonably expected success on the merits. Syngenta will further prove that Monsanto/DeKalb filed the patent actions not to seek enforcement of any legitimate patent rights, but to disrupt Syngenta's attempt to enter the marketplace in competition with Monsanto/DeKalb.

In its Sham Litigation Statement, Monsanto fails to show the absence of genuine issues of material fact with respect to Syngenta's sham patent litigation allegations for two fundamental reasons. First, Monsanto raises a multitude of allegedly undisputed facts that are *legally irrelevant* to the sham litigation issues and thus are not "material" facts within the meaning of Rule 56. Syngenta's responses to the non-material facts raised by Monsanto are summarized in Part I below. Second, *Monsanto omits from its statement virtually all the facts and evidence relied upon by Syngenta* to support its sham litigation contentions, including the undisputed facts that formed the basis for this Court's summary judgment rulings in Syngenta's favor. Monsanto's failure to even address the relevant facts and evidence strongly indicates that there are material facts in dispute. Those material facts establishing sham litigation – essentially ignored by Monsanto – are detailed in Part II below. Accordingly, for the reasons explained below, numerous genuine issues of material fact exist that should preclude consideration of any summary judgment motion relating to the sham litigation issues.

## ISSUES OF LAW AND FACT

**I.    NON-MATERIAL FACTS ALLEGED BY MONSANTO**

### A.    Response to Sham Litigation Statement ¶ 1

Monsanto argues that the Shah patent was presumed to be valid under 35 U.S.C. § 282. (D.I. 548). This is not a material fact. If the presumption of patent validity were enough to shield patent holders from claims of sham litigation, such claims would cease to exist as a matter of law. Sham litigation claims, however, remain legally viable under *Prof'l Real Estate*

2

*Investors, Inc. v. Columbia Pictures, Indus., Inc.*, 508 U.S. 49 (1993). Further, the presumption

of patent validity exists in every patent case, yet patent claims are frequently held invalid on

various grounds, including non-enablement. Here, because Monsanto had knowledge of facts

that clearly established the invalidity of its Shah patent claims (e.g., the inability of persons

skilled in the art to transform monocots in 1985-1986), it cannot avoid a finding of sham

litigation by pointing to the statutory presumption of validity.

**B.      Response to Sham Litigation Statement ¶¶ 2-3**

Monsanto asserts that several hundred seed companies entered into license agreements

with Monsanto, which included rights under the Shah patent, yet none of those companies ever

challenged the validity of the Shah patent. These are not material facts. Monsanto cites no

evidence that any of its licensees ever actually analyzed the validity of the Shah patent or

otherwise acquiesced to the patent's validity. Significantly, the licenses Monsanto refers to were

*not* solely under the Shah patent; rather, they were package licenses that included several other

patents. For example, the specific license agreement cited by Monsanto in paragraph 2 of its

Sham Litigation Statement listed seven patents, including the Shah patent. (App. 2 at

MGA0058330).[1] Thus, the fact that the Shah patent was one of seven licensed patents and was

not challenged is not probative of the Shah patent's validity. Monsanto's licensees may have had

no incentive to challenge the validity of the Shah patent knowing that, even if such a challenge

were successful, Monsanto could still potentially terminate their licenses and assert infringement

of one or more other patents. In addition, the Shah patent included narrower claims that were not

---

[1] All evidentiary materials on which Syngenta relies to establish the existence of genuine issues
of material fact are found in Syngenta's Compilation of Evidentiary Materials in Support of
Syngenta's Response To Monsanto's Statement Of Facts As To Which There Is No Genuine
Issue To Be Tried In Support Of A Motion For Summary Judgment On Counts I and II
Regarding Syngenta's Sham Patent Litigation Allegations (hereinafter "App.").

asserted against Syngenta and thus were not held invalid by this Court. Monsanto has failed to show that the patent licenses in question were not directed to those narrower, non-asserted patent claims.

### C.    Response to Sham Litigation Statement ¶¶ 4-13

In paragraphs 4-13 of its Sham Litigation Statement, Monsanto sets forth a misleading and irrelevant array of alleged facts relating to a prior action filed by Monsanto against a third party, Bayer CropScience S.A., for alleged infringement of the Shah patent. Monsanto omits from its allegations the fact that Bayer obtained a favorable claim construction ruling in that case. Specifically, the Missouri district court held that the claim term "chloroplast transit peptide" means "a naturally occurring series of amino acids that causes the transport of a polypeptide into a chloroplast." (App. 3 at 1). GA21, however, contains an "optimized transit peptide" or "OTP," which is *not* a naturally occurring sequence of amino acids. *See, e.g., Rhone-Poulenc Agro S.A. v. Monsanto Co.*, No. 97 Civ. 1138, 2000 U.S. Dist. LEXIS 21330, at *85-86 (M.D.N.C. Feb. 8, 2000) (describing components of the OTP). Monsanto later filed the Shah action against Syngenta in this Court, rather than in Missouri, in an effort to avoid the unfavorable prior claim construction. Thus, contrary to Monsanto's misleading assertion concerning its alleged "success" in enforcing the Shah patent against Bayer, Monsanto actually *lost* that critical claim construction ruling in the Missouri case, which it knew could lead to a judgment of non-infringement. Consequently, within just a few weeks, Monsanto dropped its infringement case against Bayer and entered into the settlement discussed in paragraphs 9-12 of Monsanto's Sham Litigation Statement. Because Bayer actually prevailed on a crucial claim construction issue, Bayer's alleged failure to move for summary judgment of invalidity on non-enablement grounds is meaningless. Bayer did not need to move for summary judgment of invalidity.

4

Moreover, dispositive motions were not even due in the *Monsanto v. Bayer* case until *October 2004*. (App. 4 at D.I. 108). The case was dismissed, however, following the parties' settlement in *October 2003*. Thus, the alleged absence of any summary judgment motion of invalidity by Bayer or summary judgment ruling by the Missouri court is meaningless since the time for such motions was still a year away when the case settled. In any event, to the extent Monsanto continues to assert that its allegedly "successful" litigation against Bayer is somehow material to Syngenta's sham litigation claims, the parties clearly dispute the outcome and significance, if any, of that prior case and the related settlement, creating disputed issues of material fact.

