# TABS 1-2

# REDACTED IN THEIR ENTIRETY

# TAB 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED

JUL X 2 2003

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

MONSANTO COMPANY, et al.,    )
                             )
        Plaintiffs,          )
                             )
    vs.                      )    Case No. 4:01CV1825  CDP
                             )
BAYER CROPSCIENCE LP,        )
                             )
        Defendant.           )

## CLAIMS CONSTRUCTION ORDER

Having considered the parties' filings and heard their arguments, and for the reasons stated in open court,

**IT IS HEREBY ORDERED** that the disputed terms, as used in the claims at issue, are construed as follows:

The term "chimeric gene" means a gene that is comprised of parts that do not occur together in nature.

The term "chimeric plant gene" means a chimeric gene that is expressible in a plant.

The term "chloroplast transit peptide" means a naturally occurring series of amino acids that causes the transport of a polypeptide into a chloroplast.

The term "chloroplast transit peptide/5-enolpyrulvylshikimate-3-phosphate synthase [EPSPS] fusion polypeptide" means a polypeptide that has at least two



parts, which must include a chloroplast transit peptide (as defined above) joined to an EPSPS, where the chloroplast transit peptide and EPSPS are not found together in nature.

The term "permits the fusion polypeptide to be imported into a chloroplast of a plant cell" means the function of a chloroplast transit peptide (as defined above).

These definitions apply to the use of these terms each time they appear in each of the claims at issue, and will be incorporated into the jury instructions.

**IT IS FURTHER ORDERED** that a telephone conference will be held with all counsel on **Friday, August 1, 2003** at **11:00 a.m.** to discuss any modifications to the Case Management Order in this case necessitated by my granting the parties' request to delay resolution of these issues. Counsel for Bayer is responsible for placing the call and assuring that all necessary counsel are included, and I expect counsel to confer in advance and attempt to reach agreement on any proposed modifications.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of July, 2003.

- 2 -

UNITED STATES DISTRICT COURT -- EASTERN MISSOURI
INTERNAL RECORD KEEPING

AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE
FOLLOWING INDIVIDUALS ON 07/02/03 by bkirklan
           4:01cv1825    Monsanto Company vs Bayer CropScience LP

15:1126 Patent Infringement

IF THIS IS A FINAL JUDGMENT YOU MUST SEND THE AO120
PATENT/TRADEMARK FORM TO:
                        COMMISSIONER OF PATENTS & TRAKEMARKS
                        WASHINGTON, DC  20231

| | |
|---|---|
| Jeanine Bermel - 2622 | Fax: 314-480-1505 |
| Joseph Conran - 6455 | Fax: 314-480-1505 |
| Francis DiGiovanni - | Fax: 302-658-5614 |
| Daniel Harbison - | Fax: 302-658-5614 |
| Connie Jones - | Fax: 713-787-1440 |
| Jeffrey Kass - 60672 | Fax: 314-621-5065 |
| Susan Knoll - | Fax: 713-787-1440 |
| John Lynch - | Fax: 713-787-1440 |
| Melinda Patterson - | Fax: 713-787-1440 |
| George Pazuniak - | Fax: 302-658-5614 |
| John Quinn - 4110 | Fax: 314-612-2280 |
| Steven Spears - | Fax: 713-787-1440 |
| Jay Summerville - 4502 | Fax: 314-621-5065 |
| Lisa Wood - 2707 | Fax: 314-621-5065 |

SCANNED & FAXED BY:
JUL - 2 2003
SAJ

# TABS 4-5

# REDACTED IN THEIR ENTIRETY

# TAB 6

Syngenta International AG
Media Office
CH-4002 Basel
Switzerland
Telephone:  +41 61 323 23 23
Fax:        +41 61 323 24 24
www.syngenta.com

# syngenta

**Media Release**

## Syngenta acquires glyphosate tolerance technology for corn

### Basel, Switzerland, 12 May 2004

Syngenta announced today that it has acquired rights to a commercially successful glyphosate tolerance technology in corn from Bayer CropScience. The technology, called GA21, enables farmers to control weeds in corn with post emergence applications of the non-selective herbicide glyphosate. Syngenta will offer the technology in NK® brand hybrids and through licenses with other seed companies. Financial terms of the transaction were not disclosed.

"This transaction gives Syngenta fast-track entry into an important segment of the corn crop protection market", said David Jones, Head of Business Development for Syngenta. "This valuable technology further strengthens our already broad product portfolio of corn hybrids, traits and crop protection products."

