IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*,        )
                                   )
                  Plaintiffs,      )
                                   )
        v.                         )        C.A. No.: 04-305-SLR (Consol.)
                                   )
SYNGENTA SEEDS, INC., *et al.*,    )        **REDACTED –**
                                   )        **PUBLIC VERSION**
                  Defendants.      )

**SYNGENTA'S RESPONSE TO MONSANTO'S
STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE
ISSUE TO BE TRIED IN SUPPORT OF A MOTION FOR SUMMARY
JUDGMENT ON COUNTS I AND II REGARDING LACK OF FORECLOSURE**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
mbudicak@ycst.com

*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: March 21, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

SUMMARY OF ARGUMENT ............................................................................................ 1

ISSUES OF LAW AND FACT ............................................................................................ 3

I.     MATERIAL FACTS IN DISPUTE ............................................................................ 3

     A.     RESPONSE TO FORECLOSURE STATEMENT ¶¶ 1-16 There Are Disputed Issues Of Fact As To Whether Syngenta Has Been Foreclosed From The Trait Licensing Markets ................................................................. 4

          1.     There Is A Disputed Issue Of Fact Regarding The Independent Seed Companies' Market Shares ............................................................ 4

          2.     Monsanto's Foreclosure Of Syngenta From The Critical Independent Seed Company Channel Constitutes Substantial Foreclosure ............................. 5

               a.     Monsanto Has Admitted That Access To The Independent Seed Company Channel Is Critical ................................................ 5

               b.     Monsanto Testimony Demonstrates The Critical Importance Of The Independent Seed Company Channel And Raises Additional Disputed Issues Of Fact ................................ 6

               c.     Independent Seed Company Testimony Provides Further Evidence Of The Impact of the Foreclosure Of The Independent Seed Company Channel ..................................... 7

               d.     Access To The Independent Seed Company Channel Is Critical To Syngenta ........................................................ 8

     B.     RESPONSE TO FORECLOSURE STATEMENT ¶¶ 17-25 Monsanto And Pioneer Are Not Potential Customers For Syngenta's Traits ................................. 8

          1.     Monsanto And Pioneer Have Their Own GT And ECB Traits And Are Not Available Licensors Of Syngenta's Traits ..................................... 9

          2.     Syngenta Has Demonstrated Substantial Foreclosure ................................. 10

     C.     RESPONSE TO FORECLOSURE STATEMENT ¶¶ 26-28 Monsanto Does Not Contest That It Has Foreclosed Syngenta From The Independent Seed Company Channel ..................................................................................... 11

II.      ISSUE UPON WHICH MONSANTO SEEKS SUMMARY JUDGMENT .................... 11

     A.      RESPONSE TO FORECLOSURE STATEMENT ¶¶ 29-32 Monsanto's Anticompetitive Conduct Has Foreclosed Competition In The Markets For Licensing GT And ECB Traits .............................................................................. 11

         1.      Total Market Foreclosure Is Not Required To Sustain A Claim For Monopolization ................................................................................................12

         2.      Foreclosure Of A Key Distribution Channel Is Sufficient To Sustain A Claim For Monopolization In The Third Circuit ........................................12

CONCLUSION ................................................................................................................ 15

DB01:2531477.1

059155.1010

# TABLE OF AUTHORITIES

## CASES

*Harrison Aire, Inc. v. Aerostar Int'l Inc*, 423 F.3d 374 (3d Cir. 2005)...........................................4

*Ideal Dairy Farms v. John Labatt, Ltd.*, 90 F.3d 737 (3d Cir. 1996) ...............................................4

*LePage's, Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003)...................................................................12, 13

*Tampa Electric v. Nashville Coal Co.*, 365 U.S. 320 (1961)........................................................11

*United States v. Dentsply*, 399 F.3d 181 (3d Cir. 2005).............................................2, 5, 7, 12, 13

*United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001) .......................................................12, 13

*United States v. Visa, USA*, 344 F.3d 229 (2d Cir. 2003).............................................................13

DB01:2531477.1

059155.1010

Pursuant to the Court's Order of February 11, 2008 (D.I. 543), Syngenta Seeds, Inc. ("Syngenta") respectfully submits this response to Monsanto Company's and Monsanto Technology LLC's ("Monsanto") Statement Of Facts As To Which There Is No Genuine Issue To Be Tried In Support Of A Motion For Summary Judgment On Counts I And II Regarding Lack of Foreclosure (D.I. 549) ("Foreclosure Statement").

