IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-305-SLR (Consol.) |
| | ) | |
| SYNGENTA SEEDS, INC., *et al.*, | ) | **REDACTED –** |
| | ) | **PUBLIC VERSION** |
| Defendants. | ) | |

**SYNGENTA SEEDS, INC.'S REVISED RESPONSE TO MONSANTO'S STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED IN SUPPORT OF A MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II REGARDING SYNGENTA'S SHAM PATENT ALLEGATIONS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington, DC 20004-2634
(202) 508-8000

Dated: April 14, 2008

Pursuant to the Court's April 7, 2008 Order (D.I. 569), Syngenta Seeds, Inc. ("Syngenta") respectfully submits this revised response to Monsanto Company's and Monsanto Technology LLC's ("Monsanto") Sham Litigation Statement (D.I. 548).

In this submission, Syngenta duplicates each of Monsanto's paragraphs and follows each paragraph with a response that either "admits" the paragraph or "disputes" the paragraph and states the correct facts. By admitting paragraphs to be true, Syngenta does not admit that Monsanto's evidentiary materials establish the absence of genuine issues of material fact such that summary judgment practice might be appropriate.[1] Indeed, Syngenta admits many of the facts contained in Monsanto's statement because the statement consists almost entirely of facts that are not relevant to the issues before the Court, and omits those facts (which are all disputed) that establish genuine issues of material fact and are relevant to the issue before the Court.[2]

I. **RESPONSE TO MONSANTO'S STATEMENTS IN PARAGRAPHS 1 – 58**

> **Monsanto Paragraph 1:** On July 10, 1990, the United States Patent and Trademark Office issued U.S. Patent No. 4,940,835. (MRR 005636-661). The Shah Patent was presumed to be valid at the time Monsanto brought the *Shah Action*. 35 U.S.C. § 282.
>
> **Response:** Admitted.

---

[1] In addition, Syngenta admits facts solely for the purposes of this submission, and reserves the right to offer contrary facts at trial.

[2] The material issues of fact omitted by Monsanto include whether Monsanto conducted an adequate pre-suit investigation before filing the patent actions, whether Monsanto knew before it filed the actions that Syngenta had never used the "bombardment" process in connection with GA21, and whether persons skilled in the art could not transform monocots (including corn) in the 1985-1986 time period.

**Monsanto Paragraph 2:** Several hundred seed companies across the United States have entered into licensing agreements with Monsanto, which expressly granted the licensee the rights to use the intellectual property rights set forth in the Shah Patent. (MGA 0058330; MGA 0009238-242; MGA 0053706-709). During the life of those licenses, none of those seed companies ever challenged the validity of the Shah Patent.

**Response:** Disputed in part. 

**Monsanto Paragraph 3:** Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, LLC, Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (all now Syngenta owned companies) were licensees to the Shah Patent. (MGA0058307-44). None ever challenged the validity of the Shah Patent before the *Shah Action*.

**Response:** Disputed in part. The listed seed companies entered into the agreements described in the Response to ¶ 2.

**Monsanto Paragraph 4:** On November 20, 2001, Monsanto filed its original complaint in *Monsanto Co. and Monsanto Tech. LLC v. Aventis CropScience*, SA, C.A. No. 4:01CV01825 in the United States District Court for the Eastern District of Missouri (the "*First Shah Action*"). In the *First Shah Action*, Monsanto alleged that Aventis CropScience S.A. ("Aventis") infringed the Shah Patent. Aventis later changed its name to Bayer CropScience S.A. (hereinafter collectively referred to as "Bayer").

**Response:** Admitted.

**Monsanto Paragraph 5:** One of the Bayer products alleged to infringe the Shah Patent in the *First Shah Action* was GA21 corn.

**Response:** Admitted.

**Monsanto Paragraph 6:** In the *First Shah Action*, Bayer never moved for summary judgment that any of claims 1, 5 or 6 of the Shah Patent (the claims asserted against Syngenta in the *Shah Action*) were invalid under 35 U.S.C. § 112 because corn could not be transformed in 1986.

   **Response:** Disputed in part. Bayer had not yet moved for summary judgment of patent invalidity on § 112 grounds (or any other ground) because summary judgment motions were not due to be filed for another year when the case settled. *Monsanto Co. v. Bayer CropScience LP*, C.A. No. 4:01-cv-01825-CDP (E.D. Mo. Aug. 4, 2003), D.I. 108, 110.

