IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*,            )
                                        )
            Plaintiffs,             )
                                        )
            v.                      )   C.A. No.: 04-305-SLR (Consol.)
                                        )
SYNGENTA SEEDS, INC., *et al.*,         )   **REDACTED –**
                                        )   **PUBLIC VERSION**
            Defendants.             )


**SYNGENTA SEEDS, INC.'S REVISED RESPONSE TO MONSANTO'S STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED IN SUPPORT OF A MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II REGARDING LACK OF FORECLOSURE**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2634
(202) 508-8000

Dated: April 14, 2008

Pursuant to the Court's Order of April 7, 2008 (D.I. 569), Syngenta Seeds, Inc. ("Syngenta") respectfully submits this revised response to Monsanto Company's and Monsanto Technology LLC's ("Monsanto") Foreclosure Statement (D.I. 549).

In this submission, Syngenta duplicates each of Monsanto's paragraphs and either admits the paragraph or disputes the paragraph and states the correct facts. By admitting paragraphs to be true, Syngenta does not admit that Monsanto's evidentiary materials establish the absence of genuine issues of material fact such that summary judgment practice might be appropriate.[1] Indeed, Syngenta admits many of the facts contained in Monsanto's statement because the statement consists almost entirely of facts that are not relevant to the issues before the Court, and omits those facts (which are all disputed) that are relevant to the issue before the Court.[2]

## I. RESPONSE TO MONSANTO'S STATEMENTS IN PARAGRAPHS 1-32

**Monsanto Paragraph 1:** Monsanto introduced its corn-borer resistant trait, YieldGard, in 1997. (Third Am. Compl. ¶ 32). The ECB-resistant trait combats the European Corn Borer without using pesticides. (Third Amended Compl. ¶¶ 2, 24).

    **Response:** Admitted.

**Monsanto Paragraph 2:** Monsanto introduced its glyphosate resistant trait, Roundup Ready, in 1998, and introduced a second generation in 2001. (Third Am. Compl. ¶¶ 36, 42). The glyphosate tolerant trait allows a farmer to apply the herbicide glyphosate without harming the corn plant. (Third Amended Compl. ¶ 2).

    **Response:** Admitted.

---

[1] In addition, Syngenta admits facts solely for the purposes of this submission, and reserves the right to offer contrary facts at trial.

[2] The material issues of fact ignored by Monsanto include whether the independent seed companies are a key channel of distribution and whether Monsanto has foreclosed 63% of the available market (as concluded by Syngenta's expert) or 25% of the available market (as asserted by Monsanto).

**Monsanto Paragraph 3:** In 1998, Monsanto introduced its first stacked product, YieldGardPlus, which combined Monsanto's glyphosate-tolerant trait and its corn borer-resistant trait. (Monsanto Trait Pipeline, DTX 3); (SYN-AT-000643148).

**Response:** Admitted.

**Monsanto Paragraph 4:** In 2003, Monsanto released a stack containing the corn rootworm-resistant trait and its glyphosate resistant trait. (Monsanto Trait Pipeline, DTX 3).

**Response:** Admitted.

**Monsanto Paragraph 5:** In 2004, Monsanto introduced a stack containing Monsanto's rootworm-resistant trait and its corn borer-resistant trait. (Monsanto Trait Pipeline, DTX 3).

**Response:** Admitted.

**Monsanto Paragraph 6:** In 2005, Monsanto introduced a triple stack containing all three Monsanto traits. (Monsanto Trait Pipeline, DTX 3).

**Response:** Admitted.

**Monsanto Paragraph 7:** In the early 2000's, Syngenta acknowledged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Response:** Disputed in part. Syngenta lagged Monsanto on developing *certain* traits, but not all traits. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[REDACTED]

**Response:** Admitted.

**Monsanto Paragraph 9:** Prior to that time, [REDACTED]

**Response:** Admitted.

**Monsanto Paragraph 10:** Until mid-2004, Syngenta only produced a single corn borer-resistant trait, Bt11. (Third Am. Compl. ¶¶ 56, 64).

