IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONSANTO COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-305-SLR (Consol.) |
| | ) | |
| SYNGENTA SEEDS, INC., *et al.*, | ) | **REDACTED –** |
| | ) | **PUBLIC VERSION** |
| Defendants. | ) | |

**SYNGENTA SEEDS, INC.'S REVISED RESPONSE TO MONSANTO'S STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED IN SUPPORT OF A MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II REGARDING FAILURE TO ESTABLISH MONOPOLY POWER**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: April 14, 2008

Pursuant to the Court's Order April 7, 2008 (D.I. 569), Syngenta Seeds, Inc. ("Syngenta") respectfully submits this revised response to Monsanto Company's and Monsanto Technology LLC's ("Monsanto") Monopoly Power Statement (D.I. 550).

In this submission, Syngenta duplicates each of Monsanto's paragraphs and follows each paragraph with a response that either admits the paragraph or disputes the paragraph and states the correct facts. By admitting paragraphs to be true, Syngenta does not admit that Monsanto's evidentiary materials establish the absence of genuine issues of material fact such that summary judgment practice might be appropriate. Regardless of whether Monsanto's statements may be sufficient to establish that there is a downstream hybrid corn seed market and that Monsanto does not have monopoly power in that market, they do not eliminate the genuine issues of material fact as to Syngenta's actual claim in this case: whether there are relevant markets for the licensing of GT and ECB corn traits and whether Monsanto has monopoly power in those markets. There is substantial evidence that establishes that these key issues of material fact are not undisputed.

I.   **RESPONSE TO MONSANTO'S STATEMENTS IN PARAGRAPHS 1-29**

**Monsanto Paragraph 1**: "[T]he tangible product that Syngenta is selling to the marketplace is corn seed." (D.I. 147 – Reply Br. In Support of Syngenta's Mot. to Dismiss Counterclaims Nos. 1-3, at 2). Traits are contained in either foundation seed or hybrid seed. *See* (D.I. 124 -- Second Am. Compl. ¶ 6) (averring that traits must be contained in either hybrid seed or foundations seed).

**Response**: Disputed in part. Monsanto omits the beginning of the quoted sentence, which states (1) that "*Monsanto's allegations*" (not Syngenta's allegations) define the tangible product as corn seed and (2) that the question being addressed was, under the *Dastar* case, what is the final good being sold to the consumer. (D.I. 147 at 2 (emphasis added)). Monsanto has admitted that the GA21 trait at issue also "is a tangible

product" and that traits can constitute a separate market from the seeds containing the traits. (D.I. 144 at 8 ("[T]he GA21 event is a tangible product."); ███████
███████████████████████████████████████████
███████████████████████████████████████████
████████████

**Monsanto Paragraph 2:** Syngenta argued to the Court that traits do not exist outside a corn seed:

> There are not stores of separate, tangible, pre-manufactured units called "GA21" that are physically inserted into the corn seed. Rather, GA21 is contained in inbred corn seed lines made up of a combination of germplasm, genetic traits, and other argronomic characteristics.

(Syngenta Br. in Support of Motion to Dismiss Monsanto's Counterclaims, at 4). Trait producers do not, and cannot, provide a trait directly to a licensee. Rather, a trait producer

> delivers inbred corn seed lines containing the [trait], germplasm, and other agronomic characteristics. The licensee uses that inbred corn seed line to cross with another inbred corn seed line to produce hybrid corn seed, which is planted by the farmer

(*Id.* at 4, n.4).

**Response**: Disputed in part. Syngenta disputes that "trait producers do not, and cannot, provide a trait directly to a licensee." ███████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████

**Monsanto Paragraph 3:** The Court accepted Syngenta's argument that traits do not exist outside a corn seed. The Court noted that "[t]he issue raised by the papers is whether it is the GA21 trait or the seed that should be considered the 'product' being sold." 443 F. Supp. 2d at 651. In granting the Motion to Dismiss, the Court "conclude[d] that the seed is the tangible product being sold in the marketplace." *Id.* at 652.

**Response:** Disputed in part. Syngenta disputes that the Court found that "traits do not exist outside a corn seed." The Court accepted as true (on a motion to dismiss) Monsanto's allegations that the *final tangible product* (the relevant inquiry under the Lanham Act) is hybrid seed. The Court did not address whether traits exist outside corn seed or whether the proper relevant market is for trait licensing or corn seed.

**Monsanto Paragraph 4:** Syngenta previously alleged that Monsanto attempted to monopolize the alleged foundation seed market. (*See* D.I. 124 -- Second Am. Compl. ¶¶. 191-99).

