IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MONSANTO COMPANY, *et al.*　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　)　　　C. A. NO. 04-305-SLR  (Consol.)
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
SYNGENTA SEEDS, INC., *et al.*　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　)


**<u>JOINT PROPOSED JURY INSTRUCTIONS – WITH CITATIONS</u>**

# TABLE OF CONTENTS

I.  Preliminary Instructions ........................................................................6

   A.  The Parties ..........................................................................6

   B.  Burden of Proof ...................................................................7

   B.  Burden of Proof ...................................................................9

   C.  Duty of Jury ......................................................................10

   D.  Evidence ...........................................................................11

   E.  Conduct of the Jury ...........................................................12

   F.  Course of the Trial ............................................................14

II.  Post-Trial Instructions – General .....................................................16

   A.  Introduction ......................................................................16

   B.  Jurors' Duties ....................................................................17

   C.  Burden of Proof .................................................................18

   D.  Evidence Defined ..............................................................22

   E.  Direct and Circumstantial Evidence ..................................24

   F.  Consideration of Evidence .................................................25

   G.  Use of Notes .....................................................................26

   H.  Credibility of Witnesses ...................................................27

   I.  Missing Witness ................................................................29

   J.  Expert Witnesses ..............................................................30

   K.  Deposition Testimony .......................................................31

   L.  Use of Interrogatories .......................................................32

   M.  Judicial Notice ..................................................................33

   N.  Charts and Summaries Not Admitted in Evidence ...............34

O.  Stipulation of Fact ...................................................................................34

P.  Striking of Evidence ................................................................................35

Q.  Evidence Admitted For a Limited Purpose .............................................36

R.  Jury Questions and Answers .....................................................................37

S.  Opinion Testimony ..................................................................................38

III.  THE PARTIES AND THEIR CONTENTIONS ...........................................39

A.  The Parties ...............................................................................................39

B.  Syngenta's Contentions ............................................................................41

C.  Monsanto's Contentions ...........................................................................42

C.  Monsanto's Contentions ...........................................................................43

IV.  SYNGENTA'S CLAIMS .................................................................................44

A.  Purpose of Antitrust Laws .......................................................................44

B.  Unlawful Maintenance of a Monopoly ....................................................45

1.  Elements ..................................................................................................45

2.  Monopoly Power – Defined .....................................................................46

3.  Relevant Market – General ......................................................................47

    a)  Relevant Product Market ....................................................................48

    b)  Relevant Geographic Market ..............................................................50

    c)  Relevant Market – Plausibility ...........................................................51

    d)  Relevant Market – Necessity of Proof ................................................52

4.  Existence of Monopoly Power – Direct Proof ..........................................53

5.  Existence of Monopoly Power – Indirect Proof ........................................55

    a)  Market Share .......................................................................................56

    a)  Market Share .......................................................................................57

    b)  Market Share Trends ...........................................................................59

      c)   Barriers to Entry ................................................................................60

      d)   Entry and Exit by Other Companies.......................................................61

      e)   Number and Size of Competitors ..........................................................62

      f)    Conclusion............................................................................................63

6.   Willful Maintenance of Monopoly Power Through Anticompetitive Acts..............64

      a)   Licensing Agreement and Incentive Program ...........................................66

      b)   Exclusive Dealing.................................................................................68

      c)   Threats to Seed Companies ...................................................................72

      d)   Volume and Market Share Discounts........................................................73

      e)   Business Justification ...........................................................................74

    7.   Injury and Causation ..................................................................................76

7.   Antitrust Injury ................................................................................................79

8.   Antitrust Damages ..........................................................................................80

      a)   Introduction and Purpose.......................................................................80

      b)   No Speculation or Guesswork .................................................................83

      c)   Lost Profits ..........................................................................................84

      d)   Future Lost Profits ................................................................................85

      e)   Causation and Disaggregation ...............................................................87

      f)    Nominal Damages ................................................................................89

C.   Lanham Act .....................................................................................................90

      a)   Elements .............................................................................................90

      a)   False Advertising Under the Lanham Act ..................................................92

D.   False Advertising Under the Lanham Act .............................................................92

      a)   Intent and Bad Faith ............................................................................94

      b)   Commercial Advertising.........................................................................98

      c)   Damages ................................................................................99

V.     MONSANTO'S DEFENSES TO SYNGENTA'S CLAIMS ........................................101

    A.   Mitigation of Damages ..........................................................102

    A.   Mitigation of Damages ..........................................................104

    B.   Syngenta's Injuries or Damages Were Proximately Caused by its Own Acts or Omissions.........................................................................105

VI.    MONSANTO'S COUNTERCLAIMS ..............................................................106

    A.   Tortious Interference ............................................................107

    A.   Tortious Interference ............................................................108

    1.   Improper Interference .........................................................110

    2.   Requirement of a Contract....................................................111

    3.   Requirement of Intent ........................................................113

    4.   Breach Defined ................................................................114

    5.   Nonliability of Contractual Parties ..........................................115

    6.   Self-Interest as Proper of Improper Interference..............................116

    7.   Protection of the Public Welfare ............................................117

    8.   Recoverable Elements of Damages ...........................................118

    B.   Monsanto's Damages ..........................................................119

    1.   Tortious Interference with Contractual Relations Damages.....................119

    2.   Additional Damages - Disgorgement .........................................120

    2.   Additional Damages – Disgorgement.........................................121

    C.   Deceptive Trade Practices .....................................................122

    1.   Elements ......................................................................123

    2.   Nonliabilty for Misrepresentation of Origin, Sponsorship, or Affiliation..............125

VII.    DAMAGES.....................................................................................126

A.   Expert Testimony Regarding Damages ..................................................... 126

B.   Curative Instruction ............................................................................. 127

VIII.   DELIBERATION AND VERDICT ............................................................ 128

A.   Introduction ....................................................................................... 128

B.   Unanimous Verdict .............................................................................. 129

C.   Duty to Deliberate .............................................................................. 131

D.   Court Has No Opinion .......................................................................... 132

**Instruction No. ____**

## I.    PRELIMINARY INSTRUCTIONS

### A.    The Parties

Plaintiffs are Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc.

Defendants are Monsanto Company and Monsanto Technology LLC which I will refer to collectively as "Monsanto."

Monsanto counter-sued Syngenta Corporation, Advanta USA, Inc. Garst Seed Company, Golden Harvest Seeds, Inc., Golden Seed Company, L.L.C., Garwood Seed Co., Thorp Seed Company, and JC Robinson Seeds, Inc.   I will refer to the plaintiffs and the companies that Monsanto counter-sued collectively as "Syngenta."

In its antitrust claims, Syngenta alleges that Monsanto violated the Sherman Act by engaging in an unlawful monopolization.  Syngenta also alleges that Monsanto violated the Lanham Act by making misrepresentations and false statements.  Monsanto denies all of Syngenta's allegations.

Monsanto alleges that Syngenta violated the Delaware Deceptive Trade Practices Act by falsely representing its products, or by engaging in other conduct that similarly created a likelihood of confusion or misunderstanding.  Monsanto also claims that Syngenta unlawfully interfered with Monsanto's contracts with its customers.  Syngenta denies all of Monsanto's allegations.

Source:  Preliminary Jury Instructions from *Callaway Golf Co. v. Acushnet Co.,* C.A. No. 06-91-SLR at 1 (D. Del. Dec. 5, 2007) [modified].

**Instruction No. ___**

      B.      Burden of Proof

**SYNGENTA'S PROPOSAL**

This is a civil case. Each party has the burden of proving all of the elements of its claims by what is called a preponderance of the evidence.

Preponderance of the evidence means that when either Syngenta or Monsanto makes its claims, it must prove them by producing evidence which, when considered in the light of all the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, on one of the plaintiff's claims, if you were to put plaintiffs' and defendants' evidence on opposite sides of a scale, the evidence supporting plaintiffs' claims would have to make the scales tip on its side. If the scales tip toward defendants' side, then plaintiffs have not carried their burden of proof. Also, if the scales are exactly even, plaintiffs have not carried their burden of proof. The same standard would apply to Monsanto's affirmative claims where Monsanto must carry its burden of proof by a preponderance of the evidence. Those of you who are familiar with criminal cases will have heard the term "beyond a reasonable doubt." That burden does not apply in a civil case such as this and you should, therefore, put it out or your mind.

There is only one exception to the "preponderance of the evidence" standard. It applies only to one part of the false advertising claim in this case, about which I will instruct you later. For that part of that particular claim only, the required burden is not "preponderance of evidence" but rather proof by "clear and convincing evidence." "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it also does not require proof beyond a reasonable doubt. I will instruct you more later on when you should apply which burden.

Source: Preliminary Jury Instructions from *Callaway Golf Co. v. Acushnet Co.,* C.A. No. 06-91-SLR at 2 (D. Del. Dec. 5, 2007) [modified].

**MONSANTO OBJECTS TO INSTRUCTION**

B.    Burden of Proof

## MONSANTO'S PROPOSAL

This is a civil case.  Each party has the burden of proving all of the elements of its claims by what is called a preponderance of the evidence.

Preponderance of the evidence means that when either Syngenta or Monsanto makes its claims, it must prove them by producing evidence which, when considered in the light of all the facts, leads you to believe that what that party claims is more likely true than not.  To put it differently, on one of the plaintiff's claims, if you were to put plaintiffs' and defendants' evidence on opposite sides of a scale, the evidence supporting plaintiffs' claims would have to make the scales tip on its side.  If the scales tip toward defendants' side, then plaintiffs have not carried their burden of proof.  Also, if the scales are exactly even, plaintiffs have not carried their burden of proof.  The same standard would apply to Monsanto's affirmative claims where Monsanto must carry its burden of proof by a preponderance of the evidence.

One of the elements that Syngenta must prove is that Monsanto acted in bad faith in making certain statements.  Syngenta must prove that Monsanto acted in bad faith by "clear and convincing evidence," which is evidence that produces an abiding conviction that the truth of the factual contention is highly probable.  Proof by clear and convincing evidence, therefore, is a higher burden than proof by a preponderance of the evidence.

Source:  Preliminary Jury Instructions from *Callaway Golf Co. v. Acushnet Co.,* C.A. No. 06-91-SLR at 2 (D. Del. Dec. 5, 2007) [modified].

## SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. ____**

      C.     Duty of Jury

      It will be your duty to find what the facts are from the evidence as presented at the trial. You, and you alone, are the judges of the facts. You will have to apply those facts to the law as I will instruct you at the close of the evidence. You must follow that law whether you agree with it or not.

      You are the judges of the facts. I will decide which rules of law apply to this case.

      Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

<u>Source:</u>  Preliminary Jury Instructions from *Callaway Golf Co. v. Acushnet Co.,* C.A. No. 06-91-SLR at 2 (D. Del. Dec. 5, 2007).

**Instruction No. \_\_\_\_**

      D.     Evidence

The evidence from which you will find the facts will consist of the testimony of witnesses, and documents and other things admitted into evidence. In addition, the evidence may include certain facts as agreed to by the parties or as I instruct you.

      Certain things are not evidence.

  1.  Statements, arguments, and questions by lawyers are not evidence. Objections to questions are not evidence. Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered into evidence are not admissible under the rules of evidence. You should not be influenced by the lawyer's objection or by my ruling on the objection. If I sustain or uphold the objection, and find the matter is not admissible, you should ignore the question or other item of evidence. If I overrule an objection and allow the matter in evidence, you should consider the testimony or other item of evidence as you would any evidence. If I instruct you during the trial that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider the evidence for that purpose only. I will instruct you further during the trial if this happens.

  2.  Anything you see or hear outside the courtroom is not evidence and must be disregarded. You are to decide this case solely on the evidence presented here in the courtroom.

      In judging the facts, it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

Source: Preliminary Jury Instructions from Callaway Golf Co. v. Acushnet Co., C.A. No. 06-91-SLR at 3 (D. Del. Dec. 5, 2007).

**Instruction No. ____**

     E.      Conduct of the Jury

Now, a few words about your conduct as jurors.

You should not reach any conclusion as to the issues presented until all the evidence is in and you have been given your final instructions.

You must only consider the evidence presented in the courtroom. Do not read or listen to anything touching on this case that is not admitted into evidence. By that I mean if there is a newspaper article or radio or television report relating to the case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to this case.

The proceedings during trial will be transcribed by court reporters; however, it is not the practice of this Court to make the trial transcripts available to jurors. You must rely on your own recollection of what testimony was presented and how credible that testimony was.

If you wish, you may take notes in the binders we have provided. The binders will be collected from you each time you leave the courtroom. Keep in mind that your notes are for your own personal use — they are not to be given or read to anyone else.

Nor should you consider notes that you or fellow jurors may take as a kind of a written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Also, in your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory. Your memory is what you

should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Notes are not to be used in place of evidence.

Finally, please wear your juror identification tags every day, so that the parties can avoid engaging you in conversation, thereby bringing your impartiality into question.

Sources:  Preliminary Jury Instructions from *Callaway Golf Co. v. Acushnet Co.,* C.A. No. 06-91-SLR at 4-5 (D. Del. Dec. 5, 2007); *Model Jury Instructions (Civil) For the Third Circuit* at 18-19 (Thomson-West 2007) (source of paragraph regarding juror note taking).

