**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

MONSANTO COMPANY, *et al*,           )
                                     )
            Plaintiffs,              )     C.A. No. 04-305-SLR
                                     )     (Consolidated)
     v.                              )
                                     )     **PUBLIC VERSION**
SYNGENTA SEEDS, INC., *et al*,       )
                                     )
            Defendants.              )
                                     )

**MONSANTO'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO AMEND ITS ANSWER AND COUNTERCLAIMS**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Attorney for MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC

OF COUNSEL:

Peter E. Moll
Scott Flick
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004
(202) 783-0800
(202) 383-6610 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated:  May 12, 2008
Public Version Dated: May 19, 2008
865215 / 28128

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

SUMMARY OF ARGUMENT ................................................................................2

STATEMENT OF FACTS ....................................................................................4

    A.    Monsanto's Existing Allegations Relating to Syngenta's Tortious
           Interference With Its Golden Harvest Contract ........................................4

    B.    Syngenta Raises an Objection During the *Daubert* Briefing....................6

ARGUMENT .....................................................................................................7

I.    MONSANTO HAS ALREADY STATED A COUNTERCLAIM FOR
     TORTIOUS INTERFERENCE WITH THE GOLDEN HARVEST
     AGREEMENT ............................................................................................8

    A.    Monsanto's Existing Counterclaims Adequately Plead a Claim of
           Tortious  Interference with the Golden Harvest Contract.........................8

    B.    Monsanto's Existing Counterclaims Satisfy the Notice Pleading
           Requirements of Rule 8 .........................................................................10

    C.    Monsanto Should Be Permitted to Clarify Its Existing Claim..............11

II.    THE COUNTERCLAIMS SHOULD BE CONFORMED TO THE
     EXTENSIVE DISCOVERY RECORD IN THIS CASE OF
     SYNGENTA'S INTERFERENCE WITH THE GOLDEN HARVEST
     AGREEMENT ..........................................................................................11

III.    THERE IS NO UNDUE PREJUDICE TO SYNGENTA BY AMENDING
     THE COUNTERCLAIMS................................................................................15

IV.    MONSANTO HAS NOT UNDULY DELAYED IN BRINGING ITS
     MOTION TO AMEND...................................................................................16

V.    THE AMENDMENT IS NOT FUTILE .........................................................16

CONCLUSION..................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Adams v. Gould, Inc.*,
  739 F.2d 858 (3d Cir. 1984)..................................................................................16

*Agere Systems Guardian, Corp. v. Proxim, Inc.*,
  190 F. Supp. 2d 726 (D. Del. 2002)........................................................................7

*American Homepatient, Inc. v. Collier*,
  C.A. No. 274-N, 2006 WL 1134170 (Del. Ch. Apr. 19, 2006) ................................8

*Bernback v. Greco*,
  69 Fed. Appx. 98 (3d Cir. 2003)..............................................................................7

*Coca-Cola Bottling Co. v. Coca-Cola Co.*,
  668 F. Supp. 906 (D. Del. 1987)................................................................10, 15, 16

*Conley v. Gibson*,
  355 U.S. 41 (1957)..................................................................................................11

*Cornell & Co. v. Occupational Safety & Health Review Commission*,
  573 F.2d 820 (3d Cir. 1978)....................................................................................15

*Coventry v. United States Steel Corp.*,
  856 F.2d 514 (3d Cir. 1988)......................................................................................4

*Dole Fresh Fruit Co. v. Del. Cold Storage Inc.*,
  961 F. Supp. 676 (D. Del. 1997)..............................................................................15

*Foman v. Davis*,
  371 U.S. 178 (1962)..............................................................................................4, 7

*Heyl & Patterson International, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*,
  663 F.2d 419 (3d Cir. 1981)............................................................................3, 4, 11

*J.E. Mamiye & Sons, Inc. v. Fidelity Bank*,
  813 F.2d 610 (3d Cir. 1987)................................................................................3, 11

*Jablonski v. Pan American World Airways, Inc.*,
  863 F.2d 289 (3d Cir. 1988)......................................................................................7

