THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MONSANTO COMPANY, *et al*, ) | |
| ) | C.A. No. 04-305-SLR |
| Plaintiffs, ) | C.A. No. 04-908-SLR |
| ) | (Consolidated) |
| v. ) | |
| ) | **PUBLIC VERSION** |
| SYNGENTA SEEDS, INC., *et al*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MONSANTO'S MOTION *IN LIMINE* TO EXCLUDE DAMAGES
TESTIMONY OF PLAINTIFFS' EXPERT RICHARD GILBERT**

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone (202) 783-0800

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Monsanto Company and
Monsanto Technology LLC*

Dated: May 13, 2008
Public Version Dated: May 20, 2008

# TABLE OF CONTENTS

Page(s)

ARGUMENT ........................................................................................................................2

I. DR. GILBERT'S "METHODOLGY" TO DETERMINE THE EXISTENCE AND AMOUNT OF ANTITRUST DAMAGES IS FUNDAMENTALLY FLAWED ...............................................................................3

   A. Unquestioning Reliance on Unsubstantiated *Pro Forma* Business Plans as the Basis for a Damage Analysis Fails the *Daubert* Standard ...................................................................................................3

   B. Established Precedent Requires the Exclusion of Dr. Gilbert's Fundamentally Flawed Damages Methodology .................................5

II. DR. GILBERT FAILED TO ESTABLISH A CAUSAL LINK BETWEEN THE ALLEGED DAMAGES AND THE ALLEGED ANTICOMPETITIVE CONDUCT ................................................................8

III. DR. GILBERT'S UNILATERAL INVENTION OF DATA POINTS AND MODIFICATION OF OTHER DATA LACKS FOUNDATION AND LEADS TO IMPERMISSIBLY INCONSISTENT RESULTS ..............10

   A. Dr. Gilbert's Analysis Subjectively and Intentionally Ignores Inconvenient Evidence ............................................................................10

   B. Dr. Gilbert Literally Invents New Data Points .....................................11

CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

## CASES:

*Advent Systems Ltd. v. Unisys Corp.*, 925 F.2d 670 (3d Cir. 1991) .................................... 5, 6

*Benjamin v. Peter's Farm Condominium Owners Ass'n.*, 820 F.2d 640 (3d Cir. 1987) ............ 5, 6

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000) .................................. 11

*Crawford v. SAP America, Inc.*, 147 Fed. Appx. 234,
   2005 WL 775802 (3d Cir. April 7, 2005) ........................................................................... 5

*Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993) ..................................................... 11

*Gumbs v. Int'l. Harvester, Inc.*, 718 F.2d 88 (3d Cir. 1983) ...................................................... 5

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ............................................... 2, 6

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) ......................................................................... 4

*JMJ Enterprises v. VIA Veneto Italian Ice, Inc.*, No. 97-CV-0652,
   1998 WL 175888 (E.D. Pa. Apr. 15, 1998) ..................................................................... 11

*McMahan Securities Co. L.P. v. FB Foods, Inc.*,
   2007 WL 704916 (M.D. Fla. Mar. 2, 2007) ..................................................................... 7

*Nat'l Controls Corp. v. Nat'l Semiconductor Corp.*, 833 F.2d 491 (3d Cir. 1987) ................... 8, 9

*Oiness v. Walgreen Co.*, 88 F.3d 1025 (Fed. Cir. 1996) ................................................. 4, 11, 12

*Player v. Motiva Ent.*, 240 Fed. Appx. 513, 2007 WL 2020086 (3d Cir. July 13, 2007) ............. 4

*Sun Ins. Marketing Network, Inc. v. AIG Life Ins. Co.*,
   254 F. Supp. 2d 1239 (M.D. Fla. 2003) ............................................................................ 7

*Target Mkt. Publishing, Inc. v. Advo, Inc.*, 136 F.3d 1139 (7th Cir. 1998) ................................ 6

## RULES:

FED. R. EVID. 702 ...................................................................................................................... 4

Contrary to Syngenta's contention, Monsanto is not attacking the expert credentials of Dr. Gilbert. Nor is Monsanto's challenge to Dr. Gilbert's opinion on antitrust damages directed to the weight it should be accorded. Rather, Monsanto questions the fundamental admissibility of his opinion under *Daubert* and its progeny, which require trial courts to rigorously review an expert's opinion for reliability. Syngenta thus errs in its assertion that Monsanto's challenge "is exactly the type that is *not* appropriate for a *Daubert* motion." (Opp. Br. at 1). Syngenta ignores the gate-keeping role of the Court and attempts to paint the instant Motion as a mere factual dispute in which the sole relevant issues consist of the believability and weight of the opinion.