**D.     Response to Sham Litigation Statement ¶¶ 14-16**



Monsanto asserts that Ciba Geigy, a predecessor of Syngenta, ▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇ Soybeans, however, are *dicots*, not monocots, ▇▇▇▇▇▇

has nothing to do with the invalidity of the asserted Shah patent claims that encompassed transformed monocots such as corn. As discussed above, the Shah patent included narrower claims that were limited to dicots; those narrower claims were not asserted against Syngenta and thus were not held invalid for lack of enablement. ▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**E.     Response to Sham Litigation Statement ¶¶ 17-18**

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇ These alleged facts are not material to patent invalidity or sham litigation and are

essentially a repeat of Monsanto's misleading allegations, addressed above, concerning

Monsanto's allegedly "successful" prior action against Bayer.  As discussed above, Bayer

obtained a favorable claim construction ruling from the Missouri district court, which forced

Monsanto to drop its infringement case.  The parties then settled the litigation.  ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

### F.      Response to Sham Litigation Statement ¶¶ 19-25

Monsanto cites selectively from the prosecution history of the Shah patent in an attempt

to establish that the PTO examiner considered the enablement issues posed by the unavailability

of monocot transformation as of the Shah application's filing date, but did not reject Monsanto's

"gene claims" on non-enablement grounds.  These alleged facts are not material to patent

invalidity or sham litigation.  The prosecution history excerpts cited by Monsanto are, at most,

inconclusive as to why the examiner rejected only certain claims for lack of enablement.

Monsanto, however, clearly acquiesced to the non-enablement rejection and never disputed that

persons skilled in the art could not transform monocots as of 1985-1986.  The examiner's

rejection and Monsanto's acquiescence to it therefore show that Monsanto knew at the time that

claims encompassing transformed monocots were not valid.  Further, both this Court and the

Federal Circuit fully considered – and rejected as a matter of law – Monsanto's "gene claims"

enablement argument.  Thus, to the extent Monsanto intends to assert its "gene claims" position

as alleged evidence to show a reasonable chance of success on the merits, there is a genuine issue of material fact.

### G.    Response to Sham Litigation Statement ¶¶ 26-32

In paragraphs 26-32 of Monsanto's Sham Litigation Statement, Monsanto quotes from Syngenta's May 12, 2004 press releases; alleges that Syngenta made and used GA21 corn in the United States before and after May 12, 2004; and alleges that Monsanto brought an action to enforce the Shah patent on May 12, 2004. In addition, Monsanto alleges that, before May 12, 2004, DeKalb had conducted a molecular analysis of GA21 corn and submitted it to the U.S. Department of Agriculture and Monsanto engaged in two years of litigation to enforce the Shah patent against Bayer in connection with GA21 corn. Monsanto further alleges that its legal department was familiar with the prosecution history of the Shah patent because one of its in-house counsel, Dennis Hoerner, was the primary prosecuting attorney. As with all of the other allegations set forth in its Sham Litigation Statement, Monsanto does not attempt to tie any of these alleged facts to the validity of the Shah patent on enablement grounds. These alleged facts, particularly in isolation and out of context, are not material to patent invalidity or sham litigation. Monsanto has not squarely addressed Syngenta's contention (*see* Part II.A(1) *infra*) that Monsanto failed to conduct a reasonable pre-suit investigation before bringing suit on the Shah patent. Monsanto avoids directly confronting Syngenta's allegations because doing so would reveal the existence of several disputed issues of material fact.

### H.    Response to Sham Litigation Statement ¶¶ 33-34

Monsanto alleges that, from 1998 on, several hundred seed companies entered into license agreements with Monsanto, which expressly granted rights under one of the Lundquist patents. Monsanto further alleges that certain companies now affiliated with Syngenta were licensees under the Lundquist patents and did not challenge the validity of those Lundquist

7

patents prior to the action in this Court, which led to the grant of summary judgment of non-infringement. For the reasons discussed previously, the existence of prior license agreements for a different product (insect resistant corn) is simply not material to Syngenta's sham litigation contentions. Further, Syngenta's sham litigation position is based on *non-infringement* of the Lundquist patents, not issues of "validity" with respect to those patents as incorrectly implied in paragraph 34 of Monsanto's Sham Litigation Statement.

## I.    Response to Sham Litigation Statement ¶¶ 35-52

Paragraphs 35-52 of Monsanto's Sham Litigation Statement recount certain alleged facts relating to Monsanto's and DeKalb's alleged "success" in a prior action in the Northern District of Illinois involving one of the Lundquist patents (the '880 patent). Monsanto attempts to establish that it obtained favorable claim construction rulings in that prior case, which provided a reasonable basis to expect success in the present case. These alleged facts are not material to Syngenta's sham litigation contentions. The prior litigation did not involve GA21 corn and thus did not involve the same claim construction or non-infringement issues. Moreover, both this Court and the Federal Circuit rejected Monsanto/DeKalb's attempts to rely on prior claim construction rulings from the prior Illinois case. Further, the Illinois district court issued a claim construction ruling for the Lundquist '880 patent that was entirely consistent with this Court's and the Federal Circuit's interpretation of claim 4 as a dependent claim. (App. 1 at ¶ 84 (citing A128-129, 139, 146)).[2]

## J.    Response to Sham Litigation Statement ¶ 53

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[2] References to "A__" are to the Appendix accompanying Syngenta's Opening Brief in Support of Its Motion for Summary Judgment of Non-Infringement of the Lundquist Patents (D.I. 209).



As further explored in Part II below, what is conspicuously missing from Monsanto's

Sham Litigation Statement is any attempt by Monsanto to squarely address *Syngenta's actual*

*evidence* of sham litigation *or this Court's actual decision* finding no infringement of the

Lundquist patents based on fundamental principles of patent law.  Further, Monsanto has failed

to address the Federal Circuit's determination that Monsanto/DeKalb's arguments were

"*inconsistent with the basic rule for infringement*" and that "*[t]his case lacks any basis for*

*infringement* under claim 1 because those steps occurred before patent issuance.*" Monsanto Co.*,

503 F.3d at 1359-60.  Having failed to address Syngenta's evidence or this Court's and the

Federal Circuit's actual decisions, Monsanto has not shown the absence of disputed issues of

material fact.