Syngenta is a world-leading agribusiness committed to sustainable agriculture through innovative research and technology. The company is a leader in crop protection, and ranks third in the high-value commercial seeds market. Sales in 2003 were approximately $6.6 billion. Syngenta employs some 19,000 people in over 90 countries. Syngenta is listed on the Swiss stock exchange (SYNN) and in New York (SYT). Further information is available at www.syngenta.com.

| Analyst/Investor Enquiries: | Jonathan Seabrook (Switzerland) | +41 61 323 7502 |
| | Jennifer Gough (Switzerland) | +41 61 323 5059 |
| | Rhonda Chiger (USA) | +1 (917) 322 2569 |
| Media Enquiries: | Markus Payer (Switzerland) | +41 61 323 2323 |
| | Sarah Hull (USA) | +1 (202) 347 8348 |

Cautionary Statement Regarding Forward-Looking Statements

This document contains forward-looking statements, which can be identified by terminology such as 'expect', 'would', 'will', 'potential', 'plans', 'prospects', 'estimated', 'aiming', 'on track' and similar expressions. Such statements may be subject to risks and uncertainties that could cause the actual results to differ materially from these statements. We refer you to Syngenta's publicly available filings with the U.S. Securities and Exchange Commission for information about these and other risks and uncertainties. Syngenta assumes no obligation to update forward-looking statements to reflect actual results, changed assumptions or other factors. This document does not constitute, or form part of, any offer or invitation to sell or issue, or any solicitation of any offer, to purchase or subscribe for any ordinary shares in Syngenta AG, or Syngenta ADSs, nor shall it form the basis of, or be relied on in connection with, any contract therefore.

RESTRICTED CONFIDENTIAL

SYN-AT-003232568

# TAB 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC,

        Plaintiffs,

    v.

SYNGENTA SEEDS, INC.; and
SYNGENTA BIOTECHNOLOGY, INC.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. _04 - 305_

**JURY TRIAL DEMANDED**

COPY

## COMPLAINT

Plaintiffs, Monsanto Company and Monsanto Technology LLC (collectively "Monsanto"), bring this action against Defendants Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. (collectively "Defendants") and alleges as follows:

## THE PARTIES

1.    Plaintiffs Monsanto Company and Monsanto Technology LLC are both corporations organized and existing under the laws of the State of Delaware, with their principal places of business at 800 North Lindbergh Boulevard, St. Louis, Missouri 63167.

2.    On information and belief, Defendant, Syngenta Seeds, Inc. ("Syngenta Seeds"), is a corporation organized and existing under the laws of the State of Delaware, with its offices at 7500 Olson Memorial Highway, Golden Valley, Minnesota 55427

3.    On information and belief, Defendant, Syngenta Biotechnology, Inc. ("Syngenta Biotechnology"), is a corporation organized and existing under the laws of the State of Delaware, with offices located at 3054 Cornwallis Road, Research Triangle Park, North Carolina 27709-2257.

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2004 MAY 12  PM 4: 30

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35, United States Code § 1 et seq.  Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338.

5.      Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

## BACKGROUND

6.      Plaintiff Monsanto is a leader in the development of crops that have been genetically engineered to express new traits of value to farmers, such as herbicide resistance.  Products developed by Monsanto include corn, soybeans and other crops containing genes that confer resistance to the herbicide glyphosate.   Glyphosate is a commercial herbicide that kills plants by binding to a critical enzyme in the plant called "EPSPS." Monsanto's glyphosate herbicide is sold under the trademark Roundup® and the genetically engineered products made by Monsanto that have the glyphosate resistance trait are sold under the trademark Roundup Ready®.   Roundup Ready® products have been a recognized commercial success.  Since the introduction of Roundup Ready® crops in 1996, farmers have consistently increased the number of acres they plant in the United States with Roundup Ready® products.

7.      Recognizing the value of Monsanto's glyphosate resistance technology, Defendants have attempted to make and use glyphosate resistant genes and crops and have conspired with others to make glyphosate resistant crops in violation of Monsanto's patent rights.

2

**THE INFRINGEMENT**

8.     Monsanto realleges and incorporates by reference each of paragraphs 1-7 above as set forth herein.

9.     Monsanto has been the owner of all right, title and interest to and under United States Patent No. 4,940,835 entitled "Glyphosate-Resistant Plants."   U.S. Patent 4,940,835 ("the '835 Patent") was duly and legally issued to Monsanto on July 10, 1990. A copy of the patent is attached as Exhibit 1 to this Complaint.

10.    Defendants do not have any license or other right to practice the claims of U.S. Patent No. 4,940,835.

11.     Upon information and belief, Defendants have infringed and continue to infringe one or more claims of the '835 Patent by at least making and using chimeric genes and vectors and plants containing said genes and vectors, and will continue to do so unless enjoined by this Court.

12.     Upon information and belief, Defendants have infringed one or more of the claims of the '835 Patent by at least inducing others and contributing to the infringement by others.

13.    Defendants' acts of infringement of the '835 Patent, upon information and belief, have been carried out in deliberate and willful disregard of Monsanto's patent rights.