## SUMMARY OF ARGUMENT

The evidence produced during discovery in this case demonstrates that Monsanto's restrictive licensing practices, anticompetitive bundled discounts, sham patent litigations and threats to seed companies have foreclosed a substantial portion of the relevant markets for licensing glyphosate-tolerant ("GT") and European corn borer ("ECB") traits. Instead of explaining why these facts don't preclude summary judgment, Monsanto's Foreclosure Statement recites a litany of facts that are irrelevant and immaterial to the question of whether the trait licensing markets have been foreclosed to competition by Monsanto's illegal conduct. Monsanto's litigation tactics cannot change the fact that there is substantial evidence of foreclosure that makes summary judgment motion practice unnecessary and inappropriate. Indeed, Monsanto's Foreclosure Statement highlights at least three material (indeed, critical) disputed issues of fact. Each of these issues alone provides a basis for denying summary judgment; together they present an overwhelming case that foreclosure is an issue for the jury.

First, a fundamental factual dispute exists as to whether the independent seed companies are a key distribution channel in the trait licensing markets. In the Third Circuit, an antitrust plaintiff can show substantial foreclosure if it can demonstrate that a key market segment was foreclosed to competition because of the anticompetitive conduct of a firm with market power.

*United States v. Dentsply*, 399 F.3d 181, 191 (3d Cir. 2005). Monsanto's failure to address this issue in its Foreclosure Statement is an implicit concession that material facts are in dispute.

Second, there are material issues of fact as to whether Monsanto and Pioneer are available customers for Syngenta's traits. Substantial record evidence demonstrates that Monsanto and Pioneer should not be included in the "available" market in which Syngenta can compete to license its traits. Both Monsanto and Pioneer have (or, in the case of Pioneer, will soon have) their own proprietary technology in GT and ECB traits and thus are not potential customers for Syngenta's traits.

In addition, with respect to Monsanto's availability as a licensee, Monsanto cannot seriously contend that the very same company that has engaged in a scorched-earth campaign to exclude Syngenta from the relevant markets is a potential trait licensing customer of Syngenta. In any event, as meritless as the argument may be, it creates an additional issue of fact to be decided at trial.

Third, Syngenta disputes the market shares presented by Monsanto. The data produced by both parties and the expert economic testimony show that ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████.

Finally, the parties' reliance on expert opinions and testimony to analyze the degree of market foreclosure weighs heavily against summary disposition and, by extension, the need to engage in summary judgment motion practice. Both parties retained highly-qualified economists to opine on whether Monsanto's conduct foreclosed a substantial portion of the relevant markets. Monsanto's expert, Dr. Gordon Rausser, authored a report exceeding 100 pages in which he opined on the issues of Monsanto's conduct and the effect that conduct had in foreclosing

competition.[1] Likewise, Syngenta's expert, Dr. Richard J. Gilbert,[2] undertook a considerable analysis of Monsanto's conduct and its effect on the relevant markets in this case. Not surprisingly, the parties' experts disagreed on those issues. Courts have routinely recognized that disputes between well-qualified experts are issues of fact that are best left to a jury.

## ISSUES OF LAW AND FACT

### I.    MATERIAL FACTS IN DISPUTE

Contrary to the assertions in Monsanto's Foreclosure Statement, Syngenta can demonstrate through admissible evidence that Monsanto's anticompetitive conduct has caused substantial foreclosure of the markets in which trait providers compete to license GT and ECB traits. Syngenta demonstrates below that there are genuine issues of material fact that would prevent granting summary judgment to Monsanto on the issue of market foreclosure. The importance of the disputed facts at issue counsels against using the Court's limited resources for summary judgment motion practice.

Each numbered paragraph of the factual portion of Monsanto's Foreclosure Statement quotes from various documents in the record. While Monsanto does not misquote those documents, Monsanto's fidelity to the written word does not make it proper to credit the inferences interwoven with Monsanto's numbered paragraphs or eliminate genuine factual issues

---

[1] Monsanto has four testifying experts in this case. Notably, and undoubtedly for tactical reasons, Monsanto did not cite a single fact from any of the four expert reports it has filed in this case in its Foreclosure Statement, Monopoly Power Statement (D.I. 550) or Sham Patent Statement (D.I. 548).

[2] Dr. Gilbert's Expert Report is cited in this response and also in Syngenta's Response To Monsanto's Statement Of Facts As To Which There Is No Genuine Issue To Be Tried In Support Of A Motion For Summary Judgment On Counts I and II Regarding Failure To Establish Monopoly Power and has been separately filed with the Court.

3

that can only be disposed of at trial.[3]  In the sections that follow, we respond to Monsanto's

"facts" and present additional facts that prevent the Court from concluding that no triable issues

of fact exist.