**Monsanto Paragraph 7:** No ruling from the *First Shah Action* suggested that any of claims 1, 5 or 6 of the Shah Patent were invalid under 35 U.S.C. § 112 because corn could not be transformed in 1986.

   **Response:** Disputed in part. The Missouri district court issued no ruling on the validity of any claims of the Shah patent because the case settled one year before summary judgment motions were due to be filed. *Monsanto Co. v. Bayer CropScience LP*, C.A. No. 4:01-cv-01825-CDP (E.D. Mo. Aug. 4, 2003), D.I. 108, 110.

**Monsanto Paragraph 8:** On July 2, 2003, the court in the *First Shah Action* issued its claims construction order construing the claims of the Shah Patent. (Goffney Report, Ex. G).

   **Response:** Admitted.

**Monsanto Paragraph 9:** Following the claims construction order, the parties entered into an agreement settling the *First Shah Action*. As part of that settlement, [REDACTED]

   **Response:** Admitted.

**Monsanto Paragraph 10:** Section 3.5 [sic, 3.05] of the Shah License Agreement further provided: [REDACTED]

3



**Response:** Admitted.

**Monsanto Paragraph 11:** 

**Response:** Admitted.

**Monsanto Paragraph 12:** After executing the Shah License Agreement, Bayer terminated its activities with regard to GA21 corn in all countries where Shah Patent Rights existed.

**Response:** Disputed in part. Bayer terminated its activities with regard to GA21 corn in all countries where Monsanto *claimed* to have Shah patent rights,

**Monsanto Paragraph 13:** At no time during the *First Shah Action* did the court rule that the asserted claims of the Shah Patent failed to satisfy the enablement requirement of 35 U.S.C. § 112 because corn could not be transformed in 1986.

**Response:** Disputed in part. The Missouri district court issued no ruling as to whether the asserted claims of the Shah patent satisfied the enablement requirement because the case settled one year before summary judgment motions were due to be filed. *Monsanto Co. v. Bayer CropScience LP*, C.A. No. 4:01-cv-01825-CDP (E.D. Mo. Aug. 4, 2003), D.I. 108, 110.

4

**Monsanto Paragraph 14:** On or about January 11, 1993, ███████████
████████████████████

**Response:** Admitted.

**Monsanto Paragraph 15:** Under the ████████████████
████████████████████

**Response:** Admitted.

Monsanto Paragraph 16:  Ciba Geigy is a predecessor of Syngenta.

**Response:** Admitted.

Monsanto Paragraph 17:  On October 14, 2002, ████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

**Response:** Disputed in part. ██████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

Monsanto Paragraph 18: ████████████████████
██████████████████████████████████████

**Response:** Admitted.

5

**Monsanto Paragraph 19:** During prosecution of the Shah Patent, the PTO examiner issued an enablement rejection on August 21, 1987 of then-pending claims 22-30 and commented as follows: Because gene transfer via <u>Agrobacterium</u> and subsequent plant regeneration has not been demonstrated to be reliable in all plant species (See Goodman et al., page 236 left column) it cannot be assumed that the claimed gene construction would be transferred and expressed in all plant cells. Additionally, not all plants have been demonstrated to be capable of regeneration from single cells or callus tissue. (Shah PH, CP 100).

    **Response:**   Admitted.

**Monsanto Paragraph 20:** At the time of the above rejection, pending claims 22-30 were directed to "a method of producing glyphosate resistant plants." (*Id.* at CP 73-74). The examiner did not make the same enablement rejection as to claims 12-16 which recited "a chimeric gene." (*Id.* at CP 71).

    **Response:**   Admitted.

**Monsanto Paragraph 21:** Following an Amendment by Monsanto, the PTO Examiner issued another enablement rejection on May 16, 1988, as to then-pending claims 61-81 and commented as follows: Claims 61-81 are rejected under 35 U.S.C. 112, first paragraph, as the disclosure is enabling only for claims limited to a method for producing dicot plants comprising regeneration from transformed protoplasts and regenerated dicots therein, as per pages 12-64 of the specification. See MPEP 706.03(n) and 706.03(z). Since plant transformation requires cell wall removal for DNA uptake, and since plant regeneration from transformed protoplasts is limited to the dicots (See Goodman et al., pages 52-53) undue experimentation would be required by one of ordinary skill in the art to obtain plant cell transformation through the cell wall or monocot regeneration as claimed. (*Id.* at CP 140).