**Response:** Disputed. Syngenta also produced the corn borer-resistant trait, Bt176. (SYN-AT-000033345).

**Monsanto Paragraph 11:** Syngenta did not acquire any "rights" to license GA21 until May of 2004. (Third Am. Compl. ¶ 66). It never offered a glyphosate-tolerant trait until the 2005 selling season. (Third Am. Compl. ¶ 64).

**Response:** Disputed in part. Syngenta acquired rights to license GA21 in [REDACTED] and began offering the GT trait in late 2004.

**Monsanto Paragraph 12:** Syngenta did not offer stacked traits until 2006. (Syngenta Trait Pipeline, DTX 15).

**Response:** Disputed. Syngenta offered a stack of its European corn borer-resistant (ECB) trait and its glyphosate tolerant (GT) trait beginning in 2005. [REDACTED] In addition, Syngenta has offered its Bt11 product since 1997. (SYN-AT-000033345). Bt11 contains two traits: ECB resistance and tolerance to the Liberty herbicide. (Biotech Traits Commercialized 1997-1998, p. C32). Within the industry, Bt11 at times is referred to as

a stack and other times as a single trait. (Gilbert Rep. at 40-41; Biotech Traits Commercialized 2006, p. CRN140).

**Monsanto Paragraph 13:** Syngenta's potential customers for its traits are: (i) Syngenta's branded seed companies; (ii) DuPont/Pioneer; (iii) Dow/Mycogen; (iv) Monsanto; and (v) approximately 300 independent seed companies. ██████████████████████████████████████████████████████████████

**Response:** Disputed. DuPont/Pioneer and Monsanto are not "potential customers for [Syngenta's] traits." DuPont/Pioneer and Monsanto have developed their own GT and ECB traits and are not interested in licensing those traits from Syngenta. ██████████████████████████████████████████████████████████████████████████████████████████████████

**Monsanto Paragraph 14:** In 2005, Syngenta's potential customers had the following shares of branded corn seed sold in the United States: [DuPont/Pioneer 31.5%, Monsanto 26.1%, Syngenta 14.2%, Mycogen Dow 3.4%, Independent Seed Companies 24.8%]

**Response:** Disputed. DuPont/Pioneer and Monsanto are not "potential customers" for Syngenta's traits. (*See* Response to ¶ 13.) In addition, data from Doane Marketing Research show the following market shares in the U.S. hybrid corn seed market for 2005: DuPont/Pioneer – 31.9%; Monsanto – 19.9%; Syngenta – 14.3%; Mycogen/Dow – 3.4%; Independent Seed Companies - 30.5%. ████████████████████████████████████████████

**Monsanto Paragraph 15:** Approximately 24.8% of branded corn seed sold in the United States is sold by independent seed companies. (Doane Data, MGA 0613239); ▮

**Response:** Disputed. Independent seed companies sold approximately 30.5% of the hybrid corn seed sold in the United States in 2005. ▮

**Monsanto Paragraph 16:** Syngenta's seed companies (NK, Garst and Golden Harvest) represent[ed] approximately 14.2% of all corn sold in the United States [in 2005]. (Doane Data, MGA 0613239). Syngenta can, and does, license its traits to its wholly-owned seed companies.

**Response:** Admitted. This statement is accurate for 2005.

**Monsanto Paragraph 17:** DuPont's branded seed company, Pioneer, represent[ed] approximately 31.5% of all of the branded corn sold in the United States [in 2005]. (Doana Data, MGA 0613239).

**Response:** Admitted. This statement is accurate for 2005.

**Monsanto Paragraph 18:** In April, 2006, Syngenta's GreenLeaf Genetics became a joint venture with Pioneer for the purpose of licensing germplasm and traits. (Formation Agreement SYN-AT-003236064). Under that joint venture agreement, "DuPont receives a global license to Syngenta's insect resistance [traits]." (Syngenta and DuPont Joint Press Release, DX 81).