**Response:** Admitted.[1]

**Monsanto Paragraph 5:** Syngenta's alleged foundation seed market included both transgenic and conventional seed. (*See* D.I. 124 – Second Am. Compl. ¶ 155). Foundation seed can be either conventional seed or transgenic seed. (Tudor Tr. at 71:11 to 72:2); (Dickinson Tr. at 179:4 to 181:2).

**Response:** Admitted.

**Monsanto Paragraph 6:** After discovery closed, Syngenta decided that it could not proceed to trial with its attempted monopolization of an alleged foundation seed market claim. (D.I. 491 – Syngenta Mot. to Amend the Second Am. Compl.). Syngenta dropped that claim. (*Id.*).

**Response:** Admitted that Syngenta dropped its foundation seed market claim.

**Monsanto Paragraph 7:** In *Sample v. Monsanto et al.*, Syngenta rejected the notion that conventional and transgenic hybrid corn seed are separate and distinct markets: "***Conventional corn and soy seed compete against YGC and RRS seeds. If the price of GM seeds gets too high, or if the price of conventional seeds gets sufficiently low,***

---

[1] Syngenta admits facts solely for the purposes of this submission, and reserves the right to offer contrary facts at trial.

*farmers can and will switch to conventional varieties."* (Syngenta Opposition Motion for Class Certification Brief at 7) (emphasis added).

**Response**: Disputed in part. Syngenta did not "reject[] the notion that conventional and transgenic hybrid corn seed are separate and distinct markets." In *Sample*, Syngenta addressed the issue of whether class-wide injury could be proven in a Sherman Act § 1 case alleging a conspiracy among sellers of hybrid seeds. The brief cited by Monsanto did not address the issue of "relevant market" or "reject the notion that conventional and transgenic hybrid corn seed are separate and distinct markets," which is not an issue in a price fixing case like *Sample*. In addition, the fact that there may be *a market* for hybrid corn seed is not inconsistent with the fact that there also are *separate markets* for the traits that are inputs into the hybrid corn sold to farmers. (*See infra* p. 12).

**Monsanto Paragraph 8:** Syngenta's officers and employees have repeatedly admitted that conventional hybrid seed competes with transgenic hybrid seed. *See* ¶¶ 9-15, *infra*.

**Response**: Disputed. Syngenta disputes that its "officers and employees have repeatedly admitted that conventional hybrid seed competes with transgenic hybrid seed." The testimony cited in Paragraphs 9-15 establishes ████████████ ████████████████████████████████████████████████████ ████████████████████████ In addition, the evidentiary record demonstrates at least a genuine issue of fact as to ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████

**Monsanto Paragraph 9:** Iona [sic] Tudor, Syngenta's Global Head of Corn & Soya Traits, testified as follows:



**Response:** Admitted.

**Monsanto Paragraph 10:** Moez Meghi, part of Syngenta's new corn trait development group, testified:



**Response:** Admitted.

**Monsanto Paragraph 11:** Kevin Macken, Syngenta's Manager of Market Intelligence, also testified that both types of seed compete with each other:



**Response:** Admitted.

**Monsanto Paragraph 12:** Ed Resler, Syngenta's in-house counsel, testified as follows:



**Response**: Admitted.

**Monsanto Paragraph 13:** Gary Powell, who served as Syngenta's Head of Market Development and Director of New Product Market Development, testified as follows:



**Response**: Admitted.

**Monsanto Paragraph 14:** David Jessen, Syngenta's Head of New Traits Development, testified as follows:



**Response:** Admitted.

**Monsanto Paragraph 15:** John Scharington [sic], Syngenta's Project Manager for  testified:

**Response:** Disputed in part. Monsanto omits Mr. Scharingson's explanation (a few lines later) that 

**Monsanto Paragraph 16:** Syngenta's 

**Response:** Admitted.

**Monsanto Paragraph 17:** Syngenta launched ██████████████████
██████████████████████████████████████████

**Response:** Admitted.

**Monsanto Paragraph 18:** Syngenta created ██████████████████
██████████████████████████████████████████

**Response:** Disputed in part. ██████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████

**Monsanto Paragraph 19:** On December 8, 2004, Syngenta ████
██████████████████████████████████████████

**Response:** Disputed in part. ██████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████

**Monsanto Paragraph 20:** When Syngenta ███████████████████
██████████████████████████████████████████

**Response:** Admitted.

8

**Monsanto Paragraph 21:** In 2005, Syngenta 

**Response:** Admitted.

**Monsanto Paragraph 22:** Syngenta's internal documents confirm 

**Response:** Admitted.

**Monsanto Paragraph 23:** Syngenta's current promotional materials acknowledge that farmers should sometimes choose conventional hybrid seed over transgenic hybrid seed. A Syngenta press release stated:

> Options, Options, and More Options
>
> * * *
>
> Corn is very susceptible to early-season competition from weeds, so with a race horse hybrid on high-yielding soils, a grower may find he's better off leaving out the glyphosate-tolerance trait and using a good soil-applied herbicide to control weeds.