**Instruction No. ____**

F.    Course of the Trial

The trial will now begin. The attorneys have three opportunities to talk to you during the trial. The first opportunity is the opening statement. During the opening statements, the attorneys will introduce their respective positions to you. As I've already instructed, however, what the lawyers say is not evidence. It will be up to you to determine whether the evidence — the testimony of the witnesses and the admitted documents — supports what the lawyers say in their opening statements. The second opportunity that the lawyers have to talk to you is during transition statements. Lawyers are permitted to make transition statements whenever they call a witness to the stand, to introduce the witness and to briefly explain the relevance of the witness's anticipated testimony. Finally, after all the evidence is in, the lawyers will offer closing arguments to summarize and interpret the evidence for you, and to tie the evidence to their position. I will then give you instructions on the law and describe for you the matters you must resolve.

You will then retire to the jury room to deliberate on your verdict.

You should generally expect that we will start the trial each morning at 9:30 a.m. and finish at 4:30 p.m., with two 15-minute breaks (morning and afternoon), and one half-hour break for lunch. As I said earlier, I time my civil trials, meaning that each party is given a certain number of hours in which to present its evidence. This assures that trials will be completed on a predictable basis. This system can only work, however, if you, as jurors, report to the courtroom on a punctual basis as well.

Source: Preliminary Jury Instructions from *Callaway Golf Co. v. Acushnet Co.,* C.A. No. 06-91-SLR at 5 (D. Del. Dec. 5, 2007).

**Instruction No. \_\_\_\_**

## II.     POST-TRIAL INSTRUCTIONS – GENERAL

A.     Introduction

Members of the jury, now it is time for me to instruct you about the law that you must

follow in deciding this case.  I will start by explaining your duties and the general rules that

apply in every civil case.  I will explain some rules that you must use in evaluating particular

testimony and evidence.  I will explain the positions of the parties and the law you will apply in

this case.  Last, I will explain the rules that you must follow during your deliberations in the jury

room, and the possible verdicts that you may return.  Please listen very carefully to everything I

say.

You will have a written copy of these instructions with you in the jury room for your

reference during your deliberations.  You will also have a verdict form, which will list the

questions that you must answer to decide this case.

Source:  Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 1
(D. Del. Dec. 13, 2007).

**Instruction No. _____**

      B.      Jurors' Duties

      You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

      Your second duty is to take the law that I give you, apply it to the facts, and decide, if under the appropriate burden of proof, which party should prevail on the issues presented. I will instruct you about the burden of proof shortly. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

      Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Sources:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware §1.2; Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at page 2 (D. Del. Dec. 13, 2007) [modified].

**Instruction No. _____**

    C.      Burden of Proof

**<u>SYNGENTA'S PROPOSAL</u>**

This is a civil case. Each party has the burden of proving all of the elements of its claims by what is called a preponderance of the evidence.

Preponderance of the evidence means that when either Syngenta or Monsanto makes its claims, it must prove them by producing evidence which, when considered in the light of all the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, on one of the plaintiff's claims, if you were to put plaintiffs' and defendants' evidence on opposite sides of a scale, the evidence supporting plaintiffs' claims would have to make the scales tip on its side. If the scales tip toward defendants' side, then plaintiffs have not carried their burden of proof. Also, if the scales are exactly even, plaintiffs have not carried their burden of proof. The same standard would apply to Monsanto's affirmative claims where Monsanto must carry its burden of proof by a preponderance of the evidence. Those of you who are familiar with criminal cases will have heard the term "beyond a reasonable doubt." That burden does not apply in a civil case such as this and you should, therefore, put it out or your mind.

There is only one exception to the "preponderance of the evidence" standard. It applies only to one part of the false advertising claim in this case, about which I will instruct you later. For that part of that particular claim only, the required burden is not "preponderance of evidence" but rather proof by "clear and convincing evidence." "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it also does not require proof beyond a reasonable doubt. I will instruct you more later on when you should apply which burden.

<u>Source:</u>  Preliminary Jury Instructions from *Callaway Golf Co. v. Acushnet Co.,* C.A. No. 06-91-SLR at 2 (D. Del. Dec. 5, 2007) [modified].

**<u>MONSANTO OBJECTS TO THIS INSTRUCTION</u>**

## MONSANTO'S PROPOSAL

This is a civil case. Syngenta is charging Monsanto with unlawfully maintaining a monopoly in violation of the Sherman Act. Syngenta is also charging Monsanto with false advertising under the Lanham Act. Monsanto, in turn, is charging Syngenta with unlawfully interfering with Monsanto's contracts and with violating the Delaware Deceptive Trade Practices Act. Except as I may otherwise instruct you, each party – Syngenta and Monsanto – has the burden to prove its claims by a preponderance of the evidence. Syngenta has the burden of proving most of the elements of its claims by what is called a preponderance of the evidence. For some of Syngenta's claims, it has a higher burden of proof, called clear and convincing evidence.

Preponderance of the evidence means that when either Syngenta or Monsanto makes certain claims, they must prove them by producing evidence which, when considered in the light of all of the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claim would have to make the scales tip on its side. If the scales tip toward the side opposing the claim, then the burden of proof has not been met and you must find for the party opposing the claim.

In Syngenta's false advertising case, one of the elements that Syngenta must prove is that Monsanto acted in bad faith in making certain statements. Syngenta must prove that Monsanto acted in bad faith by "clear and convincing evidence," which is evidence that produces an abiding conviction that the truth of the factual contention is highly probable. Proof by clear and convincing evidence, therefore, is a higher burden than proof by a preponderance of the evidence.

Sources:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware §1.3 [modified]; Model Jury Instructions (Civil) For the Third Circuit § 1.10, § 1.11  at 19-20 (Thomson-West 2007) [modified].

## SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. _____**

    D.     Evidence Defined

        You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of the court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that parties agreed to by stipulation.

        Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence. The notes taken by any juror are not evidence.

        Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to or identify, or summarize evidence.

        During the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or struck them from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Sources:  Uniform Jury for Patent Cases in the United States District Court for the District of Delaware §1.4-5; Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 4-5 (D. Del. Dec. 13, 2007) [modified].

**Introduction No. _____**

      E.     Direct and Circumstantial Evidence

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he or she saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

<u>Sources:</u>  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware §1.6; Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 6 (D. Del. Dec. 13, 2007).

**Instruction No. _____**

      F.     Consideration of Evidence

     You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

<u>Sources:</u>  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware §1.5; Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 7 (D. Del. Dec. 13, 2007).

**Instruction No. _____**

G.      Use of Notes

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.  They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

Source:  Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 8 (D. Del. Dec. 13, 2007).

**Instruction No. _____**

      H.      Credibility of Witnesses

      You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

      You should carefully scrutinize all the testimony each witness has given and every matter of evidence which tends to show whether he or she is worthy of belief.  Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

      Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently.  Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different or inconsistent, from the testimony that he or she gave during the trial.  It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

      You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth.  People may tend to forget some things or remember other things

inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an

innocent lapse of memory or an intentional falsehood, and that may depend upon whether it

concerns an important fact or an unimportant detail.

<u>Sources:</u>  Uniform Jury Instructions for Patent Cases in the United States District Court for the
District of Delaware § 1.7 [modified]; Final Jury Instructions *Callaway Golf Co. v. Acushnet
Co.*, C.A. No. 06-091-SLR at 9-10 (D. Del. Dec. 13, 2007).

**Instruction No. _____**

  I.  Missing Witness

**MONSANTO'S PROPOSAL**

  If a party fails to call a person as a witness who has knowledge about the facts in issue and who is reasonably available to the party, then you must infer that the testimony of that person is unfavorable to the party who could have called the witness but did not.

<u>Source:</u>  3 Federal Jury Practice and Instructions § 104.25 (5th ed).

**SYNGENTA OBJECTS TO INSTRUCTION**

**Instruction No. _____**

J.    Expert Witnesses

When knowledge of technical or financial subject matter might be helpful to the jury, a person who has special training or experience in that technical or financial field —— he or she is called an expert witness — is permitted to state his or her opinion on those technical or financial matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.    You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

Sources:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware §1.9 [modified]; Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 12 (D. Del. Dec. 13, 2007).

**Instruction No. \_\_\_\_\_**

      K.     Deposition Testimony

      During the trial, certain testimony was presented to you through depositions that were read into evidence or played on videotape. This testimony is entitled to the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

<u>Source:</u> Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 13 (D. Del. Dec. 13, 2007).

**Instruction No. _____**

     L.     Use of Interrogatories

You have heard answers that Monsanto and Syngenta gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before trial.

You must consider Monsanto and Syngenta's answers to interrogatories in the same manner as if the answers were made from the witness stand.

<u>Source:</u> *Model Jury Instructions (Civil) For the Third Circuit* § 2.6 at 34 (Thomson-West 2007).

**Instruction No. _____**

      M.     Judicial Notice

      The rules of evidence permit the judge to accept facts that cannot be reasonably disputed. This is called judicial notice. I have decided to accept as proved that fact that [insert facts that have been judicially noticed], even though no evidence has been introduced to prove this fact. You must accept these facts as true for purposes of this case.

Source:  *Model Jury Instructions (Civil) For the Third Circuit* § 2.7 at 23 (Thomson-West 2007).

**Instruction No. _____**

      N.     Charts and Summaries Not Admitted in Evidence

      Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. These charts and summaries are not themselves proof of any facts. They are not binding on you in any way. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

Source: *Model Jury Instructions (Civil) For the Third Circuit* § 2.6 at 36 (Thomson-West 2007) [modified].

**Instruction No. _____**

    O.    Stipulation of Fact

The parties have agreed that certain facts in the case are true, which I have read to you as the Parties' Joint Stipulation of Facts. You must therefore treat these facts as having been proved for purposes of the case.

Source: *Model Jury Instructions (Civil) For the Third Circuit* § 2.4 at 25 (Thomson-West 2007) [modified].

**Instruction No. _____**

       P.     Striking of Evidence

I have ordered that certain evidence be struck from the record and I am instructing you

that you must disregard that information.  That means that when you are deciding the case, you

must not consider that information in any way.

Source:  *Model Jury Instructions (Civil) For the Third Circuit* § 2.9 at 30 (Thomson-West 2007)
[modified].

**Instruction No. _____**

Q.     Evidence Admitted For a Limited Purpose

You have heard evidence that was received for particular limited

purposes. This evidence can be considered by you as evidence for that particular purpose

and not for any other purpose.

Source:  *Model Jury Instructions (Civil) For the Third Circuit* § 2.10 at 32 (Thomson-West
2007) [modified].

**Instruction No. _____**

      R.     Jury Questions and Answers

      Only the lawyers and I are allowed to ask questions of witnesses.  You are not permitted to ask questions of witnesses.

<u>Source:</u>  Third Judicial Circuit Model Civil Jury Instructions § 1.8.

**Instruction No. _____**

S.    Opinion Testimony

You have heard testimony containing opinions from certain witnesses. In weighing this opinion testimony, you may consider the witnesses' qualifications, the reasons for his or her opinions, and the reliability of the information supporting those opinions, as well as the factors that I have previously mentioned for weighing the testimony of any other witness. The opinion of a witness should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.  In deciding whether to accept or rely upon the opinion of a witness, you may consider any bias that the witness may have, including any bias that may arise from evidence that witness has been or will be paid for reviewing the case and testifying, or from evidence that witness testifies regularly and makes a large portion of his or her income from testifying in court.

Source: *Model Jury Instructions (Civil) For the Third Circuit* § 2.11 at 33 (Thomson-West 2007) [modified].

**Instruction No. _____**

### III.     THE PARTIES AND THEIR CONTENTIONS

    A.    The Parties

<b><u>SYNGENTA'S PROPOSAL</u></b>

I will now review for you the parties in this action.

Plaintiffs are Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc.

Defendants are Monsanto Company and Monsanto Technology LLC which I will refer to collectively as "Monsanto."

Monsanto counter-sued Syngenta Corporation, Advanta USA, Inc., and Garst Seed Company, Golden Harvest Seeds, Inc.  I will refer to the plaintiffs and the companies that Monsanto counter-sued collectively as "Syngenta" because an affiliate of Syngenta Seeds, Inc. owns a controlling interest in all of them.

<u>Source:</u>  Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 14 (D. Del. Dec. 13, 2007) [modified].

<b><u>MONSANTO OBJECTS TO INSTRUCTION</u></b>

A.    The Parties

## MONSANTO'S PROPOSAL

I will now review for you the parties in this action.

Plaintiffs are Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc.

Defendants are Monsanto Company and Monsanto Technology LLC which I will refer to collectively as "Monsanto."

Monsanto counter-sued Syngenta Corporation, Advanta USA, Inc. Garst Seed Company, Golden Harvest Seeds, Inc., Golden Seed Company, L.L.C., Garwood Seed Co., Thorp Seed Company, and J.C. Robinson Seeds, Inc.  I will refer to the plaintiffs and the companies that Monsanto counter-sued collectively as "Syngenta" because an affiliate of Syngenta Seeds, Inc. owns a controlling interest in all of them.