*La Gorga v. Kroger Co.*,
  407 F.2d 671 (3d Cir. 1969)......................................................................................4

*Menkowitz v. Pottstown Mem'l Medical Ctr.*,
   154 F.3d 113 (3d Cir. 1998)........................................................................................2, 8, 10, 11

*Ricoh Co., Ltd. v. Nashua Corp.*,
   947 F. Supp. 21 (D.N.H. 1996)..................................................................................................7

## STATUTES

Fed. R. Civ. P. 8 ...........................................................................................................................2

Fed. R. Civ. P. 15 .........................................................................................................................7

Monsanto seeks leave to file an amended answer and counterclaims to Syngenta's Third Amended Complaint in order to clarify that Monsanto's claim for tortious interference with contract is directed towards **both** the Garst and Golden Harvest GA21 seed license agreements.

## NATURE AND STAGE OF THE PROCEEDINGS

Monsanto brought the lead case in this suit, C.A. No. 04-305 SLR (the "Shah Action"), on May 12, 2004, alleging that Defendants Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc.'s GA21 corn products infringe Monsanto's U.S. Patent No. 4,940,835 (the "Shah Patent"). The Northern District of Illinois transferred to this Court case, C.A. No. 05-355 SLR, (the "Lundquist Action") in which DeKalb asserted that Syngenta's GA21 corn products infringe the '880 and '863 patents (the "Lundquist Patents"). That case was consolidated with the lead case by this Court's Order dated August 23, 2005 (the "Patent Infringement Action"). On July 28, 2004, Syngenta brought this antitrust suit alleging, in relevant part, various violations of the Sherman Act and that Monsanto had engaged in sham patent litigation by asserting its claims of patent infringement against Syngenta and others.

Syngenta amended it complaint on September 14, 2004, and then filed a second amended complaint on September 9, 2005. On November 8, 2006, the Court stayed this action pending review of the Court's order granting summary judgment in the patent case. That order also granted Syngenta's request to file a third amended complaint so that Syngenta could drop its foundation seed claim. Syngenta filed its third amended complaint on November 14, 2006, while the case was stayed. Monsanto first asserted counterclaims, with leave of the Court, on July 27, 2005, and then Monsanto filed its answer and counterclaims to Syngenta's second amended complaint on September 23, 2005.

Fact and expert discovery for this case are closed, and the case is set for trial to begin on June 2, 2008.

## SUMMARY OF ARGUMENT

In its *Daubert* motion (filed after the close of discovery), Syngenta has argued for the first time that Monsanto limited its tortious interference counterclaim to encompass only Syngenta's acts relating to Garst's GA21 seed license agreement with Monsanto, but not Golden Harvest's seed license agreement. Syngenta's pretrial filing also seeks to preclude Monsanto from presenting evidence on tortious interference with the Golden Harvest seed license agreement on the very same ground. By this motion, Monsanto seeks leave to amend its Answer and Counterclaims to Syngenta's Second Amended Antitrust Complaint (D.I. 138) ("Counterclaims") to clarify what has always been the case – that Monsanto's counterclaims do reach Syngenta's tortious interference with ***both*** the Garst and Golden Harvest seed license agreements. The motion should be granted on the following grounds:

1.    Monsanto's existing counterclaims adequately plead that Sygenta's tortious interference included ***both*** the Garst and Golden Harvest seed license agreements. Syngenta is focusing on a technical deficiency in the allegations in paragraphs 77 and 78, relating to the legal theory, rather than the overall factual allegations of the Counterclaims. Those factual allegations adequately plead facts going to Syngenta's tortious interference with ***both*** the Grast and Golden Harvest contracts, satisfying the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. In this regard, the Third Circuit has held that a pleading states a claim if "the ***material facts*** as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 125 (3d Cir. 1998) (emphasis added).