Dr. Gilbert's nine-page damages section is insufficient insofar as its underlying methodology is unreliable, untestable, and irreproducible, such that it will not aid the fact-finder in reaching a decision on what antitrust damages, if any, Syngenta has suffered. Contrary to Syngenta's assertion, Gilbert's methodology is anything but a traditional or accepted "but for" damage analysis. To the contrary, Gilbert's opinion is not predicated on any accepted scientific, economic, accounting, or other type of methodology. Rather, Dr. Gilbert:



1. ⬛;
2. ⬛;
3. ⬛; and
4. ⬛.

Dr. Gilbert never conducted a scintilla of qualitative or quantitative work to determine the accuracy or reliability ⬛ ⬛. Instead, Gilbert ⬛ ⬛

██████████████████████████████████████. Importantly, Dr. Gilbert merely assumed that the alleged anticompetitive conduct was casually connected to the alleged injury suffered by Syngenta. He did not determine what, if any, of the alleged lost sales may be attributable to lawful conduct: "████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Moreover, he failed to disaggregate the damages attributable to the types of alleged anticompetitive conduct or the antitrust counts. In short, he left the jury to parse out for itself what, if any, of the alleged damages might be attributable to the acts which a jury would find to constitution a Sherman Act violation. Finally, Dr. Gilbert's invention of additional data and adjustments are not factually or economically supported.

## ARGUMENT

The Third Circuit has enumerated the following *Daubert* factors for determining admissibility of expert testimony:

> (1) whether a method consists of a ***testable hypothesis***; (2) whether the method has been subject to peer review; (3) the ***known or potential rate of error***; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994) (emphasis added). The methodology pursued by Dr. Gilbert in his determination of the existence of and amount of antitrust damages fails to satisfy these factors and, therefore, should be excluded at trial.

I. **DR. GILBERT'S "METHODOLGY" TO DETERMINE THE EXISTENCE AND AMOUNT OF ANTITRUST DAMAGES IS FUNDAMENTALLY FLAWED**

   A. **Unquestioning Reliance on Unsubstantiated *Pro Forma* Business Plans as the Basis for a Damage Analysis Fails the *Daubert* Standard**

Syngenta attempts to present Dr. Gilbert's "methodology" as a traditional "but-for" analysis. This hardly describes what Dr. Gilbert did – or more accurately, what he did not do. It is undisputed that Dr. Gilbert's damages ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████.

Dr. Gilbert's reliance on ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████

Importantly, Dr. Gilbert assumed that ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

3

██████████████████████████████████████████████
██████████████████████████████████████. As a result, were Dr. Gilbert allowed to testify on the issue of damages, "[i]nstead of presenting evidence of actual sales combined with reliable economic analysis of demand, supply, and price over time, [Dr. Gilbert] invites the jury to engage in rapt speculation." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996) (reversing lost-profits award due to flawed expert opinion based "on insubstantial evidence").

A critique based on wholly unfounded assumptions that have no analytical support does not merely go to the weight to be accorded to such expert testimony, but rather constitutes a classic *Daubert* and F.R.E. 702 challenge:

> Although *Daubert* … analysis does not preclude testimony merely because it may be based upon an assumption, ***the supporting assumption must be sufficiently grounded in sound methodology and reasoning*** to allow the conclusion it supports to clear the reliability hurdle. Assumption-based conclusions that do not meet that test can hardly be relied upon as 'good science.'

*In re TMI Litig.*, 193 F.3d 613, 677 (3d Cir. 1999) (emphasis added); F.R.E. 702 ("expert testimony must be "based upon *sufficient* facts or data," and the expert witness must have "applied the principles and methods reliably *to the facts of the case*") (emphasis added); *see also Player v. Motiva Ent.*, 240 Fed. Appx. 513, 519, 2007 WL 2020086, **5 (3d Cir. July 13, 2007) (requiring opinions to be the "'product of reliable principles and methods.'").

Dr. Gilbert abdicated his responsibility as an expert and, instead, blindly accepted ██████████████████████████████████████████████
██████████████████████████████████████████████.

Dr. Gilbert conceded to these facts at his deposition. (Gilbert Report at 127). Dr. Gilbert did not

4

"ensur[e] that his damages analysis reflected economic *reality*," but rather "expectations," conjecture and speculation. (Opp. Br. at 15; emphasis added).