**II.    MATERIAL FACTS AND EVIDENCE NOT ADDRESSED BY MONSANTO**

In paragraph 54 of its Sham Litigation Statement, Monsanto alleges that "[t]here is no

substantial evidence that no reasonable litigant could have expected any chance of its claims in

the *Shah Action* or the *Lundquist Action* being found valid based upon the objective facts known

when the suits were brought."  Monsanto, however, failed to address the vast majority of the

facts and evidence that form the actual basis for Syngenta's sham patent litigation allegations in

this case, essentially conceding that there are material disputed issues of fact in connection with

the sham litigation issues. Those material facts and evidence – essentially ignored by Monsanto
– supporting Syngenta's sham litigation allegations are detailed below.[3]

### A.     Monsanto's Initiation of the Shah Patent Litigation Was Objectively Baseless

#### 1.     Genuine Issues of Material Fact Exist Because Monsanto Did Not Conduct a Reasonable Pre-Suit Investigation

60.     Before patent litigation can be commenced, a pre-suit investigation must be
conducted. Reasonable pre-suit activities include, for example, conducting a comprehensive
factual investigation into the potentially infringing activity to determine whether the accused
infringer has without authority made, used, offered to sell, sold, or imported into the United
States the patented invention during the patent term; studying the specification, claims, and
prosecution history of the patent at issue to identify any potential issues (e.g., non-infringement
or invalidity issues) that may arise during the litigation and to analyze and resolve any likely
claim construction issues; comparing the accused product or process to each element of the
potentially infringed patent claims (as properly construed) to determine whether there is
infringement; analyzing any known prior art or other potential patent invalidity issues (e.g., non-
enablement) to determine whether the claims to be asserted are likely valid or invalid; analyzing
any prior litigations involving the patent at issue, including any prior judicial decisions (e.g.,
claim construction rulings) that may have an impact on the prospective litigation; interviewing
any likely fact witnesses, including the inventor(s) and the attorney(s) who prosecuted the patent
at issue, and collecting and analyzing relevant documents in their possession (such as laboratory
notebooks and invention disclosure forms); researching and analyzing any case law that may
have a significant impact on the infringement, validity, or enforceability of the patent at issue;

---

[3] To avoid confusion with the 59 "facts" identified by Monsanto, this section commences with
paragraph 60.

and consulting with outside patent counsel and obtaining written legal opinions from outside patent counsel prior to initiating the patent litigation. (App. 1 at ¶ 21).

61.    The product at issue in this case, GA21 corn, is a transgenic corn product that is tolerant to the herbicide glyphosate. On May 12, 2004, Syngenta publicly announced through a press release that it had acquired certain rights to GA21 corn technology from Bayer CropScience, a successor of Rhone-Poulenc Agro, S.A. ("RPA"). (App. 6).

62.    Monsanto sued Syngenta for infringement of the Shah patent in the District of Delaware on May 12, 2004, the same day as the press release noted above. *Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-CV-0305 (D. Del. filed May 12, 2004) ("the Shah action"). The Complaint alleged that Syngenta had infringed the Shah patent in connection with GA21 corn "by at least making and using chimeric genes and vectors and plants containing said genes and vectors." (App. 7 at ¶ 11).

DB01:2531478.1                                                                                      059155.1010



12



69.     Syngenta issued a press release on May 13, 2004, characterizing Monsanto's Shah patent lawsuit as groundless and reiterating that Syngenta would offer GA21 corn technology "from 2005." (App. 10).

70.     Monsanto and its counsel did not conduct a comprehensive factual investigation into Syngenta's allegedly infringing activity to determine whether Syngenta had, in fact, without authority made, used, offered to sell, sold, or imported into the United States the alleged invention claimed in the Shah patent. (App. 1 at ¶ 36). Syngenta's May 12, 2004, press release did not provide enough information for any reasonable litigant to conclude that, as of May 12, 2004, Syngenta had engaged in "making and using chimeric genes and vectors and plants containing said genes and vectors," as alleged in Monsanto's Complaint. (*Id.*).

71.     In a prior suit Monsanto filed against Bayer CropScience for alleged infringement of the Shah patent in connection with GA21 corn, the U.S. District Court for the Eastern District of Missouri construed the Shah patent claims in a manner that was largely adverse to Monsanto. (*See* App. 1 at ¶ 37; App. 3). The district court determined, for example, that the Shah claim term "chloroplast transit peptide" means a naturally occurring series of amino acids that causes the transport of a polypeptide into a chloroplast (App. 3 at 1), which was contrary to Monsanto's argued construction and would have signaled to a reasonable litigant that it was unlikely that

13

GA21 corn would be found to be within the scope of the Shah claims. In this Court's May 10, 2006 Memorandum Opinion, the Court adopted this same construction of the claim term "chloroplast transit peptide." (App. 11 at 16-17, n.8).

75.     The Syngenta press release that formed the alleged factual basis for Monsanto's lawsuit on the Shah patent was publicly released on the morning of May 12, 2004, and Monsanto filed its Complaint for infringement of the Shah patent at 4:30 p.m. the same day.  (*See* App. 1 at ¶ 41; App. 7 at 2).  Mr. Hoerner testified that ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████  That means that Monsanto and its counsel had to have spent less than a 12-hour period on a single day investigating whether Monsanto had an adequate factual and legal basis to file an infringement action against Syngenta, reaching the decision to bring suit, and preparing and filing the complaint.  (App. 1 at ¶ 41).  In view of the complex biotechnology and other issues involved, however, it might well have taken at least several days or even weeks to complete a reasonable pre-suit investigation, which should have considered both the validity of the asserted claims of the Shah patent and whether Syngenta was infringing the patent.  (*Id.*).  Based on the above facts, Monsanto did not conduct an adequate pre-suit investigation before filing the Shah action.  (*Id.*).

76.     Finally, as reflected by Mr. Hoerner's testimony, substantial evidence exists on which a jury could reasonably conclude that Monsanto's counsel did not properly analyze the legal significance of the undisputed fact (discussed below) that persons skilled the art in the mid-1980s could not transform monocot plants.  (*Id.* at ¶ 42).  That "monocot barrier" was critical to the invalidity of the asserted Shah claims for lack of enablement, as confirmed by this Court's subsequent summary judgment decision.  (*Id.*).  Importantly, all of the undisputed facts that

15

established the invalidity of the Shah patent claims were known to Monsanto *before* it filed the present Shah patent action. (*Id.*).

**B.    There Is Substantial Evidence that No Reasonable Litigant Could Have Realistically Expected the Shah Patent to Be Valid**

77.    The Shah patent, entitled "Glyphosate-Resistant Plants," describes the creation of dicot plants (such as petunia and tobacco) with enhanced glyphosate resistance. (App. 13). The application leading to the Shah patent was filed on July 7, 1986 (Application No. 879,814). (*Id.*). That application was a continuation-in-part (CIP) of Application No. 792,390, filed October 29, 1985, which itself was a CIP of Application No. 763,482, filed August 7, 1985. (*Id.*).