**JURY DEMAND**

14.    Pursuant to Rule 38(b), Fed. R. Civ. P., Plaintiffs request a trial by jury.

**PRAYER FOR RELIEF**

WHEREBY PLAINTIFFS PRAY FOR THE FOLLOWING RELIEF:

A.     A judgment that Defendants have infringed the '835 Patent;

3

B.    A judgment that Defendants have willfully and deliberately infringed the '835 Patent;

C.    A declaration by the Court that any making, using, selling or offering for sale by Defendants of any products that are within the scope of the '835 Patent would constitute an act of infringement of the '835 Patent;

D.    A preliminary and final injunction enjoining Defendants and all those in privy with it from infringing, from inducing infringement, and from contributing to the infringement of the '835 Patent;

E.    An award of compensatory and exemplary damages, but not less than a reasonable royalty, resulting from Defendants' infringement, including allowance of multiplied damages based on Defendants' willful and deliberate infringement;

F.    An award of interest, costs, and attorneys' fees; and

G.    Such other and further relief as this Court shall deem just and proper.

Respectfully submitted,

OF COUNSEL:                              POTTER ANDERSON & CORROON LLP

John F. Lynch
Susan K. Knoll
Steven G. Spears                         By: _____
HOWREY, SIMON, ARNOLD &                      Richard L. Horwitz (#2246)
WHITE, LLP                                   David E. Moore (#3983)
750 Bering Drive, #400                       Hercules Plaza, 6th Floor
Houston, Texas 77057                         1313 N. Market Street
Telephone (713) 787-1400                     Wilmington, DE 19801
                                             Telephone (302) 984-6000

Dated: May 12, 2004                      Attorneys for Plaintiffs

634554

4

# TABS 8-9

# REDACTED IN THEIR ENTIRETY

# TAB 10



Syngenta International AG
Media Office
CH-4002 Basel
Switzerland
Telephone: +41 61 323 23 23
Fax:      +41 61 323 24 24
www.syngenta.com

**Media Release**

## Syngenta refutes Monsanto lawsuit as totally without merit

**Basel, Switzerland, 13 May 2004**

Syngenta has announced today that it considers a lawsuit filed against it by US competitor Monsanto as groundless.

"This case is totally without merit," said David Jones, Head of Business Development at Syngenta. "We are delighted to have secured worldwide ownership of commercially proven glyphosate tolerance technology for corn which we intend to make available to growers in the 2005 season. We are entirely satisfied with our decision and have the intellectual property rights we need to commercialize this product. Monsanto's lawsuit is a flagrant attempt to intimidate customers and restrict choice in the market."

Syngenta had announced on 12 May that it had acquired rights to a commercially successful glyphosate tolerance technology in corn from Bayer CropScience. The technology, called GA21, enables farmers to control weeds in corn with post emergence applications of the non-selective herbicide glyphosate. Syngenta will offer the technology in its NK® brand hybrids, through the Garst brand[1] and through licenses with other seed companies from 2005.

Syngenta is a world-leading agribusiness committed to sustainable agriculture through innovative research and technology. The company is a leader in crop protection, and ranks third in the high-value commercial seeds market. Sales in 2003 were approximately $6.6 billion. Syngenta employs some 19,000 people in over 90 countries. Syngenta is listed on the Swiss stock exchange (SYNN) and in New York (SYT). Further information is available at www.syngenta.com.

| | | |
|---|---|---|
| Analyst/Investor Enquiries: | Jonathan Seabrook (Switzerland) | +41 61 323 7502 |
| | Jennifer Gough (Switzerland) | +41 61 323 5059 |
| | Rhonda Chiger (USA) | +1 (917) 322 2569 |
| Media Enquiries: | Markus Payer (Switzerland) | +41 61 323 2323 |
| | Sarah Hull (USA) | +1 (202) 347 8348 |

**Cautionary Statement Regarding Forward-Looking Statements**

This document contains forward-looking statements, which can be identified by terminology such as 'expect', 'would', 'will', 'potential', 'plans', 'prospects', 'estimated', 'aiming', 'on track' and similar expressions. Such statements may be subject to risks and uncertainties that could cause the actual results to differ materially from these statements. We refer you to Syngenta's publicly available filings with the U.S. Securities and Exchange Commission for information about these and other risks and uncertainties. Syngenta assumes no obligation to update forward-looking statements to reflect actual results, changed assumptions or other factors. This document does not constitute, or form part of, any offer or invitation to sell or issue, or any solicitation of any offer, to purchase or subscribe for any ordinary shares in Syngenta AG, or Syngenta ADSs, nor shall it form the basis of, or be relied on in connection with, any contract therefore.