### A.    RESPONSE TO FORECLOSURE STATEMENT ¶¶ 1-16
There Are Disputed Issues Of Fact As To Whether Syngenta Has Been Foreclosed From The Trait Licensing Markets

Syngenta does not contest the words quoted or facts cited in the evidentiary materials

presented by Monsanto in paragraphs 1-12 of its Foreclosure Statement, but those words do not

support Monsanto's inferences and conclusions for the reasons set forth below.  Syngenta does

dispute the facts and inferences made by Monsanto in paragraphs 13 through 16 of its

Foreclosure Statement.  The factual disputes arising from these paragraphs frame the central

issues relating to market foreclosure and preclude summary judgment.

In addition, Monsanto's failure to discuss certain facts in these paragraphs creates

additional issues of fact for trial.  Specifically, Monsanto does not address whether the

independent seed companies represent a key distribution channel in the trait markets.  This

omission alone creates an important issue of fact precluding summary judgment under the law in

the Third Circuit.

### 1.    There Is A Disputed Issue Of Fact Regarding The Independent Seed Companies' Market Shares

There is a genuine issue of material fact about the size of the independent seed company

channel.  █████████████████████████████████████████████████████████

---

[3]  Syngenta disagrees with the inferences and conclusions Monsanto inserts throughout its "factual" statement.  For instance, on page four of its Foreclosure Statement, Monsanto states that "Syngenta has not been foreclosed from a 'substantial share' of its potential licensees." This is not a fact, but is a conclusion or an inference purportedly drawn from facts.  Contrary to Monsanto's approach, reasonable inferences must be drawn in Syngenta's favor, not Monsanto's.  *See Harrison Aire, Inc. v. Aerostar Int'l Inc*, 423 F.3d 374, 380 (3d Cir. 2005); *Ideal Dairy Farms v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996).

4

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

**2.    Monsanto's Foreclosure Of Syngenta From The Critical Independent Seed Company Channel Constitutes Substantial Foreclosure**

As discussed more fully below, a plaintiff can state a claim for monopolization if it is foreclosed from a key segment of the market because of the anticompetitive acts of a firm with market power. *United States v. Dentsply*, 399 F.3d 181, 191 (3d Cir. 2005). The question of whether a channel of distribution represents a key segment of the market is inherently a factual question that is not appropriate for resolution on summary judgment. Here, there is substantial record evidence that shows the importance of the independent seed companies – generally and to Syngenta. This evidence, which is set forth below, creates a material issue of fact as to whether foreclosure of the independent seed companies satisfies the standard set forth in *Dentsply*, especially since Monsanto has not disputed that Syngenta has been foreclosed from that channel. (Foreclosure Statement at 7 n.3).

**a.    Monsanto Has Admitted That Access To The Independent Seed Company Channel Is Critical**

In its internal business presentations, Monsanto has admitted that access to the independent seed company channel is critical for a trait provider. The fact that access is critical to Monsanto – an established trait provider with a much larger branded business than Syngenta – demonstrates that access certainly is critical to Syngenta. Monsanto's own presentations demonstrate that any trait provider needs access to the seed company channel to compete:

5



**b.** **Monsanto Testimony Demonstrates The Critical Importance Of The Independent Seed Company Channel And Raises Additional Disputed Issues Of Fact**

---

[4] All evidentiary materials on which Syngenta relies to establish the existence of genuine issues of material fact are found in Syngenta's Compilation of Evidentiary Materials in Support of Syngenta's Response To Monsanto's Statement Of Facts As To Which There Is No Genuine Issue To Be Tried In Support Of A Motion For Summary Judgment On Counts I and II Regarding Lack of Foreclosure (hereinafter "App.").



**c.**  **Independent Seed Company Testimony Provides Further Evidence Of The Impact of the Foreclosure Of The Independent Seed Company Channel**

Additional evidence that establishes the importance of the independent seed company channel of distribution (and thus establishes foreclosure under *Dentsply* and other Third Circuit precedent) is available from the seed companies themselves:



7

**d.    Access To The Independent Seed Company Channel Is Critical To Syngenta**

Syngenta's documents confirm the critical nature of the independent seed company

channel:



**B.    RESPONSE TO FORECLOSURE STATEMENT ¶¶ 17-25**
**Monsanto And Pioneer Are Not Potential Customers For Syngenta's Traits**

The central theme of Monsanto's Foreclosure Statement is that Syngenta incorrectly

focuses solely on the independent seed companies while ignoring the two largest seed companies

in the hybrid corn seed market – Monsanto and Pioneer.  As set forth above, foreclosure of

access to the independent seed companies is – by itself – enough to defeat summary judgment

because of the critical nature of the independent seed company channel.  However, an entirely

independent basis for denying summary judgment exists because there are issues of fact as to

whether Monsanto and Pioneer are properly considered available customers of Syngenta's traits.