    **Response:**   Admitted.

**Monsanto Paragraph 22:** On May 16, 1988, pending claims 61-81 recited glyphosate resistant plants and methods for making glyphosate resistant plants. (*Id.* at CP 118-20). The examiner did not make the same above rejection for then-pending claims 31-39 which recited "chimeric genes." (*Id.* at CP 115-16).

    **Response:**   Admitted.

**Monsanto Paragraph 23:** On October 26, 1988, Monsanto amended its pending plant claims in the prosecution of the Shah Patent to be limited to dicot plants. (*Id.* at CP 151).

    **Response:**   Admitted.

6

**Monsanto Paragraph 24:** On January 26, 1989, the PTO examiner mailed its notice allowing the Shah Patent claims to issue. Prosecution claims 31-39 issued as claims 1-7 of the Shah Patent, which included claims 1, 5 and 6 – the claims asserted against Syngenta in the *Shah Action.* (*Id.* at CP 164).

    **Response:**  Admitted.

**Monsanto Paragraph 25:** Thus, while the PTO examiner expressly considered the enablement issued [sic] posed by the unavailability of monocot transformation as of the Shah Patent's filing date during prosecution of the Shah Patent, the PTO examiner never found that this presented enablement issues for the Shah Patent claims that were asserted against Syngenta's GA21 corn products.

    **Response:**   Disputed in part. The prosecution history does not suggest that the patent examiner "considered the enablement issue[s] posed by the unavailability of monocot transformation" with respect to the disputed Shah patent claims. (D.I. 219). Syngenta is not aware of any other record evidence that would support this statement.

**Monsanto Paragraph 26:** On May 12, 2004, Syngenta issued a press release saying that "it has acquired rights to a commercially successful glyphosate tolerance technology" "called GA21" and that "This transaction gives Syngenta fast-track entry into an important segment of the corn crop protection market." (SYN 000013).

    **Response:**  Admitted.

**Monsanto Paragraph 27:** On May 12, 2004, Syngenta also issued another [sic, press] release saying: Syngenta also announced today the purchase of glyphosate tolerance technology for corn called GA21 from Bayer CropScience. This purchase, together with the acquisition of Advanta's North American corn and soybean business, will enable Syngenta to market a complete range of biotech input traits in both corn and soybean from 2005. For corn, this will include Bt insect resistance, glyphosate tolerance and corn rootworm resistance. (SYN 062551-53).

    **Response:**  Admitted.

**Monsanto Paragraph 28:** Prior to May 12, 2004, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    **Response:**  Admitted.

7

**Monsanto Paragraph 29:** Monsanto brought an action to enforce its Shah Patent against Syngenta's activities with GA21 corn on May 12, 2004, the same day of the above two press releases. (*Shah Action*, D.I. 1).

    **Response:** Admitted.

**Monsanto Paragraph 30:** Before May 12, 2004, ██████████████████
████████████████████████████████████████████████████████████████
████████████████████████████

    **Response:** Admitted.

**Monsanto Paragraph 31:** Before May 12, 2004, Monsanto had already engaged in two years of litigation to enforce the Shah Patent against Bayer's activities with GA21 corn. *See* ¶¶4-13, *supra*.

    **Response:** Admitted.

**Monsanto Paragraph 32:** Before May 12, 2004, Monsanto's Legal Department was familiar with the prosecution history of the Shah Patent, because one of its in-house counsel, Dennis Horner [sic, Hoerner], was the primary prosecuting attorney. (*See, e.g.*, MRR005636).

    **Response:** Disputed in part. Syngenta contends that Monsanto should not be able to present evidence that "Monsanto's Legal Department was familiar with the prosecution history of the Shah Patent" at the time it filed the Shah Patent lawsuit because Monsanto has blocked – through the assertion of privilege – discovery regarding the Monsanto Legal Department's knowledge at the time Monsanto filed the Shah Patent lawsuit. (*See* D.I. 472 at 3-14; letter from Richard Schwed to John J. Rosenthal, dated May 22, 2006; letter from John J. Rosenthal to Richard Schwed, dated May 26, 2006).