**Response:** Disputed. Monsanto uses brackets to alter the meaning of a quote taken from a press release regarding the joint venture. The unaltered press release stated that DuPont received a license to Syngenta's insect resistance "technology" (not traits) and explained that the license was to facilitate *DuPont's ability to* "develop[] the next generation of insect traits." (DX 81). ▮

5

**Monsanto Paragraph 19:** 

    **Response:** Disputed.

**Monsanto Paragraph 20:** Travis Dickinson, Syngenta's head of new business development from 2004 to 2006, testified that Monsanto posed no barrier to licensing traits to Pioneer:



    **Response:** Disputed. Mr. Dickinson did not testify that "Monsanto posed no barrier."

**Monsanto Paragraph 21:** Dow/Mycogen's branded seed business, Dow/Mycogen, represent[ed] approximately 3.4% of the branded corn sold in the United States [in 2005]. (Doane Data, MGA 0613239).

    **Response:** Admitted. This statement is accurate for 2005.

**Monsanto Paragraph 22:** 

    **Response:** Admitted.

**Monsanto Paragraph 23:** Syngenta has admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



**Response:** Disputed. Mr. Dickinson did not testify that ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Monsanto Paragraph 24:** Monsanto's branded seed companies represent approximately 26.1% of the corn sold in the United States. (Doane Data, MGA 0613239).

**Response:** Disputed. Monsanto sold 19.9% of the hybrid corn seed sold in the United States in 2005. (Gilbert Rep. 118, Table 7A).

**Monsanto Paragraph 25:** Syngenta has chosen not to license its traits to Monsanto's branded seed companies.

**Response:** Disputed. Syngenta has not "chosen" not to license traits to Monsanto. Syngenta has not licensed its traits to Monsanto because Monsanto does not want to license traits from Syngenta and is trying to foreclose Syngenta from licensing traits to *anyone*. (Gilbert Rep. at 115-17).

7

**Monsanto Paragraph 26:** In 2005, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ With respect to its 2005 performance, Jack Bernans [sic: Bernens], head of Syngenta's Agrisure trait business, stated: "We are pleased with the acceptance of Agrisure traits by corn growers after one year on the market, but this is just the start." (SeedQuest News Section DX284).

    **Response:**  Disputed. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**Monsanto Paragraph 27:** In Spring 2006, Ron Wulfkuhle, CEO of GreenLeaf Genetics, announced that GreenLeaf Genetics already had "more than 60 licensees" out of approximately 300 independent seed companies. (GreenLeaf Genetics Newsletter Spring 2006). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

    **Response:**  Disputed. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**Monsanto Paragraph 28:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

    **Response:**  Disputed. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

███████████████████████████████████

███████████████████████████████████

**Monsanto Paragraph 29:** Summary judgment is appropriate when the plaintiff cannot prove "substantial foreclosure." *See Barr Labs v. Abbott Labs*, 978 F.2d 110-11 (affirming summary judgment for failure to show substantial foreclosure). To be anticompetitive, a contract must "foreclose competition in a substantial share of the line of commerce affected." *Tampa Electric v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

**Response:** Admitted in part. Syngenta agrees that a plaintiff bringing a monopolization claim under Section 2 of the Sherman Act must show, among other things, that a substantial percent of the relevant markets have been foreclosed to competition. For this purpose, foreclosure is measured in "the line of commerce affected." *Tampa Elec. Co. v. Nashville Coal Co.* 365 U.S. 320, 327 (1961). Hybrid corn seed sold to farmers is not the "line of commerce affected" in this case. The relevant markets in this case – and thus the line of commerce affected – are the markets for licensing GT and ECB traits. In addition, there is substantial foreclosure if a key channel of distribution is foreclosed to competition by the defendant's conduct. *See United States v. Dentsply Int'l*, 399 F.3d 181, 191 (3d Cir. 2005); *LePage's, Inc. v. 3M*, 324 F.3d 141, 159 (3d Cir. 2003).