(Media Release, *Enjoying that New Corn Smell* <http://www.syngenta-us.com/media/article.asp?article_id=823 (quoting Bruce Battles, a Syngenta Argronomist).

**Response:** Admitted.

**Monsanto Paragraph 24:** Monsanto's market share for conventional corn seed and corn seed containing traits is approximately 26.1%. (Doane Data, MGA 0613239).

**Response:** Admitted.

**Monsanto Paragraph 25:** A monopolization claim under Section of the Sherman Act requires that plaintiff prove, among other things, that defendant possesses monopoly power in the relevant market. *United States v. Grinnell Crop.*, 384 U.S. 563, 570-71 (1966).

    **Response:** Admitted.

**Monsanto Paragraph 26:** The relevant product market must be defined by the reality of the marketplace. *Town Sound & Custom Tops, Inc.*, 959 F.2d at 479; *Alcatel USA, Inc.*, 166 F.3d at 781. Courts have "not hesitated to reject market definitions that make no economic sense." *Deep South Pepsi-Cola Bottling Co.*, 1989 WL 48400, at *7; *see also Town Sound & Custom Tops, Inc.*, 959 F.2d at 479, *Weiss*, 745 F.2d at 826.

    **Response:** Disputed in part. Syngenta disputes that courts have "not hesitated" to decide the issue of relevant market. Generally speaking, relevant antitrust product and geographic markets are questions of fact that are left to a jury. *See, e.g., Eastman Kodak Co. v. Image Technical Serv., Inc.*, 504 U.S. 451, 482 (1992) ("The proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers.") (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 572 (1966)); *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 199 (3d Cir. 1992) ("[T]he determination of a relevant product market or submarket . . . is a highly factual one best allocated to the trier of fact.").[2]

---

[2] Courts typically deny summary judgment on market definition where the parties' disputes revolve around the substitutability of products, the cross-elasticity of demand between products, and the interpretation of expert opinions. *See, e.g., Eastman Kodak*, 504 U.S. at 486 (cross-elasticity of demand); *Cytologix Corp. v. Ventana Med. Sys., Inc.*, 00 Civ. 12231, 2006 U.S. Dist. LEXIS 49677, at *9-11 (D. Mass. Jul. 20, 2006) (substitutability of products); *Pennpac Int'l, Inc. v. Rotonics Mfg., Inc.*, 99 Civ. 2890, 2001 U.S. Dist. LEXIS 6842, at *11-12 (E.D. Pa. May 25, 2001) (substitutability of products); *Moecker v. Honeywell Int'l, Inc.*, 144 F. Supp. 2d 1291, 1305 (M.D. Fla. 2001) (differing expert testimony).

**Monsanto Paragraph 27:** Trait producers sell corn seed rather than traits. Thus, "the seed is the tangible product being sold in the marketplace." *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 652 (D. Del. 2006). The only plausible product market is a hybrid seed market.

**Response:** Disputed in part. Syngenta disputes that the "only plausible product market is a hybrid seed market" and that "trait producers sell corn seed rather than traits."

[REDACTED]

**Monsanto Paragraph 28:** In planting their corn crops, farmers choose between conventional hybrid seed and transgenic hybrid seed. The relevant product market must include all products that are "reasonably interchangeable by consumers for the same purposes." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 438 (3d Cir. 1997). A reasonably interchangeable product is one that is "roughly equivalent to another for the use to which it is put; while there may be some degree of preference for the one over the other, either would work effectively." *Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.*, 33 F.3d 194, 206 (3d Cir. 1994).

**Response:** Disputed in part. Syngenta disputes that "farmers choose between conventional hybrid seed and transgenic hybrid seed." The evidentiary record in this case shows that [REDACTED]

---

[3] Dr. Gilbert's report was filed by Syngenta as Ex. 1 to D.I. 519. Although Monsanto has filed a *Daubert* motion with respect to Dr. Gilbert's calculation of damages, it does not challenge Dr. Gilbert's opinions on relevant market, monopoly power or foreclosure.

11

███████████████████████████████████████

████████████████

Syngenta further disputes that use (or purpose) of a product is the relevant factor in determining market definition. The key consideration for market definition is whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. *Eastman Kodak*, 504 U.S. at 469; *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 400 (1956).