Source:  Final Jury Instructions *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 14 (D. Del. Dec. 13, 2007) [modified].

## SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. _____**


      B.     Syngenta's Contentions

     Syngenta claims that Monsanto unlawfully maintained a monopoly, in violation of

Section 2 of the Sherman Act, of two separate alleged markets: (i) the alleged market for the

licensing of glyphosate-tolerant corn traits or herbicide-resistant corn traits; and (ii) the alleged

market for the licensing of European Corn Borer-resistant traits.

     Syngenta also claims that Monsanto made false or misleading statements, in violation of

Section 43(a) of the Lanham Act.

     Monsanto denies all Syngenta's claims.

<u>Sources:</u>  Syngenta's Third Amended Complaint at 32-33 (Count One alleging willful
maintenance of a monopoly of the glyphosate-tolerant and stacked corn trait markets); *id.* at 33-
34 (Count Two alleging willful maintenance of a monopoly of the ECB-resistant and stacked
corn trait markets); *id.* at 34 (Count Three alleging Monsanto misrepresented its own patent
position and falsely disparaged Syngenta's patent position in violation of Section 43(a) of the
Lanham Act).

**Instruction No. _____**

    C.     Monsanto's Contentions

**SYNGENTA'S PROPOSAL**

     Monsanto alleges that Syngenta intentionally interfered with Monsanto's contracts with Garst Seed Company.  Garst had an agreement with Monsanto to license GA21 corn.  Monsanto claims that Syngenta encouraged Monsanto's licensees to violate their obligations to Monsanto.

     Monsanto also alleges that Syngenta violated the Delaware Deceptive Trade Practices Act by falsely representing that its glyphosate-tolerant corn seed products were of a particular standard, quality, or grade.  Monsanto further alleges that Syngenta's conduct created a likelihood of confusion or of misunderstanding as to its glyphosate-tolerant corn seed products.

     Syngenta denies all of Monsanto's claims.

Sources:  Answer and Counterclaims of Monsanto Company and Monsanto Technology LLC to Syngenta Seeds, Inc.'s Second Amended Antitrust Complaint at 38 (Count Four alleging tortious interference with contract by Syngenta); Answer and Counterclaims of Monsanto Company and Monsanto Technology LLC to Syngenta Seeds, Inc.'s Second Amended Antitrust Complaint at 36-37 (Count Two alleging Syngenta's violations of the Delaware Deceptive Trade Practices Act).

**MONSANTO OBJECTS TO INSTRUCTION**

C.    Monsanto's Contentions

## MONSANTO'S PROPOSAL

Monsanto alleges that Syngenta intentionally interfered with Monsanto's contracts with Garst Seed Company, and with Golden Harvest Seeds, Inc, and the five member companies of Golden Harvest.  Both Garst and Golden Harvest had agreements with Monsanto to license GA21 corn.  Monsanto claims that Syngenta encouraged Monsanto's licensees to violate their contractual obligations to Monsanto by improperly transferring to Syngenta certain technology and know-how related to the GA21 event and Monsanto inbred lines containing the GA21 event.

Monsanto also alleges that Syngenta violated the Delaware Deceptive Trade Practices Act by falsely representing that its glyphosate-tolerant corn seed products were of a particular standard, quality, or grade, or were of a particular style or model, when they were of another. Monsanto further alleges that Syngenta's conduct created a likelihood of confusion or of misunderstanding as to its glyphosate-tolerant corn seed products.

Syngenta denies all of Monsanto's claims.

Sources:  Answer and Counterclaims of Monsanto Company and Monsanto Technology LLC to Syngenta Seeds, Inc.'s Second Amended Antitrust Complaint at 38 (Count Four alleging tortious interference with contract by Syngenta); Answer and Counterclaims of Monsanto Company and Monsanto Technology LLC to Syngenta Seeds, Inc.'s Second Amended Antitrust Complaint at 36-37 (Count Two alleging Syngenta's violations of the Delaware Deceptive Trade Practices Act).

## SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. _____**

## IV.    SYNGENTA'S CLAIMS

A.    Purpose of Antitrust Laws

### MONSANTO'S PROPOSAL

Syngenta alleges that Monsanto violated the antitrust laws.  The purpose of the antitrust laws is to protect competition, not individual competitors.  This is an important distinction.  The law recognizes that more competition is better; but the law does not guarantee success to those who enter into business because it also recognizes that in the natural operation of our economic system, some competitors are going to lose business while others gain and prosper.

Acts are unlawful under the antitrust laws only when they constitute an unreasonable restraint on competition.  Acts which increase competition do not violate the antitrust laws.

Sources:  ABA Eleventh Circuit Pattern Civil Jury Instructions, No. 1.1 (1990) [modified]; *Brunswick Corp. v. Pueblo-Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).

### SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. _____**

      B.     Unlawful Maintenance of a Monopoly

          1.     Elements

Syngenta alleges that it was injured by Monsanto's alleged unlawful maintenance of a monopoly in the relevant market. To prevail on this claim of unlawful maintenance of a monopoly, Syngenta must prove each of the following elements by a preponderance of the evidence:

      **First,** that Monsanto possessed monopoly power in a relevant market;

      **Second**, that Monsanto engaged in anticompetitive conduct;

      **Third,** that Monsanto's anticompetitive conduct injured competition;

      **Fourth,** that Syngenta was injured in its business or property because of Monsanto's anticompetitive conduct.

I will explain these elements to you next. If you find that Syngenta has failed to prove any of these elements, then you must find for Monsanto and against Syngenta on this claim. If you find that Syngenta has proved each of these elements by a preponderance of the evidence, then you must find for Syngenta and against Monsanto on this claim.

Sources: *Modern Federal Jury Instructions – Civil* ¶ 80-3 (Bender 2008) [modified]; *United States v. Dentsply International, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005); *LePage's Inc. v. 3M*, 324 F.3d 141, 146-47 (3d Cir. 2003).

**Instruction No. _____**

2.    Monopoly Power – Defined

Monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time. To prove its monopolization claim, one of the elements Syngenta must prove is that Monsanto has monopoly power in a relevant antitrust market. However, monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether Syngenta has met its burden of proving monopoly power in a relevant market.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, C-4 (2005).

**Instruction No. _____**

3.    Relevant Market – General

Syngenta must prove by a preponderance of the evidence that Monsanto had monopoly power in a relevant market.   Defining the relevant market is essential because you are required to make a judgment about whether Monsanto has monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain Monsanto's freedom to set prices for or restrict the output of the product or services in question. The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act as restraints on Monsanto's power to set prices as it pleases. All the firms and products that exert this restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether Syngenta has met its burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market; the second is the relevant geographic market.

Sources:  ABA Model Jury Instructions in Civil Antitrust Cases, C-6 (2005).

**Instruction No. _____**

a)    Relevant Product Market

The basic idea of the relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with one another. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material - such as aluminum foil, cellophane, or even plastic containers - to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but significant permanent increase in price is approximately a five percent increase in price not due to external cost factors, but you may conclude in this case that some other percentage is more applicable to the product at issue. If you find that a substantial amount of switching would occur, then you may conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another;

(3) the presence or absence of specialized vendors; (4) the perceptions of either the industry or the public as to whether the products are in separate markets; (5) the views of Syngenta and Monsanto regarding who their respective competitors are; and (6) the existence or absence of different customer groups or distribution channels.

In this case, Syngenta contends that the relevant product markets are the licensing of corn traits for glyphosate-tolerance ("GT traits") and the licensing of corn traits for resistance to the European Corn Borer ("ECB traits"). By contrast, Monsanto asserts that Syngenta has failed to allege the proper relevant product market. Monsanto contends that the proper relevant markets are competing conventional and transgenic systems for controlling weeds and insects comprised of all traits, conventional or transgenic hybrid corn seed, germplasm, and chemicals. If you find that Syngenta has proven a relevant product market comprised of products that are reasonably interchangeable, then you should continue to evaluate the remainder of Syngenta's claims. However, if you find that Syngenta has failed to prove such a market, then you must find in Monsanto's favor on these claims.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, C-7 (2005).

**Instruction No. _____**

b)    Relevant Geographic Market

The relevant geographic market is the area in which Monsanto faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market.  The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

Syngenta has the burden of proving the relevant geographic market by a preponderance of the evidence.   In this case, Syngenta claims that the relevant geographic market is the United States. By contrast, Monsanto asserts that the relevant geographic market is several smaller regional markets defined by growing conditions in those areas. In determining whether Syngenta has met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:.

1. The geographic area in which Monsanto sells and where Monsanto's customers are located;

2. The geographic area to which customers turn for supply of the product;

3. The geographic area to which customers have turned or have seriously considered turning;

4. The geographic areas that suppliers view as potential sources of competition; and

5. Whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, C-13 (2005).

**Instruction No. _____**

      c)     Relevant Market – Plausibility

**MONSANTO'S PROPOSAL**

In evaluating the relevant market, you must also consider whether Syngenta's alleged

market is economically plausible. In other words, you must determine whether Syngenta's

alleged market make sense in real world economics.

<u>Sources:</u> *Bell Atlantic Corporation v. Twombly,* 127 S.Ct. 1955, 1965-66 (2007); *Town Sound and Custom Tops, Inc., et al. v. Chrysler Motors Corporation,* 959 F.2d 468, 479 (3rd Cir. 1992 ) (Plaintiffs' market definition "makes no sense in terms of real world economics."); *Jefferson Parish v. Hyde,* 466 U.S. 2, 19-22 (1984); *Eastman Kodak v. Image technical Services,* 504 U.S. 451, 462 (1992); *Weiss v. York Hospital,* 745 F.2d 786, 826 (3d Cir. 1984); *Tony Lee, et al. v. The Life Insurance Company of North America,* 23 F.3d 14, N6 (1st Cir. 1994); *Collins v. Associated Pathologists,* 844 F.2d 473, 477 (7th Cir. 1988); *Subsolutions, Inc. v. Doctor's Assocs.,* 436 F. Supp. 2d 348, 353-55 (D. Conn. 2006); *Klo-Zik Co. & Texas Continental Express, Inc. v. General Motors,* 677 F. Supp. 499, 503-04 (E.D. Tex. 1987); *Telerate Sys. v. Caro,* 689 F. Supp. 221, 235-236 (S.D.N.Y. 1986).

**SYNGENTA OBJECTS TO INSTRUCTION**

**Instruction No. _____**

        d)     Relevant Market – Necessity of Proof

If, after considering all the evidence, you find that Syngenta has proven by a preponderance of the evidence both a relevant product market and a relevant geographic market, then you must find that Syngenta has met the relevant market requirement and you must consider the remaining elements of Syngenta's claim.

If you find that Syngenta has failed to prove by a preponderance of the evidence either a relevant product market or a relevant geographic market, then you must find for Monsanto and against Syngenta on this claim.

<u>Sources:</u>  ABA Model Jury Instructions in Civil Antitrust Cases, C-16 (2005).

**Instruction No. _____**

4.    Existence of Monopoly Power – Direct Proof

If you find that Syngenta has proven a relevant market, then you should determine whether Monsanto has monopoly power in that market.  In making that determination, you should consider both direct proof and indirect proof.  As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time.  In considering any direct proof of whether Monsanto has monopoly power in the relevant market, you should consider the following:

Syngenta has the burden of proving that Monsanto has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. Syngenta must prove that Monsanto has the power to do so by itself -- that is, without the assistance of, and despite competition from, any existing or potential competitors.

Syngenta must also prove that Monsanto has the power to maintain prices above a competitive level for a significant period of time. If Monsanto attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then Monsanto does not have monopoly power.

Similarly, Syngenta must prove that Monsanto has the ability to exclude competition. For example, if Monsanto attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then Monsanto does not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that Monsanto has monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services, the ability to maintain an efficient business operation, or superior advertising or marketing. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that Monsanto would lose a substantial amount of sales if it raised prices substantially, or that the Monsanto's profit margins were low compared to its competitors, erratic, and/or decreasing, might be evidence that the Monsanto does not have monopoly power.

If you find that Monsanto has monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that Monsanto does not have monopoly power, then you must find for Monsanto and against the Syngenta on this claim.

<u>Source:</u>  ABA Model Jury Instructions in Civil Antitrust Cases, C-23 (2005).

**Instruction No. _____**

5.    Existence of Monopoly Power – Indirect Proof

The parties may also prove the existence or lack of monopoly power through indirect proof. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. Syngenta has attempted to use evidence of the structure of the market to show that Monsanto has monopoly power. The evidence presented by the parties includes evidence of Monsanto's market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors. If this evidence establishes that Monsanto has the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that Monsanto has monopoly power in the market.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, C-16 (2005).

**Instruction No. _____**

a)   Market Share

<b><u>SYNGENTA'S PROPOSAL</u></b>

The first factor you should consider in determining whether Monsanto has monopoly power is Monsanto's market share. Based on the evidence that you have heard, you should determine Monsanto's market share as a percentage of total sales of the relevant product.