2

2.      Monsanto seeks leave to amend its Counterclaims to clarify that it seeks relief for Syngenta's tortious interference with both its Garst and Golden Harvest license agreements. The Third Circuit has repeatedly held that leave to clarify the relief sought by a party should be granted. *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 614-615 (3d Cir. 1987); *Heyl & Patterson Int'l v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

3.      To the extent the Court finds that Monsanto failed to adequately plead Syngenta's tortious interference with Monsanto's contract with Golden Harvest, Monsanto's proposed amendment is proper because it conforms the pleading to the evidence adduced in discovery. During the related patent case, and as part of Monsanto's counterclaims, the parties have engaged in extensive discovery over the facts establishing Syngenta's tortious interference with the Golden Harvest contract – Golden Harvest's transfer of Monsanto-sourced GA21 material to Syngenta and whether that transfer violated Monsanto's license agreement with Golden Harvest.

4.      The parties engaged in discovery about whether Golden Harvest transferred any GA21 material to Syngenta. Monsanto's written document requests specifically asked for documents relating to any transfers of GA21 between Golden Harvest and Syngenta. Monsanto also issued interrogatories requesting information about the source of Syngenta's GA21 material.

5.      The parties also engaged in discovery about whether Syngenta caused Golden Harvest to breach its license agreement with Monsanto by transferring GA21 material. Monsanto twice deposed the head of Golden Harvest's operations about the Golden Harvest agreement and deposed Syngenta's in-house counsel about his knowledge of that agreement. In addition, it deposed a corporate officer of Syngenta relating to the agreement, and a Monsanto scientist about whether Syngenta's GA21 material came from Monsanto via Golden Harvest. Monsanto also addressed Syngenta's tortious interference with the Golden Harvest license

3

agreement in its expert report. All of that testimony concerned whether Sygnenta tortiously interfered with the Golden Harvest GA21 license agreement. Monsanto's expert proffered a damage study that includes damages going to the interference with the Golden Harvest contract. Syngenta's expert filed a rebuttal report addressing those damages allegedly suffered by Monsanto. In short, the facts supporting Monsanto's claim that Sygnenta tortiously interfered with the Golden Harvest contract have been at issue all through discovery in this case. Accordingly, Monsanto's motion to amend should be granted. *See, e.g., Coventry v. United States Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988); *Heyl & Patterson Int'l*, 663 F.2d at 426 (allowing amendment to conform the relief requested to the evidence adduced during discovery).

6.      The Supreme Court has held "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave [to amend] should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). None of these factors require that the Court depart from the Federal Rules' policy of liberally granting leave to amend.

## STATEMENT OF FACTS

### A.      Monsanto's Existing Allegations Relating To Syngenta's Tortious Interference With Its Golden Harvest Contract

On September 23, 2005, Monsanto filed its answer to Syngenta's Second Amended Complaint and asserted counterclaims. (D.I. 138 – Counterclaims).[1] Monsanto asserted counterclaims against Syngenta for reverse passing off and false advertising under the Lanham

---

[1] The Third Amended Complaint added no new allegations. Thus, Monsanto relied on its previous answer. *See La Gorga v. Kroger Co.*, 407 F.2d 671, 673 (3d Cir. 1969) (noting that when amended complaint added no new substantive allegations, no amended responsive pleading is required). A copy of Monsanto's Answer and Counterclaims is attached as Exhibit 1.

Act, deceptive trade practices under Delaware statute, and tortious interference with Monsanto's contractual relations.  (D.I. 138 – Counterclaims ¶¶ 62-80).  Syngenta, Garst and Golden Harvest were all named as counter-defendants.

Monsanto based all of its counterclaims on the same factual allegations, which are virtually congruous for ***both*** Garst and Golden Harvest:

- In 1998, Monsanto entered into license agreements with both Garst and Golden Harvest.  (D.I. 138 – Answer and Counterclaims ¶¶ 26, 32).



- Monsanto instructed its licensees to cease GA21 production in 2003, and to sell all of their GA21 inventory by June 28, 2005.  (*Id.* ¶ 41).[2]

- Syngenta knew of Monsanto's GA21 license agreements and the restrictions that they contained.  (*Id.* ¶ 43).

---

[2]  Monsanto initially requested that licensees stop selling GA21 by February 28, 2005, but later allowed an extension of the date of up to four months.