### B. Established Precedent Requires the Exclusion of Dr. Gilbert's Fundamentally Flawed Damages Methodology

"[P]redicting the results of business dealings that might have, but never did, occur is of course a difficult matter of proof." *Advent Systems Ltd. v. Unisys Corp.*, 925 F.2d 670, 681 (3d Cir. 1991). In this regard, the Third Circuit and its District Courts have not hesitated to strike expert damage opinions predicated on flawed methodologies or unsupported factual bases. *See id.* at 682 ("We ... have serious reservations about the validity of expert testimony based on prior predictions of sales for a given period when actual performance data for that same time span are available."). *See also Williams v. Rene*, 72 F.3d 1096, 1102 (3d Cir. 1995) (excluding damages expert where underlying assumption was "unsupported and speculative"); *Crawford v. SAP America, Inc.*, 147 Fed. Appx. 234, 239, 2005 WL 775802, **4 (3d Cir. April 7, 2005) (rejecting expert's damages opinion based on hypothetical facts in favor of data reflecting actual market conditions).

In reviewing comparable *Daubert* challenges to expert testimony of lost-earnings capacity, the Third Circuit has consistently held that "[a]lthough mathematical exactness is not required, [expert] testimony of post-injury earning capacity must be based upon the proper factual foundation." *Benjamin v. Peter's Farm Condominium Owners Ass'n.*, 820 F.2d 640, 643 (3d Cir. 1987). Put another way, an "expert's testimony [regarding damages due to lower future earnings] must be accompanied by a sufficient factual foundation before it can be submitted to the jury." *Gumbs v. Int'l. Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir. 1983). In both *Benjamin* and *Gumbs*, the Court of Appeals found the experts' lost future earnings opinions insufficient to be presented to the jury, as their factual basis was inadequately speculative. Akin to Dr. Gilbert's

5

reliance ████████████████████████████████████████████
████████████████████████████████, the unsuccessful expert witnesses in these cases likewise improperly relied entirely on the plaintiffs' personal and biased assessments of their situation. *See, e.g., Benjamin*, 820 F.2d at 642-43 (conclusion based on such biased and unsupported facts is a "castle made of sand").

Dr. Gilbert's decision to rely upon ████████████████████████████ violates the precepts of *Daubert*, which instruct that an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *In re Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 590 (1993)). Here, Dr. Gilbert's "[r]eliance on [Syngenta's] personal belief as to [its] capabilities was improper because [Syngenta's] belief was merely speculative. The figure derived from that reliance was thus without proper foundation and insufficient for a jury properly to assess [Syngenta's] damages." *Benjamin*, 820 F.2d at 643; *see also Target Mkt. Publishing, Inc. v. Advo, Inc.*, 136 F.3d 1139, 1144 (7th Cir. 1998) (holding that, at some level, an expert's opinion must be founded upon the known as opposed to the expert's belief).

The factual grounding of economic projections classically takes the form of historic company or industry data, which are crucially absent from Dr. Gilbert's report. In an analogous case, the Third Circuit rejected expert testimony and expressed "serious reservations about the validity of the expert testimony based on prior predictions of sales for a given period when actual performance data for that same time span are available." *Advent Sys.*, 925 F.2d at 682. Here, while company-specific 2004 data is unavailable for GLG due to its literal non-existence at that time, actual industry data readily exists for this period. Indeed, Dr. Gilbert was in possession of

Monsanto's full financial data and business projections and had access to the industry-standard Doane data, on which he failed to rely in estimating damages. His *sole* baseline ▓▓▓▓▓▓ ▓▓▓▓▓▓, whose speculative underlying assumptions he failed to analyze by any accepted method or using any recognized criteria that would render his reliance on the plan verifiable.

In a recent decision on point, a federal District Court excluded an expert's opinion prefaced upon the plaintiff's "April 2004 Business Plan [whose] uncertain and speculative nature of assumptions..., particularly the five year future sales projections, undermine [the expert's] later methodology and opinions regarding the future lost profits." *McMahan Securities Co. L.P. v. FB Foods, Inc.*, 2007 WL 704916, *3 (M.D. Fla. Mar. 2, 2007). Similar to the case at bar, the plaintiff's expert in *McMahan* likewise employed a subtraction method, simply presuming the plaintiff's subsequently lowered business forecasts to be the result of the defendant's conduct. The court rejected this speculative methodology, holding:

> The July 2004 Business Plan contained reduced financial projections. Yet, despite the relatively short time frame between the two Business Plans, it does not appear that FBF's damages experts ever factored in the apparent inaccuracies of the *pro forma* sales projections for FBF's existing Funny Meal line, as contained in the April 2004 Business Plan versus the subsequent July 2004 Business Plan, when opining about the five year sales projections for the never launched Adult Brand. ...
>
> [I]t is clear in hindsight that the April 2004 Business Plan was a "best case scenario prediction" for the prospective launch of the Adult Brand and cannot support FBF's lost profits claim.