78.    In its lawsuit against Syngenta, Monsanto asserted infringement of claims 1, 5 and 6 of the Shah patent. (App. 1 at ¶ 45; App. 14). Those claims recite a chimeric plant gene formed of certain DNA sequences: a "promoter" sequence, a "coding" sequence, and a "non-translated region" that must provide glyphosate resistance in a plant cell. (App. 13). Figures 3, 4a and 4b of the Shah patent describe the structure of certain DNA sequences unrelated to GA21. (*Id.*).

79.    Monsanto, however, did not restrict its patent claims to the specific DNA sequences described in the Shah patent. (*Id.*). If it had, much narrower patent claims would have issued and, consequently, there would have been no possible basis for Monsanto to allege that the gene in GA21 corn infringed. (App. 1 at ¶ 46). Instead, in claim 1, Monsanto defined the claimed gene broadly in terms of the functions it must perform in "plant cells" (meaning any monocot or dicot plant cell). (*Id.*).

Claim 1, with the functional language highlighted, recites (App. 13 at col. 32) (emphasis added):

A chimeric plant gene which comprises:

16

(a)      a promoter sequence *which functions in plant cells*;

(b)      a coding sequence which causes the production of RNA, encoding a chloroplast transit peptide/5-enolpyruvylshikimate-3-phosphate synthase fusion polypeptide, *which chloroplast transit peptide permits the fusion polypeptide to be imported into a chloroplast of a plant cell*; and

(c)      a 3' non-translated region which encodes a polyadenylation signal *which functions in plant cells to cause the addition of polyadenylate nucleotides to the 3' end of the RNA*;

the promoter being heterologous with respect to the coding sequence and *adapted to cause sufficient expression of the fusion polypeptide to enhance the glyphosate resistance of a plant cell transformed with the gene.*

80.      Claims 5 and 6 depend from claim 1 and therefore incorporate by reference the same broad functional language. (*Id.*).

81.      Each example in the Shah patent where Monsanto transformed plant cells (actual or prophetic Examples 2-13) used the *Agrobacterium* method to transform dicot plant cells. (App. 1 at ¶ 49). It is undisputed that, as of the 1985-1986 filing dates of the Shah patent, *Agrobacterium* transformation only worked in dicots, not monocots such as corn. (*Id.*).

82.      The undisputed inability of persons skilled in the art to transform monocot plant cells during the 1985-1986 time period had been extensively litigated—including by Monsanto's subsidiary DeKalb—prior to Monsanto's patent suit against Syngenta. (*Id.* at ¶ 50). In those prior cases, the courts held that persons skilled in the art could not transform monocots such as corn with a foreign gene during the mid-1980s. *In re Goodman*, 11 F.3d 1046 (Fed. Cir. 1993) (relying on a 1987 article to find no effective method of transforming monocot cells as of 1985); *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335 (Fed. Cir. 2003) ("the *PGS* case") (affirming district court decision that claims to plants cells and methods of making plant cells were not enabled because, as of March 1987, no method existed for transforming monocot

17

plants or plant cells).  In the 2003 *PGS* case, Monsanto/DeKalb successfully argued that persons

skilled in the art could not transform monocots in the mid-1980s.  (App. 1 at ¶ 50).

83.     Mr. Hoerner admitted that he was aware of █████████████████

██████████████ i.e., the relevant date for patent validity (filing date of the Shah

patent) at the time of Monsanto's decision to sue Syngenta for alleged infringement of the Shah

patent.  (App. 8 at 96).

84.     Monsanto never disputed in the *Monsanto v. Syngenta* patent litigation that, as of

1986, no method existed for persons skilled in the art to transform monocot plant cells.  (App. 1

at ¶ 52).  Indeed, as mentioned above, Monsanto/DeKalb had successfully advocated this same

position in the *PGS* case.  (*Id.*).  In view of Monsanto's inability to dispute that critical fact, this

Court stated in its summary judgment opinion that "it is undisputed by plaintiffs that those of

skill in the art could not transform monocot plant cells with the chimeric gene claimed in the

[Shah] '835 patent as of the filing date of the '835 patent."  (App. 11 at 16).

85.     On May 10, 2006, this Court held asserted claims 1, 5 and 6 of the Shah patent

invalid for lack of enablement.  (App. 11).  This Court held that, because the asserted claims

required the claimed gene to function in any "plant cell transformed with the gene," including

transformed monocot cells, yet persons skilled in the art could not transform monocot plant cells

in 1985-1986, the asserted claims were not enabled for their full scope and were invalid under 35

U.S.C. § 112, first paragraph.  (*Id.*); *see, e.g., In re Vaeck*, 947 F.2d 488 (Fed. Cir. 1991).

86.     No reasonable litigant in Monsanto's position could have realistically expected

the asserted Shah patent claims to be held valid upon adjudication.  (App. 1 at ¶ 56).  The limited

undisputed facts relied upon by this Court in its summary judgment decision were known to

Monsanto before it filed the Shah patent suit against Syngenta.  (*Id.*).  Monsanto knew that

monocots could not be transformed as of 1985-1986 and did not dispute that fact in its opposition to Syngenta's motion for summary judgment. (*Id.*). In addition, this Court did not have to resolve any claim construction disputes in reaching its invalidity decision. (*Id.*). Monsanto never disputed that the claim term "plant cell" broadly encompassed both monocots and dicots. (*Id.*).

87.     This Court's decision holding the asserted Shah patent claims invalid for lack of enablement on summary judgment would have been reasonably foreseeable to any skilled patent attorney familiar with the undisputed facts discussed above and well-settled precedent concerning the enablement requirements of section 112. (*Id.* at ¶ 57). This Court applied well-established patent precedent in reaching its decision. (*Id.*). For example, the controlling enablement case law cited by this Court, including *In re Vaeck*, 947 F.2d 488 (Fed. Cir. 1991), was in existence at the time Monsanto initiated the Shah patent litigation in 2004 and was, according to Mr. Hoerner's testimony, known to him at the time he and others participated in the decision to bring suit against Syngenta. (*Id.*; App. 8 at 112). In any event, the *Vaeck* decision should have been known to Monsanto and its counsel as they were involved in repeated legal proceedings in the district courts, Patent Office and Federal Circuit involving the genetic modification of plants and the question of enablement of monocot transformation. (App. 1 at ¶ 57). No reasonable litigant in the area of genetic modification of organisms could have been unaware of *In re Vaeck* and the other controlling cases relied upon by this Court in its invalidity decision. (*Id.*).