---

[1] Subject to the regulatory approval of the acquisition of Garst by Syngenta as announced on 12 May 2004

SYN-AT-003043640

# TAB 11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY and MONSANTO )
TECHNOLOGY LLC,                )
                              )
            Plaintiffs,        )
                              )
      v.                       )
                              )
SYNGENTA SEEDS, INC.,          )
SYNGENTA BIOTECHNOLOGY, INC.,  )
et al.                         )
                              )
            Defendants.        )
                              )
_____)    Civ. No. 04-305-SLR
DEKALB GENETICS CORPORATION,   )    (lead case)
                              )
            Plaintiff,         )
                              )
      v.                       )
                              )
SYNGENTA SEEDS, INC.,          )
SYNGENTA BIOTECHNOLOGY, INC.,  )
et al.                         )
                              )
            Defendants.        )

Richard L. Horwitz, Esquire and David E. Moore, Esquire of
Potter, Anderson & Corroon LLP, Wilmington, Delaware.  Counsel
for Plaintiff.  Of Counsel:  Susan K. Knoll, Esquire, Thomas A.
Miller, Esquire, Melinda Patterson, Esquire, Stephen E. Edwards,
Esquire and Steven G. Spears, Esquire of Howrey LLP, Houston,
Texas.

John W. Shaw, Esquire and Karen E. Keller, Esquire of Young,
Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware.  Counsel
for Defendant.  Of Counsel:  Michael J. Flibbert, Esquire, Howard
W. Levine, Esquire and Jennifer A. Johnson, Esquire of Finnegan,
Henderson, Farabow, Garrett & Dunner, LLP, Washington, D.C..

MEMORANDUM OPINION

Dated: May 10 , 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

On May 12, 2004, Monsanto Company, together with Monsanto Technology LLC, sued Syngenta Seeds, Inc., Syngenta Biotechnology Inc., Golden Harvest Seeds, Inc. Garwood Seed Co., Golden Seed Company, LLC (collectively called defendants) in this court for infringement of U.S. Patent No. 4,940,835 (the "'835 patent") issued to Shah et al.. On July 27, 2004, DeKalb Genetics Corporation, a wholly owned subsidiary of Monsanto Company, sued Syngenta in the Northern District of Illinois, alleging that Syngenta had infringed U.S. Patent Nos. 5,538,880 (the "'880 patent") and 6,013,863 (the "'863 patent") issued to Lundquist et al. (collectively referred to as the "Lundquist patents"). Both actions charged defendants with patent infringement in the use of GA21 corn, which is a genetically modified corn tolerant to the herbicide glyphosate. The Illinois district court granted defendants' motion to transfer the action to this court. (D.I. 92) This court consolidated the two actions on August 23, 2005.[1] (D.I. 111) Before the court are defendants' two motions for summary judgment of noninfringement of the Lundquist patents and nonenablement of the '835 patent. (D.I. 208, 213)

## II.   BACKGROUND

The product at issue in this case, GA21 corn, is a

---

[1]Monsanto Company, Monsanto Technology LLC and DeKalb Genetics Corporation are collectively referred to as "plaintiffs."

transgenic corn product that is tolerant to the herbicide glyphosate. (D.I. 209) The original GA21 transformation event resulted from a collaboration between Rhone-Poulenc Argo, S.A. ("RPA") and DeKalb in which RPA provided the gene construct that was incorporated by DeKalb into the transformed corn plant. (Id. at 5) To transform the corn cells with the RPA construct, DeKalb employed the three-step "bombardment" method of claim 1 of the Lundquist patents. (Id. at 5-7) According to plaintiff DeKalb, steps (i)-(iii) of claim 1 in the Lundquist patents were performed on July 15, 1993, July 27, 1993 and February 25, 1994, respectively. (Id. at 8) Plaintiff DeKalb asserts that after the issuance of the patents, defendants performed steps using the GA21 corn product that infringe the asserted claims. Plaintiff DeKalb asserts infringement of claims 5 and 6 of the '863 patent and claims 4-9 of the '880 patent.

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

"Facts that could alter the outcome are 'material,' and disputes
are 'genuine' if evidence exists from which a rational person
could conclude that the position of the person with the burden of
proof on the disputed issue is correct." Horowitz v. Fed. Kemper
Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal
citations omitted).  If the moving party has demonstrated an
absence of material fact, the nonmoving party then "must come
forward with 'specific facts showing that there is a genuine
issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R.
Civ. P. 56(e)).  The court will "view the underlying facts and
all reasonable inferences therefrom in the light most favorable
to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63
F.3d 231, 236 (3d Cir. 1995).  The mere existence of some
evidence in support of the nonmoving party, however, will not be
sufficient for denial of a motion for summary judgment; there
must be enough evidence to enable a jury reasonably to find for
the nonmoving party on that issue. See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249 (1986).