Substantial evidence demonstrates Monsanto and Pioneer are not "available" to license traits

from Syngenta.[5]

---

[5] 

059155.1010

1. **Monsanto And Pioneer Have Their Own GT And ECB Traits And Are Not Available Licensors Of Syngenta's Traits**

Both Monsanto and Pioneer have access to GT and ECB traits that compete with Syngenta's GT and ECB traits. Monsanto has its own proprietary GT and ECB traits. (Foreclosure Statement ¶¶ 1-2). Monsanto's GT and ECB traits are – in terms of the results they create in a corn plant – substantially identical to those offered by Syngenta. Likewise, Pioneer has its own ECB trait, which is comparable to Monsanto's and Syngenta's ECB traits. In addition, Pioneer has its own competing GT trait that it is bringing to market. ▮▮▮▮▮▮
▮▮▮▮▮▮▮ It is self-evident that trait developers with their own traits are not in any sense "available" as licensors of traits from Syngenta.

Contrary to Monsanto's position, the joint venture between Syngenta and Pioneer does not make Pioneer a potential trait licensor. ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮ In any event, the question of whether Pioneer is an available licensor of traits is a disputed issue of fact that precludes summary judgment.[6]

Finally, Monsanto's claim that it is a potential customer of Syngenta's traits cannot withstand scrutiny. Monsanto has done everything in its power to frustrate Syngenta's ability to licenses traits including entering into restrictive licenses with hundreds of seed companies; using

---

[6] ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮

anticompetitive bundling programs that linked penalties across different traits and even different crops; holding seed companies hostage with payback provisions that could cost the seed companies millions of dollars; threatening to terminate licenses with seed companies that even considered doing business with potential competitors; threatening the seed companies with legal action if they purchased Syngenta's GT product; using its ASI subsidiary to purchase independent seed companies to decrease the pool of potential customers available to trait developers like Syngenta; and filing two baseless patent suits against Syngenta, including one on the very day that Syngenta announced its plan to enter the trait licensing markets. It is unfathomable that Monsanto is claiming that it had undertaken all these illegal actions to *stop* Syngenta from licensing its traits to independent seed companies, yet Monsanto itself would be willing to license traits from Syngenta.

### 2.    <u>Syngenta Has Demonstrated Substantial Foreclosure</u>

Syngenta's economic expert concluded that ███████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
█████████████████████ The fact that Monsanto disputes these numbers merely demonstrates that there are disputed issues of fact that preclude summary judgment.

10

C.    **RESPONSE TO FORECLOSURE STATEMENT ¶¶ 26-28**
      **Monsanto Does Not Contest That It Has Foreclosed Syngenta From The**
      **Independent Seed Company Channel**

In paragraphs 26-28, Monsanto suggests that Syngenta is not foreclosed from the

independent seed company channel because GreenLeaf Genetics has signed licenses with

numerous seed companies.[7]  The "facts" contained in these paragraphs are entirely immaterial

because Monsanto concedes for the purposes of summary judgment that Syngenta *"has been*

*foreclosed from licensing traits to independent seed companies."*  (Foreclosure Statement at 7

n.3) (emphasis added).[8]

II.    **ISSUE UPON WHICH MONSANTO SEEKS SUMMARY JUDGMENT**

A.    **RESPONSE TO FORECLOSURE STATEMENT ¶¶ 29-32**
      **Monsanto's Anticompetitive Conduct Has Foreclosed Competition In The**
      **Markets For Licensing GT And ECB Traits**

Syngenta agrees that a plaintiff bringing a monopolization claim under Section 2 of the

Sherman Act must show, among other things, foreclosure in the relevant markets.  For this

purpose, foreclosure is measured in "the line of commerce affected."  *Tampa Electric v.*

*Nashville Coal Co.*, 365 U.S. 320, 327 (1961).  Hybrid corn seed sold to farmers is not the "line

of commerce affected" in this case.  The relevant markets in this case – and thus the line of

commerce affected – are the markets for licensing GT and ECB traits.  Monsanto's failure to

address the relevant markets is fatal to its foreclosure argument because "the relevant market is



the prime factor in relation to which the ultimate question, whether the [conduct] forecloses competition in a substantial share of the line of commerce involved, must be decided." (*Id.* at 329). Here, the Court must evaluate whether Monsanto's anticompetitive conduct has substantially foreclosed that part of the trait licensing markets available to competitors. In addition, Syngenta can also show substantial foreclosure if it can demonstrate that a key channel of distribution was foreclosed to competition by Monsanto's illegal conduct.