**Monsanto Paragraph 33:** From 1998 on, several hundred seed companies across the United States entered into license agreements with Monsanto which expressly granted the licensee the rights to use the intellectual property rights set forth in the Lundquist Patent. (MGA0058330; MGA0009238-42; MGA0053706-09)

 **Response:** Disputed in part. Seed companies entered agreements described in the Response to ¶ 2.

**Monsanto Paragraph 34:** Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, LLC, Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. (all now Syngenta owned companies) were licensees to the Lundquist Patents. (*Id.*) None of those companies ever challenged the validity of the Lundquist Patents before the *Lundquist Action.*

 **Response:** Disputed in part. Seed companies entered agreements described in the Response to ¶ 2.

**Monsanto Paragraph 35:** On April 30, 1996, DEKALB filed its original complaint in *DEKALB Genectics* [sic, *Genetics*] *Corp. v. Ciba-Geigy Corp. & Mycogen Corp.*, C.A. 96C50114 in the United States District Court for the Northern District of Illinois, seeking, in part, to enforce U.S. Patent No. 5,484,956 (the "'956 Patent") against Syngenta's predecessor, Ciba Geigy.

 **Response:** Admitted.

**Monsanto Paragraph 36:** On July 23, 1996, DEKLAB [sic, DEKALB] filed its original complaint in *DEKALB Genectics* [sic, *Genetics*] *Corp. v. Ciba-Geigy Corp. et al.*, CA. 96C50241 in the United States District Court for the Northern District of Illinois, seeking to enforce both the Lundquist '880 Patent and U.S. Patent No. 5,538,877 (the "'877 Patent") against Syngenta's predecessor, Ciba Geigy.

 **Response:** Admitted.

**Monsanto Paragraph 37:** The actions referenced in the previous two paragraphs were consolidated with other actions brought by DEKALB in the Northern District of Illinois for discovery and pre-trial purposes (collectively the "*First Lundquist Actions*").

 **Response:** Admitted.

9

**Monsanto Paragraph 38:** The '880, '877 and '956 patents all claim priority to the same U.S. Patent Application No. 467,983 filed January 22, 1990, and named Ronald Lundquist as one of the inventors.

> **Response:** Admitted.

**Monsanto Paragraph 39:** Syngenta Seeds, Inc. now owns the agricultural assets that once belonged to Ciba Geigy.

> **Response:** Admitted.

**Monsanto Paragraph 40:** Two of the products accused of infringement in the *First Lundquist Actions* were Event 176 corn and MON810 corn.

> **Response:** Admitted.

**Monsanto Paragraph 41:** Just as with GA21 corn, the original Event 176 and MON810 transformation events were created before any of the Lundquist Patents issued.

> **Response:** Admitted.

**Monsanto Paragraph 42:** On July 1, 1999, a special master, Robert L. Harmon, issued his report and recommendation construing the claims of the patents-in-suit in the *Rockford Actions*. (Goffney ER, Ex. D).

> **Response:** Admitted.

**Monsanto Paragraph 43:** During the First Lundquist Actions, the district court never construed claims 4-9 of the '880 patent (the claims asserted against Syngenta in the *Lundquist Action*) in a manner that would not read on the progeny of transgenic corn plants, where the initial transgenic event had been created before the '880 patent issued. (*Id*).

> **Response:** Disputed. Claims 4-9 of the '880 patent are method claims, not

product claims, so Monsanto's allegation that the Illinois district court "never construed"

those claims "in a manner that would not read on the progeny of transgenic corn

plants..." inaccurately characterizes the '880 patent claims and the Illinois court's claim

construction, which was fully consistent with this Court's subsequent grant of summary judgment of non-infringement with respect to the '880 patent. (D.I. 203, Ex. 1).

**Monsanto Paragraph 44:** On September 17, 1999, the district court in the *First Lundquist Actions* adopted the findings in the special master's report and recommendation on claim construction. (*Id.*).

    **Response:** Admitted.

**Monsanto Paragraph 45:** The special master stated the following regarding the construction of Claim 4 of the '880 patent: Claim 4 covers the R1 and succeeding generations, no matter how they are obtained, from the R0 plant of claim 1. (*Id.* at 43).

    **Response:** Admitted.

**Monsanto Paragraph 46:** Nothing in the Special Master's report and recommendations on claim construction, as adopted by the district court, suggested that the '880 patent would not be infringed by the progeny of transformation events originally made before the patent issued.

    **Response:** Disputed. The '880 patent contains only method claims, not product claims, so Monsanto's allegation that "[n]othing in the Special Master's report and recommendations on claim construction, as adopted by the district court, suggested that the '880 patent would not be infringed by the progeny of transformation events originally made before the patent issued" inaccurately characterizes the '880 patent claims and the Illinois court's claim construction, which was fully consistent with this Court's subsequent grant of summary judgment of non-infringement with respect to the '880 patent. (D.I. 203, Ex. 1).