**Monsanto Paragraph 30:** When contracts foreclose less than 30-40% of the competitive market, that foreclosure is insubstantial as a matter of law. *See, e.g., Jefferson Hospital District*, 466 U.S. at 44-45; *Barr Labs*, 978 F.2d at 110-11 (affirming summary judgment that alleged foreclosure of 15% of the competitive market was insubstantial); *Stop & Shop Supermarket Co.*, 373 F.3d at 68 (observing that "foreclosure levels are unlikely to be of concern where they are less than 30 or 40 percent"); *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) (noting that 40% to 50% usually required to find substantial foreclosure); Hovenkamp, Antitrust Law ¶ 1821c at 176-79 (collecting cases).

**Response:** Disputed. Sufficient anticompetitive harm is proved if defendant's conduct results in a significant restriction of "the market's ambit" or delays competition by increasing new entrants' costs. *See Dentsply*, 399 F.3d at 191; *LePage's,* 324 F.3d at 159-60; *United States v. Microsoft Corp.*, 253 F.3d 34, 70 (D.C. Cir. 2001) (noting that Microsoft's exclusionary conduct violated § 2 "even though the contracts foreclose less than the roughly 40% or 50% share usually required in order to establish a [restraint of trade] violation"). In addition, a plaintiff can state a claim for monopolization if a key channel of distribution is foreclosed from competition. *Dentsply*, 399 F.3d at 191 (dealers of artificial teeth); *LePage's*, 324 F.3d at 160 n.14 (large-volume retailers); *see also Microsoft*, 253 F.3d at 71 (the largest internet access providers); *United States v. Visa U.S.A.*, 344 F.3d 229, 240 (2d Cir. 2003) (banks).

**Monsanto Paragraph 31:** Monsanto can obtain summary judgment "by showing that the non moving party [Syngenta] has not offered evidence sufficient to establish the existence of an element essential to its case." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d. Cir. 1996); *see also Ideal Dairy Farms*, 90 F.3d at 743 ("[t]he non-movant must present concrete evidence supporting each essential element of its claim.").

**Response:** Admitted.

**Monsanto Paragraph 32:** Hearsay statements from Syngenta's employees recounting alleged out-of-court statements of independent seed companies regarding alleged foreclosure cannot be used to defeat a motion for summary judgment. *See Orson, Inc.*, 79 F.3d at 1366 (affirming summary judgment where third party testimony refuted plaintiff's claims that it was foreclosed); *Ideal Dairy Farms v, John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996) (affirming summary judgment order where, "if the evidentiary record were reduced to admissible evidence, the plaintiff could not carry its burden of proof at trial.") (citing *Clark v. Modern Group Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

**Response:** Disputed in part. Syngenta disputes that testimony that seed companies informed Syngenta that they would not license traits from Syngenta because of Monsanto's conduct is inadmissible.

## II. RESPONSE TO ADDITIONAL MONSANTO FACTUAL STATEMENTS

In addition to the statements in the numbered paragraphs, Monsanto's Foreclosure Statement includes factual statements that are not contained within those paragraphs. The following section responds to those statements.

**Monsanto Statement A (p. 2):** Syngenta Has No Evidence that Its Alleged Foreclosure Affects a Substantial Share of Potential Licensees of Traits

**Response:** Disputed. Record evidence in this case demonstrates that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ In addition, evidence demonstrates that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮

**Monsanto Statement A.1 (p. 2):** Monsanto [sic] Introduction of a Series of Traits and Its Broad Licensing of Those Traits to Others Gave it a First Mover Advantage Over Syngenta

**Response:** Admitted in part. Monsanto introduced the first GT trait and the first corn rootworm trait but not the first ECB trait. (Biotech Traits Commercialized 2006, pp. CRN 3-4, 104; SYN-AT-000033345). ▮▮▮▮▮▮▮▮▮▮

**Monsanto Statement A.2 (p. 3):** Syngenta's Inability to License Traits Prior to 2004/2005 Was Due To Its Own Internal Problems