**Monsanto Paragraph 29:** The Third Circuit has held that a market share of less than 55% is insufficient as a matter of law to establish monopoly power. *Fineman*, 980 F.2d at 201; *see also Ideal Dairy Farms*, 90 F.3d at 749-50 (affirming district court's grant of summary judgment to antitrust defendant based on plaintiff's improper market definition and failure to prove defendant's monopoly power in properly-drawn product market).

**Response:** Admitted.

## II. RESPONSE TO ADDITIONAL MONSANTO FACTUAL STATEMENTS

In addition to the statements in the numbered paragraphs, Monsanto's Monopoly Power Statement includes factual statements that are not contained in numbered paragraphs. The following section responds to those statements (to the extent they do not merely repeat factual statements in numbered paragraphs).

**Monsanto Statement A (p. 3):** Traits Cannot Be a Separate Relevant Product Market Because "Traits" Do Not Constitute a Separate Product from Corn Seed

**Response:** Disputed. Syngenta disputes that the licensing of GT and ECB traits cannot be relevant antitrust product market because they are technological inputs rather than the final tangible product. Separate markets can exist for technological inputs (traits) and for the final products containing those inputs (hybrid

seeds). *See, e.g., United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 597 (1957) (relevant market for finishes and fabrics that were inputs to finished automobiles); *United States v. Microsoft Corp.*, 253 F.3d 34, 52 (D.C. Cir. 2001) (recognizing relevant product market as the "licensing of all Intel-compatible PC operating systems"); H. HOVENKAMP, I IP AND ANTITRUST: AN ANALYSIS OF ANTITRUST PRINCIPLES APPLIED TO INTELLECTUAL PROPERTY LAW § 4.3 (Supp. 2007) (describing technology markets and innovation markets as distinct from markets for final goods).

The facts presented below demonstrate that the relevant product markets are for the licensing of GT and ECB traits:





**Monsanto Statement B (p. 4):** Syngenta Cannot Prove Monsanto Possesses Market Power in a Product Market Based on Foundation Seeds

**Response:** Disputed. Syngenta has dropped its foundation seed market claim.

**Monsanto Statement C (p. 5):** Syngenta Cannot Prove Monsanto Possesses Market Power in a Product Market Based on Hybrid Corn Seed

**Response:** Disputed in part. Syngenta's claimed markets are for the licensing of GT and ECB traits that are inserted into hybrid seeds, not markets for hybrid seeds themselves.

**Monsanto Statement C.1 (p. 5):** Conventional Hybrid Corn Seed and Transgenic Hybird [sic] Corn Seed are Substitutes Within the Same Market

**Response:** Disputed. The facts presented below demonstrate that conventional corn is not a substitute for traited corn.





**Monsanto Statement C.2 (p. 10):** Within the Hybrid Corn Seed Market, Monsanto's Market Share is Insufficient as a Matter of Law to Find Market Power

**Response:** Disputed in part. The issue presented is whether Monsanto has market power in the GT and ECB trait licensing markets, not whether Monsanto has market power in the hybrid corn seed market. The facts presented below demonstrate that Monsanto possesses market power in the GT and ECB trait licensing markets.



## CONCLUSION

Based on the foregoing, Syngenta respectfully submits that genuine issues of material fact exist as to whether Monsanto possess monopoly power in the relevant antitrust markets. Accordingly, Syngenta respectfully urges the Court to deny grant Monsanto's request for summary judgment motion practice with respect to Syngenta's alleged relevant product markets.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *John W. Shaw*
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Syngenta Seeds, Inc.*

Of Counsel:

SHEARMAN & STERLING LLP
Richard F. Schwed
Stephen Fishbein
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Heather Lamberg Kafele
801 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2634
(202) 508-8000

Dated: April 14, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz, Esquire
>David E. Moore, Esquire
>Potter Anderson & Corroon LLP
>Hercules Plaza
>1313 North Market Street
>Wilmington, DE 19899-0951

I further certify that on April 21, 2008, copies of the foregoing document will be served by e-mail on the above listed counsel. I additionally certify that copies of the foregoing document are being served on the following non-registered participants as indicated below:

**BY E-MAIL**

| | |
|---|---|
| John J. Rosenthal, Esquire<br>Peter E. Moll, Esquire<br>HOWREY LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004 | Susan Knoll, Esquire<br>HOWREY LLP<br>1111 Louisiana, 25th Floor<br>Houston, TX 77002-5242 |

Kenneth A. Letzler, Esquire
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *John W. Shaw*
John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

2