The existence of monopoly power ordinarily may be inferred from a firm's possession of a dominant share of a relevant market. A market share above 55 percent may be sufficient to support an inference of monopoly power, depending on other factors, such as barriers to entry and market share trends. The higher a company's market share is above 50 percent, the stronger the likelihood that the company has monopoly power.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, other evidence may demonstrate that a firm does, in fact, have monopoly power despite having a market share below 50 percent.

<u>Sources:</u>  ABA Model Jury Instructions in Civil Antitrust Cases, C-16 (2005) [modified]; citing *Broadway Delivery Corp. v. United Parcel Service of America, Inc.*, 651 F.2d 122, 129 (2d Cir. 1981); see also *Associated Radio Service v. Page Airways, Inc.*, 624 F.2d 1342, 1352 (5th Cir. 1980).

<b><u>MONSANTO OBJECTS TO INSTRUCTION</u></b>

a)    Market Share

## MONSANTO'S PROPOSAL

The first factor that you should consider is Monsanto's market share. Based on the evidence that you have heard about Monsanto's market share, you should determine that Monsanto's market share as a percentage of total industry sales.

A market share above 70 percent is ordinarily sufficient to support an inference that a company has monopoly power, and a market share below 55 percent is ordinarily not sufficient to support a conclusion that a company has monopoly power. However, in considering whether Monsanto has monopoly power, it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors.

If you find that the other evidence demonstrates that Monsanto does not, in fact, have monopoly power despite having a market share above 70 percent, you may conclude that Monsanto does not have monopoly power. Similarly, if you find that the other evidence demonstrates that Monsanto does, in fact, have monopoly power despite having a market share below 55 percent, you may conclude that Monsanto has monopoly power.

Sources: ABA Model Jury Instructions in Civil Antitrust Cases, C-16 (2005) [modified]; *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 201-02 (3d Cir. 1992) (holding that "[a]s a matter of law, absent other relevant factors, a 55 percent market share will not prove the existence of monopoly power. A significantly larger market share than 55 percent has been required to demonstrate *prime facie* monopoly power."); *Am. Tobacco Co. v. United States*, 328 U.S. 781, 797 (1946); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005) (noting that "Absent other pertinent factors, a share significantly larger than 55% has been required to establish prime facie market power"); ABA Antitrust Law Developments at 231 (6th Ed. 2007) (noting that a "market share in excess of 70 percent generally establishes a prime facie

case of monopoly power, at least with evidence of substantial barriers to entry and evidence that existing competitors could not expand market power.") (collecting cases).

## SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. _____**

     b)  Market Share Trends

**SYNGENTA'S PROPOSAL**

   The trend in Monsanto's market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

Source: ABA Model Jury Instructions in Civil Antitrust Cases, C-16 (2005).

**MONSANTO OBJECTS TO INSTRUCTION**

**Instruction No. _____**

c)    Barriers to Entry

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way.  Barriers to entry might include intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).

Evidence of low or no entry barriers may be evidence that Monsanto does not have monopoly power, regardless of Monsanto's market share, because new competitors could enter easily if Monsanto attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that Monsanto has monopoly power.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, C-16 (2005).

**Instruction No. _____**

            d)      Entry and Exit by Other Companies

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that Monsanto lacks monopoly power.  On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that Monsanto has monopoly power.

<u>Source:</u>  ABA Model Jury Instructions in Civil Antitrust Cases, C-16 (2005).

**Instruction No. _____**

> e)      Number and Size of Competitors

You may consider whether Monsanto's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on Monsanto's ability to price its products. If Monsanto's competitors are vigorous or have large or increasing market shares, this may be evidence that Monsanto lacks monopoly power.  On the other hand, if you determine that Monsanto's competitors are weak or have small or declining market shares, this may support an inference that Monsanto has monopoly power.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, C-16 (2005).

**Instruction No. _____**

f) Conclusion

If you find that Monsanto has monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that Monsanto does not have monopoly power, then you must find for Monsanto and against the Syngenta on this claim.

Source: ABA Model Jury Instructions in Civil Antitrust Cases, C-16 (2005).

**Instruction No. _____**

6.     Willful Maintenance of Monopoly Power Through
Anticompetitive Acts

The next element Syngenta must prove is that Monsanto willfully maintained monopoly

power through anticompetitive acts or practices. Anticompetitive acts are acts, other than

competition on the merits, that have the effect of preventing or excluding competition or

frustrating the efforts of other companies to compete for customers within the relevant market.

Harm to competition is to be distinguished from harm to a single competitor or group of

competitors, which does not necessarily constitute harm to competition. In addition, you should

distinguish the maintenance of monopoly power through anticompetitive acts from the

maintenance of monopoly power by supplying better products or services, possessing superior

business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust

laws. A monopolist may compete aggressively without violating the antitrust laws, and a

monopolist may charge monopoly prices without violating the antitrust laws.  A monopolist's

conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate

business purpose can be difficult to determine. This is because all companies have a desire to

increase their profits and increase their market share. These goals are an essential part of a

competitive marketplace, and the antitrust laws do not make these goals -- or the achievement of

these goals - unlawful, as long as a company does not use anticompetitive means to achieve these

goals.

In determining whether Monsanto's conduct was anticompetitive or whether it was

legitimate business conduct, you should determine whether the conduct is consistent with

competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

The acts or practices that result in the maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully maintained monopoly power if it has maintained that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or taste have driven out all but one supplier.

If you find that Syngenta has proven by a preponderance of the evidence that Monsanto willfully maintained monopoly power through anticompetitive acts, then you must consider whether the Syngenta has proved the remaining elements of this claim. If, however, you find that the Syngenta did not prove this element by a preponderance of the evidence, then you must find for the Monsanto and against Syngenta on this claim.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, C-26 (2005) [modified].

**Instruction No. _____**

   a)  Licensing Agreement and Incentive Program

**SYNGENTA'S PROPOSAL**

  Syngenta contends that Monsanto has violated the Sherman Act by using licensing agreements and incentive programs to foreclose important channels of distribution for the licensing of GT traits and ECB traits. Specifically, Syngenta alleges that Monsanto used license agreements and incentive programs to impose substantial financial penalties on seed companies that choose to license traits from an alternative trait supplier.

  Licensing agreements and incentive programs are not illegal in and of themselves. They can, however, be an improper means of maintaining a monopoly if a firm uses those contracts and incentive programs to foreclose important channels of distribution so that it is not practical or feasible for rivals to compete in the relevant market.

  If a monopolist's licensing agreements or incentive programs restrict access to an important channel of distribution, you must determine whether remaining distribution channels allow competitors to pose a threat to a monopolist's position. The mere existence of other avenues of distribution is insufficient if those distribution channels do not allow competitors to profitably compete with a monopolist. In other words, if remaining channels of distribution merely allow competitors to survive, but not challenge a monopolist's position, then the exclusive dealing contracts that foreclose the important channel of distribution may be found to be anticompetitive.

  If you find that Syngenta has proven by a preponderance of the evidence that Monsanto has entered into license agreements and incentive programs that foreclose important channels of distribution, the burden shifts to Monsanto to prove that its exclusive dealing agreements and

incentive programs have a pro-competitive business justification. A business justification is valid if it relates directly or indirectly to enhancement of consumer welfare. Thus, while pursuit of efficiency and quality control might be legitimate competitive reasons for a licensing agreement or incentive program, the desire to exclude competition and maintain a monopoly would not be legitimate reasons.

Sources: *Dentsply*, 399 F.3d at 187, 190; *LePage's*, 324 F.3d at 158-59; *United States v. Microsoft Corp.*, 253 F.3d 34, 69-70 (D.C. Cir. 2001) (citing *Tampa Elec.Co. v. Nashville Coal Co.*, 365 U.S. 320, 328).

## MONSANTO OBJECTS TO INSTRUCTION

**Instruction No. \_\_\_\_**

            b)      Exclusive Dealing

**MONSANTO'S PROPOSAL**

One of the anticompetitive acts alleged by Syngenta against Monsanto is the use of "exclusive dealing" contracts.  A typical exclusive dealing contract is one where a buyer agrees to purchase a product for a period of time exclusively from one supplier and not from others.  You should not assume that a contract is illegal merely because it is exclusive.  Exclusive agreements, in and of themselves, do not violate the antitrust laws.

Syngenta must prove that Monsanto entered into agreements with seed companies that were expressly or *de facto* exclusive and that the effect of such agreements was to unreasonably restrain trade and commerce.  An agreement is exclusive if its express terms require that the parties to it deal exclusively with each other.  An agreement is *de facto* exclusive if its application effectively forecloses business with others.

To demonstrate that Monsanto's agreements created anticompetitive exclusive dealing agreements, Syngenta must demonstrate:

1.  A properly defined relevant market;

2.  That Monsanto entered into exclusive dealing contracts; and

3.  That these exclusive contracts foreclosed competition in a substantial share of the relevant market.

The competition foreclosed by the contract must be found to constitute a substantial share of the relevant market.  That is to say, the opportunities for competitors to enter into or remain in that market must be significantly limited.

If you find that Syngenta has proven that the exclusive dealing agreement has in the past, or does now substantially lessen competition in the relevant market, then you must go on to consider whether the exclusive dealing agreement is nevertheless reasonable. In doing so, you should consider such factors as:

1. The circumstances under which the agreement was set up and the reasons for doing so;

2. The relative bargaining strength of the parties to the agreement. If the parties had relatively equal bargaining strength then the agreement is less likely to be unreasonable;

3. The duration of the agreement and how easy it is to terminate. If the contract lasts a relatively short time, or can be terminated easily, it is less likely to unreasonably limit the opportunities for competing sellers to enter or remain in the market; and

4. Any favorable effect on competition that the exclusive contract produces.

In determining whether Monsanto's agreements were anticompetitive, you should consider the pro-competitive effects of those agreements. Monsanto contends that its agreements promoted lower prices to farmers and increased competition. Sellers often provide discounts to purchasers who buy large volumes. Sometimes the amount of the discounts increase with larger purchases. Volume discounts often reflect cost savings and other efficiencies associated with larger purchases and provide incentives for buyers to purchase more from the seller. Like other low prices, volume discounts are not unlawful merely because other sellers cannot match them without losing money.

You should also consider whether the buyer is the final end user of the product. If the buyer is the final end user, the agreement forecloses competitors from that portion of the market represented by the buyer's purchases and makes it more likely that competition may be harmed if the buyer represents a substantial portion of the market. On the other hand, if the buyer is a distributor or reseller and there are other alternatives for competing sellers to market their

products to end users, then the agreement may not foreclose competitors' access to the market and thus not substantially harm competition.

In determining the extent to which Monsanto's agreements foreclose competition on the merits, it is relevant to consider the percentage of the market foreclosed and the length of the foreclosure. Where the agreements foreclose less than 30-40% of the market, this is an indicator that the harm from the foreclosure of competition is not substantial because there are alternatives available. Similarly, the shorter the duration of the contract, the less likely it is to harm competition. The longer the contract's duration, the more likely that the harm to competition will be greater, unless it is clear that there was vigorous competition on the merits to win the longer contract or the buyer as a practical matter can terminate the agreement on short notice without cause and without significant penalty. In such a case, the stated length of the exclusive contract is not the period in which it has a competitive effect.

If, after weighing the alleged foreclosure from a substantial share of the market against the factors regarding whether the contracts are reasonable, you find that Syngenta has proven a substantial lessening of competition in the relevant market due to Monsanto's allegedly exclusive contracts, you may find in favor of Syngenta. If, however, you find that Monsanto's contracts do not foreclose Syngenta from a substantial share of the market, or that the contracts are not unreasonable, or that the pro-competitive effects of the contracts outweigh their anticompetitive effects you must find in favor of Monsanto.

Sources: ABA Model Jury Instructions in Civ. Antitrust Cases, B-123, C-80 [modified]; *Sewell Plastics, Inc. v. Coca-Cola Co.,* 720 F. Supp. 1196, 1218-19 (W.D.N.C. 1989) ("without evidence of market power, there is no basis for finding 'undue foreclosure'"), *aff'd mem.,* 912 F.2d 463 (4th Cir. 1990); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.,* 663 F. Supp. 1360, 1478 (D. Kan. 1987) (a plaintiff "seeking to challenge an exclusive dealing arrangement must demonstrate that the defendant possesses market power, as this is a prerequisite to being able to restrain trade unreasonably"), *aff'd in part and remanded in part,* 899 F.2d 951 (10th Cir. 1990);

*Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1056, 1058-61 (8th Cir. 2000); ABA Section of Antitrust Law, 1 *Antitrust Law Developments* 224 & n.1285 (5th ed. 2002) (collecting cases); *See United States v. Baker Hughes Inc.,* 908 F.2d 981, 986 (D.C. Cir. 1990) (Thomas, C. with Ginsburg, R, JJ.); *United States v. Hughes Tool Co.,* 415 F. Supp. 637, 644 (C.D. Cal. 1976); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 13-14 (1984) (where a firm cannot "force a purchaser to do something he would not do in a competitive market," it does not have market power); *Eastman Kodak Co. v. Image Tech. Servs., 504 U.S. 451, 464 (1992)* (same). *Ferguson v. Greater Pocatello Chamber of Commerce,* 848 F.2d 976, 982 (9th Cir. 1988) (other competitors had equal opportunity to bid on a six-year lease); *Ralph C. Wilson Indus. v. Chronicle Broad. Co.,* 794 F.2d 1359, 1364 (9th Cir. 1986) (no showing plaintiff was "unable to bid" on exclusive contract); *Parmalee Transp. Co. v. Keeshin,* 292 F.2d 794, 803-04 (7th Cir. 1961) (exclusive contract awarded in competitive bidding); *Kirk-Mayer v. Pac Ord, Inc.,* 626 F. Supp. 1168, 1170-71 (C.D. Cal. 1986); *Sakamoto v. Duty Free Shoppers, Ltd.,* 613 F. Supp. 381 *(D. Guam 1983), aff'd on other grounds,* 764 F.2d 1285 (9th Cir. 1985).