- In May 2004, Syngenta announced that it would acquire Garst, and in June 2004, announced that it would acquire Golden Harvest. (*Id.* ¶¶ 44-45).

- At the same time of the announcement of its Garst acquisition, Syngenta also announced that it intended to commercialize GA21. (D.I. 138 – Answer and Counterclaims ¶ 52).

- 

- Golden Harvest and Garst also introduced hybrid seed varieties containing the GA21 event. (*Id.* ¶¶ 53, 56-57).

- 

As set forth in greater detail below, the parties engaged in extensive fact and expert discovery directly related to the above allegations of tortious interference with the Golden Harvest seed license agreement.

## B.    Syngenta Raises an Objection During the *Daubert* Briefing

On October 13, 2006, Syngenta moved to exclude the expert report and testimony of Monsanto's expert witness, Dr. Latham. (D.I. 504 – Motion to Exclude the Expert Report and Testimony of Dr. Latham). In that motion, Syngenta argued for the first time that Monsanto had not alleged a counterclaim for tortious interference with the Golden Harvest GA21 license agreement. (D.I. 504 – Motion to Exclude the Expert Report of Dr. Latham at 2, 6-11).

Syngenta asserts that because Monsanto referenced Garst but not Golden Harvest in two paragraphs under Count IV, Monsanto waived its claim for tortious interference with the Golden Harvest GA21 license agreement. *Id.* In its opposition to the Motion to Exclude, Monsanto disputed that it limited its tortious interference claims to the Garst GA21 license agreement. (D.I. 516 – Opposition to the Motion to Exclude Dr. Latham).[3]

## ARGUMENT

Rule 15(a) of the Federal Rules of Civil Procedure provides that, in deciding a motion for leave to amend a pleading, "courts should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). In determining whether leave is warranted under Rule 15(a), courts consider factors such as "undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment." *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir. 1988) (citing *Foman,* 371 U.S. at 182; *see also Agere Systems Guardian, Corp. v. Proxim, Inc.,* 190 F. Supp. 2d 726, 732 (D. Del. 2002). Each of these factors weighs in favor of granting leave to amend Monsanto's counterclaims.

The Federal Rules of Civil Procedure favor allowing amendment to the pleadings at any time up to, and even during trial. *See, e.g.,* Fed. R. Civ. P. 15(a)-(c); *Bernback v. Greco,* 69 Fed. Appx. 98, 103 (3d Cir. 2003) (amendment made during trial was proper where opposing party was on notice of claims); *Ricoh Co., Ltd. v. Nashua Corp.,* 947 F. Supp. 21, 25 (D.N.H. 1996)

---

[3] The parties had not completed briefing on that motion when the Court denied it, without prejudice to renew, as part of staying this action. (D.I. 522 – Order at 2-3). The parties refiled their motions, including Syngenta's motion to exclude Dr. Latham, on February 26, 2008, for which briefing was only recently completed. (D.I. 545 – Renewed Motion to Exclude the Expert Report and Testimony of Dr. Latham; D.I. 579 – Reply Brief in Support of Syngenta's Motion to Exclude Dr. Latham, filed May 2, 2008).

(no prejudice to defendant in allowing corporate plaintiff to amend complaint midway through trial when defendant was aware of amendment's significance to lawsuit prior to trial).

## I.    MONSANTO HAS ALREADY STATED A COUNTERCLAIM FOR TORTIOUS INTERFERENCE WITH THE GOLDEN HARVEST AGREEMENT

### A.    Monsanto's Existing Counterclaims Adequately Plead a Claim of Tortious  Interference with the Golden Harvest Contract

Syngenta is incorrect that Monsanto limited its counterclaim to Syngenta's tortious interference with the Garst GA21 license agreement.  The Federal Rules of Civil Procedure require only that the alleged facts provide "fair notice of the transaction" and "sets forth the material points necessary to sustain recovery."  *Menkowitz,* 154 F.3d at 124.  In deciding whether a pleading states a claim, a court should look to the *facts* alleged in the pleading, not how the party characterizes its claim.  *Id.*  The alleged facts clearly state a claim.