*McMahan*, 2007 WL 704916 at *3-5.[1]

---

[1] Under similar factual circumstances, the same court struck the damages opinion of an expert witness who had purported to calculate the plaintiff's future income based on certain assumptions made upon information obtained from his client. The court held that the expert's factually uncorroborated methodology was "insufficient to support the valuation of a business." *Sun Ins. Marketing Network, Inc. v. AIG Life Ins. Co.*, 254 F. Supp. 2d 1239, 1245 (M.D. Fla. 2003) (excluding expert's opinion with respect to future lost income as too speculative, applying Delaware law). Akin to Dr. Gilbert's reliance ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7

## II. DR. GILBERT FAILED TO ESTABLISH A CAUSAL LINK BETWEEN THE ALLEGED DAMAGES AND THE ALLEGED ANTICOMPETITIVE CONDUCT

"Damages sought must be a proximate consequence of the breach, not merely remote or possible. ... The element of causation defines the range of socially and economically desirable recovery and requires not only 'but for' causation in fact but also that the conduct be a substantial factor in bringing about the harm." *Nat'l Controls Corp. v. Nat'l Semiconductor Corp.*, 833 F.2d 491, 496 (3d Cir. 1987) (emphasis added). Dr. Gilbert's damages opinion and its underlying assumption of causation fail this essential requirement.

In particular, Dr. Gilbert simply takes for granted, without providing any reasoning therefor, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dr. Gilbert's wholesale assumption of causation fails to take into account any of the usual course-of-business revisions that a start-up business would have made to its financial projections, especially after being in existence for less than a year and realizing that its initial predictions about its sales capabilities, marketing strategies, or production capacities were simply flawed – wholly irrespective of Monsanto or its conduct. This absence of any support for presuming the existence of the vital *causative* link between Monsanto's conduct and any damages necessitate the exclusion of Syngenta's expert opinion on damages.

---

▮▮▮▮▮▮▮▮▮▮, *Sun*'s expert also based his opinion on marketing estimates provided by his client. The court criticized the fatal shortcoming of this approach: "This case is a good example of the *unreliability inherent in basing an opinion on a marketing estimate*. These estimates *were for a new product that AIG did not even own at the time*. ... AIG projected what profits it might make given certain assumptions that had not yet, and might never, come to pass. ... Thus, it is not reasonable to rely upon its marketing plan as a projection of actual profits." *Id.* at 1249 (emphasis added).

8

By no means can all adverse effects on GLG's performance that occurred since its first tentative business forecast be attributed to conduct that allegedly took place in years prior. Dr. Gilbert provides no support whatsoever for his sweeping assumption. Indeed, he acknowledges his inability to rule out any extraneous factors:

Q. [2]

In light of the absolute requirement that proof of causation be shown by more than "merely remote or possible" conjecture, *see Nat'l. Controls Corp.*, 833 F.2d at 496, and given the fatal shortcomings of Dr. Gilbert's presumptive hypothesis of causative impact, this Court should exercise its authority under *Daubert* and strike his opinion testimony on damages.

Importantly, Dr. Gilbert also fails to disaggregate the alleged damages to the various alleged anticompetitive conduct. Should the jury find that some of the conduct is violative of the antitrust laws but not others, it is left with no means to parse out the speculative damage figure to the various types of alleged conduct. For example, Dr. Gilbert lumps together damages attributable to the alleged sham patent litigations with the alleged exclusionary licensing practices. He does not attempt to disaggregate the damages to the conduct much less opine on the causal connection of the violation to the damages.

### III. DR. GILBERT'S UNILATERAL INVENTION OF DATA POINTS AND MODIFICATION OF OTHER DATA LACKS FOUNDATION AND LEADS TO IMPERMISSIBLY INCONSISTENT RESULTS

Not only does Dr. Gilbert fail even to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," but he *invented* data points on which his ultimate calculation is based. He unilaterally made additional sales projections for future years that are not contained within *any* business documents, even biased or unproven ones ▮▮▮▮▮▮▮▮▮▮. Dr. Gilbert thereby inflates the underlying damages data *sua sponte*, notably without stating any basis for his assumptions. This procedure is unsound and the purest form of expert *ipse dixit*. Moreover, it results in fatally inconsistent conclusions reached on account of Dr. Gilbert's autonomous "adjustments," lacking any documentation whatsoever.