88.     There is additional evidence on which to conclude that Monsanto's arguments in opposing summary judgment of non-enablement were unreasonable. (App. 1 at ¶ 58). Monsanto, for example, devoted a large portion of its brief to its contention that the Shah patent

discloses genes that provide glyphosate resistance. (*Id.*; App. 15 at 8-16). That argument was legally irrelevant and non-responsive to Syngenta's contention that monocot plant cells could not be *transformed* with any such genes, as the claims expressly require. (App. 1 at ¶ 58). In addition, in discussing the functional language of claim 1 of the Shah patent, Monsanto failed to address (or even mention) the critical claim language requiring that the gene function in a "plant cell transformed with the gene." (*Id.*; App. 15 at 3-4). Monsanto also disregarded the fact that the prosecution history of the Shah patent indicates that Monsanto deliberately chose to use functional claim language. (App. 1 at ¶ 58; App. 16) ("The applicant agreed to use function[al] language in [the] claims.").

89.     Monsanto also asserted that, because the Shah claims are directed to a gene that functions in transformed plant cells rather than to a plant cell transformed with a gene, the Shah patent need not be enabling for both monocots and dicots. (App. 1 at ¶ 59). Monsanto pointed out that the prior cases involving non-enablement with respect to monocots involved transformed plant and plant cell claims, not gene claims. (*Id.*). Monsanto's "gene claim versus plant cell claim" argument was legally groundless and illogical. (*Id.*). Monsanto provided no reason why a claim to a gene that must function in a plant cell *transformed* with the gene should be treated differently for enablement purposes from a claim (which Monsanto concedes would be invalid) directed to a plant cell *transformed* with a gene. (*Id.*). As this Court put it, Monsanto "cannot avoid the enabling requirement by claiming a gene that functions in plant cells rather than claiming plants transformed by a gene." (*Id.*; App. 11 at 16). Further, Monsanto did not have any case precedent which supported the alleged distinction in enablement between "gene claims" of the Shah patent and plant claims, whereas Monsanto knew of the *Vaeck* decision in which the

Federal Circuit held claims that were analogous to the asserted Shah patent claims invalid for lack of enablement. (App. 1 at ¶ 59).

90.    For the above reasons, a reasonable litigant would have known at the time of suit and throughout the litigation that the Shah action had no reasonable chance of success on the merits. A reasonable pre-suit investigation would have revealed that the litigation was objectively baseless. (*Id.* at ¶¶ 26-60).

### C.    Substantial Evidence Exists That DeKalb's Initiation of the Lundquist Patent Litigation Was Objectively Baseless

91.    On July 27, 2004, DeKalb, a wholly owned subsidiary of Monsanto, sued Syngenta in the Northern District of Illinois, alleging that Syngenta had infringed claims 1-9 of the Lundquist '880 patent and the claims of the Lundquist '863 patent in connection with Syngenta's proposed marketing of GA21 corn. *DeKalb Corp. v. Syngenta Seeds, Inc.*, No. 04-CV-50323 (N.D. Ill. filed July 27, 2004) ("the Lundquist action"). The Lundquist action was subsequently transferred to Delaware and consolidated with the Shah action. (App. 1 at ¶ 62).

92.    The Lundquist '880 and '863 patents disclose and claim a microprojectile bombardment process for producing a herbicide-resistant transgenic corn plant. (Apps. 17-18). Claim 1 of each patent defines a three-step process involving (i) "bombarding" corn cells with DNA, (ii) "selecting" transformed cells, and (iii) "regenerating" a fertile transgenic corn plant from those transformed cells. *(Id.)*. There are no product claims in the Lundquist '880 and '863 patents. *(Id.)*.

93.    The Lundquist '880 patent issued on July 23, 1996, and the Lundquist '863 patent issued on January 11, 2000. *(Id.)*.

94.    RPA and DeKalb collaborated to produce the original GA21 transformation event. *See Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335 (Fed. Cir. 2001).

21

RPA provided a gene construct that DeKalb incorporated into corn cells using the three-step transformation process described and claimed in the Lundquist patents. (*See id.*). ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

95.    DeKalb knew before initiating the Lundquist action that, to create the GA21 event (transformation of corn), it had used the bombardment process only once, in 1993-1994. (App. 1 at ¶ 66). DeKalb therefore also knew that Syngenta had *not* and could not have used that process with respect to any GA21 corn product. (*Id.*).

96.    DeKalb's First Amended Complaint asserted that Syngenta infringed "the claims" of the '863 patent and claims 1-9 of the '880 patent. (App. 1 at ¶ 67; App. 20). ████████

████████████████████████████████████████████████████

████████████████████████████████ In addition, DeKalb's own expert on infringement, Dr. John Finer, confirmed the absence of any infringement of the claimed process (App. 21 at 112):



97.     Dr. Finer similarly admitted ████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ Dr. Finer's testimony, confirming what DeKalb already knew prior to filing suit, is

compelling evidence that the Lundquist action was objectively baseless.  (App. 1 at ¶ 68).

98.     Because it is undisputed that Syngenta never carried out any of process steps (i)-

(iii) of claim 1 of either Lundquist patent in connection with GA21 corn, as a matter of well-

established patent law Syngenta could not be liable for direct infringement of claim 1 of either

Lundquist patent under section 271(a).  (*Id.* at ¶ 69); *see, e.g.*, *Canton Bio-Medical, Inc. v.

Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000) ("Infringement of process

inventions is subject to the 'all-elements rule' whereby each of the claimed steps of a patented

process must be performed in an infringing process, literally or by an equivalent of that

step . . . .").

99.     Further, because DeKalb (and not Syngenta) performed steps (i)-(iii) with respect

to GA21 corn between July 1993 and February 1994, no one (including DeKalb) used the

claimed process to make any GA21 corn product during the terms of the Lundquist '880 and

'863 patents (which issued in 1996 and 2000, respectively).  (App. 1 at ¶ 70).  That undisputed

fact, well known to DeKalb prior to filing suit, also compelled a conclusion of non-infringement

of claim 1 of both patents.  (*Id.*); *see* 35 U.S.C. § 271(a) (direct infringement requires

unauthorized use of the patented invention "during the term of the patent").