IV.  DISCUSSION

   A.  NonInfringement of the Lundquist Patents

   Defendants assert that they cannot infringe the asserted
claims for several reasons.  First, because plaintiff DeKalb
performed steps (i)-(iii) of the claims 1, defendants cannot be
liable for infringing those claims and, therefore, cannot be

3

liable for infringing any claims dependent on the claims 1.
Defendants also argue that they cannot be liable under § 271(g)
because all the steps alleged to infringe the process claims were
performed in the United States.  Defendants' motion for summary
judgement for noninfringement of the Lundquist patents raises
several legal issues properly resolved by the court.

### 1.    Infringement of dependent claims

The initial question is whether the asserted claims are
dependent claims.  Claims 4-9 of the '880 patent read:

> 4.    A process comprising obtaining progeny from a
> fertile transgenic plant obtained by the process of
> claim 1 which comprise said DNA.
> 5.    The process of claim 4 wherein said progeny are
> obtained by crossing said fertile transgenic plant with
> an inbred line.
> 6.    The process of claim 4 comprising obtaining seed
> from said progeny and obtaining further progeny plants
> comprising said DNA from said seed.
> 7.    The process of claim 5 wherein the progeny
> obtained are crossed back to the inbred line, to obtain
> further progeny which comprise said DNA.
> 8.    The process of claim 6 wherein seeds are obtained
> from said further progeny plants and plants comprising
> said DNA are recovered from said seed.
> 9.    The process of claim 7 wherein said further
> progeny are crossed back to the inbred line to obtain
> progeny which comprise said DNA.

('880 patent, col. 22, ll. 61-3)    Claims 5-6 of the '863 patent
read:

> 5.    The process of claim 1 further comprising
> obtaining transgenic glyphosate resistant progeny
> plants of subsequent generations from said fertile
> plant.
> 6.    The process of claim 5 further comprising
> obtaining seed from one of said progeny plants.

4

('863 patent, col. 30, ll. 14-6)

The patent statute, 35 U.S.C. § 112, ¶ 4, provides that "a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed." Claims 5 and 6 of the '863 patent follow this form exactly and, therefore, are dependent on claim 1 either directly (claim 5) or indirectly (claim 6). Claims 5-9 of the '880 patent, like claims 5 and 6 of the '863 patent, are clearly dependent on claim 4. If claim 4 is dependent on claim 1, claims 5-9 are all indirectly dependent on claim 1. Claim 4 of the '880 patent does not exactly follow the form specified in the statute but, nevertheless, is a dependent claim. Claim 4 refers to claim 1 ("a fertile transgenic plant obtained by the process of claim 1") and recites a further step ("obtaining progeny"). Furthermore, claim 4 includes the phrase "said DNA" which refers back to the DNA of claim 1. All the asserted claims are dependent from claim 1 of their respective patents.

The effect of writing a claim in dependent form is that it "shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112, ¶ 4. As a result, all of the limitations set out in the independent claims must be met. Claim 1 of the '880 patent reads:

> A process for producing a fertile transgenic *Zea mays* plant comprising the steps of (i) bombarding intact

5

regenerable *Zea mays* cells with DNA-coated
microprojectiles, (ii) identifying or selecting a
population of transformed cells, and (iii) regenerating
a fertile transgenic plant therefrom, wherein said DNA
is transmitted through a complete sexual cycle of said
transgenic plant to its progeny, and imparts herbicide
resistance thereto.

('880 patent, col. 22, ll. 48-55)  Claim 1 of the '863 patent

reads:

A process for producing a fertile transgenic *Zea mays*
plant comprising the steps of (i) bombarding intact
regenerable *Zea mays* cells with DNA-coated
microprojectiles, wherein said DNA comprises at least a
screenable marker gene; (ii) selecting a population of
transformed cells expressing the selectable marker
gene; and (iii) regenerating a fertile transgenic plant
therefrom, wherein said DNA is expressed so as to
impart glyphosate resistance to said transgenic plant
and is transmitted through a normal sexual cycle of
said transgenic plant to progeny plants.

('863 patent, col. 29 l. 26-col. 30 l. 6)  It is not disputed

that only plaintiff DeKalb performed steps (i)-(iii) set out in

claim 1 of both patents.

There are two fundamental principles which find general

application to the facts of record.  First, "[i]t is axiomatic

that dependent claims cannot be found infringed unless the claims

from which they depend have been found . . . infringed."

Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1553

(Fed. Cir. 1989).[2]  The second principle that must be examined is

_____

[2]Plaintiff asserts that this proposition has been narrowed
by the Federal Circuit in Wilson Sporting Goods Co. v. David
Geoffrey & Assoc., 904 F.2d 677 (Fed. Cir. 1990).  The Court in
that case found that the independent claim of the patent in suit
was not infringed because it could not be given a range of

6

the "all elements rule". The Federal Circuit has held that
"[i]nfringement of process inventions is subject to the 'all-elements rule' whereby each of the claimed steps of a patented
process must be performed in an infringing process, either
literally or by an equivalent of that step." Canton Bio-Medical,
216 F.3d at 1370. In addition, "[a] method claim is directly
infringed only by one practicing the patented method." Joy
Techs., 6 F.3d at 775. The Federal Circuit has explained in
General Foods Corp. v. Studiengesellschaft Kohle mbH, 972 F.2d
1272 (Fed. Cir. 1992):