### 1.    Total Market Foreclosure Is Not Required To Sustain A Claim For Monopolization

Syngenta need not show total market foreclosure to sustain a claim for improper monopolization. *E.g. Dentsply*, 399 F.3d at 191 ("[t]he test is not total foreclosure"). Rather, sufficient anticompetitive harm is proved if defendant's conduct results in a significant restriction of "the market's ambit" or delays competition by increasing new entrants' costs. (*Id*).; *see LePage's, Inc. v. 3M*, 324 F.3d 141, 159-60 (3d Cir. 2003); *United States v. Microsoft*, 253 F.3d 34, 70 (D.C. Cir. 2001) (noting that Microsoft's exclusionary conduct violated § 2 "even though the contracts foreclose less than the roughly 40% or 50% share usually required in order to establish a restraint of trade violation"). ████████████████ ████████████████████████████████████████ This level of foreclosure is "substantial foreclosure" in the Third Circuit and anywhere else.

### 2.    Foreclosure Of A Key Distribution Channel Is Sufficient To Sustain A Claim For Monopolization In The Third Circuit

Syngenta can also demonstrate substantial foreclosure because Monsanto has foreclosed a key channel of distribution. In the Third Circuit a plaintiff can state a claim for monopolization if a key channel of distribution is foreclosed from competition. *Dentsply*, 399 F.3d at 191 (dealers of artificial teeth); *LePage's*, 324 F.3d at 160 n.14 (large-volume retailers); *see also*

*Microsoft*, 253 F.3d at 71 (the largest internet access providers); *United States v. Visa, USA*, 344 F.3d 229, 240 (2d Cir. 2003) (banks).

In *Dentsply*, the Third Circuit found a Section 2 violation where only a portion of one distribution channel was foreclosed. Dentsply, a manufacturer of artificial teeth, adopted a policy discouraging its 23 independent dealers from carrying a competitor's products. The market was comprised of "hundreds of dealers," and manufacturers also could sell directly to customers without dealers. *Dentsply*, 399 F.3d at 185, 193. In addition, the dealers could stop doing business with Dentsply at any time. (*Id.*). The Third Circuit nonetheless found that there was foreclosure because Dentsply's conduct affected a "key" group of dealers and the policy "help[ed] keep sales of competing teeth below the critical level necessary for any rival to pose a real threat to Dentsply's market share." (*Id.* at 191).

The level of exclusion in this case greatly exceeds the level of exclusion in *Dentsply*. Substantial record evidence shows that the independent seed companies are a "key" group of trait licensors – in fact the only ones potentially available to Syngenta. The record evidence also shows that without access to these companies, Syngenta cannot "pose a real threat" to Monsanto's market share. As with the dealers in *Dentsply*, the independent seed companies offered many features that could not be replicated by selling directly to the end consumers. *Id.* at 192 (benefits included convenience, possibility of discounts and quality control to the end users, and significant efficiencies of scale and reduced credit risks to the manufacturers).

At bottom, admissible evidence creates a disputed issue of fact as to whether Monsanto's anticompetitive conduct aimed at the independent seed companies has foreclosed an essential distribution channel from competition and allows Monsanto to maintain its monopoly in the trait licensing markets. *See Dentsply*, 399 F.3d at 191; *LePage's*, 324 F.3d at 159 ("When a

13

monopolist's actions are designed to prevent one or more new or potential competitors from gaining a foothold in the market by exclusionary [] conduct, its success in that goal is not only injurious to the potential competitor but also to competition in general.").  These disputed issues of fact demonstrate that summary judgment motion practice would be a waste of resources and time.

## CONCLUSION

Based on the foregoing, Syngenta respectfully urges the Court not to grant Monsanto's request for summary judgment practice with respect to Syngenta's allegations that Monsanto's illegal conduct resulted in foreclosure of the available trait licensing markets.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Michele Sherretta Budicak*

John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
mbudicak@ycst.com

*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY  10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated:  March 21, 2008

DB01:2531477.1                                                                                                    059155.1010

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on March 28, 2008, copies of the foregoing document will be served by e-mail on the above listed counsel. I additionally certify that copies of the foregoing document are being served on the following non-registered participants as indicated below:

### **BY E-MAIL**

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Michele Sherretta Budicak_

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
mbudicak@ycst.com

2