11

**Monsanto Paragraph 47:** In his report and recommendation addressing a non-infringement summary judgment motion based upon method steps being performed before patent issuance, the special master commented as follows: The use of a process involves carrying out the steps of the process. It would therefore not be unreasonable to require that at least one step of a patented process be carried out during the term of the patent in order to find infringement. (Goffney ER, Ex. E, pg. 9).

    **Response:** Admitted.

**Monsanto Paragraph 48:** In the same summary judgment ruling, the special master made the following finding regarding infringement by a party who made progeny plants of transgenic events originally created before patent issuance: Here, the R0, R1 and progeny plants satisfying all of the limitations of claims 1, 5 and 6 were in existence prior to the day the '956 patent issued. But Pioneer used these progeny plants to produce more progeny after the patent issued. And this, assuming that the R0, R1 and progeny plants otherwise responded, as a matter of fact, to the limitations of claims 1, 5 and 6, was infringement. (*Id.*).

    **Response:** Admitted.

**Monsanto Paragraph 49:** The report and recommendation contained in the summary judgment ruling addressed in the previous two paragraphs were adopted by the district court.

    **Response:** Disputed. Monsanto has cited no evidence in support of this

statement, and Syngenta is not aware of any such evidence.

**Monsanto Paragraph 50:** In yet another report and recommendation, the special master recommended denying a motion for summary judgment of non-infringement of the Lundquist '877 patent by an accused product in view of evidence that the last step of the subject method claims had been performed after the patent had issued, commenting: The SM has examined the evidence cited by DeKalb on this point (Exhibits I-L) and has concluded that it demonstrates only that there is a genuine triable issue of fact as to whether the R0 plants had matured to the point of fertility by the time the patent issued. (Goffney E.R. Ex. F, pg. 11).

    **Response:** Admitted.

**Monsanto Paragraph 51:** The report and recommendations contained in the summary judgment ruling addressed in the previous paragraph were adopted by the district court.

 **Response:** Disputed. Monsanto has cited no evidence in support of this statement, and Syngenta is not aware of any such evidence.

**Monsanto Paragraph 52:** DEKALB brought the instant *Lundquist Action* in the same court that issued all of the foregoing rulings.

 **Response:** Disputed in part. Syngenta disputes that the Illinois court "issued all the foregoing rulings" for the reasons set forth in the Responses to ¶¶ 49 and 51.

**Monsanto Paragraph 53:** On October 11, 1999,



 **Response:** Disputed in part.

**Monsanto Paragraph 54:** There is no substantial evidence that no reasonable litigant could have expected any chance of its claims in the *Shah Action* or the *Lundquist Action* being found valid based upon the objective facts known when the suits were brought.

 **Response:** Disputed. There is "substantial evidence that no reasonable litigant" in Monsanto/DeKalb's position could have reasonably expected success on the merits of the Shah and Lundquist actions, including the following:



- 

- The Federal Circuit held, *inter alia*, that DeKalb's infringement contentions were "inconsistent with the basic rule for infringement" and that "[t]his case lacks any basis for infringement under claim 1 because those steps occurred before patent issuance." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359-60 (Fed. Cir. 2007).

**Monsanto Paragraph 55:** "The United States Constitution expressly permits the government to grant exclusive monopolies in the form of patents, *see* U.S. CONST. art. I, § 8, cl. 8, and therefore the Sherman Act cannot be read to impede a litigant from seeking to defend constitutionally-permitted patent rights." *Andrx Pharms., Inc. v. Elan Corp. PLC*, 421 F.3d 1227, 1234 (11th Cir. 2005).

**Response:** Admitted.

**Monsanto Paragraph 56:** That summary judgment was granted in the *Shah Action* and the *Lundquist Action* is not evidence that can support a sham litigation claim. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("Neither the bringing of an unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls to invalidity, subjects the suitor to antitrust liability.").

**Response:** Disputed. The fact that both patent actions were eliminated on summary judgment and affirmed on appeal is *relevant* (although not dispositive) evidence that can be considered by the finder of fact in connection with the sham litigation issue. This is particularly true since DeKalb's contentions were "inconsistent with the basic rule for infringement" and DeKalb "lack[ed] any basis for infringement . . . ." *Monsanto Co.*, 503 F.3d at 1359-60.

**Monsanto Paragraph 57:** Where the defendant-patentee instituted both successful and unsuccessful suits to enforce the same patents, the unsuccessful patent enforcement does not support the inference that the defendant's litigation was a sham. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1358 (S.D. Fla 2004);

*Dollac Corp. v. Margon Corp.*, 164 F. Supp. 41, 62-63 (D.N.J. 1958), *aff'd*, 275 F.2d 202 (3d Cir. 1960).