**Response:** Disputed. Syngenta disputes that it had an "inability to license traits," ▮▮▮▮▮▮▮▮▮▮

11

**Monsanto Statement A.3 (p. 3):** Syngenta Did Not Commence A Licensing Business Until 2004

    **Response:** Disputed in part. ████████████████████
████████████████████████████████████████████████████████
████████████████

**Monsanto Statement A.4 (p. 4):** Syngenta Has Not Been Foreclosed from a "Substantial Share" of the Its [sic] Potential Licensees

    **Response:** Disputed. Syngenta has been foreclosed from a "substantial share" of its potential licensees. ████████████████████
████████████████████████████████████████████████████████
████████████████████ Monsanto concedes in its Foreclosure Statement that this portion of the market has been foreclosed by Monsanto's anticompetitive conduct. (Foreclosure Statement at 1, 7 n.3). ████████████████████
████████████████████████████████████████████████████████

**Monsanto Statement A.4(a) (p. 5):** Independent Seed Companies Do Not Comprise A Substantial Portion of the Market

    **Response:** Disputed. ████████████████████████████████
████████████████████████████████ In addition, both parties recognize that the independent seed companies are the critical consumers and the independent seed company channel is a key distribution channel for licensing corn traits:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

12

[REDACTED]

**Monsanto Statement A.4(b) (p. 5):** [Syngenta Has] Access to Syngenta's Branded Seed Companies

    **Response:** Admitted.

**Monsanto Statement A.4(c) (p. 5):** [Syngenta Has] Access to DuPont's Branded Seed Business Via Green Leaf Genetics [¶¶ 17-20]

    **Response:** Disputed. [REDACTED]

**Monsanto Statement A.4(d) (p. 6):** [Syngenta Has] Access to Dow/Mycogen Branded Seed Business

    **Response:** Disputed. [REDACTED]

**Monsanto Statement A.4(e) (p. 7):** Syngenta Has Declined to License Its Traits to Monsanto

    **Response:** Disputed. Syngenta has not declined to license its traits to Monsanto; Monsanto is not interested in licensing traits from Syngenta because Monsanto has its own proprietary GT and ECB traits. (Foreclosure Statement ¶¶ 1-2). Moreover,

13

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

**Monsanto Statement A.4(f) (p. 7):** Syngenta Is Licensing to Independent Seed Companies

    **Response:** Disputed in part. Seed companies have licensed only a minimal amount of traits from Syngenta. In 2006, Syngenta licensed 40,960 units of its ECB trait and 5,345 units of its GT trait to independent seed companies, which amounts to less than 1% of the traits licensed by the independent seed companies. (*see* PTX 1820; PTX 1821; Gilbert Rep. at 19, Table 3E).

---

[3] ███████████████████████████████████████████████████████████████████████

14

## CONCLUSION

Based on the foregoing, Syngenta respectfully submits that genuine issues of material fact exist as to whether Monsanto has substantially foreclosed Syngenta from the relevant markets. Accordingly, Syngenta respectfully urges the Court to deny grant Monsanto's request for summary judgment motion practice with respect to foreclosure.

        Respectfully submitted,

        YOUNG CONAWAY STARGATT & TAYLOR, LLP

        /s/ *John W. Shaw*
        John W. Shaw (No. 3362)
        Michele Sherretta Budicak (No. 4651)
        The Brandywine Building, 17th Floor
        1000 West Street
        Wilmington, Delaware 19801
        (302) 571-6600
        jshaw@ycst.com

Of Counsel:        *Attorneys for Syngenta Seeds, Inc.*

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: April 14, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on April 21, 2008, copies of the foregoing document will be served by e-mail on the above listed counsel. I additionally certify that copies of the foregoing document are being served on the following non-registered participants as indicated below:

### BY E-MAIL

John J. Rosenthal, Esquire
Peter E. Moll, Esquire
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Susan Knoll, Esquire
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *John W. Shaw*
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

2