## **SYNGENTA OBJECTS TO INSTRUCTION**

**Instruction No. ____**

        c)      Threats to Seed Companies

## SYNGENTA'S PROPOSAL

    A monopolist engages in anticompetitive conduct when it seeks to exclude a competitor

from the relevant market by threatening retaliation against those who do business with that

competitor.  Syngenta contends that Monsanto has violated the Sherman Act by threatening to

punish or retaliate against seed companies that licensed GT or ECB traits from or otherwise did

business with Syngenta.  Monsanto disputes this allegation.

Source: United States v. Microsoft Corp., 253 F.3d 34, 77-78 (D.C. Cir. 2001); Potters Med. Ctr. v. City Hosp. Ass'n, 800 F.2d 568, 580 (6th Cir. 1986).

## MONSANTO OBJECTS TO INSTRUCTION

**Instruction No. ____**

d)    **Volume and Market Share Discounts**

<u>**MONSANTO'S PROPOSAL**</u>

Sellers often provide discounts to purchasers who buy large volumes. Sometimes the amount of the discounts increase with larger purchases. Volume discounts may apply to purchases made at a particular point in time or to cumulative purchases made over the course of a specified time period, such as one year. Volume discounts often reflect cost savings and other efficiencies associated with larger purchases and provide incentives for buyers to purchase more from the seller. Like other low prices, volume discounts are not unlawful merely because smaller sellers cannot match them without losing money.

In this case, Syngenta contends that Monsanto offered large volume discounts that would have been difficult or impossible for Syngenta to match without losing money. Even if you find that this is true, Syngenta has not met its burden of proving anticompetitive conduct unless you also find that Monsanto's volume discounts resulted in prices below Monsanto's average variable costs and that there was a dangerous probability that Monsanto would recoup those losses through future price increases. In the case of volume discounts, Syngenta must prove that the amount of the discount applied to the total amount of goods sold resulted in sales below Monsanto's cost.

<u>Source:</u>  ABA Model Jury Instructions in Civil Antitrust Cases, C-80 (2005).

<u>**SYNGENTA OBJECTS TO INSTRUCTION**</u>

**Instruction No. \_\_\_\_**

        e)      Business Justification

### MONSANTO'S PROPOSAL

As part of your analysis of Syngenta's antitrust claims, you must consider whether legitimate business reasons motivated Monsanto's conduct. This issue has two interrelated parts.

First, you should decide whether each business reason advanced by Monsanto was legitimately competitive. A business justification is legitimate if it furthers competition on the merits, reduces prices, increases efficiency, enhances the quality or attractiveness of a product, increases efficiency by reducing costs, or otherwise benefits consumers.

Second, if you find that any business reason satisfies this requirement, you may then consider whether each such reason is a pretext – in other words, not the real reason for Monsanto's conduct. You are not, however, to second guess whether Monsanto's business judgment was wise or correct in retrospect.

The burden is first on Syngenta to prove by a preponderance of the evidence that Monsanto's conduct harmed competition. If Syngenta fails to prove that Monsanto's alleged conduct harmed competition, then you must find for Monsanto and against Syngenta as to Syngenta's unlawful maintenance of a monopoly claim. If, however, Syngenta proves that Monsanto's conduct harmed competition, the burden then shifts to Monsanto to prove, by a preponderance of the evidence, that its conduct had a legitimate business justification. If Monsanto proves that its conduct had a legitimate business justification, then you must find for Monsanto and against Syngenta as to Syngenta's unlawful maintenance of a monopoly claims.

<u>Sources:</u> Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions, § 1:1 at 17 (Thompson-West 2008); *United States v. Dentsply Int'l*, 399 F.3d 181,

196 (3d Cir. 2005) ("[E]ven if a company exerts monopoly power, it may defend its practices by establishing a business justification defense").

## SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. \_\_\_\_\_**

      7.     Injury and Causation

**SYNGENTA'S PROPOSAL**

If you find that Monsanto has violated Section 2 of the Sherman Act as alleged by Syngenta, then you must decide if Syngenta is entitled to recover damages from Monsanto.

Syngenta is entitled to recover damages if it can establish three elements of injury and causation:

**First**, that Syngenta was in fact injured as a result of Monsanto's alleged violation of the antitrust laws;

**Second**, that Monsanto's alleged illegal conduct was a material cause of Syngenta's injury; and

**Third**, that Syngenta's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Syngenta to establish that it is entitled to recover damages, it must prove that it was injured as a result of Monsanto's alleged violation of the antitrust laws. Proving the fact of damage does not require plaintiff to prove dollar value of its injury. It requires only that Syngenta prove that it was in fact injured by Monsanto's alleged antitrust violation. If you find that Syngenta was in fact injured, you may then consider the amount of Syngenta's damages. It is important to understand, however, that injury and damages are different concepts and that you cannot consider the amount of damages unless and until you conclude that Syngenta has established that it was, in fact, injured.

Syngenta must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Monsanto's illegal conduct was a material cause of Syngenta's injury. This means that Syngenta must have proven that some damage occurred to it as a result of Monsanto's alleged antitrust violation, and not some other cause. Syngenta is not required to prove that Monsanto's alleged antitrust violation was the sole cause of injury; nor need Syngenta eliminate all other possible causes of injury. It is enough if Syngenta has proved that the alleged antitrust violation was a material cause of its injury. However, if you find that Syngenta's injury was caused primarily by something other than the alleged antitrust violation, then you must find that Syngenta has failed to prove that it is entitled to recover damages from Monsanto.

Finally, Syngenta must establish that its injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If plaintiff's injuries were caused by a reduction in competition, or acts that would otherwise harm consumers, then plaintiff's injuries are antitrust injuries. On the other hand, if plaintiff's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then plaintiff's injuries are not antitrust injuries and plaintiff may not recover damages for those injuries under the antitrust laws. You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against – such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit – and the antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

However, if Syngenta can establish that it was in fact injured by defendant's conduct, that defendant's conduct was a material cause of Syngenta's injury, and that Syngenta's injury was of

the type that the antitrust laws were intended to prevent, then Syngenta is entitled to recover

damages for the injury to its business or property.

Source:  ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases*, F-2-6
(2005 ed.) [modified].

## **MONSANTO OBJECTS TO INSTRUCTION**

**Instruction No. _____**

      7.     Antitrust Injury

**MONSANTO'S PROPOSAL**

Syngenta must establish that Monsanto's conduct caused the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Monsanto committed acts that caused a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Monsanto caused antitrust injuries. On the other hand, if any injuries suffered by Syngenta's were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Syngenta's injuries are not antitrust injuries and Syngenta may not recover damages for those injuries under the antitrust laws. You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against -- such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit -- and the antitrust laws do not permit a Syngenta to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

However, if Syngenta can establish Monsanto's acts caused injury that the antitrust laws were intended to prevent, then Syngenta is entitled to recover damages for the injury to its business or property.

<u>Source</u>: ABA Model Jury Instructions in Civil Antitrust Cases, F-2 (2005) [modified].

**SYNGENTA OBJECTS TO INSTRUCTION**

**Instruction No. _____**

      8.     Antitrust Damages

      a)     Introduction and Purpose

I am now going to instruct you on the issue of damages. The fact that I am giving you instructions concerning the issue of Syngenta's damages does not mean that I believe the Syngenta should, or should not, prevail in this case.

If, for any reason, you reach a verdict for the Monsanto on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give. Instructions as to the measure of damages are given for your guidance in the event you should find in favor of the Syngenta based on a preponderance of the evidence in accordance with the other instructions I have given you. You should only consider calculating damages if you first find that Monsanto violated the antitrust laws and that this violation caused injury to Syngenta.

<u>Source:</u>  ABA Model Jury Instructions in Civil Antitrust Cases, F-11 (2005).

## MONSANTO'S PROPOSAL

Syngenta must establish as an element of its claim that the injury it claims to have suffered was an injury to its "business or property." If you do not find that Syngenta has suffered any damages to its business or property, then you must find for Monsanto. Syngenta is entitled to recover damages if it can establish two elements of injury and causation:

**First**, that Syngenta was in fact injured as a result of Monsanto's alleged violation of the antitrust laws; and

**Second**, that Monsanto's alleged illegal conduct was a material cause of Syngenta's injury.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Syngenta to establish that it is entitled to recover damages, it must prove that it was injured as a result of Monsanto's alleged antitrust violations. Proving the fact of damage does not require Syngenta to prove the dollar value of its injury. It requires that Syngenta prove that it was in fact injured by Monsanto's alleged antitrust violation. If you find that Syngenta has established that it was in fact injured, you may then consider the amount of Syngenta's damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Syngenta has established that it was in fact injured.

Syngenta must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Monsanto's alleged illegal conduct was a material cause of Syngenta's injury. This means that Syngenta must have proved that some damage occurred to it as a result of Monsanto's alleged antitrust violation, and not some other cause. Syngenta is not required to prove that Monsanto's alleged antitrust violation was the sole cause of its injury; nor need

Syngenta eliminate all other possible causes of injury. It is enough if Syngenta has proved that the alleged antitrust violation was a material cause of its injury. However, if you find that Syngenta's injury was caused primarily by something other than the alleged antitrust violation, then you must find that Syngenta has failed to prove that it is entitled to recover damages from Monsanto.

If Syngenta can establish that it was in fact injured by Monsanto's conduct, that Monsanto's conduct was a material cause of Syngenta's injury, and that Monsanto's injury was the type that the antitrust laws were intended to prevent, then Syngenta is entitled to recover damages for the injury to its business or property. I will instruct you later about the purpose of awarding damages and how to measure those damages.

Source: ABA Model Jury Instructions in Civil Antitrust Cases, F-2 (2005).

## **SYNGENTA OBJECTS TO INSTRUCTION**

**Instruction No. _____**

b)  No Speculation or Guesswork

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.  If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of any damage suffered by Syngenta.  If Syngenta establishes with reasonable probability the existence of an injury proximately caused by Monsanto's antitrust violation, you are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, Syngenta should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.  The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.  Syngenta must prove the reasonableness of each of the assumptions upon which the damages calculation is based.  If you find that Syngenta has failed to carry its burden of providing a reasonable basis for determining damages, then your verdict must be for Monsanto.  If you find that Syngenta has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, F-15 (2005).

**Instruction No. _____**

c)    Lost Profits

Syngenta claims that it was harmed because it lost profits as a result of Monsanto's alleged antitrust violations.  If you find that Monsanto committed an antitrust violation and that this violation caused injury to Syngenta, you may calculate the profits, if any, that Syngenta lost as a result of Monsanto's antitrust violation.  To calculate lost profits, you must calculate net profit: the amount by which Syngenta's gross revenue would have exceeded all of the costs and expenses that would have been necessary to produce those revenues.  You may calculate net profit by using the following measure:

Syngenta has proposed to calculate the net profits it would have earned if there had been no antitrust violation by showing evidence of its actual net profits in a period before the antitrust violation. If you find that the earlier period is a reliable guide to estimate what Syngenta's actual net profits would have been later, in the absence of the antitrust violation, then you may calculate Syngenta's lost profits by comparing (a) Syngenta's actual net profits in the earlier period with (b) Syngenta's actual net profits (or loss) thereafter. You may find, however, that Syngenta's profits in the prior period are not representative of what its profits would have been during the period in which the antitrust violation is alleged to have occurred, such as if Syngenta's profits were impacted by changed economic conditions, mismanagement, increased competition, changing technology, or other factors. If you find that the prior period is not representative of the later period, and that lost profits in the later period may only be calculated using speculation or guesswork, you may not award damages for lost profits based on the prior period.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, F-27 (2005).

**Instruction No. _____**

d)    Future Lost Profits

Syngenta claims that it was harmed because, had it not been for Monsanto's alleged antitrust violation, Syngenta would have earned profits for [X] years into the future. If you find that Monsanto committed an antitrust violation and that this violation caused injury to Syngenta, you may calculate the future profits, if any, that Syngenta lost as a result of Monsanto's antitrust violation. If you find that the fact of future losses is speculative or their amount is unproven, then you may not award damages for lost future profits.