Monsanto's factual allegations give Syngenta ample notice that Monsanto is claiming that Syngenta tortiously interfered with the Golden Harvest GA21 license agreement.  Under Delaware law, establishing tortious interference requires:

(i)     "the existence of a valid contract;

(ii)    the interferer's knowledge of the contract;

(iii)   intentional interference that induces or causes a breach of the contract; and

(iv)    damages."

*American Homepatient, Inc. v. Collier*, C.A. No. 274-N, 2006 WL 1134170, at *4 (Del. Ch. Apr. 19, 2006).  Monsanto's counterclaim alleges each of these elements.

First, Monsanto alleged the existence of a valid agreement to license GA21 corn, entered into by the Golden Harvest Seed Company.  (D.I. 138 – Answer and Counterclaims ¶ 32).

Monsanto also identified and reproduced within the Counterclaim the relevant provisions of the agreement, as well as the agreement itself (MGA 0058307-44). *See id.* ¶¶ 33-35.

Second, after identifying the contract and its relevant provisions, Monsanto specifically alleged the second element of tortious interference – namely, that Syngenta knew of Monsanto's GA21 license agreements: "In its Amended Antitrust Complaint, Syngenta admits express knowledge of Monsanto's contractual relationships with others under the GA21 Agreement." (*Id.* ¶ 43).

Third, the counterclaims allege that Syngenta intentionally interfered with Golden Harvest's license agreement and caused Golden Harvest to breach that agreement:

> 46. . . . [O]n June 25, 2004, Syngenta AG announced its intent to "complet[e] our strategy to develop critical mass in the US corn and soybean seeds market, complementing our leading position in crop protection." To that end, on August 2, 2004, Syngenta AG announced completion of its acquisition of **Golden Harvest Seeds**.

> 47. At the time of their acquisition, both Garst and the **Golden Harvest** Companies were licensees of the GA21 event Roundup Ready® corn. However, Syngenta never independently obtained a GA21 license from Monsanto and had no independent right to develop, market, sell or license any product containing the GA21 event.

> 48. Upon information and belief, Garst and the **Golden Harvest** Companies' source of germplasm containing the GA21 event was Monsanto and neither Garst nor the **Golden Harvest** Companies have obtained any germplasm with the GA21 event from any other trait provider.

> * * *

> 54 The **Golden Harvest Companies** also are improperly marketing, selling and licensing corn seed containing Monsanto's GA21 event under the trademark "Agrisure GT Advantage."

> 55. All glyphosate-tolerant corn-seed products sold by Syngenta, **Golden Harvest**, and others under the Agrisure trademark improperly and unlawfully incorporate Monsanto's GA21 technology.

> 56. ████████████████████████████████████████

9



57.

(D.I. 138 – Answer and Counterclaims ¶¶ 46-48, 54-57) (emphasis added).

Finally, Monsanto alleged that it suffered damages due to Syngenta's conduct, the final element of a tortious interference claim. (D.I. 138 – Answer and Counterclaims ¶ 64).[4]

### B. Monsanto's Existing Counterclaims Satisfy the Notice Pleading Requirements of Rule 8

Despite these clear allegations, Syngenta alleges Monsanto failed to state a claim because it referenced Garst but not Golden Harvest in two paragraphs of the complaint. But it is the factual allegations, not how Monsanto characterizes them, that determines whether Monsanto has stated a claim for relief. *Menkowitz*, 154 F.3d at 123-24; *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 668 F. Supp. 906, 922 (D. Del. 1987). For example, in *Menkowitz*, the defendant moved to dismiss plaintiff's claim under the Rehabilitation Act because the plaintiff failed to allege that his disability was the "sole reason" for his dismissal. The Third Circuit agreed that the complaint lacked that specific allegation but it nevertheless reversed the district court's dismissal "[b]ased on [plaintiff's] recitation of the facts" in the complaint. *Menkowitz*, 154 F.3d at 124. The court