#### A. Dr. Gilbert's Analysis Subjectively and Intentionally Ignores Inconvenient Evidence

A touchstone of Syngenta's damages estimate is Dr. Gilbert's unfounded belief that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, Dr. Gilbert takes his steadfast insistence to the extreme and willfully ignores ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. According to Dr. Gilbert, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and he promptly proceeded to ignore the inconvenient data – data that would have reduced his damages estimate. He admits: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

By definition, Dr. Gilbert's subjective pick-and-choose approach can never be repeated by another expert, as it is wholly dependent upon his own evaluation of "what made sense" and what did not. Plainly contrary to what Syngenta claims in its brief, Dr. Gilbert's undue infusion of personal data preferences renders his opinion subject to precisely the same criticism the Eighth Circuit Court of Appeals levied at Concord Boat's expert: he simply "ignored inconvenient evidence." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000).

This particular shortcoming of Dr. Gilbert's methodology violates the requisite principle of consistency enunciated in *Daubert*. 509 U.S. at 590–91 n.9. It is also reminiscent of the critique found in *JMJ Enterprises v. VIA Veneto Italian Ice, Inc.*, No. 97-CV-0652, 1998 WL 175888 (E.D. Pa. Apr. 15, 1998), *aff'd* 178 F.3d 1279 (3d Cir. 1999), where the District Court concluded that the plaintiff was presenting its "unrealistic hopes through the mouth of an expert ... When examining reliability, the court asks whether the methods applied by an expert produce reasonably consistent results. A reasonable accountant ***does not report certain expenses, and choose to omit other, like expenses***. Such accounting practices do not produce consistent results. Further, an expert ***must be able to point to methods that he applied***." *Id.* at *10. Here, what "makes sense" or "doesn't make sense" to Dr. Gilbert is plainly an insufficiently rigorous yardstick to meet the *Daubert* criteria of "appropriate validation" and "good grounds." *Daubert*, 509 U.S. at 590. Unscientific guesswork such as Dr. Gilbert's unverifiable pick-and-choose method "adds vague estimation and gross extrapolation to unsupported presumption. At every step, this damages calculation is fraught with speculation." *Oiness*, 88 F.3d at 1029.

**B.  Dr. Gilbert Literally Invents New Data Points**

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. However, this did not deter Dr. Gilbert from calculating damages into the more distant future. According to his own account, ▬

11



The nature of this undocumented conversation plainly fails to meet the requisite level of factual reliability and intellectual rigor necessary under the law. It is precisely the type of "gross extrapolation" and wholly "unsupported presumption" criticized in *Oiness*. Notably, Dr. Gilbert never saw an actual business document containing these estimates. Rather, he simply ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.³ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

The rampant speculation inherent in Dr. Gilbert's damages opinion does not end there:



---

³

Gilbert Dep. at 327 (emphasis added).

That is, Dr. Gilbert did not merely rely on ████████████████████████ ████████████████████████████████. He decided to make additional adjustments and unilateral modifications to the already weak data he had. Arguably the most damning admission for *Daubert* purposes is the fact that Dr. Gilbert's ████████████ ████████████████ was ***not based on any methodology*** or calculation, but was rather a pure "judgment call" on his part ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████.

## CONCLUSION

For the foregoing reasons, Monsanto respectfully requests that the Court grant its motion to exclude Dr. Gilbert's speculative damages opinion.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004
Telephone (202) 783-0800

Dated:  May 13, 2008
Public Version Dated: May 20, 2008
865212 / 28128

By: */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Monsanto Company and Monsanto Technology LLC*

13

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 20, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on May 20, 2008, the attached document was Electronically Mailed to the follow person(s):

John W. Shaw
Michele Sherretta Budicak
James L. Higgins
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
yshaw@ycst.com
mbudicak@ycst.com
jhiggins@ycst.com

Keith R. Palfin
Jonathan R. DeFosse
Shearman & Sterling LLP
801 Pennsylvania Avenue, N.W., Suite 900
Washington, D.C. 20004
keith.palfin@shearman.com
jonathan.defosse@shearman.com

Richard F. Schwed
Michael P. Mitchell
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
rschwed@shearman.com
michael.mitchell@shearman.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

707326 / 28128