100.    When Syngenta moved for summary judgment of non-infringement, DeKalb did

not oppose Syngenta's motion with respect to claim 1 of the Lundquist patents.  (App. 1 at ¶ 71).

DB01:2531478.1                                                                                                          059155.1010

Presumably that was because, as DeKalb's own expert testified, Syngenta ████████████ ████████████████████████ (*Id.*).

101.    For the above reasons, sufficient evidence exists such that summary judgment is inappropriate on the question of whether a reasonable litigant would have known at the time of suit and throughout the litigation that DeKalb's assertion of infringement with respect to claim 1 of the Lundquist patents had no reasonable chance of success on the merits, and that a reasonable pre-suit investigation would have revealed that the litigation with respect to those claims was objectively baseless. (*Id.* at ¶ 72).

102.    DeKalb nonetheless argued that Syngenta had infringed claims 5-6 of the '863 patent and claims 4-9 of the '880 patent. (*Id.* at ¶ 73). This Court rejected DeKalb's infringement contentions as a matter of law on May 10, 2006, finding no disputed issues of fact and granting Syngenta's motion for summary judgment of non-infringement. (App. 11).

103.    Claims 5-6 of the '863 patent and claims 4-9 of the '880 patent are dependent claims that require process steps (i)-(iii) to be performed plus one or more additional steps. (*Id.* at 4-5). There was never any disagreement between the parties that claims 5-6 of the '863 patent are dependent claims. (App. 1 at ¶ 75). Therefore, a reasonable factfinder could conclude that at the time of suit and throughout the litigation DeKalb's assertion of infringement with respect to claims 5 and 6 of the '863 patent, which incorporated the bombardment, selection, and regeneration steps of claim 1, had no reasonable chance of success on the merits, and that a reasonable pre-suit investigation would have revealed that the litigation with respect to that patent was objectively baseless. (*Id.*).

104.    Claims 4-9 of the '880 patent depend from claim 1 of the patent. (App. 11; App. 1 at ¶ 76). Claim 4 refers to a previous claim (independent claim 1) and recites a further step

("obtaining progeny . . . "). (*See id.*); 35 U.S.C. § 112, ¶ 4. In addition, the phrase "said DNA"

in claim 4 must refer to the "DNA" recited in claim 1 or it would lack antecedent basis. (App. 1

at ¶ 76).

       105.    The prosecution history of the '880 patent before the U.S. Patent and Trademark

Office confirms that claims 4-9 depend from claim 1. (*Id.* at ¶ 77). Claim 4 of the '880 patent

issued from application claim 30, which originally read as follows (App. 1 at ¶ 77 (citing A167)):

> 30.    The process of claim 23 further comprising (iv) obtaining
> progeny from said fertile transgenic plant of step (iii), which
> comprise said DNA.

      106.    Claim 23, which became patent claim 1, recited process steps (i)-(iii). (*Id.* at ¶ 78

(citing A170)). Thus, application claim 30 (patent claim 4) expressly required the practice of

each of steps (i) through (iii) of application claim 23 (patent claim 1), plus a fourth step (step

"(iv)") of "obtaining progeny from said fertile transgenic plant of step (iii)." (*Id.* (citing A167,

170)). Consequently, application claim 30 (patent claim 4) was, at that time during prosecution,

written as a claim that depended from application claim 23 (patent claim 1). (*Id.*)

      107.    The Examiner mailed a Notice of Allowability on November 27, 1995, indicating

that application claims 23, 24, and 29-35 (renumbered as claims 1-9) were allowed and that

prosecution on the merits was "CLOSED." (*Id.* at ¶ 79 (citing A173)).

      108.    After prosecution was closed, DeKalb submitted an amendment under 37 C.F.R.

§ 1.312 ("Rule 312"). (*Id.* at ¶ 80 (citing A177-180)). Rule 312 allows claim amendments under

limited circumstances such as a change in wording that does not affect the scope of the claims.

(*Id.* at ¶ 80). DeKalb's amendment, filed on December 8, 1995, changed claim 30 (patent claim

4) as follows (additions underlined; deletions bracketed and struck through) (*Id.* (citing A178)):

> 30.    [~~The~~] <u>A</u> process [~~of claim 23 further~~] comprising [~~(iv)~~]
> obtaining progeny from [~~said~~] <u>a</u> fertile transgenic plant [~~of step~~

(iii)] obtained by the process of claim 23, which comprise said DNA.

109.    DeKalb represented that the amended claim did "not introduce new matter" and was "allowable without further search or consideration." (*Id.* at ¶ 81 (citing A180)).  The Examiner entered DeKalb's Rule 312 amendment on that basis, checking a box that stated the amendment had been "entered as directed to matters of form not affecting the scope of the invention." (*Id.* at ¶ 81 (citing A181)).

110.    The prosecution history therefore also constitutes admissible evidence that the Examiner and DeKalb treated claim 4 of the '880 patent as having the same scope as application claim 30 (before amendment). (*Id.* at ¶ 82).  As discussed above, claim 30 required the practice of steps (i)-(iii) of claim 23 (patent claim 1) plus a step "(iv)" of "obtaining progeny from said fertile transgenic plant of step (iii)." (*Id.* (citing A167, 170)).

111.    Further confirming that claim 4 is a dependent claim, the "Index of Claims" in the '880 file history identifies application claims 23 and 36 (patent claims 1 and 10) as independent claims. (*Id.* at ¶ 83).  The Index of Claims identifies the remaining claims, including application claim 30 (patent claim 4), as dependent claims. (*Id.* (citing Index of Claims (A193))); *Manual of Patent Examining Procedure*, § 717.04 at 700-156 (6th Ed. Rev. 2, July 1996) (A194-195) ("Independent claims should be designated in the Index of Claims by encircling the claim number in red ink.").

112.    In addition, in a prior litigation involving the '880 patent, DeKalb asserted that claim 4 was a dependent claim. (App. 1 at ¶ 84).  Further, the Illinois district court issued a claim construction ruling for the '880 patent that was entirely consistent with an interpretation of claim 4 as a dependent claim. (*Id.* (citing A128-129, 139, 146)).

26

113.   As this Court stated in its summary judgment ruling, the "effect of writing a claim in dependent form is that it 'shall be construed to incorporate by reference all the limitations of the claim to which it refers.'" (App. 11 at 5 (quoting 35 U.S.C. § 112, ¶ 4)). As a result, "all of the limitations set out in the independent claims must be met." (*Id.*).