> It cannot be said - though it often is, incorrectly, by
> the uninitiated - that a part of a claim is "claimed"
> subject matter. For example, a claim to a process
> comprising the step A followed by step B followed by
> step C defines, as a matter of law, only the A-B-C
> process and one cannot properly speak of any single
> step as being "claimed," for it is not; all that is
> claimed is the process consisting of the combination of
> all three steps. Such a claim, therefore, creates no
> patent right or monopoly in step A, no right to prevent
> others from using step A apart from the combination of
> steps A-B-C. Step A is not "patented."

Id. at 1274.

Clearly, plaintiff DeKalb did not engage in any infringing
activity when it performed steps (i)-(iii) of the claims 1.
Nevertheless, plaintiffs argue, based on the reasoning of a

---

equivalents broad enough to encompass the accused device without
also covering the prior art. Although the Federal Circuit went
on to determine that it had to consider whether the dependent
claims might be infringed, even though the independent claim was
not, this court declines to broaden the scope of this holding to
the facts at bar.

single district court case, <u>E.I. DuPont DeNemours & Co. v.</u>
<u>Monsanto</u>, 903 F.Supp. 680 (D. Del. 1995),[3] that defendants should
be held liable for infringement even though they performed only
the final steps of the claimed process and even though the first
steps of the process were performed by plaintiff DeKalb.    In
<u>DuPont</u>, plaintiff DuPont owned patents covering a three-step
process for manufacturing certain stain-resistant nylon carpet
fibers.   Under a toll processing agreement with CaMac, Monsanto
practiced step (a) of the patented process.   It then shipped the
product resulting from step (a) to CaMac, who performed steps (b)
and (c).   CaMac then sold the resulting fibers.   CaMac was held
liable for direct infringement of the process patent under   §
217(a) because "a party cannot avoid liability for infringement
by having someone else perform one or more steps of a patented
process for them."   <u>Id.</u> at 735.

      The facts reviewed by the court in <u>DuPont</u>, of course, are
distinguishable from those at bar.   In <u>DuPont</u>, all of the steps
of the claimed process were performed by parties who had not been
given permission to so act.   In the case at bar, the critical
initial steps of the claimed process were performed by the patent
owner, at a time before the patents were even issued.   These
facts are more suited to a business tort than patent infringement
litigation, and the court declines to create an exception to

_____

      [3]A non-binding, non-precedential opinion.

fundamental principles of patent law to reach what, in fact, might be the fair result. Therefore, the court concludes that, under the "all elements rule", defendants are not liable for infringement of the asserted claims of the '863 and '880 patents.

### 2.    Section 102(g)

The final issue raised in connection with the Lundquist patents is whether a patented process performed in the United States constitutes infringement under § 271(g). This court has previously addressed the issue in British Telecommunications v. Qwest Communications Inc., Nos. 03-526-SLR, 03-527-SLR, 03-528-SLR, slip op. at 7 (D. Del. Feb. 24, 2004). "In the case at bar, the patented methods at issue are being used, if at all, in this country; consequently, the fundamental purpose underlying passage of the statute [§ 271(g)] has absolutely no application." Id. The court finds no precedent to now mandate a different conclusion. If the accused infringement of the process claims occurs in the United States, defendant are not liable under § 271(g).[4]

### B.    Enablement of the '835 Patent

It is undisputed that claims 5 and 6 of the '835 depend from claim 1. All three claims are directed to a chimeric gene. Claim 1 reads:

------

[4]As is stated in British Telecommunications, remedies already exist for domestic use of a patented process.

9

> 1. A chimeric plant gene which comprises:
> (a) a promoter sequence which functions in plant cells;
> (b) a coding sequence which causes the production of
> RNA, encoding a chlorplast transit peptide/5-
> enolpyruvylshikimate-3-phosphate synthase fusion
> polypeptide, which chlorplast transit peptide permits
> the fusion polypeptide to be imported into a
> chlorplast of a plant cell; and
> (c) a 3' non-translated region which encodes a
> polyadenylation signal which functions in plant cells
> to cause the addition of polyadenylate nucleotides to
> the 3' end of the RNA;
> the promoter being heterologous with respect to the
> coding sequence and adapted to cause sufficient
> expression of the fusion polypeptide to enhance the
> glyphosate resistance of a plant cell transformed with
> the gene.

('835 patent, col. 32, ll. 31-47)  The chimeric gene is claimed

using functional language.  "The functional language is, of

course, an additional limitation in the claim."  K-2 Corp. v.