**Response:**   Disputed in part. There were no prior "successful" suits to enforce the Shah or Lundquist patents. Monsanto received an adverse claim construction ruling (on the term "chloroplast transit peptide") in the *Monsanto v. Bayer* case in Missouri, and then settled the case. The prior Illinois action cited by Monsanto did not involve GA21 corn, and the Illinois district court's claim construction was entirely consistent with this Court's subsequent summary judgment decision.

**Monsanto Paragraph 58:**   Where, as here, there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide whether an action was objectively baseless as a matter of law. *Professional Real Estate Investors, Inc.*, 508 U.S. at 62-63.

**Response:**   Disputed in part. Syngenta does not dispute this general principle of law; however, Syngenta disputes that there are no genuine issues of material fact with respect to the sham litigation issues here for all the reasons set forth in this response.

**Monsanto Paragraph 59:**   Because proving that a suit was objectively baseless by clear and convincing evidence is inherently difficult, summary judgments are routinely granted against sham patent litigation claims. *See, e.g., McGahee v. Northern Propane Gas Co.*, 858 F.2d 1487, 1493 (11th Cir. 1988) ("[W]hen opposing a motion for summary judgment, an antitrust plaintiff must present evidence that tends, when interpreted in a light most favorable to plaintiff, to *exclude the possibility* that defendant's conduct was as consistent with permissible competition as with illegal conduct.") (emphasis added) (citing *Mitsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 589 (1986); *see also Miller Pipeline Corp. v. British Gas PLC*, 69 F. Supp. 2d 1129, 1142 (S.D. Ind. 1999) ("We acknowledge that objective baselessness is very difficult to prove, for a litigant's reasonable belief in its chance to achieve success on the merits is quite a low threshold."); *Collins & Aikman Corp. v. Stratton Indus., Inc.*, 728 F. Supp. 1570, 1581-82 (N.D. Ga. 1989) (granting summary judgment because the appearance of the product at the trade show gave the patentee sufficient reason to believe its patent had been infringed and to overcome the "objectively baseless" standard); *see also Gamma-Metrics, Inc. v. Scantech Ltd.*, 52 U.S.P.Q.2d (BNA) 1568, 1579 (S.D. Cal. 1998) (summary judgment granted to defeat sham patent claim when the only evidence indicating the objective reasonableness of the patentee's suit was the patentee's pre-suit comparison of the defendant's accused infringing device to the disclosures of its patent – there is a chance that a claim may be held valid upon adjudication).

**Response:** Disputed in part. Syngenta does not dispute that courts have granted summary judgment in appropriate cases where there were no genuine issues of material fact. However, because there *are* genuine issues of material fact here, summary judgment is inappropriate as a matter of law. Syngenta further points out that, contrary to Monsanto's suggestion, there is no "Count" or "Claim" directed to sham litigation in this case. Rather, Monsanto's filing of sham patent lawsuits are two of a series of anticompetitive acts designed to keep Syngenta from successfully entering the corn trait licensing markets. Accordingly, Monsanto's proposed "summary judgment" motion with respect to the sham patent allegations would, at most, eliminate one category of evidence that Syngenta could present to the jury. It would not eliminate either of Syngenta's antitrust claims.

## **CONCLUSION**

Based on the foregoing, Syngenta respectfully urges the Court to deny Monsanto's request to engage in summary judgment practice with respect to Syngenta's sham litigation allegations.

          Respectfully submitted,

          YOUNG CONAWAY STARGATT & TAYLOR, LLP

          /s/ *John W. Shaw*
          John W. Shaw (No. 3362)
          Michele Sherretta Budicak (No. 4651)
          The Brandywine Building, 17th Floor
          1000 West Street
          Wilmington, Delaware 19801
          (302) 571-6600
          jshaw@ycst.com

          *Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington, DC 20004-2634
(202) 508-8000

Dated: April 14, 2008

17

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz, Esquire
>David E. Moore, Esquire
>Potter Anderson & Corroon LLP
>Hercules Plaza
>1313 North Market Street
>Wilmington, DE 19899-0951

I further certify that on April 21, 2008, copies of the foregoing document will be served by e-mail on the above listed counsel. I additionally certify that copies of the foregoing document are being served on the following non-registered participants as indicated below:

### BY E-MAIL

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *John W. Shaw*
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

2