To calculate lost future profits, you must make a reasonable estimate of (1) the amount of profits, if any, that Syngenta would have earned in future years, and (2) the length of time for which it would have earned those profits. In making this calculation, you must not engage in guesswork or speculation. In making this determination, you must consider the various uncertainties that could affect the future success of Syngenta's business, such as general market or economic conditions, lawful competition Syngenta would face in the future, Syngenta's management of the business, changes in technology or other business conditions, and other factors affecting Syngenta's future performance. If there is not evidence from which you can make a reasonable estimate of lost future profits, or if the uncertainties are such that speculation or guesswork is required, you may not award damages for lost future profits.

In calculating lost future profits, you must calculate net profit: the amount by which Syngenta's gross revenues would exceed all of the costs and expenses that would be necessary to produce those revenues. You may calculate net profit by using the following measure:

Syngenta has proposed to calculate the net profits it would have earned if there had been no antitrust violation by showing evidence of its actual net profits in a period before the antitrust violation. If you find that the earlier period is a reliable guide to estimate what Syngenta's actual net profits would have been later, in the absence of the antitrust violation, then you may calculate Syngenta's future lost profits by comparing (a) Syngenta's actual net profits in the earlier period with (b) your estimate of Syngenta's future net profits (or loss).  You may find, however, that Syngenta's profits in the prior period are not representative of what its profits would be in the future, such as if Syngenta would be impacted by changed economic conditions, mismanagement, increased competition, changing technology, or other factors [*expand or contract as applicable*]. If you find that the prior period is not representative of the future period, and that future lost profits may only be calculated using speculation or guesswork, you may not award damages for future lost profits based on the prior period.

If you award damages for future lost profits, you must discount the amount to its present value, using a discount rate of interest that you find reasonable.  This is because the right to receive a certain sum of money at a future date is worth less than the same amount of money in hand today - this is known as the time value of money. For example, if you had a choice to receive $ 1,000 today or a year from now, you would be better off receiving the money today and earning interest on it for a year - you would then have something more than $ 1,000 in a year from now. Similarly, if you had a right to $ 1,000 a year from now and you asked for the money today, the person owing you the money a year from now could properly give you a lower amount, reflecting the value that could be earned on that money over the next year. This lower amount is known as an amount discounted to present value.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, F-33 (2005).

**Instruction No. _____**

    e)      Causation and Disaggregation

If you find that Monsanto violated the antitrust laws and that Syngenta was injured by that violation, Syngenta is entitled to recover for such injury that was the direct and proximate result of the unlawful acts of Monsanto. Syngenta is not entitled to recover for injury that resulted from other causes.

Syngenta claims that it suffered injury because it lost sales and profits as a result of Monsanto's antitrust violation. In the normal course of competitive business activity, competitors will lose sales to each other, and to third parties, for various reasons that have nothing to do with the antitrust laws. Syngenta may not recover for lost sales if it lost those sales because of Monsanto's superior business acumen or salesmanship, because Monsanto offered a superior product, or because of lawful competition from Monsanto or other competitors. Syngenta also may not recover if it lost profits as a result of causes that had nothing to do with Monsanto's alleged unlawful conduct, such as increased competition from new competitors, changes in product technology or changes in market conditions.

Syngenta bears the burden of showing that its injuries were caused by Monsanto's alleged antitrust violation – as opposed to any other factors, such as those that I just described to you. If you find that Syngenta's alleged injuries were caused by factors other than Monsanto's alleged antitrust violation, then you must return a verdict for Monsanto. If you find that Syngenta's alleged injuries were caused in part by Monsanto's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Syngenta's alleged injuries that were caused by Monsanto's alleged antitrust violation. Syngenta bears the burden of proving damages with reasonable certainty, including apportioning damages between lawful

and unlawful causes.  If you find that there is no reasonable basis to apportion Syngenta's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award Syngenta any damages at all.  If you find that Syngenta has proven with reasonable certainty the amount of damage caused by Monsanto's alleged antitrust violation, then you must return a verdict for Syngenta.

<u>Source:</u>  ABA Model Jury Instructions in Civil Antitrust Cases, F-18 (2005) [modified].

**Instruction No. _____**

        f)        Nominal Damages

### MONSANTO'S PROPOSAL

If you find, after considering all the evidence presented, that Monsanto violated Syngenta's rights or breached a duty owed to Syngenta, but that Syngenta suffered no injury as a result of this violation or breach, you may award Syngenta "nominal damages." "Nominal damages" are awarded as recognition that Syngenta's rights have been violated. You would award nominal damages if you conclude that the only injury that Syngenta suffered was the deprivation of Syngenta's constitutional rights, without any resulting physical, emotional or financial damage.

You may also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation and guessing. You should, however, award actual damages, instead of nominal damages, if the injured party's damages may be reasonably calculated, even if such a calculation is inexact.

You may not award both nominal and compensatory damages to a plaintiff; either Syngenta was measurably injured, in which case you must award compensatory damages, or else Syngenta was not, in which case you may award nominal damages.

Nominal damages may not be awarded for more than a token sum.

<u>Source</u>:  Modern Federal Jury Instructions-Civil P 77.01 [modified].

### SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. _____**

        C.      Lanham Act

                a)      Elements

<u>**SYNGENTA'S PROPOSAL**</u>

To prevail on its Lanham Act claim, Syngenta must establish by preponderance of evidence each of the following elements:

1) Monsanto made false or misleading statements as to its own product or as to Syngenta's product;

2) There is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

3) That the deception is material in that it is likely to influence purchasing decisions;

4) That the advertised goods entered interstate commerce; and

5) That there has been an injury, or there is a likelihood of injury, to Syngenta in terms of declining sales, loss of goodwill, etc.

For the purposes of the first element, Syngenta may establish that Monsanto has made a false or misleading statement by proving either that Monsanto has made a statement that is literally false, or that Monsanto has made a statement that left the intended audience with a false impression. A statement that is true on its face can be misleading as a result of the failure to disclose an important fact. In determining whether a statement is false or misleading, you should consider both the statement itself and the context in which it was made.

In determining whether the statements allegedly made by Monsanto were false or misleading, you should decide whether or not those statements were objectively true and not misleading at the time that they were made. If later events, occurrences, or facts subsequently

made that statement untrue or misleading, that does not create a false or misleading statement for purposes of this claim.

Sources:  *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992); *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 921 (3d Cir. 1990); *Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F. Supp. 2d 424 (D. Del. 2003).

## MONSANTO OBJECTS TO INSTRUCTION

**Instruction No. \_\_\_\_\_**

        a)      False Advertising Under the Lanham Act

### MONSANTO'S PROPOSAL

    D.      False Advertising Under the Lanham Act

To prevail on its Lanham Act claim, Syngenta must prove by a preponderance of the evidence each of the following elements:

1. In commercial advertisements, Monsanto made false statements of fact about Syngenta's product;

2. These advertisements actually deceived or have the tendency to deceive a substantial segment of its audience;

3. The deception is material in that it is likely to influence a customer's purchasing decision;

4. The advertised product entered interstate commerce;

5. Syngenta has been or is likely to be injured as a result of the foregoing; and

6. Bad faith.

In determining whether the statements allegedly made by Monsanto were false, you should decide whether or not those statements were objectively true at the time that they were made. If later events, occurrences, or facts subsequently made that statement untrue, that does not create a false statement for purposes of this claim.

If you find that Monsanto made statements in commercial advertisements and that those statements concerned Monsanto's alleged patent rights or whether Syngenta's products allegedly infringed Monsanto's patents, then before Syngenta can recover on its Lanham Act claim, Syngenta must prove by clear and convincing evidence that Monsanto made those statements in bad faith. I will instruct you on the bad faith element shortly.

If, you find that Syngenta did not prove all of the elements of this claim by the required

burden of proof, then you must find for Monsanto and against Syngenta on this claim.

Sources:  Final Jury Instructions, *ISCO Int'l, Inc. v. Conductus, Inc.,* C.A. No. 01-487 (GMS) at 70 (D. Del. April 1, 2003) [modified]; Memorandum Opinion in *Syngenta Seeds, Inc. v. Monsanto Co.*, No. Civ. 04-305 (D. Del. Aug. 4, 2006); *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1371; J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 27:25 at 27-49 (Thomson/West 2007) (discussing elements); *Nokia v. Interdigital Communications*, No. 05-16, 2005 WL 3525696, (D. Del. 2005) (same).

**SYNGENTA OBJECTS TO INSTRUCTION**

**Instruction No. \_\_\_**

         a)      Intent and Bad Faith

**SYNGENTA'S PROPOSAL**

      With one relevant exception, which I am going to instruct you on, the Lanham Act does not require that the falsity be willful or be made with the intent to deceive. Therefore, if you find that the above elements are met, you shall find in favor of Syngenta on its Lanham Act claim even if you believe that Monsanto did not intend to deceive its audience by its statements.

      Here is the exception. It applies <u>only</u> to statements that Monsanto made in publicizing its alleged patent rights in the marketplace. It does <u>not</u> apply to any other statements. With respect to Monsanto's statements in publicizing its alleged patent rights, Syngenta must prove that Monsanto made those statements in bad faith. In this regard, you must find that Monsanto acted in bad faith by clear and convincing evidence. Bad faith does not exist merely because a statement made by Monsanto turned out to be wrong. However, bad faith may exist if Monsanto either knew or had reason to believe that its alleged patent was invalid, unenforceable, or not infringed, or acted with disregard for the falsity of its allegations. In other words, bad faith can be established either subjectively or objectively.

      Remember that the requirement to show bad faith applies <u>only</u> to Monsanto's statements to publicize its alleged patent rights. That requirement to show bad faith does <u>not</u> apply to any other statements or claims.

      "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and

94

convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard.  But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.

Remember that the "clear and convincing evidence" standard applies <u>only</u> to proving that Monsanto acted in bad faith, which in turn applies <u>only</u> to Monsanto's statements to publicize its alleged patent rights.  As I said before, it is an exception.  Everything else in this case must be proved only by a "preponderance of the evidence."

<u>Sources</u>:  *Zenith Techs. Corp. v. Exzec*, 182 F.3d 1340, 1354-55 (Fed. Cir. 1999) (citing *Mikohn Gaming v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed. Cir. 1998); *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 (3d Cir. 1990) (no requirement that falsity be willful or be made with intent to deceive); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958) (same); *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) (requirement to show bad faith by clear and convincing evidence for statements made to publicize patent rights); Model Jury Instructions for the District Courts of the Third Circuit, §1.11 (2007).

## <u>MONSANTO OBJECTS TO INSTRUCTION</u>

a)    Intent and bad faith

## **MONSANTO'S PROPOSAL**

If you find that Monsanto made statements in commercial advertising that concerned Monsanto's alleged patent rights, then Syngenta must prove by clear and convincing evidence that Monsanto made those statements in bad faith.

A patent owner is entitled to notify others about or otherwise publicize its patent rights, and such notification or publication does not normally violate the Lanham Act, even where the patent is later determined to be invalid or unenforceable. For any statement by Monsanto about its patent rights to violate the Lanham Act, Syngenta must prove by clear and convincing evidence: (1) that Monsanto's statement was objectively baseless; and (2) that Monsanto's statement was made for improper or a malicious purpose.

Just because later events, occurrences, or facts subsequently made a statement untrue does not mean that it was objectively baseless. A statement is objectively baseless only if it was so baseless that no reasonable person could realistically expect the statement to be true. In other words, if someone in Monsanto's position could have had a reasonable belief that there was a chance that the statement was true, the statement was not objectively baseless. If you find that Monsanto's statement was not objectively baseless, you must find for Monsanto and against Syngenta on Syngenta's charges that Monsanto violated the Lanham Act.

If, however, you find that Monsanto's statement was objectively baseless, you must determine whether it was made for an improper or malicious purpose. This requires you to determine Monsanto's good or bad faith in making the statement about its patent rights. Monsanto is entitled to a presumption of good faith, that is, you must presume that an assertion by Monsanto of infringement of a duly granted patent or notice about such rights were made in

good faith.  It is not improper for a patent owner to advise possible infringers of its belief that a

product may infringe its patents and such communication of accurate information whether by

direct notice to potential infringers or by publicity release does not support a finding of bad faith.

Further, there is no bad faith if a patentee's position is later shown to be wrong.  Also, a purely

competitive commercial purpose is not sufficient to constitute bad faith.

     If you do not find by clear and convincing evidence that Monsanto's  statement about its

patent rights were in bad faith  then you must find for Monsanto on Syngenta's Lanham Act

claims.


ABA Model Jury Instructions in Civil Antitrust Cases, D-69 (2005) [modified]; *Dominant
Semiconductors Sdn. Bhd. v. OSRAM GmbH*, __ F.3d __, 2008 WL 1800336, at *5-9 (Fed. Cir.
April 23, 2008) (applying the bad faith standard from a sham patent claim applies to the Lanham
Act claim based on statements about the defendant's alleged patent rights).

## SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. \_\_\_\_\_**

        b)      Commercial Advertising

### MONSANTO'S PROPOSAL

For purposes of Syngenta's claim, you must find that any false statement by Monsanto occurred as part of commercial advertisings. For purposes of this claim, commercial advertising is defined as:

    1.  commercial speech;

    2.  by a defendant who is in commercial competition with the plaintiff;

    3.  or the purpose of influencing consumers to buy defendant's goods or services;

    4.  that is disseminated sufficiently to the relevant purchasing public to constitute advertising or promotions within the industry.