---

[4] Monsanto alleged these facts under the heading "The Roundup Ready Corn Seed License and Seed Services Agreement with the Golden Harvest Companies." (D.I. 138 – Answer and Counterclaims ¶¶ 32-39). That section immediately followed one entitled "The Roundup Ready Corn Seed License and Seed Services Agreement with Garst Seed Company" which contained nearly identical allegations about the Garst contract. (D.I. 138 – Answer and Counterclaims ¶¶ 26-31). The proximity and similarity of these sections to one another further demonstrate that Monsanto based its counterclaim on Syngenta's tortious interference with *both* agreements.

held that the alleged *facts* gave notice of a claim under the Rehabilitation Act despite the way the plaintiff had styled its claim.

Any perceived deficiencies resulted merely from "inartful pleading – the precise sort of pleading as a highly developed form of art that the federal rules sought to abandon." *Id.* Thus, the Third Circuit reinstated the claim. As in *Menkowitz*, Syngenta cannot deprive Monsanto of relief solely because Golden Harvest is not specifically mentioned in counterclaim Count IV.

### C.    Monsanto Should Be Permitted to Clarify Its Existing Claim

The Third Circuit has consistently held that leave to clarify the relief sought by a party should be granted. *J.E. Mamiye & Sons*, 813 F.2d at 614-615; *Heyl & Patterson Int'l*, 663 F.2d at 426. The amendment sought here only seeks to clarify what the parties already know – that Monsanto alleges that Syngenta tortiously interfered with the both the Garst and Golden Harvest agreements.

### II.    THE COUNTERCLAIMS SHOULD BE CONFORMED TO THE EXTENSIVE DISCOVERY RECORD IN THIS CASE OF SYNGENTA'S INTERFERENCE WITH THE GOLDEN HARVEST AGREEMENT

The Third Circuit has repeatedly held that a court should permit an amendment to conform the relief requested in a pleading to the evidence adduced during discovery. *See, e.g., Heyl & Patterson Int'l*, 663 F.2d at 426. The liberal amendment policy of the Federal Rules of Civil Procedure is intended to "facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Thus, when the facts revealed in discovery support a cause of action, a court should allow "rigid adherence to formalities and technicalities [to] give way before the policies underlying Rule 15." *Heyl & Patterson Int'l*, 663 F.2d at 426. To the extent the Court deems that the existing Counterclaims do not provide Syngenta with adequate notice of the tortious

interference claim, leave should be granted to conform the Counterclaims to the record in this case.

Monsanto and Syngenta engaged in extensive fact discovery regarding the tortious inference with the Golden Harvest license agreement. Monsanto issued requests specifically targeted to any documents relating to any transfer of GA21 material by Golden Harvest to or from Syngenta. (Monsanto's First Request for Production of Documents, Request No. 44).[5] In the patent case, Monsanto also issued requests for information about Syngenta's source of its GA21. (DEKALB's Second Set of Interrogatories, Interrogatory No. 13; DEKALB's Third Set of Interrogatories, Interrogatory No. 14).[6]

Monsanto twice deposed Edward Robinson, the operating head of Golden Harvest. (Robinson 8/17/2005 Dep. Tr. 53:4-7).[7] Robinson ████████████████████████ ████████████████████████████████████████████████ ████████████████. (Robinson 6/16/2006 Dep. Tr. at 205:5 – 206:19).[8] Monsanto then questioned Robinson about the agreement provisions identified in Monsanto's tortious interference counterclaims, and whether Golden Harvest could transfer its Monsanto-sourced GA21 corn material to Syngenta under those provisions. (Robinson 6/16/2006 Dep. Tr. at 205:6 – 210:19). Robinson revealed that ██████████████████████████████ ████████████████████████████. (Robinson 6/16/2006 Dep. Tr. at 196:17 – 203:13). ████████████████████████████████████. *Id.*

---

[5] Monsanto's First Request for Documents is attached as Exhibit 2.

[6] DEKALB's Second Set of Interrogatories and DEKALB's Third Set of Interrogatories are attached as Exhibits 3 and 4, respectively.