114.   Because Syngenta never performed any of process steps (i)-(iii) and admittedly did not infringe claim 1 of the Lundquist patents, substantial evidence exists on which a reasonable factfinder could conclude that Monsanto knew that Syngenta did not infringe the asserted dependent claims of those process patents. (App. 11; App. 1 at ¶ 86); *see, e.g., Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed."); *see also Canton Bio-Medical*, 216 F.3d at 1370 (infringement of process inventions is subject to the "all-elements rule"). Because DeKalb asserted claim 1 of each Lundquist patent against Syngenta, knowing full well that Syngenta could not have infringed those claims, DeKalb's patent infringement suit was meritless under any legal theory or section of the Patent Act.

115.   DeKalb's contention that Syngenta infringed the dependent claims by "completing" the patented process contravened the patent statute. (App. 1 at ¶ 87). DeKalb's own activities, before the Lundquist patents issued in 1996 and 2000, cannot satisfy the statutory requirements for an infringing use by Syngenta of each step of the claimed process "without authority . . . during the term of the patent." (*Id.*); 35 U.S.C. § 271(a). DeKalb's use of its own process in 1993-1994 was neither "without authority" nor "during the term of the patent." (App. 1 at ¶ 87).

116.    DeKalb's allegation of "misappropriation" by Syngenta of GA21 corn was legally irrelevant to process patent infringement. (*Id.*). DeKalb never identified any decision in which a court found allegations of "misappropriation" to be relevant to process patent infringement. (*Id.*).

117.    This Court also rejected DeKalb's assertion that Syngenta directly infringed the Lundquist patents under 35 U.S.C. § 271(g). (App. 11; App. 1 at ¶ 89). Section 271(g) closed a loophole in U.S. process patent law and created liability for the importation, sale, or use in the United States of a product made abroad by a process patented in the United States. (App. 1 at ¶ 89). Section 271(g) is inapposite here because DeKalb never alleged that Syngenta (or anyone else) used the patented bombardment process without authority *anywhere* in the world (overseas or in the United States) in connection with GA21 corn. (*Id.*). Moreover, section 271(g) does not obviate the "all-elements rule" of infringement (which applies to process patents), the principle that dependent claims cannot be infringed unless the claims from which they depend have been infringed, or the requirement for infringement during the patent term. (*Id.*).

118.    No reasonable litigant in DeKalb's position could have realistically expected to prove that Syngenta had infringed the Lundquist patents in connection with GA21 corn. (App. 1 at ¶ 90). As with the Shah patent, the limited undisputed facts relied upon by this Court in its summary judgment decision were known to DeKalb before it filed the Lundquist action. (*Id.*). DeKalb knew that only DeKalb itself, not Syngenta, had used the claimed "bombardment" process in connection with GA21 corn and that DeKalb used the process only once, in 1993-1994, before either Lundquist patent issued. (*Id.*). DeKalb's own expert later candidly admitted that Syngenta ███████████ infringed claim 1 of either Lundquist patent. (*Id.*).

28

119.    DeKalb's fall-back position that the dependent claims were infringed even if the independent claims were not infringed was wholly unsupported and further supports the rejection of any motion for summary judgment by Monsanto. (App. 1 at ¶ 91). DeKalb has cited no decision finding infringement under such circumstances and such a finding would violate black-letter patent law. (*Id.*). Indeed, the Federal Circuit has consistently applied the *Wahpeton Canvas* rule that dependent claims cannot be infringed where the corresponding independent claims are not infringed, as illustrated by the decision in this case and the five Federal Circuit decisions cited on page 20 of Syngenta's opening summary judgment brief.[4] (*Id.*). DeKalb could cite no relevant authority to the contrary. (*Id.*). The dicta in *Wilson Sporting Goods* cited by DeKalb concerned alleged infringement under the doctrine of equivalents (DOE)—and DeKalb had never asserted infringement by Syngenta under the DOE. (*Id.*). Further, the *DuPont* district court case DeKalb relied upon was plainly distinguishable for the reasons stated by the district court in its decision. (*Id.*).

---

[4]    *See Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000) (stating that it is a "fundamental principle of patent law" that dependent claims cannot be infringed unless the claims from which they depend have been infringed); *Oak Tech., Inc. v. Int'l Trade Comm'n*, 248 F.3d 1316, 1323 n.4 (Fed. Cir. 2001) ("Because we affirm the Commission's conclusion that claim 1 is not infringed, we need not address the dependent claims separately."); *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1338 n.5 (Fed. Cir. 1998) ("QSound does not argue the remaining dependent claims separately, and because those claims necessarily must be narrower than the independent claims, they too cannot be infringed."); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994) ("Finally, because we have concluded that Nike's accused shoes do not infringe claim 1 of the '531 patent as a matter of law, it follows that claims 4 and 5, which depend from claim 1, also are not infringed."); and *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991) (holding that affirmance of summary judgment of non-infringement with respect to independent claim 1 of the asserted patent required affirmance of non-infringement with respect to dependent claim 2 of the patent).

120.     This Court's decision holding the Lundquist patent claims not infringed on summary judgment would have been reasonably foreseeable to any skilled patent attorney familiar with the undisputed facts discussed above and black-letter patent law concerning infringement under section 271. (App. 1 at ¶ 92). Again, this Court applied well-established patent principles in reaching its conclusion of non-infringement. (*Id.*). For example, the precedential cases cited by this Court, including *Wahpeton Canvas*, *Canton Bio-Medical*, *Joy Technologies*, and *General Foods*, were in existence at the time DeKalb initiated the Lundquist action and should have been known to DeKalb and its counsel. (*Id.*). This, too, constitutes substantial evidence that a reasonable litigant could have been unaware of those precedents relied upon by this Court in its non-infringement decision. (*Id.*).

121.     Therefore, a reasonable litigant would have known at the time of suit and throughout the litigation that DeKalb's assertion of infringement with respect to the Lundquist '863 and '880 patents had no reasonable chance of success on the merits, and that a reasonable pre-suit investigation would have revealed that the litigation was objectively baseless. (App. 1 at ¶ 93).