Salomon, 191 F.3d 1356, 1363 (Fed. Cir. 1999).  The phrase,

"which chloroplast transit peptide permits the fusion polypeptide

to be imported into a chloroplast of a plant cell," modifies the

coding sequence of the gene.  This functional language requires

that the gene contain a coding sequence for RNA encoding a

chloroplast transit peptide ("CPT") that permits the fusion

polypeptide to be imported into a chloroplast of "a plant cell."

The claim also describes the promoter being adapted to cause

sufficient expression of the fusion polypeptide to enhance

glyphosate resistance of "a plant cell transformed with the

gene."  Thus, the claim uses the broad language of "a plant cell"

in its limitations.

The issue raised at bar is how the enablement requirement plays out with broad functional language.

> Functional terminology may render a claim quite broad. By its own literal terms a claim employing such language covers any and all embodiments which perform the recited function.  Legitimate concern often properly exists, therefore, as to whether the scope of protection defined thereby is warranted by the scope of enablement indicated and provided by the description contained in the specification.

In re Swinehart, 439 F.2d 210, 1032 (C.C.P.A. 1971).  Section 112 requires that the patent specification enable "those skilled in the art to make and use the full scope of the claimed invention without 'undue experimentation.'"  Koito Mfg. Ltd. v Turn-Key-Tech, LLC, 381 F.3d 1142, 1155 (Fed. Cir. 2004) (citing Genentech, Inc. v. Novo Nordisk A/S, 108 F.3d 1361, 1365 (Fed. Cir. 1997); Amgen Inc v. Hoechst Maion Roussel, Inc., 314 F.3d 1313, 1334 (Fed. Cir. 2003) (holding that the enablement requirement requires that the specification teach those in the art enough that they can make and use the invention without "undue experimentation").  "The scope of the [patent] claims must be less than or equal to the scope of the enablement.  The scope of enablement, in turn, is that which is disclosed in the specification plus the scope of what would be known to one of ordinary skill in the art without undue experimentation."  Nat'l Recovery Techs. v. Magnetic Separation Sys., In.c, 166 F.3d 1190, 1196 (Fed. Cir. 1999); see also In re Goodman, 11 F.3d 1046, 1050 (Fed. Cir. 1993) ("[T]he specification must teach those of skill

11

in the art 'how to make and how to use the invention as broadly
as it is claimed'.").

In In re Vaeck, 947 F.2d 488 (Fed. Cir. 1991), the Federal
Circuit held that the PTO did not err in rejecting applicants'
generic claims to hybrid genes and transformed cells.  More
specifically, the patent application in Vaeck related to a
genetically engineered bacterium capable of expressing an
insecticidal protein.  Applicants transformed cyanobacterial host
cells with a Bacillus gene that expresses an insecticidal protein
and a DNA promoter.  The specification disclosed "two particular
species of Bacillus (B. thuringiensis, B. sphaericus) as sources
of insecticidal protein; and nine genera of cyanobacteria
(Synechocystis, Anacystis, Synechococcus, Agmenellum,
Aphanocapsa, Gloecapsa, Nostoc, Anabaena and Ffremyllia ) as
useful hosts."  It set forth two working examples, which used the
same cyanobacteria strain (Synechocystis 6803) with different
promoters.  Claim 1 was to "A chimeric gene capable of being
expressed in Cyanobacteria cells . . .."  Other claims were to
preferred Bacillus species, promoters, and selectable markers,
and to hybrid plasmid vectors and bacterial strains and
cyanobacterium with the claim 1 chimeric gene.

The PTO examiner and Board rejected all the claims, except
the claim limited to the deposited plasmid, for want of enabling
disclosure, relying on "the relatively high degree of

unpredictability in this particular art": "[T]he claims ... are
not limited to any particular genus or species of cyanobacteria"
and "the cyanobacteria are a diverse and relatively poorly
studied group of organisms, comprising some 150 different genera,
and ... heterologous gene expression in cyanobacteria is
'unpredictable.'" The applicants appealed, arguing that their
invention is "pioneering," which entitles them to claims of broad
scope and that narrower claims would provide no real protection,
because the level of skill in this art is so high and art workers
could easily avoid the claims. Applicants argued that given the
disclosure in their specification, "any skilled microbiologist
could construct vectors and transform many different
cyanobacteria, using a variety of promoters and Bacillus DNA, and
could easily determine whether or not the active Bacillus protein
was successfully expressed by the cyanobacteria." Id. at 495.