The law encourages a patent holder to protect its rights in a patent. For that reason, patent holders are entitled to, and encouraged to, notify parties that may be infringing on the patent holder's patents. If you find that any communication by Monsanto was intended to notify a person or a company that that person or company may be infringing a patent, then that letter is not commercial advertising for purposes of this claim.

Source: *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 2007 U.S. Dist. LEXIS 23636, \*51 (D. N.J. March 30, 2007); *Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F. Supp. 2d 424 (D. Del. 2003).

### SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. \_\_\_**

c)    Damages

### SYNGENTA'S PROPOSAL

If you find that Syngenta has proven its claim for violations of the Lanham Act, you must determine Syngenta's damages.  Syngenta has the burden of proving damages by a preponderance of the evidence.

Damages means the amount of money that will reasonably and fairly compensate Syngenta for any injury you find was proximately caused by the Monsanto's violation or violations of the law.

You should consider whether any of the following exists, and if so to what extent, in determining plaintiff's damages:

1.  Any injury to, or loss of, Syngenta's reputation;

2.  Any injury to, or loss of, Syngenta's goodwill, including any injury to Syngenta's general business reputation;

3.  Any loss of Syngenta's sales as a result of Monsanto's statements;

4.  Any loss of Syngenta's profits;

5.  Any expense of preventing customers from being deceived;

6.  Any cost of future corrective advertising reasonably required to correct any public confusion caused by Monsanto's statements; and

7.  Any other factors that bear on Syngenta's actual damages.

Source:  Federal Jury Practice and Instructions § 159.91 [modified].

### MONSANTO OBJECTS TO INSTRUCTION

Instruction No. _____

### (1)     Lanham Act Damages

### <u>MONSANTO'S PROPOSAL</u>

If you find for Syngenta on Syngenta's false advertising claim and find that Monsanto's statements resulted in actual deception to consumers, you must determine Syngenta's damages. Syngenta has the burden of proving damages by a preponderance of the evidence.

Damages means the amount of money that will reasonably and fairly compensate Syngenta for injury you find was proximately caused by the Monsanto's false statements.  You should consider whether any of the following exists, and if so to what extent, in determining plaintiff's damages:

1.  Any loss of Syngenta's sales as a result of the Monsanto's infringement;

2.  Any loss of Syngenta's profits;

<u>Source:</u>  Federal Jury Practice and Instructions – Civil § 159.91 (O'Malley 2001); Expert Report of Richard J. Gilbert, at 125-34 (opining only on Syngenta's damages from lost sales).

### <u>SYNGENTA OBJECTS TO INSTRUCTION</u>

**Instruction No. _____**

## V.    MONSANTO'S DEFENSES TO SYNGENTA'S CLAIMS

Monsanto has asserted the following defenses to each of Syngenta's claims.

**Instruction No. _____**

    A.      Mitigation of Damages

**SYNGENTA'S PROPOSAL**

Plaintiff may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. Plaintiff is not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If plaintiff failed to take reasonable steps available to it, and the failure to take those steps results in greater harm to the plaintiff than it would have suffered had it taken those steps, then plaintiff may not recover any damages for that part of the injury it could have avoided.

Defendant had the burden of proof on this issue. Defendant must prove by a preponderance of the evidence that plaintiff acted unreasonably in failing to take specific steps to minimize or limits its losses, that the failure to take those specific steps resulted in its losses being greater than they would have been if it had taken such steps, and the amount by which plaintiff's loss would have been reduced had plaintiff taken those steps. In determining whether plaintiff failed to take reasonable measures to limit its damages, you must remember that the law does not require plaintiff to have taken every conceivable step that might have reduced its damages. The evidence must show that plaintiff failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in the plaintiff's position would likely have adopted, given the circumstances as they appeared at the time. Plaintiff should be given a wide latitude in deciding how to handle the situation, so long as what plaintiff did was not unreasonable in light of the existing circumstances.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, F-47 (2005).

**MONSANTO OBJECTS TO INSTRUCTION**

A.    Mitigation of Damages

## **MONSANTO'S PROPOSAL**

You are instructed that Syngenta has a duty to "mitigate" its damages. It is Monsanto's burden to prove by a preponderance of the evidence that Syngenta failed to mitigate damages. To mitigate damages means to take reasonable steps to reduce the loss, if that was possible under the circumstances. Therefore, if you find by the preponderance of the evidence that Syngenta failed to use reasonable diligence to seek out or take advantage of an opportunity that was reasonably available to it to reduce its damages, you must reduce Syngenta's damages by the amount that it reasonably could have avoided.

Source:  Devitt, Blackmar, & Wolff, Federal Jury Practice and Instructions, §104.05 at 142 (Supp. 1993); *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860, 864 (3d Cir. 1995).

**Instruction No. _____**

B.    Syngenta's Injuries or Damages Were Proximately Caused by its Own
       Acts or Omissions

## MONSANTO'S PROPOSAL

Monsanto asserts that any injuries or damages that Syngenta claims in this lawsuit were

not caused by Monsanto but rather were caused by Syngenta's own acts or omissions, such as,

for example, Syngenta's own inferior products, its late entry into the market, or its lack of

innovation.  You must reduce Syngenta's damages, if any, by the amount that you find were

caused through Syngenta's own acts or omissions.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases, F-18 (ABA 2005).

## SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. _____**


## VI.    MONSANTO'S COUNTERCLAIMS

Monsanto has asserted two counterclaims against Syngenta which you must also decide. Monsanto claims that Syngenta violated the Delaware Deceptive Trade Practices Act and that it tortiously interfered with Monsanto's contracts with Garst and Golden Harvest. I will now explain each of these claims in more detail.

**Instruction No. _____**

      A.     Tortious Interference

**SYNGENTA'S PROPOSAL**

For Monsanto to recover on its claim against Syngenta, Monsanto must prove, by a preponderance of the evidence, each of the following six elements:

1) that at the time of the acts of Syngenta, Monsanto was a party to a valid contract with Garst to license the GA21 trait;

2) that Syngenta either knew of the existence or, under the circumstances, should have known of the existence, of that contract;

3) that the acts of Syngenta in inducing Garst to breach its contract with Monsanto were intentional within the meaning of the word *intent,* which I will provide you with later in my instructions;

4) that the conduct of Syngenta was improper under the factors I will instruct you to consider;

5) that, as a proximate result of the acts of Syngenta, Garst was induced to breach its contract with Monsanto; and

6) that, as a direct and proximate result of Syngenta's conduct, Monsanto was damaged.

If you find from your consideration of all of the evidence that Monsanto has proved each of these elements by a preponderance of the evidence, then you will consider the question of the amount of money damages that may be awarded under instructions I will give you.

If you find, however, from your consideration of all of the evidence that Monsanto has not proved any one or more of these elements by a preponderance of the evidence, then Syngenta is not liable, and your verdict should be against Monsanto and for Syngenta.

<u>Source:</u>  ABA Model Jury Instructions, Business Torts Litigation, 4th Ed. (2005), § 1.3.1.

**MONSANTO OBJECTS TO INSTRUCTION**

A.    Tortious Interference

### MONSANTO'S PROPOSAL

Monsanto contends that Syngenta intentionally interfered with Monsanto's contracts with Garst Seed Company and Golden Harvest Seeds, Inc.  In order to recover on this claim as to Garst, Monsanto must prove each of the following facts by a preponderance of the evidence:

1) Monsanto had a valid contract with Garst;

2) Syngenta knew that the contract existed;

3) Syngenta committed an intentional and improper act that was a significant    factor in causing Garst to breach its contract with Monsanto; and

4) Monsanto suffered damages as a result of the interference.

Similarly, in order to recover on this claim as to Golden Harvest, Monsanto must prove each of the following facts by a preponderance of the evidence:

1) Monsanto had a valid contract with Golden Harvest;

2) Syngenta knew that the contract existed;

3) Syngenta committed an intentional and improper act that was a significant factor in causing Golden Harvest to breach its contract with Monsanto, and

4) Monsanto suffered damages as a result of the interference.

If you find that Monsanto has proven by a preponderance of the evidence that Syngenta tortiously interfered either with Monsanto's agreement with Garst or with Monsanto's agreement with Golden Harvest or both, then you must find for Monsanto and against Syngenta on this claim. If, however, you find that Monsanto did not prove this claim by a preponderance of the evidence, then you must find for Syngenta and against Monsanto on this claim.

Sources:  Delaware Pattern Jury Instructions – Civil  § 12.6 (2000 Ed.) [modified]; *Aeroglobal Capital Mgmt. v. Cirrus Indus.,* 871 A.2d 428, 437 n.7 (Del. 2005) (elements of Delaware's tortious interference cause of action); *Anderson v. Wachovia Mortgage.*

**SYNGENTA OBJECTS TO INSTRUCTION**

**Instruction No. _____**

      1.     Improper Interference

If you find that Syngenta committed an act that caused Garst or Golden Harvest to breach its contract with Monsanto, you should consider whether Syngenta's act was improper. In determining whether Syngenta's conduct was improper, the question is whether the actor's conduct was fair and reasonable under the circumstances, recognized business ethics, business customs, and concepts of fair play. In making that determination, you should consider:

1. The nature of Syngenta's conduct;

2. Syngenta's motive for interfering with the contracts;

3. Monsanto's interests;

4. The expectations in the parties involved;

5. The relations between the parties involved;

6. The interest that Syngenta sought to advance;

7. Whether Syngenta's act was done for the purpose of causing the interference or whether is was merely incidental to another purpose;

8. The proximity or remoteness of Syngenta's conduct to the interference; and

9. Society's interest in protecting business competition as well as its interest in protecting the individual against interference with the pursuit of gain.

<u>Sources:</u>  Delaware Pattern Jury Instructions – Civil  § 12.7 (2000 Ed.) [modified].

**Instruction No. _____**

2.     Requirement of a Contract

## SYNGENTA'S PROPOSAL

For you to find for Monsanto on its claim against Syngenta, you must find that Monsanto was a party to a valid contract in full force and effect at the time of the actions complained of and that the contract was breached as a result of Syngenta's conduct.

A contract may be defined simply as an oral or written agreement, which the law will enforce, to do or not to do a particular thing in exchange for adequate consideration. If all of the basic elements required by law for there to be a contract are present, a contract is deemed to be valid if it is not illegal, in restraint of trade, or otherwise opposed to public policy. A contract is considered to be in full force and effect if, at the time in question, the agreement was in effect between the parties and not terminated, expired, or otherwise rendered void.

Hence, in order for you to find the existence of a contract sufficient to meet Monsanto's burden of proof, you must find that there was in effect, at the time of the actions complained of, an agreement between Monsanto and Garst to license GA21 event corn products, which agreement was neither illegal nor in restraint of trade nor otherwise opposed to public policy.


Source: ABA Model Jury Instructions, Business Torts Litigation, 4th Ed. (2005), § 1.3.1.a [modified].

## **MONSANTO OBJECTS TO INSTRUCTION**

If the Court decides to give an instruction on breach of contract, Monsanto proposes that Syngenta's instruction be altered to the following:

2.     Requirement of a Contract

For you to find for Monsanto on its claim against Syngenta, you must find that Monsanto was a party to a valid contract in full force and effect at the time of the actions complained of. A contract may be defined simply as an oral or written agreement, which the law will enforce, to do or not to do a particular thing in exchange for adequate consideration.

Source: ABA Model Jury Instructions, Business Torts Litigation, 4th Ed. (2005), § 1.3.1.a [modified].

**Instruction No. _____**

        3.     Requirement of Intent

### SYNGENTA'S PROPOSAL

Monsanto also must prove that Syngenta intended to induce Garst to breach its contract with Monsanto. Conduct is intentional if done deliberately, with the purpose of inducing Garst to breach its contract with Monsanto. If you find that Syngenta's conduct was not intentional, then you must find for Syngenta.

<u>Source:</u> ABA Model Jury Instructions, Business Torts Litigation, 4th Ed. (2005), § 1.3.3.a.

### MONSANTO OBJECTS TO INSTRUCTION

**Instruction No. _____**

      4.      Breach Defined

## SYNGENTA'S PROPOSAL

Breach of contract means the failure of a party to a contract, in the absence of legal excuse or impossibility of performance, to perform any promise that forms the whole or part of the contract. A breach may occur with regard to either an express or implied provision of the contract. An express provision is one that is specifically agreed to by the parties either orally or in writing. An implied provision is one that is recognized by the parties to exist and bind them in their actions despite the fact that it was not specifically spelled out or agreed to by the parties to the contract. An implied provision often arises out of terms that were expressly set forth in the contract and agreed to by the parties, and an implied promise constitutes a valid part of the contract.

<u>Source:</u> ABA Model Jury Instructions, Business Torts Litigation, 4th Ed. (2005), § 1.3.4.a.