[7] The relevant portions of Robinson's transcript from the patent case are attached as Exhibit 5.

[8] The relevant portions of Robinson's transcript from the antitrust case are attached as Exhibit 6.

Despite Robinson's initial refusal, Syngenta continued to seek Golden Harvest's

Monsanto-sourced GA21. ███████████████████████████████████████

████████████████████████████████████. (Robinson 6/16/2006 Dep.

Tr. at  48:10 – 16). ████████████████████████████████████████████

███████. (Robinson 6/16/2006 Dep. Tr. at 227:15 – 228:18).

Similarly, other Syngenta executives testified about Syngenta's conduct with respect to

the Golden Harvest GA21 license agreement.  For example, Monsanto questioned Tom Klevorn

about ████████████████████████████████████████████████████

███████████████████. (Klevorn Dep. Tr. at 316:13- 319:21).[9]  Syngenta's in-house

counsel, Ed Resler, testified about ████████████████████████████████.

(Resler Dep. Tr. at 32-33, 71-75).[10]  Finally, a Syngenta scientist testified that ████████

██████████████████████████████████. (Riley Dep. Tr. at 95:1-15).[11]

Syngenta has identified Messrs. Robinson, Klevorn, Riley, and Resler on its witness list.

In addition to deposition testimony, other evidence adduced in discovery supports

Monsanto asserting a counterclaim against Syngenta for tortiously interfering with the Golden

Harvest license agreement.  Dr. Latham's report revealed that Monsanto's theory of recovery on

its counterclaims included Syngenta's tortious interference with the Golden Harvest license

agreement.  According to the expert report, Dr. Latham based his damages calculations on the

assumption that:

---

[9] The relevant portions of Klevorn's transcript are attached as Exhibit 7.

[10] The relevant portions of Resler's transcript are attached as Exhibit 8.

[11] The relevant portions of Riley's transcript are attached as Exhibit 9.



- ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆;

- ▆▆▆▆▆▆▆▆; and

- ▆▆▆▆▆▆▆▆▆▆▆▆.

(Latham Rep. 4).[12] Dr. Latham also testified that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. (Latham 46:3-23).[13] Dr. Latham further identified ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. (Latham Rep. 15-16).

Despite Syngenta's current interpretation of Monsanto's counterclaim, Syngenta's rebuttal expert report nowhere disputes or otherwise questions that Monsanto has asserted a claim arising out of Syngenta's interference with the Golden Harvest license agreement. In fact, Dr. Gilbert "▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆." (Gilbert Rebuttal Rep. 2) (emphasis added).[14] When Dr. Gilbert re-calculated Dr. Latham's figures, he ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. (Gilbert Rebuttal Rep. at p.15, Table 5; p.16, Table 6; p.18, Table 8; p.19, Table 9). Only months later did Syngenta argue that

---

[12] The relevant portions of Dr. Latham's transcript are attached as Exhibit 10.

[13] The cited pages of Dr. Latham's expert report are attached as Exhibit 11.

[14] The cited pages from Dr. Gilbert's rebuttal expert report are attached as Exhibit 12.

Monsanto had in fact not properly pleaded tortious interference with the Golden Harvest agreement.

## III.    THERE IS NO UNDUE PREJUDICE TO SYNGENTA BY AMENDING THE COUNTERCLAIMS

In deciding a motion to amend, "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Dole Fresh Fruit Co. v. Del. Cold Storage Inc.*, 961 F. Supp. 676, 686 (D. Del. 1997) (quoting *Cornell & Co. v. Occupational Safety & Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978)). Monsanto's amendment will not cause any undue prejudice to Syngenta.

Syngenta has known since the filing of Monsanto's original Counterclaim on July 27, 2005, that Monsanto alleged that Syngenta tortiously interfered with both the Garst and Golden Harvest agreements. Extensive discovery was conducted here. The allegations were addressed in the parties' expert reports, including the issue of damages. Evidence relating to these allegations are included in the pretrial pleadings, including extensive deposition designations, counter-designations and exhibits. Syngenta cannot claim in good faith that it has been deprived of the ability to engage in fact or expert discovery on this issue. Nor can it in good faith claim that it is not prepared to defend these allegations.