122.     The degree to which DeKalb's infringement contentions were legally unsupported is illustrated by the fact that DeKalb could cite no case in which process patent infringement was found even though the defendant (or its agent) did not carry out all of the steps of the claimed process; no case in which a dependent claim was held infringed even though there was no infringement of the corresponding independent claim; no case in which a defendant's liability for process patent infringement was predicated on the authorized acts of the plaintiff patent holder rather than unauthorized acts of the defendant (or its agent); no case in which process patent infringement was found even though one or more steps of the claimed process were carried out

before any patent issued; no case in which liability was found under section 271(g) where there was no unauthorized use of the patented process (including all claimed steps) by anyone, anywhere in the world, during the patent term; and no case in which the above circumstances were combined. (*Id.* at ¶ 94).

123.    For all the reasons set forth above, substantial evidence exists on which a reasonable factfinder could conclude that the Shah and Lundquist actions were objectively baseless as filed.

**D.    Summary Judgment Is Inappropriate Because Substantial Evidence Exists to Demonstrate that Monsanto/DeKalb's Maintenance of the Shah and Lundquist Patent Litigations Was Objectively Baseless**

124.    As discussed above, all of the facts and controlling patent law that made the Shah and Lundquist actions objectively baseless were in existence before Monsanto and DeKalb filed these lawsuits and would have been known to any reasonably skilled patent practitioner. (App. 1 at ¶ 96). There was no change whatsoever in any of those facts or the controlling case law during the continued pendency of the consolidated Shah and Lundquist actions. (*Id.*). This was *not* a case, for example, where the plaintiff patent holder needed a fair opportunity to conduct discovery relating to the accused product to determine whether there was infringement. (*Id.*). ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮

125.    The parties' summary judgment submissions confirm that Monsanto and DeKalb did not uncover any facts during discovery that supported their baseless patent suits. (App. 1 at ¶ 97). To the contrary, discovery simply confirmed there was no factual or legal basis for the lawsuits. (*Id.*). For example, as discussed above, DeKalb's expert, Dr. Finer, testified that Syngenta ▮▮▮▮▮▮▮ infringed claim 1 of the Lundquist patents. (*Id.*). Monsanto and DeKalb nonetheless continued to prosecute the Shah and Lundquist actions through their

31

unsuccessful appeals despite possessing undisputed facts showing that they could not reasonably expect success on the merits. (*Id.*).

### E. The Federal Circuit's Affirmance of This Court's Summary Judgment Rulings Further Establishes that the Monsanto/DeKalb Patent Actions Were Objectively Baseless

126.    After this Court's decision granting summary judgment in Syngenta's favor, Monsanto and DeKalb appealed to the U.S. Court of Appeals for the Federal Circuit. *Monsanto Co. v. Syngenta Seeds, Inc.*, No. 2006-1472 (Fed. Cir.). The Federal Circuit, however, flatly rejected each of Monsanto/DeKalb's arguments on appeal and affirmed this Court's summary judgment decisions in all respects. *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352 (Fed. Cir. 2007). Moreover, the court's grounds for affirmance were exactly the same grounds of non-infringement and patent invalidity that Syngenta had raised since the outset of this litigation and that this Court had accepted in its summary judgment rulings. Significantly, with respect to the Lundquist patents, the Federal Circuit held, *inter alia*, that DeKalb's infringement contentions were "*inconsistent with the basic rule for infringement*" and that "*[t]his case lacks any basis for infringement* under claim 1 because those steps occurred before patent issuance." *Monsanto Co.*, 503 F.3d at 1359-60. Thus, the Federal Circuit itself recognized that DeKalb's infringement contentions contravened fundamental principles of patent law and were baseless. The court's affirmance of the non-enablement decision with respect to the Shah patent was similarly based on undisputed facts and fundamental principles of patent law and followed exactly this Court's analysis of the enablement issue.

127.    Importantly, Monsanto/DeKalb not only lost their Federal Circuit appeal, but the undisputed facts that formed the basis for this Court's summary judgment rulings and the appeals court's affirmance of this Court's judgment were unquestionably known to Monsanto/DeKalb before they filed their baseless infringement actions. As discussed previously, DeKalb knew

before filing suit on the Lundquist patents that Syngenta had never used the claimed "bombardment" transformation process in connection with GA21 corn. Monsanto knew that persons skilled in the art could not transform monocots in the 1985-1986 time period as required for the asserted Shah claims to be valid. Syngenta will therefore establish at trial that no litigant having Monsanto/DeKalb's knowledge of the facts would have reasonably expected success on the merits, and that success on the merits was not in fact Monsanto/DeKalb's primary objective in bringing the patent actions.

**III.    STATEMENT OF LAW**

128.    Monsanto correctly states that in order to succeed on a sham litigation claim, a plaintiff must demonstrate by clear and convincing evidence that defendant's decision to bring the action was objectively baseless as a matter of law. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures*, 508 U.S. 49, 60 (1993). However, summary judgment is inappropriate where, as here, there are numerous disputed facts surrounding the filing of the litigation. *See, e.g., Goss Int'l Americas, Inc. v. MAN Roland, Inc.*, No. 03-CV-513, 2006 WL 1575287, at *3 (D.N.H. June 2, 2006) (Finding that "[s]ummary judgment on [a] sham litigation claim[] is precluded by the apparent evidence of a genuine dispute as to a material fact"). *In re Relafen Antitrust Litig.*, 346 F. Supp. 2d 349, 361 (D. Mass. 2004) (summary judgment denied where "the facts tending to establish the existence or want of existence of probable cause" were disputed).

129.    In the pages above, Syngenta amply demonstrated that nearly every fact cited in Monsanto's Sham Litigation Statement is either immaterial, legally irrelevant or in dispute. Moreover, and importantly, it is particularly inappropriate for the Court to entertain summary judgment motions on the sham litigation issue when Monsanto has not even addressed Syngenta's evidence of sham. Even if what Monsanto alleges in its paper is true, it would not be

33

entitled to judgment as a matter of law on the sham issue in view of Syngenta's counterevidence (whether disputed by Monsanto or not).

## **CONCLUSION**

130.    Based on the foregoing, Syngenta respectfully urges the Court to prohibit summary judgment practice with respect to Syngenta's sham litigation contentions.


YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ *Michele Sherretta Budicak*
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
mbudicak@ycst.com

*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY  10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington, DC  20004-2634
(202) 508-8000

Dated:  March 21, 2008

DB01:2531478.1                                                                    059155.1010

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on March 28, 2008, copies of the foregoing document will be served by e-mail on the above listed counsel.  I additionally certify that copies of the foregoing document are being served on the following non-registered participants as indicated below:

### BY E-MAIL

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C.  20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Michele Sherretta Budicak_
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
mbudicak@ycst.com

DB01:2105610.1

059155.1010