    The Federal Circuit affirmed the rejection:

> Taking into account the relatively incomplete
> understanding of the biology of cyanobacteria **as of
> appellants' filing date**, as well as the limited
> disclosure by appellants of particular cyanobacterial
> genera operative in the claimed invention, we are not
> persuaded that the PTO erred in rejecting [the claims,
> except dependent claim 47, which is limited to the
> Anacystis and Synechocystis cyanobacterium genera, and
> claim 48, which is limited to Synechocystis 6803]
> under § 112, first paragraph. **There is no reasonable
> correlation between the narrow disclosure in
> appellants' specification and the broad scope of
> protection sought in the claims encompassing gene
> expression in any and all cyanobacteria . . . .**
>     In so doing we do not imply that patent
> applicants in art areas currently denominated as

"unpredictable" must never be allowed generic claims
encompassing more than the particular species
disclosed in their specification.  It is well settled
that patent applicants are not required to disclose
every species encompassed by their claims, even in an
unpredictable art. ...  **However, there must be
sufficient disclosure, either through illustrative
examples or terminology, ... to teach those of
ordinary skill how to make and how to use the
invention as broadly as it is claimed.**  This means
that the disclosure must adequately guide the art
worker to determine, without undue experimentation,
which species among all those encompassed by the
claimed genus possess the disclosed utility.  Where
... a claimed genus represents a diverse and
relatively poorly understood group of microorganisms,
the required level of disclosure will be greater than,
for example, the disclosure of an invention involving
a "predictable" factor such as a mechanical or
electrical element.

Id. at 496 (emphasis added).[5]

Similar to Vaeck, the state of the relevant art at the time

of filing the '835 patent was unpredictable.[6]  The patent is

directed to transforming plant cells, both monocots and dicots,

with specific genes.  The parent patent, from which the '835

patent originates, was filed July 7, 1986.  Defendants have cited

extensive prior litigation establishing that in 1986, a person of

skill in the art could not transform a monocot.  Indeed, the

---

[5]Accord Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362
(Fed. Cir. 1999) (the Federal Circuit concluding that the
"breadth of enablement in the patent specifications [was] not
commensurate in scope with the claims, as the quantity of
experimentation required to practice antisense in cells other
than E. coli at the filing date would have been undue").

[6]No genuine issue of material fact is raised as to this
issue.

14

Federal Circuit has consistently found that claims directed to plants or plant cells generally were not enabled in and around 1986. See In re Goodman, 11 F.3d 1046 (Fed. Cir. 1993) (relying on a 1987 article, found no effective method of transforming cells from monocot plants as of 1985); Plant Genetic Sys., N.V. v. DeKalb Genetics Corp., 315 F.3d 1335 (Fed. Cir. 2003) (affirming the district court's findings that, as of March 11, 1987, no method existed for the transformation of monocot plants or plant cells; therefore, the claims to plant cells and methods of making plant cells were not enabled).

Plaintiffs do not dispute the fact that, as of 1986, no method existed for one of skill in the art to transform monocot plant cells. Plaintiffs instead argue that, because the claims are not directed to a plant cell but, rather, are directed to a gene which functions in a plant, the disclosure need not be enabling for both monocots and dicots. The summary judgment motion, consequently, revolves around the issue of whether monocots **and** dicots must be enabled when the claim is directed to a gene that functions in a plant cell.

Although none of the cases cited above are precisely on point, nevertheless, the analyses highlight several propositions. First, unlike most of the cases cited, where the question was whether undue experimentation by those of skill in the art was

15

required for enablement of the claimed invention,[7] it is undisputed by plaintiffs that those of skill in the art could not transform monocot plant cells with the chimeric gene claimed in the '835 patent as of the filing date of the '835 patent. Second, the fact that the patentee amended the claim language to distinguish "plant cell" and "gene" claims (found by the examiner to be enabled) from "plant" claims (found by the examiner to not be enabled for monocots) is less than compelling in light of the subsequent analyses of the Federal Circuit in Vaeck, 947 F.2d at 496, and PGS v. DeKalb, 315 F.3d at 1344. Therefore, the court concludes that plaintiffs cannot avoid the enabling requirement by claiming a gene that functions in plant cells rather than claiming plants transformed by a gene.

## V.    CONCLUSION

For the reasons discussed above, defendants' motions for summary judgment are granted. An order consistent with this memorandum opinion shall issue.[8]

---

[7]See, e.g., Johns Hopkins University v. CellPro, Inc., 152 F.3d 1342, 1361 (Fed. Cir. 1998) (the Federal Circuit rejected an enablement challenge where it was not satisfied that the unsuccessful attempts to produce the full scope of the claimed invention were consistent with the level of ordinary skill in the art or with the patent's teachings).

[8]For purposes of appeal, and consistent with the above conclusions of law, the court adopts the claim construction proposed by defendants (D.I. 309) in connection with the asserted claims of the '880 and '863 patents. For purposes of appeal, and consistent with the above conclusions of law, the court adopts the claim construction proposed by defendants (D.I. 309) in

16

--------

connection with the asserted claims of the '835 patent, except for the construction of "chloroplast transit peptide", which shall be: "A chloroplast transit peptide is a naturally occurring series of amino acids that causes the transport of a polypeptide into a chloroplast."

# TAB 12

# REDACTED IN ITS ENTIRETY