## MONSANTO OBJECTS TO INSTRUCTION

**Instruction No. _____**

      5.     Nonliability of Contractual Parties

**SYNGENTA'S PROPOSAL**

Even if you find that Monsanto's contract was breached and that, but for Syngenta's conduct, the contract would otherwise have been performed, Monsanto cannot prevail on the counterclaim against Garst if Garst was a party to the contract with Monsanto because Garst may not be held liable to Monsanto for inducing its own breach of contract.

<u>Source:</u> ABA Model Jury Instructions, Business Torts Litigation, 4th Ed. (2005), § 1.3.4.e

**MONSANTO OBJECTS TO INSTRUCTION**

**Instruction No. _____**

      6.     Self-Interest as Proper of Improper Interference

### SYNGENTA'S PROPOSAL

      Should you find that Syngenta acted lawfully and to protect a present, existing economic interest of its own, then you may find that Syngenta's conduct in inducing the breach of contract between Monsanto and Garst was not improper.  Examples of such present economic interests include property interests, contract rights, and financial interests in the affairs of the person induced. Should you find, however, that Syngenta acted improperly in pursuit of Syngenta's own prospective advantage, not yet realized, then you cannot find that Syngenta's interference was proper.

      The fact that Syngenta acted only in the pursuit of generalized competition, even if Syngenta acted solely by lawful means and without an improper purpose, is not alone sufficient to justify conduct which induced a breach of Monsanto's contract, when Syngenta had no present economic rights of Syngenta's own to protect.

Source: ABA Model Jury Instructions, Business Torts Litigation, 4th Ed. (2005), § 1.4.5.

### MONSANTO OBJECTS TO INSTRUCTION

**Instruction No. \_\_\_\_\_**

       7.      Protection of the Public Welfare

**SYNGENTA'S PROPOSAL**

      Syngenta's conduct was not improper if you find that Syngenta acted in furtherance of the public welfare.  To find that Syngenta acted in furtherance of the public welfare, you must find that Syngenta sought to further an established public policy that has a greater social value than ensuring the stability of the contract that was breached. An example of such a situation would be when the contract would have injured the public health, safety, or morals.

Source:  ABA Model Jury Instructions, Business Torts Litigation, 4th Ed. (2005), § 1.4.8.

**MONSANTO OBJECTS TO INSTRUCTION**

**Instruction No. _____**

      8.     Recoverable Elements of Damages

**SYNGENTA'S PROPOSAL**

In determining the amount of compensatory damages, you may consider whether Monsanto suffered any measurable loss of profits by reason of Syngenta's conduct. You should be guided by the rule that Monsanto is entitled to any profits that Monsanto would, with reasonable certainty, have enjoyed, were it not for the breach of Monsanto's contract. In arriving at the amount of profits lost by Monsanto, you are entitled to consider Monsanto's past earnings in its business and, in particular, those past earnings resulting from contracts of the nature of the contract in this case. You should also consider all of the other evidence concerning general economic and competitive conditions that you may find to have a bearing on the issue of lost profits.

In addition to lost profits, Monsanto is entitled to recover any reasonable costs it incurred in an effort to mitigate or reduce Monsanto's damages and to recover business Monsanto lost due to Syngenta's wrongful conduct. As a result, you may consider Monsanto's expenses in determining the amount of compensatory damages.

You may not award Monsanto lost profits, or any other form of damages, where you find that proof of such damages is speculative.

Source: ABA Model Jury Instructions, Business Torts Litigation, 4th Ed. (2005), § 1.5.3 [modified].

**MONSANTO OBJECTS TO INSTRUCTION**

Instruction No. _____

B.    Monsanto's Damages

### MONSANTO'S PROPOSAL

1.    Tortious Interference with Contractual Relations Damages

If you find that Syngenta has interfered with Monsanto's contractual relations, Monsanto

is entitled to be fairly and adequately compensated for:

1.  The monetary loss of the contractual benefits suffered by the Monsanto; and

2.  Any other losses suffered by the Monsanto as a direct result of the Syngenta's act;

In determining the amount of Monsanto's damages, you should include all damages

resulting from the breach of the Garst or Golden Harvest agreement.

Sources:  Superior Court of Delaware Online Civil Pattern Jury Instructions, (2000 Ed.), *citing*,
*De Bonaventura v. Nationwide Mut. Ins.*, Del. Ch., 419 A.2d 942 (1980), *aff'd*, Del. Supr., 428
A.2d 1151 (1981); *Bowl-Mor Company Inc. v. Brunswick Corp.*, Del. Ch., 297 A.2d 61, appeal
dismissed, 297 A.2d 67 (1972); *Murphy v. Godwin*, Del. Super., 303 A.2d 668v(1973); Delaware
Pattern Jury Instructions – Civil  § 12.6 (2000 Ed.) [modified].

### SYNGENTA OBJECTS TO INSTRUCTION

**Instruction No. _____**

      2.     Additional Damages - Disgorgement

**MONSANTO'S PROPOSAL**

In addition to actual damages, Monsanto is entitled to any profits earned by the defendant that are attributable to Syngenta's tortious interference, which Monsanto proves by a preponderance of the evidence.  You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

In determining any additional damages, profit is determined by deducting all expenses from gross revenue.  Gross revenue is all of Syngenta's receipts from using the deceptive trade practice.  Monsanto has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of Syngenta's GA21 corn products is attributable to factors other than Syngenta's deceptive trade practice, you shall find that the total profit is attributable to the infringement.

Source:  Modern Federal Jury Instructions-Civil 15.26.

**SYNGENTA OBJECTS TO THIS INSTRUCTION.  To the extent the instruction is given over Syngenta's objection, it is Syngenta's position that it should be phrased set forth herein**

2.    Additional Damages – Disgorgement

## SYNGENTA'S PROPOSAL

In addition to actual damages, Monsanto is entitled to any profits earned by the defendant that are attributable to Syngenta's tortious interference, which Monsanto proves by a preponderance of the evidence.  You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

In determining any additional damages, profit is determined by deducting all expenses from gross revenue.  Gross revenue is all of Syngenta's receipts from using the deceptive trade practice.  Monsanto has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of Syngenta's GA21 corn products is attributable to factors other than Syngenta's deceptive trade practice, you shall find that the total profit is attributable to the infringement.

Source:  Modern Federal Jury Instructions-Civil 15.26.

## MONSANTO OBJECTS TO INSTRUCTION

**Instruction No. \_\_\_\_\_**

    C.      Deceptive Trade Practices

Monsanto alleges that Syngenta violated the Delaware Deceptive Trade Practices Act by:

- Representing that its glyphosate-tolerant corn seed products were of a particular standard, quality, grade, style, or model, when they were of another; or

- Engaging in conduct that similarly created a likelihood of confusion or of misunderstanding as to its glyphosate-tolerant corn seed products.

Monsanto has the burden to prove this claim by a preponderance of the evidence. If you find that Monsanto has proven either of these elements by a preponderance of the evidence, then you must find for Monsanto and against Syngenta on this claim. If, however, you find that Monsanto did not prove this claim by a preponderance of the evidence, then you must find for Syngenta and against Monsanto on this claim.

<u>Source:</u>  Del. Code Ann. Tit. 6 § 2532 ("Delaware Deceptive Trade Practices Act").

**Instruction No. _____**

1.     Elements

Monsanto has the burden to prove this claim by a preponderance of the evidence. Monsanto alleges that Syngenta violated Sections 2532(a)(7) and 2532(a)(12) of the Delaware Deceptive Trade Practices Act.  In order to recover under Section 2532(a)(7) of the Deceptive Trade Practices Act, Monsanto must prove each of the following elements by a preponderance of the evidence:

*First,* that Syngenta represented that its glyphosate corn tolerant corn seeds were of a particular standard, quality, grade, style or model;

*Second,* that Syngenta's representations were demonstrably or measurably false, deceptive, or misleading at the time they were made; and

*Third,* that Syngenta's representations occurred during the course of Syngenta's business.

In order to recover under Section 2532(a)(12) of the Deceptive Trade Practices Act, Monsanto must prove each of the following elements by a preponderance of the evidence:

*First,* that Syngenta engaged in conduct relating to its glyphosate-tolerant corn seed products;

*Second,* that Syngenta's conduct created a likelihood of confusion or misunderstanding about Syngenta's glyphosate-tolerant corn seed products in a manner similar to making false, deceptive, or misleading representation about the products;

*Third,* that Syngenta's conduct occurred during the course of Syngenta's business.

If you find that Monsanto has proven each of the elements under either of these sections by a preponderance of the evidence, then you must find for Monsanto and against Syngenta on

this claim.  If, however, you find that Monsanto did not prove one or more of the elements under either of these sections under this claim by a preponderance of the evidence, then you must find for Syngenta and against Monsanto on this claim.

<u>Source:</u>  6 Del. Code § 2532(a); *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 67 (Del. 1993).

**Instruction No. _____**

> 2.  Nonliabilty for Misrepresentation of Origin, Sponsorship, or
> Affiliation

### SYNGENTA'S PROPOSAL

Monsanto cannot prevail on its deceptive trade practices claim if the only Syngenta

representations Monsanto alleges were false were representations that Syngenta was the source,

origin or creator of a good, or that it was the source, origin or creator of any component, part,

input, or trait of a good.

In other words, Monsanto cannot prevail if:

1)  Monsanto has only shown that Syngenta misrepresented that it was the source, origin or
creator of Syngenta's GA21;

2)  Monsanto has only shown that Syngenta misrepresented that Monsanto sponsored,
approved, or certified Syngenta's GA21; or

c)  Monsanto has only shown that Syngenta misrepresented that its GA21 was affiliated,
connected, or associated with Monsanto's glyphostate-tolerant product.

The law does not consider the representations described above to be representations that

a good is a particular standard, quality, grade, style or model, as required by Delaware statute.

If you find that the only representations Monsanto claims are false are representations

listed above, you must find against Monsanto and for Syngenta on Monsanto's DDTPA

counterclaim.

Sources: Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003); Monsanto Co.
v. Syngenta Seeds, Inc., 443 F. Supp. 2d 648, 653 (D. Del. 2006); Toro Co. v. Textron, Inc., 499
F. Supp. 241, 248 n. 17 (D. Del. 1980).

### MONSANTO OBJECTS TO INSTRUCTION

**Instruction No. _____**

## VII.    DAMAGES

### A.    Expert Testimony Regarding Damages

You have heard testimony from Syngenta's expert Mr. Gilbert and from Monsanto's expert Mr. Rausser regarding the amount of damages to which Syngenta claims it is entitled. You have also heard testimony from Mr. Latham regarding the amount of damages to which Monsanto claims it is entitled for its counterclaims. If you find that any of the pertinent underlying assumptions made by one of these experts in preparing a damage report or formulating an opinion as to damages are not reasonable or are not proven by a preponderance of the evidence, or if you find that one or both of these expert's conclusions depend on a comparison of things which have not been proven to be comparable, then you should consider this in determining the weight—if any—you will give to these assumptions and the effect they have on Syngenta's damages claim.

<u>Source:</u>  ABA Model Jury Instructions in Civil Antitrust Cases, F-46 (2005).

**Instruction No. _____**

    B.      Curative Instruction

    The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Syngenta on its claims or Monsanto on its counterclaims.

<u>Source:</u>  Modern Federal Jury Instructions-Civil ¶ 77.01 (Bender 2008).

Instruction No. _____

## VIII.  DELIBERATION AND VERDICT

A.      Introduction

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 5-3, or whatever your vote happens to be.  That should stay secret until you are finished.

Source:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware §7.1 [modified]; Jury Instructions for *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 26 (D. Del. Dec. 13, 2007).

**Instruction No. _____**

      B.      Unanimous Verdict

      Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

      It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

      A form of verdict has been prepared for you.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Source:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware §7.2 [modified]; Jury Instructions for *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 27 (D. Del. Dec. 13, 2007).

**Instruction No. _____**

C.   Duty to Deliberate

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that – your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Source:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware §7.3 [modified]; Jury Instructions for *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 28-29 (D. Del. Dec. 13, 2007).

**Instruction No. _____**

D.    Court Has No Opinion

We generally end our business day at 4:30 p.m.  If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations tomorrow morning.  You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess.  You may talk about the case only while you are in the jury room and everyone on the jury is present.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30.  You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 1:00 and 2:00 to step away from the phone.  So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 1:00 and 2:00, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

<u>Sources:</u>  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware §7.4 [modified]; Jury Instructions for *Callaway Golf Co. v. Acushnet Co.*, C.A. No. 06-091-SLR at 30 (D. Del. Dec. 13, 2007).

Respectfully submitted,

YOUNG  CONAWAY STARGATT
  & TAYLOR LLP

POTTER ANDERSON & CORROON LLP

/s/ John W. Shaw
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

/s/ David E. Moore
Richard L. Horwitz (No. 2246)
David E. Moore (No. 3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com

*Attorneys for Syngenta Seeds, Inc.,
Corporation, Syngenta Biotechnology, Inc.,
Advanta USA, Inc., Garst Seed Company, and
Golden Harvest Seeds, Inc.*

*Attorneys for Monsanto Company and
Monsanto Technology LLC*