This Court has previously permitted amendments that raise no new facts or issues, even if that amendment is near trial. *Dole Fresh Fruit Co. v. Delaware Cold Storage, Inc.*, 961 F. Supp. 676, 685-86 (D. Del. 1997). In *Dole Fresh Fruit*, Dole moved to add a claim for restitution even though the parties had already completed extensive discovery. *Id.* at 685. The Court permitted the amendment because the amendment raised no new issues of fact, the defendant would not have conducted its case any differently and, thus, suffered no prejudice. *Id.* at 685-86; *see also Coca-Cola Bottling Co.*, 668 F. Supp. at 933.

15

**IV.    MONSANTO HAS NOT UNDULY DELAYED IN BRINGING ITS MOTION TO AMEND**

Monsanto has not unduly delayed bringing its motion to amend. The mere passage of time does not require the Court to deny a motion to amend. *See Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Rather, the passage of time requires denying amendment of pleadings only when that delay somehow prejudices the other party. *Id.* at 868. As noted above, Syngenta will not suffer any prejudice from Monsanto's proposed amendment.

Moreover, Monsanto did not unduly delay in moving to amend. Syngenta first claimed that Monsanto limited its tortious interference to the Garst contract in its *Daubert* motion to exclude Dr. Latham. (D.I. 504 – Motion to Exclude the Expert Report and Testimony of Dr. Latham). The parties were briefing that motion when the case was stayed, and the parties only recently refiled those motions. (D.I. 545 – Renewed Motion to Exclude the Expert Report and Testimony of Dr. Latham). This Court, and the Third Circuit, have repeatedly held much longer delays do not justify denying a motion to amend. *See, e.g., Coca-Cola Bottling Co.*, 668 F. Supp. at 922 (finding six and one half year delay was not reason to deny amendment where the opposing party suffered no prejudice). Finally, there is no evidence of bad faith or an attempt to spring an unanticipated counterclaim on its opponent at the eleventh hour on the part of Monsanto.

**V.    THE AMENDMENT IS NOT FUTILE**

A final, yet likewise inapplicable, avenue for a court to reject a requested amendment is if that amendment would be futile. As described above, the evidence produced in discovery shows that the facts alleged in Monsanto's amended counterclaim have merit.

## CONCLUSION

For the reasons stated above, Monsanto respectfully requests that the Court permit its

Motion to Amend its Answer and Counterclaims.


Dated: May 12, 2008.

                                        Respectfully Submitted,

                                        POTTER ANDERSON & CORROON, LLP

OF COUNSEL:

Peter E. Moll                           By:   /s/ Richard L. Horwitz
John J. Rosenthal                             Richard L. Horwitz (#2246)
HOWREY LLP                                    David E. Moore (#3983)
1299 Pennsylvania Ave., N.W.                  Hercules Plaza, 6th Floor
Washington, DC  20004                         1313 N. Market St.
(202) 783-0800                                Wilmington, DE 19801
(202) 383-6610 facsimile                      (302) 984-6000
                                              (302) 658-1192 facsimile
Kenneth A. Letzler                            rhorwitz@potteranderson.com
Jonathan I. Gleklen                           dmoore@potteranderson.com
ARNOLD & PORTER LLP
555 12th Street, N.W.                   Attorney for MONSANTO COMPANY and
Washington, D.C. 20004                  MONSANTO TECHNOLOGY LLC
(202) 942-5000
(202) 942-5454 facsimile

Dated: May 12, 2008
Public Version Dated: May 19, 2008
865215 / 28128

17

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 19, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on May 19, 2008, the attached document was Electronically Mailed to the follow person(s):

John W. Shaw
Michele Sherretta Budicak
James L. Higgins
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
yshaw@ycst.com
mbudicak@ycst.com
jhiggins@ycst.com

Richard F. Schwed
Michael P. Mitchell
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022-6069
rschwed@shearman.com
michael.mitchell@shearman.com

          /s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com